IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ROCHE DIAGNOSTICS OPERATIONS, INC. and
CORANGE INTERNATIONAL LIMITED,

        Plaintiffs,

    v.

ABBOTT DIABETES CARE INC.,
ABBOTT DIABETES CARE SALES
CORPORATION,
BAYER HEALTHCARE, LLC,
DIAGNOSTIC DEVICES, INC.,
LIFESCAN, INCORPORATED, and
NOVA BIOMEDICAL CORPORATION,

        Defendants.

Civil Action No. 07-753-JJF

**OPENING BRIEF IN SUPPORT OF DEFENDANTS ABBOTT DIABETES CARE INC.'S
AND ABBOTT DIABETES CARE SALES CORP.'S MOTION TO STAY
PENDING REEXAMINATION OF THE PATENTS-IN-SUIT**

OF COUNSEL:
Edward A. Mas II
Stephen F. Sherry
Kirk Vander Leest
James M. Hafertepe
McAndrews, Held & Malloy, Ltd.
500 West Madison Street, 34th Floor
Chicago, Illinois 60661
(312) 775-8000

Frederick L. Cottrell, III (#2555)
cottrell@rlf.com
Anne Shea Gaza (#4093)
gaza@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
P.O. Box 551
920 N. King Street
Wilmington, DE 19899
(302) 651-7700

*Attorneys for Abbott Diabetes Care Inc. and
Abbott Diabetes Care Sales Corp.*

Dated:  January 9, 2008

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

NATURE AND STAGE OF THE PROCEEDINGS ........................................................... 1

SUMMARY OF THE ARGUMENT ................................................................................... 2

STATEMENT OF FACTS .................................................................................................. 3

ARGUMENT ...................................................................................................................... 5

      A.      The PTO's Reexamination Of The Asserted Patents Is Grounds
             For A Stay ................................................................................................... 5

      B.      Traditional Factors All Greatly Favor Granting A Stay ......................... 7

            1.      A Stay Will Narrow The Issues And Conserve Judicial
                    Resources ...................................................................................... 8

            2.      The Early Stage Of This Proceeding Strongly Supports
                    Granting The Stay During Reexamination ................................. 10

            3.      A Stay Will Not Prejudice Roche ............................................. 12

      CONCLUSION ..................................................................................................... 14

# TABLE OF AUTHORITIES

**CASES**

*Alloc, Inc. v. Unilin Décor N.V.*,
   2003 U.S. Dist. LEXIS 11917 (D. Del. July 11, 2003) ....................................................... 7, 10

*ASCII Corp. v. STD Entm't USA, Inc.*,
   844 F. Supp. 1378 (N.D. Cal. 1994) ................................................................................. 6, 10

*Canady v. Erbe Elektromedizin GmbH*,
   271 F. Supp. 2d 64 (D.D.C. 2002) ............................................................................................ 6

*Dentsply Int'l, Inc. v. Kerr Mfg. Co.*,
   734 F. Supp. 656 (D. Del. 1990) ............................................................................................... 7

*Essex Group, Inc. v. Southwire Co.*,
   1986 U.S. Dist. LEXIS 29761 (N.D. Ga. Jan. 31, 1986) ........................................................ 7

*Ethicon, Inc. v. Quigg*,
   849 F.2d 1422 (Fed. Cir. 1988) ............................................................................................... 6

*Gould v. Control Laser Corp.*,
   705 F.2d 1340 (Fed. Cir. 1983) ............................................................................................... 9

*GPAC Inc. v. D.W.W. Enters. Inc.*,
   23 U.S.P.Q.2d 1129 (D.N.J. 1992) ........................................................................................... 6

*Guthy-Renker Fitness L.L.C. v. Icon Health & Fitness, Inc.*,
   48 U.S.P.Q.2d 1058 (C.D. Cal. 1998) ................................................................................. 6, 10

*KLA-Tencor Corp. v. Nanometrics, Inc.*,
   2006 U.S. Dist. LEXIS 15754 (N.D. Cal. Mar. 16, 2006) ................................................. 12, 13

*Lear, Inc. v. Adkins*,
   395 U.S. 653 (1969) ................................................................................................................ 13

*Lentek Int'l, Inc. v. Sharper Image Corp.*,
   169 F. Supp. 2d 1360 (M.D. Fla. 2001) .................................................................................... 6

*Patlex Corp. v. Mossinghoff*,
   758 F.2d 594 (Fed. Cir. 1985) ........................................................................................... 5, 6, 7

*Pegasus Dev. Corp. v. DirecTV, Inc.*,
   2003 U.S. Dist. LEXIS 8052 (D. Del. May 14, 2003) ......................................................... 9, 13

*Robert H. Harris Co. v. Metal Mfg. Co.*,
   1991 U.S. Dist. LEXIS 16086 (E.D. Ark. June 20, 1991) ....................................................... 7

*Sabert Corp. v. Waddington N. Am., Inc.,*
    2007 U.S. Dist. LEXIS 68092 (D.N.J. Sept. 14, 2007) ..................................................... 11, 12

*Tap Pharm. Prods. Inc. v. Atrix Labs., Inc.,*
    70 U.S.P.Q.2d 1319 (N.D. Ill. 2004) ................................................................................. 9, 10

*Target Therapeutics Inc. v. SciMed Life Systems Inc.,*
    33 U.S.P.Q.2d 2022 (N.D. Cal. 1995) ..................................................................................... 12

*United Sweetener USA, Inc. v. Nutrasweet Co.,*
    766 F. Supp. 212 (D. Del. 1991)............................................................................................. 7

*Vitronics Corp. v. Conceptronic, Inc.,*
    36 F. Supp. 2d 440 (D.N.H. 1997).......................................................................................... 10

**STATUTES**

35 U.S.C. § 305 ..................................................................................................................................... 5

35 U.S.C. §§ 301-307 ............................................................................................................................ 5

**OTHER AUTHORITIES**

Manual of Patent Examining Procedure § 2261 (8th ed., rev. 5, Aug. 2006)............................ 5, 12

Manual of Patent Examining Procedure § 2286 (I.) (8th ed., rev. 5, Aug. 2006)..................... 5, 12

## NATURE AND STAGE OF THE PROCEEDINGS

On November 21, 2007, Plaintiffs Roche Diagnostics Operations, Inc. and Corange International Limited (collectively "Roche") filed this action against Abbott Diabetes Care Inc. and Abbott Diabetes Care Sales Corporation (collectively "Abbott"), as well as several other entities, asserting infringement of two recently-issued patents: United States Patent Nos. 7,276,146 ("the 146 patent") and 7,276,147 ("the 147 patent") (collectively "the patents-in-suit").[1]

On December 14, 2007, less than one month after it was served with Roche's Complaint, and approximately two months after the patents-in-suit issued, Abbott filed two requests with the United States Patent and Trademark Office ("PTO") seeking *ex parte* reexamination of all the claims in the patents-in-suit.[2]

As of the filing date of this opening brief, none of the defendants has answered or otherwise responded to the Complaint. The Court has granted Abbott an extension of time to January 11, 2008, to file an answer or other response to the Complaint.

At this time, the Court has not entered a scheduling order or set a trial date. The Court has ordered the parties to appear for a scheduling conference, pursuant to Federal Rule of Civil Procedure 16(b), on February 8, 2008, at 11:30 a.m. The parties have not yet exchanged the information required by Federal Rule of Civil Procedure 26(a)(1) and District of Delaware Local Rule 16.2, nor has any party requested or taken any discovery.

---

[1] The other defendants are: (i) Bayer HealthCare, LLC; (ii) Diagnostics Devices, Inc.; (iii) LifeScan, Inc.; and (iv) Nova Biomedical Corp.

[2] Copies of the *ex parte* reexamination requests for the 146 and 147 patents accompany this brief as Exhibits A and B, respectively.

## SUMMARY OF THE ARGUMENT

As described above, Defendant Abbott has requested reexamination for each of the two patents-in-suit. In view of these requests, Abbott now respectfully moves this Court to stay these proceedings until the requests are either denied or until reexamination of the asserted patents is concluded.[3] The Court should enter the requested stay for the following reasons:

1.      The historical evidence regarding past reexaminations demonstrates that the PTO will most likely invalidate or substantially alter the claims of the patents-in-suit. Such an outcome will likely narrow or resolve the issues in this case.

2.      Abbott has made its request for a stay at the very outset of this action – before the Court has entered a discovery and/or trial schedule, before the parties have taken or requested any discovery, and before the defendants have even answered or otherwise responded to the Complaint. Thus, granting the stay will conserve the maximum amount of resources that would otherwise be expended on prosecution of this action.

3.      This is purely a patent infringement case. It does not involve any claims requiring a trial that are not linked to the patent infringement claim. Plaintiff Roche will not be prejudiced by the entry of a stay pending the outcome of the two reexamination proceedings. Indeed, in prior litigation, Roche has conceded that a stay is appropriate where the patent-in-suit is involved in a reexamination proceeding.

---

[3] Alternatively, the Court in its discretion could dismiss this case without prejudice pending the reexaminations. In order to keep the Court apprised of the status of the reexaminations, the parties could provide the Court with a status report at regular intervals.

- 2 -

## STATEMENT OF FACTS

On October 2, 2007, the PTO issued the patents-in-suit.  Both patents are directed to electrodes used in an electrochemical sensor as well as methods of determining the concentration of glucose in a blood sample.  The sensors which incorporate the technology described in the patents are used by diabetics to test blood sugar levels.  These sensors include a disposable biosensor test strip with a capillary chamber that can hold a volume of between about 0.1 µl and about 1.0 µl of the blood sample.  (Ex. A at 5-6; Ex. B at 6-7.)  The method described in the patents involves applying a blood sample containing glucose into the capillary chamber.  Once the blood is applied, the capillary chamber directs capillary flow of the blood into contact with a chemical reagent to cause the blood to at least partially solubilize or hydrate the reagent.  The sensor then detects the blood sample in the capillary chamber.  (Ex. A at 6; Ex. B at 7.)

According to the patents-in-suit, blood is detected using a "drop detect" system, which senses current flow between working and counter electrodes when blood covers the nearest working and counter electrodes.  The sensor can determine and provide a readout of the glucose concentration in the blood sample within 10 seconds after the blood sample is detected in the capillary chamber.  More specifically, determining the glucose concentration in the blood includes correlating the electrooxidized or electroreduced electroactive reaction product to the concentration of glucose in the blood sample.  (Ex. A at 6; Ex. B at 7.)

On December 14, 2007, Abbott filed two requests with the PTO seeking *ex parte* reexamination of all the claims in the patents-in-suit.  In the reexamination request for the 146 patent, Abbott identified a prior art reference (WO 00/20626, also referred to as WO 626) that

discloses every element of claims 1-14, 16-54, and 59-62.[4]  Abbott also identified the WO 626 reference in its reexamination request for the 147 patent as disclosing every element of claims 1, 3-11, 16-60, and 65-69 of that patent.[5]  Notably, during prosecution of both patents-in-suit, Roche repeatedly emphasized that the prior art allegedly failed to demonstrate a readout of a blood glucose concentration in less than 10 seconds.  However, contrary to Roche's representations, WO 626 does disclose a method for determining and displaying the concentration of glucose in a blood sample smaller than 1.0 µl _in a time period less than 10 seconds_.  There is no indication that the PTO appreciated this critical disclosure during the original examination of the application for either the 146 or 147 patent.  To the contrary, Roche specifically represented that this disclosure was not present in WO 626 or elsewhere in the prior art.  (Ex. A at 7-12; Ex. B at 8-13.)

With respect to remaining claims 15 and 55-58 of the 146 patent and remaining claims 2, 12-15, and 61-64 of the 147 patent, Abbott pointed out that the combination of WO 626 and U.S. Patent No. 6,153,069 ("the 069 patent") renders obvious the subject matter of all those claims.  Specifically, the 069 patent discloses a drop-detect measurement method that would be obvious to use in combination with the method disclosed in WO 626.  (Ex. A at 12; Ex. B at 13.)  Thus, in its two _ex parte_ reexamination requests, Abbott demonstrated that the prior art invalidates each and every claim of the two patents-in-suit.  There is a very high probability that the PTO

---

[4] Although Roche submitted the WO 626 prior art reference as one of 183 total references during prosecution of the 146 patent, the patent examiner apparently did not appreciate the scope of that particular reference during prosecution.

[5] During prosecution of the 147 patent, Roche submitted WO 626 as one of 267 total references. Again, the patent examiner apparently did not appreciate the scope of that reference.

- 4 -

will grant reexamination and cancel or amend the claims of the patents-in-suit. In fact, since 1981 5,902 *ex parte* reexamination certificates have been issued, and of them, claims were cancelled or amended 74% of the time.[6]

## ARGUMENT

### A.    The PTO's Reexamination Of The Asserted Patents Is Grounds For A Stay

By statute, the PTO provides a special procedure – reexamination – to review the validity of issued patents based upon prior art patents and printed publications. The purpose of reexamination is to reduce the burden on an already overly burdened judiciary. *See* 35 U.S.C. §§ 301-307. Additionally, the PTO is bound by statute to resolve reexamination requests "with special dispatch." 35 U.S.C. § 305.[7]

The legislative purpose underlying the patent reexamination statute is to avoid the potentially unnecessary and wasted expenditure of resources in a concurrent district court patent infringement proceeding. PTO reexaminations offer an opportunity to resolve validity disputes more quickly and less expensively than traditional patent litigation. *See Patlex Corp. v. Mossinghoff*, 758 F.2d 594, 602 (Fed. Cir. 1985) (reexamination could "could settle validity

---

[6] A copy of the PTO's statistical data on *ex parte* reexaminations (as of September 2007) is provided as Exhibit C.

[7] Further, the PTO is sensitive to the urgency of a request related to patents presently in litigation. The PTO examination guidelines state: "Any cases involved in litigation, whether they are reexamination proceedings or reissue applications, will have <u>priority</u> over all other cases." (Manual of Patent Examining Procedure ("M.P.E.P.") § 2261 (8th ed., rev. 5, Aug. 2006) (emphasis added) (Ex. D).) In addition, where a litigation involving a patent being reexamined has been stayed, the PTO will expedite the reexamination. (M.P.E.P. § 2286 (I.) (8th ed., rev. 5, Aug. 2006) (Ex. E).) Abbott stated in its reexamination requests that the 146 and 147 patents are involved in this litigation.

disputes more quickly and less expensively than the often protracted litigation involved in such cases"), *rev'd in non-pertinent part*, 771 F.2d 480 (Fed. Cir. 1985); *see also Canady v. Erbe Elektromedizin GmbH*, 271 F. Supp. 2d 64, 78 (D.D.C. 2002) (finding that Congress specifically "instituted the reexamination process to shift the burden o[f] reexamination of patent validity from the courts to the PTO.").

Consistent with the legislative purpose of avoiding expense and wasted resources, courts have recognized "a liberal policy in favor of granting motions to stay proceedings pending the outcome of USPTO reexamination . . . proceedings." *ASCII Corp. v. STD Entm't USA, Inc.*, 844 F. Supp. 1378, 1381 (N.D. Cal. 1994); *see also Guthy-Renker Fitness L.L.C. v. Icon Health & Fitness Inc.*, 48 U.S.P.Q.2d 1058 (C.D. Cal. 1998) ("There is a liberal policy in favor of granting motions to stay proceedings pending the outcome of reexamination proceedings."); *GPAC Inc. v. D.W.W. Enters. Inc.*, 23 U.S.P.Q.2d 1129, 1131 (D.N.J. 1992) ("Congress noted its approval of district courts liberally granting stays . . . ."); *Lentek Int'l, Inc. v. Sharper Image Corp.*, 169 F. Supp. 2d 1360, 1362 (M.D. Fla. 2001) ("[T]he sponsors of the patent reexamination legislation clearly favored the liberal grant of stays by the district courts when patents are submitted for reexamination as a mechanism for settling disputes quickly and less expensively and for providing the district courts with the expertise of the patent office.").

Moreover, the Federal Circuit has affirmed district court decisions to stay further proceedings pending the PTO's reexamination of patents. *See, e.g.*, *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988) ("Courts have inherent power to manage their dockets and stay proceedings . . . , including the authority to order a stay pending a conclusion of PTO

- 6 -

reexamination."); *Patlex*, 758 F.2d at 606 ("The stay of pending litigation to enable PTO review of contested patents was one of the specified purposes of the reexamination legislation.").

Indeed, many courts have issued stay orders, like the one requested here, before the PTO has granted the request for reexamination. *See, e.g.*, *Robert H. Harris Co. v. Metal Mfg. Co.*, No. J-C-90-179, 1991 U.S. Dist. LEXIS 16086, at **5-10 (E.D. Ark. June 20, 1991) (stay issued pending the PTO's response to a reexamination request); *Essex Group, Inc. v. Southwire Co.*, No. C-85-1923-A, 1986 U.S. Dist. LEXIS 29761, at *3 (N.D. Ga. Jan. 31, 1986) (same).

### B.    Traditional Factors All Greatly Favor Granting A Stay

The decision to grant a stay is within the district court's broad range of discretionary powers. *See Dentsply Int'l, Inc. v. Kerr Mfg. Co.*, 734 F. Supp. 656, 658 (D. Del. 1990). In weighing the competing interests of the parties and attempting to maintain an even balance, courts generally evaluate a number of factors, including: (1) whether a stay will simplify the issues raised by the parties; (2) whether discovery is complete and a trial date has been set; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-movant. *See Alloc, Inc. v. Unilin Décor N.V.*, No. 03-253-GMS, 2003 U.S. Dist. LEXIS 11917, at *5 (D. Del. July 11, 2003) (granting motion for stay); *United Sweetener USA, Inc. v. Nutrasweet Co.*, 766 F. Supp. 212, 217 (D. Del. 1991) (granting motion for stay).

As explained below, all of the factors traditionally considered in deciding a motion to stay weigh greatly in favor of granting Abbott's request.

### 1.     A Stay Will Narrow The Issues And Conserve Judicial Resources

A stay in this case will likely eliminate and/or narrow the issues the parties may need to litigate as well as conserve judicial resources because: (1) a reexamination proceeding can eliminate one or more issues for trial when a patent claim is cancelled or amended; and (2) even if a claim remains asserted, the Court and the parties can benefit both from the view of the PTO as to that claim and because pretrial preparation and discovery efforts will not have been wasted on patented subject matter that did not survive reexamination.

First, one benefit of the reexamination process is the elimination of issues for fact discovery, expert discovery, dispositive motions, and trial when a patent claim is cancelled or amended.  According to PTO statistics, the PTO grants reexamination requests about 92% of the time.  (*See* Ex. C at ¶ 5a.)  Further, in at least 74% of situations where reexamination is granted and a reexamination certificate is issued, the PTO cancels or amends the claims.  (*Id.* at ¶ 9.)  In about 10% of reexamination proceedings, all of the claims of a patent are cancelled.  (*Id.* at ¶ 9b.)

Abbott has provided the PTO with substantial prior art evidence that it believes entirely invalidates Roche's patents.  Given that a skilled patent examiner will review that prior art, consider the reasons presented by Abbott for why the patent claims are not patentable over that prior art, and make determinations as to the validity of Roche's patent claims, it would be wasteful to engage in duplicative proceedings before this Court.  If this case is stayed and the claims of the Roche patents-in-suit are cancelled or amended during reexamination, then this lawsuit will likely become moot, thus conserving extensive resources of the Court and the parties.

- 8 -

Second, even if some patent claims survive the reexamination process and litigation proceeds, the record of the reexamination proceedings will be relevant to and assist the Court and jury in resolving the case, particularly where highly technical subject matter is at issue. The trial can be facilitated by having the focused view of the PTO as to that claim. *See Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983).

Additionally, a stay pending reexamination contributes to narrowing the issues and streamlining the litigation process (if it proceeds) in numerous ways:

> (1) many discovery problems relating to the prior art may be alleviated; (2) the record of the reexamination likely would be entered at trial, reducing complexity and length of the litigation; (3) the issues, defenses, and evidence will be more easily limited in pre-trial conferences following a reexamination; (4) the outcome of the reexamination process may encourage a settlement without further involvement of the court; and (5) if the patent is declared invalid, the suit likely will be dismissed as to that patent. These efficiencies will result in a reduced cost of litigation for the parties and more effective utilization of the limited resources of the court.

*Pegasus Dev. Corp. v. DirecTV, Inc.*, No. 00-1020-GMS, 2003 U.S. Dist. LEXIS 8052, at **5-6 (D. Del. May 14, 2003) (internal citations omitted); *see also Tap Pharm. Prods. Inc. v. Atrix Labs., Inc.*, 70 U.S.P.Q.2d 1319, 1320 (N.D. Ill. 2004) (granting stay and noting "a very real possibility that the parties will waste their resources litigating over issues that will ultimately be rendered moot by the PTO's findings.").

For example, if this Court were to hold a claim construction hearing before the resolution of the reexaminations, the Court would have to construe as many as <u>131 patent claims</u> while the scope of those claims was at issue in the PTO. These claims include numerous elements involving detailed steps of a process for determining blood glucose levels using an electrochemical sensor. If any claims are cancelled or amended, the time and effort invested by

both the Court and the parties in such a claim construction process would be either moot or would have to be repeated with respect to any amended claims. Courts have recognized that it is inefficient for a district court to expend time and resources conducting claim interpretation while the scope of the claims at issue is still under review at the PTO. *See Vitronics Corp. v. Conceptronic, Inc.*, 36 F. Supp. 2d 440, 442 (D.N.H. 1997).

Thus, it is in both the Court's and the parties' interest to stay this litigation pending the outcome of the PTO's reexamination to eliminate and/or narrow the issues while conserving judicial resources.

## 2. The Early Stage Of This Proceeding Strongly Supports Granting The Stay During Reexamination

The fact that this lawsuit is in its earliest stages is another factor that weighs heavily in favor of staying this case. Indeed, district courts routinely grant stays deferring to PTO reexamination when there has been no discovery taken and no trial date set. *See, e.g.*, *Tap Pharm.*, 70 U.S.P.Q.2d at 1320 (staying litigation pending reexamination because litigation was at an "early stage"); *Alloc*, 2003 U.S. Dist. LEXIS 11917, at *8 (staying litigation pending reexamination in part because discovery had not yet begun and the court had not set a trial date); *Guthy-Renker*, 48 U.S.P.Q.2d at 1060 ("First, this case is in its incipient stages."); *ASCII*, 844 F. Supp. at 1381 (stay granted in part because "the parties are in the initial stages of the lawsuit and have undertaken little or no discovery. Moreover, the case has not been set for trial."). A stay granted at an early stage of a case, like the one requested here, conserves the maximum amount of resources:

> Pausing for a stay, at this point, is more advantageous than a later respite because the issues may be narrowed before discovery begins, allowing the parties to

curtail their discovery activities. Requesting a stay early also decreases the likelihood of prejudice to the nonmoving party.

*Sabert Corp. v. Waddington N. Am., Inc.*, No. 06-5423 (JAG), 2007 U.S. Dist. LEXIS 68092, at *21 (D.N.J. Sept. 14, 2007).

A stay is particularly appropriate for this matter since it is unquestionably at its earliest stage in the proceedings – the parties have not even completed their initial pleadings. To date, no party has served discovery requests, produced any documents, or taken (or even requested) any depositions. The Court has not yet set a schedule or trial date, and has not had even a single case management conference. As in most complex patent cases, a large portion of the trial evidence is likely to involve experts on numerous technical and economic issues, requiring the parties to invest significant amounts of time and resources to prepare for trial. There is no escaping the reality that a trial in this case will be lengthy and costly, and will likely consume considerable federal resources. To the extent that the PTO's actions will limit or eliminate the parties' and/or the Court's need to address any of the issues currently implicated by the allegations of the Complaint, a stay will undoubtedly conserve valuable time and resources.

Moreover, given the early stages of this lawsuit and the recent issuance of the patents-in-suit, the Court should have no serious concern that an abuse or manipulation of the reexamination process may be occurring in an attempt to delay an impending trial. Under these circumstances, deferring to the PTO's reexamination of the patents-in-suit provides the best opportunity to take advantage of the expertise and cost efficiencies for which the reexamination procedure was created. On the other hand, charging ahead with a lengthy, complex and

expensive patent infringement lawsuit, when there are significant questions regarding patentability of the claimed technology, is not in the best interest of justice.

### 3.    A Stay Will Not Prejudice Roche

Roche will not suffer any prejudice, let alone undue prejudice, if a stay is granted in this matter.  The patents-in-suit issued very recently – on October 2, 2007 – and Abbott filed both requests for reexamination on December 14, 2007.  As stated above, PTO reexaminations are conducted with "special dispatch," and the PTO gives further priority to patents involved in litigation.  Once the PTO grants the reexamination request, it proceeds expeditiously and without delay.  (Ex. D, MPEP § 2261; Ex. E, MPEP § 2286 (I.); Ex. F at 2-3.)

Granting the requested stay of this litigation does not provide an unfair, tactical advantage to Abbott or the other named defendants.  Abbott filed the requests for reexamination as early as practicable following the issuance of the patents-in-suit and after being served with the Complaint in this action.  There has been no unreasonable or undue delay.  *See KLA-Tencor Corp. v. Nanometrics, Inc.*, No. C 05-03116 JSW, 2006 U.S. Dist. LEXIS 15754, at **8-9 (N.D. Cal. Mar. 16, 2006) (party moving for stay did not engage in dilatory tactics where requests for reexamination and motion for stay were filed within one to three months of patents being asserted); *Target Therapeutics Inc. v. SciMed Life Systems Inc.*, 33 U.S.P.Q.2d 2022, 2023 (N.D. Cal. 1995) (no delay where party moved for stay within two months of case filing).  A stay cannot cause Roche undue prejudice when it has not invested substantial expense and time in the litigation.  *See Sabert*, 2007 U.S. Dist. LEXIS 68092, at *21.  Indeed, in prior litigation, Roche has conceded that a stay is appropriate where the patent-in-suit is involved in a reexamination proceeding.  (Ex. F.)

- 12 -

In addition, the limited delay inherent to the reexamination process cannot, by itself, constitute undue prejudice to Roche. "[P]arties having protection under the patent statutory framework may not 'complain of the rights afforded to others by that same statutory framework.'" *KLA-Tencor*, 2006 U.S. Dist. LEXIS 15754, at *7 (*quoting Pegasus*, 2003 U.S. Dist. LEXIS 8052, at *8). Abbott is "legally entitled to invoke the reexamination process," and its exercise of that entitlement does not, in this case, prejudice Roche. *See id.*

The public will also benefit if this litigation is stayed to allow the PTO's reexamination to run its course. By deferring to the PTO and permitting it to reconsider its patentability determination in view of prior art the examiner did not specifically consider during prosecution, the Court will strengthen the public's respect for the patent system by allowing the PTO to correct its earlier error in granting the Roche patents. The Supreme Court has long recognized the substantial public interest in challenging invalid patents. *See, e.g.*, *Lear, Inc. v. Adkins*, 395 U.S. 653, 670 (1969) (describing "the important public interest in permitting full and free competition in the use of ideas which are in reality a part of the public domain").

- 13 -

## CONCLUSION

The reexaminations requested by Abbott are likely to greatly simplify, if not resolve, the issues in this case. Because this case is at the very earliest stages, a stay in this matter will likely conserve substantial time and resources, and will not prejudice Roche. Accordingly, Abbott respectfully submits that its motion to stay should be granted.

OF COUNSEL:
Edward A. Mas II
Stephen F. Sherry
Kirk Vander Leest
James M. Hafertepe
McAndrews, Held & Malloy, Ltd.
500 West Madison Street, 34th Floor
Chicago, Illinois 60661
(312) 775-8000

Frederick L. Cottrell, III (#2555)
cottrell@rlf.com
Anne Shea Gaza (#4093)
gaza@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
P.O. Box 551
920 N. King Street
Wilmington, DE 19899
(302) 651-7700

*Attorneys for Abbott Diabetes Care Inc. and Abbott Diabetes Care Sales Corp.*

Dated: January 9, 2008

- 14 -

## CERTIFICATE OF SERVICE

I hereby certify that on January 9, 2008, I caused to be served by electronic service and hand delivery the foregoing document and electronically filed the same with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following:

Philip A. Rovner
Potter Anderson & Corroon LLP
1313 N. Market Street
P.O. Box 951
Wilmington, DE 19899-0951

Mary W. Bourke
Connolly, Bove, Lodge & Hutz LLP
The Nemours Building
1007 N. Orange Street
P.O. Box 2207
Wilmington, DE 19899-1347

John W. Shaw
Jeffrey T. Castellano
Young, Conaway, Stargatt & Taylor, LLP
1000 West Street, 17th Floor
Wilmington, DE 19801

Rodger D. Smith, II
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899

Steven J. Balick
Lauren E. Maguire
Ashby & Geddes
500 Delaware Avenue, 8th Floor
P. O. Box 1150
Wilmington, DE   19899

I hereby certify that on January 9, 2008, the foregoing document was sent via electronic mail to the following non-registered participants:

Daniel A. Boehnen
Grantland G. Drutchas
McDonnell Boehnen Hulbert
  & Berghoff LLP
300 South Wacker Drive
Chicago, IL  60606

Ashley L. Ellis
Parker Poe Adams & Bernstein LLP
Three Wachovia Center, Suite 3000
401 South Tryon Street
Charlotte, NC 28202

Wesley E. Overson
Rachel Krevans
Jason R. Bartlett
Parisa Jorjani
Daniel P. Muino
Morrison & Foerster LLP
425 Market Street
San Francisco, California 94105-2482

Joseph M. Casino
Kenneth P. George
Amster, Rothstein & Ebenstein, LLP
90 Park Avenue
New York, NY   10016

Bradford J. Badke
Ropes & Gray
1211 Avenue of the Americas
New York, NY 10036-8704

Anne Shea Gaza (#4093)
gaza@rlf.com

# EXHIBIT A

PTO/SB/57 (09-07)
Approved for use through 08/31/2010. OMB 0651-0033
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

(Also referred to as FORM PTO-1465)

## REQUEST FOR *EX PARTE* REEXAMINATION TRANSMITTAL FORM

Address to:
**Mail Stop *Ex Parte* Reexam**
**Commissioner for Patents**
**P.O. Box 1450**
**Alexandria, VA 22313-1450**

Attorney Docket No.: A9805

Date: December 14, 2007

1. [X] This is a request for *ex parte* reexamination pursuant to 37 CFR 1.510 of patent number 7,276,146
   issued October 2, 2007 . The request is made by:

   [ ] patent owner.      [XX] third party requester.

2. [X] The name and address of the person requesting reexamination is:

   John T. Callahan

   SUGHRUE MION, PLLC

   2100 Pennsylvania Ave., N.W., Suite 800, Washington, DC  20037

3. [ ]    a.   A check in the amount of $_____ is enclosed to cover the reexamination fee, 37 CFR 1.20(c)(1);

   [XX]   b.   The Director is hereby authorized to charge the fee as set forth in 37 CFR 1.20(c)(1)
             to Deposit Account No. 19-4880 (submit duplicative copy for fee processing); or

   [ ]    c.   Payment by credit card. Form PTO-2038 is attached.

4. [XX] Any refund should be made by [ ] check or [X] credit to Deposit Account No. 19-4880 .
   37 CFR 1.26(c). If payment is made by credit card, refund must be to credit card account.

5. [XX] A copy of the patent to be reexamined having a double column format on one side of a separate paper is
   enclosed. 37 CFR 1.510(b)(4)

6. [ ] CD-ROM or CD-R in duplicate, Computer Program (Appendix) or large table
        [ ] Landscape Table on CD

7. [ ] Nucleotide and/or Amino Acid Sequence Submission
       *If applicable, items a. – c. are required.*

       a. [ ] Computer Readable Form (CRF)
       b. Specification Sequence Listing on:
          i. [ ] CD-ROM (2 copies) or CD-R (2 copies); **or**
          ii. [ ] paper

       c. [ ] Statements verifying identity of above copies

8. [ ] A copy of any disclaimer, certificate of correction or reexamination certificate issued in the patent is included.

9. [XX] Reexamination of claim(s) 1-62 is requested.

10. [xx] A copy of every patent or printed publication relied upon is submitted herewith including a listing thereof on
    Form PTO/SB/08, PTO-1449, or equivalent.

11. [ ] An English language translation of all necessary and pertinent non-English language patents and/or printed
    publications is included.

[Page 1 of 2]

This collection of information is required by 37 CFR 1.510. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO
to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 2 hours to complete,
including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments
on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent
and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS
ADDRESS. **SEND TO: Mail Stop *Ex Parte* Reexam, Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**
*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

PTO/SB/57 (09-07)
Approved for use through 08/31/2010. OMB 0651-0033
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

12. [XX] The attached detailed request includes at least the following items:

    a. A statement identifying each substantial new question of patentability based on prior patents and printed publications. 37 CFR 1.510(b)(1)

    b. An identification of every claim for which reexamination is requested, and a detailed explanation of the pertinency and manner of applying the cited art to every claim for which reexamination is requested. 37 CFR 1.510(b)(2)

13. [ ] A proposed amendment is included (only where the patent owner is the requester). 37 CFR 1.510(e)

14. [XX] a. It is certified that a copy of this request (if filed by other than the patent owner) has been served in its entirety on the patent owner as provided in 37 CFR 1.33(c).
    The name and address of the party served and the date of service are:

    WOODARD, EMHARDT, MORIARTY, MCNETT & HENRY LLP

    111 Monument Circle, Suite 3700

    Indianapolis, IN  46204-5137

    Date of Service: __December 14, 2007_____; or

    [ ] b. A duplicate copy is enclosed since service on patent owner was not possible.

15. Correspondence Address: Direct all communication about the reexamination to:

[XX] The address associated with Customer Number: | 23373

**OR**

[ ] Firm or Individual Name

Address

| City | State | Zip |
|---|---|---|

Country

| Telephone | Email |
|---|---|

16. [XX] The patent is currently the subject of the following concurrent proceeding(s):
    [ ] a. Copending reissue Application No. _____.
    [ ] b. Copending reexamination Control No. _____.
    [ ] c. Copending Interference No. _____.
    [XX] d. Copending litigation styled:

        See attached sheet

**WARNING: Information on this form may become public. Credit card information should not be included on this form. Provide credit card information and authorization on PTO-2038.**

| _John Callahan_ (signature) | December 14, 2007 |
|---|---|
| Authorized Signature | Date |

| John T. Callahan | 32,607 | [ ] For Patent Owner Requester |
|---|---|---|
| Typed/Printed Name | Registration No. | [XX] For Third Party Requester |

[Page 2 of 2]

PTO/SB/57 (continued)

16.    The patent is currently the subject of the following concurrent proceeding(s):

☐ a.  Copending reissue Application No.
☐ b.  Copending reexamination Control No.
☐ c.  Copending Interference No.
☑ d.  Copending litigation styled:

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ROCHE DIAGNOSTICS OPERATIONS, INC., and CORANGE INTERNATIONAL LIMITED,  ) ) ) | |
| Plaintiffs,  ) ) | |
| vs.  ) ) ) | Civil Action No. 07-753 |
| ABBOTT DIABETES CARE, INCORPORATED, and ABBOTT DIABETES CARE SALES CORPORATION,  ) ) ) ) | |
| BAYER HEALTHCARE, LLC,  ) ) | |
| DIAGNOSTICS DEVICES, INC.,  ) ) | |
| LIFESCAN, INCORPORATED, and  ) ) | |
| NOVA BIOMEDICAL CORPORATION, and SANVITA INCORPORATED  ) ) ) | |
| Defendants.  ) | |

PATENT APPLICATION

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| In re application of | Docket No: A9805 |
| Christopher D. WILSEY | Issued: October 2, 2007 |
| U.S. Patent No. 7,276,146 | Application No. 10/264,891 |
| Filing Date: October 4, 2002 | Group Art Unit: Unknown |
| Confirmation No.: Unknown | Examiner: Unknown |

For:    ELECTRODES, METHODS, APPARATUSES COMPRISING MICRO-ELECTRODE
ARRAYS

### REQUEST FOR *EX PARTE* REEXAMINATION BY THIRD PARTY REQUESTOR

**BOX REEXAM**
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Sir:

Requestor hereby respectfully requests reexamination under 35 U.S.C. § 302 and 37

C.F.R. §1.510 of U.S. Patent No. 7,276,146, which issued October 2, 2007 to Christopher D.

WILSEY and is assigned to Roche Diagnostics Operations, Inc. and Corange International

Limited (hereinafter the "Wilsey '146 Patent"). Included herein is a detailed request for

reexamination, including the claims for which reexamination is requested, an explanation of

pertinence and manner of applying the cited art to every claim for which reexamination is

requested and a statement identifying the substantial new question of patentability raised in view

of the cited art.[1]

---

[1] Requestor notes that the present Request for Reexamination is submitted concurrently with a Request
for Reexamination of U.S. Patent No. 7,276,147, also to Wilsey, which claims benefit to the same U.S.
Provisional Application (No. 60/332,411) as the Wilsey '146 Patent.

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

## TABLE OF CONTENTS

| | | |
|---|---|---|
| I. | CLAIMS FOR WHICH REEXAMINATION IS REQUESTED | 5 |
| II. | BRIEF DESCRIPTION OF THE WILSEY '146 PATENT | 5 |
| III. | OVERVIEW OF REQUEST FOR REEXAMINATION | 7 |
| IV. | RELEVANT SECTIONS OF U.S. PATENT LAWS | 12 |
| A. | 35 U.S.C. § 102(b) | 12 |
| B. | 35 U.S.C. § 103(a) | 12 |
| V. | EXPLANATION OF PERTINENCY OF CITED ART | 13 |
| A. | WO 00/20626 to Feldman et al. (WO '626) | 13 |
| B. | U.S. Patent No. 6,153,069 to Pottgen et al. (the Pottgen '069 Patent) | 17 |
| VI. | MANNER OF APPLYING CITED ART TO EVERY CLAIM FOR WHICH REEXAMINATION IS REQUESTED | 18 |
| A. | Independent Claim 1 of the Wilsey '146 Patent | 18 |
| B. | Claim 2 of the Wilsey '146 Patent | 22 |
| C. | Claims 3-5 of the Wilsey '146 Patent | 22 |
| D. | Claim 6 of the Wilsey '146 Patent | 24 |
| E. | Claim 7 of the Wilsey '146 Patent | 24 |
| F. | Claim 8 of the Wilsey '146 Patent | 25 |
| G. | Claims 9-10 of the Wilsey '146 Patent | 25 |
| H. | Claim 11 of the Wilsey '146 Patent | 27 |
| I. | Claim 12 of the Wilsey '146 Patent | 28 |
| J. | Claim 13 of the Wilsey '146 Patent | 28 |
| K. | Claim 14 of the Wilsey '146 Patent | 29 |
| L. | Claim 15 of the Wilsey '146 Patent | 29 |
| M. | Claim 16 of the Wilsey '146 Patent | 30 |
| N. | Claim 17 of the Wilsey '146 Patent | 30 |
| O. | Claim 18 of the Wilsey '146 Patent | 32 |
| P. | Claim 19 of the Wilsey '146 Patent | 32 |
| Q. | Claim 20 of the Wilsey '146 Patent | 33 |
| R. | Claim 21 of the Wilsey '146 Patent | 34 |
| S. | Claim 22 of the Wilsey '146 Patent | 34 |
| T. | Claim 23 of the Wilsey '146 Patent | 35 |
| U. | Claim 24 of the Wilsey '146 Patent | 36 |
| V. | Claim 25 of the Wilsey '146 Patent | 37 |
| W. | Claims 26-30 of the Wilsey '146 Patent | 37 |
| X. | Independent Claim 31 of the Wilsey '146 Patent | 38 |
| Y. | Claim 32 of the Wilsey '146 Patent | 42 |
| Z. | Claim 33 of the Wilsey '146 Patent | 42 |
| AA. | Claim 34 of the Wilsey '146 Patent | 43 |
| BB. | Claim 35 of the Wilsey '146 Patent | 43 |
| CC. | Claim 36 of the Wilsey '146 Patent | 44 |
| DD. | Claim 37 of the Wilsey '146 Patent | 45 |

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

| | | |
|---|---|---|
| EE. | Claim 38 of the Wilsey '146 Patent | 46 |
| FF. | Claims 39-45 of the Wilsey '146 Patent | 46 |
| GG. | Claim 46 of the Wilsey '146 Patent | 47 |
| HH. | Claim 47 of the Wilsey '146 Patent | 48 |
| II. | Claim 48 of the Wilsey '146 Patent | 49 |
| JJ. | Claims 49-50 of the Wilsey '146 Patent | 49 |
| KK. | Claim 51 of the Wilsey '146 Patent | 51 |
| LL. | Claim 52 of the Wilsey '146 Patent | 51 |
| MM. | Claim 53 of the Wilsey '146 Patent | 52 |
| NN. | Claim 54 of the Wilsey '146 Patent | 54 |
| OO. | Claim 55 of the Wilsey '146 Patent | 55 |
| PP. | Claim 56 of the Wilsey '146 Patent | 56 |
| QQ. | Claim 57 of the Wilsey '146 Patent | 56 |
| RR. | Claim 58 of the Wilsey '146 Patent | 58 |
| SS. | Claim 59 of the Wilsey '146 Patent | 59 |
| TT. | Claim 60 of the Wilsey '146 Patent | 59 |
| UU. | Claim 61 of the Wilsey '146 Patent | 60 |
| VV. | Claim 62 of the Wilsey '146 Patent | 60 |
| **VII.** | **SUBSTANTIAL NEW QUESTIONS OF PATENTABILITY CREATED BY THE CITED ART** | 61 |
| A. | Claims 1-14, 16-54, and 59-62 of the Wilsey '146 Patent are Anticipated by WO '626 Under 35 U.S.C. § 102(b) | 61 |
| i. | Independent Claim 1 | 61 |
| ii. | Claim 2 | 69 |
| iii. | Claim 3 | 70 |
| iv. | Claim 4 | 70 |
| v. | Claim 5 | 71 |
| vi. | Claim 6 | 72 |
| vii. | Claim 7 | 73 |
| viii. | Claim 8 | 74 |
| ix. | Claim 9 | 74 |
| x. | Claim 10 | 75 |
| xi. | Claim 11 | 76 |
| xii. | Claim 12 | 77 |
| xiii. | Claim 13 | 78 |
| xiv. | Claim 14 | 78 |
| xv. | Claim 16 | 79 |
| xvi. | Claim 17 | 80 |
| xvii. | Claim 18 | 81 |
| xviii. | Claim 19 | 81 |
| xix. | Claim 20 | 81 |
| xx. | Claim 21 | 83 |
| xxi. | Claim 22 | 83 |
| xxii. | Claim 23 | 84 |

3

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

| | | |
|---|---|---|
| xxiii. | Claim 24 | 85 |
| xxiv. | Claim 25 | 86 |
| xxv. | Claim 26 | 86 |
| xxvi. | Claim 27 | 87 |
| xxvii. | Claim 28 | 88 |
| xxviii. | Claim 29 | 89 |
| xxix. | Claim 30 | 90 |
| xxx. | Independent Claim 31 | 91 |
| xxxi. | Claim 32 | 100 |
| xxxii. | Claim 33 | 100 |
| xxxiii. | Claim 34 | 102 |
| xxxiv. | Claim 35 | 102 |
| xxxv. | Claim 36 | 103 |
| xxxvi. | Claim 37 | 104 |
| xxxvii. | Claim 38 | 105 |
| xxxviii. | Claim 39 | 105 |
| xxxix. | Claim 40 | 107 |
| xl. | Claim 41 | 107 |
| xli. | Claim 42 | 108 |
| xlii. | Claim 43 | 110 |
| xliii. | Claim 44 | 111 |
| xliv. | Claim 45 | 111 |
| xlv. | Claim 46 | 112 |
| xlvi. | Claim 47 | 113 |
| xlvii. | Claim 48 | 114 |
| xlviii. | Claim 49 | 114 |
| xlix. | Claim 50 | 115 |
| l. | Claim 51 | 116 |
| li. | Claim 52 | 117 |
| lii. | Claim 53 | 118 |
| liii. | Claim 54 | 119 |
| liv. | Claim 59 | 120 |
| lv. | Claim 60 | 121 |
| lvi. | Claim 61 | 121 |
| lvii. | Claim 62 | 122 |
| B. | Claims 15 and 55-58 of the Wilsey '146 Patent are Unpatentable Under 35 U.S.C. § 103(a) Over WO '626 in view of the Pottgen '069 Patent | 123 |
| i. | Claim 15 | 123 |
| ii. | Claim 55 | 124 |
| iii. | Claim 56 | 126 |
| iv. | Claim 57 | 127 |
| v. | Claim 58 | 129 |
| VIII. | CONCLUSION | 130 |

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

## I. CLAIMS FOR WHICH REEXAMINATION IS REQUESTED

The Wilsey '146 Patent contains Claims 1-62. A copy of the Wilsey '146 Patent is enclosed as Appendix I in double column format on one side of a separate paper.

Reexamination is requested for Claims 1-62.

Reexamination is requested in view of WO 00/20626 to Feldman et al. (WO '626) and U.S. Patent No. 6,153,069 to Pottgen et al. (the Pottgen '069 Patent).

Reexamination is requested because Claims 1-14, 16-54, and 59-62 of the Wilsey '146 Patent are anticipated by WO '626 under 35 U.S.C. § 102(b), and Claims 15 and 55-58 are obvious under 35 U.S.C. § 103(a) from WO '626 in view of the Pottgen '069 Patent, for the reasons discussed in detail below.

## II. BRIEF DESCRIPTION OF THE WILSEY '146 PATENT

The Wilsey '146 Patent is directed to arrays of electrodes and methods of preparing the arrays, wherein the arrays may be used as an electrode in an electrochemical sensor.

More specifically, the Wilsey '146 Patent is directed to methods of determining the concentration of glucose in a blood sample. The electrochemical sensor of the Wilsey '146 Patent comprises a disposable biosensor test strip including a capillary chamber having a depth suitable for capillary flow of blood. The chamber of the test strip is able to hold a volume of between about 0.1 μl and about 1.0 μl of the blood sample. The electrochemical sensor further comprises a working electrode and a counter or reference electrode disposed within the capillary chamber, and a reagent proximal to or in contact with at least the working electrode. The compound of interest, for example glucose, is first reacted with a chemical or a set of chemicals.

5

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

These chemicals (reagents) can include an enzyme and a mediator.  Once the reagent reacts with

the glucose, the result is an electroactive reaction product.

The method described in the Wilsey '146 Patent utilizes the above described sensor.  In

this regard, the method comprises applying a blood sample containing glucose into the capillary

chamber.  Once the blood is applied, the capillary chamber directs capillary flow of the blood

sample into contact with the reagent to cause the blood sample to at least partially solubilize or

hydrate the reagent.  The sensor detects the blood sample in the capillary chamber.  In the Wilsey

'146 Patent, blood is detected using a "drop detect" system, which senses current flow between

the working and counter electrodes when blood covers the nearest working and counter

electrodes.  (*See* col. 23, line 60 to col. 24, line 50).  Upon detecting blood in the capillary

chamber, the potential difference across the electrodes goes to an open circuit for a

predetermined delay period (generally 3 seconds).  (*See* col. 24, line 32-34).  During this delay

period, reaction will occur between the reactants, resulting in reduction of the mediator.  (*See*

col. 24, lines 35-37).  After the predetermined delay period, a predetermined voltage (assay

potential) or current is again applied across the working and counter electrodes.  (*See* col. 24,

lines 38-39).  This causes electro-oxidation of the reduced mediator at the surface of the working

electrode.  (See col. 24, lines 40-41).  The Wilsey '146 Patent further discloses that the sensor

can determine and provide a readout of the glucose concentration in the blood sample within 10

seconds after the blood sample is detected in the capillary chamber.  More specifically,

determining the glucose concentration in the blood includes correlating the electrooxidized or

electroreduced electroactive reaction product to the concentration of glucose in the blood sample.

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

### III. OVERVIEW OF REQUEST FOR REEXAMINATION

Requestor respectfully requests reexamination of the Wilsey '146 Patent on the grounds that the prior art discussed herein presents a substantial new question of patentability with respect to Claims 1-62 of the Wilsey '146 Patent. Specifically, WO 00/20626 (WO '626) anticipates Claims 1-14, 16-54, and 59-62 of the Wilsey '146 Patent under 35 U.S.C. § 102(b), and renders obvious Claims 15 and 55-58 of the Wilsey '146 Patent under 35 U.S.C. § 103(a) over WO '626 in view of U.S. Patent No. 6,153,069 to Pottgen et al. (the Pottgen '069 Patent).

WO '626 was one of 57 references that were submitted as part of an Information Disclosure Statement (IDS) at the outset of the prosecution of the application (U.S. Appl. Ser. No. 10/264,891 filed October 4, 2002, hereinafter "the '891 Application"), and WO '626 was one of 183 total references submitted in IDSs during the prosecution of the '891 Application. No comment was made on WO '626 when it was submitted for consideration. The Examiner similarly did not comment on WO '626 during the prosecution of the '891 Application.

The U.S. equivalent to WO '626 (U.S. Patent No. 6,338,790) was cited in an IDS during the prosecution of U.S. Patent No. 7,276,147, hereinafter "the Wilsey '147 Patent," which claims priority to the same U.S. Provisional Application (No. 60/332,411, filed November 16, 2001) as the Wilsey '146 Patent. In the IDS filed on March 5, 2003, in the application for the Wilsey '147 Patent, it was asserted that WO '626 "does not disclose a method of measuring an analyte in a sample by detecting the time at which the liquid sample enters the sample cavity and within 10 seconds of that time obtaining a readout of the concentration of the analyte in the liquid sample." (IDS filed March 5, 2003 (page 4)) (Appendix II). However, as demonstrated below, this characterization by the Applicant was incorrect.

7

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

As explained herein, WO '626 presents a substantial new question of patentability with respect to Claims 1-14, 16-54, and 59-62 of the Wilsey '146 Patent. WO '626 discloses every element required by these claims of the '146 Patent. Importantly, during prosecution of the Wilsey '146 Patent, the Applicant repeatedly emphasized that the prior art allegedly failed to disclose providing a readout of blood glucose concentration in less than 10 seconds. (See, e.g., the Supplemental Response to Office Action dated March 22, 2006 (page 7); the Second Supplemental Response dated April 12, 2006; the Amendment dated December 22, 2006 (page 24); and the Letter to the Examiner Relating to Applicant Initiated Interview Request dated April 20, 2007 (pages 7-8)). However, WO '626 demonstrates that these arguments were incorrect because it clearly discloses a method for determining and displaying the concentration of glucose in a blood sample smaller than 1.0 µl in a time period of less than 10 seconds. Specifically, Requestor respectfully notes that FIG. 17 in WO '626 illustrates a measurement time of less than 10 seconds.

FIG. 17 (shown below) of WO '626 illustrates the sensor signal as a function of time used to determine and provide a readout of the concentration of an analyte, such as glucose (See WO '626 Abstract and page 61, lines 18-25).

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

**FIG. 17**



For convenience, and as will be discussed below, the % of analyte electrolyzed has been added along the right side of FIG. 17, reproduced below, and a line at T=about 3 seconds has also been added to indicate the time at which 20% of the analyte has been electrolyzed.

9

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

FIG. 17



Importantly, WO '626 discloses that it is not necessary to wait for 100% of the analyte to be electrolyzed before the analyte concentration can be determined. Specifically, WO '626 discloses that, for measurement, "at least 20% of the analyte is electrolyzed [and preferably] at least 50%, more preferably at least 80%, and even more preferably at least 90% of the analyte is electrolyzed" (page 64 of WO '626, lines 1-3). As explained in WO '626 (See paragraph bridging pages 64 and 65):

> The current is measured during the partial reaction [i.e., when 20 % of the analyte is electrolyzed,] and then extrapolated using mathematical techniques known to those skilled in the art to determine the current curve for the complete or nearly complete electrolysis of the analyte. Integration of this curve yields the amount of charge that would be passed if the analyte were completely or nearly completely electrolyzed and, using equation (3a) or (3b), the concentration of the analyte is calculated.

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

Accordingly, WO '626 discloses that it is possible to reduce the response time of the sensor by determining analyte concentration when as little as 20% of the analyte has been electrolyzed. In FIG. 17, 20% of the analyte of Sensor B is electrolyzed at about 3 seconds. Thus, it can easily be understood that in the device taught by WO '626, when 20% of the analyte is electrolyzed, the readout time is about 3 seconds, which is well within the 10 second limitation for determining and providing a readout of the glucose concentration in the blood sample required by the claims of the Wilsey '146 Patent.

There is no indication that this critical disclosure of WO '626 was appreciated during the original examination of the application for the Wilsey '146 Patent. To the contrary, the Applicant specifically represented that this disclosure was not present in WO '626 or elsewhere in the prior art.

Moreover, WO '626 teaches several methods to further reduce the response time of the sensor. In particular, WO '626 teaches that "[i]ncreasing the amount of diffusible redox mediator in the sample decreases the response time of the sensor." (*See* page 96, lines 8-10). Similarly, as an alternative to increasing the amount of redox mediator in the sample, WO '626 also teaches that a heating element can be provided "to heat the sample chamber to increase the rate of oxidation or reduction of the analyte." (*See* page 4, lines 5-7). WO '626 also teaches decreasing the thickness of the sample chamber "to promote rapid electrolysis of the analyte, as more of the sample will be in contact with the electrode surface for a given sample volume." (*See* page 42, lines 14-16). Accordingly, WO '626 discloses methods which can be applied to further reduce the sensor response time illustrated in FIG. 17 of WO '626.

11

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

With respect to Claims 15 and 55-58, as discussed below, the combination of WO '626 and U.S. Patent No. 6,153,069 to Pottgen et al. (the Pottgen '069 Patent) renders obvious the subject matter of these claims. Specifically, the Pottgen '069 Patent discloses a drop-detect measurement method that would be obvious to use in combination with the method disclosed in WO '626.

In view of the above, a substantial new question of patentability is presented that was not addressed during the prosecution of the Wilsey '146 Patent. Accordingly, reexamination is appropriate.

## IV. RELEVANT SECTIONS OF U.S. PATENT LAWS

### A. 35 U.S.C. § 102(b)
Under 35 U.S.C. § 102(b), "[a] person shall be entitled to a patent unless … the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States."

### B. 35 U.S.C. § 103(a)
Under 35 U.S.C. § 103(a) "[a] patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made."

12

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

## V. EXPLANATION OF PERTINENCY OF CITED ART

The application for the Wilsey '146 Patent was filed on October 4, 2002, and claimed

priority to Provisional Application No. 60/332,411, filed on November 16, 2001.

### A. WO 00/20626 to Feldman et al. (WO '626)

WO '626 published on April 13, 2000, and constitutes prior art under 35 U.S.C. § 102(b)

against the Wilsey '146 Patent.

WO '626 discloses a method of determining the level of glucose in blood (*See, e.g.*,

Abstract and page 97, lines 13-14). The method involves the use of the disposable biosensor test

strip, such as the strip illustrated in FIG. 5 of WO '626:



FIG. 5

The test strip includes a sample chamber that holds a sample of blood as small as 0.25 µl

(page 2, line 30 through page 3, line 4).

13

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

The test strip also includes electrodes 22 and 24 (including a working electrode), which are illustrated in FIG. 4, shown below, as part of sample chamber 26:



The electrodes 22 and 24 may be associated with (e.g., proximal to or disposed on) a reagent, which may include redox mediator and an enzyme (page 37, lines 3-9; page 37, lines 3-9; and page 14, lines 15-16). In addition, the test strip may include an indicator electrode (page 4, lines 1-3; page 80, lines 26-28).

During operation, an aqueous sample such as blood enters the sample chamber, where it comes into contact with the working and counter electrodes. A fill indicator may be provided to detect when the sample chamber has been filled. (Page 4, lines 1-3). After the chamber has been filled, *i.e.,* following detection by the fill indicator, an external potential may be applied between the electrodes 22, 24. (Page 60, lines 10-11).

While in the sample chamber, the analyte, such as glucose in the sample, reacts with the reagent, creating an electrically active compound which is electrooxidized or electroreduced at

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

the working electrode (page 11, lines 24-25).  The sample may be then measured to determine

the concentration of glucose in the blood.

As discussed above, FIG. 17 in WO '626 illustrates a curve used to determine and

provide a readout of the concentration of an analyte, such as glucose*See*.  FIG. 17 is again

reproduced below, with a line at T=about 3 seconds added to aid the understanding of the Figure.

T=about 3 seconds corresponds to the time at which 20% of the electrolyte in Sensor B has been

electrolyzed.

In the Figure, the curve labeled "1X Chemistry" (Sensor A) differs from the curve

labeled "3X Chemistry" (Sensor B) only in that the "3X Chemistry" curve represents a sensor

which contains 3 times the amount of reagent as the "1X Chemistry" sensor.

**FIG. 17**



REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

Importantly, WO '626 discloses that it is not necessary to wait for 100% of the analyte to be electrolyzed before the analyte concentration can be determined. Specifically, WO '626 discloses that for measurement, "at least 20% of the analyte is electrolyzed [and preferably] at least 50%, more preferably at least 80%, and even more preferably at least 90% of the analyte is electrolyzed" (page 64 of WO '626, lines 1-3). As explained in WO '626 (*See* paragraph bridging pages 64 and 65):

> The current is measured during the partial reaction [*i.e.,* when 20% of the analyte is electrolyzed,] and then extrapolated using mathematical techniques known to those skilled in the art to determine the current curve for the complete or nearly complete electrolysis of the analyte. Integration of this curve yields the amount of charge that would be passed if the analyte were completely or nearly completely electrolyzed and, using equation (3a) or (3b), the concentration of the analyte is calculated.

Accordingly, WO '626 discloses that it is possible to reduce the response time of the sensor by determining analyte concentration when as little as 20% of the analyte has been electrolyzed. In FIG. 17, 20% of the analyte of Sensor B is electrolyzed at about T=about 3 seconds, which is substantially less than the 10 second limitation required by the independent claims of the '146 Patent.

WO '626 also teaches making sensors having decreased measurement time intervals of less than 10 seconds. WO '626 teaches that several conditions exist which may be manipulated to reduce the response time of the sensor. In particular, WO '626 teaches that "[i]ncreasing the amount of diffusible redox mediator in the sample decreases the response time of the sensor." (*See* page 96, lines 8-10). Similarly, instead of increasing the amount of redox mediator in the sample, WO '626 teaches that a heating element can be provided "to heat the sample chamber to increase the rate of oxidation or reduction of the analyte." (*See* page 4, lines 5-7). WO '626 also

16

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

teaches decreasing the thickness of the sample chamber "to promote rapid electrolysis of the

analyte, as more of the sample will be in contact with the electrode surface for a given sample

volume" (*See* page 42, lines 14-16). Accordingly, WO '626 teaches ways in which to decrease

the response time of the sensor therein.

The test results obtained using the biosensor strip disclosed in WO '626 may be reported

in a display (*See* page 59, lines 9-18).

### B. *U.S. Patent No. 6,153,069 to Pottgen et al. (the Pottgen '069 Patent)*

The Pottgen '069 Patent relates to a method and apparatus for quantitatively determining

the presence of biological compounds such as glucose, from body fluids, such as blood.

The Pottgen '069 Patent describes an apparatus comprising a housing for receiving a

sample cell. The sample cell 20 includes a volumetric well 21, into which the sample of blood

(drop of blood) is placed. (*See* col. 5, ll. 53-57). The volumetric well 21 also contains the

reagent for reacting with the blood. The reagent may be a combination of a redox mediator and

an enzyme. (*See* col. 8, lines 24 and 25).

The testing procedure of the Pottgen '069 Patent is initiated when the sample cell is

positioned through window 19 (FIG. 1) in the housing of the measuring apparatus. Once

inserted, a potential is applied at portion 27 (FIG. 2) of the sample cell across electrodes 24 and

26 to detect the presence of the sample. (Col. 9, line 66 through col. 10, line 1). The measuring

apparatus recognizes when the drop of blood is applied to the sample cell by the sudden charging

current flow that occurs when the electrodes and the overlaying reagent layer are initially wetted

by the sample fluid (blood). (Col. 4, lines 23-26).

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

Once the sample's presence is detected, the potential is withdrawn, or turned off, and the incubation period is initiated. (Col. 10, lines 2-3). It is indicated that the length of this period is chemistry dependent. (*See* col. 4, lines 26-29). The sample fluid (blood) reacts with the reagent (or reagents) inside the volumetric chamber 21, to create an electroreactive product.

An electrical potential is next applied at portion 27 of the sample cell to electrodes 24 and 26 and the current through the sample is measured and displayed on display 16. (Col. 10, lines 8-11).

## VI. MANNER OF APPLYING CITED ART TO EVERY CLAIM FOR WHICH REEXAMINATION IS REQUESTED

### A. Independent Claim 1 of the Wilsey '146 Patent

Independent Claim 1 of the Wilsey '146 Patent reads as follows:

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| A method of determining the concentration of glucose in a blood sample, comprising: | WO '626 discloses that the invention can be used to determine the level of glucose in blood. (*See, e.g.*, Abstract; page 97, lines 13-14). |
| providing a disposable biosensor test strip including a capillary chamber having a depth suitable for capillary flow of blood and holding a volume of between about 0.1 μl and about 1.0 μl of the blood sample, | Example 5 in WO '626 discloses a "disposable" biosensor test strip, and FIGS. 3 and 5 in WO '626 illustrate the test strip and the capillary chamber 26 therein:  |

18

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| | WO '626 also discloses that the chamber 26 has a holding volume of "no more than about 1 µl, preferably no more than about 0.5 µl, more preferably no more than about 0.25 µl, and most preferably no more than about 0.1 µl" (page 2, line 30 through page 3, line 4). |
| a working electrode and a counter or reference electrode disposed within the capillary chamber, | FIG. 4 in WO '626 shows that "the sample chamber 26 is typically defined by a combination of the electrodes 22, 24, an inert base 30, and a spacer 28" (page 41, lines 12-13):<br><br> |
| and a reagent proximal to or in contact with at least the working electrode, | WO '626 discloses that the reagent may be proximal to or "disposed on...the working electrode" (page 14, lines 15-17). |
| the reagent including an enzyme and a mediator, | WO '626 discloses the use of "a redox mediator and … an enzyme" (page 37, lines 3-9). |
| the reagent reacting with glucose to produce an electroactive reaction product; | The sensor in WO '626 works as a result of the reaction between glucose (Abstract) and the reagent (page 60, lines 22-26). |
| applying a blood sample containing glucose into the capillary chamber, | The blood sample containing glucose (Abstract) is applied to the chamber in the sensor in WO '626 (page 12, lines 7-9). |
| the capillary chamber directing capillary flow of the blood sample into contact with the reagent to cause the blood sample to at least partially solubilize or hydrate the reagent; | WO '626 discloses that "capillary action" may be used to transport the sample into the sample chamber (page 47, lines 11-17).<br><br>The sample chamber in WO '626 is "configured |

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| | so that…the sample is in electrolytic contact with…the working electrode" (page 12, lines 7-9), and the reagent may be proximal to or "disposed on … the working electrode" (page 14, lines 15-17).<br><br>WO '626 discloses that the "redox mediator and/or second electron transfer agent may first dissolve from the surface on which it was placed as a solid." (page 15, lines 1-2). |
| detecting the blood sample in the capillary chamber; | The sensor in WO '626 may include an indicator electrode, detecting when blood has filled the chamber (page 4, lines 1-3; page 80, lines 26-28). |
| following said detecting, applying or controlling the voltage or current across the working and counter or reference electrodes; | In the sensor in WO '626, "[w]hen an external potential is applied, it may be applied either before or *after the sample has been placed in the sample chamber* [i.e., after detecting that blood has filled the chamber]." (page 60, lines 10-11 (emphasis added)). |
| electrooxidizing or electroreducing the electroactive reaction product at the working electrode; | The working electrode in WO '626 is defined as "an electrode at which analyte is electrooxidized or electroreduced…" (page 4, lines 24-25). |
| and within 10 seconds after said detecting, determining and providing a readout of the glucose concentration in the blood sample, | FIG. 17 in WO '626 illustrates a curve used to determine and provide a readout of the concentration of an analyte, such as glucose (Abstract), after detecting the blood sample: |

20

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| |   WO '626 discloses that for measurement, "at least 20% of the analyte is electrolyzed. Preferably at least 50%, more preferably at least 80%, and even more preferably at least 90% of the analyte is electrolyzed" (page 64, lines 1-3). In FIG. 17, 20% of the analyte of Sensor B is electrolyzed at about T= about 3 seconds, which is within 10 seconds as required by the claim.  WO '626 further indicates that "it is typically desirable that the analyte be electrolyzed quickly" and teaches that the potential applied between electrodes and the size of the measurement zone, for example, may be manipulated to quicken the electrolysis of the analyte (page 64, lines 12-19).  The results may be reported in a display (page 59, lines 9-18). |
| said determining comprising correlating the electrooxidized or electroreduced electroactive reaction product to the concentration of glucose in the blood sample. | WO '626 discloses the use of the sensors to "determine the glucose concentration in blood samples" (Abstract; page 97, lines 13-14).  WO '626 discloses that "[o]ne aspect of the invention is a method of determining the concentration of an analyte in a sample by contacting the sample with an electrochemical sensor and determining the concentration of the analyte." (page 3, lines 20-22). |

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

The above Table shows that every element of Claim 1 is present in the cited art.

Therefore, a substantial new question of patentability is raised with respect to this claim.

### B. Claim 2 of the Wilsey '146 Patent

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| The method of claim 1 in which the capillary chamber holds a volume of between about 0.4 µl and about 1.0 µl. | WO '626 discloses that the chamber 26 has a holding volume of no more than 1 µl, preferably no more than 0.1 µl (page 11, line 30 to page 12, line 3). |

The above Table shows that each element of Claim 2 is present in the cited art.

Therefore, a substantial new question of patentability is raised with respect to this claim.

### C. Claims 3-5 of the Wilsey '146 Patent

Each of Claims 3-5 relate to the time in which the readout of the glucose concentration is provided. The combination of these three claims into a single chart is not intended to assert that the cited art does not raise a separate and distinct substantial new question of patentability for each of Claims 3-5.

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| 3. The method of claim 1 which includes determining and providing a readout of the glucose concentration within about 8 seconds after said detecting.<br><br>4. The method of claim 3 which includes determining and providing a readout of the glucose concentration within about 5 seconds after said detecting.<br><br>5. The method of claim 1 in which said determining and providing a readout of the | FIG. 17 in WO '626 illustrates a curve used to determine and provide a readout of the concentration of an analyte, such as glucose (Abstract), after detecting the blood sample: |

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| concentration comprises determining the concentration from about 0.5 to about 2 seconds after said applying or controlling. | FIG. 17<br><br>WO '626 discloses that for measurement, "at least 20% of the analyte is electrolyzed. Preferably at least 50%, more preferably at least 80%, and even more preferably at least 90% of the analyte is electrolyzed" (page 64, lines 1-3). In FIG. 17, 20% of the analyte of Sensor B is electrolyzed at about T=about 3 seconds, which satisfies the "within 8 seconds" and "within 5 seconds" limitations of claims 3 and 4, respectively.<br><br>WO '626 discloses that the results may be reported in a display (page 59, lines 9-18).<br><br>Regarding claim 5, WO '626 also teaches that, "[i]t is typically desirable that the analyte be electrolyzed quickly." (*See* page 64, lines 12-13). In this regard, WO '626 teaches that "[t]he speed of the electrochemical reaction depends on several factors, including the potential that is applied between the electrodes ..., [and] the size of the measurement zone." (*See* page 64, lines 13-16). In view of this teaching, one of ordinary skill in the art would understand that the response time of WO '626 could be further reduced, e.g., to "between about 0.5 to about 2 seconds" as recited in claim 5. |

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

The above Table shows that each element of Claims 3-5 is present in the cited art.

Therefore, a substantial new question of patentability is raised with respect to these claims.

### D. Claim 6 of the Wilsey '146 Patent

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| The method of claim 1 in which said applying or controlling comprises applying a DC voltage of 100-500 mV between the working and counter or reference electrodes, | In the sensor in WO '626, a potential of between about -350 mV and about +400 mV versus SCE is applied (page 60, lines 5-6; page 87, lines 27-28). |
| said determining the concentration comprising measuring the amount of the electrooxidized or electroreduced electroactive reaction product and correlating the measurement to the amount of glucose in the sample. | WO '626 discloses the use of sensors to "determine the glucose concentration in blood samples." (Abstract; page 97, lines 13-14). WO '626 discloses that "[o]ne aspect of the invention is a method of determining the concentration of an analyte in a sample by contacting the sample with an electrochemical sensor and determining the concentration of the analyte." (page 3, lines 20-22). |

The above Table shows that each element of Claim 6 is present in the cited art.

Therefore, a substantial new question of patentability is raised with respect to this claim.

### E. Claim 7 of the Wilsey '146 Patent

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| The method of claim 6 in which the DC voltage is about 300 mV. | In the sensor in WO '626, a potential of between about -350 mV and about +400 mV versus SCE is applied (page 60, lines 5-6; page 87, lines 27-28). |

24

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

The above Table shows that each element of Claim 7 is present in the cited art.

Therefore, a substantial new question of patentability is raised with respect to this claim.

### F. Claim 8 of the Wilsey '146 Patent

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| The method of claim 6 in which said measuring the amount of the electrooxidized or electroreduced electroactive reaction product comprises measuring the current and correlating the measured current to the concentration of the glucose. | WO '626 discloses the use of sensors to "determine the glucose concentration in blood samples." (Abstract; page 97, lines 13-14). WO '626 discloses that "[o]ne aspect of the invention is a method of determining the concentration of an analyte in a sample by contacting the sample with an electrochemical sensor and determining the concentration of the analyte." (page 3, lines 20-22). |

The above Table shows that each element of Claim 8 is present in the cited art.

Therefore, a substantial new question of patentability is raised with respect to this claim.

### G. Claims 9-10 of the Wilsey '146 Patent

Each of Claims 9-10 relate to the time in which the readout of the glucose concentration is measured or reported. The combination of these two claims into a single chart is not intended to assert that the cited art does not raise a separate and distinct substantial new question of patentability for each of Claims 9-10.

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| 9. The method of claim 6 in which said measuring the amount of the electrooxidized or electroreduced electroactive reaction product comprises measuring the amount from about 0.5 to about 2 seconds after said applying or controlling. | FIG. 17 in WO '626 illustrates a curve used to determine and provide a readout of the concentration of an analyte, such as glucose (Abstract), after detecting the blood sample: |

25

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| 10.  The method of claim 1 in which said providing comprises providing the reagent in a sufficiently small amount as to be solubilized or hydrated in a time sufficient to allow said determining and providing a readout of the glucose concentration in the sample within 10 seconds after said detecting. |  WO '626 discloses that for measurement, "at least 20% of the analyte is electrolyzed. Preferably at least 50%, more preferably at least 80%, and even more preferably at least 90% of the analyte is electrolyzed" (page 64, lines 1-3).  In FIG. 17, 20% of the analyte of Sensor B is electrolyzed at about T=about 3 seconds, which is within the 10 seconds limitation of claim 10.

Regarding claim 9, WO '626 also teaches that, "[i]t is typically desirable that the analyte be electrolyzed quickly." (*See* page 64, lines 12-13).  In this regard, WO '626 teaches that "[t]he speed of the electrochemical reaction depends on several factors, including the potential that is applied between the electrodes ..., [and] the size of the measurement zone." (*See* page 64, lines 13-16).   In view of this teaching, one of ordinary skill in the art would understand that the response time of WO '626 could be further reduced, e.g., to "between about 0.5 to about 2 seconds" as recited in claim 9.

WO '626 also discloses that the "redox mediator and/or second electron transfer agent may first dissolve from the surface on which it was placed as a solid." (page 15, lines 1-2). |

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| | *See* WO '626 discloses that the results may be reported in a display (page 59, lines 9-18). |

The above Table shows that each element of Claims 9-10 is present in the cited art.

Therefore, a substantial new question of patentability is raised with respect to these claims.

### H. Claim 11 of the Wilsey '146 Patent

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| The method of claim 1 in which the working and counter or reference electrodes are coplanar. | FIG. 2 in WO '626 illustrates that the two electrodes 22 and 24 are coplanar (described on page 40, lines 14-15):<br><br> |

The above Table shows that each element of Claim 11 is present in the cited art.

Therefore, a substantial new question of patentability is raised with respect to this claim.

27

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

### I. Claim 12 of the Wilsey '146 Patent

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| The method of claim 1 in which the test strip includes a vent in communication with the capillary chamber to facilitate flow of the sample into the capillary chamber. | FIG. 21C in WO '626 discloses a "vent hole 574 (indicated as the shaded area in FIG. 21C)" (page 53, lines 7-9):<br><br><br><br>FIG. 21C |

The above Table shows that each element of Claim 12 is present in the cited art.

Therefore, a substantial new question of patentability is raised with respect to this claim.

### J. Claim 13 of the Wilsey '146 Patent

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| The method of claim 1 in which said determining comprises determining the glucose concentration over the range of 0-600 mg/dL. | WO '626 discloses that the sensor has "adequate sensitivity ...in the physiologically relevant range (30 µg/dL - 600 µg/dL)" (page 85, lines 26-28).<br><br>WO '626 discloses measuring glucose/buffer solutions at 0, 90, 180, 270, and 360 mg/dl. (page 95, lines 6-7 and FIG. 15, see also FIG. 28; see also page 96 line 12 through page 98 line 20). |

The above Table shows that each element of Claim 13 is present in the cited art.

Therefore, a substantial new question of patentability is raised with respect to this claim.

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

### K. Claim 14 of the Wilsey '146 Patent

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| The method of claim 1 in which said detecting comprises applying a potential difference between electrodes within the capillary chamber. | In the sensor in WO '626, a potential of "between about -350 mV and about +400 mV" versus SCE is applied (page 60, lines 5-6; page 87, lines 27-28) and FIG. 4 shows that "the sample chamber 26 is typically defined by a combination of the electrodes 22, 24, an inert base 30, and a spacer 28" (page 41, lines 12-13):  |

The above Table shows that each element of Claim 14 is present in the cited art.

Therefore, a substantial new question of patentability is raised with respect to this claim.

### L. Claim 15 of the Wilsey '146 Patent

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| The method of claim 14 in which said detecting comprises applying a potential difference between the working and counter or reference electrodes prior to and separate from said applying or controlling the voltage or current across the working and counter or reference electrodes. | The Pottgen '069 Patent discloses "[r]eferring to FIGS. 1 and 2, the sample cell according to the present invention is positioned through window 19 (FIG. 1) to initiate the testing procedure. Once inserted, a potential is applied at portion 27 (FIG. 2) of the sample cell across electrodes 24 and 26 to detect the presence of the sample." (Col. 9, line 66 through col. 10, line 1). The Pottgen '069 Patent discloses "[o]nce the |

29

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| | sample's presence is detected, the potential is removed and the incubation period initiated." (Col. 10, lines 2-3).<br><br>The Pottgen '069 Patent discloses "[a]n electrical potential is next applied at portion 27 of the sample cell to electrodes 24 and 26 and the current through the sample is measured and displayed on display 16." (Col. 10, lines 8-11). |

The above Table shows that each element of Claim 15 is present in the cited art.

Therefore, a substantial new question of patentability is raised with respect to this claim.

### M. Claim 16 of the Wilsey '146 Patent

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| The method of claim 1 in which said capillary chamber has a depth of 25-200 μm. | WO '626 discloses that "[t]ypically, the thickness of the sample chamber is no more than about 0.2 mm[, i.e., 200 μm]. Preferably, the thickness of the sample chamber is no more than about 0.1 mm[, i.e., 100 μm] and, more preferably, the thickness of the sample chamber is about 0.05 mm[, i.e., 50 μm], or less." (page 42, lines 20-22). |

The above Table shows that each element of Claim 16 is present in the cited art.

Therefore, a substantial new question of patentability is raised with respect to this claim.

### N. Claim 17 of the Wilsey '146 Patent

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| The method of claim 1 which includes automatically operating the test strip and | WO '626 provides that "[t]he analyte measurement device 52 may ... be placed in a |

30

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| timing the reaction and analysis of the blood sample to detect the blood sample in the capillary chamber, to electrooxidize the electroactive reaction product, and to determine and provide a readout of the glucose concentration within 10 seconds of said detecting. | reader, not shown," which connects electrochemical analysis equipment to the electrode tabs to determine the concentration of the analyte (page 56, lines 22-25), and illustrates the same in FIG. 6, reproduced below:<br><br><br>FIG. 6<br><br>The sensor in WO '626 may include an indicator electrode, detecting when blood has filled the chamber (page 4, lines 1-3; page 80, lines 26-28).<br><br>FIG. 17 in WO '626 illustrates a curve used to determine and provide a readout of the concentration of an analyte, such as glucose (Abstract), after detecting the blood sample:<br><br><br>FIG. 17<br><br>WO '626 discloses that for measurement, "at least 20% of the analyte is electrolyzed. |

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| | Preferably at least 50%, more preferably at least 80%, and even more preferably at least 90% of the analyte is electrolyzed" (page 64, lines 1-3). In FIG. 17, 20% of the analyte of Sensor B is electrolyzed at about T=about 3 seconds.<br><br>WO '626 further discloses that the results may be reported in a display (page 59, lines 9-18). |

The above Table shows that each element of Claim 17 is present in the cited art.

Therefore, a substantial new question of patentability is raised with respect to this claim.

### O. Claim 18 of the Wilsey '146 Patent

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| The method of claim 1 in which the test strip comprises a counter electrode, | The sensor in WO '626 comprises a counter electrode (element 22 in FIG. 4) (page 12, line 9). |
| and in which the reagent is located proximal to or in contact with the working and counter electrodes. | WO '626 discloses that the reagent may be proximal to or "disposed on…the working electrode… [or] the counter electrode" (page 14, lines 15-19). |

The above Table shows that each element of Claim 18 is present in the cited art.

Therefore, a substantial new question of patentability is raised with respect to this claim.

### P. Claim 19 of the Wilsey '146 Patent

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| The method of claim 1 in which the capillary chamber holds a volume of about 600 nL. | WO '626 discloses that the chamber 26 has a holding volume of "no more than about 1 $\mu$l, preferably no more than about 0.5 $\mu$l, more |

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| | preferably no more than about 0.25 µl, and most preferably no more than about 0.1 µl" (page 11, line 30 to page 12, line 3). |

The above Table shows that each element of Claim 19 is present in the cited art.

Therefore, a substantial new question of patentability is raised with respect to this claim.

### Q. *Claim 20 of the Wilsey '146 Patent*

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| The method of claim 19 comprising determining and providing a readout of the glucose concentration within about 5 seconds after said detecting. | FIG. 17 in WO '626 illustrates a curve used to determine and provide a readout of the concentration of an analyte, such as glucose (Abstract), after detecting the blood sample:<br><br><br><br>WO '626 discloses that for measurement, "at least 20% of the analyte is electrolyzed. Preferably at least 50%, more preferably at least 80%, and even more preferably at least 90% of the analyte is electrolyzed" (page 64, lines 1-3). In FIG. 17, 20% of the analyte of Sensor B is electrolyzed at about T=about 3 seconds, which satisfies the "within about 5 seconds" limitation of Claim 20.<br><br>WO '626 also discloses that the results may be reported in a display (page 59, lines 9-18). |

33

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

The above Table shows that each element of Claim 20 is present in the cited art.

Therefore, a substantial new question of patentability is raised with respect to this claim.

### R. Claim 21 of the Wilsey '146 Patent

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| The method of claim 1 in which the capillary chamber holds a volume of between 0.25 μl and 0.4 μl. | WO '626 discloses that the chamber 26 has a holding volume of "no more than about 1 μl, preferably no more than about 0.5 μl, more preferably no more than about 0.25 μl, and most preferably no more than about 0.1 μl." (page 11, line 30 to page 12, line 3). |

The above Table shows that each element of Claim 21 is present in the cited art.

Therefore, a substantial new question of patentability is raised with respect to this claim.

### S. Claim 22 of the Wilsey '146 Patent

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| The method of claim 21 comprising determining and providing a readout of the glucose concentration within about 5 seconds after said detecting. | FIG. 17 in WO '626 illustrates a curve used to determine and provide a readout of the concentration of an analyte, such as glucose (Abstract), after detecting the blood sample:<br><br> |

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| | WO '626 discloses that for measurement, "at least 20% of the analyte is electrolyzed. Preferably at least 50%, more preferably at least 80%, and even more preferably at least 90% of the analyte is electrolyzed" (page 64, lines 1-3). In FIG. 17, 20% of the analyte of Sensor B is electrolyzed at about T=about 3 seconds, which satisfies the "within about 5 seconds" limitation of the claim.<br><br>WO '626 also discloses that the results may be reported in a display (page 59, lines 9-18). |

The above Table shows that each element of Claim 22 is present in the cited art.

Therefore, a substantial new question of patentability is raised with respect to this claim.

### T. *Claim 23 of the Wilsey '146 Patent*

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| The method of claim 21 in which the capillary chamber holds a volume of about 400 nL. | WO '626 discloses that the chamber 26 has a holding volume of "no more than about 1 µl, preferably no more than about 0.5 µl, more preferably no more than about 0.25 µl, and most preferably no more than about 0.1 µl." (page 11, line 30 to page 12, line 3). |

The above Table shows that each element of Claim 23 is present in the cited art.

Therefore, a substantial new question of patentability is raised with respect to this claim.

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

### U. Claim 24 of the Wilsey '146 Patent

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| The method of claim 23 comprising determining and providing a readout of the glucose concentration within about 5 seconds after said detecting. | FIG. 17 in WO '626 illustrates a curve used to determine and provide a readout of the concentration of an analyte, such as glucose (Abstract), after detecting the blood sample:<br><br><br><br>WO '626 discloses that for measurement, "at least 20% of the analyte is electrolyzed. Preferably at least 50%, more preferably at least 80%, and even more preferably at least 90% of the analyte is electrolyzed." (page 64, lines 1-3). In FIG. 17, 20% of the analyte of Sensor B is electrolyzed at about T=about 3 seconds, which satisfies the "within about 5 seconds" limitation of the claim.<br><br>WO '626 further indicates that the results may be reported in a display (page 59, lines 9-18). |

The above Table shows that each element of Claim 24 is present in the cited art.

Therefore, a substantial new question of patentability is raised with respect to this claim.

36

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

### V.  Claim 25 of the Wilsey '146 Patent

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| The method of claim 21 in which the capillary chamber holds a volume of about 300 nL. | WO '626 discloses that the chamber 26 has a holding volume of "no more than about 1 μl, preferably no more than about 0.5 μl, more preferably no more than about 0.25 μl, and most preferably no more than about 0.1 μl." (page 11, line 30 to page 12, line 3). |

The above Table shows that each element of Claim 25 is present in the cited art.

Therefore, a substantial new question of patentability is raised with respect to this claim.

### W.  Claims 26-30 of the Wilsey '146 Patent

Each of Claims 26-30 relate to the time in which the readout of the glucose concentration

is provided.  The combination of these five claims into a single chart is not intended to assert that

the cited art does not raise a separate and distinct substantial new question of patentability for

each of Claims 26-30.

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| 26.  The method of claim 25 comprising determining and providing a readout of the glucose concentration within about 5 seconds after said detecting.<br><br>27.  The method of claim 1 comprising determining and providing a readout of the glucose concentration about 3.5 to about 8 seconds after said detecting.<br><br>28.  The method of claim 27 comprising determining and providing a readout of the glucose concentration within about 4 seconds of said detecting. | FIG. 17 in WO '626 illustrates a curve used to determine and provide a readout of the concentration of an analyte, such as glucose (Abstract), after detecting the blood sample:<br> |

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| 29.  The method of claim 27 comprising determining and providing a readout of the glucose concentration about 5 seconds after said detecting.<br><br>30.  The method of claim 27 comprising determining and providing a readout of the glucose concentration about 4 seconds after said detecting. | WO '626 discloses that for measurement, "at least 20% of the analyte is electrolyzed. Preferably at least 50%, more preferably at least 80%, and even more preferably at least 90% of the analyte is electrolyzed" (page 64, lines 1-3). In FIG. 17, 20% of the analyte of Sensor B is electrolyzed at about T=about 3 seconds, which satisfies the limitation s of these claims.<br><br>WO '626 further discloses that the results may be reported in a display (page 59, lines 9-18). |

The above Table shows that each element of Claims 26-30 is present in the cited art.

Therefore, a substantial new question of patentability is raised with respect to these claims.

### X.  Independent Claim 31 of the Wilsey '146 Patent

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| A method of determining the concentration of glucose in a blood sample, comprising: | WO '626 discloses that the invention can be used to determine the level of glucose in blood. (*See, e.g.,* Abstract; page 97, lines 13-14). |
| providing a disposable biosensor test strip including a capillary chamber having a depth suitable for capillary flow of blood and holding a volume of between about 0.1 µl and about 1.0 µl of the blood sample, | Example 5 in WO '626 discloses a "disposable" biosensor test strip, and FIGS. 3 and 5 in WO '626 illustrate the test strip and the capillary chamber 26 therein: |

38

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| |  WO '626 also discloses that the chamber 26 has a holding volume of "no more than about 1 μl, preferably no more than about 0.5 μl, more preferably no more than about 0.25 μl, and most preferably no more than about 0.1 μl" (page 11, line 30 to page 12, line 3). |
| a working electrode and a counter or reference electrode disposed within the capillary chamber, | FIG. 4 in WO '626 shows that "the sample chamber 26 is typically defined by a combination of the electrodes 22, 24, an inert base 30, and a spacer 28" (page 41, lines 12-13):  |
| and a reagent proximal to or in contact with at least the working electrode, | WO '626 discloses that the reagent may be proximal to or "disposed on...the working electrode" (page 14, lines 15-17). |
| the reagent including an enzyme and a mediator, | WO '626 discloses the use of "a redox mediator and....an enzyme" (page 37, lines 3-9). |
| the reagent reacting with glucose to produce | The sensor in WO '626 works as a result of the |

39

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| an electroactive reaction product; | reaction between glucose (Abstract) and the reagent (page 60, lines 22-26). |
| applying a blood sample containing glucose into the capillary chamber, | The blood sample containing glucose (Abstract) is applied to the chamber in the sensor in WO '626 (page 12, lines 7-9). |
| the capillary chamber directing capillary flow of the blood sample into contact with the reagent to cause the blood sample to at least partially solubilize or hydrate the reagent; | WO '626 discloses that "capillary action" may be used to transport the sample into the sample chamber (page 47, lines 11-17). The sample chamber in WO '626 is "configured so that...the sample is in electrolytic contact with...the working electrode" (page 12, lines 7-9), and the reagent may be proximal to or "disposed on...the working electrode" (page 14, lines 15-17). WO '626 discloses that the "redox mediator and/or second electron transfer agent may first dissolve from the surface on which it was placed as a solid." (page 15, lines 1-2). |
| detecting the blood sample in the capillary chamber; | The sensor in WO '626 may include an indicator electrode, detecting when blood has filled the chamber (page 4, lines 1-3; page 80, lines 26-28). |
| following said detecting, applying or controlling the voltage or current across the working and counter or reference electrodes; | WO '626 discloses that "[w]hen an external potential is applied, it may be applied either before or *after the sample has been placed in the sample chamber* [, i.e., after detecting that blood has filled the chamber]." (page 60, lines 10-11). |
| electrooxidizing the electroactive reaction product at the working electrode; | The working electrode in WO '626 is defined as "an electrode at which analyte is electrooxidized..." (page 4, lines 24-25). |
| and within 10 seconds after said detecting, determining and providing a readout of the glucose concentration in the blood sample, | FIG. 17 in WO '626 illustrates a curve used to determine and provide a readout of the concentration of an analyte, such as glucose |

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| | (Abstract; page 97, lines 13-14), after detecting the blood sample:<br><br><br><br>WO '626 discloses that for measurement, "at least 20% of the analyte is electrolyzed. Preferably at least 50%, more preferably at least 80%, and even more preferably at least 90% of the analyte is electrolyzed" (page 64, lines 1-3). In FIG. 17, 20% of the analyte of Sensor B is electrolyzed at about T=about 3 seconds, which is within 10 seconds as required by the claim.<br><br>WO '626 further discloses that the results may be reported in a display (page 59, lines 9-18). |
| said determining comprising correlating the electrooxidized electroactive reaction product to the concentration of glucose in the blood sample. | WO '626 discloses the use of the sensors to "determine the glucose concentration in blood samples" (Abstract; page 97, lines 13-14).<br><br>WO '626 discloses that "[o]ne aspect of the invention is a method of determining the concentration of an analyte in a sample by contacting the sample with an electrochemical sensor and determining the concentration of the analyte." (page 3, lines 20-22). |

The above Table shows that each element of Claim 31 is present in the cited art.

Therefore, a substantial new question of patentability is raised with respect to this claim.

41

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

### Y. Claim 32 of the Wilsey '146 Patent

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| The method of claim 31 in which the capillary chamber holds a volume of about 600 nL. | WO '626 discloses that the chamber 26 has a holding volume of "no more than about 1 µl, preferably no more than about 0.5 µl, more preferably no more than about 0.25 µl, and most preferably no more than about 0.1 µl" (page 11, line 30 to page 12, line 3). |

The above Table shows that each element of Claim 32 is present in the cited art.

Therefore, a substantial new question of patentability is raised with respect to this claim.

### Z. Claim 33 of the Wilsey '146 Patent

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| The method of claim 32 comprising determining and providing a readout of the glucose concentration within about 5 seconds after said detecting. | FIG. 17 in WO '626 illustrates determining and providing a readout of analyte, such as glucose (Abstract), about 3 seconds after detecting the blood sample:<br><br><br><br>WO '626 discloses that for measurement, "at least 20% of the analyte is electrolyzed. Preferably at least 50%, more preferably at least 80%, and even more preferably at least 90% of the analyte is electrolyzed" (page 64, lines 1-3). In FIG. 17, 20% of the analyte of Sensor B is electrolyzed at about T=about 3 seconds, which |

42

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| | satisfies the "within about 5 seconds" limitation of the claim. <br><br> WO '626 also discloses that the results may be reported in a display (page 59, lines 9-18). |

The above Table shows that each element of Claim 33 is present in the cited art.

Therefore, a substantial new question of patentability is raised with respect to this claim.

### AA.    Claim 34 of the Wilsey '146 Patent

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| The method of claim 31 in which the capillary chamber holds a volume of between 0.25 µl and 0.4 µl. | WO '626 discloses that the chamber 26 has a holding volume of "no more than about 1 µl, preferably no more than about 0.5 µl, more preferably no more than about 0.25 µl, and most preferably no more than about 0.1 µl" (page 11, line 30 to page 12, line 3). |

The above Table shows that each element of Claim 34 is present in the cited art.

Therefore, a substantial new question of patentability is raised with respect to this claim.

### BB.    Claim 35 of the Wilsey '146 Patent

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| The method of claim 34 comprising detennining [sic] and providing a readout of the glucose concentration within about 5 seconds after said detecting. | FIG. 17 in WO '626 illustrates a curve used to determine and provide a readout of the concentration of an analyte, such as glucose (Abstract), after detecting the blood sample: |

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| | 
WO '626 discloses that for measurement, "at least 20% of the analyte is electrolyzed. Preferably at least 50%, more preferably at least 80%, and even more preferably at least 90% of the analyte is electrolyzed" (page 64, lines 1-3). In FIG. 17, 20% of the analyte of Sensor B is electrolyzed at about T=about 3 seconds. <br><br> The results may then be reported in a display (page 59, lines 9-18). |

The above Table shows that each element of Claim 35 is present in the cited art.

Therefore, a substantial new question of patentability is raised with respect to this claim.

*CC.    Claim 36 of the Wilsey '146 Patent*

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| The method of claim 34 in which the capillary chamber holds a volume of about 400 nL. | WO '626 discloses that the chamber 26 has a holding volume of "no more than about 1 µl, preferably no more than about 0.5 µl, more preferably no more than about 0.25 µl, and most preferably no more than about 0.1 µl" (page 11, line 30 to page 12, line 3). |

44

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

The above Table shows that each element of Claim 36 is present in the cited art.

Therefore, a substantial new question of patentability is raised with respect to this claim.

### DD.    *Claim 37 of the Wilsey '146 Patent*

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| The method of claim 36 comprising determining and providing a readout of the glucose concentration within about 5 seconds after said detecting. | FIG. 17 in WO '626 illustrates a curve used to determine and provide a readout of the concentration of an analyte, such as glucose (Abstract), after detecting the blood sample:  WO '626 discloses that for measurement, "at least 20% of the analyte is electrolyzed. Preferably at least 50%, more preferably at least 80%, and even more preferably at least 90% of the analyte is electrolyzed" (page 64, lines 1-3). In FIG. 17, 20% of the analyte of Sensor B is electrolyzed at about T=about 3 seconds. The results may be reported in a display (page 59, lines 9-18). |

The above Table shows that each element of Claim 37 is present in the cited art.

Therefore, a substantial new question of patentability is raised with respect to these claims.

45

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

### EE.    Claim 38 of the Wilsey '146 Patent

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| The method of claim 34 in which the capillary chamber holds a volume of about 300 nL. | WO '626 discloses that the chamber 26 has a holding volume of "no more than about 1 µl, preferably no more than about 0.5 µl, more preferably no more than about 0.25 µl, and most preferably no more than about 0.1 µl" (page 11, line 30 to page 12, line 3). |

The above Table shows that each element of Claim 38 is present in the cited art.

Therefore, a substantial new question of patentability is raised with respect to this claim.

### FF.    Claims 39-45 of the Wilsey '146 Patent

Each of Claims 39-45 relate to the time in which the readout of the glucose concentration is provided. The combination of these seven claims into a single chart is not intended to assert that the cited art does not raise a separate and distinct substantial new question of patentability for each of Claims 39-45.

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| 39.  The method of claim 38 comprising determining and providing a readout of the glucose concentration within about 5 seconds after said detecting.<br><br>40.  The method of claim 31 comprising determining and providing a readout of the glucose concentration within about 8 seconds of said detecting.<br><br>41.  The method of claim 40 comprising determining and providing a readout of the glucose concentration about 3.5 to about 8 seconds after said detecting. | FIG. 17 in WO '626 illustrates a curve used to determine and provide a readout of the concentration of an analyte, such as glucose (Abstract), after detecting the blood sample: |

46

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| 42. The method of claim 41 comprising determining and providing a readout of the glucose concentration within about 5 seconds of said detecting.<br><br>43. The method of claim 42 comprising determining and providing a readout of the glucose concentration within about 4 seconds of said detecting.<br><br>44. The method of claim 41 comprising determining and providing a readout of the glucose concentration about 5 seconds after said detecting.<br><br>45. The method of claim 41 comprising determining and providing a readout of the glucose concentration about 4 seconds after said detecting. | <br>WO '626 discloses that for measurement, "at least 20% of the analyte is electrolyzed. Preferably at least 50%, more preferably at least 80%, and even more preferably at least 90% of the analyte is electrolyzed" (page 64, lines 1-3). In FIG. 17, 20% of the analyte of Sensor B is electrolyzed at about T= about 3 seconds. The results may then be reported in a display (page 59, lines 9-18). |

The above Table shows that each element of Claims 39-45 is present in the cited art.

Therefore, a substantial new question of patentability is raised with respect to these claims.

### GG.    Claim 46 of the Wilsey '146 Patent

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| The method of claim 31 in which said reagent is dry, | WO '626 discloses that the "redox mediator and/or second electron transfer agent may first dissolve from the surface on which it was placed as a solid." (page 15, lines 1-2). |
| and the capillary chamber directs capillary flow of the blood sample into contact with the dry reagent to cause the blood sample to at least partially solubilize or hydrate the dry reagent. | The sample chamber in WO '626 is "configured so that...the sample is in electrolytic contact with...the working electrode" (page 12, lines 7-9), and the reagent may be proximal to or "disposed on...the working electrode" (page 14, |

47

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| | lines 15-17).<br><br>WO '626 discloses that the "redox mediator and/or second electron transfer agent may first dissolve from the surface on which it was placed as a solid." (page 15, lines 1-2). |

The above Table shows that each element of Claim 46 is present in the cited art.

Therefore, a substantial new question of patentability is raised with respect to this claim.

### HH.    Claim 47 of the Wilsey '146 Patent

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| The method of claim 46 in which the dry reagent comprises a reagent that is applied wet and dried of solvent. | WO '626 discloses that "the air oxidation of the redox mediator may take place while the redox mediator is in solution, such as, for example, prior to the solution being applied onto the sensor and dried." (See page 35, lines 22-25).<br><br>The redox mediator and the enzyme in WO '626 are applied in solution, as evidenced by the fact that they "typically form a sensing layer on the working electrode" or "may be disposed on any surface in the sample chamber." (page 13, lines 16-19). (See also Example 9 in WO '626). |

The above Table shows that each element of Claim 47 is present in the cited art.

Therefore, a substantial new question of patentability is raised with respect to this claim.

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

### II. Claim 48 of the Wilsey '146 Patent

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| The method of claim 31 in which the capillary chamber has a depth of 25-200 μm. | WO '626 discloses that "[t]ypically, the thickness of the sample chamber is no more than about 0.2 mm[, i.e., 200 μm]. Preferably, the thickness of the sample chamber is no more than about 0.1 mm[, i.e., 100 μm] and, more preferably, the thickness of the sample chamber is about 0.05 mm[, i.e., 50 μm] or less." (page 42, lines 20-22). |

The above Table shows that each element of Claim 48 is present in the cited art.

Therefore, a substantial new question of patentability is raised with respect to this claim.

### JJ. Claims 49-50 of the Wilsey '146 Patent

Each of Claims 49-50 relate to the time in which the readout of the glucose concentration is provided. The combination of these two claims into a single chart is not intended to assert that the cited art does not raise a separate and distinct substantial new question of patentability for each of Claims 49-50.

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| 49. The method of claim 31 in which said providing comprises providing the reagent in a sufficiently small amount as to be solubilized or hydrated in a time sufficiently fast to allow said determining and providing a readout of the glucose concentration in the blood sample within 10 seconds of said detecting.<br><br>50. The method of claim 49 in which the mediator reacts sufficiently rapidly as to allow determining and providing a readout of the glucose concentration in the blood sample within 10 seconds of said detecting. | FIG. 17 in WO '626 illustrates a curve used to determine and provide a readout of the concentration of an analyte, such as glucose (Abstract and page 97, lines 13-14), after detecting the blood sample: |

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| |  FIG. 17 |
| | WO '626 discloses that for measurement, "at least 20% of the analyte is electrolyzed. Preferably at least 50%, more preferably at least 80%, and even more preferably at least 90% of the analyte is electrolyzed" (page 64, lines 1-3). In FIG. 17, 20% of the analyte of Sensor B is electrolyzed at about T=about 3 seconds. |
| | WO '626 discloses that the "redox mediator and/or second electron transfer agent may first dissolve from the surface on which it was placed as a solid." (page 15, lines 1-2). |
| | WO '626 discloses that "[t]he sensor configurations and methods described above are generally useful and include, for example, using low concentrations of the redox mediator and/or the second electron transfer agent (e.g., enzyme) relative to the concentration of the analyte." (page 67, line 29 to page 68, line 1). |
| | The results may be reported in a display (page 59, lines 9-18). |

The above Table shows that each element of Claims 49-50 is present in the cited art.

Therefore, a substantial new question of patentability is raised with respect to these claims.

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

### KK.    Claim 51 of the Wilsey '146 Patent

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| The method of claim 50 in which the mediator is readily-reversible. | The redox mediator in WO '626 is readily-reversible (e.g., page 60, lines 10-26) because it may "exchange electrons rapidly with each other and with the electrode so that the complex can be rapidly oxidized and/or reduced." (page 30, lines 10-11). |

The above Table shows that each element of Claim 51 is present in the cited art.

Therefore, a substantial new question of patentability is raised with respect to this claim.

### LL. Claim 52 of the Wilsey '146 Patent

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| The method of claim 31 which includes automatically operating the test strip and timing the reaction and analysis of the blood sample to detect the blood sample in the capillary chamber, to electrooxidize the electroactive reaction product, and to determine and provide a readout of the glucose concentration within 10 seconds of said detecting. | WO '626 provides that "[t]he analyte measurement device 52 may ... be placed in a reader, not shown," which connects electrochemical analysis equipment to the electrode tabs to determine the concentration of the analyte (page 56, lines 22-25), and illustrates the same in FIG. 6: <br><br>The sensor in WO '626 may include an indicator electrode, detecting when blood has filled the chamber (page 4, lines 1-3; page 80, lines 26-28). |

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| | FIG. 17 in WO '626 illustrates a curve used to determine and provide a readout of the concentration of an analyte, such as glucose (Abstract), after detecting the blood sample:<br><br><br><br>WO '626 discloses that for measurement, "at least 20% of the analyte is electrolyzed. Preferably at least 50%, more preferably at least 80%, and even more preferably at least 90% of the analyte is electrolyzed" (page 64, lines 1-3). In FIG. 17, 20% of the analyte of Sensor B is electrolyzed at about T=about 3 seconds.<br><br>The results may then be reported in a display (page 59, lines 9-18). |

The above Table shows that each element of Claim 52 is present in the cited art.

Therefore, a substantial new question of patentability is raised with respect to this claim.

### MM.    Claim 53 of the Wilsey '146 Patent

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| The method of claim 52 in which said automatically operating comprises connecting the test strip to an external testing apparatus prior to said detecting, | WO '626 provides that "[t]he analyte measurement device 52 may ... be placed in a reader, not shown," which connects electrochemical analysis equipment to the electrode tabs to determine the concentration of |

52

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
|  | the analyte (page 56, lines 22-25), and illustrates the same in FIG. 6:<br><br><br>FIG. 6 |
| the testing apparatus automatically detecting the blood sample in the capillary chamber, | The sensor in WO '626 may include an indicator electrode, detecting when blood has filled the chamber (page 4, lines 1-3; page 80, lines 26-28). |
| electrooxidizing the electroactive reaction product, | The working electrode in WO '626 is defined as "an electrode at which analyte is electrooxidized ..." (page 4, lines 24-25). |
| determining the glucose concentration, and providing a readout of the glucose concentration within 10 seconds of said detecting. | FIG. 17 in WO '626 illustrates a curve used to determine and provide a readout of the concentration of an analyte, such as glucose (Abstract), after detecting the blood sample:<br><br><br>FIG. 17<br><br>WO '626 discloses that for measurement, "at least 20% of the analyte is electrolyzed. Preferably at least 50%, more preferably at least |

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| | 80%, and even more preferably at least 90% of the analyte is electrolyzed" (page 64, lines 1-3). In FIG. 17, 20% of the analyte of Sensor B is electrolyzed at about T=about 3 seconds or less.<br><br>The results may then be reported in a display (page 59, lines 9-18). |

The above Table shows that each element of Claim 53 is present in the cited art.

Therefore, a substantial new question of patentability is raised with respect to this claim.

### NN.    *Claim 54 of the Wilsey '146 Patent*

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| The method of claim 31 in which the working electrode and the counter or reference electrode are coplanar. | FIG. 2 in WO '626 illustrates that the two electrodes 22 and 24 are coplanar (described on page 40, lines 14-15):<br><br> |

The above Table shows that each element of Claim 54 is present in the cited art.

Therefore, a substantial new question of patentability is raised with respect to this claim.

54

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

### OO.    *Claim 55 of the Wilsey '146 Patent*

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| The method of claim 31 in which said detecting comprises applying a drop-detect potential across the working and counter or reference electrodes. | The Pottgen '069 Patent discloses "[r]eferring to FIGS. 1 and 2, the sample cell according to the present invention is positioned through window 19 (FIG. 1) to initiate the testing procedure. Once inserted, a potential is applied at portion 27 (FIG. 2) of the sample cell across electrodes 24 and 26 to detect the presence of the sample." (Col. 9, line 66 through Col. 10, line 1).<br><br>The Pottgen '069 Patent discloses "[t]he meter recognizes sample application by the sudden charging current flow that occurs when the electrodes and the overlaying reagent layer are initially wetted by the sample fluid. Once the sample application is detected, the meter begins the reaction incubation step." (Col. 4, lines 23-28). |

The above Table shows that each element of Claim 55 is present in the cited art.

Therefore, a substantial new question of patentability is raised with respect to this claim.

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

*PP.Claim 56 of the Wilsey '146 Patent*

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| The method of claim 55 in which said detecting comprises applying a drop-detect potential across the working and counter or reference electrodes prior to and separate from said determining. | The Pottgen '069 Patent discloses "[r]eferring to FIGS. 1 and 2, the sample cell according to the present invention is positioned through window 19 (FIG. 1) to initiate the testing procedure. Once inserted, a potential is applied at portion 27 (FIG. 2) of the sample cell across electrodes 24 and 26 to detect the presence of the sample." (Col. 9, line 66 through col. 10, line 1). <br><br> The Pottgen '069 Patent discloses "[o]nce the sample's presence is detected, the potential is removed and the incubation period initiated." (Col. 10, lines 2-3). <br><br> The Pottgen '069 Patent discloses "[a]n electrical potential is next applied at portion 27 of the sample cell to electrodes 24 and 26 and the current through the sample is measured and displayed on display 16." (Col. 10, lines 8-11). |

The above Table shows that each element of Claim 56 is present in the cited art.

Therefore, a substantial new question of patentability is raised with respect to this claim.

*QQ.    Claim 57 of the Wilsey '146 Patent*

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| The method of claim 56 in which said detecting comprises applying a drop-detect potential across the working and counter or reference electrodes, | The Pottgen '069 Patent discloses "[r]eferring to FIGS. 1 and 2, the sample cell according to the present invention is positioned through window 19 (FIG. 1) to initiate the testing procedure. Once inserted, a potential is applied at portion 27 (FIG. 2) of the sample cell across electrodes 24 and 26 to detect the presence of the sample." (Col. 9, line 66 through col. 10, |

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| | line 1). |
| recognizing a rise in current as an indication that the blood sample has been applied into the capillary chamber, | The Pottgen '069 Patent discloses "[t]he meter recognizes sample application by the sudden charging current flow that occurs when the electrodes and the overlaying reagent layer are initially wetted by the sample fluid. Once the sample application is detected, the meter begins the reaction incubation step." (Col. 4, lines 23-28). |
| and discontinuing the drop-detect potential. | The Pottgen '069 Patent discloses "[o]nce the sample's presence is detected, the potential is removed and the incubation period initiated." (Col. 10, lines 2-3). The Pottgen '069 Patent also discloses "removing the potential during the reaction timing sequence." (Col. 14, lines 1 and 2). |

The above Table shows that each element of Claim 57 is present in the cited art.

Therefore, a substantial new question of patentability is raised with respect to this claim.

57

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

### RR.    *Claim 58 of the Wilsey '146 Patent*

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| The method of claim 56 which includes reapplying a potential across the working and counter or reference electrodes, after a delay period during which no potential is applied, to electrooxidize the electroactive reaction product at the working electrode. | The Pottgen '069 Patent discloses "[r]eferring to FIGS. 1 and 2, the sample cell according to the present invention is positioned through window 19 (FIG. 1) to initiate the testing procedure. Once inserted, a potential is applied at portion 27 (FIG. 2) of the sample cell across electrodes 24 and 26 to detect the presence of the sample." (Col. 9, line 66 through Col. 10, line 1).<br><br>The Pottgen '069 Patent discloses "[o]nce the sample's presence is detected, the potential is removed and the incubation period initiated." (Col. 10, lines 2-3).<br><br>The Pottgen '069 Patent discloses "[a]n electrical potential is next applied at portion 27 of the sample cell to electrodes 24 and 26 and the current through the sample is measured and displayed on display 16." (Col. 10, lines 8-11).<br><br>The Pottgen '069 Patent discloses "a large excess of oxidized species (i.e., wherein the oxidized form of the redox mediator (i.e., ferricyanide) is present in the reagent layer in sufficient excess to insure that the diffusion limited electrooxidation of the redox mediator at the working electrode surface is the principal limiter of current flow through the cell." (Col. 6, lines 50-55). |

The above Table shows that each element of Claim 58 is present in the cited art.

Therefore, a substantial new question of patentability is raised with respect to this claim.

58

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

### SS. Claim 59 of the Wilsey '146 Patent

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| The method of claim 31 in which said providing comprises providing a test strip including a bottom substrate, a spacing layer, and a top substrate, the spacing layer having an opening corresponding to the capillary chamber, | FIGS. 1-4 in WO '626 show that "[t]he sample chamber 26 is typically defined by a combination of the electrodes 22,24, an inert base 30, and a spacer 28… [and a] measurement zone is contained within this sample chamber and is the region of the sample chamber that contains only that portion of the sample that is interrogated during the analyte assay. In the embodiment of the invention illustrated in FIGS. 1 and 2, sample chamber 26 is the space between the two electrodes 22,24 and/or the inert base 30." (page 41, lines 12-18). The top substrate may be seen as element 38 in FIG. 3 of WO '626. |
| the spacing layer substantially defining the depth of the capillary chamber. | WO '626 discloses that "the thickness of the sample chamber and of the measurement zone correspond typically to the thickness of spacer 28." (page 42, lines 10-12). |

The above Table shows that each element of Claim 59 is present in the cited art.

Therefore, a substantial new question of patentability is raised with respect to this claim.

### TT. Claim 60 of the Wilsey '146 Patent

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| The method of claim 31 in which the reagent comprises a mediator, and in which said reacting produces a reduced form of the mediator. | The reagent in WO '626 includes a redox mediator (page 24, section entitled "Redox Mediator") which may be reduced upon reacting (page 60, lines 22-26). |

The above Table shows that each element of Claim 60 is present in the cited art.

Therefore, a substantial new question of patentability is raised with respect to this claim.

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

### UU.    Claim 61 of the Wilsey '146 Patent

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| The method of claim 31 in which said determining comprises measuring the amount of the electro oxidized or electroreduced electro active reaction product and correlating the amount to the concentration of glucose in the blood sample. | WO '626 discloses the use of sensors to "determine the glucose concentration oin blood samples." (Abstract; page 97, lines 13-14).<br><br>WO '626 discloses that "[o]ne aspect of the invention is a method of determining the concentration of an analyte in a sample by contacting the sample with an electrochemical sensor and determining the concentration of the analyte." (page 3, lines 20-22). |

The above Table shows that each element of Claim 61 is present in the cited art.

Therefore, a substantial new question of patentability is raised with respect to this claim.

### VV.    Claim 62 of the Wilsey '146 Patent

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| The method of claim 31 in which the test strip comprises a counter electrode, | The sensor in WO '626 includes a counter electrode (element 22 in FIG. 4) (page 12, line 9). |
| and in which the reagent is located proximal to or in contact with the working and counter electrodes. | WO '626 discloses that the reagent may be proximal to or "disposed on...the working electrode... [or] the counter electrode" (page 14, lines 15-19). |

The above Table shows that each element of Claim 62 is present in the cited art.

Therefore, a substantial new question of patentability is raised with respect to this claim.

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

## VII.    SUBSTANTIAL NEW QUESTIONS OF PATENTABILITY CREATED BY THE CITED ART

### A.    Claims 1-14, 16-54, and 59-62 of the Wilsey '146 Patent are Anticipated by WO '626 Under 35 U.S.C. § 102(b)

As previously discussed, the Examiner did not fully appreciate the teachings of WO '626, and was in fact misinformed by the Applicant regarding the applicability of WO '626 to the subject matter claimed in the Wilsey '146 Patent.

### i.    Independent Claim 1

With regard to Claim 1, Requestor respectfully asserts that WO '626 discloses each element recited in Claim 1 of the Wilsey '146 Patent. The following paragraphs provide examples of the relevant teachings of WO '626 for each element of Claim 1 of the Wilsey '146 Patent.

For example, embodiments of WO '626 are directed to a "method of determining the concentration of glucose in a blood sample." (*See e.g.*, Abstract and page 97, lines 13-14).

The method disclosed in WO '626 further includes "providing a disposable biosensor test strip including a capillary chamber having a depth suitable for capillary flow of blood and holding a volume of between about 0.1 µl and about 1.0 µl of the blood sample," as recited in Claim 1 of the Wilsey '146 Patent. For example, WO '626 teaches that the biosensor includes a sample chamber for holding the sample in electrical contact with the electrode. (*See* page 2, lines 24-29). WO '626 also discloses using capillary flow to direct the blood sample into the chamber. (*See* page 47, lines 11-17). WO '626 also teaches that the "sample chamber ... is sized to provide for analysis of a sample volume that is typically no more than about 1 µL, preferably no more than about 0.5 µL, more preferably no more than about 0.25 µL, and most preferably no

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

more than about 0.1 µL." (*See* page 2, line 30 through page 3, line 4). FIGS. 3 and 5 of WO

'626, as provided in the claim chart above, also illustrate the test strip and the sample chamber

26 therein. For at least this reason, Requestor respectfully asserts that this element is disclosed in

WO '626.

WO '626 also discloses "a working electrode and a counter or reference electrode

disposed within the capillary chamber," as recited in Claim 1 of the Wilsey '146 Patent. For

example, referring to FIG. 4 in particular, WO '626 discloses that "a small volume, in vitro

electrochemical sensor 20 of the invention generally includes a working electrode 22, a counter

(or counter/reference) electrode 24, and a sample chamber 26." WO '626 also teaches that the

"sample chamber 26 is configured so that when a sample is provided in the chamber the sample

is in electrolytic contact with both the working electrode 22 and the counter electrode 24." (*See*

page 12, lines 4-9). For at least this reason, Requestor respectfully asserts that this element is

disclosed in WO '626.

The WO '626 Patent also discloses "a reagent proximal to or in contact with at least the

working electrode," as recited in Claim 1 of the Wilsey '146 Patent. More specifically, WO '626

teaches that in one exemplary embodiment, "sensing chemistry materials are provided in the

sample chamber 26 for the analysis of the analyte." In this exemplary embodiment, this "sensing

chemistry preferably includes a redox mediator and a second electron transfer mediator." (*See*

page 13, lines 9-12). WO '626 additionally teaches that "the redox mediator and second electron

transfer agent are …disposed on the same surface of the sample chamber, such as, for example,

on the working electrode." (*See* page 14, lines 15-17). For at least this reason, Requestor

respectfully asserts that this element is disclosed in WO '626.

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

The reagent described in WO '626 also "include[s] an enzyme and a mediator," as recited in Claim 1 of the Wilsey '146 Patent. As described above, the sensing chemistry of WO '626 comprises a redox mediator and a second electron transfer agent. WO '626 further discloses that "[o]ne example of a suitable second electron transfer agent is an enzyme." (*See* page 37, lines 7-9). For at least this reason, Requestor respectfully asserts that this element is disclosed in WO '626.

Additionally, the method disclosed in WO '626 further comprises "the reagent reacting with glucose to produce an electroactive reaction product," as recited in Claim 1 of the Wilsey '146 Patent. For example, WO '626 teaches that "[t]hose skilled in the art will recognize that there are many different reactions that will provide the same result; namely the electrolysis of an analyte through a reaction pathway incorporating a redox mediator." (*See* page 60, lines 22-26). "Electrolysis" is further defined in WO '626 as "the electrooxidation or electroreduction of a compound either directly at an electrode or via one or more electron transfer agents (e. g., redox mediators and/or enzymes)." (*See* page 10, lines 16-18). Lastly, with respect to this element of Claim 1, WO '626 teaches that the analyte, or compound, can be glucose. (*See, e.g.*, Abstract and Claim 11). For at least this reason, Requestor respectfully asserts that this element is disclosed in WO '626.

The method disclosed in WO '626 also comprises "applying a blood sample containing glucose into the capillary chamber," as recited in Claim 1 of the Wilsey '146 Patent. As described above, the analyte sample of WO '626 can be glucose. WO '626 further teaches that the "sample chamber 26 is configured so that when a sample is provided in the chamber the sample is in electrolytic contact with both the working electrode 22 and the counter electrode

63

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

24." (*See* page 12, lines 7-9). For at least this reason, Requestor respectfully asserts that this

element is disclosed in WO '626.

Next, WO '626 discloses that "the capillary chamber direct[s] capillary flow of the blood

sample into contact with the reagent to cause the blood sample to at least partially solubilize or

hydrate the reagent," as recited in Claim 1 of the Wilsey '146 Patent. For example, WO '626

teaches that the "sample chamber 26 is configured so that when a sample is provided in the

chamber the sample is in electrolytic contact with both the working electrode 22 and the counter

electrode 24." (*See* page 12, lines 7-9). In addition, WO '626 teaches that the "redox mediator

and/or second electron transfer agent may first dissolve from the surface on which it was placed

as a solid" and that "the redox mediator and second electron transfer agent are …disposed on the

same surface of the sample chamber, such as, for example, on the working electrode." ( *See* page

15, lines 1-2 and page 14, lines 15-17, respectively). Thus, a sample of blood entering the

sample chamber 26 of WO '626 would necessarily contact the redox mediator and/or second

electron transfer agent, which are disposed on the working electrode 22 located within the

sample chamber 26. For at least this reason, Requestor respectfully asserts that this element is

disclosed in WO '626.

The Requestor also respectfully asserts that the method of WO '626 further comprises

"detecting the blood sample in the capillary chamber," as recited in Claim 1 of the Wilsey '146

Patent. In the Wilsey '146 Patent, blood is detected using a "drop detect" system, which senses

current flow between the working and counter electrodes when blood covers the nearest working

and counter electrodes. (*See* col. 23, line 60 to col. 24, line 50). Similarly, in one exemplary

embodiment of WO '626, the sensor used for detection and quantification of the analyte includes

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

"a fill indicator, such as an indicator electrode or a second electrode pair, that can be used to

determine when the measurement zone or sample chamber has been filled." (*See* page 4, lines 1-

3). An "indicator electrode," in one exemplary embodiment of WO '626, includes one or more

electrodes that detect partial or complete filling of a sample chamber and/or measurement zone.

(*See* page 10, lines 26 and 27). For at least this reason, Requestor respectfully asserts that this

element is disclosed in WO '626.

The method of WO '626 also discloses, that "following said detecting, applying or

controlling the voltage or current across the working and counter or reference electrodes," as

recited in Claim 1 of the Wilsey '146 Patent. For example, WO '626 discloses that "[w]hen an

external potential is applied, it may be applied either before or ***after the sample has been placed***

***in the sample chamber*** [, i.e., after the fill indicator from the preceding paragraph detects that

the sample chamber has been filled]." (*See* page 60, lines 10-11). In this regard, "[w]hen the

potential is applied and the sample is in the measurement zone, an electrical current will flow

between the working electrode and the counter electrode." (*See* page 60, lines 17-19). For at

least this reason, Requestor respectfully asserts that this element is disclosed in WO '626.

The method of WO '626 also discloses "electrooxidizing or electroreducing the

electroactive reaction product at the working electrode," as recited in Claim 1 of the Wilsey '146

Patent. In this regard the Requestor respectfully notes that WO '626 defines the "working

electrode" as "an electrode at which [an] analyte is electrooxidized or electroreduced with or

without the agency of a redox mediator." (*See* page 4, lines 24-25). For at least this reason,

Requestor respectfully asserts that this element is disclosed in WO '626.

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

The Requestor also respectfully asserts that WO '626 further discloses that "within 10 seconds after said detecting, determining and providing a readout of the glucose concentration in the blood sample."

In this regard, the Requestor respectfully notes that FIG. 17 of WO '626 illustrates the amount of time required to determine the concentration of the analyte. (*See* page 96, lines 7-10). This analyte can be glucose, as described above. (*See* WO '626 Abstract and Claim 11).

FIG. 17



With regard to measuring the concentration of the analyte, WO '626 teaches various methods of analysis, such as, for example, coulometry, amperometry and/or potentiometry. Additionally WO '626 teaches that, "[i]t is typically desirable that the analyte be electrolyzed quickly." (*See* page 64, lines 12-13). In this regard, WO '626 teaches that "[t]he speed of the electrochemical reaction depends on several factors, including the potential that is applied

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

between the electrodes ..., [and] the size of the measurement zone." (*See* page 64, lines 13-16). As noted above, WO '626 "can be used to determine the concentration of a biomolecule, such as glucose or lactate, in a biological fluid such as blood or serum using techniques such as coulometry, amperometry and potentiometry." (*See* Abstract). With regard to coulometry, "the completion of the electrochemical reaction is typically signaled when the current reaches a steady state value." (*See* page 64, lines 7-8). An example of the steady state value is illustrated in FIG. 17. The steady state typically indicates that all, or nearly all of the analyte has been electrolyzed. This means that, for example, approximately 90%-99% of the analyte has been electrolyzed.

However, WO '626 teaches that for measurement, "at least 20% of the analyte is electrolyzed. Preferably at least 50%, more preferably at least 80%, and even more preferably at least 90% of the analyte is electrolyzed." (*See* page 64, lines 1-3). In other words, the analyte concentration can be determined as soon as 20% of the analyte is electrolyzed, or at T=about 3 seconds, as represented in FIG. 17, above. In cases such as this where the analyte is only partially electrolyzed, the current is measured during the partial reaction and then extrapolated using known mathematical teachings. (*See* page 64, lines 26-30). As such, Requestor respectfully asserts that the response time of the sensor can be reduced to the duration desired by the user, for example 10 seconds or less.

Furthermore, Requestor respectfully asserts that WO '626 discloses several conditions applicable to the response time of the sensor that may be relied on to further reduce the response time shown in FIG. 17.

(Note: pages 67 and 68 were inadvertently missing from the reexamination request for the 146 patent filed on December 14, 2007. These pages have subsequently been provided to the PTO.)

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

In particular, WO '626 discloses that "[i]ncreasing the amount of diffusible redox mediator in the sample decreases the response time of the sensor." (*See* page 96, lines 8-10). Similarly, WO '626 discloses that a heating element can be provided "to heat the sample chamber to increase the rate of oxidation or reduction of the analyte." (*See* page 4, lines 5-7). WO '626 also discloses decreasing the thickness of the sample chamber "to promote rapid electrolysis of the analyte, as more of the sample will be in contact with the electrode surface for a given sample volume." (*See* page 42, lines 14-16).

The Examiner relied upon the same principles to reject the application that matured into the Wilsey '146 Patent (U.S. Patent Application No. 10/264,891, hereinafter "the '891 Application") over other prior art, which the Applicant antedated through the use of a Declaration Under 37 C.F.R. § 1.131. Specifically, the Examiner determined that the potential applied between the electrodes, as well as the size of the measurement zone, can reduce the response time of the sensor. (*See* Office Action of June 22, 2006, page 32). The Examiner also determined that the rate of oxidation of the redox mediator, as well as the amount of enzyme included in the reagent, can reduce the time period for completion of the reaction. (*See* Office Action of June 22, 2006, page 33). Requestor respectfully notes that, although disagreeing with the Examiner's position, the Applicant in the Wilsey '891 Application were not able to overcome the Examiner's position, and could only circumvent the rejection by swearing behind the cited references. (*See* Amendment of December 22, 2006).

For at least these additional reasons, Requestor respectfully asserts that WO '626 discloses a sensor response time which is less than 10 seconds.

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

The method of WO '626 also discloses that "said determining compris[es] correlating the electrooxidized or electroreduced electroactive reaction product to the concentration of glucose in the blood sample," as recited in Claim 1 of the Wilsey '146 Patent. In this regard, and in addition to the disclosure of the WO '626 Patent described above, WO '626 discloses that "[o]ne aspect of the invention is a method of determining the concentration of an analyte in a sample by contacting the sample with an electrochemical sensor and determining the concentration of the analyte." (*See* page 3, lines 20-22). For at least this reason, Requestor respectfully asserts that this element is disclosed in WO '626.

In view of the above, Requestor respectfully asserts that Claim 1 of the Wilsey '146 Patent is anticipated in view of the disclosure of WO '626. As such, the disclosure of WO '626 creates a substantial new question of patentability with respect to independent Claim 1 of the Wilsey '146 Patent.

### ii. Claim 2

Requestor respectfully asserts that WO '626 discloses a "capillary chamber [which] holds a volume of between about 0.4 µl and about 1.0 µl." (*See* Abstract). For example, WO '626 discloses that the "sample chamber ... is sized to provide for analysis of a sample volume that is typically no more than about 1 µL, preferably no more than about 0.5 µL, more preferably no more than about 0.25 µL, and most preferably no more than about 0.1 µL" (page 2, line 30 through page 3, line 4). Accordingly, WO '626 discloses the elements of Claim 2.

Therefore, a substantial new question of patentability is raised with respect to Claim 2.

69

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

### iii. Claim 3

Requestor respectfully asserts that WO '626 discloses "determining and providing a readout of the glucose concentration within about 8 seconds after said detecting." In particular, as disclosed with respect to Claim 1, WO '626 teaches that for measurement, at least 20% of the analyte is electrolyzed" (page 64, lines 1-3). In other words, the concentration of analyte of a given sample can be determined when 20% of the analyte has been electrolyzed, which pursuant to FIG. 17 may occur in about 3 seconds (*i.e.,* the response time is equal to about 3 seconds). At this point, current can be extrapolated using known mathematical teachings. (*See* page 64, lines 26-30). Accordingly, WO '626 discloses measuring the concentration of glucose within 8 seconds or less after detection.

Furthermore, WO '626 also discloses additionally reducing the response time of the WO '626 sensor by adjusting the parameters described with respect to Claim 1 above. Briefly, these parameters can include: increasing the amount of redox mediator, heating the sample chamber and decreasing the thickness of the sample chamber. Accordingly, WO '626 discloses all of the elements of Claim 3.

In light of the above, a substantial new question of patentability is raised with respect to Claim 3.

### iv. Claim 4

FIG. 17 in WO '626 illustrates a curve used to determine and provide a readout of the concentration of an analyte, such as glucose (*See* Abstract). As previously discussed, WO '626 discloses that for measurement, "at least 20% of the analyte is electrolyzed." (*See* page 64, lines 1-3). Accordingly, the concentration of the analyte can be measured when only 20% of the

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

analyte is electrolyzed. In FIG. 17, 20% of the analyte of Sensor B is electrolyzed at about

T=about 3 seconds. Accordingly, WO '626 discloses "determining and providing a readout of

the glucose concentration within about 5 seconds after said detecting," as recited in Claim 4.

As described above, WO '626 teaches various methods of analysis, such as, for example,

coulometry, amperometry and/or potentiometry. Additionally WO '626 teaches that, "[i]t is

typically desirable that the analyte be electrolyzed quickly." (*See* page 64, lines 12-13). In this

regard, WO '626 teaches that "[t]he speed of the electrochemical reaction depends on several

factors, including the potential that is applied between the electrodes ..., [and] the size of the

measurement zone." (*See* page 64, lines 13-16). As a result, the response time illustrated in FIG.

17 could be further reduced, for example, by manipulating the potential applied between

electrodes and the size of the measurement zone, to determine and provide a readout of the

concentration of an analyte faster than, for example, 5 seconds, as recited in Claim 4.

Therefore, Requestor respectfully submits that a substantial new question of patentability

is raised with respect to Claim 4 of the Wilsey '146 Patent.

### v. Claim 5

With regard to dependent Claim 5, Requestor respectfully asserts that the method of WO

'626 discloses "determining and providing a readout of the concentration comprises determining

the concentration from about 0.5 to about 2 seconds after said applying or controlling."

FIG. 17 in WO '626 illustrates a curve used to determine and provide a readout of the

concentration of an analyte, such as glucose. (*See* Abstract). As previously discussed, WO '626

discloses that for measurement, "at least 20% of the analyte is electrolyzed." (*See* page 64, lines

1-3). Accordingly, the concentration of the analyte can be measured when only 20% of the

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

analyte is electrolyzed.  In FIG. 17, 20% of the analyte of Sensor B is electrolyzed at about

T=about 3 seconds.

As described above, WO '626 teaches various methods of analysis, such as, for example,

coulometry, amperometry and/or potentiometry.  Additionally WO '626 teaches that, "[i]t is

typically desirable that the analyte be electrolyzed quickly." (*See* page 64, lines 12-13).  In this

regard, WO '626 teaches that "[t]he speed of the electrochemical reaction depends on several

factors, including the potential that is applied between the electrodes ..., [and] the size of the

measurement zone." (*See* page 64, lines 13-16).

As a result, the response time illustrated in FIG. 17 may be further reduced, for example,

by manipulating the potential applied between electrodes and the size of the measurement zone,

to for example, from about 0.5 to about 2 seconds, as recited in Claim 5.

Therefore, Requestor respectfully submits that a substantial new question of patentability

is raised with respect to Claim 5 of the Wilsey '146 Patent.

### vi.  Claim 6

With regard to dependent Claim 6, Requestor respectfully asserts that WO '626 discloses,

"[t]he method of claim 1 in which said applying or controlling comprises applying a DC voltage

of 100-500 mV between the working and counter or reference electrodes."  In this regard, WO

'626 discloses an example of an analyte sensor wherein an electric potential between +100 mV

or +200 mV is applied between the electrodes.  (*See* page 87, lines 27-28; see also page 60, lines

5-6).  For at least this reason, Requestor respectfully asserts that this element is disclosed by WO

'626.

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

Furthermore, with respect to Claim 6, Requestor respectfully asserts that WO '626 discloses "said determining the concentration comprising measuring the amount of the electrooxidized or electroreduced electroactive reaction product and correlating the measurement to the amount of glucose in the sample." In this regard, and in addition to the disclosure of WO '626 described above, WO '626 teaches that "[o]ne aspect of the invention is a method of determining the concentration of an analyte in a sample by contacting the sample with an electrochemical sensor and determining the concentration of the analyte." (*See* page 3, lines 20-22).

WO '626 also discloses that the sensor may be used to "determine the glucose concentration in blood samples." (*See* Abstract; page 97, lines 13-14).

In light of the above, Requestor respectfully asserts that a substantial new question of patentability is raised with respect to Claim 6.

### vii. Claim 7

In the sensor disclosed in WO '626, a potential of between about -350 mV and about +400 mV versus SCE is applied across the sensor electrodes (page 60, lines 5-6; page 87, lines 27-28), which anticipates the Wilsey '146 Patent's claimed DC voltage of 300 mV.

In addition, WO '626 indicates that "it is typically desirable that the analyte be electrolyzed quickly," teaching that the potential applied between electrodes may be increased to quickly electrolyze the analyte (page 64, lines 12-19). Accordingly, WO '626 discloses applying a potential, such as a DC voltage of 300 mV, across the sensor electrodes in the sensor so as to lessen the electrolysis of the analyte.

73

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

Requestor therefore respectfully submits that WO '626 raises a substantial new issue of patentability with respect to Claim 7 of the Wilsey '146 Patent.

### viii.    Claim 8

With respect to Claim 8, Requestor respectfully asserts that WO '626 discloses that "measuring the amount of the electrooxidized or electroreduced electroactive reaction product comprises measuring the current and correlating the measured current to the concentration of the glucose." In this regard, and in addition to the disclosure of WO '626 described above, WO '626 teaches that "[o]ne aspect of the invention is a method of determining the concentration of an analyte in a sample by contacting the sample with an electrochemical sensor and determining the concentration of the analyte." (*See* page 3, lines 20-22).

WO '626 additionally discloses that the sensor may be used to measure "determine the glucose concentration in blood samples." (*See* Abstract; page 97, lines 13-14). Accordingly, WO '626 discloses the elements of Claim 8.

Therefore, Requestor respectfully submits that a substantial new question of patentability is raised with respect to Claim 8 of the Wilsey '146 Patent.

### ix.  Claim 9

With regard to dependent Claim 9, Requestor respectfully asserts that the method of WO '626 discloses "measuring the amount of the electrooxidized or electroreduced electroactive reaction product comprises measuring the amount from about 0.5 to about 2 seconds after said applying or controlling."

FIG. 17 in WO '626 illustrates a curve used to determine and provide a readout of the concentration of an analyte, such as glucose (*See* Abstract). As previously discussed, WO '626

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

discloses that for measurement, "at least 20% of the analyte is electrolyzed." (*See* page 64, lines 1-3). Accordingly, the concentration of the analyte can be measured when only 20% of the analyte is electrolyzed. In FIG. 17, 20% of the analyte of Sensor B is electrolyzed at about T=about 3 seconds.

As described above, WO '626 teaches various methods of analysis, such as, for example, coulometry, amperometry and/or potentiometry. Additionally WO '626 teaches that, "[i]t is typically desirable that the analyte be electrolyzed quickly." (*See* page 64, lines 12-13). In this regard, WO '626 teaches that "[t]he speed of the electrochemical reaction depends on several factors, including the potential that is applied between the electrodes ..., [and] the size of the measurement zone." (*See* page 64, lines 13-16).

As a result, the response time illustrated in FIG. 17 could be further reduced, for example, by manipulating the potential applied between electrodes and the size of the measurement zone, to for example, from about 0.5 to about 2 seconds, as recited in Claim 9.

Therefore, Requestor respectfully submits that a substantial new question of patentability is raised with respect to Claim 9 of the Wilsey '146 Patent.

### x. Claim 10

As previously discussed, FIG. 17 in WO '626 illustrates determining and providing a readout of analyte, such as glucose (*See* Abstract and page 97, lines 13-14), within 10 seconds after detecting the blood sample. Accordingly, WO '626 discloses the "determining and providing a readout of the glucose concentration in the sample within 10 seconds after said detecting" as recited in Claim 10. The recitation in Claim 10 related to "providing the reagent in a sufficiently small amount as to be solubilized or hydrated in a time sufficient to allow said

75

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

determining" is inherently present in WO '626 because the redox mediator therein solubilizes in

a time sufficient to provide the above readout at least within about 10 seconds after detecting the

blood sample (the "redox mediator and/or second electron transfer agent may first dissolve from

the surface on which it was placed as a solid"). (*See* page 15, lines 1-2).

Therefore, Requestor respectfully submits that a substantial new question of patentability

is raised with respect to Claim 10 of the Wilsey '146 Patent.

### xi. Claim 11

FIG. 2 in WO '626, provided below (described on page 40, lines 14-15), illustrates that

the two electrodes 22 and 24 are coplanar:



FIG. 2

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

Therefore, Requestor respectfully submits that a substantial new question of patentability

is raised with respect to Claim 11 of the Wilsey '146 Patent.

### xii. Claim 12

FIG. 21C in WO '626 discloses a "vent hole 574 (indicated as the shaded area in FIG.

21C)" in the sensor disclosed therein (page 53, lines 7-9):



FIG. 21C

Requestor respectfully notes that the Wilsey '146 Patent describes that the "vent in

communication with the capillary chamber to facilitate flow of the sample into the capillary

chamber" recited in Claim 12 "facilitate[s] flow of a sample substance into the capillary chamber

by equalizing pressure between the interior and exterior of the chamber." (*See* col. 12, lines 50-

53 of the Wilsey '146 Patent). The vent hole disclosed in WO '626 equalizes the pressure

between the interior and exterior of the sample chamber in WO '626, and therefore corresponds

to the vent recited in Claim 12 of the Wilsey '146 Patent.

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

Therefore, Requestor respectfully submits that a substantial new question of patentability

is raised with respect to Claim 12 of the Wilsey '146 Patent.

### xiii.    Claim 13

WO '626 discloses that the sensor therein possesses "adequate sensitivity ... in the

physiologically relevant range (30 µg/dL - 600 µg/dL)." (*See* page 85, lines 26-28).

Accordingly, WO '626 discloses a sensor that determines the glucose concentration within the

range of 0-600 mg/dL, as recited in Claim 13 of the Wilsey '146 Patent.

In addition, Requestor respectfully notes that WO '626 discloses measuring

glucose/buffer solutions at 0, 90, 180, 270, and 360 mg/dl. (*See* page 95, lines 6-7 and FIG. 15;

see also FIG. 28 and page 96 line 12 through page 98 line 20).

Therefore, Requestor respectfully submits that a substantial new question of patentability

is raised with respect to Claim 13 of the Wilsey '146 Patent.

### xiv.    Claim 14

In the sensor in WO '626, a potential of "between about -350 mV and about +400 mV"

versus SCE is applied across the electrodes (page 60, lines 5-6; page 87, lines 27-28) and FIG. 4

in WO '626, shown below, illustrates that "the sample chamber 26 is typically defined by a

combination of the electrodes 22, 24, an inert base 30, and a spacer 28" (page 41, lines 12-13):

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146



Accordingly, WO '626 discloses each element of Claim 14 of the Wilsey '146 Patent.

Therefore, Requestor respectfully submits that a substantial new question of patentability is raised with respect to Claim 14 of the Wilsey '146 Patent.

### xv. Claim 16

WO '626 discloses that "[t]ypically, the thickness of the sample chamber is no more than about 0.2 mm[, i.e., 200 μm].  Preferably, the thickness of the sample chamber is no more than about 0.1 mm[, i.e., 100 μm] and, more preferably, the thickness of the sample chamber is about 0.05 mm[, i.e., 50 μm], or less." (page 42, lines 20-22).  Accordingly, WO '626 discloses the capillary chamber having a depth of 25-200 μm, as recited in Claim 16.  Based on the disclosure of WO '626, "thickness" and "depth are interchangeable terms.

Therefore, Requestor respectfully submits that a substantial new question of patentability is raised with respect to Claim 16 of the Wilsey '146 Patent.

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

### xvi.    Claim 17

WO '626 provides that "[t]he analyte measurement device 52 may ... be placed in a reader, not shown," which connects electrochemical analysis equipment to the electrode tabs to determine the concentration of the analyte (page 56, lines 22-25), and illustrates the same in FIG. 6, which is reproduced below:



FIG. 6

Requestor respectfully submits that the reader referred to in the passage above is an automatic reader which will automatically operate the sensor in WO '626.

The sensor in WO '626 also includes an indicator electrode, detecting when blood has filled the chamber (page 4, lines 1-3; page 80, lines 26-28), and as discussed above, FIG. 17 in WO '626 illustrates determining and providing a readout of the analyte, such as glucose (*See* Abstract), at least faster than 10 seconds after detecting the blood sample. Accordingly, Requestor respectfully submits that WO '626 discloses each element of Claim 17 of the Wilsey '146 Patent.

Therefore, Requestor respectfully submits that a substantial new question of patentability is raised with respect to Claim 17 of the Wilsey '146 Patent.

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

### xvii.    Claim 18

The sensor in WO '626 comprises a counter electrode (element 22 in FIG. 4) (page 12, line 9), as recited in Claim 18 of the Wilsey '146 Patent.  In addition, WO '626 discloses that the reagent may be proximal to or "disposed on…the working electrode… [or] the counter electrode" (page 14, lines 15-19).  Accordingly, Requestor respectfully submits that WO '626 discloses the elements of Claim 18 of the Wilsey '146 Patent.

Therefore, Requestor respectfully submits that a substantial new question of patentability is raised with respect to Claim 18 of the Wilsey '146 Patent.

### xviii.    Claim 19

WO '626 discloses that the chamber 26 has a holding volume of "no more than about 1 µl, preferably no more than about 0.5 µl, more preferably no more than about 0.25 µl, and most preferably no more than about 0.1 µl" (page 11, line 30 to page 12, line 3).  Accordingly, WO '626 discloses the capillary chamber recited in Claim 19, which holds a volume of 600 nL (0.6 µl).

Therefore, Requestor respectfully submits that a substantial new question of patentability is raised with respect to Claim 19 of the Wilsey '146 Patent.

### xix.    Claim 20

FIG. 17 in WO '626 illustrates a curve used to determine and provide a readout of the concentration of an analyte, such as glucose. (*See* Abstract and page 97, lines 13-14).  As previously discussed, WO '626 discloses that for measurement, "at least 20% of the analyte is electrolyzed." (*See* page 64, lines 1-3).  Accordingly, the concentration of the analyte can be

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

measured when only 20% of the analyte is electrolyzed. As explained in WO '626 (*See* paragraph bridging pages 64 and 65):

> The current is measured during the partial reaction [*i.e.,* when 20% of the analyte is electrolyzed,] and then extrapolated using mathematical techniques known to those skilled in the art to determine the current curve for the complete or nearly complete electrolysis of the analyte. Integration of this curve yields the amount of charge that would be passed if the analyte were completely or nearly completely electrolyzed and, using equation (3a) or (3b), the concentration of the analyte is calculated.

Accordingly, WO '626 discloses that it is possible to reduce the response time of the sensor by determining analyte concentration when as little as 20% of the analyte has been electrolyzed. In FIG. 17, 20% of the analyte of Sensor B is electrolyzed at about T=about 3 seconds. Accordingly, WO '626 discloses "determining and providing a readout of the glucose concentration within about 5 seconds after said detecting," as recited in Claim 20.

Furthermore, as described above, WO '626 teaches various methods of analysis, such as, for example, coulometry, amperometry and/or potentiometry. Additionally WO '626 teaches that, "[i]t is typically desirable that the analyte be electrolyzed quickly." (*See* page 64, lines 12-13). In this regard, WO '626 teaches that "[t]he speed of the electrochemical reaction depends on several factors, including the potential that is applied between the electrodes ..., [and] the size of the measurement zone." (*See* page 64, lines 13-16). As a result, the response time illustrated in FIG. 17 could be further reduced, for example, by manipulating the potential applied between electrodes and the size of the measurement zone, to determine and provide a readout of the concentration of an analyte faster than, for example, 5 seconds, as recited in Claim 20.

Therefore, Requestor respectfully submits that a substantial new question of patentability is raised with respect to Claim 20 of the Wilsey '146 Patent.

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

### xx. Claim 21

WO '626 discloses that the chamber 26 has a holding volume of "no more than about 1 $\mu$l, preferably no more than about 0.5 $\mu$l, more preferably no more than about 0.25 $\mu$l, and most preferably no more than about 0.1 $\mu$l" (*See* page 11, line 30 to page 12, line 3). Accordingly, WO '626 discloses the capillary chamber that "holds a volume of between 0.25 $\mu$l and 0.4 $\mu$l," recited in Claim 21.

Therefore, Requestor respectfully submits that a substantial new question of patentability is raised with respect to Claim 21 of the Wilsey '146 Patent.

### xxi.    Claim 22

FIG. 17 in WO '626 illustrates a curve used to determine and provide a readout of the concentration of an analyte, such as glucose. (*See* Abstract and page 97, lines 13-14). As previously discussed, WO '626 discloses that for measurement, "at least 20% of the analyte is electrolyzed." (*See* page 64, lines 1-3). Accordingly, the concentration of the analyte can be measured when only 20% of the analyte is electrolyzed. As explained in WO '626 (*See* paragraph bridging pages 64 and 65):

> The current is measured during the partial reaction [*i.e.,* when 20% of the analyte is electrolyzed,] and then extrapolated using mathematical techniques known to those skilled in the art to determine the current curve for the complete or nearly complete electrolysis of the analyte. Integration of this curve yields the amount of charge that would be passed if the analyte were completely or nearly completely electrolyzed and, using equation (3a) or (3b), the concentration of the analyte is calculated.

Accordingly, WO '626 discloses that it is possible to reduce the response time of the sensor by determining analyte concentration when as little as 20% of the analyte has been electrolyzed. In FIG. 17, 20% of the analyte of Sensor B is electrolyzed at about T=about 3

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

seconds. Accordingly, WO '626 discloses "determining and providing a readout of the glucose concentration within about 5 seconds after said detecting," as recited in Claim 22.

Moreover, as described above, WO '626 teaches various methods of analysis, such as, for example, coulometry, amperometry and/or potentiometry. Additionally WO '626 teaches that, "[i]t is typically desirable that the analyte be electrolyzed quickly." (*See* page 64, lines 12-13). In this regard, WO '626 teaches that "[t]he speed of the electrochemical reaction depends on several factors, including the potential that is applied between the electrodes ..., [and] the size of the measurement zone." (*See* page 64, lines 13-16). As a result, the response time illustrated in FIG. 17 could be further reduced, for example, by manipulating the potential applied between electrodes and the size of the measurement zone, to determine and provide a readout of the concentration of an analyte faster than, for example, 5 seconds, as recited in Claim 22.

Therefore, Requestor respectfully submits that a substantial new question of patentability is raised with respect to Claim 22 of the Wilsey '146 Patent.

### xxii.    Claim 23

WO '626 discloses that the chamber 26 has a holding volume of "no more than about 1 µl, preferably no more than about 0.5 µl, more preferably no more than about 0.25 µl, and most preferably no more than about 0.1 µl" (page 11, line 30 to page 12, line 3). Accordingly, WO '626 discloses the capillary chamber that "holds a volume of about 400 nL," (0.4 µl) recited in Claim 23.

Therefore, Requestor respectfully submits that a substantial new question of patentability is raised with respect to Claim 23 of the Wilsey '146 Patent.

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

### xxiii.    Claim 24

FIG. 17 in WO '626 illustrates a curve used to determine and provide a readout of the

concentration of an analyte, such as glucose (*See* Abstract and page 97, lines 13-14).  As

previously discussed, WO '626 discloses that for measurement, "at least 20% of the analyte is

electrolyzed." (*See* page 64, lines 1-3).  Accordingly, the concentration of the analyte can be

measured when only 20% of the analyte is electrolyzed.  As explained in WO '626 (*See*

paragraph bridging pages 64 and 65):

> The current is measured during the partial reaction [*i.e.,* when 20% of the analyte
> is electrolyzed,] and then extrapolated using mathematical techniques known to
> those skilled in the art to determine the current curve for the complete or nearly
> complete electrolysis of the analyte. Integration of this curve yields the amount of
> charge that would be passed if the analyte were completely or nearly completely
> electrolyzed and, using equation (3a) or (3b), the concentration of the analyte is
> calculated.

Accordingly, WO '626 discloses that it is possible to reduce the response time of the

sensor by determining analyte concentration when as little as 20% of the analyte has been

electrolyzed.  In FIG. 17, 20% of the analyte of Sensor B is electrolyzed at about T=about 3

seconds.  Accordingly, WO '626 discloses "determining and providing a readout of the glucose

concentration within about 5 seconds after said detecting," as recited in Claim 24.

Additionally, as described above, WO '626 teaches various methods of analysis, such as,

for example, coulometry, amperometry and/or potentiometry.  Additionally WO '626 teaches

that, "[i]t is typically desirable that the analyte be electrolyzed quickly." (*See* page 64, lines 12-

13).  In this regard, WO '626 teaches that "[t]he speed of the electrochemical reaction depends

on several factors, including the potential that is applied between the electrodes ..., [and] the size

of the measurement zone." (*See* page 64, lines 13-16).  As a result, the response time illustrated

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

in FIG. 17 could be further reduced, for example, by manipulating the potential applied between electrodes and the size of the measurement zone, to determine and provide a readout of the concentration of an analyte faster than, for example, 5 seconds, as recited in Claim 24.

Therefore, Requestor respectfully submits that a substantial new question of patentability is raised with respect to Claim 24 of the Wilsey '146 Patent.

### xxiv.    Claim 25

WO '626 discloses that the chamber 26 has a holding volume of "no more than about 1 µl, preferably no more than about 0.5 µl, more preferably no more than about 0.25 µl, and most preferably no more than about 0.1 µl" (page 11, line 30 to page 12, line 3). Accordingly, WO '626 discloses the capillary chamber that "holds a volume of about 300 nL," (0.3 µl) recited in Claim 25.

Therefore, Requestor respectfully submits that a substantial new question of patentability is raised with respect to Claim 25 of the Wilsey '146 Patent.

### xxv.    Claim 26

FIG. 17 in WO '626 illustrates a curve used to determine and provide a readout of the concentration of an analyte, such as glucose (*See* Abstract and page 97, lines 13-14).  As previously discussed, WO '626 discloses that for measurement, "at least 20% of the analyte is electrolyzed." (*See* page 64, lines 1-3). ).  In other words, the concentration of analyte of a given sample can be determined when 20% of the analyte has been electrolyzed, which pursuant to FIG. 17 occurs in about 3 seconds (*i.e.,* the response time is equal to about 3 seconds).  At this point, current can be extrapolated using known mathematical teachings. (*See* page 64, lines 26-

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

30). Accordingly, WO '626 discloses "determining and providing a readout of the glucose concentration within about 5 seconds after said detecting," as recited in Claim 26.

Furthermore, WO '626 also discloses additionally reducing the response time of the WO '626 sensor by adjusting the parameters described with respect to Claim 1 above. Briefly, these parameters can include: increasing the amount of redox mediator, heating the sample chamber and decreasing the thickness of the sample chamber. Accordingly, WO '626 discloses all of the elements of Claim 26.

Therefore, Requestor respectfully submits that a substantial new question of patentability is raised with respect to Claim 26 of the Wilsey '146 Patent.

### xxvi.    Claim 27

FIG. 17 in WO '626 illustrates a curve used to determine and provide a readout of the concentration of an analyte, such as glucose (*See* Abstract and page 97, lines 13-14). As previously discussed, WO '626 discloses that for measurement, "at least 20% of the analyte is electrolyzed." (*See* page 64, lines 1-3). Accordingly, the concentration of the analyte can be measured when only 20% of the analyte is electrolyzed. In FIG. 17, 20% of the analyte of Sensor B is electrolyzed at about T=about 3 seconds. At this point, current can be extrapolated using known mathematical teachings. (*See* page 64, lines 26-30). Accordingly, WO '626 discloses "determining and providing a readout of the glucose concentration about 3.5 to about 8 seconds after said detecting," as recited in Claim 27.

Additionally, as described above, WO '626 teaches various methods of analysis, such as, for example, coulometry, amperometry and/or potentiometry. Additionally WO '626 teaches

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

that, "[i]t is typically desirable that the analyte be electrolyzed quickly." (*See* page 64, lines 12-

13). In this regard, WO '626 teaches that "[t]he speed of the electrochemical reaction depends

on several factors, including the potential that is applied between the electrodes ..., [and] the size

of the measurement zone." (*See* page 64, lines 13-16). As a result, the response time illustrated

in FIG. 17 could be further reduced, for example, by manipulating the potential applied between

electrodes and the size of the measurement zone, to for example, about 3.5 to about 8 seconds, as

recited in Claim 27.

Therefore, Requestor respectfully submits that a substantial new question of patentability

is raised with respect to Claim 27 of the Wilsey '146 Patent.

### xxvii. Claim 28

FIG. 17 in WO '626 illustrates a curve used to determine and provide a readout of the

concentration of an analyte, such as glucose (*See* Abstract and page 97, lines 13-14). As

previously discussed, WO '626 discloses that for measurement, "at least 20% of the analyte is

electrolyzed." (*See* page 64, lines 1-3). Accordingly, the concentration of the analyte can be

measured when only 20% of the analyte is electrolyzed. In FIG. 17, 20% of the analyte of

Sensor B is electrolyzed at about T=about 3 seconds. At this point, current can be extrapolated

using known mathematical teachings. (*See* page 64, lines 26-30). As such, WO '626 discloses

"determining and providing a readout of the glucose concentration within about 4 seconds of said

detecting," as recited in Claim 28.

Furthermore, as described above, WO '626 teaches various methods of analysis, such as,

for example, coulometry, amperometry and/or potentiometry. Additionally WO '626 teaches

that, "[i]t is typically desirable that the analyte be electrolyzed quickly." (*See* page 64, lines 12-

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

13). In this regard, WO '626 teaches that "[t]he speed of the electrochemical reaction depends on several factors, including the potential that is applied between the electrodes ..., [and] the size of the measurement zone." (*See* page 64, lines 13-16). As a result, the response time illustrated in FIG. 17 could be further reduced, for example, by manipulating the potential applied between electrodes and the size of the measurement zone, to determine and provide a readout of the concentration of an analyte faster than, for example, about 4 seconds, as recited in Claim 28.

Therefore, Requestor respectfully submits that a substantial new question of patentability is raised with respect to Claim 28 of the Wilsey '146 Patent.

### xxviii. Claim 29

FIG. 17 in WO '626 illustrates a curve used to determine and provide a readout of the concentration of an analyte, such as glucose (*See* Abstract and page 97, lines 13-14). As previously discussed, WO '626 discloses that for measurement, "at least 20% of the analyte is electrolyzed." (*See* page 64, lines 1-3). Accordingly, the concentration of the analyte can be measured when only 20% of the analyte is electrolyzed. In FIG. 17, 20% of the analyte of Sensor B is electrolyzed at about T=about 3 seconds. At this point, current can be extrapolated using known mathematical teachings. (*See* page 64, lines 26-30). As such, WO '626 discloses "determining and providing a readout of the glucose concentration about 5 seconds after said detecting," as recited in Claim 29.

Furthermore, WO '626 also discloses additionally reducing the response time of the WO '626 sensor by adjusting the parameters described with respect to Claim 1 above. Briefly, these parameters can include: increasing the amount of redox mediator, heating the sample chamber

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

and decreasing the thickness of the sample chamber. Accordingly, WO '626 discloses all of the

elements of Claim 29.

Therefore, Requestor respectfully submits that a substantial new question of patentability

is raised with respect to Claim 29 of the Wilsey '146 Patent.

### xxix.    Claim 30

FIG. 17 in WO '626 illustrates a curve used to determine and provide a readout of the

concentration of an analyte, such as glucose (*See* Abstract and page 97, lines 13-14). As

previously discussed, WO '626 discloses that for measurement, "at least 20% of the analyte is

electrolyzed." (*See* page 64, lines 1-3). Accordingly, the concentration of the analyte can be

measured when only 20% of the analyte is electrolyzed. In FIG. 17, 20% of the analyte of

Sensor B is electrolyzed at about T=about 3 seconds. At this point, current can be extrapolated

using known mathematical teachings. (*See* page 64, lines 26-30). As such, WO '626 discloses

"determining and providing a readout of the glucose concentration about 4 seconds after said

detecting."

Furthermore, as described above, WO '626 teaches various methods of analysis, such as,

for example, coulometry, amperometry and/or potentiometry. Additionally WO '626 teaches

that, "[i]t is typically desirable that the analyte be electrolyzed quickly." (*See* page 64, lines 12-

13). In this regard, WO '626 teaches that "[t]he speed of the electrochemical reaction depends

on several factors, including the potential that is applied between the electrodes ..., [and] the size

of the measurement zone." (*See* page 64, lines 13-16). As a result, the response time illustrated

in FIG. 17 could be further reduced, for example, by manipulating the potential applied between

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

electrodes and the size of the measurement zone, to determine and provide a readout of the

concentration of an analyte faster than, for example, about 4 seconds, as recited in Claim 30.

Therefore, Requestor respectfully submits that a substantial new question of patentability

is raised with respect to Claim 30 of the Wilsey '146 Patent.

### xxx.   Independent Claim 31

With regard to Claim 31, Requestor respectfully asserts that WO '626 discloses each

element recited in Claim 31 of the Wilsey '146 patent. Initially, Requestor respectfully notes

that this claim is nearly identical to independent Claim 1. More specifically, Claim 31 only

differs in scope from independent Claim 1 by omitting the term "electroreducing" from the

"electrooxidizing or *electroreducing* the electroactive reaction product at the working electrode,"

limitation of Claim 1. As such, this element of Claim 31 recites: "electrooxidizing the

electroactive reaction product at the working electrode."

Nevertheless, Requestor addresses each element of Claim 31 below, together with

examples of the relevant teaching of WO '626 for each element of Claim 31 of the Wilsey '146

patent.

For example, embodiments of WO '626 are directed to a "method of determining the

concentration of glucose in a blood sample." (*See* Abstract and page 97, lines 13-14 (page 97,

lines 13-14)).

The method disclosed in WO '626 further includes "providing a disposable biosensor test

strip including a capillary chamber having a depth suitable for capillary flow of blood and

holding a volume of between about 0.1 µl and about 1.0 µl of the blood sample," as recited in

91

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

Claim 31 of the Wilsey '146 Patent. For example, WO '626 teaches that the biosensor includes a

sample chamber for holding the sample in electrical contact with the electrode. (*See* page 2, lines

24-29). WO '626 also discloses using capillary flow to direct the blood sample into the chamber.

(*See* page 47, lines 11-17). WO '626 also teaches that the "sample chamber ... is sized to

provide for analysis of a sample volume that is typically no more than about 1 µL, preferably no

more than about 0.5 µL, more preferably no more than about 0.25 µL, and most preferably no

more than about 0.1 µL." (*See* page 2, line 30 through page 3, line 4). FIGS. 3 and 5 of WO

'626, as provided in the claim chart above, also illustrate the test strip and the sample chamber

26 therein. For at least this reason, Requestor respectfully asserts that this element is disclosed in

WO '626.

　　　WO '626 also discloses "a working electrode and a counter or reference electrode

disposed within the capillary chamber," as recited in Claim 31 of the Wilsey '146 Patent. For

example, referring to FIG. 4 in particular, WO '626 discloses that "a small volume, in vitro

electrochemical sensor 20 of the invention generally includes a working electrode 22, a counter

(or counter/reference) electrode 24, and a sample chamber 26." WO '626 also teaches that the

"sample chamber 26 is configured so that when a sample is provided in the chamber the sample

is in electrolytic contact with both the working electrode 22 and the counter electrode 24." (*See*

page 12, lines 4-9). For at least this reason, Requestor respectfully asserts that this element is

disclosed in WO '626.

　　　The WO '626 Patent also discloses "a reagent proximal to or in contact with at least the

working electrode," as recited in Claim 31 of the Wilsey '146 Patent. More specifically, WO

'626 teaches that in one exemplary embodiment, "sensing chemistry materials are provided in

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

the sample chamber 26 for the analysis of the analyte." In this exemplary embodiment, this "sensing chemistry preferably includes a redox mediator and a second electron transfer mediator." (*See* page 13, lines 9-12). WO '626 additionally teaches that "the redox mediator and second electron transfer agent are ...disposed on the same surface of the sample chamber, such as, for example, on the working electrode." (*See* page 14, lines 15-17). For at least this reason, Requestor respectfully asserts that this element is disclosed in WO '626.

The reagent described in WO '626 also "include[s] an enzyme and a mediator," as recited in Claim 31 of the Wilsey '146 Patent. As described above, the sensing chemistry of WO '626 comprises a redox mediator and a second electron transfer agent. WO '626 further discloses that "[o]ne example of a suitable second electron transfer agent is an enzyme." (*See* page 37, lines 7-9). For at least this reason, Requestor respectfully asserts that this element is disclosed in WO '626.

Additionally, the method disclosed in WO '626 further comprises "the reagent reacting with glucose to produce an electroactive reaction product," as recited in Claim 31 of the Wilsey '146 Patent. For example, WO '626 teaches that "[t]hose skilled in the art will recognize that there are many different reactions that will provide the same result; namely the electrolysis of an analyte through a reaction pathway incorporating a redox mediator." (*See* page 60, lines 22-26). "Electrolysis" is further defined in WO '626 as "the electrooxidation or electroreduction of a compound either directly at an electrode or via one or more electron transfer agents (e. g., redox mediators and/or enzymes)." (*See* page 10, lines 16-18). Lastly, with respect to this element of Claim 31, WO '626 teaches that the analyte, or compound, can be glucose. (*See, e.g.,* Abstract

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

and Claim 11).  For at least this reason, Requestor respectfully asserts that this element is
disclosed in WO '626.

The method disclosed in WO '626 also comprises "applying a blood sample containing glucose into the capillary chamber," as recited in Claim 31 of the Wilsey '146 Patent.  As described above, the analyte sample of WO '626 can be glucose.  WO '626 further teaches that the "sample chamber 26 is configured so that when a sample is provided in the chamber the sample is in electrolytic contact with both the working electrode 22 and the counter electrode 24." ( *See* page 12, lines 7-9).  For at least this reason, Requestor respectfully asserts that this element is disclosed in WO '626.

Next, WO '626 discloses that "the capillary chamber direct[s] capillary flow of the blood sample into contact with the reagent to cause the blood sample to at least partially solubilize or hydrate the reagent," as recited in Claim 31 of the Wilsey '146 Patent.  For example, WO '626 teaches that the "sample chamber 26 is configured so that when a sample is provided in the chamber the sample is in electrolytic contact with both the working electrode 22 and the counter electrode 24." (*See* page 12, lines 7-9).  In addition, WO '626 teaches that the "redox mediator and/or second electron transfer agent may first dissolve from the surface on which it was placed as a solid" and that the "redox mediator and second electron transfer agent are ...disposed on the same surface of the sample chamber, such as, for example, on the working electrode." (*See* page 15, lines 1-2 and page 14, lines 15-17, respectively).  Thus, a sample of blood entering the sample chamber 26 of WO '626 would necessarily contact the redox mediator and/or second electron transfer agent, which are disposed on the working electrode 22 located within the

94

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

sample chamber 26. For at least this reason, Requestor respectfully asserts that this element is disclosed in WO '626.

The Requestor also respectfully asserts that the method of WO '626 further comprises "detecting the blood sample in the capillary chamber," as recited in Claim 31 of the Wilsey '146 Patent. In the Wilsey '146 Patent, blood is detected using a "drop detect" system, which senses current flow between the working and counter electrodes when blood covers the nearest working and counter electrodes. (*See* col. 23, line 60 to col. 24, line 50). Similarly, in one exemplary embodiment of WO '626, the sensor used for detection and quantification of the analyte includes "a fill indicator, such as an indicator electrode or a second electrode pair, that can be used to determine when the measurement zone or sample chamber has been filled." (*See* page 4, lines 1-3). An "indicator electrode," in one exemplary embodiment of WO '626, includes one or more electrodes that detect partial or complete filling of a sample chamber and/or measurement zone. (*See* page 10, lines 26 and 27). For at least this reason, Requestor respectfully asserts that this element is disclosed in WO '626.

The method of WO '626 also discloses, that "following said detecting, applying or controlling the voltage or current across the working and counter or reference electrodes," as recited in Claim 31 of the Wilsey '146 Patent. For example, WO '626 discloses that "[w]hen an external potential is applied, it may be applied either before or after the sample has been placed in the sample chamber." (*See* page 60, lines 10-11). In this regard, "[w]hen the potential is applied and the sample is in the measurement zone, an electrical current will flow between the working electrode and the counter electrode." (*See* page 60, lines 17-19). For at least this reason, Requestor respectfully asserts that this element is disclosed in WO '626.

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

The method of WO '626 also discloses "electrooxidizing the electroactive reaction product at the working electrode," as recited in Claim 31 of the Wilsey '146 patent. In this regard the Requestor respectfully notes that WO '626 defines the "working electrode" as "an electrode at which [an] analyte is electrooxidized or electroreduced with or without the agency of a redox mediator." (*See* page 4, lines 24-25). For at least this reason, Requestor respectfully asserts that this element is disclosed in WO '626.

The Requestor also respectfully asserts that WO '626 further discloses that "within 10 seconds after said detecting, determining and providing a readout of the glucose concentration in the blood sample."

In this regard, the Requestor respectfully notes that FIG. 17 of WO '626 illustrates the amount of time required to determine the concentration of the analyte. (*See* page 96, lines 7-10). In one exemplary embodiment, this analyte can be glucose, as described above. (*See* WO '626 Abstract and Claim 11).

96

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

FIG. 17



With regard to measuring the concentration of the analyte, WO '626 teaches various methods of

analysis, such as, for example, coulometry, amperometry and/or potentiometry. Additionally

WO '626 teaches that, "[i]t is typically desirable that the analyte be electrolyzed quickly." (*See*

page 64, lines 12-13). In this regard, WO '626 teaches that "[t]he speed of the electrochemical

reaction depends on several factors, including the potential that is applied between the electrodes

..., [and] the size of the measurement zone." (*See* page 64, lines 13-16).

As noted above, WO '626 "can be used to determine the concentration of a biomolecule,

such as glucose or lactate, in a biological fluid such as blood or serum using techniques such as

coulometry, amperometry and potentiometry." (*See* Abstract). With regard to coulometry, "the

completion of the electrochemical reaction is typically signaled when the current reaches a

steady state value." (*See* page 64, lines 7-8). An example of the steady state value is illustrated

in FIG. 17. The steady state typically indicates that all, or nearly all of the analyte has been electrolyzed. This means that, for example, approximately 90%-99% of the analyte has been electrolyzed.

However, WO '626 teaches that for measurement, "at least 20% of the analyte is electrolyzed. Preferably at least 50%, more preferably at least 80%, and even more preferably at least 90% of the analyte is electrolyzed." (*See* page 64, lines 1-3). In other words, the analyte concentration can be determined as soon as 20% of the analyte is electrolyzed, or at T=about 3 seconds, as represented in FIG. 17, above. In cases such as this where the analyte is only partially electrolyzed, the current is measured during the partial reaction and then extrapolated using known mathematical teachings. (*See* page 64, lines 26-30). As such, Requestor respectfully asserts that the response time of the sensor can be reduced to the duration desired by the user, for example 10 seconds or less.

Furthermore, Requestor respectfully asserts that WO '626 discloses several conditions applicable to the response time of the sensor that may be relied on to further reduce the response time shown in FIG. 17.

In particular, WO '626 discloses that "[i]ncreasing the amount of diffusible redox mediator in the sample decreases the response time of the sensor." (*See* page 96, lines 8-10). Similarly, WO '626 discloses that a heating element can be provided "to heat the sample chamber to increase the rate of oxidation or reduction of the analyte." (*See* page 4, lines 5-7). WO '626 also discloses decreasing the thickness of the sample chamber "to promote rapid

electrolysis of the analyte, as more of the sample will be in contact with the electrode surface for

a given sample volume." (*See* page 42, lines 14-16).

The Examiner relied on the same principles to reject the application that matured into the

Wilsey '146 Patent (U.S. Patent application No. 10/264,891, hereinafter "the '891 Application")

over other prior art, which the Applicant antedated through the use of a Declaration Under 37

C.F.R. § 1.131.  Specifically, the Examiner determined that the potential applied between the

electrodes, as well as the size of the measurement zone, can reduce the response time of the

sensor. (*See* Office Action of June 22, 2006, page 32).  The Examiner also determined that the

rate of oxidation of the redox mediator, as well as the amount of enzyme included in the reagent,

can reduce the time period for completion of the reaction. (*See* Office Action of June 22, 2006,

page 33).  Requestor respectfully notes that, although disagreeing with the Examiner's position,

the Applicant in the Wilsey '891 Application were not able to overcome the Examiner's position,

and could only circumvent the rejection by swearing behind the cited references. (*See*

Amendment of December 22, 2006).

For at least these additional reasons, Requestor respectfully asserts that WO '626

discloses a sensor response time which is less than 10 seconds.

The method of WO '626 also discloses that "said determining compris[es] correlating the

electrooxidized or electroreduced electroactive reaction product to the concentration of glucose

in the blood sample," as recited in Claim 31 of the Wilsey '146 Patent.  In this regard, and in

addition to the disclosure of the WO '626 Patent described above, WO '626 discloses that "[o]ne

aspect of the invention is a method of determining the concentration of an analyte in a sample by

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

contacting the sample with an electrochemical sensor and determining the concentration of the

analyte." (*See* page 3, lines 20-22).  For at least this reason, Requestor respectfully asserts that

this element is disclosed in WO '626.

In view of the above, Requestor respectfully asserts that Claim 31 of the Wilsey '146

patent is anticipated in view of the disclosure of WO '626.  As such, the disclosure of WO '626

creates a substantial new question of patentability with respect to independent Claim 31 of the

Wilsey '146 patent.

### xxxi.    Claim 32

With regard to dependent Claim 32, Requestor respectfully asserts that WO '626

discloses "[t]he method of Claim 31 in which the capillary chamber holds a volume of about 600

nL."  For example, WO '626 discloses that the "sample chamber ... is sized to provide for

analysis of a sample volume that is typically no more than about 1 µL, preferably no more than

about 0.5 µL, more preferably no more than about 0.25 µL, and most preferably no more than

about 0.1 µL." (*See* page 2, line 30 through page 3, line 4).

Therefore, Requestor respectfully submits that a substantial new question of patentability

is raised with respect to Claim 32 of the Wilsey '146 Patent.

### xxxii.    Claim 33

FIG. 17 in WO '626 illustrates a curve used to determine and provide a readout of the

concentration of an analyte, such as glucose. (*See* Abstract and page 97, lines 13-14).  As

previously discussed, WO '626 discloses that for measurement, "at least 20% of the analyte is

electrolyzed." (*See* page 64, lines 1-3).  Accordingly, the concentration of the analyte can be

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

measured when only 20% of the analyte is electrolyzed.  As explained in WO '626 (*See*

paragraph bridging pages 64 and 65):

> The current is measured during the partial reaction [*i.e.,* when 20% of the analyte
> is electrolyzed,] and then extrapolated using mathematical techniques known to
> those skilled in the art to determine the current curve for the complete or nearly
> complete electrolysis of the analyte. Integration of this curve yields the amount of
> charge that would be passed if the analyte were completely or nearly completely
> electrolyzed and, using equation (3a) or (3b), the concentration of the analyte is
> calculated.

Accordingly, WO '626 discloses that it is possible to reduce the response time of the

sensor by determining analyte concentration when as little as 20% of the analyte has been

electrolyzed.  In FIG. 17, 20% of the analyte of Sensor B is electrolyzed at about T=about 3

seconds.  Accordingly, WO '626 discloses "determining and providing a readout of the glucose

concentration within about 5 seconds after said detecting," as recited in Claim 33.

Furthermore, as described above, WO '626 teaches various methods of analysis, such as,

for example, coulometry, amperometry and/or potentiometry.  Additionally WO '626 teaches

that, "[i]t is typically desirable that the analyte be electrolyzed quickly." (*See* page 64, lines 12-

13).  In this regard, WO '626 teaches that "[t]he speed of the electrochemical reaction depends

on several factors, including the potential that is applied between the electrodes ..., [and] the size

of the measurement zone." (*See* page 64, lines 13-16).  As a result, the response time illustrated

in FIG. 17 could be further reduced, for example, by manipulating the potential applied between

electrodes and the size of the measurement zone, to determine and provide a readout of the

concentration of an analyte faster than, for example, 5 seconds, as recited in Claim 33.

Therefore, Requestor respectfully submits that a substantial new question of patentability

is raised with respect to Claim 33 of the Wilsey '146 Patent.

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

### xxxiii. Claim 34

With regard to dependent Claim 34, Requestor respectfully asserts that WO '626 discloses "[t]he method of claim 31 in which the capillary chamber holds a volume of between 0.25 µl and 0.4 µl." For example, WO '626 discloses that the "sample chamber ... is sized to provide for analysis of a sample volume that is typically no more than about 1 µL, preferably no more than about 0.5 µL, more preferably no more than about 0.25 µL, and most preferably no more than about 0.1 µL." (*See* page 2, line 30 through page 3, line 4).

Therefore, Requestor respectfully submits that a substantial new question of patentability is raised with respect to Claim 34 of the Wilsey '146 Patent.

### xxxiv. Claim 35

FIG. 17 in WO '626 illustrates a curve used to determine and provide a readout of the concentration of an analyte, such as glucose. (*See* Abstract and page 97, lines 13-14). As previously discussed, WO '626 discloses that for measurement, "at least 20% of the analyte is electrolyzed." (*See* page 64, lines 1-3). Accordingly, the concentration of the analyte can be measured when only 20% of the analyte is electrolyzed. As explained in WO '626 (*See* paragraph bridging pages 64 and 65):

> The current is measured during the partial reaction [*i.e.,* when 20% of the analyte is electrolyzed,] and then extrapolated using mathematical techniques known to those skilled in the art to determine the current curve for the complete or nearly complete electrolysis of the analyte. Integration of this curve yields the amount of charge that would be passed if the analyte were completely or nearly completely electrolyzed and, using equation (3a) or (3b), the concentration of the analyte is calculated.

Accordingly, WO '626 discloses that it is possible to reduce the response time of the sensor by determining analyte concentration when as little as 20% of the analyte has been

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

electrolyzed. In FIG. 17, 20% of the analyte of Sensor B is electrolyzed at about T=about 3 seconds. Accordingly, WO '626 discloses "determining and providing a readout of the glucose concentration within about 5 seconds after said detecting," as recited in Claim 35.

Furthermore, as described above, WO '626 teaches various methods of analysis, such as, for example, coulometry, amperometry and/or potentiometry. Additionally WO '626 teaches that, "[i]t is typically desirable that the analyte be electrolyzed quickly." (*See* page 64, lines 12-13). In this regard, WO '626 teaches that "[t]he speed of the electrochemical reaction depends on several factors, including the potential that is applied between the electrodes ..., [and] the size of the measurement zone." (*See* page 64, lines 13-16). As a result, the response time illustrated in FIG. 17 could be further reduced, for example, by manipulating the potential applied between electrodes and the size of the measurement zone, to determine and provide a readout of the concentration of an analyte faster than, for example, 5 seconds, as recited in Claim 35.

Therefore, Requestor respectfully submits that a substantial new question of patentability is raised with respect to Claim 35 of the Wilsey '146 Patent.

### xxxv.  Claim 36

With regard to dependent Claim 36, Requestor respectfully asserts that WO '626 discloses "[t]he method of claim 34 in which the capillary chamber holds a volume of about 400 nL [(0.4 µL)]." For example, WO '626 discloses that the "sample chamber ... is sized to provide for analysis of a sample volume that is typically no more than about 1 µL, preferably no more than about 0.5 µL, more preferably no more than about 0.25 µL, and most preferably no more than about 0.1 µL." (*See* page 2, line 30 through page 3, line 4).

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

Therefore, Requestor respectfully submits that a substantial new question of patentability

is raised with respect to Claim 36 of the Wilsey '146 Patent.

### xxxvi.  Claim 37

FIG. 17 in WO '626 illustrates a curve used to determine and provide a readout of the

concentration of an analyte, such as glucose. (*See* Abstract and page 97, lines 13-14).  As

previously discussed, WO '626 discloses that for measurement, "at least 20% of the analyte is

electrolyzed." (*See* page 64, lines 1-3).  Accordingly, the concentration of the analyte can be

measured when only 20% of the analyte is electrolyzed.  As explained in WO '626 (*See*

paragraph bridging pages 64 and 65):

> The current is measured during the partial reaction [*i.e.,* when 20% of the analyte
> is electrolyzed,] and then extrapolated using mathematical techniques known to
> those skilled in the art to determine the current curve for the complete or nearly
> complete electrolysis of the analyte. Integration of this curve yields the amount of
> charge that would be passed if the analyte were completely or nearly completely
> electrolyzed and, using equation (3a) or (3b), the concentration of the analyte is
> calculated.

Accordingly, WO '626 discloses that it is possible to reduce the response time of the

sensor by determining analyte concentration when as little as 20% of the analyte has been

electrolyzed.  In FIG. 17, 20% of the analyte of Sensor B is electrolyzed at about T=about 3

seconds.  Accordingly, WO '626 discloses "determining and providing a readout of the glucose

concentration within about 5 seconds after said detecting," as recited in Claim 37.

Furthermore, as described above, WO '626 teaches various methods of analysis, such as,

for example, coulometry, amperometry and/or potentiometry.  Additionally WO '626 teaches

that, "[i]t is typically desirable that the analyte be electrolyzed quickly." (*See* page 64, lines 12-

13).  In this regard, WO '626 teaches that "[t]he speed of the electrochemical reaction depends

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

on several factors, including the potential that is applied between the electrodes ..., [and] the size of the measurement zone." (*See* page 64, lines 13-16). As a result, the response time illustrated in FIG. 17 could be further reduced, for example, by manipulating the potential applied between electrodes and the size of the measurement zone, to determine and provide a readout of the concentration of an analyte faster than, for example, 5 seconds, as recited in Claim 37.

Therefore, Requestor respectfully submits that a substantial new question of patentability is raised with respect to Claim 37 of the Wilsey '146 Patent.

### xxxvii. Claim 38

With regard to dependent Claim 38, Requestor respectfully asserts that WO '626 discloses "[t]he method of claim 34 in which the capillary chamber holds a volume of about 300 nL [(0.3 μl)]." For example, WO '626 discloses that the "sample chamber ... is sized to provide for analysis of a sample volume that is typically no more than about 1 μL, preferably no more than about 0.5 μL, more preferably no more than about 0.25 μL, and most preferably no more than about 0.1 μL." (*See* page 2, line 30 through page 3, line 4).

Therefore, Requestor respectfully submits that a substantial new question of patentability is raised with respect to Claim 38 of the Wilsey '146 Patent.

### xxxviii.    Claim 39

FIG. 17 in WO '626 illustrates a curve used to determine and provide a readout of the concentration of an analyte, such as glucose. (*See* Abstract and page 97, lines 13-14). As previously discussed, WO '626 discloses that for measurement, "at least 20% of the analyte is electrolyzed." (*See* page 64, lines 1-3). Accordingly, the concentration of the analyte can be

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

measured when only 20% of the analyte is electrolyzed. As explained in WO '626 (*See* paragraph bridging pages 64 and 65):

> The current is measured during the partial reaction [*i.e.,* when 20% of the analyte is electrolyzed,] and then extrapolated using mathematical techniques known to those skilled in the art to determine the current curve for the complete or nearly complete electrolysis of the analyte. Integration of this curve yields the amount of charge that would be passed if the analyte were completely or nearly completely electrolyzed and, using equation (3a) or (3b), the concentration of the analyte is calculated.

Accordingly, WO '626 discloses that it is possible to reduce the response time of the sensor by determining analyte concentration when as little as 20% of the analyte has been electrolyzed. In FIG. 17, 20% of the analyte of Sensor B is electrolyzed at about T=about 3 seconds. Accordingly, WO '626 discloses "determining and providing a readout of the glucose concentration within about 5 seconds after said detecting," as recited in Claim 39.

Furthermore, as described above, WO '626 teaches various methods of analysis, such as, for example, coulometry, amperometry and/or potentiometry. Additionally WO '626 teaches that, "[i]t is typically desirable that the analyte be electrolyzed quickly." (*See* page 64, lines 12-13). In this regard, WO '626 teaches that "[t]he speed of the electrochemical reaction depends on several factors, including the potential that is applied between the electrodes ..., [and] the size of the measurement zone." (*See* page 64, lines 13-16). As a result, the response time illustrated in FIG. 17 could be further reduced, for example, by manipulating the potential applied between electrodes and the size of the measurement zone, to determine and provide a readout of the concentration of an analyte faster than, for example, 5 seconds, as recited in Claim 39.

Therefore, Requestor respectfully submits that a substantial new question of patentability is raised with respect to Claim 39 of the Wilsey '146 Patent.

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

### xxxix. Claim 40

Requestor respectfully asserts that WO '626 discloses "determining and providing a readout of the glucose concentration within about 8 seconds after said detecting." In particular, as disclosed with respect to Claim 31, WO '626 teaches that for measurement, "at least 20% of the analyte is electrolyzed" (page 64, lines 1-3). In other words, the concentration of analyte of a given sample can be determined when 20% of the analyte has been electrolyzed, which pursuant to FIG. 17 occurs in about 3 seconds (*i.e.,* the response time is equal to about 3 seconds). At this point, current can be extrapolated using known mathematical teachings. (*See* page 64, lines 26-30). Accordingly, WO '626 discloses measuring the concentration of glucose within 8 seconds or less after detection.

Furthermore, WO '626 also discloses additionally reducing the response time of the WO '626 sensor by adjusting the parameters described with respect to Claim 31 above. Briefly, these parameters can include: increasing the amount of redox mediator, heating the sample chamber and decreasing the thickness of the sample chamber. Accordingly, WO '626 discloses all of the elements of Claim 40.

In light of the above, a substantial new question of patentability is raised with respect to Claim 3.

### xl. Claim 41

FIG. 17 in WO '626 illustrates a curve used to determine and provide a readout of the concentration of an analyte, such as glucose (*See* Abstract and page 97, lines 13-14). As previously discussed, WO '626 discloses that for measurement, "at least 20% of the analyte is

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

electrolyzed." (*See* page 64, lines 1-3). Accordingly, the concentration of the analyte can be

measured when only 20% of the analyte is electrolyzed. In FIG. 17, 20% of the analyte of

Sensor B is electrolyzed at about T=about 3 seconds. At this point, current can be extrapolated

using known mathematical teachings. (*See* page 64, lines 26-30). Accordingly, WO '626

discloses "determining and providing a readout of the glucose concentration about 3.5 to about 8

seconds after said detecting," as recited in Claim 41.

Additionally, as described above, WO '626 teaches various methods of analysis, such as,

for example, coulometry, amperometry and/or potentiometry. Additionally WO '626 teaches

that, "[i]t is typically desirable that the analyte be electrolyzed quickly." (*See* page 64, lines 12-

13). In this regard, WO '626 teaches that "[t]he speed of the electrochemical reaction depends

on several factors, including the potential that is applied between the electrodes ..., [and] the size

of the measurement zone." (*See* page 64, lines 13-16). As a result, the response time illustrated

in FIG. 17 could be further reduced, for example, by manipulating the potential applied between

electrodes and the size of the measurement zone, to for example, about 3.5 to about 8 seconds, as

recited in Claim 41.

Therefore, Requestor respectfully submits that a substantial new question of patentability

is raised with respect to Claim 41 of the Wilsey '146 Patent.


### xli. Claim 42

FIG. 17 in WO '626 illustrates a curve used to determine and provide a readout of the

concentration of an analyte, such as glucose. (*See* Abstract and page 97, lines 13-14). As

previously discussed, WO '626 discloses that for measurement, "at least 20% of the analyte is

electrolyzed." (*See* page 64, lines 1-3). Accordingly, the concentration of the analyte can be

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

measured when only 20% of the analyte is electrolyzed. As explained in WO '626 (*See*

paragraph bridging pages 64 and 65):

> The current is measured during the partial reaction [*i.e.,* when 20% of the analyte
> is electrolyzed,] and then extrapolated using mathematical techniques known to
> those skilled in the art to determine the current curve for the complete or nearly
> complete electrolysis of the analyte. Integration of this curve yields the amount of
> charge that would be passed if the analyte were completely or nearly completely
> electrolyzed and, using equation (3a) or (3b), the concentration of the analyte is
> calculated.

Accordingly, WO '626 discloses that it is possible to reduce the response time of the

sensor by determining analyte concentration when as little as 20% of the analyte has been

electrolyzed. In FIG. 17, 20% of the analyte of Sensor B is electrolyzed at about T=about 3

seconds. Accordingly, WO '626 discloses "determining and providing a readout of the glucose

concentration within about 5 seconds after said detecting," as recited in Claim 42.

Furthermore, as described above, WO '626 teaches various methods of analysis, such as,

for example, coulometry, amperometry and/or potentiometry. Additionally WO '626 teaches

that, "[i]t is typically desirable that the analyte be electrolyzed quickly." (*See* page 64, lines 12-

13). In this regard, WO '626 teaches that "[t]he speed of the electrochemical reaction depends

on several factors, including the potential that is applied between the electrodes ..., [and] the size

of the measurement zone." (*See* page 64, lines 13-16). As a result, the response time illustrated

in FIG. 17 could be further reduced, for example, by manipulating the potential applied between

electrodes and the size of the measurement zone, to determine and provide a readout of the

concentration of an analyte faster than, for example, 5 seconds, as recited in Claim 42.

Therefore, Requestor respectfully submits that a substantial new question of patentability

is raised with respect to Claim 42 of the Wilsey '146 Patent.

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

### xlii.    Claim 43

FIG. 17 in WO '626 illustrates a curve used to determine and provide a readout of the concentration of an analyte, such as glucose (*See* Abstract and page 97, lines 13-14). As previously discussed, WO '626 discloses that for measurement, "at least 20% of the analyte is electrolyzed." (*See* page 64, lines 1-3). Accordingly, the concentration of the analyte can be measured when only 20% of the analyte is electrolyzed. In FIG. 17, 20% of the analyte of Sensor B is electrolyzed at about T=about 3 seconds. Accordingly, WO '626 discloses "determining and providing a readout of the glucose concentration within about 4 seconds of said detecting," as recited in Claim 43.

Furthermore, as described above, WO '626 teaches various methods of analysis, such as, for example, coulometry, amperometry and/or potentiometry. Additionally WO '626 teaches that, "[i]t is typically desirable that the analyte be electrolyzed quickly." (*See* page 64, lines 12-13). In this regard, WO '626 teaches that "[t]he speed of the electrochemical reaction depends on several factors, including the potential that is applied between the electrodes …, [and] the size of the measurement zone." (*See* page 64, lines 13-16). As a result, the response time illustrated in FIG. 17 could be further reduced, for example, by manipulating the potential applied between electrodes and the size of the measurement zone, to determine and provide a readout of the concentration of an analyte faster than, for example, about 4 seconds, as recited in Claim 43.

Therefore, Requestor respectfully submits that a substantial new question of patentability is raised with respect to Claim 43 of the Wilsey '146 Patent.

110

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

### xliii.    Claim 44

FIG. 17 in WO '626 illustrates a curve used to determine and provide a readout of the concentration of an analyte, such as glucose (*See* Abstract and page 97, lines 13-14). As previously discussed, WO '626 discloses that for measurement, "at least 20% of the analyte is electrolyzed." (*See* page 64, lines 1-3). Accordingly, the concentration of the analyte can be measured when only 20% of the analyte is electrolyzed. In FIG. 17, 20% of the analyte of Sensor B is electrolyzed at about T=about 3 seconds. At this point, current can be extrapolated using known mathematical teachings. (*See* page 64, lines 26-30). As such, WO '626 discloses "determining and providing a readout of the glucose concentration about 5 seconds after said detecting," as recited in Claim 44.

Furthermore, WO '626 also discloses additionally reducing the response time of the WO '626 sensor by adjusting the parameters described with respect to Claim 1 above. Briefly, these parameters can include: increasing the amount of redox mediator, heating the sample chamber and decreasing the thickness of the sample chamber. Accordingly, WO '626 discloses all of the elements of Claim 44.

Therefore, Requestor respectfully submits that a substantial new question of patentability is raised with respect to Claim 44 of the Wilsey '146 Patent.

### xliv.    Claim 45

FIG. 17 in WO '626 illustrates a curve used to determine and provide a readout of the concentration of an analyte, such as glucose (*See* Abstract and page 97, lines 13-14). As previously discussed, WO '626 discloses that for measurement, "at least 20% of the analyte is

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

electrolyzed." (*See* page 64, lines 1-3). Accordingly, the concentration of the analyte can be

measured when only 20% of the analyte is electrolyzed. In FIG. 17, 20% of the analyte of

Sensor B is electrolyzed at about T=about 3 seconds. At this point, current can be extrapolated

using known mathematical teachings. (*See* page 64, lines 26-30). As such, WO '626 discloses

"determining and providing a readout of the glucose concentration about 4 seconds after said

detecting," as recited in Claim 45.

Furthermore, as described above, WO '626 teaches various methods of analysis, such as,

for example, coulometry, amperometry and/or potentiometry. Additionally WO '626 teaches

that, "[i]t is typically desirable that the analyte be electrolyzed quickly." (*See* page 64, lines 12-

13). In this regard, WO '626 teaches that "[t]he speed of the electrochemical reaction depends

on several factors, including the potential that is applied between the electrodes ..., [and] the size

of the measurement zone." (*See* page 64, lines 13-16). As a result, the response time illustrated

in FIG. 17 could be further reduced, for example, by manipulating the potential applied between

electrodes and the size of the measurement zone, to determine and provide a readout of the

concentration of an analyte faster than, for example, about 4 seconds, as recited in Claim 45.

Therefore, Requestor respectfully submits that a substantial new question of patentability

is raised with respect to Claim 45 of the Wilsey '146 Patent.

### xlv.    Claim 46

With regard to dependent Claim 46, Requestor respectfully asserts that WO '626

discloses "[t]he method of claim 31 in which said reagent is dry."

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

WO '626 discloses that the "reagent is dry," as recited in Claim 46. Specifically, WO '626 discloses that the "redox mediator and/or second electron transfer agent may first dissolve from the surface on which it was placed as a solid." (*See* page 15, lines 1-2). Accordingly, the reagent exists as a "solid" (i.e., it is dry).

In addition, WO '626 discloses that "the capillary chamber directs capillary flow of the blood sample into contact with the dry reagent to cause the blood sample to at least partially solubilize or hydrate the dry reagent." Specifically, WO '626 discloses that the sample chamber is configured so that the sample is in electrolytic contact with the working electrode. (*See* page 12, lines 7-9). Accordingly, because, as mentioned above, the reagent may dissolve, Requestor respectfully submits that the reagent in WO '626 may be least partially solubilized.

Therefore, Requestor respectfully submits that the cited art presents a substantial new question of patentability with respect to Claim 46.

### xlvi.    Claim 47

With regard to dependent Claim 47, Requestor respectfully asserts that WO '626 discloses "[t]he method of claim 46 in which the dry reagent comprises a reagent that is applied wet and dried of solvent."

WO '626 discloses that "the air oxidation of the redox mediator may take place while the redox mediator is in solution, such as, for example, prior to **the solution being applied onto the sensor and dried**." (See page 35, lines 22-25) (emphasis added).

WO '626 also discloses that "the dry reagent comprises a reagent that is applied wet and dried of solvent," as recited in Claim 47. Specifically, the redox mediator and the enzyme in

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

WO '626 are applied in solution, as evidenced by the fact that they "typically form a sensing

layer on the working electrode" or "may be disposed on any surface in the sample chamber."

(*See* page 13, lines 16-19; see also, Example 9 in WO '626). This disclosure relates to, for

example, solution casting of the redox mediator and the enzyme on the working electrode. If a

solvent were not used, then the redox mediator and enzyme would exist only as a powder and

would not form a sensing layer.

Therefore, Requestor respectfully submits that the cited art presents a substantial new

question of patentability with respect to Claim 47.


xlvii.   **Claim 48**

With regard to dependent Claim 48, Requestor respectfully asserts that WO '626

discloses a "capillary chamber ha[ving] a depth of 25-200 μm [0.025-0.2 mm]." In this regard,

WO '626 discloses that "[t]ypically, the thickness of the sample chamber is no more than about

0.2 mm. Preferably, the thickness of the sample chamber is no more than about 0.1 mm and,

more preferably, the thickness of the sample chamber is about 0.05 mm or less" (*See* page 42,

lines 20-22). Based on the disclosure of WO '626 the terms "thickness" and "depth" are

interchangeable.

Therefore, Requestor respectfully submits that a substantial new question of patentability

is raised with respect to Claim 48 of the Wilsey '146 Patent.


xlviii.   **Claim 49**

As previously discussed, FIG. 17 in WO '626 illustrates determining and providing a

readout of analyte, such as glucose (*See* Abstract and page 97, lines 13-14), within 10 seconds

114

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

after detecting the blood sample. Accordingly, WO '626 discloses the "determining and

providing a readout of the glucose concentration in the sample within 10 seconds after said

detecting" as recited in Claim 49. The recitation in Claim 49 related to "providing the reagent in

a sufficiently small amount as to be solubilized or hydrated in a time sufficient to allow said

determining" is inherently present in WO '626 because the redox mediator therein solubilizes in

a time sufficient to provide the above readout at least within about 10 seconds after detecting the

blood sample (the "redox mediator and/or second electron transfer agent may first dissolve from

the surface on which it was placed as a solid" (*See* page 15, lines 1-27). In addition, WO '626

teaches that the "redox mediator and/or second electron transfer agent may first dissolve from the

surface on which it was placed as a solid." (*See* page 15, lines 1-2).

Therefore, Requestor respectfully submits that a substantial new question of patentability

is raised with respect to Claim 49 of the Wilsey '146 Patent.

### xlix.    Claim 50

FIG. 17 in WO '626 illustrates a curve used to determine and provide a readout of the

concentration of an analyte, such as glucose (*See* Abstract and page 97, lines 13-14). As

previously discussed, WO '626 discloses that for measurement, "at least 20% of the analyte is

electrolyzed." (*See* page 64, lines 1-3). Accordingly, the concentration of the analyte can be

measured when only 20% of the analyte is electrolyzed. In FIG. 17, 20% of the analyte of

Sensor B is electrolyzed at about T=about 3 seconds. Accordingly, WO '626 discloses

"determining and providing a readout of the glucose concentration in the blood sample within 10

seconds of said detecting," as recited in Claim 50.

115

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

As described above, WO '626 teaches various methods of analysis, such as, for example, coulometry, amperometry and/or potentiometry. Additionally WO '626 teaches that, "[i]t is typically desirable that the analyte be electrolyzed quickly." (*See* page 64, lines 12-13). In this regard, WO '626 teaches that "[t]he speed of the electrochemical reaction depends on several factors, including the potential that is applied between the electrodes …, [and] the size of the measurement zone." (*See* page 64, lines 13-16). As a result, the response time illustrated in FIG. 17 could be further reduced, for example, by manipulating the potential applied between electrodes and the size of the measurement zone, to determine and provide a readout of the concentration of an analyte faster than, for example, 10 seconds, as recited in Claim 50.

Requestor further respectfully notes that in order for the measurement to be taken within 10 seconds, the redox mediator in WO '626 must react "sufficiently rapidly," as recited in the claim. Accordingly, WO '626 discloses the elements of Claim 50.

Therefore, Requestor respectfully submits that a substantial new question of patentability is raised with respect to Claim 50 of the Wilsey '146 Patent.

### l.   Claim 51

WO '626 discloses a redox mediator that is "readily-reversible" (e.g., page 60, lines 10-26). The redox mediator in WO '626 is readily-reversible (e.g., page 60, lines 10-26) because it may "exchange electrons rapidly with each other and with the electrode so that the complex can be rapidly oxidized and/or reduced." (page 30, lines 10-11). Accordingly, WO '626 discloses this element of the claims.

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

Therefore, Requestor respectfully submits that a substantial new question of patentability

is raised with respect to Claim 51 of the Wilsey '146 Patent.

### li.  Claim 52

WO '626 provides that "[t]he analyte measurement device 52 may ... be placed in a

reader, not shown," which connects electrochemical analysis equipment to the electrode tabs to

determine the concentration of the analyte (page 56, lines 22-25), and illustrates the same in FIG.

6, which is reproduced below:



FIG. 6

Requestor respectfully submits that the reader referred to in the passage above is an

automatic reader which will automatically operate the sensor in WO '626.

The sensor in WO '626 also includes an indicator electrode, detecting when blood has

filled the chamber (page 4, lines 1-3; page 80, lines 26-28), and as discussed above, FIG. 17 in

WO '626 illustrates determining and providing a readout of the analyte, such as glucose (*See*

Abstract), at least faster than 10 seconds after detecting the blood sample.  Accordingly,

Requestor respectfully submits that WO '626 discloses each element of Claim 52 of the Wilsey

'146 Patent.

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

Therefore, Requestor respectfully submits that a substantial new question of patentability

is raised with respect to Claim 52 of the Wilsey '146 Patent.

### iii. Claim 53

With regard to dependent Claim 53, Requestor respectfully asserts that WO '626

discloses "[t]he method of claim 52 in which said automatically operating comprises connecting

the test strip to an external testing apparatus prior to said detecting."

WO '626 provides that "[t]he analyte measurement device 52 may ... be placed in a

reader, not shown," which connects electrochemical analysis equipment to the electrode tabs to

determine the concentration of the analyte (page 56, lines 22-25), and illustrates the same in FIG.

6, which is reproduced below:



FIG. 6

Requestor respectfully submits that the reader referred to in the passage above is an

automatic reader which will automatically operate the sensor in WO '626.

The sensor in WO '626 also includes an indicator electrode, detecting when blood has

filled the chamber (page 4, lines 1-3; page 80, lines 26-28), and as discussed above, FIG. 17 in

WO '626 illustrates determining and providing a readout of the analyte, such as glucose (*See*

Abstract), at least faster than 10 seconds after detecting the blood sample. Accordingly,

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

Requestor respectfully submits that WO '626 discloses each element of Claim 53 of the Wilsey

'146 Patent.

Therefore, Requestor respectfully submits that a substantial new question of patentability

is raised with respect to Claim 53 of the Wilsey '146 Patent.

### liii. Claim 54

FIG. 2 in WO '626 illustrates that the two electrodes 22 and 24 are coplanar (described

on page 40, lines 14-15):



Therefore, Requestor respectfully submits that a substantial new question of patentability

is raised with respect to Claim 54 of the Wilsey '146 Patent.

119

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

### liv. Claim 59

With regard to dependent Claim 59, Requestor respectfully asserts that WO '626 discloses "[t]he method of claim 31 in which said providing comprises providing a test strip including a bottom substrate, a spacing layer, and a top substrate, the spacing layer having an opening corresponding to the capillary chamber."

As shown in FIG. 3, the spacer 28 is located between two plates 38, which contain the working and counter electrodes 22 and 24, respectively. FIG. 3 is reproduced below.



REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

As shown in FIG. 3, the capillary chamber is formed by the opening within the spacer 28

and the two plates 38.  The top substrate may be seen as element 38 in FIG. 3 of WO '626.

The method of WO '626 also discloses "the spacing layer substantially defining the depth

of the capillary chamber."  As shown in FIG. 3, reproduced above, the depth of the capillary

chamber is defined by the thickness of the spacer 28.  WO '626 further discloses that "the

thickness of the sample chamber and of the measurement zone correspond typically to the

thickness of spacer 28." (page 42, lines 10-12).

As such, Requestor respectfully asserts that a substantial new question of patentability is

raised with respect to Claim 59 of the Wilsey '146 Patent.

### lv.  Claim 60

The reagent in WO '626 includes a redox mediator (page 24, section entitled "Redox

Mediator") which may be reduced upon reacting (page 60, lines 22-26).  Accordingly, WO '626

discloses that "the reagent comprises a mediator," and that a "reduced form of the mediator" is

formed upon reacting, as recited in Claim 60.

Therefore, Requestor respectfully submits that a substantial new question of patentability

is raised with respect to Claim 60 of the Wilsey '146 Patent.

### lvi. Claim 61

With regard to Claim 61, this claim depends from independent Claim 31.  With respect to

Claim 61, WO '626 discloses that "said determining comprises measuring the amount of the

electro oxidized or electroreduced electro active reaction product and correlating the amount to

the concentration of glucose in the blood sample."  In this regard, and in addition to the

121

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

disclosure of WO '626 described above with respect to Claim 31, WO '626 discloses that "[o]ne

aspect of the invention is a method of determining the concentration of an analyte in a sample by

contacting the sample with an electrochemical sensor and determining the concentration of the

analyte." (*See* page 3, lines 20-22).

In addition, WO '626 discloses the use of sensors to "determine the glucose concentration

oin blood samples." (Abstract; page 97, lines 13-14).

As such, Requestor respectfully asserts that a substantial new question of patentability is

raised with respect to Claim 61 of the Wilsey '146 Patent.

### lvii.    Claim 62

With regard to Claim 62, this claim depends from independent Claim 31.  With respect to

Claim 62, WO '626 discloses that "the test strip comprises a counter electrode."  This disclosure

is supported at least on page 12, line 9 of the WO '626 Patent, and in FIGS. 1-4.

Additionally, WO '626 also discloses that "the reagent is located proximal to or in

contact with the working and counter electrodes."  For example, the WO '626 Patent teaches that

the reagent may be proximal to or "disposed on ... the working electrode ... [or] the counter

electrode" (*See* page 14, lines 15-19).

Therefore, Requestor respectfully submits that a substantial new question of patentability

is raised with respect to Claim 62 of the Wilsey '146 Patent.

122

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

**B.  Claims 15 and 55-58 of the Wilsey '146 Patent are Unpatentable Under 35 U.S.C. § 103(a) Over WO '626 in view of the Pottgen '069 Patent**

### i.  Claim 15

Claim 15 depends from Claim 14 which in turn depends from Claim 1.  The subject matter of Claims 1 and 14 has been addressed above.

Claim 15 further defines the claimed method by requiring that the detecting comprise "applying a potential difference between the working and counter or reference electrodes prior to and separate from said applying or controlling the voltage or current across the working and counter or reference electrodes."

However, referring to FIGS. 1 and 2 of the Pottgen '069 Patent, a sample cell is disclosed that is "positioned through window 19 (FIG. 1) to initiate the testing procedure. [and, once] inserted, a potential is applied at portion 27 (FIG. 2) of the sample cell across electrodes 24 and 26 to detect the presence of the sample." (Col. 9, line 66 through col. 10, line 1).  Once the sample's presence is detected, the potential is removed and the incubation period is initiated. (Col. 10, lines 2-3).  "An electrical potential is next applied at portion 27 of the sample cell to electrodes 24 and 26 and the current through the sample is measured and displayed on display 16." (Col. 10, lines 8-11).  The invention in the Pottgen '069 Patent "provides for a measurement system that eliminates several of the critical operator dependant variables that adversely affect the accuracy and reliability and provides for a greater dynamic range than other self-testing systems." (Col. 4, line 66 to col. 5, line 3).

It would have been obvious to one of ordinary skill in the art at the relevant time, i.e., at the time of the filing date of the '891 Application, to modify the disclosure of WO '626 to include the detecting method required by Claim 15.  Requestor respectfully notes that all of the

123

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

claimed elements were known in the art, as shown above, and a person having ordinary skill in the art would have combined the elements as claimed by known methods with no change in their respective function, and the combination would have yielded nothing more than predictable results to one of ordinary skill in the art. *KSR International Co. v. Teleflex Inc.*, 550 U.S. _____ (2007). Furthermore, this secondary reference provides a reason for modifying the teachings of WO '626. The Pottgen '069 Patent teaches that the device described therein improves the precision and standardization of the analyte monitoring apparatus, which is discussed in the Pottgen '069 Patent at, for example, column 1, lines 65-66. It would be reasonable to conclude that these advantages would be achieved in whole or part by utilizing the detecting method described in the Pottgen '069 Patent in the method of WO '626 in order to achieve the method recited in Claim 15 of the Wilsey '146 Patent.

Accordingly, a substantial new question of patentability is raised by WO '626 in view of the Pottgen '069 Patent.

### ii. Claim 55

Claim 55 depends from independent Claim 31. The subject matter of Claim 31 has been addressed above.

Claim 55 further defines the claimed method by requiring that "said detecting comprises applying a drop-detect potential across the working and counter or reference electrodes."

However, again referring to FIGS. 1 and 2 of the Pottgen '069 Patent, a sample cell is disclosed that is "positioned through window 19 (FIG. 1) to initiate the testing procedure. [and, once] inserted, a potential is applied at portion 27 (FIG. 2) of the sample cell across electrodes 24

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

and 26 to **detect the presence of the sample**." (Col. 9, line 66 through col. 10, line 1) (emphasis added).

In addition, the Pottgen '069 Patent discloses that "[t]he meter recognizes sample application by the sudden charging current flow that occurs when the electrodes and the overlaying reagent layer are initially wetted by the sample fluid. Once the sample application is detected, the meter begins the reaction incubation step." (Col. 4, lines 23-28).

However, Requester submits that it would have been obvious to one of ordinary skill in the art at the relevant time, i.e., at the time of the filing date of the '891 Application, to modify the disclosure of WO '626 to include the drop detect step set forth in Claim 55 of the Wilsey '146 Patent. All of the elements required by this claim were known in the art, as shown above, and a person having ordinary skill in the art would have combined the elements as claimed with no change in their respective function, and the combination would have yielded nothing more than predictable results to one of ordinary skill in the art. *KSR International Co. v. Teleflex Inc.*, 550 U.S. _____ (2007).

Furthermore, the Pottgen '069 Patent provides a reason for modifying the teachings of WO '626. The Pottgen '069 Patent teaches that the device described therein improves the precision and standardization of the analyte monitoring apparatus, which is discussed in the Pottgen '069 Patent at, for example, column 1, lines 65-66. It would be reasonable to conclude that these advantages would be achieved in whole or part by utilizing the detecting method described in the Pottgen '069 Patent in the method described in WO '626 in order to arrive at the method recited in Claim 55 of the Wilsey '146 Patent.

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

Accordingly, a substantial new question of patentability is raised by WO '626 in view of the Pottgen '069 Patent.

### iii. Claim 56

Claim 56 depends from Claim 55, which in turn depends from independent Claim 31. The subject matter of Claims 55 and 31 has been addressed above.

Claim 56 further defines the claimed method by requiring that "said detecting comprises applying a drop-detect potential across the working and counter or reference electrodes prior to and separate from said determining."

However, this claim limitation is also disclosed in the Pottgen '069 Patent. Specifically, referring again to FIGS. 1 and 2 of the Pottgen '069 Patent, a sample cell is disclosed that is "positioned through window 19 (FIG. 1) to initiate the testing procedure. [and, once] inserted, a potential is applied at portion 27 (FIG. 2) of the sample cell across electrodes 24 and 26 to **detect the presence of the sample**." (Col. 9, line 66 through col. 10, line 1) (emphasis added). Once the sample's presence is detected, the potential is removed and the incubation period initiated. (Col. 10, lines 2-3). The Pottgen '069 Patent further discloses "[a]n electrical potential is next applied at portion 27 of the sample cell to electrodes 24 and 26 and the current through the sample is measured and displayed on display 16." (Col. 10, lines 8-11).

It would have been obvious to one of ordinary skill in the art at the relevant time, i.e., at the time of the filing date of the '891 Application, to modify the disclosure of WO '626 to include the detecting step required by Claim 56. All of the elements required by Claim 56 were known in the art, as shown above, and a person having ordinary skill in the art would have combined those elements with no change in their respective function, and the combination would

126

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

have yielded nothing more than predictable results to one of ordinary skill in the art. *KSR*

*International Co. v. Teleflex Inc.*, 550 U.S. _____(2007).

Furthermore, there is a reason in the references for combining them. The Pottgen '069

Patent teaches that the device described therein improves the precision and standardization of the

analyte monitoring apparatus, which is discussed in the Pottgen '069 Patent at, for example,

column 1, lines 65-66. One skilled in the art would expect that these advantages would be

achieved in whole or in part by utilizing the detecting method described in the Pottgen '069

Patent in the method of WO '626 in order to achieve the method recited in Claim 56 of the

Wilsey '146 Patent.

Accordingly, a substantial new question of patentability is raised by WO '626 in view of

the Pottgen '069 Patent

### iv. Claim 57

Claim 57 depends from Claim 56, which in turn depends from Claim 55 and in turn

depends from independent Claim 31. The subject matter of Claims 31, 55 and 56 has been

addressed above.

Claim 57 further defines the claimed method by requiring that "said detecting comprises

applying a drop-detect potential across the working and counter or reference electrodes,

recognizing a rise in current as an indication that the blood sample has been applied into the

capillary chamber, and discontinuing the drop-detect potential."

Significantly, the Pottgen '069 Patent discloses that the meter described therein

"recognizes sample application by the sudden charging current flow that occurs when the

electrodes and the overlaying reagent layer are initially wetted by the sample fluid [and once] the

127

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

sample application is detected, the meter begins the reaction incubation step." (Col. 4, lines 23-28). Once sample presence is detected, the potential is removed and the incubation period is initiated. (Col. 10, lines 2-3). The Pottgen '069 Patent also discloses "removing the potential during the reaction timing sequence." (Col. 14, lines 1 and 2).

It would have been obvious to one of ordinary skill in the art at the relevant time, i.e., at the time of the filing date of the '891 Application, to modify the disclosure of WO '626 to include the detecting step required by Claim 57. All of the elements required by Claim 57 were known in the art, as shown above, and a person having ordinary skill in the art would have combined those elements with no change in their respective function, and the combination would have yielded nothing more than predictable results to one of ordinary skill in the art. *KSR International Co. v. Teleflex Inc.*, 550 U.S. _____(2007).

Furthermore, the Pottgen '069 Patent teaches that the device described therein improves the precision and standardization of the analyte monitoring apparatus, which is discussed in the Pottgen '069 Patent at, for example, column 1, lines 65-66. One skilled in the art would expect that these advantages would be achieved in whole or in part by utilizing the detecting method described in the Pottgen '069 Patent in the method of WO '626 in order to achieve the method recited in Claim 57 of the Wilsey '146 Patent.

Accordingly, a substantial new question of patentability is raised by WO '626 in view of the Pottgen '069 Patent.

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

### v.  Claim 58

Claim 58 depends from Claim 56, which in turn depends from Claim 55 and in turn depends from independent Claim 31.  The subject matter of Claims 31, 55 and 56 has been addressed above.

Claim 58 further defines the claimed method by requiring that the method "includes reapplying a potential across the working and counter or reference electrodes, after a delay period during which no potential is applied, to electrooxidize the electroactive reaction product at the working electrode."

Significantly, the Pottgen '069 Patent discloses that "[a]n electrical potential is next applied at portion 27 of the sample cell to electrodes 24 and 26 and the current through the sample is measured and displayed on display 16." (Col. 10, lines 8-11).  Further, the Pottgen '069 Patent discloses that "a large excess of oxidized species (i.e., wherein the oxidized form of the redox mediator (i.e., ferricyanide) is present in the reagent layer in sufficient excess to insure that the diffusion limited electrooxidation of the redox mediator at the working electrode surface is the principal limiter of current flow through the cell." (Col. 6, lines 50-55).

Accordingly, it would have been obvious to one of ordinary skill in the art at the relevant time, i.e., at the time of the filing date of the '891 Application, to modify the disclosure of WO '626 to include the detecting step required by Claim 58.  All of the elements required by Claim 58 were known in the art, as shown above, and a person having ordinary skill in the art would have combined those elements with no change in their respective function, and the combination would have yielded nothing more than predictable results to one of ordinary skill in the art.  *KSR International Co. v. Teleflex Inc.*, 550 U.S. _____(2007).

129

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

Furthermore, the Pottgen '069 Patent teaches that the device described therein improves the precision and standardization of the analyte monitoring apparatus, which is discussed in the Pottgen '069 Patent at, for example, column 1, lines 65-66. One skilled in the art would expect that these advantages would be achieved in whole or in part by utilizing the detecting method described in the Pottgen '069 Patent in the method of WO '626 in order to achieve the method recited in Claim 58 of the Wilsey '146 Patent.

Accordingly, a substantial new question of patentability is raised by WO '626 in view of the Pottgen '069 Patent.

## VIII.   CONCLUSION

As discussed above, WO '626 raises substantial new questions regarding the patentability of the Wilsey '146 Patent, because WO '626, alone or in combination with the Pottgen '069 Patent, discloses each element of Claims 1-62 of the Wilsey '146 Patent.

In view of the foregoing, reexamination of Claims 1-62 is respectfully requested.

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

The USPTO is directed and authorized to charge all Requestor's required fees associated

with this Request to Deposit Account No. 19-4880.  Please also credit any overpayments to said

Deposit Account.

Respectfully submitted,

John T. Callahan
Registration No. 32,607
Travis B. Ribar
Registration No. 61,446
Artem N. Sokolov
Registration No. 61,325

SUGHRUE MION, PLLC
Telephone:  (202) 293-7060
Facsimile:  (202) 293-7860

WASHINGTON OFFICE
23373
CUSTOMER NUMBER

Date:  December 14, 2007

131

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,146

### CERTIFICATE OF SERVICE

I hereby certify that the foregoing REQUEST FOR *EX PARTE* REEXAMINATION BY

THIRD PARTY REQUESTOR was served on counsel for Roche Diagnostics Operations, Inc.

and Corange International Limited via Federal Express, on December 14, 2007, at the address

shown below:

Thomas Q. Henry
Charles P. Schmal
WOODARD, EMHARDT, MORIARTY,
MCNETT & HENRY LLP
111 Monument Circle, Suite 3700
Indianapolis, IN  46204-5137

December 14, 2007

John T. Callahan

# Appendix I

WEMMH PTO/SB/25 (04-07)
Approved for use through 09/30/2007. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| TERMINAL DISCLAIMER TO OBVIATE A DOUBLE PATENTING REJECTION OVER A PENDING "REFERENCE" APPLICATION | Docket Number (Optional) 007404-000431 |
|---|---|

| In re Application of: | **Christopher D. Wilsey** |
|---|---|
| Application No. | **10/264,891** |
| Filed: | **October 4, 2002** |
| For: | **ELECTRODES, METHODS, APPARATUSES COMPRISING MICRO-ELECTRODE ARRAYS** |

The owners,  **Roche Diagnostics Operations, Inc.** and **Corange International Limited**, of **100** percent interest in the instant application hereby disclaim, except as provided below, the terminal part of the statutory term of any patent granted on the instant application which would extend beyond the expiration date of the full statutory term of any patent granted on pending **reference** Application Number **10/382,322**, filed on **March 5, 2003**, as such term is defined in 35 U.S.C. 154 and 173, and as the term of any patent granted on said **reference** application may be shortened by any terminal disclaimer filed prior to the grant of any patent granted on the pending **reference** application. The owner hereby agrees that any patent so granted on the instant application shall be enforceable only for and during such period that it and any patent granted on the **reference** application are commonly owned. This agreement runs with any patent granted on the instant application and is  binding upon the grantee, its successors or assigns.

In making the above disclaimer, the owner does not disclaim the terminal part of any patent granted on the instant application that would extend to the expiration date of the full statutory term as defined in 35 U.S.C. 154 and 173 of any patent granted on said **reference** application, "as the term of any patent granted on said **reference** application may be shortened by any terminal disclaimer filed prior to the grant of any patent on the pending **reference** application," in the event that: any such patent: granted on the pending **reference** application: expires for failure to pay a maintenance fee, is held unenforceable, is found invalid by a court of competent jurisdiction, is statutorily disclaimed in whole or terminally disclaimed under 37 CFR 1.321, has all claims canceled by a reexamination certificate, is reissued, or is in any manner terminated prior to the expiration of its full statutory term as shortened by any terminal disclaimer filed prior to its grant.

Check either box 1 or 2 below, if appropriate.

1. ☐    For submissions on behalf of a business/organization (e.g., corporation, partnership, university, government agency, etc.), the undersigned is empowered to act on behalf of the business/organization.

    I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or any patent issued thereon.

2. ☒    The undersigned is an attorney or agent of record. Reg. No. **45082**

| /Charles P. Schmal #45,082/ | September 14, 2007 |
|---|---|
| Signature | Date |
| **Charles P. Schmal** | |
| Typed or Printed Name | |
| | **(317) 634-3456** |
| | Telephone Number |

☒  Terminal disclaimer fee under 37 CFR 1.20(d) is included.

**WARNING: Information on this form may become public. Credit card information should not be included on this form. Provide credit card information and authorization on PTO-2038.**

*Statement under 37 CFR 3.73(b) is required if terminal disclaimer is signed by the assignee (owner).
Form PTO/SB/96 may be used for making this statement. See MPEP § 324.

This collection of information is required by 37 CFR 1.321. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.
If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.

#485000                                                                                                              007404-000431

WEMMH Form P652US.doc (Rev. 9/07)

PTO/SB/25 (10-05)
Approved for use through 07/31/2006. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| TERMINAL DISCLAIMER TO OBVIATE A PROVISIONAL DOUBLE PATENTING REJECTION OVER PENDING "REFERENCE" APPLICATIONS | Docket Number (Optional) 7404-431 |
|---|---|

In re Application of:   Nigel A. Surridge et al.

Application No.   10/264,891

Filed:   October 4, 2002

For:   ELECTRODES, METHODS, APPARATUSES COMPRISING MICRO-ELECTRODE
ARRAYS

The owner*,  Roche Diagnostics Operations, Inc. , of  100  percent interest in the instant application hereby disclaims, except as provided below, the terminal part of the statutory term of any patent granted on the instant application which would extend beyond the expiration date of the full statutory term of any patent granted on pending reference Application Number 10/264,785, filed on October 4, 2002 , and pending reference Application Number 10/382,322, filed on  March 5, 2003 as such term is defined in 35 U.S.C. 154 and 173, and as the term of any patent granted on said reference applications may be shortened by any terminal disclaimer filed prior to the grant of any patent on the pending reference applications. The owner hereby agrees that any patent so granted on the instant application shall be enforceable only for and during such period that it and any patent granted on the reference applications are commonly owned. This agreement runs with any patent granted on the instant application and is binding upon the grantee, its successors or assigns.

In making the above disclaimer, the owner does not disclaim the terminal part of any patent granted on the instant application that would extend to the expiration date of the full statutory term as defined in 35 U.S.C. 154 and 173 of any patent granted on said reference applications, *as the term of any patent granted on said reference applications may be shortened by any terminal disclaimer filed prior to the grant of any patent on the pending reference applications," in the event that: any such patent: granted on the pending reference applications: expires for failure to pay a maintenance fee, is held unenforceable, is found invalid by a court of competent jurisdiction, is statutorily disclaimed in whole or terminally disclaimed under 37 CFR 1.321, has all claims canceled by a reexamination certificate, is reissued, or is in any manner terminated prior to the expiration of its full statutory term as shortened by any terminal disclaimer filed prior to its grant.

Check either box 1 or 2 below, if appropriate.

1.   ☐   For submissions on behalf of a business/organization (e.g., corporation, partnership, university, government agency, etc.), the undersigned is empowered to act on behalf of the business/organization.

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or any patent issued thereon.

2.   ☒   The undersigned is an attorney or agent of record. Reg. No. 28,309 .

| Signature | December 22, 2006 |
| | Date |
| Thomas Q. Henry | 317-713-4907 |
| Typed or Printed Name | Telephone Number |

☒   Terminal disclaimer fee under 37 CFR 1.20(d) is included.

**WARNING: Information on this form may become public. Credit card information should not be included on this form. Provide credit card information and authorization on PTO-2038.**

*Statement under 37 CFR 3.73(b) is required if terminal disclaimer is signed by the assignee (owner). Form PTO/SB/96 may be used for making this statement. See MPEP § 324.

#436783

WEMMH #45039 (Rev. 12/05)

# Appendix II

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE



| | | |
|---|---|---|
| In re patent application of: | ) | |
| | ) | Before the Examiner |
| Christopher D. Wilsey | ) | |
| | ) | |
| Serial No. (unknown) | ) | |
| | ) | |
| Filed Herewith | ) | |
| | ) | |
| METHOD FOR DETERMINING THE | ) | |
| CONCENTRATION OF AN ANALYTE | ) | |
| IN A LIQUID SAMPLE USING SMALL | ) | |
| VOLUME SAMPLES AND FAST TEST | ) | |
| TIMES | ) | March 5, 2003 |

### INFORMATION DISCLOSURE STATEMENT

Hon. Commissioner for Patents
Washington, D.C. 20231

Dear Sir:

Pursuant to the duty of disclosure in accordance with 37 C.F.R. §1.56, Applicant wishes to bring to the attention of the Examiner the patents, publications and/or other information listed on the attached PTO Form 1449. Copies of cited items are enclosed in accordance with 37 C.F.R. § 1.98. The filing of this Information Disclosure Statement shall not be construed as an admission that the information cited is, or is considered to be, material to patentability as defined in § 1.56(b).

This Statement is being submitted within three months of the filing date of this application. It is believed that no fee is required for consideration of the submitted items. Should any fee be required, however, please charge such fee to Deposit Account No. 23-3030, but not to include any payment of issue fees.

This Information Disclosure Statement is further submitted in support of the Petition to Make Special filed herewith. As required for the Petition, this IDS includes a copy and a detailed discussion of each of the cited references deemed most closely related to the subject matter encompassed by the claims, pointing out with the

#208359                    1 of 6

particularity required by 37 CFR §1.111(b) and (c) how the claimed subject matter is patentable over the cited references.

Musho et al. in US 5,250,439 disclose a method of determining the "presence or concentration of an analyte like glucose that is capable of interacting with an oxidase enzyme. The predetermined analyte and oxidase interact in a reaction zone...to generate a dopant compound...which alter[s] the conductivity of [a] conductive polymer... The change in conductivity is detected...and can be correlated to the concentration of the predetermined analyte in the test sample." (Musho et al., col. 5, lines 42-58.) The conductive sensor provides an assay within 30 seconds and preferably within 10 seconds from a small blood sample such as from 0.1µL to about 5µL. (Id., col. 11, lines 40-44.) The test method uses an enzyme, glucose oxidase, peroxidase, and a dopant such as iodide. (Id., col. 19, lines 18-66.) The disclosed method uses a dopant iodide that causes a detectable or measurable change in the conductive polymer rather than using an enzyme/mediator combination that can generate an electrochemical signal representative of the concentration of analyte in the liquid sample as claimed in the present application.

Worden et al. in US 5,611,900 disclose a microbiosensor that includes a cathode and anode contained within a capillary case. A biological interface that includes immobilized glucose oxidase in a polyacrylamide polymer is applied to the tip of the case. (Worden et al., col. 6, lines 21-66.) However, this reference does not disclose a method of determining the concentration of an analyte that includes a sample receiving cavity of less than about 1.5 µL that includes at least a working electrode covered with a reagent layer including an enzyme and a mediator and then within 10 seconds obtaining a readout of the concentration of the analyte in a liquid solution.

#208359                                2 of 6

Yamamoto et al. in US 5,658,443 (and in RE 36,991) disclose a biosensor for rapid quantification of analytes. The biosensor includes an enzyme in a hydrophilic polymer layer in close contact with an electrode system and an electron acceptor such as potassium ferricyanide. (Yamamoto et al., col. 5, lines 40-46 and col. 6, lines 9-12.) A 3 μL sample solution can be provided to the sensor. Two minutes after supplying the sample solution, a voltage can be applied to the electrode system, and 5 seconds thereafter the anodic current can be measured. (Id., col. 7, lines 38-45.) This reference does not disclose a method as currently claimed including providing a sample receiving cavity having a volume of less than 1.5 μL, detecting the time at which the liquid sample enters the sample receiving cavity, and within 10 seconds of that obtaining a readout of the concentration of the analyte.

Ohara et al. in US 6,193,873 disclose an electrochemical (amperometric) method for measuring an analyte concentration in an aqueous solution. The method uses a thin layer device having a pair of opposing electrodes separated by a spacer less than 200 μm thick. (Ohara, col. 5, lines 25-35.) A sample is applied to the strip and fills the gap between the electrodes. After the sample is detected, a voltage is applied between the working and counter electrodes. As a result, the current flows between the electrodes. The current, after a predetermined time, is a measure of the analyte concentration. The duration of the predetermined time is not critical; it can at least be 3 seconds, more typically 10 seconds in duration. (Id., col. 4, lines 48-64.) This reference does not disclose the use of a very small sample chamber of less than 1.5 μL as claimed in the present application.

#208359                          3 of 6

Feldman et al. in US 6,338,790 disclose an *in vitro* analyte sensor that includes both a counter and working electrode, a redox mediator, and a second electron transfer agent, which can be disposed on either the working electrode or the counter/reference electrode. The second election transfer reagent can be an enzyme such as glucose oxidase or glucose dehydrogenase. (Feldman et al., col. 9, lines 5-23 and col. 24, lines 28-33.) The sample chamber in the analyte sensor has a volume that is no more than 1 µL and can be as low as 0.25 µL. (Id., col. 27, lines 1-5.) The concentration of an analyte can be measured using coulometry or non-coulometry assays. For a coulometry assay, the analyte concentration is directly related to the charge used to electrolyze the sample. The redox mediator and optional second electron transfer agent are chosen so that the analyte will be almost completely electrolyzed in less than 5 minutes or within about 1 minute. (Id., col. 41, lines 8-55.) The concentrations of a series of samples containing glucose was determined using the coulometry technique. Current flowing between the electrodes was measured up to the time required to electrolyze 90% of a known concentration of the analyte. The time for 90% of the analyte to be electrolyzed ranged from $13 \pm 6$ to $72 \pm 21$ sec. The measured current was then used to prepare a calibration curve. (Id., cols. 53 and 54). The non-coulometry assays utilize potentiometric, amperometric, and voltammetric techniques. (Id., col. 41, lines 59-65.) No specific details for using these techniques to measure an analyte were disclosed. However, Feldman et al. does not disclose a method of measuring an analyte in a sample by detecting the time at which the liquid sample enters the sample cavity and within 10 seconds of that time obtaining a readout of the concentration of the analyte in the liquid sample.

Davies et al. in US Publication 2002/0092612 and (WO 01/73124) disclose a disposable electrochemical sensor and a method of detecting an analyte. This reference discloses a method of determining an analyte using a sensor that includes a pair of electrodes in a sample chamber. An enzyme and a mediator coat one electrode (Davies et al., ¶0019.) The sample receiving volume is less than 1.5 μL and can be less than .5 μL. (¶0026.) The method of determining the analyte uses a very short test time that would be less than 10 seconds and can be less than 5 seconds. (¶0041.) However, as stated in the Declaration of Christopher D. Wilsey submitted concurrent with the Petition to Make Special, this reference is not a prior art reference under §102 or §103. The inventor listed on the present application provides evidence of conception and reduction to practice of the claimed invention prior to the filing date of February 22, 2002 for this publication.

The Petition to Make Special and the Statement in Support, filed herewith, also reference a OneTouch® Ultra™ System, which is a commercial product of Lifescan, Inc. of Milpitas, CA. However, as also stated in the Statement in Support (paragraph 3), the OneTouch® Ultra™ System was not made public more than a year before the priority date of the current application, and therefore does not constitute prior art under §102(b). Further, the Declaration of Christopher D. Wilsey provides evidence of conception and reduction to practice of the claimed invention more than one year prior to the filing of the present invention, and prior to the date believed by applicant to have been the earliest date of public disclosure of the OneTouch® Ultra™ System.

Consideration of the application in view of this art is respectfully requested.

Respectfully submitted,

Thomas Q. Henry
Reg. No. 28,309
Woodard, Emhardt, Naughton,
  Moriarty & McNett LLP
Bank One Center Tower
111 Monument Circle, Suite 3700
Indianapolis, Indiana  46204-5137
(317) 634-3456

7404-441.JBM.208582

PTO/SB/08A (1(
Approved for use through 10/31/2002. OMB 0651-0031 (C)
U.S. Patent and Trademark Office: U.S. DEPARTMENT OF COMMERCE**
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

Substitute for form 1449/PTO

# INFORMATION DISCLOSURE STATEMENT BY APPLICANT

*(use as many sheets as necessary)*

| | | |
|---|---|---|
| **Complete if Known** | | |
| Application Number | | |
| Filing Date | March 5, 2003 | |
| First Named Inventor | Christopher D. Wilsey | |
| Art Unit | | |
| Examiner Name | | |

| Sheet | 1 | of | 2 | Attorney Docket Number | 7404-473 BMID-9968C-US |
|---|---|---|---|---|---|

## U.S. PATENT DOCUMENTS

| Examiner Initials* | Cite No.¹ | Document Number Number-Kind Code² (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Application of Cited Document | Pages, Columns, Lines where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | | 4,759,828 | 07-26-1988 | Young et al. | |
| | | 5,049,487 | 09-17-1991 | Phillips et al. | |
| | | 5,250,439 | 10-05-1993 | Musho et al. | |
| | | 5,437,999 | 08-01-1995 | Diebold et al. | |
| | | 5,611,900 | 03-18-1997 | Worden et al | |
| | | 5,658,443 | 08-19-1997 | Yamamoto et al. | |
| | | 6,004,441 | 12-21-1999 | Fujiwara et al. | |
| | | 6,042,714 | 03-28-2000 | Lin et al | |
| | | 6,120,676 | 09-19-2000 | Heller et al. | |
| | | RE36,991 | 12-19-2000 | Yamamoto et al. | |
| | | 6,193,873 | 02-27-2001 | Ohara et al | |
| | | 6,241,862 | 06-05-2001 | McAleer et al. | |
| | | 6,258,229 | 07-10-2001 | Winarta et al. | |
| | | 6,284,125 | 09-04-2001 | Hodges et al. | |
| | | 6,338,790 | 01-15-2002 | Feldman et al. | |
| | | 2002/0092612 | 07-18-2002 | Davies et al. | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

| Examiner Initials* | Cite No.¹ | Foreign Patent Document Country Code³·Number⁴·Kind Code⁵ (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Application of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear | T⁶ |
|---|---|---|---|---|---|---|
| | | WO 95/22597 | 08-01-1995 | | | |
| | | WO 97/30344 | 08-21-1997 | | | |
| | | WO 98/35225 | 08-13-1998 | | | |
| | | EP 859 230 | 08-19-1998 | | | ✓ |
| | | EP 964 059 | 12-15-1999 | | | |
| | | WO 00/73778 | 12-07-2000 | | | |
| | | WO 01/73124 | 10-04-2001 | | | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

¹ Applicant's unique citation designation number (optional). ² See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. ³ Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). ⁴ For Japanese patent documents, the indication of the year of the reign of the emperor must precede the serial number of the patent document. ⁵ Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. ⁶ Applicant is to place a check mark here if English language Translation is attached.

Burden Hour Statement: This form is estimated to take 2.0 hours to complete. Time will vary depending upon the needs of the individual case. Any comments on the amount of time you are required to complete this form should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, Washington, DC 20231. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Assistant Commissioner for Patents, Washington, D.C. 20231.

7404-441.JBM.208582

PTO/SB/08A (1
Approved for use through 10/31/2002. OMB 0651-0031
U.S. Patent and Trademark Office: U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number

| Substitute for form 1449A/PTO | | | | Complete if Kn wn | |
|---|---|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** | | | Application Number | | |
| | | | Filing Date | March 5, 2003 | |
| | | | First Named Inventor | Christopher D. Wilsey | |
| | | | Art Unit | | |
| *(use as many sheets as necessary)* | | | Examiner Name | | |
| Sheet | 2 | of | 2 | Attorney Docket Number | 7404-473 BMID-9968C-US |

| OTHER PRIOR ART - NON PATENT LITERATURE DOCUMENTS | | | |
|---|---|---|---|
| Examiner Initials* | Cite No.¹ | Include name of the author (In CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date, page(s), volume-issue number(s) publisher city and/or country where published | T² |
| | | Chiba, K.; Ohsaka, T.; Ohnuki, Y.; and Oyama, N., *"Electrochemical Preparation of a Ladder Polymer Containing Phenazine Rings"*, J. Electroanal. Chem., 219 (1987) 117-124 | |
| | | Bartlett, P.N. and Whitaker, R.G., *"Electrochemical Immobilisation of Enzymes: Part I. Theory"*, J. Electroanal. Chem., 224 (1987) 27-35 | |
| | | Bartlett, P.N. and Whitaker, R.G., *"Electrochemical Immobilisation of Enzymes: Part II. Glucose Oxidase Immobilised in Poly-N-Methylpyrrole"*, J. Electroanal. Chem., 224 (1987) 37-48 | |
| | | Malitesta, Cosimino; Palmisano, Francesco*; Torsi, Luisa; and Zambonin Pier Giorgio, "Glucose Fast-Response Amperometric Sensor Based on Glucose Oxidase Immobilized in an Electropolymerized Poly($o$-phenylenediamine) Film", *Anal. Chem. 1990, 62, 2735-2740* | |
| | | Gregg, Brian A. and Heller, Adam, *"Cross-Linked Redox Gels Containing Glucose Oxidase for Amperometric Biosensor Applications"*, Anal. Chem. 1990, 62, 258-263 | |
| | | Lee, Jae-Suk; Nakahama, Seiichi; and Hirao, Akira, "A New Glucose Sensor Using Microporous Enzyme Membrane", *Sensors and Actuators B, 3 (1991) 215-219* | |
| | | Burke, David W. and Surridge, Nigel A., "Improved-Accuracy Biosensor Strip for Accu-Chek™ Advantage ®", presented orally at ACS Boston Meeting (~1993-1994) | |
| | | Miao, Y.; Chia, L.S.; Goh, N.K.; and Tan, S.N., "Amperometric Glucose Biosensor Based on Immobilization of Glucose Oxidase in Chitosan Matrix Cross-Linked with Glutaraldehyde", *Electroanalysis 2001, 13, No. 4* | |
| | | Lifescan product brochure for OneTouch® Ultra™ Test Strip | |
| | | Photocopies of the front and back portions of the commercial product marketed by Lifescan as the OneTouch made public at least as early as 2001 | |
| | | Owner's Booklet entitled "The Comfort of Control" by Lifescan | |
| | | "Quick Start Guide" for the OneTouch® Ultra™ Blood Glucose Monitoring System | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

¹ Applicant's unique citation designation number (optional). ² See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. ³ Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). ⁴ For Japanese patent documents, the indication of the year of the reign of the emperor must precede the serial number of the patent document. ⁵ Kind of document by the appropriate symbols as indicated on the document under WPO Standard ST.16 if possible. ⁶ Applicant is to place a check mark here if English language Translation is attached.

Burden Hour Statement: This form is estimated to take 2.0 hours to complete. Time will vary depending upon the needs of the individual case. Any comments on the amount of time you are required to complete this form should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, Washington, DC 20231. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Assistant Commissioner for Patents, Washington, D.C. 20231.

PTO/SB/08 A & B

MODIFIED PTO/SB/08 A & B (08-03)

| Substitute for Form 1449 A & B/PTO | | | Complete if Known | |
|---|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** *(use as many sheets as necessary)* | | | Application Number | Reexam of USP 7,276,146 |
| | | | Confirmation Number | Not yet determined |
| | | | Filing Date | December 14, 2007 |
| | | | First Named Inventor | Christopher D. WILSEY |
| | | | Art Unit | Not yet assigned |
| | | | Examiner Name | Not yet assigned |
| Sheet | 1 | of 1 | Attorney Docket Number | A9805 |

## U.S. PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Document Number | | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document |
|---|---|---|---|---|---|
| | | Number | Kind Code[2] (if known) | | |
| | | US 6,153,069 | A | 11-28-2000 | Pottgen et al. |
| | | US | | | |
| | | US | | | |
| | | US | | | |
| | | US | | | |
| | | US | | | |
| | | US | | | |
| | | US | | | |
| | | US | | | |
| | | US | | | |

## FOREIGN PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Foreign Patent Document | | | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Translation[6] |
|---|---|---|---|---|---|---|---|
| | | Country Code[3] | Number[4] | Kind Code[5] (if known) | | | |
| | | WO | 00/20626 | | April 13, 2000 | THERASENSE, INC | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

## NON PATENT LITERATURE DOCUMENTS

| Examiner Initials* | Cite No.[1] | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date, page(s), volume-issue number(s), publisher, city, and/or country where published. | Translation[6] |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*EXAMINER:  Initial if reference considered, whether or not citation is in conformance with MPEP 609.  Draw line through citation if not in conformance and not considered.  Include copy of this form with next communication to applicant.

[1]Applicant's unique citation designation number (optional).  [2]See Kind Codes of USPTO Patent Documents at www.uspto.gov, MPEP 901.04 or follow the hyperlink from the title of the document to the intranet.  [3] Enter Office that issued the document, by the two-letter code (WIPO Standard ST. 3).  [4]For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document.  [5]Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST. 16 if possible. [6] Applicant is to indicate here if English language Translation is attached.

[Page 1 of 1]

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 2596383 |
| **Application Number:** | 90010079 |
| **International Application Number:** | |
| **Confirmation Number:** | 9230 |
| **Title of Invention:** | ELECTRODES, METHODS, APPARATUSES COMPRISING MICRO-ELECTRODE ARRAYS |
| **First Named Inventor/Applicant Name:** | Christopher D. WILSEY |
| **Customer Number:** | 23373 |
| **Filer:** | John Timothy Callahan/Elaine Barton |
| **Filer Authorized By:** | John Timothy Callahan |
| **Attorney Docket Number:** | A9805 |
| **Receipt Date:** | 14-DEC-2007 |
| **Filing Date:** | |
| **Time Stamp:** | 21:34:54 |
| **Application Type:** | Reexam (Third Party) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | Deposit Account |
| Payment was successfully received in RAM | $ 2520 |
| RAM confirmation Number | 3795 |
| Deposit Account | 194880 |
| Authorized User | |
| The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows: | |
| Charge any Additional Fees required under 37 C.F.R. Section 1.17 (Patent application and reexamination processing fees) | |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes) /Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | | A9805requestforreexam.pdf | 5473004 710280d502ae64dbc58a1a6ac2be57d2 89f9e540c | yes | 136 |

| Multipart  Description/PDF files in .zip description | | |
|---|---|---|
| Document Description | Start | End |
| Receipt of Orig. Ex Parte Request by Third Party | 1 | 132 |
| Reexam Certificate of Service | 133 | 133 |
| Reexam Miscellaneous Incoming Letter | 134 | 136 |

**Warnings:**

**Information:**

| Document Number | Document Description | File Name | File Size(Bytes) /Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 2 | Copy of patent for which reexamination is requested | US7276146.pdf | 2157836 ce637e44dd0502c787666c84b8f904da 52c8d9bf | no | 33 |

**Warnings:**

**Information:**

| Document Number | Document Description | File Name | File Size(Bytes) /Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 3 | | A9805requestpart2.pdf | 371962 71696543c56b8d43632dd6c41567eef7 7d6069cd | yes | 11 |

| Multipart  Description/PDF files in .zip description | | |
|---|---|---|
| Document Description | Start | End |
| Reexam Miscellaneous Incoming Letter | 1 | 9 |
| Reexam - Info Disclosure Statement Filed by 3rd Party | 10 | 11 |

**Warnings:**

**Information:**

| Document Number | Document Description | File Name | File Size(Bytes) /Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 4 | Reexam - Info Disclosure Statement Filed by 3rd Party | US6153069.pdf | 1060781 4d36215d5cc1ab7ffc0a772e06d48448 d32818b9 | no | 19 |

**Warnings:**

**Information:**

| Document Number | Document Description | File Name | File Size(Bytes) /Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 5 | Reexam - Info Disclosure Statement Filed by 3rd Party | 00020626.pdf | 6096222 3ad0ed836a06d30e4f165a6b1ad0038e b9acc6de | no | 143 |

**Warnings:**

**Information:**

| 6 | Fee Worksheet (PTO-06) | fee-info.pdf | 8170 | no | 2 |
| | | | c8914de355c8ba08a51e609766Bd20c b66935256 | | |

| Warnings: |
| Information: |

| | Total Files Size (in bytes): | 15167975 |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

EXHIBIT B

PTO/SB/57 (09-07)
Approved for use through 08/31/2010. OMB 0651-0033
U.S. Patent and Trademark Office: U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

(Also referred to as FORM PTO-1465)

## REQUEST FOR *EX PARTE* REEXAMINATION TRANSMITTAL FORM

Address to:
**Mail Stop *Ex Parte* Reexam**
**Commissioner for Patents**
**P.O. Box 1450**
**Alexandria, VA 22313-1450**

**Attorney Docket No.:** A9806

**Date:** December 14, 2007

1. [X] This is a request for *ex parte* reexamination pursuant to 37 CFR 1.510 of patent number 7,276,147
   issued October 2, 2007. The request is made by:

   [ ] patent owner.   [X] third party requester.

2. [X] The name and address of the person requesting reexamination is:

   John T. Callahan

   SUGHRUE MION, PLLC

   2100 Pennsylvania Ave., N.W., Suite 800, Washington, DC 20037

3. [ ]   a.   A check in the amount of $_____ is enclosed to cover the reexamination fee, 37 CFR 1.20(c)(1);

   [X]   b.   The Director is hereby authorized to charge the fee as set forth in 37 CFR 1.20(c)(1)
            to Deposit Account No. 19-4880 _____ (submit duplicative copy for fee processing); or

   [ ]   c.   Payment by credit card. Form PTO-2038 is attached.

4. [X] Any refund should be made by [ ] check or [ ] credit to Deposit Account No. 19-4880 .
   37 CFR 1.26(c). If payment is made by credit card, refund must be to credit card account.

5. [X] A copy of the patent to be reexamined having a double column format on one side of a separate paper is
   enclosed. 37 CFR 1.510(b)(4)

6. [ ] CD-ROM or CD-R in duplicate, Computer Program (Appendix) or large table
   [ ] Landscape Table on CD

7. [ ] Nucleotide and/or Amino Acid Sequence Submission
   *If applicable, items a. – c. are required.*

   a. [ ] Computer Readable Form (CRF)
   b. Specification Sequence Listing on:

      i. [ ] CD-ROM (2 copies) or CD-R (2 copies); **or**
      ii. [ ] paper

   c. [ ] Statements verifying identity of above copies

8. [ ] A copy of any disclaimer, certificate of correction or reexamination certificate issued in the patent is included.

9. [X] Reexamination of claim(s) 1-69 is requested.

10. [X] A copy of every patent or printed publication relied upon is submitted herewith including a listing thereof on
    Form PTO/SB/08, PTO-1449, or equivalent.

11. [ ] An English language translation of all necessary and pertinent non-English language patents and/or printed
    publications is included.

[Page 1 of 2]
This collection of information is required by 37 CFR 1.510. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Mail Stop *Ex Parte* Reexam, Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.
*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

PTO/SB/57 (09-07)
Approved for use through 08/31/2010. OMB 0651-0033
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

12. [x]  The attached detailed request includes at least the following items:

   a. A statement identifying each substantial new question of patentability based on prior patents and printed publications. 37 CFR 1.510(b)(1)
   b. An identification of every claim for which reexamination is requested, and a detailed explanation of the pertinency and manner of applying the cited art to every claim for which reexamination is requested. 37 CFR 1.510(b)(2)

13. [ ]  A proposed amendment is included (only where the patent owner is the requester). 37 CFR 1.510(e)

14. [xx]  a. It is certified that a copy of this request (if filed by other than the patent owner) has been served in its entirety on the patent owner as provided in 37 CFR 1.33(c).
   The name and address of the party served and the date of service are:

   WOODARD, EMHARDT, MORIARTY, MCNETT & HENRY LLP

   111 Monument Circle, Suite 3700

   Indianapolis, IN 46204-5137

   Date of Service: December 14, 2007                    ; or

   [ ]  b. A duplicate copy is enclosed since service on patent owner was not possible.

15.  Correspondence Address: Direct all communication about the reexamination to:

[X]  The address associated with Customer Number:   | 23373

**OR**

| [ ] Firm or Individual Name | |
| Address | |
| | |
| City | State | Zip |
| Country | | |
| Telephone | Email | |

16. [xx]  The patent is currently the subject of the following concurrent proceeding(s):
   [ ]  a.  Copending reissue Application No. _____
   [ ]  b.  Copending reexamination Control No. _____
   [ ]  c.  Copending Interference No. _____
   [xx]  d.  Copending litigation styled:

        See attached sheet

**WARNING: Information on this form may become public. Credit card information should not be included on this form. Provide credit card information and authorization on PTO-2038.**

_John Callahan_                              December 14, 2007
Authorized Signature                              Date

John T. Callahan                    32,607         [ ] For Patent Owner Requester
Typed/Printed Name              Registration No.   [xx] For Third Party Requester

PTO/SB/57 (continued)

16.    The patent is currently the subject of the following concurrent proceeding(s):

☐ a.  Copending reissue Application No.
☐ b.  Copending reexamination Control No.
☐ c.  Copending Interference No.
☑ d.  Copending litigation styled:

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROCHE DIAGNOSTICS OPERATIONS, INC., and CORANGE INTERNATIONAL LIMITED, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| ABBOTT DIABETES CARE, INCORPORATED, and ABBOTT DIABETES CARE SALES CORPORATION, | ) ) ) ) | Civil Action No. 07-753 |
| BAYER HEALTHCARE, LLC, | ) ) | |
| DIAGNOSTICS DEVICES, INC., | ) ) | |
| LIFESCAN, INCORPORATED, and | ) ) | |
| NOVA BIOMEDICAL CORPORATION, and SANVITA INCORPORATED | ) ) ) | |
| Defendants. | ) | |

PATENT APPLICATION

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| In re application of | Docket No:  A9806 |
| Christopher D. WILSEY | Issued:  October 2, 2007 |
| U.S. Patent No. 7,276,147 | Application No. 10/382,322 |
| Filing Date: March 5, 2003 | Group Art Unit:  Unknown |
| Confirmation No.:  Unknown | Examiner:  Unknown |

For:   METHOD FOR DETERMINING THE CONCENTRATION OF AN ANALYTE IN A
LIQUID SAMPLE USING SMALL VOLUME SAMPLES AND FAST TEST TIMES

### REQUEST FOR *EX PARTE* REEXAMINATION BY THIRD PARTY REQUESTOR

**BOX REEXAM**
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Sir:

Requestor hereby respectfully requests reexamination under 35 U.S.C. § 302 and 37

C.F.R. §1.510 of U.S. Patent No. 7,276,147, which issued October 2, 2007 to Christopher D.

WILSEY, and is assigned to Roche Diagnostics Operations, Inc. and Corange International

Limited (hereinafter the "Wilsey '147 Patent").  Included herein is a detailed request for

reexamination, including the claims for which reexamination is requested, an explanation of

pertinence and manner of applying the cited art to every claim for which reexamination is

requested, and a statement identifying the substantial new question of patentability raised in view

of the cited art.[1]

---

[1] Requestor notes that the present Request for Reexamination is submitted concurrently with a Request
for Reexamination of U.S. Patent No. 7,276,146, also to Wilsey, which claims benefit to the same U.S.
Provisional Application (No. 60/332,411) as the Wilsey '147 Patent.

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

## TABLE OF CONTENTS

I.      CLAIMS FOR WHICH REEXAMINATION IS REQUESTED ........................................6
II.     BRIEF DESCRIPTION OF THE WILSEY '147 PATENT .........................................6
III.    OVERVIEW OF REQUEST FOR REEXAMINATION ..............................................8
IV.     RELEVANT SECTIONS OF U.S. PATENT LAWS ...............................................13
        A.      35 U.S.C. § 102(b) ......................................................................13
        B.      35 U.S.C. § 103(a) ......................................................................13
V.      EXPLANATION OF PERTINENCY OF CITED ART ............................................14
        A.      WO 00/20626 to Feldman et al. (WO '626) ................................14
        B.      U.S. Patent No. 6,153,069 to Pottgen et al. (the Pottgen '069 Patent) .....................18
VI.     MANNER OF APPLYING CITED ART TO EVERY CLAIM FOR WHICH REEXAMINATION IS
        REQUESTED ................................................................................20
        A.      Independent Claim 1 of the Wilsey '147 Patent ........................20
        B.      Claim 2 of the Wilsey '147 Patent ...........................................23
        C.      Claim 3 of the Wilsey '147 Patent ...........................................24
        D.      Claim 4 of the Wilsey '147 Patent ...........................................25
        E.      Claim 5 of the Wilsey '147 Patent ...........................................26
        F.      Claim 6 of the Wilsey '147 Patent ...........................................27
        G.      Claim 7 of the Wilsey '147 Patent ...........................................28
        H.      Claim 8 of the Wilsey '147 Patent ...........................................28
        I.      Claim 9 of the Wilsey '147 Patent ...........................................30
        J.      Claims 10-11 of the Wilsey '147 Patent ...................................31
        K.      Claim 12 of the Wilsey '147 Patent .........................................32
        L.      Claim 13 of the Wilsey '147 Patent .........................................33
        M.      Claims 14 of the Wilsey '147 Patent ........................................34
        N.      Claim 15 of the Wilsey '147 Patent .........................................35
        O.      Claims 16-17 of the Wilsey '147 Patent ...................................35
        P.      Claim 18 of the Wilsey '147 Patent .........................................36
        Q.      Claim 19 of the Wilsey '147 Patent .........................................37
        R.      Claim 20 of the Wilsey '147 Patent .........................................37
        S.      Claim 21 of the Wilsey '147 Patent .........................................39
        T.      Claim 22 of the Wilsey '147 Patent .........................................40
        U.      Claim 23 of the Wilsey '147 Patent .........................................40
        V.      Claim 24 of the Wilsey '147 Patent .........................................41
        W.      Claim 25 of the Wilsey '147 Patent .........................................42
        X.      Claim 26 of the Wilsey '147 Patent .........................................43
        Y.      Claim 27 of the Wilsey '147 Patent .........................................43
        Z.      Claim 28 of the Wilsey '147 Patent .........................................45
        AA.     Claim 29 of the Wilsey '147 Patent .........................................45
        BB.     Claims 30-35 of the Wilsey '147 Patent ...................................46
        CC.     Independent Claim 36 of the Wilsey '147 Patent .......................48
        DD.     Claim 37 of the Wilsey '147 Patent .........................................51

2

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

EE.    Claim 38 of the Wilsey '147 Patent ........................................................52
FF.    Claim 39 of the Wilsey '147 Patent ........................................................53
GG.    Claim 40 of the Wilsey '147 Patent ........................................................53
HH.    Claim 41 of the Wilsey '147 Patent ........................................................54
II.    Claim 42 of the Wilsey '147 Patent ........................................................55
JJ.    Claim 43 of the Wilsey '147 Patent ........................................................56
KK.    Claim 44 of the Wilsey '147 Patent ........................................................56
LL.    Claims 45-50 of the Wilsey '147 Patent ..................................................57
MM.    Claim 51 of the Wilsey '147 Patent ........................................................59
NN.    Claim 52 of the Wilsey '147 Patent ........................................................59
OO.    Claim 53 of the Wilsey '147 Patent ........................................................60
PP.    Claims 54-55 of the Wilsey '147 Patent ..................................................60
QQ.    Claim 56 of the Wilsey '147 Patent ........................................................62
RR.    Claim 57 of the Wilsey '147 Patent ........................................................62
SS.    Claim 58 of the Wilsey '147 Patent ........................................................64
TT.    Claim 59 of the Wilsey '147 Patent ........................................................66
UU.    Claim 60 of the Wilsey '147 Patent ........................................................67
VV.    Claim 61 of the Wilsey '147 Patent ........................................................67
WW.    Claim 62 of the Wilsey '147 Patent ........................................................68
XX.    Claim 63 of the Wilsey '147 Patent ........................................................69
YY.    Claim 64 of the Wilsey '147 Patent ........................................................69
ZZ.    Claim 65 of the Wilsey '147 Patent ........................................................70
AAA.   Claim 66 of the Wilsey '147 Patent ........................................................71
BBB.   Claim 67 of the Wilsey '147 Patent ........................................................71
CCC.   Claim 68 of the Wilsey '147 Patent ........................................................72
DDD.   Claim 69 of the Wilsey '147 Patent ........................................................72
VII.   SUBSTANTIAL NEW QUESTIONS OF PATENTABILITY CREATED BY THE CITED ART ......73
A.     Claims 1-12, 16-61, and 65-69 of the Wilsey '147 Patent are Anticipated by WO
       '626 Under 35 U.S.C. § 102(b) ..............................................................73
i.     Independent Claim 1 ..........................................................................73
ii.    Claim 2 ..............................................................................................81
iii.   Claim 3 ..............................................................................................83
iv.    Claim 4 ..............................................................................................84
v.     Claim 5 ..............................................................................................84
vi.    Claim 6 ..............................................................................................86
vii.   Claim 7 ..............................................................................................87
viii.  Claim 8 ..............................................................................................87
ix.    Claim 9 ..............................................................................................89
x.     Claim 10 ............................................................................................90
xi.    Claim 11 ............................................................................................90
xii.   Claim 12 ............................................................................................90
xiii.  Claim 16 ............................................................................................92
xiv.   Claim 17 ............................................................................................93

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

| | | |
|---|---|---|
| xv. | Claim 18 | 93 |
| xvi. | Claim 19 | 94 |
| xvii. | Claim 20 | 94 |
| xviii. | Claim 21 | 95 |
| xix. | Claim 22 | 96 |
| xx. | Claim 23 | 96 |
| xxi. | Claim 24 | 97 |
| xxii. | Claim 25 | 98 |
| xxiii. | Claim 26 | 98 |
| xxiv. | Claim 27 | 99 |
| xxv. | Claim 28 | 100 |
| xxvi. | Claim 29 | 100 |
| xxvii. | Claim 30 | 101 |
| xxviii. | Claim 31 | 102 |
| xxix. | Claim 32 | 103 |
| xxx. | Claim 33 | 104 |
| xxxi. | Claim 34 | 105 |
| xxxii. | Claim 35 | 106 |
| xxxiii. | Independent Claim 36 | 107 |
| xxxiv. | Claim 37 | 115 |
| xxxv. | Claim 38 | 116 |
| xxxvi. | Claim 39 | 117 |
| xxxvii. | Claim 40 | 117 |
| xxxviii. | Claim 41 | 118 |
| xxxix. | Claim 42 | 118 |
| xl. | Claim 43 | 119 |
| xli. | Claim 44 | 120 |
| xlii. | Claim 45 | 121 |
| xliii. | Claim 46 | 122 |
| | Claim 47 | 123 |
| xliv. | Claim 48 | 124 |
| xlvi. | Claim 49 | 125 |
| xlvii. | Claim 50 | 126 |
| xlviii. | Claim 51 | 127 |
| xlix. | Claim 52 | 127 |
| l. | Claim 53 | 128 |
| li. | Claim 54 | 129 |
| lii. | Claim 55 | 129 |
| liii. | Claim 56 | 130 |
| liv. | Claim 57 | 131 |
| lv. | Claim 58 | 132 |
| lvi. | Claim 59 | 133 |
| lvii. | Claim 60 | 134 |

4

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

| | | |
|---|---|---|
| lviii. | Claim 61 | 135 |
| lix. | Claim 65 | 136 |
| lx. | Claim 66 | 138 |
| lxi. | Claim 67 | 138 |
| lxii. | Claim 68 | 139 |
| lxiii. | Claim 69 | 139 |
| B. | Claims 13-15, and 62-64 of the Wilsey '147 Patent are Unpatentable Under 35 U.S.C. § 103(a) over WO '626 in view of U.S. Patent No. 6,153,069 to Pottgen et al. (the Pottgen '069 Patent) | 140 |
| i. | Claim 13 | 140 |
| ii. | Claim 14 | 141 |
| iii. | Claim 15 | 143 |
| iv. | Claim 62 | 144 |
| v. | Claim 63 | 146 |
| vi. | Claim 64 | 147 |
| VIII. | CONCLUSION | 148 |

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

## I. CLAIMS FOR WHICH REEXAMINATION IS REQUESTED

The Wilsey '147 Patent contains Claims 1-69. A copy of the Wilsey '147 Patent is enclosed as Appendix I in double column format on one side of a separate paper.

Reexamination is requested for Claims 1-69.

Reexamination is requested in view of WO 00/20626 to Feldman et al. (WO '626) and U.S. Patent No. 6,153,069 to Pottgen et al. (the Pottgen '069 Patent).

Reexamination is requested because Claims 1-12, 16-61, and 65-69 of the Wilsey '147 Patent are anticipated by WO '626 Under 35 U.S.C. § 102(b), and Claims 13-15 and 62-64 are unpatentable under 35 U.S.C. § 103(a) as being obvious over WO '626 in view of the Pottgen '069 Patent, for the reasons discussed in detail below.

## II. BRIEF DESCRIPTION OF THE WILSEY '147 PATENT

The Wilsey '147 Patent is directed to arrays of electrodes and methods of preparing the arrays, wherein the arrays may be used as an electrode in an electrochemical sensor.

More specifically, the Wilsey '147 Patent is directed to methods of determining the concentration of glucose in a blood sample. The electrochemical sensor of Wilsey comprises a disposable biosensor test strip including a capillary chamber having a depth suitable for capillary flow of blood. The chamber of the test strip is able to hold a volume of between about 0.1 μl and about 1.0 μl of the blood sample. The electrochemical sensor further comprises a working electrode and a counter or reference electrode disposed within the capillary chamber, and a reagent proximal to or in contact with at least the working electrode. The compound of interest, for example glucose, is first reacted with a chemical or a set of chemicals. These chemicals

6

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

(reagents) can include an enzyme and a mediator.  Once the reagent reacts with the glucose, the result is an electroactive reaction product.

The method described in the Wilsey '147 Patent utilizes the above described sensor.  In this regard, the method comprises applying a blood sample containing glucose into the capillary chamber.  Once the blood is applied, the capillary chamber directs capillary flow of the blood sample into contact with the reagent to cause the blood sample to at least partially solubilize or hydrate the reagent.  Next, the sensor detects the blood sample in the capillary chamber.  In the Wilsey '147 Patent, blood is detected using a "drop detect" system, which senses current flow between the working and counter electrodes when blood covers the nearest working and counter electrodes.  (*See* col. 22, lines 16-60).  Upon detecting blood in the capillary chamber, the potential difference across the electrodes goes to an open circuit for a predetermined delay period (generally 3 seconds).  (*See* col. 22, lines 41-43).  During this delay period, reaction will occur between the reactants, resulting in reduction of the mediator.  (*See* col. 22, lines 44-47).  After the predetermined delay period, a predetermined voltage (assay potential) or current is again applied across the working and counter electrodes.  This causes electrooxidation of the reduced mediator at the surface of the working electrode.  (*See* col. 22, lines 40-41).  The Wilsey '147 Patent further discloses that the sensor can determine and provide a readout of the glucose concentration in the blood sample within 10 seconds after the blood sample is detected in the capillary chamber.  More specifically, determining the glucose concentration in the blood includes correlating the electrooxidized or electroreduced electroactive reaction product to the concentration of glucose in the blood sample.

7

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

### III. OVERVIEW OF REQUEST FOR REEXAMINATION

Requestor respectfully requests reexamination of the Wilsey '147 Patent on the grounds that the prior art discussed herein presents a substantial new question of patentability with respect to Claims 1-69 of the Wilsey '147 Patent. Specifically, WO 00/20626 (WO '626) anticipates Claims 1-12, 16-61, and 65-69 of the Wilsey '147 Patent under 35 U.S.C. § 102(b), and renders obvious Claims 13-15 and 62-64 of the Wilsey '147 Patent under 35 U.S.C. § 103(a) in view of U.S. Patent No. 6,153,069 to Pottgen et al. (the Pottgen '069 Patent).

WO '626 was one of 22 references that were submitted as part of an Information Disclosure Statement (IDS) of January 14, 2004 at the outset of the prosecution of the application which matured into the Wilsey '147 Patent (U.S. Appl. Ser. No. 10/382,322 filed March 5, 2003, hereinafter "the '322 Application"), and WO '626 was one of 267 total references submitted in IDSs during the prosecution of the '322 Application. No comment was made on WO '626 when it was submitted for consideration. The Examiner similarly did not comment on WO '626 during the prosecution of the '322 Application.

The U.S. equivalent to WO '626 (U.S. Patent No. 6,338,790) was also cited in an IDS during the prosecution of the Wilsey '147 Patent. In the IDS filed on March 5, 2003 it was asserted that U.S. Patent No. 6,338,790 (WO '626) "does not disclose a method of measuring an analyte in a sample by detecting the time at which the liquid sample enters the sample cavity and within 10 seconds of that time obtaining a readout of the concentration of the analyte in the liquid sample." (*See* IDS filed March 5, 2003 (page 4), provided as Appendix II). However, as demonstrated below, this characterization by the Applicant was incorrect.

8

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

As explained herein, WO '626 presents a substantial new question of patentability with respect to Claims 1, 3-11, 16-60, and 65-69 of the Wilsey '147 Patent. WO '626 discloses every element required by these claims of the '147 Patent. Importantly, during prosecution of the Wilsey '147 Patent, the Applicant repeatedly emphasized that the prior art allegedly failed to disclose providing a readout of blood glucose concentration in less than 10 seconds. (*See, e.g.*, the Supplemental Response to Office Action dated June 5, 2006; the Amendment dated December 22, 2006 (pages 26 and 34); and the Letter to the Examiner Relating to Applicant Initiated Interview Request dated April 20, 2007 (pages 6-7)). However, WO '626 demonstrates that these arguments were incorrect because it clearly discloses a method for determining and displaying the concentration of glucose in a blood sample smaller than 1.0 µl <u>in a time period of less than 10 seconds</u>. Specifically, Requestor respectfully notes that FIG. 17 in WO '626 illustrates a measurement time of less than 10 seconds.

FIG. 17 (shown below) of WO '626 illustrates the sensor signal as a function of time used to determine and provide a readout of the concentration of an analyte, such as glucose. (*See, e.g.*, Abstract; page 97, lines 13-14).

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

**FIG. 17**



For convenience, and as will be discussed below, the % of analyte electrolyzed has been added along the right side of the FIG. 17, reproduced below, and a line at T= about 3 seconds has also been added to indicate the time at which 20% of the analyte has been electrolyzed.

10

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

FIG. 17



Importantly, WO '626 discloses that it is not necessary to wait for 100% of the analyte to be electrolyzed before the analyte concentration can be determined. Specifically, WO '626 discloses that for measurement, "at least 20% of the analyte is electrolyzed [and preferably] at least 50%, more preferably at least 80%, and even more preferably at least 90% of the analyte is electrolyzed" (page 64 of WO '626, lines 1-3). As explained in WO '626 (see paragraph bridging pages 64 and 65):

> The current is measured during the partial reaction [i.e., when 20 % of the analyte is electrolyzed,] and then extrapolated using mathematical techniques known to those skilled in the art to determine the current curve for the complete or nearly complete electrolysis of the analyte. Integration of this curve yields the amount of charge that would be passed if the analyte were completely or nearly completely electrolyzed and, using equation (3a) or (3b), the concentration of the analyte is calculated.

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

Accordingly, WO '626 discloses that it is possible to reduce the response time of the sensor by determining analyte concentration when as little as 20% of the analyte has been electrolyzed. In FIG. 17, 20% of the analyte of Sensor B is electrolyzed at about 3 seconds. Thus, it can easily be understood that in the device taught by WO '626, when 20% of the analyte is electrolyzed, the readout time is about 3 seconds, which is well within the 10 second limitation for determining and providing a readout of the glucose concentration in the blood sample required by the claims of the Wilsey '147 Patent.

There is no indication that this critical disclosure of WO '626 was appreciated during the original examination of the application for the Wilsey '147 Patent. To the contrary, the Applicant specifically represented that this disclosure was not present in WO '626 or elsewhere in the prior art.

Moreover, WO '626 teaches several methods to further reduce the response time of the sensor. In particular, WO '626 teaches that "[i]ncreasing the amount of diffusible redox mediator in the sample decreases the response time of the sensor." (*See* page 96, lines 8-10). Similarly, as an alternative to increasing the amount of redox mediator in the sample, WO '626 also teaches that a heating element can be provided "to heat the sample chamber to increase the rate of oxidation or reduction of the analyte." (*See* page 4, lines 5-7). WO '626 also teaches decreasing the thickness of the sample chamber "to promote rapid electrolysis of the analyte, as more of the sample will be in contact with the electrode surface for a given sample volume." (*See* page 42, lines 14-16). Accordingly, WO '626 discloses methods which can be applied to further reduce the sensor response time illustrated in FIG. 17 of WO '626.

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

With respect to Claims 2, 12-15, and 61-64, as discussed below, the combination of WO '626 and U.S. Patent No. 6,153,069 to Pottgen et al. (the Pottgen '069 Patent) renders obvious the subject matter of these claims. Specifically, the Pottgen '069 Patent discloses a drop-detect measurement method that would be obvious to use in combination with the method disclosed in WO '626.

In view of the above, a substantial new question of patentability is presented that was not addressed during the prosecution of the Wilsey '147 Patent. Accordingly, reexamination is appropriate.

## IV. RELEVANT SECTIONS OF U.S. PATENT LAWS

### A. 35 U.S.C. § 102(b)

Under 35 U.S.C. § 102(b), "[a] person shall be entitled to a patent unless . . . the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States."

### B. 35 U.S.C. § 103(a)

Under 35 U.S.C. § 103(a) "[a] patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made."

13

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

## V. EXPLANATION OF PERTINENCY OF CITED ART

The application for the Wilsey '147 Patent was filed on March 5, 2003 as a continuation-of U.S. Application No. 10/264,785, filed on October 4, 2002, and claims priority to Provisional Application No. 60/332,411, filed on November 16, 2001.

### A. WO 00/20626 to Feldman et al. (WO '626)

WO '626 published on April 13, 2000, and constitutes prior art under 35 U.S.C. § 102(b) against the Wilsey '147 Patent.

WO '626 discloses a method of determining the level of glucose in blood (*see, e.g.,* Abstract; page 97, lines 13-14).  The method involves the use of the disposable biosensor test strip, such as the strip illustrated in FIG. 5 of WO '626:



FIG. 5

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

The test strip includes a sample chamber that holds a sample of blood as small as 0.25 µl
(page 2, line 30 through page 3, line 4).

The test strip also includes electrodes 22 and 24 (including a working electrode), which
are illustrated in FIG. 4, shown below, as part of sample chamber 26:



The electrodes 22 and 24 may be associated with (e.g., proximal to or disposed on) a
reagent, which may include redox mediator and an enzyme (page 37, lines 3-9; page 37, lines 3-
9; and page 14, lines 15-16).  In addition, the test strip may include an indicator electrode (page
4, lines 1-3; page 80, lines 26-28).

During operation, an aqueous sample such as blood enters the sample chamber, where it
comes into contact with the working and counter electrodes.  A fill indicator may be provided to
detect when the sample chamber has been filled.  (Page 4, lines 1-3).  After the chamber has been
filled, *i.e.,* following detection by the fill indicator, an external potential may be applied between
the electrodes 22, 24.  (Page 60, lines 10-11).

15

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

While in the sample chamber, the analyte, such as glucose in the sample, reacts with the reagent, creating an electrically active compound which is electrooxidized or electroreduced at the working electrode (page 11, lines 24-25). The sample may be then measured to determine the concentration of glucose in the blood.

As discussed above, FIG. 17 in WO '626 illustrates a curve used to determine and provide a readout of the concentration of an analyte, such as glucose. FIG. 17 is again reproduced below, with a line at T= about 3 seconds added to aid the understanding of the Figure. T= about 3 seconds corresponds to the time at which 20% of the electrolyte in Sensor B has been electrolyzed.

In the Figure, the curve labeled "1X Chemistry" (Sensor A) differs from the curve labeled "3X Chemistry" (Sensor B) only in that the "3X Chemistry" curve represents a sensor which contains 3 times the amount of reagent as the "1X Chemistry" sensor.

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

FIG. 17



Importantly, WO '626 discloses that it is not necessary to wait for 100% of the analyte to

be electrolyzed before the analyte concentration can be determined. Specifically, WO '626

discloses that for measurement, "at least 20% of the analyte is electrolyzed [and preferably] at

least 50%, more preferably at least 80%, and even more preferably at least 90% of the analyte is

electrolyzed" (page 64 of WO '626, lines 1-3). As explained in WO '626 (*see* paragraph

bridging pages 64 and 65):

> The current is measured during the partial reaction [*i.e.,* when 20% of the analyte
> is electrolyzed,] and then extrapolated using mathematical techniques known to
> those skilled in the art to determine the current curve for the complete or nearly
> complete electrolysis of the analyte. Integration of this curve yields the amount of
> charge that would be passed if the analyte were completely or nearly completely
> electrolyzed and, using equation (3a) or (3b), the concentration of the analyte is
> calculated.

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

Accordingly, WO '626 discloses that it is possible to reduce the response time of the sensor by determining analyte concentration when as little as 20% of the analyte has been electrolyzed. In FIG. 17, 20% of the analyte of Sensor B is electrolyzed at about T= about 3 seconds, which is substantially less than the 10 second limitation required by the independent claims of the Wilsey '147 Patent.

WO '626 also teaches making sensors having decreased measurement time intervals of less than 10 seconds. WO '626 teaches that several conditions exist which may be manipulated to reduce the response time of the sensor. In particular, WO '626 teaches that "[i]ncreasing the amount of diffusible redox mediator in the sample decreases the response time of the sensor." (*See* page 96, lines 8-10). Similarly, instead of increasing the amount of redox mediator in the sample, WO '626 teaches that a heating element can be provided "to heat the sample chamber to increase the rate of oxidation or reduction of the analyte." (*See* page 4, lines 5-7). WO '626 also teaches decreasing the thickness of the sample chamber "to promote rapid electrolysis of the analyte, as more of the sample will be in contact with the electrode surface for a given sample volume." (*See*, page 42, lines 14-16). Accordingly, WO '626 teaches ways in which to decrease the response time of the sensor therein.

The test results obtained using the biosensor strip disclosed in WO '626 may be reported in a display. (*See* page 59, lines 9-18).

### B. U.S. Patent No. 6,153,069 to Pottgen et al. (the Pottgen '069 Patent)

The Pottgen '069 Patent relates to a method and apparatus for quantitatively determining the presence of biological compounds such as glucose, from body fluids, such as blood.

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

The Pottgen '069 Patent describes an apparatus comprising a housing for receiving a sample cell. The sample cell 20 includes a volumetric well 21, into which the sample of blood (drop of blood) is placed. (*See* col. 5, lines 53-57). The volumetric well 21 also contains the reagent for reacting with the blood. The reagent may be a combination of a redox mediator and an enzyme. (*See* col. 8, lines 24 and 25).

The testing procedure of the Pottgen '069 Patent is initiated when the sample cell is positioned through window 19 (FIG. 1) in the housing of the measuring apparatus. Once inserted, a potential is applied at portion 27 (FIG. 2) of the sample cell across electrodes 24 and 26 to detect the presence of the sample. (*See* col. 9, line 66 through col. 10, line 1). The measuring apparatus recognizes when the drop of blood is applied to the sample cell by the sudden charging current flow that occurs when the electrodes and the overlaying reagent layer are initially wetted by the sample fluid (blood). (*See* col. 4, lines 23-26).

Once the sample's presence is detected, the potential is withdrawn, or turned off, and the incubation period is initiated. (*See* col. 10, lines 2-3). It is indicated that the length of this period is chemistry dependent. (*See* col. 4, lines 26-29). The sample fluid (blood) reacts with the reagent (or reagents) inside the volumetric chamber 21, to create an electroactive product.

An electrical potential is next applied at portion 27 of the sample cell to electrodes 24 and 26 and the current through the sample is measured and displayed on display 16. (*See* col. 10, lines 8-11).

19

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

**VI. MANNER OF APPLYING CITED ART TO EVERY CLAIM FOR WHICH REEXAMINATION IS REQUESTED**

### A. Independent Claim 1 of the Wilsey '147 Patent

Independent Claim 1 of the Wilsey '147 Patent reads as follows:

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| A method of determining the concentration of glucose in a blood sample, comprising: | WO '626 discloses that the invention can be used to determine the level of glucose in blood. (*see, e.g.,* Abstract; page 97, lines 13-14) |
| providing a disposable biosensor test strip including a capillary chamber having a depth suitable for capillary flow of blood and holding a volume of less than about 1.0 µl of the blood sample, | WO '626 discloses a "disposable" biosensor test strip, and FIGS. 3 and 5 in WO '626 illustrate the test strip and the capillary chamber 26 therein:<br><br>WO '626 also discloses that the chamber 26 has a holding volume of "no more than about 1 µl, preferably no more than about 0.5 µl, more preferably no more than about 0.25 µl, and most preferably no more than about 0.1 µl" (page 2, line 30 through page 3, line 4). |
| a working electrode and a counter or reference electrode disposed within the capillary chamber, | FIG. 4 in WO '626 shows that "the sample chamber 26 is typically defined by a combination of the electrodes 22, 24, an inert base 30, and a spacer 28" (page 41, lines 12-13): |

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
|  | |
| and a reagent proximal to or in contact with at least the working electrode, | WO '626 discloses that the reagent may be proximal to or "disposed on…the working electrode" (page 14, lines 15-17). |
| the reagent including an enzyme and a mediator, | WO '626 discloses the use of "a redox mediator and … an enzyme" (page 37, lines 3-9). |
| the reagent reacting with glucose to produce an electroactive reaction product; | The sensor in WO '626 works as a result of the reaction between glucose (Abstract) and the reagent (page 60, lines 22-26). |
| applying a blood sample containing glucose into the capillary chamber, | The blood sample containing glucose (Abstract) is applied to the chamber in the sensor in WO '626 (page 12, lines 7-9). |
| the capillary chamber directing capillary flow of the blood sample into contact with the reagent to cause the blood sample to at least partially solubilize or hydrate the reagent; | WO '626 discloses that "capillary action" may be used to transport the sample into the sample chamber (page 47, lines 11-17).<br><br>The sample chamber in WO '626 is "configured so that…the sample is in electrolytic contact with…the working electrode" (page 12, lines 7-9), and the reagent may be proximal to or "disposed on … the working electrode" (page 14, lines 15-17).<br><br>WO '626 discloses that the "redox mediator and/or second electron transfer agent may first dissolve from the surface on which it was placed as a solid." (page 15, lines 1-2). |
| detecting the blood sample in the capillary | The sensor in WO '626 may include an indicator |

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| chamber; | electrode, detecting when blood has filled the chamber (page 4, lines 1-3; page 80, lines 26-28). |
| electrooxidizing or electroreducing the electroactive reaction product at the working electrode; | The working electrode in WO '626 is defined as "an electrode at which analyte is electrooxidized or electroreduced…" (page 4, lines 24-25). |
| and within 10 seconds after said detecting, determining and providing a readout of the glucose concentration in the blood sample, | FIG. 17 in WO '626 illustrates a curve used to determine and provide a readout of the concentration of an analyte, such as glucose (*see, e.g.,* Abstract; page 97, lines 13-14), after detecting the blood sample:  FIG. 17 <br><br> WO '626 discloses that for measurement, "at least 20% of the analyte is electrolyzed. Preferably at least 50%, more preferably at least 80%, and even more preferably at least 90% of the analyte is electrolyzed" (page 64, lines 1-3). In FIG. 17, 20% of the analyte of Sensor B is electrolyzed at T= about 3 seconds, which is within 10 seconds as required by the claim. <br><br> WO '626 further indicates that "it is typically desirable that the analyte be electrolyzed quickly" and teaches that the potential applied between electrodes and the size of the measurement zone, for example, may be manipulated to quicken the electrolysis of the analyte (page 64, lines 12-19). <br><br> The results may be reported in a display (page 59, lines 9-18). |

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| said determining comprising correlating the electrooxidized or electroreduced electroactive reaction product to the concentration of glucose in the blood sample. | WO '626 discloses the use of the sensors to "determine the glucose concentration in blood samples" (*See, e.g.,* Abstract; page 97, lines 13-14).<br><br>WO '626 discloses that "[o]ne aspect of the invention is a method of determining the concentration of an analyte in a sample by contacting the sample with an electrochemical sensor and determining the concentration of the analyte." (page 3, lines 20-22). |

The above Table shows that every element of Claim 1 is present in the cited art.

Therefore, a substantial new question of patentability is raised with respect to this claim.

### B.  Claim 2 of the Wilsey '147 Patent

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| The method of claim 1 in which said detecting comprises applying a dose-detect potential between the working and counter or reference electrodes, and recognizing a rise in current as an indication that the sample has been supplied to the capillary chamber. | WO '626 discloses that "[w]hen an external potential is applied, it may be applied either before or after the sample has been placed in the sample chamber." (*See* page 60, lines 10-11). Applying the potential before the sample is placed in the chamber will not affect the accuracy of the assay. (*See* page 60, lines 16-17).  "When the potential is applied and the sample is in the measurement zone, an electrical current  will flow between the working electrode and the counter electrode." (*See* page 60, lines 17-19).<br><br>As also shown in FIG. 17, reproduced below, current starts flowing when the sample contacts both the working and counter electrodes. |

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147



The above Table shows that each element of Claim 2 is present in the cited art.

Therefore, a substantial new question of patentability is raised with respect to this claim.

### C. *Claim 3 of the Wilsey '147 Patent*

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| The method of claim 1 in which the test strip includes a vent communicating with the capillary chamber to facilitate flow of the sample into the capillary chamber. | FIG. 21C in WO '626 discloses a "vent hole 574 (indicated as the shaded area in FIG. 21C)" (page 53, lines 7-9):<br><br>FIG. 21C |

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

The above Table shows that each element of Claim 3 is present in the cited art.

Therefore, a substantial new question of patentability is raised with respect to this claim.

### D. Claim 4 of the Wilsey '147 Patent

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| The method of claim 1 in which said providing comprises providing the reagent in a sufficiently small amount as to be solubilized or hydrated in a time sufficient to allow said determining and providing a readout of the glucose concentration in the sample within 10 seconds after said detecting. | FIG. 17 in WO '626 illustrates a curve used to determine and provide a readout of the concentration of an analyte, such as glucose (*see, e.g.,* Abstract; page 97, lines 13-14), after detecting the blood sample:<br><br><br><br>WO '626 discloses that for measurement, "at least 20% of the analyte is electrolyzed. Preferably at least 50%, more preferably at least 80%, and even more preferably at least 90% of the analyte is electrolyzed" (page 64, lines 1-3). In FIG. 17, 20% of the analyte of Sensor B is electrolyzed at T= about 3 seconds.<br><br>WO '626 discloses that the "redox mediator and/or second electron transfer agent may first dissolve from the surface on which it was placed as a solid." (page 15, lines 1-2).<br><br>Additionally WO '626 teaches that, "[i]t is typically desirable that the analyte be electrolyzed quickly." (*See* page 64, lines 12-13). In this regard, WO '626 teaches that "[t]he speed of the electrochemical reaction |

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

| | |
|---|---|
| | depends on several factors, including the potential that is applied between the electrodes …, [and] the size of the measurement zone." (*See* page 64, lines 13-16).<br><br>WO '626 discloses that the results may be reported in a display (page 59, lines 9-18). |

The above Table shows that each element of Claim 4 is present in the cited art.

Therefore, a substantial new question of patentability is raised with respect to this claim.

### E. *Claim 5 of the Wilsey '147 Patent*

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| The method of claim 1 in which said providing comprises providing a test strip including a bottom substrate, a spacing layer, and a top substrate, the spacing layer having an opening corresponding to the capillary chamber, | FIGS. 1-4 in WO '626 show that "[t]he sample chamber 26 is typically defined by a combination of the electrodes 22,24, an inert base 30, and a spacer 28 … [and a] measurement zone is contained within this sample chamber and is the region of the sample chamber that contains only that portion of the sample that is interrogated during the analyte assay. In the embodiment of the invention illustrated in FIGS. 1 and 2, sample chamber 26 is the space between the two electrodes 22,24 and/or the inert base 30." (page 41, lines 12-18).  The top substrate may be seen as element 38 in FIG. 3 of WO '626. |
| the spacing layer substantially defining the depth of the capillary chamber. | WO '626 discloses that "the thickness of the sample chamber and of the measurement zone correspond typically to the thickness of spacer 28." (page 42, lines 10-12). |

The above Table shows that each element of Claim 5 is present in the cited art.

Therefore, a substantial new question of patentability is raised with respect to this claim.

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

### F.  Claim 6 of the Wilsey '147 Patent

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| The method of claim 5 in which the test strip is elongated with two opposed sides, the spacing layer comprising spaced-apart first and second portions defining a capillary chamber extending between and opening at the two opposed sides. | WO '626 discloses a "disposable" biosensor test strip. (*See, e.g.,* page 57, lines 22-25).  Further, as shown in FIG. 3 of WO '626, reproduced below, the sensor 20 (test strip) is elongated with two opposite sides.  Additionally, the spacer 28 is made up of two portions, which define a sample chamber 26. (*See* page 41, lines 12-24).  WO '626 also discloses that "capillary action" may be used to transport the sample into the sample chamber (page 47, lines 11-17).<br><br> |

The above Table shows that each element of Claim 6 is present in the cited art.

Therefore, a substantial new question of patentability is raised with respect to this claim.

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

### G. Claim 7 of the Wilsey '147 Patent

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| The method of claim 1 in which said providing comprises providing a mediator in its oxidized form. | The sample chamber in WO '626 is "configured so that…the sample is in electrolytic contact with … the working electrode" (page 12, lines 7-9), and the reagent may be proximal to or "disposed on … the working electrode" (page 14, lines 15-17).<br><br>In one exemplary embodiment, the reagent in WO '626 may comprise "a redox mediator and … an enzyme" (page 37, lines 3-9).<br><br>WO '626 discloses that "[t]he sensor configurations and methods described above are generally useful and include, for example, using low concentrations of the redox mediator and/or the second electron transfer agent (e.g., enzyme) relative to the concentration of the analyte." (page 67, line 29 to page 68, line 1).<br><br>Additionally, "[t]he redox mediators often exchange electrons rapidly with each other and with the electrode so that the complex can be rapidly oxidized and/or reduced." (page 30, lines 10-11). |

The above Table shows that each element of Claim 7 is present in the cited art.

Therefore, a substantial new question of patentability is raised with respect to this claim.

### H. Claim 8 of the Wilsey '147 Patent

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| The method of claim 7 in which the mediator reacts sufficiently rapidly as to allow said determining and providing a readout of the glucose concentration in the sample within 10 seconds after said detecting. | WO '626 teaches that "[t]he redox mediators often exchange electrons rapidly with each other and with the electrode so that the complex can be rapidly oxidized and/or reduced." (page 30, lines 10-11). |

28

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| | Additionally, FIG. 17 in WO '626 illustrates a curve used to determine and provide a readout of the concentration of an analyte, such as glucose (*see, e.g.,* Abstract; page 97, lines 13-14), after detecting the blood sample: <br><br>  <br><br> WO '626 discloses that for measurement, "at least 20% of the analyte is electrolyzed. Preferably at least 50%, more preferably at least 80%, and even more preferably at least 90% of the analyte is electrolyzed" (page 64, lines 1-3).  In FIG. 17, 20% of the analyte of Sensor B is electrolyzed at T= about 3 seconds. <br><br> WO '626 discloses that the "redox mediator and/or second electron transfer agent may first dissolve from the surface on which it was placed as a solid." (page 15, lines 1-2). <br><br> Additionally WO '626 teaches that, "[i]t is typically desirable that the analyte be electrolyzed quickly." (*See* page 64, lines 12-13)  In this regard, WO '626 teaches that "[t]he speed of the electrochemical reaction depends on several factors, including the potential that is applied between the electrodes ..., [and] the size of the measurement zone." (*See* page 64, lines 13-16). <br><br> WO '626 discloses that the results may be |

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| | reported in a display (page 59, lines 9-18). |

The above Table shows that each element of Claim 8 is present in the cited art.

Therefore, a substantial new question of patentability is raised with respect to this claim.

### I.  Claim 9 of the Wilsey '147 Patent

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| The method of claim 8 in which said providing comprises providing the reagent in a sufficiently small amount as to be solubilized or hydrated in a time sufficient to allow said determining and providing a readout of the glucose concentration in the sample within 10 seconds after said detecting. | FIG. 17 in WO '626 illustrates a curve used to determine and provide a readout of the concentration of an analyte, such as glucose (see, e.g., Abstract; page 97, lines 13-14), after detecting the blood sample:<br><br><br><br>WO '626 discloses that for measurement, "at least 20% of the analyte is electrolyzed. Preferably at least 50%, more preferably at least 80%, and even more preferably at least 90% of the analyte is electrolyzed" (page 64, lines 1-3).  In FIG. 17, 20% of the analyte of Sensor B is electrolyzed at T= about 3 seconds.<br><br>WO '626 discloses that the "redox mediator and/or second electron transfer agent may first dissolve from the surface on which it was placed as a solid." (page 15, lines 1-2). |

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

| | |
|---|---|
| | Additionally WO '626 teaches that, "[i]t is typically desirable that the analyte be electrolyzed quickly." (*See* page 64, lines 12-13). In this regard, WO '626 teaches that "[t]he speed of the electrochemical reaction depends on several factors, including the potential that is applied between the electrodes ..., [and] the size of the measurement zone." (*See* page 64, lines 13-16). |
| | WO '626 discloses that the results may be reported in a display (page 59, lines 9-18). |

The above Table shows that each element of Claim 9 is present in the cited art.

Therefore, a substantial new question of patentability is raised with respect to this claim.

### J. *Claims 10-11 of the Wilsey '147 Patent*

Each of Claims 10-11 relate to the volume held in the sample chamber. The combination of these two claims into a single chart is not intended to assert that the cited art does not raise a separate and distinct substantial new question of patentability for each of Claims 10-11.

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| 10. The method of claim 9 in which the capillary chamber holds a volume of less than about 0.4 µl. | WO '626 discloses that the chamber 26 has a holding volume of "no more than about 1 µl, preferably no more than about 0.5 µl, more preferably no more than about 0.25 µl, and most preferably no more than about 0.1 µl." (page 11, line 30 to page 12, line 3). |
| 11. The method of claim 10 in which the capillary chamber holds a volume of between about 0.25 µl and about 0.4 µl. | WO '626 discloses that the chamber 26 has a holding volume of "no more than about 1 µl, preferably no more than about 0.5 µl, more preferably no more than about 0.25 µl, and most preferably no more than about 0.1 µl." |

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| | (page 11, line 30 to page 12, line 3). |

The above Table shows that each element of Claims 10-11 is present in the cited art.

Therefore, a substantial new question of patentability is raised with respect to these claims.

### K.  Claim 12 of the Wilsey '147 Patent

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| The method of claim 11 in which said detecting comprises applying a dose-detect potential between the working and counter or reference electrodes, and recognizing a rise in current as an indication that the sample has been supplied to the capillary chamber. | WO '626 discloses that "[w]hen an external potential is applied, it may be applied either before or after the sample has been placed in the sample chamber." (See page 60, lines 10-11).  Applying the potential before the sample is placed in the chamber will not affect the accuracy of the assay. (See page 60, lines 16-17).  "When the potential is applied and the sample is in the measurement zone, an electrical current  will flow between the working electrode and the counter electrode." (See page 60, lines 17-19). |
| | As also shown in FIG. 17, reproduced below, current starts flowing when the sample contacts both the working and counter electrodes. |

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147



The above Table shows that each element of Claim 12 is present in the cited art.

Therefore, a substantial new question of patentability is raised with respect to this claim.

### L.  Claim 13 of the Wilsey '147 Patent

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| The method of claim 12 in which the test strip includes a vent communicating with the capillary chamber to facilitate flow of the sample into the capillary chamber. | FIG. 21C in WO '626 discloses a "vent hole 574 (indicated as the shaded area in FIG. 21C)" (page 53, lines 7-9):<br><br>FIG. 21C |

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

The above Table shows that each element of Claim 13 is present in the cited art.

Therefore, a substantial new question of patentability is raised with respect to this claim.

### M. Claims 14 of the Wilsey '147 Patent

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| The method of claim 13 in which said providing comprises providing a test strip including a bottom substrate, a spacing layer, and a top substrate, the spacing layer having an opening corresponding to the capillary chamber, the spacing layer substantially defining the depth of the capillary chamber. | FIGS. 1-4 in WO '626 show that "[t]he sample chamber 26 is typically defined by a combination of the electrodes 22,24, an inert base 30, and a spacer 28, [and a] measurement zone is contained within this sample chamber and is the region of the sample chamber that contains only that portion of the sample that is interrogated during the analyte assay.  In the embodiment of the invention illustrated in FIGS. 1 and 2, sample chamber 26 is the space between the two electrodes 22,24 and/or the inert base 30." (page 41, lines 12-18).  The top substrate may be seen as element 38 in FIG. 3 of WO '626. |
| the spacing layer substantially defining the depth of the capillary chamber. | WO '626 discloses that "the thickness of the sample chamber and of the measurement zone correspond typically to the thickness of spacer 28." (page 42, lines 10-12). |

The above Table shows that each element of Claim 14 is present in the cited art.

Therefore, a substantial new question of patentability is raised with respect to this claim.

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

### N. Claim 15 of the Wilsey '147 Patent

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| The method of claim 14 in which the test strip is elongated with two opposed sides, the spacing layer comprising spaced-apart first and second portions defining a capillary chamber extending between and opening at the two opposed sides. | WO '626 discloses a "disposable" biosensor test strip. (*See, e.g.,* page 57, lines 22-25). Further, as shown in FIG. 3 of WO '626, reproduced below, the sensor 20 (test strip) is elongated with two opposite sides. Additionally, the spacer 28 is made up of two portions, which define a sample chamber 26. (*See* page 41, lines 12-24). WO '626 also discloses that "capillary action" may be used to transport the sample into the sample chamber (page 47, lines 11-17).<br><br> |

The above Table shows that each element of Claim 15 is present in the cited art.

Therefore, a substantial new question of patentability is raised with respect to this claim.

### O. Claims 16-17 of the Wilsey '147 Patent

Each of Claims 16-17 relate to the volume held in the capillary chamber. The

combination of these two claims into a single chart is not intended to assert that the cited art does

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

not raise a separate and distinct substantial new question of patentability for each of Claims 16-

17.

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| 16. The method of claim 1 in which the capillary chamber holds a volume of less than about 0.4 μL. | WO '626 discloses that the chamber 26 has a holding volume of "no more than about 1 μl, preferably no more than about 0.5 μl, more preferably no more than about 0.25 μl, and most preferably no more than about 0.1 μl." (page 11, line 30 to page 12, line 3). |
| 17. The method of claim 16 in which the capillary chamber holds a volume of between about 0.25 μL and about 0.4 μL. | WO '626 discloses that the chamber 26 has a holding volume of "no more than about 1 μl, preferably no more than about 0.5 μl, more preferably no more than about 0.25 μl, and most preferably no more than about 0.1 μl." (page 11, line 30 to page 12, line 3). |

The above Table shows that each element of Claims 16-17 is present in the cited art.

Therefore, a substantial new question of patentability is raised with respect to these claims.

### P.  Claim 18 of the Wilsey '147 Patent

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| The method of claim 1 in which said electroactive reaction product is capable of being electrooxidized or electroreduced at the working electrode, | The working electrode in WO '626 is defined as "an electrode at which analyte is electrooxidized or electroreduced ..." (page 4, lines 24-25). |
| said determining comprising measuring the amount of electroactive reaction product electrooxidized or electroreduced, and correlating the amount of electrooxidized or electroreduced electroactive reaction product to the concentration of glucose in the blood | WO '626 discloses the use of sensors to "determine the glucose concentration in blood samples." (*See, e.g.*, Abstract; page 97, lines 13-14).<br><br>WO '626 discloses that "[o]ne aspect of the |

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| sample. | invention is a method of determining the concentration of an analyte in a sample by contacting the sample with an electrochemical sensor and determining the concentration of the analyte." (page 3, lines 20-22). |

The above Table shows that each element of Claim 18 is present in the cited art.

Therefore, a substantial new question of patentability is raised with respect to this claim.

### Q. Claim 19 of the Wilsey '147 Patent

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| The method of claim 1 in which said capillary chamber has a depth of 25-200 μm. | WO '626 discloses that "[t]ypically, the thickness of the sample chamber is no more than about 0.2 mm[, i.e., 200 μm]. Preferably, the thickness of the sample chamber is no more than about 0.1 mm[, i.e., 100 μm] and, more preferably, the thickness of the sample chamber is about 0.05 mm[, i.e., 50 μm], or less." (page 42, lines 20-22). |

The above Table shows that each element of Claim 19 is present in the cited art.

Therefore, a substantial new question of patentability is raised with respect to this claim.

### R. Claim 20 of the Wilsey '147 Patent

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| The method of claim 1 including automatically operating the test strip and timing the reaction and analysis of the blood sample to detect the blood sample in the capillary chamber, to electrooxidize the electroactive reaction product, and to determine and provide a | WO '626 provides that "[t]he analyte measurement device 52 may ... be placed in a reader, not shown," which connects electrochemical analysis equipment to the electrode tabs to determine the concentration of the analyte (page 56, lines 22-25), and |

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

| | |
|---|---|
| readout of the glucose concentration within 10 seconds of said detecting. | illustrates the same in FIG. 6, reproduced below:<br><br><br><br>The sensor in WO '626 may include an indicator electrode, detecting when blood has filled the chamber (page 4, lines 1-3; page 80, lines 26-28).<br><br>FIG. 17 in WO '626 illustrates a curve used to determine and provide a readout of the concentration of an analyte, such as glucose (*see, e.g.,* Abstract; page 97, lines 13-14)), after detecting the blood sample:<br><br><br><br>WO '626 discloses that for measurement, "at least 20% of the analyte is electrolyzed. Preferably at least 50%, more preferably at least 80%, and even more preferably at least 90% of the analyte is electrolyzed" (page 64, lines 1-3). In FIG. 17, 20% of the analyte of Sensor B is electrolyzed at T= about 3 seconds. |

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

| | |
|---|---|
| | WO '626 further discloses that the results may be reported in a display. (Page 59, lines 9-18). |

The above Table shows that each element of Claim 20 is present in the cited art.

Therefore, a substantial new question of patentability is raised with respect to this claim.

### S.  Claim 21 of the Wilsey '147 Patent

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| The method of claim 1 in which the test strip comprises a counter electrode, | The sensor in WO '626 comprises a counter electrode (element 22 in FIG. 4) (page 12, line 9). |
| and in which the reagent is located proximal to or in contact with the working and counter electrodes. | WO '626 discloses that the reagent may be proximal to or "disposed on...the working electrode ... [or] the counter electrode" (page 14, lines 15-19). |

The above Table shows that each element of Claim 21 is present in the cited art.

Therefore, a substantial new question of patentability is raised with respect to this claim.

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

### T.  Claim 22 of the Wilsey '147 Patent

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| The method of claim 1 in which the capillary chamber holds a volume of about 600 nL. | WO '626 discloses that the chamber 26 has a holding volume of "no more than about 1 µl, preferably no more than about 0.5 µl, more preferably no more than about 0.25 µl, and most preferably no more than about 0.1 µl" (page 11, line 30 to page 12, line 3). |

The above Table shows that each element of Claim 22 is present in the cited art.

Therefore, a substantial new question of patentability is raised with respect to this claim.

### U.  Claim 23 of the Wilsey '147 Patent

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| The method of claim 22 comprising determining and providing a readout of the glucose concentration within about 5 seconds after said detecting. | FIG. 17 in WO '626 illustrates a curve used to determine and provide a readout of the concentration of an analyte, such as glucose (*see, e.g.,* Abstract; page 97, lines 13-14), after detecting the blood sample:  WO '626 discloses that for measurement, "at least 20% of the analyte is electrolyzed. Preferably at least 50%, more preferably at least 80%, and even more preferably at least 90% of the analyte is electrolyzed" (page 64, |

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| | lines 1-3).  In FIG. 17, 20% of the analyte of Sensor B is electrolyzed at T= about 3 seconds, which satisfies the "within 5 seconds" limitation of claim 23.<br><br>WO '626 discloses that the results may be reported in a display (page 59, lines 9-18).<br><br>Additionally WO '626 teaches that, "[i]t is typically desirable that the analyte be electrolyzed quickly." (*See* page 64, lines 12-13).  In this regard, WO '626 teaches that "[t]he speed of the electrochemical reaction depends on several factors, including the potential that is applied between the electrodes …, [and] the size of the measurement zone." (*See* page 64, lines 13-16). |

The above Table shows that each element of Claim 23 is present in the cited art.

Therefore, a substantial new question of patentability is raised with respect to this claim.

### V.  *Claim 24 of the Wilsey '147 Patent*

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| The method of claim 1 in which the capillary chamber holds a volume of between 0.25 µl and 0.4 µl. | WO '626 discloses that the chamber 26 has a holding volume of "no more than about 1 µl, preferably no more than about 0.5 µl, more preferably no more than about 0.25 µl, and most preferably no more than about 0.1 µl." (page 11, line 30 to page 12, line 3). |

The above Table shows that each element of Claim 24 is present in the cited art.

Therefore, a substantial new question of patentability is raised with respect to this claim.

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

### W. Claim 25 of the Wilsey '147 Patent

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| The method of claim 24 comprising determining and providing a readout of the glucose concentration within about 5 seconds after said detecting. | FIG. 17 in WO '626 illustrates a curve used to determine and provide a readout of the concentration of an analyte, such as glucose (*see, e.g.,* Abstract; page 97, lines 13-14), after detecting the blood sample:<br><br><br><br>WO '626 discloses that for measurement, "at least 20% of the analyte is electrolyzed. Preferably at least 50%, more preferably at least 80%, and even more preferably at least 90% of the analyte is electrolyzed" (page 64, lines 1-3).  In FIG. 17, 20% of the analyte of Sensor B is electrolyzed at T= about 3 seconds, which satisfies the "within about 5 seconds" limitation of Claim 25.<br><br>WO '626 also discloses that the results may be reported in a display (page 59, lines 9-18).<br><br>Additionally WO '626 teaches that, "[i]t is typically desirable that the analyte be electrolyzed quickly." (*See* page 64, lines 12-13).  In this regard, WO '626 teaches that "[t]he speed of the electrochemical reaction depends on several factors, including the potential that is applied between the electrodes …, [and] the size of the measurement zone." (*See* page 64, lines 13-16). |

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147


The above Table shows that each element of Claim 25 is present in the cited art.

Therefore, a substantial new question of patentability is raised with respect to this claim.

### X. *Claim 26 of the Wilsey '147 Patent*

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| The method of claim 24 in which the capillary chamber holds a volume of about 400 nL. | WO '626 discloses that the chamber 26 has a holding volume of "no more than about 1 μl, preferably no more than about 0.5 μl, more preferably no more than about 0.25 μl, and most preferably no more than about 0.1 μl." (page 11, line 30 to page 12, line 3). |

The above Table shows that each element of Claim 26 is present in the cited art.

Therefore, a substantial new question of patentability is raised with respect to this claim.

### Y. *Claim 27 of the Wilsey '147 Patent*

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| The method of claim 26 comprising determining and providing a readout of the glucose concentration within about 5 seconds after said detecting. | FIG. 17 in WO '626 illustrates a curve used to determine and provide a readout of the concentration of an analyte, such as glucose (*see, e.g.,* Abstract; page 97, lines 13-14), after detecting the blood sample: |

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| |  FIG. 17 |
| | WO '626 discloses that for measurement, "at least 20% of the analyte is electrolyzed. Preferably at least 50%, more preferably at least 80%, and even more preferably at least 90% of the analyte is electrolyzed" (page 64, lines 1-3). In FIG. 17, 20% of the analyte of Sensor B is electrolyzed at T= about 3 seconds, which satisfies the "within about 5 seconds" limitation of Claim 27.

WO '626 also discloses that the results may be reported in a display (page 59, lines 9-18).

Additionally WO '626 teaches that, "[i]t is typically desirable that the analyte be electrolyzed quickly." (*See* page 64, lines 12-13). In this regard, WO '626 teaches that "[t]he speed of the electrochemical reaction depends on several factors, including the potential that is applied between the electrodes ..., [and] the size of the measurement zone." (*See* page 64, lines 13-16). |

The above Table shows that each element of Claim 27 is present in the cited art.

Therefore, a substantial new question of patentability is raised with respect to this claim.

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

### Z.  *Claim 28 of the Wilsey '147 Patent*

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| The method of claim 24 in which the capillary chamber holds a volume of about 300 nL. | WO '626 discloses that the chamber 26 has a holding volume of "no more than about 1 µl, preferably no more than about 0.5 µl, more preferably no more than about 0.25 µl, and most preferably no more than about 0.1 µl." (page 11, line 30 to page 12, line 3). |

The above Table shows that each element of Claim 28 is present in the cited art.

Therefore, a substantial new question of patentability is raised with respect to this claim.

### AA.  *Claim 29 of the Wilsey '147 Patent*

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| 29. The method of claim 28 comprising determining and providing a readout of the glucose concentration within about 5 seconds after said detecting. | FIG. 17 in WO '626 illustrates a curve used to determine and provide a readout of the concentration of an analyte, such as glucose (*see, e.g.,* Abstract; page 97, lines 13-14), after detecting the blood sample:  WO '626 discloses that for measurement, "at least 20% of the analyte is electrolyzed. Preferably at least 50%, more preferably at least 80%, and even more preferably at least 90% of the analyte is electrolyzed" (page 64, |

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| | lines 1-3). In FIG. 17, 20% of the analyte of Sensor B is electrolyzed at T= about 3 seconds, which satisfies the limitations of this claim.<br><br>WO '626 further discloses that the results may be reported in a display (page 59, lines 9-18).<br><br>Additionally WO '626 teaches that, "[i]t is typically desirable that the analyte be electrolyzed quickly." (*See* page 64, lines 12-13). In this regard, WO '626 teaches that "[t]he speed of the electrochemical reaction depends on several factors, including the potential that is applied between the electrodes …, [and] the size of the measurement zone." (*See* page 64, lines 13-16). |

The above Table shows that each element of Claim 29 is present in the cited art.

Therefore, a substantial new question of patentability is raised with respect to this claim.

**BB.    *Claims 30-35 of the Wilsey '147 Patent***

Each of Claims 30-35 relate to the time in which the readout of the glucose concentration

is provided. The combination of these seven claims into a single chart is not intended to assert

that the cited art does not raise a separate and distinct substantial new question of patentability

for each of Claims 30-35.

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| 30. The method of claim 1 comprising determining and providing a readout of the glucose concentration within about 8 seconds of said detecting. | FIG. 17 in WO '626 illustrates a curve used to determine and provide a readout of the concentration of an analyte, such as glucose (*see, e.g.,* Abstract; page 97, lines 13-14), after detecting the blood sample: |
| 31. The method of claim 30 comprising | |

46

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| determining and providing a readout of the glucose concentration about 3.5 to about 8 seconds after said detecting.<br><br>32. The method of claim 31 comprising determining and providing a readout of the glucose concentration within about 5 seconds of said detecting.<br><br>33. The method of claim 32 comprising determining and providing a readout of the glucose concentration within about 4 seconds of said detecting.<br><br>34. The method of claim 31 comprising determining and providing a readout of the glucose concentration about 5 seconds after said detecting.<br><br>35. The method of claim 31 comprising determining and providing a readout of the glucose concentration about 4 seconds after said detecting. | <br><br>WO '626 discloses that for measurement, "at least 20% of the analyte is electrolyzed. Preferably at least 50%, more preferably at least 80%, and even more preferably at least 90% of the analyte is electrolyzed" (page 64, lines 1-3). In FIG. 17, 20% of the analyte of Sensor B is electrolyzed at T= about 3 seconds, which satisfies the limitations of claims 30-35.<br><br>WO '626 further discloses that the results may be reported in a display (page 59, lines 9-18).<br><br>Additionally WO '626 teaches that, "[i]t is typically desirable that the analyte be electrolyzed quickly." (*See* page 64, lines 12-13). In this regard, WO '626 teaches that "[t]he speed of the electrochemical reaction depends on several factors, including the potential that is applied between the electrodes …, [and] the size of the measurement zone." (*See* page 64, lines 13-16). |

The above Table shows that each element of Claims 30-35 is present in the cited art.

Therefore, a substantial new question of patentability is raised with respect to these claims.

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

### CC.    Independent Claim 36 of the Wilsey '147 Patent

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| A method of determining the concentration of glucose in a blood sample, comprising: | WO '626 discloses that the invention can be used to determine the level of glucose in blood. (*see, e.g.,* Abstract; page 97, lines 13-14) |
| providing a disposable biosensor test strip including a capillary chamber having a depth suitable for capillary flow of blood and holding a volume of less than about 1.0 µl of the blood sample, | WO '626 discloses a "disposable" biosensor test strip, and FIGS. 3 and 5 in WO '626 illustrate the test strip and the capillary chamber 26 therein:<br><br><br><br>WO '626 also discloses that the chamber 26 has a holding volume of "no more than about 1 µl, preferably no more than about 0.5 µl, more preferably no more than about 0.25 µl, and most preferably no more than about 0.1 µl" (page 2, line 30 through page 3, line 4). |
| a working electrode and a counter or reference electrode disposed within the capillary chamber, | FIG. 4 in WO '626 shows that "the sample chamber 26 is typically defined by a combination of the electrodes 22, 24, an inert base 30, and a spacer 28" (page 41, lines 12-13): |

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| |  |
| and a reagent proximal to or in contact with at least the working electrode, | WO '626 discloses that the reagent may be proximal to or "disposed on…the working electrode." (page 14, lines 15-17). |
| the reagent including an enzyme and a mediator, | WO '626 discloses the use of "a redox mediator and … an enzyme." (page 37, lines 3-9). |
| the reagent reacting with glucose to produce an electroactive reaction product; | The sensor in WO '626 works as a result of the reaction between glucose (Abstract) and the reagent (page 60, lines 22-26). |
| applying a blood sample containing glucose into the capillary chamber, | The blood sample containing glucose (Abstract) is applied to the chamber in the sensor in WO '626 (page 12, lines 7-9). |
| the capillary chamber directing capillary flow of the blood sample into contact with the reagent to cause the blood sample to at least partially solubilize or hydrate the reagent; | WO '626 discloses that "capillary action" may be used to transport the sample into the sample chamber (page 47, lines 11-17). The sample chamber in WO '626 is "configured so that…the sample is in electrolytic contact with…the working electrode" (page 12, lines 7-9), and the reagent may be proximal to or "disposed on … the working electrode." (page 14, lines 15-17). WO '626 discloses that the "redox mediator and/or second electron transfer agent may first dissolve from the surface on which it was placed as a solid." (page 15, lines 1-2). |
| detecting the blood sample in the capillary | The sensor in WO '626 may include an |

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| chamber; | indicator electrode, detecting when blood has filled the chamber (page 4, lines 1-3; page 80, lines 26-28). |
| electrooxidizing the electroactive reaction product at the working electrode; | The working electrode in WO '626 is defined as "an electrode at which analyte is electrooxidized or electroreduced…" (page 4, lines 24-25). |
| and within 10 seconds after said detecting, determining and providing a readout of the glucose concentration in the blood sample, | FIG. 17 in WO '626 illustrates a curve used to determine and provide a readout of the concentration of an analyte, such as glucose (*see, e.g.,* Abstract; page 97, lines 13-14), after detecting the blood sample:<br><br><br>FIG. 17<br><br>WO '626 discloses that for measurement, "at least 20% of the analyte is electrolyzed. Preferably at least 50%, more preferably at least 80%, and even more preferably at least 90% of the analyte is electrolyzed" (page 64, lines 1-3). In FIG. 17, 20% of the analyte of Sensor B is electrolyzed at T= about 3 seconds, which is within 10 seconds as required by the claim.<br><br>WO '626 further indicates that "it is typically desirable that the analyte be electrolyzed quickly" and teaches that the potential applied between electrodes and the size of the measurement zone, for example, may be manipulated to quicken the electrolysis of the analyte (page 64, lines 12-19). |

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| | The results may be reported in a display (page 59, lines 9-18). |
| said determining comprising correlating the electrooxidized electroactive reaction product to the concentration of glucose in the blood sample. | WO '626 discloses the use of the sensors to "determine the glucose concentration in blood samples" (*see, e.g.,* Abstract; page 97, lines 13-14).<br><br>WO '626 discloses that "[o]ne aspect of the invention is a method of determining the concentration of an analyte in a sample by contacting the sample with an electrochemical sensor and determining the concentration of the analyte." (page 3, lines 20-22). |

The above Table shows that each element of Claim 36 is present in the cited art.

Therefore, a substantial new question of patentability is raised with respect to this claim.

**DD.** *Claim 37 of the Wilsey '147 Patent*

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| The method of claim 36 in which the capillary chamber holds a volume of about 600 nL. | WO '626 discloses that the chamber 26 has a holding volume of "no more than about 1 μl, preferably no more than about 0.5 μl, more preferably no more than about 0.25 μl, and most preferably no more than about 0.1 μl" (page 11, line 30 to page 12, line 3). |

The above Table shows that each element of Claim 37 is present in the cited art.

Therefore, a substantial new question of patentability is raised with respect to this claim.

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

### EE.     Claim 38 of the Wilsey '147 Patent

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| The method of claim 37 comprising determining and providing a readout of the glucose concentration within about 5 seconds after said detecting. | FIG. 17 in WO '626 illustrates a curve used to determine and provide a readout of the concentration of an analyte, such as glucose (*see, e.g.,* Abstract; page 97, lines 13-14), after detecting the blood sample:  WO '626 discloses that for measurement, "at least 20% of the analyte is electrolyzed. Preferably at least 50%, more preferably at least 80%, and even more preferably at least 90% of the analyte is electrolyzed" (page 64, lines 1-3).  In FIG. 17, 20% of the analyte of Sensor B is electrolyzed at T= about 3 seconds, which satisfies the limitations of this claim. WO '626 further discloses that the results may be reported in a display (page 59, lines 9-18). Additionally WO '626 teaches that, "[i]t is typically desirable that the analyte be electrolyzed quickly." (*See* page 64, lines 12-13).  In this regard, WO '626 teaches that "[t]he speed of the electrochemical reaction depends on several factors, including the potential that is applied between the electrodes ..., [and] the size of the measurement zone." (*See* page 64, lines 13-16). |

52

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147


The above Table shows that each element of Claim 38 is present in the cited art.

Therefore, a substantial new question of patentability is raised with respect to this claim.

### FF.    *Claim 39 of the Wilsey '147 Patent*

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| The method of claim 36 in which the capillary chamber holds a volume of between 0.25 µl and 0.4 µl. | WO '626 discloses that the chamber 26 has a holding volume of "no more than about 1 µl, preferably no more than about 0.5 µl, more preferably no more than about 0.25 µl, and most preferably no more than about 0.1 µl" (page 11, line 30 to page 12, line 3). |

The above Table shows that each element of Claim 39 is present in the cited art.

Therefore, a substantial new question of patentability is raised with respect to this claim.

### GG.    *Claim 40 of the Wilsey '147 Patent*

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| The method of claim 39 comprising determining and providing a readout of the glucose concentration within about 5 seconds after said detecting. | FIG. 17 in WO '626 illustrates a curve used to determine and provide a readout of the concentration of an analyte, such as glucose (*see, e.g.,* Abstract; page 97, lines 13-14), after detecting the blood sample:  |

53

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| | WO '626 discloses that for measurement, "at least 20% of the analyte is electrolyzed. Preferably at least 50%, more preferably at least 80%, and even more preferably at least 90% of the analyte is electrolyzed" (page 64, lines 1-3). In FIG. 17, 20% of the analyte of Sensor B is electrolyzed at T= about 3 seconds, which satisfies the limitations of this claim. |
| | WO '626 further discloses that the results may be reported in a display (page 59, lines 9-18). |
| | Additionally WO '626 teaches that, "[i]t is typically desirable that the analyte be electrolyzed quickly." (*See* page 64, lines 12-13). In this regard, WO '626 teaches that "[t]he speed of the electrochemical reaction depends on several factors, including the potential that is applied between the electrodes ..., [and] the size of the measurement zone." (*See* page 64, lines 13-16). |

The above Table shows that each element of Claim 40 is present in the cited art.

Therefore, a substantial new question of patentability is raised with respect to this claim.

### HH. *Claim 41 of the Wilsey '147 Patent*

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| The method of claim 39 in which the capillary chamber holds a volume of about 400 nL. | WO '626 discloses that the chamber 26 has a holding volume of "no more than about 1 μl, preferably no more than about 0.5 μl, more preferably no more than about 0.25 μl, and most preferably no more than about 0.1 μl" (page 11, line 30 to page 12, line 3). |

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

The above Table shows that each element of Claim 41 is present in the cited art.

Therefore, a substantial new question of patentability is raised with respect to this claim.

### II. Claim 42 of the Wilsey '147 Patent

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| The method of claim 41 comprising determining and providing a readout of the glucose concentration within about 5 seconds after said detecting. | FIG. 17 in WO '626 illustrates a curve used to determine and provide a readout of the concentration of an analyte, such as glucose (*see, e.g.,* Abstract; page 97, lines 13-14), after detecting the blood sample:  WO '626 discloses that for measurement, "at least 20% of the analyte is electrolyzed. Preferably at least 50%, more preferably at least 80%, and even more preferably at least 90% of the analyte is electrolyzed" (page 64, lines 1-3). In FIG. 17, 20% of the analyte of Sensor B is electrolyzed at T= about 3 seconds, which satisfies the limitations of this claim. WO '626 further discloses that the results may be reported in a display (page 59, lines 9-18). Additionally WO '626 teaches that, "[i]t is typically desirable that the analyte be electrolyzed quickly." (*See* page 64, lines 12-13). In this regard, WO '626 teaches that "[t]he speed of the electrochemical reaction depends on several factors, including the |

55

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

| | |
|---|---|
| | potential that is applied between the electrodes ..., [and] the size of the measurement zone." (*See* page 64, lines 13-16). |

The above Table shows that each element of Claim 42 is present in the cited art.

Therefore, a substantial new question of patentability is raised with respect to these claims.

### JJ. Claim 43 of the Wilsey '147 Patent

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| The method of claim 39 in which the capillary chamber holds a volume of about 300 nL. | WO '626 discloses that the chamber 26 has a holding volume of "no more than about 1 µl, preferably no more than about 0.5 µl, more preferably no more than about 0.25 µl, and most preferably no more than about 0.1 µl" (page 11, line 30 to page 12, line 3). |

The above Table shows that each element of Claim 43 is present in the cited art.

Therefore, a substantial new question of patentability is raised with respect to this claim.

### KK. Claim 44 of the Wilsey '147 Patent

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| 44. The method of claim 43 comprising determining and providing a readout of the glucose concentration within about 5 seconds after said detecting. | FIG. 17 in WO '626 illustrates a curve used to determine and provide a readout of the concentration of an analyte, such as glucose (*see, e.g.*, Abstract; page 97, lines 13-14), after detecting the blood sample: |

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147



WO '626 discloses that for measurement, "at least 20% of the analyte is electrolyzed. Preferably at least 50%, more preferably at least 80%, and even more preferably at least 90% of the analyte is electrolyzed" (page 64, lines 1-3). In FIG. 17, 20% of the analyte of Sensor B is electrolyzed at T= about 3 seconds, which satisfies the limitations of this claim.

WO '626 further discloses that the results may be reported in a display (page 59, lines 9-18).

Additionally WO '626 teaches that, "[i]t is typically desirable that the analyte be electrolyzed quickly." (*See* page 64, lines 12-13). In this regard, WO '626 teaches that "[t]he speed of the electrochemical reaction depends on several factors, including the potential that is applied between the electrodes ..., [and] the size of the measurement zone." (*See* page 64, lines 13-16).

The above Table shows that each element of Claim 44 is present in the cited art.

Therefore, a substantial new question of patentability is raised with respect to this claim.

### LL. Claims 45-50 of the Wilsey '147 Patent

Each of Claims 45-50 relate to the time in which the readout of the glucose concentration is provided. The combination of these seven claims into a single chart is not intended to assert

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

that the cited art does not raise a separate and distinct substantial new question of patentability

for each of Claims 45-50.

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| 45. The method of claim 36 comprising determining and providing a readout of the glucose concentration within about 8 seconds of said detecting.<br><br>46. The method of claim 45 comprising determining and providing a readout of the glucose concentration about 3.5 to about 8 seconds after said detecting.<br><br>47. The method of claim 46 comprising determining and providing a readout of the glucose concentration within about 5 seconds of said detecting.<br><br>48. The method of claim 47 comprising determining and providing a readout of the glucose concentration within about 4 seconds of said detecting.<br><br>49. The method of claim 46 comprising determining and providing a readout of the glucose concentration about 5 seconds after said detecting.<br><br>50. The method of claim 46 comprising determining and providing a readout of the glucose concentration about 4 seconds after said detecting. | FIG. 17 in WO '626 illustrates a curve used to determine and provide a readout of the concentration of an analyte, such as glucose (*see, e.g.,* Abstract; page 97, lines 13-14), after detecting the blood sample:<br><br><br><br>WO '626 discloses that for measurement, "at least 20% of the analyte is electrolyzed. Preferably at least 50%, more preferably at least 80%, and even more preferably at least 90% of the analyte is electrolyzed" (page 64, lines 1-3). In FIG. 17, 20% of the analyte of Sensor B is electrolyzed at T= about 3 seconds, which satisfies the limitations of these claims.<br><br>WO '626 further discloses that the results may be reported in a display (page 59, lines 9-18).<br><br>Additionally WO '626 teaches that, "[i]t is typically desirable that the analyte be electrolyzed quickly." (*See* page 64, lines 12-13). In this regard, WO '626 teaches that "[t]he speed of the electrochemical reaction depends on several factors, including the potential that is applied between the electrodes …, [and] the size of the measurement zone." |

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| | (*See* page 64, lines 13-16). |

The above Table shows that each element of Claims 45-50 is present in the cited art.

Therefore, a substantial new question of patentability is raised with respect to these claims.

### MM.  *Claim 51 of the Wilsey '147 Patent*

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| The method of claim 36 in which the reagent is dry, | WO '626 discloses that the "redox mediator and/or second electron transfer agent may first dissolve from the surface on which it was placed as a solid." (page 15, lines 1-2). |
| and the capillary chamber directs capillary flow of the blood sample into contact with the dry reagent to cause the blood sample to at least partially solubilize or hydrate the dry reagent. | The sample chamber in WO '626 is "configured so that…the sample is in electrolytic contact with…the working electrode" (page 12, lines 7-9), and the reagent may be proximal to or "disposed on…the working electrode" (page 14, lines 15-17). WO '626 discloses that the "redox mediator and/or second electron transfer agent may first dissolve from the surface on which it was placed as a solid." (page 15, lines 1-2). |

The above Table shows that each element of Claim 51 is present in the cited art.

Therefore, a substantial new question of patentability is raised with respect to this claim.

### NN.  *Claim 52 of the Wilsey '147 Patent*

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| The method of claim 51 in which the dry reagent comprises a reagent that is applied wet | WO '626 discloses that "the air oxidation of the redox mediator may take place while the |

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

| | |
|---|---|
| and dried of solvent. | redox mediator is in solution, such as, for example, prior to the solution being applied onto the sensor and dried." (See page 35, lines 22-25).<br><br>The redox mediator and the enzyme in WO '626 are applied in solution, as evidenced by the fact that they "typically form a sensing layer on the working electrode" or "may be disposed on any surface in the sample chamber." (page 13, lines 16-19). (See also Example 9 in WO '626). |

The above Table shows that each element of Claim 52 is present in the cited art.

Therefore, a substantial new question of patentability is raised with respect to this claim.

### OO.    Claim 53 of the Wilsey '147 Patent

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| The method of claim 36 in which the capillary chamber has a depth of 25-200 μm. | WO '626 discloses that "[t]ypically, the thickness of the sample chamber is no more than about 0.2 mm[, i.e., 200 μm]. Preferably, the thickness of the sample chamber is no more than about 0.1 mm[, i.e., 100 μm] and, more preferably, the thickness of the sample chamber is about 0.05 mm[, i.e., 50 μm] or less." (page 42, lines 20-22). |

The above Table shows that each element of Claim 53 is present in the cited art.

Therefore, a substantial new question of patentability is raised with respect to this claim.

### PP. Claims 54-55 of the Wilsey '147 Patent

Each of Claims 54-55 relate to the time in which the readout of the glucose concentration

is provided. The combination of these two claims into a single chart is not intended to assert that

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

the cited art does not raise a separate and distinct substantial new question of patentability for

each of Claims 54-55.

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| 54. The method of claim 36 in which said providing comprises providing the reagent in a sufficiently small amount as to be solubilized or hydrated in a time sufficiently fast to allow said determining and providing a readout of the glucose concentration in the blood sample within 10 seconds of said detecting.<br><br>55. The method of claim 54 in which the mediator reacts sufficiently rapidly as to allow determining and providing a readout of the glucose concentration in the blood sample within 10 seconds of said detecting. | FIG. 17 in WO '626 illustrates a curve used to determine and provide a readout of the concentration of an analyte, such as glucose (*see, e.g.,* Abstract; page 97, lines 13-14), after detecting the blood sample:<br><br><br><br>WO '626 discloses that for measurement, "at least 20% of the analyte is electrolyzed. Preferably at least 50%, more preferably at least 80%, and even more preferably at least 90% of the analyte is electrolyzed" (page 64, lines 1-3). In FIG. 17, 20% of the analyte of Sensor B is electrolyzed at T= about 3 seconds.<br><br>WO '626 discloses that the "redox mediator and/or second electron transfer agent may first dissolve from the surface on which it was placed as a solid." (page 15, lines 1-2).<br><br>WO '626 discloses that "[t]he sensor configurations and methods described above are generally useful and include, for example, using low concentrations of the redox mediator and/or the second electron transfer agent (e.g., enzyme) relative to the concentration of the analyte." (page 67, line 29 to page 68, line 1). |

61

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| | The results may be reported in a display (page 59, lines 9-18). |

The above Table shows that each element of Claims 54-55 is present in the cited art.

Therefore, a substantial new question of patentability is raised with respect to these claims.

### QQ.   Claim 56 of the Wilsey '147 Patent

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| The method of claim 55 in which the mediator is readily-reversible. | The redox mediator in WO '626 is readily-reversible (e.g., page 60, lines 10-26) because it may "exchange electrons rapidly with each other and with the electrode so that the complex can be rapidly oxidized and/or reduced." (page 30, lines 10-11). |

The above Table shows that each element of Claim 56 is present in the cited art.

Therefore, a substantial new question of patentability is raised with respect to this claim.

### RR.   Claim 57 of the Wilsey '147 Patent

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| The method of claim 36 including automatically operating the test strip and timing the reaction and analysis of the blood sample to detect the blood sample in the capillary chamber, to electrooxidize the electroactive reaction product, and to detennine [sic] and provide a readout of the glucose concentration within 10 seconds of said detecting. | WO '626 provides that "[t]he analyte measurement device 52 may ... be placed in a reader, not shown," which connects electrochemical analysis equipment to the electrode tabs to determine the concentration of the analyte (page 56, lines 22-25), and illustrates the same in FIG. 6: |

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| | <br><br>The sensor in WO '626 may include an indicator electrode, detecting when blood has filled the chamber (page 4, lines 1-3; page 80, lines 26-28).<br><br>FIG. 17 in WO '626 illustrates a curve used to determine and provide a readout of the concentration of an analyte, such as glucose (*see, e.g.,* Abstract; page 97, lines 13-14), after detecting the blood sample:<br><br><br><br>WO '626 discloses that for measurement, "at least 20% of the analyte is electrolyzed. Preferably at least 50%, more preferably at least 80%, and even more preferably at least 90% of the analyte is electrolyzed" (page 64, lines 1-3). In FIG. 17, 20% of the analyte of Sensor B is electrolyzed at T= about 3 seconds. |

63

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
|  | The results may then be reported in a display (page 59, lines 9-18). |

The above Table shows that each element of Claim 57 is present in the cited art.

Therefore, a substantial new question of patentability is raised with respect to this claim.

### SS. Claim 58 of the Wilsey '147 Patent

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| The method of claim 57 in which said automatically operating comprises connecting the test strip to an external testing apparatus prior to said detecting, | WO '626 provides that "[t]he analyte measurement device 52 may ... be placed in a reader, not shown," which connects electrochemical analysis equipment to the electrode tabs to determine the concentration of the analyte (page 56, lines 22-25), and illustrates the same in FIG. 6:  |
| the testing apparatus automatically detecting the blood sample in the capillary chamber, | The sensor in WO '626 may include an indicator electrode, detecting when blood has filled the chamber (page 4, lines 1-3; page 80, lines 26-28). |
| electrooxidizing the electroactive reaction product, | The working electrode in WO '626 is defined as "an electrode at which analyte is electrooxidized ..." (page 4, lines 24-25). |

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| determining the glucose concentration, and providing a readout of the glucose concentration within 10 seconds of said detecting. | FIG. 17 in WO '626 illustrates a curve used to determine and provide a readout of the concentration of an analyte, such as glucose (*see, e.g.,* Abstract; page 97, lines 13-14), after detecting the blood sample:<br><br><br><br>WO '626 discloses that for measurement, "at least 20% of the analyte is electrolyzed. Preferably at least 50%, more preferably at least 80%, and even more preferably at least 90% of the analyte is electrolyzed" (page 64, lines 1-3). In FIG. 17, 20% of the analyte of Sensor B is electrolyzed at T= about 3 seconds or less.<br><br>The results may then be reported in a display (page 59, lines 9-18). |

The above Table shows that each element of Claim 58 is present in the cited art.

Therefore, a substantial new question of patentability is raised with respect to this claim.

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

*TT. Claim 59 of the Wilsey '147 Patent*

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| The method of claim 36 in which the working electrode and the counter or reference electrode are coplanar. | FIG. 2 in WO '626 illustrates that the two electrodes 22 and 24 are coplanar (described on page 40, lines 14-15):<br><br> |

The above Table shows that each element of Claim 59 is present in the cited art.

Therefore, a substantial new question of patentability is raised with respect to this claim.

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

### UU.   *Claim 60 of the Wilsey '147 Patent*

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| The method of claim 36 comprising measuring the current and correlating the measured current to the glucose concentration. | WO '626 discloses the use of sensors to "determine the glucose concentration in blood samples." (*see, e.g.,* Abstract; page 97, lines 13-14).<br><br>WO '626 discloses that "[o]ne aspect of the invention is a method of determining the concentration of an analyte in a sample by contacting the sample with an electrochemical sensor and determining the concentration of the analyte." (page 3, lines 20-22). |

The above Table shows that each element of Claim 60 is present in the cited art.

Therefore, a substantial new question of patentability is raised with respect to this claim.

### VV.   *Claim 61 of the Wilsey '147 Patent*

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| The method of claim 36 in which said detecting comprises applying a drop-detect potential across the working and counter or reference electrodes. | WO '626 discloses that "[w]hen an external potential is applied, it may be applied either before or after the sample has been placed in the sample chamber." (*See* page 60, lines 10-11). Applying the potential before the sample is placed in the chamber will not affect the accuracy of the assay. (*See* page 60, lines 16-17). "When the potential is applied and the sample is in the measurement zone, an electrical current will flow between the working electrode and the counter electrode." (*See* page 60, lines 17-19).<br><br>As also shown in FIG. 17, reproduced below, current starts flowing when the sample contacts both the working and counter electrodes. |

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147



The above Table shows that each element of Claim 61 is present in the cited art.

Therefore, a substantial new question of patentability is raised with respect to this claim.

### *WW.  Claim 62 of the Wilsey '147 Patent*

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| The method of claim 61 in which said detecting comprises applying a drop-detect potential across the working and counter or reference electrodes prior to and separate from said determining. | The Pottgen '069 Patent discloses "[r]eferring to FIGS. 1 and 2, the sample cell according to the present invention is positioned through window 19 (FIG. 1) to initiate the testing procedure. Once inserted, a potential is applied at portion 27 (FIG. 2) of the sample cell across electrodes 24 and 26 to detect the presence of the sample." (Cols. 9, line 66 through col. 10, line 1).<br><br>The Pottgen '069 Patent further discloses that "[o]nce the sample's presence is detected, the potential is removed and the incubation period initiated." (Col. 10, lines 2-3).<br><br>Additionally, the Pottgen '069 Patent discloses "[a]n electrical potential is next applied at portion 27 of the sample cell electrodes 24 and 26 and the current through the sample is measured and displayed on display 16." (Col. |

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

| | |
|---|---|
| | 10, lines 8-11). |

The above Table shows that each element of Claim 62 is present in the cited art.

Therefore, a substantial new question of patentability is raised with respect to this claim.

### XX.   *Claim 63 of the Wilsey '147 Patent*

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| The method of claim 62 in which said detecting comprises applying a drop-detect potential across the working and counter or reference electrodes and recognizing a rise in current as an indication that the blood sample has been applied into the capillary chamber. | The Pottgen '069 Patent discloses "[r]eferring to FIGS. 1 and 2, the sample cell according to the present invention is positioned through window 19 (FIG. 1) to initiate the testing procedure. Once inserted, a potential is applied at portion 27 (FIG. 2) of the sample cell across electrodes 24 and 26 to detect the presence of the sample." (Cols. 9, line 66 through col. 10, line 1).<br><br>The Pottgen '069 Patent also discloses that "[t]he meter recognizes sample application by the sudden charging current flow that occurs when the electrodes and the overlaying reagent layer are initially wetted by the sample fluid. Once the sample application is detected, the meter begins the reaction incubation step." (Col. 4, lines 23-28). |

The above Table shows that each element of Claim 63 is present in the cited art.

Therefore, a substantial new question of patentability is raised with respect to this claim.

### YY. *Claim 64 of the Wilsey '147 Patent*

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| The method of claim 62 which includes reapplying a potential across the working and | The Pottgen '069 Patent discloses "[r]eferring to FIGS. 1 and 2, the sample cell according to the present invention is positioned through |

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

| | |
|---|---|
| counter or reference electrodes, after a delay period during which no potential is applied, to electrooxidize the electroactive reaction product at the working electrode. | window 19 (FIG. 1) to initiate the testing procedure. Once inserted, a potential is applied at portion 27 (FIG. 2) of the sample cell across electrodes 24 and 26 to detect the presence of the sample." (Cols. 9, line 66 through col. 10, line 1). |
| | The Pottgen '069 Patent discloses "[o]nce the sample's presence is detected, the potential is removed and the incubation period initiated." (Col. 10, lines 2-3). |
| | The Pottgen '069 Patent discloses "[a]n electrical potential is next applied at portion 27 of the sample cell to electrodes 24 and 26 and the current through the sample is measured and displayed on display 16." (Col. 10, lines 8-11). |
| | The Pottgen '069 Patent discloses "a large excess of oxidized species (i.e., wherein the oxidized form of the redox mediator (i.e., ferricyanide) is present in the reagent layer in sufficient excess to insure that the diffusion limited electrooxidation of the redox mediator at the working electrode surface is the principal limiter of current flow through the cell." (Col. 6, lines 50-55). |

The above Table shows that each element of Claim 64 is present in the cited art.

Therefore, a substantial new question of patentability is raised with respect to this claim.

### ZZ. Claim 65 of the Wilsey '147 Patent

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| The method of claim 36 in which said providing comprises providing a test strip including a bottom substrate, a spacing layer, and a top substrate, the spacing layer having an | FIGS. 1-4 in WO '626 show that "[t]he sample chamber 26 is typically defined by a combination of the electrodes 22,24, an inert base 30, and a spacer 28 ... [and a] |

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

| | |
|---|---|
| opening corresponding to the capillary chamber, the spacing layer substantially defining the depth of the capillary chamber. | measurement zone is contained within this sample chamber and is the region of the sample chamber that contains only that portion of the sample that is interrogated during the analyte assay. In the embodiment of the invention illustrated in FIGS. 1 and 2, sample chamber 26 is the space between the two electrodes 22,24 and/or the inert base 30." (page 41, lines 12-18). The top substrate may be seen as element 38 in FIG. 3 of WO '626.<br><br>WO '626 discloses that "the thickness of the sample chamber and of the measurement zone correspond typically to the thickness of spacer 28." (page 42, lines 10-12). |

The above Table shows that each element of Claim 65 is present in the cited art.

Therefore, a substantial new question of patentability is raised with respect to this claim.

### AAA.  Claim 66 of the Wilsey '147 Patent

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| The method of claim 36 in which said reacting produces a reduced form of the mediator. | The reagent in WO '626 includes a redox mediator (page 24, section entitled "Redox Mediator") which may be reduced upon reacting (page 60, lines 22-26). |

The above Table shows that each element of Claim 66 is present in the cited art.

Therefore, a substantial new question of patentability is raised with respect to this claim.

### BBB.  Claim 67 of the Wilsey '147 Patent

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| The method of claim 36 comprising measuring the amount of the electrooxidized electroactive | WO '626 discloses the use of sensors to "determine the glucose concentration in blood |

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| reaction product and correlating the amount to the concentration of glucose in the blood sample. | samples." (*see, e.g.,* Abstract; page 97, lines 13-14).<br><br>WO '626 discloses that "[o]ne aspect of the invention is a method of determining the concentration of an analyte in a sample by contacting the sample with an electrochemical sensor and determining the concentration of the analyte." (page 3, lines 20-22). |

The above Table shows that each element of Claim 67 is present in the cited art.

Therefore, a substantial new question of patentability is raised with respect to this claim.

### CCC.  Claim 68 of the Wilsey '147 Patent

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| The method of claim 36 comprising applying a potential of 100-500 mV across the working electrode and the counter or reference electrodes. | In the sensor in WO '626, a potential of between about -350 mV and about +400 mV is applied between electrodes (page 60, lines 5-6; page 87, lines 27-28). |

The above Table shows that each element of Claim 68 is present in the cited art.

Therefore, a substantial new question of patentability is raised with respect to this claim.

### DDD.  Claim 69 of the Wilsey '147 Patent

| Claim Language | Claimed Elements in the Cited Art |
|---|---|
| The method of claim 36 in which the test strip comprises a counter electrode, and in which the reagent is located proximal to or in contact with the working and counter electrodes. | WO '626 discloses that the reagent may be proximal to or "disposed on…the working electrode… [or] the counter electrode." (page 14, lines 15-19). |

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

The above Table shows that each element of Claim 69 is present in the cited art.

Therefore, a substantial new question of patentability is raised with respect to this claim.


## VII.    SUBSTANTIAL NEW QUESTIONS OF PATENTABILITY CREATED BY THE CITED ART

### A. Claims 1-12, 16-61, and 65-69 of the Wilsey '147 Patent are Anticipated by WO '626 Under 35 U.S.C. § 102(b)

#### i.    Independent Claim 1

With regard to Claim 1, Requestor respectfully asserts that WO '626 discloses each

element recited in Claim 1 of the Wilsey '147 Patent. The following paragraphs provide

examples of the relevant teachings of WO '626 for each element of Claim 1 of the Wilsey '147

Patent.

For example, embodiments of WO '626 are directed to a "method of determining the

concentration of glucose in a blood sample." (*See, e.g.,* Abstract; page 97, lines 13-14).

The method disclosed in WO '626 further includes "providing a disposable biosensor test

strip including a capillary chamber having a depth suitable for capillary flow of blood and

holding a volume of less than about 1.0 µl of the blood sample," as recited in Claim 1 of the

Wilsey '147 Patent. For example, WO '626 teaches that the biosensor includes a sample

chamber for holding the sample in electrical contact with the electrode. (*See* page 2, lines 24-29).

WO '626 also discloses using capillary flow to direct the blood sample into the chamber. (*See*

page 47, lines 11-17). WO '626 also teaches that the "sample chamber ... is sized to provide for

analysis of a sample volume that is typically no more than about 1 µL, preferably no more than

about 0.5 µL, more preferably no more than about 0.25 µL, and most preferably no more than

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

about 0.1 μL." (*See* page 2, line 30 through page 3, line 4). FIGS. 3 and 5 of WO '626, as

provided in the claim chart above, also illustrate the test strip and the sample chamber 26 therein.

For at least this reason, Requestor respectfully asserts that this element is disclosed in WO '626.

WO '626 also discloses "a working electrode and a counter or reference electrode

disposed within the capillary chamber," as recited in Claim 1 of the Wilsey '147 Patent. For

example, referring to FIG. 4 in particular, WO '626 discloses that "a small volume, in vitro

electrochemical sensor 20 of the invention generally includes a working electrode 22, a counter

(or counter/reference) electrode 24, and a sample chamber 26." WO '626 also teaches that the

"sample chamber 26 is configured so that when a sample is provided in the chamber the sample

is in electrolytic contact with both the working electrode 22 and the counter electrode 24." (*See*

page 12, lines 4-9). For at least this reason, Requestor respectfully asserts that this element is

disclosed in WO '626.

The WO '626 Patent also discloses "a reagent proximal to or in contact with at least the

working electrode," as recited in Claim 1 of the Wilsey '147 Patent. More specifically, WO '626

teaches that in one exemplary embodiment, "sensing chemistry materials are provided in the

sample chamber 26 for the analysis of the analyte." In this exemplary embodiment, this "sensing

chemistry preferably includes a redox mediator and a second electron transfer mediator." (*See*

page 13, lines 9-12). WO '626 additionally teaches that "the redox mediator and second electron

transfer agent are ...disposed on the same surface of the sample chamber, such as, for example,

on the working electrode." (*See* page 14, lines 15-17). For at least this reason, Requestor

respectfully asserts that this element is disclosed in WO '626.

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

The reagent described in WO '626 also "include[s] an enzyme and a mediator," as recited

in Claim 1 of the Wilsey '147 Patent. As described above, the sensing chemistry of WO '626

comprises a redox mediator and a second electron transfer agent. WO '626 further discloses that

"[o]ne example of a suitable second electron transfer agent is an enzyme." (*See* page 37, lines 7-

9). For at least this reason, Requestor respectfully asserts that this element is disclosed in WO

'626.

Additionally, the method disclosed in WO '626 further comprises "the reagent reacting

with glucose to produce an electroactive reaction product," as recited in Claim 1 of the Wilsey

'147 Patent. For example, WO '626 teaches that "[t]hose skilled in the art will recognize that

there are many different reactions that will provide the same result; namely the electrolysis of an

analyte through a reaction pathway incorporating a redox mediator." (*See* page 60, lines 22-26).

"Electrolysis" is further defined in WO '626 as "the electrooxidation or electroreduction of a

compound either directly at an electrode or via one or more electron transfer agents (e.g., redox

mediators and/or enzymes)." (*See* page 10, lines 16-18). Lastly, with respect to this element of

Claim 1, WO '626 teaches the analyte, or compound, can be glucose. (*See, e.g.,* Abstract;

page 97, lines 13-14 and Claim 11). For at least this reason, Requestor respectfully asserts that

this element is disclosed in WO '626.

The method disclosed in WO '626 also comprises "applying a blood sample containing

glucose into the capillary chamber," as recited in Claim 1 of the Wilsey '147 Patent. As

described above, the analyte sample of WO '626 can be glucose. WO '626 further teaches that

the "sample chamber 26 is configured so that when a sample is provided in the chamber the

sample is in electrolytic contact with both the working electrode 22 and the counter electrode

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

24." (*See* page 12, lines 7-9). For at least this reason, Requestor respectfully asserts that this element is disclosed in WO '626.

Next, WO '626 discloses that "the capillary chamber direct[s] capillary flow of the blood sample into contact with the reagent to cause the blood sample to at least partially solubilize or hydrate the reagent," as recited in Claim 1 of the Wilsey '147 Patent. For example, WO '626 teaches that the "sample chamber 26 is configured so that when a sample is provided in the chamber the sample is in electrolytic contact with both the working electrode 22 and the counter electrode 24." (*See* page 12, lines 7-9). In addition, WO '626 teaches that the "redox mediator and/or second electron transfer agent may first dissolve from the surface on which it was placed as a solid" and that "the redox mediator and second electron transfer agent are ... disposed on the same surface of the sample chamber, such as, for example, on the working electrode." (*See* page 15, lines 1-2 and page 14, lines 15-17, respectively). Thus, a sample of blood entering the sample chamber 26 of WO '626 would necessarily contact the redox mediator and/or second electron transfer agent, which are disposed on the working electrode 22 located within the sample chamber 26. For at least this reason, Requestor respectfully asserts that this element is disclosed in WO '626.

The Requestor also respectfully asserts that the method of WO '626 further comprises "detecting the blood sample in the capillary chamber," as recited in Claim 1 of the Wilsey '147 Patent. In the Wilsey '147 Patent, blood is detected using a "drop detect" system, which senses current flow between the working and counter electrodes when blood covers the nearest working and counter electrodes. (*See* col. 23, line 60 to col. 24, line 50). Similarly, in one exemplary embodiment of WO '626, the sensor used for detection and quantification of the analyte includes

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

"a fill indicator, such as an indicator electrode or a second electrode pair, that can be used to determine when the measurement zone or sample chamber has been filled." (*See* page 4, lines 1-3). An "indicator electrode," in one exemplary embodiment of WO '626, includes one or more electrodes that detect partial or complete filling of a sample chamber and/or measurement zone. (*See* page 10, lines 26 and 27). For at least this reason, Requestor respectfully asserts that this element is disclosed in WO '626.

The method of WO '626 also discloses "electrooxidizing or electroreducing the electroactive reaction product at the working electrode," as recited in Claim 1 of the Wilsey '147 Patent. In this regard the Requestor respectfully notes that WO '626 defines the "working electrode" as "an electrode at which [an] analyte is electrooxidized or electroreduced with or without the agency of a redox mediator." (*See* page 4, lines 24-25). For at least this reason, Requestor respectfully asserts that this element is disclosed in WO '626.

The Requestor also respectfully asserts that WO '626 further discloses that "within 10 seconds after said detecting, determining and providing a readout of the glucose concentration in the blood sample."

In this regard, the Requestor respectfully notes that FIG. 17 of WO '626 illustrates the amount of time required to determine the concentration of the analyte. (*See* page 96, lines 7-10). This analyte can be glucose, as described above. (*See, e.g.,* Abstract; page 97, lines 13-14 and Claim 11).

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

**FIG. 17**



With regard to measuring the concentration of the analyte, WO '626 teaches various

methods of analysis, such as, for example, coulometry, amperometry and/or potentiometry.

Additionally WO '626 teaches that, "[i]t is typically desirable that the analyte be electrolyzed

quickly." (*See* page 64, lines 12-13). In this regard, WO '626 teaches that "[t]he speed of the

electrochemical reaction depends on several factors, including the potential that is applied

between the electrodes …, [and] the size of the measurement zone." (*See* page 64, lines 13-16).

As noted above, WO '626 "can be used to determine the concentration of a biomolecule, such as

glucose or lactate, in a biological fluid such as blood or serum using techniques such as

coulometry, amperometry and potentiometry." (*See* Abstract). With regard to coulometry, "the

completion of the electrochemical reaction is typically signaled when the current reaches a

steady state value." (*See* page 64, lines 7-8). An example of the steady state value is illustrated

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

in FIG. 17. The steady state typically indicates that all, or nearly all of the analyte has been electrolyzed. This means that, for example, approximately 90%-99% of the analyte has been electrolyzed.

However, WO '626 teaches that for measurement, "at least 20% of the analyte is electrolyzed. Preferably at least 50%, more preferably at least 80%, and even more preferably at least 90% of the analyte is electrolyzed." (*See* page 64, lines 1-3). In other words, the analyte concentration can be determined as soon as 20% of the analyte is electrolyzed, or at T=about 3 seconds, as represented in FIG. 17, above. In cases such as this where the analyte is only partially electrolyzed, the current is measured during the partial reaction and then extrapolated using known mathematical teachings. (*See* page 64, lines 26-30). As such, Requestor respectfully asserts that the response time of the sensor can be reduced to the duration desired by the user, for example 10 seconds or less.

Furthermore, Requestor respectfully asserts that WO '626 discloses several conditions applicable to the response time of the sensor that may be relied on to further reduce the response time shown in FIG. 17.

In particular, WO '626 discloses that "[i]ncreasing the amount of diffusible redox mediator in the sample decreases the response time of the sensor." (*See* page 96, lines 8-10). Similarly, WO '626 discloses that a heating element can be provided "to heat the sample chamber to increase the rate of oxidation or reduction of the analyte." (*See* page 4, lines 5-7). WO '626 also discloses decreasing the thickness of the sample chamber "to promote rapid

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

electrolysis of the analyte, as more of the sample will be in contact with the electrode surface for

a given sample volume." (*See* page 42, lines 14-16).

The Examiner relied upon the same principles to reject the application that matured into

the Wilsey '147 Patent (U.S. Patent Application No. 10/382,322, hereinafter "the '322

Application") over other prior art, which the Applicant antedated through the use of a

Declaration Under 37 C.F.R. § 1.131. Specifically, the Examiner determined that the potential

applied between the electrodes, as well as the size of the measurement zone, can reduce the

response time of the sensor. (*See* Office Action of March 8, 2006, for example page 8). The

Examiner also determined that the rate of oxidation of the redox mediator, as well as the amount

of enzyme included in the reagent, can reduce the time period for completion of the reaction.

(*See* Office Action of March 8, 2006). Requestor respectfully notes that, although disagreeing

with the Examiner's position, the Applicant in the Wilsey '322 Application were not able to

overcome the Examiner's position, and could only circumvent the rejection by swearing behind

the cited references. (*See* Examiner's Statement of Reasons for Allowance, dated February 6,

2007).

For at least these additional reasons, Requestor respectfully asserts that WO '626

discloses a sensor response time which is less than 10 seconds.

The method of WO '626 also discloses that "said determining comprising correlating the

electrooxidized or electroreduced electroactive reaction product to the concentration of glucose

in the blood sample," as recited in Claim 1 of the Wilsey '147 Patent. In this regard, and in

addition to the disclosure of the WO '626 Patent described above, WO '626 discloses that "[o]ne

80

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

aspect of the invention is a method of determining the concentration of an analyte in a sample by contacting the sample with an electrochemical sensor and determining the concentration of the analyte." (*See* page 3, lines 20-22).  For at least this reason, Requestor respectfully asserts that this element is disclosed in WO '626.

In view of the above, Requestor respectfully asserts that Claim 1 of the Wilsey '147 Patent is anticipated in view of the disclosure of WO '626.  As such, the disclosure of WO '626 creates a substantial new question of patentability with respect to independent Claim 1 of the Wilsey '147 Patent.

### ii.  Claim 2

Claim 2 depends from Claim 1.  The subject matter of Claim 1 has been addressed above.

Claim 2 further defines the claimed method by requiring that the detecting comprise "a dose-detect potential between the working and counter or reference electrodes, and recognizing a rise in current as an indication that the sample has been supplied to the capillary chamber."

However, this claim limitation is disclosed in WO '626.  Specifically, WO '626 discloses that "[w]hen an external potential is applied, it may be applied either before or after the sample has been placed in the sample chamber." (*See* page 60, lines 10-11).  Requestor notes that, as disclosed in WO '626, applying the potential before the sample is placed in the chamber will not affect the accuracy of the assay. (*See* page 60, lines 16-17).  "When the potential is applied and the sample is in the measurement zone, an electrical current will flow between the working electrode and the counter electrode." (*See* page 60, lines 17-19).  In other words, in one exemplary embodiment, the potential between the working and counter electrodes may be turned on before the sample is placed in the chamber.  Once the sample is in the chamber, electrical

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

current will flow between the working and counter electrodes, thereby "recognizing a rise in

current as an indication that the sample has been supplied to the capillary chamber." This is also

supported by the disclosure of FIG. 17, reproduced below.

**FIG. 17**



As shown in FIG. 17, once blood contacts both the working and counter electrodes, an

electrical connection is made between the working and counter electrodes and current will start

flowing. At the time of connection, a rise in current can be seen in FIG. 17, which "indicat[es]

that the sample has been supplied to the capillary chamber."

In light of the above, Requestor respectfully asserts that a substantial new question of

patentability is raised with respect to Claim 2.

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

### iii. Claim 3

FIG. 21C in WO '626 discloses a "vent hole 574 (indicated as the shaded area in FIG. 21C)" in the sensor disclosed therein (page 53, lines 7-9):



FIG. 21C

Requestor respectfully notes that the Wilsey '147 Patent describes that the "a vent communicating with the capillary chamber to facilitate flow of the sample into the capillary chamber" recited in Claim 3 "facilitate[s] flow of a sample substance into the capillary chamber by equalizing pressure between the interior and exterior of the chamber." (*See* col. 11, lines 39-43 of the Wilsey '147 Patent). The vent hole disclosed in WO '626 equalizes the pressure between the interior and exterior of the sample chamber in WO '626, and therefore corresponds to the vent recited in Claim 3 of the Wilsey '147 Patent.

Therefore, Requestor respectfully submits that a substantial new question of patentability is raised with respect to Claim 3 of the Wilsey '147 Patent.

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

### iv. Claim 4

As previously discussed, FIG. 17 in WO '626 illustrates determining and providing a readout of analyte, such as glucose (*see, e.g.,* Abstract; page 97, lines 13-14), within 10 seconds after detecting the blood sample. Accordingly, WO '626 discloses the "determining and providing a readout of the glucose concentration in the sample within 10 seconds after said detecting" as recited in Claim 4.

The recitation in Claim 4 related to "providing the reagent in a sufficiently small amount as to be solubilized or hydrated in a time sufficient to allow said determining" is inherently present in WO '626 because the redox mediator therein solubilizes in a time sufficient to provide the above readout at least within about 10 seconds after detecting the blood sample (the "redox mediator and/or second electron transfer agent may first dissolve from the surface on which it was placed as a solid"). (*See* page 15, lines 1-2).

Therefore, Requestor respectfully submits that a substantial new question of patentability is raised with respect to Claim 4 of the Wilsey '147 Patent.

### v. Claim 5

With regard to dependent Claim 5, Requestor respectfully asserts that WO '626 discloses "[t]he method of claim 1 in which said providing comprises providing a test strip including a bottom substrate, a spacing layer, and a top substrate, the spacing layer having an opening corresponding to the capillary chamber."

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

As shown in FIG. 3, the spacer 28 is located between two plates 38, which contain the

working and counter electrodes 22 and 24, respectively.  FIG. 3 is reproduced below.



As shown in FIG. 3, the capillary chamber is formed by the opening within the spacer 28

and the two plates 38.  The top substrate may be seen as element 38 in FIG. 3 of WO '626.

The method of WO '626 also discloses "the spacing layer substantially defining the depth

of the capillary chamber."  As shown in FIG. 3, reproduced above, the depth of the capillary

chamber is defined by the thickness of the spacer 28.  WO '626 further discloses that "the

thickness of the sample chamber and of the measurement zone correspond typically to the

thickness of spacer 28." (page 42, lines 10-12).

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

As such, Requestor respectfully asserts that a substantial new question of patentability is raised with respect to Claim 5 of the Wilsey '147 Patent.

### vi.  Claim 6

With regard to dependent claim 6, Requestor respectfully asserts that WO '626 discloses "[t]he method of claim 5 in which the test strip is elongated with two opposed sides, the spacing layer comprising spaced-apart first and second portions defining a capillary chamber extending between and opening at the two opposed sides."

For example, as shown in FIG. 3, reproduced below, the sensor 20 (test strip) is elongated with two opposite sides.  Additionally, the spacer 28 is made up of two portions, which define a sample chamber 26. (See also, page 41, lines 12-24).  WO '626 discloses that "capillary action" may be used to transport the sample into the sample chamber (page 47, lines 11-17).  WO '626 further teaches that the sensor may be a "disposable" biosensor test strip. (*See, e.g.,* page 57, lines 22-25;).



REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

As such, Requestor respectfully asserts that a substantial new question of patentability is raised with respect to Claim 6 of the Wilsey '147 Patent.

### vii. Claim 7

With regard to dependent claim 7, Requestor respectfully asserts that WO '626 discloses "[t]he method of claim 1 in which said providing comprises providing a mediator in its oxidized form."

In this regard, WO '626 teaches that the sample chamber is "configured so that…the sample is in electrolytic contact with … the working electrode" (page 12, lines 7-9), and the reagent may be proximal to or "disposed on … the working electrode" (page 14, lines 15-17). In one exemplary embodiment, the reagent in WO '626 may comprise "a redox mediator and … an enzyme" (page 37, lines 3-9).

WO '626 discloses that "[t]he sensor configurations and methods described above are generally useful and include, for example, using low concentrations of the redox mediator and/or the second electron transfer agent (e.g., enzyme) relative to the concentration of the analyte." (page 67, line 29 to page 68, line 1). In this regard, "[t]he redox mediators often exchange electrons rapidly with each other and with the electrode so that the complex can be rapidly oxidized and/or reduced." (page 30, lines 10-11).

As such, Requestor respectfully asserts that a substantial new question of patentability is raised with respect to Claim 7 of the Wilsey '147 Patent.

### viii.    Claim 8

With regard to dependent claim 8, Requestor respectfully asserts that WO '626 discloses "[t]he method of claim 7 in which the mediator reacts sufficiently rapidly as to allow said

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

determining and providing a readout of the glucose concentration in the sample within 10

seconds after said detecting."

In this regard, WO '626 teaches that "[t]he redox mediators often exchange electrons

rapidly with each other and with the electrode so that the complex can be rapidly oxidized and/or

reduced." (page 30, lines 10-11).

Additionally, FIG. 17 in WO '626 illustrates a curve used to determine and provide a

readout of the concentration of an analyte, such as glucose. (See, e.g., Abstract; page 97, lines

13-14). As previously discussed, WO '626 discloses that for measurement, "at least 20% of the

analyte is electrolyzed." (See page 64, lines 1-3). Accordingly, the concentration of the analyte

can be measured when only 20% of the analyte is electrolyzed. As explained in WO '626 (see

paragraph bridging pages 64 and 65):

> The current is measured during the partial reaction [i.e., when 20% of the analyte
> is electrolyzed,] and then extrapolated using mathematical techniques known to
> those skilled in the art to determine the current curve for the complete or nearly
> complete electrolysis of the analyte. Integration of this curve yields the amount of
> charge that would be passed if the analyte were completely or nearly completely
> electrolyzed and, using equation (3a) or (3b), the concentration of the analyte is
> calculated.

Accordingly, WO '626 discloses that it is possible to reduce the response time of the

sensor by determining analyte concentration when as little as 20% of the analyte has been

electrolyzed. In FIG. 17, 20% of the analyte of Sensor B is electrolyzed at T=about 3 seconds.

Accordingly, WO '626 discloses "determining and providing a readout of the glucose

concentration in the sample within 10 seconds after said detecting," as recited in Claim 8.

Furthermore, as described above, WO '626 teaches various methods of analysis, such as,

for example, coulometry, amperometry and/or potentiometry. Additionally WO '626 teaches

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

that, "[i]t is typically desirable that the analyte be electrolyzed quickly." (*See* page 64, lines 12-

13). In this regard, WO '626 teaches that "[t]he speed of the electrochemical reaction depends

on several factors, including the potential that is applied between the electrodes ..., [and] the size

of the measurement zone." (*See* page 64, lines 13-16). As a result, the response time illustrated

in FIG. 17 could be reduced even further, for example, by manipulating the potential applied

between electrodes and the size of the measurement zone.

Therefore, Requestor respectfully submits that a substantial new question of patentability

is raised with respect to Claim 8 of the Wilsey '147 Patent.

### ix. Claim 9

With regard to claim 9, this claim depends from claim 8. The subject matter of claim 8

has been discussed above. As also previously discussed, FIG. 17 in WO '626 illustrates

determining and providing a readout of analyte, such as glucose (*see, e.g.,* Abstract; page 97,

lines 13-14), within 10 seconds after detecting the blood sample. Accordingly, WO '626

discloses the "determining and providing a readout of the glucose concentration in the sample

within 10 seconds after said detecting" as recited in Claim 9.

The recitation in Claim 9 related to "providing the reagent in a sufficiently small amount

as to be solubilized or hydrated in a time sufficient to allow said determining" is inherently

present in WO '626 because the redox mediator therein solubilizes in a time sufficient to provide

the above readout at least within about 10 seconds after detecting the blood sample (the "redox

mediator and/or second electron transfer agent may first dissolve from the surface on which it

was placed as a solid"). (*See* page 15, lines 1-2).

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

Therefore, Requestor respectfully submits that a substantial new question of patentability is raised with respect to Claim 9 of the Wilsey '147 Patent.

### x.  Claim 10

WO '626 discloses that the chamber 26 has a holding volume of "no more than about 1 $\mu$l, preferably no more than about 0.5 $\mu$l, more preferably no more than about 0.25 $\mu$l, and most preferably no more than about 0.1 $\mu$l" (page 11, line 30 to page 12, line 3).  Accordingly, WO '626 discloses the capillary chamber that "holds a volume of less than about 0.4 $\mu$l" recited in Claim 10.

Therefore, Requestor respectfully submits that a substantial new question of patentability is raised with respect to Claim 10 of the Wilsey '147 Patent.

### xi.  Claim 11

WO '626 discloses that the chamber 26 has a holding volume of "no more than about 1 $\mu$l, preferably no more than about 0.5 $\mu$l, more preferably no more than about 0.25 $\mu$l, and most preferably no more than about 0.1 $\mu$l" (*See* page 11, line 30 to page 12, line 3).  Accordingly, WO '626 discloses the capillary chamber that "holds a volume of between about 0.25 $\mu$l and about 0.4 $\mu$l," recited in Claim 11.

Therefore, Requestor respectfully submits that a substantial new question of patentability is raised with respect to Claim 11 of the Wilsey '147 Patent.

### xii. Claim 12

Claim 12 depends from Claim 11, which depends from Claim 10, which depends from Claim 9, which depends from Claim 8, which depends from Claim 7, which in turn depends from Claim 1.  The subject matter of Claims 1 and 7-11 has been addressed above.

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

Claim 12 further defines the claimed method by requiring that the detecting comprise "a dose-detect potential between the working and counter or reference electrodes, and recognizing a rise in current as an indication that the sample has been supplied to the capillary chamber."

However, this claim limitation is disclosed in WO '626. Specifically, WO '626 discloses that "[w]hen an external potential is applied, it may be applied either before or after the sample has been placed in the sample chamber." (*See* page 60, lines 10-11). Requestor notes that, as disclosed in WO '626, applying the potential before the sample is placed in the chamber will not affect the accuracy of the assay. (*See* page 60, lines 16-17). "When the potential is applied and the sample is in the measurement zone, an electrical current will flow between the working electrode and the counter electrode." (*See* page 60, lines 17-19). In other words, in one exemplary embodiment, the potential between the working and counter electrodes may be turned on before the sample is placed in the chamber. Once the sample is in the chamber, electrical current will flow between the working and counter electrodes, thereby "recognizing a rise in current as an indication that the sample has been supplied to the capillary chamber." This is also supported by the disclosure of FIG. 17, reproduced below.

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

FIG. 17



As shown in FIG. 17, once blood contacts both the working and counter electrodes, an electrical connection is made between the working and counter electrodes and current will start flowing. At the time of connection, a rise in current can be seen in FIG. 17, which "indicat[es] that the sample has been supplied to the capillary chamber."

In light of the above, Requestor respectfully asserts that a substantial new question of patentability is raised with respect to Claim 12.

### xiii.    Claim 16

WO '626 discloses that the chamber 26 has a holding volume of "no more than about 1 $\mu$l, preferably no more than about 0.5 $\mu$l, more preferably no more than about 0.25 $\mu$l, and most preferably no more than about 0.1 $\mu$l" (page 11, line 30 to page 12, line 3). Accordingly, WO

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

'626 discloses the capillary chamber that "holds a volume of less than about 0.4 μl" recited in

Claim 16.

Therefore, Requestor respectfully submits that a substantial new question of patentability

is raised with respect to Claim 16 of the Wilsey '147 Patent.

### xiv.    Claim 17

WO '626 discloses that the chamber 26 has a holding volume of "no more than about 1

μl, preferably no more than about 0.5 μl, more preferably no more than about 0.25 μl, and most

preferably no more than about 0.1 μl." (*See* page 11, line 30 to page 12, line 3). Accordingly,

WO '626 discloses the capillary chamber that "holds a volume of between about 0.25 μl and

about 0.4 μl," recited in Claim 17.

Therefore, Requestor respectfully submits that a substantial new question of patentability

is raised with respect to Claim 17 of the Wilsey '147 Patent.

### xv. Claim 18

With regard to dependent Claim 18, Requestor respectfully asserts that WO '626

discloses that the "electroactive reaction product is capable of being electrooxidized or

electroreduced at the working electrode." Specifically, the working electrode in WO '626 is

defined as "an electrode at which analyte is electrooxidized or electroreduced..." (page 4, lines

24-25). For at least this reason, Requestor respectfully asserts that this element is disclosed by

WO '626.

Furthermore, with respect to Claim 18, Requestor respectfully asserts that WO '626

discloses "said determining comprising measuring the amount of the electroactive reaction

product electrooxidized or electroreduced, and correlating the amount of the electrooxidized or

93

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

electroreduced electroactive reaction product to the concentration of glucose in the blood

sample." In this regard, and in addition to the disclosure of WO '626 described above, WO '626

teaches that "[o]ne aspect of the invention is a method of determining the concentration of an

analyte in a sample by contacting the sample with an electrochemical sensor and determining the

concentration of the analyte." (*See* page 3, lines 20-22).

WO '626 also discloses that the sensor may be used to "determine the glucose

concentration in blood samples." (*See, e.g.,* Abstract; page 97, lines 13-14).

In light of the above, Requestor respectfully asserts that a substantial new question of

patentability is raised with respect to Claim 18.

### xvi.    Claim 19

WO '626 discloses that "[t]ypically, the thickness of the sample chamber is no more than

about 0.2 mm[, i.e., 200 μm]. Preferably, the thickness of the sample chamber is no more than

about 0.1 mm[, i.e., 100 μm] and, more preferably, the thickness of the sample chamber is about

0.05 mm[, i.e., 50 μm], or less." (page 42, lines 20-22). Accordingly, WO '626 discloses the

"capillary chamber [having] a depth of 25-200 μm" recited in Claim 19. Based on the disclosure

of WO '626, "thickness" and "depth are interchangeable terms.

Therefore, Requestor respectfully submits that a substantial new question of patentability

is raised with respect to Claim 19 of the Wilsey '147 Patent.

### xvii.    Claim 20

WO '626 provides that "[t]he analyte measurement device 52 may … be placed in a

reader, not shown," which connects electrochemical analysis equipment to the electrode tabs to

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

determine the concentration of the analyte (page 56, lines 22-25), and illustrates the same in FIG.

6, which is reproduced below:



Requestor respectfully submits that the reader referred to in the passage above is an

automatic reader which will automatically operate the sensor in WO '626.

The sensor in WO '626 also includes an indicator electrode, detecting when blood has

filled the chamber (*see* page 4, lines 1-3; page 80, lines 26-28), and as discussed above, FIG. 17

in WO '626 illustrates determining and providing a readout of the analyte, such as glucose (*see*

Abstract), at least faster than 10 seconds after detecting the blood sample. Accordingly,

Requestor respectfully submits that WO '626 discloses each element of Claim 20 of the Wilsey

'147 Patent.

Therefore, Requestor respectfully submits that a substantial new question of patentability

is raised with respect to Claim 20 of the Wilsey '147 Patent.

### xviii.    Claim 21

The sensor in WO '626 comprises a counter electrode (element 22 in FIG. 4) (*see* page

12, line 9), as recited in Claim 21 of the Wilsey '147 Patent. In addition, WO '626 discloses that

the reagent may be proximal to or "disposed on...the working electrode... [or] the counter

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

electrode" (*see* page 14, lines 15-19). Accordingly, Requestor respectfully submits that WO

'626 discloses the elements of Claim 21 of the Wilsey '147 Patent.

Therefore, Requestor respectfully submits that a substantial new question of patentability

is raised with respect to Claim 21 of the Wilsey '147 Patent.

### xix. Claim 22

WO '626 discloses that the chamber 26 has a holding volume of "no more than about 1

μl, preferably no more than about 0.5 μl, more preferably no more than about 0.25 μl, and most

preferably no more than about 0.1 μl." (S*ee* page 11, line 30 to page 12, line 3). Accordingly,

WO '626 discloses the capillary chamber recited in Claim 22, which "holds a volume of about

600 nL" (0.6 μl).

Therefore, Requestor respectfully submits that a substantial new question of patentability

is raised with respect to Claim 22 of the Wilsey '147 Patent.

### xx. Claim 23

FIG. 17 in WO '626 illustrates a curve used to determine and provide a readout of the

concentration of an analyte, such as glucose (*see, e.g.,* Abstract; page 97, lines 13-14). As

previously discussed, WO '626 discloses that for measurement, "at least 20% of the analyte is

electrolyzed." (*See* page 64, lines 1-3). Accordingly, the concentration of the analyte can be

measured when only 20% of the analyte is electrolyzed. In FIG. 17, 20% of the analyte of

Sensor B is electrolyzed at T=about 3 seconds or less. Accordingly, WO '626 discloses

"determining and providing a readout of the glucose concentration within about 5 seconds after

said detecting," as recited in Claim 23.

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

As described above, WO '626 teaches various methods of analysis, such as, for example, coulometry, amperometry and/or potentiometry. Additionally WO '626 teaches that, "[i]t is typically desirable that the analyte be electrolyzed quickly." (*See* page 64, lines 12-13). In this regard, WO '626 teaches that "[t]he speed of the electrochemical reaction depends on several factors, including the potential that is applied between the electrodes ..., [and] the size of the measurement zone." (*See* page 64, lines 13-16). As a result, the response time illustrated in FIG. 17 could be further reduced, for example, by manipulating the potential applied between electrodes and the size of the measurement zone, to determine and provide a readout of the concentration of an analyte faster than, for example, 5 seconds, as recited in Claim 23.

Therefore, Requestor respectfully submits that a substantial new question of patentability is raised with respect to Claim 23 of the Wilsey '147 Patent.

### xxi.    Claim 24

WO '626 discloses that the chamber 26 has a holding volume of "no more than about 1 $\mu$l, preferably no more than about 0.5 $\mu$l, more preferably no more than about 0.25 $\mu$l, and most preferably no more than about 0.1 $\mu$l" (*See* page 11, line 30 to page 12, line 3). Accordingly, WO '626 discloses the capillary chamber that "holds a volume of between 0.25 $\mu$l and 0.4 $\mu$l," recited in Claim 24.

Therefore, Requestor respectfully submits that a substantial new question of patentability is raised with respect to Claim 24 of the Wilsey '147 Patent.

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

### xxii.    Claim 25

FIG. 17 in WO '626 illustrates a curve used to determine and provide a readout of the

concentration of an analyte, such as glucose (*see, e.g.,* Abstract; page 97, lines 13-14). As

previously discussed, WO '626 discloses that for measurement, "at least 20% of the analyte is

electrolyzed." (*See* page 64, lines 1-3). ). In other words, the concentration of analyte of a given

sample can be determined when 20% of the analyte has been electrolyzed, which pursuant to

FIG. 17 occurs in about 3 seconds or less (*i.e.,* the response time is equal to about 3 seconds or

less). At this point, current can be extrapolated using known mathematical teachings. (*See* page

64, lines 26-30). Accordingly, WO '626 discloses "determining and providing a readout of the

glucose concentration within about 5 seconds after said detecting," as recited in Claim 25.

Furthermore, WO '626 also discloses additionally reducing the response time of the WO

'626 sensor by adjusting the parameters described with respect to Claim 1 above. Briefly, these

parameters can include: increasing the amount of redox mediator, heating the sample chamber

and decreasing the thickness of the sample chamber. Accordingly, WO '626 discloses all of the

elements of Claim 25.

Therefore, Requestor respectfully submits that a substantial new question of patentability

is raised with respect to Claim 25 of the Wilsey '147 Patent.

### xxiii.    Claim 26

WO '626 discloses that the chamber 26 has a holding volume of "no more than about 1

µl, preferably no more than about 0.5 µl, more preferably no more than about 0.25 µl, and most

preferably no more than about 0.1 µl" (page 11, line 30 to page 12, line 3). Accordingly, WO

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

'626 discloses the capillary chamber that "holds a volume of about 400 nL," (0.4 µl) recited in

Claim 26.

Therefore, Requestor respectfully submits that a substantial new question of patentability

is raised with respect to Claim 26 of the Wilsey '147 Patent.

### xxiv.    Claim 27

FIG. 17 in WO '626 illustrates a curve used to determine and provide a readout of the

concentration of an analyte, such as glucose (*see, e.g.,* Abstract; page 97, lines 13-14). As

previously discussed, WO '626 discloses that for measurement, "at least 20% of the analyte is

electrolyzed." (*See* page 64, lines 1-3). Accordingly, the concentration of the analyte can be

measured when only 20% of the analyte is electrolyzed. As explained in WO '626 (*see*

paragraph bridging pages 64 and 65):

> The current is measured during the partial reaction [*i.e.,* when 20% of the analyte
> is electrolyzed,] and then extrapolated using mathematical techniques known to
> those skilled in the art to determine the current curve for the complete or nearly
> complete electrolysis of the analyte. Integration of this curve yields the amount of
> charge that would be passed if the analyte were completely or nearly completely
> electrolyzed and, using equation (3a) or (3b), the concentration of the analyte is
> calculated.

Accordingly, WO '626 discloses that it is possible to reduce the response time of the

sensor by determining analyte concentration when as little as 20% of the analyte has been

electrolyzed. In FIG. 17, 20% of the analyte of Sensor B is electrolyzed at T=about 3 seconds or

less. Accordingly, WO '626 discloses "determining and providing a readout of the glucose

concentration within about 5 seconds after said detecting," as recited in Claim 27.

Additionally, as described above, WO '626 teaches various methods of analysis, such as,

for example, coulometry, amperometry and/or potentiometry. Additionally WO '626 teaches

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

that, "[i]t is typically desirable that the analyte be electrolyzed quickly." (*See* page 64, lines 12-13).  In this regard, WO '626 teaches that "[t]he speed of the electrochemical reaction depends on several factors, including the potential that is applied between the electrodes ..., [and] the size of the measurement zone." (*See* page 64, lines 13-16).  As a result, the response time illustrated in FIG. 17 could be further reduced, for example, by manipulating the potential applied between electrodes and the size of the measurement zone, to determine and provide a readout of the concentration of an analyte faster than, for example, 5 seconds, as recited in Claim 27.

Therefore, Requestor respectfully submits that a substantial new question of patentability is raised with respect to Claim 27 of the Wilsey '147 Patent.

### xxv.    Claim 28

WO '626 discloses that the chamber 26 has a holding volume of "no more than about 1 $\mu l$, preferably no more than about 0.5 $\mu l$, more preferably no more than about 0.25 $\mu l$, and most preferably no more than about 0.1 $\mu l$" (page 11, line 30 to page 12, line 3).  Accordingly, WO '626 discloses the capillary chamber that "holds a volume of about 300 nL," (0.3 $\mu l$) recited in Claim 28.

Therefore, Requestor respectfully submits that a substantial new question of patentability is raised with respect to Claim 28 of the Wilsey '147 Patent.

### xxvi.    Claim 29

FIG. 17 in WO '626 illustrates a curve used to determine and provide a readout of the concentration of an analyte, such as glucose (*see, e.g.,* Abstract; page 97, lines 13-14).  As previously discussed, WO '626 discloses that for measurement, "at least 20% of the analyte is electrolyzed." (*See* page 64, lines 1-3).  Accordingly, the concentration of the analyte can be

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

measured when only 20% of the analyte is electrolyzed. In FIG. 17, 20% of the analyte of

Sensor B is electrolyzed at T=about 3 seconds or less. Accordingly, WO '626 discloses

"determining and providing a readout of the glucose concentration within about 5 seconds after

said detecting," as recited in Claim 29.

As described above, WO '626 teaches various methods of analysis, such as, for example,

coulometry, amperometry and/or potentiometry. Additionally WO '626 teaches that, "[i]t is

typically desirable that the analyte be electrolyzed quickly." (*See* page 64, lines 12-13). In this

regard, WO '626 teaches that "[t]he speed of the electrochemical reaction depends on several

factors, including the potential that is applied between the electrodes ..., [and] the size of the

measurement zone." (*See* page 64, lines 13-16). As a result, the response time illustrated in FIG.

17 could be further reduced, for example, by manipulating the potential applied between

electrodes and the size of the measurement zone, to determine and provide a readout of the

concentration of an analyte faster than, for example, 5 seconds, as recited in Claim 29.

Therefore, Requestor respectfully submits that a substantial new question of patentability

is raised with respect to Claim 29 of the Wilsey '147 Patent.

### xxvii.  Claim 30

Requestor respectfully asserts that WO '626 discloses "determining and providing a

readout of the glucose concentration within about 8 seconds of said detecting." In particular, as

disclosed with respect to Claim 1, WO '626 teaches that for measurement, at least 20% of the

analyte is electrolyzed" (page 64, lines 1-3). In other words, the concentration of analyte of a

given sample can be determined when 20% of the analyte has been electrolyzed, which pursuant

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

to FIG. 17 may occur in about 3 seconds or less (*i.e.,* the response time is equal to about 3 seconds or less). At this point, current can be extrapolated using known mathematical teachings. (*See* page 64, lines 26-30). Accordingly, WO '626 discloses measuring the concentration of glucose "within about 8 seconds of said detection," as recited in Claim 30.

Furthermore, WO '626 also discloses additionally reducing the response time of the WO '626 sensor by adjusting the parameters described with respect to Claim 1 above. Briefly, these parameters can include: increasing the amount of redox mediator, heating the sample chamber and decreasing the thickness of the sample chamber. Accordingly, WO '626 discloses all of the elements of Claim 30.

In light of the above, a substantial new question of patentability is raised with respect to Claim 30.

### xxviii.  Claim 31

FIG. 17 in WO '626 illustrates a curve used to determine and provide a readout of the concentration of an analyte, such as glucose. (*See, e.g.,* Abstract; page 97, lines 13-14). As previously discussed, WO '626 discloses that for measurement, "at least 20% of the analyte is electrolyzed." (*See* page 64, lines 1-3). Accordingly, the concentration of the analyte can be measured when only 20% of the analyte is electrolyzed. As explained in WO '626 (*see* paragraph bridging pages 64 and 65):

> The current is measured during the partial reaction [*i.e.,* when 20% of the analyte is electrolyzed,] and then extrapolated using mathematical techniques known to those skilled in the art to determine the current curve for the complete or nearly complete electrolysis of the analyte. Integration of this curve yields the amount of charge that would be passed if the analyte were completely or nearly completely electrolyzed and, using equation (3a) or (3b), the concentration of the analyte is calculated.

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

Accordingly, WO '626 discloses that it is possible to reduce the response time of the sensor by determining analyte concentration when as little as 20% of the analyte has been electrolyzed. In FIG. 17, 20% of the analyte of Sensor B is electrolyzed at T=about 3 seconds or less. Accordingly, WO '626 discloses "determining and providing a readout of the glucose concentration about 3.5 to about 8 seconds after said detecting," as recited in Claim 31.

Moreover, as described above, WO '626 teaches various methods of analysis, such as, for example, coulometry, amperometry and/or potentiometry. Additionally WO '626 teaches that, "[i]t is typically desirable that the analyte be electrolyzed quickly." (*See* page 64, lines 12-13). In this regard, WO '626 teaches that "[t]he speed of the electrochemical reaction depends on several factors, including the potential that is applied between the electrodes ..., [and] the size of the measurement zone." (*See* page 64, lines 13-16). As a result, the response time illustrated in FIG. 17 could be further reduced, for example, by manipulating the potential applied between electrodes and the size of the measurement zone, to determine and provide a readout of the concentration of an analyte, for example, in about 3.5 to about 8 seconds, as recited in Claim 31.

Therefore, Requestor respectfully submits that a substantial new question of patentability is raised with respect to Claim 31 of the Wilsey '147 Patent.

### xxix.   Claim 32

FIG. 17 in WO '626 illustrates a curve used to determine and provide a readout of the concentration of an analyte, such as glucose. (*See e.g.,* Abstract; page 97, lines 13-14). As previously discussed, WO '626 discloses that for measurement, "at least 20% of the analyte is electrolyzed." (*See* page 64, lines 1-3). Accordingly, the concentration of the analyte can be measured when only 20% of the analyte is electrolyzed. In FIG. 17, 20% of the analyte of

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

Sensor B is electrolyzed at T=about 3 seconds or less. At this point, current can be extrapolated using known mathematical teachings. (*See* page 64, lines 26-30). As such, WO '626 discloses "determining and providing a readout of the glucose concentration within about 5 seconds after said detecting," as recited in Claim 32.

Furthermore, WO '626 also discloses additionally reducing the response time of the WO '626 sensor by adjusting the parameters described with respect to Claim 1 above. Briefly, these parameters can include: increasing the amount of redox mediator, heating the sample chamber and decreasing the thickness of the sample chamber. Accordingly, WO '626 discloses all of the elements of Claim 32.

Therefore, Requestor respectfully submits that a substantial new question of patentability is raised with respect to Claim 32 of the Wilsey '147 Patent.

### xxx.    Claim 33

FIG. 17 in WO '626 illustrates a curve used to determine and provide a readout of the concentration of an analyte, such as glucose. (*See, e.g.,* Abstract; page 97, lines 13-14). As previously discussed, WO '626 discloses that for measurement, "at least 20% of the analyte is electrolyzed." (*See* page 64, lines 1-3). Accordingly, the concentration of the analyte can be measured when only 20% of the analyte is electrolyzed. In FIG. 17, 20% of the analyte of Sensor B is electrolyzed at T=about 3 seconds or less. At this point, current can be extrapolated using known mathematical teachings. (*See* page 64, lines 26-30). As such, WO '626 discloses "determining and providing a readout of the glucose concentration within about 3 seconds of said detecting," as recited in Claim 33.

104

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

Furthermore, as described above, WO '626 teaches various methods of analysis, such as, for example, coulometry, amperometry and/or potentiometry. Additionally WO '626 teaches that, "[i]t is typically desirable that the analyte be electrolyzed quickly." (*See* page 64, lines 12-13). In this regard, WO '626 teaches that "[t]he speed of the electrochemical reaction depends on several factors, including the potential that is applied between the electrodes ..., [and] the size of the measurement zone." (*See* page 64, lines 13-16). As a result, the response time illustrated in FIG. 17 could be further reduced, for example, by manipulating the potential applied between electrodes and the size of the measurement zone, to determine and provide a readout of the concentration of an analyte faster than, for example, about 4 seconds, as recited in Claim 33.

Therefore, Requestor respectfully submits that a substantial new question of patentability is raised with respect to Claim 33 of the Wilsey '147 Patent.

### xxxi.   Claim 34

FIG. 17 in WO '626 illustrates a curve used to determine and provide a readout of the concentration of an analyte, such as glucose. (*See, e.g.,* Abstract; page 97, lines 13-14). As previously discussed, WO '626 discloses that for measurement, "at least 20% of the analyte is electrolyzed." (*See* page 64, lines 1-3). Accordingly, the concentration of the analyte can be measured when only 20% of the analyte is electrolyzed. In FIG. 17, 20% of the analyte of Sensor B is electrolyzed at T=about 3 seconds or less. At this point, current can be extrapolated using known mathematical teachings. (*See* page 64, lines 26-30). As such, WO '626 discloses "determining and providing a readout of the glucose concentration about 5 seconds after said detecting," as recited in Claim 34.

105

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

Furthermore, WO '626 also discloses additionally reducing the response time of the WO

'626 sensor by adjusting the parameters described with respect to Claim 1 above. Briefly, these

parameters can include: increasing the amount of redox mediator, heating the sample chamber

and decreasing the thickness of the sample chamber. Accordingly, WO '626 discloses all of the

elements of Claim 34.

Therefore, Requestor respectfully submits that a substantial new question of patentability

is raised with respect to Claim 34 of the Wilsey '147 Patent.

### xxxii. Claim 35

FIG. 17 in WO '626 illustrates a curve used to determine and provide a readout of the

concentration of an analyte, such as glucose (*see, e.g.,* Abstract; page 97, lines 13-14). As

previously discussed, WO '626 discloses that for measurement, "at least 20% of the analyte is

electrolyzed." (*See* page 64, lines 1-3). Accordingly, the concentration of the analyte can be

measured when only 20% of the analyte is electrolyzed. In FIG. 17, 20% of the analyte of

Sensor B is electrolyzed at T=about 3 seconds or less. At this point, current can be extrapolated

using known mathematical teachings. (*See* page 64, lines 26-30). As such, WO '626 discloses

"determining and providing a readout of the glucose concentration about 3 seconds after said

detecting," as recited in Claim 35.

Furthermore, as described above, WO '626 teaches various methods of analysis, such as,

for example, coulometry, amperometry and/or potentiometry. Additionally WO '626 teaches

that, "[i]t is typically desirable that the analyte be electrolyzed quickly." (*See* page 64, lines 12-

13). In this regard, WO '626 teaches that "[t]he speed of the electrochemical reaction depends

106

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

on several factors, including the potential that is applied between the electrodes ..., [and] the size

of the measurement zone." (*See* page 64, lines 13-16). As a result, the response time illustrated

in FIG. 17 could be further reduced, for example, by manipulating the potential applied between

electrodes and the size of the measurement zone, to determine and provide a readout of the

concentration of an analyte faster than, for example, about 4 seconds, as recited in Claim 35.

Therefore, Requestor respectfully submits that a substantial new question of patentability

is raised with respect to Claim 35 of the Wilsey '147 Patent.

### xxxiii. Independent Claim 36

With regard to Claim 36, Requestor respectfully asserts that WO '626 discloses each

element recited in Claim 36 of the Wilsey '147 patent. Initially, Requestor respectfully notes

that this claim is nearly identical to independent Claim 1. More specifically, Claim 36 only

differs in scope from independent Claim 1 by omitting the term "electroreducing" from the

"electrooxidizing or *electroreducing* the electroactive reaction product at the working electrode,"

limitation of Claim 1. As such, this element of Claim 36 recites: "electrooxidizing the

electroactive reaction product at the working electrode."

Nevertheless, Requestor addresses each element of Claim 36 below, together with

examples of the relevant teaching of WO '626 for each element of Claim 36 of the Wilsey '147

patent.

For example, embodiments of WO '626 are directed to a "method of determining the

concentration of glucose in a blood sample." (*see, e.g.,* Abstract; page 97, lines 13-14).

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

The method disclosed in WO '626 further includes "providing a disposable biosensor test strip including a capillary chamber having a depth suitable for capillary flow of blood and holding a volume of less than about 1.0 µl of the blood sample," as recited in Claim 36 of the Wilsey '147 Patent. For example, WO '626 teaches that the biosensor includes a sample chamber for holding the sample in electrical contact with the electrode. (*See* page 2, lines 24-29). WO '626 also discloses using capillary flow to direct the blood sample into the chamber. (*See* page 47, lines 11-17). WO '626 also teaches that the "sample chamber … is sized to provide for analysis of a sample volume that is typically no more than about 1 µL, preferably no more than about 0.5 µL, more preferably no more than about 0.25 µL, and most preferably no more than about 0.1 µL." (*See* page 2, line 30 through page 3, line 4). FIGS. 3 and 5 of WO '626, as provided in the claim chart above, also illustrate the test strip and the sample chamber 26 therein. For at least this reason, Requestor respectfully asserts that this element is disclosed in WO '626.

WO '626 also discloses "a working electrode and a counter or reference electrode disposed within the capillary chamber," as recited in Claim 36 of the Wilsey '147 Patent. For example, referring to FIG. 4 in particular, WO '626 discloses that "a small volume, in vitro electrochemical sensor 20 of the invention generally includes a working electrode 22, a counter (or counter/reference) electrode 24, and a sample chamber 26." WO '626 also teaches that the "sample chamber 26 is configured so that when a sample is provided in the chamber the sample is in electrolytic contact with both the working electrode 22 and the counter electrode 24." (*See* page 12, lines 4-9). For at least this reason, Requestor respectfully asserts that this element is disclosed in WO '626.

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

The WO '626 Patent also discloses "a reagent proximal to or in contact with at least the working electrode," as recited in Claim 36 of the Wilsey '147 Patent. More specifically, WO '626 teaches that in one exemplary embodiment, "sensing chemistry materials are provided in the sample chamber 26 for the analysis of the analyte." In this exemplary embodiment, this "sensing chemistry preferably includes a redox mediator and a second electron transfer mediator." (*See* page 13, lines 9-12). WO '626 additionally teaches that "the redox mediator and second electron transfer agent are ...disposed on the same surface of the sample chamber, such as, for example, on the working electrode." (*See* page 14, lines 15-17). For at least this reason, Requestor respectfully asserts that this element is disclosed in WO '626.

The reagent described in WO '626 also "include[s] an enzyme and a mediator," as recited in Claim 36 of the Wilsey '147 Patent. As described above, the sensing chemistry of WO '626 comprises a redox mediator and a second electron transfer agent. WO '626 further discloses that "[o]ne example of a suitable second electron transfer agent is an enzyme." (*See* page 37, lines 7-9). For at least this reason, Requestor respectfully asserts that this element is disclosed in WO '626.

Additionally, the method disclosed in WO '626 further comprises "the reagent reacting with glucose to produce an electroactive reaction product," as recited in Claim 36 of the Wilsey '147 Patent. For example, WO '626 teaches that "[t]hose skilled in the art will recognize that there are many different reactions that will provide the same result; namely the electrolysis of an analyte through a reaction pathway incorporating a redox mediator." (*See* page 60, lines 22-26). "Electrolysis" is further defined in WO '626 as "the electrooxidation or electroreduction of a compound either directly at an electrode or via one or more electron transfer agents (e. g., redox

109

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

mediators and/or enzymes)." (*See* page 10, lines 16-18). Lastly, with respect to this element of

Claim 36, WO '626 teaches that the analyte, or compound, can be glucose. (*see, e.g.,* Abstract;

page 97, lines 13-14 and Claim 11). For at least this reason, Requestor respectfully asserts that

this element is disclosed in WO '626.

The method disclosed in WO '626 also comprises "applying a blood sample containing

glucose into the capillary chamber," as recited in Claim 36 of the Wilsey '147 Patent. As

described above, the analyte sample of WO '626 can be glucose. WO '626 further teaches that

the "sample chamber 26 is configured so that when a sample is provided in the chamber the

sample is in electrolytic contact with both the working electrode 22 and the counter electrode

24." (*See* page 12, lines 7-9). For at least this reason, Requestor respectfully asserts that this

element is disclosed in WO '626.

Next, WO '626 discloses that "the capillary chamber direct[s] capillary flow of the blood

sample into contact with the reagent to cause the blood sample to at least partially solubilize or

hydrate the reagent," as recited in Claim 36 of the Wilsey '147 Patent. For example, WO '626

teaches that the "sample chamber 26 is configured so that when a sample is provided in the

chamber the sample is in electrolytic contact with both the working electrode 22 and the counter

electrode 24." (*See* page 12, lines 7-9). In addition, WO '626 teaches that the "redox mediator

and/or second electron transfer agent may first dissolve from the surface on which it was placed

as a solid" and that "the redox mediator and second electron transfer agent are ... disposed on

the same surface of the sample chamber, such as, for example, on the working electrode." (*See* page

15, lines 1-2 and page 14, lines 15-17, respectively). Thus, a sample of blood entering the

sample chamber 26 of WO '626 would necessarily contact the redox mediator and/or second

110

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

electron transfer agent, which are disposed on the working electrode 22 located within the

sample chamber 26. For at least this reason, Requestor respectfully asserts that this element is

disclosed in WO '626.

The Requestor also respectfully asserts that the method of WO '626 further comprises

"detecting the blood sample in the capillary chamber," as recited in Claim 36 of the Wilsey '147

Patent. In the Wilsey '147 Patent, blood is detected using a "drop detect" system, which senses

current flow between the working and counter electrodes when blood covers the nearest working

and counter electrodes. (*See* col. 23, line 60 to col. 24, line 50). Similarly, in one exemplary

embodiment of WO '626, the sensor used for detection and quantification of the analyte includes

"a fill indicator, such as an indicator electrode or a second electrode pair, that can be used to

determine when the measurement zone or sample chamber has been filled." (*See* page 4, lines 1-

3). An "indicator electrode," in one exemplary embodiment of WO '626, includes one or more

electrodes that detect partial or complete filling of a sample chamber and/or measurement zone.

(*See* page 10, lines 26 and 27). For at least this reason, Requestor respectfully asserts that this

element is disclosed in WO '626.

The method of WO '626 also discloses "electrooxidizing or electroreducing the

electroactive reaction product at the working electrode," as recited in Claim 36 of the Wilsey

'147 Patent. In this regard the Requestor respectfully notes that WO '626 defines the "working

electrode" as "an electrode at which [an] analyte is electrooxidized or electroreduced with or

without the agency of a redox mediator." (*See* page 4, lines 24-25). For at least this reason,

Requestor respectfully asserts that this element is disclosed in WO '626.

111

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

The Requestor also respectfully asserts that WO '626 further discloses that "within 10 seconds after said detecting, determining and providing a readout of the glucose concentration in the blood sample."

In this regard, the Requestor respectfully notes that FIG. 17 of WO '626 illustrates the amount of time required to determine the concentration of the analyte. (*See* page 96, lines 7-10). This analyte can be glucose, as described above. (*see, e.g.,* Abstract; page 97, lines 13-14 and Claim 11).

FIG. 17



With regard to measuring the concentration of the analyte, WO '626 teaches various methods of analysis, such as, for example, coulometry, amperometry and/or potentiometry. Additionally WO '626 teaches that, "[i]t is typically desirable that the analyte be electrolyzed quickly." (*See* page 64, lines 12-13). In this regard, WO '626 teaches that "[t]he speed of the

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

electrochemical reaction depends on several factors, including the potential that is applied

between the electrodes ..., [and] the size of the measurement zone." (*See* page 64, lines 13-16).

As noted above, WO '626 "can be used to determine the concentration of a biomolecule, such as

glucose or lactate, in a biological fluid such as blood or serum using techniques such as

coulometry, amperometry and potentiometry." (*See* Abstract).  With regard to coulometry, "the

completion of the electrochemical reaction is typically signaled when the current reaches a

steady state value." (*See* page 64, lines 7-8).  An example of the steady state value is illustrated

in FIG. 17.  The steady state typically indicates that all, or nearly all of the analyte has been

electrolyzed.  This means that, for example, approximately 90%-99% of the analyte has been

electrolyzed.

However, WO '626 teaches that for measurement, "at least 20% of the analyte is

electrolyzed.  Preferably at least 50%, more preferably at least 80%, and even more preferably at

least 90% of the analyte is electrolyzed." (*See* page 64, lines 1-3).  In other words, the analyte

concentration can be determined as soon as 20% of the analyte is electrolyzed, or at T=about 3

seconds, as represented in FIG. 17, above.  In cases such as this where the analyte is only

partially electrolyzed, the current is measured during the partial reaction and then extrapolated

using known mathematical teachings. (*See* page 64, lines 26-30).  As such, Requestor

respectfully asserts that the response time of the sensor can be reduced to the duration desired by

the user, for example 10 seconds or less.

Furthermore, Requestor respectfully asserts that WO '626 discloses several conditions

applicable to the response time of the sensor that may be relied on to further reduce the response

time shown in FIG. 17.

113

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

In particular, WO '626 discloses that "[i]ncreasing the amount of diffusible redox mediator in the sample decreases the response time of the sensor." (*See* page 96, lines 8-10). Similarly, WO '626 discloses that a heating element can be provided "to heat the sample chamber to increase the rate of oxidation or reduction of the analyte." (*See* page 4, lines 5-7). WO '626 also discloses decreasing the thickness of the sample chamber "to promote rapid electrolysis of the analyte, as more of the sample will be in contact with the electrode surface for a given sample volume." (*See* page 42, lines 14-16).

The Examiner relied upon the same principles to reject the application that matured into the Wilsey '147 Patent (U.S. Patent Application No. 10/382,322, hereinafter "the '322 Application") over other prior art, which the Applicant antedated through the use of a Declaration Under 37 C.F.R. § 1.131. Specifically, the Examiner determined that the potential applied between the electrodes, as well as the size of the measurement zone, can reduce the response time of the sensor. (*See* Office Action of March 8, 2006, for example page 8). The Examiner also determined that the rate of oxidation of the redox mediator, as well as the amount of enzyme included in the reagent, can reduce the time period for completion of the reaction. (*See* Office Action of March 8, 2006). Requestor respectfully notes that, although disagreeing with the Examiner's position, the Applicant in the Wilsey '322 Application were not able to overcome the Examiner's position, and could only circumvent the rejection by swearing behind the cited references. (*See* Examiner's Statement of Reasons for Allowance, dated February 6, 2007).

For at least these additional reasons, Requestor respectfully asserts that WO '626 discloses a sensor response time which is less than 10 seconds.

114

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

The method of WO '626 also discloses that "said determining comprising correlating the electrooxidized or electroreduced electroactive reaction product to the concentration of glucose in the blood sample," as recited in Claim 36 of the Wilsey '147 Patent. In this regard, and in addition to the disclosure of the WO '626 Patent described above, WO '626 discloses that "[o]ne aspect of the invention is a method of determining the concentration of an analyte in a sample by contacting the sample with an electrochemical sensor and determining the concentration of the analyte." (*See* page 3, lines 20-22). For at least this reason, Requestor respectfully asserts that this element is disclosed in WO '626.

In view of the above, Requestor respectfully asserts that Claim 36 of the Wilsey '147 Patent is anticipated in view of the disclosure of WO '626. As such, the disclosure of WO '626 creates a substantial new question of patentability with respect to independent Claim 36 of the Wilsey '147 Patent.

### xxxiv. Claim 37

WO '626 discloses that the chamber 26 has a holding volume of "no more than about 1 µl, preferably no more than about 0.5 µl, more preferably no more than about 0.25 µl, and most preferably no more than about 0.1 µl" (page 11, line 30 to page 12, line 3). Accordingly, WO '626 discloses the capillary chamber recited in Claim 37, which "holds a volume of about 600 nL" (0.6 µl).

Therefore, Requestor respectfully submits that a substantial new question of patentability is raised with respect to Claim 37 of the Wilsey '147 Patent.

115

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

### xxxv.  Claim 38

FIG. 17 in WO '626 illustrates a curve used to determine and provide a readout of the concentration of an analyte, such as glucose (*see, e.g.,* Abstract; page 97, lines 13-14).  As previously discussed, WO '626 discloses that for measurement, "at least 20% of the analyte is electrolyzed." (*See* page 64, lines 1-3).  Accordingly, the concentration of the analyte can be measured when only 20% of the analyte is electrolyzed.  In FIG. 17, 20% of the analyte of Sensor B is electrolyzed at about T=about 3 seconds or less.  Accordingly, WO '626 discloses "determining and providing a readout of the glucose concentration within about 5 seconds after said detecting," as recited in Claim 38.

As described above, WO '626 teaches various methods of analysis, such as, for example, coulometry, amperometry and/or potentiometry.  Additionally WO '626 teaches that, "[i]t is typically desirable that the analyte be electrolyzed quickly." (*See* page 64, lines 12-13).  In this regard, WO '626 teaches that "[t]he speed of the electrochemical reaction depends on several factors, including the potential that is applied between the electrodes ..., [and] the size of the measurement zone." (*See* page 64, lines 13-16).  As a result, the response time illustrated in FIG. 17 could be further reduced, for example, by manipulating the potential applied between electrodes and the size of the measurement zone, to determine and provide a readout of the concentration of an analyte faster than, for example, 5 seconds, as recited in Claim 38.

Therefore, Requestor respectfully submits that a substantial new question of patentability is raised with respect to Claim 38 of the Wilsey '147 Patent.

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

### xxxvi.  Claim 39

WO '626 discloses that the chamber 26 has a holding volume of "no more than about 1 μl, preferably no more than about 0.5 μl, more preferably no more than about 0.25 μl, and most preferably no more than about 0.1 μl" (*See* page 11, line 30 to page 12, line 3).  Accordingly, WO '626 discloses the capillary chamber that "holds a volume of between 0.25 μl and 0.4 μl," recited in Claim 39.

Therefore, Requestor respectfully submits that a substantial new question of patentability is raised with respect to Claim 39 of the Wilsey '147 Patent.

### xxxvii. Claim 40

FIG. 17 in WO '626 illustrates a curve used to determine and provide a readout of the concentration of an analyte, such as glucose (*see, e.g.,* Abstract; page 97, lines 13-14).  As previously discussed, WO '626 discloses that for measurement, "at least 20% of the analyte is electrolyzed." (*See* page 64, lines 1-3). ).  In other words, the concentration of analyte of a given sample can be determined when 20% of the analyte has been electrolyzed, which pursuant to FIG. 17 occurs in about 3 seconds or less (*i.e.,* the response time is equal to about 3 seconds or less).  At this point, current can be extrapolated using known mathematical teachings. (*See* page 64, lines 26-30).  Accordingly, WO '626 discloses "determining and providing a readout of the glucose concentration within about 5 seconds after said detecting," as recited in Claim 40.

Furthermore, WO '626 also discloses additionally reducing the response time of the WO '626 sensor by adjusting the parameters described with respect to Claim 36 above.  Briefly, these parameters can include: increasing the amount of redox mediator, heating the sample chamber

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

and decreasing the thickness of the sample chamber. Accordingly, WO '626 discloses all of the

elements of Claim 40.

Therefore, Requestor respectfully submits that a substantial new question of patentability

is raised with respect to Claim 40 of the Wilsey '147 Patent.

### xxxviii.     Claim 41

WO '626 discloses that the chamber 26 has a holding volume of "no more than about 1

$\mu$l, preferably no more than about 0.5 $\mu$l, more preferably no more than about 0.25 $\mu$l, and most

preferably no more than about 0.1 $\mu$l" (page 11, line 30 to page 12, line 3). Accordingly, WO

'626 discloses the capillary chamber that "holds a volume of about 400 nL," (0.4 $\mu$l) recited in

Claim 41.

Therefore, Requestor respectfully submits that a substantial new question of patentability

is raised with respect to Claim 41 of the Wilsey '147 Patent.

### xxxix.  Claim 42

FIG. 17 in WO '626 illustrates a curve used to determine and provide a readout of the

concentration of an analyte, such as glucose (*see, e.g.,* Abstract; page 97, lines 13-14). As

previously discussed, WO '626 discloses that for measurement, "at least 20% of the analyte is

electrolyzed." (*See* page 64, lines 1-3). Accordingly, the concentration of the analyte can be

measured when only 20% of the analyte is electrolyzed. As explained in WO '626 (*see*

paragraph bridging pages 64 and 65):

> The current is measured during the partial reaction [*i.e.,* when 20% of the analyte
> is electrolyzed,] and then extrapolated using mathematical techniques known to
> those skilled in the art to determine the current curve for the complete or nearly

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

complete electrolysis of the analyte. Integration of this curve yields the amount of charge that would be passed if the analyte were completely or nearly completely electrolyzed and, using equation (3a) or (3b), the concentration of the analyte is calculated.

Accordingly, WO '626 discloses that it is possible to reduce the response time of the sensor by determining analyte concentration when as little as 20% of the analyte has been electrolyzed. In FIG. 17, 20% of the analyte of Sensor B is electrolyzed at T=about 3 seconds or less. Accordingly, WO '626 discloses "determining and providing a readout of the glucose concentration within about 5 seconds after said detecting," as recited in Claim 42.

Additionally, as described above, WO '626 teaches various methods of analysis, such as, for example, coulometry, amperometry and/or potentiometry. Additionally WO '626 teaches that, "[i]t is typically desirable that the analyte be electrolyzed quickly." (*See* page 64, lines 12-13). In this regard, WO '626 teaches that "[t]he speed of the electrochemical reaction depends on several factors, including the potential that is applied between the electrodes ..., [and] the size of the measurement zone." (*See* page 64, lines 13-16). As a result, the response time illustrated in FIG. 17 could be further reduced, for example, by manipulating the potential applied between electrodes and the size of the measurement zone, to determine and provide a readout of the concentration of an analyte faster than, for example, 5 seconds, as recited in Claim 42.

Therefore, Requestor respectfully submits that a substantial new question of patentability is raised with respect to Claim 42 of the Wilsey '147 Patent.

### xl. Claim 43

WO '626 discloses that the chamber 26 has a holding volume of "no more than about 1 μl, preferably no more than about 0.5 μl, more preferably no more than about 0.25 μl, and most

119

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

preferably no more than about 0.1 µl" (page 11, line 30 to page 12, line 3). Accordingly, WO

'626 discloses the capillary chamber that "holds a volume of about 300 nL," (0.3 µl) recited in

Claim 43.

Therefore, Requestor respectfully submits that a substantial new question of patentability

is raised with respect to Claim 43 of the Wilsey '147 Patent.

### xli. Claim 44

FIG. 17 in WO '626 illustrates a curve used to determine and provide a readout of the

concentration of an analyte, such as glucose (*see, e.g.,* Abstract; page 97, lines 13-14). As

previously discussed, WO '626 discloses that for measurement, "at least 20% of the analyte is

electrolyzed." (*See* page 64, lines 1-3). Accordingly, the concentration of the analyte can be

measured when only 20% of the analyte is electrolyzed. In FIG. 17, 20% of the analyte of

Sensor B is electrolyzed at T=about 3 seconds or less. Accordingly, WO '626 discloses

"determining and providing a readout of the glucose concentration within about 5 seconds after

said detecting," as recited in Claim 44.

As described above, WO '626 teaches various methods of analysis, such as, for example,

coulometry, amperometry and/or potentiometry. Additionally WO '626 teaches that, "[i]t is

typically desirable that the analyte be electrolyzed quickly." (*See* page 64, lines 12-13). In this

regard, WO '626 teaches that "[t]he speed of the electrochemical reaction depends on several

factors, including the potential that is applied between the electrodes ..., [and] the size of the

measurement zone." (*See* page 64, lines 13-16). As a result, the response time illustrated in FIG.

17 could be further reduced, for example, by manipulating the potential applied between

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

electrodes and the size of the measurement zone, to determine and provide a readout of the

concentration of an analyte faster than, for example, 5 seconds, as recited in Claim 44.

Therefore, Requestor respectfully submits that a substantial new question of patentability

is raised with respect to Claim 44 of the Wilsey '147 Patent.

### xlii.    Claim 45

Requestor respectfully asserts that WO '626 discloses "determining and providing a

readout of the glucose concentration within about 8 seconds of said detecting." In particular, as

disclosed with respect to Claim 36, WO '626 teaches that for measurement, at least 20% of the

analyte is electrolyzed" (page 64, lines 1-3). In other words, the concentration of analyte of a

given sample can be determined when 20% of the analyte has been electrolyzed, which pursuant

to FIG. 17 may occur in about 3 seconds or less (*i.e.,* the response time is equal to about 3

seconds or less). At this point, current can be extrapolated using known mathematical teachings.

(*See* page 64, lines 26-30). Accordingly, WO '626 discloses measuring the concentration of

glucose "within about 8 seconds of said detection," as recited in Claim 45.

Furthermore, WO '626 also discloses additionally reducing the response time of the WO

'626 sensor by adjusting the parameters described with respect to Claim 36 above. Briefly, these

parameters can include: increasing the amount of redox mediator, heating the sample chamber

and decreasing the thickness of the sample chamber. Accordingly, WO '626 discloses all of the

elements of Claim 45.

In light of the above, a substantial new question of patentability is raised with respect to

Claim 45.

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

### xliii.    Claim 46

FIG. 17 in WO '626 illustrates a curve used to determine and provide a readout of the concentration of an analyte, such as glucose. (*see, e.g.,* Abstract; page 97, lines 13-14). As previously discussed, WO '626 discloses that for measurement, "at least 20% of the analyte is electrolyzed." (*See* page 64, lines 1-3). Accordingly, the concentration of the analyte can be measured when only 20% of the analyte is electrolyzed. As explained in WO '626 (*see* paragraph bridging pages 64 and 65):

> The current is measured during the partial reaction [*i.e.,* when 20% of the analyte is electrolyzed,] and then extrapolated using mathematical techniques known to those skilled in the art to determine the current curve for the complete or nearly complete electrolysis of the analyte. Integration of this curve yields the amount of charge that would be passed if the analyte were completely or nearly completely electrolyzed and, using equation (3a) or (3b), the concentration of the analyte is calculated.

Accordingly, WO '626 discloses that it is possible to reduce the response time of the sensor by determining analyte concentration when as little as 20% of the analyte has been electrolyzed. In FIG. 17, 20% of the analyte of Sensor B is electrolyzed at T=about 3 seconds or less. Accordingly, WO '626 discloses "determining and providing a readout of the glucose concentration about 3.5 to about 8 seconds after said detecting," as recited in Claim 46.

Moreover, as described above, WO '626 teaches various methods of analysis, such as, for example, coulometry, amperometry and/or potentiometry. Additionally WO '626 teaches that, "[i]t is typically desirable that the analyte be electrolyzed quickly." (*See* page 64, lines 12-13). In this regard, WO '626 teaches that "[t]he speed of the electrochemical reaction depends on several factors, including the potential that is applied between the electrodes ..., [and] the size of the measurement zone." (*See* page 64, lines 13-16). As a result, the response time illustrated in

122

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

FIG. 17 could be further reduced, for example, by manipulating the potential applied between electrodes and the size of the measurement zone, to determine and provide a readout of the concentration of an analyte, for example,  in about 3.5 to about 8 seconds, as recited in Claim 46.

Therefore, Requestor respectfully submits that a substantial new question of patentability is raised with respect to Claim 46 of the Wilsey '147 Patent.

### xliv.    Claim 47

FIG. 17 in WO '626 illustrates a curve used to determine and provide a readout of the concentration of an analyte, such as glucose  (*see, e.g.,* Abstract; page 97, lines 13-14).  As previously discussed, WO '626 discloses that for measurement, "at least 20% of the analyte is electrolyzed." (*See* page 64, lines 1-3).  Accordingly, the concentration of the analyte can be measured when only 20% of the analyte is electrolyzed.  In FIG. 17, 20% of the analyte of Sensor B is electrolyzed at T=about 3 seconds or less.  At this point, current can be extrapolated using known mathematical teachings. (*See* page 64, lines 26-30).  As such, WO '626 discloses "determining and providing a readout of the glucose concentration within about 5 seconds after said detecting," as recited in Claim 47.

Furthermore, WO '626 also discloses additionally reducing the response time of the WO '626 sensor by adjusting the parameters described with respect to Claim 36 above.  Briefly, these parameters can include: increasing the amount of redox mediator, heating the sample chamber and decreasing the thickness of the sample chamber.  Accordingly, WO '626 discloses all of the elements of Claim 47.

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

Therefore, Requestor respectfully submits that a substantial new question of patentability

is raised with respect to Claim 47 of the Wilsey '147 Patent.

### xlv.    Claim 48

FIG. 17 in WO '626 illustrates a curve used to determine and provide a readout of the

concentration of an analyte, such as glucose (*see, e.g.,* Abstract; page 97, lines 13-14). As

previously discussed, WO '626 discloses that for measurement, "at least 20% of the analyte is

electrolyzed." (*See* page 64, lines 1-3). Accordingly, the concentration of the analyte can be

measured when only 20% of the analyte is electrolyzed. In FIG. 17, 20% of the analyte of

Sensor B is electrolyzed at T=about 3 seconds or less. At this point, current can be extrapolated

using known mathematical teachings. (*See* page 64, lines 26-30). As such, WO '626 discloses

"determining and providing a readout of the glucose concentration within about 4 seconds of said

detecting," as recited in Claim 48.

Furthermore, as described above, WO '626 teaches various methods of analysis, such as,

for example, coulometry, amperometry and/or potentiometry. Additionally WO '626 teaches

that, "[i]t is typically desirable that the analyte be electrolyzed quickly." (*See* page 64, lines 12-

13). In this regard, WO '626 teaches that "[t]he speed of the electrochemical reaction depends

on several factors, including the potential that is applied between the electrodes ..., [and] the size

of the measurement zone." (*See* page 64, lines 13-16). As a result, the response time illustrated

in FIG. 17 could be further reduced, for example, by manipulating the potential applied between

electrodes and the size of the measurement zone, to determine and provide a readout of the

concentration of an analyte faster than, for example, about 4 seconds, as recited in Claim 48.

124

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

Therefore, Requestor respectfully submits that a substantial new question of patentability is raised with respect to Claim 48 of the Wilsey '147 Patent.

### xlvi.    Claim 49

FIG. 17 in WO '626 illustrates a curve used to determine and provide a readout of the concentration of an analyte, such as glucose (*see, e.g.,* Abstract; page 97, lines 13-14). As previously discussed, WO '626 discloses that for measurement, "at least 20% of the analyte is electrolyzed." (*See* page 64, lines 1-3). Accordingly, the concentration of the analyte can be measured when only 20% of the analyte is electrolyzed. In FIG. 17, 20% of the analyte of Sensor B is electrolyzed at T=about 3 seconds or less. At this point, current can be extrapolated using known mathematical teachings. (*See* page 64, lines 26-30). As such, WO '626 discloses "determining and providing a readout of the glucose concentration about 5 seconds after said detecting," as recited in Claim 49.

Furthermore, WO '626 also discloses additionally reducing the response time of the WO '626 sensor by adjusting the parameters described with respect to Claim 36 above. Briefly, these parameters can include: increasing the amount of redox mediator, heating the sample chamber and decreasing the thickness of the sample chamber. Accordingly, WO '626 discloses all of the elements of Claim 49.

Therefore, Requestor respectfully submits that a substantial new question of patentability is raised with respect to Claim 49 of the Wilsey '147 Patent.

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

### xlvii.   Claim 50

FIG. 17 in WO '626 illustrates a curve used to determine and provide a readout of the concentration of an analyte, such as glucose (*see, e.g.,* Abstract; page 97, lines 13-14). As previously discussed, WO '626 discloses that for measurement, "at least 20% of the analyte is electrolyzed." (*See* page 64, lines 1-3). Accordingly, the concentration of the analyte can be measured when only 20% of the analyte is electrolyzed. In FIG. 17, 20% of the analyte of Sensor B is electrolyzed at T=about 3 seconds or less. At this point, current can be extrapolated using known mathematical teachings. (*See* page 64, lines 26-30). As such, WO '626 discloses "determining and providing a readout of the glucose concentration about 4 seconds after said detecting."

Furthermore, as described above, WO '626 teaches various methods of analysis, such as, for example, coulometry, amperometry and/or potentiometry. Additionally WO '626 teaches that, "[i]t is typically desirable that the analyte be electrolyzed quickly." (*See* page 64, lines 12-13). In this regard, WO '626 teaches that "[t]he speed of the electrochemical reaction depends on several factors, including the potential that is applied between the electrodes ..., [and] the size of the measurement zone." (*See* page 64, lines 13-16). As a result, the response time illustrated in FIG. 17 could be further reduced, for example, by manipulating the potential applied between electrodes and the size of the measurement zone, to determine and provide a readout of the concentration of an analyte faster than, for example, about 4 seconds, as recited in Claim 50.

Therefore, Requestor respectfully submits that a substantial new question of patentability is raised with respect to Claim 50 of the Wilsey '147 Patent.

126

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

### xlviii.  Claim 51

With regard to dependent Claim 51, Requestor respectfully asserts that WO '626 discloses "[t]he method of claim 31 in which said reagent is dry."

WO '626 discloses that the "reagent is dry," as recited in Claim 46.  Specifically, WO '626 discloses that the "redox mediator and/or second electron transfer agent may first dissolve from the surface on which it was placed as a solid." (*See* page 15, lines 1-2).  Accordingly, the reagent exists as a "solid" (i.e., it is dry).

In addition, WO '626 discloses that "the capillary chamber directs capillary flow of the blood sample into contact with the dry reagent to cause the blood sample to at least partially solubilize or hydrate the dry reagent" as recited in Claim 51.  Specifically, WO '626 discloses that the sample chamber is configured so that the sample is in electrolytic contact with the working electrode. (*See* page 12, lines 7-9).  Accordingly, because, as mentioned above, the reagent may dissolve, Requestor respectfully submits that the reagent in WO '626 may be least partially solubilized.

Therefore, Requestor respectfully submits that the cited art presents a substantial new question of patentability with respect to Claim 51.

### xlix.  Claim 52

With regard to dependent Claim 52, Requestor respectfully asserts that WO '626 discloses "[t]he method of claim 51 in which the dry reagent comprises a reagent that is applied wet and dried of solvent."

127

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

WO '626 discloses that "the air oxidation of the redox mediator may take place while the redox mediator is in solution, such as, for example, prior to **the solution being applied onto the sensor and dried**." (See page 35, lines 22-25) (emphasis added).

WO '626 also discloses that "the dry reagent comprises a reagent that is applied wet and dried of solvent," as recited in Claim 52. Specifically, the redox mediator and the enzyme in WO '626 are applied in solution, as evidenced by the fact that they "typically form a sensing layer on the working electrode" or "may be disposed on any surface in the sample chamber." (*See* page 13, lines 16-19; see also, Example 9 in WO '626). This disclosure relates to, for example, solution casting of the redox mediator and the enzyme on the working electrode. If a solvent were not used, then the redox mediator and enzyme would exist only as a powder and would not form a sensing layer.

Therefore, Requestor respectfully submits that the cited art presents a substantial new question of patentability with respect to Claim 52.

### l. Claim 53

With regard to dependent Claim 53, Requestor respectfully asserts that WO '626 discloses a "capillary chamber ha[ving] a depth of 25-200 μm [0.025-0.2 mm]." In this regard, WO '626 discloses that "[t]ypically, the thickness of the sample chamber is no more than about 0.2 mm. Preferably, the thickness of the sample chamber is no more than about 0.1 mm and, more preferably, the thickness of the sample chamber is about 0.05 mm or less" (*See* page 42, lines 20-22). Based on the disclosure of WO '626 the terms "thickness" and "depth" are interchangeable.

128

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

Therefore, Requestor respectfully submits that a substantial new question of patentability is raised with respect to Claim 53 of the Wilsey '147 Patent.

### li.  Claim 54

As previously discussed, FIG. 17 in WO '626 illustrates determining and providing a readout of analyte, such as glucose (*see, e.g.,* Abstract; page 97, lines 13-14), within 10 seconds after detecting the blood sample. Accordingly, WO '626 discloses the "determining and providing a readout of the glucose concentration in the blood sample within 10 seconds of said detecting" as recited in Claim 54. The recitation in Claim 54 related to "providing the reagent in a sufficiently small amount as to be solubilized or hydrated in a time sufficiently fast to allow said determining" is inherently present in WO '626 because the redox mediator therein solubilizes in a time sufficient to provide the above readout at least within about 10 seconds after detecting the blood sample (the "redox mediator and/or second electron transfer agent may first dissolve from the surface on which it was placed as a solid" (*See* page 15, lines 1-27).

Therefore, Requestor respectfully submits that a substantial new question of patentability is raised with respect to Claim 54 of the Wilsey '147 Patent.

### lii.  Claim 55

FIG. 17 in WO '626 illustrates a curve used to determine and provide a readout of the concentration of an analyte, such as glucose (*see, e.g.,* Abstract; page 97, lines 13-14). As previously discussed, WO '626 discloses that for measurement, "at least 20% of the analyte is electrolyzed." (*See* page 64, lines 1-3). Accordingly, the concentration of the analyte can be measured when only 20% of the analyte is electrolyzed. In FIG. 17, 20% of the analyte of

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

Sensor B is electrolyzed at T=about 3 seconds or less. Accordingly, WO '626 discloses "determining and providing a readout of the glucose concentration in the blood sample within 10 seconds of said detecting," as recited in Claim 55.

As described above, WO '626 teaches various methods of analysis, such as, for example, coulometry, amperometry and/or potentiometry. Additionally WO '626 teaches that, "[i]t is typically desirable that the analyte be electrolyzed quickly." (*See* page 64, lines 12-13). In this regard, WO '626 teaches that "[t]he speed of the electrochemical reaction depends on several factors, including the potential that is applied between the electrodes ..., [and] the size of the measurement zone." (*See* page 64, lines 13-16). As a result, the response time illustrated in FIG. 17 could be further reduced, for example, by manipulating the potential applied between electrodes and the size of the measurement zone, to determine and provide a readout of the concentration of an analyte faster than, for example, 10 seconds, as recited in Claim 55.

Requestor further respectfully notes that in order for the measurement to be taken within 10 seconds, the redox mediator in WO '626 must react "sufficiently rapidly," as recited in the claim. Accordingly, WO '626 discloses the elements of Claim 55.

Therefore, Requestor respectfully submits that a substantial new question of patentability is raised with respect to Claim 55 of the Wilsey '147 Patent.

### liii. Claim 56

WO '626 discloses a redox mediator that is "readily-reversible" (e.g., page 60, lines 10-26). A "readily-reversible" redox mediator is one that may "exchange electrons rapidly with

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

each other and with the electrode so that the complex can be rapidly oxidized and/or reduced."

(page 30, lines 10-11 in WO '626).  Accordingly, WO '626 discloses this aspect of Claim 56.

Therefore, Requestor respectfully submits that a substantial new question of patentability

is raised with respect to Claim 56 of the Wilsey '147 Patent.

### liv. Claim 57

WO '626 provides that "[t]he analyte measurement device 52 may ... be placed in a

reader, not shown," which connects electrochemical analysis equipment to the electrode tabs to

determine the concentration of the analyte (page 56, lines 22-25), and illustrates the same in FIG.

6, which is reproduced below:



Requestor respectfully submits that the reader referred to in the passage above is an

automatic reader which will automatically operate the sensor in WO '626.

The sensor in WO '626 also includes an indicator electrode, detecting when blood has

filled the chamber (page 4, lines 1-3; page 80, lines 26-28), and as discussed above, FIG. 17 in

WO '626 illustrates determining and providing a readout of the analyte, such as glucose  (see,

e.g., Abstract; page 97, lines 13-14), at least faster than 10 seconds after detecting the blood

131

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

sample. Accordingly, Requestor respectfully submits that WO '626 discloses each element of

Claim 57 of the Wilsey '147 Patent.

Therefore, Requestor respectfully submits that a substantial new question of patentability

is raised with respect to Claim 57 of the Wilsey '147 Patent.

### lv.  Claim 58

With regard to dependent Claim 58, Requestor respectfully asserts that WO '626

discloses "[t]he method of claim 57 in which said automatically operating comprises connecting

the test strip to an external testing apparatus prior to said detecting, the testing apparatus

automatically detecting the blood sample in the capillary chamber, electrooxidizing the

electroactive reaction product, determining the glucose concentration, and providing a readout of

the glucose concentration within 10 seconds of said detecting."

WO '626 provides that "[t]he analyte measurement device 52 may ... be placed in a

reader, not shown," which connects electrochemical analysis equipment to the electrode tabs to

determine the concentration of the analyte (page 56, lines 22-25), and illustrates the same in FIG.

6, which is reproduced below:



REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

Requestor respectfully submits that the reader referred to in the passage above is an automatic reader which will automatically operate the sensor in WO '626.

The sensor in WO '626 also includes an indicator electrode, detecting when blood has filled the chamber (page 4, lines 1-3; page 80, lines 26-28), and as discussed above, FIG. 17 in WO '626 illustrates determining and providing a readout of the analyte, such as glucose *(see, e.g.,* Abstract; page 97, lines 13-14), at least faster than 10 seconds after detecting the blood sample. Accordingly, Requestor respectfully submits that WO '626 discloses each element of Claim 58 of the Wilsey '147 Patent.

Therefore, Requestor respectfully submits that a substantial new question of patentability is raised with respect to Claim 58 of the Wilsey '147 Patent.

### lvi. Claim 59

FIG. 2 in WO '626, provided below (described on page 40, lines 14-15), illustrates that the two electrodes 22 and 24 are coplanar:

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147



FIG. 2

Therefore, Requestor respectfully submits that a substantial new question of patentability

is raised with respect to Claim 59 of the Wilsey '147 Patent.

### lvii.    Claim 60

With respect to Claim 60, Requestor respectfully asserts that WO '626 discloses

"measuring the current and correlating the measured current to the glucose concentration." In

this regard, and in addition to the disclosure of WO '626 described above, WO '626 teaches that

"[o]ne aspect of the invention is a method of determining the concentration of an analyte in a

sample by contacting the sample with an electrochemical sensor and determining the

concentration of the analyte." (*See* page 3, lines 20-22).

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

WO '626 additionally discloses that the sensor may be used to measure "determine the glucose concentration in blood samples." (*See, e.g.,* Abstract; page 97, lines 13-14). Accordingly, WO '626 discloses the elements of Claim 60.

Therefore, Requestor respectfully submits that a substantial new question of patentability is raised with respect to Claim 60 of the Wilsey '147 Patent.

### lviii.    Claim 61

Claim 61 depends from independent Claim 36. The subject matter of Claim 36 has been addressed above.

Claim 61 further defines the claimed method by requiring that "said detecting comprises applying a drop-detect potential across the working and counter or reference electrodes."

However, this limitation is also anticipated by the disclosure of WO '626. More specifically, WO '626 discloses that "[w]hen an external potential is applied, it may be applied either before or after the sample has been placed in the sample chamber." (*See* page 60, lines 10-11). Further, "[w]hen the potential is applied and the sample is in the measurement zone, an electrical current will flow between the working electrode and the counter electrode." (*See* page 60, lines 17-19). In other words, in one exemplary embodiment, a potential between the working and counter electrodes may be turned on before the sample is placed in the chamber. Once the sample is in the chamber, electrical current will flow between the working and counter electrodes. This is also supported by the disclosure of FIG. 17, reproduced below.

135

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

**FIG. 17**



As shown in FIG. 17, once blood contacts both the working and counter electrodes, an electrical connection is made between the working and counter electrodes and current will start flowing. At the time of connection, a rise in current can be seen in FIG. 17.

In light of the above, Requestor respectfully asserts that a substantial new question of patentability is raised with respect to Claim 61.

### lix. Claim 65

With regard to dependent Claim 65, Requestor respectfully asserts that WO '626 discloses "[t]he method of claim 36 in which said providing comprises providing a test strip including a bottom substrate, a spacing layer, and a top substrate, the spacing layer having an opening corresponding to the capillary chamber, the spacing layer substantially defining the depth of the capillary chamber."

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

As shown in FIG. 3, the spacer 28 is located between two plates 38, which contain the

working and counter electrodes 22 and 24, respectively.  FIG. 3 is reproduced below.



As shown in FIG. 3, the capillary chamber is formed by the opening within the spacer 28

and the two plates 38.  The top substrate may be seen as element 38 in FIG. 3 of WO '626.

The method of WO '626 also discloses "the spacing layer substantially defining the depth

of the capillary chamber."  As shown in FIG. 3, reproduced above, the depth of the capillary

chamber is defined by the thickness of the spacer 28.  WO '626 further discloses that "the

thickness of the sample chamber and of the measurement zone correspond typically to the

thickness of spacer 28." (page 42, lines 10-12).

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

As such, Requestor respectfully asserts that a substantial new question of patentability is raised with respect to Claim 65 of the Wilsey '147 Patent.

### lx. Claim 66

The reagent in WO '626 includes a redox mediator (page 24, section entitled "Redox Mediator") which may be reduced upon reacting (page 60, lines 22-26). Accordingly, WO '626 discloses that the reacting therein "produces a reduced form of the mediator," as recited in Claim 66.

Therefore, Requestor respectfully submits that a substantial new question of patentability is raised with respect to Claim 66 of the Wilsey '147 Patent.

### lxi. Claim 67

With respect to Claim 67, Requestor respectfully asserts that WO '626 discloses that "measuring the amount of the electrooxidized electroactive reaction product and correlating the amount to the concentration of glucose in the blood sample." In this regard, and in addition to the disclosure of WO '626 described above, WO '626 teaches that "[o]ne aspect of the invention is a method of determining the concentration of an analyte in a sample by contacting the sample with an electrochemical sensor and determining the concentration of the analyte." (*See* page 3, lines 20-22).

WO '626 additionally discloses that the sensor may be used to measure "determine the glucose concentration in blood samples." (*See, e.g.,* Abstract; page 97, lines 13-14). Accordingly, WO '626 discloses the elements of Claim 8.

Therefore, Requestor respectfully submits that a substantial new question of patentability is raised with respect to Claim 67 of the Wilsey '147 Patent.

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

### lxii.    Claim 68

With regard to dependent Claim 68, Requestor respectfully asserts that WO '626

discloses, "[t]he method of claim 36 comprising applying a potential of 100-500 mV between the

working electrode and the counter or reference electrodes." In this regard, WO '626 discloses an

example of an analyte sensor wherein an electric potential between +100 mV or +200 mV is

applied between the electrodes. (*See* page 87, lines 27-28; see also page 60, lines 5-6). For at

least this reason, Requestor respectfully asserts that this element is disclosed by WO '626.

In light of the above, Requestor respectfully asserts that a substantial new question of

patentability is raised with respect to Claim 68.

### lxiii.    Claim 69

With respect to Claim 69, WO '626 discloses that "the test strip comprises a counter

electrode." This disclosure is supported at least on page 12, line 9 of the WO '626 Patent, and in

FIGS. 1-4.

Additionally, WO '626 also discloses that "the reagent is located proximal to or in

contact with the working and counter electrodes." For example, the WO '626 Patent teaches that

the reagent may be proximal to or "disposed on ... the working electrode ... [or] the counter

electrode" (*See* page 14, lines 15-19).

Therefore, Requestor respectfully submits that a substantial new question of patentability

is raised with respect to Claim 69 of the Wilsey '147 Patent.

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

**B. Claims 13-15, and 62-64 of the Wilsey '147 Patent are Unpatentable Under 35 U.S.C. § 103(a) over WO '626 in view of U.S. Patent No. 6,153,069 to Pottgen et al. (the Pottgen '069 Patent)**

### i.   Claim 13

Claim 13 depends from Claim 12.  Claim 12 and the claims from which it depends are discussed above.

With respect to Claim 13, FIG. 21C in WO '626 discloses a "vent hole 574 (indicated as the shaded area in FIG. 21C)" in the sensor disclosed therein (page 53, lines 7-9):



FIG.  21C

Requestor respectfully notes that the Wilsey '147 Patent describes that the "vent in communication with the capillary chamber to facilitate flow of the sample into the capillary chamber" recited in Claim 12 "facilitate[s] flow of a sample substance into the capillary chamber by equalizing pressure between the interior and exterior of the chamber." (*See* Col. 11, lines 39-43 of the Wilsey '147 Patent).  The vent hole disclosed in WO '626 equalizes the pressure

140

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

between the interior and exterior of the sample chamber in WO '626, and therefore corresponds

to the vent recited in Claim 13 of the Wilsey '147 Patent.

Requestor notes that the element of Claim 13 of the Wilsey '147 Patent is present in the

primary reference, WO '626. Therefore, the reason to combine WO '626 with the Pottgen '069

Patent is as mentioned in the above discussion with respect to Claim 12.

Therefore, Requestor respectfully submits that a substantial new question of patentability

is raised with respect to Claim 13 of the Wilsey '147 Patent.

### ii. Claim 14

Claim 14 depends from Claim 13, above, which in turn depends from Claim 12, above.

Claim 13, Claim 12, and the claims from which Claim 12 depends, are discussed above.

With regard to Claim 14, Requestor respectfully asserts that WO '626 discloses "[t]he

method of claim 13 in which said providing comprises providing a test strip including a bottom

substrate, a spacing layer, and a top substrate, the spacing layer having an opening corresponding

to the capillary chamber, the spacing layer substantially defining the depth of the capillary

chamber."

As shown in FIG. 3, the spacer 28 is located between two plates 38, which contain the

working and counter electrodes 22 and 24, respectively. FIG. 3 is reproduced below.

141

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147



As shown in FIG. 3, the capillary chamber is formed by the opening within the spacer 28 and the two plates 38.  The top substrate may be seen as element 38 in FIG. 3 of WO '626.

The method of WO '626 also discloses "the spacing layer substantially defining the depth of the capillary chamber."  As shown in FIG. 3, reproduced above, the depth of the capillary chamber is defined by the thickness of the spacer 28.  WO '626 further discloses that "the thickness of the sample chamber and of the measurement zone correspond typically to the thickness of spacer 28." (*See* page 42, lines 10-12).

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

Requestor notes that the element of Claim 14 of the Wilsey '147 Patent is present in the

primary reference, WO '626. Therefore, the reason to combine WO '626 with the Pottgen '069

Patent is as mentioned in the above discussion with respect to Claim 12.

As such, Requestor respectfully asserts that a substantial new question of patentability is

raised with respect to Claim 14 of the Wilsey '147 Patent.

### iii. Claim 15

With regard to dependent claim 15, Requestor respectfully asserts that WO '626 discloses

"[t]he method of claim 14 in which the test strip is elongated with two opposed sides, the spacing

layer comprising spaced-apart first and second portions defining a capillary chamber extending

between and opening at the two opposed sides."

For example, as shown in FIG. 3, reproduced below, the sensor 20 (test strip) is elongated

with two opposite sides. Additionally, the spacer 28 is made up of two portions, which define a

sample chamber 26. (See also, page 41, lines 12-24). WO '626 discloses that "capillary action"

may be used to transport the sample into the sample chamber (page 47, lines 11-17). ). WO

'626 further teaches that the sensor may be a "disposable" biosensor test strip. (*See, e.g.,* page

57, lines 22-25).

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147



Requestor notes that the element of Claim 15 of the Wilsey '147 Patent is present in the primary reference, WO '626. Therefore, the reason to combine WO '626 with the Pottgen '069 Patent is as mentioned in the above discussion with respect to Claim 12.

As such, Requestor respectfully asserts that a substantial new question of patentability is raised with respect to Claim 15 of the Wilsey '147 Patent.

### iv. Claim 62

Claim 62 depends from Claim 61, which in turn depends from independent Claim 36. The subject matter of Claims 61 and 36 has been addressed above.

Claim 62 further defines the claimed method by requiring that "said detecting comprises applying a drop-detect potential across the working and counter or reference electrodes prior to and separate from said determining."

However, this claim limitation is also disclosed in the Pottgen '069 Patent. Specifically, referring again to FIGS. 1 and 2 of the Pottgen '069 Patent, a sample cell is disclosed that is

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

"positioned through window 19 (FIG. 1) to initiate the testing procedure. [and, once] inserted, a potential is applied at portion 27 (FIG. 2) of the sample cell across electrodes 24 and 26 to **detect the presence of the sample**." (Cols. 9, line 66 through col. 10, line 1) (emphasis added). Once the sample's presence is detected, the potential is removed and the incubation period initiated. (Col. 10, lines 2-3). The Pottgen '069 Patent further discloses "[a]n electrical potential is next applied at portion 27 of the sample cell to electrodes 24 and 26 and the current through the sample is measured and displayed on display 16." (Col. 10, lines 8-11).

It would have been obvious to one of ordinary skill in the art at the relevant time, i.e., at the time of the filing date of the '322 Application, to modify the disclosure of WO '626 to include the detecting step required by Claim 56. All of the elements required by Claim 62 were known in the art, as shown above, and a person having ordinary skill in the art would have combined those elements with no change in their respective function, and the combination would have yielded nothing more than predictable results to one of ordinary skill in the art. *KSR International Co. v. Teleflex Inc.*, 550 U.S. _____ (2007).

Furthermore, there is a reason in the references for combining them. The Pottgen '069 Patent teaches that the device described therein improves the precision and standardization of the analyte monitoring apparatus, which is discussed in the Pottgen '069 Patent at, for example, column 1, lines 65-66. One skilled in the art would expect that these advantages would be achieved in whole or in part by utilizing the detecting method described in the Pottgen '069 Patent in the method of WO '626 in order to achieve the method recited in Claim 62 of the Wilsey '147 Patent.

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

Accordingly, a substantial new question of patentability is raised by WO '626 in view of the Pottgen '069 Patent.

### v.  Claim 63

Claim 63 depends from Claim 62, which in turn depends from Claim 61 and in turn depends from independent Claim 36.  The subject matter of Claims 36, 61, and 62 has been addressed above.

Claim 63 further defines the claimed method by requiring that "said detecting comprises applying a drop-detect potential across the working and counter or reference electrodes and recognizing a rise in current as an indication that the blood sample has been applied into the capillary chamber."

Significantly, the Pottgen '069 Patent discloses that the meter described therein "recognizes sample application by the sudden charging current flow that occurs when the electrodes and the overlaying reagent layer are initially wetted by the sample fluid [and once] the sample application is detected, the meter begins the reaction incubation step." (Col. 4, lines 23-28).  Once sample presence is detected, the potential is removed and the incubation period is initiated. (Col. 10, lines 2-3).

It would have been obvious to one of ordinary skill in the art at the relevant time, i.e., at the time of the filing date of the '322 Application, to modify the disclosure of WO '626 to include the detecting step required by Claim 63.  All of the elements required by Claim 63 were known in the art, as shown above, and a person having ordinary skill in the art would have combined those elements with no change in their respective function, and the combination would

146

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

have yielded nothing more than predictable results to one of ordinary skill in the art. *KSR*

*International Co. v. Teleflex Inc.*, 550 U.S. _____(2007).

Furthermore, the Pottgen '069 Patent teaches that the device described therein improves

the precision and standardization of the analyte monitoring apparatus, which is discussed in the

Pottgen '069 Patent at, for example, column 1, lines 65-66.  One skilled in the art would expect

that these advantages would be achieved in whole or in part by utilizing the detecting method

described in the Pottgen '069 Patent in the method of WO '626 in order to achieve the method

recited in Claim 63 of the Wilsey '147 Patent.

Accordingly, a substantial new question of patentability is raised by WO '626 in view of

the Pottgen '069 Patent.

### vi.  Claim 64

Claim 64 depends from Claim 62, which in turn depends from Claim 61 and in turn

depends from independent Claim 36.  The subject matter of Claims 36, 61, and 62 has been

addressed above.

Claim 64 further defines the claimed method by requiring that the method "includes

reapplying a potential across the working and counter or reference electrodes, after a delay

period during which no potential is applied, to electrooxidize the electroactive reaction product at

the working electrode."

Significantly, the Pottgen '069 Patent discloses that "[a]n electrical potential is next

applied at portion 27 of the sample cell to electrodes 24 and 26 and the current through the

sample is measured and displayed on display 16." (Col. 10, lines 8-11).  Further, the Pottgen

'069 Patent discloses that "a large excess of oxidized species (i.e., wherein the oxidized form of

147

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

the redox mediator (i.e., ferricyanide) is present in the reagent layer in sufficient excess to insure that the diffusion limited electrooxidation of the redox mediator at the working electrode surface is the principal limiter of current flow through the cell." (Col. 6, lines 50-55).

Accordingly, it would have been obvious to one of ordinary skill in the art at the relevant time, i.e., at the time of the filing date of the '322 Application, to modify the disclosure of WO '626 to include the detecting step required by Claim 64. All of the elements required by Claim 64 were known in the art, as shown above, and a person having ordinary skill in the art would have combined those elements with no change in their respective function, and the combination would have yielded nothing more than predictable results to one of ordinary skill in the art. *KSR International Co. v. Teleflex Inc.*, 550 U.S. _____(2007).

Furthermore, the Pottgen '069 Patent teaches that the device described therein improves the precision and standardization of the analyte monitoring apparatus, which is discussed in the Pottgen '069 Patent at, for example, column 1, lines 65-66. One skilled in the art would expect that these advantages would be achieved in whole or in part by utilizing the detecting method described in the Pottgen '069 Patent in the method of WO '626 in order to achieve the method recited in Claim 64 of the Wilsey '147 Patent.

Accordingly, a substantial new question of patentability is raised by WO '626 in view of the Pottgen '069 Patent.

## VIII. CONCLUSION

As discussed above, WO '626 raises substantial new questions regarding the patentability of the Wilsey '147 Patent, because WO '626, alone or in combination with the Pottgen '069 Patent, discloses each element of Claims 1-69 of the Wilsey '147 Patent.

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

In view of the foregoing, reexamination of Claims 1-69 is respectfully requested.

The USPTO is directed and authorized to charge all Requestor's required fees associated

with this request to Deposit Account No. 19-4880.  Please also credit any overpayments to said

Deposit Account.

Respectfully submitted,

John T. Callahan
Registration No. 32,607
Travis B. Ribar
Registration No. 61,446
Artem N. Sokolov
Registration No. 61,325

SUGHRUE MION, PLLC
Telephone:  (202) 293-7060
Facsimile:  (202) 293-7860

WASHINGTON OFFICE
23373
CUSTOMER NUMBER

Date:  December 14, 2007

149

REQUEST FOR REEXAMINATION BY THIRD PARTY REQUESTOR
U.S. Patent No. 7,276,147

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing REQUEST FOR *EX PARTE* REEXAMINATION BY

THIRD PARTY REQUESTOR was served on counsel for Roche Diagnostics Operations, Inc.

and Corange International Limited via Federal Express, on December 14, 2007, at the address

shown below:

Thomas Q. Henry
Charles P. Schmal
WOODARD, EMHARDT, MORIARTY,
MCNETT & HENRY LLP
111 Monument Circle, Suite 3700
Indianapolis, IN  46204-5137

December 14, 2007

John T. Callahan

# Appendix I

WEMMH PTO/SB/25 (04-07)
Approved for use through 09/30/2007. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| TERMINAL DISCLAIMER TO OBVIATE A DOUBLE PATENTING REJECTION OVER A PENDING "REFERENCE" APPLICATION | Docket Number (Optional) **007404-000473** |
|---|---|

| In re Application of: | **Christopher D. Wilsey** |
|---|---|
| Application No. | **10/382,322** |
| Filed: | **March 5, 2003** |
| For: | **METHOD FOR DETERMINING THE CONCENTRATION OF AN ANALYTE IN A LIQUID SAMPLE USING SMALL VOLUME SAMPLES AND FAST TEST TIMES** |

The owners\*, **Roche Diagnostics Operations, Inc.** and **Corange International Limited,** of **100** percent interest in the instant application hereby disclaim, except as provided below, the terminal part of the statutory term of any patent granted on the instant application which would extend beyond the expiration date of the full statutory term of any patent granted on pending **reference** Application Number **10/264,891,** filed on **October 4, 2002,** as such term is defined in 35 U.S.C. 154 and 173, and as the term of any patent granted on said **reference** application may be shortened by any terminal disclaimer filed prior to the grant of any patent on the pending **reference** application. The owner hereby agrees that any patent so granted on the instant application shall be enforceable only for and during such period that it and any patent granted on the **reference** application are commonly owned. This agreement runs with any patent granted on the instant application and is binding upon the grantee, its successors or assigns.

In making the above disclaimer, the owner does not disclaim the terminal part of any patent granted on the instant application that would extend to the expiration date of the full statutory term as defined in 35 U.S.C. 154 and 173 of any patent granted on said **reference** application, "as the term of any patent granted on said **reference** application may be shortened by any terminal disclaimer filed prior to the grant of any patent on the pending **reference** application," in the event that: any such patent: granted on the pending **reference** application: expires for failure to pay a maintenance fee, is held unenforceable, is found invalid by a court of competent jurisdiction, is statutorily disclaimed in whole or terminally disclaimed under 37 CFR 1.321, has all claims canceled by a reexamination certificate, is reissued, or is in any manner terminated prior to the expiration of its full statutory term as shortened by any terminal disclaimer filed prior to its grant.

Check either box 1 or 2 below, if appropriate.

1. ☐    For submissions on behalf of a business/organization (e.g., corporation, partnership, university, government agency, etc.), the undersigned is empowered to act on behalf of the business/organization.

    I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or any patent issued thereon.

2. ☒    The undersigned is an attorney or agent of record. Reg. No. **45082**

| | |
|---|---|
| /Charles P. Schmal #45,082/ | September 14, 2007 |
| Signature | Date |
| **Charles P. Schmal** | |
| Typed or Printed Name | |
| | **(317) 634-3456** |
| | Telephone Number |

☒    Terminal disclaimer fee under 37 CFR 1.20(d) is included.

**WARNING: Information on this form may become public. Credit card information should not be included on this form. Provide credit card information and authorization on PTO-2038.**

\*Statement under 37 CFR 3.73(b) is required if terminal disclaimer is signed by the assignee (owner).
Form PTO/SB/96 may be used for making this statement. See MPEP § 324.

This collection of information is required by 37 CFR 1.321. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.
If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.

#485001                                                                                                    007404-000473

PTO/SB/25 (10-05)
Approved for use through 07/31/2006. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| TERMINAL DISCLAIMER TO OBVIATE A PROVISIONAL DOUBLE PATENTING REJECTION OVER PENDING "REFERENCE" APPLICATIONS | Docket Number (Optional) 7404-473 |
|---|---|

In re Application of:    Christopher D. Wilsey

Application No.    10/382,322

Filed:    March 5, 2003

For:    METHOD FOR DETERMINING THE CONCENTRATION OF AN ANALYTE IN A LIQUID SAMPLE USING SMALL VOLUME SAMPLES AND FAST TEST TIMES

The owner*,   Roche Diagnostics Operations, Inc.  , of   100   percent interest in the instant application hereby disclaims, except as provided below, the terminal part of the statutory term of any patent granted on the instant application which would extend beyond the expiration date of the full statutory term of any patent granted on pending reference Application Number 10/264,785, filed on  October 4, 2002. , and pending reference Application Number 10/264,891, filed on  October 4, 2002  as such term is defined in 35 U.S.C. 154 and 173, and as the term of any patent granted on said reference applications may be shortened by any terminal disclaimer filed prior to the grant of any patent on the pending reference applications. The owner hereby agrees that any patent so granted on the instant application shall be enforceable only for and during such period that it and any patent granted on the reference applications are commonly owned. This agreement runs with any patent granted on the instant application and is binding upon the grantee, its successors or assigns.

In making the above disclaimer, the owner does not disclaim the terminal part of any patent granted on the instant application that would extend to the expiration date of the full statutory term as defined in 35 U.S.C. 154 and 173 of any patent granted on said reference applications, "as the term of any patent granted on said reference applications may be shortened by any terminal disclaimer filed prior to the grant of any patent on the pending reference applications," in the event that: any such patent granted on the pending reference applications: expires for failure to pay a maintenance fee, is held unenforceable, is found invalid by a court of competent jurisdiction, is statutorily disclaimed in whole or terminally disclaimed under 37 CFR 1.321, has all claims canceled by a reexamination certificate, is reissued, or is in any manner terminated prior to the expiration of its full statutory term as shortened by any terminal disclaimer filed prior to its grant.

Check either box 1 or 2 below, if appropriate.

1.  ☐  For submissions on behalf of a business/organization (e.g., corporation, partnership, university, government agency, etc.), the undersigned is empowered to act on behalf of the business/organization.

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or any patent issued thereon.

2.  ☒  The undersigned is an attorney or agent of record. Reg. No. 28,309 .

Signature                                                   December 22, 2006
Signature                                                   Date

Thomas Q. Henry                                             317-713-4907
Typed or Printed Name                                       Telephone Number

☒  Terminal disclaimer fee under 37 CFR 1.20(d) is included.

**WARNING: Information on this form may become public. Credit card information should not be included on this form. Provide credit card information and authorization on PTO-2038.**

*Statement under 37 CFR 3.73(b) is required if terminal disclaimer is signed by the assignee (owner).
Form PTO/SB/96 may be used for making this statement. See MPEP § 324.

#436787

WEMMH #45039 (Rev. 12/05)

# Appendix II



## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re patent application of: )

) Before the Examiner

Christopher D. Wilsey )

)

Serial No. (unknown) )

)

Filed Herewith )

)

METHOD FOR DETERMINING THE )
CONCENTRATION OF AN ANALYTE )
IN A LIQUID SAMPLE USING SMALL )
VOLUME SAMPLES AND FAST TEST )
TIMES ) March 5, 2003

## INFORMATION DISCLOSURE STATEMENT

Hon. Commissioner for Patents
Washington, D.C. 20231

Dear Sir:

Pursuant to the duty of disclosure in accordance with 37 C.F.R. §1.56, Applicant wishes to bring to the attention of the Examiner the patents, publications and/or other information listed on the attached PTO Form 1449. Copies of cited items are enclosed in accordance with 37 C.F.R. § 1.98. The filing of this Information Disclosure Statement shall not be construed as an admission that the information cited is, or is considered to be, material to patentability as defined in § 1.56(b).

This Statement is being submitted within three months of the filing date of this application. It is believed that no fee is required for consideration of the submitted items. Should any fee be required, however, please charge such fee to Deposit Account No. 23-3030, but not to include any payment of issue fees.

This Information Disclosure Statement is further submitted in support of the Petition to Make Special filed herewith. As required for the Petition, this IDS includes a copy and a detailed discussion of each of the cited references deemed most closely related to the subject matter encompassed by the claims, pointing out with the

#208359                          1 of 6

particularity required by 37 CFR §1.111(b) and (c) how the claimed subject matter is patentable over the cited references.

Musho et al. in US 5,250,439 disclose a method of determining the "presence or concentration of an analyte like glucose that is capable of interacting with an oxidase enzyme. The predetermined analyte and oxidase interact in a reaction zone…to generate a dopant compound…which alter[s] the conductivity of [a] conductive polymer… The change in conductivity is detected…and can be correlated to the concentration of the predetermined analyte in the test sample." (Musho et al., col. 5, lines 42-58.) The conductive sensor provides an assay within 30 seconds and preferably within 10 seconds from a small blood sample such as from 0.1µL to about 5µL. (Id., col. 11, lines 40-44.) The test method uses an enzyme, glucose oxidase, peroxidase, and a dopant such as iodide. (Id., col. 19, lines 18-66.) The disclosed method uses a dopant iodide that causes a detectable or measurable change in the conductive polymer rather than using an enzyme/mediator combination that can generate an electrochemical signal representative of the concentration of analyte in the liquid sample as claimed in the present application.

Worden et al. in US 5,611,900 disclose a microbiosensor that includes a cathode and anode contained within a capillary case. A biological interface that includes immobilized glucose oxidase in a polyacrylamide polymer is applied to the tip of the case. (Worden et al., col. 6, lines 21-66.) However, this reference does not disclose a method of determining the concentration of an analyte that includes a sample receiving cavity of less than about 1.5 µL that includes at least a working electrode covered with a reagent layer including an enzyme and a mediator and then within 10 seconds obtaining a readout of the concentration of the analyte in a liquid solution.

#208359                          2 of 6



Yamamoto et al. in US 5,658,443 (and in RE 36,991) disclose a biosensor for rapid quantification of analytes. The biosensor includes an enzyme in a hydrophilic polymer layer in close contact with an electrode system and an electron acceptor such as potassium ferricyanide. (Yamamoto et al., col. 5, lines 40–46 and col. 6, lines 9-12.) A 3 μL sample solution can be provided to the sensor. Two minutes after supplying the sample solution, a voltage can be applied to the electrode system, and 5 seconds thereafter the anodic current can be measured. (Id., col. 7, lines 38-45.) This reference does not disclose a method as currently claimed including providing a sample receiving cavity having a volume of less than 1.5 μL, detecting the time at which the liquid sample enters the sample receiving cavity, and within 10 seconds of that obtaining a readout of the concentration of the analyte.

Ohara et al. in US 6,193,873 disclose an electrochemical (amperometric) method for measuring an analyte concentration in an aqueous solution. The method uses a thin layer device having a pair of opposing electrodes separated by a spacer less than 200 μm thick. (Ohara, col. 5, lines 25-35.) A sample is applied to the strip and fills the gap between the electrodes. After the sample is detected, a voltage is applied between the working and counter electrodes. As a result, the current flows between the electrodes. The current, after a predetermined time, is a measure of the analyte concentration. The duration of the predetermined time is not critical; it can at least be 3 seconds, more typically 10 seconds in duration. (Id., col. 4, lines 48-64.) This reference does not disclose the use of a very small sample chamber of less than 1.5 μL as claimed in the present application.

#208359                          3 of 6



Feldman et al. in US 6,338,790 disclose an *in vitro* analyte sensor that includes both a counter and working electrode, a redox mediator, and a second electron transfer agent, which can be disposed on either the working electrode or the counter/reference electrode. The second election transfer reagent can be an enzyme such as glucose oxidase or glucose dehydrogenase. (Feldman et al., col. 9, lines 5-23 and col. 24, lines 28-33.) The sample chamber in the analyte sensor has a volume that is no more than 1 μL and can be as low as 0.25 μL. (Id., col. 27, lines 1-5.) The concentration of an analyte can be measured using coulometry or non-coulometry assays. For a coulometry assay, the analyte concentration is directly related to the charge used to electrolyze the sample. The redox mediator and optional second electron transfer agent are chosen so that the analyte will be almost completely electrolyzed in less than 5 minutes or within about 1 minute. (Id., col. 41, lines 8-55.) The concentrations of a series of samples containing glucose was determined using the coulometry technique. Current flowing between the electrodes was measured up to the time required to electrolyze 90% of a known concentration of the analyte. The time for 90% of the analyte to be electrolyzed ranged from $13 \pm 6$ to $72 \pm 21$ sec. The measured current was then used to prepare a calibration curve. (Id., cols. 53 and 54.) The non-coulometry assays utilize potentiometric, amperometric, and voltammetric techniques. (Id., col. 41, lines 59-65.) No specific details for using these techniques to measure an analyte were disclosed. However, Feldman et al. does not disclose a method of measuring an analyte in a sample by detecting the time at which the liquid sample enters the sample cavity and within 10 seconds of that time obtaining a readout of the concentration of the analyte in the liquid sample.

Davies et al. in US Publication 2002/0092612 and (WO 01/73124) disclose a disposable electrochemical sensor and a method of detecting an analyte. This reference discloses a method of determining an analyte using a sensor that includes a pair of electrodes in a sample chamber. An enzyme and a mediator coat one electrode (Davies et al., ¶0019.) The sample receiving volume is less than 1.5 µL and can be less than .5 µL. (¶0026.) The method of determining the analyte uses a very short test time that would be less than 10 seconds and can be less than 5 seconds. (¶0041.) However, as stated in the Declaration of Christopher D. Wilsey submitted concurrent with the Petition to Make Special, this reference is not a prior art reference under §102 or §103. The inventor listed on the present application provides evidence of conception and reduction to practice of the claimed invention prior to the filing date of February 22, 2002 for this publication.

The Petition to Make Special and the Statement in Support, filed herewith, also reference a OneTouch® Ultra™ System, which is a commercial product of Lifescan, Inc. of Milpitas, CA. However, as also stated in the Statement in Support (paragraph 3), the OneTouch® Ultra™ System was not made public more than a year before the priority date of the current application, and therefore does not constitute prior art under §102(b). Further, the Declaration of Christopher D. Wilsey provides evidence of conception and reduction to practice of the claimed invention more than one year prior to the filing of the present invention, and prior to the date believed by applicant to have been the earliest date of public disclosure of the OneTouch® Ultra™ System.

Consideration of the application in view of this art is respectfully requested.

Respectfully submitted,

Thomas Q. Henry
Reg. No. 28,309
Woodard, Emhardt, Naughton,
  Moriarty & McNett LLP
Bank One Center Tower
111 Monument Circle, Suite 3700
Indianapolis, Indiana  46204-5137
(317) 634-3456

7404-441.J8M.208582

PTO/SB/08A (1)

Approved for use through 10/31/2002. OMB 0651-0031 C)
U.S. Patent and Trademark Office: U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number

**INFORMATION DISCLOSURE STATEMENT BY APPLICANT**

*(use as many sheets as necessary)*

| | | |
|---|---|---|
| Substitute for form 1449A/PTO | | |

**Complete if Known**

| | |
|---|---|
| Application Number | |
| Filing Date | March 5, 2003 |
| First Named Inventor | Christopher D. Wilsey |
| Art Unit | |
| Examiner Name | |
| Attorney Docket Number | 7404-473 BMID-9968C-US |

| Sheet | 1 | of | 2 |
|---|---|---|---|

## U.S. PATENT DOCUMENTS

| Examiner Initials* | Cite No.¹ | Document Number<br>Number-Kind Code² (if known) | Publication Date<br>MM-DD-YYYY | Name of Patentee or<br>Application of Cited Document | Pages, Columns, Lines where<br>Relevant Passages or Relevant<br>Figures Appear |
|---|---|---|---|---|---|
| | | 4,759,828 | 07-26-1988 | Young et al. | |
| | | 5,049,487 | 09-17-1991 | Phillips et al. | |
| | | 5,250,439 | 10-05-1993 | Musho et al. | |
| | | 5,437,999 | 08-01-1995 | Diebold et al. | |
| | | 5,611,900 | 03-18-1997 | Worden et al | |
| | | 5,658,443 | 08-19-1997 | Yamamoto et al. | |
| | | 6,004,441 | 12-21-1999 | Fujiwara et al. | |
| | | 6,042,714 | 03-28-2000 | Lin et al | |
| | | 6,120,676 | 09-19-2000 | Heller et al. | |
| | | RE36,991 | 12-19-2000 | Yamamoto et al | |
| | | 6,193,873 | 02-27-2001 | Ohara et al | |
| | | 6,241,862 | 06-05-2001 | McAleer et al. | |
| | | 6,258,229 | 07-10-2001 | Winarta et al. | |
| | | 6,284,125 | 09-04-2001 | Hodges et al. | |
| | | 6,338,790 | 01-15-2002 | Feldman et al. | |
| | | 2002/0092612 | 07-18-2002 | Davies et al. | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

| Examiner Initials* | Cite No.¹ | Foreign Patent Document<br>Country Code³-Number⁴-Kind Code⁵ (if known) | Publication Date<br>MM-DD-YYYY | Name of Patentee or<br>Application of Cited Document | Pages, Columns, Lines, Where<br>Relevant Passages or Relevant<br>Figures Appear | T⁶ |
|---|---|---|---|---|---|---|
| | | WO 95/22597 | 08-01-1995 | | | |
| | | WO 97/30344 | 08-21-1997 | | | |
| | | WO 98/35225 | 08-13-1998 | | | |
| | | EP 859 230 | 08-19-1998 | | | ✓ |
| | | EP 964 059 | 12-15-1999 | | | |
| | | WO 00/73778 | 12-07-2000 | | | |
| | | WO 01/73124 | 10-04-2001 | | | |
| | | | | | | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

¹ Applicant's unique citation designation number (optional). ² See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. ³ Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). ⁴ For Japanese patent documents, the indication of the year of the reign of the emperor must precede the serial number of the patent document. ⁵ Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. ⁶ Applicant is to place a check mark here if English language Translation is attached.

Burden Hour Statement: This form is estimated to take 2.0 hours to complete. Time will vary depending upon the needs of the individual case. Any comments on the amount of time you are required to complete this form should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, Washington, DC 20231. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Assistant Commissioner for Patents, Washington, D.C. 20231.

7404-441.IBM.208582

PTO/SB/08A (1?
Approved for use through 10/31/2002. OMB 0651-0031
U.S. Patent and Trademark Office: U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number

| Substitute for form 1449A/PTO | Complete if Kn wn |
|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** *(use as many sheets as necessary)* | Application Number |
| | Filing Date: March 5, 2003 |
| | First Named Inventor: Christopher D. Wilsey |
| | Art Unit |
| | Examiner Name |
| Sheet | 2 | of | 2 | Attorney Docket Number: 7404-473 BMID-9968C-US |

| OTHER PRIOR ART - NON PATENT LITERATURE DOCUMENTS | | | |
|---|---|---|---|
| Examiner Initials* | Cite No.¹ | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date, page(s), volume-issue number(s) publisher city and/or country where published | T² |
| | | Chiba, K.; Ohsaka, T.; Ohnuki, Y.; and Oyama, N., *"Electrochemical Preparation of a Ladder Polymer Containing Phenazine Rings"*, J. Electroanal. Chem., 219 (1987) 117-124 | |
| | | Bartlett, P.N. and Whitaker, R.G., *"Electrochemical Immobilisation of Enzymes: Part I. Theory"*, J. Electroanal. Chem., 224 (1987) 27-35 | |
| | | Bartlett, P.N. and Whitaker, R.G., *"Electrochemical Immobilisation of Enzymes: Part II. Glucose Oxidase Immobilised in Poly-N-Methylpyrrole"*, J. Electroanal. Chem., 224 (1987) 37-48 | |
| | | Malitesta, Cosimino; Palmissano, Francesco*; Torsi, Luisa; and Zambonin Pier Giorgio, "Glucose Fast-Response Amperometric Sensor Based on Glucose Oxidase Immobilized in an Electropolymerized Poly(o-phenylenediamine) Film", Anal. Chem. 1990, 62, 2735-2740 | |
| | | Gregg, Brian A. and Heller, Adam, *"Cross-Linked Redox Gels Containing Glucose Oxidase for Amperometric Biosensor Applications"*, Anal. Chem. 1990, 62, 258-263 | |
| | | Lee, Jae-Suk; Nakahama, Seiichi; and Hirao, Akira, "A New Glucose Sensor Using Microporous Enzyme Membrane", *Sensors and Actuators B, 3 (1991) 215-219* | |
| | | Burke, David W. and Surridge, Nigel A., "Improved-Accuracy Biosensor Strip for Accu-Chek™ Advantage ®", presented orally at ACS Boston Meeting (~1993-1994) | |
| | | Miao, Y.; Chia, L.S.; Goh, N.K.; and Tan, S.N., "Amperometric Glucose Biosensor Based on Immobilization of Glucose Oxidase in Chitosan Matrix Cross-Linked with Glutaraldehyde", *Electroanalysis 2001, 13, No. 4* | |
| | | Lifescan product brochure for OneTouch® Ultra™ Test Strip | |
| | | Photocopies of the front and back portions of the commercial product marketed by Lifescan as the OneTouch made public at least as early as 2001 | |
| | | Owner's Booklet entitled "The Comfort of Control" by Lifescan | |
| | | "Quick Start Guide" for the OneTouch® Ultra™ Blood Glucose Monitoring System | |
| | | | |
| | | | |
| | | | |
| | | | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

¹ Applicant's unique citation designation number (optional). ² See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. ³ Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). ⁴ For Japanese patent documents, the indication of the year of the reign of the emperor must precede the serial number of the patent document. ⁵ Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. ⁶ Applicant is to place a check mark here if English language Translation is attached.

Burden Hour Statement: This form is estimated to take 2.0 hours to complete. Time will vary depending upon the needs of the individual case. Any comments on the amount of time you are required to complete this form should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, Washington, DC 20231. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Assistant Commissioner for Patents, Washington, D.C. 20231.

# PTO/SB/08 A & B

MODIFIED PTO/SB/08 A & B (08-03)

| Substitute for Form 1449 A & B/PTO | Complete if Known | |
|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** *(use as many sheets as necessary)* | Application Number | Reexam of USP 7,276,147 |
| | Confirmation Number | Not yet determined |
| | Filing Date | December 14, 2007 |
| | First Named Inventor | Christopher D. WILSEY |
| | Art Unit | Not yet assigned |
| | Examiner Name | Not yet assigned |
| Sheet \| I \| of \| 1 | Attorney Docket Number | A9806 |

### U.S. PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Document Number | | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document |
|---|---|---|---|---|---|
| | | Number | Kind Code[2] (if known) | | |
| | | US 6,153,069 | A | 11-28-2000 | Pottgen et al. |
| | | US | | | |
| | | US | | | |
| | | US | | | |
| | | US | | | |
| | | US | | | |
| | | US | | | |
| | | US | | | |
| | | US | | | |

### FOREIGN PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Foreign Patent Document | | | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Translation[6] |
|---|---|---|---|---|---|---|---|
| | | Country Code[3] | Number[4] | Kind Code[5] (if known) | | | |
| | | WO | 00/20626 | | April 13, 2000 | THERASENSE, INC | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

### NON PATENT LITERATURE DOCUMENTS

| Examiner Initials* | Cite No.[1] | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date, page(s), volume-issue number(s), publisher, city, and/or country where published. | Translation[6] |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

[1]Applicant's unique citation designation number (optional). [2]See Kind Codes of USPTO Patent Documents at www.uspto.gov, MPEP 901.04 or follow the hyperlink from the title of the document to the intranet. [3] Enter Office that issued the document, by the two-letter code (WIPO Standard ST. 3). [4]For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [5]Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST. 16 if possible. [6] Applicant is to indicate here if English language Translation is attached.

[Page 1 of 1]

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 2596393 |
| **Application Number:** | 90010080 |
| **International Application Number:** | |
| **Confirmation Number:** | 9236 |
| **Title of Invention:** | ELECTRODES, METHODS, APPARATUSES COMPRISING MICRO-ELECTRODE ARRAYS |
| **First Named Inventor/Applicant Name:** | Christopher D. WILSEY |
| **Customer Number:** | 23373 |
| **Filer:** | John Timothy Callahan/Elaine Barton |
| **Filer Authorized By:** | John Timothy Callahan |
| **Attorney Docket Number:** | A9806 |
| **Receipt Date:** | 14-DEC-2007 |
| **Filing Date:** | |
| **Time Stamp:** | 21:46:36 |
| **Application Type:** | Reexam (Third Party) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | Deposit Account |
| Payment was successfully received in RAM | $2520 |
| RAM confirmation Number | 3809 |
| Deposit Account | 194880 |
| Authorized User | |
| The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows: | |
| Charge any Additional Fees required under 37 C.F.R. Section 1.17 (Patent application and reexamination processing fees) | |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes) /Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | | A9806requestforreexam.pdf | 6102031 <br> de159fab2ed0265a6547a080bab022a1 9655d594 | yes | 156 |
| | **Multipart  Description/PDF files in .zip description** | | | | |
| | **Document Description** | | **Start** | **End** | |
| | Receipt of Orig. Ex Parte Request by Third Party | | 1 | 152 | |
| | Reexam Certificate of Service | | 153 | 153 | |
| | Reexam Miscellaneous Incoming Letter | | 154 | 156 | |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 2 | Copy of patent for which reexamination is requested | US7276147.pdf | 1908808 <br> b9429b79f54e3791a0faa7ac3318a1cd 39d31786 | no | 24 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 3 | | A9806requestpart2.pdf | 367699 <br> 714cb90992aa2b43181ba45320743dd a06489cda | yes | 11 |
| | **Multipart  Description/PDF files in .zip description** | | | | |
| | **Document Description** | | **Start** | **End** | |
| | Reexam Miscellaneous Incoming Letter | | 1 | 9 | |
| | Reexam - Info Disclosure Statement Filed by 3rd Party | | 10 | 11 | |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 4 | Reexam - Info Disclosure Statement Filed by 3rd Party | US6153069.pdf | 1060781 <br> 4d36215d5cc1ab7fIfc0a772e06d48448 d32818b9 | no | 19 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 5 | Reexam - Info Disclosure Statement Filed by 3rd Party | 00020626.pdf | 6096222 <br> 3ad0ed836a06d30e4f165e6b1ad0038e b9acc6de | no | 143 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |

| 6 | Fee Worksheet (PTO-06) | fee-info.pdf | 8170 <br> 38f6dce37a7e7729b15e73983aa95c70 7e96b4c9 | no | 2 |
|---|---|---|---|---|---|

| Warnings: | |
|---|---|
| Information: | |

| | Total Files Size (in bytes): | 15543711 |
|---|---|---|

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable.  It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

<u>New Applications Under 35 U.S.C. 111</u>
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

<u>National Stage of an International Application under 35 U.S.C. 371</u>
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

<u>New International Application Filed with the USPTO as a Receiving Office</u>
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

EXHIBIT C



UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

_Ex Parte_ Reexamination Filing Data  - September 30, 2007

1.  Total requests filed since start of ex parte reexam on 07/01/81 . . . . . . . . . . . . . . . . . .  8895[1]

|     |                              |      |     |
|-----|------------------------------|------|-----|
| a.  | By patent owner              | 3472 | 39% |
| b.  | By other member of public    | 5258 | 59% |
| c.  | By order of Commissioner     | 165  | 2%  |

2.  Number of filings by discipline

|     |                       |      |     |
|-----|-----------------------|------|-----|
| a.  | Chemical Operation    | 2671 | 30% |
| b.  | Electrical Operation  | 2958 | 33% |
| c.  | Mechanical Operation  | 3266 | 37% |

3.  Annual Ex Parte Reexam Filings

| Fiscal Yr. | No.         | Fiscal Yr. | No. | Fiscal Yr. | No. | Fiscal Yr. | No. |
|------------|-------------|------------|-----|------------|-----|------------|-----|
| 1981       | 78 (3 mos.) | 1989       | 243 | 1997       | 376 | 2005       | 524 |
| 1982       | 187         | 1990       | 297 | 1998       | 350 | 2006       | 511 |
| 1983       | 186         | 1991       | 307 | 1999       | 385 | 2007       | 643 |
| 1984       | 189         | 1992       | 392 | 2000       | 318 |            |     |
| 1985       | 230         | 1993       | 359 | 2001       | 296 |            |     |
| 1986       | 232         | 1994       | 379 | 2002       | 272 |            |     |
| 1987       | 240         | 1995       | 392 | 2003       | 392 |            |     |
| 1988       | 268         | 1996       | 418 | 2004       | 441 |            |     |

4.  Number known to be in litigation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2303     26%

5.  Determinations on requests . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8557

   a.  No. granted . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7845 . . . . . . . . .  92%

     (1)  By examiner                                          7732
     (2)  By Director (on petition)                           113

   b.  No. denied . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 712 . . . . . . . . . .  8%

     (1)  By examiner                                          677
     (2)  Order vacated                                         35

---

[1]Of the requests received in FY 2007, 23 requests have not yet been accorded a filing date, and preprocessing of 36 requests was terminated for failure to comply with the requirements of 37 CFR 1.510.  See Clarification of Filing Date Requirements for _Ex Parte_ and _Inter Partes_ Reexamination Proceedings, Final Rule, 71 Fed. Reg. 44219 (August 4, 2006).

6.    Total examiner denials (includes denials reversed by Director)  . . . . . . . . . . . . . . . . . . . 790

    a.    Patent owner requester                              439        56%
    b.    Third party requester                                351        44%

7.    Overall reexamination pendency  (Filing date to certificate issue date)

    a.    Average pendency                                23.7 (mos.)
    b.    Median pendency                                18.4 (mos.)

8.  Reexam certificate claim analysis:

| | Owner Requester | 3rd Party Requester | Comm'r Initiated | Overall |
|---|---|---|---|---|
| a.  All claims confirmed | 23% | 29% | 12% | 26% |
| b.  All claims cancelled | 7% | 12% | 21% | 10% |
| c.  Claims changes | 70% | 59% | 67% | 64% |

9.    Total ex parte reexamination certificates issued (1981 - present)  . . . . . . . . . . . . . . . . . 5902

    a.  Certificates with all claims confirmed             1527    26%
    b.  Certificates with all claims canceled              613    10%
    c.  Certificates with claims changes               3762    64%

10.  Reexam claim analysis - requester is patent owner or 3rd party; or Comm'r initiated.

    a.    Certificates - PATENT OWNER REQUESTER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2545

        (1)  All claims confirmed                       581    23%
        (2)  All claims canceled                      187    7%
        (3)  Claim changes                          1777    70%

    b.    Certificates - 3rd PARTY REQUESTER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3211

        (1)  All claims confirmed                       928    29%
        (2)  All claims canceled                      397    12%
        (3)  Claim changes                          1886    59%

    c.    Certificates - COMM'R INITIATED REEXAM . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 146

        (1)  All claims confirmed                       18    12%
        (2)  All claims canceled                      30    21%
        (3)  Claim changes                         98    67%

EXHIBIT D

cited, the author (if any), title, date, pages or plates, and place of publication, or place where a copy can be found, will be given.

(2) When a rejection in an application is based on facts within the personal knowledge of an employee of the Office, the data shall be as specific as possible, and the reference must be supported, when called for by the applicant, by the affidavit of such employee, and such affidavit shall be subject to contradiction or explanation by the affidavits of the applicant and other persons.

(e) *Reasons for allowance.* If the examiner believes that the record of the prosecution as a whole does not make clear his or her reasons for allowing a claim or claims, the examiner may set forth such reasoning. The reasons shall be incorporated into an Office action rejecting other claims of the application or patent under reexamination or be the subject of a separate communication to the applicant or patent owner. The applicant or patent owner may file a statement commenting on the reasons for allowance within such time as may be specified by the examiner. Failure by the examiner to respond to any statement commenting on reasons for allowance does not give rise to any implication.

It is intended that the examiner's first *ex parte* action on the merits be the primary action to establish the issues which exist between the examiner and the patent owner insofar as the patent is concerned. At the time the first action is issued, the patent owner has already been permitted to file a statement and an amendment pursuant to 37 CFR 1.530; and the reexamination requester, if the requester is not the patent owner, has been permitted to reply thereto pursuant to 37 CFR 1.535. Thus, at this point, the issues should be sufficiently focused to enable the examiner to make a definitive first *ex parte* action on the merits which should clearly establish the issues which exist between the examiner and the patent owner insofar as the patent is concerned. In view of the fact that the examiner's first action will clearly establish the issues, the first action should include a statement cautioning the patent owner that a complete response should be made to the action since the next action is expected to be a final action. The first action should further caution the patent owner that the requirements of 37 CFR 1.116(b) will be strictly enforced after final action and that any amendment after a final action must include "a showing of good and sufficient reasons why the amendment is necessary and was not earlier presented" in order to be considered. The language of form paragraph 22.04 is appropriate for inclusion in the first Office action:

¶ 22.04 Papers To Be Submitted in Response to Action - Ex Parte Reexamination

In order to ensure full consideration of any amendments, affidavits or declarations, or other documents as evidence of patent-ability, such documents must be submitted in response to this Office action. Submissions after the next Office action, which is intended to be a final action, will be governed by the requirements of 37 CFR 1.116 after final rejection and 37 CFR 41.33 after appeal, which will be strictly enforced.

## 2260.01    Dependent Claims [R-2]

If ** >an unamended base patent claim (i.e., a claim appearing in the reexamination as it appears in the patent)< has been rejected or canceled, any claim which is directly or indirectly dependent thereon should be confirmed or allowed if the dependent claim is otherwise allowable. The dependent claim should *not* be objected to or rejected merely because it depends on a rejected or canceled patent claim. No requirement should be made for rewriting the dependent claim in independent form. As the original patent claim numbers are not changed in a reexamination proceeding, the content of the canceled base claim would remain in the printed patent and would be available to be read as a part of the confirmed or allowed dependent claim.

If a new base claim (a base claim other than a base claim appearing in the patent) has been canceled in a reexamination proceeding, a claim which depends thereon should be rejected as *>indefinite<. If a new base claim >or an amended patent claim< is rejected, a claim dependent thereon should be objected to if it is otherwise patentable and a requirement made for rewriting the dependent claim in independent form.

## 2261    Special Status for Action

*35 U.S.C. 305. Conduct of reexamination proceedings.*

*****

All reexamination proceedings under this section, including any appeal to the Board of Patent Appeals and Interferences, will be conducted with special dispatch within the Office.

In view of the requirement for "special dispatch," reexamination proceedings will be "special" throughout their pendency in the Office. The examiner's first action on the merits should be completed within *1 month* of the filing date of the requester's reply (37 CFR 1.535), or within *1 month* of the filing date of the patent owner's statement (37 CFR 1.530) if there is no requester other than the patent owner. If no submissions are made under either 37 CFR 1.530 or 37 CFR 1.535, the first action on the merits should be completed within *1 month* of any due date for such

submission. Mailing of the first action should occur within 6 WEEKS after the appropriate filing or due date of any statement and any reply thereto.

Any cases involved in litigation, whether they are reexamination proceedings or reissue applications, will have priority over all other cases. Reexamination proceedings not involved in litigation will have priority over all other cases except reexaminations or reissues involved in litigation.

## 2262    Form and Content of Office Action [R-5]

The examiner's first Office action will be a statement of the examiner's position and should be so complete that the second Office action can properly be made a final action. See MPEP § 2271.

All Office actions are to be ** typed. The first Office action must be sufficiently detailed that the pertinency and manner of applying the cited prior art to the claims is clearly set forth therein. >Where the request for reexamination includes material such as a claim chart to explain a proposed rejection in order to establish the existence of a substantial new question of patentability, the examiner may cut and paste the claim chart (or other material) to incorporate it within the body of the Office action. The examiner must, however, carefully review the claim chart (or other material) to ensure that any items incorporated in a statement of the rejection clearly and completely address the patentability of the claims. For actions subsequent to the first Office action, the examiner must be careful to additionally address all patent owner responses to previous actions.< If the examiner concludes in any Office action that one or more of the claims are patentable over the cited patents or printed publications, the examiner should indicate why the claim(s) is clearly patentable in a manner similar to that used to indicate reasons for allowance (MPEP § 1302.14). If the record is clear why the claim(s) is/are clearly patentable, the examiner may refer to the particular portions of the record which clearly establish the patentability of the claim(s). The first action should also respond to the substance of each argument raised by the patent owner and requester pursuant to

37 CFR 1.510, 1.530, and 1.535. If arguments are presented which are inappropriate in reexamination, they should be treated in accordance with 37 CFR 1.552(c). It is especially important that the examiner's action in reexamination be thorough and complete in view of the finality of a reexamination proceeding and the patent owner's inability to file a continuation proceeding.

Normally, the title will not need to be changed during reexamination. If a change of the title is necessary, patent owner should be notified of the need to provide an amendment changing the title as early as possible in the prosecution as a part of an Office action. If all of the claims are found to be patentable and a Notice of Intent to Issue *Ex Parte* Reexamination Certificate has been or is to be mailed, a change to the title of the invention by the examiner may only be done by a formal Examiner's Amendment. Changing the title and merely initialing the change is NOT permitted in reexamination.

>

### I.    PANEL REVIEW CONFERENCE

After an examiner has determined that the reexamination proceeding is ready for an Office action, the examiner will formulate a draft preliminary Office action. The examiner will then inform his/her Special Program Examiner (SPRE) of his/her intent to issue the Office action. The SPRE will convene a panel review conference, and the conference members will review the patentability of the claim(s) pursuant to MPEP § 2271.01. If the conference confirms the examiner's preliminary decision to reject and/or allow the claims, the proposed Office action shall be issued and signed by the examiner, with the two other conferees initialing the action (as "conferee") to indicate their presence in the conference. If the conference does not confirm the examiner's treatment of the claims, the examiner will reevaluate and issue an appropriate Office action.

### II.    SAMPLE OFFICE ACTION<

A sample of a first Office action in a reexamination proceeding is set forth below.

# EXHIBIT E

nation (37 CFR 1.515) and order to reexamine (37 CFR 1.525), it will not be considered, but will be returned to the party submitting the same by the >CRU or< TC Director, regardless of whether the petition is filed in the reexamination proceeding, the reissue application, or both. This is necessary to prevent premature papers relating to the reexamination proceeding from being filed. The decision returning such a premature petition will be made of record in both the reexamination file and the reissue application file, but no copy of the petition will be retained by the Office. See MPEP § 2267.

The patent owner may file a petition under 37 CFR 1.182 to merge the reissue application and the reexamination proceeding, or stay one of them because of the other, at the time the patent owner's statement under 37 CFR 1.530 is filed or subsequent thereto in the event the Office has not acted prior to that date to merge or stay. If the requester of the reexamination is not the patent owner, that party may petition to merge the reissue application and the reexamination proceeding, or stay one of them because of the other, as a part of a reply pursuant to 37 CFR 1.535, in the event the Office has not acted prior to that date to merge or stay. A petition to merge the reissue application and the reexamination proceeding, or stay one of them because of the other, which is filed by a party other than the patent owner or the requester of the reexamination will not be considered, but will be returned to that party by the >CRU or< TC Director as being improper under 37 CFR 1.550(g).

All decisions on the merits of petitions to merge the reissue application examination and the reexamination proceeding, or to stay one of them because of the other, will be made in the OPLA. Such petitions to merge the reissue application and the reexamination proceeding, or stay one of them because of the other, which are filed by the patent owner or the requester after the order for reexamination will be referred to the OPLA for decision.

## VI.  FEES IN MERGED PROCEEDINGS

Where the proceedings have been merged and a paper is filed which requires payment of a fee (e.g., excess claim fee, extension of time fee, petition fee, appeal fee, brief fee, oral hearing fee), only a single fee need be paid. For example, only one fee need be paid for an appeal brief even though the brief relates

to merged multiple proceedings and copies must be filed for each file in the merged proceeding. As to excess claim fees, reissue practice will control.

## 2286    *Ex Parte* Reeexamination and Litigation Proceedings [R-5]

*37 CFR 1.565.   Concurrent office proceedings which include an ex parte reexamination proceeding.*

\*\*\*\*\*

(b) If a patent in the process of *ex parte* reexamination is or becomes involved in litigation, the Director shall determine whether or not to suspend the reexamination. See § 1.987 for *inter partes* reexamination proceedings.

\*\*\*\*\*

35 U.S.C. 302 permits a request for *ex parte* reexamination to be filed "at any time." Requests for *ex parte* reexamination are frequently filed where the patent for which reexamination is requested is involved in concurrent litigation. The guidelines set forth below will generally govern Office handling of *ex parte* reexamination requests where there is concurrent litigation in the Federal courts.

## I.    COURT-SANCTIONED REEXAMINATION PROCEEDING*>,< LITIGATION STAYED FOR REEXAMINATION>, OR EXTENDED PENDENCY OF REEXAMINATION PROCEEDING CONCURRENT WITH LITIGATION<

Any request for *ex parte* reexamination which indicates (A) that it is filed as a result of an agreement by parties to litigation which agreement is sanctioned by a court, or (B) that litigation is stayed for the filing of a reexamination request will be taken up by the examiner for decision 6 weeks after the request was filed. See MPEP § 2241. If reexamination is ordered, the examination following the statement by the patent owner under 37 CFR 1.530 and the reply by the requester under 37 CFR 1.535 will be expedited to the extent possible. Office actions in these reexamination proceedings will normally set a 1-month shortened statutory period for response rather than the 2 months usually set in reexamination proceedings. See MPEP § 2263. This 1-month period may be extended only upon a showing of sufficient cause. See MPEP § 2265. See generally *In re Vamco Machine and Tool, Inc.*, 752 F.2d 1564, 224 USPQ 617 (Fed.

**2286**                    MANUAL OF PATENT EXAMINING PROCEDURE

Cir. 1985); *Gould v. Control Laser Corp.*, 705 F.2d 1340, 217 USPQ 985 (Fed. Cir. 1983); *Loffland Bros. Co. v. Mid-Western Energy Corp.*, 225 USPQ 886 (W.D. Okla. 1985); *The Toro Co. v. L.R. Nelson Corp.*, 223 USPQ 636 (C.D. Ill. 1984); *Digital Magnetic Systems, Inc. v. Ansley*, 213 USPQ 290 (W.D. Okla. 1982); *Raytek, Inc. v. Solfan Systems Inc.*, 211 USPQ 405 (N.D. Cal. 1981); and *Dresser Industries, Inc. v. Ford Motor Co.*, 211 USPQ 1114 (N.D. Texas 1981).

>In addition, if (A) there is litigation concurrent with an *ex parte* reexamination proceeding and (B) the reexamination proceeding has been pending for more than one year, the Director or Deputy Director of the Office of Patent Legal Administration (OPLA), Director of the Central Reexamination Unit (CRU), Director of the Technology Center (TC) in which the reexamination is being conducted, or a Senior Legal Advisor of the OPLA, may approve Office actions in such reexamination proceeding setting a one-month or thirty days, whichever is longer, shortened statutory period for response rather than the two months usually set in reexamination proceedings. A statement at the end of the Office action – "One month or thirty days, whichever is longer, shortened statutory period approved," followed by the signature of one of these officials, will designate such approval. It is to be noted that the statutory requirement for "special dispatch" in reexamination often becomes important, and sometimes critical, in coordinating the concurrent litigation and reexamination proceedings.<

## II.    FEDERAL COURT DECISION KNOWN TO EXAMINER AT THE TIME THE DETERMINATION ON THE REQUEST FOR REEXAMINATION IS MADE

If a Federal Court decision *on the merits* of a patent is known to the examiner at the time the determination on the request for *ex parte* reexamination is made, the following guidelines will be followed by the examiner, whether or not the person who filed the request was a party to the litigation. When the initial question as to whether the prior art raises a substantial new question of patentability as to a patent claim is under consideration, the existence of a final court decision of claim *validity* in view of the same or different prior art does not necessarily mean that no new question is present. This is true because of the differ-

ent standards of proof and claim interpretation employed by the District Courts and the Office. See for example *In re Zletz*, 893 F.2d 319, 322, 13 USPQ2d 1320, 1322 (Fed. Cir. 1989) (manner of claim interpretation that is used by courts in litigation is not the manner of claim interpretation that is applicable during prosecution of a pending application before the PTO) and *In re Etter*, 756 F.2d 852, 225 USPQ 1 (Fed. Cir. 1985) (the 35 U.S.C. 282 presumption of patent validity has no application in reexamination proceedings). Thus, while the Office may accord deference to factual findings made by the court, the determination of whether a substantial new question of patentability exists will be made independently of the court's decision on validity as it is not controlling on the Office. A *non-final* holding of claim *invalidity* or unenforceability will not be controlling on the question of whether a substantial new question of patentability is present. A final holding of claim invalidity or unenforceability (after all appeals), however, is controlling on the Office. In such cases, a substantial new question of patentability would *not* be present as to the claims held invalid or unenforceable. See *Ethicon v. Quigg*, 849 F.2d 1422, 7 USPQ2d 1152 (Fed. Cir. 1988).

Any determination on a request for reexamination which the examiner makes after a Federal Court decision must be reviewed by the >Central Reexamination Unit (CRU) or< Technology Center (TC) Special Program Examiner (SPRE) to ensure that it conforms to the current Office litigation policy and guidelines. See MPEP § 2240.

For a discussion of the policy in specific situations where a Federal Court decision has been issued, see MPEP § 2242.

## III.    REEXAMINATION WITH CONCURRENT LITIGATION BUT ORDERED PRIOR TO FEDERAL COURT DECISION

In view of the statutory mandate to make the determination on the request within 3 months, the determination on the request based on the record before the examiner will be made without awaiting a decision by the Federal Court. It is not realistic to attempt to determine what issues will be treated by the Federal Court prior to the court decision. Accordingly, the determination on the request will be made without considering the issues allegedly before the court. If an *ex parte*

reexamination is ordered, the reexamination will continue until the Office becomes aware that a court decision has issued. At such time, the request will be reviewed in accordance with the guidelines set forth below. The patent owner is required by 37 CFR 1.565(a) to call the attention of the Office to any prior or concurrent proceeding in which the patent is involved or was involved. Thus, the patent owner has an obligation to promptly notify the Office that a decision has been issued in the Federal Court.

## IV.  FEDERAL COURT DECISION ISSUES AFTER *EX PARTE* REEXAMINATION ORDERED

Pursuant to 37 CFR 1.565(a), the patent owner in an *ex parte* reexamination proceeding must promptly notify the Office of any Federal court decision involving the patent. Where the reexamination proceeding is currently pending and the court decision issues, or the Office becomes aware of a court decision relating to a pending reexamination proceeding, the order to reexamine is reviewed to see if a substantial new question of patentability is still present. If no substantial new question of patentability is still present, the order to reexamine is vacated by the >CRU or< TC Director and reexamination is concluded.

A *non-final* Federal Court decision concerning a patent under reexamination shall have no binding effect on a reexamination proceeding.

The issuance of a *final* Federal Court decision upholding validity during an *ex parte* reexamination also will have no binding effect on the examination of the reexamination. This is because the court states in *Ethicon v. Quigg,* 849 F.2d 1422, 1428, 7 USPQ2d 1152, 1157 (Fed. Cir. 1988) that the Office is *not* bound by a court's holding of patent *validity* and should continue the reexamination. The court notes that district courts and the Office use different standards of proof in determining invalidity, and thus, on the same evidence, could quite correctly come to different conclusions. Specifically, invalidity in a district court must be shown by "clear and convincing" evidence, whereas in the Office, it is sufficient to show nonpatentability by a "preponderance of evidence." Since the "clear and convincing" standard is harder to satisfy than the "preponderance" standard, deference will ordinarily be accorded to the factual findings of the court where the evidence before the Office and the

court is the same. If sufficient reasons are present, claims held valid by the court may be rejected in reexamination.

On the other hand, a *final* Federal Court holding of invalidity or unenforceability (after all appeals), is binding on the Office. Upon the issuance of a final holding of invalidity or unenforceability, the claims >being examined which are< held invalid or unenforceable will be withdrawn from consideration in the reexamination. The reexamination will continue as to any remaining claims >being examined<. Thus, the reexamination will continue if any original, new, or amended claim >being examined that< was not found invalid or unenforceable by the Court. If all of the claims >being examined< in the reexamination proceeding are finally held invalid or unenforceable, the reexamination will be vacated by the >CRU or< TC Director as no longer containing a substantial new question of patentability and the reexamination will be concluded. If not all claims **>being examined< were held invalid (or unenforceable), a substantial new question of patentability may still exist as to the remaining claims. In such a situation, the remaining claims would be examined; and, as to the claims held invalid/unenforceable, form paragraph 22.20 should be used at the beginning of the Office action.

¶  *22.20 Claims Held Invalid By Court, No Longer Being Reexamined*

Claims **[1]** of the **[2]** patent are not being reexamined in view of the final decision of **[3]**. Claim(s) **[1]** was/were held invalid/unenforceable by the **[4]**.

**Examiner Note:**

1.   In bracket 1, insert the claim(s) held invalid.
2.   In bracket 2, insert the patentee (e.g., Rosenthal, Schor et al).
3.   In bracket 3, insert the decision (e.g., *ABC Corp. v. Smith,* 888 F. 3d 88, 999 USPQ2d 99 (Fed. Cir. 1999) or *XYZ Corp. v. Jones,* 888 F. Supp. 2d 88, 999 USPQ2d 1024 (N.D. Cal. 1999)).
4.   In bracket 4, insert the name of the court (e.g., the Court of Appeals for the Federal Circuit, or the Federal District Court).

## V.  LITIGATION REVIEW AND ** SPRE APPROVAL

In order to ensure that the Office is aware of prior or concurrent litigation, the examiner is responsible for conducting a reasonable investigation for evidence as to whether the patent for which *ex parte* reexamination is requested has been or is involved in litigation. The investigation will include a review of the

reexamination file, the patent file, and the results of the litigation computer search by the STIC.

If the examiner discovers, *at any time* during the reexamination proceeding, that there is litigation or that there has been a federal court decision on the patent, the fact will be brought to the attention of the >CRU or< TC SPRE prior to any further action by the examiner. The >CRU or< TC SPRE must review any action taken by the examiner in such circumstances to ensure current Office litigation policy is being followed.

## VI.   FEDERAL COURT DECISION CONTROLLING IN REEXAMINATION PROCEEDING

Once a federal court has ruled upon the merits of a patent and an *ex parte* reexamination is still appropriate under the guidelines set forth above, the federal court decision will be considered controlling and will be followed as to claims finally held to be invalid by the court.

## 2287   Conclusion of *Ex Parte* Reexamination Proceeding  [R-5]

Upon conclusion of the *ex parte* reexamination proceeding, the examiner must prepare a "Notice of Intent to Issue *Ex Parte* Reexamination Certificate" (NIRC) by completing form PTOL-469.  If appropriate, an examiner's amendment will also be prepared. Where claims are found patentable, reasons must be given for each claim found patentable.  See the discussion as to preparation of an examiner's amendment and reasons for allowance at the end of this section. In addition, the examiner must prepare the reexamination file so that the Office of Publications can prepare and issue a certificate in accordance with 35 U.S.C. 307 and 37 CFR 1.570 setting forth the results of the reexamination proceeding and the content of the patent following the proceeding.  See MPEP § 2288.

If it is the intent of the examiner to find any claim(s) patentable (confirmed or allowed) in concluding the reexamination proceeding, the examiner will so inform his/her **>Special Program Examiner (SPRE)<. The *>SPRE< will convene a *>panel< review conference (see MPEP § 2271.01), and the conference members will review the patentability of the claim(s). If the conference confirms the patentability of the claim(s), a NIRC shall be issued and signed by the examiner, with the two other conferees initialing the NIRC (as "conferee") to indicate their participation in the conference. Both conferees will initial, even though one of them may have dissented from the 3-party conference decision on the patentability of the claim(s). If the conference does not confirm the patentability of the claim(s), ** the examiner will >reevaluate and< issue an appropriate Office action rejecting the claim(s), not confirmed as patentable.

A *>panel< review conference is not to be held as to any claim that was in the case (proceeding) at the time the case was reviewed by the Board of Patent Appeals and Interferences (Board) or a federal court. The following example will serve to illustrate this point. In a reexamination proceeding, claims 5-10 are allowed by the examiner, and claims 1-4 are rejected. The rejection of claims 1-4 is then appealed to the Board. The Board reverses the rejection of claims 1-4 and imposes a new ground of rejection of claims 1-4 under 37 CFR 41.50(b). The patent owner then elects further prosecution before the examiner pursuant to 37 CFR 41.50(b)(1) and submits an amended set of claims 1-4. The examiner finds amended claims 1-4 to be allowable and wishes to "allow" the entire case by issuing a NIRC. A *>panel< review conference must be held at this stage of the proceeding. The conferees will review the allowance of amended claims 1-4. The conferees will not, however, review the allowance of claims 5-10, because claims 5-10 were in the case, and before the Board at the time the Board decided the appeal.

A *>panel< review conference is not to be held where the proceeding is to be concluded by the cancellation of all claims. >No panel review conference is needed in this instance, as the issuance of the NIRC is essentially ministerial.<

Thus, a *>panel< review conference **must** be held in each instance where a NIRC is about to be issued, unless the NIRC is being issued: (A) following and consistent with a decision by the Board of Patent Appeals and Interferences (or court) on the merits of the proceeding; or (B) as a consequence of the patent owner's failure to respond or take other action where such a response or action is necessary to maintain pendency of the proceeding and, as a result of which failure to respond, all of the claims will be canceled.

EXHIBIT F

1   BINGHAM McCUTCHEN LLP                     ROCHE DIAGNOSTICS CORP.
    James B. Lewis (SBN 71669)                Brent Harris (admitted *pro hac vice*)
2   Thomas E. Kuhnle (SBN 178055)             9115 Hague Road
    1900 University Avenue                    Indianapolis, Indiana 46250
3   East Palo Alto, California 94303          Telephone:  (317) 845-2000
    Telephone: (650) 849-4400
4   Facsimile:  (650) 849-4800

5   McDONNELL BOEHNEN HULBERT & BERGHOFF LLP
    Daniel A. Boehnen (admitted *pro hac vice*)
6   Grantland G. Drutchas (admitted *pro hac vice*)
    300 S. Wacker Drive
7   Chicago, Illinois 60606
    Telephone: (312) 913-0001
8   Facsimile:  (312) 913-0002

9   Attorneys for Defendant and Counterclaimant
    Roche Diagnostics Corporation

10

11                  UNITED STATES DISTRICT COURT

12                 NORTHERN DISTRICT OF CALIFORNIA

13                     SAN FRANCISCO DIVISION

14  LIFESCAN, INC., a California corporation,  |  CASE NO. C 04 3653

15                    Plaintiff,               |  **DEFENDANT ROCHE DIAGNOSTICS
                                               |  CORPORATION'S SUBSEQUENT CASE
16              v.                             |  MANAGEMENT STATEMENT**

17  ROCHE DIAGNOSTICS CORPORATION,             |  Date:     May 6, 2005
    an Indiana corporation,                    |  Time:     2:30 p.m.
18                                             |  Before:   Hon. Susan Illston
                      Defendant.               |  Ctrm.:    10, 19th Floor
19

20  AND RELATED ACTIONS

21

22  / / /

23  / / /

24  / / /

25          ROCHE'S SUBSEQUENT CASE MANAGEMENT STATEMENT
                        Case No. C 04-3653 SI
                                1

PA/52157429.1

Pursuant to Civil L.R. 16-10(d), defendant and counterclaimant Roche Diagnostics Corporation ("Roche"), submits this Subsequent Case Management Statement.

On April 13, 2005, the parties submitted a Stipulation and Order Continuing the Preliminary Claim Constructions Schedule. The Order was entered by the Court on April 14, 2005. In their Stipulation, the parties explained that they both had submitted Requests for Reexamination of the patent-in-suit to the United States Patent and Trademark Office ("PTO"), and that the PTO ordered reexamination in connection with these Requests. In this Subsequent Case Management Statement, Roche briefly elaborates on the status of the PTO's reexamination proceedings.

Roche filed its Request for Reexamination of the patent-in-suit on January 28, 2005. One day earlier, on January 27, 2005, Plaintiff LifeScan, Inc. filed its own Request for Reexamination of the patent-in-suit. Attached hereto as Exhibits A and B are copies of the decisions ordering reexamination in response to the requests filed by Roche and LifeScan.

At the Initial Case Management Conference on January 14, 2005, the Court asked how quickly the reexamination proceedings might be conducted. The PTO's guide to interpreting the statutes and regulations governing patent prosecution, the Manual of Patent Examining Procedure ("MPEP"), indicates that in reexaminations for which the PTO has been notified about a stay of litigation, the reexamination will be conducted with "special dispatch." Specifically, after the patentee provides notice of the stay, the PTO implements procedures that require the patentee to respond to office actions within a month:

> Any request for [ex parte] reexamination which indicates: (A) that it is filed as a result of an agreement by parties to litigation which agreement is sanctioned by the court, or (B) that litigation is stayed for the filing of a reexamination request, will be taken up by the examiner for decision 6 weeks after the request was filed. If reexamination is ordered, the examination following the statement by the patent owner under 37 C.F.R. § 1.530 and the reply by the requester under 37 C.F.R. § 1.535 will be expedited to the extent possible. Office actions in these reexamination proceedings will normally set a 1-month shortened

ROCHE'S SUBSEQUENT CASE MANAGEMENT STATEMENT
Case No. C 04-3653 SI
2

PA/52157429.1

statutory period for response rather than the 2 months usually set in reexamination proceedings. This 1-month period may be extended only upon a showing of sufficient cause.

MPEP § 2286 (citations omitted) (Exhibit C attached).

   With respect to the impact that the reexamination is likely to have on the litigation, Roche has attached a copy of statistics published by the Patent Office concerning all reexaminations during the last twenty (20) years. (Exhibit D attached). These statistics indicate that 70 percent of reexaminations terminate with a finding that the patent claims are invalid or must be modified. Thus, 70 percent of the time the reexamination affects the scope of the patent.

   In light of these facts, at the subsequent case management conference on May 6, Roche will request that the Court stay all events in this litigation pending completion of the reexamination by the PTO.

         BINGHAM McCUTCHEN LLP


Dated:  April 29, 2005     By:_____/s/_____
             Thomas E. Kuhnle
             Attorneys for Defendant and Counterclaimant
             Roche Diagnostics Corporation

PA/52157429.1