# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROCHE DIAGNOSTICS OPERATIONS, INC., and CORANGE INTERNATIONAL LIMITED, | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | C.A. No. 07-753-JJF |
| ABBOTT DIABETES CARE, INCORPORATED, and ABBOTT DIABETES CARE SALES CORPORATION, | ) ) ) ) ) | DEMAND FOR JURY TRIAL |
| BAYER HEALTHCARE, LLC, | ) ) | |
| DIAGNOSTIC DEVICES, INC., | ) ) | |
| LIFESCAN, INCORPORATED, and | ) ) | |
| NOVA BIOMEDICAL CORPORATION, and SANVITA INCORPORATED, | ) ) ) | |
| Defendants. | ) | |

## PLAINTIFFS' ANSWERING BRIEF IN OPPOSITION TO ABBOTT'S MOTION TO STAY THE PROCEEDING PENDING REEXAMINATION OF THE PATENTS-IN-SUIT

OF COUNSEL:

Daniel A. Boehnen
Grantland G. Drutchas
McDonnell Boehnen Hulbert & Berghoff LLP
300 South Wacker Drive
Chicago, IL 60606
(312) 913-0001


Dated: January 25, 2008

Philip A. Rovner (#3215)
POTTER ANDERSON & CORROON LLP
Hercules Plaza
P.O. Box 951
Wilmington, DE 19899-0951
(302) 984-6000
provner@potteranderson.com

*Attorney for Plaintiffs*
*Roche Diagnostics Operations, Inc. and*
*Corange International Limited*

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................1

NATURE AND STAGE OF THE PROCEEDINGS ...........................................3

SUMMARY OF THE ARGUMENT ...................................................................4

STATEMENT OF FACTS ..................................................................................5

ARGUMENT .......................................................................................................9

    A.  The Relevant Factors Weigh In Favor Of Denying
        Abbott's Motion...........................................................................10

        1.  A Stay Will Not Simplify The Issues For Trial .........................10

            a.  Patent Claims Will Most Likely Remain
               Even If The PTO Grants Reexamination .........................10

            b.  Even If Granted, Reexamination Will Not
               Impact Many Issues In the Case .....................................12

        2.  Roche Will Be Unduly Prejudiced By A Stay ...........................14

        3.  The Stage Of The Litigation Does Not
            Counteract Other Considerations................................................17

    B.  Abbott's Motion To Stay Is Premature And Should Be Denied............................18

CONCLUSION...................................................................................................19

## TABLE OF AUTHORITIES

**CASES**

*Abbott Diabetes Care, Inc. v. Dexcom,*
  2006 WL 2375035 (D.Del. Aug. 16, 2006) .................................................................17

*Akzenta Paneele + Profile GmbH v. Unilin Flooring N.C. LLC.,*
  464 F. Supp. 2d 481 (D.Md. 2006)............................................................................16

*Ariba, Inc. v. Emptoris, Inc.,*
  2007 WL 3132606 (E.D.Tex. Oct. 23, 2007) .......................................................11, 13

*Biax Corp. v. Fujitsu Computer Sys. Corp.,*
  2007 WL 614187 (E.D.Tex. Feb. 26, 2007) ....................................................13, 15, 16

*Dentsply Int'l, Inc. v. Kerr Manuf. Co.,*
  734 F. Supp. 656 (D. Del. 1990)...................................................................................9

*Dusa Pharm., Inc. v. River's Edge Pharm., LLC*
  2006 U.S. Dist. LEXIS 29852 (D.NJ May 15, 2006) ...................................................18

*Ethicon, Inc. v. Quigg,*
  849 F.2d 1422 (Fed. Cir. 1988).................................................................................18

*In re Columbia Univ. Patent Litigation,*
  330 F. Supp. 2d 12 (D.Mass. 2004) .....................................................................13, 16

*Landis v. N. Am. Co.,*
  229 U.S. 248 (1936)......................................................................................................9

*Lexington Lasercomb I.P.A.G. v. GMR Prods., Inc.,*
  442 F. Supp. 2d 1277 (S.D.Fla. 2006) ......................................................................15

*NTP, Inc. v. Research In Motion, Ltd.,*
  397 F. Supp. 2d 785 (E.D. Va. 2005) ..........................................................................9

*Purechoice, Inc. v. Honeywell Int'l, Inc.,*
  2007 WL 1189844 (E.D.Tex. April 20, 2007)......................................................10, 15

*St. Clair Intellectual Property Consultants Inc. v. Sony Corp.,*
  2003 WL 25283239 (D.Del. Jan. 30, 2003).................................................................10

*Texas MP3 Techn., Ltd. v. Samsung Elect. Co., Ltd.,*
    2007 WL 3219372 (E.D.Tex. Oct. 30, 2007) ........................................................10, 14

*Viskase Corp. v. Am. Nat'l Can Co.,*
    261 F.3d 1316 (Fed. Cir. 2001).........................................................................................9

*Xerox Corp. v. 3 Com Corp.,*
    69 F. Supp. 2d 404 (W.D.N.Y. 1999) ...........................................................................10

*Zilog, Inc. v. Quicklogic Corp.,*
    2006 U.S. Dist. LEXIS 12844 (N.D. Ca. March 6, 2006) ............................................18

## OTHER AUTHORITIES

Manual of Patent Examining Procedure § 609.05(b) (8th ed., rev. 5, Aug. 2006) ......................7

## INTRODUCTION

Plaintiffs Roche Diagnostics Operations, Inc. and Corange International Limited (collectively "Roche") filed this action on November 21, 2007, for infringement of the claims of the U.S. Patent Nos. 7,276,146 ("the 146 patent") and 7,276,147 ("the 147 patent") (collectively "the patents-in-suit"). The Complaint lists several Defendants:

- Abbott Diabetes Care Inc. and Abbott Diabetes Care Sales Corp. (collectively "Abbott");

- Bayer Healthcare, LLC ("Bayer");

- Diagnostic Devices, Inc. ("Diagnostic Devices");

- LifeScan, Inc. ("LifeScan"); and

- Nova Biomedical Corp. ("Nova").[1]

Shortly thereafter, on December 14, 2007, Abbott filed two (2) requests for reexamination of the patents-in-suit, i.e., one request directed against each of the two (2) patents-in-suit. Each request for reexamination is substantially identical to the other. Both of these requests for reexamination rely on prior art that was already cited and considered by the Patent and Trademark Office ("PTO") during prosecution of the patents-in-suit. As such, Roche expects that the PTO will deny these requests. Even if the PTO grants the requests and conducts a full reexamination, the PTO is ultimately expected to allow the current claims.

---

[1] The original Complaint also listed Sanvita Incorporated ("Sanvita") as a Defendant. Sanvita turned out to be a mere distributor of Nova's product, and the claims against Sanvita were dismissed without prejudice by joint stipulation on January 8, 2008. D.I. 33.

On January 9, 2008, nearly a month after the original due date for its Answer to the Complaint, and two (2) days before its extended response date, Abbott filed this motion to stay the action. ***None of the other Defendants has joined in this motion.***

Two days later, each of the Defendants responded to the Complaint by filing an Answer (in the case of Bayer), or an Answer and Counterclaim (in the case of Abbott, LifeScan, and Nova), or a motion to dismiss for lack of personal jurisdiction (in the case of Diagnostics Devices). All of the Defendants who have answered raised issues that the patents-in-suit are: (i) not infringed and (ii) invalid. D.I. 40 (Abbott); D.I. 41 (Bayer); D.I. 43 (LifeScan); and D.I. 47 (Nova). Nova also filed a Counterclaim, asserting that Roche infringes one of Nova's patents, U.S. Patent No. 6,258,229. In addition, Nova filed counterclaims accusing Roche of Misappropriation of Trade Secrets, Breach of Contract, Unfair Competition, and Conversion. Finally, Diagnostic Devices did not answer, but instead filed a motion to dismiss for lack of personal jurisdiction. D.I. 45. In view of this myriad of defenses and counterclaims, this case is about much more than simply infringement of the Roche patents-in-suit.

Abbott's motion is inappropriate and will not simplify the issues or benefit judicial efficiency:

- This case is on track and the parties are proceeding with discovery;

- The PTO has not yet granted either of these requests for reexamination;

- Each of the Defendants who answered the Complaint has filed affirmative defenses and/or counterclaims of non-infringement and invalidity -- issues that cannot or likely will not be resolved by the PTO;

- Even if the reexamination requests are granted, any modification of the claims is speculative at best, considering that the cited prior art and arguments have already been considered by the PTO;

- Each of the parties will be able to make the same arguments at trial that Abbott makes in the reexamination requests, regardless of the outcome of the reexamination, meaning we'll be right back where we started;

- Abbott holds discovery that is material and important to the reexamination, such that discovery of that information should proceed; and

- Nova's counterclaim for Patent Infringement, Misappropriation of Trade Secrets, Breach of Contract, Unfair Competition, and Conversion involves a different patent, and will require discovery to proceed in this action, even if a stay is granted as to Roche's claims.  Indeed, such a stay of this action vis-à-vis Roche's patent claims will unduly prejudice Roche.

## **NATURE AND STAGE OF THE PROCEEDINGS**

As noted above, on January 11, 2008, each of the Defendants responded to the Complaint.  Also as noted above, no other Defendant has joined Abbott's motion to stay the case pending reexamination.

The parties jointly submitted a Proposed Rule 16 Scheduling Order outlining the parties' respective positions on the schedule.  D.I. 31.  The Scheduling Conference is currently set for February 8, 2008, at 11:30 a.m.

3

Roche has initiated discovery, serving Defendants Abbott, Bayer, LifeScan and Nova on January 23, 2008.[2]   Based on the Proposed Rule 16 Scheduling Order, D.I. 31, the parties will be exchanging the information required by Federal Rule of Civil Procedure 26(a)(1) on or before February 8, 2008.

## **SUMMARY OF THE ARGUMENT**

Plaintiff Roche respectfully requests that the Court deny Defendant Abbott's motion to stay the litigation pending the reexamination requests for at least the following reasons.[3]

1.     Assuming, *arguendo*, that the reexaminations are even instituted, it seems most likely in the current circumstances that reexamination will not materially impact the litigation because Abbott's requests for reexamination are based on prior art and related arguments that were previously considered by the PTO.

2.     This case includes many issues (involving validity, infringement, damages, and other defenses and counterclaims) that are unrelated to Abbott's requests for reexamination, and discovery on these issues should not await a very speculative outcome of the reexamination requests.  This case is not "purely" a patent infringement case as Abbott alleges.

3.     Roche will be unfairly prejudiced if its case is stayed, not only because that means lost market opportunity for Roche, but also because (i) Abbott holds discovery that is material to the reexamination proceeding which Roche can obtain

---

[2] Roche is also serving discovery on Diagnostic Devices focusing on the personal jurisdiction issues raised in Diagnostic Devices' pending motion to dismiss.

[3] Roche also opposes Abbott's suggestion to dismiss the case without prejudice pending reexaminations.  If the Court decides to entertain this alternative suggestion by Abbott, Roche respectfully requests the right to fully brief the issue.  All of the reasoning set forth here in relation to a stay apply even more forcefully as to a dismissal without prejudice.

only through discovery in this lawsuit, (ii) Abbott, by filing *ex parte*

reexaminations, is ensuring its right to argue the same position once to the PTO and

then to the Court, and (iii) Nova has now asserted its own patent infringement

counterclaims against Roche.

4.    The motion is premature because the PTO has not yet decided whether

reexamination is appropriate.

Discovery on the issues in this case should move forward unless and until some event

occurs to show clearly that a stay is necessary to prevent a miscarriage of justice. That

situation is not on the horizon at this time.

## STATEMENT OF FACTS

The patents-in-suit describe and claim an improved sensor for use by diabetes

patients to monitor blood sugar ("glucose") levels. Diabetes is a syndrome in which the

body produces inappropriately high levels of blood sugar (hyperglycemia) resulting from

either (i) the body's inability to produce normal levels of insulin or (ii) the body's

abnormal resistance to the effects of insulin. The first type of diabetes is referred to as

Type 1 diabetes or, sometimes, as Juvenile Onset Diabetes because it typically arises

relatively early in life. The second type of diabetes is referred to as Type 2 diabetes or,

sometimes, as Adult Onset Diabetes because it typically arises later in life.

Uncontrolled diabetes can result in a variety of complications, including damage to

nerves and blood vessels, which can require amputation of extremities, blindness, increased

risk of stroke, pneumonia, and kidney damage, which can require dialysis. Diabetes

affects as many as 20 million people in the U.S., with as many as 41 million people in the

U.S. suffering from pre-diabetes. Moreover, Type 2 diabetes is associated with obesity, and is a growing problem in the U.S.

Self-monitoring blood glucose levels is an important aspect of controlling diabetes. The most common form of self-monitoring uses an electrochemical meter and a specially designed test strip that contains reagents and electrodes. A patient pricks his finger with a needle-like device (a lancet), and applies a blood sample to the strip. The blood sample then reacts with the reagents on the strip to generate an electrochemical reaction. As a result, the electrodes in the strip convey an electrical signal to the electrochemical meter. The meter reads and converts the signal into visual information that depicts the level of blood glucose level in the blood sample.

Although a number of strip and electrochemical meter designs were available in the prior art, all of them suffered from two significant problems: they required relatively large blood samples (substantially greater than 1 μl) and/or took a relatively long time to process the sample and provide a readout (substantially greater than 10 seconds). The patents-in-suit were the first to describe and claim a method using a test strip that had both highly desirable features: a small sample volume and a short test time.

Specifically, the patents-in-suit both claim methods of determining the concentration of glucose in a blood sample that, *inter alia*, include a capillary chamber that holds a small sample volume of about 1.0 μl or less of blood, and provide a readout within 10 seconds after the blood sample is detected in the strip. *See e.g.,* 146 patent, claims 1 and 31; 147 patent, claims 1 and 36.

During prosecution of the patents-in-suit, the PTO considered each of the prior art references that Abbott relies on in its requests for *ex parte* reexamination. Abbott's

6

primary reference is WO 00/20626 ("WO 626"), an application originally assigned to a

company called Therasense which was acquired by Abbott in January, 2004. Roche

submitted this reference to the PTO during prosecution of the 147 patent in an Information

Disclosure Statement ("IDS") containing only twenty-two references. (Ex. A at 3.) Roche

also submitted the same reference in the prosecution of the 146 patent. (Ex. B at 3.) The

Examiner explicitly checked off the WO 626 reference as having been considered in both

of these applications.[4] (Ex. C at 1; Ex. D at 2.)

Abbott's secondary reference is U.S. Patent No. 6,153,069, and Roche submitted

this reference in an IDS containing only eleven references during prosecution of the 146

patent. (Ex. H at 2.) Roche also submitted this reference in the prosecution of the 147

patent. (Ex. I at 3.) The Examiner also checked off on consideration of this reference in

both of these applications. (Ex. J at 1; Ex. K at 1.)

Abbott attempts to impugn the quality of the Examiner's review by arguing about

the total number of prior art references submitted during prosecution. That argument is

unfair to the Examiner and to Roche. *See* Ex. G (M.P.E.P. § 609.05(b): "Examiners must

consider all citations submitted in conformance with the rules, and their initials when

placed adjacent to the considered citations on the list or in the boxes provided on a form **

PTO/SB/08A and 08B provides a clear record of which citations have been considered by

the Office.") As explained above, the references relied on by Abbott were not buried, but

---

[4] Roche actually submitted Abbott's primary reference, WO 626, twice to the PTO during prosecution. (Ex. E at 4; Ex. F at 4.) Interestingly, instead of declining to review the WO 626 reference the second time, the Examiner's initials next to the reference on the later IDS indicates that the Examiner considered this reference both times it was submitted. *See also* Manual of Patent Examining Procedure ("M.P.E.P.") § 609.05(b) (8th ed., rev. 5, Aug. 2006) (Ex. G) ("Those citations not considered by the examiner will have a line drawn through the citation and any citations considered will have the examiners initials adjacent thereto.")

rather were submitted in a manner that gave the Examiner a clear field of vision, and the record is clear that the Examiner considered each of these references.

The PTO file history shows that the Examiner considered not only the references cited by Abbott, but also the specific arguments that Abbott seeks to advance based on the references. In its motion to stay and its underlying reexamination requests, Abbott argues that WO 626 discloses a method for determining and displaying the concentration of glucose in a blood sample smaller that 1.0 μl in a time period less than 10 seconds, citing Fig. 17 of that reference. Notably absent from Abbott's papers is the WO 626 paper itself. That reference, attached hereto as Ex. L, does not teach or suggest that those results were obtained using a blood sample. Figure 17 of that reference at best involved aqueous glucose solutions, not blood. (Ex. L at Example 12, p. 96.) To the contrary, the only test in that reference with a sensor using a whole blood sample is Example 13, with data reported in Figs. 28-30. For whole blood, the reference teaches a test time of 150 seconds, as opposed to the claimed 10 second range. (*Id.* at 98, lines 4-7.) [5]

The significant difference between testing times using glucose solutions versus whole blood samples was understood and acknowledged by the Examiner. In the Notices of Allowability for both of the patents-in-suit, the Examiner noted that a determination of the glucose concentration in whole blood sample takes longer than a determination of the glucose concentration in buffer solutions:

> [B]ecause the glucose/serum measurement time is significantly
> longer than a comparable glucose/buffer measurement time ... there

---

[5] Indeed, Table 1 (page 86) of this reference shows how glucose solutions permit substantially faster test times than serum. Table 1 reports the fastest test time in a glucose/buffer solution was $19 \pm 5$ seconds, and even the fastest glucose/serum solution required more than twice as much time to measure ($44 \pm 3$ seconds). None of these were reported as permitting a test time of below 10 seconds, however.

> is no great likelihood that a reasonably accurate measurement on
> glucose/blood sample could be taken within 10 seconds after
> detecting the sample even with much less than 90% electrolysis of
> the glucose.

(Ex. M at 5; Ex. N at 5.)   Abbott neglected to mention this prior consideration of its main

issue in its reexamination requests and its motion to stay.

Abbott's motion to stay cites PTO statistics about past reexamination practice.

However, Abbott fails to notice that the vast majority of reexamination requests do not rely

upon previously cited references and previously considered arguments. This situation

seriously undercuts the probability that Abbott's requests will be granted, and, even if

granted, have any impact on the scope of the claims.

## ARGUMENT

It is well settled law that "[a] court is under no obligation to delay its own

proceedings by yielding to ongoing PTO patent reexaminations, regardless of their

relevancy to infringement claims which the court must analyze." *NTP, Inc. v. Research In

Motion, Ltd.*, 397 F. Supp. 2d 785, 787 (E.D. Va. 2005) citing *Viskase Corp. v. Am. Nat'l

Can Co.*, 261 F.3d 1316, 1328 (Fed. Cir. 2001) ("The [district] court is not required to stay

judicial resolution in view of the [PTO's] reexaminations.").

The moving party "must make out a clear case of hardship or inequity in being

required to go forward, if there is even a fair possibility that the stay for which he prays

will work damage to someone else." *Landis v. N. Am. Co.*, 229 U.S. 248, 255 (1936);

*Dentsply Int'l, Inc. v. Kerr Manuf. Co.*, 734 F. Supp. 656, 658 (D. Del. 1990)(Farnan, J) (in

balancing the factors, the Court must evaluate whether there is even a fair possibility that

the stay would work damage on another party).

Here, the relevant factors weigh against Abbott's stay request.

**A. The Relevant Factors Weigh In Favor Of Denying Abbott's Motion**

Courts are typically guided by three factors when determining whether a stay is appropriate: (1) whether a stay will simplify the issues in question and trial of the case; (2) whether a stay would unduly prejudice or create a clear tactical disadvantage to the non-moving party; and (3) whether discovery is complete and whether a trial date has been set. *St. Clair Intellectual Property Consultants Inc. v. Sony Corp.*, 2003 WL 25283239, *1 (D.Del. Jan. 30, 2003) (Farnan, J.); *Xerox Corp. v. 3 Com Corp.*, 69 F. Supp. 2d 404, 406 (W.D.N.Y. 1999). Contrary to Abbott's assertions, the benefits of granting the motion to stay do not outweigh the burdens of the delay caused by a stay pending a reexamination proceeding in this case. The factors weigh against a stay of this case.

**1. A Stay Will Not Simplify The Issues For Trial**

Abbott's speculation that a reexamination might eliminate issues for trial is somewhat rose-colored in this case. Even if granted, reexamination will not impact a number of the issues in suit. The parties should be permitted to address these issues without delay.

**a. Patent Claims Will Most Likely Remain Even If The PTO Grants Reexamination**

Abbott's argument that the reexamination may eliminate the need for trial (since the claims will allegedly materially change or be voided) is speculative at best. *See Texas MP3 Techn., Ltd. v. Samsung Elect. Co., Ltd.,* 2007 WL 3219372, *2 (E.D.Tex. Oct. 30, 2007); *Purechoice, Inc. v. Honeywell Int'l, Inc.*, 2007 WL 1189844, *2 (E.D.Tex. April 20, 2007) ("[n]otwithstanding the defendant's argument that the patent claims will likely materially change or be voided, it is also likely that some claims and issues will remain after reexamination has been completed . . . [t]his factor is speculative and does not support a

10

stay."). Given the facts of this case – reexamination requests relying on previously considered art and rejected arguments – it is far more likely that some or all of the claims will remain after any reexamination is complete. The PTO statistics show that this is true in general. The only possible way this litigation could truly be avoided is if the reexaminations resulted in invalidating all asserted claims of the patents-in-suit. According to Abbott's own statistics, that happens only about 10% of the time. Even Abbott does not argue that it is likely all asserted claims of the patents-in-suit will be invalidated.

Instead, Abbott argues that reexaminations could simplify the issues in the case, (*e.g.,* "historical evidence" suggests that patent claims "were cancelled or amended" 74% of the time during reexamination proceedings.) *See Abbott's Opening Brief*, p. 5. This argument is flawed, however, because the data shows that at least some claims actually survive reexamination intact about 90% of the time. *See Abbott's Opening Brief*, Exhibit C. Thus, even when considering reexamination requests that presented new and better prior art -- unlike Abbott's reexamination requests -- there is still a 90% likelihood that some of Roche's claims will survive any reexamination proceedings, and the litigation will be needed. *See Ariba, Inc. v. Emptoris, Inc.*, 2007 WL 3132606, *2 (E.D.Tex. Oct. 23, 2007) ("[s]tatistically, 90% of all reexaminations result in the confirmation of at least some claims in a patent. Therefore, even after reexamination, if only one claim remained, invalidity would continue to be an issue, and so a stay would not preserve many resources.").

Delaying this case based on such speculative arguments, as Abbott submits, does not stand to preserve judicial resources.

### b. Even If Granted, Reexamination Will Not Impact Many Issues In the Case

Abbott's requests for reexamination deal with a relatively small part of this lawsuit. The case involves many issues that have no connection to the request for reexamination. Staying the entire suit because of Abbott's reexamination requests would be letting the tail wag the dog, particularly since those reexamination requests are based on previously considered art and argument. The more prudent course is to allow this case to proceed, and get ready for trial. If and when something happens in the reexamination that warrants staying the entire case, Abbott can raise the issue at that time.

Nova's counterclaims for Patent Infringement, Misappropriation of Trade Secrets, Breach of Contract, Unfair Competition, and Conversion are entirely unrelated to the reexamination requests. Allowing Nova's counterclaims to proceed, without permitting Roche's infringement claim to move forward, would put Roche at a significant procedural disadvantage. It would also require duplicative discovery, as there will be significant overlapping issues between Roche's patent claims and Nova's counterclaims. Notably, neither Nova nor any other Defendant has joined in this motion to stay.

Infringement is another example of one of the issues that will be unaffected by any reexamination proceeding. Discovery on the infringement issues focus on the design and workings of the accused products. The parties can establish this information now, regardless whether the PTO grants reexamination.

Damages discovery is another example. Relevant damages information, such as sales and cost data for the accused products, will not be affected by whether a reexamination occurs, or the results thereof.

12

Finally, Bayer, LifeScan and Nova have alleged invalidity of the patents on grounds other than those set forth in Abbott's reexamination requests. Even if the PTO grants reexamination, it will not address alleged invalidity on the basis of, for example, 35 U.S.C. § 112, or on the basis of affirmative defenses such as waiver, estoppel and prosecution laches. *See Ariba, Inc.,* 2007 WL 3132606 at *2. The parties should be permitted to proceed with discovery relating to each of these issues – discovery that will not be materially impacted by reexamination.

Even as to the issue of prior art invalidity, Abbott's reexamination requests deal with only a part of the dispute. By law, the PTO considers invalidity based only on the specific prior art raised in the reexamination request. In other words, the PTO will not consider invalidity based on other references that are subsequently raised in this litigation. *See In re Columbia Univ. Patent Litigation*, 330 F. Supp. 2d 12, 15-16 (D.Mass. 2004); *Biax Corp. v. Fujitsu Computer Sys. Corp.*, 2007 WL 614187, *2 (E.D.Tex. Feb. 26, 2007). Abbott does not make any representations that it will not raise different references and different arguments with the Court with respect to invalidity, including other prior art references that were not included in its reexamination requests. Further, none of the other Defendants have joined the motion, suggesting that these Defendants have other prior art and arguments to present to the Court.

Notably, the reexamination will not bring finality even as to the limited prior art issues that are before the PTO in the reexamination. Abbott pointedly filed *ex parte* as opposed to *inter partes* reexamination requests. By doing so, Abbott preserves the right to raise these prior art issues and arguments all over again during the litigation, giving Abbott two forums to present the same prior art and arguments. Indeed, Abbott has not made any

representation that it will not present the same arguments to the Court that it has raised in its reexamination requests. Moreover, the other Defendants have not joined in Abbott's reexamination requests. These Defendants could later claim that they are outside the scope of any *de facto* or *de jure* estoppel applicable to Abbott, and must be permitted to raise the very same prior art issues themselves in this litigation. Further, it is ironic for Abbott to argue that this case should be stayed in order to defer to the PTO's reexamination, when, in fact, the PTO has already fully considered the references and arguments Abbott relies on in its reexamination requests.

Taking all these factors into consideration, it seems apparent that Abbott's primary motive in filing its reexamination requests was simply delay, *i.e.*, it wanted a foundation for trying to delay this lawsuit. Ultimately, it makes the most management sense to permit the parties to proceed with discovery at this time and without further delay. That is, the parties should be directed to proceed in getting this case ready for trial. If something happens in the PTO that genuinely impacts this lawsuit, the Court can entertain an appropriate motion at that time. In the meantime, where issues in suit are not being resolved in reexamination, a stay pending reexamination is unlikely to simplify the issues, and a stay should be denied. *See Texas MP3 Techn.,* 2007 WL 3219372 at *2.

### 2. Roche Will Be Unduly Prejudiced By A Stay

As noted above, the primary reference cited by Abbott in its requests for reexamination is the WO 626 application. The WO 626 application was originally assigned to a company called Therasense, which was acquired by Abbott in 2004. (Ex. O.) An internet search for Therasense re-directs the searcher to Abbott Diabetes Care, Inc., one

14

of the Abbott Defendants. As such, Abbott is in the unique position of owning the patent reference that it asserts in the reexamination.

Roche believes that Abbott has not properly or fairly presented the data that is summarized in WO 626. Abbott is in the unique position of possessing the evidence that would resolve all questions about the WO 626 data.

Roche has directed discovery requests to Abbott regarding the underlying work summarized in WO 626. With its motion to stay, Abbott is trying to block Roche from obtaining discovery that will confirm that the WO 626 reference does not teach the limitations of the claims of the patents-in-suit (alone or in combination), as Abbott represented to the PTO. A stay at this juncture will prejudice Roche by blocking discovery of material information held by Abbott, and will potentially allow Abbott to subvert a validly issued patent.

Experience shows that a stay pending reexamination could last for years. The potential for delay for an indefinite time stands to substantially prejudice Roche. *Purechoice, Inc.,* 2007 WL 1189844 at *1 (noting that the potential delay for an indefinite period would likely prejudice patentee); *Biax Corp.*, 2007 WL 614187 at *2 (same); *Lexington Lasercomb I.P.A.G. v. GMR Prods., Inc.*, 442 F. Supp. 2d 1277, 1278 (S.D.Fla. 2006).

According to Abbott, the rules for reexamination show that "the PTO is sensitive to the urgency of a request related to patents presently in litigation." *See Abbott's Opening Brief*, p. 5, n.7. Yet, recent experience shows that the PTO is woefully slow in completing reexamination requests. In a similar Illinois case, Chief Judge James Holderman granted a stay pending reexamination filed at the outset of a case, and the lawsuit has now been

15

stayed for three years. This situation caused Judge Holderman to question the wisdom of granting the stay in the first place. (Ex. P at 6-7.)

Other courts are beginning to recognize this problem as well, noting that even though the reexamination provision itself provides that proceedings will be conducted with special dispatch, the average time has been at least a year and a half. *Akzenta Paneele + Profile GmbH v. Unilin Flooring N.C. LLC*, 464 F. Supp. 2d 481, 485 (D.Md. 2006); *Biax Corp.*, 2007 WL 614187 at *2 (concluding that the patent holder would be prejudiced because *ex parte* reexaminations take an average of 22.6 months to complete and the appellate process for review could take an additional 24 months); *In re Columbia Univ. Patent Litigation*, 330 F. Supp. 2d 12 at 16-17 (concluding that a stay would cause significant prejudice to the non-moving party since "[t]he average re-examination takes 21 months" and "the PTO will not cancel claims until after the time for appeal has expired and any appeals have terminated.").

If reexamination is granted and this case is stayed, Roche will be substantially and unduly prejudiced because Roche will be unable to enforce its patents for the duration of the lengthy administrative delay.  Abbott argues, "Roche has conceded that a stay is appropriate where the patent-in-suit involved in a reexamination proceeding." *See Abbott's Opening Brief*, p. 19.  Yet the case Abbott is referring to is factually very different from this case.  For instance, in the prior litigation, *both* parties filed reexamination requests, the patentee and Roche, and both parties agreed to the stay.  Here, only Abbott has filed reexamination requests and the parties do not agree that a stay is appropriate. Furthermore, Roche was the only Defendant in the other litigation, unlike here where there are multiple Defendants, raising many other defenses and counterclaims.  In addition,

the primary reference in the other litigation's reexamination request was one that had not

been considered in connection with the patent-in-suit, unlike here. Finally, the primary

reference in the other litigation taught an embodiment that contained each of the limitations

of virtually all of the claims. By contrast, here, Fig. 17 and Example 12 of the WO 626

reference relied upon by Abbott do not teach any test in whole blood, a predicate of each of

the asserted claims.

Abbott is therefore inappropriately attempting to claim that every time a

reexamination request is filed, a stay should be granted. That is simply not the case. The

particular circumstances of each case should be considered and evaluated. Indeed, Abbott

itself has argued that such a situation is unfair to the patentee when Abbott was on the other

side of the issue. *See e.g., Abbott Diabetes Care, Inc. v. Dexcom*, 2006 WL 2375035, *5-6

(D.Del. Aug. 16, 2006) (Sleet, J).

A stay would thus allow numerous Defendants to continue selling their infringing

products in direct competition with Roche's product. Such sales destroy market

opportunity, which rightfully belongs to Roche as the innovator in this area. Furthermore,

Nova's counterclaim, involving the same technology, would possibly proceed unabated,

substantially prejudicing Roche and causing substantial duplicative efforts.

### 3. The Stage Of The Litigation Does Not Counteract Other Considerations

This lawsuit is in its early stages. Such a fact traditionally tends to favor a stay

pending reexamination. This is not the case here, however. As noted, reexamination in

this case does not stand to simplify issues. Many issues will be unaffected by

reexamination even if granted. Moreover, Roche will be significantly prejudiced if the

Court stays this case pending what could be a lengthy delay while awaiting governmental

17

agency action by the PTO. As such, even if this factor generally favors Abbott's request, it is far overshadowed by the other two relevant factors.

Further, the case is in fact already moving forward. Before Abbott filed the instant Motion, the parties filed a joint Proposed Rule 16 Scheduling Order. D.I. 31. Defendants have also served their Answers and Counterclaims (or a motion to dismiss, in the case of Diagnostic Devices). In addition, Roche has served discovery requests in order to diligently move this case forward. On balance, the Court should permit the parties to proceed with this case, and deny Abbott's motion.

### B. Abbott's Motion To Stay Is Premature And Should Be Denied

At this juncture, the motion to stay is premature at best. The PTO has not made a decision regarding Abbott's reexamination requests. Contrary to Abbott's assertions, recent decisions have confirmed that stay orders are not appropriate before the PTO has ruled on requests for reexamination. *Dusa Pharm., Inc. v. River's Edge Pharm., LLC*, 2006 U.S. Dist. LEXIS 29852, *5 (D.NJ May 15, 2006); *Zilog, Inc. v. Quicklogic Corp.*, 2006 U.S. Dist. LEXIS 12844, *2 (N.D. Ca. March 6, 2006). In fact, such courts have denied motions for a stay pending reexamination as premature. *Id.*; *see also Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1424 (Fed. Cir. 1988).

The logic to reject such prematurity is especially compelling when, as here, the underlying reexamination request is based on prior art references and arguments that the PTO previously considered. Based on the prematurity alone, the Court should deny the Motion.

18

## CONCLUSION

Since Abbott's reexamination requests are based on prior art and arguments previously considered by the PTO, there is every reason to expect that Abbott's requests will be denied, or – even if granted – will not significantly alter the claims.

Moreover, reexamination does not stand to simplify issues for trial in this case. Defendants have raised many defenses and counterclaims that are not related to the reexamination requests. Delay of this case stands to unduly and substantially prejudice Roche.

That this case is relatively early in schedule does not outweigh the other factors, all of which counsel the Court to deny Abbott's motion.

Finally, at the very least, Abbott's motion is premature at this stage. Although Abbott has asked the PTO to reexamine the patents-in-suit, the PTO has yet to decide the petition.

For all of the foregoing reasons, Roche respectfully requests that this Court Deny Abbott's Motion to Stay Pending Reexamination of the Patents-In-Suit.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Daniel A. Boehnen
Grantland G. Drutchas
McDonnell Boehnen Hulbert & Berghoff LLP
300 South Wacker Drive
Chicago, IL 60606
(312) 913-0001


Dated:  January 25, 2008
844575

By: _____
     Philip A. Rovner (#3215)
     Hercules Plaza
     P.O. Box 951
     Wilmington, DE 19899-0951
     (302) 984-6000
     provner@potteranderson.com

*Attorney for Plaintiffs*
*Roche Diagnostics Operations, Inc. and*
*Corange International Limited*

19

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I, Philip A. Rovner, hereby certify that on January 25, 2008, the within document was filed with the Clerk of the Court using CM/ECF which will send notification of such filing(s) to the following; that the document was served on the following counsel as indicated; and that the document is available for viewing and downloading from CM/ECF.

**BY HAND DELIVERY AND  E-MAIL**

Frederick L. Cottrell, III, Esq.
Anne Shea Gaza, Esq.
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, DE  19801
cottrell@rlf.com
gaza@rlf.com

**BY E-MAIL**

Mary W. Bourke, Esq.
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 N. Orange Street
Wilmington, DE  19801
mbourke@cblh.com

**BY E-MAIL**

Steven J. Balick, Esq.
John G. Day, Esq.
Ashby & Geddes
500 Delaware Avenue
8th Floor
P.O. Box 1150
Wilmington, DE  19899
sbalick@ashby-geddes.com
jday@ashby-geddes.com

**BY E-MAIL**

John W. Shaw, Esq.
Jeffrey T. Castellano, Esq.
Young Conaway Stargatt & Taylor, LLP
1000 West Street, 17th Floor
Wilmington, DE  19801
jshaw@ycst.com
jcastellano@ycst.com

**BY E-MAIL**

Rodger D. Smith, Esq.
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899
rsmith@mnat.com

I hereby certify that on January 25, 2008 I have sent by E-mail the foregoing

document to the following non-registered participants:

Edward A. Mas, II, Esq.
Stephen F. Sherry, Esq.
Kirk Vander Leest, Esq.
James M. Hafertepe, Esq.
Merle S. Elliott, Esq.
McAndrews, Held & Malloy, Ltd.
500 West Madison Street
34th Floor
Chicago, IL  60661
emas@mcandrews-ip.com
ssherry@mcandrews-ip.com
kvanderleest@mcandrews-ip.com
jhafertepe@mcandrews-ip.com
melliott@mcandrews-ip.com

Wesley E. Overson, Esq.
Rachel Krevans, Esq.
Jason R. Bartlett, Esq.
Parisa Jorjani, Esq.
Daniel P. Muino, Esq.
Morrison & Foerster LLP
425 Market Street
San Francisco, CA 94105-2482
woverson@mofo.com
rkrevans@mofo.com
jasonbartlett@mofo.com
pjorjani@mofo.com
dmuino@mofo.com

Kenneth P. George, Esq.
Joseph M. Casino, Esq.
Amster, Rothstein & Ebenstein LLP
90 Park Avenue
New York, NY  10016
kgeorge@arelaw.com
jcasino@arelaw.com

Michael G. Adams, Esq.
Ashley L. Ellis, Esq.
Parker Poe Adams & Bernstein LLP
Three Wachovia Center, Suite 3000
401 South Tryon Street
Charlotte, NC 28202
mikeadams@parkerpoe.com
ashleyellis@parkerpoe.com

Bradford J. Badke, Esq.
Sona De, Esq.
Michael Kahn, Esq.
Ropes & Gray LLP
1211 Avenue of the Americas
New York, NY 10036-8704
Jim.badke@ropesgray.com
Sona.de@ropesgray.com
Michael.kahn@ropesgray.com

Philip A. Rovner (#3215)
Potter Anderson & Corroon LLP
Hercules Plaza
P.O. Box 951
Wilmington, Delaware 19899
(302) 984-6000
E-mail: provner@potteranderson.com

-2-