## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROCHE DIAGNOSTICS OPERATIONS, INC., and CORANGE INTERNATIONAL LIMITED, | ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 07-753-JJF |
| v. | ) ) ) | |
| ABBOTT DIABETES CARE, INCORPORATED and ABBOTT DIABETES CARE SALES CORPORATION, BAYER HEALTHCARE, LLC, DIAGNOSTICS DEVICES, INC., LIFESCAN, INCORPORATED, and NOVA BIOMEDICAL CORPORATION, | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF
## LIFESCAN INC.'S MOTION TO SEVER AND PARTIAL OPPOSITION
## TO ABBOTT'S MOTION TO STAY PENDING REEXAMINATION

Mary W. Bourke (#2356)
R. Eric Hutz (#2702)
Kristen Healey Cramer (#4512)
CONNOLLY BOVE LODGE & HUTZ LLP
1007 N. Orange Street
P.O. Box 2207
Wilmington, DE 19899
(302) 658-9141

*Attorneys for Defendant LifeScan, Inc.*

Dated: January 28, 2008

# Table of Contents

Page

I.    INTRODUCTION ................................................................................1

II.   STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS...............1

III.  SUMMARY OF ARGUMENT ...................................................................2

IV.   STATEMENT OF FACTS .......................................................................2

V.    ARGUMENT ......................................................................................5

      A.    LifeScan is Improperly Joined With The Other Five
            Defendants In This Action..............................................................5

      B.    LifeScan Should Be Severed From This Action..................................6

            1.    LifeScan Has Unique Defenses And
                  Will Be Prejudiced Absent Severance ....................................7

            2.    Nova Asserts Unique Defenses And
                  An Infringement Counterclaim ..............................................9

            3.    Bayer Asserts A Unique Defense ...........................................10

      C.    Severance Will Not Impact Judicial Economy ..................................10

      D.    Plaintiffs' "Substantial Rights" Will Not Be Prejudiced
            By Severance Of LifeScan............................................................11

      E.    LifeScan Opposes Abbott's Motion To Stay To The Extent It Pertains
            To Claims Between LifeScan And Plaintiffs.....................................12

VI.   CONCLUSION..................................................................................12

Table of Authorities

Cases

Page

*Androphy v. Smith & Nephew, Inc.*,
31 F. Supp. 2d 620 (N.D. Ill. 1998) ........................................................................5

*Lisle Corp. v. A.J. Mfg. Co.*,
398 F.3d 1306 (Fed. Cir. 2005)...............................................................................7

*Lucent Techs., Inc. v. Extreme Networks, Inc.*
*And Foundry Networks, Inc.*
Slip op., Civ. No. 03-509-JJF (D. Del. Feb. 6, 2004) .............................................6, 11

*Mesa Computer Utilities, Inc. v.*
*Western Union Computer Utilities, Inc.*,
67 F.R.D. 634 (D. Del. 1975) ..................................................................................5

*New Jersey Mach. Inc. v. Alford Indus.*,
21 U.S.P.Q. 2033 (D.N.J. 1991),
*aff'd* 983 F.2d 1087 (Fed. Cir. 1992) ......................................................................5

*Paine, Webber, Jackson & Curtis, Inc. v.*
*Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
564 F. Supp. 1358 (D. Del. 1983).............................................................................5

*Pergo, Inc. v. Alloc, Inc.*,
262 F. Supp. 122 (S.D.N.Y. 2003) ...........................................................................5

*Peters v. Active Mfg. Co.*,
129 U.S. 530 (1889).................................................................................................8

*Philips Elecs. N. Amer. Corp. v. Contec Corp.*,
220 F.R.D. 415 (D. Del. 2004) ..............................................................................5, 6

*Polaroid Corp. v. Eastman Kodak Co.*,
789 F.2d 1556 (Fed. Cir. 1986)................................................................................8

*Sabolsky v. Budzanoski*,
457 F.2d 1245 (3d Cir. 1972)...............................................................................6, 11

*Siemens Aktiengesellschaft v. Sonotone Corp.*,
370 F. Supp. 970 (N.D. Ill. 1973) ............................................................................5

Authorities

                                                                                        Page

37 CFR § 1.102(d) ...............................................................................................3

37 CFR § 1.17(h) ................................................................................................3

Fed. R. Civ. P. 20(a) ........................................................................................2, 5

Fed. R. Civ. P. 20(b) ...........................................................................................7

Fed. R. Civ. P. 21 ............................................................................................2, 7

Manual of Patent Examination and Procedure Section 708.02 [R-6]...........................................3

## I.    INTRODUCTION

Defendant/Counter-Plaintiff LifeScan Incorporated ("LifeScan") moves the Court pursuant to Federal Rules of Civil Procedure 20 and 21 for an order severing the claims and counterclaims between LifeScan and Roche Diagnostics Operations, Inc. ("Roche") and Corange International Limited ("Corange") (collectively "Plaintiffs") from the claims and counterclaims between Plaintiffs and the other Defendants in the above-captioned action.  Further, for the reasons set forth in its Motion to Sever, LifeScan opposes Abbott's Motion to Stay Pending Reexamination to the extent the stay pertains to claims pending between Plaintiffs and LifeScan.  LifeScan takes no position on Abbott's Motion for Stay as it pertains to Abbott and the other Defendants.

## II.    STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS

Plaintiffs filed a Complaint for Patent Infringement on or about November 21, 2007 against LifeScan and five of LifeScan's competitors, including 1) Abbott Diabetes Care, Inc. and Abbott Diabetes Care Sales Corp. ("ADC" and "ADCSC," collectively "Abbott"), 2) Bayer Healthcare, LLC ("Bayer"), 3) Diagnostic Devices, Inc. ("DDI"), and 4) Nova Biomedical Corp ("Nova").[1]  Plaintiffs contend that certain "electrochemical sensor" products made, used, sold and/or offered for sale by individual Defendants infringe two patents assigned to Roche. (D.I. 1.)

Defendants responded to the Complaint on January 11, 2008.  DDI moved to dismiss for lack of personal jurisdiction, while the five answering Defendants raised various defenses and/or counterclaims.

---

[1]    Defendant Sanvita, Inc., who represented to Plaintiffs that it is Defendant Nova's distributor, was voluntarily dismissed by Plaintiffs on January 4, 2008.  (D.I. 27.)

Abbott also filed a Motion to Stay Pending Reexamination on January 9, 2008 with a return date of February 8, 2008. (D.I. 36.) Roche opposed the Motion to Stay on January 25, 2008. (D.I. 56.) LifeScan takes no position on that Motion as to Abbott or the other Defendants. However, LifeScan does not want to delay resolution of the claims between Plaintiffs and LifeScan.

The initial Rule 16 scheduling conference set for January 11, 2008 was postponed until February 8, 2008. (D.I. 16, 26, 29.)

## III.   SUMMARY OF ARGUMENT

Plaintiffs' claims against LifeScan and LifeScan's counterclaims against Plaintiffs should be severed for discovery, pre-trial proceedings, and trial. LifeScan is improperly joined in this action under Federal Rule of Civil Procedure 20(a). The "same transaction and occurrence" prong is not met simply because each defendants' products are accused of infringement of the same patents where Plaintiffs have alleged no connection between LifeScan and the other Defendants. To cure the misjoinder, LifeScan should be severed under Federal Rule of Civil Procedure 21. The defenses, counterclaims, objectives among the various Defendants differ significantly, and severance is warranted to avoid prejudice to LifeScan. Severance will not impact judicial economy and Plaintiffs' "substantial rights" will not be prejudiced by severance. Finally, LifeScan opposes Abbott's Motion to Stay to the extent it pertains to claims between LifeScan and Plaintiffs, and severance will permit LifeScan to swiftly adjudicate its claims and defenses regardless of the Court's ruling on Abbott's request for a stay.

## IV.   STATEMENT OF FACTS

The Complaint accuses LifeScan and five of its direct competitors of patent infringement. Plaintiffs alleged that Defendants' "electrochemical sensor" products infringe U.S. Patent

Numbers 7,276,146 ("the 146 Patent") and 7,276,147 ("the 147 Patent") assigned to Roche (collectively "the Roche Patents"). (D.I. 1.) As to LifeScan, Plaintiffs allege that "certain electrochemical sensors . . . including those sold under the OneTouch® UltraSmart®, OneTouch® Ultra®, OneTouch® Ultra2®, and OneTouch® UltraMini™ trade names" infringe." (D.I. 1 ¶35.) The other Defendants do not manufacture or sell OneTouch® products.

Despite Plaintiffs' infringement allegation (*see* D.I. 1 at ¶¶23, 27, 31, 35, and 39), they do not allege that LifeScan is related to any of the other Defendants. To the contrary, LifeScan directly competes against the other Defendants in the field of blood glucose monitoring. LifeScan's business is blood glucose monitoring and its accused line of OneTouch® blood glucose monitors is its primary product line.

Moreover, Roche does not allege that the purported acts of infringement by the unrelated Defendant competitors are connected in any way, that the accused LifeScan products are the same as those of the other Defendants, or that LifeScan and any other Defendant are jointly or severally liable for infringement.

What Roche did allege long before filing the Complaint and during prosecution of the application issuing as the 147 Patent, was that LifeScan's OneTouch® Ultra System practiced the pending application claims. Under 37 C.F.R. § 1.102(d), an applicant may request that examination of its patent application be expedited by filing a petition (a Petition to Make Special) and paying a fee. *See* 37 C.F.R. §§ 1.102(d) and 1.17(h). As explained further in the Manual of Patent Examination and Procedure Section 708.02 [R-6], one basis for expedited examination is alleged infringement.

Roche's Petition to Make Special ("Petition") (Ex. A) and Statement in Support of the Petition to Make Special ("Statement") (Ex. B) were filed on March 5, 2003 and specifically alleged:

> The Petition to Make Special is based on the fact that the method instructed and used for the LifeScan OneTouch® Ultra System would infringe the claims of the subject application. On information and belief, the OneTouch® Ultra System was publicly introduced in early 2001, but no earlier than the beginning of the year 2001. The subject application claims a priority to a provisional application filed on October 4, 2001 [sic].[2] However, the applicants are submitting contemporaneously herewith a Rule 131 Declaration of Christopher D. Wilsey . . . establishing that the inventions claimed in the present application were made well before the prior art date under 35 U.S.C. 102(b) for the OneTouch® Ultra System.

*See* Ex. B, Statement ¶ 3. Indeed, LifeScan literature and products, including one from 1998, are cited as references on the faces of the Roche Patents. (D.I. 1 at Exs. A, B.)

In response to Plaintiffs' Complaint, the answering Defendants all plead affirmative defenses of non-infringement and invalidity of the Roche Patents, four of the five answering Defendants asserted corresponding counterclaims, and three of the five answering defendants plead improper joinder as a defense. (D.I. 40, 41, 43, 47). Bayer also asserted a license defense. (D.I. 41.) Nova also asserted counterclaims of infringement of Nova's U.S. Patent No. 6,258,229 ("the 229 patent"), breach of a 1999 confidentiality agreement between Nova and Hoffman-LaRoche, Ltd. ("HLR," an entity Nova alleges is related to Plaintiff Roche), misappropriation of trade secrets, unfair competition, and conversion. (D.I. 47.) Additionally, DDI moved to dismiss Plaintiffs' Complaint under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction (D.I. 44), and Abbott moved to stay the entire case pending reexamination of the

---

[2]    The provisional application was filed on November 16, 2001, not October 4, 2001 as stated in the Statement in Support of the Petition to Make Special.

Roche Patents (D.I. 36). In Plaintiffs' Opposition to Abbott's Motion to Stay, Plaintiffs noted

the "myriad of defenses and counterclaims" plead by the various Defenses. (D.I. 56 at 2, 3, 16.)

## V.    ARGUMENT

### A.    LifeScan is Improperly Joined with the Other Five Defendants in This Action

Defendants are not properly joined in this action. Under Federal Rule of Civil Procedure

20(a), defendants may be joined in a single action if both prongs of a two-part test are met: 1) "if

there is asserted against them jointly, severally, or in the alternative, any right to relief in respect

of or arising out of the same transaction, occurrence, or series of transactions or occurrences"

and 2) "if any question of law or fact common to all defendants will arise in the action." Fed. R.

Civ. P. 20(a). *See Paine, Webber, Jackson & Curtis, Inc. v. Merrill Lynch, Pierce, Fenner &*

*Smith, Inc.*, 564 F. Supp. 1358, 1370 (D. Del. 1983) (citing *Mesa Computer Utilities, Inc. v.*

*Western Union Computer Utilities, Inc.*, 67 F.R.D. 634, 636 (D. Del. 1975)). The decision to

grant a motion to sever under Rule 20 is discretionary. *Philips Elecs. N. Amer. Corp. v. Contec*

*Corp.*, 220 F.R.D. 415, 418 (D. Del. 2004).

This Court has held that "[a]llegations of infringement against two unrelated parties

based on different acts do not arise from the same transaction," and other district courts have

agreed. *Paine,* 564 F. Supp. at 1370 (citing *Siemens Aktiengesellschaft v. Sonotone Corp.*, 370

F. Supp. 970 (N.D. Ill. 1973)); *see also Pergo, Inc. v. Alloc, Inc.*, 262 F. Supp. 2d 122, 128

(S.D.N.Y. 2003) (holding that joinder was improper where the only relationship among the

accused defendants was that they might have infringed the same patent owned by plaintiff);

*Androphy v. Smith & Nephew, Inc.* 31 F. Supp. 2d 620, 623 (N.D. Ill. 1998) (finding that claims

do not arise from a common transaction or occurrence where accused infringers are separate,

independent companies with different products in direct competition with each other); *New*

5

*Jersey Mach. Inc. v. Alford Indus.*, 21 U.S.P.Q. 2033, 2034-35 (D.N.J. 1991) ("Infringement of the same patent by different machines and parties does not constitute the same transaction or occurrence to justify joinder of the new defendants."), *aff'd*, 983 F.2d 1087 (Fed. Cir. 1992). Where the only common connection between defendants is that they may have infringed the same patents, joinder of unrelated parties is improper. *Philips*, 220 F.R.D. at 418.

Roche cannot meet the first prong. LifeScan is a separate company from each of the other Defendants. LifeScan manufactures and sells its OneTouch® line of glucose meters both independently of and in direct competition with each of the other Defendants. Plaintiffs have not alleged that LifeScan is jointly or severally liable with any other Defendant, or that LifeScan is in any way related to or affiliated with any other Defendant. There is no allegation that LifeScan's allegedly infringing products or methods of use are connected to, related to, or the same as any of the other Defendants'. The "same transaction and occurrence" prong is not met with respect to LifeScan and the other Defendants in this action simply because each of Defendants' products are accused of infringement of the same two patents owned by Plaintiffs.

**B.    LifeScan Should be Severed from this Action**

"The proper remedy in case of misjoinder is to grant severance or dismissal to the improper party if it will not prejudice any substantial right." *Sabolsky v. Budzanoski*, 457 F.2d 1245, 1249 (3d Cir. 1972). Given the misjoinder, pursuant to Federal Rule of Civil Procedure 21, the Court should exercise its discretion to sever LifeScan from this action and allow LifeScan to proceed through discovery, pre-trial proceedings and trial in a separate action. *See Lucent Techs., Inc. v. Extreme Networks, Inc. and Foundry Networks, Inc.*, slip op., Civ. No. 03-509-JJF (D. Del. Feb. 6, 2004) (granting Foundry's motion to sever) (attached hereto as Ex. C)

Under Rule 21, "[p]arties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just. Any

6

claim against a party may be severed and proceeded with separately." Fed. R. Civ. P. 21.

Moreover, under Rule 20(b) on separate trials, "The court may make such orders as will prevent

a party from being embarrassed, delayed, or put to expense by the inclusion of a party against

whom the party asserts no claim and who asserts no claim against the party, and may order

separate trials or make other orders to prevent delay or prejudice." Fed. R. Civ. P. 20(b).

The defenses, counterclaims, and objectives among the various Defendants differ

significantly in this action, as Plaintiffs have acknowledged. *See* D.I. 56 at 2, 3, 16. Severance

of LifeScan is warranted to avoid prejudice to it. LifeScan's objective is to move forward with it

defenses and counterclaims. By contrast, Abbott seeks to have the entire case stayed pending

reexamination of the Roche Patents. Moreover, LifeScan and at least two other Defendants have

unique defenses or counterclaims with respect to the other Defendants. To address Plaintiffs'

infringement allegations against five different competitors and their defenses and counterclaims

in a single action ignores the unique nature of each Defendant's products, as well as each

Defendant's unique situation relative to Plaintiffs.

### 1. LifeScan Has Unique Defenses And Will Be Prejudiced Absent Severance

As Roche's own prosecution history demonstrates, LifeScan was a pioneer in the glucose

monitoring field at issue in this action. When Roche first filed the patent application that lead to

the 147 Patent, it represented to the PTO that LifeScan's OneTouch[®] Ultra System infringed the

pending claims to accelerate prosecution. *See* Ex. A & B. Roche also represented that

LifeScan's product was publicly introduced, "on information and belief, . . . in early 2001,"

which predated Roche's earliest filing date of November 21, 2001. Accordingly, Roche filed an

*ex parte* Rule 131 Affidavit to attempt to antedate LifeScan's OneTouch® Ultra System.[3]
Ultimately the PTO issued a Notice of Allowability. *See* Ex. D.

LifeScan has unique defenses under Section 102 and 103 that are not common to all the
Defendants. Roche asserts that LifeScan's products infringe the Roche Patents (which LifeScan
disputes). However, accepting Roche's allegations as true, if LifeScan's products were invented
prior to Roche's invention date, then Roche's Patents are invalid by Roche's own admission.
*Peters v. Active Mfg. Co.*, 129 U.S. 530, 537 (1889) ("That which infringes if later anticipates if
earlier."); *see also Lisle Corp. v. A.J. Mfg. Co.*, 398 F.3d 1306, 1315 (Fed. Cir. 2005); *Polaroid
Corp. v. Eastman Kodak Co.*, 789 F.2d 1556, 1573 (Fed. Cir. 1986). Notably, none of these facts
and none of LifeScan's unique defenses relating to its invention are impacted by Abbott's
reexamination request.

To prove that its accused OneTouch® products do not infringe the Roche Patents and/or
the Roche Patents are invalid, LifeScan will have to rely on highly confidential research and
development, regulatory, technical, business, financial, and competitive intelligence evidence
that is the lifeblood of its business. Disclosure of this information to its competitors and their
intellectual property attorneys could significantly damage LifeScan's business. Given the
litigiousness of the companies in the glucose monitoring field[4] and the competitive relationship

---

[3]    Also telling is that LifeScan literature and products are cited as related references
numerous times on the face of the Roche Patents, including a LifeScan technical publication
from 1998. *See* D.I. 1 at Exs. A, B.

[4]    For example, parties to the present action are involved in numerous patent infringement
suits involving glucose monitoring technologies, including but not limited to: *Abbott Diabetes
Care Inc. v. DexCom Inc.*, C.A. No. 06-514-GMS (D. Del.); *Abbott Labs. and Abbott Diabetes
Care v. Agamatrix*, C.A. No. 06-7268 (N.D. Cal.); *Therasense, Inc. (now Abbott Diabetes Care
Inc.) v. Beckton Dickinson and Co.*, C.A. No. 04-2123 (N.D. Cal.); *Therasense, Inc. (now Abbott
Diabetes Care Inc.) v. Nova Biomedical Corp.*, C.A. No. 04-3732 (N.D. Cal.); *Abbott Diabetes
Care, Inc. v Roche Diagnostics Corp.*, C.A. No. 05-3117 (N.D. Cal.); *Abbott Labs. v. LifeScan,*

among the Defendants, LifeScan would be prejudiced if it had to proceed through discovery and trial with the other Defendants.

Although a protective order regarding highly confidential information can be put in place, the accused OneTouch® product line is LifeScan's primary line, and any compromise, however inadvertent, of its confidential information to its competitors could prove disastrous to LifeScan's ability to compete in the marketplace. For example, LifeScan's highly confidential information could be improperly used by attorneys (in-house or outside) involved in patent prosecution, lifecycle management, or business strategy for the co-Defendant competitors. There will be no way to "put the cat back in the bag," and such an injury cannot be remedied after-the-fact by enforcement of a Protective Order.

## 2. Nova Asserts Unique Defenses And An Infringement Counterclaim

Nova asserts numerous unique defenses based on allegations involving Nova's dealings with Roche, including breach of a 1999 confidentiality agreement between Nova and Hoffman-LaRoche. Ltd.,[5] misappropriation of trade secrets, unfair competition, and conversion. (D.I. 47.) Nova also counterclaims for infringement of Nova's 229 patent. LifeScan and the other Defendants have no involvement in these allegations. Addressing Nova's infringement and commercial counterclaims in the single action filed by Plaintiffs potentially prejudices Nova as well as the other Defendants.

---

*Inc. et al.,* C.A. No. 1998-12053 (D. Mass*.); Beckton Dickinson and Co. v. Therasense (now Abbott Diabetes Care Inc.),* C.A. No. 04-3327 (C.D. Cal.); *LifeScan, Inc. v. Roche Diagnostics Corp.,* C.A. No. 04-3653 (N.D. Cal.); *LifeScan, Inc. v Polymer Techs. Int'l,* C.A. No. 94-672 (W.D. Wash.); *LifeScan, Inc. v. Home Diagnostics Inc. et al.,* C.A. No. 96-597 (D. Del.).

[5]    Nova alleges that Roche is a subsidiary of or otherwise related to Hoffman-LaRoche, Ltd. (D.I. 47 at Counterclaim ¶7.)

For example, precious deposition time of Plaintiffs' witnesses will likely be split in some manner among the Defendants, and no one but Nova has an interest in the Nova-Hoffman-LaRoche agreement. Plaintiffs' proposed scheduling order (D.I. 31) demonstrates that it is attempting to limit the number of interrogatories, requests for admission, and depositions that Defendants <u>as a group</u> are allowed. Even if the Court rejects Plaintiffs' transparent attempt to hinder discovery, with multiple Defendants raising unique issues, the ability to conduct discovery by each of the other Defendants is necessarily prejudiced due to limitations that will be imposed under the Scheduling Order. These limitations are the direct result of Plaintiffs' improper joinder. Moreover, Nova's infringement counterclaims further complicate the action for the same reasons, and the complexity will only multiply if other Defendants assert patent infringement counterclaims against Plaintiffs.

### 3. <u>Bayer Asserts A Unique Defense</u>

Bayer also appears to have unique defenses relative to LifeScan and the other Defendants. Bayer alleges that Plaintiffs have failed to state a claim on which relief can be granted because Bayer's accused products "are covered under a June 3, 2003 Settlement and License Agreement" that includes a dispute resolution process. (D.I. 41 at ¶47.) If Bayer and Plaintiffs have to resolve the issue through ADR, Bayer would no longer be a party to the action. Even if Plaintiffs disagree with Bayer's assertion and Bayer remains in the case, LifeScan and the other Defendants are not involved in the settlement dispute between Bayer and Plaintiffs. Additionally, Bayer likely has concerns about compromising confidentiality with respect to the settlement agreement in a lawsuit involving its competitors. Thus, similar concerns of prejudice and confidentiality discussed as to LifeScan and Nova are present if Bayer remains in the case.

**C.    Severance Will Not Impact Judicial Economy**

Abbott has moved to stay the litigation pending reexamination and DDI has moved to dismiss Plaintiffs' Complaint under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction. (D.I. 40, 44.) If DDI is dismissed, Abbott is stayed, and Bayer is dismissed or severed to pursue ADR, the remaining Defendants are LifeScan and Nova.  As discussed above, severance of LifeScan from Nova is warranted first for misjoinder, and second to avoid prejudice based on the uncommon defenses and counterclaims.  Such a scenario would result in only two cases before the Court, would not result in prejudice to any party, and would comport with Rule 20(a). *See, e.g.*, *Lucent*, slip op., Civ. No. 03-509-JJF (D. Del. Feb. 6, 2004) (Ex. C).[6]

**D.    Plaintiffs' "Substantial Rights" Will Not Be Prejudiced By Severance of LifeScan**

Severance of LifeScan, meanwhile, would not prejudice any substantial right of Plaintiffs. *See Sabolsky*, 457 F.2d at 1249.  The same issues that would have been presented as to Plaintiffs and Lifescan in this action will be addressed in a separate action against LifeScan. Plaintiffs will be able to proceed with their claims against LifeScan for LifeScan's alleged acts of infringement.  Document production, written discovery and expert discovery could progress between LifeScan and Plaintiffs as it would have otherwise, except the confidentiality and prejudice issues that concern LifeScan are not present.

Plaintiffs elected to sue all five defendants at the same time.  Thus they can not claim prejudice in having to proceed in separate suits.  Whatever efficiency is gained by forcing misjoined, competitor Defendants to litigate in one action is outweighed by the prejudice to Defendants in terms of the complexity of the case, time and money spent, the ability to conduct discovery, and the potential compromise of confidential information and competition in the

---

[6]    LifeScan would agree to a joint *Markman* hearing.

marketplace. Lifescan's desire to proceed with the case should not be hampered by being joined improperly with other parties in competition with Lifescan, all having differing defenses, counterclaims and/or objectives.

**E.** **LifeScan Opposes Abbott's Motion To Stay To The Extent It Pertains To Claims Between LifeScan And Plaintiffs**

LifeScan opposes a stay of any claims, defenses, and counterclaims between Plaintiffs and LifeScan as prejudicial to LifeScan for the reasons stated above. A stay would result in a cloud over LifeScan's main product line for two, three, or more years pending reexamination, resumption of the case, and any appeals. LifeScan takes no position, however, on Abbott's request for a stay as to Abbott or the other Defendants.

## VI.    CONCLUSION

For the reasons set forth above, and in view of a misjoinder defense plead by three Defendants, LifeScan respectfully requests that the Court grant its Motion to Sever Plaintiffs' claims against LifeScan and LifeScan's counterclaims against Plaintiffs for discovery, pre-trial proceedings, and trial, and deny-in-part Abbott's Motion to Stay Pending Reexamination as it pertains to claims pending between Plaintiffs and LifeScan.

CONNOLLY BOVE LODGE & HUTZ LLP

/s/ Mary W. Bourke
Mary W. Bourke (#2356)
R. Eric Hutz (#2702)
Kristen Healey Cramer (#4512)
1007 N. Orange Street
P.O. Box 2207
Wilmington, DE 19899
(302) 658-6305
mbourke@cblh.com

*Attorneys for Defendant LifeScan, Inc.*

Dated: January 28, 2008

584723

12

**CERTIFICATE OF SERVICE**

I, Mary W. Bourke, Esquire, hereby certify that on January 28, 2008, I

caused to be served by electronic service the foregoing document and electronically filed

the same with the Clerk of the Court using CM/ECF, which will send notification that

such filing is available for viewing and downloading to the following counsel of record:

Philip A. Rovner
Potter Anderson & Corroon, LLP
1313 N. Market St.
Hercules Plaza, 6th Flr.
P.O. Box 951
Wilmington, DE 19899-0951
*Attorneys for Plaintiffs Roche Diagnostic
Operations, Inc. and Corange
International Limited*

Daniel A. Boehnen
Grantland G. Drutchas
Gary E. Hood
Nicole Keenan
Paula S. Fritsch
Sherri L. Oslick
Jeffrey P. Armstrong
McDonnell Boehnen Hulbert &
Berghoff LLP
300 South Wacker Drive
Chicago, IL 60606
*Attorneys for Plaintiffs Roche
Diagnostic Operations, Inc. and
Corange International Limited*

John W. Shaw
Jeffrey Thomas Castellano
Young, Conaway, Stargatt & Taylor
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391
*Attorneys for Defendant Bayer
Healthcare, LLC*

Rodger Dallery Smith, II
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
*Attorneys for Defendant Nova
Biomedical Corporation*

Frederick L. Cottrell, III
Anne Shea Gaza
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE 19899
*Attorneys for Defendants Abbott Diabetes
Care Inc. and Abbott Diabetes Care
Sales Corporation.*

Steven J. Balick
John G. Day
Lauren E. Maguire
Ashby & Geddes
500 Delaware Avenue
P.O. Box 1150
Wilmington, DE 19899
*Attorneys for Defendant Diagnostic
Devices Inc.*

Wesley E. Overson
Rachel Krevans
Jason R. Bartlett
Parisa Jorjani
Daniel P. Muino
Morrisson & Foerster LLP
425 Market Street
San Francisco, CA 94105-2482
*Attorneys for Defendant Bayer
Healthcare, LLC*

Kenneth P. George
Joseph M. Casino
Amster Rothstein & Ebenstein LLP
90 Park Avenue
New York, NY 10016
*Attorneys for Defendant Bayer
Healthcare, LLC*

I further certify that on January 28, 2008, I caused a true and correct copy
of the foregoing document to be served by e-mail to the following non-registered
participants:

Kirk A. Vander Leest
Edward A. Mas II
Stephen F. Sherry
James M. Hafertepe
Merle S. Elliott
McAndrews, Held & Malloy, Ltd.
500 West Madison Street, Suite 3400
Chicago, IL 60661
*Attorneys for Defendants Abbott Diabetes
Care Inc. and Abbott Diabetes Care
Sales Corporation*

Ashley L. Ellis
Michael G. Adams
Parker Poe Adams & Bernstein LLP
Three Wachovia Center, Suite 3000
401 South Tryon Street
Charlotte, NC 28202
*Attorneys for Defendant Diagnostic
Devices Inc.*

Bradford J. Badke
Sona De
Michael Kahn
Ropes & Gray LLP
1211 Avenue of the Americas
New York, NY 10036-8704
*Attorneys for Defendant Nova
Biomedical Corporation*

Nancy Tinsley
Roche Diagnostics
9115 Hague Road
Indianapolis, IN 46250
*Attorney for Plaintiff Roche Diagnostics
Operations, Inc. and Corange
International Limited*

CONNOLLY BOVE LODGE & HUTZ LLP

/s/ Mary W. Bourke
Mary W. Bourke (#2356)
R. Eric Hutz (#2702)
Kristen Healey Cramer (#4512)
The Nemours Building
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899-1347

*Attorneys for Defendant LifeScan Incorporated*

582887

**EXHIBIT A**




#2

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

<table>
<tr><td>

In re patent application of:   )<br>
   )<br>
Christopher D. Wilsey   )<br>
   )<br>
Serial No. (unknown)   )<br>
   )<br>
Filed March 5, 2003   )<br>
   )<br>
METHOD FOR DETERMINING THE  )<br>
CONCENTRATION OF AN ANALYTE )<br>
IN A LIQUID SAMPLE USING SMALL )<br>
VOLUME SAMPLES AND FAST TEST )<br>
TIMES   )

</td><td>

"Express Mail" label number EV 232972379 US<br>
Date of Deposit:  March 5, 2003.<br>
<br>
I hereby certify that this paper or fee is being deposited with the United States Postal Service "Express Mail Post Office to Addressee" service under 37 CFR § 1.10 on the date indicated above and is addressed to the Assistant Commissioner for Trademarks, 2900 Crystal Dr., Arlington, Virginia 22202-3513.<br>
<br>
_Gail mercer_<br>
Signature of Person Mailing Correspondence

</td></tr>
</table>



### PETITION TO MAKE SPECIAL
### UNDER 37 C.F.R. §1.102(d)

Hon. Commissioner for Patents
Washington, D.C.  20231

Dear Sir:

     Applicant hereby submits this Petition to Make Special Under 37 C.F.R. §1.102(d) to

advance the examination of the above-captioned application.  The statutory fee pursuant to 37

C.F.R. §1.17(h) is submitted concurrent with this Petition.  Please charge any other fees that may

be due to Deposit Account No. 23-3030, but do not include the payment of any issue fees that are

or may become due.

     In support of this Petition, Applicant, through his undersigned counsel, Thomas Q.

Henry, submits the following:

     1.    The above-captioned application is directed to a single invention, namely a method

for determining the concentration of an analyte in a liquid sample in a short time period and using a

03/11/2003 HMARZI1  00000026 10382322
02 FC:1460                          130.00 OP

Page 1



test sensor having a small volume.  Alternatively, if the Office determines that all of the claims presented are not directed to a single invention, the Applicant will make an election without traverse.

2.    There is an infringing method actually in use in connection with the product known as the OneTouch® Ultra™ System, marketed commercially by Lifescan, Inc. of Milpitas, CA.  This method is detailed in the instructional literature for the use of the OneTouch® Ultra™ System, including the OneTouch® Ultra™ Meter and the OneTouch® Ultra™ Test Strips, and the method further is inherent to such products.

3.    A rigid comparison of the allegedly infringing method with the claims of the above-captioned application has been made and, in the opinion of the undersigned, at least some of the claims are unquestionably infringed by the performance of the method.  Further, in the opinion of the undersigned, all of the claims are infringed by performance of the method.

4.    In further support of this Petition, a Statement in Support of the Petition to Make Special is submitted herewith, providing additional information and conclusions detailing the infringement by the identified method associated with the OneTouch® Ultra™ System.

5.    The undersigned has a good knowledge of the pertinent prior art, and has caused to be made a careful and thorough preexamination search of the prior art.  A search was conducted in the Public Search Facilities maintained by the United States Patent and Trademark Office in Crystal City, VA of the following classes and subclasses: class 204, subclasses 228.6, 403, 403.1, 403.11, 403.12, 403.13, 403.14, and 412; class 205, subclasses 775, 777.5, 782, 787, and 792; class 422, subclasses 56, 57, 58; and class 600, subclasses 345, and 347.

6.    An Information Disclosure Statement, Citation listing, and copies of references listed in the Citation are submitted herewith.  Further, the Information Disclosure Statement includes a copy and a detailed discussion of each of the cited references deemed most closely

PETITION TO MAKE SPECIAL
BMID-9968C-US:7404-473:#190245

related to the subject matter encompassed by the claims, pointing out with the particularity required by 37 CFR §1.111(b) and (c) how the claimed subject matter is patentable over the cited references.

7.     The Applicant agrees to the special examination procedure detailed under the heading "Accelerated Examination" in MPEP §708.02.

8.     The undersigned welcomes a telephonic interview with the Examiner regarding this Petition, if such an interview can clarify any outstanding issues.

Accordingly, the Applicant respectfully requests that the Commissioner, under his authority granted in 37 CFR §1.102, grant this Petition to Make Special, and that the subject application undergo accelerated examination.

Respectfully submitted,

By: _____
Thomas Q. Henry, Reg. No. 28,309
Woodard, Emhardt, Naughton
 Moriarty & McNett LLP
Bank One Center/Tower
111 Monument Circle, Suite 3700
Indianapolis, IN  46204-5137
(317) 634-3456

Page 3

**EXHIBIT B**

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | |
|---|---|---|
| In re patent application of: | ) | Before the Examiner |
| | ) | |
| Christopher D. Wilsey | ) | |
| | ) | |
| Serial No. (unknown) | ) | |
| | ) | |
| Filed March 5, 2003 | ) | |
| | ) | |
| METHOD FOR DETERMINING THE | ) | |
| CONCENTRATION OF AN ANALYTE | ) | |
| IN A LIQUID SAMPLE USING SMALL | ) | |
| VOLUME SAMPLES AND FAST TEST | ) | |
| TIMES | ) | March 5, 2003 |

## STATEMENT IN SUPPORT OF THE PETITION TO MAKE SPECIAL

Hon. Commissioner for Patents
Washington, D.C. 20231

Dear Sir:

### Preliminary Statements

1.    This Statement is submitted in support of the accompanying Petition to Make Special in the above-identified patent application.

2.    I am familiar with glucose testing systems and methods in general, and I am particularly familiar with the use of electrochemical glucose test strips.  I have personally examined the equipment and materials comprising the OneTouch® Ultra™ System marketed commercially by Lifescan, Inc. of Milpitas, CA ("Lifescan"), including those materials represented by Exhibits A-D, attached hereto.  I base the following statements and conclusions on all of the foregoing.

3.    The Petition to Make Special is based on the fact that the method instructed and used for the Lifescan OneTouch® Ultra™ System would infringe the claims of the subject

application. On information and belief, the OneTouch® Ultra™ System was publicly introduced

in early 2001, but no earlier than the beginning of the year 2001. The subject application claims

priority to a provisional application filed on October 4, 2001. However, the applicants are

submitting contemporaneously herewith a Rule 131 Declaration of Christopher D. Wilsey, a

copy of which is attached hereto as Exhibit E, establishing that the inventions claimed in the

present application were made well before the prior art date under 35 U.S.C. §102(b) for the

OneTouch® Ultra™ System.

Information Published by Lifescan Regarding the
OneTouch® Ultra™ Blood Glucose Monitoring System

4.    Attached hereto are the following exhibits obtained as indicated:

    A. Photocopies of the front and back portions of the packaging for the
commercial product currently marketed by Lifescan as the
"OneTouch® Ultra™ Blood Glucose Monitoring System".

    B. A copy of the package insert, entitled "OneTouch® Ultra Test Strips",
from the commercial product of Lifescan represented by Exhibit A.

    C. A printout of the Owner's Booklet entitled "OneTouch® Ultra™
Blood Glucose Monitoring System - The Comfort of Control", printed
from http://www.lifescan.com/pdf/ultra_ob.pdf;

    D. A printout of the document entitled "Quick Start Guide" for the
OneTouch® Ultra™ Blood Glucose Monitoring System, printed from
http://www.lifescan.com/pdf/ultra_quick_start.pdf.

5.    Exhibits A and B are true, accurate and complete copies of the identified

packaging and package insert materials.

6.    Exhibits C and D are true, accurate and complete printouts of the materials

contained at the indicated web addresses.

General Description of the
OneTouch® Ultra™ Blood Glucose Monitoring System

7.    The OneTouch® Ultra™ System is identified in the Lifescan literature as a blood glucose monitoring system comprising the OneTouch® Ultra™ Meter, the OneTouch® Ultra™ Test Strips, and associated equipment and materials. These products are used in accordance with an instructed method for analyzing a user's blood for glucose concentration.

8.    The OneTouch® Ultra™ Test Strip (hereafter the "Strip") comprises, *inter alia*, a flat strip including a capillary entry port at one end and electrode contacts at the opposite end. The capillary entry port leads to a sample receiving cavity which is filled by the user's blood upon capillary action drawing the blood in from the entry port. The electrode "Contact Bars" provide electrical communication with working and counter electrodes present in the sample receiving cavity, and visible through the "Confirmation Window". See item "2" in Exhibit D. A reagent is received as a layer on the electrodes in the sample receiving cavity, the reagent including glucose oxidase, a mediator, and other ingredients. See "Reagent Composition" in Exhibit B (p. 2). The reagent is selected to produce an electrical current when mixed with glucose in blood; the electrical current is measured by the OneTouch® Ultra™ Meter (hereafter the "Meter") and is indicative of the amount of glucose in the blood sample. See, "Test Principle" in Exhibit B (p. 2).

9.    The OneTouch® Ultra™ System (hereafter the "System") literature describes the method (hereafter the "Method") by which the System is to be used. Moreover, the Strips are designed specifically for the instructed Method.

10.    The Method uses the System to provide the determination of the concentration of glucose in a blood sample. A Strip is inserted into the Meter to provide contact of the Meter test circuitry with the strip electrodes. Each Strip constitutes a test sensor having a small sample receiving cavity that is filled by drawing in blood from as little as a 1 µl sample. See Exhibit C,

p. 56. The liquid sample is admitted to the sample receiving cavity by contacting the entry port with the sample and allowing the blood to be drawn by capillary action into the sample receiving cavity. See Exhibit C, pp. 27-28.

11.    A resulting current at the working electrode is used by the OneTouch® Ultra™ Meter to determine the glucose concentration in the sample. On information and belief, and in accordance with conventional electrochemical test strip methodology, a potential is applied across the working and counter electrodes to achieve, in combination with the enzyme/mediator system, a suitable current for measurement at the working electrode. See "Test Principle" in Exhibit B (p. 2). The Meter determines the placement of a fluid sample onto the Strip, and starts a "countdown" that confirms that the determined glucose concentration is obtained and displayed in 5 seconds after the sample placement. See Exhibit C, pp. 29 and 56.

<u>Further Description of the Ultra System Based on Analysis</u>

14.    The undersigned has made a rigid comparison of the claims in the above-identified patent application and has determined that at least some of the claims are unquestionably infringed by the performance of the method associated with and instructed for use of the OneTouch® Ultra™ System. Attached hereto as Exhibit F is a Claim Chart comparing the claims to the method of the OneTouch® Ultra™ System confirming this conclusion and the bases therefor.

Date: _March 5, 2003_     By: _____

Respectfully submitted,

Thomas Q. Henry, Reg. No. 28,309
Woodard, Emhardt, Naughton
  Moriarty & McNett LLP
Bank One Center/Tower
111 Monument Circle, Suite 3700
Indianapolis, IN 46204-5137
(317) 634-3456

#190962         4

**EXHIBIT C**



IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

LUCENT TECHNOLOGIES, INC.,      :
                                :
         Plaintiff,             :
                                :    Civil Action No. 03-508-JJF
                                :
    v.                          :
                                :
EXTREME NETWORKS, INC. and,     :
FOUNDRY NETWORKS, INC.,         :
                                :
         Defendants.            :

## MEMORANDUM ORDER

Presently before the Court is the Motion to Sever for
Improper Joinder (D.I. 26-1) of Foundry Networks, Inc.
("Foundry").  For the reasons discussed, the Court will grant the
motion.

On May 27, 2003, Lucent Technologies, Inc. ("Lucent") filed
a lawsuit asserting that certain of its patents were being
infringed by Foundry and Extreme Networks, Inc. ("Extreme").
Defendants each filed an answer on July 16, 2003.  Foundry
contends that its alleged infringement does not arise out of the
same transaction, occurrence, or series of transactions or
occurrences as Extreme's alleged infringement.  Foundry asserts
that, therefore, its joinder with Extreme in the instant lawsuit
was improper.  Foundry is concerned about the effects continued
joinder may have in forcing the disclosure of confidential
information.

Extreme contends that it is premature to consider severance. Extreme contends that the case is presently undeveloped and commonality between the defendants is unclear.   Extreme argues that, as the case develops, the issues to be litigated and the parties litigating them may change.   Extreme contends that waiting to sever the case will be the more efficient course of action, but does not oppose severance so long as it is allowed a complete and singular trial.

Lucent contends that this case should not be severed. Lucent contends that under the liberal standard of Federal Rule of Civil Procedure 20 ("Rule 20"), joinder was not improper. Further, Lucent contends that even if joinder was improper, the Court should consolidate the case under Federal Rule of Civil Procedure 42 ("Rule 42") and render the motion to sever moot.

Joinder under Rule 20 is appropriate if the relief sought arises "out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all []persons will arise in the action." FED. R. CIV. P. 20.  Under Rule 42, "[w]hen actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions" and "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to

2

expedition and economy, [the court] may order a separate trial."
FED. R. CIV. P. 20. Whether to grant or deny severance is left to
the discretion of the trial judge. See U.S. v. Donsky, 825 F.2d
746, 754 (3d Cir. 1987) (citing United States v. Boyd, 595 F.2d
120, 125 (3d Cir.1978).

The Court concludes that Lucent has not alleged facts which
make joinder in the instant action appropriate.

NOW THEREFORE, IT IS HEREBY ORDERED this 6 day of February
2004, that Foundry's Motion to Sever for Improper Joinder (D.I.
26-1) is GRANTED. The Court will consider an application for
consolidated discovery if the parties agree.

Joseph J Farnan Jr.
UNITED STATES DISTRICT JUDGE

3

## **EXHIBIT D**

| *Notice of Allowability* | Application No. | Applicant(s) |
|---|---|---|
| | 10/382,322 | WILSEY, CHRISTOPHER D. |
| | Examiner | Art Unit |
| | ALEX NOGUEROLA | 1753 |

**-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--**

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☒ This communication is responsive to _RCE of 3/23/2007_.

2. ☒ The allowed claim(s) is/are _37-55 and 94-143_.

3. ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
     a) ☐ All   b) ☐ Some*   c) ☐ None   of the:
        1. ☐ Certified copies of the priority documents have been received.
        2. ☐ Certified copies of the priority documents have been received in Application No. _____ .
        3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the
            International Bureau (PCT Rule 17.2(a)).
    * Certified copies not received: _____ .

Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application. **THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

4. ☐ A SUBSTITUTE OATH OR DECLARATION must be submitted. Note the attached EXAMINER'S AMENDMENT or NOTICE OF INFORMAL PATENT APPLICATION (PTO-152) which gives reason(s) why the oath or declaration is deficient.

5. ☐ CORRECTED DRAWINGS ( as "replacement sheets") must be submitted.
    (a) ☐ including changes required by the Notice of Draftsperson's Patent Drawing Review ( PTO-948) attached
        1) ☐ hereto or 2) ☐ to Paper No./Mail Date _____ .
    (b) ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of
        Paper No./Mail Date _____ .
    **Identifying indicia such as the application number (see 37 CFR 1.84(c) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

6. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**
1. ☐ Notice of References Cited (PTO-892)
2. ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)
3. ☒ Information Disclosure Statements (PTO/SB/08),
     Paper No./Mail Date _3/23/2007_
4. ☐ Examiner's Comment Regarding Requirement for Deposit
     of Biological Material

5. ☐ Notice of Informal Patent Application
6. ☐ Interview Summary (PTO-413),
     Paper No./Mail Date _____ .
7. ☒ Examiner's Amendment/Comment
8. ☒ Examiner's Statement of Reasons for Allowance
9. ☒ Other _See Continuation Sheet_.

**Continuation Sheet (PTOL-37)**                                          **Application No.  10/382,322**

Continuation of Attachment(s) 9. Other:  IDS of 3/26/2007 and 06/05/2007.

Application/Control Number: 10/382,322                                    Page 2
Art Unit: 1753

## DETAILED ACTION

### EXAMINER'S AMENDMENT

1.    The application has been amended as follows: on page 1 of the specification, in

line 6, -- now abandoned -- has been inserted between "2002," and "which".

### *Allowable Subject Matter*

2.    Claims  37-55 and  94-143 are allowed.

3.    The following is an examiner's statement of reasons for allowance:

Applicant · has  overcome· the  prior  art  rejections  by  Rule  131  Declaration,

amendment, or argument in his responses.  Each of the independent claims, which are

claims 37 and 110, has  several  features that  together  render  the  combination  of

limitations allowable.  Each is a method of determining the concentration of glucose in a

blood   sample   that   requires,   *inter   alia*,   electrooxidizing   or   electroreducing   an

electroactive  reaction  product  at  the  working  electrode  and  determining  within  10

seconds  after  detecting  the  supplying  of  the  sample  to  the  sample ·chamber  the

concentration of glucose in less than about 1.0 µl of sample.

Application/Control Number: 10/382,322                                    Page 3
Art Unit: 1753

The Rule 131 Declaration ("Declaration"), filed March 05, 2003, asserts reduction

to practice to at least as early as March, 1997, and at least as early as March, 1998.

This Declaration supports reduction to practice for the claimed invention to at least as

early as March, 1998, but not to at least as early as March, 1997.   Except for two

graphs, Exhibit C, which is cited as support for reduction to practice to at least as early

as March, 1997 (for example, see paragraph 14 of the Declaration), only shows data for

mediator/saline solution or glucose/saline solution, not glucose/blood sample.   Exhibit

C, pages 41 and 43, each present a graph of measurement results for glucose/blood.

However, Exhibit C, page 41, is for current density at 27.5 seconds with a 20 second

delay and Exhibit C, page 43, is for current density at 27. 5 seconds.   Because

Applicant has established reduction to practice under Rule 131 to at least as early as

March, 1998, Davies et al. US 2002/0092612 A1 and Winarta et al. US 6,258,229 B1,

and Goto JP 11-94790, especially [0024] of the English language translation (which was

provided with the Information Disclosure Statement of March 23, 2007), do not qualify

as prior art.

EP 0467219 B1 was not applied in any rejections, but is listed on the Information

Disclosure Statement of December 27, 2006.   Unlike the invention of the independent

claims in the instant application, the method of determining the concentration of glucose

in a blood sample in EP 0467219 B1 does not involve electrooxidizing or

electroreducing an electroactive reaction product at the working electrode.  Instead, the

electroactive reaction product, $H_2O_2$, which is produced by the reagent, glucose

oxidase, reacting with glucose, chemically reacts with $2I^-$ to produce $I_2$ and $2H_2O$. The $I_2$

Application/Control Number: 10/382,322                                    Page 4
Art Unit: 1753

acts as a dopant that changes the conductivity of a polymer layer from which the glucose concentration can be determined.  See page 12, lines 11-58.

Heller et al. US 6,120,676, which was previously used as a secondary reference in rejections against a number of claims because it teaches ways to make the measurement time shorter, only provides data for measurements made with glucose/buffer and glucose/serum. See Table 1 in column 20.  Moreover, the quickest response time disclosed is $19 \pm 6$ seconds, which is not within 10 seconds after detecting the sample as claimed and is for glucose/buffer (3 mM), not glucose/blood. Heller does disclose that for some types of electrooxidizing or electroreducing measurement techniques the glucose does not need to be substantially electrolyzed (col. 13:45-55 and col. 14:10-15), but because the glucose/serum measurement time is significantly longer than a comparable glucose/buffer measurement time (for example, 15.8 mM glucose/serum takes $72 \pm 21$ seconds for 90% electrolysis versus 15 mM glucose/buffer taking $56 \pm 23$ seconds for 90% electrolysis) there is no great likelihood that a reasonably accurate measurement on glucose/blood sample could be taken within 10 seconds after detecting the sample even with much less than 90% electrolysis of the glucose.

Any comments considered necessary by applicant must be submitted no later than the payment of the issue fee and, to avoid processing delays, should preferably accompany the issue fee.  Such submissions should be clearly labeled "Comments on Statement of Reasons for Allowance."

Application/Control Number: 10/382,322                                    Page 5
Art Unit: 1753

4.    Any inquiry concerning this communication or earlier communications from the

examiner should be directed to ALEX NOGUEROLA whose telephone number is (571) 272-

1343. The examiner can normally be reached on M-F 8:30 - 5:00.

     If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, NAM NGUYEN can be reached on (571) 272-1342. The fax phone number for the

organization where this application or proceeding is assigned is 571-273-8300.

     Information regarding the status of an application may be obtained from the Patent

Application Information Retrieval (PAIR) system. Status information for published applications

may be obtained from either Private PAIR or Public PAIR. Status information for unpublished

applications is available through Private PAIR only. For more information about the PAIR

system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR

system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free).

Alex Noguerola
Primary Examiner
AU 1753
July 3, 2007