IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROCHE DIAGNOSTICS OPERATIONS, INC.<br>and CORANGE INTERNATIONAL<br>LIMITED,<br><br>Plaintiffs,<br><br>vs.<br><br>ABBOTT DIABETES CARE INC.,<br>ABBOTT DIABETES CARE SALES<br>CORPORATION,<br>BAYER HEALTHCARE, LLC,<br>DIAGNOSTIC DEVICES, INC.,<br>LIFESCAN, INC., and NOVA BIOMEDICAL<br>CORPORATION,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No. 07-753-JJF |

## ABBOTT'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO STAY
## PENDING REEXAMINATION OF THE PATENTS-IN-SUIT

OF COUNSEL:
Edward A. Mas II
Stephen F. Sherry
Kirk Vander Leest
James M. Hafertepe
McAndrews, Held & Malloy, Ltd.
500 West Madison Street, 34th Floor
Chicago, Illinois 60661
(312) 775-8000

Frederick L. Cottrell, III (#2555)
cottrell@rlf.com
Anne Shea Gaza (#4093)
gaza@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
P.O. Box 551
920 N. King Street
Wilmington, DE 19899
(302) 651-7700

*Attorneys for Abbott Diabetes Care Inc. and
Abbott Diabetes Care Sales Corp.*

Dated: February 1, 2008

RLF1-3249787-1

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. ii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ...................................................................................................................... 2

    A.    The Early Stage Of This Litigation Strongly Favors Granting A
          Stay .................................................................................................................. 2

    B.    A Stay Will Not "Unduly Prejudice" Roche ......................................................... 5

    C.    Roche Ignores The Significant And Likely Impact Of The
          Reexamination On This Lawsuit ........................................................................ 11

          1.    Changed Claims Will Affect The Scope Of Claim
               Construction ............................................................................................ 12

          2.    Changed Claims Will Affect the Invalidity Analysis ................................ 14

          3.    Changed Claims Will Affect Roche's Claim To Damages ........................ 14

          4.    Reexamination May Invalidate All The Roche Patent
               Claims – Even If The Prior Art Was Previously Cited To
               The PTO ................................................................................................. 15

    D.    The Court Should Not Deny Abbott's Motion To Stay Based On
          LifeScan's Motion To Sever And "Partial Opposition" ....................................... 17

CONCLUSION .................................................................................................................. 19

RLF1-3249787-1

# TABLE OF AUTHORITIES

## CASES

*Abbott Diabetes Care, Inc. v. DexCom, Inc.*,
  2006 WL 2375035 (D. Del. Aug. 16, 2006) .......................................................... 6, 17

*Akzenta Paneele + Profile GmbH v. Unilin Flooring N.C. LLC*,
  464 F. Supp. 2d 481 (D. Md. 2006) ....................................................................... 10

*Alloc, Inc. v. Unilin Décor N.V.*,
  2003 U.S. Dist. LEXIS 11917 (D. Del. July 11, 2003) ........................................... 3

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.*,
  239 F.3d 1343 (Fed. Cir. 2001) ............................................................................ 14

*ASCII Corp. v. STD Entm't USA, Inc.*,
  844 F. Supp. 1378 (N.D. Cal. 1994) ....................................................................... 3

*Broad. Innovation, L.L.C. v. Charter Communications, Inc.*,
  2006 U.S. Dist. LEXIS 46623 (D. Colo. July 11, 2006) .......................................... 4

*Brown v. 3M*,
  265 F.3d 1349 (Fed. Cir. 2001) ............................................................................ 17

*Card Tech. Corp. v. DataCard Corp.*,
  2007 WL 551615 (D. Minn. Feb. 21, 2007) ............................................................ 5

*Celeritas Techs., Ltd. v. Rockwell Int'l Corp.*,
  150 F.3d 1354 (Fed. Cir. 1998) ............................................................................ 17

*Dawn Equip. Co. v. Kentucky Farms Inc.*,
  140 F.3d 1009 (Fed. Cir. 1998) ...................................................................... 12, 13

*Donnelly Corp. v. Guardian Indus. Corp*,
  2007 U.S. Dist. LEXIS 78055 (E.D. Mich. Oct. 22, 2007) ...................................... 9

*Dusa Pharms., Inc. v. River's Edge Pharms., LLC*,
  2006 U.S. Dist. LEXIS 29852 (D.N.J. May 15, 2006) ............................................. 4

*Essex Group, Inc. v. Southwire Co.*,
  1986 U.S. Dist. LEXIS 29761 (N.D. Ga. Jan. 31, 1986) .......................................... 5

*Gabrielidis v. Prince Sports Group, Inc*,
  2000 U.S. App. LEXIS 27384 (Fed. Cir. Nov. 1, 2000) ........................................... 8

*Glaxo Group Ltd. v. Apotex, Inc.*,
  376 F.3d 1339 (Fed. Cir. 2004) .............................................................................. 8

RLF1-3249787-1

*Guthy-Renker Fitness L.L.C. v. Icon Health & Fitness Inc.,*
    48 U.S.P.Q.2d 1058 (C.D. Cal. 1998) ............................................................................ 3

*In re Columbia Univ. Patent Litigation,*
    330 F. Supp. 2d 12 (D. Mass. 2004) .............................................................................. 10

*In re Etter,*
    756 F.2d 852 (Fed. Cir. 1985) ....................................................................................... 16

*Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.,*
    381 F.3d 1111 (Fed. Cir. 2004) ..................................................................................... 15

*IPXL Holdings, L.L.C. v. Amazon.com, Inc.,*
    430 F.3d 1377 (Fed. Cir. 2005) ..................................................................................... 17

*Kim v. ConAgra Foods, Inc.,*
    465 F.3d 1312 (Fed. Cir. 2006) ..................................................................................... 14

*Liebel-Flarsheim Co. v. Medrad, Inc.,*
    481 F.3d 1371 (Fed. Cir. 2007) ..................................................................................... 17

*NTP, Inc. v. Research In Motion, Ltd.,*
    397 F. Supp. 2d 785 (E.D. Va. 2005) ........................................................................... 12

*Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.,*
    575 F.2d 1152 (6th Cir. 1978) ...................................................................................... 14

*Pfizer, Inc. v. Apotex, Inc.,*
    480 F.3d 1348 (Fed. Cir. 2007) ..................................................................................... 16

*Prima Tek II, L.L.C. v. Polypap, S.A.R.L.,*
    412 F.3d 1284 (Fed. Cir. 2005) ..................................................................................... 17

*Robert H. Harris Co. v. Metal Mfg. Co.,*
    1991 U.S. Dist. LEXIS 16086 (E.D. Ark. June 20, 1991) ............................................. 5

*Rocep Lusol Holdings Ltd. v. Permatex, Inc.,*
    470 F. Supp. 2d 448 (D. Del. 2007) .............................................................................. 15

*Snyder Seed Corp. v. Scrypton Sys. Inc.,*
    52 U.S.P.Q.2d 1221 (W.D.N.Y. 1999) ........................................................................... 4

*Sorensen v. Black & Decker Corp.,*
    2007 U.S. Dist. LEXIS 66712 (S.D. Cal. Sept. 10, 2007) ....................................... 4, 10

*St. Clair Intellectual Prop. Consultants, Inc. v. Sony Corp.,*
    2003 WL 25283239 (D. Del. Jan. 30, 2003) ................................................................. 5

RLF1-3249787-1

*Tap Pharm. Prods. Inc. v. Atrix Labs. Inc ,*
    70 U.S.P.Q.2d 1319 (N.D. Ill. 2004) ........................................................................ 3

*Tse v. Apple Inc.,*
    2007 U.S. Dist. LEXIS 76521 (N.D. Cal. Oct. 4, 2007)............................................ 4

*Viskase Corp. v. Am. Nat'l Can Co.,*
    261 F.3d 1316 (Fed. Cir. 2001) ............................................................................... 12

*Vitronics Corp. v. Conceptronic, Inc.,*
    36 F. Supp. 2d 440 (D.N.H. 1997).......................................................................... 13

*Xerox Corp. v. 3Com Corp.,*
    1999 U.S. Dist. LEXIS 9977 (W.D.N.Y. June 25, 1999)......................................... 5

*Xerox Corp. v. 3Com Corp.,*
    69 F. Supp. 2d 404 (W.D.N.Y. 1999)....................................................................... 5

*ZiLOG, Inc. v. Quicklogic Corp.,*
    2006 U.S. Dist. LEXIS 12844 (N.D. Cal. Mar. 6, 2006).......................................... 4

**STATUTES**

35 U.S.C. § 303(a) ......................................................................................................... 5, 16

**OTHER AUTHORITIES**

1 Donald S. Chisum, <u>Chisum on Patents</u> § 3.07 (2000) ..................................................... 8

Manual of Patent Examining Procedure § 2261 (8th ed., rev. 5, Aug. 2006)................................... 9

## INTRODUCTION

Under Roche's distorted analysis, a stay pending reexamination would never be appropriate. Roche simply ignores the liberal policy that favors motions to stay litigation pending the outcome of reexaminations – especially when the litigation is at its earliest stages. Contrary to Roche's arguments, motions to stay under such circumstances are favored, not disfavored.

The factors that should be weighed in deciding a motion to stay are well established. Although Roche pays lip service to these factors, in reality Roche discounts them entirely. Roche essentially advocates that a stay is <u>always</u> unduly prejudicial merely because the time period to complete the reexamination is unknown. Roche also discounts the conservation of judicial resources, arguing that the extent to which issues will be simplified is unknown until the reexamination is completed. Reduced to its fundamental point, Roche urges this Court to accept the erroneous proposition that a stay of litigation pending the outcome of reexamination can <u>never</u> be appropriate. Roche's position runs contrary to the reality that federal courts, including this district, almost unanimously stay matters in favor of patent reexamination when, as here, the case is in its very initial stages and no discovery has occurred.

Instead, Roche urges that this lawsuit, with all its complexity, involving multiple unrelated defendants and the multitude of different technologies accused of infringement, should proceed even while the PTO reexamines the foundation for this entire case – the claims of both Roche patents-in-suit. The potential waste of the parties' resources and this Court's time inherent in such concurrent proceedings is self-evident – especially in view of the fact that 74% of reexamined patents have their claims significantly modified or cancelled altogether. As the

- 1 -

Court is aware, PTO reexaminations offer an opportunity to address invalidity disputes more quickly and less expensively than traditional patent litigation.

Finally, contrary to Roche's allegations, Abbott is not acting in bad faith or trying to gain an unfair tactical advantage by requesting a stay of this litigation. Quite the opposite, Abbott has employed the reexamination procedure for the very purpose it was intended – as an efficient way to address serious invalidity issues before the parties and the Court invest the enormous amounts of money, time, and other resources needed to conduct discovery and prepare this case for trial.

## ARGUMENT

### A.    The Early Stage Of This Litigation Strongly Favors Granting A Stay

Roche acknowledges that whether discovery is complete and whether a trial date has been set is a principal factor in determining whether a stay is appropriate. This matter is unquestionably at its earliest stage. To date, no defendant has served discovery requests, and no party has produced any documents or taken (or even requested) any depositions. The Court has not yet set a schedule or trial date, nor has a single case management conference been held.[1]

---

[1] Roche attempts to neutralize this key factor favoring the stay by arguing that "the case is in fact already moving forward." (*See* D.I. 56, Plaintiffs' Answering Brief In Opposition To Abbott's Motion To Stay The Proceeding Pending Reexamination Of The Patents-In-Suit ("*Roche Opposition Brief*") at 18.) To support this overstatement, Roche points to a joint proposed Rule 16 scheduling order filed one day before Abbott's Motion To Stay. (D.I. 31.) What Roche fails to mention is that Defendants indicate, in the joint document, that issuing a scheduling order would be premature for the reasons set forth in a January 4, 2008 letter to the Court (D.I. 26), which specifically references Abbott's anticipated stay motion. Additionally, the Court agreed to postpone the Rule 16 scheduling conference until after Abbott's stay motion could be fully briefed and presented. Finally, Roche claims that it "has served discovery requests in order to diligently move this case forward." (*Roche Opposition Brief* at 18.) In fact, Roche did not file its discovery requests until <u>after</u> Abbott filed its Motion To Stay.

RLF1-3249787-1

Roche concedes: "This lawsuit is in its early stages. Such a fact traditionally tends to favor a stay pending reexamination." (*See Roche Opposition Brief* at 17.) But Roche merely brushes this important factor aside stating, ". . . even if this factor generally favors Abbott's request, it is far overshadowed by the other two relevant factors." (*Id.* at 18.)

Roche ignores the fact that district courts almost unanimously grant stays deferring to PTO reexamination when no discovery has been taken and no trial date has been set.[2] *See, e.g.,* *Alloc, Inc. v. Unilin Décor N.V.*, No. 03-253-GMS, 2003 U.S. Dist. LEXIS 11917, at *8 (D. Del. July 11, 2003) (staying litigation in part because discovery had not yet begun and the court had not set a trial date); *see also Tap Pharm. Prods. Inc. v. Atrix Labs. Inc.*, 70 U.S.P.Q.2d 1319, 1320 (N.D. Ill. 2004) (stay granted where litigation was at an "early stage"); *Guthy-Renker Fitness L.L.C. v. Icon Health & Fitness Inc.*, 48 U.S.P.Q.2d 1058, 1060 (C.D. Cal. 1998) ("First, this case is in its incipient stages."); *ASCII Corp. v. STD Entm't USA, Inc.*, 844 F. Supp. 1378, 1381 (N.D. Cal. 1994) (stay granted in part because "the parties are in the initial stages of the lawsuit and have undertaken little or no discovery. Moreover, the case has not been set for trial.").

Apparently recognizing the weakness of its stay opposition based upon the three traditional factors, Roche criticizes Abbott's stay request as "premature" and urges denial on that alternative basis. But Roche again overstates its case arguing that "recent decisions have

---

[2] Roche relies on what is clearly a minority view embodied in the small number of opinions from the Eastern District of Texas cited in Roche's Opposition Brief.

confirmed that stay orders are not appropriate before the PTO has ruled on requests for reexamination."[3]  (*Roche Opposition Brief* at 18 (emphasis added).)

To the contrary, at least two courts have entered such stays since September 2007. *See Tse v. Apple Inc.*, No. C 06-06573 SBA, 2007 U.S. Dist. LEXIS 76521, at *15 (N.D. Cal. Oct. 4, 2007) (granting stay and noting that "the Court is to be notified immediately (i) upon the grant or denial of Defendants' Request for Reexamination"); *Sorensen v. Black & Decker Corp.*, No. 06cv1572 BTM (CAB), 2007 U.S. Dist. LEXIS 66712, at **19-20 (S.D. Cal. Sept. 10, 2007) (granting stay except for two pending motions). And, as pointed out in Abbott's opening brief, there is a long history of courts issuing stay orders before the PTO has granted the request for reexamination. *See, e.g.*, *Broad. Innovation, L.L.C. v. Charter Communications, Inc.*, No. 03-cv-2223-ABJ-BNB, 2006 U.S. Dist. LEXIS 46623, at *39 (D. Colo. July 11, 2006) (granting stay and ordering "the parties shall immediately advise the Court of the PTO's decision to grant or deny Defendant's petition for reexamination"); *Snyder Seed Corp. v. Scrypton Sys. Inc.*, 52 U.S.P.Q.2d 1221, 1224 (W.D.N.Y. 1999); *Robert H. Harris Co. v. Metal Mfg. Co.*, No. J-C-90-

---

[3] Roche's reliance on the *Dusa* case is misplaced. (*Roche Opposition Brief* at 18.) In that case, the defendant filed its *inter partes* reexamination request and stay motion in response to and in an effort to delay and derail the patent holder's previously filed lawsuit and motion for preliminary injunction (which the court granted). *See Dusa Pharms., Inc. v. River's Edge Pharms., LLC*, No. 06-1843 (SRC), 2006 U.S. Dist. LEXIS 29852 (D.N.J. May 15, 2006). Additionally, the *ZiLOG* case cited by Roche does not actually support its position. (*Roche Opposition Brief* at 18.) Although preliminarily denying the stay as premature because the PTO had not yet acted on the request, the district court granted the stay of all proceedings shortly after the PTO ordered reexamination of the patent-in-suit. *ZiLOG, Inc v. Quicklogic Corp.*, No. C 03-03725 JW, 2006 U.S. Dist. LEXIS 12844, at *2 (N.D. Cal. Mar. 6, 2006). Indeed, one year later, the PTO confirmed only one claim and invalidated the other two claims of that patent. *Id.* at *3.

- 4 -

179, 1991 U.S. Dist. LEXIS 16086, at **5-10 (E.D. Ark. June 20, 1991); *Essex Group, Inc. v. Southwire Co.*, No. C-85-1923-A, 1986 U.S. Dist. LEXIS 29761, at *3 (N.D. Ga. Jan. 31, 1986).

Put simply, Abbott's Motion To Stay is not premature.[4]   Abbott's actions reflect diligence and the desire to address serious questions about the validity of Roche's patents-in-suit at the outset of this case, thus avoiding the potential for an extraordinary waste of the parties' resources and the Court's time.  Abbott has sought reexamination of <u>all</u> the claims in both Roche patents-in-suit and requested a stay in this Court before any case scheduling deadlines have been set.  It would be difficult to conceive of a case where this factor would more strongly favor issuing a stay.  "The usual reason for denying such a stay is that the case has progressed through the bulk of pretrial proceedings and is scheduled for trial shortly." *Card Tech. Corp. v. DataCard Corp.*, No. 05-2546 (MJD/SRN), 2007 WL 551615, at *7 (D. Minn. Feb. 21, 2007).[5]

### B.     A Stay Will Not "Unduly Prejudice" Roche

In one of its four claims of "undue" prejudice, Roche asserts that "[i]f reexamination is granted and this case is stayed, Roche will be substantially and unduly prejudiced because Roche will be <u>unable to enforce its patents</u> . . . ." (*Roche Opposition Brief* at 16 (emphasis added).)

---

[4] Roche's argument that this motion is premature should be considered particularly unpersuasive given the fact that the PTO grants reexamination requests about 92% of the time.  (*See* D.I. 38 ("*Abbott Opening Brief*") at Ex. C at ¶ 5a.)  In any event, the PTO is required to decide whether to grant Abbott's requests for reexamination by March 14, 2008. *See* 35 U.S.C. § 303(a).

[5] Additional examples of the district court denying a stay at least in part because the case was ready or nearly ready for trial are found in the *St. Clair* and *Xerox* cases, both of which Roche cited in its opposition brief at page 10. (*Roche Opposition Brief* at 10); *St. Clair Intellectual Prop. Consultants, Inc. v. Sony Corp.*, No. 01-557 JJF, 2003 WL 25283239, at *1 (D. Del. Jan. 30, 2003); *Xerox Corp. v. 3Com Corp.*, 69 F. Supp. 2d 404, 406 (W.D.N.Y. 1999). In fact, in the *Xerox* case, the court later entered a stay of the case pending reexamination based on developments in the litigation and the reexamination. *Xerox Corp. v. 3Com Corp.*, No 97-CV-6182T, 1999 U.S. Dist. LEXIS 9977, at **4-5 (W.D.N.Y. June 25, 1999).

- 5 -

Rejecting this very same argument in a decision Roche relies upon, Judge Sleet granted the stay and observed:

> As such, the only other argument Abbott asserts with respect to undue prejudice is that it will be unable to enforce its patents while in reexamination. Abbott's position, however, assumes that the PTO will leave all of the more than 200 claims of the four patents-in-suit unaltered after reexamination. Further, while Abbott may suffer some prejudice from a stay, the court is not persuaded that a stay would *unduly* prejudice Abbott, or present any clear tactical disadvantage.

*Abbott Diabetes Care, Inc. v. DexCom, Inc.*, No. 05-590 GMS, 2006 WL 2375035, at *5 (D. Del. Aug. 16, 2006) (emphasis in original, internal citation omitted).[6] Likewise, Roche's position in this case assumes that the PTO will leave all of the 131 claims of the two patents-in-suit unaltered after reexamination – a highly unlikely scenario. Any arguable prejudice to Roche by preventing enforcement of its current patent claims until resolution of the PTO reexamination does not rise to the level of being <u>unduly</u> prejudicial.[7]

In its second claim of "undue" prejudice, Roche argues: "A stay would thus allow numerous Defendants to continue selling their infringing products in direct competition with

---

[6] Ignoring the fact that Chief Judge Sleet granted a stay in *DexCom*, Roche oversimplifies Abbott's position in that case and erroneously asserts that "Abbott itself has argued that such a situation [granting a stay pending reexamination] is unfair to the patentee when Abbott was on the other side of the issue." (*Roche Opposition Brief* at 17.) Unlike the present case, in *DexCom* the accused infringer had recently received FDA approval for its product and was about to significantly change the status quo by introducing that infringing device into the market when Abbott filed its complaint. *See DexCom*, 2006 WL 2375035, at **1-2. Concurrent with its efforts to launch the infringing product, DexCom asked the Court to suspend Abbott's ability to pursue enforcement of its patent rights, including preventing Abbott from seeking a preliminary injunction. *Id.* at *5. Contrary to Roche's mischaracterization, Abbott did not, and does not, advocate "that every time a reexamination request is filed, a stay should be granted." (*Roche Opposition Brief* at 17.)

[7] Abbott notes that because Roche's patents-in-suit issued less than five months ago and have almost their entire term remaining, prejudice resulting from delay is far less significant compared with patents undergoing reexamination at the end of their life.

- 6 -

Roche's product. <u>Such sales destroy market opportunity</u> . . . ." (*Roche Opposition Brief* at 17 (emphasis added).) This is nothing more than unsupported and hypothetical argument. Further, despite Roche's implied suggestion that delay would cause irreparable damage to its business, Roche has not sought a preliminary injunction in this matter against any of the named Defendants. Roche has not proposed to expedite any aspect of this litigation. Lastly, denying Abbott's stay request would not eliminate Roche's supposed potential loss of "market opportunity." It will still require years to litigate this case to conclusion. This claim of prejudice is not consistent with Roche's conduct to this point and the Court should disregard it.

As a third basis for alleged "undue" prejudice, Roche asserts: "A stay at this juncture will prejudice Roche <u>by blocking discovery</u> of material information held by Abbott, and will potentially allow Abbott to subvert a validly issued patent." (*See Roche Opposition Brief* at 15 (emphasis added).) This argument is a red herring. Roche asserts that "Abbott is in the unique position of possessing the evidence that would resolve all questions about WO 626 data." (*Id.*) What questions? Roche does not say. What "evidence" does Abbott supposedly possess? Roche does not say. Roche levels the serious charge, without any explanation of specific facts, that "Abbott has not properly or fairly presented that data that is summarized in WO 626." (*Roche Opposition Brief* at 15.) This amounts to no more than hyperbole without any offer of credible factual support. Of greater importance is the fact that any possible information Abbott may possess about this particular reference is totally irrelevant to the PTO's consideration of it in a reexamination proceeding. The PTO will consider WO 626 as a whole for what its actual

- 7 -

words would teach one of ordinary skill in the relevant field.[8]  *See Glaxo Group Ltd. v. Apotex, Inc.*, 376 F.3d 1339, 1348 (Fed. Cir. 2004) ("[A]nticipation requires that all limitations of the claimed invention are described in a single reference, rather than a single example in the reference."); *see also Gabrielidis v. Prince Sports Group, Inc.*, 2000 U.S. App. LEXIS 27384, at **20-21 (Fed. Cir. Nov. 1, 2000) (unpublished) ("It is the entire disclosure of the prior art reference, not merely its claims, which must be compared with the claims of the [] patent."), *citing* 1 Donald S. Chisum, Chisum on Patents § 3.07 (2000) ("All matter described in an issued United States patent is fully effective as a reference for purposes of anticipation . . . ."). In

---

[8] Unfairly criticizing Abbott's reexamination request, Roche argues that the Examiner already considered "the specific arguments that Abbott seeks to advance based on [WO 626]." (*Roche Opposition Brief* at 8.) This is incorrect. In fact, the Examiner never once commented on WO 626 during the entire prosecution of the patents-in-suit. Contrary to Roche's further allegation, Abbott did not argue that Figure 17 and Example 12, in isolation from WO 626 as a whole, anticipate the claims of the patent-in-suit. Indeed, as Abbott explained in its opening brief, "WO 626 does disclose a method for determining and displaying the concentration of glucose in a blood sample smaller than 1.0 μL in a time period less than 10 seconds." (*Abbott Opening Brief* at 4.) For example, WO 626 specifically states that the "[s]ensors of the present invention are designed to measure the concentration of an analyte in a portion of a sample having a volume of no more than about 1 μL." (D.I. 57 at Ex. L at p. 11, line 30 to p. 12, line 1 (emphasis added).) Additionally, "[t]he analyte of interest is typically provided in a solution or biological fluid, such as blood or serum." (*Id.* at p. 12, lines 3-4 (emphasis added).) Lastly, in addition to the other substantial teachings of WO 626, Figure 17 and Example 12 disclose one method of determining the concentration of glucose in an analyte of interest in less than 10 seconds. (D.I. 57 at Ex. L at p. 96, lines 7-8 and drawing sheet 15 (emphasis added); *see also* D.I. 38 at Ex. A at pp. 9-11; D.I. 38 at Ex. B at pp. 10-12.)

- 8 -

reality, postponing discovery by Roche during the period of a stay would not disadvantage Roche or prejudice it in connection with the reexamination process.[9]

The fourth and final source of undue prejudice alleged by Roche derives solely from the fact that it takes time for the PTO to complete the reexamination. "The <u>potential for delay</u> for an indefinite time stands to substantially prejudice Roche." (*Roche Opposition Brief* at 15 (emphasis added).) Abbott acknowledges that reexamination surely will take some time to resolve. But because the two Roche patents are the subject of current litigation, the PTO will conduct these reexaminations with "special dispatch," meaning that once granted, the PTO will place these reexaminations on an accelerated schedule and they will take priority over other reexaminations. (*See* Ex. D to D.I. 38, Manual of Patent Examining Procedure ("MPEP") § 2261 (8th ed., rev. 5, Aug. 2006).) Roche does not dispute this fact. Indeed, Roche notes that courts have found the average reexamination takes approximately one-and-one-half years to reach a determination. (*Roche Opposition Brief* at 16.) Recently, one district court noted that the PTO could very well make determinations in "special dispatch" reexaminations in less than a year.

---

[9] Roche charges that with its stay motion, "Abbott is trying to block Roche from obtaining discovery . . . ." (*Roche Opposition Brief* at 15.) Abbott is not trying to block discovery at all. Roche did not even serve Abbott with discovery until two weeks <u>after</u> Abbott filed its stay motion. It seems more likely that Roche served these discovery requests to support their argument, for which Roche does not cite a single supporting legal authority.

- 9 -

*See Donnelly Corp. v. Guardian Indus. Corp.*, No. 05-74444, 2007 U.S. Dist. LEXIS 78055, at *6 (E.D. Mich. Oct. 22, 2007).[10]

Delay is always a risk inherent in granting a stay, yet district courts continue to regularly stay actions pending reexamination. The general prejudice asserted by Roche of having to wait for resolution is not a persuasive reason to deny the motion for a stay. If Roche's position on this factor was correct, no court could ever stay an action pending reexamination.[11]

Additionally, it is inescapable that in this technically and legally challenging patent case, completing (1) fact and expert discovery, (2) claim construction briefing, (3) a *Markman* hearing, (4) dispositive motions, and (5) a final pretrial trial order, not to mention the jury trial itself, will also take some time to complete. The average amount of time it takes typical patent cases to

---

[10]Ironically, a delay in the reexamination has the potential to prejudice <u>Abbott</u> should the Court fail to enter a stay. Because the PTO is not bound in its reexamination by the determinations of this Court, if this litigation upholds the validity of the Roche patents and an infringement finding against Abbott results in the payment of damages to Roche, Abbott may have no ability to recover those damages if at a later date the PTO invalidated the patents as a result of Abbott's reexamination request. *See Sorensen*, 2007 U.S. Dist. LEXIS 66712, at **14-15.

[11]Roche cites to the *Akzenta* and *Columbia University* cases implying that the district courts denied a stay pending reexamination merely because of the length of time anticipated to complete the reexamination process. (*Roche Opposition Brief* at 16.) But a close reading of the *Akzenta* decision reveals that the case was not in its early stage. In *Akzenta*, the patent owner requested the stay only after becoming aware of the defendant's prior art and only after discovery was substantially completed. *Akzenta Paneele + Profile GmbH v. Unilin Flooring N.C. LLC*, 464 F. Supp. 2d 481, 483-84 (D. Md. 2006). In the *Columbia University* multidistrict litigation, the district court actually stayed essentially the entire case -- with the exception of a potentially dispositive discrete invalidity issue which the court concluded could be quickly developed and decided. *In re Columbia Univ. Patent Litigation*, 330 F. Supp. 2d 12, 14 (D. Mass. 2004).

- 10 -

proceed from filing to trial in the federal courts is lengthy.[12]  Given that this case is in its earliest

stages, the PTO will probably complete the reexaminations before adjudication by this Court

would likely occur.  Accordingly, a stay pending the reexamination of Roche's patents-in-suit is

unlikely to cause substantial and undue prejudice to Roche from simply awaiting the decisions

from the PTO.

### C.    Roche Ignores The Significant And Likely Impact Of The Reexamination On This Lawsuit

Roche does not dispute the statistical data showing that about 10% of the time all asserted

claims of a patent are invalidated by reexamination.  Instead, Roche contends that because all

reexaminations do not result in invalidation of all claims and because Roche views the grounds

for reexamination as weak, in all likelihood, the PTO's reexamination of the patents-in-suit

would not completely moot this litigation.  Incredibly, Roche advocates that it is more rational to

spend millions of dollars – and countless hours of this Court's time – litigating patent claims that

have a 74% chance of being cancelled or substantively changed in scope.  Roche summarily and

erroneously concludes that because trial will likely remain necessary and because validity of the

patents will remain an issue, the reexamination cannot possibly simplify the case and the Court

should not grant a stay.[13]  (*Roche Opposition Brief* at 11.)

---

[12]For example, Professor Paul Janicke reported in 2006 that time from filing to trial verdict in patent cases takes at least 40 months.  *See* "Patent Litigation Remedies: Some Statistical Observations," (University of Houston, 2006) (available at www.patentsmatter.com/issue/Patent_Litigation_Remedies-Janicke.ppt as of Feb. 1, 2008).

[13]If one claim from each of the two Roche patents survives intact, without any change, the stay would have prevented the waste of the parties' resources and the Court's time litigating the other 129 claims that did not survive.

### 1.    Changed Claims Will Affect The Scope Of Claim Construction

Even though reexamination of the two Roche patents may not dispose of the case completely, it is highly likely that reexamination will impact and simplify critical issues. Roche does not dispute that patent claims are invalidated or modified in over 70% of reexamination proceedings conducted.    Astoundingly, however, Roche argues that even if granted, reexamination will not impact many issues in the case. (*Roche Opposition Brief* at 12.) For instance, Roche claims that "[i]nfringement is another example of one of the issues that will be unaffected by any reexamination proceeding." (*Roche Opposition Brief* at 12 (emphasis added).) Nothing could be further from reality.[14]

It is well established that determining infringement is a two-step process. In the first step, the Court must construe the asserted claims as a matter of law to ascertain their meaning and scope. *See Dawn Equip. Co. v. Kentucky Farms Inc.*, 140 F.3d 1009, 1014 (Fed. Cir. 1998). Next, the claims as construed are compared to the accused subject matter. *Id.* Infringement of a claim requires that each claim limitation must be present in the accused product, literally or

---

[14]As an apparent hedge, Roche argues that "[a] court is under no obligation to delay its own proceedings by yielding to ongoing PTO patent examinations, regardless of their relevancy to infringement claims which the court must analyze." (*Roche Opposition Brief* at 9 (emphasis added).) Roche cites the *NTP* and *Viskase* decisions as support for that proposition. What Roche fails to reveal is that in both of these cases, the district court denied the stay which was requested after a trial on the merits and finding of infringement. *NTP, Inc. v. Research In Motion, Ltd.*, 397 F. Supp. 2d 785, 786 (E.D. Va. 2005); *Viskase Corp. v. Am. Nat'l Can Co.*, 261 F.3d 1316, 1327-8 (Fed. Cir. 2001). Further, in the *NTP* case, the district court noted that because the Federal Circuit's mandate on remand directed that the litigation be quickly resolved, the burden on the infringer who sought the stay was "even heavier." *NTP*, 397 F. Supp. 2d at 788. The *NTP* court concluded that "[d]erailing these proceedings when a resolution is in sight would be ill-advised at best." *Id.*

equivalently. *Id.* "Thus, the construction of each claim limitation is crucial to the infringement determination."[15] *Id.*

The Court must first construe the relevant claim limitations in Roche's asserted patents before it can determine infringement in this case. But the Court cannot complete claim construction until the language of the claims, including each claim limitation, as well as the intrinsic evidence (e.g., the prosecution history and cited prior art) are all settled – which will not occur until the completion of the PTO's reexamination process.

Rather than being speculative, it is highly likely that reexamination will materially alter (if not completely expunge) the language of the claims in Roche's patents-in-suit. In the likely event that claims are amended (and certainly if cancelled entirely), the time and effort invested by both the Court and the parties in an earlier claim construction process would be either moot or would have to be repeated with respect to any amended claims. Courts have recognized that it is inefficient for a district court to expend time and resources conducting claim interpretation while the scope of the claims at issue is still under review at the PTO. *See Vitronics Corp. v. Conceptronic, Inc.*, 36 F. Supp. 2d 440, 442 (D.N.H. 1997). It is beyond any reasonable dispute that material changes to claim language will impact the Court's claim construction, thus affecting a myriad of issues which are claim scope dependent – one of which is infringement.

---

[15] The scope of accused subject matter can change significantly in response to substantial changes to the claim language as a result of amendment during the reexamination process. Obviously, accused subject matter can be eliminated entirely from a case as a result of claims being cancelled by the PTO in reexamination.

### 2.    Changed Claims Will Affect the Invalidity Analysis

The issue of invalidity, like infringement, is claim scope intensive.  The same claim construction used for infringement determinations governs validity determinations.  *See Kim v. ConAgra Foods, Inc*, 465 F.3d 1312, 1324 (Fed. Cir. 2006).  "Conceptually, the first step of an invalidity analysis based on anticipation and/or obviousness in view of prior art references is no different from that of an infringement analysis." *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001).

> It is elementary in patent law that, in determining whether a patent is valid and, if valid, infringed, the first step is to determine the meaning and scope of each claim in suit.  A claim must be construed before determining its validity just as it is first construed before deciding infringement.

*Id.* (citations and quotations omitted).  Any significant alteration of the claim language resulting from a reexamination, which is statistically likely, will impact the validity issues through the prerequisite claim construction determination.

### 3.    Changed Claims Will Affect Roche's Claim To Damages

Roche also asserts that reexamination will not affect the issue of damages.  (*Roche Opposition Brief* at 12.)  Again, Roche is overreaching.  First, damages are only found if infringement and validity are established.  Second, damages measured by either lost profits or a reasonable royalty both require first defining the patented subject matter.  *See Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156-58 (6th Cir. 1978) (patent owner must prove "demand for patented product" to obtain lost profits; a reasonable royalty compensates the patent owner for another's manufacture and sale of "the patented article").  "It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is

- 14 -

entitled the right to exclude." *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004). Therefore, a factfinder cannot determine damages until the patented invention is defined – which is dependent upon knowing the scope and meaning of the relevant patent claims, which the Court cannot delineate until it construes the claim language. Like infringement and validity, any material amendment of the claims emerging from reexamination will also impact the damages issues.

### 4.    Reexamination May Invalidate All The Roche Patent Claims – Even If The Prior Art Was Previously Cited To The PTO

In the alternative, Roche argues that "[e]ven if the PTO grants the requests and conducts a full examination, the PTO is ultimately expected to allow the current claims." (*Roche Opposition Brief* at 1.) To support this argument, Roche relies entirely on its conclusory assertion that the reexamination prior art was previously cited to and supposedly considered by the PTO.

First, Roche's position is factually flawed. Roche's contention that the anticipatory prior art was considered by the PTO is apparently based entirely on the following: "The Examiner explicitly checked off the WO 626 reference as having been considered in both of these applications." (*Roche Opposition Brief* at 7.) But Roche does not point to anywhere in the patent prosecution histories where the Examiner commented on or analyzed WO 626. What, if anything, the Examiner did to examine the WO 626 reference is not clear from the prosecution history of the patents-in-suit. *See Rocep Lusol Holdings Ltd. v. Permatex, Inc.*, 470 F. Supp. 2d 448, 456 (D. Del. 2007) (questioning whether PTO actually considered reference where only

evidence is Examiner's initials on the Information Disclosure Citation form provided by the patent applicant).

Roche's position, to the extent it suggests a patent cannot be invalidated based on previously considered prior art, is also legally flawed. Even assuming that the PTO initially considered the anticipatory reference Abbott relied upon, that fact alone is not determinative of the patentability issue either in the context of a reexamination or in a subsequent challenge to the patent's validity before a district court.

As Roche well knows, there is no presumption of validity in a reexamination proceeding. *See In re Etter*, 756 F.2d 852, 858 (Fed. Cir. 1985):

> The innate function of the reexamination process is to increase the reliability of the PTO's action in issuing a patent by reexamination of patents thought "doubtful." When the patent is concurrently involved in litigation, an auxiliary function is to free the court from any need to consider prior art without the benefit of the PTO's initial consideration. In a very real sense, the intent underlying reexamination is to "start over" in the PTO with respect to the limited examination areas involved, and to *re*examine the claims, and to *examine* new or amended claims, as they would have been considered if they had been originally examined in light of all of the prior art of record in the reexamination proceeding.

*Id.* at 857 (emphasis in original) (citation omitted). The PTO can determine that a substantial new question of patentability exists on the basis of a prior art reference – whether or not it was previously of record in the initial examination of the patent prior to issuance. Specifically, 35 U.S.C. § 303(a) provides, "The existence of a substantial new question of patentability is <u>not</u> <u>precluded by the fact that a patent or printed publication was previously cited</u> by or to the Office or considered by the Office." 35 U.S.C. § 303(a) (emphasis added).

Further, courts frequently invalidate issued patents based upon prior art that the PTO had originally considered. *See Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348, 1372 (Fed. Cir. 2007)

- 16 -

(finding obviousness based in part on reference before PTO); *Prima Tek II, L.L.C. v. Polypap, S.A.R.L.*, 412 F.3d 1284, 1287 (Fed. Cir. 2005) (finding anticipation based on reference before PTO); *Celeritas Techs., Ltd. v. Rockwell Int'l Corp.*, 150 F.3d 1354, 1360-61 (Fed. Cir. 1998) (same). In fact, district courts and the Federal Circuit have found patents anticipated on the basis of a reference that had been submitted to the PTO before the patent issued. *See Liebel-Flarsheim Co. v. Medrad, Inc.*, 481 F.3d 1371, 1381 (Fed. Cir. 2007) (affirming grant of summary judgment of anticipation based on reference before PTO); *IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377, 1381-83 (Fed. Cir. 2005) (same); *Brown v. 3M*, 265 F.3d 1349, 1352-53 (Fed. Cir. 2001) (same); *see also Prima Tek II*, 412 F.3d at 1287.

A stay of litigation pending the determination of the PTO's reexamination will simplify or moot the issues before this Court. Further, the grant of a stay will benefit the Court in resolving any issues that remain by ensuring the availability of the PTO's expertise and experience. A stay promotes efficiency, conserves resources, and avoids the potential for inconsistent rulings or issuance of merely advisory opinions. *See DexCom*, 2006 WL 2375035, at *6. Lastly, the PTO's reexamination of all the claims in the patents-in-suit is likely to prevent either the parties or the Court from litigating claims that the PTO may declare void. For all these reasons, Abbott submits that both efficiency and judicial economy favor staying this lawsuit.

### D. The Court Should Not Deny Abbott's Motion To Stay Based On LifeScan's Motion To Sever And "Partial Opposition"

When counsel for Abbott consulted with defense counsel for the other parties to this action prior to filing its Motion To Stay Pending Reexamination (D.I. 36), counsel for LifeScan, Inc. ("LifeScan") indicated that it did not oppose Abbott's motion. (D.I. 36-3.) LifeScan,

- 17 -

however, now urges in its Motion To Sever And Partial Opposition To Abbott's Motion To Stay Pending Reexamination ("Motion To Sever") that the Court should sever the claims between Roche and LifeScan from this action and, in addition, that the Court should not stay those claims. (D.I. 59.)

Roche unilaterally joined Abbott with the other defendants in this suit, and the Court should not allow the posture taken by the other defendants to prejudice Abbott. Abbott is not related to any of the other four defendants in this action, and, as far as Abbott is aware, none of the other four defendants are related to each other. All of the defendants in this action are competitors in the field of glucose monitoring. Each defendant has an unrelated accused product line or lines. At the time Abbott filed its Motion To Stay, none of the defendants had filed an Answer or other response to Roche's Complaint. At the time Abbott filed its Motion To Stay, Abbott complied with its obligations under Delaware Local Rule 7.1.1 and understood that none of the other defendants opposed Abbott's Motion To Stay. The responses of numerous unrelated co-defendants to Roche's Complaint should not cause the Court to prejudice Abbott or deny its Motion To Stay.

If the Court is concerned about prejudice to other defendants, the Court can grant Abbott's Motion To Stay without prejudicing LifeScan.[16] LifeScan has not articulated any opposition to Abbott's Motion To Stay other than that it would prefer to proceed with its separate claims. In fact, LifeScan states that it "takes no position on Abbott's Motion for Stay as it

---

[16]Interestingly, none of the other defendants has opposed a stay of their counterclaims against Roche pending reexamination, including Nova Biomedical Corporation ("Nova"). Thus, Roche's concern that Nova's counterclaims will proceed without permitting Roche's infringement claim to move forward is unfounded. (*See Roche Opposition Brief* at 12.)

- 18 -

pertains to Abbott and the other defendants." (D.I. 60 at 1.) The Court could sever the claims between Roche and LifeScan (as LifeScan has requested) and stay the remainder of the case. The Court could also, at the Scheduling Conference, provide each defendant with the opportunity to opt out of Roche's joinder of the defendants. LifeScan has not presented any argument that the Court should deny Abbott's Motion To Stay as to any defendant other than LifeScan.

## CONCLUSION

A stay of this litigation pending the outcome of the reexaminations of the patents-in-suit will not unduly prejudice or disadvantage Roche. This Court and all parties to this case will benefit from not having to engage in wasteful litigation over claims that are likely to change or even cease to exist. In the event any of Roche's patent claims survive reexamination, the parties can focus discovery appropriately on the claims as they exist after the PTO completes reexamination. Certainly the expert discovery and claim construction stages, both of which are claim scope intensive, will be conducted more efficiently by waiting until the reexamination process is complete. If Roche's unsupported propositions were the law, no district court would have ever stayed a case due to pending reexamination proceedings.

In sum, Abbott respectfully submits that balancing all three factors, the Court should determine that issuance of a stay pending reexamination is warranted in this case. Accordingly, Abbott respectfully submits that the Court grant its Motion To Stay.

- 19 -

OF COUNSEL:

Edward A. Mas II
Stephen F. Sherry
Kirk Vander Leest
James M. Hafertepe
McAndrews, Held & Malloy, Ltd.
500 West Madison Street, 34th Floor
Chicago, Illinois 60661
(312) 775-8000

*Anne Shea Gaza*

Frederick L. Cottrell, III (#2555)
cottrell@rlf.com
Anne Shea Gaza (#4093)
gaza@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
P.O. Box 551
920 N. King Street
Wilmington, DE 19899
(302) 651-7700

*Attorneys for Abbott Diabetes Care Inc. and
Abbott Diabetes Care Sales Corp.*

Dated:  February 1, 2008

- 20 -

## CERTIFICATE OF SERVICE

I hereby certify that on February 1, 2008, I caused to be served by electronic service and

hand delivery the foregoing document and electronically filed the same with the Clerk of Court

using CM/ECF which will send notification of such filing(s) to the following:

Philip A. Rovner
Potter Anderson & Corroon LLP
1313 N. Market Street
P.O. Box 951
Wilmington, DE 19899-0951

Mary W. Bourke
Connolly, Bove, Lodge & Hutz LLP
The Nemours Building
1007 N. Orange Street
P.O. Box 2207
Wilmington, DE 19899-1347

John W. Shaw
Jeffrey T. Castellano
Young, Conaway, Stargatt & Taylor, LLP
1000 West Street, 17th Floor
Wilmington, DE 19801

Rodger D. Smith, II
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899

Steven J. Balick
Lauren E. Maguire
Ashby & Geddes
500 Delaware Avenue, 8th Floor
P. O. Box 1150
Wilmington, DE  19899

I hereby certify that on February 1, 2008, the foregoing document was sent via electronic

mail to the following non-registered participants:

Daniel A. Boehnen
Grantland G. Drutchas
McDonnell Boehnen Hulbert
 & Berghoff LLP
300 South Wacker Drive
Chicago, IL  60606

Ashley L. Ellis
Parker Poe Adams & Bernstein LLP
Three Wachovia Center, Suite 3000
401 South Tryon Street
Charlotte, NC 28202

Wesley E. Overson
Rachel Krevans
Jason R. Bartlett
Parisa Jorjani
Daniel P. Muino
Morrison & Foerster LLP
425 Market Street
San Francisco, California 94105-2482

Joseph M. Casino
Kenneth P. George
Amster, Rothstein & Ebenstein, LLP
90 Park Avenue
New York, NY   10016

Bradford J. Badke
Ropes & Gray
1211 Avenue of the Americas
New York, NY 10036-8704

Nancy Tinsley, Esquire
Roche Diagnostics
9115 Hague Road
Indianapolis, IN   46250

Anne Shea Gaza (#4093)
gaza@rlf.com