## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROCHE DIAGNOSTICS OPERATIONS, INC., | ) | |
| and CORANGE INTERNATIONAL LIMITED, | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 07-753-JJF |
| | ) | |
| ABBOTT DIABETES CARE, | ) | |
| INC., and ABBOTT DIABETES CARE | ) | |
| SALES CORPORATION, | ) | |
| BAYER HEALTHCARE, LLC, | ) | |
| DIAGNOSTIC DEVICES, INC., | ) | |
| LIFESCAN, INC., and | ) | |
| NOVA BIOMEDICAL CORPORATION, and | ) | |
| SAN VITA INCORPORATED, | ) | |
| Defendants. | ) | |

### DIAGNOSTIC DEVICES, INC.'S MOTION FOR PROTECTIVE ORDER

Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, Diagnostic Devices, Inc. ("DDI") hereby moves for a Protective Order limiting the subject matter and breadth of the discovery sought by plaintiffs Roche Diagnostics Operations, Inc. and Corange International Limited ("Plaintiffs") in the form of interrogatories, requests for production of documents and depositions to only those topics that (a) directly relate to DDI, and not Additional Corporations; and (b) directly relate to DDI's contacts with Delaware, and not with any other state.

### BACKGROUND

Plaintiffs filed the Complaint in this action on November 21, 2007. D.I. 1. DDI filed a Motion to Dismiss for Lack of Personal Jurisdiction on January 11, 2008. D.I. 44. Plaintiffs served "jurisdictional discovery" on DDI on January 29, 2008, and notices of deposition on DDI on March 6, 2008. This discovery is the basis of this motion for protective order.

Plaintiffs have issued over broad discovery requests and deposition notices to DDI, which essentially seek discovery into every aspect of DDI's business. Specifically, the requests are

overly broad and unduly burdensome because they seek: (a) information relating to DDI's

contacts outside of Delaware; (b) information related to entities other than DDI; and (c)

information which is not relevant to the issue of jurisdiction over DDI in Delaware, but rather

goes to the merits of this action. Plaintiffs have failed to make a prima facie showing of

jurisdiction over DDI and have failed to provide any reason why their overbroad requests are

relevant to the issue of personal jurisdiction. DDI seeks a protective order limiting Plaintiffs'

jurisdictional discovery to matters which relate to DDI's contacts with the state of Delaware.

## STATEMENT OF FACTS

On January 29, 2008, Plaintiffs served DDI with Interrogatories and forty-six Requests

for Production of Documents (collectively, "Discovery Requests"). (A copy of the

Interrogatories are filed herewith as Exhibit A; a copy of the Document Requests are filed

herewith as Exhibit B.) On February 28, 2008, DDI responded to the Discovery Requests by

stating its objections and providing all relevant responsive information and documents. (A copy

of DDI's Responses to the Interrogatories are filed herewith as Exhibit C; a copy of DDI's

Responses to the Document Requests are filed herewith as Exhibit D.) On March 5 and 6, 2008,

Plaintiffs' counsel sent two letters to DDI contesting its objections to the Discovery Requests.

DDI's counsel responded to these letters on March 7, 2008, requesting that Plaintiffs' counsel

provide a basis for its assertion that its overbroad requests seek information that is truly relevant

to the issue of personal jurisdiction. (Copies of the letters between DDI and Plaintiffs are filed

herewith as Exhibit E.) Plaintiffs have failed to provide this information.

On March 6, 2008, Plaintiffs noticed the 30(b)(6) deposition of DDI and listed twenty-

one topics as the subject matter of the deposition ("Deposition Topics"), the majority of which

were over broad or irrelevant to the issue of jurisdiction. (A copy of the 30(b)(6) notice issued

by Plaintiffs is filed herewith as <u>Exhibit F</u>.) Plaintiffs also noticed the depositions of four of DDI's employees. Plaintiffs' counsel informed DDI that they intended to examine each of these witnesses on the same or similar topics as those stated in the Discovery Requests and 30(b)(6) notice.

On March 10, 2008, DDI's Counsel conducted a telephone conference with Plaintiffs' Counsel to discuss the Discovery Requests and Deposition Topics. During the telephone conference, DDI's Counsel requested that Plaintiffs limit their Discovery Requests and Deposition Topics to issues that only related to DDI's contacts with Delaware. Plaintiffs' Counsel refused to limit any of their discovery requests or deposition topics in any way.

## **ARGUMENT**

DDI does not dispute that Plaintiffs are entitled to limited discovery relating to DDI's Motion to Dismiss for Lack of Personal Jurisdiction. In fact, DDI has attempted in good faith to respond to Plaintiffs' discovery with all relevant information and documents. However, much of the "discovery" sought by Plaintiffs is not relevant to the issue of jurisdiction over DDI in Delaware for this action and is therefore unduly burdensome and oppressive. Plaintiffs' Document Requests essentially ask for every single document in DDI's possession, through requests as broad as "all documents…referring to or relating to the annual and total gross revenues of DDI." (See Document Request No. 13)

**A. Plaintiffs fail to make any prima facie showing of personal jurisdiction that would warrant such broad discovery, nor have Plaintiffs shown the relevance of such information to the issue of personal jurisdiction as is required in this District.**

Plaintiffs' only allegation of jurisdiction over DDI in their Complaint states:

> Personal jurisdiction over DDI comports with the United States Constitution and Section 3104 of the Delaware Code because, on information and belief, ***DDI has committed acts of patent infringement*** in the United States, such acts including the ***sale of infringing devices within Delaware*** such that it has purposefully availed itself of the privilege of conducting activities within this District.

Complaint, D.I. 1, ¶ 14 (emphasis added).

Yet, Plaintiffs have provided no evidence that DDI has made, used, or sold infringing devices within Delaware or that DDI has purposefully availed itself of the privilege of conducting activities within Delaware. Rather than seeking discovery limited to this issue, *Plaintiffs seek over broad discovery from DDI that relates to all of DDI's sales of all of its products nationwide, DDI's contacts in states other than Delaware, the business information of entities other than DDI, and information that goes to the merits of the lawsuit,* which is contrary to the law in this District. *See Hanson v. Neumueller*, 163 F.R.D. 471, 474-76 (D.Del. 1995) (requiring that plaintiff provide some showing of personal jurisdiction to proceed with *limited discovery* on that *narrow issue* and stating, "*It would be inappropriate for this court to allow plaintiff to conduct a fishing expedition in order to construct a basis for jurisdiction*") (emphasis added); *Tracinda Corp. v. Daimlerchrysler AG*, 197 F.Supp. 2d 86, 94 (D.Del. 2002) ("The court may allow the plaintiff to take *jurisdictional* discovery, *if* the plaintiff has made a colorable or prima facie showing of personal jurisdiction") (emphasis added).

**B. Plaintiffs' Discovery Requests and Deposition Topics impose an undue burden on DDI by seeking information relating to DDI's sales and contacts in states other than Delaware, which information is not relevant to the issue of DDI's contacts with Delaware.**

1. Information relating to DDI's nationwide sales and general contacts with other states is irrelevant to the issue of personal jurisdiction.

A large number of Plaintiffs' Discovery Requests and Deposition Topics request information and documents relating to DDI's contacts with any state in the United States or the "Northeast Region of the United States" (which Plaintiffs define as Maine, New Hampshire, Vermont, Massachusetts, Rhode Island, Connecticut, New York, New Jersey, Pennsylvania, Delaware, Maryland, and Washington, D.C.). *See* the Definitions in Exhibits A and B.

As an example, Document Request No. 13 requests:

> All documents and things concerning, referring to or relating to the annual and total gross revenues of DDI and/or any of the Additional Corporations from sales, either direct or indirect, to persons located in the United States of any Electrochemical Sensors.

This request would require DDI to produce *every document it has relating to its annual and total gross revenues,* with no time limitation, regardless of whether such revenues resulted from sales in the state of Delaware. Despite DDI's objection and request that this request be narrowed, Plaintiffs refuse to narrow this request to apply only to revenues or sales involving the state of Delaware.

Additional examples are Deposition Topics Nos. 7 and 9 which would require a DDI representative to be prepared to testify about all communications DDI has ever had with any chain retailer or managed care company. Deposition Topic No. 10 requires a DDI representative to be prepared to testify about DDI's presence at any tradeshow anywhere in the world and what occurred at each of those tradeshows. It would be unduly burdensome, if not impossible, for a DDI representative to be prepared to testify about every single contact DDI has ever had with a chain retailer, managed care company or customer at a tradeshow, especially when such contacts have no relation to Delaware.

The following Discovery Requests and Deposition Topics suffer from this same over breadth:

- Interrogatories Nos. 2, 3, 5 and 7;
- Document Requests Nos. 2, 3, 4, 5, 6, 7, 8, 9, 10, 13, 22, 24, 25, 26, 27, 30, 38, and 41;
- Deposition Topics 7, 9, 10, 16, and 17.

The key issues for determining personal jurisdiction, as Plaintiffs stated in their Complaint, are (i) whether DDI itself has committed acts of patent infringement in Delaware and

(ii) whether DDI has purposefully availed itself of the privilege of conducting activities within Delaware. In *Intel Corp. v. Silicon Storage Tech.*, Inc., 20 F. Supp. 2d 690, 696 (D.Del. 1998), this Court stated that, "an act must be directed at residents of the state of Delaware and the protection of its laws." *See also, Bielicki v. Pakistan Nat'l Shipping Corp., et al.,* 1987 WL 13342, *2 (E.D. Pa.) (holding that ***"inquiries concerning [the defendant's] contacts with the other forty-nine states are irrelevant to the determination of jurisdiction"*** in the state of Pennsylvania) (emphasis added) (citing *Dent v. Cunningham*, 786 F.2d 173, 175 (3d Cir. 1986)). Accordingly, only DDI's contacts with Delaware are relevant to the personal jurisdiction inquiry.

Despite DDI's request, Plaintiffs have refused to limit any of these topics to relate to the state of Delaware in any way. DDI now requests that the Court so limit the Discovery Requests and Deposition Topics to relate only to DDI's contacts with the state of Delaware.

       2. <u>Information relating to DDI's distributors outside of Delaware is not relevant to the personal jurisdiction inquiry.</u>

As DDI has previously informed Plaintiffs, DDI does not have any distributors in Delaware and is not aware that any of its distributors are selling or offering for sale any of DDI's products in Delaware. (See Admani Affidavit, D.I. 46, ¶ 5; Response to Int. No. 2 at Exhibit C.) DDI does not have any contracts with distributors to sell its products in Delaware. (Response to Int. No. 15 at Exhibit C.) Additionally, DDI has searched it warranty registrations and does not have any warranties registered in Delaware, which is the easiest way to determine where DDI's products end up. (*See* Declaration of Timothy DuBois, filed as <u>Exhibit G</u>, served on Plaintiffs with Discovery Responses.) Accordingly, DDI has not intentionally or knowingly sold, directly or indirectly, its products in Delaware and is not aware that any of its products are actually being sold in Delaware.

Yet, Plaintiffs' Discovery Requests and Deposition Topics essentially request <u>all</u> information relating to all of DDI's distributors regardless of subject matter or geographical reach. For example, Document Request No. 15 requests:

> All documents that identify all distributors, wholesalers, dealers, resellers, online vendors, and suppliers with a place of business located in the United States with whom DDI and/or any of the Additional Corporations has entered into or attempted to enter into contracts, and documents sufficient to show the annual and total gross revenues to DDI and/or any of the Additional Corporations from sales under contracts with such distributors, wholesalers, dealers, resellers, online vendors, and suppliers.

This request would require DDI to produce *a list of every customer it has, **and** every potential customer it has ever unsuccessfully pursued, and every document it has relating to sales to those customers,* regardless of the subject matter or whether such customers have any relation to the state of Delaware whatsoever. Despite DDI's objection and request that this request be narrowed, Plaintiffs refuse to narrow this Request to apply only to customers or sales in or involving the state of Delaware

Additionally, Deposition Topic No. 3 states "All contacts between DDI (including its officers, directors, employees, distributors and sales representatives) and any person or entity who is a reseller (i.e. not an end-user) of DDI products." (*See* Deposition Topics in Exhibit E.) *This topic requires a DDI representative to be prepared to testify about every single contact DDI has ever had with every distributor or reseller of its products*, which are DDI's primary customers since DDI does not sell direct to the end-user of the product. Again, Plaintiffs have made no limitations to their request based on subject matter or geographic reach. Document Request No. 1 and Deposition Topic No. 6 suffer from this same over breadth.

The discovery conference with Plaintiffs' counsel makes clear that Plaintiffs will attempt to rely on *Beverly Hills Fan Co. v. Royal Sovereign Corp.,* 21 F.3d 1558 (Fed. Cir. 1994), for the proposition that they are entitled to discovery about every single one of DDI's distributors. In

*Beverly Hills Fan*, the plaintiff alleged that the defendants were intentionally importing alleged infringing products into the jurisdiction through an intermediary, Builders Square. Specifically, the complaint alleged as follows:

> Ultec has for a time and *still is* infringing and inducing infringement of the [`229 patent] by *selling* ceiling fans embodying the patented invention *to customers* in the United States including customers *in the Eastern District of Virginia through intermediaries* and will *continue* to do so unless enjoined by the court.

*Id.* at 1563. The defendants denied that they sold any product directly into Virginia, but never denied the allegation that they sold allegedly infringing products "*in the Eastern District of Virginia through intermediaries.*" *Id.* The court made clear that the intermediary was Builder's Square, *Id.* at 1564, which had six retail outlets in Virginia. *Id.* at 1560. A private investigator purchased a fan at one of those outlets and discovered 52 of the accused fans available for sale. *Id.* at 1561-1562. The court held that "the commercial relationship with Builder's Square was ongoing, and obviously intentional." *Id.* at 1564.

In the present case, there is no allegation of jurisdiction through the intentional sale of allegedly infringing products through an intermediary into Delaware. To date, Plaintiffs have only produced <u>one</u> instance of an alleged sale of a DDI infringing product in Delaware at a Shop-Rite store. When DDI contacted the Shop-Rite store, it learned that the product was not in stock and that the device must have been secured by a special order arranged by Plaintiffs. Although Plaintiffs state that they have made several other purchases of DDI products in Delaware, they have not, despite DDI's request, shared any of this information with DDI or otherwise stated how this information shows that DDI has acted through an intentionally established channel of distribution to make its products available in Delaware. Unlike the defendants in *Beverly Hills*

*Fan,* DDI has specifically denied doing so and therefore should not be subjected to unlimited open-ended full discovery of all of DDI's business information.

The District of Delaware has specifically addressed this situation in *Intel, supra,* stating, "The mere ability to respond to potential customer orders and inquiries does not constitute a regular course of conduct in the forum." *Intel,* 20 F. Supp. 2d at 699 (finding that a single shipment of goods to Intel's local counsel is not sufficient to confer jurisdiction under the Delaware long-arm statute). *World-Wide Volkswagen,* 444 U.S. 286, 100 S.Ct. 559 (1980), which was agreed with in *Beverly Hills Fan,* makes it clear that personal jurisdiction is not proper where the sale of a product is simply an isolated occurrence, rather than an action purposefully directed by the defendant toward the forum. Plaintiffs (competitors of DDI) want DDI to turn over a list of every distributor, regardless of the distributor's size or location, so that Plaintiffs can subpoena documents from DDI's customers in an effort to either develop a new theory for jurisdiction or drive DDI's customers away. Plaintiffs are not entitled to conduct such a fishing expedition with no basis simply to try to find a way to construct jurisdiction over DDI. *See Hanson, supra,* at 474-75. DDI cannot allow its customers to be subjected to such harassment and undue burden when Plaintiffs have failed to make even a prima facie case that DDI has a distributor selling in Delaware. Accordingly, Plaintiffs' discovery requests relating to DDI's distributors should be limited to those with sales or contacts in Delaware.

**C. Plaintiffs' Discovery Requests and Deposition Topics impose an undue burden on DDI by seeking information relating to entities other than DDI, which information is *not relevant* to the issue of DDI's contacts with Delaware.**

Plaintiffs' Discovery Requests ask for information and documents relating to a number of "Additional Corporations", defined by Plaintiffs to include Z & Z Medical, Inc., ACP Medical Devices, Inc., American Laboratories, Inc. Automated Devices, Inc., Vitalcare Group, Inc. and

their "predecessors, parents, subsidiaries, divisions, licensees, franchisees, assigns or other related business entities, its directors, officers, employees, agents distributors, jobbers, salespersons, interns, sales representatives and attorneys, and each person acting or purporting to act on its or their behalf or under its or their control." (See the Definitions in Exhibits A and B attached.)

The following Discovery Requests include requests for information or documents from these "Additional Corporations":

- Interrogatories Nos. 1, 2, 3, 4, 5, 6 and 7; and

- Document Requests Nos. 1, 3, 7, 8, 10, 11, 12, 13, 14, 15, 41, 42, 43, and 44.

All of these "Additional Corporations" are separate and distinct legal entitles and are not parties to this lawsuit. Plaintiffs' Complaint only alleges a cause of action against <u>DDI</u> - that "***DDI has committed acts of patent infringement***" in the state of Delaware. The Complaint does not allege any intermediary, agency or alter ego theory. Accordingly, other corporations with possible Delaware contacts are irrelevant to the issue of jurisdiction over DDI in Delaware.

Additionally, Plaintiffs cannot use their discovery requests in an effort to find new parties or new theories. Rule 26 only allows discovery that relates to "the claim or defense of any party" in the underlying litigation. FED. R. CIV. P. 26(b)(1). Significantly, Rule 26(b)(1) was modified in 2000 to limit discovery to "claims or defenses," in order to avoid what Plaintiffs are attempting to do. The Advisory Committee Notes for the 2000 amendments to Rule 26 plainly state that "The rule change ... signals to the parties that they have ***no entitlement to discovery to develop new claims or defenses*** that are ***not already identified in the pleadings***." Rule 26(b)(1) Advisory Committee Notes (emphasis added).

Plaintiffs have not asserted any claims against the "Additional Corporations", and it is not proper for Plaintiffs to conduct a fishing expedition for information for use in possibly developing a claim against the Additional Corporations or a new theory against DDI.

**D.    Plaintiffs' Deposition Topics seek discovery relating to the merits of the case, which is not relevant to the issue of personal jurisdiction.**

Deposition Topics Nos. 1, 4, 13, and 18 all encompass topics which go to the merits of the lawsuit. For example, Topic No. 4 requires a DDI representative to testify about all contacts DDI has ever had with Taidoc Technology Corporation, a manufacturer located in Taiwan. When DDI's Counsel requested that Plaintiffs limit this request to only relate to DDI's contacts with Taidoc to the extent they reach Delaware, Plaintiffs refused, claiming that they wanted to be able to ask any questions about Taidoc. This topic would allow Plaintiffs to ask questions regarding the design and manufacture of DDI's products, which have no relation to jurisdiction. As provided in the Scheduling Order filed in this matter pursuant to the Court's Order on February 28, 2008, DDI should not be subjected to merits discovery while it has a motion to dismiss for lack of personal jurisdiction pending. *See Tracinda Corp., supra,* 197 F.Supp. 2d at 94 (allowing the plaintiff to conduct limited discovery on the issue of personal jurisdiction).

DDI requests that the court limit the Deposition Topics to subject matters solely relating to the issue of personal jurisdiction over DDI in Delaware.

## CONCLUSION

For the foregoing reasons, DDI respectfully requests that this Court grant a Protective Order limiting the topics on which Plaintiffs may conduct discovery to those which directly relate to DDI's contacts with the state of Delaware.

ASHBY & GEDDES

*/s/ Lauren E. Maguire*

_____
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
302-654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Defendant Diagnostic Devices, Inc.*

*Of Counsel:*

Michael G. Adams
Ashley L. Ellis
Morgan H. Rogers
Parker Poe Adams & Bernstein LLP
Three Wachovia Center, Suite 3000
401 South Tryon Street
Charlotte, North Carolina 28202
704-372-9000

Dated:  March 12, 2008

## <u>CERTIFICATION PURSUANT TO LOCAL RULE 7.1.1</u>

I hereby certify that counsel have discussed the subject matter of the attached motion, but that an agreement could not be reached.


*/s/ Lauren E. Maguire*

_____

Lauren E. Maguire

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ROCHE DIAGNOSTICS OPERATIONS INC.          )
and CORANGE INTERNATIONAL LIMITED,         )
                                           )
                  Plaintiffs,              )
                                           )
            vi.                            )          C.A. No. 07-753-JJF
                                           )
ABBOTT DIABETES CARE, INCORPORATED,        )
ABBOTT DIABETES CARE SALES CORPORATION,    )
BAYER HEALTHCARE LLC, DIAGNOSTIC           )
DEVICES INC., LIFESCAN INCORPORATED, and   )
NOVA BIOMEDICAL CORPORATION,               )
                                           )
                  Defendants.              )

## ORDER

This _____ day of _____, 2008, defendant Diagnostic Devices, Inc.

("DDI") having filed a motion for protective order limiting the subject matter and breadth of the

discovery sought by plaintiffs Roche Diagnostics Operations, Inc. and Corange International

Limited in the form of interrogatories, requests for production of documents and depositions to

only those topics that (a) directly relate to DDI, and not Additional Corporations; and (b) directly

relate to DDI's contacts with Delaware, and not with any other state, and after considering the

positions of the parties, having concluded that good grounds exist for the requested relief; now

therefore

IT IS HEREBY ORDERED that DDI's motion for protective order is **GRANTED**.

_____
United States District Judge

{00201681;v1}

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ROCHE DIAGNOSTICS OPERATIONS, INC., and CORANGE INTERNATIONAL LIMITED, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | C.A. No. 07-753-JJF |
| ABBOTT DIABETES CARE, INCORPORATED, and ABBOTT DIABETES CARE SALES CORPORATION, | ) ) ) ) ) | DEMAND FOR JURY TRIAL |
| BAYER HEALTHCARE, LLC, | ) ) | |
| DIAGNOSTIC DEVICES, INC., | ) ) | |
| LIFESCAN, INCORPORATED, and | ) ) | |
| NOVA BIOMEDICAL CORPORATION, and SANVITA INCORPORATED, | ) ) ) | |
| Defendants. | ) | |

**ROCHE DIAGNOSTICS OPERATIONS, INC.'S AND CORANGE INTERNATIONAL**
**LIMITED'S FIRST SET OF INTERROGATORIES (NOS. 1-9)**
**TO DEFENDANT DIAGNOSTIC DEVICES, INC.**

Plaintiffs Roche Diagnostics Operations, Inc. ("RDOI") and Corange International Limited

("Corange") (collectively "Plaintiffs") propound the following Interrogatories to Defendant

Diagnostic Devices, Inc. ("DDI"), pursuant to Rules 26 and 33 of the Federal Rules of Civil

Procedure and the Local Rules of the U.S. District for the District of Delaware. The written

responses to these Interrogatories shall be served on Plaintiffs' counsel within thirty (30) days of the

service thereof, or on any other date ordered by the Court or agreed to by the parties. Further, any

documents and things produced in response to these Interrogatories shall be produced for inspection

and copying at the offices of Plaintiffs' counsel, McDonnell Boehnen Hulbert & Berghoff LLP, 300

S. Wacker Dr., Chicago, Illinois 60606, within thirty (30) days from the service of these

Interrogatories, or on any other date ordered by the Court or agreed to by the parties.

All Interrogatories propounded by Plaintiffs are deemed to be continuing in nature so as

to require supplementation promptly following the discovery of additional documents or things

or knowledge or information by DDI to the extent such documents or things or knowledge or

information is responsive to Plaintiffs' Interrogatories.

## DEFINITIONS

For the purposes of responding to the following Interrogatories, the following definitions

shall apply:

1.      The term "RDOI" shall mean Roche Diagnostics Operations, Inc. and/or any

company name under which RDOI is doing or has done business; its predecessors, parents,

subsidiaries, divisions, licensees, franchisees, assigns or other related business entities; its

directors, officers, employees, agents, distributors, jobbers, salespersons, interns, sales

representatives and attorneys; and each person acting or purporting to act on its or their behalf or

under its or their control.

2.      The term "Corange" shall mean Corange International Limited and/or any

company name under which Corange is doing or has done business; its predecessors, parents,

subsidiaries, divisions, licensees, franchisees, assigns or other related business entities; its

directors, officers, employees, agents, distributors, jobbers, salespersons, interns, sales

representatives and attorneys; and each person acting or purporting to act on its or their behalf or

under its or their control.

3.      The term "Plaintiffs" shall mean RDOI and Corange.

4.     The terms "Defendant," "DDI," "you" and "your" shall mean Diagnostic Devices,

Inc. and/or any company name under which Diagnostic Devices, Inc. is doing or has done

business; its predecessors, parents, subsidiaries, divisions, licensees, franchisees, assigns or other

related business entities; its directors, officers, employees, agents, distributors, jobbers,

salespersons, interns, sales representatives and attorneys; and each person acting or purporting to

act on its or their behalf or under its or their control.

5.     The terms "person" or "persons" shall mean natural persons (including but not

limited to those employed by Defendant) and all other legally cognizable entities, including

(without limitation) governmental entities, agencies, officers, departments or affiliates of the

United States of America or any other governmental entity; commercial entities such as

corporations, foundations, partnerships and proprietorships; associations; organization; and

groups of natural persons.

6.     The term "date" shall mean the exact day, month and year, if ascertainable, or, if

not, Defendant's closest approximation (including but not limited to an identification of

relationship to other events).

7.     The term "document(s)" shall have the broadest meaning accorded to it by Rule

34 of the Federal Rules of Civil Procedure, and shall include, without limitation, any recording in

any tangible form of any information, whether handwritten, typed, printed, stored on computer

disks, tapes or databases (including electronic files and e-mail) or otherwise reproduced.

"Document" also includes all drafts and copies that are not identical to the original.

8.     The term "thing(s)" shall have the broadest meaning accorded to it by Rule 34 of

the Federal Rules of Civil Procedure, and shall include, without limitation, every kind of

physical specimen or tangible item, other than a document, in the possession, custody or control of Defendant.

9.    The term "communication" shall mean any disclosure, transmission or exchange of information from one person or entity to another, including without limitation by personal meeting, telephone, facsimile, radio, telegraph, electronic mail, teleconference, writing or other means.

10.    The terms "concerning," "referring to" and "relating to" shall be interpreted so as to encompass the liberal scope of discovery set forth in Rule 26(b) of the Federal Rules of Civil Procedure, and shall mean for example and without limitation, refer, relate, analyze, concern, constitute, contain, contradict, describe, discuss, evaluate, evidence, pertain, reflect, refute or support.

11.    The term "including" shall be construed broadly, and shall encompass "including but not limited to" or "including without limitation."

12.    The terms "identify," "identification," "describe," or "description" shall mean to provide a complete identification of the document, thing, or person to the fullest extent known or ascertainable by Defendant, whether or not the information is in the possession, custody, or control of Defendant and whether or not the information is alleged to be protected by any privilege or work product protection, and includes without limitation a request for the following information:

(a)    with respect to a natural person, his or her name; home and work addresses and telephone numbers; present (or if unknown, the last known) place of employment; date(s) of commencement and termination of employment; job title; and description of his or her duties and responsibilities;

4

(b)    with respect to a corporation or other legal entity, the full name; state of incorporation or registration; address of its principal place of business; telephone number of its principal place of business; and the identity of each natural person who acted on behalf of such entity with respect to the subject matter of the document request;

(c)    with respect to a document, the type of document (e.g., letter, e-mail, facsimile, contract, calendar, report); the number of pages of which the document consists; a general description of the document's contents; an identification of each person(s) who prepared the document, who signed the document, for whom it was prepared, to whom it was delivered, mailed, or otherwise received, and to whom a copy was sent or who otherwise received a copy; the date of writing, creation or publication; the identifying number(s), letter(s), or combination thereof, if any, and the significance or meaning of such number(s), letter(s) or combination thereof; and present location and identity of the custodian of that document. Documents to be identified shall include documents currently in your possession, custody or control; documents you know to have once existed but that no longer exist; and other documents of which you have knowledge or information but that are not currently in your possession, custody or control;

(d)    with respect to a product or to equipment, the common name of the product or equipment; the trade, brand, or commercial name of the product or equipment; the model, part number, catalog number, and/or serial number of the product or equipment; the manufacturer and vendor of the product or equipment; and the use and/or function of the product or equipment;

(e)    with respect to an activity, the events and/or occurrences that comprise the activity; the persons involved in the activity; the dates when the activity occurred; and the locations where the activity occurred;

(f)    with respect to oral communications, the manner in which the communications were made (telephone, conversation, etc.); the identity of each person who participated in or witnessed the communication; and the subject matter and content of the communication; and the date of the communication;

(g)    with respect to a patent or patent application, the country or jurisdiction in which it was filed; the number; the named inventor(s); the filing date; the issue date (if a patent); and all related or foreign counterpart applications and patents; and

(h)    with respect to films, photographs, tapes, computer media, and other things susceptible to chemical, biological, mechanical, or electrical reproduction, all identifying information including their character; subject matters; authors; and dates.

13.    The terms "and," "or" and "and/or" shall be construed disjunctively or conjunctively as necessary in order to bring within the scope of the request all responses which otherwise might be construed to be outside its scope.

14.    The term the "146 patent" shall mean U.S. Pat. No. 7,276,146.

15.    The term the "147 patent" shall mean U.S. Pat. No. 7,276,147.

16.    The term "patents-in-suit" shall mean the 146 patent and the 147 patent either collectively or individually, as well as any other patent(s) that may be subsequently added to the litigation.

17.    The term "Complaint" shall mean Plaintiffs' "Complaint for Patent Infringement" filed by Plaintiffs in this action on or about November 21, 2007, as well as any amended complaints that may be filed.

18.    The terms "prior art" includes, by way of example and without limitation, any subject matter that you assert may be encompassed by 35 U.S.C. §103 and/or any subdivision of 35 U.S.C. §102.

19.    The term "Electrochemical Sensor" shall mean any sensor device made, used, sold, offered for sale, or imported, by DDI or any of the Additional Corporations capable of being used to determine the concentration of glucose in a blood sample, including but not necessarily limited to the specific electrochemical sensors identified in the Complaint. The Electrochemical Sensors includes (without limitation) test strips or equivalent devices alone or in combination with a meter or equivalent device capable of receiving the test strips and participating in the determination of the concentration of glucose in a blood sample.

20.    The term "Additional Corporations" shall mean A & Z Medical, Inc., a corporation registered with the Department of the Secretary of State of North Carolina and having a registered mailing address of 9300 Harris Corners Parkway, Charlotte, NC 28269; ACP Medical Devices, Inc., a corporation registered with the Department of the Secretary of State of North Carolina and having a registered mailing address of 9300 Harris Corners Parkway, Suite 450, Charlotte, NC 28269; American Laboratories, Inc., a corporation registered with the Department of the Secretary of State of North Carolina and having a registered mailing address of 9300 Harris Corners Parkway, Suite 450, Charlotte, NC 28269; Automated Devices, Inc., a corporation registered with the Department of the Secretary of State of North Carolina and having a registered mailing address of 9300 Harris Corners Parkway; and Vitalcare Group, Inc., a corporation registered with the Department of the Secretary of State of Florida and having a registered mailing address of 8935 NW 27th St., Miami, FL 33172; and/or any company name under which the Additional Corporations are doing or have done business; their predecessors,

7

parents, subsidiaries, divisions, licensees, franchisees, assigns or other related business entities; its directors, officers, employees, agents, distributors, jobbers, salespersons, interns, sales representatives and attorneys; and each person acting or purporting to act on its or their behalf or under its or their control.

21.    The term "online vendors" shall mean vendors offering Electrochemical Sensors, including Defendant's Electrochemical Sensors, for sale over the internet, including but not limited to the following vendors: Amazon.com, doing business on the internet at www.amazon.com; Medex Supply, doing business on the internet at www.medexsupply.com; American Diabetes Wholesale, doing business on the internet at www.americandiabeteswholesale.com; Wholesale Drugstore-OTC, doing business on the internet at www.otcwholesale.com; and Amelia Home Health Services, doing business on the internet at www.ameliahomehealth.com.

22.    The term "purchased" shall mean actual purchases, attempts to purchase, inquiries regarding purchasing, or other transfers or attempts to transfer goods.

23.    The term "Northeast region of the United States" shall mean the geographical region containing all of the following, any one of the following, or any combination of following states or regions: Maine, New Hampshire, Vermont, Massachusetts, Rhode Island, Connecticut, New York, New Jersey, Pennsylvania, Delaware, Maryland, and Washington D.C.

## INSTRUCTIONS

1.    If you produce responsive documents pursuant to Federal Rule of Civil Procedure 33(d), the original and each non-identical copy of each document or other tangible thing requested herein which is in your possession, custody or control, or that of any of your agents, attorneys, consultants, advisors, associates, accountants, employees, representatives or

investigators, is to be produced, including company, department, and personal files. If the original or original carbon copy is not in your possession, custody or control, or that of your agents, attorneys, consultants, advisors, associates, accountants, employees, representatives or investigators, a full, clear, legible copy thereof is to be produced.

2.      If any portion of any Interrogatory refers to information of which Defendant were once aware but is no longer within Defendant's knowledge, Defendant is requested to identify the name, telephone number, and address of the person last known by Defendant to have knowledge of such information.

3.      Each Interrogatory shall be responded to fully unless it is in good faith objected to, in which event every reason for your objection shall be stated in detail. If an objection pertains to only a portion of an Interrogatory, or a word, phrase or clause contained within it, you are required to state your objection to that portion only and to respond to the remainder of the Interrogatory to the fullest extent possible.

4.      If you produce responsive documents pursuant to Federal Rule of Civil Procedure 33(d), each document and thing produced is to be (i) identified in your written response hereto to correspond with the categories of the Interrogatory in response to which it is being produced or (ii) produced as it is kept in the usual course of business, including all file folders, binder, notebooks and other devices by which each such document or this is organized or separated.

5.      If the attorney-client privilege or work product immunity is asserted as to any information requested in an Interrogatory, set forth your response hereto with respect to all information for which a claim of privilege is made such that the document or thing is not produced in full:

        (a)      the specific ground(s) for not producing the document or thing in full;

(b)    the bases for such a claim of privilege or immunity, including a statement of sufficient relevant facts and circumstances that will explain the basis of the claim of privilege and will permit the adjudication of the propriety of the claim of privilege; and

(c)    fully identify the information, document, or material for which such privilege or immunity is asserted, including the type of any document or thing withheld (e.g., letter, memorandum, etc.); the subject matter of any document, communication, or other information withheld; the date of recording, creating or otherwise preparing any document or thing; the name of any document or thing; the name, address and title of its author or creator; the name, address and title of each person (other than stenographic or clerical assistants) participating in the preparation or creation of any document or thing; the name, address and title of each addressee, recipient and/or custodian of the document or thing, or a copy of the document or thing; the name, address and title of each person to whom the contents of the information or any portion thereof have heretofore been communicated by copy, exhibition, reading or summarization; and the location(s) where, if at all, information has been redacted on any document or thing thus produced.

6.    No Interrogatory or subpart hereof shall be construed as a limitation on any other Interrogatory or subpart hereof.

7.    Any word written in the singular herein shall be construed as plural or *vice versa* as necessary to bring within the scope of the Interrogatory all responses which otherwise might be construed to be outside its scope.

10

## INTERROGATORIES

## INTERROGATORY NO. 1

Describe fully the relationship among DDI and each of the Additional Corporations including but not limited to the organizational structure of each corporation; the nature of the business of each corporation; the number and identification of common directors, officers, employees, agents, distributors, jobbers, salespersons, interns, sales representatives and attorneys; the ownership of each corporation; and the three most knowledgeable persons regarding any facts that relate to the relationship among DDI and each of the Additional Corporations.

## INTERROGATORY NO. 2

Describe fully the relationship between DDI (and/or any of the Additional Corporations) and any other party, including but not limited to online vendors, who has purchased Electrochemical Sensors and who resells such Electrochemical Sensors to any of the states on the Northeast Region of the United States whether through retail outlets, direct mail or internet, including but not limited to an identification of the identity of the persons; the amount of sales (or other transfer) made or anticipated to be made to each such person, including sales (or other transfer) by unit volume and sales dollars; and all documents relating to such sales of such units.

## INTERROGATORY NO. 3

Identify the total sales (by unit volume and sales dollars) of all Electrochemical Sensors sold by DDI and/or any of the Additional Corporations, whether directly by DDI and/or any of the Additional Corporations or indirectly through one or more third parties, including but not limited to online vendors, through any distribution channels, into the United States and the total sales (by unit volume and sales dollars) of all Electrochemical Sensors sold by DDI and/or any

11

of the Additional Corporations, whether directly by DDI and/or any of the Additional

Corporations or indirectly through one or more third parties, including but not limited to online

vendors, through any distribution channels, into the state of Delaware.

**INTERROGATORY NO. 4**

Identify all contacts and communications between DDI and/or any of the Additional

Corporations and chain retailers with outlets in the state of Delaware, including but not limited to

Happy Harry's, Rite Aid, Shop Rite, Eckerd, Walmart, Target, Super G, Pathmark, and any

parent corporations, subsidiaries, or related entities thereof.

**INTERROGATORY NO. 5**

Identify all sales and marketing personnel employed by DDI and/or any of the Additional

Corporations and describe each person's responsibilities including but not limited to the regions

and customers (including distributors, retailers or internet supply houses) within the US assigned

to each person, and identify all documents related to such persons and their responsibilities

including but not limited to job descriptions and sales and marketing materials.

**INTERROGATORY NO. 6**

Identify all business connections between the state of Delaware and DDI (and/or any of

the Additional Corporations or any personnel of DDI and/or the Additional Corporations),

including but not limited to (i) sales calls on persons or companies within the State of Delaware,

(ii) prior lawsuits in Delaware, (iii) meetings with Delaware counsel, (iv) property owned in

Delaware, (v) bank accounts in Delaware banks, (vi) products sold in Delaware, and (vii)

contracts executed in Delaware, with Delaware corporations, or with Delaware as the choice of

law, and for each such connection, identify the nature of the contact, when such connection

began, whether such connection continues, and, if not, when it stopped, any  personnel of DDI

and/or the Additional Corporations involved in or knowledgeable regarding the contact, and any documents reflecting or referring to such contact.

## INTERROGATORY NO. 7

Identify all publications distributed or circulated throughout the United States and/or in the state of Delaware in which DDI and/or any of the Additional Corporations advertises or promotes Electrochemical Sensors.

## INTERROGATORY NO. 8

State whether any DDI Electrochemical Sensors are advertised or otherwise displayed on any internet website and, for each such internet website, identify the internet address, the company that maintains the website, the company that pays for maintenance of said website, the company that authorized the advertisement or display of such Electrochemical Sensors on said website, the number of hits for each such website from the state of Delaware, and, to the extent available, the address and entity of each person from the state of Delaware who accessed such information.

## INTERROGATORY NO. 9

Describe fully the warranty or warranties offered by DDI and/or any of the Additional Corporations to each consumer for any Electrochemical Sensors sold, whether directly by DDI and/or any of the Additional Corporations or indirectly through one or more third parties, including but not limited to online vendors, including the procedure(s) to be used by a consumer for warranty registration, the length of the warranties, the procedure(s) to be used by a consumer for contacting DDI and/or any of the Additional Corporations to make a claim under the warranties, the procedure(s) to be used by a consumer to obtain a replacement Electrochemical

Sensor and/or to have an Electrochemical Sensor repaired, all warranty registrations for any

Electrochemical Sensors from any address in the state of Delaware, and any documents

reflecting or referring to such warranties.


POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Daniel A. Boehnen                    By: _____
Grantland G. Drutchas
McDonnell Boehnen Hulbert & Berghoff LLP    Philip A. Rovner (#3215)
300 South Wacker Drive                       Hercules Plaza
Chicago, IL 60606                            P.O. Box 951
(312) 913-0001                               Wilmington, DE 19899-0951
                                             (302) 984-6000
                                             provner@potteranderson.com
Dated:  January 29, 2008
845200                                       *Attorney for Plaintiffs*
                                             *Roche Diagnostics Operations, Inc. and*
                                             *Corange International Limited*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I, Philip A. Rovner, hereby certify that on January 29, 2008, the within document

was served on the following counsel of record, at the addresses and in the manner

indicated:

## BY HAND DELIVERY AND E-MAIL

Frederick L. Cottrell, III, Esq.
Anne Shea Gaza, Esq.
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, DE  19801
cottrell@rlf.com
gaza@rlf.com

John W. Shaw, Esq.
Jeffrey T. Castellano, Esq.
Young Conaway Stargatt & Taylor, LLP
1000 West Street, 17th Floor
Wilmington, DE  19801
jshaw@ycst.com
jcastellano@ycst.com

Mary W. Bourke, Esq.
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 N. Orange Street
Wilmington, DE  19801
mbourke@cblh.com

Rodger D. Smith, Esq.
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899
rsmith@mnat.com

Steven J. Balick, Esq.
John G. Day, Esq.
Ashby & Geddes
500 Delaware Avenue
8th Floor
P.O. Box 1150
Wilmington, DE  19899
sbalick@ashby-geddes.com
jday@ashby-geddes.com

**BY E-MAIL**

Edward A. Mas, II, Esq.
Stephen F. Sherry, Esq.
Kirk Vander Leest, Esq.
James M. Hafertepe, Esq.
Merle S. Elliott, Esq.
McAndrews, Held & Malloy, Ltd.
500 West Madison Street
34th Floor
Chicago, IL 60661
emas@mcandrews-ip.com
ssherry@mcandrews-ip.com
kvanderleest@mcandrews-ip.com
jhafertepe@mcandrews-ip.com
melliott@mcandrews-ip.com

Kenneth P. George, Esq.
Joseph M. Casino, Esq.
Amster, Rothstein & Ebenstein LLP
90 Park Avenue
New York, NY 10016
kgeorge@arelaw.com
jcasino@arelaw.com

Bradford J. Badke, Esq.
Sona De, Esq.
Michael Kahn, Esq.
Ropes & Gray LLP
1211 Avenue of the Americas
New York, NY 10036-8704
Jim.badke@ropesgray.com
Sona.de@ropesray.com
Michael.kahn@ropesgray.com

Wesley E. Overson, Esq.
Rachel Krevans, Esq.
Jason R. Bartlett, Esq.
Parisa Jorjani, Esq.
Daniel P. Muino, Esq.
Morrison & Foerster LLP
425 Market Street
San Francisco, CA 94105-2482
woverson@mofo.com
rkrevans@mofo.com
jasonbartlett@mofo.com
pjorjani@mofo.com
dmuino@mofo.com

Michael G. Adams, Esq.
Ashley L. Ellis, Esq.
Parker Poe Adams & Bernstein LLP
Three Wachovia Center, Suite 3000
401 South Tryon Street
Charlotte, NC 28202
mikeadams@parkerpoe.com
ashleyellis@parkerpoe.com

Philip A. Rovner (#3215)
Potter Anderson & Corroon LLP
Hercules Plaza
P.O. Box 951
Wilmington, Delaware 19899
(302) 984-6000
E-mail: provner@potteranderson.com

# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ROCHE DIAGNOSTICS OPERATIONS, INC., and CORANGE INTERNATIONAL LIMITED, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | C.A. No. 07-753-JJF |
| ABBOTT DIABETES CARE, INCORPORATED, and ABBOTT DIABETES CARE SALES CORPORATION, | ) ) ) ) ) | DEMAND FOR JURY TRIAL |
| BAYER HEALTHCARE, LLC, | ) ) | |
| DIAGNOSTIC DEVICES, INC., | ) ) | |
| LIFESCAN, INCORPORATED, and | ) ) | |
| NOVA BIOMEDICAL CORPORATION, and SANVITA INCORPORATED, | ) ) ) | |
| Defendants. | ) | |

**ROCHE DIAGNOSTICS OPERATIONS, INC.'S AND CORANGE INTERNATIONAL LIMITED'S FIRST SET OF REQUESTS TO DEFENDANT DIAGNOSTIC DEVICES, INC. FOR THE PRODUCTION OF DOCUMENTS AND THINGS (NOS. 1-46)**

Plaintiffs Roche Diagnostics Operations, Inc. ("RDOI") and Corange International Limited ("Corange") (collectively "Plaintiffs") propound the following requests to Defendant Diagnostic Devices, Inc. ("DDI") for the production of the documents and things specified below for inspection and copying pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and the Local Rules of the U.S. District for the District of Delaware. The documents shall be produced for inspection and copying at the offices of Plaintiffs' counsel, McDonnell Boehnen Hulbert & Berghoff LLP, 300 S. Wacker Dr., Chicago, Illinois 60606, within thirty (30) days from the service

of these requests, or on any other date ordered by the Court or agreed to by the parties, and copying and inspection shall continue from day to day thereafter until completed. Additionally, DDI shall serve written responses to these requests on Plaintiffs' counsel within thirty (30) days of the service hereof, or on any other date ordered by the Court or agreed to by the parties.

All requests propounded by Plaintiffs are deemed to be continuing in nature so as to require supplementation promptly following the discovery of additional information by DDI to the extent such information is responsive to Plaintiffs' requests.

## DEFINITIONS

For the purposes of responding to the following requests for production of documents and things, the following definitions shall apply:

1.     The term "RDOI" shall mean Roche Diagnostics Operations, Inc. and/or any company name under which RDOI is doing or has done business; its predecessors, parents, subsidiaries, divisions, licensees, franchisees, assigns or other related business entities; its directors, officers, employees, agents, distributors, jobbers, salespersons, interns, sales representatives and attorneys; and each person acting or purporting to act on its or their behalf or under its or their control.

2.     The term "Corange" shall mean Corange International Limited and/or any company name under which Corange is doing or has done business; its predecessors, parents, subsidiaries, divisions, licensees, franchisees, assigns or other related business entities; its directors, officers, employees, agents, distributors, jobbers, salespersons, interns, sales representatives and attorneys; and each person acting or purporting to act on its or their behalf or under its or their control.

3.     The term "Plaintiffs" shall mean RDOI and Corange.

2

4.     The terms "Defendant," "DDI," "you" and "your" shall mean Diagnostic Devices, Inc. and/or any company name under which DDI is doing or has done business; its predecessors, parents, subsidiaries, divisions, licensees, franchisees, assigns or other related business entities; its directors, officers, employees, agents, distributors, jobbers, salespersons, interns, sales representatives and attorneys; and each person acting or purporting to act on its or their behalf or under its or their control.

5.     The terms "person" or "persons" shall mean natural persons (including but not limited to those employed by Defendant) and all other legally cognizable entities, including (without limitation) governmental entities, agencies, officers, departments or affiliates of the United States of America or any other governmental entity; commercial entities such as corporations, foundations, partnerships and proprietorships; associations; organization; and groups of natural persons.

6.     The term "date" shall mean the exact day, month and year, if ascertainable, or, if not, Defendant's closest approximation (including but not limited to an identification of relationship to other events).

7.     The term "document(s)" shall have the broadest meaning accorded to it by Rule 34 of the Federal Rules of Civil Procedure, and shall include, without limitation, any recording in any tangible form of any information, whether handwritten, typed, printed, stored on computer disks, tapes or databases (including electronic files and e-mail) or otherwise reproduced. "Document" also includes all drafts and copies that are not identical to the original.

8.     The term "thing(s)" shall have the broadest meaning accorded to it by Rule 34 of the Federal Rules of Civil Procedure, and shall include, without limitation, every kind of

physical specimen or tangible item, other than a document, in the possession, custody or control of Defendant.

      9.     The term "communication" shall mean any disclosure, transmission or exchange of information from one person or entity to another, including without limitation by personal meeting, telephone, facsimile, radio, telegraph, electronic mail, teleconference, writing or other means.

      10.    The terms "concerning," "referring to" and "relating to" shall be interpreted so as to encompass the liberal scope of discovery set forth in Rule 26(b) of the Federal Rules of Civil Procedure, and shall mean for example and without limitation, refer, relate, analyze, concern, constitute, contain, contradict, describe, discuss, evaluate, evidence, pertain, reflect, refute or support.

      11.    The term "including" shall be construed broadly, and shall encompass "including but not limited to" or "including without limitation."

      12.    The terms "identify," "identification," "describe," or "description" shall mean to provide a complete identification of the document, thing, or person to the fullest extent known or ascertainable by Defendant, whether or not the information is in the possession, custody, or control of Defendant and whether or not the information is alleged to be protected by any privilege or work product protection, and includes without limitation a request for the following information:

      (a)    with respect to a natural person, his or her name; home and work addresses and telephone numbers; present (or if unknown, the last known) place of employment; date(s) of commencement and termination of employment; job title; and description of his or her duties and responsibilities;

4

(b)     with respect to a corporation or other legal entity, the full name; state of incorporation or registration; address of its principal place of business; telephone number of its principal place of business; and the identity of each natural person who acted on behalf of such entity with respect to the subject matter of the document request;

(c)     with respect to a document, the type of document (e.g., letter, e-mail, facsimile, contract, calendar, report); the number of pages of which the document consists; a general description of the document's contents; an identification of each person(s) who prepared the document, who signed the document, for whom it was prepared, to whom it was delivered, mailed, or otherwise received, and to whom a copy was sent or who otherwise received a copy; the date of writing, creation or publication; the identifying number(s), letter(s), or combination thereof, if any, and the significance or meaning of such number(s), letter(s) or combination thereof; and present location and identity of the custodian of that document.  Documents to be identified shall include documents currently in your possession, custody or control; documents you know to have once existed but that no longer exist; and other documents of which you have knowledge or information but that are not currently in your possession, custody or control;

(d)     with respect to a product or to equipment, the common name of the product or equipment; the trade, brand, or commercial name of the product or equipment; the model, part number, catalog number, and/or serial number of the product or equipment; the manufacturer and vendor of the product or equipment; and the use and/or function of the product or equipment;

(e)     with respect to an activity, the events and/or occurrences that comprise the activity; the persons involved in the activity; the dates when the activity occurred; and the locations where the activity occurred;

(f)    with respect to oral communications, the manner in which the communications were made (telephone, conversation, etc.); the identity of each person who participated in or witnessed the communication; and the subject matter and content of the communication; and the date of the communication;

(g)    with respect to a patent or patent application, the country or jurisdiction in which it was filed; the number; the named inventor(s); the filing date; the issue date (if a patent); and all related or foreign counterpart applications and patents; and

(h)    with respect to films, photographs, tapes, computer media, and other things susceptible to chemical, biological, mechanical, or electrical reproduction, all identifying information including their character; subject matters; authors; and dates.

13.    The terms "and," "or" and "and/or" shall be construed disjunctively or conjunctively as necessary in order to bring within the scope of the request all responses which otherwise might be construed to be outside its scope.

14.    The term the "146 patent" shall mean U.S. Pat. No. 7,276,146.

15.    The term the "147 patent" shall mean U.S. Pat. No. 7,276,147.

16.    The term "patents-in-suit" shall mean the 146 patent and the 147 patent either collectively or individually, as well as any other patent(s) that may be subsequently added to the litigation.

17.    The term "Complaint" shall mean Plaintiffs' "Complaint for Patent Infringement" filed by Plaintiffs in this action on or about November 21, 2007, as well as any amended complaints that may be filed.

18.     The phrase "Requests for Reexamination" shall mean the requests that were filed with the United States Patent and Trademark Office on or about December 14, 2007 seeking *ex parte* reexamination of all of the claims of the patents-in-suit

19.     The terms "prior art" includes, by way of example and without limitation, any subject matter that you assert may be encompassed by 35 U.S.C. §103 and/or any subdivision of 35 U.S.C. §102.

20.     The phrase "Electrochemical Sensor" shall mean any sensor device made, used, sold, offered for sale, or imported, by DDI or any of the Additional Corporations capable of being used to determine the concentration of glucose in a blood sample, including but not necessarily limited to the specific electrochemical sensors identified in the Complaint. The Electrochemical Sensors includes (without limitation) test strips or equivalent devices alone or in combination with a meter or equivalent device capable of receiving the test strips and participating in the determination of the concentration of glucose in a blood sample.

21.     The term "Additional Corporations" shall mean A & Z Medical, Inc., a corporation registered with the Department of the Secretary of State of North Carolina and having a registered mailing address of 9300 Harris Corners Parkway, Charlotte, NC 28269; ACP Medical Devices, Inc., a corporation registered with the Department of the Secretary of State of North Carolina and having a registered mailing address of 9300 Harris Corners Parkway, Suite 450, Charlotte, NC 28269; American Laboratories, Inc., a corporation registered with the Department of the Secretary of State of North Carolina and having a registered mailing address of 9300 Harris Corners Parkway, Suite 450, Charlotte, NC 28269; Automated Devices, Inc., a corporation registered with the Department of the Secretary of State of North Carolina and having a registered mailing address of 9300 Harris Corners Parkway; and Vitalcare Group, Inc.,

7

a corporation registered with the Department of the Secretary of State of Florida and  having a

registered mailing address of 8935 NW 27th St., Miami, FL 33172; and/or any company name

under which the Additional Corporations are doing or have done business; their predecessors,

parents, subsidiaries, divisions, licensees, franchisees, assigns or other related business entities;

its directors, officers, employees, agents, distributors, jobbers, salespersons, interns, sales

representatives and attorneys; and each person acting or purporting to act on its or their behalf or

under its or their control.

22.    The term "online vendors" shall mean vendors offering Electrochemical Sensors,

including Defendant's Electrochemical Sensors, for sale over the internet, including but not

limited to the following vendors: Amazon.com, doing business on the internet at

www.amazon.com; Medex Supply, doing business on the internet at www.medexsupply.com;

American Diabetes Wholesale, doing business on the internet at

www.americandiabeteswholesale.com; Wholesale Drugstore-OTC, doing business on the

internet at www.otcwholesale.com; and Amelia Home Health Services, doing business on the

internet at www.ameliahomehealth.com.

23.    The term "purchased" shall mean actual purchases, attempts to purchase, inquiries

regarding purchasing, or other transfers or attempts to transfer goods.

24.    The term "Northeast region of the United States" shall mean the geographical

region containing all of the following, any one of the following, or any combination of following

states or regions: Maine, New Hampshire, Vermont, Massachusetts, Rhode Island, Connecticut,

New York, New Jersey, Pennsylvania, Delaware, Maryland, and Washington D.C.

## INSTRUCTIONS

1.    The original and each non-identical copy of each document or other tangible thing requested herein which is in your possession, custody or control, or that of any of your agents, attorneys, consultants, advisors, associates, accountants, employees, representatives or investigators, is to be produced, including company, department, and personal files.  If the original or original carbon copy is not in your possession, custody or control, or that of your agents, attorneys, consultants, advisors, associates, accountants, employees, representatives or investigators, a full, clear, legible copy thereof is to be produced.

2.    If any portion of any document request refers to documents of which Defendant is aware or which were at one time within Defendant's possession, custody, or control, but which are not now subject to Defendant's possession, custody, or control, Defendant is requested to identify such documents in a manner sufficient to describe such documents for a subpoena *duces tecum*, together with the name, telephone number, and address of the person last known by Defendant to have been in possession, custody, or control of such documents.

3.    Where an objection is made to a document request, state all grounds upon which your objection is based and produce the requested documents to the fullest extent possible subject to any stated objection.

4.    If the attorney-client privilege or work product immunity is asserted as to any document or thing, or if any document or thing is not produced in full, produce the document or thing to the extent the request for production is not objected to, and, in so doing, state the following:

(a)    the specific ground(s) for not producing the document or thing in full;

(b)    the bases for such a claim of privilege or immunity, including a statement

9

of sufficient relevant facts and circumstances that will explain the basis of the claim of privilege and will permit the adjudication of the propriety of the claim of privilege; and

(c)    fully identify the information, document, or material for which such privilege or immunity is asserted, including the type of any document or thing withheld (e.g., letter, memorandum, etc.); the subject matter of any document, communication, or other information withheld; the date of recording, creating or otherwise preparing any document or thing; the name of any document or thing; the name, address and title of its author or creator; the name, address and title of each person (other than stenographic or clerical assistants) participating in the preparation or creation of any document or thing; the name, address and title of each addressee, recipient and/or custodian of the document or thing, or a copy of the document or thing; the name, address and title of each person to whom the contents of the information or any portion thereof have heretofore been communicated by copy, exhibition, reading or summarization; and the location(s) where, if at all, information has been redacted on any document or thing thus produced.

5.    If you maintain that any document or thing requested has been destroyed, lost or is otherwise unavailable, set forth the contents of the document or thing, the location of any copies of the document or thing, the date of its destruction and the name of the person who ordered or authorized its destruction (if any).

6.    If, after exercising due diligence, Defendant is unable to determine the existence of any documents or things falling within a document request, Defendant shall so state in its written response required by Rule 34 of the Federal Rules of Civil Procedure.

7.    No document request or subpart hereof shall be construed as a limitation on any other document request or subpart hereof.

8.    Any word written in the singular herein shall be construed as plural or *vice versa* as necessary to bring within the scope of the request all responses which otherwise might be construed to be outside its scope.

9.    These requests shall be deemed to include all available English translations of every document requested.

10.    Documents should be produced as they are kept in the files of Defendant or shall be organized and labeled to correspond with the requests below.  If documents are not produced as they are kept in the files of Defendant, sufficient information should be provided to permit Plaintiffs to identify the source of particular documents from within the filed of Defendant.

11.    Documents from any single file should be produced in the same order as they were found in such file.  If copies of documents are produced, such copies should be legible and bound or stapled in the same manner as the original.

## REQUESTS

1.    All documents and things concerning, referring to or relating to any sales and/or marketing of any of Defendant's Electrochemical Sensors in the Northeast region of the United States, and also specifically in the state of Delaware, including but not limited to direct sales, sales by any of the Additional Corporations or other related entities, sales by online vendors, or sales through distributors, wholesalers, dealers, jobbers, resellers, retail chains or other retailers, or suppliers.

2.    All documents and things identifying the names, titles, and responsibilities of all persons having any role in the sales and/or marketing of any of Defendant's Electrochemical Sensors in the Northeast region of the United States, and also specifically in the state of Delaware.

3.    All documents and things concerning, referring or relating to marketing products by DDI

11

and/or any of the Additional Corporations within any state or area that includes any part of the Northeast region of the United States, including but not limited to the state of Delaware.

      4.     All documents and things concerning, referring or relating to marketing Electrochemical Sensors within any state or area that includes any part of the Northeast region of the United States, including but not limited to the state of Delaware.

      5.     All documents and things concerning, referring or relating to marketing Electrochemical Sensors to customers within any state or area that includes any part of the Northeast region of the United States, including but not limited to the state of Delaware.

      6.     All documents and things concerning, referring to or relating to any retention of sales representatives or marketing representatives located in the United States for any DDI Electrochemical Sensors or persons responsible for soliciting sales from persons located in the United states for any such products, including any documents referring or relating to:

        a.   duties or responsibilities of the representatives;

        b.   territories assigned to the representatives;

        c.   customers and potential customers located in the territories assigned to the representatives;

        d.   products handled by the representatives;

        e.   the number of persons located in the United States that have been contacted by the representatives; and

        f.   the identity of the persons located in Delaware that have been contacted by the representative assigned to the territory that includes the state of Delaware.

      7.     All documents and things concerning, referring to or relating to any discussions,

negotiations, or agreements among DDI and any of the Additional Corporations relating to the grant of any rights for practicing, using, developing, manufacturing, distributing, selling or offering for sale any Electrochemical Sensors in the United States and in the state of Delaware.

8.      All documents and things concerning, referring to or relating to any discussions, negotiations, or agreements made or in effect among DDI and any of the Additional Corporations, or any subsidiary, division, or affiliate thereof, including documents the subject matter of which is in whole or in part joint promotion, marketing or sales plans or efforts.

9.      All documents and things concerning, referring to or relating to any study, projection, market or other evaluation or analysis of past, current or future sales or revenues for any of the Defendant's Electrochemical Sensors in the Northeast region of the United States, and also specifically in the state of Delaware.

10.      All documents and things concerning, referring to or relating to business plans of DDI and/or any of the Additional Corporations relating to the sale and/or marketing of Electrochemical Sensors.

11.      All documents and things concerning, referring to or relating to any contacts between DDI and/or any of the Additional Corporations and chain retailers with outlets in the State of Delaware, including but not limited to Happy Harry's, Rite Aid, Shop Rite, Eckerd, Walmart, Target, Super G, Pathmark, and any parent corporations, subsidiaries, or related entities thereof.

12.      All documents and things concerning, referring to or relating to any sales made by DDI and/or any of the Additional Corporations, directly or indirectly, to chain retailers with outlets in the State of Delaware, including but not limited to Happy Harry's, Rite Aid, Shop Rite, Eckerd, Target, Super G, Pathmark, and any parent corporations, subsidiaries, or related entities

13

thereof.

13.     All documents and things concerning, referring to or relating to the annual and total gross revenues of DDI and/or any of the Additional Corporations from sales, either direct or indirect, to persons located in the United States of any Electrochemical System.

14.     All documents and things concerning, referring to or relating to the annual and total gross revenues of DDI and/or any of the Additional Corporations from sales, either direct in indirect, to persons located in the state of Delaware.

15.     All documents that identify all distributors, wholesalers, dealers, resellers, online vendors, and suppliers with a place of business located in the United States with whom DDI and/or any of the Additional Corporations has entered into or attempted to enter into contracts, and documents sufficient to show the annual and total gross revenues to DDI and/or any of the Additional Corporations from sales under contracts with such distributors, wholesalers, dealers, resellers, online vendors, and suppliers.

16.     All documents and things concerning, referring to or relating to communications from or to Delaware persons or entities.

17.     All documents and things concerning, referring to or relating to Defendant's offers for sale or the absence of offers for sale to persons or entities in the state of Delaware.

18.     All documents and things concerning, referring to or relating to any inquiries from Delaware persons or entities for Defendant's services or products.

19.     All documents and things concerning, referring to or relating to any possible confusion by Delaware consumers as to the source of Defendants' goods or services.

20.     All telephone records showing calls from Defendant to any person or entity in the state of Delaware.

21.    All telephone records showing calls to Defendant from any person or entity in the state of Delaware.

22.    All documents and things concerning, referring to or relating to Defendant's internet site www.prodigymeter.com, including but not limited to all Webtrends reports, information relating to internet "hits," search engine keywords leading to Defendants' internet web site, the physical locations by state of computers accessing www.prodigymeter.com (available as a Webtrends report), etc.

23.    All documents and things concerning, referring to or relating to any of Defendant's advertising or absence of advertising to persons or entities in the state of Delaware.

24.    All documents and things concerning, referring to or relating to Defendant's advertising, including but not limited to copies of advertisements and the geographic reach of such advertising.

25.    All documents and things concerning, referring to or relating to Defendant's television advertising, including but not limited to the market reached by such advertising.

26.    All documents and things concerning, referring to or relating to Defendant's internet advertising, including but not limited to the market reached by such advertising.

27.    All promotional materials from Defendant's providers of advertising and marketing services.

28.    All documents and things concerning, referring to or relating to any plan or study of Defendant conducting business, directly or indirectly, in the state of Delaware.

29.    All documents and things concerning, referring to or relating to any promotion or absence of promotion to persons or entities in the state of Delaware.

30.    All contracts between Defendant and the providers of Defendant's advertising and

15

marketing services.

     31.     All communications between Defendant and Defendants' providers of marketing and promotion services relating in any way to the state of Delaware or any Delaware persons or entities.

     32.     All documents showing the presence or absence of advertising of Defendant's services or products to Delaware residents.

     33.     All invoices, bills, literature, promotional material, or other documents sent to any entity or consumer located in the state of Delaware.

     34.     All documents and things concerning, referring to or relating to any correspondence or communications to or from any Delaware entity or resident.

     35.     All documents and things concerning, referring to or relating to any correspondence or communications involving Defendant that was sent to the state of Delaware.

     36.     All e-mail communications from any entity or person in the state of Delaware relating to Defendant's business, products, and/or services.

     37.     All e-mail communications from any entity or person in the state of Delaware relating to Plaintiffs' business, products, and/or services.

     38.     All documents and things concerning, referring to or relating to any investigation, test marketing, or market research relating to Defendants products and services.

     39.     All documents and things concerning, referring to or relating to Defendant's historical internet web site content, including but not limited to copies of all previous versions of Defendant's internet web site.

     40.     All documents and things concerning, referring to or relating to the development of Defendant's internet web site.

41.     All documents and things concerning, referring to or relating to any warranty offered by DDI and/or any of the Additional Corporations on any Electrochemical Sensors sold, whether directly or indirectly through one or more third parties, including but not limited to online vendors, into the Northeast region of the United States, and also specifically into the state of Delaware.

42.     All documents and things concerning, referring to or relating to any warranty registration made by a person located in the state of Delaware for any Electrochemical Sensor sold by DDI and/or any of the Additional Corporations, whether directly or indirectly through one or more third parties, including but not limited to online vendors.

43.     All documents and things concerning, referring to or relating to any claim on a warranty made by a person located in the state of Delaware for any Electrochemical Sensor sold by DDI and/or any of the Additional Corporations, whether directly or indirectly through one or more third parties, including but not limited to online vendors.

44.     All documents and things concerning, referring to or relating to any action taken by DDI and/or any of the Additional Corporations on any claim on a warranty made by a person located in the state of Delaware for any Electrochemical Sensor sold by DDI and/or any of the Additional Corporations, whether directly or indirectly through one or more third parties, including but not limited to online vendors.

45.     All documents requested for identification by Plaintiffs' First Set of Interrogatories to Defendant DDI (Nos. 1-9), served concurrently herewith.

46.     All documents relied upon, referred to or otherwise consulted directly or indirectly in responding to Plaintiffs' First Set of Interrogatories to Defendant DDI (Nos. 1-9), served concurrently herewith.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Daniel A. Boehnen
Grantland G. Drutchas
McDonnell Boehnen Hulbert & Berghoff LLP
300 South Wacker Drive
Chicago, IL 60606
(312) 913-0001


Dated:  January 29, 2008
845199

By:  _____
       Philip A. Rovner (#3215)
       Hercules Plaza
       P.O. Box 951
       Wilmington, DE 19899-0951
       (302) 984-6000
       provner@potteranderson.com

*Attorney for Plaintiffs*
*Roche Diagnostics Operations, Inc. and*
*Corange International Limited*

18

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, Philip A. Rovner, hereby certify that on January 29, 2008, the within document

was served on the following counsel of record, at the addresses and in the manner

indicated:

### BY HAND DELIVERY AND E-MAIL

Frederick L. Cottrell, III, Esq.
Anne Shea Gaza, Esq.
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, DE 19801
cottrell@rlf.com
gaza@rlf.com

John W. Shaw, Esq.
Jeffrey T. Castellano, Esq.
Young Conaway Stargatt & Taylor, LLP
1000 West Street, 17th Floor
Wilmington, DE 19801
jshaw@ycst.com
jcastellano@ycst.com

Mary W. Bourke, Esq.
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 N. Orange Street
Wilmington, DE 19801
mbourke@cblh.com

Rodger D. Smith, Esq.
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
rsmith@mnat.com

Steven J. Balick, Esq.
John G. Day, Esq.
Ashby & Geddes
500 Delaware Avenue
8th Floor
P.O. Box 1150
Wilmington, DE 19899
sbalick@ashby-geddes.com
jday@ashby-geddes.com

**BY E-MAIL**

Edward A. Mas, II, Esq.
Stephen F. Sherry, Esq.
Kirk Vander Leest, Esq.
James M. Hafertepe, Esq.
Merle S. Elliott, Esq.
McAndrews, Held & Malloy, Ltd.
500 West Madison Street
34th Floor
Chicago, IL  60661
emas@mcandrews-ip.com
ssherry@mcandrews-ip.com
kvanderleest@mcandrews-ip.com
jhafertepe@mcandrews-ip.com
melliott@mcandrews-ip.com

Kenneth P. George, Esq.
Joseph M. Casino, Esq.
Amster, Rothstein & Ebenstein LLP
90 Park Avenue
New York, NY  10016
kgeorge@arelaw.com
jcasino@arelaw.com

Bradford J. Badke, Esq.
Sona De, Esq.
Michael Kahn, Esq.
Ropes & Gray LLP
1211 Avenue of the Americas
New York, NY 10036-8704
Jim.badke@ropesgray.com
Sona.de@ropesray.com
Michael.kahn@ropesgray.com

Wesley E. Overson, Esq.
Rachel Krevans, Esq.
Jason R. Bartlett, Esq.
Parisa Jorjani, Esq.
Daniel P. Muino, Esq.
Morrison & Foerster LLP
425 Market Street
San Francisco, CA 94105-2482
woverson@mofo.com
rkrevans@mofo.com
jasonbartlett@mofo.com
pjorjani@mofo.com
dmuino@mofo.com

Michael G. Adams, Esq.
Ashley L. Ellis, Esq.
Parker Poe Adams & Bernstein LLP
Three Wachovia Center, Suite 3000
401 South Tryon Street
Charlotte, NC 28202
mikeadams@parkerpoe.com
ashleyellis@parkerpoe.com

Philip A. Rovner (#3215)
Potter Anderson & Corroon LLP
Hercules Plaza
P.O. Box 951
Wilmington, Delaware 19899
(302) 984-6000
E-mail: provner@potteranderson.com

-2-

EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROCHE DIAGNOSTICS OPERATIONS INC. and CORANGE INTERNATIONAL LIMITED, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 07-753-JJF |
| ABBOTT DIABETES CARE, INCORPORATED, ABBOTT DIABETES CARE SALES CORPORATION, BAYER HEALTHCARE LLC, DIAGNOSTIC DEVICES INC., LIFESCAN INCORPORATED, and NOVA BIOMEDICAL CORPORATION, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**DEFENDANT DIAGNOSTIC DEVICES, INC.'S ANSWERS TO
ROCHE DIAGNOSTICS OPERATIONS, INC.'S AND CORANGE
INTERNATIONAL LIMITED'S FIRST SET OF INTERROGATORIES (NOS. 1-9)**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, defendant

Diagnostic Devices, Inc. (DDI) responds to Plaintiffs' First Set of Interrogatories as follows:

**GENERAL OBJECTIONS**

To avoid undue and unnecessary repetition, DDI makes the following general and

continuing objections to the Interrogatories. All general and continuing objections apply to each

response to the Interrogatories, and specific and more generalized references to these objections

elsewhere in these responses are intended for emphasis only and do not constitute a waiver of

these general and continuing objections. Further, the assertion of additional specific objections

in response to the individual Interrogatories does not constitute a waiver of these general and

continuing objections.

1.      DDI objects to each and every Interrogatory to the extent that it calls for

information covered by the attorney/client privilege, the work product doctrine, or any other

applicable privilege or doctrine, and no such information will be produced. By producing

information in response to these Interrogatories, DDI does not waive, intentionally or otherwise, its attorney-client privilege, work product protection, or any other privilege protecting its communications, transactions or records from disclosure, and any production of information inconsistent with the foregoing is wholly inadvertent and does not constitute a waiver of any such privilege or protection.

2.    DDI objects to each and every Interrogatory, definition, or instruction to the extent that it purports to impose obligations on DDI beyond those set forth in the Federal Rules of Civil Procedure, the local rules of court or any court order that may be entered that governs discovery. Specifically, without limitation to the foregoing, DDI objects to the definitions and interrogatories as follows:

(a) DDI objects to the definition of, and corresponding requests for information relating to, "Additional Corporations" as such companies are separate and distinct entities from DDI and are not parties to this lawsuit; and

(b) DDI objects to the definition of, and corresponding requests for information relating to, "Northeast region of the United States" to the extent that it includes states other than Delaware, as DDI contacts with states other than Delaware are not relevant to the issue of personal jurisdiction in Delaware.

3.    DDI objects to each and every Interrogatory to the extent it seeks information that is not in the possession, custody, or control of DDI.

4.    DDI objects to each and every Interrogatory to the extent that it seeks any confidential information of DDI or any third party.

5.    DDI objects to each and every Interrogatory as being overly broad and unduly burdensome because it requests information for an unlimited period of time.

6.     DDI objects to each and every Interrogatory to the extent that it purports to require DDI to conduct an unreasonably broad or unduly burdensome search of its offices and/or files or to conduct an unduly burdensome production of any information.  Subject to and without waiving the foregoing, DDI will search for information only from those aspects of its business or individuals it reasonably believes have or may have relevant, non-privileged information responsive to the Interrogatories.

7.     Each of the above objections shall be deemed to be incorporated by reference in each interrogatory response, and shall be hereinafter referred to as the "General Objections."

## ANSWERS TO INTERROGATORIES

### INTERROGATORY NO. 1

Describe fully the relationship among DDI and each of the Additional Corporations including but not limited to the organizational structure of each corporation; the nature of the business of each corporation; the number and identification of common directors, officers, employees, agents, distributors, jobbers, salespersons, interns, sales representatives and attorneys; the ownership of each corporation; and the three most knowledgeable persons regarding any facts that relate to the relationship among DDI and each of the Additional Corporations.

### ANSWER:

Information about the Additional Corporations is not relevant to the claims or defenses of any party to this litigation and is therefore beyond the scope of discovery of Rule 26(b) of the Federal Rules of Civil Procedure.  Nevertheless, without waiving the foregoing objection, and subject to the General Objections, DDI states that it does not have any "relationship" with the "Additional Corporations".  Each corporation is a separate, distinct business entity.  None of the "Additional Corporations" are involved in the sale or marketing of diabetic meters or testing strips, nor are they doing business in or directing any activities to Delaware.

### INTERROGATORY NO. 2

Describe fully the relationship between DDI (and/or any of the Additional Corporations) and any other party, including but not limited to online vendors, who has purchased Electrochemical Sensors and who resells such Electrochemical Sensors to any of the states on the

3

Northeast Region of the United States whether through retail outlets, direct mail or internet, including but not limited to an identification of the identity of the persons; the amount of sales (or other transfer) made or anticipated to be made to each such person, including sales (or other transfer) by unit volume and sales dollars; and all documents relating to such sales of such units.

**ANSWER:**

In addition to the General Objections, DDI further objects to this request on the grounds

that it is seeking confidential business information of DDI. Subject to the foregoing objections,

DDI states that it does not have any relationship with any party located in the state of Delaware.

DDI further states that it is not aware of any distributor selling DDI's meters to any party located

in the state of Delaware. Information about the Additional Corporations is not relevant to the

claims or defenses of any party to this litigation and is therefore beyond the scope of discovery

of Rule 26(b) of the Federal Rules of Civil Procedure. Information about purchases, sales or

other activities in any state other than Delaware is also not relevant to the claims or defenses of

any party to this litigation and is therefore beyond the scope of discovery of Rule 26(b) of the

Federal Rules of Civil Procedure.

**INTERROGATORY NO. 3**

Identify the total sales (by unit volume and sales dollars) of all Electrochemical Sensors sold by DDI and/or any of the Additional Corporations, whether directly by DDI and/or any of the Additional Corporations or indirectly through one or more third parties, including but not limited to online vendors, through any distribution channels, into the United States and the total sales (by unit volume and sales dollars) of all Electrochemical Sensors sold by DDI and/or any of the Additional Corporations, whether directly by DDI and/or any of the Additional Corporations or indirectly through one or more third parties, including but not limited to online vendors, through any distribution channels, into the state of Delaware.

**ANSWER:**

Subject to the General Objections, DDI states that it had $6,541,666.34 in total sales of

diabetic testing strips in the United States in 2007. DDI states that it had $0 (zero) dollars in

sales of diabetic testing strips or "Electrochemical Sensors" in the state of Delaware in 2007 and

every year prior to 2007. Information about the Additional Corporations is not relevant to the

4

claims or defenses of any party to this litigation and is therefore beyond the scope of discovery

of Rule 26(b) of the Federal Rules of Civil Procedure.  Information about purchases, sales or

other activities in any state other than Delaware is also not relevant to the claims or defenses of

any party to this litigation and is therefore beyond the scope of discovery of Rule 26(b) of the

Federal Rules of Civil Procedure.

## INTERROGATORY NO. 4

Identify all contacts and communications between DDI and/or any of the Additional Corporations and chain retailers with outlets in the state of Delaware, including but not limited to Happy Harry's, Rite Aid, Shop Rite, Eckerd, Walmart, Target, Super G, Pathmark, and any parent corporations, subsidiaries, or related entities thereof.

### ANSWER:

Subject to the General Objections, DDI states that it has not had any contacts or

communications with any chain retailers in the state of Delaware.  DDI states that it has

approached Walmart in Arkansas regarding potential sales of its meters but has not developed a

relationship or contractual arrangement with Walmart. Information about the Additional

Corporations is not relevant to the claims or defenses of any party to this litigation and is

therefore beyond the scope of discovery of Rule 26(b) of the Federal Rules of Civil Procedure.

Information about purchases, sales or other activities in any state other than Delaware is also not

relevant to the claims or defenses of any party to this litigation and is therefore beyond the scope

of discovery of Rule 26(b) of the Federal Rules of Civil Procedure.

## INTERROGATORY NO. 5

Identify all sales and marketing personnel employed by DDI and/or any of the Additional Corporations and describe each person's responsibilities including but not limited to the regions and customers (including distributors, retailers or internet supply houses) within the US assigned to each person, and identify all documents related to such persons and their responsibilities including but not limited to job descriptions and sales and marketing materials.

**ANSWER:**

Information about the Additional Corporations is not relevant to the claims or defenses of any party to this litigation and is therefore beyond the scope of discovery of Rule 26(b) of the Federal Rules of Civil Procedure. Information about purchases, sales or other activities in any state other than Delaware is also not relevant to the claims or defenses of any party to this litigation and is therefore beyond the scope of discovery of Rule 26(b) of the Federal Rules of Civil Procedure. Nevertheless, without waiving the foregoing objection, and subject to the General Objections, DDI identifies the following personnel:

1. Kelly Massaro – DDI Inside Sales Representative, North East Territory
   Responsibilities and Essential Functions:
   - Calling on health care companies
   - Maintain and exceed monthly, quarterly, and yearly sales goals
   - Increase account penetration on a regular basis
   - Maintain existing base business
   - Prepare price quotes and contracts
   - Prospecting for new accounts

2. Jeramie Rose - DDI Inside Sales Representative, South East Territory
   Responsibilities and Essential Functions:
   - Calling on health care companies
   - Maintain and exceed monthly, quarterly, and yearly sales goals
   - Increase account penetration on a regular basis
   - Maintain existing base business
   - Prepare price quotes and contracts
   - Prospecting for new accounts

3. Chris Gwaltney -  DDI Inside Sales Manager, National Accounts
   Responsibilities and Essential Functions:
   - Train & Manage Inside Sales Team
   - Establish quotas and goals for Inside Sales Team
   - Responsible for growth and development of Major Accounts
   - Develop relationships with GPO companies
   - Develop and implement new strategies to increase DDI product penetration in the market

4. Jerry Munden - DDI Vice President of Sales, National Accounts
   Responsibilities and Essential Functions:
   - Oversees entire sales department
   - Directly responsible for Government and Institutional accounts
   - Directs diabetic camp initiative

6

- Responsible for overall sales growth
- Set monthly, quarterly, and yearly sales goals

5. Ryan Morris – DDI Managed Care Director, Managed Care Companies
   Responsibilities and Essential Functions:
   - Creates and directs managed care initiative
   - Responsible for ensuring that DDI products are on every major managed formulary
   - Facilitates relationships between DDI customers and HMO providers and assists the customer in bidding process
   - Maintain and exceed monthly, quarterly, and yearly sales goals

6. Michael Page – DDI Retail Manager, Major Retail Chain Pharmacies
   Responsibilities and Essential Functions:
   - Responsible for growth and development of Major Retail Chain Pharmacies
   - Develop relationships with Major Retail Chain Pharmacy Distributors and get DDI products loaded in their catalogs
   - Maintain and exceed monthly, quarterly, and yearly sales goals.
   - Develop campaigns and strategies to drive business in the Major Retail Chain Pharmacy market

**INTERROGATORY NO. 6**

Identify all business connections between the state of Delaware and DDI (and/or any of the Additional Corporations or any personnel of DDI and/or the Additional Corporations), including but not limited to (i) sales calls on persons or companies within the State of Delaware, (ii) prior lawsuits in Delaware, (iii) meetings with Delaware counsel, (iv) property owned in Delaware, (v) bank accounts in Delaware banks, (vi) products sold in Delaware, and (vii) contracts executed in Delaware, with Delaware corporations, or with Delaware as the choice of law, and for each such connection, identify the nature of the contact, when such connection began, whether such connection continues, and, if not, when it stopped, any personnel of DDI and/or the Additional Corporations involved in or knowledgeable regarding the contact, and any documents reflecting or referring to such contact.

**ANSWER:**

Information about the Additional Corporations is not relevant to the claims or defenses of

any party to this litigation and is therefore beyond the scope of discovery of Rule 26(b) of the

Federal Rules of Civil Procedure.  Subject to the General Objections, DDI states that there are no

business connections between DDI and the state of Delaware.

**INTERROGATORY NO. 7**

Identify all publications distributed or circulated throughout the United States and/or in the state of Delaware in which DDI and/or any of the Additional Corporations advertises or promotes Electrochemical Sensors.

7

**ANSWER:**

Information about the Additional Corporations is not relevant to the claims or defenses of any party to this litigation and is therefore beyond the scope of discovery of Rule 26(b) of the Federal Rules of Civil Procedure. Information about purchases, sales or other activities in any state other than Delaware is also not relevant to the claims or defenses of any party to this litigation and is therefore beyond the scope of discovery of Rule 26(b) of the Federal Rules of Civil Procedure. Nevertheless, without waiving the foregoing objection, and subject to the General Objections, DDI states that it advertises and promotes its Electrochemical Sensors in the following publications:

- *Voice of the Diabetic*, published by the National Federation of the Blind;

- *Diabetes Health;*

- The Veteran Affairs Publication;

- Trade show publications at trade shows including MEDTrade, AADE, Blinded Vets, and the NFB Convention; and

- Flyers printed and distributed by DDI at these tradeshows and through its distributors.

**INTERROGATORY NO. 8**

State whether any DDI Electrochemical Sensors are advertised or otherwise displayed on any internet website and, for each such internet website, identify the internet address, the company that maintains the website, the company that pays for maintenance of said website, the company that authorized the advertisement or display of such Electrochemical Sensors on said website, the number of hits for each such website from the state of Delaware, and, to the extent available, the address and entity of each person from the state of Delaware who accessed such information.

**ANSWER:**

Subject to the General Objections, DDI states that it advertises and displays its Electrochemical Sensors on its website at www.prodigymeter.com. This website is operated and maintained by Webtron, Inc. on behalf of DDI. Customers cannot purchase Electrochemical

Sensors from this website.  DDI does not monitor the number of hits on its website.  Neither DDI

nor Webtron, Inc. is able to determine the number of hits from the state of Delaware, if any, or

the identity of any person in the state of Delaware who accessed the site, if any, because each hit

is routed through the offices of each individual's internet provider.

DDI further states, upon information and belief, that a Google search reveals that its

Electrochemical Sensors are displayed on other websites which feature various Electrochemical

Sensors for sale nationally to customers.  DDI does not operate or maintain any such site and has

no control over the sale of its Electrochemical Sensors on such sites.

**INTERROGATORY NO. 9**

Describe fully the warranty or warranties offered by DDI and/or any of the Additional
Corporations to each consumer for any Electrochemical Sensors sold, whether directly by DDI
and/or any of the Additional Corporations or indirectly through one or more third parties,
including but not limited to online vendors, including the procedure(s) to be used by a consumer
for warranty registration, the length of the warranties, the procedure(s) to be used by a consumer
for contacting DDI and/or any of the Additional Corporations to make a claim under the
warranties, the procedure(s) to be used by a consumer to obtain a replacement Electrochemical
Sensor and/or to have an Electrochemical Sensor repaired, all warranty registrations for any
Electrochemical Sensors from any address in the state of Delaware, and any documents
reflecting or referring to such warranties.

**ANSWER:**

Information about the Additional Corporations is not relevant to the claims or defenses of

any party to this litigation and is therefore beyond the scope of discovery of Rule 26(b) of the

Federal Rules of Civil Procedure.  Subject to the General Objections, DDI states that it extends a

Limited Warranty to consumers who buy a new Prodigy® brand meter. Under the Limited

Warranty, DDI warranties the new meter for a period of one year from the original date of

purchase, as long as it has not been modified, altered, or misused. Under this Limited Warranty,

DDI will replace, free of charge, the Meter if it is defective in material or workmanship.

A consumer may register for the warranty by mailing in a warranty form which is

enclosed with the product to DDI or through DDI's website at www.prodigymeter.com.  A

customer making a warranty claim would call DDI's toll-free number and make a claim by

explaining the problems experienced with the meter.  DDI would then replace the meter as

necessary.

DDI states that it has no warranty registrations from any address in the state of Delaware.


ASHBY & GEDDES

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
302-654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Defendant Diagnostic Devices, Inc.*


*Of Counsel:*

Michael G. Adams
Ashley L. Ellis
Morgan H. Rogers
Parker Poe Adams & Bernstein LLP
Three Wachovia Center, Suite 3000
401 South Tryon Street
Charlotte, North Carolina 28202
704-372-9000

Dated:  February 28, 2008
188685.1

10

## CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of February, 2008, the attached **DEFENDANT DIAGNOSTIC DEVICES, INC.'S ANSWERS TO ROCHE DIAGNOSTICS OPERATIONS, INC.'S AND CORANGE INTERNATIONAL LIMITED'S FIRST SET OF INTERROGATORIES (NOS. 1-9)** was served upon the below-named counsel of record at the addresses and in the manner indicated:

Philip A. Rovner, Esquire                                  HAND DELIVERY
Potter Anderson & Corroon LLP
Hercules Plaza
1313 N. Market Street
Wilmington, DE  19899-0951

Daniel A. Boehnen, Esquire                            VIA ELECTRONIC MAIL
McDonnell Boehnen Hulbert & Berghoff LLP
300 South Wacker Drive
Chicago, IL  60606

Nancy Tinsley, Esquire                                   VIA ELECTRONIC MAIL
Roche Diagnostics
9115 Hague Road
Indianapolis, IN  46250

Frederick L. Cottrell, III, Esquire                     HAND DELIVERY
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE  19801

Edward A. Mas, II, Esquire                             VIA ELECTRONIC MAIL
McAndrews Held & Malloy Ltd.
500 West Madison Street, 34th Floor
Chicago, IL  60661

John W. Shaw, Esquire                                    HAND DELIVERY
Young Conaway Stargatt & Taylor, LLP
1000 West Street, 17th Floor
Wilmington, DE  19801

Wesley E. Overson, Esquire                            VIA ELECTRONIC MAIL
Morrison & Foerster LLP

425 Market Street
San Francisco, CA  94105-2482


Kenneth P. George, Esquire                        <u>VIA ELECTRONIC MAIL</u>
Amster, Rothstein & Ebenstein LLP
90 Park Avenue
New York, NY  10016


Mary W. Bourke, Esquire                           <u>HAND DELIVERY</u>
Connolly, Bove, Lodge & Hutz
1007 North Orange Street
P.O. Box 2207
Wilmington, DE  19899


Rodger D. Smith, II, Esquire                      <u>HAND DELIVERY</u>
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899


Bradford J. Badke, Esquire                        <u>VIA ELECTRONIC MAIL</u>
Ropes & Gray LLP
1211 Avenue of the Americas
New York, NY  10036-8704




Lauren E. Maguire

187037.1

STATE OF NORTH CAROLINA

                                          DECLARATION

COUNTY OF MECKLENBURG

    I, RICHARD ADMANI, the Chief Operating Officer of Diagnostic Devices, Inc., being authorized to give this Verification, declare under penalty of perjury, that I have read the foregoing Responses to Plaintiffs' First Set of Interrogatories, and such Responses are true and correct based on my personal knowledge and/or on information available to me.

    Executed on this _28_ day of February, 2008.


Richard Admani

                                          13

# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROCHE DIAGNOSTICS OPERATIONS INC. and CORANGE INTERNATIONAL LIMITED, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 07-753-JJF |
| ABBOTT DIABETES CARE, INCORPORATED, ABBOTT DIABETES CARE SALES CORPORATION, BAYER HEALTHCARE LLC, DIAGNOSTIC DEVICES INC., LIFESCAN INCORPORATED, and NOVA BIOMEDICAL CORPORATION, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**DEFENDANT DIAGNOSTIC DEVICES, INC.'S
RESPONSES TO PLAINTIFFS' FIRST SET OF REQUESTS
FOR THE PRODUCTION OF DOCUMENTS AND THINGS (NOS. 1-46)**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, defendant Diagnostic Devices, Inc. ("DDI") responds to Plaintiffs' First Set of Requests for Production of Documents as follows:

**GENERAL OBJECTIONS**

To avoid undue and unnecessary repetition, DDI makes the following general and continuing objections to the Document Requests. All general and continuing objections apply to each response to the Document Requests, and specific and more generalized references to these objections elsewhere in these responses are intended for emphasis only and do not constitute a waiver of these general and continuing objections. Further, the assertion of additional specific objections in response to the individual Document Requests does not constitute a waiver of these general and continuing objections.

1.    DDI objects to each and every Document Request to the extent that it calls for information covered by the attorney/client privilege, the work product doctrine, or any other applicable privilege or doctrine, including, without limitation, documents developed for, or in anticipation of, litigation, or which constitute the work product of counsel or reflect confidential attorney-client communications, and no such information or documents will be produced. By producing information or documents in response to these Document Requests, DDI does not waive, intentionally or otherwise, its attorney-client privilege, work product protection, or any other privilege protecting its communications, transactions or records from disclosure, and any production of documents inconsistent with the foregoing is wholly inadvertent and does not constitute a waiver of any such privilege or protection.

2.    DDI objects to each and every Document Request, definition, or instruction to the extent that it purports to impose obligations on DDI beyond those set forth in the Federal Rules of Civil Procedure, the local rules of court or any court order that may be entered that governs discovery. Specifically, without limitation to the foregoing, DDI objects to the definitions and Documents Requests as follows:

(a)    DDI objects to the definition of, and corresponding requests relating to, "Additional Corporations" as such companies are separate and distinct entities from DDI and are not parties to this lawsuit; and

(b)    DDI objects to the definition of, and corresponding requests relating to, "Northeast region of the United States" to the extent that it includes states other than Delaware, as DDI contacts with states other than Delaware are not relevant to the issue of personal jurisdiction in Delaware.

3.    DDI objects to each and every Document Request to the extent it seeks information that is not in the possession, custody, or control of DDI.

4.    DDI objects to each and every Document Request to the extent that it seeks any confidential information of DDI or any third party.  DDI further objects to producing any documents that contain confidential information until the parties have entered into a mutually agreed upon protective order.

5.    DDI objects to each and every Interrogatory as being overly broad and unduly burdensome because it requests information for an unlimited period of time.

6.    DDI objects to each and every Document Request to the extent that it purports to require DDI to conduct an unreasonably broad or unduly burdensome search of its offices and/or files or to conduct an unduly burdensome production of any information.  Subject to and without waiving the foregoing, DDI will search for documents only from those aspects of its business or individuals it reasonably believes have or may have relevant, non-privileged information responsive to the Document Requests.

7.    Each of the above objections shall be deemed to be incorporated by reference in each response, and shall be hereinafter referred to as the "General Objections."

### REQUESTS

1.    All documents and things concerning, referring to or relating to any sales and/or marketing of any of Defendant's Electrochemical Sensors in the Northeast region of the United States, and also specifically in the state of Delaware, including but not limited to direct sales, sales by any of the Additional Corporations or other related entities, sales by online vendors, or sales through distributors, wholesalers, dealers, jobbers, resellers, retail chains or other retailers, or suppliers.

**RESPONSE**:

Information about the Additional Corporations or other related entities is not relevant to the claims or defenses of any party to this litigation and is therefore beyond the scope of discovery of Rule 26(b) of the Federal Rules of Civil Procedure.  Information about purchases,

3

sales or other activities in any state other than Delaware is also not relevant to the claims or

defenses of any party to this litigation and is therefore beyond the scope of discovery of Rule

26(b) of the Federal Rules of Civil Procedure.   Subject to the foregoing and to the General

Objections, and without waiving the same, DDI states that it does not have any documents or

things concerning, referring to or relating to any sales and/or marketing of any of DDI's

Electrochemical Sensors in the state of Delaware.

2.     All documents and things identifying the names, titles, and responsibilities of all
persons having any role in the sales and/or marketing of any of Defendant's Electrochemical
Sensors in the Northeast region of the United States, and also specifically in the state of
Delaware.

**RESPONSE:**

Information about purchases, sales or other activities in any state other than Delaware is

not relevant to the claims or defenses of any party to this litigation and is therefore beyond the

scope of discovery of Rule 26(b) of the Federal Rules of Civil Procedure.   DDI also objects to

this request on the grounds that the information sought is completely duplicative of the

information provided in response to Interrogatory No. 5.   Therefore, the request is unduly

burdensome.

3.     All documents and things concerning, referring or relating to marketing products
by DDI and/or any of the Additional Corporations within any state or area that includes any part
of the Northeast region of the United States, including but not limited to the state of Delaware.

**RESPONSE:**

Information about the Additional Corporations is not relevant to the claims or defenses of

any party to this litigation and is therefore beyond the scope of discovery of Rule 26(b) of the

Federal Rules of Civil Procedure.   Information about purchases, sales or other activities in any

state other than Delaware is also not relevant to the claims or defenses of any party to this

litigation and is therefore beyond the scope of discovery of Rule 26(b) of the Federal Rules of

Civil Procedure. DDI does not have any documents or things concerning, referring, or relating to marketing products in Delware. DDI is producing examples of its marketing materials.

4.    All documents and things concerning, referring or relating to marketing Electrochemical Sensors within any state or area that includes any part of the Northeast region of the United States, including but not limited to the state of Delaware.

**RESPONSE:**

Information about marketing activities in any state other than Delaware is not relevant to the claims or defenses of any party to this litigation and is therefore beyond the scope of discovery of Rule 26(b) of the Federal Rules of Civil Procedure. Subject to the foregoing and to the General Objections, and without waiving the same, DDI states that it does not have any documents or things concerning, referring to or relating to marketing Electrochemical Sensors in the state of Delaware.

5.    All documents and things concerning, referring or relating to marketing Electrochemical Sensors to customers within any state or area that includes any part of the Northeast region of the United States, including but not limited to the state of Delaware.

**RESPONSE:**

Information about marketing activities in any state other than Delaware is not relevant to the claims or defenses of any party to this litigation and is therefore beyond the scope of discovery of Rule 26(b) of the Federal Rules of Civil Procedure. Subject to the foregoing and to the General Objections, and without waiving the same, DDI states that it does not have any documents or things concerning, referring to or relating to marketing Electrochemical Sensors to customers in the state of Delaware.

6.    All documents and things concerning, referring to or relating to any retention of sales representatives or marketing representatives located in the United States for any DDI Electrochemical Sensors or persons responsible for soliciting sales from persons located in the United states for any such products, including any documents referring or relating to:

a.    duties or responsibilities of the representatives;

b.    territories assigned to the representatives;

5

    c.     customers and potential customers located in the territories assigned to the representatives;

    d.     products handled by the representatives;

    e.     the number of persons located in the United States that have been contacted by the representatives; and

    f.     the identity of the persons located in Delaware that have been contacted by the representative assigned to the territory that includes the state of Delaware.

**RESPONSE:**

Information about sales, purchases, marketing or other activities in any state other than Delaware is not relevant to the claims or defenses of any party to this litigation and is therefore beyond the scope of discovery of Rule 26(b) of the Federal Rules of Civil Procedure. DDI has no customers in Delaware, therefore there are no customers or potential customers handled by its sales representatives. DDI has no documents related to its sales representatives contacting persons in Delaware.

7.     All documents and things concerning, referring to or relating to any discussions, negotiations, or agreements among DDI and any of the Additional Corporations relating to the grant of any rights for practicing, using, developing, manufacturing, distributing, selling or offering for sale any Electrochemical Sensors in the United States and in the state of Delaware.

**RESPONSE:**

Information about purchases, sales or other activities in any state other than Delaware is not relevant to the claims or defenses of any party to this litigation and is therefore beyond the scope of discovery of Rule 26(b) of the Federal Rules of Civil Procedure. Information about the additional corporation is not relevant to the claims or defenses of any party to this litigation and is therefore beyond the scope of discovery of Rule 26(b) of the Federal Rules of Civil Procedure. Subject to the foregoing and to the General Objections, and without waiving the same, DDI states that it does not have any documents or things concerning, referring to or relating to any discussions, negotiations, or agreements among DDI and any of the Additional Corporations

relating to the grant of any rights for practicing, using, developing, manufacturing, distributing, selling or offering for sale any Electrochemical Sensors in the state of Delaware.

8.     All documents and things concerning, referring to or relating to any discussions, negotiations, or agreements made or in effect among DDI and any of the Additional Corporations, or any subsidiary, division, or affiliate thereof, including documents the subject matter of which is in whole or in part joint promotion, marketing or sales plans or efforts.

**RESPONSE:**

Subject to the General Objections, and without waiving the same, DDI further objects to this request on the grounds that it is irrelevant to the issue of jurisdiction over DDI in Delaware. As a result, the request is overly broad and unduly burdensome.

9.     All documents and things concerning, referring to or relating to any study, projection, market or other evaluation or analysis of past, current or future sales or revenues for any of the Defendant's Electrochemical Sensors in the Northeast region of the United States, and also specifically in the state of Delaware.

**RESPONSE:**

Information about purchases, sales or other activities in any state other than Delaware is not relevant to the claims or defenses of any party to this litigation and is therefore beyond the scope of discovery of Rule 26(b) of the Federal Rules of Civil Procedure.  Subject to the foregoing and to the General Objections, and without waiving the same, DDI states that it does not have any documents or things concerning, referring to or relating to any study, projection, market or other evaluation or analysis of past, current or future sales or revenues for any of the DDI's Electrochemical Sensors in the state of Delaware.

10.     All documents and things concerning, referring to or relating to business plans of DDI and/or any of the Additional Corporations relating to the sale and/or marketing of Electrochemical Sensors.

**RESPONSE:**

Information about the Additional Corporations is not relevant to the claims or defenses of any party to this litigation and is therefore beyond the scope of discovery of Rule 26(b) of the

Federal Rules of Civil Procedure.  Subject to the foregoing and to the General Objections, and

without waiving the same, DDI further objects to this request to the extent that it is seeking

documents that are irrelevant to the issue of jurisdiction over DDI in Delaware and states that it

does not have any business plan relating to the sale and/or marketing of Electrochemical Sensors

in the state of Delaware.

11.    All documents and things concerning, referring to or relating to any contacts
between DDI and/or any of the Additional Corporations and chain retailers with outlets in the
State of Delaware, including but not limited to Happy Harry's, Rite Aid, Shop Rite, Eckerd,
Walmart, Target, Super G, Pathmark, and any parent corporations, subsidiaries, or related
entities thereof.

**RESPONSE:**

Information about the Additional Corporations is not relevant to the claims or defenses of

any party to this litigation and is therefore beyond the scope of discovery of Rule 26(b) of the

Federal Rules of Civil Procedure. Information about purchases, sales, contacts or other activities

in any state other than Delaware is not relevant to the claims or defenses of any party to this

litigation and is therefore beyond the scope of discovery of Rule 26(b) of the Federal Rules of

Civil Procedure.  Subject to the foregoing and to the General Objections, and without waiving

the same, DDI states that it does not have any non-privileged documents regarding contacts with

chain retailers in the state of Delaware and does not have any contracts with chain retailers to sell

its products in Delaware.   On or about February 27, 2008, Rick Admani called Shop Rite to

determine if Shop Rite carried the Prodigy Meter.  Mr. Admani was told that Shop Rite did not

carry the Prodigy Meter.

12.    All documents and things concerning, referring to or relating to any sales made by
DDI and/or any of the Additional Corporations, directly or indirectly, to chain retailers with
outlets in the State of Delaware, including but not limited to Happy Harry's, Rite Aid, Shop Rite,
Eckerd, Target, Super G, Pathmark, and any parent corporations, subsidiaries, or related entities
thereof.

**RESPONSE:**

Information about the Additional Corporations is not relevant to the claims or defenses of any party to this litigation and is therefore beyond the scope of discovery of Rule 26(b) of the Federal Rules of Civil Procedure. Information about purchases, sales, contacts or other activities in any state other than Delaware is also not relevant to the claims or defenses of any party to this litigation and is therefore beyond the scope of discovery of Rule 26(b) of the Federal Rules of Civil Procedure. Subject to the foregoing and to the General Objections, and without waiving the same, DDI states that it has not had any sales to chain retailers in the State of Delaware and does not have any contracts with chain retailers to sell its products in Delaware.

13.    All documents and things concerning, referring to or relating to the annual and total gross revenues of DDI and/or any of the Additional Corporations from sales, either direct or indirect, to persons located in the United States of any Electrochemical System.

**RESPONSE:**

Information about the Additional Corporations is not relevant to the claims or defenses of any party to this litigation and is therefore beyond the scope of discovery of Rule 26(b) of the Federal Rules of Civil Procedure. Information about purchases, sales, contacts or other activities in any state other than Delaware is also not relevant to the claims or defenses of any party to this litigation and is therefore beyond the scope of discovery of Rule 26(b) of the Federal Rules of Civil Procedure. Subject to the foregoing and to the General Objections, and without waiving the same, DDI further objects to this request on the grounds that it is seeking documents that are confidential business records of DDI which are not relevant to the claims or defenses of any party to this action.

14.    All documents and things concerning, referring to or relating to the annual and total gross revenues of DDI and/or any of the Additional Corporations from sales, either direct in indirect, to persons located in the state of Delaware.

9

**RESPONSE:**

Information about the Additional Corporations is not relevant to the claims or defenses of any party to this litigation and is therefore beyond the scope of discovery of Rule 26(b) of the Federal Rules of Civil Procedure. Subject to the foregoing and to the General Objections, and without waiving the same, DDI states that it does not have any annual or total gross revenues from sales to persons located in the state of Delaware.

15.    All documents that identify all distributors, wholesalers, dealers, resellers, online vendors, and suppliers with a place of business located in the United States with whom DDI and/or any of the Additional Corporations has entered into or attempted to enter into contracts, and documents sufficient to show the annual and total gross revenues to DDI and/or any of the Additional Corporations from sales under contracts with such distributors, wholesalers, dealers, resellers, online vendors, and suppliers.

**RESPONSE:**

Information about the Additional Corporations is not relevant to the claims or defenses of any party to this litigation and is therefore beyond the scope of discovery of Rule 26(b) of the Federal Rules of Civil Procedure.  Information about purchases, sales or other activities in any state other than Delaware is not relevant to the claims or defenses of any party to this litigation and is therefore beyond the scope of discovery of Rule 26(b) of the Federal Rules of Civil Procedure.  DDI has not entered into or attempted to enter into contracts with any distributors, wholesalers, dealers, resellers, online vendors, or suppliers in the state of Delaware.

16.    All documents and things concerning, referring to or relating to communications from or to Delaware persons or entities.

**RESPONSE:**

DDI objects to this request on the grounds that it is overly broad and unduly burdensome since it fails to state whose communications from or to Delaware persons or entities it is seeking. Subject to the General Objections, and without waiving the same, DDI does not have any

documents and things concerning, referring to or relating to communications between DDI and any Delaware persons or entities.

17. All documents and things concerning, referring to or relating to Defendant's offers for sale or the absence of offers for sale to persons or entities in the state of Delaware.

**RESPONSE:**

Subject to the General Objections, and without waiving the same, DDI states that it does not have any documents or things concerning, referring to or relating to Defendant's offers for sale to persons or entities in the state of Delaware.

18. All documents and things concerning, referring to or relating to any inquiries from Delaware persons or entities for Defendant's services or products.

**RESPONSE:**

Subject to the General Objections, and without waiving the same, DDI states that it does not have any documents and things concerning, referring to or relating to any inquiries from Delaware persons or entities for Defendant's services or products.

19. All documents and things concerning, referring to or relating to any possible confusion by Delaware consumers as to the source of Defendant's goods or services.

**RESPONSE:**

DDI objects to this interrogatory on the ground that the information sought is not relevant to the claims or defenses of any party to this litigation and is therefore beyond the scope of discovery of Rule 26(b) of the Federal Rules of Civil Procedure. Subject to the General Objections, and without waiving the same, DDI states that it does not have any documents or things concerning, referring to or relating to any possible confusion by Delaware consumers as to the source of Defendant's goods or services.

20. All telephone records showing calls from Defendant to any person or entity in the state of Delaware.

**RESPONSE:**

DDI objects to this request on the grounds that it is overly broad and unduly burdensome. Subject to the foregoing and to the General Objections, and without waiving the same, DDI states that it has attempted unsuccessfully to obtain telephone records from its telephone provider organized to show telephone calls, if any, to any person or entity in the state of Delaware.

21.    All telephone records showing calls to Defendant from any person or entity in the state of Delaware.

**RESPONSE:**

DDI objects to this request on the grounds that it is overly broad and unduly burdensome. Subject to the foregoing and to the General Objections, and without waiving the same, DDI states that it has attempted unsuccessfully to obtain telephone records from its telephone provider organized to show telephone calls, if any, from any person or entity in the state of Delaware.

22.    All documents and things concerning, referring to or relating to Defendant's internet site www.prodigymeter.com, including but not limited to all Webtrends reports, information relating to internet "hits," search engine keywords leading to Defendant's internet web site, the physical locations by state of computers accessing www.prodigymeter.com (available as a Webtrends report), etc.

**RESPONSE:**

DDI objects to this request on the ground that the information sought is not relevant to the claims or defenses of any parties to this action and is therefore beyond the scope of discovery of Rule 26(b) of the Federal Rules of Civil Procedure.  DDI will make available reports, if any, which are in its possession, custody and control at a mutually convenient time for counsel of the parties, to the extent that they show "hits" in Delaware, even though this information is not relevant.

23.    All documents and things concerning, referring to or relating to any of Defendant's advertising or absence of advertising to persons or entities in the state of Delaware.

**RESPONSE:**

Subject to the General Objections, and without waiving the same, DDI states that it does not have any documents or things concerning, referring to or relating to any of Defendant's advertising to persons or entities in the state of Delaware.

24.    All documents and things concerning, referring to or relating to Defendant's advertising, including but not limited to copies of advertisements and the geographic reach of such advertising.

**RESPONSE:**

Information about advertisements in any state other than Delaware is not relevant to the claims or defenses of any party to this litigation and is therefore beyond the scope of discovery of Rule 26(b) of the Federal Rules of Civil Procedure. Subject to the foregoing and to the General Objections, and without waiving the same, DDI will make available copies of its advertisements which are in its possession, custody and control.

25.    All documents and things concerning, referring to or relating to Defendant's television advertising, including but not limited to the market reached by such advertising.

**RESPONSE:**

Information about advertisements in any state other than Delaware is not relevant to the claims or defenses of any party to this litigation and is therefore beyond the scope of discovery of Rule 26(b) of the Federal Rules of Civil Procedure. Subject to the foregoing and to the General Objections, and without waiving the same, DDI states that it does not conduct any television advertising.

26.    All documents and things concerning, referring to or relating to Defendant's internet advertising, including but not limited to the market reached by such advertising.

**RESPONSE**:

Subject to the General Objections, and without waiving the same, DDI states that it does not conduct any internet advertising, other then owning and operating its own website.

27.    All promotional materials from Defendant's providers of advertising and marketing services.

**RESPONSE**:

Information about advertisements in any state other than Delaware is not relevant to the claims or defenses of any party to this litigation and is therefore beyond the scope of discovery of Rule 26(b) of the Federal Rules of Civil Procedure. Subject to the foregoing and to the General Objections, and without waiving the same, DDI states that it does not advertise in Delaware and thus any promotional materials from providers of advertising and marketing services are not relevant. DDI further states that it does not have any promotional materials from DDI's providers of advertising and marketing services.

28.    All documents and things concerning, referring to or relating to any plan or study of Defendant conducting business, directly or indirectly, in the state of Delaware.

**RESPONSE**:

Subject to the General Objections, and without waiving the same, DDI states that it has no documents and things concerning, referring to or relating to any plan or study of DDI conducting business in the state of Delaware.

29.    All documents and things concerning, referring to or relating to any promotion or absence of promotion to persons or entities in the state of Delaware.

**RESPONSE**:

Subject to the General Objections, and without waiving the same, DDI states that it has no documents and things concerning, referring to or relating to any promotion to persons or entities in the state of Delaware.

30.    All contracts between Defendant and the providers of Defendant's advertising and marketing services.

**RESPONSE:**

Information about advertisements in any state other than Delaware is not relevant to the claims or defenses of any party to this litigation and is therefore beyond the scope of discovery of Rule 26(b) of the Federal Rules of Civil Procedure. Subject to the foregoing and to the General Objections, and without waiving the same, DDI states that it does not advertise in Delaware and thus any contracts between DDI and its providers of advertising and marketing services are not relevant.

31.    All communications between Defendant and Defendant's providers of marketing and promotion services relating in any way to the state of Delaware or any Delaware persons or entities.

**RESPONSE:**

Subject to the General Objections, and without waiving the same, DDI states that it has had no communications with its providers of marketing and promotion services relating in any way to the state of Delaware or any Delaware persons or entities.

32.    All documents showing the presence or absence of advertising of Defendant's services or products to Delaware residents.

**RESPONSE:**

Subject to the General Objections, and without waiving the same, DDI states that it has no documents showing the presence of advertising of Defendant's services or products to Delaware residents.

33.    All invoices, bills, literature, promotional material, or other documents sent to any entity or consumer located in the state of Delaware.

**RESPONSE:**

Subject to the General Objections, and without waiving the same, DDI states that it has no invoices, bills, literature, promotional material, or other documents sent to any entity or consumer located in the state of Delaware.

34.    All documents and things concerning, referring to or relating to any correspondence or communications to or from any Delaware entity or resident.

**RESPONSE:**

DDI objects to this request on the grounds that it is overly broad and unduly burdensome since it fails to state whose communications from or to Delaware entity or resident it is seeking. Subject to the foregoing and to the General Objections, and without waiving the same, DDI states that it is not aware of any documents and things concerning, referring to or relating to communications between DDI and any Delaware resident or entity.

35.    All documents and things concerning, referring to or relating to any correspondence or communications involving Defendant that was sent to the state of Delaware.

**RESPONSE:**

Subject to the General Objections, and without waiving the same, DDI states that it is not aware of any documents and things concerning, referring to or relating to any correspondence or communications involving Defendant that was sent to the state of Delaware.

36.    All e-mail communications from any entity or person in the state of Delaware relating to Defendant's business, products, and/or services.

**RESPONSE:**

Subject to the General Objections, and without waiving the same, DDI states that it is not aware of any e-mail communications from any entity or person in the state of Delaware relating to Defendant's business, products, and/or services.

37.    All e-mail communications from any entity or person in the state of Delaware relating to Plaintiffs' business, products, and/or services.

**RESPONSE:**

Subject to the General Objections, and without waiving the same, DDI states that it is not aware of any e-mail communications from any entity or person in the state of Delaware relating to Plaintiffs' business, products, and/or services.

38.    All documents and things concerning, referring to or relating to any investigation, test marketing, or market research relating to Defendants products and services.

**RESPONSE:**

Information about advertisements in any state other than Delaware is not relevant to the claims or defenses of any party to this litigation and is therefore beyond the scope of discovery of Rule 26(b) of the Federal Rules of Civil Procedure. Subject to the foregoing and to the General Objections, and without waiving the same, DDI states that it has no documents and things concerning, referring to or relating to any investigation, test marketing, or market research relating to Defendants products and services.

39.    All documents and things concerning, referring to or relating to Defendant's historical internet web site content, including but not limited to copies of all previous versions of Defendant's internet web site.

**RESPONSE:**

Defendant objects to this request on the grounds that it seeks information that is not relevant to the claims or defenses of any party to this litigation.  Subject to the foregoing and to the General Objections, and without waiving the same,  DDI states that it does not have any documents and things concerning, referring to or relating to Defendant's historical internet web site content.

40.    All documents and things concerning, referring to or relating to the development of Defendant's internet web site.

**RESPONSE**:

Defendant objects to this request on the grounds that it seeks information that is not relevant to the claims or defenses of any party to this litigation. Subject to the foregoing and to the General Objections, and without waiving the same, DDI states that it does not have any documents and things concerning, referring to or relating to the development of Defendant's internet web site.

41. All documents and things concerning, referring to or relating to any warranty offered by DDI and/or any of the Additional Corporations on any Electrochemical Sensors sold, whether directly or indirectly through one or more third parties, including but not limited to online vendors, into the Northeast region of the United States, and also specifically into the state of Delaware.

**RESPONSE**:

Information about the Additional Corporations is not relevant to the claims or defenses of any party to this litigation and is therefore beyond the scope of discovery of Rule 26(b) of the Federal Rules of Civil Procedure. Information about purchases, sales or other activities in any state other than Delaware is not relevant to the claims or defenses of any party to this litigation and is therefore beyond the scope of discovery of Rule 26(b) of the Federal Rules of Civil Procedure. DDI will make a copy of its warranty available to plaintiffs. DDI does not have any specific information about any warranties applicable to any products sold in Delaware. Any other information is not relevant to the claims or defenses of the parties to this action and is therefore beyond the scope of discovery of Rule 26(b) of the Federal Rules of Civil Procedure.

42. All documents and things concerning, referring to or relating to any warranty registration made by a person located in the state of Delaware for any Electrochemical Sensor sold by DDI and/or any of the Additional Corporations, whether directly or indirectly through one or more third parties, including but not limited to online vendors.

**RESPONSE**:

Information about the Additional Corporations is not relevant to the claims or defenses of any party to this litigation and is therefore beyond the scope of discovery of Rule 26(b) of the

Federal Rules of Civil Procedure. Subject to the foregoing and to the General Objections, and without waiving the same, DDI states that it does not have any documents or things concerning, referring to or relating to any warranty registration made by a person located in the state of Delaware for any Electrochemical Sensor sold by DDI.

43.    All documents and things concerning, referring to or relating to any claim on a warranty made by a person located in the state of Delaware for any Electrochemical Sensor sold by DDI and/or any of the Additional Corporations, whether directly or indirectly through one or more third parties, including but not limited to online vendors.

**RESPONSE:**

Information about the Additional Corporations is not relevant to the claims or defenses of any party to this litigation and is therefore beyond the scope of discovery of Rule 26(b) of the Federal Rules of Civil Procedure. Subject to the foregoing and to the General Objections, and without waiving the same, DDI states that it does not have any documents or things concerning, referring to or relating to any claim on a warranty made by a person located in the state of Delaware for any Electrochemical Sensor sold by DDI.

44.    All documents and things concerning, referring to or relating to any action taken by DDI and/or any of the Additional Corporations on any claim on a warranty made by a person located in the state of Delaware for any Electrochemical Sensor sold by DDI and/or any of the Additional Corporations, whether directly or indirectly through one or more third parties, including but not limited to online vendors.

**RESPONSE:**

Information about the Additional Corporations is not relevant to the claims or defenses of any party to this litigation and is therefore beyond the scope of discovery of Rule 26(b) of the Federal Rules of Civil Procedure. Subject to the foregoing and to the General Objections, and without waiving the same, DDI states that it does not have any documents or things concerning, referring to or relating to any action taken by DDI and/or any of the Additional Corporations on any claim on a warranty made by a person located in the state of Delaware for any Electrochemical Sensor sold by DDI.

45.    All documents requested for identification by Plaintiffs' First Set of Interrogatories to Defendant DDI (Nos. 1-9), served concurrently herewith.

**RESPONSE:**

Subject to the General Objections, DDI will make available all responsive documents which are in its possession, custody and control at a mutually convenient time for counsel of the parties.

46.    All documents relied upon, referred to or otherwise consulted directly or indirectly in responding to Plaintiffs' First Set of Interrogatories to Defendant DDI (Nos. 1-9), served concurrently herewith.

**RESPONSE:**

DDI objects to this request on the grounds that the information sought is not relevant to the claims and defenses of any parties to this action and further objects to this request to the extent it seeks the production of documents protected from discovery by the attorney-client privilege or the work product doctrine. Subject to the General Objections, DDI will make available all responsive non-privileged documents which are in its possession, custody and control at a mutually convenient time for counsel of the parties.

ASHBY & GEDDES

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
302-654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Defendant Diagnostic Devices, Inc.*

20

*Of Counsel:*

Michael G. Adams
Ashley L. Ellis
Morgan H. Rogers
Parker Poe Adams & Bernstein LLP
Three Wachovia Center, Suite 3000
401 South Tryon Street
Charlotte, North Carolina 28202
704-372-9000

Dated:  February 28, 2008
188678.1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 28th day of February, 2008, the attached **DEFENDANT**

**DIAGNOSTIC DEVICES, INC.'S RESPONSES TO PLAINTIFFS' FIRST SET OF**

**REQUESTS FOR THE PRODUCTION OF DOCUMENTS AND THINGS (NOS. 1-46)**

was served upon the below-named counsel of record at the addresses and in the manner

indicated:

Philip A. Rovner, Esquire                                    <u>HAND DELIVERY</u>
Potter Anderson & Corroon LLP
Hercules Plaza
1313 N. Market Street
Wilmington, DE  19899-0951

Daniel A. Boehnen, Esquire                              <u>VIA ELECTRONIC MAIL</u>
McDonnell Boehnen Hulbert & Berghoff LLP
300 South Wacker Drive
Chicago, IL  60606

Nancy Tinsley, Esquire                                     <u>VIA ELECTRONIC MAIL</u>
Roche Diagnostics
9115 Hague Road
Indianapolis, IN  46250

Frederick L. Cottrell, III, Esquire                       <u>HAND DELIVERY</u>
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE  19801

Edward A. Mas, II, Esquire                               <u>VIA ELECTRONIC MAIL</u>
McAndrews Held & Malloy Ltd.
500 West Madison Street, 34th Floor
Chicago, IL  60661

John W. Shaw, Esquire                                      <u>HAND DELIVERY</u>
Young Conaway Stargatt & Taylor, LLP
1000 West Street, 17th Floor
Wilmington, DE  19801

Wesley E. Overson, Esquire                             <u>VIA ELECTRONIC MAIL</u>
Morrison & Foerster LLP

425 Market Street
San Francisco, CA  94105-2482


Kenneth P. George, Esquire                          VIA ELECTRONIC MAIL
Amster, Rothstein & Ebenstein LLP
90 Park Avenue
New York, NY  10016


Mary W. Bourke, Esquire                             HAND DELIVERY
Connolly, Bove, Lodge & Hutz
1007 North Orange Street
P.O. Box 2207
Wilmington, DE  19899


Rodger D. Smith, II, Esquire                        HAND DELIVERY
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899


Bradford J. Badke, Esquire                          VIA ELECTRONIC MAIL
Ropes & Gray LLP
1211 Avenue of the Americas
New York, NY  10036-8704


Lauren E. Maguire

187037.1

# EXHIBIT E

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ROCHE DIAGNOSTICS OPERATIONS INC. and CORANGE INTERNATIONAL LTD., ) ) )<br><br>Plaintiffs, )<br> )<br>v. )<br> )<br>ABBOTT DIABETES CARE, INC., )<br>ABBOTT DIABETES CARE SALES CORP., )<br>BAYER HEALTHCARE LLC, DIAGNOSTIC )<br>DEVICES INC., LIFESCAN INC., and NOVA )<br>BIOMEDICAL CORP., )<br> )<br>Defendants. ) | C.A. No. 07-753-JJF |

## ROCHE'S NOTICE OF DEPOSITION TO
## DIAGNOSTIC DEVICES INC. PURSUANT TO RULE 30(b)(6)

PLEASE TAKE NOTICE that pursuant to Rule 30(b)(6) of the Federal Rules of Civil

Procedure, Plaintiffs Roche Diagnostics Operations Inc. and Corange International Ltd. (referred

to collectively as "Roche") shall take the deposition of Defendant Diagnostic Devices Inc.

("DDI") through the person(s) designated by DDI to testify on its behalf with respect to the

subjects set forth in Exhibit A.  The deposition will commence at 9:00 a.m. on March 13, 2008 at

the offices of Parker Poe Adams & Bernstein LLP, 3 Wachovia Center, Ste. 3000, 401 S. Tryon

St., Charlotte, North Carolina 28202 or at a time and place to be mutually agreed upon by

counsel.  The deposition will be recorded by stenographic means, may be videotaped, and will

take place before a Notary Public or other officer duly authorized to administer oaths and will

continue from day to day until concluded.

You are invited to attend and cross-examine.

OF COUNSEL:

Daniel A. Boehnen
Grantland G. Drutchas
Gary E. Hood
Nicole A. Keenan
Paula S. Fritsch
Sherri L. Oslick
Jeffrey P. Armstrong
McDonnell Boehnen Hulbert & Berghoff LLP
300 South Wacker Drive
Chicago, IL 60606
(312) 913-0001

Dated:  March 6, 2008
853365

POTTER ANDERSON & CORROON LLP


By: _____
        Philip A. Rovner (#3215)
        Hercules Plaza
        P.O. Box 951
        Wilmington, DE 19899-0951
        (302) 984-6000
        provner@potteranderson.com

*Attorney for Plaintiffs*
*Roche Diagnostics Operations, Inc.,  and*
*Corange International Limited*

## EXHIBIT A

In the following subjects:

1.    The terms "Plaintiff" and "Roche" shall mean the Plaintiffs in this lawsuit, Roche Diagnostics Operations Inc. and Corange International Ltd.; any company name under which Roche  is doing business; and its predecessors, parents, subsidiaries, divisions, directors, officers, employees, agents, distributors, salespersons, sales representatives, and attorneys, and each person acting or purporting to act on its or their behalf or under its or their control.

2.    The terms "Defendant" and "DDI," shall mean Diagnostic Devices, Inc. (present at 9300 Harris Corners Parkway Suite 450, Charlotte, NC 28269, and possibly other addresses); any company name under which DDI is doing business; and its predecessors, parents, subsidiaries, divisions, licensees, franchisees, assigns or other related business entities, as well as directors, officers, employees, agents, distributors, jobbers, salespersons, sales representatives, and each person acting or purporting to act on its or their behalf or under its or their control.

3.    The term "TaiDoc" shall mean TaiDoc Technology Corp. (present at 6F, No. 127, Wugong 2nd Rd. Wugu, Taipei County 248, Taiwan, and possibly other addresses); any company name under which TaiDoc is doing business; and its predecessors, parents, subsidiaries, divisions, licensees, franchisees, assigns or other related business entities, as well as directors, officers, employees, agents, distributors, jobbers, salespersons, sales representatives, and each person acting or purporting to act on its or their behalf or under its or their control.

4.    "DDI Products" shall mean any product made by, distributed by, imported by, supplied by, shipped by, sold by, or branded by DDI or TaiDoc, including but not limited to:  (1) blood glucose products and meters, such as, for example, those sold under the following brands: Prodigy, Prodigy Audio, Prodigy Autocode, Prodigy Duo, Prodigy Eject, Prodigy Voice, and

Prodigy Advance; (2) test strips for use with such products or meters; (3) control solutions for use with such products, meters, or test strips; and (4) software for use with such products, meters, or test strips.

5.      The terms "person" and "persons" shall mean natural persons (including, without limitation, those employed by DDI), as well as all governmental entities, agencies, officers, departments, or affiliates of any other governmental entity, legal entity, and any corporation, foundation, partnership, proprietorship, association, or other organization.

6.      The term "date" shall mean the exact day, month, and year (to the degree ascertainable) or, if not ascertainable, the best approximation (including relationship to other events).

7.      The term "document" shall mean writings, recordings and other communications reduced to physical or electronic form, including the originals and all non-identical copies, whether different from the original by reason of any notation made on such copies or otherwise (including without limitation, correspondence, memoranda, notes, e-mail, diaries, minutes, statistics, letters, telegrams, contracts, reports, studies, checks, statements, tags, labels, invoices, brochures, periodicals, receipts, returns, summaries, pamphlets, books, prospectuses, calendars, diaries, planners, interoffice and intra-office communications, offers, notations of any sort of conversations, working papers, applications, permits, surveys, indices, telephone calls, meetings, or printouts, teletypes, telefax, invoices, work sheets, and all drafts, alterations, modifications, changes and amendments of the foregoing), graphic or oral representations of any kind (including without limitation, photographs, charts, microfiche, microfilm, videotape, recordings, motion pictures, plans, drawings, surveys), and electronic, mechanical or electric records or representations of any kind (including without limitation, tapes, cassettes, discs, and recordings).

8.    The terms "relating to" and "referring to" shall be interpreted so as to encompass the liberal scope of discovery set forth in Federal Rule of Civil Procedure 26(b).

9.    The terms "identify" and "describe" shall mean providing, among other things:

(a)    with respect to a natural person, home and work addresses and telephone numbers, the name of the person's present (or if unknown, the last known) place of employment, date of commencement and termination (if any) of employment, job title, and description of his or her duties and responsibilities;

(b)    with respect to a corporation or other non-natural person, the full name, address, main telephone number, state of incorporation, and identity of all persons who have acted on behalf of such entity;

(c)    with respect to a document, the type of document (e.g., letter, e-mail, telex, contract, calendar, invoice, report); the number of pages; a description of the document's contents; an identification of the person(s) who prepared the document, for whom the document was prepared, who signed the document, to whom the document was delivered, mailed, or otherwise received, and to whom a copy of the document was sent or otherwise received; the date of writing, creation, or publication; identifying number(s), letter(s), or combination thereof, if any; the significance or meaning of such numbers(s), letter(s) or combination thereof; and the present location and identity of the custodian of that document.  Documents to be identified shall include all documents in your possession, custody or control, documents you know or believe to have existed but are no longer existing, and other documents of which you have knowledge or information.

10.    The terms "and," "or," and "and/or" shall be construed disjunctively or conjunctively as necessary to bring within the scope of the request all responses which otherwise might be construed to be outside its scope.

11.    The terms "describe" and "state" shall mean to set forth fully and unambiguously every relevant fact of which DDI (including its agents and representatives) has knowledge or information.

12.    Any word written in the singular herein shall be construed as plural or vice versa to bring within the scope of the request all responses which otherwise might be construed to be outside its scope.

13.    "Complaint" means the Complaint filed by Roche in the United States District Court for the District of Delaware, on or about November 21, 2007.

**The subjects for examination at the Rule 30(b)(6) deposition shall include:**

1.     The corporate structure and background of DDI, including any related entities, and any design/engineering, manufacturing, sales, marketing, or distribution partners, agencies, or other entities who have worked with DDI.

2.     All contacts between DDI, its officers, directors, employees, distributors, sales representatives, resellers, promoters, website, purchasers and Delaware.

3.     All contacts between DDI (including its officers, directors, employees, distributors, and sales representatives) and any person or entity who is a reseller (i.e., not an end-user) of DDI products.

4.     All contacts between DDI and TaiDoc.

5.     All design, engineering, manufacturing, use, marketing, distribution, sales, offers to sell, warehousing, or importation of any DDI products in, into, or out of the state of Delaware, by any entity, including but not limited to sales of any DDI device over the Internet or providing software via the Internet.

6.     The distribution chain of DDI products from manufacture to use and final disposition, including but not limited to brick and mortar retailers, internet retailers, government purchasers, group purchase plans, pharmacies, hospitals, and any and all intermediaries.

7.     All communications between DDI and chain retailers, including chain pharmacies.

8.     All communications between DDI and Wal-Mart.

9.     All communications between DDI and managed care companies.

10.    DDI's presence at trade shows, including but not limited to the name, location, and date of the trade shows, the DDI products discussed or displayed at the trade shows, the DDI personnel present at the trade shows, and the persons or entities contacted through, during, or as a result of the trade shows.

11.    All publications, including Internet publications, in which DDI advertises or promotes DDI products, and all articles (print, video, or Internet) regarding DDI or DDI products.

12.    Any efforts to avoid sales of, distribution of, or use of DDI products in and to Delaware.

13.    An identification of DDI's blood glucose product line, including meters, test strips, software and related products.

14.    The location and manner of storage of documents responsive to Roche's document requests.

15.    The location and manner of storage of documents related to any design, engineering, manufacturing, use, marketing, distribution, sales, offers to sell, warehousing, or importation of any DDI product in or to Delaware, by any entity.

16.    All contact that DDI has had with end-use customers, including but not limited to feedback from customers that results in customer testimonials posted on the DDI website, and any information that DDI retains about such customers.

17.    All information that DDI has or maintains about the downloading of software from its website, including how often such software is downloaded, to where the software is downloaded, and what technical support DDI has offered and now offers to customers who download its software.

18.    Information about the preparation and distribution of the document attached as Exhibit C, including where and to whom it was sent.

19.    All topics covered in Roche's Interrogatories, including DDI's Responses.

20.    All topics covered in Roche's Requests for Production, including DDI's Responses and documents produced.

21.    All matters on which DDI relies to support its motion to dismiss for lack of personal jurisdiction, including all assertions therein and materials in support thereof.

## **EXHIBIT B**

### DEFINITIONS

All definitions set forth in Exhibit A above are incorporated as if set forth fully herein.

### INSTRUCTIONS

All instructions set forth in Roche's previous discovery requests are incorporated as if set forth fully herein.

### DOCUMENT REQUEST

1.    All documents that have been referred to or reviewed in preparing for this deposition or that are the source of information that the witness or DDI expects to provide in response to this deposition notice.

**EXHIBIT C**



**Diagnostic Devices, Inc.**
www.prodigymeter.com

**Headquarters**
5900-A Northwoods Business Park
Charlotte, NC 28269
phone 1-800-366-5901
fax 1-877-847-3419

*n e w s    r e l e a s e*

### Diagnostic Devices Introduces PRODIGY™ AUTOCODE –
### the world's first talking glucose meter that codes itself!

*Ideal for the visually impaired or anyone who wants the added convenience of a meter that talks and codes automatically, PRODIGY AUTOCODE delivers audible readings in English or Spanish.*

Charlotte, NC - Managing diabetes through blood glucose monitoring is a challenge for many diabetics, but it is especially difficult for the thousands of patients who have lost their eyesight to complications of the disease or are visually impaired. Recognizing the difficulties most meters present to diabetics, Diagnostic Devices developed Prodigy Audio, their first talking meter, in early 2006. Almost immediately, they started development of a next generation meter that would provide new freedom and confidence for diabetics with vision problems.

PRODIGY AUTOCODE is the result. Reports Rick Admani of Diagnostic Devices, "We learned that even with audio prompts, calibrating the meter proved to be a barrier to use by the visually impaired. So we developed a talking meter that does not require manual coding by the user to ensure accuracy."

Recognizing that painful testing is also an impediment, PRODIGY AUTOCODE is designed for ease and comfort. Alternate site testing permits taking blood from the arms, thighs or hands – all areas that are less painful than fingers. Only a tiny 0.6 microliter blood sample is required so patients can use extra-fine gauge lancets for less pain.

Results are reported audibly and via a large visual readout in just 6 seconds. Data management includes 450-test memory with date and time, and automatic averaging in intervals of 7, 14, 21, 28, 60 and 90 days. Data can also be downloaded to a computer supported by free software available at prodigymeter.com.

PRODIGY AUTOCODE is covered by Medicare and most heath insurance plans, and it is also affordable for the uninsured.

For more information about PRODIGY meters and other health management tools from Diagnostic Devices, visit prodigymeter.com or call 1-800-366-5901.

Contact: Jeff Cramp
Cramp+Associates, Inc.
610-649-6002

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, Philip A. Rovner, hereby certify that on March 6, 2008, the within document

was filed with the Clerk of the Court using CM/ECF which will send notification of such

filing(s) to the following; that the document was served on the following counsel as

indicated; and that the document is available for viewing and downloading from

CM/ECF.

**BY HAND DELIVERY AND E-MAIL**

Frederick L. Cottrell, III, Esq.
Anne Shea Gaza, Esq.
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, DE 19801
cottrell@rlf.com
gaza@rlf.com

Mary W. Bourke, Esq.
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 N. Orange Street
Wilmington, DE 19801
mbourke@cblh.com

Steven J. Balick, Esq.
John G. Day, Esq.
Ashby & Geddes
500 Delaware Avenue
8th Floor
P.O. Box 1150
Wilmington, DE 19899
sbalick@ashby-geddes.com
jday@ashby-geddes.com

**BY HAND DELIVERY AND E-MAIL**

John W. Shaw, Esq.
Jeffrey T. Castellano, Esq.
Young Conaway Stargatt & Taylor, LLP
1000 West Street, 17th Floor
Wilmington, DE 19801
jshaw@ycst.com
jcastellano@ycst.com

Rodger D. Smith, Esq.
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
rsmith@mnat.com

I hereby certify that on March 6, 2008 the foregoing document to the following

non-registered participants:

Edward A. Mas, II, Esq.
Stephen F. Sherry, Esq.
Kirk Vander Leest, Esq.
James M. Hafertepe, Esq.
Merle S. Elliott, Esq.
McAndrews, Held & Malloy, Ltd.
500 West Madison Street
34th Floor
Chicago, IL 60661
emas@mcandrews-ip.com
ssherry@mcandrews-ip.com
kvanderleest@mcandrews-ip.com
jhafertepe@mcandrews-ip.com
melliott@mcandrews-ip.com

Wesley E. Overson, Esq.
Rachel Krevans, Esq.
Jason R. Bartlett, Esq.
Parisa Jorjani, Esq.
Daniel P. Muino, Esq.
Morrison & Foerster LLP
425 Market Street
San Francisco, CA 94105-2482
woverson@mofo.com
rkrevans@mofo.com
jasonbartlett@mofo.com
pjorjani@mofo.com
dmuino@mofo.com

Kenneth P. George, Esq.
Joseph M. Casino, Esq.
Amster, Rothstein & Ebenstein LLP
90 Park Avenue
New York, NY 10016
kgeorge@arelaw.com
jcasino@arelaw.com

Michael G. Adams, Esq.
Ashley L. Ellis, Esq.
Parker Poe Adams & Bernstein LLP
Three Wachovia Center, Suite 3000
401 South Tryon Street
Charlotte, NC 28202
mikeadams@parkerpoe.com
ashleyellis@parkerpoe.com

Bradford J. Badke, Esq.
Sona De, Esq.
Michael Kahn, Esq.
Ropes & Gray LLP
1211 Avenue of the Americas
New York, NY 10036-8704
Jim.badke@ropesgray.com
Sona.de@ropesray.com
Michael.kahn@ropesgray.com

Philip A. Rovner (#3215)
Potter Anderson & Corroon LLP
Hercules Plaza
P.O. Box 951
Wilmington, Delaware 19899
(302) 984-6000
E-mail: provner@potteranderson.com

-2-

# EXHIBIT F

 **McDonnell Boehnen Hulbert & Berghoff** LLP

300 South Wacker Drive
Chicago, Illinois 60606-6709
www.mbhb.com

312 913 0001 phone
312 913 0002 fax

March 5, 2008

*VIA E-MAIL and FACSIMILE*
*704.335.9683*

Ashley L. Ellis
Parker Poe Adams & Bernstein LLP
Three Wachovia Center, Suite 3000
401 South Tryon Street
Charlotte, NC 28202

Re:    ***Roche Diagnostics Operations Inc. v. Abbott Diabetes Care, Inc. et al.***
       ***Civil Action No. 07-753 JJF***

Dear Ashley:

We write to express some of our concerns with Diagnostic Devices, Inc.'s ("DDI's") written responses to Roche's First Set of Interrogatories (Nos. 1-9), and, hopefully, to resolve those concerns. By this letter, we provide examples of several deficient responses by DDI that require immediate supplementation. Given the accelerated personal jurisdiction discovery schedule, we ask that DDI consider Roche's concerns and provide us with the additional information by March 7. In the alternative, we propose that counsel schedule a telephone conference for March 7 to discuss the issues and identify any disputes that will need to be resolved with the Court's assistance.

**Interrogatory No. 1:**

This interrogatory seeks basic information regarding the corporate structure, ownership, and, *e.g.*, common personnel of DDI and the Additional Corporations. Roche is entitled to know the structure of DDI and of the entities that share addresses and people with DDI. Though the interrogatory provided several examples of potential relationships between DDI and the Additional Corporations, such as "common directors" and "the ownership of each corporation," DDI merely stated that it "does not have any 'relationship' with the 'Additional Corporations,'" and ignored the remainder of this interrogatory. In addition, it is not at all clear from DDI's response whether any parents, subsidiaries, related companies, or directors, officers, employees or agents of DDI have any relationships with the "Additional Corporations." DDI provided *no* information about DDI's corporate structure and ownership, nor the person(s) knowledgeable with regard to DDI/Additional Corporations.

DDI stated that "[n]one of the 'Additional Corporations' are involved in the sale or marketing of diabetic meters or testing strips, nor are they doing business in or directing any

activities to Delaware." DDI failed to state what the business activities of DDI and the Additional Corporations are. It is unclear whether the Additional Corporations have any business activities, not limited to sales or marketing activities, involving diabetic meters or strips, such as design, engineering, manufacturing, importation, warehousing, or distribution of those products. The response could have easily said that "none of the Additional Companies are involved in any way with any activities having anything to do with any glucose test meters," but the response studiously did not do this. Roche therefore also requests immediate clarification of the statement regarding the Additional Corporations.

Roche requests immediate supplementation of this response to include the information originally requested.

**Interrogatory No. 2:**

DDI's withholding of confidential information in response to this interrogatory, and others, is improper. Delaware Local Rule 26.2 explicitly provides for the production and protection of confidential information in the absence of a protective order. Therefore, to the extent that responsive confidential information exists and has been withheld by DDI, Roche demands that DDI immediately supplement its response to include such information. Roche will, of course, abide by the confidentiality designation with which DDI marks its response.

Additionally, DDI improperly seeks to limit its responses to this and other interrogatories strictly to the state of Delaware. However, to the extent that responsive information may be broken down by geographic region, rather than state, any information regarding a region that includes Delaware is relevant to the personal jurisdiction inquiry, and therefore Roche is entitled to such information. As one example, any activities involving Philadelphia could obviously lead to the discovery of admissible evidence regarding Delaware. For another example, DDI itself identifies its sales representatives by region rather than state (*see* DDI's response to Interrogatory No. 5–Kelly Massaro is the "DDI Sales Representative, Northeast Territory"). Any attempt by DDI to withhold otherwise responsive information that refers to regions that include Delaware is disingenuous at best. Roche therefore requests immediate supplementation of DDI's response to include any responsive information regarding Electrochemical Sensors in any region of the United States that encompasses Delaware, including the Northeast Region.

Finally, DDI ignores that this Interrogatory seeks information identifying and describing the relationship between DDI and anyone selling Electrochemical Sensors in the Northeast; DDI must identify such distributors/resellers/retailers and describe its relationship with them.

**Interrogatory No. 3:**

This interrogatory seeks information regarding DDI's sales of Electrochemical Sensors, including both blood glucose meters and strips (both U.S. sales and Delaware sales). DDI's

response was inexplicably limited to a single total sales figure for testing strips. Roche requests immediate supplementation of DDI's response to include sales figures for blood glucose meters and to include unit volume numbers corresponding to both sales figures.

Additionally, DDI improperly ignored the question of sales of DDI products by entities other than DDI, and Roche requests immediate supplementation of DDI's response to include those sales figures in dollars and in unit volume.

Finally, DDI must answer the above questions with regard to 2008 sales to date.

**Interrogatory No. 4:**

DDI must clarify (if correct) that it has had *no* contact with *any* chain retailer other than Wal-Mart. Roche's question sought information about communications with entities having outlet(s) in Delaware, *not* just communications directly with "retailers in the state of Delaware." DDI must answer this fully, and must identify, with particularity, the communications and contacts with Wal-Mart.

**Interrogatory No. 5:**

This interrogatory seeks information regarding the sales and marketing personnel of DDI, including the regions and customers for each. Although DDI provided some information for some personnel, DDI did not explain the particular customers/ distributors/resellers associated with each individual.

**Interrogatory No. 7:**

This interrogatory seeks identification of all publications in which DDI advertises and promotes its products. The response is unclear whether the list provided is comprehensive (including internet publications) or merely illustrative. Please either confirm that the list provided is comprehensive, or immediately supplement the response to include those publications, including Internet publications, omitted from the original list. We have also asked for production of such publications (*see, e.g.*, Request 45); please produce those immediately.

**Interrogatory No. 8:**

DDI ignored large portions of this Interrogatory, including identification of the company or companies "that authorized the advertisement or display" of DDI's products on those websites. DDI must also state what retailers/websites display and/or sell DDI's products. Roche requests an immediate response, including the chain of custody of DDI products from DDI to such websites, and how it is that DDI lacks purported control over the sale of its products.

**General:**

DDI failed to sign the answers in accordance with Fed. R. Civ. P. 33(b). Please provide such a declaration with DDI's response to this letter, or, at the latest, by the end of this week.

**Conclusion:**

To permit the parties to consider the disputes and resolve them, preferably without the need to seek the Court's assistance, we have identified and discussed in considerable detail those points that Roche believes require immediate resolution. We have not, however, outlined every detailed deficiency in DDI's responses to Roche's First Set of Interrogatories and reserve the right to seek additional relevant discovery as the case proceeds.

To keep this case moving forward and on schedule, we would appreciate a prompt response to the foregoing concerns. We trust that DDI will withdraw many of its objections and voluntarily provide prompt supplemental responses. We further trust that DDI will provide the courtesy of a substantive response, with citation to legal authority, in those instances where DDI continues to withhold requested information or materials. Indeed, due to the imminent deadlines for briefing and discovery related to personal jurisdiction over DDI in the District of Delaware, we request a response to this letter no later than Friday, March 7 at noon EST. Please accept this letter as notification that, absent proper and prompt responses by DDI remedying the deficiencies outlined above, Roche will seek assistance from the Court in obtaining the information to which it is entitled.

We look forward to your prompt responses. Additional concerns regarding DDI's responses to Roche's First Set of Document Requests will be presented under separate cover. As always, we would like to try to mutually resolve our differences prior to seeking the intervention of the Court.

Regards,

Christina L. Brown
312 913 2144 direct
brownc@mbhb.com



**McDonnell Boehnen Hulbert & Berghoff LLP**

300 South Wacker Drive      312 913 0001 phone
Chicago, Illinois 60606-6709  312 913 0002 fax
www.mbhb.com

March 6, 2008

*VIA E-MAIL and FACSIMILE*
*704.335.9683*

Ashley L. Ellis
Parker Poe Adams & Bernstein LLP
Three Wachovia Center, Suite 3000
401 South Tryon Street
Charlotte, NC 28202

Re:    *Roche Diagnostics Operations Inc. v. Abbott Diabetes Care, Inc. et al.*
       *Civil Action No. 07-753 JJF*

Dear Ashley:

We write to express some of our concerns with Diagnostic Devices, Inc.'s ("DDI's") responses to Roche's First Set of Requests for the Production of Documents and Things (Nos. 1-46).

First, as a threshold matter, the production of a mere 22 pages in response to 46 requests does not indicate a spirit of cooperation on the part of DDI with agreed-upon discovery on the issue of personal jurisdiction. Much of the little DDI produced appears to have been generated solely in litigation. *See, e.g.*, DDI00018-19 (a two page list of sales personnel with no author, date, description of origin, or even company letterhead).

Second, DDI appears to have applied an overly narrow definition of "DDI." In its Requests, Roche defined DDI broadly. DDI, however, appears to have interpreted "DDI" narrowly so as to severely limit its production obligations. *See, e.g.*, document DDI 00021, referring to "DDI Medical" – clearly indicative that there are entities other than Diagnostic Devices Inc., with relevant, discoverable information and documents.

Third, DDI's general objection regarding the production of confidential information is improper under the Local Rules of Delaware. Indeed, Local Rule 26.2 specifically provides for the production and protection of confidential information in the absence of a protective order. Therefore, to the extent that responsive confidential information exists and has been withheld by DDI, Roche demands that DDI immediately produce such information.

Fourth, DDI's repeated limitation of its responses and production to the state of Delaware is inappropriate. To the extent that information may be broken down by region, rather than by state, any information regarding a region that includes Delaware is relevant to the personal jurisdiction inquiry, and Roche is entitled to such information as it would potentially lead to the discovery of admissible evidence. As one example, DDI itself identifies its sales

representatives by region rather than state.  *See* DDI's response to Interrogatory No. 5 (Kelly Massaro is the "DDI Sales Representative, Northeast Territory").  Attempts by DDI to withhold otherwise responsive information that refers to regions that include Delaware is improper.  Further, a relevant region may indeed be the United States as a whole.  Roche therefore requests immediate production of all responsive documents, to any of Roche's Requests, that relate to the Northeast region of the United States, to whatever other regions include the state of Delaware, and to the United States as a whole.

We provide further concerns with DDI's specific responses below.

**Request No. 1:**

This request is directed to documents concerning sales and marketing of Electrochemical Sensors, whether by DDI or any other entity, in the Northeast or Delaware. In response, DDI stated that *it* has no responsive documents relating to sales and/or marketing in "the state of Delaware." DDI's response is improperly limited, and Roche requests the immediate production of all responsive documents.

**Request No. 2:**

DDI's objection is meritless.  If documents exist relating to sales and/or marketing in the Northeast or Delaware, they must be produced.

**Request Nos. 3–5:**

These requests seek documents relating to marketing, whether by DDI or a reseller, retailer, website, *e.g.*  DDI cannot selectively produce documents.  Responsive documents must be produced.

**Request No. 6:**

DDI stated that it has no potential Delaware customers. If DDI deliberately chooses not to serve diabetes patients in Delaware, Roche requests that DDI explain any such policies and produce any and all documents relating to such policies and decisions.  Moreover, Roche's request was not limited to Delaware, and DDI must respond with requested documents which show, *e.g.*, duties, responsibilities, products, customers, and number and identity of persons contacted.

**Request Nos. 7–8:**

Again, DDI refuses, without valid basis, to respond with regard to the U.S. If there *are* no such documents, please so advise.  Otherwise, documents showing, *e.g.*, that a different

entity handles some part of the "lifecycle" of DDI's products are quite relevant and must be produced.

**Request No. 9:**

Please state whether there are documents responsive, relative to the Northeast region. If so, please produce them.

**Request No. 10:**

This request is directed to business plans relating to the Electrochemical Sensor products. DDI responded by stating that such documents would be irrelevant to personal jurisdiction in Delaware and that no business plans relating to Delaware exist. However, any business plan relating to DDI products throughout the United States would indeed be relevant to the present issues, even if it does not explicitly mention "Delaware." Roche requests that DDI immediately supplement its production with all responsive documents relating to business plans.

**Request No. 11:**

This request is directed, *inter alia*, to documents concerning contacts between DDI and chain retailers. First, DDI claimed that "it does not have any non-privileged documents regarding contacts with chain retailers in the state of Delaware." However, to the extent that privileged documents exist, DDI cannot withhold such documents with no explanation. Roche requests immediate production of a privilege log to detail the existence of all withheld privileged documents that are responsive to this or any other document request, and the privilege log must include bases for any privilege claim pursuant to Fed. R. Civ. P. 26(b)(5)(A). Second, DDI must not limit its response to contacts *in* Delaware or contracts to *sell* in Delaware, but must respond fully with regard to *all* documents between DDI and any chain retailer **having outlets in** Delaware.

**Request No. 12:**

DDI must respond with regard to any sales to chain retailers having outlets in Delaware.

**Request Nos. 13-14:**

These requests are directed to documents relating to sales and revenues in the United States and in Delaware. Under Delaware Local Rule 26.2, DDI's objection that answering such a request requires the disclosure of confidential business information is insufficient to justify lack of production, as explained above. Further, documents relating to sales and revenue are absolutely relevant to the present issues. That includes both direct **and**

*indirect* sales.  DDI's response that it has no sales to persons *in* Delaware is wholly insufficient.

Roche also requests the production of any and all documents relating to the (approx.) $6.5 million sales figure referenced in DDI's response to Interrogatory No. 3., *including* production of those documents evidencing the sales of Electrochemical Sensor meters and strips.

### Request No. 15:

DDI's response is improperly limited to contracts *in* the state of Delaware.  Roche is entitled to the information sought.

### Request Nos. 20-21:

DDI phone calls to/from Delaware are highly relevant and no viable excuse is given for their non-production.  Moreover, DDI should produce documents to support its claim that it has been unable to obtain telephone records.

### Request No. 22:

DDI responded that reports of website "hits" would be produced; however, only a single page of emails was produced.  *See* DDI00022, referencing a report which has not even been produced.  Roche requests the immediate production of *all* requested documents, including but not limited to any report that Webtron, or any agent or affiliate of Webtron, has provided to DDI in response to the produced email or any other request for a report. DDI must also produce documents regarding the creation and maintenance of DDI's website(s); no such documents were produced at all.

### Request No. 24:

DDI needs to state whether all such documents have been produced.  Moreover, it appears very likely that DDI possesses documents showing whether its ads are/will be distributed nationally; documents bearing on the scope/reach of DDI's ads, promotions, and tradeshow attendance and materials must be produced.

### Request No. 26:

DDI must respond regarding documents it has evidencing others' promotion of DDI products via the internet.

**Request Nos. 27 and 29:**

DDI has objected to production of its promotional materials, but also says it has none. However, some of the documents produced by DDI appear to be promotional materials. If DDI's point is that it does not use outside ad/marketing help, it should say so. Otherwise, it is not fathomable that no such materials exist. Moreover, nationally-directed promotions and advertising (ads, tradeshows, interviews, etc.) would fall within the scope of Request 29, *inter alia.*

**Request No. 30:**

This request is directed to contracts between DDI and providers of DDI's advertising and marketing services. Such contracts are relevant to the present issues. Accordingly, Roche requests that DDI immediately supplement its production to include such contracts.

**Request No. 32:**

DDI has apparently construed this request unduly narrowly. It would encompass, *e.g.*, internet advertising, advertising, promotional materials, press releases, etc., available via internet (whether on DDI's website or another's website), and nationally distributed magazines, newsletters, trade journals, and the like. (DDI also does not respond as to whether it has documents to support its claim that it does ***not*** advertise in Delaware).

**Request Nos. 34-37:**

These requests relate to communications between DDI and entities in the state of Delaware, and DDI repeatedly stated that it is "not aware" of any such communications. In its Requests, Roche defined DDI to include, for example, parents, subsidiaries, related companies, and directors, officers, employees and agents of DDI. Such a definition certainly includes personnel of DDI, such as Richard Admani, Ramzi Abulhaj, LaVondia Holloman, Timothy DuBois, Kelly Massaro, Jeramie Rose, Chris Gwaltney, Jerry Munden, Ryan Morris, and Michael Page, certainly insofar as such communications relate to DDI, at a minimum. Please confirm that none of these entities nor any employees of DDI has had any correspondence, email, phone calls, or other communications sent to or received from any entity or person in the state of Delaware. Of course, to the extent that such communications exist, Roche requests immediate production of all such documents.

**Request No. 38:**

DDI states it has no documents. It strains credulity that DDI did no investigation or research with regard to its products. Are they not, by way of example only, FDA approved? Such documents, and many others, would be responsive to this request.

**Request Nos. 39-40:**

As with the above, it is difficult to conceive that DDI has no information at all regarding its website. If that is the case, though, please state when such documents were destroyed. Sought documents include, by way of example only, screen shots, drafts, graphics, communications with those responsible for the website design and layout, and documents relating to the availability of DDI's software via its website.

**Request Nos. 42-44:**

DDI's response appears to be carefully limited to products sold directly *by DDI* to an end user, *i.e.,* not including products re-sold by others. Roche seeks clarification as to whether DDI's response was intended to be so limited.

**Conclusion:**

To permit the parties to consider these disputes and resolve them, preferably without the need to seek the Court's assistance, we have identified and discussed in considerable detail those points that Roche believes require immediate resolution. We have not, however, outlined each deficiency in DDI's responses to Roche's First Set of Requests for the Production of Documents and Things, and reserve the right to seek additional relevant discovery as the case proceeds.

To keep this case moving forward and on schedule, we would appreciate a prompt response to the foregoing concerns. We trust that DDI will withdraw many of its objections and voluntarily provide prompt supplemental responses and production. We further trust that DDI will provide the courtesy of a substantive response, with citation to legal authority, in those instances where DDI continues to withhold requested information or materials. Indeed, due to the imminent deadlines for briefing and discovery related to personal jurisdiction over DDI in the District of Delaware, we request a response to this letter no later than the close of business on Friday, March 7. Please accept this letter as notification that, absent proper and prompt responses and production by DDI remedying the deficiencies outlined above, Roche will seek assistance from the Court in obtaining the information to which it is entitled.

We look forward to your prompt responses.

Regards,

*Chris Brown*

Christina L. Brown
312 913 2144 direct
brownc@mbhb.com



**PARKER POE ADAMS & BERNSTEIN LLP**

*Attorneys and Counselors at Law*

**Ashley L. Ellis**
*Associate*
Telephone: 704.335.9039
Direct Fax:  704.334.4706
ashleyellis@parkerpoe.com

Three Wachovia Center
Suite 3000
401 South Tryon Street
Charlotte, NC  28202-1935
Telephone  704.372.9000
Fax  704.334.4706
www.parkerpoe.com

March 7, 2008

***VIA ELECTRONIC MAIL***
Christina Brown
McDonnell Boehnen Hulbert & Berghoff LLP
300 S. Wacker Drive
Chicago, Illinois  60606

> **Re:** ***Roche Diagnostics Operations, et al. v. Diagnostic Devices, Inc., et al.;*** **Case No.**
> **07-753-JJF**

Dear Chris:

In response to your letters dated March 5, 2008 and March 6, 2008, DDI stands by, and will not withdraw, its objections to plaintiffs' interrogatories and requests for production of documents.  As we told Dan Boehnen three weeks ago, it is DDI's position that information relating to corporations other than DDI and information relating to DDI's contacts with any state other than Delaware is not relevant to the issue of personal jurisdiction.  We have provided you support for this position below and through the cases cited in our brief.  In response, plaintiffs simply that the documents and information requested are relevant. However, you have not provided any explanation (or case law) as to how information about other companies and other states would tend to prove or disprove that ***DDI*** intentionally created business contacts ***with Delaware*** sufficient to (a) satisfy Delaware's long arm statute; and (b) the constitutional due process limitations.

Additionally, we have repeatedly asked for the information that you have to support the allegation in your complaint that "DDI has committed acts of patent infringement" in Delaware. The only information you produced was a receipt from a purchase from a ShopRite store.  DDI contacted that store and learned that it did not keep DDI products in stock, and therefore the alleged DDI product sold must have resulted from a special order by the store to someone out of state to obtain DDI's product (a) after the Complaint was filed and (b) in an attempt to manufacture jurisdiction.  *World Wide Volkswagen Corp.  v. Woodson*, 44 U.S. 286, 100 S.Ct. 559 (1980), makes it clear that the unilateral activities of a third party (i.e., placing a special order to bring a product into the jurisdiction) cannot confer jurisdiction over a party.  We again request that you provide additional information concerning this purchase (as specified in our interrogatories and requests for documents) as soon as possible.

All of the interrogatories and document requests relating to "Additional Corporations" request information that is not relevant to the issue of personal jurisdiction over DDI.  Plaintiffs'

CHARLESTON, SC
COLUMBIA, SC
MYRTLE BEACH, SC
RALEIGH, NC
SPARTANBURG, SC

Christina Brown
March 7, 2008
Page 2

complaint alleges that "DDI has committed acts of patent infringement" and plaintiffs have not alleged an intermediary, alter ego or agency theory in their complaint. The Comments to Rule 26(b) make it clear that discovery is not allowed to develop new claims or theories not already identified in the pleadings. Moreover, the "Additional Corporations" are not involved, in any way, with any activities having anything to do with glucose testing meters or testing strips, including, but not limited to, design, engineering, manufacturing, importation, warehousing, marketing or sales. They are not part of the supply chain. I do not know how much clearer we can make this statement. ACP Medical Devices sells disposables, such as lancets, but is not in the meter or strip business and does not have customers in Delaware.

DDI's contacts with any state other than Delaware are also irrelevant to the issue of personal jurisdiction. The relevant inquiry for jurisdiction in Delaware is whether DDI's acts were "directed at residents of the state of Delaware and the protection of its laws." *See Intel Corp. v. Silicon Storage Tech., Inc.*, 20 F. Supp. 690 (D.Del. 1998) (we assume you have read this case, but for your convenience, a copy is enclosed). *Intel* addresses nearly ever discovery dispute at issue in this case and makes clear that national advertisements, sales representatives simply assigned to a territory including the state, and distributors in nearby states are not relevant to the issue of personal jurisdiction. The only relevant issue is DDI's *actual* contacts with Delaware, which do not exist. DDI has not directed any acts at the residents of the state of Delaware. DDI does not have any contacts with Delaware in the "Northeast Region" (or any other region), which is why it did not have any information or documents relating to such contacts. Again, we do not know how to make this clearer. DDI does not make, use, sell or offer for sale the alleged infringing products in Delaware. DDI has not encouraged any distributor to sell in Delaware. DDI is not aware of any of its meters having been sold in Delaware, other than the one you pointed out as discussed above.

From the tone and inquiries in your letters, it appears that you believe DDI is a much bigger company than it really is. DDI only has approximately 30 employees, including six salespersons (all of which were listed in response to Interrogatory No. 5). DDI's "corporate structure" consists of its two shareholders, Rick Admani and Ramzi Abulhaj, who are also DDI's only officers and only engineers. DDI does not have any parent or subsidiary companies. To reiterate our interrogatory responses, DDI does not make any sales into Delaware, does not have any distributors in the state of Delaware, does not have any warranty registrations from customers in Delaware, and is not otherwise aware that any of its distributors have sold or are selling DDI's products in Delaware. Accordingly, DDI will not provide its sales figures or a list of its distributors when such information is irrelevant to the issue of personal jurisdiction.

The list of publications provided in response to Interrogatory No. 7 is not merely illustrative. It is a list of all publications in which DDI has ever run an advertisement. DDI does not keep copies of these publications or tear sheets of the actual advertisements. We produced the advertising copy which shows that none of the advertisements target Delaware. As you could tell from reading the ads, none of them constitute an "offer for sale."

To clarify DDI's response to Interrogatory 4 (which DDI believes was clear in the first place), DDI does not now and has not had any contacts with any chain retailer with outlets in Delaware, other than: (a) Wal-Mart, which contact was in Arkansas and did not result in any

Christina Brown
March 7, 2008
Page 3

business with Wal-Mart; and (b) the call to Shop-Rite discussed below.  No further information about that contact is necessary or relevant to this issue of personal jurisdiction.

DDI's response to Interrogatory No. 8 was complete and there is no need for us to repeat that response in this letter.  The burden of determining what websites display and/or sell DDI's products is the same for plaintiffs as it is for DDI, as it would take a Google search for either party.

Further, in response to your letter relating to the document production, the reason that DDI only produced 22 documents is because those were *all* of the relevant documents DDI has.  Since DDI has no contacts with Delaware, it, as one would expect, has no documents relating to those non-existent contacts.  For clarification, there is no entity named DDI Medical – that was simply a typographical error and was referring to DDI.

We will continue to follow up with the phone company our request for records of calls to or from Delaware.  DDI reviewed its phone bills for December 2007 and January 2008 (totaling approximately 300 pages) and there were no calls to Delaware on the bills.  (The bills do not show the origin of incoming calls.)

We are more than happy to discuss our position with you.  DDI is standing on its objections because they are supported by law and because Plaintiffs' requests are so overbroad as written that it would be ridiculous to be placed in a position of having been accused of not responding to them.

For example, in request 15, Plaintiffs seek:

15.    All documents that identify all distributors, wholesalers, dealers, resellers, online vendors, and suppliers with a place of business located in the United States with whom DDI and/or any of the Additional Corporations has entered into or attempted to enter into contracts, and documents sufficient to show the annual and total gross revenues to DDI and/or any of the Additional Corporations from sales under contracts with such distributors, wholesalers, dealers, resellers, online vendors, and suppliers.

DDI's response was:

Christina Brown
March 7, 2008
Page 4

**RESPONSE:**

Information about the Additional Corporations is not relevant to the claims or defenses of

any party to this litigation and is therefore beyond the scope of discovery of Rule 26(b) of the

Federal Rules of Civil Procedure.  Information about purchases, sales or other activities in any

state other than Delaware is not relevant to the claims or defenses of any party to this litigation

and is therefore beyond the scope of discovery of Rule 26(b) of the Federal Rules of Civil

Procedure.  DDI has not entered into or attempted to enter into contracts with any distributors,

wholesalers, dealers, resellers, online vendors, or suppliers in the state of Delaware.

Roche's reaction to that response was simple and conclusory and did not state how
national sales figures from all of these entities would be relevant to the dispute:

**Request No. 15:**

DDI's response is improperly limited to contracts *in* the state of Delaware.  Roche is
entitled to the information sought.

In the same letter you also contend that we must produce information according to the
patently overbroad definition of DDI:

Second, DDI appears to have applied an overly narrow definition of "DDI."  In its Requests,
Roche defined DDI broadly.  DDI, however, appears to have interpreted "DDI" narrowly so
as to severely limit its production obligations.  See, e.g., document DDI 00021, referring to
"DDI Medical" – clearly indicative that there are entities other than Diagnostic Devices Inc.,
with relevant, discoverable information and documents.

Please read your own definition of DDI:

4.      The terms "Defendant," "DDI," "you" and "your" shall mean Diagnostic Devices,

Inc. and/or any company name under which DDI is doing or has done business; its predecessors,

parents, subsidiaries, divisions, licensees, franchisees, assigns or other related business entities;

its directors, officers, employees, agents, distributors, jobbers, salespersons, interns, sales

representatives and attorneys; and each person acting or purporting to act on its or their behalf or

under its or their control.

CLT 1112635v1

Christina Brown
March 7, 2008
Page 5

Read literally, this requires the disclosure of documents sufficient to calculate the total revenues of both Parker Poe and Ashby Geddes. You know that such information is patently irrelevant and you know that you were not asking for it. We interpreted your requests in that reasonable light, not in the patently absurd light that an overly literal interpretation would require.

I am not interested in engaging in a discovery battle over meaningless semantics when the relevant issue is clear – what did DDI do to avail itself to the jurisdiction of Delaware. We have responded fully and fairly to that issue.

Finally, enclosed is the declaration for DDI's interrogatory responses, which was inadvertently left off of the interrogatory responses when they were served.

Regards,

Ashley L. Ellis

Enclosures

cc:    Steve Balick
       Lauren Maguire
       John Day

CLT 1112635v1

# EXHIBIT G

February 28, 2008

To Whom It May Concern:

I have reviewed all warranty registrations to determine if any are located in Delaware. To date, there are none.

Thank You,

Timothy DuBois
DDI Medical Inc
9300 Harris Corners Pkwy Ste#450
Charlotte, N.C 28269
Phone# 704-285-6431

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 28th day of February, 2008.

_____
Signature

2/28/08
Date

DDI00021