# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROCHE DIAGNOSTICS OPERATIONS, INC., and CORANGE INTERNATIONAL LTD., | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | C.A. No. 07-753-JJF |
| ABBOTT DIABETES CARE, INC., ABBOTT DIABETES CARE SALES CORP., BAYER HEALTHCARE, LLC, DIAGNOSTIC DEVICES, INC., LIFESCAN, INC., and NOVA BIOMEDICAL CORP., | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## ROCHE'S MOTION TO COMPEL DDI'S DISCOVERY RESPONSES

OF COUNSEL:

Daniel A. Boehnen
Grantland G. Drutchas
Christina L. Brown
Eric R. Moran
Jessica L. Lunney
McDonnell Boehnen Hulbert & Berghoff LLP
300 South Wacker Drive
Chicago, IL 60606
(312) 913-0001

Dated: March 17, 2008

Philip A. Rovner (#3215)
POTTER ANDERSON & CORROON LLP
Hercules Plaza
P.O. Box 951
Wilmington, DE 19899-0951
(302) 984-6000
provner@potteranderson.com

*Attorney for Plaintiffs*
*Roche Diagnostics Operations, Inc. and*
*Corange International Limited*

Pursuant to Fed. R. Civ. P. 37(a)(3)(B), Roche moves this Court to compel defendant Diagnostic Devices, Inc. ("DDI") to fully respond to interrogatories, requests for the production of documents and things, and a notice of deposition. These discovery items were all properly served by plaintiffs Roche Diagnostics Operations, Inc. and Corange International, Ltd. (collectively "Roche") and were carefully tailored to the issue of this Court's personal jurisdiction over DDI.

## I.      Nature and Stage of the Proceedings

On November 21, 2007, Roche filed a complaint alleging that DDI, among others, was infringing several Roche patents through the manufacture, sale, and use of various blood glucose monitoring products (D.I. 1). On January 11, 2008, rather than substantively answering the complaint, DDI filed a motion to dismiss the complaint for lack of personal jurisdiction (D.I. 44). Roche and DDI stipulated to a schedule for jurisdictional discovery, and this stipulated schedule was submitted to the Court with a joint letter. See Exh. A. Pursuant to the agreed-upon schedule, Roche timely served interrogatories and requests for production on DDI. (Roche's discovery requests are attached as Exhs. B and C).

DDI provided written answers to the Interrogatories (attached as Exh. D), document request responses (attached as Exh. E), and also provided 22 pages of actual discovery documents. These responses, however, fell far short of the discovery to which Roche is entitled. Roche has tried to work out these issues with DDI, but DDI has taken across-the-board positions on several matters that have blocked any reasonable solution or compromise. Accordingly, this motion follows.

## II.     Summary of the Argument

1.      Under the Delaware Long-Arm Statute and stream of commerce jurisprudence, DDI's use of national distribution channels to serve the Delaware market, coupled with sales in

Delaware of products through those distribution channels that infringe the patents in suit, are sufficient to confer personal jurisdiction over DDI.

2.    Information that establishes sales and marketing in Delaware, not only by DDI but also by DDI's distributors, are relevant jurisdictional discovery.

3.    DDI's position that it does not itself direct products into Delaware — and that it has no knowledge as to which of its distributors direct DDI products into Delaware — does not justify DDI's refusal to provide discovery about its distributors.

4.    Under Fed. R. Civ. P. 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."

5.    Marketing activities by DDI's distributors not only in Delaware but also the bordering areas of Pennsylvania and Maryland are very likely to lead to evidence on the sales of DDI products (and thus of jurisdiction) over DDI within Delaware.

## III.    Statement of Facts

Although DDI is incorporated in North Carolina, DDI's blood glucose products can be purchased in Delaware, both through on-line retailers and brick and mortar stores. DDI appears to have set up established distribution channels and a business model that relies heavily upon on-line retailers. The on-line presence of DDI's products extends not only from on-line retailers selling DDI's products but also to DDI's own interactive website, www.prodigymeter.com, accessible to customers anywhere in the United States.

Based upon the limited information provided in DDI's responses to date, it is clear that DDI's business structure and strategy service markets that include Delaware.  DDI has

2

employees targeting the Northeast Region[1] of the United States, who are tasked with calling on healthcare companies, increasing account penetration, and prospecting for new accounts. Exh. D, DDI's answer to Interrogatory 5. In addition, DDI employees target national sales accounts and every major managed formulary. *Id.* Another DDI retail manager is responsible for growth and development of major retail chain pharmacies, developing relationships with major chain pharmacy distributors, getting DDI products loaded in their catalogues, and developing campaigns and strategies to drive business in the major retail chain pharmacy market. *Id.* Further, DDI advertises in such nationwide publications as *Voice of the Diabetic*, *Diabetes Health*, and various Veteran's Affairs and trade show publications. Exh. D, DDI's answer to Interrogatory 7. DDI also packages its products so as to include product inserts and warranty cards. See Exh. J.

Yet despite all this, DDI contends that: (i) DDI does not personally have any documents or information directing the sales or marketing of its products into Delaware, (ii) DDI has no idea as to which of its distributors (if any) are selling or marketing into Delaware, (iii) DDI is not obligated to provide any information about its distributors – not even to identify their names – because their activities are irrelevant since those activities are not directed by DDI per se, and (iv) activities in the immediately adjacent areas of Pennsylvania and Maryland are irrelevant and not discoverable since these areas are not within Delaware. See Exh. F attached, two letters from Roche to DDI dated March 5 and March 6, 2008

## IV. DDI's Use of National Distributors as Agents To Serve the Delaware Market Is Clearly Relevant to the Personal Jurisdiction Inquiry

The Delaware long-arm statute and the "stream of commerce" jurisprudence of the Court of Appeals for the Federal Circuit make clear that this Court has personal jurisdiction over non-

---

[1] Within DDI's corporate organization, it seems that the mid-Atlantic region is encompassed in the "Northeast" region.

resident defendants whose products are sold in Delaware.  Additionally, the Federal Rules of

Civil Procedure contemplate liberal discovery to give parties ample chance to establish all of the

facts relevant to the legal claims at issue in the lawsuit.  The position that DDI has taken with

respect to jurisdictional discovery — especially its refusal to provide any substantive information

beyond bald statements about DDI's lack of *direct* contacts with Delaware — is untenable both

legally and procedurally.

In *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1566 (Fed. Cir. 1994),

the Federal Circuit adopted the stream of commerce theory as an acceptable basis to find

personal jurisdiction in patent cases.  After first holding that Federal Circuit law applies to the

inquiry regarding personal jurisdiction in a patent case, the Court went on to rule that where a

defendant has distribution channels that introduce the accused products into the subject forum, it

is sufficient that defendant placed its product in the stream of commerce, knowing that products

may likely end up in the subject forum.  *Id.* at 1564-66.  Under such circumstances, the

defendant should reasonably anticipate being brought into court in the forum state.  *Id.* at 1566.

In *Beverly Hills Fan*, a Chinese manufacturer sent accused products into the stream of

commerce, and those products only reached the forum (Virginia) through intermediary

distributors.  *Id.* at 1560.  The Chinese manufacturer had no direct contacts with the forum, and

the New Jersey importer's sole contact was a single sale of unrelated goods.  However, the

Federal Circuit held that defendant's intentional use of an established distribution channel was

sufficient to justify personal jurisdiction.  *Id.* at 1560, 1566.  This exercise of personal

jurisdiction comported with both the forum's long-arm statute[2] and due process.  *Id.* at 1572.

---

[2] In *Beverly Hills Fan,* the Federal Circuit applied the Virginia long-arm statute.  21 F.3d at
1569.  However, Delaware's long-arm statute is commensurate in scope to the Virginia statute.
*Compare* Del. Code Ann. tit. 10, § 3104 and *Tristrata Tech., Inc. v. Emulgen Labs.,* No. 06-652,
2008 WL 508600, at *3 (D. Del. Feb. 25, 2008) ("The Delaware Supreme Court has construed
the long-arm statute liberally to confer jurisdiction to the maximum extent possible") *with*

This Court has applied the stream of commerce theory to find personal jurisdiction over non-resident defendants in patent infringement cases. *See Motorola, Inc. v. PC-Tel, Inc.*, 58 F. Supp. 2d 349, 357 (D. Del. 1999). In *Motorola*, the defendant had no direct contacts with the forum, but it created or licensed products which were then "integrated into other products expressly designed and designated for end use by consumers in the fifty states and beyond." *Id.* at 354. Indeed, "by contracting with entities that have a market presence both nationally and worldwide," the defendant could "hardly be heard to complain that it did not know the likely destination of some of its products would include this forum." *Id.* at 355.

The Federal Circuit has vacated a judgment dismissing a case for lack of personal jurisdiction where the district court decided the issue without allowing the full scope of jurisdictional discovery. *Commissariat à L'Énergie Atomique v. Chi Mei Optoelectronics Corp.*, 395 F.3d 1315, 1324 (Fed. Cir. 2005). In doing so, the Court provided examples of appropriate jurisdictional discovery, which include "the defendant's intent and purpose to serve the Delaware market"; "[the defendant's] knowledge that its products were being shipped to Delaware"; and "its design and marketing efforts directed to the U.S. market (including Delaware)." *Id.* at 1323.

As Roche's allegations of infringement against DDI are premised on this Court's proper personal jurisdiction over DDI, discovery related to DDI's use of various streams of commerce that ultimately flow to Delaware is both reasonable and relevant.

## V.    The Discovery Sought Is Directly Relevant Jurisdictional Discovery

Roche seeks only information that bears on whether the exercise of personal jurisdiction is proper with respect to DDI. As shown above, one valid basis for the exercise of personal jurisdiction against non-resident defendants is the stream of commerce theory. DDI has itself

---

*Beverly Hills Fan*, 21 F.3d at 1569 ("The Virginia legislature intended Virginia's long-arm statute to extend the jurisdiction of the Virginia Courts as far as due process would allow").

acknowledged the stream of commerce theory; indeed, DDI cited the *Beverly Hills Fan* case in its opening brief in support of its motion to dismiss.

Despite the firm legal basis for discovery related to the stream of commerce theory, DDI has maintained that "information relating to corporations other than DDI and information relating to DDI's contacts with any state other than Delaware is not relevant to the issue of personal jurisdiction." See Exh. G, Ellis March 7, 2008 Letter. When Roche discussed the situation with DDI during the meet-and-confer conference, DDI adamantly contended that discovery as to DDI's distributors was irrelevant because DDI had not directed the action of those distributors and did not know whether its distributors were selling or marketing DDI products in Delaware.

A.  **DDI Has Refused To Produce Clearly Relevant Discovery into Distribution of DDI Products Through Established Channels in Delaware**

Roche has requested that DDI describe and produce documents relating to the distribution chains that link DDI to the consumers who buy DDI products, including identifying DDI's distributors and resellers. DDI has refused, stating that "DDI will not provide . . . a list of distributors when such information is irrelevant to the issue of personal jurisdiction." Exh. G, Ellis March 7, 2008 Letter. Under *Beverly Hills Fan*, contacts with distributors that have contact with the forum provide a basis for personal jurisdiction. *See* 21 F.3d at 1560 (foreign manufacturer's only contacts with the forum were shipments of products through intermediaries). Indeed, in *Motorola*, the fact that defendant's distributors had "established distribution channels that service the State of Delaware" was relevant to a finding that defendant's use of the stream of commerce constituted minimum contacts with Delaware. 58 F. Supp. 2d at 355.

As in *Motorola* and *Beverly Hills Fan*, whether DDI has distributors with established distribution channels is highly relevant, and Roche seeks information of the type relied on by the courts in these, and many other, cases. As such, Roche's discovery requests need not be limited

6

to DDI *per se*, but may also seek information regarding the identity of, relationship with, and activities of any related entity or distributor that may service Delaware or regions that include Delaware. DDI wrongly refuses to produce such clearly relevant discovery. Indeed, despite telling Roche that it does not know where its resellers and distributors sell, it has refused to even identify those entities, so that Roche can attempt to ascertain at least some of the answers itself!

Given that Roche's requests are reasonably calculated to lead to the discovery of admissible evidence as to personal jurisdiction, Roche asks the Court to order DDI to provide Roche with complete discovery as to distribution of DDI products in Delaware and in any region that includes Delaware, including the Northeast Region (*see* Requests 1, 3, 4, 5, 10, 12, and 23), and distributors, wholesalers, dealers, resellers, online vendors, and suppliers with which DDI has contracted or has attempted to contract (*see* Requests 7, 8, 11, and 15). *See also* Interrogatories 2, 4, and 8 (Exh. B) and topics 1-3 and 5-7 of Roche's Rule 30(b)(6) deposition notice to DDI, Exh. H hereto.

In some of its responses to Roche's requests for distributor information, DDI has implied that it is withholding otherwise relevant documents on the grounds that those documents are confidential. *See* Exh. D, DDI's answer to Interrogatory 2; Exh. E, DDI's response to Request 13. But of course, DDI's withholding of confidential information is improper in view of the protections already conferred under the Local Rules of Delaware. See Del. Local Rule 26.2

### B.    DDI Has Refused To Produce Relevant Discovery into DDI's Marketing and Advertising Documents Establishing Contacts with Delaware

Roche has requested production of marketing information for DDI's products in Delaware and any region that includes Delaware, such as the Northeast. *See* Exh. C, Requests 1-5. DDI objected to all of these requests, improperly limiting its responses to Delaware and refusing to produce more than a few pages of "examples" of its marketing materials. Such refusal to provide discovery is improper. *See Commissariat à L'Énergie Atomique*, 395 F.3d at 1323 (marketing

materials falling within the appropriate scope of jurisdictional discovery). For example, DDI has a sales representative for the Northeast region. *See* Exh. D, DDI's answer to Interrogatory 5. Given Roche's reasonably tailored requests relevant to the issue of personal jurisdiction, Roche asks the Court to order DDI to produce materials relevant to the marketing of DDI's products in Delaware, as well as in any region that includes Delaware, such as the Northeast region. *See* Exh. C., Requests 1-5.

      C.      **DDI Is Seeking To Block Relevant Discovery into its Sales Figures**

     Roche has requested that DDI quantify its sales of blood glucose meters and associated products such as testing strips. Exh. B, Interrogatory 3. This information will allow Roche to show the relative amount of DDI's sales that occur in Delaware. DDI has improperly limited its reply to a total sales figure for testing strips in 2007. Exh. D, DDI's answer to Interrogatory 3. The quantification of both total sales and sales attributable to Delaware is relevant to the issue of personal jurisdiction. *See Tristrata,* 2008 WL 508600 at *1; *Motorola*, 58 F. Supp. 2d at 351 (defendant's revenue discussed in the context of personal jurisdiction). Therefore, the Court should order DDI to supplement its answer with sales figures and unit volumes for both U.S. and Delaware sales of its blood glucose monitoring products, and including sales information for 2008.

      D.      **DDI Has Improperly Imposed a Regional Limitation on Jurisdictional Discovery**

     Roche requested information regarding DDI's commercial activities in Delaware and the Northeast, as well as any activities that are national in scope. During discussions on the pending motions, Roche offered that as to specific states, it is primarily interested in Delaware and the immediately adjacent states of Pennsylvania and Maryland. DDI refused to provide information other than as to direct sales in Delaware, claiming that "information relating to DDI's contacts with any state other than Delaware is not relevant to the issue of personal jurisdiction." Exh. G,

Ellis March 7, 2008 Letter.  Considering Delaware's close proximity to and economic

interrelationship with the states adjacent to it, information regarding commercial activity in

Maryland and Pennsylvania could certainly lead to admissible evidence regarding Delaware.

Therefore, the Court should order DDI to supplement its responses to include information about

sales, distribution, and marketing of its products in any regions including Delaware. *See* Exh. D,

DDI's answers to Interrogatories 2 and 3; Exh. E, DDI's responses to Requests 1, 3-12, 14, 15,

23, 27-30, 41-44 (in which DDI improperly and explicitly limited its responses).

### E.    DDI Has Attempted To Block Relevant Discovery into its Website Content

Roche has requested information regarding the development, maintenance, and visitor

traffic associated with DDI's website, which nationally and internationally promotes its blood

glucose monitoring products.  Such website activity is relevant to determinations of personal

jurisdiction. *Motorola*, 58 F. Supp. 2d at 352.  That is especially so where, as here, software can

be downloaded from the DDI website, for example. However, despite claiming to have requested

a report about traffic to its website, DDI has not produced any such report. *See* Exh. E, DDI's

response to Request 22.  Further, it strains credibility for DDI to claim that, despite its work with

a third-party vendor to develop and maintain its website, DDI has no documents in its possession

related to the historic content or development of its website. *See* Exh. E,  DDI's responses to

Requests 39 and 40.  Accordingly, Roche requests this Court to order DDI to produce any and all

relevant reports regarding the DDI website and to explain how DDI could have developed and

could continue to maintain its website while creating no documents (electronic or otherwise).

### F.    DDI Has Refused To Produce Phone Records About Calls To/from Delaware

Roche has requested that DDI produce any telephone records showing calls to or from

entities in Delaware. *See* Exh. C, Requests 20 and 21.  DDI claimed to have not found any calls

to Delaware on some of those bills, but DDI gave no justification for not obtaining and

9

reviewing DDI's full phone records or for not determining whether calls were made *from* Delaware to DDI. Roche asks that this Court compel DDI to produce (or allow Roche to review) all DDI phone records for any calls to or from Delaware.

### G. DDI Has Refused to Produce Relevant Information Regarding "Additional Corporations" That Reside at the Same Address and Are Believed to Have Overlapping Corporate Structures

Roche has requested basic information on several corporations that all reside at the same addresses as DDI so that Roche can ascertain whether, for example, any of these corporations play a role in the manufacture, distribution, marketing, offer for sale, or sale of DDI's products. DDI has refused to respond to discovery requests directed to these entities, beyond a conclusory statement by DDI's counsel that these entities are unrelated to DDI. *See* Exh. G, Ellis March 7, 2008 Letter.

For example, DDI has produced a document in which an employee identified himself as working for an entity named "DDI Medical Inc." DDI00021, Exh. I hereto. DDI's counsel thereafter claimed that no "DDI Medical" entity exists and that its use in this context was a "typographical error," Exh. G, Ellis March 7, 2008 Letter. Yet at least one DDI employee clearly believes that other entities share both an address and relevant business operations with DDI. DDI has refused to provide any information or to produce any documents relative to any other entity. Related companies are , of course, an area Roche should be entitled to probe at deposition. *See* Exh. H, topic 1.

If the standard applied by DDI were correct, then Delaware plaintiffs would be eternally hamstrung in trying to establish jurisdiction over product liability defendants or any corporate entity not headquartered in Delaware.

**H.    30(b)(6) Deposition Topics**

Roche has noticed a deposition of DDI pursuant to Fed. R. Civ. P. 30(b)(6), for several

topics.  See Exh. H.  Many of the issues involved in relation to Roche's 30(b)(6) deposition

overlap with the issues raised by DDI's motion to protective order, and will be addressed in

detail in that context.  Roche requests this Court to compel DDI to present a competent witness

to testify on the topics listed in Exh. H.

**VI.    CONCLUSION**

For at least the foregoing reasons, Roche respectfully requests that the Court compel DDI

to fully respond to Roche's discovery requests.


OF COUNSEL:                                              POTTER ANDERSON & CORROON LLP

Daniel A. Boehnen
Grantland G. Drutchas
Christina L. Brown                                      By:_____
Eric R. Moran                                                   Philip A. Rovner (#3215)
Jessica L. Lunney                                               Hercules Plaza
McDonnell Boehnen Hulbert & Berghoff LLP                        P.O. Box 951
300 South Wacker Drive                                          Wilmington, DE 19899-0951
Chicago, IL 60606                                               (302) 984-6000
(312) 913-0001                                                  provner@potteranderson.com

Dated: March 17, 2008                                   *Attorney for Plaintiffs*
855560                                                  *Roche Diagnostics Operations, Inc. and*
                                                        *Corange International Limited*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, Philip A. Rovner, hereby certify that on March 17, 2008, the within document

was filed with the Clerk of the Court using CM/ECF which will send notification of such

filing(s) to the following; that the document was served on the following counsel as

indicated; and that the document is available for viewing and downloading from

CM/ECF.

**BY HAND DELIVERY AND E-MAIL**

Frederick L. Cottrell, III, Esq.
Anne Shea Gaza, Esq.
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, DE 19801
cottrell@rlf.com
gaza@rlf.com

Mary W. Bourke, Esq.
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 N. Orange Street
Wilmington, DE 19801
mbourke@cblh.com

Steven J. Balick, Esq.
John G. Day, Esq.
Ashby & Geddes
500 Delaware Avenue
8th Floor
P.O. Box 1150
Wilmington, DE 19899
sbalick@ashby-geddes.com
jday@ashby-geddes.com

**BY HAND DELIVERY AND E-MAIL**

John W. Shaw, Esq.
Jeffrey T. Castellano, Esq.
Young Conaway Stargatt & Taylor, LLP
1000 West Street, 17th Floor
Wilmington, DE 19801
jshaw@ycst.com
jcastellano@ycst.com

Rodger D. Smith, Esq.
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
rsmith@mnat.com

I hereby certify that on March 17, 2008 the foregoing document to the following

non-registered participants:

Edward A. Mas, II, Esq.
Stephen F. Sherry, Esq.
Kirk Vander Leest, Esq.
James M. Hafertepe, Esq.
Merle S. Elliott, Esq.
McAndrews, Held & Malloy, Ltd.
500 West Madison Street
34th Floor
Chicago, IL 60661
emas@mcandrews-ip.com
ssherry@mcandrews-ip.com
kvanderleest@mcandrews-ip.com
jhafertepe@mcandrews-ip.com
melliott@mcandrews-ip.com

Kenneth P. George, Esq.
Joseph M. Casino, Esq.
Amster, Rothstein & Ebenstein LLP
90 Park Avenue
New York, NY 10016
kgeorge@arelaw.com
jcasino@arelaw.com

Bradford J. Badke, Esq.
Sona De, Esq.
Michael Kahn, Esq.
Ropes & Gray LLP
1211 Avenue of the Americas
New York, NY 10036-8704
Jim.badke@ropesgray.com
Sona.de@ropesgray.com
Michael.kahn@ropesgray.com

Wesley E. Overson, Esq.
Rachel Krevans, Esq.
Jason R. Bartlett, Esq.
Parisa Jorjani, Esq.
Daniel P. Muino, Esq.
Morrison & Foerster LLP
425 Market Street
San Francisco, CA 94105-2482
woverson@mofo.com
rkrevans@mofo.com
jasonbartlett@mofo.com
pjorjani@mofo.com
dmuino@mofo.com

Michael G. Adams, Esq.
Ashley L. Ellis, Esq.
Parker Poe Adams & Bernstein LLP
Three Wachovia Center, Suite 3000
401 South Tryon Street
Charlotte, NC 28202
mikeadams@parkerpoe.com
ashleyellis@parkerpoe.com

Philip A. Rovner (#3215)
Potter Anderson & Corroon LLP
Hercules Plaza
P.O. Box 951
Wilmington, Delaware 19899
(302) 984-6000
E-mail: provner@potteranderson.com

-2-

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ROCHE DIAGNOSTICS OPERATIONS INC. and CORANGE INTERNATIONAL LTD., | ) ) ) | |
| Plaintiffs, | ) ) ) | C.A. No. 07-753-JJF |
| v. | ) ) ) | |
| ABBOTT DIABETES CARE, INC., ABBOTT DIABETES CARE SALES CORP., BAYER HEALTHCARE LLC, DIAGNOSTIC DEVICES INC., LIFESCAN INC., and NOVA BIOMEDICAL CORP., | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## NOTICE OF MOTION TO COMPEL DDI'S DISCOVERY RESPONSES

PLEASE TAKE NOTICE that Plaintiffs Roche Diagnostics Operations, Inc. and Corange

International Ltd. ("Roche") will present Roche's Motion to Compel DDI's Discovery

Responses to the Court on Friday, April 11, 2008 at 10:00 a.m.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Daniel A. Boehnen
Grantland G. Drutchas
Christina L. Brown
Eric R. Moran
Jessica L. Lunney
McDonnell Boehnen Hulbert & Berghoff LLP
300 South Wacker Drive
Chicago, IL 60606
(312) 913-0001

Dated: March 17, 2008
855492

By: _____
         Philip A. Rovner (#3215)
         Hercules Plaza
         P.O. Box 951
         Wilmington, DE 19899-0951
         (302) 984-6000
         provner@potteranderson.com

*Attorney for Plaintiffs
Roche Diagnostics Operations, Inc. and
Corange International Limited*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

ROCHE DIAGNOSTICS OPERATIONS, INC., )
and CORANGE INTERNATIONAL LTD., )
)
        Plaintiffs, )
)
        vs. )    C.A. No. 07-753-JJF
)
ABBOTT DIABETES CARE, INC., )
ABBOTT DIABETES CARE SALES CORP., )
BAYER HEALTHCARE, LLC, )
DIAGNOSTIC DEVICES, INC., )
LIFESCAN, INC., and )
NOVA BIOMEDICAL CORP., )
)
        Defendants. )

## <u>CERTIFICATION PURSUANT TO LOCAL RULE 7.1.1</u>

On March 10, 2008, counsel for Plaintiffs, Christina Brown, Daniel Boehnen, and

Grantland Drutchas, conferred with opposing counsel and made a reasonable effort to reach

agreement and avoid the necessity of filing this motion.  No agreement could be reached.

OF COUNSEL:                              POTTER ANDERSON & CORROON LLP

Daniel A. Boehnen
Grantland G. Drutchas
Christina L. Brown
Eric R. Moran                            By:_____
Jessica L. Lunney                              Philip A. Rovner (#3215)
McDonnell Boehnen Hulbert & Berghoff LLP       Hercules Plaza
300 South Wacker Drive                         P.O. Box 951
Chicago, IL 60606                              Wilmington, DE 19899-0951
(312) 913-0001                                 (302) 984-6000
                                               provner@potteranderson.com

Dated: March 17, 2008                    *Attorney for Plaintiffs*
855556                                   *Roche Diagnostics Operations, Inc. and*
                                         *Corange International Limited*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ROCHE DIAGNOSTICS OPERATIONS, INC.,<br>and CORANGE INTERNATIONAL LTD., | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| vs. | )  C.A. No. 07-753-JJF<br>) |
| ABBOTT DIABETES CARE,<br>INC., ABBOTT DIABETES CARE SALES<br>CORP., BAYER HEALTHCARE, LLC,<br>DIAGNOSTIC DEVICES, INC., LIFESCAN,<br>INC., and NOVA BIOMEDICAL CORP., | )<br>)<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

## [PROPOSED] ORDER

Plaintiffs Roche Diagnostics Operations, Inc. and Corange International Ltd. having filed a motion to compel discovery from defendant Diagnostic Devices, Inc., and after considering the positions of the parties, having concluded that good grounds exist for the requested relief;

IT IS HEREBY ORDERED that DDI provide the following discovery:

### A.    Distribution of DDI Products

DDI shall provide Roche with complete discovery as to distribution of DDI products in Delaware and in any "region" (as that term is used within DDI's organizational structure) that includes Delaware, including the Northeast Region (*see* Exh. C, Roche Production Request Nos. 1, 3, 4, 5, 10, 12, and 23), and distributors, wholesalers, dealers, resellers, online vendors, and suppliers with which DDI has contracted or has attempted to contract (*see* Exh. C, Roche Production Request Nos. 7, 8, 11, and 15). *See also* Exh. B, Roche Interrogatory Nos. 2, 4, and 8; Exh. H, Roche's Notice of 30(b)(6) Deposition to DDI Topic Nos. 1-3 and 5-7.

DDI shall supplement its responses to include any and all responsive information that exists as to such topics and to provide testimony on such topics. *See* Ex. B, Roche Interrogatory No. 2; Exh. C, Roche Production Request No. 13.

### B.    Marketing and Advertising Documents

DDI shall produce materials relevant to the marketing of DDI's products in Delaware, as well as in any "region" (as that term is used within DDI's organizational structure) that includes Delaware, such as the Northeast region. *See* Exh. C, Roche Production Request Nos. 1-5.

### C.    Sales Figures

DDI shall supplement its answer to Roche Interrogatory No. 3 (Exh. B) with sales figures and unit volumes for both U.S. and Delaware sales of its blood glucose monitoring products, and including sales information for 2008.

### D.    Regional Limitation

DDI shall supplement its responses and production to include information about sales, distribution, and marketing of its products in any "regions" (as that term is used within DDI's organizational structure) including Delaware and nationwide. *See* Exh. B, Roche Interrogatory Nos. 2 and 3; Exh. C, Roche Production Request Nos. 1, 3-12, 14, 15, 23, 27-30, and 41-44.

### E.    Website Content

DDI shall produce any and all relevant reports regarding the DDI website and shall explain how DDI could have developed and could continue to maintain its website while creating no documents (electronic or otherwise). *See* Exh. C, Roche Production Request Nos. 22, 39, and 40.

**F.     Telephone Records**

DDI shall produce (or allow Roche to review) all DDI phone records for any calls to or from Delaware. *See* Exh. C, Roche Production Request Nos. 20 and 21.

**G.     Additional Corporations and DDI Entities**

DDI shall provide a complete response to Roche Interrogatory No. 1 (Exh. B) and DDI shall provide a witness to testify regarding Roche's Notice of 30(b)(6) Deposition to DDI Topic No. 1 (Exh. H).

**H.     30(b)(6) Deposition Topics**

DDI shall present a competent witness to testify on the topics listed in Roche's Notice of 30(b)(6) Deposition to DDI (Exh. H).

**I.     Confidential Information**

Pursuant to Del. L.R. 26.2, DDI shall not withhold relevant information on the ground that such information is confidential.


Entered this ___ of _____ 2008

_____
United States District Judge

# EXHIBIT

# A

# ASHBY & GEDDES

ATTORNEYS AND COUNSELLORS AT LAW
500 DELAWARE AVENUE
P. O. BOX 1150
WILMINGTON, DELAWARE 19899

TELEPHONE
302-654-1888

FACSIMILE
302-654-2067

February 15, 2008

The Honorable Joseph J. Farnan, Jr.                    VIA ELECTRONIC FILING
United States District Court
844 King Street
Wilmington, DE  19801

     Re:    *Roche Diagnostics Operations, Inc. et al. v. Abbott Diabetes Care, Inc.*
            C.A. No. 07-753-JJF

Dear Judge Farnan:

     Plaintiffs and defendant Diagnostic Devices, Inc. ("DDI") jointly submit the enclosed proposed scheduling order for the Court's consideration.  Except for paragraph 7, Plaintiffs and DDI have agreed to the enclosed scheduling order regarding DDI's motion to dismiss for lack of personal jurisdiction and related jurisdictional discovery requested by Plaintiffs.  The parties' respective positions with respect to paragraph 7 are bolded for the Court's convenience.

                       Respectfully,

                       */s/ Lauren E. Maguire*

                       Lauren E. Maguire

Enclosure
188323.1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ROCHE DIAGNOSTICS OPERATIONS INC.          )
and CORANGE INTERNATIONAL LIMITED,         )
                                           )
            Plaintiffs,                    )
                                           )
        v.                                 )        C.A. No. 07-753-JJF
                                           )
ABBOTT DIABETES CARE, INCORPORATED,        )
ABBOTT DIABETES CARE SALES CORPORATION,    )
BAYER HEALTHCARE LLC, DIAGNOSTIC           )
DEVICES INC., LIFESCAN INCORPORATED,       )
NOVA BIOMEDICAL CORPORATION, and           )
SANVITA INCORPORATED,                      )
                                           )
            Defendants.                    )

**[PROPOSED] SCHEDULING ORDER REGARDING DIAGNOSTIC DEVICES, INC.'S
MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

This matter came before the Court in relation to the Motion by Diagnostic Devices, Inc.

("DDI") to Dismiss for Lack of Personal Jurisdiction (the "Motion").

IT IS SO ORDERED that the following schedule shall apply to the Court's consideration

of the Motion:

1. By no later than February 18, 2008, Plaintiffs shall provide to DDI evidence of the

purchase of one or more products in Delaware, including the date of purchase, the location of

purchase and the vendor.

2. DDI shall serve its full responses and objections, including DDI's responsive

documents if any, to Plaintiffs' previously served discovery requests by no later than February

28, 2008.

3. Within twenty (20) days from Plaintiffs' receipt of DDI's responses, including DDI's

responsive documents if any, DDI shall produce one or more of its representatives for

deposition(s) in response to notice(s) by Plaintiffs.  The deposition(s) of DDI or its representative(s) shall take place in Charlotte, North Carolina and shall relate only to personal jurisdiction of DDI in Delaware, including but not necessarily limited to DDI's contacts, direct or indirect, directed to Delaware.

    4.  Plaintiffs' answering brief in response to the Motion shall be due no later than thirty (30) days from plaintiffs' receipt of DDI's responses to discovery requests, including DDI's responsive documents if any.

    5.  DDI's reply brief shall be due no later than ten (10) days from receipt of Plaintiffs' answering brief.

    6.  Discovery taken in connection with this jurisdictional motion shall not count against any discovery event limitations that may be set forth in any other Scheduling Order of this Court.

    7.  **DDI's Position:  DDI should not be subject to merits-based discovery until the Court has ruled on the Motion.**

      **Plaintiffs' Position:  Merits-based discovery is not stayed pending the Court's ruling on the Motion.**

| POTTER ANDERSON & CORROON LLP | ASHBY & GEDDES |
|---|---|
| */s/ Philip A. Rovner* | */s/ Lauren E. Maguire* |
| ———————————————— | ———————————————— |
| Philip A. Rovner (I.D. #3215) | Steven J. Balick (I.D. #2114) |
| Hercules Plaza | John G. Day (I.D. #2403) |
| P.O. Box 951 | Lauren E. Maguire (I.D. #4261) |
| Wilmington, DE  19899-0951 | 500 Delaware Avenue, 8th Floor |
| (302) 984-6000 | P.O. Box 1150 |
| provner@potteranderson.com | Wilmington, DE  19899 |
| *Attorney for Plaintiffs Roche Diagnostics* | (302) 654-1888 |
| *Operations Inc, and Corange International* | sbalick@ashby-geddes.com |
| *Limited* | jday@ashby-geddes.com |
| | lmaguire@ashby-geddes.com |
| | *Attorneys for Defendant Diagnostic Devices, Inc.* |

2

SO ORDERED this _____ day of _____, 2008.

188321.1

_____
United States District Judge

3

# EXHIBIT
# B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROCHE DIAGNOSTICS OPERATIONS, INC., and CORANGE INTERNATIONAL LIMITED, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | C.A. No. 07-753-JJF |
| ABBOTT DIABETES CARE, INCORPORATED, and ABBOTT DIABETES CARE SALES CORPORATION, | ) ) ) ) ) | DEMAND FOR JURY TRIAL |
| BAYER HEALTHCARE, LLC, | ) ) | |
| DIAGNOSTIC DEVICES, INC., | ) ) | |
| LIFESCAN, INCORPORATED, and | ) ) | |
| NOVA BIOMEDICAL CORPORATION, and SANVITA INCORPORATED, | ) ) ) | |
| Defendants. | ) ) | |

**ROCHE DIAGNOSTICS OPERATIONS, INC.'S AND CORANGE INTERNATIONAL
LIMITED'S FIRST SET OF INTERROGATORIES (NOS. 1-9)
TO DEFENDANT DIAGNOSTIC DEVICES, INC.**

Plaintiffs Roche Diagnostics Operations, Inc. ("RDOI") and Corange International Limited

("Corange") (collectively "Plaintiffs") propound the following Interrogatories to Defendant

Diagnostic Devices, Inc. ("DDI"), pursuant to Rules 26 and 33 of the Federal Rules of Civil

Procedure and the Local Rules of the U.S. District for the District of Delaware. The written

responses to these Interrogatories shall be served on Plaintiffs' counsel within thirty (30) days of the

service thereof, or on any other date ordered by the Court or agreed to by the parties. Further, any

documents and things produced in response to these Interrogatories shall be produced for inspection

and copying at the offices of Plaintiffs' counsel, McDonnell Boehnen Hulbert & Berghoff LLP, 300

S. Wacker Dr., Chicago, Illinois 60606, within thirty (30) days from the service of these

Interrogatories, or on any other date ordered by the Court or agreed to by the parties.

All Interrogatories propounded by Plaintiffs are deemed to be continuing in nature so as

to require supplementation promptly following the discovery of additional documents or things

or knowledge or information by DDI to the extent such documents or things or knowledge or

information is responsive to Plaintiffs' Interrogatories.

### DEFINITIONS

For the purposes of responding to the following Interrogatories, the following definitions

shall apply:

1.    The term "RDOI" shall mean Roche Diagnostics Operations, Inc. and/or any

company name under which RDOI is doing or has done business; its predecessors, parents,

subsidiaries, divisions, licensees, franchisees, assigns or other related business entities; its

directors, officers, employees, agents, distributors, jobbers, salespersons, interns, sales

representatives and attorneys; and each person acting or purporting to act on its or their behalf or

under its or their control.

2.    The term "Corange" shall mean Corange International Limited and/or any

company name under which Corange is doing or has done business; its predecessors, parents,

subsidiaries, divisions, licensees, franchisees, assigns or other related business entities; its

directors, officers, employees, agents, distributors, jobbers, salespersons, interns, sales

representatives and attorneys; and each person acting or purporting to act on its or their behalf or

under its or their control.

3.    The term "Plaintiffs" shall mean RDOI and Corange.

2

4.      The terms "Defendant," "DDI," "you" and "your" shall mean Diagnostic Devices,

Inc. and/or any company name under which Diagnostic Devices, Inc. is doing or has done

business; its predecessors, parents, subsidiaries, divisions, licensees, franchisees, assigns or other

related business entities; its directors, officers, employees, agents, distributors, jobbers,

salespersons, interns, sales representatives and attorneys; and each person acting or purporting to

act on its or their behalf or under its or their control.

5.      The terms "person" or "persons" shall mean natural persons (including but not

limited to those employed by Defendant) and all other legally cognizable entities, including

(without limitation) governmental entities, agencies, officers, departments or affiliates of the

United States of America or any other governmental entity; commercial entities such as

corporations, foundations, partnerships and proprietorships; associations; organization; and

groups of natural persons.

6.      The term "date" shall mean the exact day, month and year, if ascertainable, or, if

not, Defendant's closest approximation (including but not limited to an identification of

relationship to other events).

7.      The term "document(s)" shall have the broadest meaning accorded to it by Rule

34 of the Federal Rules of Civil Procedure, and shall include, without limitation, any recording in

any tangible form of any information, whether handwritten, typed, printed, stored on computer

disks, tapes or databases (including electronic files and e-mail) or otherwise reproduced.

"Document" also includes all drafts and copies that are not identical to the original.

8.      The term "thing(s)" shall have the broadest meaning accorded to it by Rule 34 of

the Federal Rules of Civil Procedure, and shall include, without limitation, every kind of

physical specimen or tangible item, other than a document, in the possession, custody or control of Defendant.

9.     The term "communication" shall mean any disclosure, transmission or exchange of information from one person or entity to another, including without limitation by personal meeting, telephone, facsimile, radio, telegraph, electronic mail, teleconference, writing or other means.

10.    The terms "concerning," "referring to" and "relating to" shall be interpreted so as to encompass the liberal scope of discovery set forth in Rule 26(b) of the Federal Rules of Civil Procedure, and shall mean for example and without limitation, refer, relate, analyze, concern, constitute, contain, contradict, describe, discuss, evaluate, evidence, pertain, reflect, refute or support.

11.    The term "including" shall be construed broadly, and shall encompass "including but not limited to" or "including without limitation."

12.    The terms "identify," "identification," "describe," or "description" shall mean to provide a complete identification of the document, thing, or person to the fullest extent known or ascertainable by Defendant, whether or not the information is in the possession, custody, or control of Defendant and whether or not the information is alleged to be protected by any privilege or work product protection, and includes without limitation a request for the following information:

(a)    with respect to a natural person, his or her name; home and work addresses and telephone numbers; present (or if unknown, the last known) place of employment; date(s) of commencement and termination of employment; job title; and description of his or her duties and responsibilities;

4

(b)     with respect to a corporation or other legal entity, the full name; state of incorporation or registration; address of its principal place of business; telephone number of its principal place of business; and the identity of each natural person who acted on behalf of such entity with respect to the subject matter of the document request;

(c)     with respect to a document, the type of document (e.g., letter, e-mail, facsimile, contract, calendar, report); the number of pages of which the document consists; a general description of the document's contents; an identification of each person(s) who prepared the document, who signed the document, for whom it was prepared, to whom it was delivered, mailed, or otherwise received, and to whom a copy was sent or who otherwise received a copy; the date of writing, creation or publication; the identifying number(s), letter(s), or combination thereof, if any, and the significance or meaning of such number(s), letter(s) or combination thereof; and present location and identity of the custodian of that document. Documents to be identified shall include documents currently in your possession, custody or control; documents you know to have once existed but that no longer exist; and other documents of which you have knowledge or information but that are not currently in your possession, custody or control;

(d)     with respect to a product or to equipment, the common name of the product or equipment; the trade, brand, or commercial name of the product or equipment; the model, part number, catalog number, and/or serial number of the product or equipment; the manufacturer and vendor of the product or equipment; and the use and/or function of the product or equipment;

(e)     with respect to an activity, the events and/or occurrences that comprise the activity; the persons involved in the activity; the dates when the activity occurred; and the locations where the activity occurred;

5

      (f)     with respect to oral communications, the manner in which the communications were made (telephone, conversation, etc.); the identity of each person who participated in or witnessed the communication; and the subject matter and content of the communication; and the date of the communication;

      (g)     with respect to a patent or patent application, the country or jurisdiction in which it was filed; the number; the named inventor(s); the filing date; the issue date (if a patent); and all related or foreign counterpart applications and patents; and

      (h)     with respect to films, photographs, tapes, computer media, and other things susceptible to chemical, biological, mechanical, or electrical reproduction, all identifying information including their character; subject matters; authors; and dates.

     13.     The terms "and," "or" and "and/or" shall be construed disjunctively or conjunctively as necessary in order to bring within the scope of the request all responses which otherwise might be construed to be outside its scope.

     14.     The term the "146 patent" shall mean U.S. Pat. No. 7,276,146.

     15.     The term the "147 patent" shall mean U.S. Pat. No. 7,276,147.

     16.     The term "patents-in-suit" shall mean the 146 patent and the 147 patent either collectively or individually, as well as any other patent(s) that may be subsequently added to the litigation.

     17.     The term "Complaint" shall mean Plaintiffs' "Complaint for Patent Infringement" filed by Plaintiffs in this action on or about November 21, 2007, as well as any amended complaints that may be filed.

6

18.    The terms "prior art" includes, by way of example and without limitation, any subject matter that you assert may be encompassed by 35 U.S.C. §103 and/or any subdivision of 35 U.S.C. §102.

19.    The term "Electrochemical Sensor" shall mean any sensor device made, used, sold, offered for sale, or imported, by DDI or any of the Additional Corporations capable of being used to determine the concentration of glucose in a blood sample, including but not necessarily limited to the specific electrochemical sensors identified in the Complaint. The Electrochemical Sensors includes (without limitation) test strips or equivalent devices alone or in combination with a meter or equivalent device capable of receiving the test strips and participating in the determination of the concentration of glucose in a blood sample.

20.    The term "Additional Corporations" shall mean A & Z Medical, Inc., a corporation registered with the Department of the Secretary of State of North Carolina and having a registered mailing address of 9300 Harris Corners Parkway, Charlotte, NC 28269; ACP Medical Devices, Inc., a corporation registered with the Department of the Secretary of State of North Carolina and having a registered mailing address of 9300 Harris Corners Parkway, Suite 450, Charlotte, NC 28269; American Laboratories, Inc., a corporation registered with the Department of the Secretary of State of North Carolina and having a registered mailing address of 9300 Harris Corners Parkway, Suite 450, Charlotte, NC 28269; Automated Devices, Inc., a corporation registered with the Department of the Secretary of State of North Carolina and having a registered mailing address of 9300 Harris Corners Parkway; and Vitalcare Group, Inc., a corporation registered with the Department of the Secretary of State of Florida and having a registered mailing address of 8935 NW 27th St., Miami, FL 33172; and/or any company name under which the Additional Corporations are doing or have done business; their predecessors,

7

parents, subsidiaries, divisions, licensees, franchisees, assigns or other related business entities; its directors, officers, employees, agents, distributors, jobbers, salespersons, interns, sales representatives and attorneys; and each person acting or purporting to act on its or their behalf or under its or their control.

21.    The term "online vendors" shall mean vendors offering Electrochemical Sensors, including Defendant's Electrochemical Sensors, for sale over the internet, including but not limited to the following vendors: Amazon.com, doing business on the internet at www.amazon.com; Medex Supply, doing business on the internet at www.medexsupply.com; American Diabetes Wholesale, doing business on the internet at www.americandiabeteswholesale.com; Wholesale Drugstore-OTC, doing business on the internet at www.otcwholesale.com; and Amelia Home Health Services, doing business on the internet at www.ameliahomehealth.com.

22.    The term "purchased" shall mean actual purchases, attempts to purchase, inquiries regarding purchasing, or other transfers or attempts to transfer goods.

23.    The term "Northeast region of the United States" shall mean the geographical region containing all of the following, any one of the following, or any combination of following states or regions: Maine, New Hampshire, Vermont, Massachusetts, Rhode Island, Connecticut, New York, New Jersey, Pennsylvania, Delaware, Maryland, and Washington D.C.

## INSTRUCTIONS

1.    If you produce responsive documents pursuant to Federal Rule of Civil Procedure 33(d), the original and each non-identical copy of each document or other tangible thing requested herein which is in your possession, custody or control, or that of any of your agents, attorneys, consultants, advisors, associates, accountants, employees, representatives or

investigators, is to be produced, including company, department, and personal files. If the original or original carbon copy is not in your possession, custody or control, or that of your agents, attorneys, consultants, advisors, associates, accountants, employees, representatives or investigators, a full, clear, legible copy thereof is to be produced.

2.      If any portion of any Interrogatory refers to information of which Defendant were once aware but is no longer within Defendant's knowledge, Defendant is requested to identify the name, telephone number, and address of the person last known by Defendant to have knowledge of such information.

3.      Each Interrogatory shall be responded to fully unless it is in good faith objected to, in which event every reason for your objection shall be stated in detail. If an objection pertains to only a portion of an Interrogatory, or a word, phrase or clause contained within it, you are required to state your objection to that portion only and to respond to the remainder of the Interrogatory to the fullest extent possible.

4.      If you produce responsive documents pursuant to Federal Rule of Civil Procedure 33(d), each document and thing produced is to be (i) identified in your written response hereto to correspond with the categories of the Interrogatory in response to which it is being produced or (ii) produced as it is kept in the usual course of business, including all file folders, binder, notebooks and other devices by which each such document or this is organized or separated.

5.      If the attorney-client privilege or work product immunity is asserted as to any information requested in an Interrogatory, set forth your response hereto with respect to all information for which a claim of privilege is made such that the document or thing is not produced in full:

        (a)      the specific ground(s) for not producing the document or thing in full;

9

(b)    the bases for such a claim of privilege or immunity, including a statement of sufficient relevant facts and circumstances that will explain the basis of the claim of privilege and will permit the adjudication of the propriety of the claim of privilege; and

(c)    fully identify the information, document, or material for which such privilege or immunity is asserted, including the type of any document or thing withheld (e.g., letter, memorandum, etc.); the subject matter of any document, communication, or other information withheld; the date of recording, creating or otherwise preparing any document or thing; the name of any document or thing; the name, address and title of its author or creator; the name, address and title of each person (other than stenographic or clerical assistants) participating in the preparation or creation of any document or thing; the name, address and title of each addressee, recipient and/or custodian of the document or thing, or a copy of the document or thing; the name, address and title of each person to whom the contents of the information or any portion thereof have heretofore been communicated by copy, exhibition, reading or summarization; and the location(s) where, if at all, information has been redacted on any document or thing thus produced.

6.    No Interrogatory or subpart hereof shall be construed as a limitation on any other Interrogatory or subpart hereof.

7.    Any word written in the singular herein shall be construed as plural or *vice versa* as necessary to bring within the scope of the Interrogatory all responses which otherwise might be construed to be outside its scope.

10

<u>**INTERROGATORIES**</u>

<u>**INTERROGATORY NO. 1**</u>

Describe fully the relationship among DDI and each of the Additional Corporations including but not limited to the organizational structure of each corporation; the nature of the business of each corporation; the number and identification of common directors, officers, employees, agents, distributors, jobbers, salespersons, interns, sales representatives and attorneys; the ownership of each corporation; and the three most knowledgeable persons regarding any facts that relate to the relationship among DDI and each of the Additional Corporations.

<u>**INTERROGATORY NO. 2**</u>

Describe fully the relationship between DDI (and/or any of the Additional Corporations) and any other party, including but not limited to online vendors, who has purchased Electrochemical Sensors and who resells such Electrochemical Sensors to any of the states on the Northeast Region of the United States whether through retail outlets, direct mail or internet, including but not limited to an identification of the identity of the persons; the amount of sales (or other transfer) made or anticipated to be made to each such person, including sales (or other transfer) by unit volume and sales dollars; and all documents relating to such sales of such units.

<u>**INTERROGATORY NO. 3**</u>

Identify the total sales (by unit volume and sales dollars) of all Electrochemical Sensors sold by DDI and/or any of the Additional Corporations, whether directly by DDI and/or any of the Additional Corporations or indirectly through one or more third parties, including but not limited to online vendors, through any distribution channels, into the United States and the total sales (by unit volume and sales dollars) of all Electrochemical Sensors sold by DDI and/or any

11

of the Additional Corporations, whether directly by DDI and/or any of the Additional

Corporations or indirectly through one or more third parties, including but not limited to online

vendors, through any distribution channels, into the state of Delaware.

**INTERROGATORY NO. 4**

      Identify all contacts and communications between DDI and/or any of the Additional

Corporations and chain retailers with outlets in the state of Delaware, including but not limited to

Happy Harry's, Rite Aid, Shop Rite, Eckerd, Walmart, Target, Super G, Pathmark, and any

parent corporations, subsidiaries, or related entities thereof.

**INTERROGATORY NO. 5**

      Identify all sales and marketing personnel employed by DDI and/or any of the Additional

Corporations and describe each person's responsibilities including but not limited to the regions

and customers (including distributors, retailers or internet supply houses) within the US assigned

to each person, and identify all documents related to such persons and their responsibilities

including but not limited to job descriptions and sales and marketing materials.

**INTERROGATORY NO. 6**

      Identify all business connections between the state of Delaware and DDI (and/or any of

the Additional Corporations or any personnel of DDI and/or the Additional Corporations),

including but not limited to (i) sales calls on persons or companies within the State of Delaware,

(ii) prior lawsuits in Delaware, (iii) meetings with Delaware counsel, (iv) property owned in

Delaware, (v) bank accounts in Delaware banks, (vi) products sold in Delaware, and (vii)

contracts executed in Delaware, with Delaware corporations, or with Delaware as the choice of

law, and for each such connection, identify the nature of the contact, when such connection

began, whether such connection continues, and, if not, when it stopped, any personnel of DDI

12

and/or the Additional Corporations involved in or knowledgeable regarding the contact, and any documents reflecting or referring to such contact.

**INTERROGATORY NO. 7**

Identify all publications distributed or circulated throughout the United States and/or in the state of Delaware in which DDI and/or any of the Additional Corporations advertises or promotes Electrochemical Sensors.

**INTERROGATORY NO. 8**

State whether any DDI Electrochemical Sensors are advertised or otherwise displayed on any internet website and, for each such internet website, identify the internet address, the company that maintains the website, the company that pays for maintenance of said website, the company that authorized the advertisement or display of such Electrochemical Sensors on said website, the number of hits for each such website from the state of Delaware, and, to the extent available, the address and entity of each person from the state of Delaware who accessed such information.

**INTERROGATORY NO. 9**

Describe fully the warranty or warranties offered by DDI and/or any of the Additional Corporations to each consumer for any Electrochemical Sensors sold, whether directly by DDI and/or any of the Additional Corporations or indirectly through one or more third parties, including but not limited to online vendors, including the procedure(s) to be used by a consumer for warranty registration, the length of the warranties, the procedure(s) to be used by a consumer for contacting DDI and/or any of the Additional Corporations to make a claim under the warranties, the procedure(s) to be used by a consumer to obtain a replacement Electrochemical

13

Sensor and/or to have an Electrochemical Sensor repaired, all warranty registrations for any

Electrochemical Sensors from any address in the state of Delaware, and any documents

reflecting or referring to such warranties.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Daniel A. Boehnen
Grantland G. Drutchas                        By: _____
McDonnell Boehnen Hulbert & Berghoff LLP         Philip A. Rovner (#3215)
300 South Wacker Drive                           Hercules Plaza
Chicago, IL 60606                                P.O. Box 951
(312) 913-0001                                   Wilmington, DE 19899-0951
                                                 (302) 984-6000
                                                 provner@potteranderson.com
Dated: January 29, 2008
845200                                       *Attorney for Plaintiffs*
                                             *Roche Diagnostics Operations, Inc. and*
                                             *Corange International Limited*

14

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

<u>CERTIFICATE OF SERVICE</u>

I, Philip A. Rovner, hereby certify that on January 29, 2008, the within document

was served on the following counsel of record, at the addresses and in the manner

indicated:

<u>BY HAND DELIVERY AND E-MAIL</u>

Frederick L. Cottrell, III, Esq.
Anne Shea Gaza, Esq.
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, DE 19801
cottrell@rlf.com
gaza@rlf.com

John W. Shaw, Esq.
Jeffrey T. Castellano, Esq.
Young Conaway Stargatt & Taylor, LLP
1000 West Street, 17th Floor
Wilmington, DE 19801
jshaw@ycst.com
jcastellano@ycst.com

Mary W. Bourke, Esq.
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 N. Orange Street
Wilmington, DE 19801
mbourke@cblh.com

Rodger D. Smith, Esq.
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
rsmith@mnat.com

Steven J. Balick, Esq.
John G. Day, Esq.
Ashby & Geddes
500 Delaware Avenue
8th Floor
P.O. Box 1150
Wilmington, DE 19899
sbalick@ashby-geddes.com
jday@ashby-geddes.com

**BY E-MAIL**

Edward A. Mas, II, Esq.
Stephen F. Sherry, Esq.
Kirk Vander Leest, Esq.
James M. Hafertepe, Esq.
Merle S. Elliott, Esq.
McAndrews, Held & Malloy, Ltd.
500 West Madison Street
34th Floor
Chicago, IL 60661
emas@mcandrews-ip.com
ssherry@mcandrews-ip.com
kvanderleest@mcandrews-ip.com
jhafertepe@mcandrews-ip.com
melliott@mcandrews-ip.com

Kenneth P. George, Esq.
Joseph M. Casino, Esq.
Amster, Rothstein & Ebenstein LLP
90 Park Avenue
New York, NY 10016
kgeorge@arelaw.com
jcasino@arelaw.com

Bradford J. Badke, Esq.
Sona De, Esq.
Michael Kahn, Esq.
Ropes & Gray LLP
1211 Avenue of the Americas
New York, NY 10036-8704
Jim.badke@ropesgray.com
Sona.de@ropesray.com
Michael.kahn@ropesgray.com

Wesley E. Overson, Esq.
Rachel Krevans, Esq.
Jason R. Bartlett, Esq.
Parisa Jorjani, Esq.
Daniel P. Muino, Esq.
Morrison & Foerster LLP
425 Market Street
San Francisco, CA 94105-2482
woverson@mofo.com
rkrevans@mofo.com
jasonbartlett@mofo.com
pjorjani@mofo.com
dmuino@mofo.com

Michael G. Adams, Esq.
Ashley L. Ellis, Esq.
Parker Poe Adams & Bernstein LLP
Three Wachovia Center, Suite 3000
401 South Tryon Street
Charlotte, NC 28202
mikeadams@parkerpoe.com
ashleyellis@parkerpoe.com

Philip A. Rovner (#3215)
Potter Anderson & Corroon LLP
Hercules Plaza
P.O. Box 951
Wilmington, Delaware 19899
(302) 984-6000
E-mail: provner@potteranderson.com

-2-

# EXHIBIT
# C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROCHE DIAGNOSTICS OPERATIONS, INC., and CORANGE INTERNATIONAL LIMITED, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | C.A. No. 07-753-JJF |
| ABBOTT DIABETES CARE, INCORPORATED, and ABBOTT DIABETES CARE SALES CORPORATION, | ) ) ) ) ) | DEMAND FOR JURY TRIAL |
| BAYER HEALTHCARE, LLC, | ) ) | |
| DIAGNOSTIC DEVICES, INC., | ) ) | |
| LIFESCAN, INCORPORATED, and | ) ) | |
| NOVA BIOMEDICAL CORPORATION, and SANVITA INCORPORATED, | ) ) ) | |
| Defendants. | ) ) | |

**ROCHE DIAGNOSTICS OPERATIONS, INC.'S AND CORANGE INTERNATIONAL
LIMITED'S FIRST SET OF REQUESTS TO DEFENDANT DIAGNOSTIC DEVICES,
INC. FOR THE PRODUCTION OF DOCUMENTS AND THINGS (NOS. 1-46)**

Plaintiffs Roche Diagnostics Operations, Inc. ("RDOI") and Corange International Limited

("Corange") (collectively "Plaintiffs") propound the following requests to Defendant Diagnostic

Devices, Inc. ("DDI") for the production of the documents and things specified below for inspection

and copying pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and the Local

Rules of the U.S. District for the District of Delaware. The documents shall be produced for

inspection and copying at the offices of Plaintiffs' counsel, McDonnell Boehnen Hulbert &

Berghoff LLP, 300 S. Wacker Dr., Chicago, Illinois 60606, within thirty (30) days from the service

of these requests, or on any other date ordered by the Court or agreed to by the parties, and copying and inspection shall continue from day to day thereafter until completed. Additionally, DDI shall serve written responses to these requests on Plaintiffs' counsel within thirty (30) days of the service hereof, or on any other date ordered by the Court or agreed to by the parties.

All requests propounded by Plaintiffs are deemed to be continuing in nature so as to require supplementation promptly following the discovery of additional information by DDI to the extent such information is responsive to Plaintiffs' requests.

## DEFINITIONS

For the purposes of responding to the following requests for production of documents and things, the following definitions shall apply:

1.    The term "RDOI" shall mean Roche Diagnostics Operations, Inc. and/or any company name under which RDOI is doing or has done business; its predecessors, parents, subsidiaries, divisions, licensees, franchisees, assigns or other related business entities; its directors, officers, employees, agents, distributors, jobbers, salespersons, interns, sales representatives and attorneys; and each person acting or purporting to act on its or their behalf or under its or their control.

2.    The term "Corange" shall mean Corange International Limited and/or any company name under which Corange is doing or has done business; its predecessors, parents, subsidiaries, divisions, licensees, franchisees, assigns or other related business entities; its directors, officers, employees, agents, distributors, jobbers, salespersons, interns, sales representatives and attorneys; and each person acting or purporting to act on its or their behalf or under its or their control.

3.    The term "Plaintiffs" shall mean RDOI and Corange.

2

4.      The terms "Defendant," "DDI," "you" and "your" shall mean Diagnostic Devices, Inc. and/or any company name under which DDI is doing or has done business; its predecessors, parents, subsidiaries, divisions, licensees, franchisees, assigns or other related business entities; its directors, officers, employees, agents, distributors, jobbers, salespersons, interns, sales representatives and attorneys; and each person acting or purporting to act on its or their behalf or under its or their control.

5.      The terms "person" or "persons" shall mean natural persons (including but not limited to those employed by Defendant) and all other legally cognizable entities, including (without limitation) governmental entities, agencies, officers, departments or affiliates of the United States of America or any other governmental entity; commercial entities such as corporations, foundations, partnerships and proprietorships; associations; organization; and groups of natural persons.

6.      The term "date" shall mean the exact day, month and year, if ascertainable, or, if not, Defendant's closest approximation (including but not limited to an identification of relationship to other events).

7.      The term "document(s)" shall have the broadest meaning accorded to it by Rule 34 of the Federal Rules of Civil Procedure, and shall include, without limitation, any recording in any tangible form of any information, whether handwritten, typed, printed, stored on computer disks, tapes or databases (including electronic files and e-mail) or otherwise reproduced. "Document" also includes all drafts and copies that are not identical to the original.

8.      The term "thing(s)" shall have the broadest meaning accorded to it by Rule 34 of the Federal Rules of Civil Procedure, and shall include, without limitation, every kind of

3

physical specimen or tangible item, other than a document, in the possession, custody or control of Defendant.

9.    The term "communication" shall mean any disclosure, transmission or exchange of information from one person or entity to another, including without limitation by personal meeting, telephone, facsimile, radio, telegraph, electronic mail, teleconference, writing or other means.

10.    The terms "concerning," "referring to" and "relating to" shall be interpreted so as to encompass the liberal scope of discovery set forth in Rule 26(b) of the Federal Rules of Civil Procedure, and shall mean for example and without limitation, refer, relate, analyze, concern, constitute, contain, contradict, describe, discuss, evaluate, evidence, pertain, reflect, refute or support.

11.    The term "including" shall be construed broadly, and shall encompass "including but not limited to" or "including without limitation."

12.    The terms "identify," "identification," "describe," or "description" shall mean to provide a complete identification of the document, thing, or person to the fullest extent known or ascertainable by Defendant, whether or not the information is in the possession, custody, or control of Defendant and whether or not the information is alleged to be protected by any privilege or work product protection, and includes without limitation a request for the following information:

(a)    with respect to a natural person, his or her name; home and work addresses and telephone numbers; present (or if unknown, the last known) place of employment; date(s) of commencement and termination of employment; job title; and description of his or her duties and responsibilities;

4

(b)    with respect to a corporation or other legal entity, the full name; state of incorporation or registration; address of its principal place of business; telephone number of its principal place of business; and the identity of each natural person who acted on behalf of such entity with respect to the subject matter of the document request;

(c)    with respect to a document, the type of document (e.g., letter, e-mail, facsimile, contract, calendar, report); the number of pages of which the document consists; a general description of the document's contents; an identification of each person(s) who prepared the document, who signed the document, for whom it was prepared, to whom it was delivered, mailed, or otherwise received, and to whom a copy was sent or who otherwise received a copy; the date of writing, creation or publication; the identifying number(s), letter(s), or combination thereof, if any, and the significance or meaning of such number(s), letter(s) or combination thereof; and present location and identity of the custodian of that document. Documents to be identified shall include documents currently in your possession, custody or control; documents you know to have once existed but that no longer exist; and other documents of which you have knowledge or information but that are not currently in your possession, custody or control;

(d)    with respect to a product or to equipment, the common name of the product or equipment; the trade, brand, or commercial name of the product or equipment; the model, part number, catalog number, and/or serial number of the product or equipment; the manufacturer and vendor of the product or equipment; and the use and/or function of the product or equipment;

(e)    with respect to an activity, the events and/or occurrences that comprise the activity; the persons involved in the activity; the dates when the activity occurred; and the locations where the activity occurred;

        (f)     with respect to oral communications, the manner in which the communications were made (telephone, conversation, etc.); the identity of each person who participated in or witnessed the communication; and the subject matter and content of the communication; and the date of the communication;

        (g)     with respect to a patent or patent application, the country or jurisdiction in which it was filed; the number; the named inventor(s); the filing date; the issue date (if a patent); and all related or foreign counterpart applications and patents; and

        (h)     with respect to films, photographs, tapes, computer media, and other things susceptible to chemical, biological, mechanical, or electrical reproduction, all identifying information including their character; subject matters; authors; and dates.

        13.     The terms "and," "or" and "and/or" shall be construed disjunctively or conjunctively as necessary in order to bring within the scope of the request all responses which otherwise might be construed to be outside its scope.

        14.     The term the "146 patent" shall mean U.S. Pat. No. 7,276,146.

        15.     The term the "147 patent" shall mean U.S. Pat. No. 7,276,147.

        16.     The term "patents-in-suit" shall mean the 146 patent and the 147 patent either collectively or individually, as well as any other patent(s) that may be subsequently added to the litigation.

        17.     The term "Complaint" shall mean Plaintiffs' "Complaint for Patent Infringement" filed by Plaintiffs in this action on or about November 21, 2007, as well as any amended complaints that may be filed.

18.    The phrase "Requests for Reexamination" shall mean the requests that were filed with the United States Patent and Trademark Office on or about December 14, 2007 seeking *ex parte* reexamination of all of the claims of the patents-in-suit

19.    The terms "prior art" includes, by way of example and without limitation, any subject matter that you assert may be encompassed by 35 U.S.C. §103 and/or any subdivision of 35 U.S.C. §102.

20.    The phrase "Electrochemical Sensor" shall mean any sensor device made, used, sold, offered for sale, or imported, by DDI or any of the Additional Corporations capable of being used to determine the concentration of glucose in a blood sample, including but not necessarily limited to the specific electrochemical sensors identified in the Complaint. The Electrochemical Sensors includes (without limitation) test strips or equivalent devices alone or in combination with a meter or equivalent device capable of receiving the test strips and participating in the determination of the concentration of glucose in a blood sample.

21.    The term "Additional Corporations" shall mean A & Z Medical, Inc., a corporation registered with the Department of the Secretary of State of North Carolina and having a registered mailing address of 9300 Harris Corners Parkway, Charlotte, NC 28269; ACP Medical Devices, Inc., a corporation registered with the Department of the Secretary of State of North Carolina and having a registered mailing address of 9300 Harris Corners Parkway, Suite 450, Charlotte, NC 28269; American Laboratories, Inc., a corporation registered with the Department of the Secretary of State of North Carolina and having a registered mailing address of 9300 Harris Corners Parkway, Suite 450, Charlotte, NC 28269; Automated Devices, Inc., a corporation registered with the Department of the Secretary of State of North Carolina and having a registered mailing address of 9300 Harris Corners Parkway; and Vitalcare Group, Inc.,

7

a corporation registered with the Department of the Secretary of State of Florida and having a registered mailing address of 8935 NW 27th St., Miami, FL 33172; and/or any company name under which the Additional Corporations are doing or have done business; their predecessors, parents, subsidiaries, divisions, licensees, franchisees, assigns or other related business entities; its directors, officers, employees, agents, distributors, jobbers, salespersons, interns, sales representatives and attorneys; and each person acting or purporting to act on its or their behalf or under its or their control.

22.     The term "online vendors" shall mean vendors offering Electrochemical Sensors, including Defendant's Electrochemical Sensors, for sale over the internet, including but not limited to the following vendors: Amazon.com, doing business on the internet at www.amazon.com; Medex Supply, doing business on the internet at www.medexsupply.com; American Diabetes Wholesale, doing business on the internet at www.americandiabeteswholesale.com; Wholesale Drugstore-OTC, doing business on the internet at www.otcwholesale.com; and Amelia Home Health Services, doing business on the internet at www.ameliahomehealth.com.

23.     The term "purchased" shall mean actual purchases, attempts to purchase, inquiries regarding purchasing, or other transfers or attempts to transfer goods.

24.     The term "Northeast region of the United States" shall mean the geographical region containing all of the following, any one of the following, or any combination of following states or regions: Maine, New Hampshire, Vermont, Massachusetts, Rhode Island, Connecticut, New York, New Jersey, Pennsylvania, Delaware, Maryland, and Washington D.C.

## INSTRUCTIONS

1.    The original and each non-identical copy of each document or other tangible thing requested herein which is in your possession, custody or control, or that of any of your agents, attorneys, consultants, advisors, associates, accountants, employees, representatives or investigators, is to be produced, including company, department, and personal files.  If the original or original carbon copy is not in your possession, custody or control, or that of your agents, attorneys, consultants, advisors, associates, accountants, employees, representatives or investigators, a full, clear, legible copy thereof is to be produced.

2.    If any portion of any document request refers to documents of which Defendant is aware or which were at one time within Defendant's possession, custody, or control, but which are not now subject to Defendant's possession, custody, or control, Defendant is requested to identify such documents in a manner sufficient to describe such documents for a subpoena *duces tecum*, together with the name, telephone number, and address of the person last known by Defendant to have been in possession, custody, or control of such documents.

3.    Where an objection is made to a document request, state all grounds upon which your objection is based and produce the requested documents to the fullest extent possible subject to any stated objection.

4.    If the attorney-client privilege or work product immunity is asserted as to any document or thing, or if any document or thing is not produced in full, produce the document or thing to the extent the request for production is not objected to, and, in so doing, state the following:

(a)    the specific ground(s) for not producing the document or thing in full;

(b)    the bases for such a claim of privilege or immunity, including a statement

9

of sufficient relevant facts and circumstances that will explain the basis of the claim of privilege and will permit the adjudication of the propriety of the claim of privilege; and

        (c)     fully identify the information, document, or material for which such privilege or immunity is asserted, including the type of any document or thing withheld (e.g., letter, memorandum, etc.); the subject matter of any document, communication, or other information withheld; the date of recording, creating or otherwise preparing any document or thing; the name of any document or thing; the name, address and title of its author or creator; the name, address and title of each person (other than stenographic or clerical assistants) participating in the preparation or creation of any document or thing; the name, address and title of each addressee, recipient and/or custodian of the document or thing, or a copy of the document or thing; the name, address and title of each person to whom the contents of the information or any portion thereof have heretofore been communicated by copy, exhibition, reading or summarization; and the location(s) where, if at all, information has been redacted on any document or thing thus produced.

        5.     If you maintain that any document or thing requested has been destroyed, lost or is otherwise unavailable, set forth the contents of the document or thing, the location of any copies of the document or thing, the date of its destruction and the name of the person who ordered or authorized its destruction (if any).

        6.     If, after exercising due diligence, Defendant is unable to determine the existence of any documents or things falling within a document request, Defendant shall so state in its written response required by Rule 34 of the Federal Rules of Civil Procedure.

        7.     No document request or subpart hereof shall be construed as a limitation on any other document request or subpart hereof.

8.    Any word written in the singular herein shall be construed as plural or *vice versa* as necessary to bring within the scope of the request all responses which otherwise might be construed to be outside its scope.

9.    These requests shall be deemed to include all available English translations of every document requested.

10.    Documents should be produced as they are kept in the files of Defendant or shall be organized and labeled to correspond with the requests below. If documents are not produced as they are kept in the files of Defendant, sufficient information should be provided to permit Plaintiffs to identify the source of particular documents from within the filed of Defendant.

11.    Documents from any single file should be produced in the same order as they were found in such file. If copies of documents are produced, such copies should be legible and bound or stapled in the same manner as the original.

<u>**REQUESTS**</u>

1.    All documents and things concerning, referring to or relating to any sales and/or marketing of any of Defendant's Electrochemical Sensors in the Northeast region of the United States, and also specifically in the state of Delaware, including but not limited to direct sales, sales by any of the Additional Corporations or other related entities, sales by online vendors, or sales through distributors, wholesalers, dealers, jobbers, resellers, retail chains or other retailers, or suppliers.

2.    All documents and things identifying the names, titles, and responsibilities of all persons having any role in the sales and/or marketing of any of Defendant's Electrochemical Sensors in the Northeast region of the United States, and also specifically in the state of Delaware.

3.    All documents and things concerning, referring or relating to marketing products by DDI

11

and/or any of the Additional Corporations within any state or area that includes any part of the Northeast region of the United States, including but not limited to the state of Delaware.

4.    All documents and things concerning, referring or relating to marketing Electrochemical Sensors within any state or area that includes any part of the Northeast region of the United States, including but not limited to the state of Delaware.

5.    All documents and things concerning, referring or relating to marketing Electrochemical Sensors to customers within any state or area that includes any part of the Northeast region of the United States, including but not limited to the state of Delaware.

6.    All documents and things concerning, referring to or relating to any retention of sales representatives or marketing representatives located in the United States for any DDI Electrochemical Sensors or persons responsible for soliciting sales from persons located in the United states for any such products, including any documents referring or relating to:

     a.    duties or responsibilities of the representatives;

     b.    territories assigned to the representatives;

     c.    customers and potential customers located in the territories assigned to the representatives;

     d.    products handled by the representatives;

     e.    the number of persons located in the United States that have been contacted by the representatives; and

     f.    the identity of the persons located in Delaware that have been contacted by the representative assigned to the territory that includes the state of Delaware.

7.    All documents and things concerning, referring to or relating to any discussions,

12

negotiations, or agreements among DDI and any of the Additional Corporations relating to the grant of any rights for practicing, using, developing, manufacturing, distributing, selling or offering for sale any Electrochemical Sensors in the United States and in the state of Delaware.

8.    All documents and things concerning, referring to or relating to any discussions, negotiations, or agreements made or in effect among DDI and any of the Additional Corporations, or any subsidiary, division, or affiliate thereof, including documents the subject matter of which is in whole or in part joint promotion, marketing or sales plans or efforts.

9.    All documents and things concerning, referring to or relating to any study, projection, market or other evaluation or analysis of past, current or future sales or revenues for any of the Defendant's Electrochemical Sensors in the Northeast region of the United States, and also specifically in the state of Delaware.

10.    All documents and things concerning, referring to or relating to business plans of DDI and/or any of the Additional Corporations relating to the sale and/or marketing of Electrochemical Sensors.

11.    All documents and things concerning, referring to or relating to any contacts between DDI and/or any of the Additional Corporations and chain retailers with outlets in the State of Delaware, including but not limited to Happy Harry's, Rite Aid, Shop Rite, Eckerd, Walmart, Target, Super G, Pathmark, and any parent corporations, subsidiaries, or related entities thereof.

12.    All documents and things concerning, referring to or relating to any sales made by DDI and/or any of the Additional Corporations, directly or indirectly, to chain retailers with outlets in the State of Delaware, including but not limited to Happy Harry's, Rite Aid, Shop Rite, Eckerd, Target, Super G, Pathmark, and any parent corporations, subsidiaries, or related entities

thereof.

13.    All documents and things concerning, referring to or relating to the annual and total gross revenues of DDI and/or any of the Additional Corporations from sales, either direct or indirect, to persons located in the United States of any Electrochemical System.

14.    All documents and things concerning, referring to or relating to the annual and total gross revenues of DDI and/or any of the Additional Corporations from sales, either direct in indirect, to persons located in the state of Delaware.

15.    All documents that identify all distributors, wholesalers, dealers, resellers, online vendors, and suppliers with a place of business located in the United States with whom DDI and/or any of the Additional Corporations has entered into or attempted to enter into contracts, and documents sufficient to show the annual and total gross revenues to DDI and/or any of the Additional Corporations from sales under contracts with such distributors, wholesalers, dealers, resellers, online vendors, and suppliers.

16.    All documents and things concerning, referring to or relating to communications from or to Delaware persons or entities.

17.    All documents and things concerning, referring to or relating to Defendant's offers for sale or the absence of offers for sale to persons or entities in the state of Delaware.

18.    All documents and things concerning, referring to or relating to any inquiries from Delaware persons or entities for Defendant's services or products.

19.    All documents and things concerning, referring to or relating to any possible confusion by Delaware consumers as to the source of Defendants' goods or services.

20.    All telephone records showing calls from Defendant to any person or entity in the state of Delaware.

21.    All telephone records showing calls to Defendant from any person or entity in the state of Delaware.

22.    All documents and things concerning, referring to or relating to Defendant's internet site www.prodigymeter.com, including but not limited to all Webtrends reports, information relating to internet "hits," search engine keywords leading to Defendants' internet web site, the physical locations by state of computers accessing www.prodigymeter.com (available as a Webtrends report), etc.

23.    All documents and things concerning, referring to or relating to any of Defendant's advertising or absence of advertising to persons or entities in the state of Delaware.

24.    All documents and things concerning, referring to or relating to Defendant's advertising, including but not limited to copies of advertisements and the geographic reach of such advertising.

25.    All documents and things concerning, referring to or relating to Defendant's television advertising, including but not limited to the market reached by such advertising.

26.    All documents and things concerning, referring to or relating to Defendant's internet advertising, including but not limited to the market reached by such advertising.

27.    All promotional materials from Defendant's providers of advertising and marketing services.

28.    All documents and things concerning, referring to or relating to any plan or study of Defendant conducting business, directly or indirectly, in the state of Delaware.

29.    All documents and things concerning, referring to or relating to any promotion or absence of promotion to persons or entities in the state of Delaware.

30.    All contracts between Defendant and the providers of Defendant's advertising and

15

marketing services.

 31. All communications between Defendant and Defendants' providers of marketing and promotion services relating in any way to the state of Delaware or any Delaware persons or entities.

 32. All documents showing the presence or absence of advertising of Defendant's services or products to Delaware residents.

 33. All invoices, bills, literature, promotional material, or other documents sent to any entity or consumer located in the state of Delaware.

 34. All documents and things concerning, referring to or relating to any correspondence or communications to or from any Delaware entity or resident.

 35. All documents and things concerning, referring to or relating to any correspondence or communications involving Defendant that was sent to the state of Delaware.

 36. All e-mail communications from any entity or person in the state of Delaware relating to Defendant's business, products, and/or services.

 37. All e-mail communications from any entity or person in the state of Delaware relating to Plaintiffs' business, products, and/or services.

 38. All documents and things concerning, referring to or relating to any investigation, test marketing, or market research relating to Defendants products and services.

 39. All documents and things concerning, referring to or relating to Defendant's historical internet web site content, including but not limited to copies of all previous versions of Defendant's internet web site.

 40. All documents and things concerning, referring to or relating to the development of Defendant's internet web site.

41.   All documents and things concerning, referring to or relating to any warranty offered by DDI and/or any of the Additional Corporations on any Electrochemical Sensors sold, whether directly or indirectly through one or more third parties, including but not limited to online vendors, into the Northeast region of the United States, and also specifically into the state of Delaware.

42.   All documents and things concerning, referring to or relating to any warranty registration made by a person located in the state of Delaware for any Electrochemical Sensor sold by DDI and/or any of the Additional Corporations, whether directly or indirectly through one or more third parties, including but not limited to online vendors.

43.   All documents and things concerning, referring to or relating to any claim on a warranty made by a person located in the state of Delaware for any Electrochemical Sensor sold by DDI and/or any of the Additional Corporations, whether directly or indirectly through one or more third parties, including but not limited to online vendors.

44.   All documents and things concerning, referring to or relating to any action taken by DDI and/or any of the Additional Corporations on any claim on a warranty made by a person located in the state of Delaware for any Electrochemical Sensor sold by DDI and/or any of the Additional Corporations, whether directly or indirectly through one or more third parties, including but not limited to online vendors.

45.   All documents requested for identification by Plaintiffs' First Set of Interrogatories to Defendant DDI (Nos. 1-9), served concurrently herewith.

46.   All documents relied upon, referred to or otherwise consulted directly or indirectly in responding to Plaintiffs' First Set of Interrogatories to Defendant DDI (Nos. 1-9), served concurrently herewith.

17

OF COUNSEL:

Daniel A. Boehnen
Grantland G. Drutchas
McDonnell Boehnen Hulbert & Berghoff LLP
300 South Wacker Drive
Chicago, IL 60606
(312) 913-0001

Dated: January 29, 2008
845199

POTTER ANDERSON & CORROON LLP

By: _____
      Philip A. Rovner (#3215)
      Hercules Plaza
      P.O. Box 951
      Wilmington, DE 19899-0951
      (302) 984-6000
      provner@potteranderson.com

*Attorney for Plaintiffs*
*Roche Diagnostics Operations, Inc. and*
*Corange International Limited*

18

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CERTIFICATE OF SERVICE

I, Philip A. Rovner, hereby certify that on January 29, 2008, the within document

was served on the following counsel of record, at the addresses and in the manner

indicated:

BY HAND DELIVERY AND E-MAIL

Frederick L. Cottrell, III, Esq.
Anne Shea Gaza, Esq.
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, DE 19801
cottrell@rlf.com
gaza@rlf.com

Mary W. Bourke, Esq.
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 N. Orange Street
Wilmington, DE 19801
mbourke@cblh.com

Steven J. Balick, Esq.
John G. Day, Esq.
Ashby & Geddes
500 Delaware Avenue
8th Floor
P.O. Box 1150
Wilmington, DE 19899
sbalick@ashby-geddes.com
jday@ashby-geddes.com

John W. Shaw, Esq.
Jeffrey T. Castellano, Esq.
Young Conaway Stargatt & Taylor, LLP
1000 West Street, 17th Floor
Wilmington, DE 19801
jshaw@ycst.com
jcastellano@ycst.com

Rodger D. Smith, Esq.
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
rsmith@mnat.com

**BY E-MAIL**

Edward A. Mas, II, Esq.
Stephen F. Sherry, Esq.
Kirk Vander Leest, Esq.
James M. Hafertepe, Esq.
Merle S. Elliott, Esq.
McAndrews, Held & Malloy, Ltd.
500 West Madison Street
34th Floor
Chicago, IL  60661
emas@mcandrews-ip.com
ssherry@mcandrews-ip.com
kvanderleest@mcandrews-ip.com
jhafertepe@mcandrews-ip.com
melliott@mcandrews-ip.com

Kenneth P. George, Esq.
Joseph M. Casino, Esq.
Amster, Rothstein & Ebenstein LLP
90 Park Avenue
New York, NY  10016
kgeorge@arelaw.com
jcasino@arelaw.com

Bradford J. Badke, Esq.
Sona De, Esq.
Michael Kahn, Esq.
Ropes & Gray LLP
1211 Avenue of the Americas
New York, NY 10036-8704
Jim.badke@ropesgray.com
Sona.de@ropesgray.com
Michael.kahn@ropesgray.com

Wesley E. Overson, Esq.
Rachel Krevans, Esq.
Jason R. Bartlett, Esq.
Parisa Jorjani, Esq.
Daniel P. Muino, Esq.
Morrison & Foerster LLP
425 Market Street
San Francisco, CA 94105-2482
woverson@mofo.com
rkrevans@mofo.com
jasonbartlett@mofo.com
pjorjani@mofo.com
dmuino@mofo.com

Michael G. Adams, Esq.
Ashley L. Ellis, Esq.
Parker Poe Adams & Bernstein LLP
Three Wachovia Center, Suite 3000
401 South Tryon Street
Charlotte, NC 28202
mikeadams@parkerpoe.com
ashleyellis@parkerpoe.com

Philip A. Rovner (#3215)
Potter Anderson & Corroon LLP
Hercules Plaza
P.O. Box 951
Wilmington, Delaware 19899
(302) 984-6000
E-mail: provner@potteranderson.com

-2-

# EXHIBIT
# D

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROCHE DIAGNOSTICS OPERATIONS INC. and CORANGE INTERNATIONAL LIMITED, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 07-753-JJF |
| ABBOTT DIABETES CARE, INCORPORATED, ABBOTT DIABETES CARE SALES CORPORATION, BAYER HEALTHCARE LLC, DIAGNOSTIC DEVICES INC., LIFESCAN INCORPORATED, and NOVA BIOMEDICAL CORPORATION, | ) ) ) ) ) ) | |
| Defendants. | ) | |

**DEFENDANT DIAGNOSTIC DEVICES, INC.'S ANSWERS TO
ROCHE DIAGNOSTICS OPERATIONS, INC.'S AND CORANGE
INTERNATIONAL LIMITED'S FIRST SET OF INTERROGATORIES (NOS. 1-9)**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, defendant

Diagnostic Devices, Inc. (DDI) responds to Plaintiffs' First Set of Interrogatories as follows:

**GENERAL OBJECTIONS**

To avoid undue and unnecessary repetition, DDI makes the following general and

continuing objections to the Interrogatories. All general and continuing objections apply to each

response to the Interrogatories, and specific and more generalized references to these objections

elsewhere in these responses are intended for emphasis only and do not constitute a waiver of

these general and continuing objections. Further, the assertion of additional specific objections

in response to the individual Interrogatories does not constitute a waiver of these general and

continuing objections.

1.    DDI objects to each and every Interrogatory to the extent that it calls for

information covered by the attorney/client privilege, the work product doctrine, or any other

applicable privilege or doctrine, and no such information will be produced. By producing

information in response to these Interrogatories, DDI does not waive, intentionally or otherwise, its attorney-client privilege, work product protection, or any other privilege protecting its communications, transactions or records from disclosure, and any production of information inconsistent with the foregoing is wholly inadvertent and does not constitute a waiver of any such privilege or protection.

      2.     DDI objects to each and every Interrogatory, definition, or instruction to the extent that it purports to impose obligations on DDI beyond those set forth in the Federal Rules of Civil Procedure, the local rules of court or any court order that may be entered that governs discovery. Specifically, without limitation to the foregoing, DDI objects to the definitions and interrogatories as follows:

      (a)    DDI objects to the definition of, and corresponding requests for information relating to, "Additional Corporations" as such companies are separate and distinct entities from DDI and are not parties to this lawsuit; and

      (b)    DDI objects to the definition of, and corresponding requests for information relating to, "Northeast region of the United States" to the extent that it includes states other than Delaware, as DDI contacts with states other than Delaware are not relevant to the issue of personal jurisdiction in Delaware.

      3.     DDI objects to each and every Interrogatory to the extent it seeks information that is not in the possession, custody, or control of DDI.

      4.     DDI objects to each and every Interrogatory to the extent that it seeks any confidential information of DDI or any third party.

      5.     DDI objects to each and every Interrogatory as being overly broad and unduly burdensome because it requests information for an unlimited period of time.

6.    DDI objects to each and every Interrogatory to the extent that it purports to require DDI to conduct an unreasonably broad or unduly burdensome search of its offices and/or files or to conduct an unduly burdensome production of any information. Subject to and without waiving the foregoing, DDI will search for information only from those aspects of its business or individuals it reasonably believes have or may have relevant, non-privileged information responsive to the Interrogatories.

7.    Each of the above objections shall be deemed to be incorporated by reference in each interrogatory response, and shall be hereinafter referred to as the "General Objections."

## ANSWERS TO INTERROGATORIES

### INTERROGATORY NO. 1

Describe fully the relationship among DDI and each of the Additional Corporations including but not limited to the organizational structure of each corporation; the nature of the business of each corporation; the number and identification of common directors, officers, employees, agents, distributors, jobbers, salespersons, interns, sales representatives and attorneys; the ownership of each corporation; and the three most knowledgeable persons regarding any facts that relate to the relationship among DDI and each of the Additional Corporations.

### ANSWER:

Information about the Additional Corporations is not relevant to the claims or defenses of any party to this litigation and is therefore beyond the scope of discovery of Rule 26(b) of the Federal Rules of Civil Procedure. Nevertheless, without waiving the foregoing objection, and subject to the General Objections, DDI states that it does not have any "relationship" with the "Additional Corporations". Each corporation is a separate, distinct business entity. None of the "Additional Corporations" are involved in the sale or marketing of diabetic meters or testing strips, nor are they doing business in or directing any activities to Delaware.

### INTERROGATORY NO. 2

Describe fully the relationship between DDI (and/or any of the Additional Corporations) and any other party, including but not limited to online vendors, who has purchased Electrochemical Sensors and who resells such Electrochemical Sensors to any of the states on the

3

Northeast Region of the United States whether through retail outlets, direct mail or internet, including but not limited to an identification of the identity of the persons; the amount of sales (or other transfer) made or anticipated to be made to each such person, including sales (or other transfer) by unit volume and sales dollars; and all documents relating to such sales of such units.

**ANSWER:**

In addition to the General Objections, DDI further objects to this request on the grounds that it is seeking confidential business information of DDI. Subject to the foregoing objections, DDI states that it does not have any relationship with any party located in the state of Delaware. DDI further states that it is not aware of any distributor selling DDI's meters to any party located in the state of Delaware. Information about the Additional Corporations is not relevant to the claims or defenses of any party to this litigation and is therefore beyond the scope of discovery of Rule 26(b) of the Federal Rules of Civil Procedure. Information about purchases, sales or other activities in any state other than Delaware is also not relevant to the claims or defenses of any party to this litigation and is therefore beyond the scope of discovery of Rule 26(b) of the Federal Rules of Civil Procedure.

**INTERROGATORY NO. 3**

Identify the total sales (by unit volume and sales dollars) of all Electrochemical Sensors sold by DDI and/or any of the Additional Corporations, whether directly by DDI and/or any of the Additional Corporations or indirectly through one or more third parties, including but not limited to online vendors, through any distribution channels, into the United States and the total sales (by unit volume and sales dollars) of all Electrochemical Sensors sold by DDI and/or any of the Additional Corporations, whether directly by DDI and/or any of the Additional Corporations or indirectly through one or more third parties, including but not limited to online vendors, through any distribution channels, into the state of Delaware.

**ANSWER:**

Subject to the General Objections, DDI states that it had $6,541,666.34 in total sales of diabetic testing strips in the United States in 2007. DDI states that it had $0 (zero) dollars in sales of diabetic testing strips or "Electrochemical Sensors" in the state of Delaware in 2007 and every year prior to 2007. Information about the Additional Corporations is not relevant to the

4

claims or defenses of any party to this litigation and is therefore beyond the scope of discovery

of Rule 26(b) of the Federal Rules of Civil Procedure. Information about purchases, sales or

other activities in any state other than Delaware is also not relevant to the claims or defenses of

any party to this litigation and is therefore beyond the scope of discovery of Rule 26(b) of the

Federal Rules of Civil Procedure.

## INTERROGATORY NO. 4

Identify all contacts and communications between DDI and/or any of the Additional Corporations and chain retailers with outlets in the state of Delaware, including but not limited to Happy Harry's, Rite Aid, Shop Rite, Eckerd, Walmart, Target, Super G, Pathmark, and any parent corporations, subsidiaries, or related entities thereof.

### ANSWER:

Subject to the General Objections, DDI states that it has not had any contacts or

communications with any chain retailers in the state of Delaware. DDI states that it has

approached Walmart in Arkansas regarding potential sales of its meters but has not developed a

relationship or contractual arrangement with Walmart. Information about the Additional

Corporations is not relevant to the claims or defenses of any party to this litigation and is

therefore beyond the scope of discovery of Rule 26(b) of the Federal Rules of Civil Procedure.

Information about purchases, sales or other activities in any state other than Delaware is also not

relevant to the claims or defenses of any party to this litigation and is therefore beyond the scope

of discovery of Rule 26(b) of the Federal Rules of Civil Procedure.

## INTERROGATORY NO. 5

Identify all sales and marketing personnel employed by DDI and/or any of the Additional Corporations and describe each person's responsibilities including but not limited to the regions and customers (including distributors, retailers or internet supply houses) within the US assigned to each person, and identify all documents related to such persons and their responsibilities including but not limited to job descriptions and sales and marketing materials.

5

**ANSWER:**

Information about the Additional Corporations is not relevant to the claims or defenses of any party to this litigation and is therefore beyond the scope of discovery of Rule 26(b) of the Federal Rules of Civil Procedure. Information about purchases, sales or other activities in any state other than Delaware is also not relevant to the claims or defenses of any party to this litigation and is therefore beyond the scope of discovery of Rule 26(b) of the Federal Rules of Civil Procedure. Nevertheless, without waiving the foregoing objection, and subject to the General Objections, DDI identifies the following personnel:

1. Kelly Massaro – DDI Inside Sales Representative, North East Territory
   Responsibilities and Essential Functions:
   - Calling on health care companies
   - Maintain and exceed monthly, quarterly, and yearly sales goals
   - Increase account penetration on a regular basis
   - Maintain existing base business
   - Prepare price quotes and contracts
   - Prospecting for new accounts

2. Jeramie Rose - DDI Inside Sales Representative, South East Territory
   Responsibilities and Essential Functions:
   - Calling on health care companies
   - Maintain and exceed monthly, quarterly, and yearly sales goals
   - Increase account penetration on a regular basis
   - Maintain existing base business
   - Prepare price quotes and contracts
   - Prospecting for new accounts

3. Chris Gwaltney -  DDI Inside Sales Manager, National Accounts
   Responsibilities and Essential Functions:
   - Train & Manage Inside Sales Team
   - Establish quotas and goals for Inside Sales Team
   - Responsible for growth and development of Major Accounts
   - Develop relationships with GPO companies
   - Develop and implement new strategies to increase DDI product penetration in the market

4. Jerry Munden - DDI Vice President of Sales, National Accounts
   Responsibilities and Essential Functions:
   - Oversees entire sales department
   - Directly responsible for Government and Institutional accounts
   - Directs diabetic camp initiative

6

- Responsible for overall sales growth
- Set monthly, quarterly, and yearly sales goals

5. Ryan Morris – DDI Managed Care Director, Managed Care Companies
   Responsibilities and Essential Functions:
   - Creates and directs managed care initiative
   - Responsible for ensuring that DDI products are on every major managed formulary
   - Facilitates relationships between DDI customers and HMO providers and assists the customer in bidding process
   - Maintain and exceed monthly, quarterly, and yearly sales goals

6. Michael Page – DDI Retail Manager, Major Retail Chain Pharmacies
   Responsibilities and Essential Functions:
   - Responsible for growth and development of Major Retail Chain Pharmacies
   - Develop relationships with Major Retail Chain Pharmacy Distributors and get DDI products loaded in their catalogs
   - Maintain and exceed monthly, quarterly, and yearly sales goals.
   - Develop campaigns and strategies to drive business in the Major Retail Chain Pharmacy market

## INTERROGATORY NO. 6

Identify all business connections between the state of Delaware and DDI (and/or any of the Additional Corporations or any personnel of DDI and/or the Additional Corporations), including but not limited to (i) sales calls on persons or companies within the State of Delaware, (ii) prior lawsuits in Delaware, (iii) meetings with Delaware counsel, (iv) property owned in Delaware, (v) bank accounts in Delaware banks, (vi) products sold in Delaware, and (vii) contracts executed in Delaware, with Delaware corporations, or with Delaware as the choice of law, and for each such connection, identify the nature of the contact, when such connection began, whether such connection continues, and, if not, when it stopped, any personnel of DDI and/or the Additional Corporations involved in or knowledgeable regarding the contact, and any documents reflecting or referring to such contact.

### ANSWER:

Information about the Additional Corporations is not relevant to the claims or defenses of

any party to this litigation and is therefore beyond the scope of discovery of Rule 26(b) of the

Federal Rules of Civil Procedure. Subject to the General Objections, DDI states that there are no

business connections between DDI and the state of Delaware.

## INTERROGATORY NO. 7

Identify all publications distributed or circulated throughout the United States and/or in the state of Delaware in which DDI and/or any of the Additional Corporations advertises or promotes Electrochemical Sensors.

7

**ANSWER:**

Information about the Additional Corporations is not relevant to the claims or defenses of any party to this litigation and is therefore beyond the scope of discovery of Rule 26(b) of the Federal Rules of Civil Procedure. Information about purchases, sales or other activities in any state other than Delaware is also not relevant to the claims or defenses of any party to this litigation and is therefore beyond the scope of discovery of Rule 26(b) of the Federal Rules of Civil Procedure. Nevertheless, without waiving the foregoing objection, and subject to the General Objections, DDI states that it advertises and promotes its Electrochemical Sensors in the following publications:

- *Voice of the Diabetic*, published by the National Federation of the Blind;

- *Diabetes Health;*

- The Veteran Affairs Publication;

- Trade show publications at trade shows including MEDTrade, AADE, Blinded Vets,

and the NFB Convention; and

- Flyers printed and distributed by DDI at these tradeshows and through its distributors.

**INTERROGATORY NO. 8**

State whether any DDI Electrochemical Sensors are advertised or otherwise displayed on any internet website and, for each such internet website, identify the internet address, the company that maintains the website, the company that pays for maintenance of said website, the company that authorized the advertisement or display of such Electrochemical Sensors on said website, the number of hits for each such website from the state of Delaware, and, to the extent available, the address and entity of each person from the state of Delaware who accessed such information.

**ANSWER:**

Subject to the General Objections, DDI states that it advertises and displays its

Electrochemical Sensors on its website at www.prodigymeter.com. This website is operated and

maintained by Webtron, Inc. on behalf of DDI. Customers cannot purchase Electrochemical

Sensors from this website. DDI does not monitor the number of hits on its website. Neither DDI

nor Webtron, Inc. is able to determine the number of hits from the state of Delaware, if any, or

the identity of any person in the state of Delaware who accessed the site, if any, because each hit

is routed through the offices of each individual's internet provider.

DDI further states, upon information and belief, that a Google search reveals that its

Electrochemical Sensors are displayed on other websites which feature various Electrochemical

Sensors for sale nationally to customers. DDI does not operate or maintain any such site and has

no control over the sale of its Electrochemical Sensors on such sites.

### INTERROGATORY NO. 9

Describe fully the warranty or warranties offered by DDI and/or any of the Additional Corporations to each consumer for any Electrochemical Sensors sold, whether directly by DDI and/or any of the Additional Corporations or indirectly through one or more third parties, including but not limited to online vendors, including the procedure(s) to be used by a consumer for warranty registration, the length of the warranties, the procedure(s) to be used by a consumer for contacting DDI and/or any of the Additional Corporations to make a claim under the warranties, the procedure(s) to be used by a consumer to obtain a replacement Electrochemical Sensor and/or to have an Electrochemical Sensor repaired, all warranty registrations for any Electrochemical Sensors from any address in the state of Delaware, and any documents reflecting or referring to such warranties.

### ANSWER:

Information about the Additional Corporations is not relevant to the claims or defenses of

any party to this litigation and is therefore beyond the scope of discovery of Rule 26(b) of the

Federal Rules of Civil Procedure. Subject to the General Objections, DDI states that it extends a

Limited Warranty to consumers who buy a new Prodigy® brand meter. Under the Limited

Warranty, DDI warranties the new meter for a period of one year from the original date of

purchase, as long as it has not been modified, altered, or misused. Under this Limited Warranty,

DDI will replace, free of charge, the Meter if it is defective in material or workmanship.

A consumer may register for the warranty by mailing in a warranty form which is

enclosed with the product to DDI or through DDI's website at www.prodigymeter.com. A

9

customer making a warranty claim would call DDI's toll-free number and make a claim by explaining the problems experienced with the meter. DDI would then replace the meter as necessary.

DDI states that it has no warranty registrations from any address in the state of Delaware.

ASHBY & GEDDES

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
302-654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Defendant Diagnostic Devices, Inc.*

*Of Counsel:*

Michael G. Adams
Ashley L. Ellis
Morgan H. Rogers
Parker Poe Adams & Bernstein LLP
Three Wachovia Center, Suite 3000
401 South Tryon Street
Charlotte, North Carolina 28202
704-372-9000

Dated: February 28, 2008
188685.1

10

## CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of February, 2008, the attached **DEFENDANT
DIAGNOSTIC DEVICES, INC.'S ANSWERS TO ROCHE DIAGNOSTICS
OPERATIONS, INC.'S AND CORANGE INTERNATIONAL LIMITED'S FIRST SET
OF INTERROGATORIES (NOS. 1-9)** was served upon the below-named counsel of record at
the addresses and in the manner indicated:

Philip A. Rovner, Esquire                                                HAND DELIVERY
Potter Anderson & Corroon LLP
Hercules Plaza
1313 N. Market Street
Wilmington, DE 19899-0951

Daniel A. Boehnen, Esquire                                          VIA ELECTRONIC MAIL
McDonnell Boehnen Hulbert & Berghoff LLP
300 South Wacker Drive
Chicago, IL 60606

Nancy Tinsley, Esquire                                                VIA ELECTRONIC MAIL
Roche Diagnostics
9115 Hague Road
Indianapolis, IN 46250

Frederick L. Cottrell, III, Esquire                                    HAND DELIVERY
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801

Edward A. Mas, II, Esquire                                          VIA ELECTRONIC MAIL
McAndrews Held & Malloy Ltd.
500 West Madison Street, 34th Floor
Chicago, IL 60661

John W. Shaw, Esquire                                                  HAND DELIVERY
Young Conaway Stargatt & Taylor, LLP
1000 West Street, 17th Floor
Wilmington, DE 19801

Wesley E. Overson, Esquire                                          VIA ELECTRONIC MAIL
Morrison & Foerster LLP

425 Market Street
San Francisco, CA 94105-2482

Kenneth P. George, Esquire                          VIA ELECTRONIC MAIL
Amster, Rothstein & Ebenstein LLP
90 Park Avenue
New York, NY 10016

Mary W. Bourke, Esquire                             HAND DELIVERY
Connolly, Bove, Lodge & Hutz
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899

Rodger D. Smith, II, Esquire                        HAND DELIVERY
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899

Bradford J. Badke, Esquire                          VIA ELECTRONIC MAIL
Ropes & Gray LLP
1211 Avenue of the Americas
New York, NY 10036-8704


Lauren E. Maguire

187037.1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ROCHE DIAGNOSTICS OPERATIONS INC.          )
and CORANGE INTERNATIONAL LIMITED,         )
                                            )
            Plaintiffs,                     )
                                            )
      v.                                    )          C.A. No. 07-753-JJF
                                            )
ABBOTT DIABETES CARE, INCORPORATED,        )
ABBOTT DIABETES CARE SALES CORPORATION,    )
BAYER HEALTHCARE LLC, DIAGNOSTIC           )
DEVICES INC., LIFESCAN INCORPORATED, and   )
NOVA BIOMEDICAL CORPORATION,               )
                                            )
            Defendants.                     )

## NOTICE OF SERVICE

The undersigned hereby certifies that on the 28th day of February, 2008, **DEFENDANT**

**DIAGNOSTIC DEVICES, INC.'S ANSWERS TO ROCHE DIAGNOSTICS**

**OPERATIONS, INC.'S AND CORANGE INTERNATIONAL LIMITED'S FIRST SET**

**OF INTERROGATORIES (NOS. 1-9)** were served upon the following counsel of record at the

address and in the manner indicated:

Philip A. Rovner, Esquire                          HAND DELIVERY
Potter Anderson & Corroon LLP
Hercules Plaza
1313 N. Market Street
Wilmington, DE  19899-0951

Daniel A. Boehnen, Esquire                         VIA ELECTRONIC MAIL
McDonnell Boehnen Hulbert & Berghoff LLP
300 South Wacker Drive
Chicago, IL  60606

Nancy Tinsley, Esquire                             VIA ELECTRONIC MAIL
Roche Diagnostics
9115 Hague Road
Indianapolis, IN  46250

Frederick L. Cottrell, III, Esquire                              HAND DELIVERY
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801


Edward A. Mas, II, Esquire                                  VIA ELECTRONIC MAIL
McAndrews Held & Malloy Ltd.
500 West Madison Street, 34th Floor
Chicago, IL 60661


John W. Shaw, Esquire                                         HAND DELIVERY
Young Conaway Stargatt & Taylor, LLP
1000 West Street, 17th Floor
Wilmington, DE 19801


Wesley E. Overson, Esquire                                  VIA ELECTRONIC MAIL
Morrison & Foerster LLP
425 Market Street
San Francisco, CA 94105-2482


Kenneth P. George, Esquire                                  VIA ELECTRONIC MAIL
Amster, Rothstein & Ebenstein LLP
90 Park Avenue
New York, NY 10016


Mary W. Bourke, Esquire                                       HAND DELIVERY
Connolly, Bove, Lodge & Hutz
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899


Rodger D. Smith, II, Esquire                                  HAND DELIVERY
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899


Bradford J. Badke, Esquire                                  VIA ELECTRONIC MAIL
Ropes & Gray LLP
1211 Avenue of the Americas
New York, NY 10036-8704

ASHBY & GEDDES

*/s/ Lauren E. Maguire*

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
302-654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Defendant Diagnostic Devices, Inc.*

*Of Counsel:*

Michael G. Adams
Ashley L. Ellis
Morgan H. Rogers
Parker Poe Adams & Bernstein LLP
Three Wachovia Center, Suite 3000
401 South Tryon Street
Charlotte, North Carolina 28202
704-372-9000

Dated: February 28, 2008
187575.1

**CERTIFICATE OF SERVICE**

I hereby certify that on the 28th day of February, 2008, the attached **NOTICE OF**

**SERVICE** was served upon the below-named counsel of record at the addresses and in the

manner indicated:

Philip A. Rovner, Esquire                                    HAND DELIVERY
Potter Anderson & Corroon LLP
Hercules Plaza
1313 N. Market Street
Wilmington, DE 19899-0951

Daniel A. Boehnen, Esquire                          VIA ELECTRONIC MAIL
McDonnell Boehnen Hulbert & Berghoff LLP
300 South Wacker Drive
Chicago, IL 60606

Nancy Tinsley, Esquire                               VIA ELECTRONIC MAIL
Roche Diagnostics
9115 Hague Road
Indianapolis, IN 46250

Frederick L. Cottrell, III, Esquire                       HAND DELIVERY
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801

Edward A. Mas, II, Esquire                           VIA ELECTRONIC MAIL
McAndrews Held & Malloy Ltd.
500 West Madison Street, 34th Floor
Chicago, IL 60661

John W. Shaw, Esquire                                     HAND DELIVERY
Young Conaway Stargatt & Taylor, LLP
1000 West Street, 17th Floor
Wilmington, DE 19801

Wesley E. Overson, Esquire                           VIA ELECTRONIC MAIL
Morrison & Foerster LLP
425 Market Street
San Francisco, CA 94105-2482

Kenneth P. George, Esquire
Amster, Rothstein & Ebenstein LLP
90 Park Avenue
New York, NY 10016

<u>VIA ELECTRONIC MAIL</u>

Mary W. Bourke, Esquire
Connolly, Bove, Lodge & Hutz
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899

<u>HAND DELIVERY</u>

Rodger D. Smith, II, Esquire
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899

<u>HAND DELIVERY</u>

Bradford J. Badke, Esquire
Ropes & Gray LLP
1211 Avenue of the Americas
New York, NY 10036-8704

<u>VIA ELECTRONIC MAIL</u>

*/s/ Lauren E. Maguire*

Lauren E. Maguire

## Discovery Documents

1:07-cv-00753-JJF Roche Diagnostics Operations Inc. et al v. Abbott Diabetes Care
Incorporated et al
PATENT, PaperDocuments

### U.S. District Court

### District of Delaware

### Notice of Electronic Filing

The following transaction was entered by Maguire, Lauren on 2/28/2008 at 4:51 PM EST and filed on
2/28/2008

| | |
|---|---|
| **Case Name:** | Roche Diagnostics Operations Inc. et al v. Abbott Diabetes Care Incorporated et al |
| **Case Number:** | 1:07-cv-753 |
| **Filer:** | Diagnostic Devices Inc. |

**Document Number:** 80

**Docket Text:**
**NOTICE OF SERVICE of Answers to First Set of Interrogatories (Nos. 1-9) by Diagnostic
Devices Inc..(Maguire, Lauren)**

**1:07-cv-753 Notice has been electronically mailed to:**

Matthew A. Anderson    manderson@mcandrews-ip.com

Jeffrey P. Armstrong    armstrongj@mbhb.com

Steven J. Balick    sbalick@ashby-geddes.com, dfioravanti@ashby-geddes.com, jday@ashby-
geddes.com, lmaguire@ashby-geddes.com, mkipp@ashby-geddes.com, nlopez@ashby-geddes.com,
rgamory@ashby-geddes.com, tlydon@ashby-geddes.com

Jason R. Bartlett    jasonbartlett@mofo.com

Daniel A. Boehnen    boehnen@mbhb.com

Mary W. Bourke    mbourke@cblh.com, dhallowell@cblh.com, dkt@cblh.com, kboots@cblh.com

Joseph M. Casino    jcasino@arelaw.com

Jeffrey Thomas Castellano    jcastellano@ycst.com

Frederick L. Cottrell , III    cottrell@rlf.com

Grantland G. Drutchas    drutchas@mbhb.com

Merle S. Elliott    melliott@mcandrews-ip.com

Paula S. Fritsch    fritsch@mbhb.com

Anne Shea Gaza    gaza@rlf.com, garvey@rlf.com

Kenneth P. George    kgeorge@arelaw.com

James M. Hafertepe    jhafertepe@mcandrews-ip.com

Gary E. Hood    hood@mbhb.com

Parisa Jorjani    pjorjani@mofo.com

Nicole Keenan    keenan@mbhb.com

Rachel Krevans    rkrevans@mofo.com

Lauren E. Maguire    lmaguire@ashby-geddes.com

Edward A. Mas , II    emas@mcandrews-ip.com

Daniel P. Muino    DMuino@mofo.com

Sherri L. Oslick    oslick@mbhb.com

Wesley E. Overson    woverson@mofo.com

Philip A. Rovner    provner@potteranderson.com, iplitigation@potteranderson.com, mstackel@potteranderson.com, nmcmenamin@potteranderson.com

John W. Shaw    jshaw@ycst.com, corpcal@ycst.com, corporate@ycst.com

Stephen F. Sherry    ssherry@mcandrews-ip.com

Rodger Dallery Smith , II    rdsefiling@mnat.com

Nancy Tinsley    nancy.tinsley@roche.com

Kirk A. Vander Leest    kvanderleest@mcandrews-ip.com

**1:07-cv-753 Notice has been delivered by other means to:**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**

[STAMP dcecfStamp_ID=1079733196 [Date=2/28/2008] [FileNumber=527245-0]
[3c13dc9d14e54846858f58c7a04bb95f0efc73680e52bcb7eb7fff31a036735745a9
6fff5933caafda5a7a7ad4db523c79ec35503cc1073b1da48356793142d9]]]

# EXHIBIT
# E

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROCHE DIAGNOSTICS OPERATIONS INC.<br>and CORANGE INTERNATIONAL LIMITED,<br><br>Plaintiffs,<br><br>v.<br><br>ABBOTT DIABETES CARE, INCORPORATED,<br>ABBOTT DIABETES CARE SALES CORPORATION,<br>BAYER HEALTHCARE LLC, DIAGNOSTIC<br>DEVICES INC., LIFESCAN INCORPORATED, and<br>NOVA BIOMEDICAL CORPORATION,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No. 07-753-JJF |

**DEFENDANT DIAGNOSTIC DEVICES, INC.'S
RESPONSES TO PLAINTIFFS' FIRST SET OF REQUESTS
FOR THE PRODUCTION OF DOCUMENTS AND THINGS (NOS. 1-46)**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, defendant Diagnostic Devices, Inc. ("DDI") responds to Plaintiffs' First Set of Requests for Production of Documents as follows:

**GENERAL OBJECTIONS**

To avoid undue and unnecessary repetition, DDI makes the following general and continuing objections to the Document Requests. All general and continuing objections apply to each response to the Document Requests, and specific and more generalized references to these objections elsewhere in these responses are intended for emphasis only and do not constitute a waiver of these general and continuing objections. Further, the assertion of additional specific objections in response to the individual Document Requests does not constitute a waiver of these general and continuing objections.

1.    DDI objects to each and every Document Request to the extent that it calls for information covered by the attorney/client privilege, the work product doctrine, or any other applicable privilege or doctrine, including, without limitation, documents developed for, or in anticipation of, litigation, or which constitute the work product of counsel or reflect confidential attorney-client communications, and no such information or documents will be produced.  By producing information or documents in response to these Document Requests, DDI does not waive, intentionally or otherwise, its attorney-client privilege, work product protection, or any other privilege protecting its communications, transactions or records from disclosure, and any production of documents inconsistent with the foregoing is wholly inadvertent and does not constitute a waiver of any such privilege or protection.

2.    DDI objects to each and every Document Request, definition, or instruction to the extent that it purports to impose obligations on DDI beyond those set forth in the Federal Rules of Civil Procedure, the local rules of court or any court order that may be entered that governs discovery.  Specifically, without limitation to the foregoing, DDI objects to the definitions and Documents Requests as follows:

(a)    DDI objects to the definition of, and corresponding requests relating to, "Additional Corporations" as such companies are separate and distinct entities from DDI and are not parties to this lawsuit; and

(b)    DDI objects to the definition of, and corresponding requests relating to, "Northeast region of the United States" to the extent that it includes states other than Delaware, as DDI contacts with states other than Delaware are not relevant to the issue of personal jurisdiction in Delaware.

2

3.      DDI objects to each and every Document Request to the extent it seeks information that is not in the possession, custody, or control of DDI.

4.      DDI objects to each and every Document Request to the extent that it seeks any confidential information of DDI or any third party.  DDI further objects to producing any documents that contain confidential information until the parties have entered into a mutually agreed upon protective order.

5.      DDI objects to each and every Interrogatory as being overly broad and unduly burdensome because it requests information for an unlimited period of time.

6.      DDI objects to each and every Document Request to the extent that it purports to require DDI to conduct an unreasonably broad or unduly burdensome search of its offices and/or files or to conduct an unduly burdensome production of any information.  Subject to and without waiving the foregoing, DDI will search for documents only from those aspects of its business or individuals it reasonably believes have or may have relevant, non-privileged information responsive to the Document Requests.

7.      Each of the above objections shall be deemed to be incorporated by reference in each response, and shall be hereinafter referred to as the "General Objections."

## REQUESTS

1.      All documents and things concerning, referring to or relating to any sales and/or marketing of any of Defendant's Electrochemical Sensors in the Northeast region of the United States, and also specifically in the state of Delaware, including but not limited to direct sales, sales by any of the Additional Corporations or other related entities, sales by online vendors, or sales through distributors, wholesalers, dealers, jobbers, resellers, retail chains or other retailers, or suppliers.

### RESPONSE:

Information about the Additional Corporations or other related entities is not relevant to the claims or defenses of any party to this litigation and is therefore beyond the scope of discovery of Rule 26(b) of the Federal Rules of Civil Procedure.  Information about purchases,

sales or other activities in any state other than Delaware is also not relevant to the claims or defenses of any party to this litigation and is therefore beyond the scope of discovery of Rule 26(b) of the Federal Rules of Civil Procedure. Subject to the foregoing and to the General Objections, and without waiving the same, DDI states that it does not have any documents or things concerning, referring to or relating to any sales and/or marketing of any of DDI's Electrochemical Sensors in the state of Delaware.

2.    All documents and things identifying the names, titles, and responsibilities of all persons having any role in the sales and/or marketing of any of Defendant's Electrochemical Sensors in the Northeast region of the United States, and also specifically in the state of Delaware.

**RESPONSE:**

Information about purchases, sales or other activities in any state other than Delaware is not relevant to the claims or defenses of any party to this litigation and is therefore beyond the scope of discovery of Rule 26(b) of the Federal Rules of Civil Procedure. DDI also objects to this request on the grounds that the information sought is completely duplicative of the information provided in response to Interrogatory No. 5. Therefore, the request is unduly burdensome.

3.    All documents and things concerning, referring or relating to marketing products by DDI and/or any of the Additional Corporations within any state or area that includes any part of the Northeast region of the United States, including but not limited to the state of Delaware.

**RESPONSE:**

Information about the Additional Corporations is not relevant to the claims or defenses of any party to this litigation and is therefore beyond the scope of discovery of Rule 26(b) of the Federal Rules of Civil Procedure. Information about purchases, sales or other activities in any state other than Delaware is also not relevant to the claims or defenses of any party to this litigation and is therefore beyond the scope of discovery of Rule 26(b) of the Federal Rules of

4

Civil Procedure. DDI does not have any documents or things concerning, referring, or relating to marketing products in Delware. DDI is producing examples of its marketing materials.

4.    All documents and things concerning, referring or relating to marketing Electrochemical Sensors within any state or area that includes any part of the Northeast region of the United States, including but not limited to the state of Delaware.

**RESPONSE:**

Information about marketing activities in any state other than Delaware is not relevant to the claims or defenses of any party to this litigation and is therefore beyond the scope of discovery of Rule 26(b) of the Federal Rules of Civil Procedure. Subject to the foregoing and to the General Objections, and without waiving the same, DDI states that it does not have any documents or things concerning, referring to or relating to marketing Electrochemical Sensors in the state of Delaware.

5.    All documents and things concerning, referring or relating to marketing Electrochemical Sensors to customers within any state or area that includes any part of the Northeast region of the United States, including but not limited to the state of Delaware.

**RESPONSE:**

Information about marketing activities in any state other than Delaware is not relevant to the claims or defenses of any party to this litigation and is therefore beyond the scope of discovery of Rule 26(b) of the Federal Rules of Civil Procedure. Subject to the foregoing and to the General Objections, and without waiving the same, DDI states that it does not have any documents or things concerning, referring to or relating to marketing Electrochemical Sensors to customers in the state of Delaware.

6.    All documents and things concerning, referring to or relating to any retention of sales representatives or marketing representatives located in the United States for any DDI Electrochemical Sensors or persons responsible for soliciting sales from persons located in the United states for any such products, including any documents referring or relating to:

    a.    duties or responsibilities of the representatives;

    b.    territories assigned to the representatives;

5

c.   customers and potential customers located in the territories assigned to the representatives;

d.   products handled by the representatives;

e.   the number of persons located in the United States that have been contacted by the representatives; and

f.   the identity of the persons located in Delaware that have been contacted by the representative assigned to the territory that includes the state of Delaware.

**RESPONSE:**

Information about sales, purchases, marketing or other activities in any state other than Delaware is not relevant to the claims or defenses of any party to this litigation and is therefore beyond the scope of discovery of Rule 26(b) of the Federal Rules of Civil Procedure. DDI has no customers in Delaware, therefore there are no customers or potential customers handled by its sales representatives. DDI has no documents related to its sales representatives contacting persons in Delaware.

7.   All documents and things concerning, referring to or relating to any discussions, negotiations, or agreements among DDI and any of the Additional Corporations relating to the grant of any rights for practicing, using, developing, manufacturing, distributing, selling or offering for sale any Electrochemical Sensors in the United States and in the state of Delaware.

**RESPONSE:**

Information about purchases, sales or other activities in any state other than Delaware is not relevant to the claims or defenses of any party to this litigation and is therefore beyond the scope of discovery of Rule 26(b) of the Federal Rules of Civil Procedure. Information about the additional corporation is not relevant to the claims or defenses of any party to this litigation and is therefore beyond the scope of discovery of Rule 26(b) of the Federal Rules of Civil Procedure. Subject to the foregoing and to the General Objections, and without waiving the same, DDI states that it does not have any documents or things concerning, referring to or relating to any discussions, negotiations, or agreements among DDI and any of the Additional Corporations

6

relating to the grant of any rights for practicing, using, developing, manufacturing, distributing,

selling or offering for sale any Electrochemical Sensors in the state of Delaware.

8.    All documents and things concerning, referring to or relating to any discussions, negotiations, or agreements made or in effect among DDI and any of the Additional Corporations, or any subsidiary, division, or affiliate thereof, including documents the subject matter of which is in whole or in part joint promotion, marketing or sales plans or efforts.

**RESPONSE:**

Subject to the General Objections, and without waiving the same, DDI further objects to

this request on the grounds that it is irrelevant to the issue of jurisdiction over DDI in Delaware.

As a result, the request is overly broad and unduly burdensome.

9.    All documents and things concerning, referring to or relating to any study, projection, market or other evaluation or analysis of past, current or future sales or revenues for any of the Defendant's Electrochemical Sensors in the Northeast region of the United States, and also specifically in the state of Delaware.

**RESPONSE:**

Information about purchases, sales or other activities in any state other than Delaware is

not relevant to the claims or defenses of any party to this litigation and is therefore beyond the

scope of discovery of Rule 26(b) of the Federal Rules of Civil Procedure.  Subject to the

foregoing and to the General Objections, and without waiving the same, DDI states that it does

not have any documents or things concerning, referring to or relating to any study, projection,

market or other evaluation or analysis of past, current or future sales or revenues for any of the

DDI's Electrochemical Sensors in the state of Delaware.

10.    All documents and things concerning, referring to or relating to business plans of DDI and/or any of the Additional Corporations relating to the sale and/or marketing of Electrochemical Sensors.

**RESPONSE:**

Information about the Additional Corporations is not relevant to the claims or defenses of

any party to this litigation and is therefore beyond the scope of discovery of Rule 26(b) of the

Federal Rules of Civil Procedure. Subject to the foregoing and to the General Objections, and without waiving the same, DDI further objects to this request to the extent that it is seeking documents that are irrelevant to the issue of jurisdiction over DDI in Delaware and states that it does not have any business plan relating to the sale and/or marketing of Electrochemical Sensors in the state of Delaware.

11.    All documents and things concerning, referring to or relating to any contacts between DDI and/or any of the Additional Corporations and chain retailers with outlets in the State of Delaware, including but not limited to Happy Harry's, Rite Aid, Shop Rite, Eckerd, Walmart, Target, Super G, Pathmark, and any parent corporations, subsidiaries, or related entities thereof.

**RESPONSE:**

Information about the Additional Corporations is not relevant to the claims or defenses of any party to this litigation and is therefore beyond the scope of discovery of Rule 26(b) of the Federal Rules of Civil Procedure. Information about purchases, sales, contacts or other activities in any state other than Delaware is not relevant to the claims or defenses of any party to this litigation and is therefore beyond the scope of discovery of Rule 26(b) of the Federal Rules of Civil Procedure. Subject to the foregoing and to the General Objections, and without waiving the same, DDI states that it does not have any non-privileged documents regarding contacts with chain retailers in the state of Delaware and does not have any contracts with chain retailers to sell its products in Delaware.   On or about February 27, 2008, Rick Admani called Shop Rite to determine if Shop Rite carried the Prodigy Meter. Mr. Admani was told that Shop Rite did not carry the Prodigy Meter.

12.    All documents and things concerning, referring to or relating to any sales made by DDI and/or any of the Additional Corporations, directly or indirectly, to chain retailers with outlets in the State of Delaware, including but not limited to Happy Harry's, Rite Aid, Shop Rite, Eckerd, Target, Super G, Pathmark, and any parent corporations, subsidiaries, or related entities thereof.

8

**RESPONSE:**

Information about the Additional Corporations is not relevant to the claims or defenses of
any party to this litigation and is therefore beyond the scope of discovery of Rule 26(b) of the
Federal Rules of Civil Procedure. Information about purchases, sales, contacts or other activities
in any state other than Delaware is also not relevant to the claims or defenses of any party to this
litigation and is therefore beyond the scope of discovery of Rule 26(b) of the Federal Rules of
Civil Procedure. Subject to the foregoing and to the General Objections, and without waiving
the same, DDI states that it has not had any sales to chain retailers in the State of Delaware and
does not have any contracts with chain retailers to sell its products in Delaware.

13.    All documents and things concerning, referring to or relating to the annual and
total gross revenues of DDI and/or any of the Additional Corporations from sales, either direct or
indirect, to persons located in the United States of any Electrochemical System.

**RESPONSE:**

Information about the Additional Corporations is not relevant to the claims or defenses of
any party to this litigation and is therefore beyond the scope of discovery of Rule 26(b) of the
Federal Rules of Civil Procedure. Information about purchases, sales, contacts or other activities
in any state other than Delaware is also not relevant to the claims or defenses of any party to this
litigation and is therefore beyond the scope of discovery of Rule 26(b) of the Federal Rules of
Civil Procedure. Subject to the foregoing and to the General Objections, and without waiving the
same, DDI further objects to this request on the grounds that it is seeking documents that are
confidential business records of DDI which are not relevant to the claims or defenses of any
party to this action.

14.    All documents and things concerning, referring to or relating to the annual and
total gross revenues of DDI and/or any of the Additional Corporations from sales, either direct in
indirect, to persons located in the state of Delaware.

**RESPONSE:**

Information about the Additional Corporations is not relevant to the claims or defenses of any party to this litigation and is therefore beyond the scope of discovery of Rule 26(b) of the Federal Rules of Civil Procedure. Subject to the foregoing and to the General Objections, and without waiving the same, DDI states that it does not have any annual or total gross revenues from sales to persons located in the state of Delaware.

15.     All documents that identify all distributors, wholesalers, dealers, resellers, online vendors, and suppliers with a place of business located in the United States with whom DDI and/or any of the Additional Corporations has entered into or attempted to enter into contracts, and documents sufficient to show the annual and total gross revenues to DDI and/or any of the Additional Corporations from sales under contracts with such distributors, wholesalers, dealers, resellers, online vendors, and suppliers.

**RESPONSE:**

Information about the Additional Corporations is not relevant to the claims or defenses of any party to this litigation and is therefore beyond the scope of discovery of Rule 26(b) of the Federal Rules of Civil Procedure. Information about purchases, sales or other activities in any state other than Delaware is not relevant to the claims or defenses of any party to this litigation and is therefore beyond the scope of discovery of Rule 26(b) of the Federal Rules of Civil Procedure. DDI has not entered into or attempted to enter into contracts with any distributors, wholesalers, dealers, resellers, online vendors, or suppliers in the state of Delaware.

16.     All documents and things concerning, referring to or relating to communications from or to Delaware persons or entities.

**RESPONSE:**

DDI objects to this request on the grounds that it is overly broad and unduly burdensome since it fails to state whose communications from or to Delaware persons or entities it is seeking. Subject to the General Objections, and without waiving the same, DDI does not have any

10

documents and things concerning, referring to or relating to communications between DDI and

any Delaware persons or entities.

      17.    All documents and things concerning, referring to or relating to Defendant's offers for sale or the absence of offers for sale to persons or entities in the state of Delaware.

**RESPONSE:**

      Subject to the General Objections, and without waiving the same, DDI states that it does

not have any documents or things concerning, referring to or relating to Defendant's offers for

sale to persons or entities in the state of Delaware.

      18.    All documents and things concerning, referring to or relating to any inquiries from Delaware persons or entities for Defendant's services or products.

**RESPONSE:**

      Subject to the General Objections, and without waiving the same, DDI states that it does

not have any documents and things concerning, referring to or relating to any inquiries from

Delaware persons or entities for Defendant's services or products.

      19.    All documents and things concerning, referring to or relating to any possible confusion by Delaware consumers as to the source of Defendant's goods or services.

**RESPONSE:**

      DDI objects to this interrogatory on the ground that the information sought is not relevant

to the claims or defenses of any party to this litigation and is therefore beyond the scope of

discovery of Rule 26(b) of the Federal Rules of Civil Procedure. Subject to the General

Objections, and without waiving the same, DDI states that it does not have any documents or

things concerning, referring to or relating to any possible confusion by Delaware consumers as to

the source of Defendant's goods or services.

      20.    All telephone records showing calls from Defendant to any person or entity in the state of Delaware.

**RESPONSE:**

DDI objects to this request on the grounds that it is overly broad and unduly burdensome.

Subject to the foregoing and to the General Objections, and without waiving the same, DDI

states that it has attempted unsuccessfully to obtain telephone records from its telephone provider

organized to show telephone calls, if any, to any person or entity in the state of Delaware.

21.    All telephone records showing calls to Defendant from any person or entity in the
state of Delaware.

**RESPONSE:**

DDI objects to this request on the grounds that it is overly broad and unduly burdensome.

Subject to the foregoing and to the General Objections, and without waiving the same, DDI

states that it has attempted unsuccessfully to obtain telephone records from its telephone provider

organized to show telephone calls, if any, from any person or entity in the state of Delaware.

22.    All documents and things concerning, referring to or relating to Defendant's
internet site www.prodigymeter.com, including but not limited to all Webtrends reports,
information relating to internet "hits," search engine keywords leading to Defendant's internet
web site, the physical locations by state of computers accessing www.prodigymeter.com
(available as a Webtrends report), etc.

**RESPONSE:**

DDI objects to this request on the ground that the information sought is not relevant to

the claims or defenses of any parties to this action and is therefore beyond the scope of discovery

of Rule 26(b) of the Federal Rules of Civil Procedure. DDI will make available reports, if any,

which are in its possession, custody and control at a mutually convenient time for counsel of the

parties, to the extent that they show "hits" in Delaware, even though this information is not

relevant.

23.    All documents and things concerning, referring to or relating to any of
Defendant's advertising or absence of advertising to persons or entities in the state of Delaware.

12

**RESPONSE:**

Subject to the General Objections, and without waiving the same, DDI states that it does not have any documents or things concerning, referring to or relating to any of Defendant's advertising to persons or entities in the state of Delaware.

24.    All documents and things concerning, referring to or relating to Defendant's advertising, including but not limited to copies of advertisements and the geographic reach of such advertising.

**RESPONSE:**

Information about advertisements in any state other than Delaware is not relevant to the claims or defenses of any party to this litigation and is therefore beyond the scope of discovery of Rule 26(b) of the Federal Rules of Civil Procedure. Subject to the foregoing and to the General Objections, and without waiving the same, DDI will make available copies of its advertisements which are in its possession, custody and control.

25.    All documents and things concerning, referring to or relating to Defendant's television advertising, including but not limited to the market reached by such advertising.

**RESPONSE:**

Information about advertisements in any state other than Delaware is not relevant to the claims or defenses of any party to this litigation and is therefore beyond the scope of discovery of Rule 26(b) of the Federal Rules of Civil Procedure. Subject to the foregoing and to the General Objections, and without waiving the same, DDI states that it does not conduct any television advertising.

26.    All documents and things concerning, referring to or relating to Defendant's internet advertising, including but not limited to the market reached by such advertising.

13

**RESPONSE:**

Subject to the General Objections, and without waiving the same, DDI states that it does not conduct any internet advertising, other then owning and operating its own website.

27.    All promotional materials from Defendant's providers of advertising and marketing services.

**RESPONSE:**

Information about advertisements in any state other than Delaware is not relevant to the claims or defenses of any party to this litigation and is therefore beyond the scope of discovery of Rule 26(b) of the Federal Rules of Civil Procedure. Subject to the foregoing and to the General Objections, and without waiving the same, DDI states that it does not advertise in Delaware and thus any promotional materials from providers of advertising and marketing services are not relevant. DDI further states that it does not have any promotional materials from DDI's providers of advertising and marketing services.

28.    All documents and things concerning, referring to or relating to any plan or study of Defendant conducting business, directly or indirectly, in the state of Delaware.

**RESPONSE:**

Subject to the General Objections, and without waiving the same, DDI states that it has no documents and things concerning, referring to or relating to any plan or study of DDI conducting business in the state of Delaware.

29.    All documents and things concerning, referring to or relating to any promotion or absence of promotion to persons or entities in the state of Delaware.

**RESPONSE:**

Subject to the General Objections, and without waiving the same, DDI states that it has no documents and things concerning, referring to or relating to any promotion to persons or entities in the state of Delaware.

14

30.    All contracts between Defendant and the providers of Defendant's advertising and marketing services.

**RESPONSE:**

Information about advertisements in any state other than Delaware is not relevant to the claims or defenses of any party to this litigation and is therefore beyond the scope of discovery of Rule 26(b) of the Federal Rules of Civil Procedure. Subject to the foregoing and to the General Objections, and without waiving the same, DDI states that it does not advertise in Delaware and thus any contracts between DDI and its providers of advertising and marketing services are not relevant.

31.    All communications between Defendant and Defendant's providers of marketing and promotion services relating in any way to the state of Delaware or any Delaware persons or entities.

**RESPONSE:**

Subject to the General Objections, and without waiving the same, DDI states that it has had no communications with its providers of marketing and promotion services relating in any way to the state of Delaware or any Delaware persons or entities.

32.    All documents showing the presence or absence of advertising of Defendant's services or products to Delaware residents.

**RESPONSE:**

Subject to the General Objections, and without waiving the same, DDI states that it has no documents showing the presence of advertising of Defendant's services or products to Delaware residents.

33.    All invoices, bills, literature, promotional material, or other documents sent to any entity or consumer located in the state of Delaware.

15

**RESPONSE:**

Subject to the General Objections, and without waiving the same, DDI states that it has no invoices, bills, literature, promotional material, or other documents sent to any entity or consumer located in the state of Delaware.

34.    All documents and things concerning, referring to or relating to any correspondence or communications to or from any Delaware entity or resident.

**RESPONSE:**

DDI objects to this request on the grounds that it is overly broad and unduly burdensome since it fails to state whose communications from or to Delaware entity or resident it is seeking. Subject to the foregoing and to the General Objections, and without waiving the same, DDI states that it is not aware of any documents and things concerning, referring to or relating to communications between DDI and any Delaware resident or entity.

35.    All documents and things concerning, referring to or relating to any correspondence or communications involving Defendant that was sent to the state of Delaware.

**RESPONSE:**

Subject to the General Objections, and without waiving the same, DDI states that it is not aware of any documents and things concerning, referring to or relating to any correspondence or communications involving Defendant that was sent to the state of Delaware.

36.    All e-mail communications from any entity or person in the state of Delaware relating to Defendant's business, products, and/or services.

**RESPONSE:**

Subject to the General Objections, and without waiving the same, DDI states that it is not aware of any e-mail communications from any entity or person in the state of Delaware relating to Defendant's business, products, and/or services.

37.    All e-mail communications from any entity or person in the state of Delaware relating to Plaintiffs' business, products, and/or services.

16

**RESPONSE:**

Subject to the General Objections, and without waiving the same, DDI states that it is not aware of any e-mail communications from any entity or person in the state of Delaware relating to Plaintiffs' business, products, and/or services.

38.    All documents and things concerning, referring to or relating to any investigation, test marketing, or market research relating to Defendants products and services.

**RESPONSE:**

Information about advertisements in any state other than Delaware is not relevant to the claims or defenses of any party to this litigation and is therefore beyond the scope of discovery of Rule 26(b) of the Federal Rules of Civil Procedure. Subject to the foregoing and to the General Objections, and without waiving the same, DDI states that it has no documents and things concerning, referring to or relating to any investigation, test marketing, or market research relating to Defendants products and services.

39.    All documents and things concerning, referring to or relating to Defendant's historical internet web site content, including but not limited to copies of all previous versions of Defendant's internet web site.

**RESPONSE:**

Defendant objects to this request on the grounds that it seeks information that is not relevant to the claims or defenses of any party to this litigation. Subject to the foregoing and to the General Objections, and without waiving the same, DDI states that it does not have any documents and things concerning, referring to or relating to Defendant's historical internet web site content.

40.    All documents and things concerning, referring to or relating to the development of Defendant's internet web site.

17

**RESPONSE:**

Defendant objects to this request on the grounds that it seeks information that is not relevant to the claims or defenses of any party to this litigation. Subject to the foregoing and to the General Objections, and without waiving the same, DDI states that it does not have any documents and things concerning, referring to or relating to the development of Defendant's internet web site.

41.    All documents and things concerning, referring to or relating to any warranty offered by DDI and/or any of the Additional Corporations on any Electrochemical Sensors sold, whether directly or indirectly through one or more third parties, including but not limited to online vendors, into the Northeast region of the United States, and also specifically into the state of Delaware.

**RESPONSE:**

Information about the Additional Corporations is not relevant to the claims or defenses of any party to this litigation and is therefore beyond the scope of discovery of Rule 26(b) of the Federal Rules of Civil Procedure. Information about purchases, sales or other activities in any state other than Delaware is not relevant to the claims or defenses of any party to this litigation and is therefore beyond the scope of discovery of Rule 26(b) of the Federal Rules of Civil Procedure. DDI will make a copy of its warranty available to plaintiffs. DDI does not have any specific information about any warranties applicable to any products sold in Delaware. Any other information is not relevant to the claims or defenses of the parties to this action and is therefore beyond the scope of discovery of Rule 26(b) of the Federal Rules of Civil Procedure.

42.    All documents and things concerning, referring to or relating to any warranty registration made by a person located in the state of Delaware for any Electrochemical Sensor sold by DDI and/or any of the Additional Corporations, whether directly or indirectly through one or more third parties, including but not limited to online vendors.

**RESPONSE:**

Information about the Additional Corporations is not relevant to the claims or defenses of any party to this litigation and is therefore beyond the scope of discovery of Rule 26(b) of the

18

Federal Rules of Civil Procedure. Subject to the foregoing and to the General Objections, and without waiving the same, DDI states that it does not have any documents or things concerning, referring to or relating to any warranty registration made by a person located in the state of Delaware for any Electrochemical Sensor sold by DDI.

43.    All documents and things concerning, referring to or relating to any claim on a warranty made by a person located in the state of Delaware for any Electrochemical Sensor sold by DDI and/or any of the Additional Corporations, whether directly or indirectly through one or more third parties, including but not limited to online vendors.

**RESPONSE:**

Information about the Additional Corporations is not relevant to the claims or defenses of any party to this litigation and is therefore beyond the scope of discovery of Rule 26(b) of the Federal Rules of Civil Procedure. Subject to the foregoing and to the General Objections, and without waiving the same, DDI states that it does not have any documents or things concerning, referring to or relating to any claim on a warranty made by a person located in the state of Delaware for any Electrochemical Sensor sold by DDI.

44.    All documents and things concerning, referring to or relating to any action taken by DDI and/or any of the Additional Corporations on any claim on a warranty made by a person located in the state of Delaware for any Electrochemical Sensor sold by DDI and/or any of the Additional Corporations, whether directly or indirectly through one or more third parties, including but not limited to online vendors.

**RESPONSE:**

Information about the Additional Corporations is not relevant to the claims or defenses of any party to this litigation and is therefore beyond the scope of discovery of Rule 26(b) of the Federal Rules of Civil Procedure. Subject to the foregoing and to the General Objections, and without waiving the same, DDI states that it does not have any documents or things concerning, referring to or relating to any action taken by DDI and/or any of the Additional Corporations on any claim on a warranty made by a person located in the state of Delaware for any Electrochemical Sensor sold by DDI.

19

45. All documents requested for identification by Plaintiffs' First Set of Interrogatories to Defendant DDI (Nos. 1-9), served concurrently herewith.

**RESPONSE:**

Subject to the General Objections, DDI will make available all responsive documents which are in its possession, custody and control at a mutually convenient time for counsel of the parties.

46. All documents relied upon, referred to or otherwise consulted directly or indirectly in responding to Plaintiffs' First Set of Interrogatories to Defendant DDI (Nos. 1-9), served concurrently herewith.

**RESPONSE:**

DDI objects to this request on the grounds that the information sought is not relevant to the claims and defenses of any parties to this action and further objects to this request to the extent it seeks the production of documents protected from discovery by the attorney-client privilege or the work product doctrine. Subject to the General Objections, DDI will make available all responsive non-privileged documents which are in its possession, custody and control at a mutually convenient time for counsel of the parties.

ASHBY & GEDDES

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
302-654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Defendant Diagnostic Devices, Inc.*

20

*Of Counsel:*

Michael G. Adams
Ashley L. Ellis
Morgan H. Rogers
Parker Poe Adams & Bernstein LLP
Three Wachovia Center, Suite 3000
401 South Tryon Street
Charlotte, North Carolina 28202
704-372-9000

Dated: February 28, 2008
188678.1

## CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of February, 2008, the attached **DEFENDANT**

**DIAGNOSTIC DEVICES, INC.'S RESPONSES TO PLAINTIFFS' FIRST SET OF**

**REQUESTS FOR THE PRODUCTION OF DOCUMENTS AND THINGS (NOS. 1-46)**

was served upon the below-named counsel of record at the addresses and in the manner

indicated:

| | |
|---|---|
| Philip A. Rovner, Esquire<br>Potter Anderson & Corroon LLP<br>Hercules Plaza<br>1313 N. Market Street<br>Wilmington, DE  19899-0951 | HAND DELIVERY |
| Daniel A. Boehnen, Esquire<br>McDonnell Boehnen Hulbert & Berghoff LLP<br>300 South Wacker Drive<br>Chicago, IL  60606 | VIA ELECTRONIC MAIL |
| Nancy Tinsley, Esquire<br>Roche Diagnostics<br>9115 Hague Road<br>Indianapolis, IN  46250 | VIA ELECTRONIC MAIL |
| Frederick L. Cottrell, III, Esquire<br>Richards, Layton & Finger, P.A.<br>One Rodney Square<br>920 North King Street<br>Wilmington, DE  19801 | HAND DELIVERY |
| Edward A. Mas, II, Esquire<br>McAndrews Held & Malloy Ltd.<br>500 West Madison Street, 34th Floor<br>Chicago, IL  60661 | VIA ELECTRONIC MAIL |
| John W. Shaw, Esquire<br>Young Conaway Stargatt & Taylor, LLP<br>1000 West Street, 17th Floor<br>Wilmington, DE  19801 | HAND DELIVERY |
| Wesley E. Overson, Esquire<br>Morrison & Foerster LLP | VIA ELECTRONIC MAIL |

425 Market Street
San Francisco, CA  94105-2482

Kenneth P. George, Esquire                           VIA ELECTRONIC MAIL
Amster, Rothstein & Ebenstein LLP
90 Park Avenue
New York, NY  10016

Mary W. Bourke, Esquire                               HAND DELIVERY
Connolly, Bove, Lodge & Hutz
1007 North Orange Street
P.O. Box 2207
Wilmington, DE  19899

Rodger D. Smith, II, Esquire                          HAND DELIVERY
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899

Bradford J. Badke, Esquire                           VIA ELECTRONIC MAIL
Ropes & Gray LLP
1211 Avenue of the Americas
New York, NY  10036-8704



Lauren E. Maguire

187037.1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROCHE DIAGNOSTICS OPERATIONS INC. and CORANGE INTERNATIONAL LIMITED, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | C.A. No. 07-753-JJF |
| ABBOTT DIABETES CARE, INCORPORATED, ABBOTT DIABETES CARE SALES CORPORATION, BAYER HEALTHCARE LLC, DIAGNOSTIC DEVICES INC., LIFESCAN INCORPORATED, and NOVA BIOMEDICAL CORPORATION, | ) ) ) ) ) ) | |
| Defendants. | ) | |

## NOTICE OF SERVICE

The undersigned hereby certifies that on the 28th day of February, 2008, **DEFENDANT**

**DIAGNOSTIC DEVICES, INC.'S RESPONSES TO PLAINTIFFS' FIRST SET OF**

**REQUESTS FOR THE PRODUCTION OF DOCUMENTS AND THINGS (NOS. 1-46)**

were served upon the following counsel of record at the address and in the manner indicated:

Philip A. Rovner, Esquire                                           HAND DELIVERY
Potter Anderson & Corroon LLP
Hercules Plaza
1313 N. Market Street
Wilmington, DE 19899-0951

Daniel A. Boehnen, Esquire                                  VIA ELECTRONIC MAIL
McDonnell Boehnen Hulbert & Berghoff LLP
300 South Wacker Drive
Chicago, IL 60606

Nancy Tinsley, Esquire                                       VIA ELECTRONIC MAIL
Roche Diagnostics
9115 Hague Road
Indianapolis, IN 46250

Frederick L. Cottrell, III, Esquire
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801

<u>HAND DELIVERY</u>

Edward A. Mas, II, Esquire
McAndrews Held & Malloy Ltd.
500 West Madison Street, 34th Floor
Chicago, IL 60661

<u>VIA ELECTRONIC MAIL</u>

John W. Shaw, Esquire
Young Conaway Stargatt & Taylor, LLP
1000 West Street, 17th Floor
Wilmington, DE 19801

<u>HAND DELIVERY</u>

Wesley E. Overson, Esquire
Morrison & Foerster LLP
425 Market Street
San Francisco, CA 94105-2482

<u>VIA ELECTRONIC MAIL</u>

Kenneth P. George, Esquire
Amster, Rothstein & Ebenstein LLP
90 Park Avenue
New York, NY 10016

<u>VIA ELECTRONIC MAIL</u>

Mary W. Bourke, Esquire
Connolly, Bove, Lodge & Hutz
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899

<u>HAND DELIVERY</u>

Rodger D. Smith, II, Esquire
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899

<u>HAND DELIVERY</u>

Bradford J. Badke, Esquire
Ropes & Gray LLP
1211 Avenue of the Americas
New York, NY 10036-8704

<u>VIA ELECTRONIC MAIL</u>

ASHBY & GEDDES

/s/ Lauren E. Maguire

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
302-654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Defendant Diagnostic Devices, Inc.*

*Of Counsel:*

Michael G. Adams
Ashley L. Ellis
Morgan H. Rogers
Parker Poe Adams & Bernstein LLP
Three Wachovia Center, Suite 3000
401 South Tryon Street
Charlotte, North Carolina 28202
704-372-9000

Dated: February 28, 2008
187575.1

## CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of February, 2008, the attached **NOTICE OF**

**SERVICE** was served upon the below-named counsel of record at the addresses and in the

manner indicated:

Philip A. Rovner, Esquire                                        HAND DELIVERY
Potter Anderson & Corroon LLP
Hercules Plaza
1313 N. Market Street
Wilmington, DE 19899-0951

Daniel A. Boehnen, Esquire                                  VIA ELECTRONIC MAIL
McDonnell Boehnen Hulbert & Berghoff LLP
300 South Wacker Drive
Chicago, IL 60606

Nancy Tinsley, Esquire                                          VIA ELECTRONIC MAIL
Roche Diagnostics
9115 Hague Road
Indianapolis, IN 46250

Frederick L. Cottrell, III, Esquire                        HAND DELIVERY
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801

Edward A. Mas, II, Esquire                                   VIA ELECTRONIC MAIL
McAndrews Held & Malloy Ltd.
500 West Madison Street, 34th Floor
Chicago, IL 60661

John W. Shaw, Esquire                                          HAND DELIVERY
Young Conaway Stargatt & Taylor, LLP
1000 West Street, 17th Floor
Wilmington, DE 19801

Wesley E. Overson, Esquire                                 VIA ELECTRONIC MAIL
Morrison & Foerster LLP
425 Market Street
San Francisco, CA 94105-2482

Kenneth P. George, Esquire                          <u>VIA ELECTRONIC MAIL</u>
Amster, Rothstein & Ebenstein LLP
90 Park Avenue
New York, NY  10016

Mary W. Bourke, Esquire                             <u>HAND DELIVERY</u>
Connolly, Bove, Lodge & Hutz
1007 North Orange Street
P.O. Box 2207
Wilmington, DE  19899

Rodger D. Smith, II, Esquire                        <u>HAND DELIVERY</u>
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899

Bradford J. Badke, Esquire                          <u>VIA ELECTRONIC MAIL</u>
Ropes & Gray LLP
1211 Avenue of the Americas
New York, NY  10036-8704


                                 */s/ Lauren E. Maguire*
                                 _____
                                 Lauren E. Maguire

**Discovery Documents**
1:07-cv-00753-JJF Roche Diagnostics Operations Inc. et al v. Abbott Diabetes Care
Incorporated et al
PATENT, PaperDocuments

U.S. District Court

District of Delaware

**Notice of Electronic Filing**

The following transaction was entered by Maguire, Lauren on 2/28/2008 at 4:48 PM EST and filed on
2/28/2008
**Case Name:**        Roche Diagnostics Operations Inc. et al v. Abbott Diabetes Care Incorporated et al
**Case Number:**      1:07-cv-753
**Filer:**            Diagnostic Devices Inc.
**Document Number:** 79

**Docket Text:**
**NOTICE OF SERVICE of Responses to First Set of Requests for the Production of
Documents and Things (Nos. 1-46) by Diagnostic Devices Inc..(Maguire, Lauren)**

**1:07-cv-753 Notice has been electronically mailed to:**

Matthew A. Anderson    manderson@mcandrews-ip.com

Jeffrey P. Armstrong    armstrongj@mbhb.com

Steven J. Balick    sbalick@ashby-geddes.com, dfioravanti@ashby-geddes.com, jday@ashby-
geddes.com, lmaguire@ashby-geddes.com, mkipp@ashby-geddes.com, nlopez@ashby-geddes.com,
rgamory@ashby-geddes.com, tlydon@ashby-geddes.com

Jason R. Bartlett    jasonbartlett@mofo.com

Daniel A. Boehnen    boehnen@mbhb.com

Mary W. Bourke    mbourke@cblh.com, dhallowell@cblh.com, dkt@cblh.com, kboots@cblh.com

Joseph M. Casino    jcasino@arelaw.com

Jeffrey Thomas Castellano    jcastellano@ycst.com

Frederick L. Cottrell , III    cottrell@rlf.com

Grantland G. Drutchas    drutchas@mbhb.com

Merle S. Elliott    melliott@mcandrews-ip.com

Paula S. Fritsch    fritsch@mbhb.com

Anne Shea Gaza    gaza@rlf.com, garvey@rlf.com

Kenneth P. George    kgeorge@arelaw.com

James M. Hafertepe    jhafertepe@mcandrews-ip.com

Gary E. Hood    hood@mbhb.com

Parisa Jorjani    pjorjani@mofo.com

Nicole Keenan    keenan@mbhb.com

Rachel Krevans    rkrevans@mofo.com

Lauren E. Maguire    lmaguire@ashby-geddes.com

Edward A. Mas , II    emas@mcandrews-ip.com

Daniel P. Muino    DMuino@mofo.com

Sherri L. Oslick    oslick@mbhb.com

Wesley E. Overson    woverson@mofo.com

Philip A. Rovner    provner@potteranderson.com, iplitigation@potteranderson.com,
mstackel@potteranderson.com, nmcmenamin@potteranderson.com

John W. Shaw    jshaw@ycst.com, corpcal@ycst.com, corporate@ycst.com

Stephen F. Sherry    ssherry@mcandrews-ip.com

Rodger Dallery Smith , II    rdsefiling@mnat.com

Nancy Tinsley    nancy.tinsley@roche.com

Kirk A. Vander Leest    kvanderleest@mcandrews-ip.com

**1:07-cv-753 Notice has been delivered by other means to:**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**

[STAMP dcecfStamp_ID=1079733196 [Date=2/28/2008] [FileNumber=527235-0]
[c2a4e0aa89bf4291520264419410e3b34cb67e443e4fe671051a2b0dfbcbc5104fd5c
ae1d891bb184c8ec77012443962dd8a32ef770e9993effa8c130c9c5ee56]]]

# EXHIBIT
# F

 **McDonnell Boehnen Hulbert & Berghoff LLP**

300 South Wacker Drive    312 913 0001 phone
Chicago, Illinois 60606-6709    312 913 0002 fax
www.mbhb.com

March 5, 2008

*VIA E-MAIL and FACSIMILE*
*704.335.9683*

Ashley L. Ellis
Parker Poe Adams & Bernstein LLP
Three Wachovia Center, Suite 3000
401 South Tryon Street
Charlotte, NC 28202

Re:    *Roche Diagnostics Operations Inc. v. Abbott Diabetes Care, Inc. et al.*
       *Civil Action No. 07-753 JJF*

Dear Ashley:

We write to express some of our concerns with Diagnostic Devices, Inc.'s ("DDI's") written responses to Roche's First Set of Interrogatories (Nos. 1-9), and, hopefully, to resolve those concerns. By this letter, we provide examples of several deficient responses by DDI that require immediate supplementation. Given the accelerated personal jurisdiction discovery schedule, we ask that DDI consider Roche's concerns and provide us with the additional information by March 7. In the alternative, we propose that counsel schedule a telephone conference for March 7 to discuss the issues and identify any disputes that will need to be resolved with the Court's assistance.

**Interrogatory No. 1:**

This interrogatory seeks basic information regarding the corporate structure, ownership, and, *e.g.*, common personnel of DDI and the Additional Corporations. Roche is entitled to know the structure of DDI and of the entities that share addresses and people with DDI. Though the interrogatory provided several examples of potential relationships between DDI and the Additional Corporations, such as "common directors" and "the ownership of each corporation," DDI merely stated that it "does not have any 'relationship' with the 'Additional Corporations,'" and ignored the remainder of this interrogatory. In addition, it is not at all clear from DDI's response whether any parents, subsidiaries, related companies, or directors, officers, employees or agents of DDI have any relationships with the "Additional Corporations." DDI provided *no* information about DDI's corporate structure and ownership, nor the person(s) knowledgeable with regard to DDI/Additional Corporations.

DDI stated that "[n]one of the 'Additional Corporations' are involved in the sale or marketing of diabetic meters or testing strips, nor are they doing business in or directing any

activities to Delaware." DDI failed to state what the business activities of DDI and the Additional Corporations are. It is unclear whether the Additional Corporations have any business activities, not limited to sales or marketing activities, involving diabetic meters or strips, such as design, engineering, manufacturing, importation, warehousing, or distribution of those products. The response could have easily said that "none of the Additional Companies are involved in any way with any activities having anything to do with any glucose test meters," but the response studiously did not do this. Roche therefore also requests immediate clarification of the statement regarding the Additional Corporations.

Roche requests immediate supplementation of this response to include the information originally requested.

**Interrogatory No. 2:**

DDI's withholding of confidential information in response to this interrogatory, and others, is improper. Delaware Local Rule 26.2 explicitly provides for the production and protection of confidential information in the absence of a protective order. Therefore, to the extent that responsive confidential information exists and has been withheld by DDI, Roche demands that DDI immediately supplement its response to include such information. Roche will, of course, abide by the confidentiality designation with which DDI marks its response.

Additionally, DDI improperly seeks to limit its responses to this and other interrogatories strictly to the state of Delaware. However, to the extent that responsive information may be broken down by geographic region, rather than state, any information regarding a region that includes Delaware is relevant to the personal jurisdiction inquiry, and therefore Roche is entitled to such information. As one example, any activities involving Philadelphia could obviously lead to the discovery of admissible evidence regarding Delaware. For another example, DDI itself identifies its sales representatives by region rather than state (see DDI's response to Interrogatory No. 5–Kelly Massaro is the "DDI Sales Representative, Northeast Territory"). Any attempt by DDI to withhold otherwise responsive information that refers to regions that include Delaware is disingenuous at best. Roche therefore requests immediate supplementation of DDI's response to include any responsive information regarding Electrochemical Sensors in any region of the United States that encompasses Delaware, including the Northeast Region.

Finally, DDI ignores that this Interrogatory seeks information identifying and describing the relationship between DDI and anyone selling Electrochemical Sensors in the Northeast; DDI must identify such distributors/resellers/retailers and describe its relationship with them.

**Interrogatory No. 3:**

This interrogatory seeks information regarding DDI's sales of Electrochemical Sensors, including both blood glucose meters and strips (both U.S. sales and Delaware sales). DDI's

response was inexplicably limited to a single total sales figure for testing strips. Roche requests immediate supplementation of DDI's response to include sales figures for blood glucose meters and to include unit volume numbers corresponding to both sales figures.

Additionally, DDI improperly ignored the question of sales of DDI products by entities other than DDI, and Roche requests immediate supplementation of DDI's response to include those sales figures in dollars and in unit volume.

Finally, DDI must answer the above questions with regard to 2008 sales to date.

**Interrogatory No. 4:**

DDI must clarify (if correct) that it has had *no* contact with *any* chain retailer other than Wal-Mart. Roche's question sought information about communications with entities having outlet(s) in Delaware, *not* just communications directly with "retailers in the state of Delaware." DDI must answer this fully, and must identify, with particularity, the communications and contacts with Wal-Mart.

**Interrogatory No. 5:**

This interrogatory seeks information regarding the sales and marketing personnel of DDI, including the regions and customers for each. Although DDI provided some information for some personnel, DDI did not explain the particular customers/ distributors/resellers associated with each individual.

**Interrogatory No. 7:**

This interrogatory seeks identification of all publications in which DDI advertises and promotes its products. The response is unclear whether the list provided is comprehensive (including internet publications) or merely illustrative. Please either confirm that the list provided is comprehensive, or immediately supplement the response to include those publications, including Internet publications, omitted from the original list. We have also asked for production of such publications (see, e.g., Request 45); please produce those immediately.

**Interrogatory No. 8:**

DDI ignored large portions of this Interrogatory, including identification of the company or companies "that authorized the advertisement or display" of DDI's products on those websites. DDI must also state what retailers/websites display and/or sell DDI's products. Roche requests an immediate response, including the chain of custody of DDI products from DDI to such websites, and how it is that DDI lacks purported control over the sale of its products.

**General:**

DDI failed to sign the answers in accordance with Fed. R. Civ. P. 33(b). Please provide such a declaration with DDI's response to this letter, or, at the latest, by the end of this week.

**Conclusion:**

To permit the parties to consider the disputes and resolve them, preferably without the need to seek the Court's assistance, we have identified and discussed in considerable detail those points that Roche believes require immediate resolution. We have not, however, outlined every detailed deficiency in DDI's responses to Roche's First Set of Interrogatories and reserve the right to seek additional relevant discovery as the case proceeds.

To keep this case moving forward and on schedule, we would appreciate a prompt response to the foregoing concerns. We trust that DDI will withdraw many of its objections and voluntarily provide prompt supplemental responses. We further trust that DDI will provide the courtesy of a substantive response, with citation to legal authority, in those instances where DDI continues to withhold requested information or materials. Indeed, due to the imminent deadlines for briefing and discovery related to personal jurisdiction over DDI in the District of Delaware, we request a response to this letter no later than Friday, March 7 at noon EST. Please accept this letter as notification that, absent proper and prompt responses by DDI remedying the deficiencies outlined above, Roche will seek assistance from the Court in obtaining the information to which it is entitled.

We look forward to your prompt responses. Additional concerns regarding DDI's responses to Roche's First Set of Document Requests will be presented under separate cover. As always, we would like to try to mutually resolve our differences prior to seeking the intervention of the Court.

Regards,

Christina L. Brown
312 913 2144 direct
brownc@mbhb.com



**mbhb**  McDonnell Boehnen Hulbert & Berghoff LLP

300 South Wacker Drive     312 913 0001 phone
Chicago, Illinois 60606-6709   312 913 0002 fax
www.mbhb.com

March 6, 2008

*VIA E-MAIL and FACSIMILE*
*704.335.9683*

Ashley L. Ellis
Parker Poe Adams & Bernstein LLP
Three Wachovia Center, Suite 3000
401 South Tryon Street
Charlotte, NC 28202

Re:   *Roche Diagnostics Operations Inc. v. Abbott Diabetes Care, Inc. et al.*
      *Civil Action No. 07-753 JJF*

Dear Ashley:

We write to express some of our concerns with Diagnostic Devices, Inc.'s ("DDI's") responses to Roche's First Set of Requests for the Production of Documents and Things (Nos. 1-46).

First, as a threshold matter, the production of a mere 22 pages in response to 46 requests does not indicate a spirit of cooperation on the part of DDI with agreed-upon discovery on the issue of personal jurisdiction. Much of the little DDI produced appears to have been generated solely in litigation. *See, e.g.,* DDI00018-19 (a two page list of sales personnel with no author, date, description of origin, or even company letterhead).

Second, DDI appears to have applied an overly narrow definition of "DDI." In its Requests, Roche defined DDI broadly. DDI, however, appears to have interpreted "DDI" narrowly so as to severely limit its production obligations. *See, e.g.,* document DDI 00021, referring to "DDI Medical" – clearly indicative that there are entities other than Diagnostic Devices Inc., with relevant, discoverable information and documents.

Third, DDI's general objection regarding the production of confidential information is improper under the Local Rules of Delaware. Indeed, Local Rule 26.2 specifically provides for the production and protection of confidential information in the absence of a protective order. Therefore, to the extent that responsive confidential information exists and has been withheld by DDI, Roche demands that DDI immediately produce such information.

Fourth, DDI's repeated limitation of its responses and production to the state of Delaware is inappropriate. To the extent that information may be broken down by region, rather than by state, any information regarding a region that includes Delaware is relevant to the personal jurisdiction inquiry, and Roche is entitled to such information as it would potentially lead to the discovery of admissible evidence. As one example, DDI itself identifies its sales

representatives by region rather than state. *See* DDI's response to Interrogatory No. 5 (Kelly Massaro is the "DDI Sales Representative, Northeast Territory"). Attempts by DDI to withhold otherwise responsive information that refers to regions that include Delaware is improper. Further, a relevant region may indeed be the United States as a whole. Roche therefore requests immediate production of all responsive documents, to any of Roche's Requests, that relate to the Northeast region of the United States, to whatever other regions include the state of Delaware, and to the United States as a whole.

We provide further concerns with DDI's specific responses below.

**Request No. 1:**

This request is directed to documents concerning sales and marketing of Electrochemical Sensors, whether by DDI or any other entity, in the Northeast or Delaware. In response, DDI stated that *it* has no responsive documents relating to sales and/or marketing in "the state of Delaware." DDI's response is improperly limited, and Roche requests the immediate production of all responsive documents.

**Request No. 2:**

DDI's objection is meritless. If documents exist relating to sales and/or marketing in the Northeast or Delaware, they must be produced.

**Request Nos. 3–5:**

These requests seek documents relating to marketing, whether by DDI or a reseller, retailer, website, *e.g.* DDI cannot selectively produce documents. Responsive documents must be produced.

**Request No. 6:**

DDI stated that it has no potential Delaware customers. If DDI deliberately chooses not to serve diabetes patients in Delaware, Roche requests that DDI explain any such policies and produce any and all documents relating to such policies and decisions. Moreover, Roche's request was not limited to Delaware, and DDI must respond with requested documents which show, *e.g.*, duties, responsibilities, products, customers, and number and identity of persons contacted.

**Request Nos. 7–8:**

Again, DDI refuses, without valid basis, to respond with regard to the U.S. If there *are* no such documents, please so advise. Otherwise, documents showing, *e.g.*, that a different

entity handles some part of the "lifecycle" of DDI's products are quite relevant and must be produced.

**Request No. 9:**

Please state whether there are documents responsive, relative to the Northeast region. If so, please produce them.

**Request No. 10:**

This request is directed to business plans relating to the Electrochemical Sensor products. DDI responded by stating that such documents would be irrelevant to personal jurisdiction in Delaware and that no business plans relating to Delaware exist. However, any business plan relating to DDI products throughout the United States would indeed be relevant to the present issues, even if it does not explicitly mention "Delaware." Roche requests that DDI immediately supplement its production with all responsive documents relating to business plans.

**Request No. 11:**

This request is directed, *inter alia,* to documents concerning contacts between DDI and chain retailers. First, DDI claimed that "it does not have any non-privileged documents regarding contacts with chain retailers in the state of Delaware." However, to the extent that privileged documents exist, DDI cannot withhold such documents with no explanation. Roche requests immediate production of a privilege log to detail the existence of all withheld privileged documents that are responsive to this or any other document request, and the privilege log must include bases for any privilege claim pursuant to Fed. R. Civ. P. 26(b)(5)(A). Second, DDI must not limit its response to contacts *in* Delaware or contracts to *sell* in Delaware, but must respond fully with regard to *all* documents between DDI and any chain retailer *having outlets in* Delaware.

**Request No. 12:**

DDI must respond with regard to any sales to chain retailers having outlets in Delaware.

**Request Nos. 13-14:**

These requests are directed to documents relating to sales and revenues in the United States and in Delaware. Under Delaware Local Rule 26.2, DDI's objection that answering such a request requires the disclosure of confidential business information is insufficient to justify lack of production, as explained above. Further, documents relating to sales and revenue are absolutely relevant to the present issues. That includes both direct *and*

*indirect* sales.  DDI's response that it has no sales to persons *in* Delaware is wholly insufficient.

Roche also requests the production of any and all documents relating to the (approx.) $6.5 million sales figure referenced in DDI's response to Interrogatory No. 3., *including* production of those documents evidencing the sales of Electrochemical Sensor meters and strips.

**Request No. 15:**

DDI's response is improperly limited to contracts *in* the state of Delaware.  Roche is entitled to the information sought.

**Request Nos. 20-21:**

DDI phone calls to/from Delaware are highly relevant and no viable excuse is given for their non-production.  Moreover, DDI should produce documents to support its claim that it has been unable to obtain telephone records.

**Request No. 22:**

DDI responded that reports of website "hits" would be produced; however, only a single page of emails was produced.  *See* DDI00022, referencing a report which has not even been produced.  Roche requests the immediate production of *all* requested documents, including but not limited to any report that Webtron, or any agent or affiliate of Webtron, has provided to DDI in response to the produced email or any other request for a report. DDI must also produce documents regarding the creation and maintenance of DDI's website(s); no such documents were produced at all.

**Request No. 24:**

DDI needs to state whether all such documents have been produced.  Moreover, it appears very likely that DDI possesses documents showing whether its ads are/will be distributed nationally; documents bearing on the scope/reach of DDI's ads, promotions, and tradeshow attendance and materials must be produced.

**Request No. 26:**

DDI must respond regarding documents it has evidencing others' promotion of DDI products via the internet.

**Request Nos. 27 and 29:**

DDI has objected to production of its promotional materials, but also says it has none. However, some of the documents produced by DDI appear to be promotional materials. If DDI's point is that it does not use outside ad/marketing help, it should say so. Otherwise, it is not fathomable that no such materials exist. Moreover, nationally-directed promotions and advertising (ads, tradeshows, interviews, etc.) would fall within the scope of Request 29, *inter alia*.

**Request No. 30:**

This request is directed to contracts between DDI and providers of DDI's advertising and marketing services. Such contracts are relevant to the present issues. Accordingly, Roche requests that DDI immediately supplement its production to include such contracts.

**Request No. 32:**

DDI has apparently construed this request unduly narrowly. It would encompass, *e.g.*, internet advertising, advertising, promotional materials, press releases, etc., available via internet (whether on DDI's website or another's website), and nationally distributed magazines, newsletters, trade journals, and the like. (DDI also does not respond as to whether it has documents to support its claim that it does *not* advertise in Delaware).

**Request Nos. 34-37:**

These requests relate to communications between DDI and entities in the state of Delaware, and DDI repeatedly stated that it is "not aware" of any such communications. In its Requests, Roche defined DDI to include, for example, parents, subsidiaries, related companies, and directors, officers, employees and agents of DDI. Such a definition certainly includes personnel of DDI, such as Richard Admani, Ramzi Abulhaj, LaVondia Holloman, Timothy DuBois, Kelly Massaro, Jeramie Rose, Chris Gwaltney, Jerry Munden, Ryan Morris, and Michael Page, certainly insofar as such communications relate to DDI, at a minimum. Please confirm that none of these entities nor any employees of DDI has had any correspondence, email, phone calls, or other communications sent to or received from any entity or person in the state of Delaware. Of course, to the extent that such communications exist, Roche requests immediate production of all such documents.

**Request No. 38:**

DDI states it has no documents. It strains credulity that DDI did no investigation or research with regard to its products. Are they not, by way of example only, FDA approved? Such documents, and many others, would be responsive to this request.

**Request Nos. 39-40:**

As with the above, it is difficult to conceive that DDI has no information at all regarding its website. If that is the case, though, please state when such documents were destroyed. Sought documents include, by way of example only, screen shots, drafts, graphics, communications with those responsible for the website design and layout, and documents relating to the availability of DDI's software via its website.

**Request Nos. 42-44:**

DDI's response appears to be carefully limited to products sold directly *by DDI* to an end user, *i.e.*, not including products re-sold by others. Roche seeks clarification as to whether DDI's response was intended to be so limited.

**Conclusion:**

To permit the parties to consider these disputes and resolve them, preferably without the need to seek the Court's assistance, we have identified and discussed in considerable detail those points that Roche believes require immediate resolution. We have not, however, outlined each deficiency in DDI's responses to Roche's First Set of Requests for the Production of Documents and Things, and reserve the right to seek additional relevant discovery as the case proceeds.

To keep this case moving forward and on schedule, we would appreciate a prompt response to the foregoing concerns. We trust that DDI will withdraw many of its objections and voluntarily provide prompt supplemental responses and production. We further trust that DDI will provide the courtesy of a substantive response, with citation to legal authority, in those instances where DDI continues to withhold requested information or materials. Indeed, due to the imminent deadlines for briefing and discovery related to personal jurisdiction over DDI in the District of Delaware, we request a response to this letter no later than the close of business on Friday, March 7. Please accept this letter as notification that, absent proper and prompt responses and production by DDI remedying the deficiencies outlined above, Roche will seek assistance from the Court in obtaining the information to which it is entitled.

We look forward to your prompt responses.

Regards,

Christina L. Brown
312 913 2144 direct
brownc@mbhb.com

# EXHIBIT
# G



**PARKER POE**

PARKER POE ADAMS & BERNSTEIN LLP

*Attorneys and Counselors at Law*

**Ashley L. Ellis**
*Associate*
Telephone: 704.335.9039
Direct Fax: 704.334.4706
ashleyellis@parkerpoe.com

Three Wachovia Center
Suite 3000
401 South Tryon Street
Charlotte, NC 28202-1935
Telephone 704.372.9000
Fax 704.334.4706
www.parkerpoe.com

March 7, 2008

*VIA ELECTRONIC MAIL*
Christina Brown
McDonnell Boehnen Hulbert & Berghoff LLP
300 S. Wacker Drive
Chicago, Illinois 60606

      Re:  *Roche Diagnostics Operations, et al. v. Diagnostic Devices, Inc., et al.;* **Case No. 07-753-JJF**

Dear Chris:

      In response to your letters dated March 5, 2008 and March 6, 2008, DDI stands by, and will not withdraw, its objections to plaintiffs' interrogatories and requests for production of documents. As we told Dan Boehnen three weeks ago, it is DDI's position that information relating to corporations other than DDI and information relating to DDI's contacts with any state other than Delaware is not relevant to the issue of personal jurisdiction. We have provided you support for this position below and through the cases cited in our brief. In response, plaintiffs simply that the documents and information requested are relevant. However, you have not provided any explanation (or case law) as to how information about other companies and other states would tend to prove or disprove that *DDI* intentionally created business contacts *with Delaware* sufficient to (a) satisfy Delaware's long arm statute; and (b) the constitutional due process limitations.

      Additionally, we have repeatedly asked for the information that you have to support the allegation in your complaint that "DDI has committed acts of patent infringement" in Delaware. The only information you produced was a receipt from a purchase from a ShopRite store. DDI contacted that store and learned that it did not keep DDI products in stock, and therefore the alleged DDI product sold must have resulted from a special order by the store to someone out of state to obtain DDI's product (a) after the Complaint was filed and (b) in an attempt to manufacture jurisdiction. *World Wide Volkswagen Corp. v. Woodson,* 44 U.S. 286, 100 S.Ct. 559 (1980), makes it clear that the unilateral activities of a third party (i.e., placing a special order to bring a product into the jurisdiction) cannot confer jurisdiction over a party. We again request that you provide additional information concerning this purchase (as specified in our interrogatories and requests for documents) as soon as possible.

      All of the interrogatories and document requests relating to "Additional Corporations" request information that is not relevant to the issue of personal jurisdiction over DDI. Plaintiffs'

CHARLESTON, SC
COLUMBIA, SC
MYRTLE BEACH, SC
RALEIGH, NC
SPARTANBURG, SC

CLT 1112635v1

Christina Brown
March 7, 2008
Page 2

complaint alleges that "DDI has committed acts of patent infringement" and plaintiffs have not alleged an intermediary, alter ego or agency theory in their complaint. The Comments to Rule 26(b) make it clear that discovery is not allowed to develop new claims or theories not already identified in the pleadings. Moreover, the "Additional Corporations" are not involved, in any way, with any activities having anything to do with glucose testing meters or testing strips, including, but not limited to design, engineering, manufacturing, importation, warehousing, marketing or sales. They are not part of the supply chain. I do not know how much clearer we can make this statement. ACP Medical Devices sells disposables, such as lancets, but is not in the meter or strip business and does not have customers in Delaware.

DDI's contacts with any state other than Delaware are also irrelevant to the issue of personal jurisdiction. The relevant inquiry for jurisdiction in Delaware is whether DDI's acts were "directed at residents of the state of Delaware and the protection of its laws." *See Intel Corp. v. Silicon Storage Tech., Inc.*, 20 F. Supp. 690 (D.Del. 1998) (we assume you have read this case, but for your convenience, a copy is enclosed). *Intel* addresses nearly ever discovery dispute at issue in this case and makes clear that national advertisements, sales representatives simply assigned to a territory including the state, and distributors in nearby states are not relevant to the issue of personal jurisdiction. The only relevant issue is DDI's *actual* contacts with Delaware, which do not exist. DDI has not directed any acts at the residents of the state of Delaware. DDI does not have any contacts with Delaware in the "Northeast Region" (or any other region), which is why it did not have any information or documents relating to such contacts. Again, we do not know how to make this clearer. DDI does not make, use, sell or offer for sale the alleged infringing products in Delaware. DDI has not encouraged any distributor to sell in Delaware. DDI is not aware of any of its meters having been sold in Delaware, other than the one you pointed out as discussed above.

From the tone and inquiries in your letters, it appears that you believe DDI is a much bigger company than it really is. DDI only has approximately 30 employees, including six salespersons (all of which were listed in response to Interrogatory No. 5). DDI's "corporate structure" consists of its two shareholders, Rick Admani and Ramzi Abulhaj, who are also DDI's only officers and only engineers. DDI does not have any parent or subsidiary companies. To reiterate our interrogatory responses, DDI does not make any sales into Delaware, does not have any distributors in the state of Delaware, does not have any warranty registrations from customers in Delaware, and is not otherwise aware that any of its distributors have sold or are selling DDI's products in Delaware. Accordingly, DDI will not provide its sales figures or a list of its distributors when such information is irrelevant to the issue of personal jurisdiction.

The list of publications provided in response to Interrogatory No. 7 is not merely illustrative. It is a list of all publications in which DDI has ever run an advertisement. DDI does not keep copies of these publications or tear sheets of the actual advertisements. We produced the advertising copy which shows that none of the advertisements target Delaware. As you could tell from reading the ads, none of them constitute an "offer for sale."

To clarify DDI's response to Interrogatory 4 (which DDI believes was clear in the first place), DDI does not now and has not had any contacts with any chain retailer with outlets in Delaware, other than: (a) Wal-Mart, which contact was in Arkansas and did not result in any

Christina Brown
March 7, 2008
Page 3

business with Wal-Mart; and (b) the call to Shop-Rite discussed below. No further information about that contact is necessary or relevant to this issue of personal jurisdiction.

DDI's response to Interrogatory No. 8 was complete and there is no need for us to repeat that response in this letter. The burden of determining what websites display and/or sell DDI's products is the same for plaintiffs as it is for DDI, as it would take a Google search for either party.

Further, in response to your letter relating to the document production, the reason that DDI only produced 22 documents is because those were *all* of the relevant documents DDI has. Since DDI has no contacts with Delaware, it, as one would expect, has no documents relating to those non-existent contacts. For clarification, there is no entity named DDI Medical – that was simply a typographical error and was referring to DDI.

We will continue to follow up with the phone company our request for records of calls to or from Delaware. DDI reviewed its phone bills for December 2007 and January 2008 (totaling approximately 300 pages) and there were no calls to Delaware on the bills. (The bills do not show the origin of incoming calls.)

We are more than happy to discuss our position with you. DDI is standing on its objections because they are supported by law and because Plaintiffs' requests are so overbroad as written that it would be ridiculous to be placed in a position of having been accused of not responding to them.

For example, in request 15, Plaintiffs seek:

15. All documents that identify all distributors, wholesalers, dealers, resellers, online vendors, and suppliers with a place of business located in the United States with whom DDI and/or any of the Additional Corporations has entered into or attempted to enter into contracts, and documents sufficient to show the annual and total gross revenues to DDI and/or any of the Additional Corporations from sales under contracts with such distributors, wholesalers, dealers, resellers, online vendors, and suppliers.

DDI's response was:

Christina Brown
March 7, 2008
Page 4

**RESPONSE:**

Information about the Additional Corporations is not relevant to the claims or defenses of

any party to this litigation and is therefore beyond the scope of discovery of Rule 26(b) of the

Federal Rules of Civil Procedure. Information about purchases, sales or other activities in any

state other than Delaware is not relevant to the claims or defenses of any party to this litigation

and is therefore beyond the scope of discovery of Rule 26(b) of the Federal Rules of Civil

Procedure. DDI has not entered into or attempted to enter into contracts with any distributors,

wholesalers, dealers, resellers, online vendors, or suppliers in the state of Delaware.

Roche's reaction to that response was simple and conclusory and did not state how
national sales figures from all of these entities would be relevant to the dispute:

**Request No. 15:**

DDI's response is improperly limited to contracts *in* the state of Delaware. Roche is
entitled to the information sought.

In the same letter you also contend that we must produce information according to the
patently overbroad definition of DDI:

Second, DDI appears to have applied an overly narrow definition of "DDI." In its Requests,
Roche defined DDI broadly. DDI, however, appears to have interpreted "DDI" narrowly so
as to severely limit its production obligations. *See, e.g.,* document DDI 00021, referring to
"DDI Medical" -- clearly indicative that there are entities other than Diagnostic Devices Inc.,
with relevant, discoverable information and documents.

Please read your own definition of DDI:

4.    The terms "Defendant," "DDI," "you" and "your" shall mean Diagnostic Devices,

Inc. and/or any company name under which DDI is doing or has done business; its predecessors,

parents, subsidiaries, divisions, licensees, franchisees, assigns or other related business entities;

its directors, officers, employees, agents, distributors, jobbers, salespersons, interns, sales

representatives and attorneys; and each person acting or purporting to act on its or their behalf or

under its or their control.

CLT 1112635v1

Christina Brown
March 7, 2008
Page 5

Read literally, this requires the disclosure of documents sufficient to calculate the total revenues of both Parker Poe and Ashby Geddes. You know that such information is patently irrelevant and you know that you were not asking for it. We interpreted your requests in that reasonable light, not in the patently absurd light that an overly literal interpretation would require.

I am not interested in engaging in a discovery battle over meaningless semantics when the relevant issue is clear – what did DDI do to avail itself to the jurisdiction of Delaware. We have responded fully and fairly to that issue.

Finally, enclosed is the declaration for DDI's interrogatory responses, which was inadvertently left off of the interrogatory responses when they were served.

Regards,

Ashley L. Ellis

Enclosures

cc:    Steve Balick
       Lauren Maguire
       John Day

CLT 1112635v1

Westlaw.

20 F.Supp.2d 690
20 F.Supp.2d 690
(Cite as: 20 F.Supp.2d 690)

▷Intel Corp. v. Silicon Storage Technology, Inc.
D.Del.,1998.

United States District Court,D. Delaware.
INTEL CORPORATION, Plaintiff,
v.
SILICON STORAGE TECHNOLOGY, INC.,
Defendant.
Civil Action No. 97-608-RRM.

Aug. 5, 1998.

Patent infringement suit was brought against California based manufacturer of computer chips. Manufacturer moved to dismiss for lack of personal jurisdiction. The District Court, McKelvie, J., held that: (1) there was no personal jurisdiction under section of Delaware long-arm statute conferring jurisdiction over nonresident defendants "transacting business" in state; (2) there was no jurisdiction under section conferring jurisdiction when tortious injury is inflicted in state; and (3) there was no jurisdiction under provision allowing suit when there was tortious conduct in or outside of state by person regularly doing or soliciting business in state.

Motion to dismiss granted.
West Headnotes
[1] Constitutional Law 92 ☞3963

92 Constitutional Law
    92XXVII Due Process
        92XXVII(E) Civil Actions and Proceedings
            92k3961 Jurisdiction and Venue
                92k3963 k. Personal Jurisdiction in General. Most Cited Cases
                (Formerly 92k305(5))

Federal Courts 170B ☞76.1

170B Federal Courts
    170BII Venue
        170BII(A) In General
            170Bk76 Actions Against Non-Residents; "Long-Arm" Jurisdiction in General
                170Bk76.1 k. In General. Most Cited Cases
                (Formerly 170Bk76)

Exercise of personal jurisdiction by a federal court must be compatible both with the law of the state in which it sits and with the defendant's constitutional right to due process. U.S.C.A. Const.Amend. 14.

[2] Courts 106 ☞12(2.1)

106 Courts
    106I Nature, Extent, and Exercise of Jurisdiction in General
        106k10 Jurisdiction of the Person
            106k12 Domicile or Residence of Party
                106k12(2) Actions by or Against Nonresidents; "Long-Arm" Jurisdiction in General
                    106k12(2.1) k. In General. Most Cited Cases
Determination of whether Delaware long-arm statute confers personal jurisdiction on nonresident defendant is not to be collapsed into inquiry whether exercise of jurisdiction comports with federal due process standards, even though Delaware Supreme Court has held that long-arm statute is to be broadly construed to provide jurisdiction to maximum extent allowed under due process clause; Delaware Supreme Court has not ruled that long-arm statute is coextensive with federal due process, and has not substituted federal due process analysis for long-arm statute analysis. U.S.C.A. Const.Amend. 14; 10 Del.C. § 3104(c).

[3] Federal Courts 170B ☞76.10

170B Federal Courts
    170BII Venue
        170BII(A) In General
            170Bk76 Actions Against Non-Residents; "Long-Arm" Jurisdiction in General
                170Bk76.10 k. Defendant's Activities in Forum State; Cause of Action Arising Therefrom. Most Cited Cases
"Specific jurisdiction" over a nonresident defendant requires that the plaintiff's claim arise from the defendant's activity, that there be a nexus between the cause of action and the conduct used as a basis for jurisdiction.

[4] Federal Courts 170B ☞76.15

170B Federal Courts

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

20 F.Supp.2d 690
20 F.Supp.2d 690
(Cite as: 20 F.Supp.2d 690)

Page 2

170BII Venue
   170BII(A) In General
      170Bk76 Actions Against Non-Residents;
"Long-Arm" Jurisdiction in General
         170Bk76.15 k. Transacting or Doing
Business. Most Cited Cases
"Transactional jurisdiction" over a nonresident
defendant means that jurisdiction can arise from a
single transaction in the state, if the relationship
between the transaction and the plaintiff's cause of
action is sufficiently close.

[5] Federal Courts 170B ☞81

170B Federal Courts
   170BII Venue
      170BII(A) In General
         170Bk77 Corporations, Actions by or
Against
            170Bk81 k. Sales, Solicitation and
Advertising. Most Cited Cases
Personal jurisdiction was not established under
"transacting business" section of Delaware long-arm
statute, over California based manufacturer of
computer chips alleged to infringe patents, as result
of manufacturer's soliciting business in Delaware
through placement of advertisements in national
magazines; there was no showing that advertisements
were part of general plan to solicit business in state.
10 Del.C. § 3 104(c)(1).

[6] Federal Courts 170B ☞82

170B Federal Courts
   170BII Venue
      170BII(A) In General
         170Bk77 Corporations, Actions by or
Against
            170Bk82 k. Agent Within District;
Parent and Subsidiary. Most Cited Cases
Personal jurisdiction was not established under
"transacting business" section of Delaware long-arm
statute, over California based manufacturer of
computer chips alleged to infringe patents, as result
of manufacturer's designation of an independent
regional distributor and regional sales representative
to sell its products in Mid-Atlantic states including
Delaware; appointments were not part of general
business plan to target Delaware customers and sales
representatives had never visited Delaware customers
to solicit business for manufacturer. 10 Del.C. §
3104(c)(1).

[7] Federal Courts 170B ☞81

170B Federal Courts
   170BII Venue
      170BII(A) In General
         170Bk77 Corporations, Actions by or
Against
            170Bk81 k. Sales, Solicitation and
Advertising. Most Cited Cases
Personal jurisdiction was not established under
"transacting business" provision of long-arm statute,
over California based manufacturer of computer
chips alleged to infringe patents, when sales
representative sent manufacturer's data book to
Delaware resident; data book did not contain pricing
information, and was not part of general business
plan to target Delaware customers. 10 Del.C. §
3104(c)(1).

[8] Federal Courts 170B ☞81

170B Federal Courts
   170BII Venue
      170BII(A) In General
         170Bk77 Corporations, Actions by or
Against
            170Bk81 k. Sales, Solicitation and
Advertising. Most Cited Cases
Personal jurisdiction was not established under
"transacting business" provision of long-arm statute,
over California based manufacturer of computer
chips alleged to infringe patents, when infringing
chips were sent into state in response to telephone
order placed by counsel for patentholder. 10 Del. C. §
3104(c)(1).

[9] Federal Courts 170B ☞81

170B Federal Courts
   170BII Venue
      170BII(A) In General
         170Bk77 Corporations, Actions by or
Against
            170Bk81 k. Sales, Solicitation and
Advertising. Most Cited Cases
Personal jurisdiction was not established under
"transacting business" provision of Delaware long-
arm statute, over California based manufacturer of
computer chips alleged to infringe patents, as result
of manufacturer placing chips into "stream of
commerce" by selling them to computer

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

20 F.Supp.2d 690
20 F.Supp.2d 690
(Cite as: 20 F.Supp.2d 690)

manufacturers whose products ultimately reached Delaware; there was no showing that any of manufacturer's chips actually entered state in this way. 10 Del.C. § 3104(c)(1).

**[10] Federal Courts 170B ☜81**

170B Federal Courts
    170BII Venue
        170BII(A) In General
            170Bk77 Corporations, Actions by or Against
                170Bk81 k. Sales, Solicitation and Advertising. Most Cited Cases
**Personal jurisdiction** was not established over California based manufacturer of computer chips alleged to infringe patents, under Delaware long-arm statute provision conferring jurisdiction over persons causing tortious injury in Delaware by act or omission in state; offers to sell infringing products made in magazines sent into state did not constitute tortious activity in Delaware, and manufacturer did not perform any tortious act in state, either directly or through agents. 10 Del.C. § 3104(c)(3).

**[11] Federal Courts 170B ☜81**

170B Federal Courts
    170BII Venue
        170BII(A) In General
            170Bk77 Corporations, Actions by or Against
                170Bk81 k. Sales, Solicitation and Advertising. Most Cited Cases
**Personal jurisdiction** was not established over California based manufacturer of computer chips alleged to infringe patents, under Delaware long-arm statute provision conferring jurisdiction over persons causing tortious injury in or outside of state while regularly doing or soliciting business in Delaware; placement of advertisements in national magazines did not involve solicitation in state, and there were no mailings or other activities particularly targeting Delaware customers. 10 Del.C. § 3104(c)(4).

*691 William J. Marsden, Jr.,Joanne Ceballos, Potter Anderson & Corroon, Wilmington, DE, James F. Valentine, Arnold White & Durkee, Menlo Park, CA, Peter N. Detkin, Christopher M. Moropoulos, Intel Corporation, Santa Clara, CA, for plaintiff. Stephen E. Herrmann, Richards, Layton & Finger, Wilmington, DE, Daniel Johnson, Jr., Sean P.

DeBruine, Elizabeth E. Launer, *692 Cooley Godward, Palo Alto, CA, for defendant.

**MEMORANDUM OPINION**
MCKELVIE, District Judge.
This is a patent case. Plaintiff Intel Corporation ("Intel") owns four patents for electrically erasable programmable read only memory chips ("EEPROMs"), also known as flash memory chips. Intel is a Delaware corporation with its principal place of business in Santa Clara, California. Defendant Silicon Storage Technology, Inc. ("SST") is a California corporation with its principal place of business in Sunnyvale, California. On November 14, 1997, Intel filed a complaint in this court claiming that SST has infringed its patents by using and selling infringing flash EEPROM chips, and by inducing others to use and sell infringing flash EEPROM chips, in the District of Delaware and elsewhere in the United States. On December 4, 1997, SST filed a motion to dismiss for lack of personal jurisdiction and improper venue, or in the alternative, to transfer venue to the Northern District of California. The following is the court's decision on this motion.

I. *FACTUAL AND PROCEDURAL BACKGROUND*

The court draws the following facts from the briefs and evidentiary exhibits submitted by the parties. Both parties have submitted, along with their briefs on the issue of jurisdiction, transcripts of depositions taken during jurisdictional discovery, as well as copies of financial reports, contracts, and advertisements.

A. *What Is an EEPROM?*

Intel is a leading manufacturer of microprocessors and memory devices, including EEPROM flash memory chips. Read-only memory, or ROM, is a type of computer memory that retains its contents even when the computer's power is turned off. Programmable ROM, or PROM, is manufactured as blank memory and can be programmed by the user. Erasable PROM, or EPROM, can be erased and reprogrammed, usually by exposure to ultraviolet light. Electrically erasable PROM, or EEPROM, can be erased simply by applying electricity. Flash EEPROM can be programmed or erased in blocks of data, rather than one byte at a time, for improved speed. The chips are used in personal computers and other electronic products manufactured and

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

20 F.Supp.2d 690                                                    Page 4
20 F.Supp.2d 690
(Cite as: 20 F.Supp.2d 690)

distributed worldwide.

### B. *The Parties*

Intel has 48,500 employees worldwide. Intel's
revenue for the nine months ending September 27,
1997 was $18.5 billion. Its flash memory business
employs 88 engineers and generated $584 million in
revenue during the first three quarters of 1997.

SST also designs and manufactures semiconductor
memory products, including EEPROMs. It has 184
employees, including sales and marketing personnel
in Japan, Massachusetts, and Florida. SST's revenue
for the nine months ending September 27, 1997 was
$55 million.

SST engages in research and development in
California and New Mexico. It manufactures
products in New Mexico and Japan, and sells 86% of
its products overseas. Its customers include
Panasonic, Sony, Dell, and Acer, manufacturers
whose products are available by direct sale or
through retail channels in Delaware. It is unclear
whether any SST products are actually present in
products sold in Delaware by these manufacturers.

SST advertises its products in trade publications
circulated throughout the United States. SST's
advertisements recommend its flash EEPROM
products to manufacturers for use in cellular phones,
video games, and digital cameras, as well as in
computer products. They provide a toll-free
telephone number and a web site address. The ads
appear in EDN Magazine, which has 220 subscribers
in Delaware, Electronic Buyers' News, which has 109
subscribers in Delaware, and Electronic Engineering
Times, which has 166 subscribers in Delaware.

SST makes its products available in the United States
through four independent regional distributors. The
distributors warehouse the product, process customer
orders, *693 and ship products to customers. Nu
Horizons Electronics Corporation ("Nu Horizons") of
Amityville, New York is SST's regional distributor
for the mid-Atlantic region, which includes
Delaware. On March 13, 1998, after Intel had filed its
complaint, an employee of Intel's Delaware counsel
contacted Nu Horizons. The employee ordered four
SST parts by telephone and received those parts at
counsel's Delaware office on March 16, 1998.

In addition to its regional distributors, SST has
contracts with several regional sales representative
firms, each of which seeks out prospective customers
for products supplied by a number of manufacturers.
Delaware is one of thirty-four states assigned to sales
representatives acting on behalf of SST. S-J Mid-
Atlantic, Inc. of Mount Laurel, New Jersey is SST's
sales representative in New Jersey, Delaware, and
eastern Pennsylvania. S-J Mid-Atlantic sales
representatives visit customers in Delaware on behalf
of manufacturers other than SST, but they have never
presented SST products for sale to anyone in
Delaware. There appear to be no prospective
customers for flash EEPROM products in Delaware.

SST publishes a technical data book which provides
product specifications, a corporate overview, and lists
of distributors and sales representatives. In one
instance S-J Mid-Atlantic shipped an SST data book
from its New Jersey location to a manufacturer in
Delaware. S-J Mid-Atlantic did not make a price
quote and did not complete a sale. At the time of the
filing of Intel's complaint, it appears that SST had
never made a sale in Delaware either directly or
through its distributors or sales representatives.

### C. *The Complaint and the Motion to Dismiss*

In its opening brief, defendant SST argues that Intel's
complaint should be dismissed pursuant to <u>Federal
Rules of Civil Procedure Rule 12(b)(2)</u> for lack of
personal jurisdiction. SST claims that it has not sold
any products in Delaware, does not derive any
revenue from Delaware, and does not have any
significant contacts with Delaware. SST states that it
does not have any offices, facilities, or employees in
Delaware, that it has not entered into any contracts in
Delaware, that it is not licensed to do business in
Delaware, and that it does not have any plan to
specifically target Delaware residents as customers.
SST states that its chips are present in only a minimal
number of products, many of which are not sold in
the United States. SST claims that any presence in
Delaware of products produced by other
manufacturers and incorporating SST components is
"merely fortuitous" and not the result of any SST
business plan.

In its answering brief Intel claims that SST has sold
infringing products directly and indirectly in
Delaware. Intel also claims that SST's placement of
advertisements in national magazines with
subscribers in Delaware, along with its maintenance

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

20 F.Supp.2d 690
20 F.Supp.2d 690
(Cite as: 20 F.Supp.2d 690)

of a sales and distribution network targeting Delaware, constitute infringing offers to sell under 35 U.S.C. § 271(a).

Intel claims that SST has maintained a chain of distribution that reaches into Delaware, and that through its agents S-J Mid-Atlantic and Nu Horizons it has targeted the Delaware market and shown its willingness and intent to sell infringing products in Delaware. While Intel concedes that SST had made no direct sales of its products into Delaware at the time of the filing of this suit, it argues that the availability of SST's flash memory chips through regional distributors and the targeting of Delaware as a potential market should be sufficient for jurisdiction. Intel also argues that employees of S-J Mid-Atlantic are present in Delaware and that while here they are contractually obligated to aggressively pursue sales of SST products.

Intel claims that the purchase of SST parts by an employee of Intel's Delaware counsel demonstrates that the chain of distribution reaches into Delaware. Intel also contends that this single direct sale constitutes actual infringement in Delaware and gives rise to specific jurisdiction.

Intel also claims that SST shipped a "data book" to a prospective customer in Delaware and that this act of solicitation further demonstrates the existence of a regular course of conduct that should expose SST to jurisdiction in Delaware. Intel argues that the data *694 book is both a specific offer to sell infringing products and that it is part of a pattern of conduct that should establish a general presence in the State.

Intel argues that even if SST has made no direct sales in Delaware, its products are present in the stream of commerce as components of products manufactured by SST's customers. SST sells chips to popular computer and electronics manufacturers whose products are readily available to Delaware consumers. Intel claims that it is entitled to a reasonable inference that SST's products are actually present in Delaware, and complains that SST has refused to provide Intel with a complete customer list.

Intel also claims that SST's placement of advertisements in national magazines with significant circulation in Delaware infringes its rights as a patent owner. Intel argues that SST could or should have

known that the magazines would be circulated in Delaware and that the subscribers are persons who are likely to have an influence on decisions to purchase Intel or SST products. Intel argues that advertisements in national magazines constitute infringing offers to sell and that they should, without more, be sufficient to establish jurisdiction whereever they are circulated.

## II. DISCUSSION

The court applies a two-step analysis to determine whether it can exercise personal jurisdiction over SST. See Max Daetwyler Corp. v. R. Meyer, 762 F.2d 290, 293 (3d Cir.1985). First, Fed.R.Civ.P. Rule 4(e) requires that the court look to Delaware statutes governing service of process. Rule 4(e) states that service of a summons may be effected "pursuant to the law of the state in which the district court is located." Fed.R.Civ.P. Rule 4(e)(1) (1997). Thus, the court will determine whether there is a statutory basis for finding jurisdiction under the Delaware long-arm statute. See10 Del. C. § 3104(c). In applying the Delaware long-arm statute, the court will defer to the interpretations of the Delaware state courts. See Graphic Controls Corp. v. Utah Medical Prods., Inc., 149 F.3d 1382 (Fed.Cir. 1998) (stating that "in interpreting the meaning of state long-arm statutes, we elect to defer to the interpretations of the relevant state and federal courts, including their determinations regarding whether or not such statutes are intended to reach to the limit of federal due process").

[1] Second, if the Delaware long-arm statute authorizes jurisdiction, then the court asks whether the exercise of jurisdiction violates SST's Fourteenth Amendment right to due process. The exercise of jurisdiction by the federal court must be compatible both with the law of the state in which it sits and with the defendant's constitutional right to due process. See Max Daetwyler, 762 F.2d at 293 (finding that jurisdiction "is tested against both constitutional and statutory standards").

[2] The Delaware Supreme Court has stated that the Delaware long-arm statute should be "broadly construed to confer jurisdiction to the maximum extent possible under the due process clause." LaNuova D & B S.p.A. v. Bowe Co., 513 A.2d 764, 768 (Del.1986). However, it is important not to collapse the long-arm inquiry into the due process inquiry. The Delaware Supreme Court has not

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

20 F.Supp.2d 690
20 F.Supp.2d 690
(Cite as: 20 F.Supp.2d 690)

determined that § 3104(c) is coextensive with federal due process, nor does it substitute federal due process analysis for state long-arm analysis. As then-chancellor William T. Allen stated in *Red Sail Easter Partners v. Radio City Music Hall Productions*, 1991 WL 129174, at *3 (Del.Ch. July 10, 1991), the Supreme Court did not intend in LaNuova to direct the trial court to ignore the specific words of Section 3104 and to henceforth analyze all questions arising under Section 3104 only in the broad terms of fundamental fairness that guide determination of the constitutional question. The Supreme Court commands that this statute be given a liberal construction so that its purpose is achieved, but it has not directed that the application of statutory words to the facts be slighted.

In *Hercules, Inc. v. Leu Trust & Banking (Bahamas) Ltd.*, 611 A.2d 476 (Del.1992), the Delaware Supreme Court stated that the two steps of jurisdictional analysis are "independent"*695 and that the first step involves "an application of the language of the long arm statute while the second step involves issues of constitutional dimensions." 611 A.2d at 483. Likewise, Delaware Superior Court stated that "[w]hen qualifying language is used [in § 3104(c) ], the Court should not ignore that language out of a desire to afford maximum jurisdictional coverage." *Ramada Inns v. Drinkha*, No. Civ. A. 83C-AU-56, 1984 WL 247023 at *2 (Del.Super.Ct. May 17, 1984). Therefore, the court must consider the specific requirements of the Delaware long-arm statute before going on to the constitutional issues.

### A. Does the Delaware Long-Arm Statute Authorize the Court to Exercise Personal Jurisdiction Over SST?

The Delaware long-arm statute states in relevant part that:
a court may exercise personal jurisdiction over any nonresident, or a personal representative, who in person or through an agent:
(1) Transacts any business or performs any character of work or service in the State;
....
(3) Causes tortious injury in the State by an act or omission in this State;
(4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things

used or consumed in the State.
....

10 Del. C. § 3104(c)(1), (3), (4).

Intel argues that the court may find jurisdiction under these three subsections of the Delaware long-arm statute. Intel claims that SST "transacts business" in Delaware under § 3104(c)(1), that it "causes tortious injury" by acts in the State under § 3104(c)(3), and that it "regularly does or solicits business" in Delaware for purposes of § 3104(c)(4).

### 1. Does § 3104(c)(1) authorize the court to exercise jurisdiction over SST?

[3][4] State courts have interpreted subsection (c)(1), the "transacting business" provision, as a "specific" or "transactional" jurisdiction provision. *LaNuova*, 513 A.2d at 768. Specific jurisdiction requires that the plaintiff's claim arise from the defendant's activity, that there be a "nexus" between the cause of action and the conduct used as a basis for jurisdiction. *Id.* 513 A.2d at 769. Transactional jurisdiction means that jurisdiction can arise from a single transaction in the state if the relationship between the transaction and the plaintiff's cause of action is sufficiently close. In *LaNuova*, the Delaware Supreme Court found that "[w]here personal jurisdiction is asserted on a transactional basis, even a single transaction is sufficient if the claim has its origin in the asserted transaction." 513 A.2d at 768. Other courts have suggested that a defendant may engage in limited activity in the jurisdiction that does not rise to the level of a "transaction" for purposes of § 3104(c)(1). See *Moore v. Little Giant Indus., Inc.*, 513 F.Supp. 1043, 1047 (D.Del.1981) (finding that shipment of a ladder into Delaware was not sufficient); *Waters v. Deutz Corp.*, 460 A.2d 1332, 1335 (Del.Super.Ct.1983) (finding that marketing activities must be sufficiently important that defendant would perform similar operations in absence of representative). The court must conduct a fact-specific inquiry to determine whether a defendant's activities amount to "transacting business" under § 3104(c)(1).

Intel claims that SST has engaged in a number of activities in Delaware that amount to "transacting business" for purposes of § 3104(c)(1). These activities include placing advertisements in national magazines circulated to subscribers in Delaware,

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

20 F.Supp.2d 690
20 F.Supp.2d 690
**(Cite as: 20 F.Supp.2d 690)**

establishing a chain of distribution through its agents Nu Horizons and S-J Mid-Atlantic, mailing a data book to a Delaware resident, selling allegedly infringing parts to an employee of Intel's local counsel through the mail, and placing goods in the stream of commerce with the knowledge that those goods are likely to reach Delaware. The court considers these activities individually and together *696 to determine whether SST has transacted business in Delaware.

[5] Intel first claims that SST "transacts business" in Delaware for purposes of § 3104(c)(1) because it solicits business in Delaware through advertisements in national magazines. In *Thorn EMI North America, Inc. v. Micron Technology, Inc.*, 821 F.Supp. 272 (D.Del.1993), the court found that "[m]ere solicitation does not arise to transacting business." *Id.* 821 F.Supp. at 274. *See also Waters,* 460 A.2d at 1335.

However, Intel points out that *Thorn EMI* was decided before Congress amended the patent law to include "offering to sell" a patented invention under the definition of infringement. The section on infringement now reads "whoever without authority makes, uses, offers to sell, or sells any patented invention ... infringes the patent." 35 U.S.C. § 271(a) (effective January 1, 1996). Intel claims that SST's advertisements in national magazines with subscribers in Delaware constitute offers to sell the allegedly infringing products in Delaware. Intel argues that following the amendment of the patent law, offering to sell should be considered a form of doing business, or of transacting business, and should now be sufficient to satisfy the requirement of § 3104(c)(1) of the Delaware long-arm statute.

In *Thorn EMI* the court examined a defendant's use and sale of allegedly infringing products in Delaware. The court found that isolated sales do not qualify as transacting business. The court stated that a sale must be "part of a general business plan ... to solicit business in Delaware and deliver products to customers in Delaware" in order to rise to the level of transacting business. 821 F.Supp. at 274. The court also found that soliciting sales by distributing free samples could constitute "use" of an allegedly infringing product and could rise to the level of transacting business because it "tangibly impinges on the patentee's right to exclude others." *Id.* 821 F.Supp. at 275. Offering to sell an allegedly infringing product, like selling or using, must be

considered in terms of whether a defendant's acts are "part of a general business plan" and of whether they "tangibly impinge" on the plaintiff's rights. *Id.* 821 F.Supp. at 274. The court also found that "an act must be directed at residents of the state of Delaware and the protection of its laws,"821 F.Supp. at 274, citing *Sears,* 744 F.Supp. at 1292, in order to meet the transacting business requirement of § 3104(c)(1).

One of the few cases finding jurisdiction under the "offers to sell" provision is *Lifting Technologies, Inc. v. Dixon Industries, Inc.,* 1996 WL 653391 (D.Mont. Aug. 27, 1996). In *Lifting Technologies,* advertisements for allegedly infringing products reached six of plaintiff's customers in Montana. The defendant also sent a direct solicitation, including a price quote, to a Montana resident. *Id.* at *1. Intel has not shown that SST's advertisements have reached any current Intel customers in Delaware. Intel has not even alleged facts to show that potential customers for SST parts exist in Delaware, or that they have been exposed to SST's advertisements. SST has not distributed any free samples in Delaware, nor have SST's solicitations in Delaware been shown to have had any tangible effect on Intel's sales here. SST has directed its advertisements at a national audience, but SST has not specifically directed its advertisements at residents of Delaware. SST's advertisements in national magazines, without any more substantial act directed at Delaware, are not offers to sell allegedly infringing products in Delaware under 35 U.S.C. § 271(a). Even if the advertisements are considered as offers to sell, they do not rise to the level of transacting business in Delaware under § 3104(c)(1).

[6] Intel also claims that the sales and marketing activities of SST's agents, S-J Mid-Atlantic and Nu Horizons, amount to "transacting business" in Delaware for purposes of § 3104(c)(1). Merely assigning the Delaware market to a sales representative, even considered in conjunction with SST's other activities, is not "part of a general business plan." *Thorn EMI,* 821 F.Supp. at 274. The fact that Delaware is one of thirty-four states assigned to sales representatives does not appear to have any tangible effect on Intel's rights in Delaware. SST's sales representative, S-J Mid-Atlantic, is contractually obligated to pursue sales of SST products*697 in the territory including Delaware. Employees of S-J Mid-Atlantic have visited customers in Delaware on behalf of various manufacturers, but they have never solicited business on behalf of SST in Delaware. Intel presents no facts

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

20 F.Supp.2d 690
20 F.Supp.2d 690
(Cite as: 20 F.Supp.2d 690)

to show that SST's marketing efforts have cost Intel any sales in Delaware or had any tangible effect in Delaware. The acts of Intel's agents, like Intel's national magazine advertisements, do not rise to the level of transacting business under Delaware law. Therefore, the court finds that the sales and marketing activities of SST's agents targeting Delaware do not amount to transacting business in Delaware and do not give rise to jurisdiction under § 3104(c)(1) of the Delaware long-arm statute.

[7] Intel also alleges that S-J Mid-Atlantic transacted business in Delaware for purposes of § 3104(c)(1) when it sent a data book to a Delaware resident. Intel cites *Crystal Semiconductor Corp. v. OPTI Inc.*, 1997 WL 798357, at *4-*5 (W.D.Tex. July 14, 1997), for the proposition that mailing a single price quote into a state is sufficient to sustain jurisdiction. In *Crystal Semiconductor* the court analyzed defendant's conduct under the Texas long-arm statute, which it found was "co-extensive with the limits of due process." *Id.* at *2. The court found that a price quote specifying price and delivery terms made to a prospective customer was a "substantial, affirmative act," *id.* at *5, and was "sufficiently egregious in its impact on the forum's legitimate interest," *id.*, to meet the requirements of due process. Here, SST's data book contained no prices or delivery terms and it is unclear whether SST or S-J Mid-Atlantic regarded the recipient of the data book as a prospective customer. Even if S-J Mid-Atlantic's shipment of the data book into Delaware is analogous to the price quote in *Crystal Semiconductor,* this court conducts its inquiry under the Delaware long-arm statute, not merely under due process. The shipment of SST's data book into Delaware was not "part of a general business plan" and did not "tangibly impinge" on Intel's rights. *Thorn EMI,* 821 F.Supp. at 274. Therefore, it does not amount to "transacting business" for purposes of § 3104(c)(1).

[8] Intel also claims that SST "transacted business" in Delaware for purposes of § 3104(c)(1) when it made a sale to Intel's local counsel as a result of a telephone order placed by an employee in Delaware. In *Thorn EMI,* the court found that a single "isolated shipment of goods into Delaware" is not sufficient to constitute "transacting business" under § 3104(c)(1). 821 F.Supp. at 274. Even if a sufficient nexus exists between this sale and Intel's cause of action, several courts have found that a single transaction initiated by a plaintiff after the filing of a complaint is not sufficient to establish jurisdiction. In *DeSantis v.*

*Hafner Creations, Inc.,* 949 F.Supp. 419 (E.D.Va.1996), a paralegal employed by plaintiff's counsel ordered a waist pack holster, used for carrying a handgun, from alleged infringer Hafner by telephone. The court there suggested that "a plaintiff to whom a cause of action has accrued may not thereafter initiate a transaction for the sole purpose of creating jurisdiction." *Id.* 949 F.Supp. at 425. The court cannot base jurisdiction on events that occurred after the filing of Intel's complaint. See *Farmers Ins. Exchange v. Portage La Prairie Mutual Ins. Co.,* 907 F.2d 911, 913 (9th Cir.1990), *Crystal Semiconductor* 1997 WL 798357, at *4. *Compare Beverly Hills Fan Co. v. Royal Sovereign Corp.,* 21 F.3d 1558, 1563 (Fed.Cir.1994) (allowing plaintiff to introduce a survey showing actual presence of 52 accused fans in the jurisdiction). Intel's purchase of parts from SST's distributor shows that SST has the capability to make sales in Delaware. It does not show that SST has made any other sales in Delaware, that this sale is "part of a general business plan," *Thorn EMI,* 821 F.Supp. at 274, or that SST has "tangibly impinged," *id.,* upon Intel's rights in Delaware. Taken alone or with SST's other sales and marketing activity, SST's sale of parts to Intel's local counsel does not amount to transacting business in Delaware.

[9] Intel also claims that SST is transacting business in Delaware for purposes of § 3104(c)(1) indirectly through the "stream of commerce" because SST parts are incorporated into its customers' products and those *698 products are sold here. See *Asahi Metal Indus. Co. v. Superior Court of Cal.,* 480 U.S. 102, 110, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). In *Asahi* the Court was able to discuss jurisdiction only after finding that the "stream of commerce eventually brought some valves *Asahi* sold ... into California." 480 U.S. at 110-111, 107 S.Ct. 1026. The actual presence of a manufacturer's product in the forum is a prerequisite for stream of commerce jurisdiction. See *Max Daetwyler,* 762 F.2d at 299 (reviewing stream of commerce cases in which actual sales occurred in the forum). Intel asks the court to grant it a reasonable presumption that allegedly infringing SST parts are actually present through the stream of commerce in Delaware.

Intel is entitled to have all reasonable inferences drawn in its favor, but it must present the court with facts on which to base its inference. When a 12(b)(2) motion to dismiss is made after discovery has begun, the burden is on the nonmoving party to respond with "sworn affidavits or other competent evidence." *Time*

20 F.Supp.2d 690
20 F.Supp.2d 690
(Cite as: 20 F.Supp.2d 690)

Page 9

*Share Vacation Club v. Atlantic Resorts, Ltd.,* 735 F.2d 61, 66 n. 9 (3d Cir.1984). Intel need not establish jurisdiction through undisputed facts, but it must allege specific facts in the record sufficient to support a *prima facie* case for jurisdiction. See *Joint Stock Society v. Heublein, Inc.,* 936 F.Supp. 177, 193 (D.Del.1996) (stating that nonmoving party must "establish with reasonable particularity"its case for jurisdiction). The court will accept Intel's proffered evidence and uncontroverted allegations as true and will draw all reasonable inferences in favor of Intel as the nonmoving party. See *Joint Stock,* 936 F.Supp. at 193;*see also Beverly Hills Fan,* 21 F.3d at 1563.

Intel has apparently conducted very little discovery to determine whether SST parts are actually present in Delaware, nor has it made any independent investigation into the issue. Intel has made no factual allegations that would suffice to establish a *prima facie* case of jurisdiction based on any stream of commerce theory. See *Asahi,* 480 U.S. 102, 121, 107 S.Ct. 1026, 94 L.Ed.2d 92 (Stevens, J., dissenting) (arguing that a "regular course of dealing" may be sufficient where product is present in forum); *see also Crystal Semiconductor,* 1997 WL 798357 at *4 (finding plaintiff failed to allege facts sufficient to make a *prima facie* showing of jurisdiction). Intel is entitled to have disputed facts resolved and reasonable inferences drawn in its favor, but Intel has provided no facts on which this court might base such an inference. As Intel has failed to set out specific facts on the record indicating that allegedly infringing SST parts are actually present in the District of Delaware, the court must conclude that there is no factual basis for finding that SST has transacted business in Delaware indirectly through the stream of commerce. Consequently, the court finds that SST has not transacted any business in Delaware and should not be subject to the reach of § 3104(c)(1) of the Delaware long-arm statute.

*2. Does § 3104(c)(3) authorize the court to exercise jurisdiction over SST?*

[10] Intel also argues that SST should be subject to jurisdiction in Delaware under § 3104(c)(3) of the Delaware long-arm statute. Section 3104(c)(3) provides for jurisdiction over persons causing "tortious injury in the State by an act or omission in this State." 10 Del. C. § 3104(c)(3). This subsection, like § 3104(c)(1), is a specific jurisdiction provision. It allows jurisdiction to be based on a single act having a sufficient relationship to the plaintiff's cause

of action. Intel says that if SST transacts business in Delaware by means of its infringing offers to sell, it has performed an act causing tortious injury in Delaware.

The court has already found that SST has not transacted any business in Delaware. Nor is the act of placing advertisements in magazines that are distributed to Delaware residents an act in Delaware. Under § 3104(c)(3), "the defendant, or an agent of the defendant, must be present in Delaware when the deed is done." *Joint Stock,* 936 F.Supp. at 193. The placement of advertisements in national magazines is an act performed outside of the jurisdiction, and so does not provide specific jurisdiction under § 3104(c)(3). See *699Sears, Roebuck & Co. v. Sears plc,* 744 F.Supp. 1289, 1294 (D.De.1990) (finding no presence in Delaware for purposes of § 3104(c)(3) when advertisements were placed in magazines in London); *DeSantis,* 949 F.Supp. at 419 (finding no presence in Virginia under a similar long-arm statute). The court finds that SST has not performed any act in Delaware causing tortious injury in Delaware, either directly or through its agents, and so is not subject to jurisdiction under 10 Del. C. § 3104(c)(3).

*3. Does § 3104(c)(4) authorize the court to exercise jurisdiction over SST?*

[11] Intel argues that SST should be subject to the reach of § 3104(c)(4) of the Delaware long-arm statute because SST "regularly does or solicits business" in Delaware. This subsection has been interpreted as conferring general jurisdiction where a defendant's contacts with the forum state are unrelated to the alleged injury. See *Boone,* 1997 Del.Super. LEXIS 483, at *7 (Sept. 4, 1997) (stating that general jurisdiction "is based on the relationship between the forum and one of the parties"). In *Sears* the court found that "[i]n order to assert general jurisdiction, the defendant's activity in the forum mut be continuous and substantial." 744 F.Supp. at 1304. The court in *Sears* found that cases of general jurisdiction were extremely rare, citing only one case dating back to 1952 where the United States Supreme Court upheld jurisdiction based on a claim not related to the defendant's activities in the forum. *Id.,* citing *Perkins v. Benguet Consol. Mining Co.,* 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952).

SST through its agents S-J Mid-Atlantic and Nu-Horizons makes its products available in a territory

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

20 F.Supp.2d 690
20 F.Supp.2d 690
(Cite as: 20 F.Supp.2d 690)

Page 10

that includes Delaware. Intel contends that the existence of this channel of distribution amounts to "regularly soliciting business" in Delaware for purposes of § 3104(c)(4). The mere ability to respond to potential customer orders and inquiries does not constitute a regular course of conduct in the forum. SST's distributor Nu-Horizons has had no contacts with Delaware other than the single shipment of goods to Intel's local counsel and the shipment of a data book to a Delaware resident. The court has already found that these acts do not amount to transacting business in Delaware. These meager contacts can hardly be considered "continuous and substantial," *Sears,* 744 F.Supp. at 1304, for purposes of establishing general jurisdiction under § 3104(c)(4).

The same analysis applies to SST's advertisements in national magazines. In *Gerber v. Young,* 1987 WL 9670 (Del.Super. Apr. 6, 1987), the court found that a "pattern of regular solicitation" was required to show that advertising could satisfy the requirement of § 3104(c)(4). *Id.* at *2. In *Gerber* defendant Winter Place Stud Farm, Inc. used direct mail sent to Delaware residents and flyers posted at a Delaware racetrack as well as advertisements in national magazines which circulated to Delaware subscribers. *Id.* The court there found that Winter Place's conduct met the requirements of § 3104(c)(4), though it still did not meet the requirements of due process. *Id.; see also Lord & Burnham Corp. v. Four Seasons Solar Prods. Corp.,* 1984 WL 8233 at *3 (Del.Ch. Aug. 28, 1984) (finding that dealer newsletters, ad slicks, and brochures sold to dealers in Delaware satisfied § 3104(c)(4)). Here SST has done no advertising in Delaware other than through national magazines. SST has not specifically targeted Delaware residents through direct mail, flyers, or brochures. Intel has not cited, nor can the court find, any case showing that advertising in national magazines alone is sufficient to establish a "pattern of regular solicitation" or "continuous and substantial" activity within the forum. *Gerber,* 1987 WL 9670 at *2;*Sears,* 744 F.Supp. at 1304. Therefore, SST does not "regularly do or solicit business" in Delaware and is not subject to jurisdiction under 10 Del. C. § 3104(c)(4).

Neither § 3104(c)(1) nor § 3104(c)(3) nor § 3104(c)(4) of the Delaware long-arm statute authorizes this court to exercise jurisdiction over SST. Therefore, the court need not analyze whether exercising such jurisdiction would comport with the Due Process Clause.

The court will issue an Order in accordance with this Memorandum Opinion.

D.Del.,1998.
Intel Corp. v. Silicon Storage Technology, Inc.
20 F.Supp.2d 690

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

STATE OF NORTH CAROLINA

COUNTY OF MECKLENBURG

DECLARATION

    I, RICHARD ADMANI, the Chief Operating Officer of Diagnostic Devices, Inc., being authorized to give this Verification, declare under penalty of perjury, that I have read the foregoing Responses to Plaintiffs' First Set of Interrogatories, and such Responses are true and correct based on my personal knowledge and/or on information available to me.

    Executed on this _28_ day of February, 2008.

Richard Admani

CLT 1103829v1

13

# EXHIBIT
# H

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROCHE DIAGNOSTICS OPERATIONS INC. and CORANGE INTERNATIONAL LTD., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| ABBOTT DIABETES CARE, INC., ABBOTT DIABETES CARE SALES CORP., BAYER HEALTHCARE LLC, DIAGNOSTIC DEVICES INC., LIFESCAN INC., and NOVA BIOMEDICAL CORP., | ) ) ) ) ) | C.A. No. 07-753-JJF |
| Defendants. | ) ) | |

### ROCHE'S NOTICE OF DEPOSITION TO
### DIAGNOSTIC DEVICES INC. PURSUANT TO RULE 30(b)(6)

PLEASE TAKE NOTICE that pursuant to Rule 30(b)(6) of the Federal Rules of Civil

Procedure, Plaintiffs Roche Diagnostics Operations Inc. and Corange International Ltd. (referred

to collectively as "Roche") shall take the deposition of Defendant Diagnostic Devices Inc.

("DDI") through the person(s) designated by DDI to testify on its behalf with respect to the

subjects set forth in Exhibit A. The deposition will commence at 9:00 a.m. on March 13, 2008 at

the offices of Parker Poe Adams & Bernstein LLP, 3 Wachovia Center, Ste. 3000, 401 S. Tryon

St., Charlotte, North Carolina 28202 or at a time and place to be mutually agreed upon by

counsel. The deposition will be recorded by stenographic means, may be videotaped, and will

take place before a Notary Public or other officer duly authorized to administer oaths and will

continue from day to day until concluded.

You are invited to attend and cross-examine.

OF COUNSEL:

Daniel A. Boehnen
Grantland G. Drutchas
Gary E. Hood
Nicole A. Keenan
Paula S. Fritsch
Sherri L. Oslick
Jeffrey P. Armstrong
McDonnell Boehnen Hulbert & Berghoff LLP
300 South Wacker Drive
Chicago, IL 60606
(312) 913-0001

Dated: March 6, 2008
853365

POTTER ANDERSON & CORROON LLP

By: _____
        Philip A. Rovner (#3215)
        Hercules Plaza
        P.O. Box 951
        Wilmington, DE 19899-0951
        (302) 984-6000
        provner@potteranderson.com

*Attorney for Plaintiffs*
*Roche Diagnostics Operations, Inc., and*
*Corange International Limited*

2

## EXHIBIT A

In the following subjects:

1.    The terms "Plaintiff" and "Roche" shall mean the Plaintiffs in this lawsuit, Roche

Diagnostics Operations Inc. and Corange International Ltd.; any company name under which

Roche  is doing business; and its predecessors, parents, subsidiaries, divisions, directors, officers,

employees, agents, distributors, salespersons, sales representatives, and attorneys, and each person

acting or purporting to act on its or their behalf or under its or their control.

2.    The terms "Defendant" and "DDI," shall mean Diagnostic Devices, Inc. (present at

9300 Harris Corners Parkway Suite 450, Charlotte, NC 28269, and possibly other addresses); any

company name under which DDI is doing business; and its predecessors, parents, subsidiaries,

divisions, licensees, franchisees, assigns or other related business entities, as well as directors,

officers, employees, agents, distributors, jobbers, salespersons, sales representatives, and each

person acting or purporting to act on its or their behalf or under its or their control.

3.    The term "TaiDoc" shall mean TaiDoc Technology Corp. (present at 6F, No. 127,

Wugong 2nd Rd. Wugu, Taipei County 248, Taiwan, and possibly other addresses); any company

name under which TaiDoc is doing business; and its predecessors, parents, subsidiaries, divisions,

licensees, franchisees, assigns or other related business entities, as well as directors, officers,

employees, agents, distributors, jobbers, salespersons, sales representatives, and each person acting

or purporting to act on its or their behalf or under its or their control.

4.    "DDI Products" shall mean any product made by, distributed by, imported by,

supplied by, shipped by, sold by, or branded by DDI or TaiDoc, including but not limited to:  (1)

blood glucose products and meters, such as, for example, those sold under the following brands:

Prodigy, Prodigy Audio, Prodigy Autocode, Prodigy Duo, Prodigy Eject, Prodigy Voice, and

Case 1:07-cv-00753-JJF    Document 109-10    Filed 03/17/2008    Page 5 of 18

Prodigy Advance; (2) test strips for use with such products or meters; (3) control solutions for use with such products, meters, or test strips; and (4) software for use with such products, meters, or test strips.

5.    The terms "person" and "persons" shall mean natural persons (including, without limitation, those employed by DDI), as well as all governmental entities, agencies, officers, departments, or affiliates of any other governmental entity, legal entity, and any corporation, foundation, partnership, proprietorship, association, or other organization.

6.    The term "date" shall mean the exact day, month, and year (to the degree ascertainable) or, if not ascertainable, the best approximation (including relationship to other events).

7.    The term "document" shall mean writings, recordings and other communications reduced to physical or electronic form, including the originals and all non-identical copies, whether different from the original by reason of any notation made on such copies or otherwise (including without limitation, correspondence, memoranda, notes, e-mail, diaries, minutes, statistics, letters, telegrams, contracts, reports, studies, checks, statements, tags, labels, invoices, brochures, periodicals, receipts, returns, summaries, pamphlets, books, prospectuses, calendars, diaries, planners, interoffice and intra-office communications, offers, notations of any sort of conversations, working papers, applications, permits, surveys, indices, telephone calls, meetings, or printouts, teletypes, telefax, invoices, work sheets, and all drafts, alterations, modifications, changes and amendments of the foregoing), graphic or oral representations of any kind (including without limitation, photographs, charts, microfiche, microfilm, videotape, recordings, motion pictures, plans, drawings, surveys), and electronic, mechanical or electric records or representations of any kind (including without limitation, tapes, cassettes, discs, and recordings).

2

8.    The terms "relating to" and "referring to" shall be interpreted so as to encompass the liberal scope of discovery set forth in Federal Rule of Civil Procedure 26(b).

9.    The terms "identify" and "describe" shall mean providing, among other things:

(a)    with respect to a natural person, home and work addresses and telephone numbers, the name of the person's present (or if unknown, the last known) place of employment, date of commencement and termination (if any) of employment, job title, and description of his or her duties and responsibilities;

(b)    with respect to a corporation or other non-natural person, the full name, address, main telephone number, state of incorporation, and identity of all persons who have acted on behalf of such entity;

(c)    with respect to a document, the type of document (e.g., letter, e-mail, telex, contract, calendar, invoice, report); the number of pages; a description of the document's contents; an identification of the person(s) who prepared the document, for whom the document was prepared, who signed the document, to whom the document was delivered, mailed, or otherwise received, and to whom a copy of the document was sent or otherwise received; the date of writing, creation, or publication; identifying number(s), letter(s), or combination thereof, if any; the significance or meaning of such numbers(s), letter(s) or combination thereof; and the present location and identity of the custodian of that document. Documents to be identified shall include all documents in your possession, custody or control, documents you know or believe to have existed but are no longer existing, and other documents of which you have knowledge or information.

10.    The terms "and," "or," and "and/or" shall be construed disjunctively or conjunctively as necessary to bring within the scope of the request all responses which otherwise might be construed to be outside its scope.

11.    The terms "describe" and "state" shall mean to set forth fully and unambiguously every relevant fact of which DDI (including its agents and representatives) has knowledge or information.

12.    Any word written in the singular herein shall be construed as plural or vice versa to bring within the scope of the request all responses which otherwise might be construed to be outside its scope.

13.    "Complaint" means the Complaint filed by Roche in the United States District Court for the District of Delaware, on or about November 21, 2007.

4

**The subjects for examination at the Rule 30(b)(6) deposition shall include:**

1.       The corporate structure and background of DDI, including any related entities, and any design/engineering, manufacturing, sales, marketing, or distribution partners, agencies, or other entities who have worked with DDI.

2.       All contacts between DDI, its officers, directors, employees, distributors, sales representatives, resellers, promoters, website, purchasers and Delaware.

3.       All contacts between DDI (including its officers, directors, employees, distributors, and sales representatives) and any person or entity who is a reseller (i.e., not an end-user) of DDI products.

4.       All contacts between DDI and TaiDoc.

5.       All design, engineering, manufacturing, use, marketing, distribution, sales, offers to sell, warehousing, or importation of any DDI products in, into, or out of the state of Delaware, by any entity, including but not limited to sales of any DDI device over the Internet or providing software via the Internet.

6.       The distribution chain of DDI products from manufacture to use and final disposition, including but not limited to brick and mortar retailers, internet retailers, government purchasers, group purchase plans, pharmacies, hospitals, and any and all intermediaries.

7.       All communications between DDI and chain retailers, including chain pharmacies.

8.       All communications between DDI and Wal-Mart.

9.       All communications between DDI and managed care companies.

10.    DDI's presence at trade shows, including but not limited to the name, location, and date of the trade shows, the DDI products discussed or displayed at the trade shows, the DDI personnel present at the trade shows, and the persons or entities contacted through, during, or as a result of the trade shows.

11.    All publications, including Internet publications, in which DDI advertises or promotes DDI products, and all articles (print, video, or Internet) regarding DDI or DDI products.

12.    Any efforts to avoid sales of, distribution of, or use of DDI products in and to Delaware.

13.    An identification of DDI's blood glucose product line, including meters, test strips, software and related products.

14.    The location and manner of storage of documents responsive to Roche's document requests.

15.    The location and manner of storage of documents related to any design, engineering, manufacturing, use, marketing, distribution, sales, offers to sell, warehousing, or importation of any DDI product in or to Delaware, by any entity.

16.    All contact that DDI has had with end-use customers, including but not limited to feedback from customers that results in customer testimonials posted on the DDI website, and any information that DDI retains about such customers.

17.    All information that DDI has or maintains about the downloading of software from its website, including how often such software is downloaded, to where the software is downloaded, and what technical support DDI has offered and now offers to customers who download its software.

18.    Information about the preparation and distribution of the document attached as Exhibit C, including where and to whom it was sent.

19.    All topics covered in Roche's Interrogatories, including DDI's Responses.

20.    All topics covered in Roche's Requests for Production, including DDI's Responses and documents produced.

21.    All matters on which DDI relies to support its motion to dismiss for lack of personal jurisdiction, including all assertions therein and materials in support thereof.

## **EXHIBIT B**

### DEFINITIONS

All definitions set forth in Exhibit A above are incorporated as if set forth fully herein.

### INSTRUCTIONS

All instructions set forth in Roche's previous discovery requests are incorporated as if set forth fully herein.

### DOCUMENT REQUEST

1.      All documents that have been referred to or reviewed in preparing for this deposition or that are the source of information that the witness or DDI expects to provide in response to this deposition notice.

8

**EXHIBIT C**



**Diagnostic Devices, Inc.**
www.prodigymeter.com

Headquarters
5900-A Northwoods Business Park
Charlotte, NC 28269
phone 1-800-366-5901
fax 1-877-847-3419

*n e w s     r e l e a s e*

### Diagnostic Devices Introduces PRODIGY™ AUTOCODE –
### the world's first talking glucose meter that codes itself!

*Ideal for the visually impaired or anyone who wants the added convenience of a meter that talks and codes automatically,*
*PRODIGY AUTOCODE delivers audible readings in English or Spanish.*

Charlotte, NC - Managing diabetes through blood glucose monitoring is a challenge for many diabetics, but it is especially diffi-
cult for the thousands of patients who have lost their eyesight to complications of the disease or are visually impaired.
Recognizing the difficulties most meters present to diabetics, Diagnostic Devices developed Prodigy Audio, their first talking
meter, in early 2006. Almost immediately, they started development of a next generation meter that would provide new free-
dom and confidence for diabetics with vision problems.

PRODIGY AUTOCODE is the result. Reports Rick Admani of Diagnostic Devices, "We learned that even with audio prompts,
calibrating the meter proved to be a barrier to use by the visually impaired. So we developed a talking meter that does not
require manual coding by the user to ensure accuracy."

Recognizing that painful testing is also an impediment, PRODIGY AUTOCODE is designed for ease and comfort. Alternate site
testing permits taking blood from the arms, thighs or hands – all areas that are less painful than fingers. Only a tiny 0.6 micro-
liter blood sample is required so patients can use extra-fine gauge lancets for less pain.

Results are reported audibly and via a large visual readout in just 6 seconds. Data management includes 450-test memory with
date and time, and automatic averaging in intervals of 7, 14, 21, 28, 60 and 90 days. Data can also be downloaded to a comput-
er supported by free software available at prodigymeter.com.

PRODIGY AUTOCODE is covered by Medicare and most heath insurance plans, and it is also affordable for the uninsured.

For more information about PRODIGY meters and other health management tools from Diagnostic Devices, visit
prodigymeter.com or call 1-800-366-5901.

Contact: Jeff Cramp
Cramp+Associates, Inc.
610-649-6002

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, Philip A. Rovner, hereby certify that on March 6, 2008, the within document

was filed with the Clerk of the Court using CM/ECF which will send notification of such

filing(s) to the following; that the document was served on the following counsel as

indicated; and that the document is available for viewing and downloading from

CM/ECF.

**BY HAND DELIVERY AND E-MAIL**

Frederick L. Cottrell, III, Esq.
Anne Shea Gaza, Esq.
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, DE 19801
cottrell@rlf.com
gaza@rlf.com

Mary W. Bourke, Esq.
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 N. Orange Street
Wilmington, DE 19801
mbourke@cblh.com

Steven J. Balick, Esq.
John G. Day, Esq.
Ashby & Geddes
500 Delaware Avenue
8th Floor
P.O. Box 1150
Wilmington, DE 19899
sbalick@ashby-geddes.com
jday@ashby-geddes.com

**BY HAND DELIVERY AND E-MAIL**

John W. Shaw, Esq.
Jeffrey T. Castellano, Esq.
Young Conaway Stargatt & Taylor, LLP
1000 West Street, 17th Floor
Wilmington, DE 19801
jshaw@ycst.com
jcastellano@ycst.com

Rodger D. Smith, Esq.
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
rsmith@mnat.com

I hereby certify that on March 6, 2008 the foregoing document to the following

non-registered participants:

| | |
|---|---|
| Edward A. Mas, II, Esq. | Wesley E. Overson, Esq. |
| Stephen F. Sherry, Esq. | Rachel Krevans, Esq. |
| Kirk Vander Leest, Esq. | Jason R. Bartlett, Esq. |
| James M. Hafertepe, Esq. | Parisa Jorjani, Esq. |
| Merle S. Elliott, Esq. | Daniel P. Muino, Esq. |
| McAndrews, Held & Malloy, Ltd. | Morrison & Foerster LLP |
| 500 West Madison Street | 425 Market Street |
| 34th Floor | San Francisco, CA 94105-2482 |
| Chicago, IL 60661 | woverson@mofo.com |
| emas@mcandrews-ip.com | rkrevans@mofo.com |
| ssherry@mcandrews-ip.com | jasonbartlett@mofo.com |
| kvanderleest@mcandrews-ip.com | pjorjani@mofo.com |
| jhafertepe@mcandrews-ip.com | dmuino@mofo.com |
| melliott@mcandrews-ip.com | |

| | |
|---|---|
| Kenneth P. George, Esq. | Michael G. Adams, Esq. |
| Joseph M. Casino, Esq. | Ashley L. Ellis, Esq. |
| Amster, Rothstein & Ebenstein LLP | Parker Poe Adams & Bernstein LLP |
| 90 Park Avenue | Three Wachovia Center, Suite 3000 |
| New York, NY 10016 | 401 South Tryon Street |
| kgeorge@arelaw.com | Charlotte, NC 28202 |
| jcasino@arelaw.com | mikeadams@parkerpoe.com |
| | ashleyellis@parkerpoe.com |

Bradford J. Badke, Esq.
Sona De, Esq.
Michael Kahn, Esq.
Ropes & Gray LLP
1211 Avenue of the Americas
New York, NY 10036-8704
Jim.badke@ropesgray.com
Sona.de@ropesray.com
Michael.kahn@ropesgray.com

Philip A. Rovner (#3215)
Potter Anderson & Corroon LLP
Hercules Plaza
P.O. Box 951
Wilmington, Delaware 19899
(302) 984-6000
E-mail: provner@potteranderson.com

**Kinsman, Denise**

---

**Subject:** Activity in Case 1:07-cv-00753-JJF Roche Diagnostics Operations Inc. et al v. Abbott Diabetes Care Incorporated et al Notice to Take Deposition

---

**From:** ded_nefreply@ded.uscourts.gov [mailto:ded_nefreply@ded.uscourts.gov]
**Sent:** Thursday, March 06, 2008 8:16 PM
**To:** ded_ecf@ded.uscourts.gov
**Subject:** Activity in Case 1:07-cv-00753-JJF Roche Diagnostics Operations Inc. et al v. Abbott Diabetes Care Incorporated et al Notice to Take Deposition

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing.**

**U.S. District Court**

**District of Delaware**

### Notice of Electronic Filing

The following transaction was entered by Rovner, Philip on 3/6/2008 at 9:15 PM EST and filed on 3/6/2008

| | |
|---|---|
| **Case Name:** | Roche Diagnostics Operations Inc. et al v. Abbott Diabetes Care Incorporated et al |
| **Case Number:** | 1:07-cv-753 |
| **Filer:** | Roche Diagnostics Operations Inc. |
| | Corange International Limited |

**Document Number:** 89

**Docket Text:**
**NOTICE to Take Deposition of DIAGNOSTIC DEVICES INC. on MARCH 13, 2008 by Roche Diagnostics Operations Inc., Corange International Limited.(Rovner, Philip)**

**1:07-cv-753 Notice has been electronically mailed to:**

Matthew A. Anderson     manderson@mcandrews-ip.com

Jeffrey P. Armstrong     armstrongj@mbhb.com

Steven J. Balick     sbalick@ashby-geddes.com, dfioravanti@ashby-geddes.com, jday@ashby-geddes.com, lmaguire@ashby-geddes.com, mkipp@ashby-geddes.com, nlopez@ashby-geddes.com, rgamory@ashby-geddes.com, tlydon@ashby-geddes.com

Jason R. Bartlett     jasonbartlett@mofo.com

3/7/2008

Daniel A. Boehnen    boehnen@mbhb.com

Mary W. Bourke    mbourke@cblh.com, dhallowell@cblh.com, dkt@cblh.com, kboots@cblh.com

Joseph M. Casino    jcasino@arelaw.com

Jeffrey Thomas Castellano    jcastellano@ycst.com

Frederick L. Cottrell , III    cottrell@rlf.com

Grantland G. Drutchas    drutchas@mbhb.com

Merle S. Elliott    melliott@mcandrews-ip.com

Paula S. Fritsch    fritsch@mbhb.com

Anne Shea Gaza    gaza@rlf.com, bartell@rlf.com, garvey@rlf.com

Kenneth P. George    kgeorge@arelaw.com

James M. Hafertepe    jhafertepe@mcandrews-ip.com

Gary E. Hood    hood@mbhb.com

Parisa Jorjani    pjorjani@mofo.com

Nicole Keenan    keenan@mbhb.com

Rachel Krevans    rkrevans@mofo.com

Lauren E. Maguire    lmaguire@ashby-geddes.com

Edward A. Mas , II    emas@mcandrews-ip.com

Daniel P. Muino    DMuino@mofo.com

Sherri L. Oslick    oslick@mbhb.com

Wesley E. Overson    woverson@mofo.com

Philip A. Rovner    provner@potteranderson.com, iplitigation@potteranderson.com,
mstackel@potteranderson.com, nmcmenamin@potteranderson.com

John W. Shaw    jshaw@ycst.com, corpcal@ycst.com, corporate@ycst.com

Stephen F. Sherry    ssherry@mcandrews-ip.com

Rodger Dallery Smith , II    rdsefiling@mnat.com

Nancy Tinsley    nancy.tinsley@roche.com

3/7/2008

Kirk A. Vander Leest    kvanderleest@mcandrews-ip.com

**1:07-cv-753 Notice has been delivered by other means to:**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=3/6/2008] [FileNumber=531249-0]
[9662a72643839eee578fc7797b93f44d6c9a8beff83b8d1dfd2ee054c90f78d287314
ce902f155913c7508f234b8902555d038668d8e505588a1864ef0eb259e]]

# EXHIBIT
# I

February 28, 2008

To Whom It May Concern:

I have reviewed all warranty registrations to determine if any are located in Delaware. To date, there are none.

Thank You,

Timothy DuBois
DDI Medical Inc
9300 Harris Corners Pkwy Ste#450
Charlotte, N.C 28269
Phone# 704-285-6431

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 28th day of February, 2008.

_____
Signature

2/28/08
Date

DDI00021

# EXHIBIT
# J



PLACE
STAMP
HERE

**Diagnostic Devices, Inc.**
Warranty Card - Meter
P.O. Box 227397
Miami, FL 33122-7397 U.S.A.

Lit# 2004 Rev.0 10/05



# Prodigy

## Blood Glucose Meter

## One-Year Warranty Registration Card
Complete this warranty card and mail it promptly.

NAME

STREET ADDRESS

APT. #                    CITY

STATE        ZIP                          HOME TELEPHONE

METER SERIAL NUMBER (See label on back of meter)          DATE OF PURCHASE (Month/Day/Year)

*Diagnostic Devices, Inc.*          www.diagnosticdevicesinc.com          1-800-243-2636

## Correct Blood Sampling and Recalling Test Results

**Applying the Blood Correctly**
Hold the blood drop to the edge of the strip and the channel will automatically wick as much blood as it needs. Be sure the absorbent channel is full. Do not smear blood onto the strip or try to place blood on the top of the strip.



OK ✓

NOT OK

**Confirmation Window**
As shown in these illustrations, if the absorbent channel is not full, discard strip and repeat the test using a new test strip.

Full Channel OK

Not Full Channel NOT OK

**Recalling Test Results**
Your Meter stores the 450 most recent blood glucose test results with date and time in its memory. With the meter turned off, press the (M) Main Button twice. The 7 day average will appear, indicating that you are in the memory mode. If you continue to press the (M) Main Button, the 14, 21, 28, 60 and 90 day average will appear. You can then review the last 450 tests in the memory.

## Important Phone Numbers

*Prodigy™* Technical Support is available to answer your questions 9:00am to 5:00pm (EST) 1-800-243-2636

Healthcare Professional _____

Pharmacist _____

Diabetes Educator _____

Other _____

## Quick Reference Guide



*Prodigy®*
**Blood Glucose Monitoring System**

**DDi**
**Diagnostic Devices, Inc.**
P.O. Box 227397
Miami, Florida 33122-7397 U.S.A.
www.diagnosticdevicesinc.com

LR #2001 Rev.0 11/05

## Important User's Information

**Blood Glucose Testing**

This guide offers at-a-glance information about how to use your *Prodigy™* Blood Glucose Monitoring System. It is recommended that you read the entire *Prodigy™* User's Manual before using the System.

**Important Information When Testing**

When using the *Prodigy™* Blood Glucose Monitoring System, please follow these recommendations.

• Before and after getting blood samples or using the system, wash your hands and the intended sample site with soap and warm water. Rinse and dry thoroughly.

• Use only fresh capillary blood samples for testing.

• A lancet should be used only one time. DO NOT reuse lancets.

• Always use a new sterile lancet and keep the lancing device clean.

Note: For meter model No. 51720, you will hear voice messages.

## Coding Your Meter

*Please code the meter before using it for first time and every time you change to another vial of Prodigy™ Test Strips.*

**Step 1**

Enter the Code Mode

Start with the meter turned off. Press the Code Button. The Code symbol and "SEt" will display on the LCD screen, followed by the code number, with the number blinking.



**Step 2**

Match the Code Numbers

Compare the Code number on the meter display to the code number on the test strip vial, if the two code numbers match, your meter is properly coded. Press the (M) button to turn off the meter, if the two code numbers do not match, follow step 3.



**Step 3**

Code the Meter

Press and release the Code Button repeatedly until the code number on the display matches the code number on the strip vial. Now your meter is coded, press the (M) button to turn off your meter.



## Blood Glucose Testing

**Step 1**

Insert a new test strip into the meter every time you test. The meter turns on automatically and will display "CH" with the strip symbol. The meter will perform several self-checks then will display the CODE number.

Note: For meter model No. 51720, you will hear the CODE number.



**Step 2**

Apply the blood sample when the "●" symbol appears on the meter. Touch and hold the drop of blood to the strip absorbent channel until the confirmation window is completely filled and the meter beeps and starts counting down.




**Step 3**

Accurate test results in 6 seconds.

Note: For meter model No. 51720, you will hear your test result message.





Distributed by:



**Diagnostic Devices, Inc.**
P.O. Box 227397
Miami, FL 33122-7397 U.S.A.
TEL: 1-800-243-2636
FAX: 1-877-847-3419
www.diagnosticdevicesinc.com