**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| ROCHE DIAGNOSTICS OPERATIONS INC. and CORANGE INTERNATIONAL LIMITED, | ) )  ) |
| Plaintiffs, | ) ) |
| v. | )  ) C.A. No. 07-753-JJF |
| ABBOTT DIABETES CARE, INCORPORATED, ABBOTT DIABETES CARE SALES CORPORATION, BAYER HEALTHCARE LLC, DIAGNOSTIC DEVICES INC., LIFESCAN INCORPORATED, and NOVA BIOMEDICAL CORPORATION, | ) ) ) ) ) ) |
| Defendants. | ) ) |

**DIAGNOSTIC DEVICES, INC.'S COMBINED: (i) REPLY BRIEF IN SUPPORT OF ITS MOTION FOR PROTECTIVE ORDER, AND (ii) ANSWERING BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL**

ASHBY & GEDDES
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
302-654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Defendant Diagnostic Devices, Inc.*

*Of Counsel:*

Michael G. Adams
Ashley L. Ellis
Morgan H. Rogers
Parker Poe Adams & Bernstein LLP
Three Wachovia Center, Suite 3000
401 South Tryon Street
Charlotte, North Carolina 28202
704-372-9000

Dated: April 4, 2008

## <u>TABLE OF CONTENTS</u>

ADDITIONAL FACTS ................................................................................................1

ARGUMENT ..........................................................................................................3

     A.     Roche fails to make a prima facie showing of an "established
           distribution channel" that would warrant broad discovery into all
           of DDI's distributors ................................................................................4

     B.     Roche, a global leader in diagnostics, is using its discovery tactics
           to harass DDI in what appears to be an attempt to put DDI, a small
           North Carolina competitor, out of business ............................................5

     C.     The additional discovery sought by Roche is not relevant to
           jurisdiction over DDI in Delaware and is therefore unduly
           burdensome and oppressive .......................................................................8

           1.     Roche's demands for DDI's marketing, sales and other
                  contacts outside of Delaware ......................................................10

           2.     Roche's demands for third-party information regarding
                  DDI's passive website ................................................................11

           3.     Roche's overbroad and burdensome requests for phone
                  records ........................................................................................12

           4.     Roche's demands for information regarding other nonparties ...................12

CONCLUSION ..........................................................................................................13

## TABLE OF CITATION

### FEDERAL CASES

*Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558 (Fed. Cir. 1994) ........................7

*Blue Ball Props., Inc. v. McClain*, 658 F.Supp. 1310, 1318-19 (D. Del. 1987) .........................15

*Cochran Consulting, Inc. v. Uwatec USA, Inc.*, 102 F.3d 1224, 1229 (Fed. Cir. 1996) ...........14

*Commissariat à L'Énergie Atomique v. Chi Mei Optoelectronics Corp.*,
395 F.3d 1315 (Fed. Cir. 2005).................................................................................11, 12

*Espeed, Inc. v. Brokertec USA, LLC*, 2004 WL 2346137 (D. Del. 2007) ...........................11, 15

*Hanson v. Neumueller*, 163 F.R.D. 471 (D. Del. 1995).................................................................9

*Intel Corp. v. Silicon Storage Tech, Inc.*, 20 F. Supp. 2d 690 (D. Del. 1998).......................8, 13

*Jazz Photo Corp. v. U.S.*, 439 F.3d 1344 (Fed. Cir. 2006) ......................................................10

*Maynard v. Philadelphia Cervical Collar Co., Inc.*, 18 Fed. Appx. 814 (Fed. Cir. 2001).....6, 15

*Red Wing Shoe Co., Inc. v. Hockerson*, 148 F.3d 1355 (Fed. Cir. 1998) ....................................8

*Tracinda Corp. v. Daimlerchrysler AG*, 197 F.Supp. 2d 86 (D. Del. 2002) ................................9

*Tristrata Tech. v. Emulgen Lab., Inc.*, __ F. Supp. 2d. __, 2008 WL 508600 (D. Del. 2008) ...13

### FEDERAL STATUTES

Delaware long-arm statute, § 3104(c)(3) ................................................................................8, 13

Plaintiffs Roche Diagnostics Operations, Inc. and Corange International Limited's (collectively, "Roche") Motion to Compel additional responses to discovery from Diagnostic Devices, Inc. ("DDI") should be denied, and DDI's Motion for Protective order granted, because:

a. Roche fails to make any prima facie showing of an "established distribution channel" or any other basis for personal jurisdiction that would warrant such broad discovery, despite the fact that Roche has issued twenty third-party subpoenas;

b. Roche, a global leader in diagnostics, is using its discovery tactics to harass DDI in what appears to be an attempt to put DDI, a small North Carolina competitor, out of business; and

c. The additional discovery sought by Roche is not relevant to the issue of jurisdiction over DDI in Delaware for this action and is therefore unduly burdensome and oppressive.

## ADDITIONAL FACTS

The procedural background relevant to this motion is laid out in DDI's Motion for Protective Order, D.I. 97, which was filed on March 12, 2008.    After DDI filed its Motion for Protective Order, Roche issued twenty third-party subpoenas, of which six went to DDI distributors and the remainder went to unrelated third parties. (See Declaration of Rick Admani, attached hereto as Exhibit O.[1]) All of the subpoenas requested the same type of documents and topics of deposition testimony.  (As an example, a subpoena issued by Roche to LS&S, LLC is attached hereto as Exhibit P.)  The subpoenas issued by Roche reflect the same overbroad discovery sought by Roche from DDI.  Roche noticed the multiple third-party depositions for locations throughout the country, many of them on the same day.  See D.I. 98-106, 112-122.

---

[1] DDI will identify its new exhibits from where Roche left off in its Answering Brief to DDI's Motion for Protective Order.  Where possible, DDI will refer to exhibits already filed rather than reattaching them.

Roche later cancelled these depositions and DDI can only presume that it did so because it could not find evidence worth pursuing from its twenty subpoenas.

Roche filed its motion to compel on March 17, 2008, D.I. 109, requesting that this court require DDI to more fully respond to all of Roche's forty-six document requests, nine interrogatories, and five deposition notices[2] (the "Discovery Requests"). Roche's Discovery Requests are overbroad and unduly burdensome because they seek discovery into every aspect of DDI's business, no matter how irrelevant. Specifically, the requests seek: (a) information on DDI's contacts outside of and unrelated to Delaware; (b) information related to entities other than DDI; and (c) information which is not relevant to jurisdiction over DDI in Delaware, but rather goes to the merits of this action. Plaintiffs rely on the "stream of commerce" theory for personal jurisdiction, yet they have failed to make a prima facie showing of an established distribution channel – despite receiving DDI's discovery responses and issuing twenty subpoenas.

On March 31, 2008, Roche served its responses to DDI's First Set of Interrogatories. A copy of Roche's Responses to DDI's First Set of Interrogatories is attached as Exhibit Q. In its interrogatory responses, Roche admits that the only in-store purchase of DDI's products in Delaware that Roche is aware of was made by Roche after the Complaint was filed by placing a special order with the store, because the product was not kept in stock at the store. *See* Roche's Response to Int. 1, at Exhibit Q. Every other purchase Roche claims to have made "in Delaware" was made over the Internet through a third-party website initiated by Roche's counsel's secretary after the Complaint was filed. *See* Roche's Response to Int. 3, at Exhibit Q. ***Roche has not provided any evidence that any DDI products are actually located in Delaware,***

---

[2] The Discovery Requests were filed with Roche's Motion to Compel as Exhibits A, B and C. Where possible, DDI will refer to the exhibits already filed.

***other than those which were brought into Delaware by Roche.*** Given that Roche is a $46 billion dollar, multi-national company, with multiple attorneys working on this matter who have made the effort to issue twenty subpoenas, DDI assumes that Roche has made substantial efforts to find DDI's products in the state of Delaware and yet has been unsuccessful. When DDI requested information regarding Roche's efforts, it refused to provide such information to DDI. *See* Roche's Response to Int. 2, at Exhibit Q.

## ARGUMENT

As stated in DDI's Motion for Protective Order, Roche's Discovery Requests essentially ask for every single document in DDI's possession and the identity of every single distributor with whom DDI may have had contact. The key issue in both motions is not whether Roche should get discovery from DDI, but is ***how much discovery is enough?*** 500 depositions? The production of every one of DDI's documents? Roche, an international $46 billion dollar corporation[3], seeks such excessive information for the purpose of harassing a much smaller competitor, likely with the goal of putting DDI out of business – which Roche's discovery may in fact do. Rule 26(c), along with other limitations[4] in the Federal Rules of Civil Procedure, were put in place to protect parties from exactly this type of overreaching

Such broad discovery should not be permitted where, as shown below, "there is no reasonable basis to expect that discovery would reveal contacts sufficient to meet the due process requirements to support jurisdiction." *Maynard v. Philadelphia Cervical Collar Co., Inc.*, 18 Fed. Appx. 814, 817 (Fed. Cir. 2001) (a copy of which is attached as Exhibit R).

---

[3] *See* http://www.roche.com/home/figures/fig_annualresults_2007/fig_annualres_letter_2007.htm

[4] These limitations include the limitation of ten depositions under Rule 30, which Roche has already potentially violated by issuing 24 deposition notices.

### A. Roche fails to make a prima facie showing of an "established distribution channel" that would warrant broad discovery into all of DDI's distributors.

Roche has provided no evidence that DDI has made, used, or sold infringing devices within Delaware or that DDI has an established distribution channel into Delaware. Roche heavily relies on *Beverly Hills Fan* for the proposition it should be entitled to all information about every single distributor of DDI. *See Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558 (Fed. Cir. 1994). However, the instant case is distinguishable from *Beverly Hills Fan* on several important bases:

(1) unlike the plaintiff in *Beverly Hills Fan*, which had evidence of 52 of the accused fans located in the forum, Roche has not shown that any of DDI's products are located in Delaware, other than products Roche brought into the state;

(2) Roche has not identified a single distributor who is bringing DDI's products into Delaware for sale on an "ongoing" and "intentional" basis;

(3) when DDI placed its product into the stream of commerce, it did not know the "likely destination" of the product would be Delaware (See Admani Dec. at <u>Exhibit O</u>; see also <u>Exhibit G</u> to DDI's Motion stating that DDI has no records of warranty registrations in Delaware); and

(4) DDI's "connections" with Delaware are not such that it should reasonably anticipate being haled into court here – because, again, DDI has no reason to believe any of its products are in Delaware.

In the present case, there is no allegation or evidence of jurisdiction through the *ongoing* or *intentional* sale of allegedly infringing products through an intermediary into Delaware. To date, Roche has only produced <u>one</u> instance of an alleged sale of a DDI infringing product in Delaware at a Shop-Rite store, which Roche admits was <u>not</u> in stock the store and had to be special ordered. *See* Plaintiff's Response to DDI's Interrogatory No. 1 attached as <u>Exhibit Q</u>.

Roche has not provided any evidence that DDI's product are even in stock at brick-and-mortar stores anywhere in Delaware.  Every other purchase relied on by Roche (all made by plaintiff's counsel's secretary after the complaint was filed) has been over the Internet through mass retailers such as Amazon.com or Americandiabeteswholesale.com.  *See* Plaintiff's Response to DDI's Interrogatory No. 3 attached as <u>Exhibit Q</u>.

DDI has not directed any products to Delaware.  Roche cannot manufacture jurisdiction by searching for products on a mass retailer website and ordering them into the forum.  The District of Delaware has specifically addressed this situation in *Intel Corp. v. Silicon Storage Tech, Inc.*, stating, "The mere ability to respond to potential customer orders and inquiries does not constitute a regular course of conduct in the forum."  20 F. Supp. 2d 690, 699 (D. Del. 1998) (finding that a single shipment of goods to Intel's local counsel is not sufficient to confer jurisdiction under the Delaware long-arm statute); *see also Red Wing Shoe Co., Inc. v. Hockerso*n, 148 F.3d 1355, 1359 (Fed. Cir. 1998) (stating that "'Random,' 'fortuitous', or 'attenuated' contacts do not count in the minimum contacts calculus. Similarly, ***contacts resulting from the 'unilateral activity' of others do not count***"); *Maynard, supra,* 18 Fed. Appx. 814 (holding that plaintiff's purchase of the alleged infringing product in the forum from a third-party distributor where plaintiff initiated the sale himself is not sufficient to show personal jurisdiction).

**B. Roche, a global leader in diagnostics, is using its discovery tactics to harass DDI in what appears to be an attempt to put DDI, a small North Carolina competitor, out of business.**

Despite its failure to make a prima facie showing of jurisdiction over DDI, Roche seeks discovery that would be unduly burdensome to DDI, a much smaller corporation, including: (i) all of DDI's sales of all of its products nationwide, (ii) DDI's contacts in states other than

Delaware, (iii) the business information of entities other than DDI, and (iv) information that goes to the merits of the lawsuit.  These demands are contrary to the law in this District.  *See Hanson v. Neumueller*, 163 F.R.D. 471, 474-76  (D. Del. 1995) (requiring that plaintiff provide some showing of personal jurisdiction to proceed with *limited discovery* on that *narrow issue* and stating, "***It would be inappropriate for this court to allow plaintiff to conduct a fishing expedition in order to construct a basis for jurisdiction***") (emphasis added); *Tracinda Corp. v. Daimlerchrysler AG*, 197 F.Supp. 2d 86, 94 (D. Del. 2002) ("The court may allow the plaintiff to take *jurisdictional* discovery, *if* the plaintiff has made a colorable or prima facie showing of personal jurisdiction") (emphasis added).

As DDI has repeatedly informed Roche, DDI does not have any distributors in Delaware, does not have any contracts with distributors to sell its products in Delaware, and is not aware that any of its distributors are selling or offering for sale any of DDI's products in Delaware.  (*See* Admani Declarations, D.I. 46, ¶ 5 and Exhibit O; Response to Int. Nos. 2 and 15 at Exhibit D to DDI's Motion.)  DDI has no ability to control where its customers ship products and does not receive reports from its customers regarding their shipments.  (Admani Dec., ¶ 7, at Exhibit O.)  DDI has searched it warranty registrations and does not have any warranties registered in Delaware, which is the only way for DDI to determine where the end users of DDI's products are located.  (*See* Declaration of Timothy DuBois, at Exhibit G to DDI's Motion.)  Accordingly, DDI has no reason to believe that any of its customers are selling products in Delaware and should not be required to divulge the names of all of its customers to a competitor on the small possibility that one of its customers has sold a product in Delaware – which would not establish personal jurisdiction anyway.

Despite the information DDI has given Roche regarding its lack of Delaware contacts, Roche issued twenty subpoenas over a span of just a few weeks to third-party retailers who appear to sell DDI's products over the Internet. Yet, even after the issuance of the twenty subpoenas, Roche is unable to provide <u>any</u> evidence to DDI or this Court that <u>any</u> of these third-parties are part of an "established distribution channel" into Delaware. Rather, it appears that <u>none</u> of these third-parties provided Roche with information showing jurisdiction, and were not worth pursuing in a deposition. In fact, most of the third-parties that DDI's counsel spoke with stated that they had little (up to only $30) to no sales in Delaware. *See* the Declaration of John Bace from LS&S, LLC attached hereto as <u>Exhibit S</u>, stating that LS&S, a DDI distributor, has never sold DDI products in Delaware, and that DDI has never asked LS&S to sell into Delaware.

Roche's discovery strategy is clear – it wants a list of all of DDI's distributors so that it can subpoena every one of them, regardless of the distributor's size or location, causing undue harm to DDI's business reputation, with no basis for such subpoenas. Pursuant to Rule 26(c), which provides protection from this type of harassment, Roche is not entitled to a list of all distributors with whom DDI has "entered into or attempted to enter into contracts." *See* Document Request No. 15 at <u>Exhibit B</u>; *see also Jazz Photo Corp. v. U.S.*, 439 F.3d 1344, 1358 (Fed. Cir. 2006) (stating that Rule 26(c) "provides that the court may make any order that justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense"). This request would require DDI to produce a list of every customer it has, and every potential customer it has ever pursued. Roche's request would also require DDI to produce every document relating to sales to those customers, regardless of the subject matter or whether such customers have any relation to the state of Delaware whatsoever. DDI has

objected and asked that this request be narrowed, but Roche refuses to narrow its request to apply only to customers or sales in or involving the state of Delaware.

## C.  The additional discovery sought by Roche is not relevant to jurisdiction over DDI in Delaware and is therefore unduly burdensome and oppressive.

In its Motion to Compel, Roche requests that DDI be required to respond more "fully" to all of Roche's discovery requests and deposition topics, which are much broader than the description provided by Roche in its Motion.  For example, in the Discovery Requests, Roche asks for "[a]ll documents and things concerning, referring to or relating to the annual and total gross revenues of DDI and/or any of the Additional Corporations from sales, either direct or indirect, to persons located in the United States of any Electrochemical System."  *See* Req. 13 in Exhibit B.  Thus, Roche requests actually seek all information about DDI's sales data for the entire United States, and not merely "DDI's sales and marketing in Delaware" as it claims in its Motion.

As discussed in detail in DDI's Motion for Protective Order, which DDI incorporates by reference rather than repeating here, Roche's Discovery Requests are overly broad and unduly burdensome because they seek information which is not relevant to the issue of jurisdiction over DDI in Delaware.  DDI should not be compelled to further respond to discovery which is immaterial to its Motion to Dismiss for Lack of Personal Jurisdiction.  *See Espeed, Inc. v. Brokertec USA, LLC*, 2004 WL 2346137, *2 (D. Del. 2007) (denying the plaintiffs' motion to compel because "***the discovery that the plaintiffs seek to compel is immaterial*** to the disposition of ICAP's Motion") (emphasis added).

Roche attempts to justify its overbroad discovery requests by citing *Commissariat à L'Énergie Atomique v. Chi Mei Optoelectronics Corp.*, a patent case in which the Federal Circuit states that the plaintiff was entitled to jurisdictional discovery because the defendant controlled

such a large percentage of the market that "these products are likely sold in Delaware in substantial quantities."   395 F.3d 1315, 1320 (Fed. Cir. 2005). Roche contends that *Commissariat* grants every litigant the right to unlimited jurisdictional discovery without acknowledging the Court's findings on which the decision is based.  *Commissariat* is easily distinguishable from the instant case:

(a) In *Commissariat,* the defendant, Chi Mei Optoelectronics Corporation ("CMO"), was an international company with over $1 billion in sales of the product worldwide, *id.* at 1317, whereas DDI is a North Carolina corporation with sales of only $6.5 million of its allegedly infringing products.  (See DDI's Response to Interrogatory 3, at Exhibit C);

(b) The plaintiff in *Commissariat* used industry data to prove that CMO's extensive distribution network "likely results in substantial sales of its products in Delaware." *Id.* at 1323. Roche, on the other hand, has failed to prove that DDI distributors sell any DDI products in Delaware, despite the fact that Roche has issued twenty subpoenas for this evidence;

(c) The *Commissariat* plaintiff specifically alleged in its complaint that CMO "derived 'substantial revenue from services or things used or consumed within Delaware.'" *Id.* at 1317. Roche has not alleged DDI derives "substantial revenue" from sales in Delaware, and cannot allege any reasonable inference that DDI derives any revenue from Delaware;

(d) The Court granted the jurisdictional discovery because "***evidence already presented*** by the plaintiff is sufficient to demonstrate that CMO sells a very large volume of LCD's to companies which incorporate these displays into their final product and that these products are likely sold in Delaware in substantial quantities." *Id.* (emphasis added).  Unlike the *Commissariat* plaintiff, Roche has failed to make such a showing and is not entitled to such overbroad discovery.

## 1. Roche's demands for DDI's marketing, sales and other contacts outside of Delaware

A large number of Roche's Discovery Requests request information and documents relating to DDI's contacts with <u>any state</u> in the United States or the "Northeast Region of the United States" (which Roche defines to include 12 states: Maine, New Hampshire, Vermont, Massachusetts, Rhode Island, Connecticut, New York, New Jersey, Pennsylvania, Delaware, Maryland, and Washington, D.C.). *See* the Definitions in <u>Exhibits A and B</u>. Roche contends in its Answering Brief, p. 7, that it merely seeks the identity of DDI distributors "in the neighboring states of Maryland and Pennsylvania." Roche's Discovery Requests are much broader, however, demanding a list of DDI distributors "with a place of business located in the United States with whom DDI and/or any of the Additional Corporations has entered into or attempted to enter into contracts . . . ." *See* Req. 15 in <u>Exhibit B</u>. Thus, Roche's Answering Brief acknowledges that its discovery requests are overbroad and unduly burdensome.

Roche has not provided any case law or explanation supporting its contention that DDI's contacts with the "Northeast Region" may show jurisdiction in Delaware. This is because DDI's contacts with any state other than Delaware are irrelevant to personal jurisdiction in Delaware. The law is clear that the only information relevant to determining personal jurisdiction is (i) whether DDI itself has committed acts of patent infringement in Delaware, and (ii) whether DDI has purposefully availed itself of the privilege of conducting activities within Delaware. *See Intel Corp, supra,* 20 F. Supp. 2d at 696 ("[A]n act must be directed at residents of the state of Delaware and the protection of its laws"); *Tristrata Tech. v. Emulgen Lab., Inc.,* __ F. Supp. 2d. __, 2008 WL 508600 (D. Del. 2008) (stating that the Delaware long-arm statute, § 3104(c)(3), requires that an act be committed <u>in Delaware</u>, and that the injury occur <u>in Delaware</u>).

DDI has repeatedly informed Roche that it has no marketing information for Delaware, because it does not market in Delaware. Even though Roche's request is overbroad, DDI has provided Roche with the limited marketing materials that even remotely relate to a region encompassing Delaware.

Roche also requests discovery into DDI's sales figures. DDI has <u>zero</u> dollars of sales in Delaware and, therefore, should not be required to produce its total sales figures and documents to Roche, a dominating competitor of DDI. DDI's percentage sales into Delaware will be the same regardless of its total sales figures – 0%. DDI has agreed to allow Roche to seek deposition testimony on DDI's sales figures in Delaware in order for Roche to satisfy itself that there are zero sales.

### 2. Roche's demands for third-party information regarding DDI's passive website

Roche further requests all information regarding the development, maintenance and visitor traffic for DDI's website. As DDI has explained to Roche, DDI uses a third-party vendor to develop and maintain its website and, therefore, does not have any documents responsive to Roche's request. DDI is not obligated to produce documents which are not in its control. *See Cochran Consulting, Inc. v. Uwatec USA, Inc.*, 102 F.3d 1224, 1229 (Fed. Cir. 1996) ("In the absence of control by a litigating corporation over documents in the physical possession of another corporation, the litigating corporation has not duty to produce."). Further, DDI's third-party vendor has informed DDI that there is no way to determine if there have been any hits from Delaware on DDI's webpage, since all hits are tracked from the individual's internet provider's headquarters (which could be in any state), rather than each individual home.

Regardless of DDI's inability to obtain the information relating to DDI's website, such information is irrelevant because DDI's passive website cannot be used to confer personal

jurisdiction over DDI in Delaware. DDI's website does not allow customers to purchase products and does not allow an exchange of information between the company and the user. Therefore, it is not "interactive" for purposes of jurisdiction. *See Maynard v. Philadelphia Cervical Collar Co., Inc.*, 18 Fed. Appx. 814 (Fed. Cir. 2001) (holding that a general access webpage providing information, but not allowing users to contact the company, enter into contracts with the company, and not targeted toward the forum state, is a passive website insufficient to establish purposeful availment for the purpose of due process); *Espeed, Inc. v. Brokertec USA, LLC*, 2004 WL 2346137, *2 (D. Del. 2007) (declining to exercise personal jurisdiction on the basis of a website). DDI's passive website is available to anyone with Internet access worldwide and is not targeted to Delaware.

### 3. Roche's overbroad and burdensome requests for phone records

In response to Roche's request for DDI's phone records for calls to and from Delaware, DDI reviewed over 200 pages of phone records in its possession and control and determined that there were no calls to Delaware. Roche now asks the court to require DDI to review and produce thousands of pages of phone records without any date limitation to see if one phone call was ever placed to Delaware. This request is unduly burdensome and made for the purpose of harassment, because phone calls into Delaware would not be sufficient to show specific or general jurisdiction over DDI in Delaware. *See Blue Ball Props., Inc. v. McClain*, 658 F.Supp. 1310, 1318-19 (D. Del. 1987) (holding that phone calls were insufficient to confer jurisdiction because they were not "numerous, continuous or of a substantial quality").

### 4. Roche's demands for information regarding other nonparties

Finally, Roche's Motion to Compel requests that the court require DDI to produce information and documents relating to a number of "Additional Corporations," defined by Roche

to include Z & Z Medical, Inc., ACP Medical Devices, Inc., American Laboratories, Inc. Automated Devices, Inc., Vitalcare Group, Inc. and their "predecessors, parents, subsidiaries, divisions, licensees, franchisees, assigns or other related business entities, its directors, officers, employees, agents distributors, jobbers, salespersons, interns, sales representatives and attorneys, and each person acting or purporting to act on its or their behalf or under its or their control." (*See* the Definitions in <u>Exhibits B and C</u>.)  DDI has repeatedly explained to Roche that none of these "Additional Corporations" are in the business of making, distributing, marketing, or selling DDI's Products.  These corporations are distinct legal entities who have not been named as a party or subpoenaed for their records and DDI should not be required to produce such irrelevant information simply because Roche requests it.

Notably, Roche fails to cite any case law for its contention that DDI is required to produce documents relating to other unrelated companies.  Roche only supports its request with the explanation that one document technically contained the words, "DDI Medical, Inc." instead of "DDI."  DDI has explained that this was a typographical error.  Yet Roche continues to press this issue.  If Roche reviewed the North Carolina Secretary of State's website, it would see that no such entity exists in North Carolina.  Roche is clearly on a fishing expedition and, at the same time, is exploiting a much smaller competitor for information in hopes of putting it out of business.  DDI requires court protection from such harassment and oppression.

## CONCLUSION

For the foregoing reasons, DDI respectfully requests that this Court grant a Protective Order limiting the subject matter and breadth of the discovery sought by Roche in the form of interrogatories, requests for production of documents and depositions to only those topics that (a) directly relate to DDI, and not Additional Corporations; and (b) directly relate to DDI's contacts with Delaware, and not with any other state.

ASHBY & GEDDES

*/s/ Lauren E. Maguire*
_____
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
302-654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Defendant Diagnostic Devices, Inc.*

*Of Counsel:*

Michael G. Adams
Ashley L. Ellis
Morgan H. Rogers
Parker Poe Adams & Bernstein LLP
Three Wachovia Center, Suite 3000
401 South Tryon Street
Charlotte, North Carolina 28202
704-372-9000

Dated:  April 4, 2008

# EXHIBIT O

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE
### Case No. 07-753

ROCHE DIAGNOSTICS OPERATIONS, INC., )
and CORANGE INTERNATIONAL LIMITED, )
          Plaintiffs, )
)
     v. )
ABBOTT DIABETES CARE, INCORPORATED, )
ABBOTT DIABETES CARE SALES )
CORPORATION, )
BAYER HEALTHCARE, LLC, )
DIAGNOSTICS DEVICES, INC., )
LIFESCAN, INCORPORATED, )
NOVA BIOMEDICAL CORPORATION, and )
SANVITA INCORPORATED, )
)
          Defendants. )

**DECLARATION OF
RICHARD ADMANI IN
SUPPORT OF DIAGNOSTIC
DEVICES, INC.'S MOTION
FOR PROTECTIVE ORDER**

Richard Admani, being duly sworn, deposes and says:

1.    I am over the age of eighteen and am under no disability which would render me incompetent to make this affidavit. I have personal knowledge of all the matters stated in this affidavit, and all statements made are true and correct.

2.    I am the Chief Operating Officer for Diagnostic Devices, Inc ("DDI").

3.    The following chart reflects DDI's relationship with each of the third-parties subpoenaed by Roche or listed in Roche's responses to DDI's Interrogatories:

| Third Party Name | Customer of DDI? | Address to which DDI ships its products |
|---|---|---|
| ShopRite | No | |
| Amazon.com | No | |
| American Diabetes Wholesale | Yes | 2501 NW 34th Place, #35 Pompano Beach, FL 33069 |
| OTC Wholesale | No | |

CLT 1119576v1

| Medex Supply | No | |
| All Diabetic LLC | No | |
| BioUSA.com Medical Supplies | No | |
| Healthconnection, Inc. | No | |
| Health Products Inc. | No | |
| Hocks Pharmacy, Inc. | No | |
| Independent Living Aids, Inc. | Yes | 200 Robbins Lane Jericho, NY 11753 |
| Independent Living Technologies, Inc. | Yes | 129 US Highway 70 West Garner, NC 27529 |
| J & B Medical Supply Co. | Yes | 50496 W. Pontiac Trail Wixom, MI 48393 |
| LS&S LLC | Yes | P.O. Box 673 Northbrook, IL 60065 |
| Maxi Aids, Inc. | Yes | 42 Executive Blvd. Farmingdale, NY 11735 |
| RehabMart, LLC | No | |
| Shop.com, Inc. | No | |
| Speak To Me Catalog | No | |
| Store 4 Diabetics | No | |
| Pharma Supply | No (DDI last sold to Pharma Supply in 2006) | |

2

| Western Diabetic Supply Corp. | No | |
|---|---|---|

4.     DDI does not have control over any of the websites operated by the above listed entities or any other entity.

5.     DDI does not have an established channel of distribution into Delaware.

6.     DDI has no ability to control where its customers ship its products.

7.     DDI is not actively ignorant has to where DDI's products are shipped, DDI is simply not provided or does DDI request this information from DDI's customers.

8.     DDI does not have an ongoing or intentional relationship with any distributor that DDI knows is, or should reasonably foresee, shipping DDI's products into Delaware.

9.     None of DDI's activities are directed to Delaware. DDI has not made, used, sold, or offered for sale any allegedly infringing products in Delaware.

10.    I declare under penalty of perjury that the foregoing is true.

This _3_ day of April, 2008.

Rickard Adman

CLT 1119576v1

# EXHIBIT P

.

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ROCHE DIAGNOSTICS OPERATIONS INC.<br>and CORANGE INTERNATIONAL LTD., | ) <br> ) <br> ) |
| Plaintiffs, | ) <br> ) |
| v. | ) <br> ) |
| ABBOTT DIABETES CARE, INC.,<br>ABBOTT DIABETES CARE SALES CORP.,<br>BAYER HEALTHCARE LLC, DIAGNOSTIC<br>DEVICES INC., LIFESCAN INC., and NOVA<br>BIOMEDICAL CORP., | ) <br> ) <br> ) <br> ) <br> ) <br> ) |
| Defendants. | ) <br> ) |

C.A. No. 07-753-JJF

### NOTICE OF RULE 30(b)(6) DEPOSITION AND SUBPOENA
### DIRECTED TO LS&S LLC

PLEASE TAKE NOTICE that, pursuant to Rule 30(b)(2) of the Federal Rules of

Civil Procedure, Plaintiffs Roche Diagnostics Operations Inc. and Corange International Ltd.

(referred to collectively as "Roche") is serving the attached subpoena on LS&S LLC ("LS&S")

in the form appended hereto. Roche will take the deposition of LS&S through one or more of its

officers, directors, managing agents, or other persons who consent to testify on its behalf and

who are most knowledgeable with respect to the deposition topics set forth in "Schedule A" at

the time and place as set forth below.

Said deposition will be taken on March 24, 2008 at 9:30 a.m., at the Holiday Inn

Express, 62 Ken Hayes Dr., Bourbonnais, IL 60914, or at such other time and place as may be

agreed to by the parties. The deposition will continue until completed as provided in the Federal

Rules of Civil Procedure. The deposition will be recorded stenographically and/or by videotape.

You are invited to attend and cross-examine.

OF COUNSEL:

Daniel A. Boehnen
Grantland G. Drutchas
Christina L. Brown
Eric R. Moran
Jessica L. Lunney
McDonnell Boehnen Hulbert & Berghoff LLP
300 South Wacker Drive
Chicago, IL 60606
(312) 913-0001

Dated: March 12, 2008
854356

POTTER ANDERSON & CORROON LLP

By: _____

Philip A. Rovner (#3215)
Hercules Plaza
P.O. Box 951
Wilmington, DE 19899-0951
(302) 984-6000
provner@potteranderson.com

*Attorney for Plaintiffs*
*Roche Diagnostics Operations, Inc., and*
*Corange International Limited*

2

AO88 (Rev. 12/07) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT
### Northern District of Illinois

ROCHE DIAGNOSTICS OPERATIONS, INC. ET. AL          **SUBPOENA IN A CIVIL CASE**

V.

ABBOTT DIABETES CARE, INC., ET. AL.               Case Number:[1]  7-753-JJF

TO:   LS&S LLC C/O CT CORPORATION SYSTEM
      208 SOUTH LASALLE ST, STE 814
      CHICAGO, IL 60604

☐  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☑  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION    Holiday Inn Express 62 Ken Hayes Dr., Bourbonnais, IL 60914 | DATE AND TIME 3/24/2008 9:30 am |
|---|---|

☑  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

Any documents referring or relating to any of the topics set forth in Schedule A attached.

| PLACE    Holiday Inn Express 62 Ken Hayes Dr., Bourbonnais, IL 60914 | DATE AND TIME 3/24/2008 9:00 am |
|---|---|

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rule of Civil Procedure 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) Attorney for Plaintiffs | DATE 3/11/2008 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Grantland Drutchas, 300 S. Wacker Dr., Ste. 3100, Chicago, IL 60606, 312-913-0001

(See Federal Rule of Civil Procedure 45 (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 12/07) Subpoena in a Civil Case (Page 2)

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

## Federal Rule of Civil Procedure 45 (c), (d), and (e), as amended on December 1, 2007:

(c) PROTECTING A PERSON SUBJECT TO A SUBPOENA.

(1) Avoiding Undue Burden or Expense; Sanctions. A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

(2) Command to Produce Materials or Permit Inspection.

(A) Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) Quashing or Modifying a Subpoena.

(A) When Required. On timely motion, the issuing court must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) When Permitted. To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information;

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial

(C) Specifying Conditions as an Alternative. In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

(d) DUTIES IN RESPONDING TO A SUBPOENA.

(1) Producing Documents or Electronically Stored Information. These procedures apply to producing documents or electronically stored information:

(A) Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.

(D) Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) Claiming Privilege or Protection.

(A) Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT.

The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

**SCHEDULE A**

**TO THE SUBPOENA FOR RULE 30(b)(6) DEPOSITION AND PRODUCTION, INSPECTION, AND COPYING OF DOCUMENTS AND OTHER TANGIBLE THINGS IN THE POSSESSION, CUSTODY, OR CONTROL OF LS&S LLC**

<u>DEFINITIONS AND INSTRUCTIONS</u>

The following definitions shall apply:

1.      The term "LS&S" shall mean LS&S LLC; any company name under which LS&S LLC is doing or has done business; and its predecessors, parents, subsidiaries, divisions, licensees, franchisees, assigns or other related business entities, as well as directors, officers, employees, agents, and distributors.

2.      The terms "Defendant" and "DDI," shall mean Diagnostic Devices, Inc. (present at 9300 Harris Corners Parkway Suite 450, Charlotte, NC 28269, and possibly other addresses); any company name under which DDI is doing or has done business; and its predecessors, parents, subsidiaries, divisions, licensees, franchisees, assigns or other related business entities, as well as directors, officers, employees, agents, and distributors.

3.      The term "TaiDoc" shall mean TaiDoc Technology Corp. (present at 6F, No. 127, Wugong 2nd Rd. Wugu, Taipei County 248, Taiwan, and possibly other addresses); and any company name under which TaiDoc is doing or has done business.

4.      The terms "person" and "persons" shall mean natural persons and any other governmental, legal, or other entity.

5.      The term "document" shall mean writings, recordings and other communications reduced to physical or electronic form, including the originals and all non-identical copies, whether different from the original by reason of any notation made on such copies or otherwise.

6.    "DDI Products" shall mean any product made, distributed, imported, marketed, sold, or branded by DDI or TaiDoc, including but not limited to: (1) blood glucose products and meters, such as, for example, those sold under the following brands: Prodigy, Prodigy Audio, Prodigy Autocode, Prodigy Duo, Prodigy Eject, Prodigy Voice, and Prodigy Advance; (2) test strips for use with such products or meters; (3) control solutions for use with such products, meters, or test strips; and (4) software for use with such products, meters, or test strips.

2

## RULE 30(b)(6) DEPOSITION TOPICS AND
## DOCUMENTS AND THINGS REQUESTED

Please provide documents, things, and deposition testimony relating to the following topics.

Also, please do not allow any materials requested by this subpoena duces tecum, including notes or drafts, to be destroyed.

1.     The marketing, advertising, sale, offer for sale, or use of DDI Products.

2.     Any sales or offers of sales and dates of sales or offers of sales of DDI Products in Delaware, Pennsylvania, or Maryland, including but not limited to purchase orders, invoices, sales reports, shipping documents (including delivery confirmations), and receipts.

3.     Any shipment or return of DDI Products in, to, or from Delaware, Pennsylvania, or Maryland.

4.     The distribution or warehousing of DDI Products in Delaware, Pennsylvania, or Maryland.

5.     The use of DDI Products in Delaware, Pennsylvania, or Maryland.

6.     The marketing of DDI Products in Delaware, Pennsylvania, or Maryland.

7.     The general chain(s) of custody of DDI Products between DDI and users of DDI Products in Delaware, Pennsylvania, or Maryland.

8.     All communications to or from DDI, or any entity or person acting on DDI's behalf, referring or relating to Topics 1 through 7 above.

9.     All communications to or from TaiDoc, or any entity or person acting on TaiDoc's behalf, referring or relating to Topics 1 through 7 above.

10.     All documents or communications referring or relating to the relationship between DDI and LS&S.

3

11.     All documents, communications, or other materials provided to customers in connection with the sale of DDI Products in Delaware, Pennsylvania, or Maryland.

12.     Background information on LS&S.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, Philip A. Rovner, hereby certify that on March 12, 2008, the within document

was filed with the Clerk of the Court using CM/ECF which will send notification of such

filing(s) to the following; that the document was served on the following counsel as

indicated; and that the document is available for viewing and downloading from

CM/ECF.

**BY HAND DELIVERY AND E-MAIL**

Frederick L. Cottrell, III, Esq.
Anne Shea Gaza, Esq.
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, DE 19801
cottrell@rlf.com
gaza@rlf.com

Mary W. Bourke, Esq.
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 N. Orange Street
Wilmington, DE 19801
mbourke@cblh.com

Steven J. Balick, Esq.
John G. Day, Esq.
Ashby & Geddes
500 Delaware Avenue
8th Floor
P.O. Box 1150
Wilmington, DE 19899
sbalick@ashby-geddes.com
jday@ashby-geddes.com

**BY HAND DELIVERY AND E-MAIL**

John W. Shaw, Esq.
Jeffrey T. Castellano, Esq.
Young Conaway Stargatt & Taylor, LLP
1000 West Street, 17th Floor
Wilmington, DE 19801
jshaw@ycst.com
jcastellano@ycst.com

Rodger D. Smith, Esq.
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
rsmith@mnat.com

I hereby certify that on March 12, 2008 the foregoing document to the following

non-registered participants:

Edward A. Mas, II, Esq.
Stephen F. Sherry, Esq.
Kirk Vander Leest, Esq.
James M. Hafertepe, Esq.
Merle S. Elliott, Esq.
McAndrews, Held & Malloy, Ltd.
500 West Madison Street
34th Floor
Chicago, IL 60661
emas@mcandrews-ip.com
ssherry@mcandrews-ip.com
kvanderleest@mcandrews-ip.com
jhafertepe@mcandrews-ip.com
melliott@mcandrews-ip.com

Wesley E. Overson, Esq.
Rachel Krevans, Esq.
Jason R. Bartlett, Esq.
Parisa Jorjani, Esq.
Daniel P. Muino, Esq.
Morrison & Foerster LLP
425 Market Street
San Francisco, CA 94105-2482
woverson@mofo.com
rkrevans@mofo.com
jasonbartlett@mofo.com
pjorjani@mofo.com
dmuino@mofo.com

Kenneth P. George, Esq.
Joseph M. Casino, Esq.
Amster, Rothstein & Ebenstein LLP
90 Park Avenue
New York, NY 10016
kgeorge@arelaw.com
jcasino@arelaw.com

Michael G. Adams, Esq.
Ashley L. Ellis, Esq.
Parker Poe Adams & Bernstein LLP
Three Wachovia Center, Suite 3000
401 South Tryon Street
Charlotte, NC 28202
mikeadams@parkerpoe.com
ashleyellis@parkerpoe.com

Bradford J. Badke, Esq.
Sona De, Esq.
Michael Kahn, Esq.
Ropes & Gray LLP
1211 Avenue of the Americas
New York, NY 10036-8704
Jim.badke@ropesray.com
Sona.de@ropesray.com
Michael.kahn@ropesgray.com

Philip A. Rovner (#3215)
Potter Anderson & Corroon LLP
Hercules Plaza
P.O. Box 951
Wilmington, Delaware 19899
(302) 984-6000
E-mail: provner@potteranderson.com

-2-

# EXHIBIT Q

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| ROCHE DIAGNOSTICS OPERATIONS, INC., and CORANGE INTERNATIONAL LTD., | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) ) | C.A. No. 07-753-JJF |
| ABBOTT DIABETES CARE, INC., ABBOTT DIABETES CARE SALES CORP., BAYER HEALTHCARE, LLC, DIAGNOSTIC DEVICES, INC., LIFESCAN, INC., and NOVA BIOMEDICAL CORP., | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**NOTICE OF SERVICE**

PLEASE TAKE NOTICE that, on March 31, 2008, true and correct copies of the

following document were served on the following counsel of record at the addresses and in the

manner indicated:

ROCHE'S RESPONSE TO DIAGNOSTIC DEVICES' FIRST SET OF
INTERROGATORIES AND DOCUMENT REQUESTS

**BY HAND DELIVERY AND E-MAIL**

| | |
|---|---|
| Frederick L. Cottrell, III, Esq. | John W. Shaw, Esq. |
| Anne Shea Gaza, Esq. | Jeffrey T. Castellano, Esq. |
| Richards, Layton & Finger, P.A. | Young Conaway Stargatt & Taylor, LLP |
| One Rodney Square | 1000 West Street, 17th Floor |
| 920 N. King Street | Wilmington, DE 19801 |
| Wilmington, DE 19801 | jshaw@ycst.com |
| cottrell@rlf.com | jcastellano@ycst.com |
| gaza@rlf.com | |

Mary W. Bourke, Esq.
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 N. Orange Street
Wilmington, DE 19801
mbourke@cblh.com

Steven J. Balick, Esq.
John G. Day, Esq.
Ashby & Geddes
500 Delaware Avenue
8th Floor
P.O. Box 1150
Wilmington, DE 19899
sbalick@ashby-geddes.com
jday@ashby-geddes.com

Rodger D. Smith, Esq.
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
rsmith@mnat.com

**BY E-MAIL**

Edward A. Mas, II, Esq.
Stephen F. Sherry, Esq.
Kirk Vander Leest, Esq.
James M. Hafertepe, Esq.
Merle S. Elliott, Esq.
McAndrews, Held & Malloy, Ltd.
500 West Madison Street
Chicago, IL 60661
emas@mcandrews-ip.com
ssherry@mcandrews-ip.com
kvanderleest@mcandrews-ip.com
jhafertepe@mcandrews-ip.com
melliott@mcandrews-ip.com

Wesley E. Overson, Esq.
Rachel Krevans, Esq.
Jason R. Bartlett, Esq.
Parisa Jorjani, Esq.
Daniel P. Muino, Esq.
Morrison & Foerster LLP
425 Market Street
San Francisco, CA 94105-2482
woverson@mofo.com
rkrevans@mofo.com
jasonbartlett@mofo.com
pjorjani@mofo.com
dmuino@mofo.com

2

Kenneth P. George, Esq.
Joseph M. Casino, Esq.
Amster, Rothstein & Ebenstein LLP
90 Park Avenue
New York, NY 10016
kgeorge@arelaw.com
jcasino@arelaw.com

Bradford J. Badke, Esq.
Sona De, Esq.
Michael Kahn, Esq.
Ropes & Gray LLP
1211 Avenue of the Americas
New York, NY 10036-8704
Jim.badke@ropesgray.com
Sona.de@ropesray.com
Michael.kahn@ropesgray.com

Michael G. Adams, Esq.
Ashley L. Ellis, Esq.
Parker Poe Adams & Bernstein LLP
Three Wachovia Center, Suite 3000
401 South Tryon Street
Charlotte, NC 28202
mikeadams@parkerpoe.com
ashleyellis@parkerpoe.com

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Daniel A. Boehnen
Grantland G. Drutchas
McDonnell Boehnen Hulbert & Berghoff LLP
300 South Wacker Drive
Chicago, IL 60606
(312) 913-0001

Dated: March 31, 2008
858118

By: _____
    Philip A. Rovner (#3215)
    Hercules Plaza
    P.O. Box 951
    Wilmington, DE 19899-0951
    (302) 984-6000
    provner@potteranderson.com

*Attorney for Plaintiffs*
*Roche Diagnostics Operations, Inc. and*
*Corange International Limited*

3

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, Philip A. Rovner, hereby certify that on March 31, 2008, the within document

was filed with the Clerk of the Court using CM/ECF which will send notification of such

filing(s) to the following; that the document was served on the following counsel as

indicated; and that the document is available for viewing and downloading from

CM/ECF.

**BY HAND DELIVERY AND E-MAIL**

Frederick L. Cottrell, III, Esq.
Anne Shea Gaza, Esq.
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, DE 19801
cottrell@rlf.com
gaza@rlf.com

Mary W. Bourke, Esq.
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 N. Orange Street
Wilmington, DE 19801
mbourke@cblh.com

**BY HAND DELIVERY AND E-MAIL**

John W. Shaw, Esq.
Jeffrey T. Castellano, Esq.
Young Conaway Stargatt & Taylor, LLP
1000 West Street, 17th Floor
Wilmington, DE 19801
jshaw@ycst.com
jcastellano@ycst.com

Rodger D. Smith, Esq.
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
rsmith@mnat.com

Steven J. Balick, Esq.
John G. Day, Esq.
Ashby & Geddes
500 Delaware Avenue
8th Floor
P.O. Box 1150
Wilmington, DE 19899
sbalick@ashby-geddes.com
jday@ashby-geddes.com

I hereby certify that on March 31, 2008 the foregoing document was sent by E-mail to the following non-registered participants:

Edward A. Mas, II, Esq.
Stephen F. Sherry, Esq.
Kirk Vander Leest, Esq.
James M. Hafertepe, Esq.
Merle S. Elliott, Esq.
McAndrews, Held & Malloy, Ltd.
500 West Madison Street
34th Floor
Chicago, IL 60661
emas@mcandrews-ip.com
ssherry@mcandrews-ip.com
kvanderleest@mcandrews-ip.com
jhafertepe@mcandrews-ip.com
melliott@mcandrews-ip.com

Wesley E. Overson, Esq.
Rachel Krevans, Esq.
Jason R. Bartlett, Esq.
Parisa Jorjani, Esq.
Daniel P. Muino, Esq.
Morrison & Foerster LLP
425 Market Street
San Francisco, CA 94105-2482
woverson@mofo.com
rkrevans@mofo.com
jasonbartlett@mofo.com
pjorjani@mofo.com
dmuino@mofo.com

Kenneth P. George, Esq.
Joseph M. Casino, Esq.
Amster, Rothstein & Ebenstein LLP
90 Park Avenue
New York, NY 10016
kgeorge@arelaw.com
jcasino@arelaw.com

Michael G. Adams, Esq.
Ashley L. Ellis, Esq.
Parker Poe Adams & Bernstein LLP
Three Wachovia Center, Suite 3000
401 South Tryon Street
Charlotte, NC 28202
mikeadams@parkerpoe.com
ashleyellis@parkerpoe.com

Bradford J. Badke, Esq.
Sona De, Esq.
Michael Kahn, Esq.
Ropes & Gray LLP
1211 Avenue of the Americas
New York, NY 10036-8704
Jim.badke@ropesgray.com
Sona.de@ropesgray.com
Michael.kahn@ropesgray.com

Philip A. Rovner (#3215)
Potter Anderson & Corroon LLP
Hercules Plaza
P.O. Box 951
Wilmington, Delaware 19899
(302) 984-6000
E-mail: provner@potteranderson.com

-2-

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| ROCHE DIAGNOSTICS OPERATIONS, INC., and CORANGE INTERNATIONAL LTD., ) ) ) | |
| Plaintiffs, ) | |
| v. ) | C.A. No. 07-753-JJF |
| ABBOTT DIABETES CARE, INC., ABBOTT DIABETES CARE SALES CORP., BAYER HEALTHCARE, LLC, DIAGNOSTIC DEVICES, INC., LIFESCAN, INC., and NOVA BIOMEDICAL CORP., ) ) ) ) ) ) | |
| Defendants. ) | |

## ROCHE'S RESPONSE TO DIAGNOSTIC DEVICES'
## FIRST SET OF INTERROGATORIES AND DOCUMENT REQUESTS

Pursuant to Rules 26, 33 and 34 of the Federal Rules of Civil Procedure, Plaintiffs Roche Diagnostics Operations Inc. and Corange International Ltd. (collectively, "Roche"), by and through Roche's undersigned attorneys, hereby respond to Defendant Diagnostic Devices Inc.'s ("DDI's") First Set of Interrogatories and Requests for Production of Documents. These answers and responses are based upon information presently available to and located by Roche and are made without prejudice to Roche's right to revise or supplement these answers and responses. Accordingly, Roche's responses shall not be deemed to constitute admissions or representations that any statement or characterization is complete.

## GENERAL OBJECTIONS

Roche asserts each of the following General Objections to each of DDI's interrogatories and requests for production (collectively, "requests"). In addition to these General Objections, Roche may also state specific objections to specific requests where appropriate. By setting forth such additional specific objections, Roche does not in any way intend to limit or restrict its General Objections. Moreover, to the extent Roche provides a response to any of the DDI's requests to which Roche objects, such response shall not constitute a waiver of any General or specific objection.

1.      Roche objects to DDI's requests to the extent that they seek information and/or the production of documents and things protected by the attorney-client privilege, attorney-work product immunity or any other applicable privilege or immunity, including materials prepared in anticipation of litigation or for trial. At a mutually-agreed time, Roche will prepare and exchange with DDI a privilege log listing withheld privileged documents, if any. In the event that any such protected documents have been or are produced by Roche, such production shall be considered inadvertent and hence would not constitute a waiver of any privilege, immunity, or other applicable protection.

2.      Roche objects to DDI's requests to the extent they require any information or documents beyond what is presently available to Roche after a reasonable search of its own files and reasonable inquiry of its current employees, or that purport to require Roche to produce documents or things not within Roche's possession, custody or control.

3.      Roche objects to any directions, definitions, rules of construction, and/or instructions contained in DDI's requests that seek to impose upon Roche any obligations or

responsibilities beyond those mandated by the Federal Rules of Civil Procedure or the Local Rules of the U.S. District Court for the District of Delaware.

4.      Roche objects to DDI's requests to the extent that they call upon Roche to investigate, collect, and disclose information that is not relevant to the subject matter of this litigation and that is not reasonably calculated to lead to the discovery of admissible evidence.

5.      Roche objects to DDI's requests that are not restricted in time as overly broad, unduly burdensome, and seeking irrelevant information.

6.      Roche objects to DDI's requests that seek the production of "all" documents or things when the relevant information can be supplied by the production of fewer than "all" documents or things.

7.      Roche objects to the definition of the term "Roche" in Defendant's requests to the extent that definition encompasses entities that are not within the control of Roche, and/or encompasses information, documents, or things that are not within Roche's possession, custody or control.

8.      Roche objects to the definition of the term "Communication," as vague, overly broad and unduly burdensome, as it seeks to encompass "body language or signals."

## GENERAL STATEMENTS

The following statements apply to all responses to DDI's document requests.

1.      All responses are made subject to the foregoing General Objections and these Statements. To the extent a General Objection and/or Statement is restated in a particular response, that restatement is provided because the objection and/or statement is believed to be particularly relevant to that request. Such restatement is not to be construed as a waiver of any other objection.

2.      Where a partial response can be made to a request that is otherwise objectionable, such response will be made so as to provide as much information as possible without waiving any stated objection.

3.      These responses are made without waiver of, and expressly preserving:

a.      all questions as to competency, relevancy, materiality, privilege, and admissibility of each response herein as evidence in any further proceeding in this action, including trial;

b.      the right to object to the use of any response herein, or the subject matter thereof, in any further proceedings in this action, including trial, and in any other lawsuit or proceedings;

c.      the right to object to a demand for a further response; and

d.      the right at any time to revise, correct, add to, supplement, or clarify any of the responses contained herein.

4.      A response stating that responsive documents will be produced is not meant and shall not be interpreted as an admission or representation that responsive documents exist.  It is solely a representation that after a reasonable search, representative non-objectionable documents that are located will be produced for inspection and/or copying.

5.      Roche reserves the right to produce documents for inspection in the first instance, for subsequent production by Roche of copies of those documents selected by DDI during such inspection.

## ANSWERS TO INTERROGATORIES

### INTERROGATORY NO. 1:

*Identify and describe in detail the circumstances surrounding the alleged purchase of DDI's Prodigy Autocode Blood Glucose Monitoring System and test strips (collectively, the "Products") on January 22, 2008 from ShopRite in Wilmington, Delaware, including, without limitation, (a) identifying the person(s) who purchased the Products at issue; (b) stating whether the person called the store in advance of the purchase or simply showed up for the purchase; (c) if a call was placed in advance whether that person was informed that the Products were not stocked by the store and/or requested that the Products be ordered; and (d) if the purchaser was told that the item was not in stock, then provide complete details of the full contents of the communications with ShopRite.*

### ANSWER TO INTERROGATORY NO. 1:

Roche objects to this Interrogatory to the extent that is seeks information protected by the attorney-client privilege and/or the work product doctrine. Subject to and without waiving any privilege or immunity, Roche states that Mary Ellen Stackel, an employee at Potter Anderson & Corroon LLP in Wilmington, Delaware, purchased a Prodigy Autocode Blood Glucose Monitoring System and 50 test strips on January 22, 2008 from ShopRite at Brandywine, Brandywine Commons, Wilmington, Delaware 19803. To do so, Ms. Stackel telephoned the ShopRite at 302-477-3270 on January 21, 2008 to see if the store carried that meter and corresponding test strips. Ms. Stackel was told that the store did not stock the products but that they were available through its supplier and that the products would be ready for pick up the following day, on January 22, 2008. On January 22, Ms. Stackel telephoned the store to confirm that the meter and test strips were in, and she then picked up the meter and test strips that day. Roche has produced or will produce documents evidencing this sale of DDI products in

Delaware. In addition, these DDI products are available for inspection upon reasonable notice.

### INTERROGATORY NO. 2:

*Describe in detail how much time was spent attempting to purchase Products in Delaware, and every person or entity contacted to purchase such products. For each person or entity contacted, state whether such person had an immediate supply of Products.*

## ANSWER TO INTERROGATORY NO. 2:

Roche objects to this Interrogatory as seeking information protected by attorney-client privilege and/or the work product doctrine. Roche also objects to this Interrogatory as seeking information that is not reasonably calculated to lead to the discovery of admissible evidence.

### INTERROGATORY NO. 3:

*Identify all persons who you know have purchased Products in Delaware, and identify the item purchased, quantity, purchase price and date of purchase.*

## ANSWER TO INTERROGATORY NO. 3:

Roche objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine. Roche also objects to this interrogatory because discovery is ongoing, both from DDI and from third parties and Roche reserves the right to supplement or otherwise provide information as it becomes available. Roche further notes that DDI has so far refused to provide any names of any of its distributors, and the identities of customers who have purchased DDI products in Delaware are most likely within the knowledge of DDI, its distributors, Internet sellers, and the entities identified herein, and Roche has sought discovery from many of these entities and from DDI.

Subject to and without waiving any privilege or immunity, Roche states that Mary Ellen Stackel, an employee of Potter Anderson & Corroon LLP in Wilmington, Delaware, purchased

6

the following DDI Prodigy products in Delaware on or about the following dates for the
identified prices:

| PRODUCT | DATE PURCH'D | DATE REC'D | WHERE PURCHASED | PRICE |
|---------|--------------|------------|-----------------|-------|
| Prodigy Autocode Blood Glucose Monitoring System (qty. 1) 50 Test Strips | 1/22/08 | 1/22/08 | ShopRite at Brandywine Brandywine Commons Wilmington, DE 19803 302-477-3270 | $33.09 Meter $15.99 Strips $49.08 Total |
| Prodigy Talking Blood Glucose Monitor (qty. 1) 50 Test Strips | 1/21/08 | 1/23/08 (approx) | Amazon.com (seller: Maxi-Aids) | $29.50 Meter $16.99 Strips $6.85 Shipping $53.34 Total |
| Prodigy AutoCode Talking Diabetes Meter Kit – Blood Glucose Monitoring System (qty. 1) 50 Test Strips | 1/22/08 | 1/23/08 (approx) | American Diabetes Wholesale Americandiabetes-wholesale.com | $29.99 Meter $17.99 Strips $19.95 Shipping $67.93 Total |
| Prodigy Audio Talking Blood Glucose Meter (qty. 1) 50 Test Strips | 1/22/08 | 1/23/08 (approx) | OTC Wholesale Otcwholesale.com | $27.99 Meter $18.99 Strips $29.95 Shipping $76.93 Total |
| Prodigy Audio Talking Glucose Meter (qty. 1) 50 Test Strips | 1/22/08 | 1/23/08 (approx) | Medex Supply Medexsupply.com | $31.99 Meter $16.50 Strips $30.41 Shipping $78.90 Total |
| Prodigy Duo Blood Glucose and Blood Pressure Monitor System (qty. 1) | 2/19/08 | 2/25/08 (approx) | Amazon.com (Maxi-Aids) | $84.95 Meter $8.70 Shipping $93.65 Total |

Subject to and without waiving any privilege or immunity, Roche further states that
DDI's Prodigy products are marketed and offered for sale to all potential customers in Delaware,
including the estimated 70,000 diabetics in Delaware (http://www.dediabetescoalition.org). For
example, DDI's Prodigy products are or have been available in Delaware through at least the

following sellers:

All Diabetic LLC
(Diabetes Store)
4387 NW 124th Ave.
Coral Springs, FL 33065
www.diabetesstore.com

Amazon.com, Inc.
P.O. Box 81226
Seattle, WA 98108-1226
http://www.amazon.com

American Diabetes Wholesale LLC
1121 S Military Trail, Ste. 355
Deerfield Beach, FL 33442
www.americandiabeteswholesale.com

BioUSA.com Medical Supplies
547-B Apollo St.
Brea, CA, 92821
www.biousa.com

Healthconnection, Inc.
3520 Snouffer Road
Columbus, OH 43235-2794
www.anactivelife.com

Health Products Inc.
1 Hillview Dr. West
New Fairfield, CT 06812
www.healthproductsforyou.com

Hocks Pharmacy Inc.
732 W. National Rd.
Vandalia, OH 45377
www.hocks.com

Independent Living Aids, Inc.
200 Robbins Lane
Jericho, NY 11753
www.independentliving.com

Independent Living Technologies, Inc.
129 U.S. Highway 70 West
Garner, NC 27529
www.iltsource.com/

J&B Medical Supply Co.
P.O. Box 71
Union Lake, MI 48387
www.jandbmedical.com

LS&S LLC
1808 Janke Dr., Ste. G
Northbrook IL 60062
www.lssproducts.com

Maxi Aids, Inc.
42 Executive Blvd.
Farmingdale, NY 11735
www.maxiaids.com

MedEx Supply Medical Supplies
17 Vanderbilt Ave.
Brooklyn, NY 11205
www.medexsupply.com

OTC Wholesale LLC
318 Indian Trace, Ste. 174
Weston, FL 33326
www.otcwholesale.com

RehabMart, LLC
1353 Athens Hwy.
Elberton, GA 30635
www.rehabmart.com

Shop.com, Inc.
1 Lower Ragsdale Dr. #1-210
Monterey, CA 93940
http://www.shop.com

Speak To Me Catalog
PMB 154 330 SW 43rd St., Ste. K
Renton, WA 98057
www.speaktomecatalog.com

Store 4 Diabetics
2001 N. Ocean Blvd., Ste. 206
Fort Lauderdale, FL 33305
www.store4diabetics.com

Western Diabetic Supply Corp.
1140 36th St., Ste. 140
Ogden, UT 84403
www.westerndiabetic.com

Subject to and without waiving any privilege or immunity, Roche has produced or will produce responsive documents including documents evidencing actual sales of DDI products in Delaware (*see, e.g.*, R00000001-R00000011) and documents showing that multiple Prodigy devices are offered for sale to Delaware residents (*see, e.g.*, R00000001-R00000080). In addition, the DDI products listed herein as purchased by Ms. Stackel are available for inspection upon reasonable notice.

**INTERROGATORY NO. 4:**

*Identify and describe in detail the circumstances surrounding the alleged "purchase from, and delivery to, Delaware of multiple Prodigy devices from numerous internet retailers", including, without limitation, (a) identifying the person(s) who purchased the Prodigy devices; (b) the name and website address of the internet retailer(s); (c) the date of the purchase and specific product purchased.*

**ANSWER TO INTERROGATORY NO. 4:**

Roche objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine. Subject to and without waiving any privilege or immunity, Roche states that Mary Ellen Stackel, an employee at Potter Anderson & Corroon LLP in Wilmington, Delaware, purchased the following DDI Prodigy products in Delaware on or about the following dates for the identified prices:

10

| PRODUCT | DATE PURCH'D | DATE REC'D | WHERE PURCHASED | PRICE |
|---|---|---|---|---|
| Prodigy Talking Blood Glucose Monitor (qty. 1) 50 Test Strips | 1/21/08 | 1/23/08 (approx) | Amazon.com (seller: Maxi-Aids) | $29.50 Meter $16.99 Strips $6.85 Shipping $53.34 Total |
| Prodigy AutoCode Talking Diabetes Meter Kit – Blood Glucose Monitoring System (qty. 1) 50 Test Strips | 1/22/08 | 1/23/08 (approx) | American Diabetes Wholesale Americandiabetes-wholesale.com | $29.99 Meter $17.99 Strips $19.95 Shipping $67.93 Total |
| Prodigy Audio Talking Blood Glucose Meter (qty. 1) 50 Test Strips | 1/22/08 | 1/23/08 (approx) | OTC Wholesale Otcwholesale.com | $27.99 Meter $18.99 Strips $29.95 Shipping $76.93 Total |
| Prodigy Audio Talking Glucose Meter (qty. 1) 50 Test Strips | 1/22/08 | 1/23/08 (approx) | Medex Supply Medexsupply.com | $31.99 Meter $16.50 Strips $30.41 Shipping $78.90 Total |
| Prodigy Duo Blood Glucose and Blood Pressure Monitor System (qty. 1) | 2/19/08 | 2/25/08 (approx) | Amazon.com (Maxi-Aids) | $84.95 Meter $8.70 Shipping $93.65 Total |

Subject to and without waiving any privilege or immunity, Roche further states that DDI's Prodigy products are marketed and offered for sale to all potential customers in Delaware, including the estimated 70,000 diabetics in Delaware (http://www.dediabetescoalition.org). For example, DDI's Prodigy products are or have been available in Delaware through at least the following sellers:

All Diabetic LLC
(Diabetes Store)
4387 NW 124th Ave.
Coral Springs, FL 33065
www.diabetesstore.com

Amazon.com, Inc.
P.O. Box 81226
Seattle, WA 98108-1226
http://www.amazon.com

American Diabetes Wholesale LLC
1121 S Military Trail, Ste. 355
Deerfield Beach, FL 33442
www.americandiabeteswholesale.com

BioUSA.com Medical Supplies
547-B Apollo St.
Brea, CA, 92821
www.biousa.com

Healthconnection, Inc.
3520 Snouffer Road
Columbus, OH 43235-2794
www.anactivelife.com

Health Products Inc.
1 Hillview Dr. West
New Fairfield, CT 06812
www.healthproductsforyou.com

Hocks Pharmacy Inc.
732 W. National Rd.
Vandalia, OH 45377
www.hocks.com

Independent Living Aids, Inc.
200 Robbins Lane
Jericho, NY 11753
www.independentliving.com

Independent Living Technologies, Inc.
129 U.S. Highway 70 West
Garner, NC 27529
www.iltsource.com/

J&B Medical Supply Co.
P.O. Box 71
Union Lake, MI 48387
www.jandbmedical.com

LS&S LLC
1808 Janke Dr., Ste. G
Northbrook IL 60062
www.lssproducts.com

Maxi Aids, Inc.
42 Executive Blvd.
Farmingdale, NY 11735
www.maxiaids.com

MedEx Supply Medical Supplies
17 Vanderbilt Ave.
Brooklyn, NY 11205
www.medexsupply.com

OTC Wholesale LLC
318 Indian Trace, Ste. 174
Weston, FL 33326
www.otcwholesale.com

RehabMart, LLC
1353 Athens Hwy.
Elberton, GA 30635
www.rehabmart.com

Shop.com, Inc.
1 Lower Ragsdale Dr. #1-210
Monterey, CA 93940
http://www.shop.com

Speak To Me Catalog
PMB 154 330 SW 43rd St., Ste. K
Renton, WA 98057
www.speaktomecatalog.com

Store 4 Diabetics
2001 N. Ocean Blvd., Ste. 206
Fort Lauderdale, FL 33305
www.store4diabetics.com

Western Diabetic Supply Corp.
1140 36th St., Ste. 140
Ogden, UT 84403
www.westerndiabetic.com

Subject to and without waiving any privilege or immunity, Roche has or will produce responsive documents including documents evidencing actual sales of DDI products in Delaware (*See, e.g.*, R00000001-R00000011) and documents showing that multiple Prodigy devices are offered for sale to Delaware residents (*see, e.g.*, R00000001-R00000080).  In addition, the DDI products listed herein as purchased by Ms. Stackel are available for inspection upon reasonable notice.

### INTERROGATORY NO. 5:

*Describe in detail the full contents of all communications between You and any person involved in purchasing or selling a Prodigy device or testing strip in Delaware.*

## ANSWER TO INTERROGATORY NO. 5:

Roche objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine.  Moreover, the breadth and scope of Roche's investigation into jurisdictional issues is not the subject of any pending claim or issue; to the extent this, or any other Interrogatory (or request for production) seeks to probe such matters, such discovery is wholly objectionable as entirely irrelevant, and propounded solely for harassment.

## RESPONSES FOR REQUESTS FOR PRODUCTION

*REQUEST NO. 1:*

    *All documents identified in your responses to DDI's Interrogatories.*

**RESPONSE TO REQUEST NO. 1:**

    Roche objects, to the extent this Request seeks documents protected by the attorney client privilege and/or the work product doctrine, and also to the extent Roche objected to the identification of such documents. Subject to and without waiving any privilege, immunity, or objection, such representative, responsive, and non-objected to documents as exist and can be located following a reasonable search will be produced.

*REQUEST NO. 2:*

    *All documents concerning the alleged purchase of DDI's Prodigy Autocode Blood Glucose Monitoring System and test strips (collectively, the "Products") on January 22, 2008 from ShopRite in Wilmington, Delaware.*

**RESPONSE TO REQUEST NO. 2:**

    Subject to and without waiving any privilege or immunity, Roche has produced, or will produce, documents evidencing actual sales of DDI products in Delaware and documents showing that multiple Prodigy devices are offered for sale to Delaware residents over the Internet.

*REQUEST NO. 3:*

    *All documents concerning the alleged "purchase from, and delivery to, Delaware of multiple Prodigy devices from numerous internet retailers."*

**RESPONSE TO REQUEST NO. 3:**

    Subject to and without waiving any privilege or immunity, Roche has produced or will produce responsive documents including documents evidencing actual sales of DDI products in

Delaware and documents showing that multiple Prodigy devices are offered for sale to Delaware residents over the Internet. Roche also states that numerous DDI devices are available from numerous internet retailers, all of whom are known to -- indeed, doubtless *best* known to -- DDI. Roche further states that additional national distributors for DDI appear to exist; much, if not all, of this information is in the hands of DDI, not Roche, and is the subject of Roche's current motion to compel.

### REQUEST NO. 4:

*All communications, and all documents concerning all communications, between You and any person involved in purchasing or selling a Prodigy device or testing strip in Delaware, including without limitation, any times records or notes of such communications.*

### RESPONSE TO REQUEST NO. 4:

Roche objects, as this Request clearly seeks information and documents protected by the attorney-client privilege and/or the attorney work product doctrine. Moreover, this request, to the extent it seeks to uncover facts and circumstances surrounding Roche's investigation of DDI's activities and ties to Delaware, is irrelevant to personal jurisdiction and is propounded solely for harassment.

### REQUEST NO. 5:

*All documents you contend support the constitutional exercise of personal jurisdiction over DDI in this action.*

### RESPONSE TO REQUEST NO. 5:

Subject to and without waiving any privilege, immunity, or objection, Roche will produce all discoverable, non-privileged documents responsive to this request. Roche also states that numerous DDI devices are available from numerous internet retailers, all of whom are known to -- indeed, doubtless *best* known to -- DDI. Roche further states that additional national

16

distributors for DDI appear to exist; much, if not all, of this information is in the hands of DDI,

not Roche, and is the subject of Roche's current motion to compel.


OF COUNSEL:

Daniel A. Boehnen
Grantland G. Drutchas
Christina L. Brown
Eric R. Moran
Jessica L. Lunney
McDonnell Boehnen Hulbert & Berghoff LLP
300 South Wacker Drive
Chicago, IL 60606
(312) 913-0001

Dated: March 31, 2008
858115

POTTER ANDERSON & CORROON LLP


By: _____
     Philip A. Rovner (#3215)
     Hercules Plaza
     P.O. Box 951
     Wilmington, DE 19899-0951
     (302) 984-6000
     provner@potteranderson.com

*Attorney for Plaintiffs*
*Roche Diagnostics Operations, Inc., and*
*Corange International Limited*

17

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, Philip A. Rovner, hereby certify that on March 31, 2008, the within document

was served on the following counsel of record, at the addresses and in the manner

indicated:

### BY HAND DELIVERY AND E-MAIL

Frederick L. Cottrell, III, Esq.
Anne Shea Gaza, Esq.
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, DE 19801
cottrell@rlf.com
gaza@rlf.com

John W. Shaw, Esq.
Jeffrey T. Castellano, Esq.
Young Conaway Stargatt & Taylor, LLP
1000 West Street, 17th Floor
Wilmington, DE 19801
jshaw@ycst.com
jcastellano@ycst.com

Mary W. Bourke, Esq.
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 N. Orange Street
Wilmington, DE 19801
mbourke@cblh.com

Rodger D. Smith, Esq.
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
rsmith@mnat.com

Steven J. Balick, Esq.
John G. Day, Esq.
Ashby & Geddes
500 Delaware Avenue
8th Floor
P.O. Box 1150
Wilmington, DE 19899
sbalick@ashby-geddes.com
jday@ashby-geddes.com

**BY E-MAIL**

| | |
|---|---|
| Edward A. Mas, II, Esq. | Wesley E. Overson, Esq. |
| Stephen F. Sherry, Esq. | Rachel Krevans, Esq. |
| Kirk Vander Leest, Esq. | Jason R. Bartlett, Esq. |
| James M. Hafertepe, Esq. | Parisa Jorjani, Esq. |
| Merle S. Elliott, Esq. | Daniel P. Muino, Esq. |
| McAndrews, Held & Malloy, Ltd. | Morrison & Foerster LLP |
| 500 West Madison Street | 425 Market Street |
| 34th Floor | San Francisco, CA 94105-2482 |
| Chicago, IL 60661 | woverson@mofo.com |
| emas@mcandrews-ip.com | rkrevans@mofo.com |
| ssherry@mcandrews-ip.com | jasonbartlett@mofo.com |
| kvanderleest@mcandrews-ip.com | pjorjani@mofo.com |
| jhafertepe@mcandrews-ip.com | dmuino@mofo.com |
| melliott@mcandrews-ip.com | |
| | |
| Kenneth P. George, Esq. | Michael G. Adams, Esq. |
| Joseph M. Casino, Esq. | Ashley L. Ellis, Esq. |
| Amster, Rothstein & Ebenstein LLP | Parker Poe Adams & Bernstein LLP |
| 90 Park Avenue | Three Wachovia Center, Suite 3000 |
| New York, NY 10016 | 401 South Tryon Street |
| kgeorge@arelaw.com | Charlotte, NC 28202 |
| jcasino@arelaw.com | mikeadams@parkerpoe.com |
| | ashleyellis@parkerpoe.com |
| | |
| Bradford J. Badke, Esq. | |
| Sona De, Esq. | |
| Michael Kahn, Esq. | |
| Ropes & Gray LLP | |
| 1211 Avenue of the Americas | |
| New York, NY 10036-8704 | |
| Jim.badke@ropesgray.com | |
| Sona.de@ropesgray.com | |
| Michael.kahn@ropesgray.com | |

/s/ Philip A. Rovner
Philip A. Rovner (#3215)
Potter Anderson & Corroon LLP
Hercules Plaza
P.O. Box 951
Wilmington, Delaware 19899
(302) 984-6000
E-mail: provner@potteranderson.com

-2-

# EXHIBIT R

Westlaw.

18 Fed.Appx. 814                                                                      Page 1
18 Fed.Appx. 814, 2001 WL 929708 (C.A.Fed.)
**(Cite as: 18 Fed.Appx. 814)**

▷
Marynard v. Philadelphia Cervical Collar Co., Inc.
C.A.Fed.,2001.
This case was not selected for publication in the
Federal Reporter.NOTE: This disposition is nonprecedential.
United States Court of Appeals,Federal Circuit.
Steven MAYNARD, Plaintiff-Appellant,
v.
PHILADELPHIA CERVICAL COLLAR COMPANY, INC., Charles Greiner and Company, Inc.,
Salvatore Calabrese, Anthony Calabrese, Carolyn
Calabrese, and Rita Calabrese, Defendants-Appellees,
andFrank Gramaglia, and Joseph Gramaglia, Defendants-Appellees,
andAnthony Calabrese (Grandchildren and Great
Grandchildren of), Ernest Gramaglia, Elvira
Gramaglia, Lisa Small, and Sue Druskoczi, Defendants.
No. 00-1555.

DECIDED: Aug. 15, 2001.

Patent infringement complaint was dismissed by the
United States District Court for the Eastern District
of Kentucky for lack of jurisdiction, and plaintiff
appealed. The Court of Appeals for the Federal Circuit held that: (1) under due process standards, specific jurisdiction did not exist in Kentucky as to
corporation, on grounds corporation sent plaintiff a
letter proposing a possible business venture and
created a general access web page, or on ground
plaintiff was able to purchase corporation's product
in Kentucky; (2) individual's isolated act of sending
a letter to plaintiff in Kentucky was insufficient; (3)
district court lacked jurisdiction over corporation
which had merged into the other corporation; and
(4) court did not have jurisdiction over individuals
who had previously owned stock in the corporation.

Affirmed.

West Headnotes

**[1] Courts 106 ⧉12(2.1)**

106 Courts
  106I Nature, Extent, and Exercise of Jurisdiction
in General
    106k10 Jurisdiction of the Person
      106k12 Domicile or Residence of Party
        106k12(2) Actions by or Against Nonresidents; "Long-Arm" Jurisdiction in General
          106k12(2.1) k. In General. Most
Cited Cases
Kentucky's long-arm statute extends personal jurisdiction over nonresidents only to the limits of the
Constitution's due process clause, and thus, the analysis of whether the court has personal jurisdiction
over an out-of-state party merges into the single
question of whether the jurisdiction sought is within the requirements of due process under the Constitution. U.S.C.A. Const.Amend. 14; KRS
454.210.

**[2] Constitutional Law 92 ⧉3964**

92 Constitutional Law
  92XXVII Due Process
    92XXVII(E) Civil Actions and Proceedings
      92k3961 Jurisdiction and Venue
        92k3964 k. Non-Residents in General.
Most Cited Cases
  (Formerly 92k305(5))
"Specific jurisdiction" exists, consistent with due
process, when a non-resident defendant deliberately
establishes minimum contacts with the forum state,
the cause of action arises out of such contacts, and
the exercise of jurisdiction is constitutionally reasonable. U.S.C.A. Const.Amend. 14.

**[3] Constitutional Law 92 ⧉3965(4)**

92 Constitutional Law
  92XXVII Due Process
    92XXVII(E) Civil Actions and Proceedings
      92k3961 Jurisdiction and Venue
        92k3965 Particular Parties or Circum-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

stances
                92k3965(4) k. Manufacture, Distri-
bution, and Sale. Most Cited Cases
    (Formerly 92k305(6))

**Patents 291 ☞288(3)**

291 Patents
    291XII Infringement
        291XII(C) Suits in Equity
            291k288 Jurisdiction
                291k288(3) k. Residence and Place of
Infringement. Most Cited Cases
Under due process standards, specific jurisdiction
did not exist in Kentucky as to corporation, for pur-
poses of patent infringement suit, on grounds cor-
poration sent plaintiff a letter proposing a possible
business venture between the two parties, more
than two years before the alleged patent was in-
fringed and six years before the complaint was
filed, and created a general access web page to
provide information, or on ground plaintiff was
able to purchase corporation's product in Kentucky,
where plaintiff ordered this product from a third-
party distributor and initiated the sale himself, and
corporation did not contact users in Kentucky, did
not allow users to enter into contractual agreements
with the company, and did not target its advertise-
ments towards residents in Kentucky. U.S.C.A.
Const.Amend. 14.

**[4] Constitutional Law 92 ☞3965(1)**

92 Constitutional Law
    92XXVII Due Process
        92XXVII(E) Civil Actions and Proceedings
            92k3961 Jurisdiction and Venue
                92k3965 Particular Parties or Circum-
stances
                92k3965(1) k. In General. Most
Cited Cases
    (Formerly 92k305(5))
A passive website is insufficient to establish pur-
poseful availment for the purpose of subjecting
party to jurisdiction in another state, consistent with
due process. U.S.C.A. Const.Amend. 14.

**[5] Constitutional Law 92 ☞3965(4)**

92 Constitutional Law
    92XXVII Due Process
        92XXVII(E) Civil Actions and Proceedings
            92k3961 Jurisdiction and Venue
                92k3965 Particular Parties or Circum-
stances
                92k3965(4) k. Manufacture, Distri-
bution, and Sale. Most Cited Cases
    (Formerly 92k305(5))

**Federal Courts 170B ☞76.5**

170B Federal Courts
    170BII Venue
        170BII(A) In General
            170Bk76 Actions Against Non-Residents;
"Long-Arm" Jurisdiction in General
                170Bk76.5 k. Contacts with Forum
State. Most Cited Cases
    (Formerly 170Bk76.15)
Introducing a product into a stream of commerce is
insufficient to establish personal jurisdiction in an-
other state, and there must be an additional act to
satisfy due process requirements. U.S.C.A.
Const.Amend. 14.

**[6] Constitutional Law 92 ☞3965(10)**

92 Constitutional Law
    92XXVII Due Process
        92XXVII(E) Civil Actions and Proceedings
            92k3961 Jurisdiction and Venue
                92k3965 Particular Parties or Circum-
stances
                92k3965(10) k. Representatives of
Organizations; Officers, Agents, and Employees.
Most Cited Cases
    (Formerly 92k305(5))

**Patents 291 ☞288(3)**

291 Patents
    291XII Infringement
        291XII(C) Suits in Equity
            291k288 Jurisdiction

291k288(3) k. Residence and Place of Infringement. Most Cited Cases

Individual's isolated act of sending a letter to plaintiff in Kentucky, while acting as president of defendant corporation, was insufficient to invoke personal jurisdiction over the individual in Kentucky, consistent with due process, in patent infringement suit. U.S.C.A. Const.Amend. 14.

**[7] Constitutional Law 92 ⊂⟩3965(3)**

92 Constitutional Law
    92XXVII Due Process
        92XXVII(E) Civil Actions and Proceedings
            92k3961 Jurisdiction and Venue
                92k3965 Particular Parties or Circumstances
                92k3965(3) k. Business, Business Organizations, and Corporations in General. Most Cited Cases
    (Formerly 92k305(6))

**Patents 291 ⊂⟩288(3)**

291 Patents
    291XII Infringement
        291XII(C) Suits in Equity
            291k288 Jurisdiction
                291k288(3) k. Residence and Place of Infringement. Most Cited Cases

District court in Kentucky lacked personal jurisdiction over company, in patent infringement suit, consistent with due process, where company had no contacts whatsoever with Kentucky and was no longer in existence, but had merged with allegedly infringing corporation three years before the allegedly infringed patents were issued, and approximately seven years before the complaint was filed. U.S.C.A. Const.Amend. 14.

**[8] Patents 291 ⊂⟩288(1)**

291 Patents
    291XII Infringement
        291XII(C) Suits in Equity
            291k288 Jurisdiction

291k288(1) k. In General. Most Cited Cases

Kentucky did not have personal jurisdiction over family members in patent infringement suit, on ground each family member owned an interest in allegedly infringing corporation, where all of them sold their entire ownership interest in that corporation over twenty years previously, they were no longer involved with the company, and one of them was deceased.

**[9] Federal Civil Procedure 170A ⊂⟩1269.1**

170A Federal Civil Procedure
    170AX Depositions and Discovery
        170AX(A) In General
            170Ak1269 Grounds and Objections
                170Ak1269.1 k. In General. Most Cited Cases

**Federal Civil Procedure 170A ⊂⟩1828**

170A Federal Civil Procedure
    170AXI Dismissal
        170AXI(B) Involuntary Dismissal
            170AXI(B)5 Proceedings
                170Ak1827 Determination
                170Ak1828 k. Time of Determination; Reserving Decision. Most Cited Cases

Plaintiff was not entitled to conduct discovery concerning the jurisdictional facts prior to dismissal of complaint for lack of jurisdiction, where the district court expressly found that there was no reasonable basis to expect that discovery would reveal contacts sufficient to meet the due process requirements to support personal jurisdiction.

**\*815** Before MAYER, Chief Judge, NEWMAN and CLEVENGER, Circuit Judges.

PER CURIAM.

**\*\*1** Steven Maynard, *pro se,* seeks review of the June 19, 2000, order by the United States District Court for the Eastern District of Kentucky, adopting the February 3, 2000 and May 26, 2000, proposed findings of fact and recommendations of the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

18 Fed.Appx. 814                                                                                  Page 4
18 Fed.Appx. 814, 2001 WL 929708 (C.A.Fed.)
(Cite as: 18 Fed.Appx. 814)

Magistrate Judge, dismissing Maynard's patent infringement complaint for lack of personal jurisdiction over Philadelphia Cervical Collar Company, Inc. ("Philadelphia Cervical"); Charles Greiner and Company, Inc. ("Greiner Company"); Salvatore Calabrese, Anthony Calabrese (grandchildren and great grandchildren of), the Estate of Anthony Calabrese, Carolyn Calabrese, and Rita Calabrese (collectively, **816** "Calabrese defendants"); and Frank Gramaglia, Joseph Gramaglia, Ernest Gramaglia, and Elvira Gramaglia (collectively, "Gramaglia defendants"). *Maynard v. Philadelphia Cervical Collar Co., Inc. et al.,* No. 99-CV-141 (E.D. Ky. June 19, 2000). We *affirm.*

[1] Kentucky's long-arm statute "extends personal jurisdiction over nonresidents only to the limits of the Constitution's due process clause." *Wright v. Sullivan Payne Co.,* 839 S.W.2d 250, 253 (Ky.1992). Therefore, the analysis of whether the court has personal jurisdiction over an out-of-state party merges "into the single question of whether the jurisdiction sought is within the requirements of due process" under the Constitution. *First Nat'l Bank of Louisville v. J.W. Brewer Tire Co.,* 680 F.2d 1123, 1125 (6th Cir.1982).

[2] Maynard asserts that specific jurisdiction exists over the defendants in Kentucky. Specific jurisdiction exists when a non-resident defendant deliberately establishes minimum contacts with the forum state, the cause of action arises out of such contacts, and the exercise of jurisdiction is constitutionally reasonable. *SeeBurger King Corp. v. Rudzewicz,* 471 U.S. 462, 471-78, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

*Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), recognized that "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Therefore, we address whether the defendants purposely directed their activities at residents of Kentucky.

[3] Maynard asserts that Philadelphia Cervical purposefully directed its activities at residents of Kentucky when it (1) sent a letter to Maynard in Kentucky dated December 1, 1992, (2) maintained an Internet web page, and (3) sold a Philadelphia Cervical product to Maynard in Kentucky. First, Maynard alleges that Philadelphia Cervical sent a letter to him proposing a possible business venture between the two parties. The Magistrate Judge found that this was the only correspondence sent by Philadelphia Cervical to Maynard. Furthermore, the letter was sent to Maynard more than two years before the alleged patent was infringed, six years before this complaint was initially filed.

[4] Second, Maynard relies on *Inset Sys., Inc. v. Instruction Set, Inc.,* 937 F.Supp. 161 (D.Conn.1996), *EDIAS Software Int'l, LLC v. BASIS Int'l Ltd.,* 947 F.Supp. 413 (D.Ariz.1996), and *Heroes, Inc. v. Heroes Found.,* 958 F.Supp. 1, 41 USPQ2d 1513 (D.D.C.1996), for support that maintaining a web page is sufficient to establish jurisdiction. However, in each of these cases, the defendants performed additional acts to purposefully avail themselves of the forum state, such as advertising, *Inset Sys.,* 937 F.Supp. at 164, conducting business transactions with residents of the forum state, *EDIAS Software,* 947 F.Supp. at 421, and soliciting funds from residents in the forum state, *Heroes, Inc.,* 958 F.Supp. at 4-5, 41 USPQ2d at 1517. In the instant case, Philadelphia Cervical simply created a general access web page to provide information. It did not contact users in Kentucky, did not allow users to enter into contractual agreements with the company, and did not target its advertisements towards residents in the forum state. A passive website is insufficient to establish purposeful availment for the purpose of due process. *Cybersell, Inc. v. Cybersell, Inc.,* 130 F.3d 414, 419-20, 44 USPQ2d 1928, 1933 (9th Cir.1997); **817***Mink v. AAAA Dev. LLC,* 190 F.3d 333, 336-337, 52 USPQ2d 1218, 1220-21 (5th Cir.1999) (A website is passive even though it posts information regarding a company's products and services, provides the user with printable forms, and displays the company's contact information.).

18 Fed.Appx. 814    Page 5
18 Fed.Appx. 814, 2001 WL 929708 (C.A.Fed.)
(Cite as: 18 Fed.Appx. 814)

Therefore, Philadelphia Cervical's passive web site is insufficient grounds to establish personal jurisdiction in Kentucky.

**2 [5] Last, Maynard alleges that he was able to purchase a Philadelphia Cervical product in Kentucky. However, Maynard ordered this product from a third-party distributor and initiated the sale himself. Introducing a product into a stream of commerce is insufficient to establish personal jurisdiction-there must be an additional act to satisfy constitutional due process requirements. *See Asahi Metal Indus. Co., Ltd. v.Super. Ct. of California,* 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987).

[6] The district court also dismissed Maynard's complaint against the Calabrese defendants for lack of personal jurisdiction. With the exception of Salvatore Calabrese, none of the Calabrese defendants has ever lived, visited, owned property, conducted business, or otherwise purposely availed themselves of Kentucky's laws. Anthony Calabrese died roughly nine years before the initial complaint was even filed. Maynard asserts that Salvatore Calabrese purposefully availed himself to Kentucky while fulfilling his duties as President of Philadelphia Cervical. Salvatore Calabrese's isolated act of sending a letter to Maynard in Kentucky, while acting as President of Philadelphia Cervical, is insufficient to invoke personal jurisdiction. *See 3D Sys.,* 160 F.3d at 1380, 48 USPQ2d at 1778. Therefore, the district court properly dismissed the Calabrese defendants for lack of personal jurisdiction.

[7] The district court also properly dismissed the Greiner Company for lack of personal jurisdiction because the company had no contacts whatsoever with Kentucky and, furthermore, is no longer in existence. The Greiner Company merged with Philadelphia Cervical three years before the alleged infringed patents were issued, and approximately seven years before Maynard filed this complaint.

[8] Finally, the district court properly dismissed the Gramaglia defendants because there is no evidence

that they purposely availed themselves of Kentucky. Maynard asserts that Kentucky has personal jurisdiction over the Gramaglia defendants because each family member owned an interest in Philadelphia Cervical. However, the district court found that all of the Gramaglia defendants sold their entire ownership interest in Philadelphia Cervical over twenty years ago, and are no longer involved with the company. Additionally, Elvira Gramaglia is deceased.

Because we have found no evidence that Philadelphia Cervical, the Greiner Company, the Calabrese defendants, and the Gramaglia defendants purposely availed themselves of the laws and benefits of conducting business in Kentucky, we conclude that the district court properly found that it lacked personal jurisdiction over them.

[9] Maynard asserts that he should have been permitted to conduct discovery concerning the jurisdictional facts, and that the district court erred when it denied his requests. The district court expressly found that there is no reasonable basis to expect that discovery would reveal contacts sufficient to meet the due process requirements to support personal jurisdiction. We cannot say that the district *818 court's refusal to permit discovery was an abuse of discretion.

C.A.Fed.,2001.
Marynard v. Philadelphia Cervical Collar Co., Inc.
18 Fed.Appx. 814, 2001 WL 929708 (C.A.Fed.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT S

# DECLARATION OF JOHN BACE

I, John Bace, declare as follows:

1.     I am over the age of eighteen and am under no disability which would render me incompetent to make this declaration.  I have personal knowledge of all of the statements made in this declaration.  All of the statements made in this declaration are true and correct.  I am the Vice-President of LS&S, LLC ("LS&S").

2.     On or about March 12, 2008, LS&S received a Subpoena from Roche Diagnostic Operations, Inc. and Corange International Ltd. requesting various documents and deposition testimony relating to LS&S's sales and marketing in Delaware, Maryland and Pennsylvania, as well as LS&S's relationship with Diagnostic Devices, Inc. ("DDI").

3.     In response to the Subpoena, I reviewed LS&S's files, including its sales and marketing records, and determined that LS&S has never sold any DDI Products in Delaware.

4.     LS&S has sent one nationwide mailing of promotional materials relating to a DDI Product, which included only a few individuals or entities in Delaware, and which did not result in any orders from or sales to Delaware.  I have no reason to believe that DDI has any information regarding where this mailing was sent.

5.     DDI has never asked LS&S to market or sell DDI Products in Delaware and DDI does not receive any reports showing where LS&S's customers are located or to which customers DDI Products are sold.

6.     I declare under penalty of perjury that the foregoing is true.

On this 20th day of March, 2008.

John K. Bace
John Bace