## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

ROCHE DIAGNOSTICS OPERATIONS, INC., )
and CORANGE INTERNATIONAL LTD., )
)
      Plaintiffs, )
)
         v. )   C.A. No. 07-753-JJF
)
ABBOTT DIABETES CARE, INC., )
ABBOTT DIABETES CARE SALES CORP., )
BAYER HEALTHCARE, LLC, )
DIAGNOSTIC DEVICES, INC., )
LIFESCAN, INC., and )
NOVA BIOMEDICAL CORP., )
)
      Defendants. )

## PLAINTIFFS' MOTION
## FOR ENTRY OF A PROTECTIVE ORDER

Pursuant to Rule 26(b)(2) of the Federal Rules of Civil Procedure, Plaintiffs Roche

Diagnostics Operations Inc. and Corange International Ltd. (collectively, "Roche") request entry

of the proposed Protective Order attached hereto as Exhibit A.[1]

After many weeks of attempting to negotiate a Protective Order with Defendants that

would be acceptable to all the parties, Roche's efforts failed. Roche believes that its proposal

attached hereto as Exhibit A, agreed to by Abbott, would give each of the parties adequate

protection for all levels of confidential information.

By contrast, the revisions proposed by Defendants Bayer, LifeScan and Nova

(collectively, the "Objecting Defendants") are directly in conflict with Federal Circuit precedent:

1. The Objecting Defendants seek the blanket exclusion of all in-house counsel from the
highest tier of confidential documents ("HIGHLY CONFIDENTIAL") – even in-house

---

[1] Defendants Abbott Diabetes Care, Inc. and Abbott Diabetes Care Sales Corp. (collectively "Abbott") concurs in requesting entry of the proposed Protective Order.

counsel who are not involved in competitive decision-making – in contravention of *U.S. Steel* and its progeny.

2. The Objecting Defendants seek to impose a requirement that in-house counsel – but not outside counsel –sign a declaration stating that they are not involved in, *inter alia,* "patent portfolio management (including patent prosecution and litigation)" and "licensing."

The Objecting Defendants have not provided any basis for the blanket exclusion of in-house counsel from any tier of the Protective Order. Certainly, the specific in-house litigation counsel who have been identified by Roche and Abbott are in the exact same position as outside counsel, and cannot, under the case law, be precluded from access to any level of confidential information under the Protective Order.

Furthermore, the Objecting Defendants seek to impose a requirement that only in-house counsel execute a declaration representing that they are not involved in patent portfolio management or licensing. This requirement is equally inappropriate and hopelessly circular. Indeed, under the Objecting Defendants' proposal, involvement by in-house litigation counsel in this action would produce the illogical result of automatically disqualifying such counsel from access under the Protective Order. That simply makes no sense. Why else would in-house counsel be involved other than to manage the litigation ("patent portfolio management" prohibited under these Defendants' proposal) or help settle the litigation ("licensing," which is also prohibited under the Objecting Defendants' proposal)?

As such, Roche requests that this Court enter the Protective Order – which has been agreed to by Defendant Abbott – attached as Exhibit A.

## I.    NATURE AND STAGE OF THE PROCEEDINGS

On November 21, 2007, Roche Diagnostic Operations, Inc. and Corange International Ltd. filed a complaint alleging that Defendants were infringing several Roche patents through the manufacture, sale, and use of various blood glucose monitoring products. D.I. 1. Although most

2

of the Defendants answered, D.I. 40, 41, 43 and 47, one Defendant, Diagnostics Devices Inc.

("DDI") filed a motion to dismiss the complaint for lack of personal jurisdiction. D.I. 44. That

motion is currently pending.

This Court has ordered phased discovery, with infringement and prior invention issues in

this first phase of discovery, followed by a claim construction proceeding and then by discovery

into validity issues. February 8, 2008 Hearing Transcript, p. 36-38 (Exhibit B). The parties have

begun discovery into the Phase I issues, including interrogatories and document requests.

Responses to some of these interrogatories and document requests have been designated

confidential, and the parties are currently operating under Local Rule 26.2.

## II.  SUMMARY OF THE ARGUMENT

(1)      The blanket exclusion of all in-house counsel from the highest tier of confidential

documents ("HIGHLY CONFIDENTIAL") – even in-house counsel who are not involved in

competitive decision-making – contravenes *U.S. Steel* and its progeny.

(2)      Requiring in-house counsel – but not outside counsel – to sign a declaration

stating that they are not involved in, *inter alia,* "patent portfolio management (including patent

prosecution and litigation)" and "licensing" is not appropriate under the case law.

## III. STATEMENT OF FACTS

On February 14, 2008, Roche provided to Defendants a proposed two-tier Protective

Order. More than four weeks later, Defendants finally responded. The Objecting Defendants –

Bayer, LifeScan and Nova – required two substantial amendments, including (1) a prohibition

against in-house counsel receiving documents designated under the highest tier of

confidentiality, and (2) a prohibition against in-house counsel who are involved, *inter alia*, in

3

"patent portfolio management (including patent prosecution and litigation)" and "licensing" from having access to information under even the lower tier of confidentiality.

Defendant Abbott, on the other hand, concurred in virtually all of Roche's proposed Protective Order, suggesting some "friendly amendments" which Roche has implemented in the proposed Protective Order attached as Exhibit A.[2]  As such the Protective Order proposed by Plaintiffs has been agreed to by Abbott.

Roche provided a further draft of this proposed Protective Order to all of the Defendants and made a reasonable effort to reach agreement with the Objecting Defendants on the matters set forth herein, but no agreement could be reached with Bayer, LifeScan or Nova, necessitating this motion.[3]

## IV.  ARGUMENT

### (A)  The Objecting Defendants' Blanket Exclusion Of In-House Counsel From Having The Same Access As Outside Counsel Contravenes Controlling Case Law

As this Court held in *Affymetrix, Inc., v. Illumina, Inc.*, No. 04-901-JJF, 2005 U.S. Dist. LEXIS 15482, at *6 (D. Del. July 28, 2005) (Farnan, J.), "[t]he question of whether to allow in-house counsel access to materials under a protective order is governed by the factual circumstances surrounding each individual counsel's activities, association and relationship with a party, and not the attorney's status as in-house or outside counsel." (*Citing U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468 (Fed. Cir. 1984)).   Indeed, as the Federal Circuit held in *U.S. Steel*, "denial or grant of access . . . cannot rest on a general assumption that one group of

---

[2] For example, Roche proposed that up to one in-house counsel have access to confidential information; Abbott, by contrast, sought to have up to three in-house counsel, an amendment to which Roche agreed and which is reflected in Exhibit A, Section 4.2.

[3] Despite having joined the other defendants in serving shared interrogatories on Roche, DDI takes the position that it is not currently part of the case, and thus its consent is not required.  To the extent that the Court wants to know DDI's deeper position on the matter, DDI agrees with the positions of the Bayer, LifeScan, and Nova defendants.

lawyers is more likely or less likely inadvertently to breach their duty under a protective order."
730 F.2d at 1468 (vacating the district court's "denial of access sought by in-house counsel on
the sole ground of their status as in-house counsel"). *See also Matsushita Elec. Indus. Co. v.
United States*, 929 F.2d 1577, 1579-80 (Fed. Cir. 1991) (reversing District Court's decision
barring in-house counsel and corporate officer from access to confidential information under a
Protective Order in an ITC action). Yet the Objecting Defendants' proposed restrictions
precluding access of in-house counsel to documents designated under the highest tier is the very
type of blanket restriction prohibited by *U.S. Steel.*

As this Court has noted, the primary issue that must be resolved under the case law is
whether in-house counsel (or anyone who is to be given access to confidential information) is in
a "competitive decision making" capacity.    *Affymetrix*, 2005 U.S. Dist. LEXIS 15482, at *6-7. .
*See also U.S. Steel*, 730 F.2d at 1468 and n.3. As defined in *U.S. Steel*, "competitive decision
making" is "shorthand for a counsel's activities, association, and relationship with a client that
are such as to involve counsel's advice and participation in any or all of the client's decisions
(pricing, product design, etc.) made in light of similar or corresponding information about a
competitor." *Id.* at n.3.

The proposed Protective Order at issue requires that in-house counsel sign a declaration
stating that they are not in a "competitive decision-making capacity" and agree to maintain all
confidential information produced in this case in password-protected files. *See* Ex. A, Sections
4.2(b) and 4.3(b).  The proposed Protective Order also directly follows the holding in *U.S. Steel*
by defining "competitive decision-making" as including "advice, participation, or role in the
client's decisions about pricing, marketing, product design, or scientific research made in light of
similar or corresponding information about a competitor in blood glucose products." *See* Ex. A,

5

Section 4.2(b).   Under *U.S. Steel* and *Affymetrix*, this proposed Protective Order provides ample protection for the confidential information of the parties.

In fact, the circumstances of this case are virtually identical to those in *Affymetrix*.  Nancy Tinsley, the Roche employee who would currently have access under the proposed Protective Order, is the equivalent of a litigation unit within Roche.  Tinsley Decl., ¶ 5.   Until very recently, when she was hired to manage IP litigation for Roche, she was at an outside law firm, working virtually entirely as a litigator.  Tinsley Decl., ¶ 3.  She has already appeared in this action, and is therefore subject to this Court's jurisdiction for purposes of enforcement of any provision of the Protective Order.  Tinsley Decl., ¶ 7.  She has stated that she can and will keep materials on her personal hard drive or in password-protected files.  Tinsley Decl., ¶ 8.  Impeding her ability to have access to all documents in the case – regardless of their level of confidentiality – will preclude her from being fully involved in managing the litigation for Roche and will deny Roche its choice of counsel.

As such, the provisions in Roche's proposed Protective Order provide ample safeguards for each of the parties to protect their confidential information, whereas the Objecting Defendants' blanket exclusion of in-house counsel runs directly contrary to the case law of this district and the Federal Circuit.

### (B)   The Objecting Defendants' Imposition of Requirements On In-House Counsel That Are Inconsistent With Those Of Outside Counsel Is Equally Inappropriate

The Objecting Defendants have insisted that Section 4.2 (b) be amended to require that, in order to have access to CONFIDENTIAL information under the Protective Order, in-house counsel must execute a declaration as follows:

> Each individual designated under this paragraph shall submit to the producing party a sworn declaration establishing that he or she is not involved in competitive decision-making, product development or design,

> *patent portfolio management (including patent prosecution and litigation), licensing, pricing, or sales with regard to blood glucose products, prior to receiving any CONFIDENTIAL information of the producing party.*

Hutz and Muino E-mails, (Exhibit C) (emphasis added).

The prohibitions against "patent portfolio management (including patent prosecution and litigation)" and "licensing" contained in the Objecting Defendants' proposal are particularly troubling.   Taken literally, this provision says that the in-counsel who gets access under this provision for this litigation must not be involved in litigation management.  That obviously makes no sense.  Moreover, such restrictions might prevent in-house counsel from participating in Abbott's reexamination proceeding of the patents in suit which is running concurrent with this litigation.  This also makes no sense.  Still further, Defendants' proposal would have the effect of barring in-house counsel from participating in any potential settlement negotiations that involve "licensing" of the patent in suit.

The bottom line is that the Objecting Defendants cannot cite any basis for denying in-house counsel from having the same access as Counsel of Record, under the same condition, *i.e.*, not involved in competitive decision-making by the business entity.   Roche's proposed Protective Order – which has Abbott's concurrence – provides adequate protection under the case law for each of the parties' confidential information.

## V.  CONCLUSION

For at least the foregoing reasons, Roche respectfully requests that the Court enter the

Protective Order attached hereto as Exhibit A, with which Defendant Abbott concurs.


OF COUNSEL:                                    POTTER ANDERSON & CORROON LLP

Daniel A. Boehnen
Grantland G. Drutchas
McDonnell Boehnen Hulbert & Berghoff LLP       By: _____
300 South Wacker Drive                              Philip A. Rovner (#3215)
Chicago, IL 60606                                   Hercules Plaza
(312) 913-0001                                      P.O. Box 951
                                                    Wilmington, DE 19899-0951
Dated:  April 11, 2008                              (302) 984-6000
859840                                              provner@potteranderson.com

*Attorney for Plaintiffs*
*Roche Diagnostics Operations, Inc. and*
*Corange International Limited*

8

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, Philip A. Rovner, hereby certify that on April 11, 2008, the within document

was filed with the Clerk of the Court using CM/ECF which will send notification of such

filing(s) to the following; that the document was served on the following counsel as

indicated; and that the document is available for viewing and downloading from

CM/ECF.

**BY HAND DELIVERY AND E-MAIL**

Frederick L. Cottrell, III, Esq.
Anne Shea Gaza, Esq.
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, DE  19801
cottrell@rlf.com
gaza@rlf.com

Mary W. Bourke, Esq.
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 N. Orange Street
Wilmington, DE  19801
mbourke@cblh.com

Steven J. Balick, Esq.
John G. Day, Esq.
Ashby & Geddes
500 Delaware Avenue
8th Floor
P.O. Box 1150
Wilmington, DE  19899
sbalick@ashby-geddes.com
jday@ashby-geddes.com

**BY HAND DELIVERY AND E-MAIL**

John W. Shaw, Esq.
Jeffrey T. Castellano, Esq.
Young Conaway Stargatt & Taylor, LLP
1000 West Street, 17th Floor
Wilmington, DE  19801
jshaw@ycst.com
jcastellano@ycst.com

Rodger D. Smith, Esq.
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899
rsmith@mnat.com

I hereby certify that on April 11, 2008 the foregoing document was sent by E-mail

to the following non-registered participants:

Edward A. Mas, II, Esq.
Stephen F. Sherry, Esq.
Kirk Vander Leest, Esq.
James M. Hafertepe, Esq.
Merle S. Elliott, Esq.
McAndrews, Held & Malloy, Ltd.
500 West Madison Street
34th Floor
Chicago, IL 60661
emas@mcandrews-ip.com
ssherry@mcandrews-ip.com
kvanderleest@mcandrews-ip.com
jhafertepe@mcandrews-ip.com
melliott@mcandrews-ip.com

Kenneth P. George, Esq.
Joseph M. Casino, Esq.
Amster, Rothstein & Ebenstein LLP
90 Park Avenue
New York, NY 10016
kgeorge@arelaw.com
jcasino@arelaw.com

Bradford J. Badke, Esq.
Sona De, Esq.
Michael Kahn, Esq.
Ropes & Gray LLP
1211 Avenue of the Americas
New York, NY 10036-8704
Jim.badke@ropesgray.com
Sona.de@ropesray.com
Michael.kahn@ropesgray.com

Wesley E. Overson, Esq.
Rachel Krevans, Esq.
Jason R. Bartlett, Esq.
Parisa Jorjani, Esq.
Daniel P. Muino, Esq.
Morrison & Foerster LLP
425 Market Street
San Francisco, CA 94105-2482
woverson@mofo.com
rkrevans@mofo.com
jasonbartlett@mofo.com
pjorjani@mofo.com
dmuino@mofo.com

Michael G. Adams, Esq.
Ashley L. Ellis, Esq.
Parker Poe Adams & Bernstein LLP
Three Wachovia Center, Suite 3000
401 South Tryon Street
Charlotte, NC 28202
mikeadams@parkerpoe.com
ashleyellis@parkerpoe.com

Philip A. Rovner (#3215)
Potter Anderson & Corroon LLP
Hercules Plaza
P.O. Box 951
Wilmington, Delaware 19899
(302) 984-6000
E-mail: provner@potteranderson.com

-2-

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ROCHE DIAGNOSTICS OPERATIONS INC. and CORANGE INTERNATIONAL LTD., | ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. 07-753-JJF |
| v. | ) ) ) | |
| ABBOTT DIABETES CARE, INC., ABBOTT DIABETES CARE SALES CORP., BAYER HEALTHCARE LLC, DIAGNOSTIC DEVICES INC., LIFESCAN INC., and NOVA BIOMEDICAL CORP., | ) ) ) ) ) ) | |
| Defendants. | ) | |

## NOTICE OF MOTION FOR ENTRY OF A PROTECTIVE ORDER

PLEASE TAKE NOTICE that Plaintiffs Roche Diagnostics Operations, Inc. and Corange

International Ltd. ("Roche") will present Roche's Motion for Entry of a Protective Order to the

Court on Friday, May 9, 2008 at 10:00 a.m.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Daniel A. Boehnen
Grantland G. Drutchas
McDonnell Boehnen Hulbert & Berghoff LLP
300 South Wacker Drive
Chicago, IL 60606
(312) 913-0001

Dated: April 11, 2008
859837

By: _____
Philip A. Rovner (#3215)
Hercules Plaza
P.O. Box 951
Wilmington, DE 19899-0951
(302) 984-6000
provner@potteranderson.com

*Attorney for Plaintiffs
Roche Diagnostics Operations, Inc. and
Corange International Limited*

# EXHIBIT A

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROCHE DIAGNOSTICS OPERATIONS, INC., and CORANGE INTERNATIONAL LIMITED, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 07-753-JJF |
| ABBOTT DIABETES CARE, INCORPORATED, ABBOTT DIABETES CARE SALES CORPORATION, BAYER HEALTHCARE, LLC, DIAGNOSTIC DEVICES, INC., LIFESCAN, INCORPORATED, and NOVA BIOMEDICAL CORPORATION, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## PROTECTIVE ORDER

Pursuant to Fed. R. Civ. P. 26(c), the Court finds that good cause exists for entry of a protective order to prevent unauthorized disclosure and use of the parties' trade secrets and other confidential information during and after the course of this litigation.  Accordingly, IT IS HEREBY ORDERED as follows:

### 1.    PURPOSES AND LIMITATIONS

Disclosure and discovery activity in this action are likely to encompass confidential, proprietary, or private information for which special protection from public disclosure and from use for any purpose outside this litigation would be warranted.  Accordingly, the parties hereby stipulate to and petition the court to enter the following Protective Order.  The parties acknowledge that this Order does not confer blanket protections on all disclosures or responses to discovery and that the protection it affords extends only to the limited information or items that are entitled under the applicable legal principles to treatment as confidential.  The parties

further acknowledge, as set forth in Section 9, below, that this Protective Order creates no entitlement to file confidential information under seal; Civil Local Rule 5.1.3 sets forth the procedures that must be followed and reflects the standards that will be applied when a party seeks permission from the court to file material under seal.

2. **DEFINITIONS**

    2.1    **Party**: any party to this action, including all of its officers, directors, employees, consultants, retained experts, and Counsel of Record (and their staff).

    2.2    **Disclosure or Discovery Material**: all items or information, regardless of the medium or manner generated, stored, or maintained (including, among other things, documents, testimony, transcripts, interrogatory answers, responses to requests for admission, pleadings, correspondence, and tangible things) that are produced or generated in disclosures or responses to discovery in this matter.

    2.3    **"CONFIDENTIAL" Information or Items**: non-public Disclosure or Discovery Material (regardless of how generated, stored or maintained) that a party claims in good faith contains or discloses information relating to trade secrets or other confidential research, development, technical or commercial information within the meaning of F.R.Civ.P. 26(c)(1)(G). This material includes, but is not limited to, non-public experiments, technical documents, laboratory notebooks, financial records (including current pricing and financial information), market information, marketing material (including current marketing plans), and customer, distributor, licensee, supplier, and vendor information.

    2.4    **"HIGHLY CONFIDENTIAL" Information or Items**: extremely sensitive **CONFIDENTIAL** information or items whose disclosure to another Party or nonparty would create a substantial risk of serious injury that could not be avoided by less restrictive

2

means, including information pertaining to current manufacturing processes, current costs of goods procurement, and research and development of future products (including, but not limited to, unfiled patent applications).

  2.5  **Receiving Party**: a Party that receives Disclosure or Discovery Material from a Producing Party.

  2.6  **Producing Party**: a Party or non-party that produces Disclosure or Discovery Material in this action.

  2.7.  **Designating Party**: a Party or non-party that designates information or items that it produces in disclosures or in responses to discovery as "**CONFIDENTIAL**" or "**HIGHLY CONFIDENTIAL**."

  2.8  **Protected Material**: any Disclosure or Discovery Material that is designated as "**CONFIDENTIAL**" or as "**HIGHLY CONFIDENTIAL\.**"

  2.9  **Counsel of Record**: outside attorneys who have filed appearances with and been admitted by the Court on behalf of any Party in this action.

  2.10  **Other Counsel**: outside attorneys who have been retained in any capacity by any Party in this action but have not filed an appearance.

  2.11  **Counsel** (without qualifier): Counsel of Record and Other Counsel (as well as their staffs).

  2.12  **Expert**: a person with specialized knowledge or experience in a matter pertinent to the litigation who has been retained by a Party or its counsel to serve as an expert witness or as a consultant in this action, and who is not a past or a current employee of a Party or of a competitor of a Party and who, at the time of retention, is not anticipated to become an

employee of a Party or a competitor of a Party. This definition includes a professional jury or trial consultant retained in connection with this litigation.

    2.13   **Professional Vendors**: persons or entities that provide litigation support services (e.g., photocopying; videotaping; translating; preparing exhibits or demonstrations; organizing, storing, retrieving data in any form or medium; etc.) and their employees and subcontractors.

    3.   **SCOPE**  The protections conferred by this Stipulation and Order cover not only Protected Material (as defined above), but also any information copied or extracted therefrom, as well as all copies, excerpts, summaries, or compilations thereof, plus testimony, conversations, or presentations by parties or counsel that includes Protected Material. Counsel will work together to discuss how to handle confidential information to be presented at hearings or at trial.

    4.  **ACCESS TO AND USE OF PROTECTED MATERIAL**

    4.1   **Basic Principles**.  A Receiving Party may use Protected Material that has been designated in accordance with Section 5 below and has been disclosed or produced by another Party or by a non-party in connection with this case only for prosecuting, defending, or attempting to settle this litigation. Such Protected Material may be disclosed only to the categories of persons and under the conditions described in this Order. When the litigation has been terminated, a Receiving Party must comply with the provisions of section 10.2, below (FINAL DISPOSITION).

    Protected Material must be stored and maintained by a Receiving Party at a location and in a secure manner that ensures that access is limited to the persons authorized under this Order.

4.2    **Disclosure and Use of "CONFIDENTIAL" Information or Items**.

Unless otherwise ordered by the court or permitted in writing by the Designating Party, a

Receiving Party may disclose any information or item designated "**CONFIDENTIAL**" only to:

(a) The Receiving Party's Counsel of Record in this action, as well as

employees of said Counsel of Record to whom it is reasonably necessary to disclose the

information for this litigation.

(b) Up to three (3) in-house attorneys or Other Counsel identified

below (and clerical staff assisting said in-house attorneys or Other Counsel) of the

Receiving Party who (1) have signed the "Acknowledgment and Agreement to Be

Bound" (Exhibit A) and (2) have submitted a sworn declaration to the Producing

Party that he or she does not have a competitive decision-making role for the

Receiving Party prior to receiving any CONFIDENTIAL information of the

Producing Party, and agrees to maintain all confidential information produced in

this action on their personal hard drives or in password-protected files.

Competitive decision-making" for purposes of this Protective Order shall include

"advice, participation, or role in the client's decisions about pricing, marketing,

product design, or scientific research made in light of similar or corresponding

information about a competitor in blood glucose products." Identified In-House

Counsel or Other Counsel:

(1) For Roche: Nancy Tinsley

(2) For Abbott: Jose Rivera, Eric Martin, and Jennifer Oosertbaan,

(3) For Bayer: _____, _____, _____,

5

(4) For Diagnostics Devices: _____, _____,

_____,

(5) For LifeScan: _____, _____, _____,

(6) For Nova: _____, _____, _____

(c) Experts (as defined in this Order) of the Receiving Party (1) to whom disclosure is reasonably necessary for this litigation, (2) who have signed the "Acknowledgement and Agreement to Be Bound" (Exhibit A), and (3) as to whom the procedures set forth in Section 4.5, below, have been followed.

(d) The Court, Court Reporters, and their respective staffs and personnel.

(e) Professional Vendors to whom disclosure is reasonably necessary for this litigation.

(f) During their depositions, witnesses (1) who are the author or prior listed recipients of the **CONFIDENTIAL** document, (2) the original source of the information, or (3) current employees of the Designating Party.  Notwithstanding the foregoing, the questioning attorney may show the **CONFIDENTIAL** document to a former employee of the Designating Party who is not employed by a competitor at the time of deposition, solely to ask the witness preliminary questions to determine authorship, receipt or access to the **CONFIDENTIAL** document.

4.3     **Disclosure and Use of "HIGHLY CONFIDENTIAL" Information or Items**.  Unless otherwise ordered by the court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "**HIGHLY CONFIDENTIAL**" only to:

6

(a) The Receiving Party's Counsel of Record in this action, as well as employees of said Counsel of Record to whom it is reasonably necessary to disclose the information for this litigation.

(b) Any of the three (3) in-house attorneys from each Receiving Party set forth in Section in Section 4.2(b) above who have complied with the requirements of 4.2(b) prior to receiving any HIGHLY CONFIDENTIAL information of the Producing Party.

(c) Experts (as defined in this Order) of the Receiving Party (1) to whom disclosure is reasonably necessary for this litigation, (2) who have signed the "Acknowledgement and Agreement to Be Bound" (Exhibit A), and (3) as to whom the procedures set forth in Section 4.5, below, have been followed.

(d) The Court, Court Reporters, and their respective staffs and personnel.

(e) Professional Vendors to whom disclosure is reasonably necessary for this litigation.

(f) During their depositions, witnesses (1) who are the author or prior listed recipients of the **HIGHLY CONFIDENTIAL** document, (2) the original source of the information, or (3) current employees of the Designating Party.  Notwithstanding the foregoing, the questioning attorney may show the **HIGHLY CONFIDENTIAL** document to a former employee of the Designating Party who is not employed by a competitor at the time of deposition, solely to ask the witness preliminary questions to determine authorship, receipt or access to the **HIGHLY CONFIDENTIAL** document.

4.4    **Procedures for Objecting to Individuals Designated Under Paragraph 4.2(b)**. Parties may object in writing to individuals designated under paragraph 4.2(b) within ten

(10) days of service of the declaration. The designating party shall not disclose

**CONFIDENTIAL** information to a designated individual until ten (10) days have elapsed

following service of the declaration. If an objection to a designated individual is received, the

designating party shall not disclose **CONFIDENTIAL** information to that individual until the

objection is resolved by agreement of the parties or by the Court.

4.5    **Procedures for Approving Disclosure of "CONFIDENTIAL" and**

**"HIGHLY CONFIDENTIAL" Information or Items to "Experts"**

(a) Unless otherwise ordered by the court or agreed in writing by the

Designating Party, a Party that seeks to disclose to an "Expert" (as defined in this Order)

any information or item that has been designated **"CONFIDENTIAL"** or **"HIGHLY**

**CONFIDENTIAL"** first must make a written request to the Designating Party that (1)

sets forth the full name of the Expert and the city and state of his or her primary

residence, (2) attaches a copy of the Expert's current resume, (3) identifies the Expert's

current employer(s), (4) identifies each person or entity from whom the Expert has

received compensation for work in his or her areas of expertise or to whom the expert has

provided professional services at any time during the preceding four years, and (5)

identifies (by name and number of the case, filing date, and location of court) any

litigation in connection with which the Expert has provided any professional services

during the preceding four years.

(b) A Party that makes a request and provides the information specified in

the preceding Section may disclose the subject Protected Material to the identified Expert

unless, within seven calendar days of delivering the request, the Party receives a written

8

objection from the Designating Party. Any such objection must set forth in detail the grounds on which it is based.

(c) A Party that receives a timely written objection must meet and confer with the Designating Party (through direct voice to voice dialogue) to try to resolve the matter by agreement. If no agreement is reached, the Party seeking to make the disclosure to the Expert may file a motion as provided in Civil Local Rule 7 (and in compliance with Civil Local Rule 5.1.3, if applicable) seeking permission from the court to do so. Any such motion must describe the circumstances with specificity, set forth in detail the reasons for which the disclosure to the Expert is reasonably necessary, assess the risk of harm that the disclosure would entail and suggest any additional means that might be used to reduce that risk. In addition, any such motion must be accompanied by a competent declaration in which the movant describes the parties' efforts to resolve the matter by agreement (i.e., the extent and the content of the meet and confer discussions) and sets forth the reasons advanced by the Designating Party for its refusal to approve the disclosure. In any such proceeding the Party opposing disclosure to the Expert shall bear the burden of proving that the risk of harm that the disclosure would entail (under the safeguards proposed) outweighs the Receiving Party's need to disclose the Protected Material to its Expert.

5.  **DESIGNATING PROTECTED MATERIAL**

5.1    **Exercise of Restraint and Care By The Designating Party**. Each Party or non-party that designates information or items for protection under this Order must take care to limit any such designation to specific material that qualifies under the appropriate standards. A Designating Party must take care to designate for protection only those parts of material,

9

documents, items, or oral or written communications that qualify – so that other portions of the material, documents, items, or communications for which protection is not warranted are not swept unjustifiably within the ambit of this Order.

Mass, indiscriminate, or routine designations are prohibited. Designations that are shown to be clearly unjustified, or that have been made for an improper purpose (e.g., to unnecessarily encumber or retard the case development process, or to impose unnecessary expenses and burdens on other parties), expose the Designating Party to sanctions.

If it comes to a Party's or a non-party's attention that information or items that it designated for protection do not qualify for protection at all, or do not qualify for the level of protection initially asserted, that Party or non-party must promptly notify all other parties that it is withdrawing the mistaken designation.

5.2    **Manner and Timing of Designations**. Except as otherwise provided in this Order (see, e.g., second paragraph of section 5.2(a), below), or as otherwise stipulated or ordered, material that qualifies for protection under this Order must be clearly so designated before the material is disclosed or produced. Designation in conformity with this Order requires:

(a) **for information in documentary form** (apart from transcripts of depositions or other pretrial or trial proceedings), that the Producing Party affix the legend "**CONFIDENTIAL**" or "**HIGHLY CONFIDENTIAL**" on each page that contains protected material. If only a portion or portions of the material on a page qualifies for protection, the Producing Party also must clearly identify the protected portion(s) (e.g., by making appropriate markings in the margins) and must specify, for each portion, the level of protection being asserted (either "**CONFIDENTIAL**" or "**HIGHLY CONFIDENTIAL**"). A Party or non-party that makes original documents or

materials available for inspection need not designate them for protection until after the inspecting Party has indicated which material it would like copied and produced. During the inspection and before the designation, all of the material made available for inspection shall be deemed "**HIGHLY CONFIDENTIAL.**" After the inspecting Party has identified the documents it wants copied and produced, the Producing Party must determine which documents, or portions thereof, qualify for protection under this Order, and then, before producing the specified documents, the Producing Party must affix the appropriate legend ("**CONFIDENTIAL**" or "**HIGHLY CONFIDENTIAL**") on each page that contains Protected Material. If only a portion or portions of the material on a page qualifies for protection, the Producing Party also must clearly identify the protected portion(s) (e.g., by making appropriate markings in the margins) and must specify, for each portion, the level of protection being asserted (either "**CONFIDENTIAL**" or "**HIGHLY CONFIDENTIAL**").

(b) **for testimony given in deposition or in other pretrial or trial proceedings**, that the Party or non-party offering or sponsoring the testimony identify on the record, before the close of the deposition, hearing, or other proceeding, all protected testimony, and further specify any portions of the testimony that qualify as either "**CONFIDENTIAL**" or "**HIGHLY CONFIDENTIAL**" Furthermore, any party may, at any point in time up to and including 20 days after receipt of a deposition transcript, designate the entire transcript or portions thereof under the appropriate level of protection under this Protective Order.

Transcript pages containing Protected Material should be identified with the legend "**CONFIDENTIAL**" or "**HIGHLY CONFIDENTIAL**," as instructed by the Party or nonparty offering or sponsoring the witness or presenting the testimony.

(c) **for information produced in some form other than documentary, and for any other tangible item**s, that the Producing Party must take reasonable steps to provide notice prominently with respect to such information; for example, by affixing in a prominent place on the exterior of the container or containers in which the information or item is stored the legend "**CONFIDENTIAL**" or "**HIGHLY CONFIDENTIAL**." If only portions of the information or item warrant protection, the Producing Party, to the extent practicable, shall identify the protected portions, specifying whether they qualify as "**CONFIDENTIAL**" or as "**HIGHLY CONFIDENTIAL**."

5.3    **Inadvertent Failures to Designate**.  If timely corrected, an inadvertent failure to designate qualified information or items as "**CONFIDENTIAL**" or as "**HIGHLY CONFIDENTIAL**" does not, standing alone, waive the Designating Party's right to secure protection under this Order for such material.  If material is appropriately designated as "**CONFIDENTIAL**" or as "**HIGHLY CONFIDENTIAL**" after the material was initially produced, the Receiving Party, on timely notification of the designation, must make reasonable efforts to assure that the material is treated in accordance with the provisions of this Order.

5.4    **Limits on Confidential Information.**  Information is not Protected Material under this Protective Order which (a) is shown by contemporaneous documentation of the Receiving Party to have been in its possession prior to receipt from the Producing Party; or (b) becomes, through no fault of the Receiving Party, publicly known; or (c) is furnished to the

12

Receiving Party by a third party without breach of a duty to the Producing Party; or (d) is

independently developed by the Receiving Party without access to the Protected Information.

6. **CHALLENGING CONFIDENTIALITY DESIGNATIONS**

6.1 **Timing of Challenges**. A challenge to a Designating Party's

confidentiality designation should normally be raised promptly after the Receiving Party

becomes aware that it disagrees with the Designating Party's confidentiality designation.

However, a Party that elects not to mount a challenge promptly after the original designation is

disclosed does not thereby waive its right to later challenge a confidentiality designation if the

Court determines that circumstances taken as a whole preserve substantial fairness, avoid

unnecessary economic burdens, and is warranted to prevent significant disruption or delay of the

litigation.

6.2 **Meet and Confer**. A Party that elects to initiate a challenge to a

Designating Party's confidentiality designation must do so in good faith and must begin the

process by conferring directly (in voice to voice dialogue; other forms of communication are not

sufficient) with counsel for the Designating Party. In conferring, the challenging Party must

explain the basis for its belief that the confidentiality designation was not proper and must give

the Designating Party an opportunity to review the designated material, to reconsider the

circumstances, and, if no change in designation is offered, to explain the basis for the chosen

designation. A challenging Party may proceed to the next stage of the challenge process only if it

has first engaged in this meet and confer process.

6.3 **Judicial Intervention**. A Party that elects to press a challenge to a

confidentiality designation after considering the justification offered by the Designating Party

may file and serve a motion under Civil Local Rule 7 (and in compliance with Civil Local Rule

5.1.3, if applicable) that identifies the challenged material and sets forth in detail the basis for the challenge. Each such motion must be accompanied by a competent declaration that the movant has complied with the meet and confer requirements imposed in the preceding paragraph and that sets forth with specificity the justification for the confidentiality designation that was given by the Designating Party in the meet and confer dialogue.

The burden of persuasion in any such challenge proceeding shall be on the Designating Party. Until the court rules on the challenge, all parties shall continue to afford the material in question the level of protection to which it is entitled under the Producing Party's designation.

7.  **PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER LITIGATION.**    If a Receiving Party is served with a subpoena or a document demand issued in other litigation that would compel disclosure of any information or items designated in this action as "**CONFIDENTIAL**" or "**HIGHLY CONFIDENTIAL**," the Receiving Party must so notify the Designating Party in writing (by fax, if possible) immediately and in no event more than three court days after receiving the subpoena or demand. Such notification must include a copy of the subpoena or document demand.

The Receiving Party also must immediately inform in writing the person who caused the subpoena or document demand to issue in the other litigation that some or all the material covered by the subpoena or demand is the subject of this Protective Order. In addition, the Receiving Party must deliver a copy of this Protective Order promptly to the Party in the other action that caused the subpoena or demand to issue.

The purpose of imposing these duties is to alert the interested parties to the existence of this Protective Order and to afford the Designating Party in this case an opportunity to try to

protect its confidentiality interests in the court from which the subpoena or document demand issued. The Designating Party shall bear the burdens and the expenses of seeking protection in that court of its confidential material – and nothing in these provisions should be construed as authorizing or encouraging a Receiving Party in this action to disobey a lawful directive from another court.

8. **UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL.** If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Protected Material to any person or in any circumstance not authorized under this Protective Order, the Receiving Party must immediately (a) notify in writing the Designating Party of the unauthorized disclosures, (b) use its best efforts to retrieve all copies of the Protected Material, (c) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Order, and (d) request such person or persons to execute the "Acknowledgment and Agreement to Be Bound" that is attached hereto as Exhibit A.

9. **FILING PROTECTED MATERIAL.** A Party that seeks to file under seal any Protected Material must comply with Civil Local Rule 5.1.3. If Protected Material comprises only a portion of the pleading or other document to be filed, the filing party shall simultaneously file and/or serve a redacted version of the pleading or other document, redacting only the Protected Material.

10. **TERM AND TERMINATION**

10.1 **Duration.** Even after the termination of this litigation, the confidentiality obligations imposed by this Order shall remain in effect until a Designating Party agrees otherwise in writing or a court order otherwise directs or the underlying material becomes public through no action of the Receiving Party.

10.2 **Final Disposition.** Unless otherwise ordered or agreed in writing by the Producing Party, within sixty days after the final termination of this action, including exhaustion of all rights to appeal, each Receiving Party must return all Protected Material to the Producing Party. As used in this subdivision, "all Protected Material" includes all copies, abstracts, compilations, summaries or any other form of reproducing or capturing any of the Protected Material. With permission in writing from the Designating Party, the Receiving Party may destroy some or all of the Protected Material instead of returning it. Whether the Protected Material is returned or destroyed, the Receiving Party must submit a written certification to the Producing Party (and, if not the same person or entity, to the Designating Party) by the sixty day deadline that identifies (by category, where appropriate) all the Protected Material that was returned or destroyed and that affirms that the Receiving Party has not retained any copies, abstracts, compilations, summaries or other forms of reproducing or capturing any of the Protected Material. Notwithstanding this provision, Counsel are entitled to retain an archival copy of all pleadings, motion papers, transcripts, legal memoranda, correspondence or attorney work product, even if such materials contain Protected Material. Any such archival copies that contain or constitute Protected Material remain subject to this Protective Order as set forth in Section 4, above.

11. **MISCELLANEOUS**

11.1 **Right to Further Relief**. Nothing in this Order limits the right of any person to seek modification of this Order by the Court in the future.

1.  11.2 **Right to Assert Other Objections.** By stipulating to the entry of this Protective Order no Party waives any right it otherwise would have to object to disclosing or producing any information or item on any ground not addressed in this Protective Order.

Similarly, no Party waives any right to object on any ground to use in evidence of any of the material covered by this Protective Order. Nothing in this Protective Order shall be construed as a finding that any designated Protected Material actually constitutes or contains proprietary or confidential material or trade secrets. For purposes of this order, "**CONFIDENTIAL**" or "**HIGHLY CONFIDENTIAL**" information shall not include information that (a) has become public knowledge in a manner other than by violation of this Order; (b) is acquired by the Receiving Party from a third party having the right to disclose voluntarily such information or material; (c) was lawfully possessed by the Receiving Party prior to the entry of this Order by the Court; or (d) was lawfully developed by the Receiving Party independent of the information produced under the Protective Order.

      11.3   **Inadvertent Production of Privileged Documents.** If a party through inadvertence produces or provides discovery which it believes is subject to a claim of attorney-client privilege or work product immunity, the Producing Party must promptly give written notice to the Receiving Party or parties that the information or material is subject to a claim of attorney-client privilege or work product immunity and request that the information or material be returned to the Producing Party. The Receiving Party or parties shall return to the Producing Party such information or material. Such inadvertent production of privileged material shall not be deemed a waiver of any asserted privilege or protection. Return of the information or material by the Receiving Party shall not constitute an admission or concession, or permit any inference, that the returned information or material is, in fact, properly subject to a claim of attorney-client privilege or work product immunity nor shall it foreclose any Party from moving the court for an order that such information or material has been improperly designated or should be producible for reasons other than a waiver caused by the inadvertent production.

11.4    **Advice to Clients**. Nothing in this Protective Order shall bar or otherwise restrict any attorney for the parties from rendering advice to his or her client with respect to this action. In the course of doing so, said attorney may generally refer to or rely upon his or her examination of Protected Material, but shall not disclose the specific contents of the Protected Material to persons not authorized to receive such Protected Material pursuant to this Protective Order, except by written agreement with counsel for the Designating Party.

11.5    **Non-Parties**. The terms of this Protective Order are applicable to Protected Material produced by a non-party, and a party or a non-party may designate material produced in connection with this litigation as "**CONFIDENTIAL**" or "**HIGHLY CONFIDENTIAL**" information. Such material so designated will be protected by the remedies and relief provided by the Protective Order.

IT IS SO ORDERED.

Dated: _____    _____

The Honorable Joseph J. Farnan, Jr.
United States District Judge

18

## EXHIBIT A

## ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND

I, _____[print or type full name], of _____

[print or type full address], declare under penalty of perjury that I have read in its entirety and

understand the Protective Order that was issued by the United States District Court for the

District of Delaware on [--date--] in the case of *Roche Diagnostics Operations, Inc. et al. v.*

*Abbott Diabetes Care et al.*, 07-cv-00753. I agree to comply with and to be bound by all the

terms of this Protective Order and I understand and acknowledge that failure to so comply could

expose me to sanctions and punishment in the nature of contempt. I solemnly promise that I will

not disclose in any manner any information or item that is subject to this Protective Order to any

person or entity except in strict compliance with the provisions of this Order. Nor will I use any

such information for any business purpose other than assisting with the aforesaid litigation.

I further agree to submit to the jurisdiction of the United States District Court for the

District of Delaware for the purpose of enforcing the terms of this Protective Order, even if such

enforcement proceedings occur after termination of this action.

I hereby appoint _____ [print or type full name] of

_____ [print or type full address and telephone number] as

my Delaware agent for service of process in connection with this action or any proceedings

related to enforcement of this Protective Order.


Date: _____

City and State where sworn and signed: _____


Printed name: _____
                        [printed name]

Signature: _____
                    [signature]


859860

19

# EXHIBIT B

1

```
1               IN THE UNITED STATES DISTRICT COURT

2              IN AND FOR THE DISTRICT OF DELAWARE

3                           - - -

4   ROCHE DIAGNOSTICS OPERATIONS,    :    CIVIL ACTION
    INC.                            :
5                                   :
             Plaintiff             :
6                                   :
         vs.                        :
7                                   :
    ABBOTT DIABETES CARE, INC.,     :
8                                   :
    BAYER HEALTHCARE LLC,           :
9                                   :
    DIAGNOSTIC DEVICES INC.         :
10                                  :
    LIFESCAN INC.                   :
11                                  :
        -and-                       :
12                                  :
    NOVA BIOMEDICAL CORPORATION     :
13                                  :
             Defendants             :  No. 07-753-JJF
14

15                          - - -

16                              Wilmington, Delaware
                                February 8, 2008
17                              10:00 o'clock, a.m.
                                Scheduling Conference
18
                            - - -
19
    BEFORE:  HONORABLE JOSEPH J. FARNAN, JR., U.S.D.C.J.
20
                            - - -
21
    APPEARANCES:
22
                 POTTER, ANDERSON & CORROON
23               BY:  PHILIP ROVNER, ESQ

24                   -and-

25               MCDONNELL BOEHNEN HULBERT & BERGHOFF
                 BY: DANIEL A. BOEHNEN, ESQ and
```

2

```
 1                    GRANTLAND G. DRUTCHAS ESQ

 2                        Counsel for Plaintiff

 3          CONNOLLY, BOVE, LODGE & HUTZ
            BY:  ERIC HUTZ, ESQ.,
 4               MARY BOURKE, ESQ., and
                 KRISTIN CRAMER ESQ.
 5
                          Counsel for Roche Diagnostics
 6
            RICHARDS, LAYTON & FINGER
 7          BY: ANNE SHEA GAZA, ESQ

 8                    -and-

 9          MCANDREWS HELD & MALLOY LTD
            BY: STEPHEN F. SHERRY, ESQ., and
10              EDWARD MAS, ESQ

11                    Counsel for Abbott Diabetes

12          MORRIS, NICHOLS, ARSHT & TUNNELL
            BY: RODGER SMITH, ESQ.
13
                      -and-
14
            ROPES & GRAY
15          BY: BRADFORD JIM BADKE, ESQ

16                    Counsel for Nova Biomedical

17          YOUNG, CONAWAY, STARGATT & TAYLOR
            BY: JOHN W. SHAW, ESQ.
18
                      -and-
19
            MORRISON & FOERSTER, LLP
20          BY: RACHEL KREVANS, ESQ., and
                KENNETH GEORGE, ESQ
21
                      Counsel for Bayer
22
            ASHBY & GEDDES
23          BY: STEVEN J. BALICK, ESQ

24                    Counsel for Diagnostic Devices

25                            Leonard A. Dibbs
                              Official Court Reporter
```

1    in effect, have a priority dispute, is like a mini

2    interference proceeding.

3            At this stage, at least from our perspective,

4    none of the defendants have yet indicated to us that they

5    have a prior invention dispute.  They have indicated that

6    there is this prior use, public sale, on sale issue which is

7    part of validity.  This is the first time that there has been

8    a suggestion that there maybe a priority of invention dispute

9    here.

10           Unless and until one of the defendants suggests

11   that there is in fact a priority of invention dispute, we

12   ought to stop wasting a lot of time on that and get back to

13   focusing on the infringement issues.

14           THE COURT:  You can't take invalidity ahead of

15   infringement from my point of view because you can't knock

16   out a patent that you don't infringe even though the Federal

17   Circuit says -- at least one panel says they would like you

18   to do infringement, validity.

19           Again, I revert back.  I would never get an

20   invalidity ruling and then find out there's infringement.

21           You've got to understand you infringe first

22   before you can go and attempt to knock out a patent.

23           I understand from the practical point of view

24   what you're saying.

25           Let me go back to infringement discovery.  I

37

1    don't care if you depose the inventor or not.  I can tell you

2    what the process is going to be.  There's going to be

3    infringement discovery, document production.  Then there's

4    going to be the typical interrogatory requests for admission

5    and deposition discovery.  There will be a closed date of

6    fact discovery on infringement.

7            There will then be claim construction for which

8    you can at a Markman Hearing offer expert testimony or you

9    can in the context of what we do here, pre-Markman briefing

10   -- prehearing briefing, you can present your expert by

11   declaration and then we'll have a Markman Hearing.

12           I'll construe the claims that are disputed or

13   choose not to construe what has been asserted as a disputed

14   claim.  After that you will then go to your infringement

15   experts with my claim construction.  You'll get your expert

16   reports done and your expert depositions.  Then we're going

17   to come back and we're going to decide.

18           If you want to, I'll take your views on whether

19   you want them to immediately proceed to dispositive motion

20   briefing or if you want to proceed to trial or if you want to

21   then have infringement behind you from a pretrial view and

22   move on to the invalidity discovery which will go the same

23   way, except your time frame maybe a tiny bit extended because

24   of the need potentially for third party discovery.

25           And then you'll come to an end of that process

38

1 and you'll either have a trial or you'll have a dispositive

2 motion practice either on infringement and invalidity.  You

3 have infringement and then validity, whatever is left, we'll

4 go to trial on.

5          MR. BOEHNEN:  To my understanding, you're leaving

6 open the possibility of trial being either on all issues at

7 the end on validity and infringement, infringement trial

8 first and then followed by discovery and trial?

9          THE COURT:  Whether the defendants find out if

10 they infringe by a trial or whether they decide that they

11 want their validity case fully discovered, the infringement

12 and validity trials will be separate trials.

13          MR. BOEHNEN:  Okay.

14          MR. DRUTCHAS:  Damages then would be after that?

15          THE COURT:  Damages aren't even in the case

16 today.

17          It will be long after the trials.  I think you

18 might settle once you get the verdict and even an appeal.

19          MR. DRUTCHAS:  Can you give us an overall scope

20 of times that you have in mind for conducting the

21 infringement phase and then the claim construction?

22          THE COURT:  There will be a trial in 14 to 18

23 months from your filing date, which I think was November.

24          MR. DRUTCHAS:  That's on infringement?

25          THE COURT:  Infringement and validity.  When you

# EXHIBIT C

## Oslick, Sherri

| | |
|---|---|
| **From:** | Eric Hutz [EHutz@cblh.com] |
| **Sent:** | Wednesday, April 02, 2008 5:00 PM |
| **To:** | SSHERRY@mcandrews-ip.com; DMuino@mofo.com; Boehnen, Daniel; PJorjani@mofo.com; Cottrell@RLF.com; Mary W. Bourke; rsmith@mnat.com; Sona.De@ropesgray.com; Michael.Kahn@ropesgray.com; gaza@RLF.com; ashleyellis@parkerpoe.com; JSHAW@ycst.com; JasonBartlett@mofo.com; jcasino@ARELAW.com; WOverson@mofo.com; RKrevans@mofo.com; jim.badke@ropesgray.com; kgeorge@ARELAW.com; SBalick@ashby-geddes.com; KVANDERLEEST@mcandrews-ip.com; jday@ashby-geddes.com; lmaguire@ashby-geddes.com |
| **Cc:** | Drutchas, Grantland; Hood, Gary; Keenan, Nicole; Sullivan, Sean; Machonkin, Rick; Fritsch, Paula; nancy.tinsley@roche.com; Brown, Christina; Moran, Eric; provner@potteranderson.com; Oslick, Sherri |
| **Subject:** | RE: Abbott's Comments on Proposed Protective Order - ( Roche v. Abbott et al.) |

Counsel:

Please be advised that Lifescan will not agree to a protective order that does not include a category restricted to outside trial counsel only.  Lifescan does not agree that provisions such as that proposed by Abbott (and Roche) are necessary or appropriate for at least the following reasons:

First, Lifescan does not agree that the manner in which Abbott (or any other party to this action) elects to structure its in-house legal department outweighs Lifescan's legitimate interest in protecting highly sensitive and trade secret information from disclosure to direct competitors.

Second, Lifescan is not willing to grant blanket access to representatives of a direct competitor of any and all confidential information, particularly in the case of co-defendants who, but for being improperly joined in this action, would not be entitled to that information had the cases been filed separately.

Finally, Lifescan does not agree that having an outside trial counsel only category would deprive any party of their right to select counsel.  The terms of the Protective Order proposed by some of the defendants (including Lifescan) would permit in-house counsel access to Confidential information under certain conditions, the definition of Highly Confidential is narrow, and all parties are ably represented by outside trial counsel who are capable of advising their respective clients of the relevant issues without disclosing Highly Confidential information.

Lifescan is also in general agreement with the remainder of Bayer's position as outlined in Dan Muino's email below.

R. Eric Hutz, Esq.
Connolly Bove Lodge & Hutz LLP
The Nemours Bldg.
1007 North Orange Street
P.O.Box 2207
Wilmington, DE 19899
Tel: (302) 888-6230
Fax: (302) 658-5614

**From:** SSHERRY@mcandrews-ip.com [mailto:SSHERRY@mcandrews-ip.com]

**Sent:** Wednesday, April 02, 2008 3:22 PM
**To:** DMuino@mofo.com; Boehnen@mbhb.com; PJorjani@mofo.com; Cottrell@RLF.com; Mary W. Bourke; Eric Hutz; rsmith@mnat.com; Sona.De@ropesgray.com; Michael.Kahn@ropesgray.com; gaza@RLF.com; ashleyellis@parkerpoe.com; JSHAW@ycst.com; JasonBartlett@mofo.com; jcasino@ARELAW.com; WOverson@mofo.com; RKrevans@mofo.com; jim.badke@ropesgray.com; kgeorge@ARELAW.com; SBalick@ashby-geddes.com; KVANDERLEEST@mcandrews-ip.com; jday@ashby-geddes.com; lmaguire@ashby-geddes.com
**Cc:** Drutchas@mbhb.com; hood@mbhb.com; Keenan@mbhb.com; sullivan@mbhb.com; machonkin@mbhb.com; Fritsch@mbhb.com; nancy.tinsley@roche.com; brownc@mbhb.com; moran@mbhb.com; provner@potteranderson.com; oslick@mbhb.com
**Subject:** RE: Abbott's Comments on Proposed Protective Order - ( Roche v. Abbott et al.)

Counsel:

Abbott responds as follows to the email below from Bayer's counsel on the proposed protective order.

- The language suggested by Bayer defeats the purpose of in-house counsel's access to confidential information by excluding the very in house counsel involved with and responsible for managing this patent litigation. But Abbott would accept additional language requiring in house counsel to declare that they are not involved in "product development or design, patent prosecution, licensing, pricing, or sales with regard to blood glucose monitoring."

- The issue of Abbott's in-house counsel having access to Highly Confidential Information has been litigated previously and resulted in a decision out in California supporting Abbott's position (see attached opinion).  If Bayer and others will not withdraw their objection on this issue, it would seem necessary to have Judge Farnan resolve this protective order issue for the Delaware action.

- Finally, Abbott sees no reason why its confidential information produced during discovery in the Delaware patent lawsuit should be available for Bayer and Roche to use in their private arbitration proceeding.  Neither Bayer nor Roche would have access to Abbott's confidential information, but for the existence of the pending Delaware patent lawsuit.  Abbott does not see how its confidential information could in any way be relevant to the arbitration issues between Bayer and Roche.  We are not aware of any legal basis for requiring Abbott to accept use of its confidential information produced during discovery for a purpose outside of and beyond the Delaware litigation.  Accordingly, Abbott will not accept such a provision in the proposed protective order.

Regards,
Steve Sherry

---

**From:** DMuino@mofo.com [mailto:DMuino@mofo.com]
**Sent:** Wednesday, April 02, 2008 1:00 PM
**To:** Steve Sherry; Boehnen@mbhb.com; PJorjani@mofo.com; Cottrell@RLF.com; mbourke@cblh.com; ehutz@cblh.com; rsmith@mnat.com; Sona.De@ropesgray.com; Michael.Kahn@ropesgray.com; gaza@RLF.com; ashleyellis@parkerpoe.com; JSHAW@ycst.com; JasonBartlett@mofo.com; jcasino@ARELAW.com; WOverson@mofo.com; RKrevans@mofo.com; jim.badke@ropesgray.com; kgeorge@ARELAW.com; SBalick@ashby-geddes.com; Kirk Vander Leest; jday@ashby-geddes.com; lmaguire@ashby-geddes.com
**Cc:** Drutchas@mbhb.com; hood@mbhb.com; Keenan@mbhb.com; sullivan@mbhb.com; machonkin@mbhb.com; Fritsch@mbhb.com; nancy.tinsley@roche.com; brownc@mbhb.com; moran@mbhb.com; provner@potteranderson.com; oslick@mbhb.com
**Subject:** RE: Abbott's Comments on Proposed Protective Order - ( Roche v. Abbott et al.)

Counsel,

Bayer cannot accept Abbott's proposal regarding access to Confidential and Highly Confidential information:

- For section 4.2(b) regarding Confidential information, we can agree to increase the number of in-house counsel from 2 to 3, but those individuals must declare that they are not involved in "product development or design,

patent portfolio management (including patent prosecution and litigation), licensing, pricing, or sales with regard to blood glucose products," in addition to "competitive decision-making."

- For section 4.3 regarding Highly Confidential information, we cannot agree to allow in-house attorneys or any employees of competing parties access to the sensitive materials in that category. Given that the Highly Confidential category is limited to only a few types of documents and information, the restriction to "outside counsel only" is not unreasonable.

- Regarding the use of protected material in "any related arbitration proceeding" (set forth in paragraphs 1 and 4.1), we can amend the language to specify "the anticipated arbitration proceeding between Roche and Bayer regarding the 146 and 147 patents." Please let us know if that is acceptable.

**Daniel P. Muino**
Morrison & Foerster LLP
425 Market Street | San Francisco, CA 94105
415.268.7475 | 415.268.7522 fax
dmuino@mofo.com | www.mofo.com


http://www.mcandrews-ip.com

**********************************************

CONFIDENTIALITY NOTICE:

This Material is intended for the named recipient and, unless otherwise expressly indicated, is confidential and privileged information. Any dissemination, distribution or copying of this material is prohibited. If you received this message in error, please notify the sender by replying to this message and then delete it from your system. Your cooperation is appreciated.

**********************************************

This e-mail and any attachment is intended only for use by the addressee(s) and may contain privileged and confidential information. Please email or call 302-658-9141 to advise the sender of a transmission error and delete the message and any attachments and any printouts. Any tax advice contained in this communication is not intended and cannot be used to avoid penalties under the Internal Revenue Code or to promote, market or recommend to another party any transaction or matter addressed herein.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

ROCHE DIAGNOSTICS OPERATIONS, INC.,    )
and CORANGE INTERNATIONAL LTD.,    )
                                   )
        Plaintiffs,                )
                                   )
            v.                     )    C.A. No. 07-753-JJF
                                   )
ABBOTT DIABETES CARE, INC.,        )
ABBOTT DIABETES CARE SALES CORP.,  )
BAYER HEALTHCARE, LLC,             )
DIAGNOSTIC DEVICES, INC.,          )
LIFESCAN, INC., and                )
NOVA BIOMEDICAL CORP.,             )
                                   )
        Defendants.                )

**CERTIFICATION UNDER LOCAL RULE 7.1.1**

On February 14, 2008, Roche provided to Defendants a proposed two-tier Protective

Order. More than four weeks later, Defendants finally responded. The Objecting Defendants –

Bayer, LifeScan and Nova – required amendments that were not acceptable to Roche.

Defendant Abbott, on the other hand, concurred in virtually all of Roche's proposed

Protective Order, suggesting some "friendly amendments" which Roche has implemented in the

proposed Protective Order. As such the Protective Order proposed by Roche has been agreed to

by Abbott.

Roche provided a further draft of this proposed Protective Order to all of the Defendants

and made a reasonable effort to reach agreement with the Objecting Defendants on the matters

set forth herein, but no agreement could be reached with Bayer, LifeScan, Nova or DDI,

necessitating this motion.

OF COUNSEL:

Daniel A. Boehnen
Grantland G. Drutchas
McDonnell Boehnen Hulbert & Berghoff LLP
300 South Wacker Drive
Chicago, IL 60606
(312) 913-0001


Dated:  April 11, 2008
859840

POTTER ANDERSON & CORROON LLP


By: _____
Philip A. Rovner (#3215)
Hercules Plaza
P.O. Box 951
Wilmington, DE 19899-0951
(302) 984-6000
provner@potteranderson.com

*Attorney for Plaintiffs*
*Roche Diagnostics Operations, Inc. and*
*Corange International Limited*