## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROCHE DIAGNOSTICS OPERATIONS, INC., and CORANGE INTERNATIONAL LTD., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 07-753-JJF |
| ABBOTT DIABETES CARE, INC., ABBOTT DIABETES CARE SALES CORP., BAYER HEALTHCARE, LLC, DIAGNOSTIC DEVICES, INC., LIFESCAN, INC., and NOVA BIOMEDICAL CORP., | ) ) ) ) ) ) ) | **PUBLIC VERSION** |
| Defendants. | ) | |

### APPENDIX OF EXHIBITS TO PLAINTIFFS' MOTION TO COMPEL

### VOLUME 1
### EXHIBITS A-M

OF COUNSEL:

Daniel A. Boehnen
Grantland G. Drutchas
McDonnell Boehnen Hulbert & Berghoff LLP
300 South Wacker Drive
Chicago, IL 60606
(312) 913-0001

Philip A. Rovner (#3215)
POTTER ANDERSON & CORROON LLP
Hercules Plaza
P.O. Box 951
Wilmington, DE 19899-0951
(302) 984-6000
provner@potteranderson.com

*Attorney for Plaintiffs*
*Roche Diagnostics Operations, Inc. and*
*Corange International Limited*

Dated:  April 11, 2008
Public Version: April 18, 2008

## Index of Exhibits

Exhibit A:   Proposed Order Compelling Discovery

Exhibit B:   Transcript of February 8, 2008 Hearing

Exhibit C:   Roche Diagnostics Operations, Inc.'s and Corange International Limited's First Set of Requests to Defendant Nova Biomedical Corporation for the Production of Documents and Things (Nos. 1-161)

Exhibit D:   Roche Diagnostics Operations, Inc.'s and Corange International Limited's First Set of Requests to Defendant LifeScan, Inc. for the Production of Documents and Things (Nos. 1-119)

Exhibit E:   Roche Diagnostics Operations, Inc.'s and Corange International Limited's First Set of Requests to Defendant Bayer Healthcare, LLC for the Production of Documents and Things (Nos. 1-119)

Exhibit F:   Roche Diagnostics Operations, Inc.'s and Corange International Limited's First Set of Requests to Defendants Abbott Diabetes Care, Inc. and Abbott Diabetes Care Sales Corporation for the Production of Documents and Things (Nos. 1-127)

Exhibit G:   Roche Diagnostics Operations, Inc.'s and Corange International Limited's First Set of Interrogatories (Nos. 1-27) to Defendant Nova Biomedical Corporation

Exhibit H:   Roche Diagnostics Operations, Inc.'s and Corange International Limited's First Set of Interrogatories (Nos. 1-16) to Defendant LifeScan, Inc.

Exhibit I:   Roche Diagnostics Operations, Inc.'s and Corange International Limited's First Set of Interrogatories (Nos. 1-18) to Defendant Bayer Healthcare, LLC

Exhibit J:   Roche Diagnostics Operations, Inc.'s and Corange International Limited's First Set of Interrogatories (Nos. 1-17) to Defendants Abbott Diabetes Care, Inc. and Abbott Diabetes Care Sales Corporation

Exhibit K:   Letter Dated February 15, 2008, Withdrawing and Limiting Scope of Roche's Discovery Requests

Exhibit L:   Defendant Bayer Healthcare, LLC's Responses to Plaintiffs' First Set of Interrogatories (Nos. 1-18)

Exhibit M:   Defendant Bayer Healthcare, LLC's Responses to Plaintiffs' First Set of Requests for the Production of Documents and Things (Nos. 1-119)

Exhibit N:    LifeScan Inc.'s Responses and Objections to Roche Diagnostics Operations, Inc.'s and Corange International Limited's First Set of Requests for the Production of Documents and Things (Nos. 1-119)

Exhibit O:    Abbott's Responses to Roche's First Set of Requests to Defendants Abbott Diabetes Care, Inc. and Abbott Diabetes Care Sales Corporation for the Production of Documents and Things (Nos. 1-127)

Exhibit P:    LifeScan Inc.'s Responses and Objections to Roche Diagnostics Operations, Inc.'s and Corange International Limited's First Set of Interrogatories (Nos. 1-16)

Exhibit Q:    Abbott's Responses to Plaintiffs' First Set of Interrogatories to Defendants Abbott Diabetes Care, Inc. and Abbott Diabetes Care Sales Corporation (Nos. 1-17)

Exhibit R:    Nova Biomedical Corporation's Responses and Objections to Plaintiffs' First Set of Requests for the Production of Documents and Things (Nos. 1-161)

Exhibit S:    Nova's Responses to Roche's Interrogatories Directed to Roche's Claims (Nos. 1-5, 7-9, 12, 18 and 19)

Exhibit T:    Nova's Responses to Roche's First Set of Interrogatories Directed to Nova's Counterclaims (Nos. 14-17, 20-24 and 26-27)

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I, Philip A. Rovner, hereby certify that on April 18, 2008, the within document

was filed with the Clerk of the Court using CM/ECF which will send notification of such

filing(s) to the following; that the document was served on the following counsel as

indicated; and that the document is available for viewing and downloading from

CM/ECF.

**BY HAND DELIVERY AND E-MAIL**

Frederick L. Cottrell, III, Esq.
Anne Shea Gaza, Esq.
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, DE 19801
cottrell@rlf.com
gaza@rlf.com

Mary W. Bourke, Esq.
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 N. Orange Street
Wilmington, DE 19801
mbourke@cblh.com

Steven J. Balick, Esq.
John G. Day, Esq.
Ashby & Geddes
500 Delaware Avenue
8th Floor
P.O. Box 1150
Wilmington, DE 19899
sbalick@ashby-geddes.com
jday@ashby-geddes.com

**BY HAND DELIVERY AND E-MAIL**

John W. Shaw, Esq.
Jeffrey T. Castellano, Esq.
Young Conaway Stargatt & Taylor, LLP
1000 West Street, 17th Floor
Wilmington, DE 19801
jshaw@ycst.com
jcastellano@ycst.com

Rodger D. Smith, Esq.
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
rsmith@mnat.com

I hereby certify that on April 18, 2008 the foregoing document was sent by E-mail

to the following non-registered participants:

Edward A. Mas, II, Esq.
Stephen F. Sherry, Esq.
Kirk Vander Leest, Esq.
James M. Hafertepe, Esq.
Merle S. Elliott, Esq.
McAndrews, Held & Malloy, Ltd.
500 West Madison Street
34th Floor
Chicago, IL 60661
emas@mcandrews-ip.com
ssherry@mcandrews-ip.com
kvanderleest@mcandrews-ip.com
jhafertepe@mcandrews-ip.com
melliott@mcandrews-ip.com

Kenneth P. George, Esq.
Joseph M. Casino, Esq.
Amster, Rothstein & Ebenstein LLP
90 Park Avenue
New York, NY 10016
kgeorge@arelaw.com
jcasino@arelaw.com

Bradford J. Badke, Esq.
Sona De, Esq.
Michael Kahn, Esq.
Ropes & Gray LLP
1211 Avenue of the Americas
New York, NY 10036-8704
Jim.badke@ropesgray.com
Sona.de@ropesgray.com
Michael.kahn@ropesgray.com

Wesley E. Overson, Esq.
Rachel Krevans, Esq.
Jason R. Bartlett, Esq.
Parisa Jorjani, Esq.
Daniel P. Muino, Esq.
Morrison & Foerster LLP
425 Market Street
San Francisco, CA 94105-2482
woverson@mofo.com
rkrevans@mofo.com
jasonbartlett@mofo.com
pjorjani@mofo.com
dmuino@mofo.com

Michael G. Adams, Esq.
Ashley L. Ellis, Esq.
Parker Poe Adams & Bernstein LLP
Three Wachovia Center, Suite 3000
401 South Tryon Street
Charlotte, NC 28202
mikeadams@parkerpoe.com
ashleyellis@parkerpoe.com

/s/ Philip A. Rovner
Philip A. Rovner (#3215)
Potter Anderson & Corroon LLP
Hercules Plaza
P.O. Box 951
Wilmington, Delaware 19899
(302) 984-6000
E-mail: provner@potteranderson.com

-2-

# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROCHE DIAGNOSTICS OPERATIONS, INC., and CORANGE INTERNATIONAL LTD., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 07-753-JJF |
| ABBOTT DIABETES CARE, INC., ABBOTT DIABETES CARE SALES CORP., BAYER HEALTHCARE, LLC, DIAGNOSTIC DEVICES, INC., LIFESCAN, INC., and NOVA BIOMEDICAL CORP., | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## [PROPOSED] ORDER ON PLAINTIFFS' MOTION TO COMPEL

After consideration of the Plaintiffs' Motion to Compel and briefs filed by the parties in connection with said motion, IT IS ORDERED that:

1. Abbott Diabetes Care, Incorporated, Abbott Diabetes Care Sales Corporation, Bayer Healthcare, LLC, LifeScan, Incorporated, And Nova Biomedical Corporation (hereinafter collectively referred to as the "Answering Defendants") shall, within one (1) week of the entry of this Order, substantially complete their production of documents that are responsive to Plaintiffs' First Set of Document Requests served on January 23, 2008, including the provision of withheld document logs that identify any documents withheld under claim of privilege and the production of any additional documents addressed in the Order below.

2. Each of the Answering Defendants shall produce licenses and other agreements and communications relating thereto that are responsive to Document Requests Nos. 31-35 and 57-60 of Roche's First Set of Document Requests (Nos. 1-119).

3. Bayer shall provide responses to discovery regarding its affirmative defenses to infringement such as laches, waiver, estoppel and unclean hands, which are directed to defenses to infringement and are therefore part of Phase I discovery in this litigation.

4. Bayer shall provide full and complete Phase I discovery regarding any of the accused products supplied from the U.S and sold abroad, which are relevant to infringement under 35 U.S.C. § 271(f).

5. Nova and Abbott shall provide discovery regarding their knowledge of the patents and/or applications at issue, including a log of privileged documents (e.g., opinions) that reference the patents-in-suit or the underlying applications.

6. Each of the Answering Defendants shall produce all responsive documents relating to their decision to commercialize the accused products.

7. Defendants cannot rely on the production of "representative documents" or "documents sufficient to show" specified categories of relevant information. Each of the Answering Defendants shall provide full responses of relevant documents, including all documents relating to (i) communications with distributors, medical personnel, customers, and/or end-users as to the structure, function and operation of the accused meters and strips; (ii) the patents in suit and underlying applications (i.e., "notice" documents); (iii) identification of customers; (iv) research, design and

development of the accused products; (v) FDA files for the accused products, and (vi) the parties' defenses of non-infringement and prior invention.

8.  Nova shall produce documents relating to the structure, function, and operation of products sold prior to January 1, 2007 to the extent that those products are adapted for use with products sold after October 2, 2007 (the issue date of the patents-in-suit).

_____          _____
     DATE                                Joseph J. Farnan, Jr.
                                         United States District Judge

859914

3

# EXHIBIT B

1

```
 1                    IN THE UNITED STATES DISTRICT COURT

 2                    IN AND FOR THE DISTRICT OF DELAWARE

 3                               - - -

 4    ROCHE DIAGNOSTICS OPERATIONS,      :    CIVIL ACTION
      INC.                               :
 5                                       :
                   Plaintiff             :
 6                                       :
                vs.                      :
 7                                       :
      ABBOTT DIABETES CARE, INC.,        :
 8                                       :
      BAYER HEALTHCARE LLC,              :
 9                                       :
      DIAGNOSTIC DEVICES INC.            :
10                                       :
      LIFESCAN INC.                      :
11                                       :
           -and-                         :
12                                       :
      NOVA BIOMEDICAL CORPORATION        :
13                                       :
                   Defendants            :    No. 07-753-JJF
14

15                               - - -

16                                       Wilmington, Delaware
                                         February 8, 2008
17                                       10:00 o'clock, a.m.
                                         Scheduling Conference
18
                                 - - -
19
      BEFORE:  HONORABLE JOSEPH J. FARNAN, JR., U.S.D.C.J.
20
                                 - - -
21
      APPEARANCES:
22
                   POTTER, ANDERSON & CORROON
23                 BY:  PHILIP ROVNER, ESQ

24                          -and-

25                 MCDONNELL BOEHNEN HULBERT & BERGHOFF
                   BY: DANIEL A. BOEHNEN, ESQ and
```

2

```
 1                    GRANTLAND G. DRUTCHAS ESQ

 2                          Counsel for Plaintiff

 3          CONNOLLY, BOVE, LODGE & HUTZ
            BY:  ERIC HUTZ, ESQ.,
 4               MARY BOURKE, ESQ., and
                 KRISTIN CRAMER ESQ.
 5
                            Counsel for Roche Diagnostics
 6
            RICHARDS, LAYTON & FINGER
 7          BY: ANNE SHEA GAZA, ESQ

 8                      -and-

 9          MCANDREWS HELD & MALLOY LTD
            BY: STEPHEN F. SHERRY, ESQ., and
10               EDWARD MAS, ESQ

11                      Counsel for Abbott Diabetes

12          MORRIS, NICHOLS, ARSHT & TUNNELL
            BY: RODGER SMITH, ESQ.
13
                        -and-
14
            ROPES & GRAY
15          BY: BRADFORD JIM BADKE, ESQ

16                      Counsel for Nova Biomedical

17          YOUNG, CONAWAY, STARGATT & TAYLOR
            BY: JOHN W. SHAW, ESQ.
18
                        -and-
19
            MORRISON & FOERSTER, LLP
20          BY: RACHEL KREVANS, ESQ., and
                 KENNETH GEORGE, ESQ
21
                            Counsel for Bayer
22
            ASHBY & GEDDES
23          BY: STEVEN J. BALICK, ESQ

24                      Counsel for Diagnostic Devices

25                              Leonard A. Dibbs
                                Official Court Reporter
```

3

1

2

3                    P R O C E E D I N G S

4            (Court commenced at 10:08 o'clock a.m.)

5            THE COURT:  Good morning, be seated, please.

6            We're here for a scheduling conference.

7            I just had a chance because I hadn't had it

8    before, but I looked at the prepared Scheduling Order that

9    you submitted.

10            Let's have you announce your appearances first.

11            MR. ROVNER: Phil Rovner from Potter, Anderson &

12    Corroon.  With me today is Dan Boehnen and Grantland Drutchas

13    from the law firm of McDonnell Boehnen Hulbert & Berghoff.

14    Also with us is Nancy Tinsley, Counsel for Roche.

15            THE COURT:  Good morning.

16            MR. SMITH: Good morning, your Honor, Rodger Smith

17    from Morris, Nichols.  With me is Brad Badke from the law

18    firm of Ropes & Gray, representing Nova Biomedical

19            THE COURT: Good morning.

20            MR. SHAW:  Good morning, your Honor.  John Shaw

21    from Young, Conaway representing Bayer.  With me today is

22    Rachel Krevans of Morris & Foerster.

23            THE COURT: Good morning.

24            MS. GAZA:  Good morning, your Honor, Ann Gaza

25    from Richards, Layton & Finger.  With me today is Stephen

4

 1    Sherry and Ed Mas of the firm of McAndrews Held & Malloy

 2    of Chicago.  We're here today on behalf of Abbott Diabetes.

 3               THE COURT:  Good morning.  You're glad to be here

 4    in Wilmington.  You probably want to stay.

 5               MR. HUTZ:  Eric Hutz from Connolly, Bove.  With

 6    me today is Mary Bourke and Kristin Cramer.  We're here on

 7    behalf of Defendant Lifescan.

 8               THE COURT:  Good morning.

 9               MR. BALICK:  Good morning, your Honor, Steven

10    Balick of Ashby & Geddes.  I don't have co-counsel with me

11    today, but I'll note my appearance for Diagnostic Devices.

12               THE COURT:  Thank you.

13               Okay.  Because you have a few disagreements, I

14    think what I want to do is give the plaintiff a chance to

15    tell me why -- what's the backdrop of why you take the

16    position you do.  I read what your positions are.

17               It would be helpful to understand why in regards

18    to this case you take that position.

19               We'll give the defendants a chance to tell their

20    side.

21               MR. BOEHNEN:  Good morning, your Honor, Dan

22    Boehnen on behalf or Roche.

23               In relation to the Scheduling Order, I think one

24    of the primary differences is how to conduct pretrial

25    activities.

5

1           Roche's position is that the defendants should

2    conduct coordinated discovery and coordinated Markman claim

3    construction proceedings.

4           Our concern is that the way the defendants have

5    presented it.  They want the discovery limitations for

6    depositions and interrogatories and admissions request to be

7    defined in relation from a propounding party to a propounding

8    party.

9           Under their approach, you know, they would be

10   entitled to ask six times the number of questions so that

11   there could be like a 150 interrogatories to each of the two

12   plaintiff's, 750 requests to admit to each of the plaintiffs,

13   you know, many, many hours of depositions.

14           What we have proposed is that certainly as to

15   issues that are common to the defenses like validity and

16   claim construction -- validity, I choose because that is a

17   situation where the defendants are going to be deposing Roche

18   employees as witnesses.

19           We contend that our employees, the inventors and

20   other people involved in creating the invention here, should

21   not be subjected to multiple depositions or countless hours

22   of depositions.

23           The defendant should be required to conduct

24   depositions, submit interrogatories, admissions requests in a

25   coordinated fashion.  That's what we have tried to propose.

1          Our proposal was that the plaintiffs would be

2    allowed to submit a certain number of deposition requests on

3    each of the defendants.  When we get to infringement, on the

4    other hand, each defendant device, we do have to establish

5    the facts for that individual.  And we would be prepared to

6    accept a fewer number of depositions overall.  But we have

7    for each individual party, we have to be able to conduct a

8    fair number of depositions on each of the products that are

9    accused of infringement.  We do that individually.

10          Likewise, for the other written discovery, we're

11   open to different ways of an approaching that.  That

12   philosophical difference separates the plaintiff from the

13   defendants here.

14          We think discovery should be coordinated and

15   Markman claim construction should be coordinated.  So we

16   proposed eight depositions by the plaintiff on each defendant

17   and the defendants could take ten depositions of us.

18          The defendants on the other hand request a

19   hundred hours per party.  Since there's five defendants, that

20   would give them 500 hours.  We think that's not appropriate.

21          There is also a difference between the parties on

22   claim construction and how to approach claim construction.

23          The defendants have said that they were unwilling

24   to do anything beyond the draft Scheduling Order that the

25   Court had in place at that time which said that will be

1    scheduled at some point at the request of the parties.

2         We had proposed that we set a specific time,

3    certainly a window of time, and that it would be best to have

4    the process similar to the Northern District of California

5    patent rules in which the parties will first exchange a list

6    of the materials that are in dispute, followed quickly by an

7    exchange of a proposed definition of those terms in dispute

8    and then cross briefing on what is the appropriate

9    construction.

10         All of that, of course, to be done before the

11   Court has the hearing.

12         We note that more recently in the middle of last

13   month, the Court has now set out a new proposed draft

14   Scheduling Order.  In that we noted that one of the main

15   differences that the Court now does set a specific time, date

16   for a claim construction proceeding.  We believe that is

17   appropriate.

18         We would ask that you go a little further and

19   also set out the kind of procedure we've set so there's a

20   schedule for identifying the terms, the proposed definitions

21   that are in dispute and the briefing leading up to that.

22         The other things in which the parties differ have

23   to do with things like a protective order.  Both parties

24   agree we need one.  We haven't agreed on the terms.  We

25   submitted a draft to the defendants.  We haven't heard back

8

1    from them yet.

2           Likewise on electronic discovery, how that should

3    be conducted. We requested -- we submitted a proposal on

4    that. We asked that we get something back from them. It's

5    been about a month and we haven't heard back.

6           In terms of the actual conduct of the trial and

7    whether there should be a severance or separate trials on any

8    issues, I guess Roche's position is that it's a bit premature

9    for that issue to be resolved at this time.

10          We believe that the infringement issues are going

11   to show -- are going to turn out to be extremely similar

12   between all the defendants so there may not be a need for

13   severing.

14          I think discovery will shed a lot of light on

15   what the appropriate way to conduct the trial is. We are

16   hopeful that the Court will schedule a trial for like the

17   middle of next year, say 18 months from now.

18          I'm told the defendants are suggesting that it be

19   put off a little bit longer than that.

20          At this point, I just got a note from my

21   co-counsel saying that we have not yet provided a draft of

22   the protective order to the other side. I can assure the

23   Court and them that we're working on one and will submit it

24   to them. We have discussed it with them. We have not

25   reached any agreement on the protective order yet.

9

1        I would be happy to address any questions your

2    honor has.

3        Those are the main areas of disagreement.

4        THE COURT:  I was wondering how you viewed the

5    case.  Why are so many people in one case?

6        MR. BOEHNEN:  I think both because we do believe

7    that all of the infringement, validity issues are going to be

8    extremely common among them.  We do know now that Nova has

9    raised a counterclaim, which is a little different.

10       Lifescan argues that it has evidence of a

11   validity issue which is unique to itself.  Although, even as

12   to that if, in fact, they have evidence showing the patent is

13   invalid, that's an issue that will be common for all of

14   them.

15       We believe that the issues as among all of the

16   defendants are going to be very, very similar on both

17   infringement as well as validity.

18       THE COURT:  That's what you think because you are

19   the plaintiff.  If I got sued and you sued five other people,

20   I'm worried about me.

21       MR. BOEHNEN:  Of course.

22       THE COURT:  That's why they take the approach

23   they do in these cases.  It seems to me it's convenient to

24   bunch everybody.  When you get sued it's kind of like

25   threatening, so you want to put together your best defense.

10

1          I'm more focused on how -- I understand your

2     interests.  I understand why you want to proceed the way you

3     do.  And I know what you're view of their interests is.

4          Having had a couple of these cases, I know that

5     their interests are individualized because they are really

6     angry at Roche in getting sued.

7          What they want to do -- so we have to work toward

8     understanding.  You can understand that?

9          MR. BOEHNEN:  I've been in their situation, your

10    Honor.  I've been in a case where were there were multiple

11    defendants and I represented one of them.

12          THE COURT:  Right.

13          So what we have to do is come up with something

14    that facilitates judicial economy so we're not spending a lot

15    of peoples money foolishly, and at the same time, how can we

16    recognize their individuality and that anger they have at

17    Roche because they want to have at them, that invalidity

18    stuff.

19          What would you suggest as the plaintiff?

20          MR. BOEHNEN:  I think that there's a difference

21    in how discovery is approached on the validity issues where

22    they are, if you will, offensively attacking Roche on the

23    validity of the patent and issues that may relate to that.

24    So I want discovery and handling of things like infringement

25    and damages which are truly separate for each of the

11

1    defendants.

2              I think it's not unreasonable.

3              THE COURT:  You recognize because you mentioned

4    this to me that they have different products.

5              MR. BOEHNEN:  Yes.

6              THE COURT:  In preparation for this case, do you

7    have one expert on infringement against all their products or

8    do you have a couple of experts depending on the defendant

9    and the product?

10             MR. BOEHNEN:  I can't say that definitely at this

11   stage.  I anticipate that we will have one expert in dealing

12   with all the infringing products.

13             Having said that, the fact remains that each of

14   them will be producing documents individually on

15   infringement, each of them.

16             THE COURT:  You have an expert that's looked at

17   their products and say they all infringed?

18             MR. BOEHNEN:  I'm not sure I'll be our testifying

19   expert.  We have certainly studied each of their individual

20   products and concluded that they infringe.

21             THE COURT:  You don't know if you consulted

22   someone -- is this an internal opinion of Roche or kind of

23   talked to somebody else?

24             This is like discovery.

25             MR. BOEHNEN:  It's discovery in the work product,

12

1    your Honor.  I'm uncomfortable about it.

2              THE COURT:  I get to ask.

3              I'm not trying to put you on the spot.  I'm

4    trying to understand.  I want to give you a fair opportunity

5    so I understand where you're coming from, and then I'm going

6    to give them a fair opportunity.  Then I'm going to come up

7    with a bad solution.

8              MR. BOEHNEN:  I hope you also understand because

9    it's actually --

10             THE COURT:  You have an expert that you're

11   satisfied with?

12             MR. BOEHNEN:  Because the question asks about

13   work product, I have to be a little circumspect in my answer.

14             THE COURT:  How about 30 days?

15             MR. BOEHNEN:  In any event, before filing the

16   lawsuit Roche certainly made a very careful inspection of

17   each of the products in relation to the claims of the patent

18   in suit, okay.

19             These claims don't turn upon, you know, trying to

20   reverse engineer software or hardware.

21             These claims cover things that can be viewed and

22   observed as an outside user.  We have don't that.

23             Roche has very carefully reached the belief that

24   each of the defendants infringes the patent-in-suit.

25             Having said that, it's true when we go to take

13

1    discovery, each defendant is going to be producing its own

2    documents, its own witnesses and its own damages evidence.

3    They may have a concern about wanting to minimize the scope

4    of that discovery.

5              I know that in a situation like this there has

6    been a three tier protective order so that when they are

7    conducting, for example, producing evidence on invalidity,

8    that's going to be something they all have an interest in.

9              If anybody convinces the Court that the patent is

10   invalid, it inures to all of them.  When they go to take

11   discovery from Roche on validity, it's going to be something

12   that goes to all of them.  We believe that discovery of that

13   kind should be coordinated and consolidated.

14             Likewise, when the Court is dealing with

15   discovery motions, my guess is that there is likely to be a

16   few discovery disputes here, we ought to be having -- that

17   issue ought to be addressed one time by the Court and that

18   all of the defendants ought to be presenting one view, one

19   set of arguments to the Court that can be dealt with on

20   discovery motions to minimize the Court's burden.

21             When we get to claim construction, there are

22   going to be issues of law to be decided and decided once.

23   They are going to apply to everybody.  They should be

24   presented once so they are only decided once.

25             All of that is not only going to create

14

1    efficiency for the Court, minimize burdens on the parties,

2    but also prevent any kind of inconsistent decisions.

3              THE COURT:  Tell me this.  If you are ranking

4    from a business point of view the defendants, who would be

5    one, two?

6              MR. BOEHNEN:  Well, there are different ways of

7    looking at that.

8              THE COURT:  Give me one.

9              MR. BOEHNEN:  One way is market share.  Clearly

10   Lifescan is the largest competitor in -- in this whole market

11   of market share.

12             THE COURT:  Lifescan.

13             MR. BOEHNEN:  Lifescan has greater market share

14   than anybody else in this room.

15             THE COURT:  Who's next?

16             MR. BOEHNEN:  Some kind of a level of competition

17   between the parties, probably Abbott comes next.  Abbott has

18   a separate lawsuit that is now on going against Roche and

19   Bayer and others out in California.

20             That case has been going for a couple of years.

21   It involves Abbott patents.  Bayer probably comes in third in

22   terms of market share.

23             Bayer does have a separate business relationship

24   with Roche.  So, there's a different dynamic that occurs

25   between those parties.

1           Then I would say Nova and DDI, Diagnostic Devices

2     probably comes in fourth and fifth.

3           THE COURT:  Thank you.

4           Lifescan, it sounds like he wants you the most,

5     maybe or maybe Abbott.

6           MR. HUTZ:  I'll address some of the things from

7     Lifescan's perspective.

8           I suspect some of the other defendants are going

9     to have points of view that are consistent or may differ.

10           As far as the discovery end of things, starting

11     with the first item that was raised, one of our main

12     concerns, I think others have done the math.  If you take a

13     look at the way they structured their request, if we're given

14     for example, 25 interrogatories that we're suppose to

15     coordinate and collectively put together, that's roughly

16     about five interrogatories per party.  We've got different

17     contentions.  We have different issues.

18           Some of the defendants have raised counterclaims

19     of infringement.

20           Realistically, it doesn't seem possible that

21     we're going to be able to effectively present interrogatories

22     in the way that doesn't hamstring our abilities.

23           With respect to depositions, it's a similar issue

24     in terms of their proposal.  They are basically saying that

25     we, the defendants, have to collectively join together and

16

1    get a total of ten depositions, which is roughly two

2    depositions per party.

3             We don't feel that's workable.  That's one of the

4    reasons why our counter proposal was numbers of hours.

5             I think all of the defendants are committed to

6    trying to coordinate things as much as possible, do not

7    duplicate depositions and the like.  We're all professional

8    enough that we don't want to waste our clients time and

9    money.

10            But in terms of having to effectively pool our

11   resources to take that small number of depositions, that's

12   not going to be workable.

13            They have another proposal of five outside

14   non-third party witnesses, total.

15            Now, our defense -- at least one of our defenses

16   is going to be public use on sale more than one year before

17   their earliest date, which is more than likely going to

18   depend on a certain number.

19            On third party depositions, we don't know exactly

20   how many.  I'm pretty confident it's ultimately going to be

21   more than five.

22            As far as the discovery end of things, it's

23   pretty clear at least in our minds that while Roche is

24   talking about efficiencies and the like, they are basically

25   hamstringing all of the defendants.

1        We did not ask to be joined together in a single

2   action.  If these had been filed against us separately, we

3   would have had the ability to have the full number of

4   interrogatories and depositions that the Federal Rules

5   allow.

6        We don't feel it's fair, at least from Lifescan's

7   perspective by having to coordinate with the defendants.

8        We are committed to trying to coordinate as much

9   as possible.  But from that standpoint, we think it's going

10  to be very difficult and ultimately we're going to be short

11  changed.

12       As far as Markman is concerned, our view is not

13  so much the procedure they're proposing with Markman, but the

14  actual Markman date.  They are proposing starting the Markman

15  process in, I believe, April or May of this year.

16       I think our fundamental point is that and I think

17  why we looked at the dates that your Honor had on his

18  Scheduling Order, is that it's much more appropriate to

19  handle Markman later in the proceedings after there has been

20  fact discovery, at least around the time that the expert

21  discovery is taking place, rather than having something that

22  is so early that is really not going to be workable at least

23  from Lifescan's standpoint.

24       Those are some of the basic things that I feel we

25  needed to I address.

18

1        I would like to turn it over to some of the other

2   defendants because they have other points of view that are

3   related to the disputes between the parties that they can

4   address from their perspective.

5        THE COURT:  All right.

6        MR. SHERRY:  Steve Sherry for Abbott Diabetes,

7   your Honor.

8        I assume that's the order that you wanted to go

9   in, your Honor?

10       THE COURT:  Sounds like it.

11       MR. SHERRY:  I talked to my brother counsel about

12  this.  We're all seasoned litigators and we've been through

13  this before.  We're going to do everything that we can to

14  coordinate, not to waste the Court's time and our client's

15  money.  The Court has a sense of what's happened so far.

16       This is not perhaps your usual multi-defendant

17  case.  We've got a unique relationship between the plaintiff

18  and one defendant.  We've got fierce competitors in this

19  market, all lined up on one side, but not really aligned.

20       It's going to take a Herculean effort to protect

21  every ones individual interest and allow the parties to

22  cooperate.

23       We're not dealing with a situation here where

24  everybody is selling a commodity.  We're not all selling

25  oranges that are accused of infringement.  We all have our

19

 1   individual product lines, our own developmental histories and
 2   developmental story.
 3           We're going to have a unique perspective which is
 4   unique from a claim construction standpoint, prior art
 5   standpoint.
 6           I think your Honor was right when you gave us a
 7   prelude to one of your questions, when you said isn't it
 8   important to make sure that the discovery schedule allows the
 9   defendants to pursue their individual interests as well as
10   there collective interests.  I think that's true.
11           I want to echo the comments that were made about
12   the deposition schedule.  I think we have to look at a
13   certain number of hours.
14           Granted that there is going to be some individual
15   that we're all going to want to depose.  Perhaps your Honor
16   will come up with a solution, maybe setting out for us a
17   block of time to take the inventors, maybe a block of time to
18   take the prosecution lawyers who were involved.
19           But beyond that, we don't want to hamstring other
20   parties too much, allow Lifescan to take whatever third party
21   depositions it needs to take, and by alloting hours, it
22   maximizes flexibility.  We can allocate those hours the way
23   we think we need to.
24           Having said that, I just want to put in a very
25   brief word that perhaps we can avoid all of this by simply

20

1    granting Abbott's motions to stay and see what the Patent

2    Office does.

3              THE COURT:  Not likely.

4              MR. SHERRY:  I had to give it a shot, your Honor.

5              THE COURT:  You filed it.  I get it.

6              MR. SHERRY:  One of the proposals that the

7    plaintiffs had were to commence deposition discovery as soon

8    as possible, even perhaps before the document exchange has

9    been completed.

10             I believe your Honor's standing order -- the form

11   of the Scheduling Order that the Court has on the website

12   suggested that perhaps those depositions should commence

13   after the document discovery and interrogatories are

14   complete.  I endorse that view.  That's a wise approach given

15   how long it's going to take to get all this done and to keep

16   everybody coordinated in the case.

17             THE COURT:  All right.  Thank you.

18             MS. KREVANS:  Rachel Krevans for Bayer.

19             I will try not to repeat everything.

20             I want to say specifically for the Court why this

21   group of defendants, although we're very determined to be

22   cooperative and to coordinate everything we can, that we're

23   going to be challenged to act in concert.  It's not just that

24   we are competitors in the marketplace, very fierce

25   competitors, but there is another lawsuit pending on closely

21

1   related technology right now in Federal District Court for

2   the Northern district of California involving most of the

3   same parties in this case.

4              In the other lawsuit Abbott is the plaintiff,

5   Roche is one of the defendants along with Bayer and Nova.

6              We're now in the position of trying to cooperate

7   in this defense while we are simultaneously litigating about

8   closely related technology.

9              THE COURT:  I wouldn't trust them.

10             MS. KREVANS:  Professional courtesy and trust

11  don't always go hand in hand.

12             To be very specific, for example, Mr. Wilsey who

13  is the inventor of the two patents that Roche is asserting in

14  this case has been a witness in the other case.

15             I expect he'll be on Roche's trial witness list

16  in the other case and has been asserted as a prior inventor

17  defense, in a validity defense asserted by Roche in the other

18  case.

19             That kind of really challenging overlap and the

20  interest among the defendants in this case means that it's

21  even more important than usual to respect the fact that the

22  defendants may out of necessity have different defense

23  strategies which will make it extraordinarily unfair to say

24  to them you must share among all five of you only ten

25  depositions of the plaintiff.

22

1          A couple of other things.

2          We've seen in the other case that although, the

3   plaintiff in that case, Abbott had said early on it's going

4   to be easy to do together because all the issues are going to

5   be the same.  We're all going to have one infringement

6   expert.

7          We got to the point in that case of bringing a

8   Summary Judgement motion of non-infringement on the defense

9   side.  Different defendants brought different motions.  The

10  products are in fact different.  They don't lineup in the

11  same way which affects each set of patents.

12          Again, the defendants are going to have to pursue

13  strategies including claim construction and validity

14  strategies that are the best defense for their products.

15  It's not fair to deprive them of the opportunity to do that.

16          This last thing hasn't been mentioned.  I want to

17  point out that the plaintiff in their proposal to you tried

18  to create some symmetry in this sort of number of depositions

19  per side on other parties to make it look as though the

20  defendants are getting more depositions than they really

21  are.

22          There are entities listed in this case, and as

23  far as we know one of them is simply a holding company.  It

24  doesn't have any role at all in this case.

25          When the plaintiffs proposed that defendants as a

23

1    group have ten depositions on each plaintiff party, they are

2    not really proposing that we get twenty depositions that

3    matter in this case.  They are proposing that we get ten.

4            I think that's something else to keep in mind.

5    The real discovery and the things that we're going to care

6    about here have to do with the activities of Roche.

7            It's important not to get lead astray by the

8    notion that there are 20 depos or 50 interrogatories.

9    Really, on the core issues in the case, they are proposing

10   ten depositions.

11           Thank you, your Honor.

12           THE COURT:  Thank you.

13           I guess we're going to hear from Nova.

14           MR. BADKE:  We're a little different from the

15   other defendants, your Honor.  We're number four in the

16   market.

17           We brought counterclaims of patent infringement.

18   We also brought some other claims including misappropriation

19   of trade secrets based on our allegation of confidential

20   information concerning Roche's technology was disclosed to

21   them by our clients in 1999.

22           We have our own almost like a self-standing case

23   by ourselves.  In some ways we're entitled to at least as

24   much discovery as Roche is.  We're in the position of a

25   plaintiff ourselves.

1          We will work with the other defendants and try to

2    come up with some limits at least initially to see how things

3    go.

4          The other point I wanted to make as well.  We at

5    least will be claiming prior inventorship.  Lifescan will be

6    claiming prior inventorship.  There's going to be a lot of

7    discovery that centers around that and an awful lot of

8    depositions.

9          It certainly cannot be done within the limit that

10   Roche is advocating here.  That's all I need to say.

11         THE COURT:  Thank you.

12         MR. BALICK:  I don't have anything to add with

13   regard to my clients.

14         THE COURT:  All right.

15         MR. BOEHNEN:  May I respond just briefly?

16         THE COURT:  Sure.

17         MR. BOEHNEN:  The problem is between wanting to

18   differentiate issues that they have in common versus issues

19   they have separate.  To the extent that there are issues

20   which are separate, we have always said that we would be

21   willing to recognize and try to help craft a solution that

22   allows them to conduct discovery on unique issues

23   separately.

24         For example, Nova's counterclaim.  That is

25   something that was served after we had a conference call with

1   all of the defendants and had submitted our proposed

2   Scheduling Order.

3            Nova now has this separate issue.  Fine.  We can

4   deal with that and provide some mechanism for separate

5   discovery.  But the fact that there maybe a justification to

6   structure separate discovery on separate issues should not

7   detract and hinder the need to have coordinated and

8   consolidated discovery on the issues that are the same.

9            Let's take as a concrete example our inventors.

10  We got Doctor X as a inventor.  Under the defendants'

11  approach, they can depose this guy or woman, you know, five

12  times.  They have a total of twelve hundred hours of

13  depositions that would be allocated to them collectively

14  under their approach.

15           I remember back to the times in the late 80's and

16  early 90's when I would have an inventor who would be deposed

17  by somebody for a week, a week at a time and come back and

18  depose him two or three more times.

19           The Federal Rules tried to change that.  One of

20  Roche's goal in trying to structure discovery now is so that

21  when our employees are deposed or when admissions requests

22  are sent to us, that it's going to be dealt with one time and

23  finished.

24           That doesn't mean that, you know, party A is

25  going to depose Doctor X one time for seven hours, ten hours

1   and then a month later party B is going to be allowed to go

2   over that transcript in micro-detail and come back and say,

3   oh, well, this question wasn't asked before.  They are going

4   to take the same issue and pursue it on a further appeal a

5   third time and fourth time.

6           Our objective here is to try to have a situation

7   where our company and our employees are deposed and discovery

8   is taken one time on one issue and then that information will

9   be made available to all of the parties.

10          Although, it's fine for us here at the outset for

11  the defendants here at the outset.  We're all professionals

12  and we don't want to duplicate our efforts.  We've all been

13  in enough situations to know how far that goes and how far it

14  doesn't go.

15          It is a heck of a lot fairer when the Court has

16  ordered the defendants to conduct coordinated discovery.  On

17  any given issue, you ought to say to them -- you ought to

18  say, if you defendants are going to be deposing an inventor

19  X, one party, one lawyer is going to be appointed as the lead

20  lawyer to take that deposition.  They won't like that.

21          I can't blame them.  I didn't like that when I

22  was in that situation.

23          THE COURT:  I was going to say you wouldn't like

24  it.  You wouldn't have liked it.  That's not a good

25  procedure.  I hear what you're saying.  Try my solution.

1          I think I'm ready to give you my solution.

2          MR. BOEHNEN:  Thank you, your Honor.

3          THE COURT:  First of all, the case is driven --

4     you're all in this predicament or circumstance for different

5     reasons because Roche decided to get everybody collectively.

6     Maybe some of you infringe.  Maybe they have a bad patent.  I

7     don't know any of that yet.

8          You seem like a cordial group.  You're obviously

9     seasoned.  You've probably heard a lot of this before.  You

10    probably experienced a lot of this before to varying degrees

11    of delight depending on where you were.

12         What I'm going to do in the first instance is to

13    separate issues.  So this case today is only about

14    infringement and counterclaims properly brought to an

15    infringement charge.

16         We're going to push out validity.  We're going to

17    push out damages and anything else that might be in the case

18    right now.

19         With respect to infringement, we're going to have

20    discovery that is respectful of the individualized interests

21    of the defendants as well as the interests of the plaintiff.

22         I think to achieve that we're going to have an

23    infringement document production for a short period of time.

24         Let me say this.  I'm not going to dictate times

25    to you today because you all understand that anything I do

1    would be completely arbitrary which is really bad.

2              You'll be better trying to come to that time

3    frame in negotiation with each other back and forth.  If you

4    can't agree, then I can weigh in, either slice the decision

5    or pick a side.  We're going to get that done within the next

6    week.

7              Document production, that will be on infringement

8    and any counterclaim brought on infringement which in my mind

9    would include prior inventorship.

10             Validity would be like an on-sale bar.  If you

11   have any questions where it falls in that matrix, you can

12   just ask me and I will be happy to draft it if you have a

13   question in one of those areas for you.

14             You get beyond document production and then you

15   now have the problem of the rest of the mechanics of

16   discovery and how that gets divided up.  It's going to get

17   divided up by the defendants.  The defendants will have --

18   let's take depositions as a example.

19             You will each come in negotiation with the

20   plaintiff to a common hour allotment.  I'm throwing out a

21   number which is irrelevant.  Let's say each defendant will in

22   the common hour allotment -- will be allowed ten hours of

23   deposition testimony.  You'll be charged against that on an

24   issue that's common to all of you.

25             And this is not the same for each or it could be

29

1    the same for each.  You'll each have an individual hour

2    allotment.

3             If you are going to take a take, let's say, the

4    inventor's deposition, then each party named as a defendant

5    would have ten common hours and five individualized hours for

6    a total of 15 hours for the inventor and anyone else that you

7    are going to depose.  In each case you'll have the

8    opportunity to break out.  It will have to be consecutive.

9             The exercise of the hours on any witness will

10   have to be consecutive unless agreed to, be separated by the

11   parties.

12            The same thing with requests for admissions.

13   There will be common allocations that everybody participates

14   in and then individualized.

15            Am I making this clear or is too confusing?

16            Let's say the inventor is being deposed.  All

17   parties have ten hours with the inventor.  You divide that

18   any way you want and then you have two hours of

19   individualized.

20            In the common hours, somebody may take eight of

21   them.  That's up to you.  If you only got 15 minutes of the

22   common hours, you have your two hours of individualized

23   allotment.  That's going to be much reduced from the common

24   hours.

25            I'm not very good at math.  My math skills ended

30

1    at seven grade when Sister Mary started with algebra.

2            You can finish this out with the ratio from the

3    plaintiff.  You will select the lead and they will respond to

4    your selection and presentation of hours, request for

5    admissions, number of interrogatories, common and

6    individualized allotment.  I'm not getting a good feeling

7    here that you understand.

8            Is it so simple or is it so dumb?  Either is okay

9    to tell me.  I understand you haven't real locked in the

10   numbers.  I have no idea.  That's up to you.

11           MR. BOEHNEN:  So far you talked then about the

12   numbers that go for the defendant.

13           THE COURT:  Right.

14           MR. BOEHNEN:  My question would be, of course, do

15   you have something in mind as to how that would be structured

16   for both?

17           THE COURT:  I think what I said is that I'm going

18   to let them open with a proposal to you, then you're going to

19   have a proposal that you think is responsive and fair.  If it

20   isn't agreed upon, then I'll pick a side.

21           I have no idea about numbers.  I have an idea

22   about procedure.  I assume you're going to want some common

23   time and some individualized time against individualized

24   defendants.

25           MR. BOEHNEN:  Okay.

31

1          Thank you, your Honor.

2          THE COURT:  Does that make sense?  Maybe not.

3          MR. BOEHNEN:  I'll think about it.

4          THE COURT:  You may want more time against Abbott

5     than you want against Lifescan.

6          MR. BOEHNEN:  My point is, it seems to me from

7     our perspective on conducting discovery on infringement, that

8     virtually all of it is individualized.  All of it is

9     individual to each individual defendant.  I'm not sure how

10    the concept of common versus individual applies when Roche is

11    conducting its own discovery against the defendants.

12         THE COURT:  Then you may only set individualized

13    hours and waive common allotment because we're going to take

14    the same procedure through validity and damages.  We've got

15    to start out with a basic principle.  It's got to be modified

16    to the issue.

17         MR. BOEHNEN:  It could be common in the sense

18    that there are two plaintiff entities.  It could be common to

19    that.

20         THE COURT:  Again, I'm thinking common more so to

21    the defendants.

22         MR. DRUTCHAS:  Claim construction discovery.  You

23    said -- is that something that you considered within the

24    infringement validity or validity aspect of the case?

25         THE COURT:  Claim construction, talk to the

1    defendants.  They would like to have separate claim

2    construction for the validity assertions.  Of course you

3    would like to have it for infringement.  I'm a purest.

4             What I understand claim construction is you read

5    the words and you tell people what they mean to the level of

6    a person of ordinary skill in the art.  It's never suppose to

7    be -- I used to cheat early on when Markman came on and had

8    experts.  I realized that was important.

9             Back to the purity of claim construction.  I

10   could do that today by reading the patents, the words.  It's

11   not going to be individualized to an issue.

12            Claim construction will occur.  It will have to

13   occur after the fact discovery on infringement because you're

14   going to need claim construction.  That claim construction

15   will be the same and applied to the invalidity.

16            They may have some strategies that they will

17   implement in trying to affect the claim construction,

18   although it's going to take place during the infringement

19   face.

20            MR. DRUTCHAS:  The reason I asked is that

21   normally the inventor, the appropriate topics in which an

22   inventor is deposed on claim construction is what his

23   understanding of the terms that were used in his patent, et

24   cetera.

25            On validity, typically, if you have chosen the

33

1    inventor as an example of infringement discovery, one, I'm

2    not sure whether that is something that you necessarily

3    anticipate occurring during infringement discovery?

4              THE COURT:  Say that again.  You have an

5    inventor.

6              MR. DRUTCHAS:  Validity and possibly claim

7    construction.  It's not normally something I consider past an

8    infringement deposition.

9              THE COURT:  Say it again.

10             MR. DRUTCHAS:  When an inventor is being deposed

11   by a party, it's usually an issue of claim construction or a

12   validity issue arising out of a patent.

13             Normally, infringement discovery is directed more

14   towards the defendants' devices, whether the claims read on

15   defendants' devices, that sort of thing.

16             MR. BOEHNEN:  If I  could try, your Honor?

17             It's a broad question.  We're starting with

18   infringement.

19             Normally, when you think of the discovery that a

20   defendant -- an accused infringer is going to take of the

21   patentee in relation to infringement, that's usually expert

22   discovery.  Either you've got stuff that the lawyers have

23   done so it's work product, attorney client privilege or

24   evidence that's going to be presented as part of the expert

25   discovery reading the claims.  There isn't really much to my

1    way of thinking.

2            I would like to hear of the defendants thoughts.

3    There is not really much fact discovery that defendants take

4    of a patentee on the infringement issue.

5            I would be interested in hearing what discovery

6    the defendants think they are going to be taking on

7    infringement, recognizing as you have said, we're not doing

8    validity, we're not doing claim construction, we're not doing

9    damages.  It's only infringement.  It's not clear to me.

10           THE COURT:  Expert discovery.

11           MR. BOEHNEN:  Is expert discovery on the board

12   too, right then?

13           THE COURT:  The way it typically works --

14           MR. SHERRY:  Unless I misunderstood, your Honor,

15   I thought you said that prior inventorship was going to be an

16   issue that would be addressed in this first phase.  That

17   wasn't in the validity bucket.  You carved that out and put

18   in the first phase.

19           THE COURT:  Yes.

20           MR. SHERRY:  In terms of prior inventorship

21   between when the inventor came up with his concept and what

22   they did to reduce it to practice, conception and reduction

23   to practice.  Those are factual issues that the inventor is

24   going to be asked about.  That's going to form the issue,

25   prior invention -- as long as prior invention is in this

1   first phase and there is a factual area that the inventor is

2   going to be deposed upon.  I'll defer to co-counsel.

3        MS. KREVANS:  I would like to suggest that

4   perhaps if you flip the order and did validity first before

5   infringement.  This would actually make a lot more sense.

6   Some of these issues when the inventor gets deposed goes

7   away.

8        We depose him in the validity phase.  And to the

9   extent his testimony is relevant, we've already got it.  At

10  least two of the defendants -- I know Bayer and Lifescan are

11  quite convinced that there is a piece of real live prior art

12  out there that we could quickly put a case together on.  If

13  we did validity first and end this case and not do

14  infringement and not have to do discovery.

15       MR. BOEHNEN:  Getting back to Mr. Sherry's

16  comments.  Part of our confusion and part of my concern are

17  from Abbott's comments that the prior inventorship issue is

18  more commonly thought of as a validity challenge.  If all of

19  a sudden their whole focus is going to be on discovery,

20  whether our inventor, prior inventors, to show that they

21  supposedly have somebody who came up with this before our

22  inventor did.  That gets into things that are very different

23  than the public use on-sale bar.

24       Now, you're going back into R&D records that have

25  never been made public on both sides.  The idea of trying to,

1    in effect, have a priority dispute, is like a mini

2    interference proceeding.

3         At this stage, at least from our perspective,

4    none of the defendants have yet indicated to us that they

5    have a prior invention dispute.  They have indicated that

6    there is this prior use, public sale, on sale issue which is

7    part of validity.  This is the first time that there has been

8    a suggestion that there maybe a priority of invention dispute

9    here.

10        Unless and until one of the defendants suggests

11   that there is in fact a priority of invention dispute, we

12   ought to stop wasting a lot of time on that and get back to

13   focusing on the infringement issues.

14        THE COURT:  You can't take invalidity ahead of

15   infringement from my point of view because you can't knock

16   out a patent that you don't infringe even though the Federal

17   Circuit says -- at least one panel says they would like you

18   to do infringement, validity.

19        Again, I revert back.  I would never get an

20   invalidity ruling and then find out there's infringement.

21        You've got to understand you infringe first

22   before you can go and attempt to knock out a patent.

23        I understand from the practical point of view

24   what you're saying.

25        Let me go back to infringement discovery.  I

1    don't care if you depose the inventor or not.  I can tell you

2    what the process is going to be.  There's going to be

3    infringement discovery, document production.  Then there's

4    going to be the typical interrogatory requests for admission

5    and deposition discovery.  There will be a closed date of

6    fact discovery on infringement.

7            There will then be claim construction for which

8    you can at a Markman Hearing offer expert testimony or you

9    can in the context of what we do here, pre-Markman briefing

10   -- prehearing briefing, you can present your expert by

11   declaration and then we'll have a Markman Hearing.

12           I'll construe the claims that are disputed or

13   choose not to construe what has been asserted as a disputed

14   claim.  After that you will then go to your infringement

15   experts with my claim construction.  You'll get your expert

16   reports done and your expert depositions.  Then we're going

17   to come back and we're going to decide.

18           If you want to, I'll take your views on whether

19   you want them to immediately proceed to dispositive motion

20   briefing or if you want to proceed to trial or if you want to

21   then have infringement behind you from a pretrial view and

22   move on to the invalidity discovery which will go the same

23   way, except your time frame maybe a tiny bit extended because

24   of the need potentially for third party discovery.

25           And then you'll come to an end of that process

1    and you'll either have a trial or you'll have a dispositive

2    motion practice either on infringement and invalidity.  You

3    have infringement and then validity, whatever is left, we'll

4    go to trial on.

5            MR. BOEHNEN:  To my understanding, you're leaving

6    open the possibility of trial being either on all issues at

7    the end on validity and infringement, infringement trial

8    first and then followed by discovery and trial?

9            THE COURT:  Whether the defendants find out if

10   they infringe by a trial or whether they decide that they

11   want their validity case fully discovered, the infringement

12   and validity trials will be separate trials.

13           MR. BOEHNEN:  Okay.

14           MR. DRUTCHAS:  Damages then would be after that?

15           THE COURT:  Damages aren't even in the case

16   today.

17           It will be long after the trials.  I think you

18   might settle once you get the verdict and even an appeal.

19           MR. DRUTCHAS:  Can you give us an overall scope

20   of times that you have in mind for conducting the

21   infringement phase and then the claim construction?

22           THE COURT:  There will be a trial in 14 to 18

23   months from your filing date, which I think was November.

24           MR. DRUTCHAS:  That's on infringement?

25           THE COURT:  Infringement and validity.  When you

39

1    sit down you're going to have this negotiation with your

2    friends from the other side.  Pick dates that work for all of

3    you.  If you can't agree, I'll pick the dates.

4              You filed in November of '07.  You should be in

5    trial sometime in mid '09.

6              MR. DRUTCHAS:  If I'm understanding correctly,

7    kind of in three phases of activity?

8              The infringement activity, claim construction

9    activity, validity activity, at the end of that we're going

10   to have, one way or another, a trial that is going to resolve

11   all of those issues?

12             THE COURT:  Two trials.

13             MR. DRUTCHAS:  First one on infringement?

14             THE COURT:  I don't try infringement and validity

15   at the same time unless somebody convinces me that I lost my

16   mind.

17             I just had one and what did I get?  A hung jury.

18   Juries don't get that.

19             MR. DRUTCHAS:  We're going to have an

20   infringement set of activities, a Markman set of activities,

21   a validity set of activities and then trials that will

22   resolve all of the issues at that point?

23             THE COURT:  Of infringement and validity.

24             MR. DRUTCHAS:  These trials should be completed

25   within 16 months from the filing date?

1        THE COURT:  Middle of '09.  It's a rough time

2   frame I'm giving you.  You can negotiate with your friends of

3   when that would be -- whether you think it ought to be May or

4   July.

5        Am I right about that?  That's about the middle

6   of '09.

7        MR. DRUTCHAS:  We'll be able to schedule a

8   conference with the defendants the last week to flush out the

9   details.

10        MS. KREVANS:  Prior invention discovery is to

11   take place during the infringement phase?

12        THE COURT:  Whatever you want.

13        I guess I would approach the case differently.

14   I'm not going to comment on it.  You put it where you want.

15   Since you have that you can put it in the infringement or the

16   validity phase.

17        MR. BADKE:  Misappropriation of trade secrets and

18   breach of contract, that can be wherever we want?

19        THE COURT:  In either set of discovery.  Where it

20   works best for you and in conjunction with your friends.

21        Have you ever had the experience of where a

22   inventor thought they invented something, it did a certain

23   thing and the judge told them it didn't?  What the Federal

24   Circuit said, I don't understand that having had that

25   experience.  Maybe I don't understand.  You want the inventor

41

1    one time, right?

2            MR. BOEHNEN:  Yes.

3            THE COURT:  I'll let you all work it out.

4            Have you completed all your discovery in

5    California?

6            MR. BADKE:  All fact discovery has been completed

7    in California.

8            MS. KREVANS:  On the products that are at issue

9    in that case, your Honor.  We don't what products are at

10   issue in this case and how much overlaps.

11           THE COURT:  The suggestion is that I would be

12   okay if anybody wanted to bring that discovery here is

13   premature.

14           MS. KREVANS:  We don't know yet.

15           THE COURT:  I'm trying to save money for your

16   clients.  If things are already settled, that's okay.  I

17   understand.

18           Is there anything else?

19           You have those broad dates.  I'm going to be

20   looking for a proposed order.  You can set any disputes in

21   the proposed order.  Today is the 8th.  I was thinking the

22   15th.  We'll make it the 22nd.  That will give you enough

23   time.  I'll have it for a week or two and then we'll get it

24   entered.

25           MR. DRUTCHAS:  There is one housekeeping matter.

42

1   DDI, one of the defendants has raised a personal jurisdiction

2   motion.

3         THE COURT:  I saw that.

4         MR. DRUTCHAS: We have served some discovery

5   requests at this stage to go to the personal jurisdiction

6   issue.  Responses are due on February 28.

7         What we would like to do is to have an

8   opportunity to take some jurisdictional discovery before we

9   respond to that.  We have some responses that are due.  We

10  would like perhaps a deposition or two if it turns out to be

11  necessary.  We would like a response in opposition to their

12  motion to be stayed pending that.

13       THE COURT:  Mr. Balick will agree to that.

14       MR. BALICK:  I would like a chance to consult

15  with my folks before I admit to anything.  I don't think

16  jurisdictional discovery -- on this kind of a motion I don't

17  know the extent and the scope of discovery they are looking

18  for. I would like to have a chance to look at that.

19       THE COURT:  Try to work it out if you can.

20       Put an order in place on what you agree to, and

21  what you can't agree to, submit a proposed order with

22  disputes.  I'll circle one or the other.

23       MR. DRUTCHAS:  Thank you, your Honor.

24       MR. BALICK:  Thank you, your Honor.

25       THE COURT:  Anything else?

43

1           MR. SHERRY:  Nothing further from Abbott, your

2    Honor.

3           THE COURT: Mr. Hutz is so clever, he's the number

4    one target.  He's pointing over to Abbott all the time.  Talk

5    to the guy from Abbott.

6           Anything else from defendants, seriously?

7           MR. HUTZ:  Nothing from us, your Honor.

8           THE COURT:  Thank you very much.

9           We'll be in recess.

10       (Proceedings concluded at 11:17 o'clock a.m.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ROCHE DIAGNOSTICS OPERATIONS, INC.,  )
and CORANGE INTERNATIONAL LIMITED,   )
                                     )
        Plaintiffs,                  )
                                     )
            vs.                      )        C.A. No. 07-753-JJF
                                     )
ABBOTT DIABETES CARE,                )
INCORPORATED, and                    )
ABBOTT DIABETES CARE SALES           )        DEMAND FOR JURY TRIAL
CORPORATION,                         )
                                     )
BAYER HEALTHCARE, LLC,               )
                                     )
DIAGNOSTIC DEVICES, INC.,            )
                                     )
LIFESCAN, INCORPORATED, and          )
                                     )
NOVA BIOMEDICAL CORPORATION, and     )
SANVITA INCORPORATED,                )
                                     )
        Defendants.                  )

### ROCHE DIAGNOSTICS OPERATIONS, INC.'S AND CORANGE INTERNATIONAL LIMITED'S FIRST SET OF REQUESTS TO DEFENDANT NOVA BIOMEDICAL CORPORATION FOR THE PRODUCTION OF DOCUMENTS AND THINGS (NOS. 1-161)

Plaintiffs Roche Diagnostics Operations, Inc. ("RDOI") and Corange International Limited

("Corange") (collectively "Plaintiffs") propound the following requests to Defendant Nova

Biomedical Corporation ("Nova") for the production of the documents and things specified below

for inspection and copying pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and

the Local Rules of the U.S. District for the District of Delaware. The documents shall be produced

for inspection and copying at the offices of Plaintiffs' counsel, McDonnell Boehnen Hulbert &

Berghoff LLP, 300 S. Wacker Dr., Chicago, Illinois 60606, within thirty (30) days from the service

of these requests and copying and inspection shall continue from day to day thereafter until completed. Additionally, Nova shall serve written responses to these requests on Plaintiffs' counsel within thirty (30) days of the service hereof.

All requests propounded by Plaintiffs are deemed to be continuing in nature so as to require supplementation promptly following the discovery of additional information by Nova to the extent such information is responsive to Plaintiffs' requests.

## DEFINITIONS

For the purposes of responding to the following requests for production of documents and things, the following definitions shall apply:

1.    The term "RDOI" shall mean Roche Diagnostics Operations, Inc. and/or any company name under which RDOI is doing or has done business; its predecessors, parents, subsidiaries, divisions, licensees, franchisees, assigns or other related business entities; its directors, officers, employees, agents, distributors, jobbers, salespersons, interns, sales representatives and attorneys; and each person acting or purporting to act on its or their behalf or under its or their control.

2.    The term "Corange" shall mean Corange International Limited and/or any company name under which Corange is doing or has done business; its predecessors, parents, subsidiaries, divisions, licensees, franchisees, assigns or other related business entities; its directors, officers, employees, agents, distributors, jobbers, salespersons, interns, sales representatives and attorneys; and each person acting or purporting to act on its or their behalf or under its or their control.

3.    The term "Plaintiffs" shall mean RDOI and Corange.

2

4.     The terms "Defendant," "Nova," "you" and "your" shall mean Nova Biomedical Corporation and/or any company name under which Nova is doing or has done business; its predecessors, parents, subsidiaries, divisions, licensees, franchisees, assigns or other related business entities; its directors, officers, employees, agents, distributors, jobbers, salespersons, interns, sales representatives and attorneys; and each person acting or purporting to act on its or their behalf or under its or their control.

5.     The terms "person" or "persons" shall mean natural persons (including but not limited to those employed by Defendant) and all other legally cognizable entities, including (without limitation) governmental entities, agencies, officers, departments or affiliates of the United States of America or any other governmental entity; commercial entities such as corporations, foundations, partnerships and proprietorships; associations; organization; and groups of natural persons.

6.     The term "date" shall mean the exact day, month and year, if ascertainable, or, if not, Defendant's closest approximation (including but not limited to an identification of relationship to other events).

7.     The term "document(s)" shall have the broadest meaning accorded to it by Rule 34 of the Federal Rules of Civil Procedure, and shall include, without limitation, any recording in any tangible form of any information, whether handwritten, typed, printed, stored on computer disks, tapes or databases (including electronic files and e-mail) or otherwise reproduced. "Document" also includes all drafts and copies that are not identical to the original.

8.     The term "thing(s)" shall have the broadest meaning accorded to it by Rule 34 of the Federal Rules of Civil Procedure, and shall include, without limitation, every kind of

3

physical specimen or tangible item, other than a document, in the possession, custody or control of Defendant.

9.      The term "communication" shall mean any disclosure, transmission or exchange of information from one person or entity to another, including without limitation by personal meeting, telephone, facsimile, radio, telegraph, electronic mail, teleconference, writing or other means.

10.     The terms "concerning," "referring to" and "relating to" shall be interpreted so as to encompass the liberal scope of discovery set forth in Rule 26(b) of the Federal Rules of Civil Procedure, and shall mean for example and without limitation, refer, relate, analyze, concern, constitute, contain, contradict, describe, discuss, evaluate, evidence, pertain, reflect, refute or support.

11.     The term "including" shall be construed broadly, and shall encompass "including but not limited to" or "including without limitation."

12.     The terms "identify," "identification," "describe," or "description" shall mean to provide a complete identification of the document, thing, or person to the fullest extent known or ascertainable by Defendant, whether or not the information is in the possession, custody, or control of Defendant and whether or not the information is alleged to be protected by any privilege or work product protection, and includes without limitation a request for the following information:

       (a)     with respect to a natural person, his or her name; home and work addresses and telephone numbers; present (or if unknown, the last known) place of employment; date(s) of commencement and termination of employment; job title; and description of his or her duties and responsibilities;

4

(b)     with respect to a corporation or other legal entity, the full name; state of incorporation or registration; address of its principal place of business; telephone number of its principal place of business; and the identity of each natural person who acted on behalf of such entity with respect to the subject matter of the document request;

(c)     with respect to a document, the type of document (e.g., letter, e-mail, facsimile, contract, calendar, report); the number of pages of which the document consists; a general description of the document's contents; an identification of each person(s) who prepared the document, who signed the document, for whom it was prepared, to whom it was delivered, mailed, or otherwise received, and to whom a copy was sent or who otherwise received a copy; the date of writing, creation or publication; the identifying number(s), letter(s), or combination thereof, if any, and the significance or meaning of such number(s), letter(s) or combination thereof; and present location and identity of the custodian of that document.  Documents to be identified shall include documents currently in your possession, custody or control; documents you know to have once existed but that no longer exist; and other documents of which you have knowledge or information but that are not currently in your possession, custody or control;

(d)     with respect to a product or to equipment, the common name of the product or equipment; the trade, brand, or commercial name of the product or equipment; the model, part number, catalog number, and/or serial number of the product or equipment; the manufacturer and vendor of the product or equipment; and the use and/or function of the product or equipment;

(e)     with respect to an activity, the events and/or occurrences that comprise the activity; the persons involved in the activity; the dates when the activity occurred; and the locations where the activity occurred;

5

   (f) with respect to oral communications, the manner in which the communications were made (telephone, conversation, etc.); the identity of each person who participated in or witnessed the communication; and the subject matter and content of the communication; and the date of the communication;

   (g) with respect to a patent or patent application, the country or jurisdiction in which it was filed; the number; the named inventor(s); the filing date; the issue date (if a patent); and all related or foreign counterpart applications and patents; and

   (h) with respect to films, photographs, tapes, computer media, and other things susceptible to chemical, biological, mechanical, or electrical reproduction, all identifying information including their character; subject matters; authors; and dates.

  13. The terms "and," "or" and "and/or" shall be construed disjunctively or conjunctively as necessary in order to bring within the scope of the request all responses which otherwise might be construed to be outside its scope.

  14. The term the "146 patent" shall mean U.S. Pat. No. 7,276,146.

  15. The term the "147 patent" shall mean U.S. Pat. No. 7,276,147.

  16. The term "patents-in-suit" shall mean the 146 patent and the 147 patent either collectively or individually, as well as any other patent(s) that may be subsequently added to the litigation.

  17. The term "Complaint" shall mean Plaintiffs' "Complaint for Patent Infringement" filed by Plaintiffs in this action on or about November 21, 2007, as well as any amended complaints that may be filed.

18.    The term "Answer" shall mean the "Answer, Affirmative Defenses and Counterclaims" filed by Defendant on or about January 11, 2008, as well as any amended answers that may be filed.

19.    The phrase "Requests for Reexamination" shall mean the requests that were filed with the United States Patent and Trademark Office on or about December 14, 2007 seeking *ex parte* reexamination of all of the claims of the patents-in-suit

20.    The terms "prior art" includes, by way of example and without limitation, any subject matter that you assert may be encompassed by 35 U.S.C. §103 and/or any subdivision of 35 U.S.C. §102.

21.    The phrase "Electrochemical Sensor" shall mean any sensor device capable of being used to determine the concentration of glucose in a blood sample, including but not necessarily limited to the specific electrochemical sensors identified in the Complaint. The Electrochemical Sensors includes (without limitation) test strips or equivalent devices alone or in combination with a meter or equivalent device capable of receiving the test strips and participating in the determination of the concentration of glucose in a blood sample.

22.    The phrase "Identified Electrochemical Sensor" shall mean any Electrochemical Sensor identified by Defendant in response to Interrogatory No. 1.

23.    The term the "229 patent" shall mean U.S. Pat. No. 6,258,229.

24.    The term the "PTO" shall mean the United States Patent and Trademark Office.

25.    The term "Agreement" shall mean the Agreement attached to Nova's Answer as Exhibit A.

7

26.    The phrase "the second application" shall mean the second of two Nova patent applications referred to in paragraphs 18-21 of the Counterclaims of Nova's Answer, which did not result in the issuance of the 229 patent.

## INSTRUCTIONS

1.    The original and each non-identical copy of each document or other tangible thing requested herein which is in your possession, custody or control, or that of any of your agents, attorneys, consultants, advisors, associates, accountants, employees, representatives or investigators, is to be produced, including company, department, and personal files.  If the original or original carbon copy is not in your possession, custody or control, or that of your agents, attorneys, consultants, advisors, associates, accountants, employees, representatives or investigators, a full, clear, legible copy thereof is to be produced.

2.    If any portion of any document request refers to documents of which Defendant is aware or which were at one time within Defendant's possession, custody, or control, but which are not now subject to Defendant's possession, custody, or control, Defendant is requested to identify such documents in a manner sufficient to describe such documents for a subpoena duces tecum, together with the name, telephone number, and address of the person last known by Defendant to have been in possession, custody, or control of such documents.

3.    Where an objection is made to a document request, state all grounds upon which your objection is based and produce the requested documents to the fullest extent possible subject to any stated objection.

4.    If the attorney-client privilege or work product immunity is asserted as to any document or thing, or if any document or thing is not produced in full, produce the document or

8

thing to the extent the request for production is not objected to, and, in so doing, state the following:

        (a)    the specific ground(s) for not producing the document or thing in full;

        (b)    the bases for such a claim of privilege or immunity, including a statement of sufficient relevant facts and circumstances that will explain the basis of the claim of privilege and will permit the adjudication of the propriety of the claim of privilege; and

        (c)    fully identify the information, document, or material for which such privilege or immunity is asserted, including the type of any document or thing withheld (e.g., letter, memorandum, etc.); the subject matter of any document, communication, or other information withheld; the date of recording, creating or otherwise preparing any document or thing; the name of any document or thing; the name, address and title of its author or creator; the name, address and title of each person (other than stenographic or clerical assistants) participating in the preparation or creation of any document or thing; the name, address and title of each addressee, recipient and/or custodian of the document or thing, or a copy of the document or thing; the name, address and title of each person to whom the contents of the information or any portion thereof have heretofore been communicated by copy, exhibition, reading or summarization; and the location(s) where, if at all, information has been redacted on any document or thing thus produced.

    5.    If you maintain that any document or thing requested has been destroyed, lost or is otherwise unavailable, set forth the contents of the document or thing, the location of any copies of the document or thing, the date of its destruction and the name of the person who ordered or authorized its destruction (if any).

9

6.    If, after exercising due diligence, Defendant is unable to determine the existence of any documents or things falling within a document request, Defendant shall so state in its written response required by Rule 34 of the Federal Rules of Civil Procedure.

7.    No document request or subpart hereof shall be construed as a limitation on any other document request or subpart hereof.

8.    Any word written in the singular herein shall be construed as plural or *vice versa* as necessary to bring within the scope of the request all responses which otherwise might be construed to be outside its scope.

9.    These requests shall be deemed to include all available English translations of every document requested.

10.    Documents should be produced as they are kept in the files of Defendant or shall be organized and labeled to correspond with the requests below.  If documents are not produced as they are kept in the files of Defendant, sufficient information should be provided to permit Plaintiffs to identify the source of particular documents from within the filed of Defendant.

11.    Documents from any single file should be produced in the same order as they were found in such file.  If copies of documents are produced, such copies should be legible and bound or stapled in the same manner as the original.

## REQUESTS

1.    All documents and things concerning, referring to or relating to the research, design and/or development of Defendant's Identified Electrochemical Sensors.

2.    Every laboratory notebook or note, technical report, research report, progress report or other document or thing referring or relating to laboratory work on, research on, design and/or development of the Identified Electrochemical Sensors.

3.    All documents and things concerning, referring to or relating to the research, design and/or development related to the sample volume used with Defendant's Identified Electrochemical Sensors.

4.    All documents concerning, referring to or relating to any tests, studies or experiments related to the sample volume used with Defendant's Identified Electrochemical Sensors.

5.    All documents and things concerning, referring to or relating to the research, design and/or development related to the time required to determine the concentration of glucose in a blood sample with Defendant's Identified Electrochemical Sensors.

6.    All documents concerning, referring to or relating to any tests, studies or experiments related to the time required to determine the concentration of glucose in a blood sample with Defendant's Identified Electrochemical Sensors.

7.    All documents and things concerning, referring to or relating to any inspection, review, testing, experimenting, operation, disassembly, analysis or reverse engineering of any Electrochemical Sensors having a capillary chamber that holds a blood sample volume of 1 µl or less and provides a readout of the glucose concentration of the blood sample within 10 seconds or less after the blood sample enters the capillary chamber made, used, offered for sale or sold by Plaintiffs or any other person.

11

8.     All documents and things concerning, referring to or relating to any submissions, filings or communications with any state or federal regulatory agency relating to the Identified Electrochemical Sensors.

9.     All documents and things concerning, referring to or relating to Defendant's decision to research, design, develop, manufacture, import, sell or offer for sale any Electrochemical Sensors having a capillary chamber that holds a blood sample volume of 1 µl or less and providing a readout of the glucose concentration of the blood sample within 10 seconds or less after the blood sample enters the capillary chamber.

10.     All documents and things concerning, referring to, relating to or constituting minutes, memos or other records of meetings of directors, officers, employees and/or other personnel of Defendant where Electrochemical Sensors having a capillary chamber that holds a blood sample volume of 1 µl or less were discussed referenced or considered in any way.

11.     All documents and things concerning, referring to, relating to or constituting minutes, memos or other records of meetings of directors, officers, employees and/or other personnel of Defendant where Electrochemical Sensors which provide a readout of the glucose concentration of the blood sample within 10 seconds or less after the blood sample enters the capillary chamber were discussed referenced or considered in any way.

12.     All documents and things concerning, referring to or relating to any utility, advantages, value or business significance of any Electrochemical Sensors having a capillary chamber that holds a blood sample volume of 1 µl or less.

13.     All documents and things concerning, referring to or relating to any utility, advantages, value or business significance of any Electrochemical Sensors which provide a readout of the glucose concentration of the blood sample within 10 seconds or less after the blood sample enters the

capillary chamber.

14.    Organizational charts or other documents for the period from 2002 to the present detailing the corporate structure, management, chain of command and all officers, directors or other employees or personnel of Defendant with any responsibility for the design, engineering, research, development, testing, manufacturing, commercialization, sales, marketing, competitive product analysis or legal analysis of Identified Electrochemical Sensors.

15.    The most current curriculum vitae for the ten people primarily responsible for the design, engineering, research, development or testing of the Identified Electrochemical Sensors.

16.    All documents and things identifying the names and titles of all persons having any role in the research, design and/or development of any of Defendant's Identified Electrochemical Sensors.

17.    The most current curriculum vitae for the ten people primarily responsible for the commercialization, sales, marketing or competitive product analysis of the Identified Electrochemical Sensors.

18.    All documents and things identifying the names and titles of all persons having any role in the sales and/or marketing of any of Defendant's Identified Electrochemical Sensors.

19.    All documents and things concerning, referring to or relating to any comparison or comparative test of Defendant's Identified Electrochemical Sensors with any other Electrochemical Sensors.

20.    All documents and things referring to, relating to or comprising product literature and technical descriptions provided to health care providers, users and/or customers, including but not limited to instruction manuals, operators manuals, owners manuals, user guides, user manuals, repair manuals, services manuals or care manuals, concerning, referring to or relating to

13

Identified Electrochemical Sensors, including drafts or other versions not distributed to health care providers, users and/or customers.

21.    Ten (10) samples of every model or type of Defendant's Identified Electrochemical Sensors.

22.    All documents and things concerning, referring to or relating to the research, design, development, production or manufacture of any alternatives to Defendant's Identified Electrochemical Sensors, whether or not rejected.

23.    All documents and things concerning, referring to or relating to the decision(s) by Defendant regarding the selection or rejection of any designs of or components for Identified Electrochemical Sensors and/or methods of using an Electrochemical Sensor having a capillary chamber that holds a blood sample volume of 1 μl or less or provides a readout of the glucose concentration of the blood sample within 10 seconds or less after the blood sample enters the capillary chamber.

24.    All documents and things concerning, referring to or relating to any components or parts contained in, or used or considered for use in Defendant's Identified Electrochemical Sensors, including but not limited to any research and development related thereto.

25.    All documents and things concerning, referring to, relating to or depicting the specifications of and process steps used in Defendant's Identified Electrochemical Sensors, and each revision thereof.

26.    All documents and things concerning, referring to or relating to all draft, proposed or final specifications for Defendant's Identified Electrochemical Sensors or any other existing or proposed Electrochemical Sensors having a capillary chamber that holds a blood sample volume of 1 μl or less or provides a readout of the glucose concentration of the blood sample within 10

14

seconds or less after the blood sample enters the capillary chamber.

27.    All documents and things showing, describing, referring to or relating to the structure and/or operation of any Electrochemical Sensor having a capillary chamber that holds a blood sample volume of 1 μl or less, including but not limited to Defendant's Identified Electrochemical Sensors.

28.    All documents and things showing, describing, referring to or relating to the structure and/or operation of any Electrochemical Sensor which provide a readout of the glucose concentration of the blood sample within 10 seconds or less after the blood sample enters the capillary chamber, including but not limited to Defendant's Identified Electrochemical Sensors.

29.    All documents and things sufficient to show how the component parts of Defendant's Identified Electrochemical Sensors work together or interact with each other in the operation of the Identified Electrochemical Sensors.

30.    All documents and things concerning, referring to or relating to comparisons between the components used in Defendant's Identified Electrochemical Sensors and any other components considered, proposed or actually used in Electrochemical Sensors.

31.    All documents and things concerning, referring to or relating to any agreement between Defendant and any other person for the research, design, development or manufacture of the Identified Electrochemical Sensors.

32.    All documents and things concerning, referring to, relating to or constituting any communications between Defendant and any other person concerning the Identified Electrochemical Sensors.

33.    All documents and things concerning, referring to, relating to or constituting any communications between Defendant and any other person concerning an Electrochemical Sensor

having a blood sample volume of 1 μl or less.

34.    All documents and things concerning, referring to, relating to or constituting any communications between Defendant and any other person concerning an Electrochemical Sensor having a test time of 10 seconds or less.

35.    All documents and things concerning, referring to, relating to or constituting any communications between Defendant and any other person concerning an Electrochemical Sensor which provide a readout of the glucose concentration of the blood sample within 10 seconds or less after the blood sample enters the capillary chamber.

36.    All documents resulting from, concerning, referring to or relating to any prior art, literature and/or patent searches conducted by, at the request of or on behalf of Defendant with respect to Electrochemical Sensors having a capillary chamber that holds a blood sample volume of 1 μl or less.

37.    All documents resulting from, concerning, referring to or relating to any prior art, literature and/or patent searches conducted by, at the request of or on behalf of Defendant with respect to Electrochemical Sensors which provide a readout of the glucose concentration of the blood sample within 10 seconds or less after the blood sample enters the capillary chamber.

38.    All documents and things sufficient to demonstrate the amount of time, money and effort spent by or on behalf of Defendant with respect to developing Defendant's Identified Electrochemical Sensors.

39.    All documents and things concerning, referring to or relating to Defendant's knowledge of Plaintiffs' activities in research, patenting, development, manufacturing, use or sale of Electrochemical Sensors having a capillary chamber that holds a blood sample volume of 1 μl or less.

40.    All documents and things concerning, referring to or relating to Defendant's knowledge

16

of Plaintiffs' activities in research, patenting, development, manufacturing, use or sale of Electrochemical

Sensors which provide a readout of the glucose concentration of the blood sample within 10

seconds or less after the blood sample enters the capillary chamber.

41.    All documents concerning, referring to or relating to Christopher D. Wilsey.

42.    All documents concerning, referring to or relating to Nigel A. Surridge.

43.    All documents and things concerning, referring to or relating (in words or in

substance) to the patents-in -suit, including but not limited to:

        (a)    all documents and things concerning, referring to or relating to the validity

        and/or invalidity of the patents-in-suit;

        (b)    all documents and things concerning, referring to or relating to the

        enforceability and/or unenforceability of any of the subject matter claimed by the

        patents-in-suit; and

        (c)    all documents and things concerning, referring to or relating to any

        infringement and/or non-infringement of the patents-in-suit by Defendant or by

        anyone else.

44.    All documents and things concerning, referring to or relating to any analysis,

consideration, negotiation, recommendation or proposal relating to obtaining a license or other

rights under the patents-in-suit.

45.    All documents and things concerning, referring to, relating to or constituting minutes,

memos or other records of meetings of directors, officers, employees and/or other personnel of

Defendant where Plaintiffs and/or the patents-in-suit were discussed, referenced or considered in

any way.

46.    All documents and things concerning, referring to or relating to any consideration given

17

or decisions or efforts made by Defendant to design around the patents-in-suit.

47.    All documents and things concerning, referring to or relating to any decisions or efforts made by Defendant to design Electrochemical Sensors that would not infringe the patents-in-suit.

48.    All documents that Defendant intends to rely on to assert invalidity, unenforceability or non-infringement of any of the patents-in-suit or which otherwise refer or relate to any defense or counterclaim asserted by Defendant.

49.    All patents, printed publications, other items of prior art or other documents, including any English translations thereof, the Defendant believes may have any bearing on the validity of the patents-in-suit.

50.    All documents resulting from, concerning, referring to or relating to any prior art, literature and/or patent searches conducted by, at the request of or on behalf of Defendant with respect to the patents-in-suit.

51.    All documents evidencing, referring to or relating to the state of the art relevant to the subject matter claimed in the patents-in-suit as of the time of filing of the application that issued as the 146 patent.

52.    All documents evidencing, referring to or relating to the state of the art relevant to the subject matter claimed in the patents-in-suit as of the time of filing of the application that issued as the 147 patent.

53.    All documents and things concerning, referring to or relating to United States or foreign patent applications, requests for reexamination, patents, invention certificates, reissues, reexaminations, invention disclosures and file histories concerning or relating to the patents-in-suit, including but not limited to the Requests for Reexamination.

54.    All documents and things concerning, referring to or relating to any written opinions

18

prepared by or on Defendant's behalf, or received by or on Defendant's behalf, regarding the patents-in-suit, including but not limited to opinions relating to the validity, invalidity, enforceability, unenforceability, infringement and/or non-infringement of the patents-in-suit, all drafts of opinions and all documents considered, reviewed or relied on in formulating and/or rendering opinions.

55.     All documents and things concerning, referring to or relating to any discussion or communication, whether written or oral, of the validity, invalidity, enforceability, unenforceability, infringement and/or non-infringement of the patents-in-suit.

56.     All documents and things concerning, referring to or relating to the billing, such as bills or invoices, for any opinion, discussion and/or communication, whether written or oral, regarding validity, invalidity, enforceability, unenforceability, infringement and/or non-infringement of the patents-in-suit or any claim thereof.

57.     All documents and things concerning, referring to or relating to any licensing discussions, negotiations or agreements between Defendant and any person relating to any rights with regard to Defendant's Identified Electrochemical Sensors.

58.     All license agreements and other documents concerning, referring to or relating to or reflecting any agreements between Defendant and any other person relating in any way to electrochemical sensors capable of being used to determine the concentration of a compound in any sample.

59.     All documents and things concerning, describing, referring to, or relating to any agreements between Defendant and any other person with respect to Electrochemical Sensors.

60.     All documents and things concerning, referring to or relating to any offer for sale or sale in the United States of Defendant's Identified Electrochemical Sensors.

61.     All documents and things evidencing, concerning, referring to or relating to any free

19

samples or other units of Defendant's Identified Electrochemical Sensors distributed without

charge.

62.    All documents and things constituting, referring to, or relating to advertising

plans, business plans, marketing plans or efforts, promotional programs or strategies on the part

of Defendant, or on its behalf, concerning Defendant's Identified Electrochemical Sensors.

63.    All documents and things advertising, describing or promoting, by or on behalf of

Defendant, its Identified Electrochemical Sensors, whether or not such documents have yet been made

public, including material prepared by or used by or for persons that distribute, market or sell Defendant's

Identified Electrochemical Sensors.

64.    All documents and things comprising, referring to, or relating in any way to

marketing materials that Defendant prepared or had prepared on its behalf in connection with the

marketing and/or sale of the Identified Electrochemical Sensors.

65.    All documents and things collecting, reflecting, or commenting upon feedback of

any type from customers and/or users of Defendant's Identified Electrochemical Sensors.

66.    All documents and things concerning, referring to or relating to communications with

distributors of Defendant's Identified Electrochemical Sensors, or potential distributors of Defendant's

Identified Electrochemical Sensors.

67.    All documents and things concerning, referring to or relating to communications with

physicians, nurses, clinics or other potential users of Defendant's Identified Electrochemical Sensors.

68.    All documents and things concerning, referring to or relating to any study, projection,

market or other evaluation or analysis of past, current or future sales or revenues for the Identified

Electrochemical Sensors.

69.    All documents and things concerning, referring to or relating to any study, projection,

market or other evaluation or analysis of past, current or future sales or revenues for Electrochemical Sensors sold by Defendant, Plaintiffs or any other person.

70.    All documents and things concerning, referring to or relating to actual or projected sales or market share by Defendant, Plaintiffs or any other person of any Electrochemical Sensors.

71.    All documents and things constituting, referring to or relating to Defendant's budgets, forecasts, projections, short and long term business and strategic plans, and short and long term reports related to sales activity for Identified Electrochemical Sensors.

72.    Documents sufficient to identify all quantities of Defendant's Identified Electrochemical Sensors manufactured in or imported into the United States for any purpose.

73.    Documents sufficient to identify Defendant's current inventory of its Identified Electrochemical Sensors, in terms of potential value in sales.

74.    All documents and things concerning, referring to or relating to Defendant's sales of the Identified Electrochemical Sensors, by month and by year, from 2002 to present.

75.    All documents and things evidencing, referring to or relating to any income or revenue received, prices charged, costs incurred or profits earned by Defendant in connection with the Identified Electrochemical Sensors sold in the United States.

76.    All documents and things from which Defendant's unit sales and revenue of each model or type of Identified Electrochemical Sensors may be determined for each monthly and annual time period from 2002 to present.

77.    All documents and things from which Defendant's gross dollar sales of each model or type of Identified Electrochemical Sensors may be determined for each monthly and annual time period from 2002 to present.

78.    All documents constituting, concerning, referring to or relating to any

determination of profit (including any estimates of unit or marginal profit, cost of goods sold, incremental costs, as well as any actual determination of profit) from Defendant's sales of Identified Electrochemical Sensors.

79.    All documents and things constituting, referring to or relating to sales summaries, sales invoices, purchases orders or discount summaries relating to Defendant's Identified Electrochemical Sensors.

80.    All documents and things identifying Defendant's distributors, dealers, sellers and customers of Defendant's Identified Electrochemical Sensors and volume of sales in units and dollars for each broken down on a monthly basis  (and if monthly data is not available, quarterly or any other periodic basis that you keep records for) from 2002 to present.

81.    All documents and things constituting, relating to or referring to Defendant's pricing of Identified Electrochemical Sensors, any changes in Defendant's pricing of Identified Electrochemical Sensors and/or any discounts offered or given on Defendant's Identified Electrochemical Sensors.

82.    All documents and things constituting, referring to or relating to unit pricing structure or pricing policies for each model or type of Defendant's Identified Electrochemical Sensors.

83.    All documents and things constituting, referring to or relating to Defendant's contracts with customers, dealers, distributors and sellers for the sale of Defendant's Identified Electrochemical Sensors.

84.    All documents and things referring to, relating to or discussing retail pricing, price levels, price breaks or discounts (retail or distributor) with Defendant's distributors, dealers, sellers and customers of Defendant's Identified Electrochemical Sensors.

85.    All documents and things concerning, referring to or relating to competition for the sale of Electrochemical Sensors, including competition between Defendant and its competitors, including but not limited to Plaintiffs, and any other defendants in this action.

86.    All documents and things concerning, referring to or relating to market share, market share studies and marketing analyses or reports relating to Identified Electrochemical Sensors, including those prepared by or on behalf of Defendant, as well as industry reports.

87.    All documents and things concerning, referring to or relating to marketing studies or research showing the size, forecast size or potential size of the market or industry for Defendant's Identified Electrochemical Sensors.

88.    All documents and things concerning, referring to or relating to marketing studies or research showing the size, forecast size or potential size of the customer base for Defendant's Identified Electrochemical Sensors, including but not limited to sales to distributors as well as consumers.

89.    All documents and things concerning, referring to or relating to market share, market share studies and marketing analyses or reports relating to products competitive with Defendant's Identified Electrochemical Sensors (including but not limited to the products of Defendant's competitors such as Plaintiffs, and any other defendants in this action), including those prepared by or on behalf of Defendant, as well as industry reports.

90.    All documents and things concerning, referring to or relating to marketing studies or research showing the size, forecast size or potential size of the market or industry for products competitive with Defendant's Identified Electrochemical Sensors, including but not limited to the products of Defendant's competitors such as Plaintiffs, and any other defendants in this action.

91.    All documents and things concerning, referring to or relating to marketing studies

23

or research showing the size, forecast size or potential size of the customer base for products competitive with Defendant's Identified Electrochemical Sensors (including but not limited to the products of Defendant's competitors such as Plaintiffs, and any other defendants in this action), including but not limited to sales to distributors as well as consumers.

92.    All documents and things concerning, referring to or relating to information on the marketing or sale by Defendant or any of its customers, distributors, dealers or sellers of Defendant's Identified Electrochemical Sensors.

93.    All documents and things concerning, referring to or relating to information on the marketing or sale of products competitive with Defendant's Identified Electrochemical Sensors, including but not limited to the products of Defendant's competitors such as Plaintiffs, and any other defendants in this action.

94.    All documents and things concerning, referring to or relating to information on market trends for Electrochemical Sensors, including but not limited to the products of Defendant's competitors such as Plaintiffs, and any other defendants in this action.

95.    All documents and things concerning, referring to or relating to Defendant's market share of the total market for Electrochemical Sensors on a monthly basis  (and if monthly data is not available, quarterly or any other periodic basis that you keep records for) from 2002 to present.

96.    All documents and things from which Defendant's cost of production (including manufacturing costs, costs of materials, labor, overhead and other cost items) for each model or type of Identified Electrochemical Sensors may be determined for each monthly and annual time period from 2002 to present.

97.    All documents and things from which Defendant's cost of sales (including selling

expenses, marketing, distribution, attributed research and development and other general or administrative expense and interest expense) for each model or type of Identified Electrochemical Sensors may be determined for each monthly and annual time period from 2002 to present.

98.    All documents and things concerning, referring to or relating to any analyses done by or on behalf of Defendant relating to the cost of Defendant's Identified Electrochemical Sensors compared to the cost of any other Electrochemical Sensors.

99.    All financial statements, quarterly and annual reports and other shareholder reports for Defendant from 2002 to present.

100.    All documents comprising any and all financial statements (audited and unaudited), financial projections or forecasts and profit and loss statements prepared by Defendant or on Defendant's behalf from 2002 to present.

101.    All documents comprising any and all financial statements (audited and unaudited) for Defendant (as a whole, by division, by product line and by product), e.g., income statements, balance sheets and statements of cash flow for each monthly, quarterly, annual or other period from 2002 to present.

102.    All documents and things constituting, referring to or relating to Defendant's financial planning with respect to Identified Electrochemical Sensors.

103.    All documents and things constituting, referring to or relating to Defendant's issued patents or pending patent applications directed to any aspect of Defendant's Identified Electrochemical Sensors, including any patents and pending patent applications on which Defendant is a licensee.

104.    All documents and things concerning, referring to or relating to United States or foreign

patent applications, requests for reexamination, patents, invention certificates, reissues, reexaminations, invention disclosures and file histories concerning or relating to any aspect of Defendant's Identified Electrochemical Sensors.

105.    All documents referring to or relating to Defendant's NovaMax® products.

106.    All documents concerning, referring to or relating to both Plaintiffs and Electrochemical Sensors.

107.    All documents and things relied upon or referred to in preparing your Answer.

108.    All documents and things concerning or forming the basis for the any of the Affirmative Defenses asserted in Defendant's Answer.

109.    All documents and things concerning or forming the basis for any of the Counterclaims asserted in Defendant's Answer.

110.    A copy of each file created or maintained by Nova (including its representatives, attorneys and agents) that relates to or contains the applications filed in the PTO that led to the issuance of the 229 patent.

111.    A copy of each file maintained or created by Nova (including its representatives, attorneys and agents) relating to the prosecution of the applications filed in the PTO that led to the issuance of the 229 patent.

112.    All documents relating to the conception, reduction to practice, testing and/or commercialization of the alleged invention claimed in the 229 patent.

113.    The applications filed in the PTO that led to the issuance of the 229 patent.

114.    All drafts of the applications filed in the PTO that led to the issuance of the 229 patent and all drafts of any corresponding amendments and/or responses to office actions.

115.    All documents submitted to the PTO in connection with the applications filed in

26

the PTO that led to the issuance of the 229 patent.

116.    All documents that discuss or refer to the applications filed with the PTO that led to the issuance of the 229 patent.

117.    All documents reflecting or relating to communications with the PTO regarding the 229 patent.

118.    All patent applications filed outside the United States which are counterparts of or correspond to the applications filed in the United States that led to the issuance of the 229 patent.

119.    All documents submitted to foreign authorities in connection with patent applications filed outside the United States which are counterparts of or correspond to the applications filed in the United States that led to the issuance of the 229 patent.

120.    All documents reflecting, referring to or relating to any opposition, nullity, or entitlement, suspension of grant proceedings filed against patent applications, or patents that issued from those applications, that are counterparts of or correspond to the applications filed in the United States that led to the issuance of the 229 patent.

121.    All documents that discuss or refer to patent applications filed outside the United States which are counterparts of or correspond to the applications filed in the United States that led to the issuance of the 229 patent.

122.    All documents, including but not limited to lab notebooks, research reports, worksheets and charts, that were used to develop, or refer or relate to, any example disclosed in the 229 patent.

123.    The most current curriculum vitae available for each and every inventor of the 229 patent.

124.    All documents constituting or reflecting any agreement between Nova and any

27

inventor of the 229 patent.

125.    All documents reflecting or relating to any payments or other compensation other than salary paid by Nova to each and every inventor of the 229 patent.

126.    A copy of each file created or maintained by Nova (including its representatives, attorneys and agents) that relates to or contains the second application.

127.    A copy of each file maintained or created by Nova (including its representatives, attorneys and agents) relating to the prosecution of the second application.

128.    All documents relating to the conception, reduction to practice, testing and/or commercialization of the alleged invention claimed in the second application.

129.    All drafts of the second application and all drafts of any corresponding amendments and/or responses to office actions.

130.    All documents submitted to the PTO or other patent office in connection with the second application.

131.    All documents that discuss or refer to the second application.

132.    All documents reflecting or relating to communications with the PTO or other patent office regarding the second application.

133.    All patent applications filed outside the United States which are counterparts of or correspond to the second application.

134.    All documents submitted to foreign authorities in connection with patent applications filed outside the United States which are counterparts of or correspond to the second application.

135.    All documents reflecting, referring to or relating to any opposition, nullity, or entitlement, suspension of grant proceedings filed against patent applications, or patents that

issued from those applications, that are counterparts of or correspond to the second application.

136.    All documents that discuss or refer to patent applications filed outside the United States which are counterparts of or correspond to the second application.

137.    All documents, including but not limited to lab notebooks, research reports, worksheets and charts, that were used to develop, or refer or relate to, any example disclosed in the second application.

138.    The most current curriculum vitae available for each and every inventor of the second application.

139.    All documents constituting or reflecting any agreement between Nova and any inventor of the second application.

140.    All documents reflecting or relating to any payments or other compensation other than salary paid by Nova to each and every inventor of the second application.

141.    All documents referring or relating to Dr. Werner Schaefer.

142.    All documents reflecting or relating to communications with Dr. Werner Schaefer.

143.    All documents referring or relating to Dr. Gerd Grenner.

144.    All documents reflecting or relating to communications with Dr. Gerd Grenner.

145.    All documents reflecting or relating to communications with F. Hoffman-La Roche, Ltd., or any of its business units, regarding Nova's glucose strip technology.

146.    All documents referring or relating to any meetings between persons from F. Hoffman-La Roche, Ltd., or any of its business units, and Nova regarding Nova's glucose strip technology.

147.    All documents constituting, referring to or relating to any agreements between F.

Hoffman-La Roche, Ltd., or any of its business units, and Nova regarding Nova's glucose strip technology, including any draft agreements.

148.    All documents constituting, referring to or relating to any confidential and/or proprietary information provided to F. Hoffman-La Roche, Ltd., or any of its business units, regarding Nova's glucose strip technology.

149.    All documents and things concerning, referring to or relating to any written opinions prepared by or on Nova's behalf, or received by or on Nova's behalf, regarding the 229 patent, including but not limited to opinions relating to the validity, invalidity, enforceability, unenforceability, infringement and/or non-infringement of the 229 patent, all drafts of opinions and all documents considered, reviewed or relied on in formulating and/or rendering the opinions.

150.    All documents and things concerning, referring to or relating to any written opinions prepared by or on Nova's behalf, or received by or on Nova's behalf, regarding the Agreement, including but not limited to opinions relating to the enforceability, unenforceability and/or breach of the Agreement, all drafts of opinions and all documents considered, reviewed or relied on in formulating and/or rendering the opinions.

151.    All documents and things concerning, referring to, relating to or constituting the "product demonstration, … description of the manufacturing process, the product specifications, the design of the product … and other confidential and proprietary Information concerning Nova's work on a sub-microliter glucose strip" referred to in paragraph 17 of the Counterclaims of Nova's Answer.

152.    All documents referred to in your Initial Disclosures pursuant to F.R.Civ.P. 26(a)(1).

153.    All documents requested for identification by Plaintiffs' First Set of Interrogatories to Defendant Nova Biomedical Corporation (Nos. 1-27), served concurrently herewith.

154.    All documents relied upon, referred to or otherwise consulted directly or indirectly in responding to Plaintiffs' First Set of Interrogatories to Defendant Nova Biomedical Corporation (Nos. 1-27), served concurrently herewith.

155.    All documents and things prepared by or for, or concerning, referring to or relating to any expert retained by Defendant in this litigation.

156.    All documents and things upon which you intend to rely at any time during this litigation.

157.    All documents and things you intend to introduce as exhibits during the trial of this matter.

158.    All documents and things describing, referring to, or relating to Defendant's information archival and/or retrieval system containing any information related to design, manufacture, promotion or sale of Defendant's Identified Electrochemical Sensors.

159.    All documents and things constituting, referring to or relating to Defendant's policies, practices and/or procedures with respect to the generation, distribution, storage, retention or destruction of documents and records, effective as of or subsequent to 2002.

160.    Documents sufficient to identify all files or repositories in which any document responsive to the foregoing requests is maintained in the normal course of business and each index, key, code or other means of accessing and locating documents within such files or repositories.

161.    All documents and things not otherwise described by the above requests that refer or relate to the subject matter shown, described or claimed in the patents-in-suit.

OF COUNSEL:

POTTER ANDERSON & CORROON LLP

Daniel A. Boehnen
Grantland G. Drutchas
McDonnell Boehnen Hulbert & Berghoff LLP
300 South Wacker Drive
Chicago, IL 60606
(312) 913-0001

By: _____
Philip A. Rovner (#3215)
Hercules Plaza
P.O. Box 951
Wilmington, DE 19899-0951
(302) 984-6000
provner@potteranderson.com

Dated:  January 23, 2008

*Attorney for Plaintiffs*
*Roche Diagnostics Operations, Inc. and*
*Corange International Limited*

844036

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, Philip A. Rovner, hereby certify that on January 23, 2008, the within document

was served on the following counsel of record, at the addresses and in the manner

indicated:

**BY E-MAIL**

Frederick L. Cottrell, III, Esq.
Anne Shea Gaza, Esq.
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, DE 19801
cottrell@rlf.com
gaza@rlf.com

Mary W. Bourke, Esq.
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 N. Orange Street
Wilmington, DE 19801
mbourke@cblh.com

Steven J. Balick, Esq.
John G. Day, Esq.
Ashby & Geddes
500 Delaware Avenue
8th Floor
P.O. Box 1150
Wilmington, DE 19899
sbalick@ashby-geddes.com
jday@ashby-geddes.com

**BY E-MAIL**

John W. Shaw, Esq.
Jeffrey T. Castellano, Esq.
Young Conaway Stargatt & Taylor, LLP
1000 West Street, 17th Floor
Wilmington, DE 19801
jshaw@ycst.com
jcastellano@ycst.com

Rodger D. Smith, Esq.
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
rsmith@mnat.com

**BY E-MAIL**

Edward A. Mas, II, Esq.
Stephen F. Sherry, Esq.
Kirk Vander Leest, Esq.
James M. Hafertepe, Esq.
Merle S. Elliott, Esq.
McAndrews, Held & Malloy, Ltd.
500 West Madison Street
34th Floor
Chicago, IL 60661
emas@mcandrews-ip.com
ssherry@mcandrews-ip.com
kvanderleest@mcandrews-ip.com
jhafertepe@mcandrews-ip.com
melliott@mcandrews-ip.com

Kenneth P. George, Esq.
Joseph M. Casino, Esq.
Amster, Rothstein & Ebenstein LLP
90 Park Avenue
New York, NY 10016
kgeorge@arelaw.com
jcasino@arelaw.com

Bradford J. Badke, Esq.
Sona De, Esq.
Michael Kahn, Esq.
Ropes & Gray LLP
1211 Avenue of the Americas
New York, NY 10036-8704
Jim.badke@ropesgray.com
Sona.de@ropesray.com
Michael.kahn@ropesgray.com

**BY E-MAIL**

Wesley E. Overson, Esq.
Rachel Krevans, Esq.
Jason R. Bartlett, Esq.
Parisa Jorjani, Esq.
Daniel P. Muino, Esq.
Morrison & Foerster LLP
425 Market Street
San Francisco, CA 94105-2482
woverson@mofo.com
rkrevans@mofo.com
jasonbartlett@mofo.com
pjorjani@mofo.com
dmuino@mofo.com

Michael G. Adams, Esq.
Ashley L. Ellis, Esq.
Parker Poe Adams & Bernstein LLP
Three Wachovia Center, Suite 3000
401 South Tryon Street
Charlotte, NC 28202
mikeadams@parkerpoe.com
ashleyellis@parkerpoe.com

Philip A. Rovner (#3215)
Potter Anderson & Corroon LLP
Hercules Plaza
P.O. Box 951
Wilmington, Delaware 19899
(302) 984-6000
E-mail: provner@potteranderson.com

-2-

# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ROCHE DIAGNOSTICS OPERATIONS, INC.,  )
and CORANGE INTERNATIONAL LIMITED,   )
                                     )
        Plaintiffs,                  )
                                     )
            vs.                      )    C.A. No. 07-753-JJF
                                     )
ABBOTT DIABETES CARE,                )
INCORPORATED, and                    )
ABBOTT DIABETES CARE SALES           )    DEMAND FOR JURY TRIAL
CORPORATION,                         )
                                     )
BAYER HEALTHCARE, LLC,               )
                                     )
DIAGNOSTIC DEVICES, INC.,            )
                                     )
LIFESCAN, INCORPORATED, and          )
                                     )
NOVA BIOMEDICAL CORPORATION, and     )
SANVITA INCORPORATED,                )
                                     )
        Defendants.                  )

**ROCHE DIAGNOSTICS OPERATIONS, INC.'S AND CORANGE INTERNATIONAL
LIMITED'S FIRST SET OF REQUESTS TO DEFENDANT LIFESCAN, INC.
FOR THE PRODUCTION OF DOCUMENTS AND THINGS (NOS. 1-119)**

Plaintiffs Roche Diagnostics Operations, Inc. ("RDOI") and Corange International Limited

("Corange") (collectively "Plaintiffs") propound the following requests to Defendant LifeScan, Inc.

("LifeScan") for the production of the documents and things specified below for inspection and

copying pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and the Local Rules of

the U.S. District for the District of Delaware.  The documents shall be produced for inspection and

copying at the offices of Plaintiffs' counsel, McDonnell Boehnen Hulbert & Berghoff LLP, 300 S.

Wacker Dr., Chicago, Illinois 60606, within thirty (30) days from the service of these requests and

copying and inspection shall continue from day to day thereafter until completed.  Additionally,

LifeScan shall serve written responses to these requests on Plaintiffs' counsel within thirty (30) days

of the service hereof.

All requests propounded by Plaintiffs are deemed to be continuing in nature so as to

require supplementation promptly following the discovery of additional information by LifeScan

to the extent such information is responsive to Plaintiffs' requests.

## DEFINITIONS

For the purposes of responding to the following requests for production of documents and

things, the following definitions shall apply:

1.      The term "RDOI" shall mean Roche Diagnostics Operations, Inc. and/or any

company name under which RDOI is doing or has done business; its predecessors, parents,

subsidiaries, divisions, licensees, franchisees, assigns or other related business entities; its

directors, officers, employees, agents, distributors, jobbers, salespersons, interns, sales

representatives and attorneys; and each person acting or purporting to act on its or their behalf or

under its or their control.

2.      The term "Corange" shall mean Corange International Limited and/or any

company name under which Corange is doing or has done business; its predecessors, parents,

subsidiaries, divisions, licensees, franchisees, assigns or other related business entities; its

directors, officers, employees, agents, distributors, jobbers, salespersons, interns, sales

representatives and attorneys; and each person acting or purporting to act on its or their behalf or

under its or their control.

3.      The term "Plaintiffs" shall mean RDOI and Corange.

2

4.    The terms "Defendant," "LifeScan," "you" and "your" shall mean LifeScan, Inc. and/or any company name under which LifeScan is doing or has done business; its predecessors, parents, subsidiaries, divisions, licensees, franchisees, assigns or other related business entities; its directors, officers, employees, agents, distributors, jobbers, salespersons, interns, sales representatives and attorneys; and each person acting or purporting to act on its or their behalf or under its or their control.

5.    The terms "person" or "persons" shall mean natural persons (including but not limited to those employed by Defendant) and all other legally cognizable entities, including (without limitation) governmental entities, agencies, officers, departments or affiliates of the United States of America or any other governmental entity; commercial entities such as corporations, foundations, partnerships and proprietorships; associations; organization; and groups of natural persons.

6.    The term "date" shall mean the exact day, month and year, if ascertainable, or, if not, Defendant's closest approximation (including but not limited to an identification of relationship to other events).

7.    The term "document(s)" shall have the broadest meaning accorded to it by Rule 34 of the Federal Rules of Civil Procedure, and shall include, without limitation, any recording in any tangible form of any information, whether handwritten, typed, printed, stored on computer disks, tapes or databases (including electronic files and e-mail) or otherwise reproduced. "Document" also includes all drafts and copies that are not identical to the original.

8.    The term "thing(s)" shall have the broadest meaning accorded to it by Rule 34 of the Federal Rules of Civil Procedure, and shall include, without limitation, every kind of

3

physical specimen or tangible item, other than a document, in the possession, custody or control of Defendant.

9.      The term "communication" shall mean any disclosure, transmission or exchange of information from one person or entity to another, including without limitation by personal meeting, telephone, facsimile, radio, telegraph, electronic mail, teleconference, writing or other means.

10.      The terms "concerning," "referring to" and "relating to" shall be interpreted so as to encompass the liberal scope of discovery set forth in Rule 26(b) of the Federal Rules of Civil Procedure, and shall mean for example and without limitation, refer, relate, analyze, concern, constitute, contain, contradict, describe, discuss, evaluate, evidence, pertain, reflect, refute or support.

11.      The term "including" shall be construed broadly, and shall encompass "including but not limited to" or "including without limitation."

12.      The terms "identify," "identification," "describe," or "description" shall mean to provide a complete identification of the document, thing, or person to the fullest extent known or ascertainable by Defendant, whether or not the information is in the possession, custody, or control of Defendant and whether or not the information is alleged to be protected by any privilege or work product protection, and includes without limitation a request for the following information:

        (a)      with respect to a natural person, his or her name; home and work addresses and telephone numbers; present (or if unknown, the last known) place of employment; date(s) of commencement and termination of employment; job title; and description of his or her duties and responsibilities;

4

(b)    with respect to a corporation or other legal entity, the full name; state of incorporation or registration; address of its principal place of business; telephone number of its principal place of business; and the identity of each natural person who acted on behalf of such entity with respect to the subject matter of the document request;

(c)    with respect to a document, the type of document (e.g., letter, e-mail, facsimile, contract, calendar, report); the number of pages of which the document consists; a general description of the document's contents; an identification of each person(s) who prepared the document, who signed the document, for whom it was prepared, to whom it was delivered, mailed, or otherwise received, and to whom a copy was sent or who otherwise received a copy; the date of writing, creation or publication; the identifying number(s), letter(s), or combination thereof, if any, and the significance or meaning of such number(s), letter(s) or combination thereof; and present location and identity of the custodian of that document. Documents to be identified shall include documents currently in your possession, custody or control; documents you know to have once existed but that no longer exist; and other documents of which you have knowledge or information but that are not currently in your possession, custody or control;

(d)    with respect to a product or to equipment, the common name of the product or equipment; the trade, brand, or commercial name of the product or equipment; the model, part number, catalog number, and/or serial number of the product or equipment; the manufacturer and vendor of the product or equipment; and the use and/or function of the product or equipment;

(e)    with respect to an activity, the events and/or occurrences that comprise the activity; the persons involved in the activity; the dates when the activity occurred; and the locations where the activity occurred;

5

(f)     with respect to oral communications, the manner in which the communications were made (telephone, conversation, etc.); the identity of each person who participated in or witnessed the communication; and the subject matter and content of the communication; and the date of the communication;

(g)     with respect to a patent or patent application, the country or jurisdiction in which it was filed; the number; the named inventor(s); the filing date; the issue date (if a patent); and all related or foreign counterpart applications and patents; and

(h)     with respect to films, photographs, tapes, computer media, and other things susceptible to chemical, biological, mechanical, or electrical reproduction, all identifying information including their character; subject matters; authors; and dates.

13.     The terms "and," "or" and "and/or" shall be construed disjunctively or conjunctively as necessary in order to bring within the scope of the request all responses which otherwise might be construed to be outside its scope.

14.     The term the "146 patent" shall mean U.S. Pat. No. 7,276,146.

15.     The term the "147 patent" shall mean U.S. Pat. No. 7,276,147.

16.     The term "patents-in-suit" shall mean the 146 patent and the 147 patent either collectively or individually, as well as any other patent(s) that may be subsequently added to the litigation.

17.     The term "Complaint" shall mean Plaintiffs' "Complaint for Patent Infringement" filed by Plaintiffs in this action on or about November 21, 2007, as well as any amended complaints that may be filed.

18.    The term "Answer" shall mean the "Answer and Counterclaims of Defendant LifeScan, Inc." filed on or about January 11, 2008, as well as any amended answers that may be filed.

19.    The phrase "Requests for Reexamination" shall mean the requests that were filed with the United States Patent and Trademark Office on or about December 14, 2007 seeking *ex parte* reexamination of all of the claims of the patents-in-suit

20.    The terms "prior art" includes, by way of example and without limitation, any subject matter that you assert may be encompassed by 35 U.S.C. §103 and/or any subdivision of 35 U.S.C. §102.

21.    The phrase "Electrochemical Sensor" shall mean any sensor device capable of being used to determine the concentration of glucose in a blood sample, including but not necessarily limited to the specific electrochemical sensors identified in the Complaint. The Electrochemical Sensors includes (without limitation) test strips or equivalent devices alone or in combination with a meter or equivalent device capable of receiving the test strips and participating in the determination of the concentration of glucose in a blood sample.

22.    The phrase "Identified Electrochemical Sensor" shall mean any Electrochemical Sensor identified by Defendant in response to Interrogatory No. 1.

## INSTRUCTIONS

1.    The original and each non-identical copy of each document or other tangible thing requested herein which is in your possession, custody or control, or that of any of your agents, attorneys, consultants, advisors, associates, accountants, employees, representatives or investigators, is to be produced, including company, department, and personal files. If the original or original carbon copy is not in your possession, custody or control, or that of your

7

agents, attorneys, consultants, advisors, associates, accountants, employees, representatives or investigators, a full, clear, legible copy thereof is to be produced.

2.      If any portion of any document request refers to documents of which Defendant is aware or which were at one time within Defendant's possession, custody, or control, but which are not now subject to Defendant's possession, custody, or control, Defendant is requested to identify such documents in a manner sufficient to describe such documents for a subpoena duces tecum, together with the name, telephone number, and address of the person last known by Defendant to have been in possession, custody, or control of such documents.

3.      Where an objection is made to a document request, state all grounds upon which your objection is based and produce the requested documents to the fullest extent possible subject to any stated objection.

4.      If the attorney-client privilege or work product immunity is asserted as to any document or thing, or if any document or thing is not produced in full, produce the document or thing to the extent the request for production is not objected to, and, in so doing, state the following:

(a)      the specific ground(s) for not producing the document or thing in full;

(b)      the bases for such a claim of privilege or immunity, including a statement of sufficient relevant facts and circumstances that will explain the basis of the claim of privilege and will permit the adjudication of the propriety of the claim of privilege; and

(c)      fully identify the information, document, or material for which such privilege or immunity is asserted, including the type of any document or thing withheld (e.g., letter, memorandum, etc.); the subject matter of any document, communication, or other information withheld; the date of recording, creating or otherwise preparing any document or

8

thing; the name of any document or thing; the name, address and title of its author or creator; the name, address and title of each person (other than stenographic or clerical assistants) participating in the preparation or creation of any document or thing; the name, address and title of each addressee, recipient and/or custodian of the document or thing, or a copy of the document or thing; the name, address and title of each person to whom the contents of the information or any portion thereof have heretofore been communicated by copy, exhibition, reading or summarization; and the location(s) where, if at all, information has been redacted on any document or thing thus produced.

5.    If you maintain that any document or thing requested has been destroyed, lost or is otherwise unavailable, set forth the contents of the document or thing, the location of any copies of the document or thing, the date of its destruction and the name of the person who ordered or authorized its destruction (if any).

6.    If, after exercising due diligence, Defendant is unable to determine the existence of any documents or things falling within a document request, Defendant shall so state in its written response required by Rule 34 of the Federal Rules of Civil Procedure.

7.    No document request or subpart hereof shall be construed as a limitation on any other document request or subpart hereof.

8.    Any word written in the singular herein shall be construed as plural or *vice versa* as necessary to bring within the scope of the request all responses which otherwise might be construed to be outside its scope.

9.    These requests shall be deemed to include all available English translations of every document requested.

9

10.    Documents should be produced as they are kept in the files of Defendant or shall be organized and labeled to correspond with the requests below.  If documents are not produced as they are kept in the files of Defendant, sufficient information should be provided to permit Plaintiffs to identify the source of particular documents from within the filed of Defendant.

11.    Documents from any single file should be produced in the same order as they were found in such file.  If copies of documents are produced, such copies should be legible and bound or stapled in the same manner as the original.

## REQUESTS

1.    All documents and things concerning, referring to or relating to the research, design and/or development of Defendant's Identified Electrochemical Sensors.

2.    Every laboratory notebook or note, technical report, research report, progress report or other document or thing referring or relating to laboratory work on, research on, design and/or development of the Identified Electrochemical Sensors.

3.    All documents and things concerning, referring to or relating to the research, design and/or development related to the sample volume used with Defendant's Identified Electrochemical Sensors.

4.    All documents concerning, referring to or relating to any tests, studies or experiments related to the sample volume used with Defendant's Identified Electrochemical Sensors.

5.    All documents and things concerning, referring to or relating to the research, design and/or development related to the time required to determine the concentration of glucose in a blood sample with Defendant's Identified Electrochemical Sensors.

6.    All documents concerning, referring to or relating to any tests, studies or experiments related to the time required to determine the concentration of glucose in a blood sample with Defendant's Identified Electrochemical Sensors.

7.    All documents and things concerning, referring to or relating to any inspection, review, testing, experimenting, operation, disassembly, analysis or reverse engineering of any Electrochemical Sensors having a capillary chamber that holds a blood sample volume of 1 $\mu$l or less and provides a readout of the glucose concentration of the blood sample within 10 seconds or less after the blood sample enters the capillary chamber made, used, offered for sale or sold by Plaintiffs or any other person.

11

8.    All documents and things concerning, referring to or relating to any submissions,
filings or communications with any state or federal regulatory agency relating to the Identified
Electrochemical Sensors.

9.    All documents and things concerning, referring to or relating to Defendant's decision
to research, design, develop, manufacture, import, sell or offer for sale any Electrochemical
Sensors having a capillary chamber that holds a blood sample volume of 1 µl or less and
providing a readout of the glucose concentration of the blood sample within 10 seconds or less
after the blood sample enters the capillary chamber.

10.    All documents and things concerning, referring to, relating to or constituting minutes,
memos or other records of meetings of directors, officers, employees and/or other personnel of
Defendant where Electrochemical Sensors having a capillary chamber that holds a blood sample
volume of 1 µl or less were discussed referenced or considered in any way.

11.    All documents and things concerning, referring to, relating to or constituting minutes,
memos or other records of meetings of directors, officers, employees and/or other personnel of
Defendant where Electrochemical Sensors which provide a readout of the glucose concentration
of the blood sample within 10 seconds or less after the blood sample enters the capillary chamber
were discussed referenced or considered in any way.

12.    All documents and things concerning, referring to or relating to any utility, advantages,
value or business significance of any Electrochemical Sensors having a capillary chamber that holds a
blood sample volume of 1 µl or less.

13.    All documents and things concerning, referring to or relating to any utility, advantages,
value or business significance of any Electrochemical Sensors which provide a readout of the glucose
concentration of the blood sample within 10 seconds or less after the blood sample enters the

12

capillary chamber.

14.    Organizational charts or other documents for the period from 2002 to the present detailing the corporate structure, management, chain of command and all officers, directors or other employees or personnel of Defendant with any responsibility for the design, engineering, research, development, testing, manufacturing, commercialization, sales, marketing, competitive product analysis or legal analysis of Identified Electrochemical Sensors.

15.    The most current curriculum vitae for the ten people primarily responsible for the design, engineering, research, development or testing of the Identified Electrochemical Sensors.

16.    All documents and things identifying the names and titles of all persons having any role in the research, design and/or development of any of Defendant's Identified Electrochemical Sensors.

17.    The most current curriculum vitae for the ten people primarily responsible for the commercialization, sales, marketing or competitive product analysis of the Identified Electrochemical Sensors.

18.    All documents and things identifying the names and titles of all persons having any role in the sales and/or marketing of any of Defendant's Identified Electrochemical Sensors.

19.    All documents and things concerning, referring to or relating to any comparison or comparative test of Defendant's Identified Electrochemical Sensors with any other Electrochemical Sensors.

20.    All documents and things referring to, relating to or comprising product literature and technical descriptions provided to health care providers, users and/or customers, including but not limited to instruction manuals, operators manuals, owners manuals, user guides, user manuals, repair manuals, services manuals or care manuals, concerning, referring to or relating to

Identified Electrochemical Sensors, including drafts or other versions not distributed to health care providers, users and/or customers.

21.    Ten (10) samples of every model or type of Defendant's Identified Electrochemical Sensors.

22.    All documents and things concerning, referring to or relating to the research, design, development, production or manufacture of any alternatives to Defendant's Identified Electrochemical Sensors, whether or not rejected.

23.    All documents and things concerning, referring to or relating to the decision(s) by Defendant regarding the selection or rejection of any designs of or components for Identified Electrochemical Sensors and/or methods of using an Electrochemical Sensor having a capillary chamber that holds a blood sample volume of 1 µl or less or provides a readout of the glucose concentration of the blood sample within 10 seconds or less after the blood sample enters the capillary chamber.

24.    All documents and things concerning, referring to or relating to any components or parts contained in, or used or considered for use in Defendant's Identified Electrochemical Sensors, including but not limited to any research and development related thereto.

25.    All documents and things concerning, referring to, relating to or depicting the specifications of and process steps used in Defendant's Identified Electrochemical Sensors, and each revision thereof.

26.    All documents and things concerning, referring to or relating to all draft, proposed or final specifications for Defendant's Identified Electrochemical Sensors or any other existing or proposed Electrochemical Sensors having a capillary chamber that holds a blood sample volume of 1 µl or less or provides a readout of the glucose concentration of the blood sample within 10

14

seconds or less after the blood sample enters the capillary chamber.

27.    All documents and things showing, describing, referring to or relating to the structure and/or operation of any Electrochemical Sensor having a capillary chamber that holds a blood sample volume of 1 µl or less, including but not limited to Defendant's Identified Electrochemical Sensors.

28.    All documents and things showing, describing, referring to or relating to the structure and/or operation of any Electrochemical Sensor which provide a readout of the glucose concentration of the blood sample within 10 seconds or less after the blood sample enters the capillary chamber, including but not limited to Defendant's Identified Electrochemical Sensors.

29.    All documents and things sufficient to show how the component parts of Defendant's Identified Electrochemical Sensors work together or interact with each other in the operation of the Identified Electrochemical Sensors.

30.    All documents and things concerning, referring to or relating to comparisons between the components used in Defendant's Identified Electrochemical Sensors and any other components considered, proposed or actually used in Electrochemical Sensors.

31.    All documents and things concerning, referring to or relating to any agreement between Defendant and any other person for the research, design, development or manufacture of the Identified Electrochemical Sensors.

32.    All documents and things concerning, referring to, relating to or constituting any communications between Defendant and any other person concerning the Identified Electrochemical Sensors.

33.    All documents and things concerning, referring to, relating to or constituting any communications between Defendant and any other person concerning an Electrochemical Sensor

having a blood sample volume of 1 μl or less.

34.    All documents and things concerning, referring to, relating to or constituting any communications between Defendant and any other person concerning an Electrochemical Sensor having a test time of 10 seconds or less.

35.    All documents and things concerning, referring to, relating to or constituting any communications between Defendant and any other person concerning an Electrochemical Sensor which provide a readout of the glucose concentration of the blood sample within 10 seconds or less after the blood sample enters the capillary chamber.

36.    All documents resulting from, concerning, referring to or relating to any prior art, literature and/or patent searches conducted by, at the request of or on behalf of Defendant with respect to Electrochemical Sensors having a capillary chamber that holds a blood sample volume of 1 μl or less.

37.    All documents resulting from, concerning, referring to or relating to any prior art, literature and/or patent searches conducted by, at the request of or on behalf of Defendant with respect to Electrochemical Sensors which provide a readout of the glucose concentration of the blood sample within 10 seconds or less after the blood sample enters the capillary chamber.

38.    All documents and things sufficient to demonstrate the amount of time, money and effort spent by or on behalf of Defendant with respect to developing Defendant's Identified Electrochemical Sensors.

39.    All documents and things concerning, referring to or relating to Defendant's knowledge of Plaintiffs' activities in research, patenting, development, manufacturing, use or sale of Electrochemical Sensors having a capillary chamber that holds a blood sample volume of 1 μl or less.

40.    All documents and things concerning, referring to or relating to Defendant's knowledge

16

of Plaintiffs' activities in research, patenting, development, manufacturing, use or sale of Electrochemical

Sensors which provide a readout of the glucose concentration of the blood sample within 10

seconds or less after the blood sample enters the capillary chamber.

     41.    All documents concerning, referring to or relating to Christopher D. Wilsey.

     42.    All documents concerning, referring to or relating to Nigel A. Surridge.

     43.    All documents and things concerning, referring to or relating (in words or in

substance) to the patents-in -suit, including but not limited to:

         (a)    all documents and things concerning, referring to or relating to the validity

         and/or invalidity of the patents-in-suit;

         (b)    all documents and things concerning, referring to or relating to the

         enforceability and/or unenforceability of any of the subject matter claimed by the

         patents-in-suit; and

         (c)    all documents and things concerning, referring to or relating to any

         infringement and/or non-infringement of the patents-in-suit by Defendant or by

         anyone else.

     44.    All documents and things concerning, referring to or relating to any analysis,

consideration, negotiation, recommendation or proposal relating to obtaining a license or other

rights under the patents-in-suit.

     45.    All documents and things concerning, referring to, relating to or constituting minutes,

memos or other records of meetings of directors, officers, employees and/or other personnel of

Defendant where Plaintiffs and/or the patents-in-suit were discussed, referenced or considered in

any way.

     46.    All documents and things concerning, referring to or relating to any consideration given

17

or decisions or efforts made by Defendant to design around the patents-in-suit.

47.    All documents and things concerning, referring to or relating to any decisions or efforts made by Defendant to design Electrochemical Sensors that would not infringe the patents-in-suit.

48.    All documents that Defendant intends to rely on to assert invalidity, unenforceability or non-infringement of any of the patents-in-suit or which otherwise refer or relate to any defense or counterclaim asserted by Defendant.

49.    All patents, printed publications, other items of prior art or other documents, including any English translations thereof, the Defendant believes may have any bearing on the validity of the patents-in-suit.

50.    All documents resulting from, concerning, referring to or relating to any prior art, literature and/or patent searches conducted by, at the request of or on behalf of Defendant with respect to the patents-in-suit.

51.    All documents evidencing, referring to or relating to the state of the art relevant to the subject matter claimed in the patents-in-suit as of the time of filing of the application that issued as the 146 patent.

52.    All documents evidencing, referring to or relating to the state of the art relevant to the subject matter claimed in the patents-in-suit as of the time of filing of the application that issued as the 147 patent.

53.    All documents and things concerning, referring to or relating to United States or foreign patent applications, requests for reexamination, patents, invention certificates, reissues, reexaminations, invention disclosures and file histories concerning or relating to the patents-in-suit, including but not limited to the Requests for Reexamination.

54.    All documents and things concerning, referring to or relating to any written opinions

prepared by or on Defendant's behalf, or received by or on Defendant's behalf, regarding the patents-in-suit, including but not limited to opinions relating to the validity, invalidity, enforceability, unenforceability, infringement and/or non-infringement of the patents-in-suit, all drafts of opinions and all documents considered, reviewed or relied on in formulating and/or rendering opinions.

55.     All documents and things concerning, referring to or relating to any discussion or communication, whether written or oral, of the validity, invalidity, enforceability, unenforceability, infringement and/or non-infringement of the patents-in-suit.

56.     All documents and things concerning, referring to or relating to the billing, such as bills or invoices, for any opinion, discussion and/or communication, whether written or oral, regarding validity, invalidity, enforceability, unenforceability, infringement and/or non-infringement of the patents-in-suit or any claim thereof.

57.     All documents and things concerning, referring to or relating to any licensing discussions, negotiations or agreements between Defendant and any person relating to any rights with regard to Defendant's Identified Electrochemical Sensors.

58.     All license agreements and other documents concerning, referring to or relating to or reflecting any agreements between Defendant and any other person relating in any way to electrochemical sensors capable of being used to determine the concentration of a compound in any sample.

59.     All documents and things concerning, describing, referring to, or relating to any agreements between Defendant and any other person with respect to Electrochemical Sensors.

60.     All documents and things concerning, referring to or relating to any offer for sale or sale in the United States of Defendant's Identified Electrochemical Sensors.

61.     All documents and things evidencing, concerning, referring to or relating to any free

samples or other units of Defendant's Identified Electrochemical Sensors distributed without

charge.

62.     All documents and things constituting, referring to, or relating to advertising

plans, business plans, marketing plans or efforts, promotional programs or strategies on the part

of Defendant, or on its behalf, concerning Defendant's Identified Electrochemical Sensors.

63.     All documents and things advertising, describing or promoting, by or on behalf of

Defendant, its Identified Electrochemical Sensors, whether or not such documents have yet been made

public, including material prepared by or used by or for persons that distribute, market or sell Defendant's

Identified Electrochemical Sensors.

64.     All documents and things comprising, referring to, or relating in any way to

marketing materials that Defendant prepared or had prepared on its behalf in connection with the

marketing and/or sale of the Identified Electrochemical Sensors.

65.     All documents and things collecting, reflecting, or commenting upon feedback of

any type from customers and/or users of Defendant's Identified Electrochemical Sensors.

66.     All documents and things concerning, referring to or relating to communications with

distributors of Defendant's Identified Electrochemical Sensors, or potential distributors of Defendant's

Identified Electrochemical Sensors.

67.     All documents and things concerning, referring to or relating to communications with

physicians, nurses, clinics or other potential users of Defendant's Identified Electrochemical Sensors.

68.     All documents and things concerning, referring to or relating to any study, projection,

market or other evaluation or analysis of past, current or future sales or revenues for the Identified

Electrochemical Sensors.

69.     All documents and things concerning, referring to or relating to any study, projection,

market or other evaluation or analysis of past, current or future sales or revenues for Electrochemical Sensors sold by Defendant, Plaintiffs or any other person.

70.    All documents and things concerning, referring to or relating to actual or projected sales or market share by Defendant, Plaintiffs or any other person of any Electrochemical Sensors.

71.    All documents and things constituting, referring to or relating to Defendant's budgets, forecasts, projections, short and long term business and strategic plans, and short and long term reports related to sales activity for Identified Electrochemical Sensors.

72.    Documents sufficient to identify all quantities of Defendant's Identified Electrochemical Sensors manufactured in or imported into the United States for any purpose.

73.    Documents sufficient to identify Defendant's current inventory of its Identified Electrochemical Sensors, in terms of potential value in sales.

74.    All documents and things concerning, referring to or relating to Defendant's sales of the Identified Electrochemical Sensors, by month and by year, from 2002 to present.

75.    All documents and things evidencing, referring to or relating to any income or revenue received, prices charged, costs incurred or profits earned by Defendant in connection with the Identified Electrochemical Sensors sold in the United States.

76.    All documents and things from which Defendant's unit sales and revenue of each model or type of Identified Electrochemical Sensors may be determined for each monthly and annual time period from 2002 to present.

77.    All documents and things from which Defendant's gross dollar sales of each model or type of Identified Electrochemical Sensors may be determined for each monthly and annual time period from 2002 to present.

78.    All documents constituting, concerning, referring to or relating to any

21

determination of profit (including any estimates of unit or marginal profit, cost of goods sold, incremental costs, as well as any actual determination of profit) from Defendant's sales of Identified Electrochemical Sensors.

79.    All documents and things constituting, referring to or relating to sales summaries, sales invoices, purchases orders or discount summaries relating to Defendant's Identified Electrochemical Sensors.

80.    All documents and things identifying Defendant's distributors, dealers, sellers and customers of Defendant's Identified Electrochemical Sensors and volume of sales in units and dollars for each broken down on a monthly basis  (and if monthly data is not available, quarterly or any other periodic basis that you keep records for) from 2002 to present.

81.    All documents and things constituting, relating to or referring to Defendant's pricing of Identified Electrochemical Sensors, any changes in Defendant's pricing of Identified Electrochemical Sensors and/or any discounts offered or given on Defendant's Identified Electrochemical Sensors.

82.    All documents and things constituting, referring to or relating to unit pricing structure or pricing policies for each model or type of Defendant's Identified Electrochemical Sensors.

83.    All documents and things constituting, referring to or relating to Defendant's contracts with customers, dealers, distributors and sellers for the sale of Defendant's Identified Electrochemical Sensors.

84.    All documents and things referring to, relating to or discussing retail pricing, price levels, price breaks or discounts (retail or distributor) with Defendant's distributors, dealers, sellers and customers of Defendant's Identified Electrochemical Sensors.

85.    All documents and things concerning, referring to or relating to competition for the sale of Electrochemical Sensors, including competition between Defendant and its competitors, including but not limited to Plaintiffs, and any other defendants in this action.

86.    All documents and things concerning, referring to or relating to market share, market share studies and marketing analyses or reports relating to Identified Electrochemical Sensors, including those prepared by or on behalf of Defendant, as well as industry reports.

87.    All documents and things concerning, referring to or relating to marketing studies or research showing the size, forecast size or potential size of the market or industry for Defendant's Identified Electrochemical Sensors.

88.    All documents and things concerning, referring to or relating to marketing studies or research showing the size, forecast size or potential size of the customer base for Defendant's Identified Electrochemical Sensors, including but not limited to sales to distributors as well as consumers.

89.    All documents and things concerning, referring to or relating to market share, market share studies and marketing analyses or reports relating to products competitive with Defendant's Identified Electrochemical Sensors (including but not limited to the products of Defendant's competitors such as Plaintiffs, and any other defendants in this action), including those prepared by or on behalf of Defendant, as well as industry reports.

90.    All documents and things concerning, referring to or relating to marketing studies or research showing the size, forecast size or potential size of the market or industry for products competitive with Defendant's Identified Electrochemical Sensors, including but not limited to the products of Defendant's competitors such as Plaintiffs, and any other defendants in this action.

91.    All documents and things concerning, referring to or relating to marketing studies

23

or research showing the size, forecast size or potential size of the customer base for products competitive with Defendant's Identified Electrochemical Sensors (including but not limited to the products of Defendant's competitors such as Plaintiffs, and any other defendants in this action), including but not limited to sales to distributors as well as consumers.

92.    All documents and things concerning, referring to or relating to information on the marketing or sale by Defendant or any of its customers, distributors, dealers or sellers of Defendant's Identified Electrochemical Sensors.

93.    All documents and things concerning, referring to or relating to information on the marketing or sale of products competitive with Defendant's Identified Electrochemical Sensors, including but not limited to the products of Defendant's competitors such as Plaintiffs, and any other defendants in this action.

94.    All documents and things concerning, referring to or relating to information on market trends for Electrochemical Sensors, including but not limited to the products of Defendant's competitors such as Plaintiffs, and any other defendants in this action.

95.    All documents and things concerning, referring to or relating to Defendant's market share of the total market for Electrochemical Sensors on a monthly basis  (and if monthly data is not available, quarterly or any other periodic basis that you keep records for) from 2002 to present.

96.    All documents and things from which Defendant's cost of production (including manufacturing costs, costs of materials, labor, overhead and other cost items) for each model or type of Identified Electrochemical Sensors may be determined for each monthly and annual time period from 2002 to present.

97.    All documents and things from which Defendant's cost of sales (including selling

expenses, marketing, distribution, attributed research and development and other general or

administrative expense and interest expense) for each model or type of Identified

Electrochemical Sensors may be determined for each monthly and annual time period from 2002

to present.

98.     All documents and things concerning, referring to or relating to any analyses done by

or on behalf of Defendant relating to the cost of Defendant's Identified Electrochemical Sensors

compared to the cost of any other Electrochemical Sensors.

99.     All financial statements, quarterly and annual reports and other shareholder

reports for Defendant from 2002 to present.

100.     All documents comprising any and all financial statements (audited and

unaudited), financial projections or forecasts and profit and loss statements prepared by

Defendant or on Defendant's behalf from 2002 to present.

101.     All documents comprising any and all financial statements (audited and

unaudited) for Defendant (as a whole, by division, by product line and by product), e.g., income

statements, balance sheets and statements of cash flow for each monthly, quarterly, annual or

other period from 2002 to present.

102.     All documents and things constituting, referring to or relating to Defendant's

financial planning with respect to Identified Electrochemical Sensors.

103.     All documents and things constituting, referring to or relating to Defendant's

issued patents or pending patent applications directed to any aspect of Defendant's Identified

Electrochemical Sensors, including any patents and pending patent applications on which

Defendant is a licensee.

104.     All documents and things concerning, referring to or relating to United States or foreign

25

patent applications, requests for reexamination, patents, invention certificates, reissues, reexaminations, invention disclosures and file histories concerning or relating to any aspect of Defendant's Identified Electrochemical Sensors.

105.    All documents referring to or relating to Defendant's OneTouch® UltraSmart®, OneTouch® Ultra®, OneTouch® Ultra® 2 and OneTouch® UltraMini™ products.

106.    All documents concerning, referring to or relating to both Plaintiffs and Electrochemical Sensors.

107.    All documents and things relied upon or referred to in preparing your Answer.

108.    All documents and things concerning or forming the basis for any of the Affirmative Defenses asserted in Defendant's Answer.

109.    All documents and things concerning or forming the basis for either of the Counterclaims asserted in Defendant's Answer.

110.    All documents referred to in your Initial Disclosures pursuant to F.R.Civ.P. 26(a)(1).

111.    All documents requested for identification by Plaintiffs' First Set of Interrogatories to Defendant LifeScan, Inc. (Nos. 1-16), served concurrently herewith.

112.    All documents relied upon, referred to or otherwise consulted directly or indirectly in responding to Plaintiffs' First Set of Interrogatories to Defendant LifeScan, Inc. (Nos. 1-16), served concurrently herewith.

113.    All documents and things prepared by or for, or concerning, referring to or relating to any expert retained by Defendant in this litigation.

114.    All documents and things upon which you intend to rely at any time during this litigation.

115.    All documents and things you intend to introduce as exhibits during the trial of this

matter.

116.    All documents and things describing, referring to, or relating to Defendant's information archival and/or retrieval system containing any information related to design, manufacture, promotion or sale of Defendant's Identified Electrochemical Sensors.

117.    All documents and things constituting, referring to or relating to Defendant's policies, practices and/or procedures with respect to the generation, distribution, storage, retention or destruction of documents and records, effective as of or subsequent to 2002.

118.    Documents sufficient to identify all files or repositories in which any document responsive to the foregoing requests is maintained in the normal course of business and each index, key, code or other means of accessing and locating documents within such files or repositories.

119.    All documents and things not otherwise described by the above requests that refer or relate to the subject matter shown, described or claimed in the patents-in-suit.

OF COUNSEL:

Daniel A. Boehnen
Grantland G. Drutchas
McDonnell Boehnen Hulbert & Berghoff LLP
300 South Wacker Drive
Chicago, IL 60606
(312) 913-0001

Dated: January 23, 2008
844042

POTTER ANDERSON & CORROON LLP

By: _____
    Philip A. Rovner (#3215)
    Hercules Plaza
    P.O. Box 951
    Wilmington, DE 19899-0951
    (302) 984-6000
    provner@potteranderson.com

*Attorney for Plaintiffs*
*Roche Diagnostics Operations, Inc. and*
*Corange International Limited*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, Philip A. Rovner, hereby certify that on January 23, 2008, the within document

was served on the following counsel of record, at the addresses and in the manner

indicated:

**BY E-MAIL**

Frederick L. Cottrell, III, Esq.
Anne Shea Gaza, Esq.
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, DE 19801
cottrell@rlf.com
gaza@rlf.com

Mary W. Bourke, Esq.
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 N. Orange Street
Wilmington, DE 19801
mbourke@cblh.com

Steven J. Balick, Esq.
John G. Day, Esq.
Ashby & Geddes
500 Delaware Avenue
8th Floor
P.O. Box 1150
Wilmington, DE 19899
sbalick@ashby-geddes.com
jday@ashby-geddes.com

**BY E-MAIL**

John W. Shaw, Esq.
Jeffrey T. Castellano, Esq.
Young Conaway Stargatt & Taylor, LLP
1000 West Street, 17th Floor
Wilmington, DE 19801
jshaw@ycst.com
jcastellano@ycst.com

Rodger D. Smith, Esq.
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
rsmith@mnat.com

**BY E-MAIL**

Edward A. Mas, II, Esq.
Stephen F. Sherry, Esq.
Kirk Vander Leest, Esq.
James M. Hafertepe, Esq.
Merle S. Elliott, Esq.
McAndrews, Held & Malloy, Ltd.
500 West Madison Street
34th Floor
Chicago, IL 60661
emas@mcandrews-ip.com
ssherry@mcandrews-ip.com
kvanderleest@mcandrews-ip.com
jhafertepe@mcandrews-ip.com
melliott@mcandrews-ip.com

Kenneth P. George, Esq.
Joseph M. Casino, Esq.
Amster, Rothstein & Ebenstein LLP
90 Park Avenue
New York, NY 10016
kgeorge@arelaw.com
jcasino@arelaw.com

Bradford J. Badke, Esq.
Sona De, Esq.
Michael Kahn, Esq.
Ropes & Gray LLP
1211 Avenue of the Americas
New York, NY 10036-8704
Jim.badke@ropesgray.com
Sona.de@ropesgray.com
Michael.kahn@ropesgray.com

**BY E-MAIL**

Wesley E. Overson, Esq.
Rachel Krevans, Esq.
Jason R. Bartlett, Esq.
Parisa Jorjani, Esq.
Daniel P. Muino, Esq.
Morrison & Foerster LLP
425 Market Street
San Francisco, CA 94105-2482
woverson@mofo.com
rkrevans@mofo.com
jasonbartlett@mofo.com
pjorjani@mofo.com
dmuino@mofo.com

Michael G. Adams, Esq.
Ashley L. Ellis, Esq.
Parker Poe Adams & Bernstein LLP
Three Wachovia Center, Suite 3000
401 South Tryon Street
Charlotte, NC 28202
mikeadams@parkerpoe.com
ashleyellis@parkerpoe.com

Philip A. Rovner (#3215)
Potter Anderson & Corroon LLP
Hercules Plaza
P.O. Box 951
Wilmington, Delaware 19899
(302) 984-6000
E-mail: provner@potteranderson.com

# EXHIBIT E

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROCHE DIAGNOSTICS OPERATIONS, INC., and CORANGE INTERNATIONAL LIMITED, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | C.A. No. 07-753-JJF |
| ABBOTT DIABETES CARE, INCORPORATED, and ABBOTT DIABETES CARE SALES CORPORATION, | ) ) ) ) ) | DEMAND FOR JURY TRIAL |
| BAYER HEALTHCARE, LLC, | ) ) | |
| DIAGNOSTIC DEVICES, INC., | ) ) | |
| LIFESCAN, INCORPORATED, and | ) ) | |
| NOVA BIOMEDICAL CORPORATION, and SANVITA INCORPORATED, | ) ) ) | |
| Defendants. | ) | |

**ROCHE DIAGNOSTICS OPERATIONS, INC.'S AND CORANGE INTERNATIONAL LIMITED'S FIRST SET OF REQUESTS TO DEFENDANT BAYER HEALTHCARE, LLC FOR THE PRODUCTION OF DOCUMENTS AND THINGS (NOS. 1-119)**

Plaintiffs Roche Diagnostics Operations, Inc. ("RDOI") and Corange International Limited ("Corange") (collectively "Plaintiffs") propound the following requests to Defendant Bayer Healthcare, LLC ("Bayer") for the production of the documents and things specified below for inspection and copying pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and the Local Rules of the U.S. District for the District of Delaware. The documents shall be produced for inspection and copying at the offices of Plaintiffs' counsel, McDonnell Boehnen Hulbert & Berghoff LLP, 300 S. Wacker Dr., Chicago, Illinois 60606, within thirty (30) days from the service

of these requests and copying and inspection shall continue from day to day thereafter until completed. Additionally, Bayer shall serve written responses to these requests on Plaintiffs' counsel within thirty (30) days of the service hereof.

All requests propounded by Plaintiffs are deemed to be continuing in nature so as to require supplementation promptly following the discovery of additional information by Bayer to the extent such information is responsive to Plaintiffs' requests.

## DEFINITIONS

For the purposes of responding to the following requests for production of documents and things, the following definitions shall apply:

1.      The term "RDOI" shall mean Roche Diagnostics Operations, Inc. and/or any company name under which RDOI is doing or has done business; its predecessors, parents, subsidiaries, divisions, licensees, franchisees, assigns or other related business entities; its directors, officers, employees, agents, distributors, jobbers, salespersons, interns, sales representatives and attorneys; and each person acting or purporting to act on its or their behalf or under its or their control.

2.      The term "Corange" shall mean Corange International Limited and/or any company name under which Corange is doing or has done business; its predecessors, parents, subsidiaries, divisions, licensees, franchisees, assigns or other related business entities; its directors, officers, employees, agents, distributors, jobbers, salespersons, interns, sales representatives and attorneys; and each person acting or purporting to act on its or their behalf or under its or their control.

3.      The term "Plaintiffs" shall mean RDOI and Corange.

4.    The terms "Defendant," "Bayer," "you" and "your" shall mean Bayer Healthcare, LLC and/or any company name under which Bayer is doing or has done business; its predecessors, parents, subsidiaries, divisions, licensees, franchisees, assigns or other related business entities; its directors, officers, employees, agents, distributors, jobbers, salespersons, interns, sales representatives and attorneys; and each person acting or purporting to act on its or their behalf or under its or their control.

5.    The terms "person" or "persons" shall mean natural persons (including but not limited to those employed by Defendant) and all other legally cognizable entities, including (without limitation) governmental entities, agencies, officers, departments or affiliates of the United States of America or any other governmental entity; commercial entities such as corporations, foundations, partnerships and proprietorships; associations; organization; and groups of natural persons.

6.    The term "date" shall mean the exact day, month and year, if ascertainable, or, if not, Defendant's closest approximation (including but not limited to an identification of relationship to other events).

7.    The term "document(s)" shall have the broadest meaning accorded to it by Rule 34 of the Federal Rules of Civil Procedure, and shall include, without limitation, any recording in any tangible form of any information, whether handwritten, typed, printed, stored on computer disks, tapes or databases (including electronic files and e-mail) or otherwise reproduced. "Document" also includes all drafts and copies that are not identical to the original.

8.    The term "thing(s)" shall have the broadest meaning accorded to it by Rule 34 of the Federal Rules of Civil Procedure, and shall include, without limitation, every kind of

physical specimen or tangible item, other than a document, in the possession, custody or control of Defendant.

9.    The term "communication" shall mean any disclosure, transmission or exchange of information from one person or entity to another, including without limitation by personal meeting, telephone, facsimile, radio, telegraph, electronic mail, teleconference, writing or other means.

10.    The terms "concerning," "referring to" and "relating to" shall be interpreted so as to encompass the liberal scope of discovery set forth in Rule 26(b) of the Federal Rules of Civil Procedure, and shall mean for example and without limitation, refer, relate, analyze, concern, constitute, contain, contradict, describe, discuss, evaluate, evidence, pertain, reflect, refute or support.

11.    The term "including" shall be construed broadly, and shall encompass "including but not limited to" or "including without limitation."

12.    The terms "identify," "identification," "describe," or "description" shall mean to provide a complete identification of the document, thing, or person to the fullest extent known or ascertainable by Defendant, whether or not the information is in the possession, custody, or control of Defendant and whether or not the information is alleged to be protected by any privilege or work product protection, and includes without limitation a request for the following information:

(a)    with respect to a natural person, his or her name; home and work addresses and telephone numbers; present (or if unknown, the last known) place of employment; date(s) of commencement and termination of employment; job title; and description of his or her duties and responsibilities;

4

(b)    with respect to a corporation or other legal entity, the full name; state of incorporation or registration; address of its principal place of business; telephone number of its principal place of business; and the identity of each natural person who acted on behalf of such entity with respect to the subject matter of the document request;

(c)    with respect to a document, the type of document (e.g., letter, e-mail, facsimile, contract, calendar, report); the number of pages of which the document consists; a general description of the document's contents; an identification of each person(s) who prepared the document, who signed the document, for whom it was prepared, to whom it was delivered, mailed, or otherwise received, and to whom a copy was sent or who otherwise received a copy; the date of writing, creation or publication; the identifying number(s), letter(s), or combination thereof, if any, and the significance or meaning of such number(s), letter(s) or combination thereof; and present location and identity of the custodian of that document.  Documents to be identified shall include documents currently in your possession, custody or control; documents you know to have once existed but that no longer exist; and other documents of which you have knowledge or information but that are not currently in your possession, custody or control;

(d)    with respect to a product or to equipment, the common name of the product or equipment; the trade, brand, or commercial name of the product or equipment; the model, part number, catalog number, and/or serial number of the product or equipment; the manufacturer and vendor of the product or equipment; and the use and/or function of the product or equipment;

(e)    with respect to an activity, the events and/or occurrences that comprise the activity; the persons involved in the activity; the dates when the activity occurred; and the locations where the activity occurred;

5

(f)    with respect to oral communications, the manner in which the communications were made (telephone, conversation, etc.); the identity of each person who participated in or witnessed the communication; and the subject matter and content of the communication; and the date of the communication;

(g)    with respect to a patent or patent application, the country or jurisdiction in which it was filed; the number; the named inventor(s); the filing date; the issue date (if a patent); and all related or foreign counterpart applications and patents; and

(h)    with respect to films, photographs, tapes, computer media, and other things susceptible to chemical, biological, mechanical, or electrical reproduction, all identifying information including their character; subject matters; authors; and dates.

13.    The terms "and," "or" and "and/or" shall be construed disjunctively or conjunctively as necessary in order to bring within the scope of the request all responses which otherwise might be construed to be outside its scope.

14.    The term the "146 patent" shall mean U.S. Pat. No. 7,276,146.

15.    The term the "147 patent" shall mean U.S. Pat. No. 7,276,147.

16.    The term "patents-in-suit" shall mean the 146 patent and the 147 patent either collectively or individually, as well as any other patent(s) that may be subsequently added to the litigation.

17.    The term "Complaint" shall mean Plaintiffs' "Complaint for Patent Infringement" filed by Plaintiffs in this action on or about November 21, 2007, as well as any amended complaints that may be filed.

18.    The term "Answer" shall mean "Defendant Bayer Healthcare, LLC's Answer and Affirmative Defenses to Complaint for Patent Infringement" filed by Defendant on or about January 11, 2008, as well as any amended answers that may be filed.

19.    The phrase "Requests for Reexamination" shall mean the requests that were filed with the United States Patent and Trademark Office on or about December 14, 2007 seeking *ex parte* reexamination of all of the claims of the patents-in-suit

20.    The terms "prior art" includes, by way of example and without limitation, any subject matter that you assert may be encompassed by 35 U.S.C. §103 and/or any subdivision of 35 U.S.C. §102.

21.    The phrase "Electrochemical Sensor" shall mean any sensor device capable of being used to determine the concentration of glucose in a blood sample, including but not necessarily limited to the specific electrochemical sensors identified in the Complaint. The Electrochemical Sensors includes (without limitation) test strips or equivalent devices alone or in combination with a meter or equivalent device capable of receiving the test strips and participating in the determination of the concentration of glucose in a blood sample.

22.    The phrase "Identified Electrochemical Sensor" shall mean any Electrochemical Sensor identified by Defendant in response to Interrogatory No. 1.

## INSTRUCTIONS

1.    The original and each non-identical copy of each document or other tangible thing requested herein which is in your possession, custody or control, or that of any of your agents, attorneys, consultants, advisors, associates, accountants, employees, representatives or investigators, is to be produced, including company, department, and personal files. If the original or original carbon copy is not in your possession, custody or control, or that of your

7

agents, attorneys, consultants, advisors, associates, accountants, employees, representatives or investigators, a full, clear, legible copy thereof is to be produced.

2.    If any portion of any document request refers to documents of which Defendant is aware or which were at one time within Defendant's possession, custody, or control, but which are not now subject to Defendant's possession, custody, or control, Defendant is requested to identify such documents in a manner sufficient to describe such documents for a subpoena duces tecum, together with the name, telephone number, and address of the person last known by Defendant to have been in possession, custody, or control of such documents.

3.    Where an objection is made to a document request, state all grounds upon which your objection is based and produce the requested documents to the fullest extent possible subject to any stated objection.

4.    If the attorney-client privilege or work product immunity is asserted as to any document or thing, or if any document or thing is not produced in full, produce the document or thing to the extent the request for production is not objected to, and, in so doing, state the following:

(a)    the specific ground(s) for not producing the document or thing in full;

(b)    the bases for such a claim of privilege or immunity, including a statement of sufficient relevant facts and circumstances that will explain the basis of the claim of privilege and will permit the adjudication of the propriety of the claim of privilege; and

(c)    fully identify the information, document, or material for which such privilege or immunity is asserted, including the type of any document or thing withheld (e.g., letter, memorandum, etc.); the subject matter of any document, communication, or other information withheld; the date of recording, creating or otherwise preparing any document or

8

thing; the name of any document or thing; the name, address and title of its author or creator; the name, address and title of each person (other than stenographic or clerical assistants) participating in the preparation or creation of any document or thing; the name, address and title of each addressee, recipient and/or custodian of the document or thing, or a copy of the document or thing; the name, address and title of each person to whom the contents of the information or any portion thereof have heretofore been communicated by copy, exhibition, reading or summarization; and the location(s) where, if at all, information has been redacted on any document or thing thus produced.

5.     If you maintain that any document or thing requested has been destroyed, lost or is otherwise unavailable, set forth the contents of the document or thing, the location of any copies of the document or thing, the date of its destruction and the name of the person who ordered or authorized its destruction (if any).

6.     If, after exercising due diligence, Defendant is unable to determine the existence of any documents or things falling within a document request, Defendant shall so state in its written response required by Rule 34 of the Federal Rules of Civil Procedure.

7.     No document request or subpart hereof shall be construed as a limitation on any other document request or subpart hereof.

8.     Any word written in the singular herein shall be construed as plural or *vice versa* as necessary to bring within the scope of the request all responses which otherwise might be construed to be outside its scope.

9.     These requests shall be deemed to include all available English translations of every document requested.

10.     Documents should be produced as they are kept in the files of Defendant or shall be organized and labeled to correspond with the requests below.  If documents are not produced as they are kept in the files of Defendant, sufficient information should be provided to permit Plaintiffs to identify the source of particular documents from within the filed of Defendant.

11.     Documents from any single file should be produced in the same order as they were found in such file.  If copies of documents are produced, such copies should be legible and bound or stapled in the same manner as the original.

### REQUESTS

1.    All documents and things concerning, referring to or relating to the research, design and/or development of Defendant's Identified Electrochemical Sensors.

2.    Every laboratory notebook or note, technical report, research report, progress report or other document or thing referring or relating to laboratory work on, research on, design and/or development of the Identified Electrochemical Sensors.

3.    All documents and things concerning, referring to or relating to the research, design and/or development related to the sample volume used with Defendant's Identified Electrochemical Sensors.

4.    All documents concerning, referring to or relating to any tests, studies or experiments related to the sample volume used with Defendant's Identified Electrochemical Sensors.

5.    All documents and things concerning, referring to or relating to the research, design and/or development related to the time required to determine the concentration of glucose in a blood sample with Defendant's Identified Electrochemical Sensors.

6.    All documents concerning, referring to or relating to any tests, studies or experiments related to the time required to determine the concentration of glucose in a blood sample with Defendant's Identified Electrochemical Sensors.

7.    All documents and things concerning, referring to or relating to any inspection, review, testing, experimenting, operation, disassembly, analysis or reverse engineering of any Electrochemical Sensors having a capillary chamber that holds a blood sample volume of 1 μl or less and provides a readout of the glucose concentration of the blood sample within 10 seconds or less after the blood sample enters the capillary chamber made, used, offered for sale or sold by Plaintiffs or any other person.

11

8.     All documents and things concerning, referring to or relating to any submissions, filings or communications with any state or federal regulatory agency relating to the Identified Electrochemical Sensors.

9.     All documents and things concerning, referring to or relating to Defendant's decision to research, design, develop, manufacture, import, sell or offer for sale any Electrochemical Sensors having a capillary chamber that holds a blood sample volume of 1 µl or less and providing a readout of the glucose concentration of the blood sample within 10 seconds or less after the blood sample enters the capillary chamber.

10.     All documents and things concerning, referring to, relating to or constituting minutes, memos or other records of meetings of directors, officers, employees and/or other personnel of Defendant where Electrochemical Sensors having a capillary chamber that holds a blood sample volume of 1 µl or less were discussed referenced or considered in any way.

11.     All documents and things concerning, referring to, relating to or constituting minutes, memos or other records of meetings of directors, officers, employees and/or other personnel of Defendant where Electrochemical Sensors which provide a readout of the glucose concentration of the blood sample within 10 seconds or less after the blood sample enters the capillary chamber were discussed referenced or considered in any way.

12.     All documents and things concerning, referring to or relating to any utility, advantages, value or business significance of any Electrochemical Sensors having a capillary chamber that holds a blood sample volume of 1 µl or less.

13.     All documents and things concerning, referring to or relating to any utility, advantages, value or business significance of any Electrochemical Sensors which provide a readout of the glucose concentration of the blood sample within 10 seconds or less after the blood sample enters the

capillary chamber.

14.    Organizational charts or other documents for the period from 2002 to the present detailing the corporate structure, management, chain of command and all officers, directors or other employees or personnel of Defendant with any responsibility for the design, engineering, research, development, testing, manufacturing, commercialization, sales, marketing, competitive product analysis or legal analysis of Identified Electrochemical Sensors.

15.    The most current curriculum vitae for the ten people primarily responsible for the design, engineering, research, development or testing of the Identified Electrochemical Sensors.

16.    All documents and things identifying the names and titles of all persons having any role in the research, design and/or development of any of Defendant's Identified Electrochemical Sensors.

17.    The most current curriculum vitae for the ten people primarily responsible for the commercialization, sales, marketing or competitive product analysis of the Identified Electrochemical Sensors.

18.    All documents and things identifying the names and titles of all persons having any role in the sales and/or marketing of any of Defendant's Identified Electrochemical Sensors.

19.    All documents and things concerning, referring to or relating to any comparison or comparative test of Defendant's Identified Electrochemical Sensors with any other Electrochemical Sensors.

20.    All documents and things referring to, relating to or comprising product literature and technical descriptions provided to health care providers, users and/or customers, including but not limited to instruction manuals, operators manuals, owners manuals, user guides, user manuals, repair manuals, services manuals or care manuals, concerning, referring to or relating to

13

Identified Electrochemical Sensors, including drafts or other versions not distributed to health care providers, users and/or customers.

21.    Ten (10) samples of every model or type of Defendant's Identified Electrochemical Sensors.

22.    All documents and things concerning, referring to or relating to the research, design, development, production or manufacture of any alternatives to Defendant's Identified Electrochemical Sensors, whether or not rejected.

23.    All documents and things concerning, referring to or relating to the decision(s) by Defendant regarding the selection or rejection of any designs of or components for Identified Electrochemical Sensors and/or methods of using an Electrochemical Sensor having a capillary chamber that holds a blood sample volume of 1 μl or less or provides a readout of the glucose concentration of the blood sample within 10 seconds or less after the blood sample enters the capillary chamber.

24.    All documents and things concerning, referring to or relating to any components or parts contained in, or used or considered for use in Defendant's Identified Electrochemical Sensors, including but not limited to any research and development related thereto.

25.    All documents and things concerning, referring to, relating to or depicting the specifications of and process steps used in Defendant's Identified Electrochemical Sensors, and each revision thereof.

26.    All documents and things concerning, referring to or relating to all draft, proposed or final specifications for Defendant's Identified Electrochemical Sensors or any other existing or proposed Electrochemical Sensors having a capillary chamber that holds a blood sample volume of 1 μl or less or provides a readout of the glucose concentration of the blood sample within 10

seconds or less after the blood sample enters the capillary chamber.

27.    All documents and things showing, describing, referring to or relating to the structure and/or operation of any Electrochemical Sensor having a capillary chamber that holds a blood sample volume of 1 µl or less, including but not limited to Defendant's Identified Electrochemical Sensors.

28.    All documents and things showing, describing, referring to or relating to the structure and/or operation of any Electrochemical Sensor which provide a readout of the glucose concentration of the blood sample within 10 seconds or less after the blood sample enters the capillary chamber, including but not limited to Defendant's Identified Electrochemical Sensors.

29.    All documents and things sufficient to show how the component parts of Defendant's Identified Electrochemical Sensors work together or interact with each other in the operation of the Identified Electrochemical Sensors.

30.    All documents and things concerning, referring to or relating to comparisons between the components used in Defendant's Identified Electrochemical Sensors and any other components considered, proposed or actually used in Electrochemical Sensors.

31.    All documents and things concerning, referring to or relating to any agreement between Defendant and any other person for the research, design, development or manufacture of the Identified Electrochemical Sensors.

32.    All documents and things concerning, referring to, relating to or constituting any communications between Defendant and any other person concerning the Identified Electrochemical Sensors.

33.    All documents and things concerning, referring to, relating to or constituting any communications between Defendant and any other person concerning an Electrochemical Sensor

15

having a blood sample volume of 1 µl or less.

34.    All documents and things concerning, referring to, relating to or constituting any communications between Defendant and any other person concerning an Electrochemical Sensor having a test time of 10 seconds or less.

35.    All documents and things concerning, referring to, relating to or constituting any communications between Defendant and any other person concerning an Electrochemical Sensor which provide a readout of the glucose concentration of the blood sample within 10 seconds or less after the blood sample enters the capillary chamber.

36.    All documents resulting from, concerning, referring to or relating to any prior art, literature and/or patent searches conducted by, at the request of or on behalf of Defendant with respect to Electrochemical Sensors having a capillary chamber that holds a blood sample volume of 1 µl or less.

37.    All documents resulting from, concerning, referring to or relating to any prior art, literature and/or patent searches conducted by, at the request of or on behalf of Defendant with respect to Electrochemical Sensors which provide a readout of the glucose concentration of the blood sample within 10 seconds or less after the blood sample enters the capillary chamber.

38.    All documents and things sufficient to demonstrate the amount of time, money and effort spent by or on behalf of Defendant with respect to developing Defendant's Identified Electrochemical Sensors.

39.    All documents and things concerning, referring to or relating to Defendant's knowledge of Plaintiffs' activities in research, patenting, development, manufacturing, use or sale of Electrochemical Sensors having a capillary chamber that holds a blood sample volume of 1 µl or less.

40.    All documents and things concerning, referring to or relating to Defendant's knowledge

16

of Plaintiffs' activities in research, patenting, development, manufacturing, use or sale of Electrochemical Sensors which provide a readout of the glucose concentration of the blood sample within 10 seconds or less after the blood sample enters the capillary chamber.

    41.    All documents concerning, referring to or relating to Christopher D. Wilsey.

    42.    All documents concerning, referring to or relating to Nigel A. Surridge.

    43.    All documents and things concerning, referring to or relating (in words or in substance) to the patents-in-suit, including but not limited to:

        (a)    all documents and things concerning, referring to or relating to the validity and/or invalidity of the patents-in-suit;

        (b)    all documents and things concerning, referring to or relating to the enforceability and/or unenforceability of any of the subject matter claimed by the patents-in-suit; and

        (c)    all documents and things concerning, referring to or relating to any infringement and/or non-infringement of the patents-in-suit by Defendant or by anyone else.

    44.    All documents and things concerning, referring to or relating to any analysis, consideration, negotiation, recommendation or proposal relating to obtaining a license or other rights under the patents-in-suit.

    45.    All documents and things concerning, referring to, relating to or constituting minutes, memos or other records of meetings of directors, officers, employees and/or other personnel of Defendant where Plaintiffs and/or the patents-in-suit were discussed, referenced or considered in any way.

    46.    All documents and things concerning, referring to or relating to any consideration given

or decisions or efforts made by Defendant to design around the patents-in-suit.

47.    All documents and things concerning, referring to or relating to any decisions or efforts made by Defendant to design Electrochemical Sensors that would not infringe the patents-in-suit.

48.    All documents that Defendant intends to rely on to assert invalidity, unenforceability or non-infringement of any of the patents-in-suit or which otherwise refer or relate to any defense or counterclaim asserted by Defendant.

49.    All patents, printed publications, other items of prior art or other documents, including any English translations thereof, the Defendant believes may have any bearing on the validity of the patents-in-suit.

50.    All documents resulting from, concerning, referring to or relating to any prior art, literature and/or patent searches conducted by, at the request of or on behalf of Defendant with respect to the patents-in-suit.

51.    All documents evidencing, referring to or relating to the state of the art relevant to the subject matter claimed in the patents-in-suit as of the time of filing of the application that issued as the 146 patent.

52.    All documents evidencing, referring to or relating to the state of the art relevant to the subject matter claimed in the patents-in-suit as of the time of filing of the application that issued as the 147 patent.

53.    All documents and things concerning, referring to or relating to United States or foreign patent applications, requests for reexamination, patents, invention certificates, reissues, reexaminations, invention disclosures and file histories concerning or relating to the patents-in-suit, including but not limited to the Requests for Reexamination.

54.    All documents and things concerning, referring to or relating to any written opinions

18

prepared by or on Defendant's behalf, or received by or on Defendant's behalf, regarding the patents-in-suit, including but not limited to opinions relating to the validity, invalidity, enforceability, unenforceability, infringement and/or non-infringement of the patents-in-suit, all drafts of opinions and all documents considered, reviewed or relied on in formulating and/or rendering opinions.

55.    All documents and things concerning, referring to or relating to any discussion or communication, whether written or oral, of the validity, invalidity, enforceability, unenforceability, infringement and/or non-infringement of the patents-in-suit.

56.    All documents and things concerning, referring to or relating to the billing, such as bills or invoices, for any opinion, discussion and/or communication, whether written or oral, regarding validity, invalidity, enforceability, unenforceability, infringement and/or non-infringement of the patents-in-suit or any claim thereof.

57.    All documents and things concerning, referring to or relating to any licensing discussions, negotiations or agreements between Defendant and any person relating to any rights with regard to Defendant's Identified Electrochemical Sensors.

58.    All license agreements and other documents concerning, referring to or relating to or reflecting any agreements between Defendant and any other person relating in any way to electrochemical sensors capable of being used to determine the concentration of a compound in any sample.

59.    All documents and things concerning, describing, referring to, or relating to any agreements between Defendant and any other person with respect to Electrochemical Sensors.

60.    All documents and things concerning, referring to or relating to any offer for sale or sale in the United States of Defendant's Identified Electrochemical Sensors.

61.    All documents and things evidencing, concerning, referring to or relating to any free

19

samples or other units of Defendant's Identified Electrochemical Sensors distributed without charge.

62.    All documents and things constituting, referring to, or relating to advertising plans, business plans, marketing plans or efforts, promotional programs or strategies on the part of Defendant, or on its behalf, concerning Defendant's Identified Electrochemical Sensors.

63.    All documents and things advertising, describing or promoting, by or on behalf of Defendant, its Identified Electrochemical Sensors, whether or not such documents have yet been made public, including material prepared by or used by or for persons that distribute, market or sell Defendant's Identified Electrochemical Sensors.

64.    All documents and things comprising, referring to, or relating in any way to marketing materials that Defendant prepared or had prepared on its behalf in connection with the marketing and/or sale of the Identified Electrochemical Sensors.

65.    All documents and things collecting, reflecting, or commenting upon feedback of any type from customers and/or users of Defendant's Identified Electrochemical Sensors.

66.    All documents and things concerning, referring to or relating to communications with distributors of Defendant's Identified Electrochemical Sensors, or potential distributors of Defendant's Identified Electrochemical Sensors.

67.    All documents and things concerning, referring to or relating to communications with physicians, nurses, clinics or other potential users of Defendant's Identified Electrochemical Sensors.

68.    All documents and things concerning, referring to or relating to any study, projection, market or other evaluation or analysis of past, current or future sales or revenues for the Identified Electrochemical Sensors.

69.    All documents and things concerning, referring to or relating to any study, projection,

market or other evaluation or analysis of past, current or future sales or revenues for Electrochemical Sensors sold by Defendant, Plaintiffs or any other person.

70.    All documents and things concerning, referring to or relating to actual or projected sales or market share by Defendant, Plaintiffs or any other person of any Electrochemical Sensors.

71.    All documents and things constituting, referring to or relating to Defendant's budgets, forecasts, projections, short and long term business and strategic plans, and short and long term reports related to sales activity for Identified Electrochemical Sensors.

72.    Documents sufficient to identify all quantities of Defendant's Identified Electrochemical Sensors manufactured in or imported into the United States for any purpose.

73.    Documents sufficient to identify Defendant's current inventory of its Identified Electrochemical Sensors, in terms of potential value in sales.

74.    All documents and things concerning, referring to or relating to Defendant's sales of the Identified Electrochemical Sensors, by month and by year, from 2002 to present.

75.    All documents and things evidencing, referring to or relating to any income or revenue received, prices charged, costs incurred or profits earned by Defendant in connection with the Identified Electrochemical Sensors sold in the United States.

76.    All documents and things from which Defendant's unit sales and revenue of each model or type of Identified Electrochemical Sensors may be determined for each monthly and annual time period from 2002 to present.

77.    All documents and things from which Defendant's gross dollar sales of each model or type of Identified Electrochemical Sensors may be determined for each monthly and annual time period from 2002 to present.

78.    All documents constituting, concerning, referring to or relating to any

21

determination of profit (including any estimates of unit or marginal profit, cost of goods sold, incremental costs, as well as any actual determination of profit) from Defendant's sales of Identified Electrochemical Sensors.

79.     All documents and things constituting, referring to or relating to sales summaries, sales invoices, purchases orders or discount summaries relating to Defendant's Identified Electrochemical Sensors.

80.     All documents and things identifying Defendant's distributors, dealers, sellers and customers of Defendant's Identified Electrochemical Sensors and volume of sales in units and dollars for each broken down on a monthly basis  (and if monthly data is not available, quarterly or any other periodic basis that you keep records for) from 2002 to present.

81.     All documents and things constituting, relating to or referring to Defendant's pricing of Identified Electrochemical Sensors, any changes in Defendant's pricing of Identified Electrochemical Sensors and/or any discounts offered or given on Defendant's Identified Electrochemical Sensors.

82.     All documents and things constituting, referring to or relating to unit pricing structure or pricing policies for each model or type of Defendant's Identified Electrochemical Sensors.

83.     All documents and things constituting, referring to or relating to Defendant's contracts with customers, dealers, distributors and sellers for the sale of Defendant's Identified Electrochemical Sensors.

84.     All documents and things referring to, relating to or discussing retail pricing, price levels, price breaks or discounts (retail or distributor) with Defendant's distributors, dealers, sellers and customers of Defendant's Identified Electrochemical Sensors.

85.    All documents and things concerning, referring to or relating to competition for the sale of Electrochemical Sensors, including competition between Defendant and its competitors, including but not limited to Plaintiffs, and any other defendants in this action.

86.    All documents and things concerning, referring to or relating to market share, market share studies and marketing analyses or reports relating to Identified Electrochemical Sensors, including those prepared by or on behalf of Defendant, as well as industry reports.

87.    All documents and things concerning, referring to or relating to marketing studies or research showing the size, forecast size or potential size of the market or industry for Defendant's Identified Electrochemical Sensors.

88.    All documents and things concerning, referring to or relating to marketing studies or research showing the size, forecast size or potential size of the customer base for Defendant's Identified Electrochemical Sensors, including but not limited to sales to distributors as well as consumers.

89.    All documents and things concerning, referring to or relating to market share, market share studies and marketing analyses or reports relating to products competitive with Defendant's Identified Electrochemical Sensors (including but not limited to the products of Defendant's competitors such as Plaintiffs, and any other defendants in this action), including those prepared by or on behalf of Defendant, as well as industry reports.

90.    All documents and things concerning, referring to or relating to marketing studies or research showing the size, forecast size or potential size of the market or industry for products competitive with Defendant's Identified Electrochemical Sensors, including but not limited to the products of Defendant's competitors such as Plaintiffs, and any other defendants in this action.

91.    All documents and things concerning, referring to or relating to marketing studies

23

or research showing the size, forecast size or potential size of the customer base for products competitive with Defendant's Identified Electrochemical Sensors (including but not limited to the products of Defendant's competitors such as Plaintiffs, and any other defendants in this action), including but not limited to sales to distributors as well as consumers.

92.    All documents and things concerning, referring to or relating to information on the marketing or sale by Defendant or any of its customers, distributors, dealers or sellers of Defendant's Identified Electrochemical Sensors.

93.    All documents and things concerning, referring to or relating to information on the marketing or sale of products competitive with Defendant's Identified Electrochemical Sensors, including but not limited to the products of Defendant's competitors such as Plaintiffs, and any other defendants in this action.

94.    All documents and things concerning, referring to or relating to information on market trends for Electrochemical Sensors, including but not limited to the products of Defendant's competitors such as Plaintiffs, and any other defendants in this action.

95.    All documents and things concerning, referring to or relating to Defendant's market share of the total market for Electrochemical Sensors on a monthly basis  (and if monthly data is not available, quarterly or any other periodic basis that you keep records for) from 2002 to present.

96.    All documents and things from which Defendant's cost of production (including manufacturing costs, costs of materials, labor, overhead and other cost items) for each model or type of Identified Electrochemical Sensors may be determined for each monthly and annual time period from 2002 to present.

97.    All documents and things from which Defendant's cost of sales (including selling

expenses, marketing, distribution, attributed research and development and other general or administrative expense and interest expense) for each model or type of Identified Electrochemical Sensors may be determined for each monthly and annual time period from 2002 to present.

98.    All documents and things concerning, referring to or relating to any analyses done by or on behalf of Defendant relating to the cost of Defendant's Identified Electrochemical Sensors compared to the cost of any other Electrochemical Sensors.

99.    All financial statements, quarterly and annual reports and other shareholder reports for Defendant from 2002 to present.

100.    All documents comprising any and all financial statements (audited and unaudited), financial projections or forecasts and profit and loss statements prepared by Defendant or on Defendant's behalf from 2002 to present.

101.    All documents comprising any and all financial statements (audited and unaudited) for Defendant (as a whole, by division, by product line and by product), e.g., income statements, balance sheets and statements of cash flow for each monthly, quarterly, annual or other period from 2002 to present.

102.    All documents and things constituting, referring to or relating to Defendant's financial planning with respect to Identified Electrochemical Sensors.

103.    All documents and things constituting, referring to or relating to Defendant's issued patents or pending patent applications directed to any aspect of Defendant's Identified Electrochemical Sensors, including any patents and pending patent applications on which Defendant is a licensee.

104.    All documents and things concerning, referring to or relating to United States or foreign

25

patent applications, requests for reexamination, patents, invention certificates, reissues, reexaminations, invention disclosures and file histories concerning or relating to any aspect of Defendant's Identified Electrochemical Sensors.

105.    All documents referring to or relating to Defendant's Ascensia® BREEZE® 2 and Ascensia® Contour® (5 second test time) products.

106.    All documents concerning, referring to or relating to both Plaintiffs and Electrochemical Sensors.

107.    All documents and things relied upon or referred to in preparing your Answer.

108.    All documents and things concerning or forming the basis for any of the Affirmative Defenses asserted in Defendant's Answer.

109.    All documents and things constituting, referring to or relating to any agreements (or drafts of agreements) between Plaintiffs (individually or collectively) and Bayer, including but not limited to the June 3, 2003 Settlement and License Agreement referred to in paragraph 47 of Bayer's Answer.

110.    All documents referred to in your Initial Disclosures pursuant to F.R.Civ.P. 26(a)(1).

111.    All documents requested for identification by Plaintiffs' First Set of Interrogatories to Defendant Bayer Healthcare, LLC (Nos. 1-18), served concurrently herewith.

112.    All documents relied upon, referred to or otherwise consulted directly or indirectly in responding to Plaintiffs' First Set of Interrogatories to Defendant Bayer Healthcare, LLC (Nos. 1-18), served concurrently herewith.

113.    All documents and things prepared by or for, or concerning, referring to or relating to any expert retained by Defendant in this litigation.

114.    All documents and things upon which you intend to rely at any time during this

litigation.

115.    All documents and things you intend to introduce as exhibits during the trial of this

matter.

116.    All documents and things describing, referring to, or relating to Defendant's

information archival and/or retrieval system containing any information related to design,

manufacture, promotion or sale of Defendant's Identified Electrochemical Sensors.

117.    All documents and things constituting, referring to or relating to Defendant's

policies, practices and/or procedures with respect to the generation, distribution, storage,

retention or destruction of documents and records, effective as of or subsequent to 2002.

118.    Documents sufficient to identify all files or repositories in which any document

responsive to the foregoing requests is maintained in the normal course of business and each

index, key, code or other means of accessing and locating documents within such files or

repositories.

119.    All documents and things not otherwise described by the above requests that refer

or relate to the subject matter shown, described or claimed in the patents-in-suit.

OF COUNSEL:

Daniel A. Boehnen
Grantland G. Drutchas
McDonnell Boehnen Hulbert & Berghoff LLP
300 South Wacker Drive
Chicago, IL 60606
(312) 913-0001

Dated:  January 23, 2008
844040

POTTER ANDERSON & CORROON LLP

By: _____
Philip A. Rovner (#3215)
Hercules Plaza
P.O. Box 951
Wilmington, DE 19899-0951
(302) 984-6000
provner@potteranderson.com

*Attorney for Plaintiffs*
*Roche Diagnostics Operations, Inc. and*
*Corange International Limited*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, Philip A. Rovner, hereby certify that on January 23, 2008, the within document

was served on the following counsel of record, at the addresses and in the manner

indicated:

**BY E-MAIL**

Frederick L. Cottrell, III, Esq.
Anne Shea Gaza, Esq.
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, DE 19801
cottrell@rlf.com
gaza@rlf.com

Mary W. Bourke, Esq.
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 N. Orange Street
Wilmington, DE 19801
mbourke@cblh.com

Steven J. Balick, Esq.
John G. Day, Esq.
Ashby & Geddes
500 Delaware Avenue
8th Floor
P.O. Box 1150
Wilmington, DE 19899
sbalick@ashby-geddes.com
jday@ashby-geddes.com

**BY E-MAIL**

John W. Shaw, Esq.
Jeffrey T. Castellano, Esq.
Young Conaway Stargatt & Taylor, LLP
1000 West Street, 17th Floor
Wilmington, DE 19801
jshaw@ycst.com
jcastellano@ycst.com

Rodger D. Smith, Esq.
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
rsmith@mnat.com

**BY E-MAIL**

Edward A. Mas, II, Esq.
Stephen F. Sherry, Esq.
Kirk Vander Leest, Esq.
James M. Hafertepe, Esq.
Merle S. Elliott, Esq.
McAndrews, Held & Malloy, Ltd.
500 West Madison Street
34th Floor
Chicago, IL 60661
emas@mcandrews-ip.com
ssherry@mcandrews-ip.com
kvanderleest@mcandrews-ip.com
jhafertepe@mcandrews-ip.com
melliott@mcandrews-ip.com

Kenneth P. George, Esq.
Joseph M. Casino, Esq.
Amster, Rothstein & Ebenstein LLP
90 Park Avenue
New York, NY 10016
kgeorge@arelaw.com
jcasino@arelaw.com

Bradford J. Badke, Esq.
Sona De, Esq.
Michael Kahn, Esq.
Ropes & Gray LLP
1211 Avenue of the Americas
New York, NY 10036-8704
Jim.badke@ropesgray.com
Sona.de@ropesray.com
Michael.kahn@ropesgray.com

**BY E-MAIL**

Wesley E. Overson, Esq.
Rachel Krevans, Esq.
Jason R. Bartlett, Esq.
Parisa Jorjani, Esq.
Daniel P. Muino, Esq.
Morrison & Foerster LLP
425 Market Street
San Francisco, CA 94105-2482
woverson@mofo.com
rkrevans@mofo.com
jasonbartlett@mofo.com
pjorjani@mofo.com
dmuino@mofo.com

Michael G. Adams, Esq.
Ashley L. Ellis, Esq.
Parker Poe Adams & Bernstein LLP
Three Wachovia Center, Suite 3000
401 South Tryon Street
Charlotte, NC 28202
mikeadams@parkerpoe.com
ashleyellis@parkerpoe.com

Philip A. Rovner (#3215)
Potter Anderson & Corroon LLP
Hercules Plaza
P.O. Box 951
Wilmington, Delaware 19899
(302) 984-6000
E-mail: provner@potteranderson.com

-2-

# EXHIBIT F

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ROCHE DIAGNOSTICS OPERATIONS, INC.,    )
and CORANGE INTERNATIONAL LIMITED,    )
                                       )
          Plaintiffs,                  )
                                       )
          vs.                          )    C.A. No. 07-753-JJF
                                       )
ABBOTT DIABETES CARE,                  )
INCORPORATED, and                      )
ABBOTT DIABETES CARE SALES             )    DEMAND FOR JURY TRIAL
CORPORATION,                           )
                                       )
BAYER HEALTHCARE, LLC,                 )
                                       )
DIAGNOSTIC DEVICES, INC.,              )
                                       )
LIFESCAN, INCORPORATED, and            )
                                       )
NOVA BIOMEDICAL CORPORATION, and       )
SANVITA INCORPORATED,                  )
                                       )
          Defendants.                  )

**ROCHE DIAGNOSTICS OPERATIONS, INC.'S AND CORANGE INTERNATIONAL
LIMITED'S FIRST SET OF REQUESTS TO DEFENDANTS ABBOTT DIABETES
CARE INC. AND ABBOTT DIABETES CARE SALES CORPORATION
FOR THE PRODUCTION OF DOCUMENTS AND THINGS (NOS. 1-127)**

Plaintiffs Roche Diagnostics Operations, Inc. ("RDOI") and Corange International Limited

("Corange") (collectively "Plaintiffs") propound the following requests to Defendants Abbott

Diabetes Care Inc. ("ADC") and Abbott Diabetes Care Sales Corporation ("ADCSC") (collectively

"Abbott") for the production of the documents and things specified below for inspection and

copying pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and the Local Rules of

the U.S. District for the District of Delaware. The documents shall be produced for inspection and

copying at the offices of Plaintiffs' counsel, McDonnell Boehnen Hulbert & Berghoff LLP, 300 S.

Wacker Dr., Chicago, Illinois 60606, within thirty (30) days from the service of these requests and

copying and inspection shall continue from day to day thereafter until completed.  Additionally,

Abbott shall serve written responses to these requests on Plaintiffs' counsel within thirty (30) days

of the service hereof.

All requests propounded by Plaintiffs are deemed to be continuing in nature so as to

require supplementation promptly following the discovery of additional information by Abbott to

the extent such information is responsive to Plaintiffs' requests.

## DEFINITIONS

For the purposes of responding to the following requests for production of documents and

things, the following definitions shall apply:

1.      The term "RDOI" shall mean Roche Diagnostics Operations, Inc. and/or any

company name under which RDOI is doing or has done business; its predecessors, parents,

subsidiaries, divisions, licensees, franchisees, assigns or other related business entities; its

directors, officers, employees, agents, distributors, jobbers, salespersons, interns, sales

representatives and attorneys; and each person acting or purporting to act on its or their behalf or

under its or their control.

2.      The term "Corange" shall mean Corange International Limited and/or any

company name under which Corange is doing or has done business; its predecessors, parents,

subsidiaries, divisions, licensees, franchisees, assigns or other related business entities; its

directors, officers, employees, agents, distributors, jobbers, salespersons, interns, sales

representatives and attorneys; and each person acting or purporting to act on its or their behalf or

under its or their control.

3.      The term "Plaintiffs" shall mean RDOI and Corange.

2

4.    The terms "Defendant," "Abbott," "you" and "your" shall mean Abbott Diabetes

Care Inc. ("ADC") and Abbott Diabetes Care Sales Corporation ("ADCSC") individually and

collectively and/or any company name under which ADC and/or ADCSC is doing or has done

business; its or their predecessors, parents, subsidiaries, divisions, licensees, franchisees, assigns

or other related business entities; its or their directors, officers, employees, agents, distributors,

jobbers, salespersons, interns, sales representatives and attorneys; and each person acting or

purporting to act on its or their behalf or under its or their control.

5.    The terms "person" or "persons" shall mean natural persons (including but not

limited to those employed by Defendant) and all other legally cognizable entities, including

(without limitation) governmental entities, agencies, officers, departments or affiliates of the

United States of America or any other governmental entity; commercial entities such as

corporations, foundations, partnerships and proprietorships; associations; organization; and

groups of natural persons.

6.    The term "date" shall mean the exact day, month and year, if ascertainable, or, if

not, Defendant's closest approximation (including but not limited to an identification of

relationship to other events).

7.    The term "document(s)" shall have the broadest meaning accorded to it by Rule

34 of the Federal Rules of Civil Procedure, and shall include, without limitation, any recording in

any tangible form of any information, whether handwritten, typed, printed, stored on computer

disks, tapes or databases (including electronic files and e-mail) or otherwise reproduced.

"Document" also includes all drafts and copies that are not identical to the original.

8.    The term "thing(s)" shall have the broadest meaning accorded to it by Rule 34 of

the Federal Rules of Civil Procedure, and shall include, without limitation, every kind of

3

physical specimen or tangible item, other than a document, in the possession, custody or control of Defendant.

9.    The term "communication" shall mean any disclosure, transmission or exchange of information from one person or entity to another, including without limitation by personal meeting, telephone, facsimile, radio, telegraph, electronic mail, teleconference, writing or other means.

10.    The terms "concerning," "referring to" and "relating to" shall be interpreted so as to encompass the liberal scope of discovery set forth in Rule 26(b) of the Federal Rules of Civil Procedure, and shall mean for example and without limitation, refer, relate, analyze, concern, constitute, contain, contradict, describe, discuss, evaluate, evidence, pertain, reflect, refute or support.

11.    The term "including" shall be construed broadly, and shall encompass "including but not limited to" or "including without limitation."

12.    The terms "identify," "identification," "describe," or "description" shall mean to provide a complete identification of the document, thing, or person to the fullest extent known or ascertainable by Defendant, whether or not the information is in the possession, custody, or control of Defendant and whether or not the information is alleged to be protected by any privilege or work product protection, and includes without limitation a request for the following information:

(a)    with respect to a natural person, his or her name; home and work addresses and telephone numbers; present (or if unknown, the last known) place of employment; date(s) of commencement and termination of employment; job title; and description of his or her duties and responsibilities;

4

(b)     with respect to a corporation or other legal entity, the full name; state of incorporation or registration; address of its principal place of business; telephone number of its principal place of business; and the identity of each natural person who acted on behalf of such entity with respect to the subject matter of the document request;

(c)     with respect to a document, the type of document (e.g., letter, e-mail, facsimile, contract, calendar, report); the number of pages of which the document consists; a general description of the document's contents; an identification of each person(s) who prepared the document, who signed the document, for whom it was prepared, to whom it was delivered, mailed, or otherwise received, and to whom a copy was sent or who otherwise received a copy; the date of writing, creation or publication; the identifying number(s), letter(s), or combination thereof, if any, and the significance or meaning of such number(s), letter(s) or combination thereof; and present location and identity of the custodian of that document. Documents to be identified shall include documents currently in your possession, custody or control; documents you know to have once existed but that no longer exist; and other documents of which you have knowledge or information but that are not currently in your possession, custody or control;

(d)     with respect to a product or to equipment, the common name of the product or equipment; the trade, brand, or commercial name of the product or equipment; the model, part number, catalog number, and/or serial number of the product or equipment; the manufacturer and vendor of the product or equipment; and the use and/or function of the product or equipment;

(e)     with respect to an activity, the events and/or occurrences that comprise the activity; the persons involved in the activity; the dates when the activity occurred; and the locations where the activity occurred;

(f)     with respect to oral communications, the manner in which the communications were made (telephone, conversation, etc.); the identity of each person who participated in or witnessed the communication; and the subject matter and content of the communication; and the date of the communication;

(g)     with respect to a patent or patent application, the country or jurisdiction in which it was filed; the number; the named inventor(s); the filing date; the issue date (if a patent); and all related or foreign counterpart applications and patents; and

(h)     with respect to films, photographs, tapes, computer media, and other things susceptible to chemical, biological, mechanical, or electrical reproduction, all identifying information including their character; subject matters; authors; and dates.

13.     The terms "and," "or" and "and/or" shall be construed disjunctively or conjunctively as necessary in order to bring within the scope of the request all responses which otherwise might be construed to be outside its scope.

14.     The term the "146 patent" shall mean U.S. Pat. No. 7,276,146.

15.     The term the "147 patent" shall mean U.S. Pat. No. 7,276,147.

16.     The term "patents-in-suit" shall mean the 146 patent and the 147 patent either collectively or individually, as well as any other patent(s) that may be subsequently added to the litigation.

17.     The term "Complaint" shall mean Plaintiffs' "Complaint for Patent Infringement" filed by Plaintiffs in this action on or about November 21, 2007, as well as any amended complaints that may be filed.

6

18.    The term "Answer" shall mean "Abbott's Answer and Counterclaim to Plaintiffs' Complaint for Patent Infringement" filed on or about January 11, 2008, as well as any amended answers that may be filed.

19.    The phrase "Requests for Reexamination" shall mean the requests that were filed with the United States Patent and Trademark Office on or about December 14, 2007 seeking *ex parte* reexamination of all of the claims of the patents-in-suit

20.    The terms "prior art" includes, by way of example and without limitation, any subject matter that you assert may be encompassed by 35 U.S.C. §103 and/or any subdivision of 35 U.S.C. §102.

21.    The phrase "Electrochemical Sensor" shall mean any sensor device capable of being used to determine the concentration of glucose in a blood sample, including but not necessarily limited to the specific electrochemical sensors identified in the Complaint. The Electrochemical Sensors includes (without limitation) test strips or equivalent devices alone or in combination with a meter or equivalent device capable of receiving the test strips and participating in the determination of the concentration of glucose in a blood sample.

22.    The phrase "Identified Electrochemical Sensor" shall mean any Electrochemical Sensor identified by Defendant in response to Interrogatory No. 1.

23.    The term "WO 626 application" shall mean the PCT Patent Application published as International Publication No. WO 00/20626.

## INSTRUCTIONS

1.    The original and each non-identical copy of each document or other tangible thing requested herein which is in your possession, custody or control, or that of any of your agents, attorneys, consultants, advisors, associates, accountants, employees, representatives or

7

investigators, is to be produced, including company, department, and personal files. If the original or original carbon copy is not in your possession, custody or control, or that of your agents, attorneys, consultants, advisors, associates, accountants, employees, representatives or investigators, a full, clear, legible copy thereof is to be produced.

2.    If any portion of any document request refers to documents of which Defendant is aware or which were at one time within Defendant's possession, custody, or control, but which are not now subject to Defendant's possession, custody, or control, Defendant is requested to identify such documents in a manner sufficient to describe such documents for a subpoena duces tecum, together with the name, telephone number, and address of the person last known by Defendant to have been in possession, custody, or control of such documents.

3.    Where an objection is made to a document request, state all grounds upon which your objection is based and produce the requested documents to the fullest extent possible subject to any stated objection.

4.    If the attorney-client privilege or work product immunity is asserted as to any document or thing, or if any document or thing is not produced in full, produce the document or thing to the extent the request for production is not objected to, and, in so doing, state the following:

(a)    the specific ground(s) for not producing the document or thing in full;

(b)    the bases for such a claim of privilege or immunity, including a statement of sufficient relevant facts and circumstances that will explain the basis of the claim of privilege and will permit the adjudication of the propriety of the claim of privilege; and

(c)    fully identify the information, document, or material for which such privilege or immunity is asserted, including the type of any document or thing withheld (e.g.,

8

letter, memorandum, etc.); the subject matter of any document, communication, or other information withheld; the date of recording, creating or otherwise preparing any document or thing; the name of any document or thing; the name, address and title of its author or creator; the name, address and title of each person (other than stenographic or clerical assistants) participating in the preparation or creation of any document or thing; the name, address and title of each addressee, recipient and/or custodian of the document or thing, or a copy of the document or thing; the name, address and title of each person to whom the contents of the information or any portion thereof have heretofore been communicated by copy, exhibition, reading or summarization; and the location(s) where, if at all, information has been redacted on any document or thing thus produced.

5.      If you maintain that any document or thing requested has been destroyed, lost or is otherwise unavailable, set forth the contents of the document or thing, the location of any copies of the document or thing, the date of its destruction and the name of the person who ordered or authorized its destruction (if any).

6.      If, after exercising due diligence, Defendant is unable to determine the existence of any documents or things falling within a document request, Defendant shall so state in its written response required by Rule 34 of the Federal Rules of Civil Procedure.

7.      No document request or subpart hereof shall be construed as a limitation on any other document request or subpart hereof.

8.      Any word written in the singular herein shall be construed as plural or *vice versa* as necessary to bring within the scope of the request all responses which otherwise might be construed to be outside its scope.

9

9.    These requests shall be deemed to include all available English translations of every document requested.

10.    Documents should be produced as they are kept in the files of Defendant or shall be organized and labeled to correspond with the requests below.  If documents are not produced as they are kept in the files of Defendant, sufficient information should be provided to permit Plaintiffs to identify the source of particular documents from within the filed of Defendant.

11.    Documents from any single file should be produced in the same order as they were found in such file.  If copies of documents are produced, such copies should be legible and bound or stapled in the same manner as the original.

## REQUESTS

1.    All documents and things concerning, referring to or relating to the research, design and/or development of Defendant's Identified Electrochemical Sensors.

2.    Every laboratory notebook or note, technical report, research report, progress report or other document or thing referring or relating to laboratory work on, research on, design and/or development of the Identified Electrochemical Sensors.

3.    All documents and things concerning, referring to or relating to the research, design and/or development related to the sample volume used with Defendant's Identified Electrochemical Sensors.

4.    All documents concerning, referring to or relating to any tests, studies or experiments related to the sample volume used with Defendant's Identified Electrochemical Sensors.

5.    All documents and things concerning, referring to or relating to the research, design and/or development related to the time required to determine the concentration of glucose in a blood sample with Defendant's Identified Electrochemical Sensors.

6.    All documents concerning, referring to or relating to any tests, studies or experiments related to the time required to determine the concentration of glucose in a blood sample with Defendant's Identified Electrochemical Sensors.

7.    All documents and things concerning, referring to or relating to any inspection, review, testing, experimenting, operation, disassembly, analysis or reverse engineering of any Electrochemical Sensors having a capillary chamber that holds a blood sample volume of 1 µl or less and provides a readout of the glucose concentration of the blood sample within 10 seconds or less after the blood sample enters the capillary chamber made, used, offered for sale or sold by Plaintiffs or any other person.

11

8.     All documents and things concerning, referring to or relating to any submissions, filings or communications with any state or federal regulatory agency relating to the Identified Electrochemical Sensors.

9.     All documents and things concerning, referring to or relating to Defendant's decision to research, design, develop, manufacture, import, sell or offer for sale any Electrochemical Sensors having a capillary chamber that holds a blood sample volume of 1 µl or less and providing a readout of the glucose concentration of the blood sample within 10 seconds or less after the blood sample enters the capillary chamber.

10.    All documents and things concerning, referring to, relating to or constituting minutes, memos or other records of meetings of directors, officers, employees and/or other personnel of Defendant where Electrochemical Sensors having a capillary chamber that holds a blood sample volume of 1 µl or less were discussed referenced or considered in any way.

11.    All documents and things concerning, referring to, relating to or constituting minutes, memos or other records of meetings of directors, officers, employees and/or other personnel of Defendant where Electrochemical Sensors which provide a readout of the glucose concentration of the blood sample within 10 seconds or less after the blood sample enters the capillary chamber were discussed referenced or considered in any way.

12.    All documents and things concerning, referring to or relating to any utility, advantages, value or business significance of any Electrochemical Sensors having a capillary chamber that holds a blood sample volume of 1 µl or less.

13.    All documents and things concerning, referring to or relating to any utility, advantages, value or business significance of any Electrochemical Sensors which provide a readout of the glucose concentration of the blood sample within 10 seconds or less after the blood sample enters the

capillary chamber.

14.    Organizational charts or other documents for the period from 2002 to the present detailing the corporate structure, management, chain of command and all officers, directors or other employees or personnel of Defendant with any responsibility for the design, engineering, research, development, testing, manufacturing, commercialization, sales, marketing, competitive product analysis or legal analysis of Identified Electrochemical Sensors.

15.    The most current curriculum vitae for the ten people primarily responsible for the design, engineering, research, development or testing of the Identified Electrochemical Sensors.

16.    All documents and things identifying the names and titles of all persons having any role in the research, design and/or development of any of Defendant's Identified Electrochemical Sensors.

17.    The most current curriculum vitae for the ten people primarily responsible for the commercialization, sales, marketing or competitive product analysis of the Identified Electrochemical Sensors.

18.    All documents and things identifying the names and titles of all persons having any role in the sales and/or marketing of any of Defendant's Identified Electrochemical Sensors.

19.    All documents and things concerning, referring to or relating to any comparison or comparative test of Defendant's Identified Electrochemical Sensors with any other Electrochemical Sensors.

20.    All documents and things referring to, relating to or comprising product literature and technical descriptions provided to health care providers, users and/or customers, including but not limited to instruction manuals, operators manuals, owners manuals, user guides, user manuals, repair manuals, services manuals or care manuals, concerning, referring to or relating to

13

Identified Electrochemical Sensors, including drafts or other versions not distributed to health care providers, users and/or customers.

21.    Ten (10) samples of every model or type of Defendant's Identified Electrochemical Sensors.

22.    All documents and things concerning, referring to or relating to the research, design, development, production or manufacture of any alternatives to Defendant's Identified Electrochemical Sensors, whether or not rejected.

23.    All documents and things concerning, referring to or relating to the decision(s) by Defendant regarding the selection or rejection of any designs of or components for Identified Electrochemical Sensors and/or methods of using an Electrochemical Sensor having a capillary chamber that holds a blood sample volume of 1 μl or less or provides a readout of the glucose concentration of the blood sample within 10 seconds or less after the blood sample enters the capillary chamber.

24.    All documents and things concerning, referring to or relating to any components or parts contained in, or used or considered for use in Defendant's Identified Electrochemical Sensors, including but not limited to any research and development related thereto.

25.    All documents and things concerning, referring to, relating to or depicting the specifications of and process steps used in Defendant's Identified Electrochemical Sensors, and each revision thereof.

26.    All documents and things concerning, referring to or relating to all draft, proposed or final specifications for Defendant's Identified Electrochemical Sensors or any other existing or proposed Electrochemical Sensors having a capillary chamber that holds a blood sample volume of 1 μl or less or provides a readout of the glucose concentration of the blood sample within 10

14

seconds or less after the blood sample enters the capillary chamber.

     27.    All documents and things showing, describing, referring to or relating to the structure and/or operation of any Electrochemical Sensor having a capillary chamber that holds a blood sample volume of 1 µl or less, including but not limited to Defendant's Identified Electrochemical Sensors.

     28.    All documents and things showing, describing, referring to or relating to the structure and/or operation of any Electrochemical Sensor which provide a readout of the glucose concentration of the blood sample within 10 seconds or less after the blood sample enters the capillary chamber, including but not limited to Defendant's Identified Electrochemical Sensors.

     29.    All documents and things sufficient to show how the component parts of Defendant's Identified Electrochemical Sensors work together or interact with each other in the operation of the Identified Electrochemical Sensors.

     30.    All documents and things concerning, referring to or relating to comparisons between the components used in Defendant's Identified Electrochemical Sensors and any other components considered, proposed or actually used in Electrochemical Sensors.

     31.    All documents and things concerning, referring to or relating to any agreement between Defendant and any other person for the research, design, development or manufacture of the Identified Electrochemical Sensors.

     32.    All documents and things concerning, referring to, relating to or constituting any communications between Defendant and any other person concerning the Identified Electrochemical Sensors.

     33.    All documents and things concerning, referring to, relating to or constituting any communications between Defendant and any other person concerning an Electrochemical Sensor

15

having a blood sample volume of 1 μl or less.

34.    All documents and things concerning, referring to, relating to or constituting any communications between Defendant and any other person concerning an Electrochemical Sensor having a test time of 10 seconds or less.

35.    All documents and things concerning, referring to, relating to or constituting any communications between Defendant and any other person concerning an Electrochemical Sensor which provide a readout of the glucose concentration of the blood sample within 10 seconds or less after the blood sample enters the capillary chamber.

36.    All documents resulting from, concerning, referring to or relating to any prior art, literature and/or patent searches conducted by, at the request of or on behalf of Defendant with respect to Electrochemical Sensors having a capillary chamber that holds a blood sample volume of 1 μl or less.

37.    All documents resulting from, concerning, referring to or relating to any prior art, literature and/or patent searches conducted by, at the request of or on behalf of Defendant with respect to Electrochemical Sensors which provide a readout of the glucose concentration of the blood sample within 10 seconds or less after the blood sample enters the capillary chamber.

38.    All documents and things sufficient to demonstrate the amount of time, money and effort spent by or on behalf of Defendant with respect to developing Defendant's Identified Electrochemical Sensors.

39.    All documents and things concerning, referring to or relating to Defendant's knowledge of Plaintiffs' activities in research, patenting, development, manufacturing, use or sale of Electrochemical Sensors having a capillary chamber that holds a blood sample volume of 1 μl or less.

40.    All documents and things concerning, referring to or relating to Defendant's knowledge

16

of Plaintiffs' activities in research, patenting, development, manufacturing, use or sale of Electrochemical

Sensors which provide a readout of the glucose concentration of the blood sample within 10

seconds or less after the blood sample enters the capillary chamber.

41.    All documents concerning, referring to or relating to Christopher D. Wilsey.

42.    All documents concerning, referring to or relating to Nigel A. Surridge.

43.    All documents and things concerning, referring to or relating (in words or in

substance) to the patents-in -suit, including but not limited to:

(a)    all documents and things concerning, referring to or relating to the validity

and/or invalidity of the patents-in-suit;

(b)    all documents and things concerning, referring to or relating to the

enforceability and/or unenforceability of any of the subject matter claimed by the

patents-in-suit; and

(c)    all documents and things concerning, referring to or relating to any

infringement and/or non-infringement of the patents-in-suit by Defendant or by

anyone else.

44.    All documents and things concerning, referring to or relating to any analysis,

consideration, negotiation, recommendation or proposal relating to obtaining a license or other

rights under the patents-in-suit.

45.    All documents and things concerning, referring to, relating to or constituting minutes,

memos or other records of meetings of directors, officers, employees and/or other personnel of

Defendant where Plaintiffs and/or the patents-in-suit were discussed, referenced or considered in

any way.

46.    All documents and things concerning, referring to or relating to any consideration given

17

or decisions or efforts made by Defendant to design around the patents-in-suit.

47.    All documents and things concerning, referring to or relating to any decisions or efforts made by Defendant to design Electrochemical Sensors that would not infringe the patents-in-suit.

48.    All documents that Defendant intends to rely on to assert invalidity, unenforceability or non-infringement of any of the patents-in-suit or which otherwise refer or relate to any defense or counterclaim asserted by Defendant.

49.    All patents, printed publications, other items of prior art or other documents, including any English translations thereof, the Defendant believes may have any bearing on the validity of the patents-in-suit.

50.    All documents resulting from, concerning, referring to or relating to any prior art, literature and/or patent searches conducted by, at the request of or on behalf of Defendant with respect to the patents-in-suit.

51.    All documents evidencing, referring to or relating to the state of the art relevant to the subject matter claimed in the patents-in-suit as of the time of filing of the application that issued as the 146 patent.

52.    All documents evidencing, referring to or relating to the state of the art relevant to the subject matter claimed in the patents-in-suit as of the time of filing of the application that issued as the 147 patent.

53.    All documents and things concerning, referring to or relating to United States or foreign patent applications, requests for reexamination, patents, invention certificates, reissues, reexaminations, invention disclosures and file histories concerning or relating to the patents-in-suit, including but not limited to the Requests for Reexamination.

54.    All documents and things concerning, referring to or relating to any written opinions

18

prepared by or on Defendant's behalf, or received by or on Defendant's behalf, regarding the patents-in-suit, including but not limited to opinions relating to the validity, invalidity, enforceability, unenforceability, infringement and/or non-infringement of the patents-in-suit, all drafts of opinions and all documents considered, reviewed or relied on in formulating and/or rendering opinions.

55.    All documents and things concerning, referring to or relating to any discussion or communication, whether written or oral, of the validity, invalidity, enforceability, unenforceability, infringement and/or non-infringement of the patents-in-suit.

56.    All documents and things concerning, referring to or relating to the billing, such as bills or invoices, for any opinion, discussion and/or communication, whether written or oral, regarding validity, invalidity, enforceability, unenforceability, infringement and/or non-infringement of the patents-in-suit or any claim thereof.

57.    All documents and things concerning, referring to or relating to any licensing discussions, negotiations or agreements between Defendant and any person relating to any rights with regard to Defendant's Identified Electrochemical Sensors.

58.    All license agreements and other documents concerning, referring to or relating to or reflecting any agreements between Defendant and any other person relating in any way to electrochemical sensors capable of being used to determine the concentration of a compound in any sample.

59.    All documents and things concerning, describing, referring to, or relating to any agreements between Defendant and any other person with respect to Electrochemical Sensors.

60.    All documents and things concerning, referring to or relating to any offer for sale or sale in the United States of Defendant's Identified Electrochemical Sensors.

61.    All documents and things evidencing, concerning, referring to or relating to any free

samples or other units of Defendant's Identified Electrochemical Sensors distributed without

charge.

62.   All documents and things constituting, referring to, or relating to advertising

plans, business plans, marketing plans or efforts, promotional programs or strategies on the part

of Defendant, or on its behalf, concerning Defendant's Identified Electrochemical Sensors.

63.   All documents and things advertising, describing or promoting, by or on behalf of

Defendant, its Identified Electrochemical Sensors, whether or not such documents have yet been made

public, including material prepared by or used by or for persons that distribute, market or sell Defendant's

Identified Electrochemical Sensors.

64.   All documents and things comprising, referring to, or relating in any way to

marketing materials that Defendant prepared or had prepared on its behalf in connection with the

marketing and/or sale of the Identified Electrochemical Sensors.

65.   All documents and things collecting, reflecting, or commenting upon feedback of

any type from customers and/or users of Defendant's Identified Electrochemical Sensors.

66.   All documents and things concerning, referring to or relating to communications with

distributors of Defendant's Identified Electrochemical Sensors, or potential distributors of Defendant's

Identified Electrochemical Sensors.

67.   All documents and things concerning, referring to or relating to communications with

physicians, nurses, clinics or other potential users of Defendant's Identified Electrochemical Sensors.

68.   All documents and things concerning, referring to or relating to any study, projection,

market or other evaluation or analysis of past, current or future sales or revenues for the Identified

Electrochemical Sensors.

69.   All documents and things concerning, referring to or relating to any study, projection,

market or other evaluation or analysis of past, current or future sales or revenues for Electrochemical Sensors sold by Defendant, Plaintiffs or any other person.

70.     All documents and things concerning, referring to or relating to actual or projected sales or market share by Defendant, Plaintiffs or any other person of any Electrochemical Sensors.

71.     All documents and things constituting, referring to or relating to Defendant's budgets, forecasts, projections, short and long term business and strategic plans, and short and long term reports related to sales activity for Identified Electrochemical Sensors.

72.     Documents sufficient to identify all quantities of Defendant's Identified Electrochemical Sensors manufactured in or imported into the United States for any purpose.

73.     Documents sufficient to identify Defendant's current inventory of its Identified Electrochemical Sensors, in terms of potential value in sales.

74.     All documents and things concerning, referring to or relating to Defendant's sales of the Identified Electrochemical Sensors, by month and by year, from 2002 to present.

75.     All documents and things evidencing, referring to or relating to any income or revenue received, prices charged, costs incurred or profits earned by Defendant in connection with the Identified Electrochemical Sensors sold in the United States.

76.     All documents and things from which Defendant's unit sales and revenue of each model or type of Identified Electrochemical Sensors may be determined for each monthly and annual time period from 2002 to present.

77.     All documents and things from which Defendant's gross dollar sales of each model or type of Identified Electrochemical Sensors may be determined for each monthly and annual time period from 2002 to present.

78.     All documents constituting, concerning, referring to or relating to any

21

determination of profit (including any estimates of unit or marginal profit, cost of goods sold, incremental costs, as well as any actual determination of profit) from Defendant's sales of Identified Electrochemical Sensors.

79.    All documents and things constituting, referring to or relating to sales summaries, sales invoices, purchases orders or discount summaries relating to Defendant's Identified Electrochemical Sensors.

80.    All documents and things identifying Defendant's distributors, dealers, sellers and customers of Defendant's Identified Electrochemical Sensors and volume of sales in units and dollars for each broken down on a monthly basis  (and if monthly data is not available, quarterly or any other periodic basis that you keep records for) from 2002 to present.

81.    All documents and things constituting, relating to or referring to Defendant's pricing of Identified Electrochemical Sensors, any changes in Defendant's pricing of Identified Electrochemical Sensors and/or any discounts offered or given on Defendant's Identified Electrochemical Sensors.

82.    All documents and things constituting, referring to or relating to unit pricing structure or pricing policies for each model or type of Defendant's Identified Electrochemical Sensors.

83.    All documents and things constituting, referring to or relating to Defendant's contracts with customers, dealers, distributors and sellers for the sale of Defendant's Identified Electrochemical Sensors.

84.    All documents and things referring to, relating to or discussing retail pricing, price levels, price breaks or discounts (retail or distributor) with Defendant's distributors, dealers, sellers and customers of Defendant's Identified Electrochemical Sensors.

85.    All documents and things concerning, referring to or relating to competition for the sale of Electrochemical Sensors, including competition between Defendant and its competitors, including but not limited to Plaintiffs, and any other defendants in this action.

86.    All documents and things concerning, referring to or relating to market share, market share studies and marketing analyses or reports relating to Identified Electrochemical Sensors, including those prepared by or on behalf of Defendant, as well as industry reports.

87.    All documents and things concerning, referring to or relating to marketing studies or research showing the size, forecast size or potential size of the market or industry for Defendant's Identified Electrochemical Sensors.

88.    All documents and things concerning, referring to or relating to marketing studies or research showing the size, forecast size or potential size of the customer base for Defendant's Identified Electrochemical Sensors, including but not limited to sales to distributors as well as consumers.

89.    All documents and things concerning, referring to or relating to market share, market share studies and marketing analyses or reports relating to products competitive with Defendant's Identified Electrochemical Sensors (including but not limited to the products of Defendant's competitors such as Plaintiffs, and any other defendants in this action), including those prepared by or on behalf of Defendant, as well as industry reports.

90.    All documents and things concerning, referring to or relating to marketing studies or research showing the size, forecast size or potential size of the market or industry for products competitive with Defendant's Identified Electrochemical Sensors, including but not limited to the products of Defendant's competitors such as Plaintiffs, and any other defendants in this action.

91.    All documents and things concerning, referring to or relating to marketing studies

or research showing the size, forecast size or potential size of the customer base for products competitive with Defendant's Identified Electrochemical Sensors (including but not limited to the products of Defendant's competitors such as Plaintiffs, and any other defendants in this action), including but not limited to sales to distributors as well as consumers.

92.    All documents and things concerning, referring to or relating to information on the marketing or sale by Defendant or any of its customers, distributors, dealers or sellers of Defendant's Identified Electrochemical Sensors.

93.    All documents and things concerning, referring to or relating to information on the marketing or sale of products competitive with Defendant's Identified Electrochemical Sensors, including but not limited to the products of Defendant's competitors such as Plaintiffs, and any other defendants in this action.

94.    All documents and things concerning, referring to or relating to information on market trends for Electrochemical Sensors, including but not limited to the products of Defendant's competitors such as Plaintiffs, and any other defendants in this action.

95.    All documents and things concerning, referring to or relating to Defendant's market share of the total market for Electrochemical Sensors on a monthly basis  (and if monthly data is not available, quarterly or any other periodic basis that you keep records for) from 2002 to present.

96.    All documents and things from which Defendant's cost of production (including manufacturing costs, costs of materials, labor, overhead and other cost items) for each model or type of Identified Electrochemical Sensors may be determined for each monthly and annual time period from 2002 to present.

97.    All documents and things from which Defendant's cost of sales (including selling

24

expenses, marketing, distribution, attributed research and development and other general or administrative expense and interest expense) for each model or type of Identified Electrochemical Sensors may be determined for each monthly and annual time period from 2002 to present.

98.    All documents and things concerning, referring to or relating to any analyses done by or on behalf of Defendant relating to the cost of Defendant's Identified Electrochemical Sensors compared to the cost of any other Electrochemical Sensors.

99.    All financial statements, quarterly and annual reports and other shareholder reports for Defendant from 2002 to present.

100.    All documents comprising any and all financial statements (audited and unaudited), financial projections or forecasts and profit and loss statements prepared by Defendant or on Defendant's behalf from 2002 to present.

101.    All documents comprising any and all financial statements (audited and unaudited) for Defendant (as a whole, by division, by product line and by product), e.g., income statements, balance sheets and statements of cash flow for each monthly, quarterly, annual or other period from 2002 to present.

102.    All documents and things constituting, referring to or relating to Defendant's financial planning with respect to Identified Electrochemical Sensors.

103.    All documents and things constituting, referring to or relating to Defendant's issued patents or pending patent applications directed to any aspect of Defendant's Identified Electrochemical Sensors, including any patents and pending patent applications on which Defendant is a licensee.

104.    All documents and things concerning, referring to or relating to United States or foreign

25

patent applications, requests for reexamination, patents, invention certificates, reissues, reexaminations, invention disclosures and file histories concerning or relating to any aspect of Defendant's Identified Electrochemical Sensors.

105.    All documents referring to or relating to Defendant's FreeStyle, FreeStyle Flash®, FreeStyle Freedom®, Precision Xtra and Optium products.

106.    All documents concerning, referring to or relating to both Plaintiffs and Electrochemical Sensors.

107.    All documents and things relied upon or referred to in preparing your Answer.

108.    All documents and things concerning or forming the basis for any of the Affirmative Defenses asserted in Defendant's Answer.

109.    All documents and things concerning or forming the basis for either of the Counterclaims asserted in Defendant's Answer.

110.    A copy of each file created or maintained by Abbott (including its representatives, attorneys and agents) that relates to or contains the WO 626 application.

111.    All documents referring to, relating to or constituting the WO 626 application.

112.    All documents relating to the conception, reduction to practice and/or testing of the alleged invention claimed in the WO 626 application.

113.    All drafts of the WO 626 application and all drafts of any amendments to the WO 626 application.

114.    All documents submitted to the World Intellectual Property Organization in connection with the WO 626 application.

115.    All documents, including but not limited to lab notebooks, research reports, worksheets and charts, that were used to develop, or refer or relate to, any Example disclosed in

26

the WO 626 application.

116.    All documents, including but not limited to lab notebooks, research reports, worksheets and charts, that were used to develop, or refer or relate to, Example 12 in the WO 626 application.

117.    All documents reflecting or relating to communications with the World Intellectual Property Organization regarding the 229 patent.

118.    All documents referred to in your Initial Disclosures pursuant to F.R.Civ.P. 26(a)(1).

119.    All documents requested for identification by Plaintiffs' First Set of Interrogatories to Defendants Abbott Diabetes Care Inc. and Abbott Diabetes Care Sales Corporation (Nos. 1-17), served concurrently herewith.

120.    All documents relied upon, referred to or otherwise consulted directly or indirectly in responding to Plaintiffs' First Set of Interrogatories to Defendants Abbott Diabetes Care Inc. and Abbott Diabetes Care Sales Corporation (Nos. 1-17), served concurrently herewith.

121.    All documents and things prepared by or for, or concerning, referring to or relating to any expert retained by Defendant in this litigation.

122.    All documents and things upon which you intend to rely at any time during this litigation.

123.    All documents and things you intend to introduce as exhibits during the trial of this matter.

124.    All documents and things describing, referring to, or relating to Defendant's information archival and/or retrieval system containing any information related to design, manufacture, promotion or sale of Defendant's Identified Electrochemical Sensors.

125.    All documents and things constituting, referring to or relating to Defendant's

27

policies, practices and/or procedures with respect to the generation, distribution, storage, retention or destruction of documents and records, effective as of or subsequent to 2002.

126.    Documents sufficient to identify all files or repositories in which any document responsive to the foregoing requests is maintained in the normal course of business and each index, key, code or other means of accessing and locating documents within such files or repositories.

127.    All documents and things not otherwise described by the above requests that refer or relate to the subject matter shown, described or claimed in the patents-in-suit.


OF COUNSEL:

Daniel A. Boehnen
Grantland G. Drutchas
McDonnell Boehnen Hulbert & Berghoff LLP
300 South Wacker Drive
Chicago, IL 60606
(312) 913-0001


Dated:  January 23, 2008


844038

POTTER ANDERSON & CORROON LLP


By:  _____
    Philip A. Rovner (#3215)
    Hercules Plaza
    P.O. Box 951
    Wilmington, DE 19899-0951
    (302) 984-6000
    provner@potteranderson.com

*Attorney for Plaintiffs*
*Roche Diagnostics Operations, Inc. and*
*Corange International Limited*


28

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, Philip A. Rovner, hereby certify that on January 23, 2008, the within document

was served on the following counsel of record, at the addresses and in the manner

indicated:

### BY E-MAIL

Frederick L. Cottrell, III, Esq.
Anne Shea Gaza, Esq.
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, DE 19801
cottrell@rlf.com
gaza@rlf.com

Mary W. Bourke, Esq.
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 N. Orange Street
Wilmington, DE 19801
mbourke@cblh.com

Steven J. Balick, Esq.
John G. Day, Esq.
Ashby & Geddes
500 Delaware Avenue
8th Floor
P.O. Box 1150
Wilmington, DE 19899
sbalick@ashby-geddes.com
jday@ashby-geddes.com

### BY E-MAIL

John W. Shaw, Esq.
Jeffrey T. Castellano, Esq.
Young Conaway Stargatt & Taylor, LLP
1000 West Street, 17th Floor
Wilmington, DE 19801
jshaw@ycst.com
jcastellano@ycst.com

Rodger D. Smith, Esq.
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
rsmith@mnat.com

**BY E-MAIL**

Edward A. Mas, II, Esq.
Stephen F. Sherry, Esq.
Kirk Vander Leest, Esq.
James M. Hafertepe, Esq.
Merle S. Elliott, Esq.
McAndrews, Held & Malloy, Ltd.
500 West Madison Street
34th Floor
Chicago, IL 60661
emas@mcandrews-ip.com
ssherry@mcandrews-ip.com
kvanderleest@mcandrews-ip.com
jhafertepe@mcandrews-ip.com
melliott@mcandrews-ip.com

Kenneth P. George, Esq.
Joseph M. Casino, Esq.
Amster, Rothstein & Ebenstein LLP
90 Park Avenue
New York, NY 10016
kgeorge@arelaw.com
jcasino@arelaw.com

Bradford J. Badke, Esq.
Sona De, Esq.
Michael Kahn, Esq.
Ropes & Gray LLP
1211 Avenue of the Americas
New York, NY 10036-8704
Jim.badke@ropesgray.com
Sona.de@ropesray.com
Michael.kahn@ropesgray.com

**BY E-MAIL**

Wesley E. Overson, Esq.
Rachel Krevans, Esq.
Jason R. Bartlett, Esq.
Parisa Jorjani, Esq.
Daniel P. Muino, Esq.
Morrison & Foerster LLP
425 Market Street
San Francisco, CA 94105-2482
woverson@mofo.com
rkrevans@mofo.com
jasonbartlett@mofo.com
pjorjani@mofo.com
dmuino@mofo.com

Michael G. Adams, Esq.
Ashley L. Ellis, Esq.
Parker Poe Adams & Bernstein LLP
Three Wachovia Center, Suite 3000
401 South Tryon Street
Charlotte, NC 28202
mikeadams@parkerpoe.com
ashleyellis@parkerpoe.com

Philip A. Rovner (#3215)
Potter Anderson & Corroon LLP
Hercules Plaza
P.O. Box 951
Wilmington, Delaware 19899
(302) 984-6000
E-mail: provner@potteranderson.com

-2-

# EXHIBIT G

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROCHE DIAGNOSTICS OPERATIONS, INC., and CORANGE INTERNATIONAL LIMITED, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | C.A. No. 07-753-JJF |
| ABBOTT DIABETES CARE, INCORPORATED, and ABBOTT DIABETES CARE SALES CORPORATION, | ) ) ) ) ) | DEMAND FOR JURY TRIAL |
| BAYER HEALTHCARE, LLC, | ) ) | |
| DIAGNOSTIC DEVICES, INC., | ) ) | |
| LIFESCAN, INCORPORATED, and | ) ) | |
| NOVA BIOMEDICAL CORPORATION, and SANVITA INCORPORATED, | ) ) ) | |
| Defendants. | ) | |

### ROCHE DIAGNOSTICS OPERATIONS, INC.'S AND CORANGE INTERNATIONAL LIMITED'S FIRST SET OF INTERROGATORIES (NOS. 1-27) TO DEFENDANT NOVA BIOMEDICAL CORPORATION

Plaintiffs Roche Diagnostics Operations, Inc. ("RDOI") and Corange International Limited ("Corange") (collectively "Plaintiffs") propound the following Interrogatories to Defendant Nova Biomedical Corporation ("Nova"), pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and the Local Rules of the U.S. District for the District of Delaware. The written responses to these Interrogatories shall be served on Plaintiffs' counsel within thirty (30) days of the service thereof. Further, any documents and things produced in response to these Interrogatories shall be produced for inspection and copying at the offices of Plaintiffs' counsel, McDonnell

Boehnen Hulbert & Berghoff LLP, 300 S. Wacker Dr., Chicago, Illinois 60606, within thirty (30) days from the service of these Interrogatories.

All Interrogatories propounded by Plaintiffs are deemed to be continuing in nature so as to require supplementation promptly following the discovery of additional documents or things or knowledge or information by Nova to the extent such documents or things or knowledge or information is responsive to Plaintiffs' Interrogatories.

## DEFINITIONS

For the purposes of responding to the following Interrogatories, the following definitions shall apply:

1.      The term "RDOI" shall mean Roche Diagnostics Operations, Inc. and/or any company name under which RDOI is doing or has done business; its predecessors, parents, subsidiaries, divisions, licensees, franchisees, assigns or other related business entities; its directors, officers, employees, agents, distributors, jobbers, salespersons, interns, sales representatives and attorneys; and each person acting or purporting to act on its or their behalf or under its or their control.

2.      The term "Corange" shall mean Corange International Limited and/or any company name under which Corange is doing or has done business; its predecessors, parents, subsidiaries, divisions, licensees, franchisees, assigns or other related business entities; its directors, officers, employees, agents, distributors, jobbers, salespersons, interns, sales representatives and attorneys; and each person acting or purporting to act on its or their behalf or under its or their control.

3.      The term "Plaintiffs" shall mean RDOI and Corange.

2

4.      The terms "Defendant," "Nova," "you" and "your" shall mean Nova Biomedical Corporation and/or any company name under which Nova is doing or has done business; its predecessors, parents, subsidiaries, divisions, licensees, franchisees, assigns or other related business entities; its directors, officers, employees, agents, distributors, jobbers, salespersons, interns, sales representatives and attorneys; and each person acting or purporting to act on its or their behalf or under its or their control.

5.      The terms "person" or "persons" shall mean natural persons (including but not limited to those employed by Defendant) and all other legally cognizable entities, including (without limitation) governmental entities, agencies, officers, departments or affiliates of the United States of America or any other governmental entity; commercial entities such as corporations, foundations, partnerships and proprietorships; associations; organization; and groups of natural persons.

6.      The term "date" shall mean the exact day, month and year, if ascertainable, or, if not, Defendant's closest approximation (including but not limited to an identification of relationship to other events).

7.      The term "document(s)" shall have the broadest meaning accorded to it by Rule 34 of the Federal Rules of Civil Procedure, and shall include, without limitation, any recording in any tangible form of any information, whether handwritten, typed, printed, stored on computer disks, tapes or databases (including electronic files and e-mail) or otherwise reproduced. "Document" also includes all drafts and copies that are not identical to the original.

8.      The term "thing(s)" shall have the broadest meaning accorded to it by Rule 34 of the Federal Rules of Civil Procedure, and shall include, without limitation, every kind of

3

physical specimen or tangible item, other than a document, in the possession, custody or control of Defendant.

9.    The term "communication" shall mean any disclosure, transmission or exchange of information from one person or entity to another, including without limitation by personal meeting, telephone, facsimile, radio, telegraph, electronic mail, teleconference, writing or other means.

10.    The terms "concerning," "referring to" and "relating to" shall be interpreted so as to encompass the liberal scope of discovery set forth in Rule 26(b) of the Federal Rules of Civil Procedure, and shall mean for example and without limitation, refer, relate, analyze, concern, constitute, contain, contradict, describe, discuss, evaluate, evidence, pertain, reflect, refute or support.

11.    The term "including" shall be construed broadly, and shall encompass "including but not limited to" or "including without limitation."

12.    The terms "identify," "identification," "describe," or "description" shall mean to provide a complete identification of the document, thing, or person to the fullest extent known or ascertainable by Defendant, whether or not the information is in the possession, custody, or control of Defendant and whether or not the information is alleged to be protected by any privilege or work product protection, and includes without limitation a request for the following information:

(a)    with respect to a natural person, his or her name; home and work addresses and telephone numbers; present (or if unknown, the last known) place of employment; date(s) of commencement and termination of employment; job title; and description of his or her duties and responsibilities;

4

(b)   with respect to a corporation or other legal entity, the full name; state of incorporation or registration; address of its principal place of business; telephone number of its principal place of business; and the identity of each natural person who acted on behalf of such entity with respect to the subject matter of the document request;

(c)   with respect to a document, the type of document (e.g., letter, e-mail, facsimile, contract, calendar, report); the number of pages of which the document consists; a general description of the document's contents; an identification of each person(s) who prepared the document, who signed the document, for whom it was prepared, to whom it was delivered, mailed, or otherwise received, and to whom a copy was sent or who otherwise received a copy; the date of writing, creation or publication; the identifying number(s), letter(s), or combination thereof, if any, and the significance or meaning of such number(s), letter(s) or combination thereof; and present location and identity of the custodian of that document.  Documents to be identified shall include documents currently in your possession, custody or control; documents you know to have once existed but that no longer exist; and other documents of which you have knowledge or information but that are not currently in your possession, custody or control;

(d)   with respect to a product or to equipment, the common name of the product or equipment; the trade, brand, or commercial name of the product or equipment; the model, part number, catalog number, and/or serial number of the product or equipment; the manufacturer and vendor of the product or equipment; and the use and/or function of the product or equipment;

(e)   with respect to an activity, the events and/or occurrences that comprise the activity; the persons involved in the activity; the dates when the activity occurred; and the locations where the activity occurred;

5

      (f)     with respect to oral communications, the manner in which the communications were made (telephone, conversation, etc.); the identity of each person who participated in or witnessed the communication; and the subject matter and content of the communication; and the date of the communication;

      (g)     with respect to a patent or patent application, the country or jurisdiction in which it was filed; the number; the named inventor(s); the filing date; the issue date (if a patent); and all related or foreign counterpart applications and patents; and

      (h)     with respect to films, photographs, tapes, computer media, and other things susceptible to chemical, biological, mechanical, or electrical reproduction, all identifying information including their character; subject matters; authors; and dates.

13.     The terms "and," "or" and "and/or" shall be construed disjunctively or conjunctively as necessary in order to bring within the scope of the request all responses which otherwise might be construed to be outside its scope.

14.     The term the "146 patent" shall mean U.S. Pat. No. 7,276,146.

15.     The term the "147 patent" shall mean U.S. Pat. No. 7,276,147.

16.     The term "patents-in-suit" shall mean the 146 patent and the 147 patent either collectively or individually, as well as any other patent(s) that may be subsequently added to the litigation.

17.     The term "Complaint" shall mean Plaintiffs' "Complaint for Patent Infringement" filed by Plaintiffs in this action on or about November 21, 2007, as well as any amended complaints that may be filed.

6

18.    The term "Answer" shall mean the "Answer, Affirmative Defenses and Counterclaims" filed by Defendant on or about January 11, 2008, as well as any amended answers that may be filed.

19.    The terms "prior art" includes, by way of example and without limitation, any subject matter that you assert may be encompassed by 35 U.S.C. §103 and/or any subdivision of 35 U.S.C. §102.

20.    The term "Electrochemical Sensor" shall mean any sensor device capable of being used to determine the concentration of glucose in a blood sample, including but not necessarily limited to the specific electrochemical sensors identified in the Complaint. The Electrochemical Sensors includes (without limitation) test strips or equivalent devices alone or in combination with a meter or equivalent device capable of receiving the test strips and participating in the determination of the concentration of glucose in a blood sample.

21.    The term the "229 patent" shall mean U.S. Pat. No. 6,258,229.

## INSTRUCTIONS

1.    If you produce responsive documents pursuant to Federal Rule of Civil Procedure 33(d), the original and each non-identical copy of each document or other tangible thing requested herein which is in your possession, custody or control, or that of any of your agents, attorneys, consultants, advisors, associates, accountants, employees, representatives or investigators, is to be produced, including company, department, and personal files. If the original or original carbon copy is not in your possession, custody or control, or that of your agents, attorneys, consultants, advisors, associates, accountants, employees, representatives or investigators, a full, clear, legible copy thereof is to be produced.

7

2.      If any portion of any Interrogatory refers to information of which Defendant were once aware but is no longer within Defendant's knowledge, Defendant is requested to identify the name, telephone number, and address of the person last known by Defendant to have knowledge of such information.

3.      Each Interrogatory shall be responded to fully unless it is in good faith objected to, in which event every reason for your objection shall be stated in detail.  If an objection pertains to only a portion of an Interrogatory, or a word, phrase or clause contained within it, you are required to state your objection to that portion only and to respond to the remainder of the Interrogatory to the fullest extent possible.

4.      If you produce responsive documents pursuant to Federal Rule of Civil Procedure 33(d), each document and thing produced is to be (i) identified in your written response hereto to correspond with the categories of the Interrogatory in response to which it is being produced or (ii) produced as it is kept in the usual course of business, including all file folders, binder, notebooks and other devices by which each such document or this is organized or separated.

5.      If the attorney-client privilege or work product immunity is asserted as to any information requested in an Interrogatory, set forth your response hereto with respect to all information for which a claim of privilege is made such that the document or thing is not produced in full:

(a)      the specific ground(s) for not producing the document or thing in full;

(b)      the bases for such a claim of privilege or immunity, including a statement of sufficient relevant facts and circumstances that will explain the basis of the claim of privilege and will permit the adjudication of the propriety of the claim of privilege; and

(c)      fully identify the information, document, or material for which such

privilege or immunity is asserted, including the type of any document or thing withheld (e.g., letter, memorandum, etc.); the subject matter of any document, communication, or other information withheld; the date of recording, creating or otherwise preparing any document or thing; the name of any document or thing; the name, address and title of its author or creator; the name, address and title of each person (other than stenographic or clerical assistants) participating in the preparation or creation of any document or thing; the name, address and title of each addressee, recipient and/or custodian of the document or thing, or a copy of the document or thing; the name, address and title of each person to whom the contents of the information or any portion thereof have heretofore been communicated by copy, exhibition, reading or summarization; and the location(s) where, if at all, information has been redacted on any document or thing thus produced.

6.    No Interrogatory or subpart hereof shall be construed as a limitation on any other Interrogatory or subpart hereof.

7.    Any word written in the singular herein shall be construed as plural or *vice versa* as necessary to bring within the scope of the Interrogatory all responses which otherwise might be construed to be outside its scope.

## INTERROGATORIES

### INTERROGATORY NO. 1

Identify each model or type of Electrochemical Sensor that Defendant has made, used, sold, offered for sale in or imported into the United States having a capillary chamber that holds a blood sample volume of 1 µl or less and providing a readout of the glucose concentration of the blood sample within 10 seconds or less after the blood sample enters the capillary chamber, including (i) an identification of the model number; (ii) all revisions of the model numbers (to

9

the extent any revision exists); (iii) the dates of manufacture, use, sale, offer for sale or import of the model; (iv) all documents and things (including, but not limited to, engineering drawings, manufacturing drawings or other schematic drawings, specifications, orders and instruction manuals) that illustrate and/or describe the design, structure and operation of each model or type identified in response to this Interrogatory; and (v) the identity of the persons most knowledgeable regarding the design, structure and operation of each such model or type of Electrochemical Sensor.

**INTERROGATORY NO. 2**

For each Electrochemical Sensor identified in response to Interrogatory No. 1, describe Defendant's research, development and design effort for such Electrochemical Sensor and the events leading to the research, development, and design of such Electrochemical Sensor, including but not limited to an identification of (i) Defendant's corporate structure relating to the research, development or design of such Electrochemical Sensors (including but not limited to all subsidiaries, predecessors and/or other related business entities owned, partially owned, controlled and/or partially controlled by Defendant; and the function of all departments, groups, units and/or divisions within each such entity pertaining to such Electrochemical Sensor); (ii) each person (including third parties) who had a role in and the role that each such person had in the research, development or design of such Electrochemical Sensor; (iii) where such Electrochemical Sensor was researched, developed and/or designed; (iv) all documents that relate to the research, development or design of such Electrochemical Sensor, including any licenses or other agreements with third parties; and (v) the three most knowledgeable persons regarding any facts that relate to the (a) research, (b) development and (c) design of such Electrochemical Sensors.

**INTERROGATORY NO. 3**

For each Electrochemical Sensor identified in response to Interrogatory No. 1, identify all documents that constitute, refer to or related to sales and/or marketing material or literature (whether or not such material or literature was ever used and/or distributed) which relates to the sample volume for such Electrochemical Sensor and/or the time required to determine the concentration of glucose in a blood sample with such Electrochemical Sensor, and identify the person or persons responsible for the drafting of such material or literature.

**INTERROGATORY NO. 4**

If Defendant has asserted an affirmative defense or counterclaim alleging, or otherwise asserts, that any Electrochemical Sensor identified in response to Interrogatory No. 1 does not infringe any claim of either the 146 patent or the 147 patent, identify the factual basis for such affirmative defense, counterclaim or assertion, including but not limited to an identification of (i) each such allegedly non-infringing Electrochemical Sensor, including the model number, all revision numbers of the model (to the extent any revision numbers exist); (ii) each claim of each patent allegedly not infringed for each such Electrochemical Sensor; (iii) each claim limitation that is alleged to be absent from use of the Electrochemical Sensor or otherwise missing from the Electrochemical Sensor; (iv) whether such specific claim limitation is missing literally or under the doctrine of equivalents, or both; (v) all documents and things upon which Defendant relies in support of any such assertion; and (vi) separately for each such allegedly non-infringing Electrochemical Sensor, the three persons having the most knowledge of the facts relating to each such assertion.

**INTERROGATORY NO. 5**

For each claim that Defendant alleges in response to Interrogatory No. 4 is not infringed and for each claim limitation that Defendant alleges in response to Interrogatory No. 4 is missing from the Electrochemical Sensors identified in response to Interrogatory No. 1, identify in detail the basis for such allegation, including but not limited to a description of (i) Defendant's proposed construction of such claim limitation or element; (ii) all passages of the claims, specification, prosecution history or other intrinsic evidence that allegedly supports Defendant's position; (iii) all prior art that Defendant asserts supports its proposed construction; (iv) all other extrinsic evidence that allegedly supports Defendant's position; (v) any prosecution history estoppel that Defendant asserts applies to construction of the claims of the patents-in-suit; (vi) all documents and things upon which Defendant relies in support of any such assertion; and (v) separately for each such allegedly non-infringing Electrochemical Sensor, the three persons having the most knowledge of the facts relating to each such assertion.

**INTERROGATORY NO. 6**

For each Electrochemical Sensor identified in response to Interrogatory No. 1, identify the revenues and costs associated with such product, including but not limited to an identification of (i) the date of first sale or offer for sale; (ii) Defendant's monthly unit sales volume (or if monthly information is not available, whatever other periodic reporting period is available); (iii) Defendant's total sales by unit volume and total sales dollars; (iv) the standard unit sales price(s); (v) the cost of goods sold (with an allocation of all fixed and variable costs, including but not limited to all manufacturing, administrative, overhead and marketing costs per unit); (vi) Defendant's revenues and gross and net profits associated with such sales; (vii) each document

12

and thing that refers or relates to such unit sales, prices, costs, revenues and profits; and (viii) the three persons most knowledgeable regarding such unit sales, prices, costs, revenues and profits.

## INTERROGATORY NO. 7

If Defendant has asserted an affirmative defense or counterclaim alleging, or otherwise asserts, that any claim in the 146 patent and the 147 patent is invalid, set forth with particularity the entire factual and legal basis in support of such affirmative defense, counterclaim or assertion, including but not limited to an identification of (i) each claim of the patents-in-suit that Defendant asserts is invalid; (ii) for each such claim, each statutory provision that Defendant asserts renders it invalid; (iii) all facts that constitute the basis for each of Defendant's assertions of invalidity; (iv) all documents that support, refute or are inconsistent with each of Defendant's assertions of invalidity; and (v) the three most knowledgeable witnesses regarding any facts that relate to such assertion of invalidity.

## INTERROGATORY NO. 8

If Defendant has asserted an affirmative defense or counterclaim alleging, or otherwise asserts, that any claim in the 146 patent and the 147 patent is invalid, under 35 U.S.C. § 102 and/or obvious under 35 U.S.C § 103, set forth with particularity the entire legal and factual basis for Defendant's allegation that the prior art invalidates each such claim, including but not limited to an identification of (i) each item of alleged prior art upon which Defendant relies; (ii) the date and circumstances under which each element of the alleged prior art became public; (iii) for each such claim in the 146 patent and the 147 patent, how each element, limitation or step of such claim is disclosed or taught by one or more alleged prior art references, either taken alone or in combination; (iv) for each combination of references used to support a defense or other assertion of obviousness, (a) the scope and content of the prior art, (b) the differences between

13

the prior art and the claims at issue, (c) the level of ordinary skill in the pertinent art, (d) the application of secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., and (e) the teaching, motivation or suggestion to make each such combination of references; (v) all documents that support such affirmative defense, counterclaim or assertion and (vi) the three most knowledgeable witnesses regarding such affirmative defense or assertion.

**INTERROGATORY NO. 9**

Separately for each claim in the 146 patent and the 147 patent, define the person having ordinary skill in the art to which the subject matter of such claim pertains at the time the invention of such claim was made and at the date of filing of the original application to which the 146 and 147 patents claim priority.

**INTERROGATORY NO. 10**

Describe in detail the circumstances in which Defendant first became aware of the patents-in-suit, including, but not limited to, an identification of (i) the date on which Defendant first became aware of each one of the patents-in-suit; (ii) the person affiliated with Defendant who first became aware of each one of the patents-in-suit; (iii) how Defendant first became aware of each one of the patents-in-suit; (iv) from whom or where Defendant first became aware of each one of the patents-in-suit; (v) each and every document or thing that refers or relates to Defendant's first awareness of each one of the patents-in-suit; and (vi) the three persons most knowledgeable about the circumstances of Defendant's first awareness of each one of the patents-in-suit.

**INTERROGATORY NO. 11**

Identify any license entered into by Defendant, as licensor or licensee, related to sensor devices capable of being used to determine the concentration of glucose in a blood sample, including any licenses to components of such sensor devices, including but not limited to an identification of (i) the name of the licensee or licensor; (ii) the licensed property; (iii) the terms of the license, including consideration due under the agreement, whether it involved an initial upfront or initial payment, the royalty rate and the royalty base; (iv) when such license was executed and the effective date of the agreement; and (v) the three persons most knowledgeable regarding each such license.

**INTERROGATORY NO. 12**

Describe the circumstances surrounding any opinion, written and/or oral and formal and/or informal, that Defendant has requested or received regarding validity, infringement, enforceability or liability in relation to the 146 patent or the 147 patent, including but not limited to an identification of (i) whether the opinion was written or oral and formal or informal; (ii) the dates on which the opinion was requested, begun, completed and delivered; (iii) each person involved in the formulation and delivery of the opinion (including the role each such person had in the formulation and delivery of the opinion); (iv) each person who has received, reviewed or otherwise been informed of the substance of the opinion; (v) the subject matter of the opinion; (vi) whether Defendant intends to rely on such opinion in this case; (vii) to the extent that Defendant intends to rely on such opinion, the substance of the opinion; and (viii) all documents or things that refers or relates to each opinion.

15

**INTERROGATORY NO. 13**

If Defendant has asserted an affirmative defense alleging, or otherwise asserts, that the defendants in this action are not properly joined together under Rule 20 of the Federal Rules of Civil Procedure, set forth with particularity the entire legal and factual basis for the defense or assertion.

**INTERROGATORY NO. 14**

Identify each model or type of electrochemical sensor made, used, sold, or offered for sale in the United States by Plaintiffs that Nova asserts infringes the 229 patent.

**INTERROGATORY NO. 15**

For each electrochemical sensor identified in response to Interrogatory No. 14, identify the factual basis for such assertion, including but not limited to an identification of (i) each such allegedly infringing electrochemical sensor, including the model number, all revision numbers of the model (to the extent any revision numbers exist); (ii) each claim of the 229 patent allegedly infringed for each such electrochemical sensor; (iii) whether each specific claim limitation is present in the allegedly infringing electrochemical sensor literally or under the doctrine of equivalents, or both; (v) all documents and things upon which Nova relies in support of any such assertion; and (vi) separately for each such allegedly infringing electrochemical sensor, the three persons having the most knowledge of the facts relating to each such assertion.

**INTERROGATORY NO. 16**

For each claim that Nova alleges in response to Interrogatory No. 15 is infringed, set forth in detail: (i) Nova's proposed construction of each claim limitation or element; (ii) all passages of the claims, specification, prosecution history or other intrinsic evidence that allegedly supports Nova's position; (iii) all prior art that Nova asserts supports its proposed

16

construction; (iv) all other extrinsic evidence that allegedly supports Nova's position; (v) any prosecution history estoppel that applies to construction of the claims of the 229 patent; (vi) all documents and things upon which Nova relies in support of any such assertion; and (v) separately for each such allegedly infringing electrochemical sensor, the three persons having the most knowledge of the facts relating to each such assertion.

**INTERROGATORY NO. 17**

For each claim of the 229 patent that Nova asserts is infringed by Plaintiffs' making, using, selling or offering for sale in the United States of electrochemical sensors identified in response to Interrogatory No. 15, describe all of the facts and circumstances relating to the invention of the claimed subject matter, including but not limited to an identification of (i) the date when and location where the claimed subject matter was (a) first conceived, (b) first observed experimentally, (c) first described in a document, (d) first reduced to practice, and (e) first disclosed to a person other than the inventors; (ii) each person who contributed to the conception of the claimed subject matter and describe his or her contribution; (iii) each person who contributed to the reduction to practice of the claimed subject matter and describe his or her contribution; and (iv) all documents that support each of these dates.

**INTERROGATORY NO. 18**

With respect to Nova's Third Affirmative Defense, set forth with particularity the entire legal and factual basis for the defense, including but not limited to identification of (i) each statement from the prosecution histories upon which Nova relies; (ii) for each such statement, how the statement estops Plaintiffs from construing the claims in the 146 patent and the 147 patent to cover any of Nova's products or activities; (iii) all documents that support, refute or

17

contradict this affirmative defense and (iv) the three most knowledgeable witnesses regarding this affirmative defense.

## INTERROGATORY NO. 19

With respect to Nova's Fourth Affirmative Defense, set forth with particularity the entire legal and factual basis (including the identification of witnesses and documents that you believe support your defense) for each defense asserted including (i) waiver; (ii) estoppel; (iii) unclean hands; (iv) forfeiture; and (v) acquiescence.

## INTERROGATORY NO. 20

With respect to Nova's Fourth Counterclaim, Breach of Contract, set forth with particularity the entire legal and factual basis for the counterclaim, including but not limited to identification of (i) each action taken by or on behalf of Plaintiffs that is alleged to constitute a breach of contract; (ii) all documents that support, refute or are inconsistent with the counterclaim; and (iii) all corroborating witnesses or others having knowledge of any facts that relate to the counterclaim.

## INTERROGATORY NO. 21

With respect to Nova's Fifth Counterclaim, Misappropriation of Trade Secrets, set forth with particularity the entire legal and factual basis for the counterclaim, including but not limited to identification of (i) the "proprietary and trade secret information" allegedly acquired by Plaintiffs, including an identification of those portions of such information that allegedly constitute trade secrets which Nova alleges has been misappropriated by Plaintiffs; (ii) all actions taken by Nova to maintain the such information as a trade secret; (iii) each action taken by or on behalf of Plaintiffs that is alleged to constitute a misuse of Nova's alleged "proprietary and trade secret information"; (iv) all documents that support, refute or are inconsistent with the

counterclaim; and (v) all corroborating witnesses or others having knowledge of any facts that relate to the counterclaim.

**INTERROGATORY NO. 22**

With respect to Nova's Sixth Counterclaim, Unfair Competition, set forth with particularity the entire legal and factual basis for the counterclaim, including but not limited to identification of (i) the "confidential and proprietary information" allegedly acquired by Plaintiffs, including an identification of those portions of such information that Plaintiffs have allegedly misused; (ii) all actions taken by Nova to maintain the confidentiality of such information; (iii) each action taken by or on behalf of Plaintiffs that is alleged to constitute a misuse of Nova's alleged "confidential and proprietary information"; (iv) all documents that support, refute or are inconsistent with the counterclaim; and (v) all corroborating witnesses or others having knowledge of any facts that relate to the counterclaim.

**INTERROGATORY NO. 23**

With respect to Nova's Seventh Counterclaim, Conversion, set forth with particularity the entire legal and factual basis for the counterclaim, including but not limited to identification of (i) the "confidential and proprietary information" allegedly acquired by Plaintiffs, including an identification of those portions of such information that Plaintiffs have allegedly "exercised dominion over ... in such a manner that was inconsistent with Nova's rights and interests to maintain the information as confidential and proprietary"; (ii) all actions taken by Nova to maintain the confidentiality of such information; (iii) each action taken by or on behalf of Plaintiffs that is alleged to constitute a conversion of Nova's alleged "confidential and proprietary information"; (iv) all documents that support, refute or are inconsistent with the

19

counterclaim; and (v) all corroborating witnesses or others having knowledge of any facts that relate to the counterclaim.

## INTERROGATORY NO. 24

For all Information concerning Nova's glucose strip technology allegedly disclosed to Roche, including but not limited to a product demonstration, a description of the manufacturing process, the product specifications, the design of the product and "other confidential and proprietary information concerning Nova's work on a sub-microliter glucose strip," identify any other person to whom any of this information was disclosed, including (i) when such disclosure was made; (ii) how such disclosure was made; (iii) whether Nova took steps to protect the alleged confidential and proprietary nature of such information when the disclosure was made; (iv) all documents referring to, relating to or evidencing such disclosure; and (v) all corroborating witnesses or others having knowledge of any facts that relate to such disclosure.

## INTERROGATORY NO. 25

Set forth with particularity the amount of monetary damages sought by Nova pursuant to each of Nova's counterclaims, and for each counterclaim state (i) the total amount of monetary damages sought; and (ii) the basis for the amount of damages sought, including the theory, methodology and basis for calculation of such damages.

## INTERROGATORY NO. 26

Identify each person who provided information concerning each response to these Interrogatories and/or the supplementation of these Interrogatories, or in response to any subsequent Interrogatories, and each person who participated in the collection and/or review of documents and things in response to Plaintiffs' requests for production of documents and things, and identify all documents that were reviewed or considered relating to such responses.

**INTERROGATORY NO. 27**

Identify each witness, including but not limited to fact and expert witnesses, that

Defendant may call to testify at trial or hearing, and identify all expert opinions that Defendant

may introduce at trial or a hearing.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Daniel A. Boehnen
Grantland G. Drutchas                                    By: _____
McDonnell Boehnen Hulbert & Berghoff LLP                      Philip A. Rovner (#3215)
300 South Wacker Drive                                        Hercules Plaza
Chicago, IL 60606                                             P.O. Box 951
(312) 913-0001                                                Wilmington, DE 19899-0951
                                                              (302) 984-6000
                                                              provner@potteranderson.com

Dated:  January 23, 2008
844035                                                   *Attorney for Plaintiffs*
                                                         *Roche Diagnostics Operations, Inc. and*
                                                         *Corange International Limited*

21

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, Philip A. Rovner, hereby certify that on January 23, 2008, the within document

was served on the following counsel of record, at the addresses and in the manner

indicated:

**BY E-MAIL**

Frederick L. Cottrell, III, Esq.
Anne Shea Gaza, Esq.
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, DE 19801
cottrell@rlf.com
gaza@rlf.com

Mary W. Bourke, Esq.
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 N. Orange Street
Wilmington, DE 19801
mbourke@cblh.com

Steven J. Balick, Esq.
John G. Day, Esq.
Ashby & Geddes
500 Delaware Avenue
8th Floor
P.O. Box 1150
Wilmington, DE 19899
sbalick@ashby-geddes.com
jday@ashby-geddes.com

**BY E-MAIL**

John W. Shaw, Esq.
Jeffrey T. Castellano, Esq.
Young Conaway Stargatt & Taylor, LLP
1000 West Street, 17th Floor
Wilmington, DE 19801
jshaw@ycst.com
jcastellano@ycst.com

Rodger D. Smith, Esq.
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
rsmith@mnat.com

**BY E-MAIL**

Edward A. Mas, II, Esq.
Stephen F. Sherry, Esq.
Kirk Vander Leest, Esq.
James M. Hafertepe, Esq.
Merle S. Elliott, Esq.
McAndrews, Held & Malloy, Ltd.
500 West Madison Street
34th Floor
Chicago, IL 60661
emas@mcandrews-ip.com
ssherry@mcandrews-ip.com
kvanderleest@mcandrews-ip.com
jhafertepe@mcandrews-ip.com
melliott@mcandrews-ip.com

Kenneth P. George, Esq.
Joseph M. Casino, Esq.
Amster, Rothstein & Ebenstein LLP
90 Park Avenue
New York, NY 10016
kgeorge@arelaw.com
jcasino@arelaw.com

Bradford J. Badke, Esq.
Sona De, Esq.
Michael Kahn, Esq.
Ropes & Gray LLP
1211 Avenue of the Americas
New York, NY 10036-8704
Jim.badke@ropesgray.com
Sona.de@ropesray.com
Michael.kahn@ropesgray.com

**BY E-MAIL**

Wesley E. Overson, Esq.
Rachel Krevans, Esq.
Jason R. Bartlett, Esq.
Parisa Jorjani, Esq.
Daniel P. Muino, Esq.
Morrison & Foerster LLP
425 Market Street
San Francisco, CA 94105-2482
woverson@mofo.com
rkrevans@mofo.com
jasonbartlett@mofo.com
pjorjani@mofo.com
dmuino@mofo.com

Michael G. Adams, Esq.
Ashley L. Ellis, Esq.
Parker Poe Adams & Bernstein LLP
Three Wachovia Center, Suite 3000
401 South Tryon Street
Charlotte, NC 28202
mikeadams@parkerpoe.com
ashleyellis@parkerpoe.com

Philip A. Rovner (#3215)
Potter Anderson & Corroon LLP
Hercules Plaza
P.O. Box 951
Wilmington, Delaware 19899
(302) 984-6000
E-mail: provner@potteranderson.com

-2-

# EXHIBIT H

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

ROCHE DIAGNOSTICS OPERATIONS, INC., )
and CORANGE INTERNATIONAL LIMITED, )
                                       )
       Plaintiffs,              )
                                         )
             vs.               )   C.A. No. 07-753-JJF
                                         )
ABBOTT DIABETES CARE,           )
INCORPORATED, and              )
ABBOTT DIABETES CARE SALES    )   DEMAND FOR JURY TRIAL
CORPORATION,                  )
                                         )
BAYER HEALTHCARE, LLC,        )
                                         )
DIAGNOSTIC DEVICES, INC.,      )
                                         )
LIFESCAN, INCORPORATED, and   )
                                         )
NOVA BIOMEDICAL CORPORATION, and )
SANVITA INCORPORATED,         )
                                         )
       Defendants.            )

## ROCHE DIAGNOSTICS OPERATIONS, INC.'S AND CORANGE INTERNATIONAL LIMITED'S FIRST SET OF INTERROGATORIES (NOS. 1-16) TO DEFENDANT LIFESCAN, INC.

Plaintiffs Roche Diagnostics Operations, Inc. ("RDOI") and Corange International Limited

("Corange") (collectively "Plaintiffs") propound the following Interrogatories to Defendant

LifeScan, Inc. ("LifeScan"), pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure

and the Local Rules of the U.S. District for the District of Delaware. The written responses to these

Interrogatories shall be served on Plaintiffs' counsel within thirty (30) days of the service thereof.

Further, any documents and things produced in response to these Interrogatories shall be produced

for inspection and copying at the offices of Plaintiffs' counsel, McDonnell Boehnen Hulbert &

Berghoff LLP, 300 S. Wacker Dr., Chicago, Illinois 60606, within thirty (30) days from the service of these Interrogatories.

All Interrogatories propounded by Plaintiffs are deemed to be continuing in nature so as to require supplementation promptly following the discovery of additional documents or things or knowledge or information by LifeScan to the extent such documents or things or knowledge or information is responsive to Plaintiffs' Interrogatories.

## **DEFINITIONS**

For the purposes of responding to the following Interrogatories, the following definitions shall apply:

1.      The term "RDOI" shall mean Roche Diagnostics Operations, Inc. and/or any company name under which RDOI is doing or has done business; its predecessors, parents, subsidiaries, divisions, licensees, franchisees, assigns or other related business entities; its directors, officers, employees, agents, distributors, jobbers, salespersons, interns, sales representatives and attorneys; and each person acting or purporting to act on its or their behalf or under its or their control.

2.      The term "Corange" shall mean Corange International Limited and/or any company name under which Corange is doing or has done business; its predecessors, parents, subsidiaries, divisions, licensees, franchisees, assigns or other related business entities; its directors, officers, employees, agents, distributors, jobbers, salespersons, interns, sales representatives and attorneys; and each person acting or purporting to act on its or their behalf or under its or their control.

3.      The term "Plaintiffs" shall mean RDOI and Corange.

2

4.    The terms "Defendant," "LifeScan," "you" and "your" shall mean LifeScan, Inc. and/or any company name under which LifeScan is doing or has done business; its predecessors, parents, subsidiaries, divisions, licensees, franchisees, assigns or other related business entities; its directors, officers, employees, agents, distributors, jobbers, salespersons, interns, sales representatives and attorneys; and each person acting or purporting to act on its or their behalf or under its or their control.

5.    The terms "person" or "persons" shall mean natural persons (including but not limited to those employed by Defendant) and all other legally cognizable entities, including (without limitation) governmental entities, agencies, officers, departments or affiliates of the United States of America or any other governmental entity; commercial entities such as corporations, foundations, partnerships and proprietorships; associations; organization; and groups of natural persons.

6.    The term "date" shall mean the exact day, month and year, if ascertainable, or, if not, Defendant's closest approximation (including but not limited to an identification of relationship to other events).

7.    The term "document(s)" shall have the broadest meaning accorded to it by Rule 34 of the Federal Rules of Civil Procedure, and shall include, without limitation, any recording in any tangible form of any information, whether handwritten, typed, printed, stored on computer disks, tapes or databases (including electronic files and e-mail) or otherwise reproduced. "Document" also includes all drafts and copies that are not identical to the original.

8.    The term "thing(s)" shall have the broadest meaning accorded to it by Rule 34 of the Federal Rules of Civil Procedure, and shall include, without limitation, every kind of

3

physical specimen or tangible item, other than a document, in the possession, custody or control of Defendant.

9.    The term "communication" shall mean any disclosure, transmission or exchange of information from one person or entity to another, including without limitation by personal meeting, telephone, facsimile, radio, telegraph, electronic mail, teleconference, writing or other means.

10.    The terms "concerning," "referring to" and "relating to" shall be interpreted so as to encompass the liberal scope of discovery set forth in Rule 26(b) of the Federal Rules of Civil Procedure, and shall mean for example and without limitation, refer, relate, analyze, concern, constitute, contain, contradict, describe, discuss, evaluate, evidence, pertain, reflect, refute or support.

11.    The term "including" shall be construed broadly, and shall encompass "including but not limited to" or "including without limitation."

12.    The terms "identify," "identification," "describe," or "description" shall mean to provide a complete identification of the document, thing, or person to the fullest extent known or ascertainable by Defendant, whether or not the information is in the possession, custody, or control of Defendant and whether or not the information is alleged to be protected by any privilege or work product protection, and includes without limitation a request for the following information:

(a)    with respect to a natural person, his or her name; home and work addresses and telephone numbers; present (or if unknown, the last known) place of employment; date(s) of commencement and termination of employment; job title; and description of his or her duties and responsibilities;

4

(b)      with respect to a corporation or other legal entity, the full name; state of incorporation or registration; address of its principal place of business; telephone number of its principal place of business; and the identity of each natural person who acted on behalf of such entity with respect to the subject matter of the document request;

(c)      with respect to a document, the type of document (e.g., letter, e-mail, facsimile, contract, calendar, report); the number of pages of which the document consists; a general description of the document's contents; an identification of each person(s) who prepared the document, who signed the document, for whom it was prepared, to whom it was delivered, mailed, or otherwise received, and to whom a copy was sent or who otherwise received a copy; the date of writing, creation or publication; the identifying number(s), letter(s), or combination thereof, if any, and the significance or meaning of such number(s), letter(s) or combination thereof; and present location and identity of the custodian of that document. Documents to be identified shall include documents currently in your possession, custody or control; documents you know to have once existed but that no longer exist; and other documents of which you have knowledge or information but that are not currently in your possession, custody or control;

(d)      with respect to a product or to equipment, the common name of the product or equipment; the trade, brand, or commercial name of the product or equipment; the model, part number, catalog number, and/or serial number of the product or equipment; the manufacturer and vendor of the product or equipment; and the use and/or function of the product or equipment;

(e)      with respect to an activity, the events and/or occurrences that comprise the activity; the persons involved in the activity; the dates when the activity occurred; and the locations where the activity occurred;

5

        (f)      with respect to oral communications, the manner in which the communications were made (telephone, conversation, etc.); the identity of each person who participated in or witnessed the communication; and the subject matter and content of the communication; and the date of the communication;

        (g)      with respect to a patent or patent application, the country or jurisdiction in which it was filed; the number; the named inventor(s); the filing date; the issue date (if a patent); and all related or foreign counterpart applications and patents; and

        (h)      with respect to films, photographs, tapes, computer media, and other things susceptible to chemical, biological, mechanical, or electrical reproduction, all identifying information including their character; subject matters; authors; and dates.

13.    The terms "and," "or" and "and/or" shall be construed disjunctively or conjunctively as necessary in order to bring within the scope of the request all responses which otherwise might be construed to be outside its scope.

14.    The term the "146 patent" shall mean U.S. Pat. No. 7,276,146.

15.    The term the "147 patent" shall mean U.S. Pat. No. 7,276,147.

16.    The term "patents-in-suit" shall mean the 146 patent and the 147 patent either collectively or individually, as well as any other patent(s) that may be subsequently added to the litigation.

17.    The term "Complaint" shall mean Plaintiffs' "Complaint for Patent Infringement" filed by Plaintiffs in this action on or about November 21, 2007, as well as any amended complaints that may be filed.

18.    The term "Answer" shall mean the "Answer and Counterclaims of Defendant LifeScan, Inc." filed on or about January 11, 2008, as well as any amended answers that may be filed.

19.    The terms "prior art" includes, by way of example and without limitation, any subject matter that you assert may be encompassed by 35 U.S.C. §103 and/or any subdivision of 35 U.S.C. §102.

20.    The term "Electrochemical Sensor" shall mean any sensor device capable of being used to determine the concentration of glucose in a blood sample, including but not necessarily limited to the specific electrochemical sensors identified in the Complaint. The Electrochemical Sensors includes (without limitation) test strips or equivalent devices alone or in combination with a meter or equivalent device capable of receiving the test strips and participating in the determination of the concentration of glucose in a blood sample.

## INSTRUCTIONS

1.    If you produce responsive documents pursuant to Federal Rule of Civil Procedure 33(d), the original and each non-identical copy of each document or other tangible thing requested herein which is in your possession, custody or control, or that of any of your agents, attorneys, consultants, advisors, associates, accountants, employees, representatives or investigators, is to be produced, including company, department, and personal files. If the original or original carbon copy is not in your possession, custody or control, or that of your agents, attorneys, consultants, advisors, associates, accountants, employees, representatives or investigators, a full, clear, legible copy thereof is to be produced.

2.    If any portion of any Interrogatory refers to information of which Defendant were once aware but is no longer within Defendant's knowledge, Defendant is requested to identify the

7

name, telephone number, and address of the person last known by Defendant to have knowledge of such information.

3.      Each Interrogatory shall be responded to fully unless it is in good faith objected to, in which event every reason for your objection shall be stated in detail.  If an objection pertains to only a portion of an Interrogatory, or a word, phrase or clause contained within it, you are required to state your objection to that portion only and to respond to the remainder of the Interrogatory to the fullest extent possible.

4.      If you produce responsive documents pursuant to Federal Rule of Civil Procedure 33(d), each document and thing produced is to be (i) identified in your written response hereto to correspond with the categories of the Interrogatory in response to which it is being produced or (ii) produced as it is kept in the usual course of business, including all file folders, binder, notebooks and other devices by which each such document or this is organized or separated.

5.      If the attorney-client privilege or work product immunity is asserted as to any information requested in an Interrogatory, set forth your response hereto with respect to all information for which a claim of privilege is made such that the document or thing is not produced in full:

(a)      the specific ground(s) for not producing the document or thing in full;

(b)      the bases for such a claim of privilege or immunity, including a statement of sufficient relevant facts and circumstances that will explain the basis of the claim of privilege and will permit the adjudication of the propriety of the claim of privilege; and

(c)      fully identify the information, document, or material for which such privilege or immunity is asserted, including the type of any document or thing withheld (e.g., letter, memorandum, etc.); the subject matter of any document, communication, or other

8

information withheld; the date of recording, creating or otherwise preparing any document or thing; the name of any document or thing; the name, address and title of its author or creator; the name, address and title of each person (other than stenographic or clerical assistants) participating in the preparation or creation of any document or thing; the name, address and title of each addressee, recipient and/or custodian of the document or thing, or a copy of the document or thing; the name, address and title of each person to whom the contents of the information or any portion thereof have heretofore been communicated by copy, exhibition, reading or summarization; and the location(s) where, if at all, information has been redacted on any document or thing thus produced.

6. No Interrogatory or subpart hereof shall be construed as a limitation on any other Interrogatory or subpart hereof.

7. Any word written in the singular herein shall be construed as plural or *vice versa* as necessary to bring within the scope of the Interrogatory all responses which otherwise might be construed to be outside its scope.

## INTERROGATORIES

### INTERROGATORY NO. 1

Identify each model or type of Electrochemical Sensor that Defendant has made, used, sold, offered for sale in or imported into the United States having a capillary chamber that holds a blood sample volume of 1 µl or less and providing a readout of the glucose concentration of the blood sample within 10 seconds or less after the blood sample enters the capillary chamber, including (i) an identification of the model number; (ii) all revisions of the model numbers (to the extent any revision exists); (iii) the dates of manufacture, use, sale, offer for sale or import of the model; (iv) all documents and things (including, but not limited to, engineering drawings,

9

manufacturing drawings or other schematic drawings, specifications, orders and instruction manuals) that illustrate and/or describe the design, structure and operation of each model or type identified in response to this Interrogatory; and (v) the identity of the persons most knowledgeable regarding the design, structure and operation of each such model or type of Electrochemical Sensor.

**INTERROGATORY NO. 2**

For each Electrochemical Sensor identified in response to Interrogatory No. 1, describe Defendant's research, development and design effort for such Electrochemical Sensor and the events leading to the research, development, and design of such Electrochemical Sensor, including but not limited to an identification of (i) Defendant's corporate structure relating to the research, development or design of such Electrochemical Sensors (including but not limited to all subsidiaries, predecessors and/or other related business entities owned, partially owned, controlled and/or partially controlled by Defendant; and the function of all departments, groups, units and/or divisions within each such entity pertaining to such Electrochemical Sensor); (ii) each person (including third parties) who had a role in and the role that each such person had in the research, development or design of such Electrochemical Sensor; (iii) where such Electrochemical Sensor was researched, developed and/or designed; (iv) all documents that relate to the research, development or design of such Electrochemical Sensor, including any licenses or other agreements with third parties; and (v) the three most knowledgeable persons regarding any facts that relate to the (a) research, (b) development and (c) design of such Electrochemical Sensors.

10

**INTERROGATORY NO. 3**

For each Electrochemical Sensor identified in response to Interrogatory No. 1, identify all documents that constitute, refer to or related to sales and/or marketing material or literature (whether or not such material or literature was ever used and/or distributed) which relates to the sample volume for such Electrochemical Sensor and/or the time required to determine the concentration of glucose in a blood sample with such Electrochemical Sensor, and identify the person or persons responsible for the drafting of such material or literature.

**INTERROGATORY NO. 4**

If Defendant has asserted an affirmative defense or counterclaim alleging, or otherwise asserts, that any Electrochemical Sensor identified in response to Interrogatory No. 1 does not infringe any claim of either the 146 patent or the 147 patent, identify the factual basis for such affirmative defense, counterclaim or assertion, including but not limited to an identification of (i) each such allegedly non-infringing Electrochemical Sensor, including the model number, all revision numbers of the model (to the extent any revision numbers exist); (ii) each claim of each patent allegedly not infringed for each such Electrochemical Sensor; (iii) each claim limitation that is alleged to be absent from use of the Electrochemical Sensor or otherwise missing from the Electrochemical Sensor; (iv) whether such specific claim limitation is missing literally or under the doctrine of equivalents, or both; (v) all documents and things upon which Defendant relies in support of any such assertion; and (vi) separately for each such allegedly non-infringing Electrochemical Sensor, the three persons having the most knowledge of the facts relating to each such assertion.

**INTERROGATORY NO. 5**

For each claim that Defendant alleges in response to Interrogatory No. 4 is not infringed and for each claim limitation that Defendant alleges in response to Interrogatory No. 4 is missing from the Electrochemical Sensors identified in response to Interrogatory No. 1, identify in detail the basis for such allegation, including but not limited to a description of (i) Defendant's proposed construction of such claim limitation or element; (ii) all passages of the claims, specification, prosecution history or other intrinsic evidence that allegedly supports Defendant's position; (iii) all prior art that Defendant asserts supports its proposed construction; (iv) all other extrinsic evidence that allegedly supports Defendant's position; (v) any prosecution history estoppel that Defendant asserts applies to construction of the claims of the patents-in-suit; (vi) all documents and things upon which Defendant relies in support of any such assertion; and (v) separately for each such allegedly non-infringing Electrochemical Sensor, the three persons having the most knowledge of the facts relating to each such assertion.

**INTERROGATORY NO. 6**

For each Electrochemical Sensor identified in response to Interrogatory No. 1, identify the revenues and costs associated with such product, including but not limited to an identification of (i) the date of first sale or offer for sale; (ii) Defendant's monthly unit sales volume (or if monthly information is not available, whatever other periodic reporting period is available); (iii) Defendant's total sales by unit volume and total sales dollars; (iv) the standard unit sales price(s); (v) the cost of goods sold (with an allocation of all fixed and variable costs, including but not limited to all manufacturing, administrative, overhead and marketing costs per unit); (vi) Defendant's revenues and gross and net profits associated with such sales; (vii) each document

12

and thing that refers or relates to such unit sales, prices, costs, revenues and profits; and (viii) the three persons most knowledgeable regarding such unit sales, prices, costs, revenues and profits.

**INTERROGATORY NO. 7**

     If Defendant has asserted an affirmative defense or counterclaim alleging, or otherwise asserts, that any claim in the 146 patent and the 147 patent is invalid, set forth with particularity the entire factual and legal basis in support of such affirmative defense, counterclaim or assertion, including but not limited to an identification of (i) each claim of the patents-in-suit that Defendant asserts is invalid; (ii) for each such claim, each statutory provision that Defendant asserts renders it invalid; (iii) all facts that constitute the basis for each of Defendant's assertions of invalidity; (iv) all documents that support, refute or are inconsistent with each of Defendant's assertions of invalidity; and (v) the three most knowledgeable witnesses regarding any facts that relate to such assertion of invalidity.

**INTERROGATORY NO. 8**

     If Defendant has asserted an affirmative defense or counterclaim alleging, or otherwise asserts, that any claim in the 146 patent and the 147 patent is invalid, under 35 U.S.C. § 102 and/or obvious under 35 U.S.C § 103, set forth with particularity the entire legal and factual basis for Defendant's allegation that the prior art invalidates each such claim, including but not limited to an identification of (i) each item of alleged prior art upon which Defendant relies; (ii) the date and circumstances under which each element of the alleged prior art became public; (iii) for each such claim in the 146 patent and the 147 patent, how each element, limitation or step of such claim is disclosed or taught by one or more alleged prior art references, either taken alone or in combination; (iv) for each combination of references used to support a defense or other assertion of obviousness, (a) the scope and content of the prior art, (b) the differences between

13

the prior art and the claims at issue, (c) the level of ordinary skill in the pertinent art, (d) the application of secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., and (e) the teaching, motivation or suggestion to make each such combination of references; (v) all documents that support such affirmative defense, counterclaim or assertion and (vi) the three most knowledgeable witnesses regarding such affirmative defense or assertion.

**INTERROGATORY NO. 9**

Separately for each claim in the 146 patent and the 147 patent, define the person having ordinary skill in the art to which the subject matter of such claim pertains at the time the invention of such claim was made and at the date of filing of the original application to which the 146 and 147 patents claim priority.

**INTERROGATORY NO. 10**

Describe in detail the circumstances in which Defendant first became aware of the patents-in-suit, including, but not limited to, an identification of (i) the date on which Defendant first became aware of each one of the patents-in-suit; (ii) the person affiliated with Defendant who first became aware of each one of the patents-in-suit; (iii) how Defendant first became aware of each one of the patents-in-suit; (iv) from whom or where Defendant first became aware of each one of the patents-in-suit; (v) each and every document or thing that refers or relates to Defendant's first awareness of each one of the patents-in-suit; and (vi) the three persons most knowledgeable about the circumstances of Defendant's first awareness of each one of the patents-in-suit.

14

**INTERROGATORY NO. 11**

Identify any license entered into by Defendant, as licensor or licensee, related to sensor devices capable of being used to determine the concentration of glucose in a blood sample, including any licenses to components of such sensor devices, including but not limited to an identification of (i) the name of the licensee or licensor; (ii) the licensed property; (iii) the terms of the license, including consideration due under the agreement, whether it involved an initial upfront or initial payment, the royalty rate and the royalty base; (iv) when such license was executed and the effective date of the agreement; and (v) the three persons most knowledgeable regarding each such license.

**INTERROGATORY NO. 12**

Describe the circumstances surrounding any opinion, written and/or oral and formal and/or informal, that Defendant has requested or received regarding validity, infringement, enforceability or liability in relation to the 146 patent or the 147 patent, including but not limited to an identification of (i) whether the opinion was written or oral and formal or informal; (ii) the dates on which the opinion was requested, begun, completed and delivered; (iii) each person involved in the formulation and delivery of the opinion (including the role each such person had in the formulation and delivery of the opinion); (iv) each person who has received, reviewed or otherwise been informed of the substance of the opinion; (v) the subject matter of the opinion; (vi) whether Defendant intends to rely on such opinion in this case; (vii) to the extent that Defendant intends to rely on such opinion, the substance of the opinion; and (viii) all documents or things that refers or relates to each opinion.

15

**INTERROGATORY NO. 13**

If Defendant has asserted an affirmative defense alleging, or otherwise asserts, that the defendants in this action are not properly joined together under Rule 20 of the Federal Rules of Civil Procedure, set forth with particularity the entire legal and factual basis for the defense or assertion.

**INTERROGATORY NO. 14**

With respect to LifeScan's Third Affirmative Defense, set forth with particularity the entire legal and factual basis for the defense asserted.

**INTERROGATORY NO. 15**

Identify each person who provided information concerning each response to these Interrogatories and/or the supplementation of these Interrogatories, or in response to any subsequent Interrogatories, and each person who participated in the collection and/or review of documents and things in response to Plaintiffs' requests for production of documents and things, and identify all documents that were reviewed or considered relating to such responses.

**INTERROGATORY NO. 16**

Identify each witness, including but not limited to fact and expert witnesses, that Defendant may call to testify at trial or hearing, and identify all expert opinions that Defendant may introduce at trial or a hearing.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Daniel A. Boehnen
Grantland G. Drutchas
McDonnell Boehnen Hulbert & Berghoff LLP
300 South Wacker Drive
Chicago, IL 60606
(312) 913-0001

By: _____
      Philip A. Rovner (#3215)
      Hercules Plaza
      P.O. Box 951
      Wilmington, DE 19899-0951
      (302) 984-6000
      provner@potteranderson.com

Dated:  January 23, 2008
844041

*Attorney for Plaintiffs*
*Roche Diagnostics Operations, Inc. and*
*Corange International Limited*

17

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I, Philip A. Rovner, hereby certify that on January 23, 2008, the within document

was served on the following counsel of record, at the addresses and in the manner

indicated:

**BY E-MAIL**

Frederick L. Cottrell, III, Esq.
Anne Shea Gaza, Esq.
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, DE 19801
cottrell@rlf.com
gaza@rlf.com

Mary W. Bourke, Esq.
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 N. Orange Street
Wilmington, DE 19801
mbourke@cblh.com

Steven J. Balick, Esq.
John G. Day, Esq.
Ashby & Geddes
500 Delaware Avenue
8th Floor
P.O. Box 1150
Wilmington, DE 19899
sbalick@ashby-geddes.com
jday@ashby-geddes.com

**BY E-MAIL**

John W. Shaw, Esq.
Jeffrey T. Castellano, Esq.
Young Conaway Stargatt & Taylor, LLP
1000 West Street, 17th Floor
Wilmington, DE 19801
jshaw@ycst.com
jcastellano@ycst.com

Rodger D. Smith, Esq.
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
rsmith@mnat.com

**BY E-MAIL**

Edward A. Mas, II, Esq.
Stephen F. Sherry, Esq.
Kirk Vander Leest, Esq.
James M. Hafertepe, Esq.
Merle S. Elliott, Esq.
McAndrews, Held & Malloy, Ltd.
500 West Madison Street
34th Floor
Chicago, IL  60661
emas@mcandrews-ip.com
ssherry@mcandrews-ip.com
kvanderleest@mcandrews-ip.com
jhafertepe@mcandrews-ip.com
melliott@mcandrews-ip.com

Kenneth P. George, Esq.
Joseph M. Casino, Esq.
Amster, Rothstein & Ebenstein LLP
90 Park Avenue
New York, NY  10016
kgeorge@arelaw.com
jcasino@arelaw.com

Bradford J. Badke, Esq.
Sona De, Esq.
Michael Kahn, Esq.
Ropes & Gray LLP
1211 Avenue of the Americas
New York, NY 10036-8704
Jim.badke@ropesgray.com
Sona.de@ropesray.com
Michael.kahn@ropesgray.com

**BY E-MAIL**

Wesley E. Overson, Esq.
Rachel Krevans, Esq.
Jason R. Bartlett, Esq.
Parisa Jorjani, Esq.
Daniel P. Muino, Esq.
Morrison & Foerster LLP
425 Market Street
San Francisco, CA 94105-2482
woverson@mofo.com
rkrevans@mofo.com
jasonbartlett@mofo.com
pjorjani@mofo.com
dmuino@mofo.com

Michael G. Adams, Esq.
Ashley L. Ellis, Esq.
Parker Poe Adams & Bernstein LLP
Three Wachovia Center, Suite 3000
401 South Tryon Street
Charlotte, NC 28202
mikeadams@parkerpoe.com
ashleyellis@parkerpoe.com

Philip A. Rovner (#3215)
Potter Anderson & Corroon LLP
Hercules Plaza
P.O. Box 951
Wilmington, Delaware 19899
(302) 984-6000
E-mail: provner@potteranderson.com

-2-

# EXHIBIT I

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ROCHE DIAGNOSTICS OPERATIONS, INC., and CORANGE INTERNATIONAL LIMITED, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | C.A. No. 07-753-JJF |
| ABBOTT DIABETES CARE, INCORPORATED, and ABBOTT DIABETES CARE SALES CORPORATION, | ) ) ) ) ) | DEMAND FOR JURY TRIAL |
| BAYER HEALTHCARE, LLC, | ) ) | |
| DIAGNOSTIC DEVICES, INC., | ) ) | |
| LIFESCAN, INCORPORATED, and | ) ) | |
| NOVA BIOMEDICAL CORPORATION, and SANVITA INCORPORATED, | ) ) ) | |
| Defendants. | ) | |

**ROCHE DIAGNOSTICS OPERATIONS, INC.'S AND CORANGE INTERNATIONAL
LIMITED'S FIRST SET OF INTERROGATORIES (NOS. 1-18)
TO DEFENDANT BAYER HEALTHCARE, LLC**

Plaintiffs Roche Diagnostics Operations, Inc. ("RDOI") and Corange International Limited

("Corange") (collectively "Plaintiffs") propound the following Interrogatories to Defendant Bayer

Healthcare, LLC ("Bayer"), pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure

and the Local Rules of the U.S. District for the District of Delaware. The written responses to these

Interrogatories shall be served on Plaintiffs' counsel within thirty (30) days of the service thereof.

Further, any documents and things produced in response to these Interrogatories shall be produced

for inspection and copying at the offices of Plaintiffs' counsel, McDonnell Boehnen Hulbert &

Berghoff LLP, 300 S. Wacker Dr., Chicago, Illinois 60606, within thirty (30) days from the service of these Interrogatories.

All Interrogatories propounded by Plaintiffs are deemed to be continuing in nature so as to require supplementation promptly following the discovery of additional documents or things or knowledge or information by Bayer to the extent such documents or things or knowledge or information is responsive to Plaintiffs' Interrogatories.

## DEFINITIONS

For the purposes of responding to the following Interrogatories, the following definitions shall apply:

1.    The term "RDOI" shall mean Roche Diagnostics Operations, Inc. and/or any company name under which RDOI is doing or has done business; its predecessors, parents, subsidiaries, divisions, licensees, franchisees, assigns or other related business entities; its directors, officers, employees, agents, distributors, jobbers, salespersons, interns, sales representatives and attorneys; and each person acting or purporting to act on its or their behalf or under its or their control.

2.    The term "Corange" shall mean Corange International Limited and/or any company name under which Corange is doing or has done business; its predecessors, parents, subsidiaries, divisions, licensees, franchisees, assigns or other related business entities; its directors, officers, employees, agents, distributors, jobbers, salespersons, interns, sales representatives and attorneys; and each person acting or purporting to act on its or their behalf or under its or their control.

3.    The term "Plaintiffs" shall mean RDOI and Corange.

2

4.     The terms "Defendant," "Bayer," "you" and "your" shall mean Bayer Healthcare, LLC and/or any company name under which Bayer is doing or has done business; its predecessors, parents, subsidiaries, divisions, licensees, franchisees, assigns or other related business entities; its directors, officers, employees, agents, distributors, jobbers, salespersons, interns, sales representatives and attorneys; and each person acting or purporting to act on its or their behalf or under its or their control.

5.     The terms "person" or "persons" shall mean natural persons (including but not limited to those employed by Defendant) and all other legally cognizable entities, including (without limitation) governmental entities, agencies, officers, departments or affiliates of the United States of America or any other governmental entity; commercial entities such as corporations, foundations, partnerships and proprietorships; associations; organization; and groups of natural persons.

6.     The term "date" shall mean the exact day, month and year, if ascertainable, or, if not, Defendant's closest approximation (including but not limited to an identification of relationship to other events).

7.     The term "document(s)" shall have the broadest meaning accorded to it by Rule 34 of the Federal Rules of Civil Procedure, and shall include, without limitation, any recording in any tangible form of any information, whether handwritten, typed, printed, stored on computer disks, tapes or databases (including electronic files and e-mail) or otherwise reproduced. "Document" also includes all drafts and copies that are not identical to the original.

8.     The term "thing(s)" shall have the broadest meaning accorded to it by Rule 34 of the Federal Rules of Civil Procedure, and shall include, without limitation, every kind of

3

physical specimen or tangible item, other than a document, in the possession, custody or control of Defendant.

9.      The term "communication" shall mean any disclosure, transmission or exchange of information from one person or entity to another, including without limitation by personal meeting, telephone, facsimile, radio, telegraph, electronic mail, teleconference, writing or other means.

10.     The terms "concerning," "referring to" and "relating to" shall be interpreted so as to encompass the liberal scope of discovery set forth in Rule 26(b) of the Federal Rules of Civil Procedure, and shall mean for example and without limitation, refer, relate, analyze, concern, constitute, contain, contradict, describe, discuss, evaluate, evidence, pertain, reflect, refute or support.

11.     The term "including" shall be construed broadly, and shall encompass "including but not limited to" or "including without limitation."

12.     The terms "identify," "identification," "describe," or "description" shall mean to provide a complete identification of the document, thing, or person to the fullest extent known or ascertainable by Defendant, whether or not the information is in the possession, custody, or control of Defendant and whether or not the information is alleged to be protected by any privilege or work product protection, and includes without limitation a request for the following information:

(a)     with respect to a natural person, his or her name; home and work addresses and telephone numbers; present (or if unknown, the last known) place of employment; date(s) of commencement and termination of employment; job title; and description of his or her duties and responsibilities;

4

(b)     with respect to a corporation or other legal entity, the full name; state of incorporation or registration; address of its principal place of business; telephone number of its principal place of business; and the identity of each natural person who acted on behalf of such entity with respect to the subject matter of the document request;

(c)     with respect to a document, the type of document (e.g., letter, e-mail, facsimile, contract, calendar, report); the number of pages of which the document consists; a general description of the document's contents; an identification of each person(s) who prepared the document, who signed the document, for whom it was prepared, to whom it was delivered, mailed, or otherwise received, and to whom a copy was sent or who otherwise received a copy; the date of writing, creation or publication; the identifying number(s), letter(s), or combination thereof, if any, and the significance or meaning of such number(s), letter(s) or combination thereof; and present location and identity of the custodian of that document.  Documents to be identified shall include documents currently in your possession, custody or control; documents you know to have once existed but that no longer exist; and other documents of which you have knowledge or information but that are not currently in your possession, custody or control;

(d)     with respect to a product or to equipment, the common name of the product or equipment; the trade, brand, or commercial name of the product or equipment; the model, part number, catalog number, and/or serial number of the product or equipment; the manufacturer and vendor of the product or equipment; and the use and/or function of the product or equipment;

(e)     with respect to an activity, the events and/or occurrences that comprise the activity; the persons involved in the activity; the dates when the activity occurred; and the locations where the activity occurred;

5

     (f)     with respect to oral communications, the manner in which the communications were made (telephone, conversation, etc.); the identity of each person who participated in or witnessed the communication; and the subject matter and content of the communication; and the date of the communication;

     (g)     with respect to a patent or patent application, the country or jurisdiction in which it was filed; the number; the named inventor(s); the filing date; the issue date (if a patent); and all related or foreign counterpart applications and patents; and

     (h)     with respect to films, photographs, tapes, computer media, and other things susceptible to chemical, biological, mechanical, or electrical reproduction, all identifying information including their character; subject matters; authors; and dates.

13.     The terms "and," "or" and "and/or" shall be construed disjunctively or conjunctively as necessary in order to bring within the scope of the request all responses which otherwise might be construed to be outside its scope.

14.     The term the "146 patent" shall mean U.S. Pat. No. 7,276,146.

15.     The term the "147 patent" shall mean U.S. Pat. No. 7,276,147.

16.     The term "patents-in-suit" shall mean the 146 patent and the 147 patent either collectively or individually, as well as any other patent(s) that may be subsequently added to the litigation.

17.     The term "Complaint" shall mean Plaintiffs' "Complaint for Patent Infringement" filed by Plaintiffs in this action on or about November 21, 2007, as well as any amended complaints that may be filed.

18.    The term "Answer" shall mean the "Defendant Bayer Healthcare, LLC's Answer and Affirmative Defenses to Complaint for Patent Infringement" filed by Defendant on or about January 11, 2008, as well as any amended answers that may be filed.

19.    The terms "prior art" includes, by way of example and without limitation, any subject matter that you assert may be encompassed by 35 U.S.C. §103 and/or any subdivision of 35 U.S.C. §102.

20.    The term "Electrochemical Sensor" shall mean any sensor device capable of being used to determine the concentration of glucose in a blood sample, including but not necessarily limited to the specific electrochemical sensors identified in the Complaint. The Electrochemical Sensors includes (without limitation) test strips or equivalent devices alone or in combination with a meter or equivalent device capable of receiving the test strips and participating in the determination of the concentration of glucose in a blood sample.

## INSTRUCTIONS

1.    If you produce responsive documents pursuant to Federal Rule of Civil Procedure 33(d), the original and each non-identical copy of each document or other tangible thing requested herein which is in your possession, custody or control, or that of any of your agents, attorneys, consultants, advisors, associates, accountants, employees, representatives or investigators, is to be produced, including company, department, and personal files. If the original or original carbon copy is not in your possession, custody or control, or that of your agents, attorneys, consultants, advisors, associates, accountants, employees, representatives or investigators, a full, clear, legible copy thereof is to be produced.

2.    If any portion of any Interrogatory refers to information of which Defendant were once aware but is no longer within Defendant's knowledge, Defendant is requested to identify the

7

name, telephone number, and address of the person last known by Defendant to have knowledge of such information.

3.     Each Interrogatory shall be responded to fully unless it is in good faith objected to, in which event every reason for your objection shall be stated in detail.  If an objection pertains to only a portion of an Interrogatory, or a word, phrase or clause contained within it, you are required to state your objection to that portion only and to respond to the remainder of the Interrogatory to the fullest extent possible.

4.     If you produce responsive documents pursuant to Federal Rule of Civil Procedure 33(d), each document and thing produced is to be (i) identified in your written response hereto to correspond with the categories of the Interrogatory in response to which it is being produced or (ii) produced as it is kept in the usual course of business, including all file folders, binder, notebooks and other devices by which each such document or this is organized or separated.

5.     If the attorney-client privilege or work product immunity is asserted as to any information requested in an Interrogatory, set forth your response hereto with respect to all information for which a claim of privilege is made such that the document or thing is not produced in full:

(a)     the specific ground(s) for not producing the document or thing in full;

(b)     the bases for such a claim of privilege or immunity, including a statement of sufficient relevant facts and circumstances that will explain the basis of the claim of privilege and will permit the adjudication of the propriety of the claim of privilege; and

(c)     fully identify the information, document, or material for which such privilege or immunity is asserted, including the type of any document or thing withheld (e.g., letter, memorandum, etc.); the subject matter of any document, communication, or other

8

information withheld; the date of recording, creating or otherwise preparing any document or thing; the name of any document or thing; the name, address and title of its author or creator; the name, address and title of each person (other than stenographic or clerical assistants) participating in the preparation or creation of any document or thing; the name, address and title of each addressee, recipient and/or custodian of the document or thing, or a copy of the document or thing; the name, address and title of each person to whom the contents of the information or any portion thereof have heretofore been communicated by copy, exhibition, reading or summarization; and the location(s) where, if at all, information has been redacted on any document or thing thus produced.

6.      No Interrogatory or subpart hereof shall be construed as a limitation on any other Interrogatory or subpart hereof.

7.      Any word written in the singular herein shall be construed as plural or *vice versa* as necessary to bring within the scope of the Interrogatory all responses which otherwise might be construed to be outside its scope.

## INTERROGATORIES

## INTERROGATORY NO. 1

Identify each model or type of Electrochemical Sensor that Defendant has made, used, sold, offered for sale in or imported into the United States having a capillary chamber that holds a blood sample volume of 1 µl or less and providing a readout of the glucose concentration of the blood sample within 10 seconds or less after the blood sample enters the capillary chamber, including (i) an identification of the model number; (ii) all revisions of the model numbers (to the extent any revision exists); (iii) the dates of manufacture, use, sale, offer for sale or import of the model; (iv) all documents and things (including, but not limited to, engineering drawings,

manufacturing drawings or other schematic drawings, specifications, orders and instruction

manuals) that illustrate and/or describe the design, structure and operation of each model or type

identified in response to this Interrogatory; and (v) the identity of the persons most

knowledgeable regarding the design, structure and operation of each such model or type of

Electrochemical Sensor.

## INTERROGATORY NO. 2

For each Electrochemical Sensor identified in response to Interrogatory No. 1, describe

Defendant's research, development and design effort for such Electrochemical Sensor and the

events leading to the research, development, and design of such Electrochemical Sensor,

including but not limited to an identification of (i) Defendant's corporate structure relating to the

research, development or design of such Electrochemical Sensors (including but not limited to all

subsidiaries, predecessors and/or other related business entities owned, partially owned,

controlled and/or partially controlled by Defendant; and the function of all departments, groups,

units and/or divisions within each such entity pertaining to such Electrochemical Sensor); (ii)

each person (including third parties) who had a role in and the role that each such person had in

the research, development or design of such Electrochemical Sensor; (iii) where such

Electrochemical Sensor was researched, developed and/or designed; (iv) all documents that

relate to the research, development or design of such Electrochemical Sensor, including any

licenses or other agreements with third parties; and (v) the three most knowledgeable persons

regarding any facts that relate to the (a) research, (b) development and (c) design of such

Electrochemical Sensors.

**INTERROGATORY NO. 3**

For each Electrochemical Sensor identified in response to Interrogatory No. 1, identify all documents that constitute, refer to or related to sales and/or marketing material or literature (whether or not such material or literature was ever used and/or distributed) which relates to the sample volume for such Electrochemical Sensor and/or the time required to determine the concentration of glucose in a blood sample with such Electrochemical Sensor, and identify the person or persons responsible for the drafting of such material or literature.

**INTERROGATORY NO. 4**

If Defendant has asserted an affirmative defense or counterclaim alleging, or otherwise asserts, that any Electrochemical Sensor identified in response to Interrogatory No. 1 does not infringe any claim of either the 146 patent or the 147 patent, identify the factual basis for such affirmative defense, counterclaim or assertion, including but not limited to an identification of (i) each such allegedly non-infringing Electrochemical Sensor, including the model number, all revision numbers of the model (to the extent any revision numbers exist); (ii) each claim of each patent allegedly not infringed for each such Electrochemical Sensor; (iii) each claim limitation that is alleged to be absent from use of the Electrochemical Sensor or otherwise missing from the Electrochemical Sensor; (iv) whether such specific claim limitation is missing literally or under the doctrine of equivalents, or both; (v) all documents and things upon which Defendant relies in support of any such assertion; and (vi) separately for each such allegedly non-infringing Electrochemical Sensor, the three persons having the most knowledge of the facts relating to each such assertion.

11

**INTERROGATORY NO. 5**

For each claim that Defendant alleges in response to Interrogatory No. 4 is not infringed and for each claim limitation that Defendant alleges in response to Interrogatory No. 4 is missing from the Electrochemical Sensors identified in response to Interrogatory No. 1, identify in detail the basis for such allegation, including but not limited to a description of (i) Defendant's proposed construction of such claim limitation or element; (ii) all passages of the claims, specification, prosecution history or other intrinsic evidence that allegedly supports Defendant's position; (iii) all prior art that Defendant asserts supports its proposed construction; (iv) all other extrinsic evidence that allegedly supports Defendant's position; (v) any prosecution history estoppel that Defendant asserts applies to construction of the claims of the patents-in-suit; (vi) all documents and things upon which Defendant relies in support of any such assertion; and (v) separately for each such allegedly non-infringing Electrochemical Sensor, the three persons having the most knowledge of the facts relating to each such assertion.

**INTERROGATORY NO. 6**

For each Electrochemical Sensor identified in response to Interrogatory No. 1, identify the revenues and costs associated with such product, including but not limited to an identification of (i) the date of first sale or offer for sale; (ii) Defendant's monthly unit sales volume (or if monthly information is not available, whatever other periodic reporting period is available); (iii) Defendant's total sales by unit volume and total sales dollars; (iv) the standard unit sales price(s); (v) the cost of goods sold (with an allocation of all fixed and variable costs, including but not limited to all manufacturing, administrative, overhead and marketing costs per unit); (vi) Defendant's revenues and gross and net profits associated with such sales; (vii) each document

12

and thing that refers or relates to such unit sales, prices, costs, revenues and profits; and (viii) the three persons most knowledgeable regarding such unit sales, prices, costs, revenues and profits.

## INTERROGATORY NO. 7

If Defendant has asserted an affirmative defense or counterclaim alleging, or otherwise asserts, that any claim in the 146 patent and the 147 patent is invalid, set forth with particularity the entire factual and legal basis in support of such affirmative defense, counterclaim or assertion, including but not limited to an identification of (i) each claim of the patents-in-suit that Defendant asserts is invalid; (ii) for each such claim, each statutory provision that Defendant asserts renders it invalid; (iii) all facts that constitute the basis for each of Defendant's assertions of invalidity; (iv) all documents that support, refute or are inconsistent with each of Defendant's assertions of invalidity; and (v) the three most knowledgeable witnesses regarding any facts that relate to such assertion of invalidity.

## INTERROGATORY NO. 8

If Defendant has asserted an affirmative defense or counterclaim alleging, or otherwise asserts, that any claim in the 146 patent and the 147 patent is invalid, under 35 U.S.C. § 102 and/or obvious under 35 U.S.C § 103, set forth with particularity the entire legal and factual basis for Defendant's allegation that the prior art invalidates each such claim, including but not limited to an identification of (i) each item of alleged prior art upon which Defendant relies; (ii) the date and circumstances under which each element of the alleged prior art became public; (iii) for each such claim in the 146 patent and the 147 patent, how each element, limitation or step of such claim is disclosed or taught by one or more alleged prior art references, either taken alone or in combination; (iv) for each combination of references used to support a defense or other assertion of obviousness, (a) the scope and content of the prior art, (b) the differences between

the prior art and the claims at issue, (c) the level of ordinary skill in the pertinent art, (d) the

application of secondary considerations as commercial success, long felt but unsolved needs,

failure of others, etc., and (e) the teaching, motivation or suggestion to make each such

combination of references; (v) all documents that support such affirmative defense, counterclaim

or assertion and (vi) the three most knowledgeable witnesses regarding such affirmative defense

or assertion.

**INTERROGATORY NO. 9**

Separately for each claim in the 146 patent and the 147 patent, define the person having

ordinary skill in the art to which the subject matter of such claim pertains at the time the

invention of such claim was made and at the date of filing of the original application to which the

146 and 147 patents claim priority.

**INTERROGATORY NO. 10**

Describe in detail the circumstances in which Defendant first became aware of the

patents-in-suit, including, but not limited to, an identification of (i) the date on which Defendant

first became aware of each one of the patents-in-suit; (ii) the person affiliated with Defendant

who first became aware of each one of the patents-in-suit; (iii) how Defendant first became

aware of each one of the patents-in-suit; (iv) from whom or where Defendant first became aware

of each one of the patents-in-suit; (v) each and every document or thing that refers or relates to

Defendant's first awareness of each one of the patents-in-suit; and (vi) the three persons most

knowledgeable about the circumstances of Defendant's first awareness of each one of the

patents-in-suit.

14

**INTERROGATORY NO. 11**

Identify any license entered into by Defendant, as licensor or licensee, related to sensor devices capable of being used to determine the concentration of glucose in a blood sample, including any licenses to components of such sensor devices, including but not limited to an identification of (i) the name of the licensee or licensor; (ii) the licensed property; (iii) the terms of the license, including consideration due under the agreement, whether it involved an initial upfront or initial payment, the royalty rate and the royalty base; (iv) when such license was executed and the effective date of the agreement; and (v) the three persons most knowledgeable regarding each such license.

**INTERROGATORY NO. 12**

Describe the circumstances surrounding any opinion, written and/or oral and formal and/or informal, that Defendant has requested or received regarding validity, infringement, enforceability or liability in relation to the 146 patent or the 147 patent, including but not limited to an identification of (i) whether the opinion was written or oral and formal or informal; (ii) the dates on which the opinion was requested, begun, completed and delivered; (iii) each person involved in the formulation and delivery of the opinion (including the role each such person had in the formulation and delivery of the opinion); (iv) each person who has received, reviewed or otherwise been informed of the substance of the opinion; (v) the subject matter of the opinion; (vi) whether Defendant intends to rely on such opinion in this case; (vii) to the extent that Defendant intends to rely on such opinion, the substance of the opinion; and (viii) all documents or things that refers or relates to each opinion.

15

**INTERROGATORY NO. 13**

If Defendant has asserted an affirmative defense alleging, or otherwise asserts, that the defendants in this action are not properly joined together under Rule 20 of the Federal Rules of Civil Procedure, set forth with particularity the entire legal and factual basis for the defense or assertion.

**INTERROGATORY NO. 14**

With respect to Bayer's Third Affirmative Defense, set forth with particularity the entire legal and factual basis for the defense, including but not limited to identification of (i) each item of alleged prior art upon which Bayer relies; (ii) the date and circumstances under which each element of the alleged prior art became public; (iii) for each such claim in the 146 patent and the 147 patent, how the scope of each claim is limited or restricted by one or more alleged prior art references, either taken alone or in combination; (iv) for each combination of references used to support this defense, (a) the scope and content of the prior art, (b) the differences between the prior art and the claims at issue, (c) the level of ordinary skill in the pertinent art, (d) the application of secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., and (e) the teaching, motivation or suggestion to make each such combination of references; (v) all documents that support this affirmative defense and (vi) the three most knowledgeable witnesses regarding this affirmative defense.

**INTERROGATORY NO. 15**

With respect to Bayer's Fourth Affirmative Defense, set forth with particularity the entire legal and factual basis (including the identification of witnesses and documents that you believe support your defense) for each defense asserted including (i) waiver; (ii) estoppel; (iii) unclean hands; (iv) forfeiture; and (v) acquiescence.

**INTERROGATORY NO. 16**

With respect to Bayer's Fifth and Sixth Affirmative Defenses, set forth with particularity the entire legal and factual basis for the defenses asserted.

**INTERROGATORY NO. 17**

Identify each person who provided information concerning each response to these Interrogatories and/or the supplementation of these Interrogatories, or in response to any subsequent Interrogatories, and each person who participated in the collection and/or review of documents and things in response to Plaintiffs' requests for production of documents and things, and identify all documents that were reviewed or considered relating to such responses.

**INTERROGATORY NO. 18**

Identify each witness, including but not limited to fact and expert witnesses, that Defendant may call to testify at trial or hearing, and identify all expert opinions that Defendant may introduce at trial or a hearing.

OF COUNSEL:

Daniel A. Boehnen
Grantland G. Drutchas
McDonnell Boehnen Hulbert & Berghoff LLP
300 South Wacker Drive
Chicago, IL 60606
(312) 913-0001

Dated: January 23, 2008
844039

POTTER ANDERSON & CORROON LLP

By: _____

Philip A. Rovner (#3215)
Hercules Plaza
P.O. Box 951
Wilmington, DE 19899-0951
(302) 984-6000
provner@potteranderson.com

*Attorney for Plaintiffs*
*Roche Diagnostics Operations, Inc. and*
*Corange International Limited*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I, Philip A. Rovner, hereby certify that on January 23, 2008, the within document

was served on the following counsel of record, at the addresses and in the manner

indicated:

**BY E-MAIL**

Frederick L. Cottrell, III, Esq.
Anne Shea Gaza, Esq.
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, DE 19801
cottrell@rlf.com
gaza@rlf.com

Mary W. Bourke, Esq.
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 N. Orange Street
Wilmington, DE 19801
mbourke@cblh.com

Steven J. Balick, Esq.
John G. Day, Esq.
Ashby & Geddes
500 Delaware Avenue
8th Floor
P.O. Box 1150
Wilmington, DE 19899
sbalick@ashby-geddes.com
jday@ashby-geddes.com

**BY E-MAIL**

John W. Shaw, Esq.
Jeffrey T. Castellano, Esq.
Young Conaway Stargatt & Taylor, LLP
1000 West Street, 17th Floor
Wilmington, DE 19801
jshaw@ycst.com
jcastellano@ycst.com

Rodger D. Smith, Esq.
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
rsmith@mnat.com

**BY E-MAIL**

Edward A. Mas, II, Esq.
Stephen F. Sherry, Esq.
Kirk Vander Leest, Esq.
James M. Hafertepe, Esq.
Merle S. Elliott, Esq.
McAndrews, Held & Malloy, Ltd.
500 West Madison Street
34th Floor
Chicago, IL 60661
emas@mcandrews-ip.com
ssherry@mcandrews-ip.com
kvanderleest@mcandrews-ip.com
jhafertepe@mcandrews-ip.com
melliott@mcandrews-ip.com

Kenneth P. George, Esq.
Joseph M. Casino, Esq.
Amster, Rothstein & Ebenstein LLP
90 Park Avenue
New York, NY 10016
kgeorge@arelaw.com
jcasino@arelaw.com

Bradford J. Badke, Esq.
Sona De, Esq.
Michael Kahn, Esq.
Ropes & Gray LLP
1211 Avenue of the Americas
New York, NY 10036-8704
Jim.badke@ropesgray.com
Sona.de@ropesray.com
Michael.kahn@ropesgray.com

**BY E-MAIL**

Wesley E. Overson, Esq.
Rachel Krevans, Esq.
Jason R. Bartlett, Esq.
Parisa Jorjani, Esq.
Daniel P. Muino, Esq.
Morrison & Foerster LLP
425 Market Street
San Francisco, CA 94105-2482
woverson@mofo.com
rkrevans@mofo.com
jasonbartlett@mofo.com
pjorjani@mofo.com
dmuino@mofo.com

Michael G. Adams, Esq.
Ashley L. Ellis, Esq.
Parker Poe Adams & Bernstein LLP
Three Wachovia Center, Suite 3000
401 South Tryon Street
Charlotte, NC 28202
mikeadams@parkerpoe.com
ashleyellis@parkerpoe.com

Philip A. Rovner (#3215)
Potter Anderson & Corroon LLP
Hercules Plaza
P.O. Box 951
Wilmington, Delaware 19899
(302) 984-6000
E-mail: provner@potteranderson.com

-2-

# EXHIBIT J

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

ROCHE DIAGNOSTICS OPERATIONS, INC.,  )
and CORANGE INTERNATIONAL LIMITED,   )
                                               )
        Plaintiffs,               )
                                               )
              vs.                 )   C.A. No. 07-753-JJF
                                               )
ABBOTT DIABETES CARE,                )
INCORPORATED, and                    )
ABBOTT DIABETES CARE SALES           )   DEMAND FOR JURY TRIAL
CORPORATION,                         )
                                               )
BAYER HEALTHCARE, LLC,               )
                                             )
DIAGNOSTIC DEVICES, INC.,            )
                                             )
LIFESCAN, INCORPORATED, and          )
                                             )
NOVA BIOMEDICAL CORPORATION, and     )
SANVITA INCORPORATED,                )
                                             )
        Defendants.            )

## ROCHE DIAGNOSTICS OPERATIONS, INC.'S AND CORANGE INTERNATIONAL LIMITED'S FIRST SET OF INTERROGATORIES (NOS. 1-17) TO DEFENDANTS ABBOTT DIABETES CARE INC. AND ABBOTT DIABETES CARE SALES CORPORATION

Plaintiffs Roche Diagnostics Operations, Inc. ("RDOI") and Corange International Limited

("Corange") (collectively "Plaintiffs") propound the following Interrogatories to Defendants Abbott

Diabetes Care Inc. ("ADC") and Abbott Diabetes Care Sales Corporation ("ADCSC") (collectively

"Abbott"), pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and the Local Rules

of the U.S. District for the District of Delaware.  The written responses to these Interrogatories shall

be served on Plaintiffs' counsel within thirty (30) days of the service thereof.  Further, any

documents and things produced in response to these Interrogatories shall be produced for inspection

and copying at the offices of Plaintiffs' counsel, McDonnell Boehnen Hulbert & Berghoff LLP, 300

S. Wacker Dr., Chicago, Illinois 60606, within thirty (30) days from the service of these

Interrogatories.

All Interrogatories propounded by Plaintiffs are deemed to be continuing in nature so as

to require supplementation promptly following the discovery of additional documents or things

or knowledge or information by Abbott to the extent such documents or things or knowledge or

information is responsive to Plaintiffs' Interrogatories.

## DEFINITIONS

For the purposes of responding to the following Interrogatories, the following definitions

shall apply:

1.    The term "RDOI" shall mean Roche Diagnostics Operations, Inc. and/or any

company name under which RDOI is doing or has done business; its predecessors, parents,

subsidiaries, divisions, licensees, franchisees, assigns or other related business entities; its

directors, officers, employees, agents, distributors, jobbers, salespersons, interns, sales

representatives and attorneys; and each person acting or purporting to act on its or their behalf or

under its or their control.

2.    The term "Corange" shall mean Corange International Limited and/or any

company name under which Corange is doing or has done business; its predecessors, parents,

subsidiaries, divisions, licensees, franchisees, assigns or other related business entities; its

directors, officers, employees, agents, distributors, jobbers, salespersons, interns, sales

representatives and attorneys; and each person acting or purporting to act on its or their behalf or

under its or their control.

3.    The term "Plaintiffs" shall mean RDOI and Corange.

2

4.      The terms "Defendant," "Abbott," "you" and "your" shall mean Abbott Diabetes Care Inc. ("ADC") and Abbott Diabetes Care Sales Corporation ("ADCSC") individually and collectively and/or any company name under which ADC and/or ADCSC is doing or has done business; its or their predecessors, parents, subsidiaries, divisions, licensees, franchisees, assigns or other related business entities; its or their directors, officers, employees, agents, distributors, jobbers, salespersons, interns, sales representatives and attorneys; and each person acting or purporting to act on its or their behalf or under its or their control.

5.      The terms "person" or "persons" shall mean natural persons (including but not limited to those employed by Defendant) and all other legally cognizable entities, including (without limitation) governmental entities, agencies, officers, departments or affiliates of the United States of America or any other governmental entity; commercial entities such as corporations, foundations, partnerships and proprietorships; associations; organization; and groups of natural persons.

6.      The term "date" shall mean the exact day, month and year, if ascertainable, or, if not, Defendant's closest approximation (including but not limited to an identification of relationship to other events).

7.      The term "document(s)" shall have the broadest meaning accorded to it by Rule 34 of the Federal Rules of Civil Procedure, and shall include, without limitation, any recording in any tangible form of any information, whether handwritten, typed, printed, stored on computer disks, tapes or databases (including electronic files and e-mail) or otherwise reproduced. "Document" also includes all drafts and copies that are not identical to the original.

8.      The term "thing(s)" shall have the broadest meaning accorded to it by Rule 34 of the Federal Rules of Civil Procedure, and shall include, without limitation, every kind of

3

physical specimen or tangible item, other than a document, in the possession, custody or control of Defendant.

9.    The term "communication" shall mean any disclosure, transmission or exchange of information from one person or entity to another, including without limitation by personal meeting, telephone, facsimile, radio, telegraph, electronic mail, teleconference, writing or other means.

10.    The terms "concerning," "referring to" and "relating to" shall be interpreted so as to encompass the liberal scope of discovery set forth in Rule 26(b) of the Federal Rules of Civil Procedure, and shall mean for example and without limitation, refer, relate, analyze, concern, constitute, contain, contradict, describe, discuss, evaluate, evidence, pertain, reflect, refute or support.

11.    The term "including" shall be construed broadly, and shall encompass "including but not limited to" or "including without limitation."

12.    The terms "identify," "identification," "describe," or "description" shall mean to provide a complete identification of the document, thing, or person to the fullest extent known or ascertainable by Defendant, whether or not the information is in the possession, custody, or control of Defendant and whether or not the information is alleged to be protected by any privilege or work product protection, and includes without limitation a request for the following information:

(a)    with respect to a natural person, his or her name; home and work addresses and telephone numbers; present (or if unknown, the last known) place of employment; date(s) of commencement and termination of employment; job title; and description of his or her duties and responsibilities;

4

(b)    with respect to a corporation or other legal entity, the full name; state of incorporation or registration; address of its principal place of business; telephone number of its principal place of business; and the identity of each natural person who acted on behalf of such entity with respect to the subject matter of the document request;

(c)    with respect to a document, the type of document (e.g., letter, e-mail, facsimile, contract, calendar, report); the number of pages of which the document consists; a general description of the document's contents; an identification of each person(s) who prepared the document, who signed the document, for whom it was prepared, to whom it was delivered, mailed, or otherwise received, and to whom a copy was sent or who otherwise received a copy; the date of writing, creation or publication; the identifying number(s), letter(s), or combination thereof, if any, and the significance or meaning of such number(s), letter(s) or combination thereof; and present location and identity of the custodian of that document. Documents to be identified shall include documents currently in your possession, custody or control; documents you know to have once existed but that no longer exist; and other documents of which you have knowledge or information but that are not currently in your possession, custody or control;

(d)    with respect to a product or to equipment, the common name of the product or equipment; the trade, brand, or commercial name of the product or equipment; the model, part number, catalog number, and/or serial number of the product or equipment; the manufacturer and vendor of the product or equipment; and the use and/or function of the product or equipment;

(e)    with respect to an activity, the events and/or occurrences that comprise the activity; the persons involved in the activity; the dates when the activity occurred; and the locations where the activity occurred;

5

(f)    with respect to oral communications, the manner in which the communications were made (telephone, conversation, etc.); the identity of each person who participated in or witnessed the communication; and the subject matter and content of the communication; and the date of the communication;

(g)    with respect to a patent or patent application, the country or jurisdiction in which it was filed; the number; the named inventor(s); the filing date; the issue date (if a patent); and all related or foreign counterpart applications and patents; and

(h)    with respect to films, photographs, tapes, computer media, and other things susceptible to chemical, biological, mechanical, or electrical reproduction, all identifying information including their character; subject matters; authors; and dates.

13.    The terms "and," "or" and "and/or" shall be construed disjunctively or conjunctively as necessary in order to bring within the scope of the request all responses which otherwise might be construed to be outside its scope.

14.    The term the "146 patent" shall mean U.S. Pat. No. 7,276,146.

15.    The term the "147 patent" shall mean U.S. Pat. No. 7,276,147.

16.    The term "patents-in-suit" shall mean the 146 patent and the 147 patent either collectively or individually, as well as any other patent(s) that may be subsequently added to the litigation.

17.    The term "Complaint" shall mean Plaintiffs' "Complaint for Patent Infringement" filed by Plaintiffs in this action on or about November 21, 2007, as well as any amended complaints that may be filed.

18.     The term "Answer" shall mean "Abbott's Answer and Counterclaim to Plaintiffs' Complaint for Patent Infringement" filed on or about January 11, 2008, as well as any amended answers that may be filed.

19.     The terms "prior art" includes, by way of example and without limitation, any subject matter that you assert may be encompassed by 35 U.S.C. §103 and/or any subdivision of 35 U.S.C. §102.

20.     The term "Electrochemical Sensor" shall mean any sensor device capable of being used to determine the concentration of glucose in a blood sample, including but not necessarily limited to the specific electrochemical sensors identified in the Complaint. The Electrochemical Sensors includes (without limitation) test strips or equivalent devices alone or in combination with a meter or equivalent device capable of receiving the test strips and participating in the determination of the concentration of glucose in a blood sample.

21.     The term "WO 626 application" shall mean the PCT Patent Application published as International Publication No. WO 00/20626.

**INSTRUCTIONS**

1.     If you produce responsive documents pursuant to Federal Rule of Civil Procedure 33(d), the original and each non-identical copy of each document or other tangible thing requested herein which is in your possession, custody or control, or that of any of your agents, attorneys, consultants, advisors, associates, accountants, employees, representatives or investigators, is to be produced, including company, department, and personal files. If the original or original carbon copy is not in your possession, custody or control, or that of your agents, attorneys, consultants, advisors, associates, accountants, employees, representatives or investigators, a full, clear, legible copy thereof is to be produced.

7

2.    If any portion of any Interrogatory refers to information of which Defendant were once aware but is no longer within Defendant's knowledge, Defendant is requested to identify the name, telephone number, and address of the person last known by Defendant to have knowledge of such information.

3.    Each Interrogatory shall be responded to fully unless it is in good faith objected to, in which event every reason for your objection shall be stated in detail. If an objection pertains to only a portion of an Interrogatory, or a word, phrase or clause contained within it, you are required to state your objection to that portion only and to respond to the remainder of the Interrogatory to the fullest extent possible.

4.    If you produce responsive documents pursuant to Federal Rule of Civil Procedure 33(d), each document and thing produced is to be (i) identified in your written response hereto to correspond with the categories of the Interrogatory in response to which it is being produced or (ii) produced as it is kept in the usual course of business, including all file folders, binder, notebooks and other devices by which each such document or this is organized or separated.

5.    If the attorney-client privilege or work product immunity is asserted as to any information requested in an Interrogatory, set forth your response hereto with respect to all information for which a claim of privilege is made such that the document or thing is not produced in full:

(a)    the specific ground(s) for not producing the document or thing in full;

(b)    the bases for such a claim of privilege or immunity, including a statement of sufficient relevant facts and circumstances that will explain the basis of the claim of privilege and will permit the adjudication of the propriety of the claim of privilege; and

(c)    fully identify the information, document, or material for which such

8

privilege or immunity is asserted, including the type of any document or thing withheld (e.g.,
letter, memorandum, etc.); the subject matter of any document, communication, or other
information withheld; the date of recording, creating or otherwise preparing any document or
thing; the name of any document or thing; the name, address and title of its author or creator; the
name, address and title of each person (other than stenographic or clerical assistants)
participating in the preparation or creation of any document or thing; the name, address and title
of each addressee, recipient and/or custodian of the document or thing, or a copy of the
document or thing; the name, address and title of each person to whom the contents of the
information or any portion thereof have heretofore been communicated by copy, exhibition,
reading or summarization; and the location(s) where, if at all, information has been redacted on
any document or thing thus produced.

     6.     No Interrogatory or subpart hereof shall be construed as a limitation on any other
Interrogatory or subpart hereof.

     7.     Any word written in the singular herein shall be construed as plural or *vice versa*
as necessary to bring within the scope of the Interrogatory all responses which otherwise might
be construed to be outside its scope.

## INTERROGATORIES

## INTERROGATORY NO. 1

     Identify each model or type of Electrochemical Sensor that Defendant has made, used,
sold, offered for sale in or imported into the United States having a capillary chamber that holds
a blood sample volume of 1 µl or less and providing a readout of the glucose concentration of the
blood sample within 10 seconds or less after the blood sample enters the capillary chamber,
including (i) an identification of the model number; (ii) all revisions of the model numbers (to

the extent any revision exists); (iii) the dates of manufacture, use, sale, offer for sale or import of the model; (iv) all documents and things (including, but not limited to, engineering drawings, manufacturing drawings or other schematic drawings, specifications, orders and instruction manuals) that illustrate and/or describe the design, structure and operation of each model or type identified in response to this Interrogatory; and (v) the identity of the persons most knowledgeable regarding the design, structure and operation of each such model or type of Electrochemical Sensor.

**INTERROGATORY NO. 2**

For each Electrochemical Sensor identified in response to Interrogatory No. 1, describe Defendant's research, development and design effort for such Electrochemical Sensor and the events leading to the research, development, and design of such Electrochemical Sensor, including but not limited to an identification of (i) Defendant's corporate structure relating to the research, development or design of such Electrochemical Sensors (including but not limited to all subsidiaries, predecessors and/or other related business entities owned, partially owned, controlled and/or partially controlled by Defendant; and the function of all departments, groups, units and/or divisions within each such entity pertaining to such Electrochemical Sensor); (ii) each person (including third parties) who had a role in and the role that each such person had in the research, development or design of such Electrochemical Sensor; (iii) where such Electrochemical Sensor was researched, developed and/or designed; (iv) all documents that relate to the research, development or design of such Electrochemical Sensor, including any licenses or other agreements with third parties; and (v) the three most knowledgeable persons regarding any facts that relate to the (a) research, (b) development and (c) design of such Electrochemical Sensors.

10

**INTERROGATORY NO. 3**

For each Electrochemical Sensor identified in response to Interrogatory No. 1, identify all documents that constitute, refer to or related to sales and/or marketing material or literature (whether or not such material or literature was ever used and/or distributed) which relates to the sample volume for such Electrochemical Sensor and/or the time required to determine the concentration of glucose in a blood sample with such Electrochemical Sensor, and identify the person or persons responsible for the drafting of such material or literature.

**INTERROGATORY NO. 4**

If Defendant has asserted an affirmative defense or counterclaim alleging, or otherwise asserts, that any Electrochemical Sensor identified in response to Interrogatory No. 1 does not infringe any claim of either the 146 patent or the 147 patent, identify the factual basis for such affirmative defense, counterclaim or assertion, including but not limited to an identification of (i) each such allegedly non-infringing Electrochemical Sensor, including the model number, all revision numbers of the model (to the extent any revision numbers exist); (ii) each claim of each patent allegedly not infringed for each such Electrochemical Sensor; (iii) each claim limitation that is alleged to be absent from use of the Electrochemical Sensor or otherwise missing from the Electrochemical Sensor; (iv) whether such specific claim limitation is missing literally or under the doctrine of equivalents, or both; (v) all documents and things upon which Defendant relies in support of any such assertion; and (vi) separately for each such allegedly non-infringing Electrochemical Sensor, the three persons having the most knowledge of the facts relating to each such assertion.

11

**INTERROGATORY NO. 5**

For each claim that Defendant alleges in response to Interrogatory No. 4 is not infringed and for each claim limitation that Defendant alleges in response to Interrogatory No. 4 is missing from the Electrochemical Sensors identified in response to Interrogatory No. 1, identify in detail the basis for such allegation, including but not limited to a description of (i) Defendant's proposed construction of such claim limitation or element; (ii) all passages of the claims, specification, prosecution history or other intrinsic evidence that allegedly supports Defendant's position; (iii) all prior art that Defendant asserts supports its proposed construction; (iv) all other extrinsic evidence that allegedly supports Defendant's position; (v) any prosecution history estoppel that Defendant asserts applies to construction of the claims of the patents-in-suit; (vi) all documents and things upon which Defendant relies in support of any such assertion; and (v) separately for each such allegedly non-infringing Electrochemical Sensor, the three persons having the most knowledge of the facts relating to each such assertion.

**INTERROGATORY NO. 6**

For each Electrochemical Sensor identified in response to Interrogatory No. 1, identify the revenues and costs associated with such product, including but not limited to an identification of (i) the date of first sale or offer for sale; (ii) Defendant's monthly unit sales volume (or if monthly information is not available, whatever other periodic reporting period is available); (iii) Defendant's total sales by unit volume and total sales dollars; (iv) the standard unit sales price(s); (v) the cost of goods sold (with an allocation of all fixed and variable costs, including but not limited to all manufacturing, administrative, overhead and marketing costs per unit); (vi)

Defendant's revenues and gross and net profits associated with such sales; (vii) each document and thing that refers or relates to such unit sales, prices, costs, revenues and profits; and (viii) the three persons most knowledgeable regarding such unit sales, prices, costs, revenues and profits.

**INTERROGATORY NO. 7**

If Defendant has asserted an affirmative defense or counterclaim alleging, or otherwise asserts, that any claim in the 146 patent and the 147 patent is invalid, set forth with particularity the entire factual and legal basis in support of such affirmative defense, counterclaim or assertion, including but not limited to an identification of (i) each claim of the patents-in-suit that Defendant asserts is invalid; (ii) for each such claim, each statutory provision that Defendant asserts renders it invalid; (iii) all facts that constitute the basis for each of Defendant's assertions of invalidity; (iv) all documents that support, refute or are inconsistent with each of Defendant's assertions of invalidity; and (v) the three most knowledgeable witnesses regarding any facts that relate to such assertion of invalidity.

**INTERROGATORY NO. 8**

If Defendant has asserted an affirmative defense or counterclaim alleging, or otherwise asserts, that any claim in the 146 patent and the 147 patent is invalid, under 35 U.S.C. § 102 and/or obvious under 35 U.S.C § 103, set forth with particularity the entire legal and factual basis for Defendant's allegation that the prior art invalidates each such claim, including but not limited to an identification of (i) each item of alleged prior art upon which Defendant relies; (ii) the date and circumstances under which each element of the alleged prior art became public; (iii) for each such claim in the 146 patent and the 147 patent, how each element, limitation or step of such claim is disclosed or taught by one or more alleged prior art references, either taken alone or in combination; (iv) for each combination of references used to support a defense or other

13

assertion of obviousness, (a) the scope and content of the prior art, (b) the differences between

the prior art and the claims at issue, (c) the level of ordinary skill in the pertinent art, (d) the

application of secondary considerations as commercial success, long felt but unsolved needs,

failure of others, etc., and (e) the teaching, motivation or suggestion to make each such

combination of references; (v) all documents that support such affirmative defense, counterclaim

or assertion and (vi) the three most knowledgeable witnesses regarding such affirmative defense

or assertion.

**INTERROGATORY NO. 9**

Separately for each claim in the 146 patent and the 147 patent, define the person having

ordinary skill in the art to which the subject matter of such claim pertains at the time the

invention of such claim was made and at the date of filing of the original application to which the

146 and 147 patents claim priority.

**INTERROGATORY NO. 10**

Describe in detail the circumstances in which Defendant first became aware of the

patents-in-suit, including, but not limited to, an identification of (i) the date on which Defendant

first became aware of each one of the patents-in-suit; (ii) the person affiliated with Defendant

who first became aware of each one of the patents-in-suit; (iii) how Defendant first became

aware of each one of the patents-in-suit; (iv) from whom or where Defendant first became aware

of each one of the patents-in-suit; (v) each and every document or thing that refers or relates to

Defendant's first awareness of each one of the patents-in-suit; and (vi) the three persons most

knowledgeable about the circumstances of Defendant's first awareness of each one of the

patents-in-suit.

**INTERROGATORY NO. 11**

Identify any license entered into by Defendant, as licensor or licensee, related to sensor devices capable of being used to determine the concentration of glucose in a blood sample, including any licenses to components of such sensor devices, including but not limited to an identification of (i) the name of the licensee or licensor; (ii) the licensed property; (iii) the terms of the license, including consideration due under the agreement, whether it involved an initial upfront or initial payment, the royalty rate and the royalty base; (iv) when such license was executed and the effective date of the agreement; and (v) the three persons most knowledgeable regarding each such license.

**INTERROGATORY NO. 12**

Describe the circumstances surrounding any opinion, written and/or oral and formal and/or informal, that Defendant has requested or received regarding validity, infringement, enforceability or liability in relation to the 146 patent or the 147 patent, including but not limited to an identification of (i) whether the opinion was written or oral and formal or informal; (ii) the dates on which the opinion was requested, begun, completed and delivered; (iii) each person involved in the formulation and delivery of the opinion (including the role each such person had in the formulation and delivery of the opinion); (iv) each person who has received, reviewed or otherwise been informed of the substance of the opinion; (v) the subject matter of the opinion; (vi) whether Defendant intends to rely on such opinion in this case; (vii) to the extent that Defendant intends to rely on such opinion, the substance of the opinion; and (viii) all documents or things that refers or relates to each opinion.

15

**INTERROGATORY NO. 13**

If Defendant has asserted an affirmative defense alleging, or otherwise asserts, that the defendants in this action are not properly joined together under Rule 20 of the Federal Rules of Civil Procedure, set forth with particularity the entire legal and factual basis for the defense or assertion.

**INTERROGATORY NO. 14**

With respect to Abbott's Third Affirmative Defense, set forth with particularity the entire legal and factual basis for the defense or defenses asserted.

**INTERROGATORY NO. 15**

With respect to the WO 626 application, describe in detail the experiments that provide the basis for the results described in each of the Examples and demonstrated in the Figures, including an identification of (i) each individual who conducted the experiments described in the Examples and demonstrated in the Figures; (ii) all documents (and the location of those documents) referring to, relating to or regarding such experiments; and (iii) with respect to the experiment described in Example 12 and shown in Figure 17, the complete protocols used to generate the results described in that Example and shown in that Figure, including but not limited to a description of the solution(s) or sample(s) used.

**INTERROGATORY NO. 16**

Identify each person who provided information concerning each response to these Interrogatories and/or the supplementation of these Interrogatories, or in response to any subsequent Interrogatories, and each person who participated in the collection and/or review of

documents and things in response to Plaintiffs' requests for production of documents and things,

and identify all documents that were reviewed or considered relating to such responses.

**INTERROGATORY NO. 17**

Identify each witness, including but not limited to fact and expert witnesses, that

Defendant may call to testify at trial or hearing, and identify all expert opinions that Defendant

may introduce at trial or a hearing.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Daniel A. Boehnen
Grantland G. Drutchas
McDonnell Boehnen Hulbert & Berghoff LLP
300 South Wacker Drive
Chicago, IL 60606
(312) 913-0001


Dated:  January 23, 2008
844037

By: _____
Philip A. Rovner (#3215)
Hercules Plaza
P.O. Box 951
Wilmington, DE 19899-0951
(302) 984-6000
provner@potteranderson.com

*Attorney for Plaintiffs*
*Roche Diagnostics Operations, Inc. and*
*Corange International Limited*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I, Philip A. Rovner, hereby certify that on January 23, 2008, the within document

was served on the following counsel of record, at the addresses and in the manner

indicated:

**BY E-MAIL**

Frederick L. Cottrell, III, Esq.
Anne Shea Gaza, Esq.
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, DE 19801
cottrell@rlf.com
gaza@rlf.com

Mary W. Bourke, Esq.
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 N. Orange Street
Wilmington, DE 19801
mbourke@cblh.com

Steven J. Balick, Esq.
John G. Day, Esq.
Ashby & Geddes
500 Delaware Avenue
8th Floor
P.O. Box 1150
Wilmington, DE 19899
sbalick@ashby-geddes.com
jday@ashby-geddes.com

**BY E-MAIL**

John W. Shaw, Esq.
Jeffrey T. Castellano, Esq.
Young Conaway Stargatt & Taylor, LLP
1000 West Street, 17th Floor
Wilmington, DE 19801
jshaw@ycst.com
jcastellano@ycst.com

Rodger D. Smith, Esq.
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
rsmith@mnat.com

**BY E-MAIL**

Edward A. Mas, II, Esq.
Stephen F. Sherry, Esq.
Kirk Vander Leest, Esq.
James M. Hafertepe, Esq.
Merle S. Elliott, Esq.
McAndrews, Held & Malloy, Ltd.
500 West Madison Street
34th Floor
Chicago, IL  60661
emas@mcandrews-ip.com
ssherry@mcandrews-ip.com
kvanderleest@mcandrews-ip.com
jhafertepe@mcandrews-ip.com
melliott@mcandrews-ip.com

Kenneth P. George, Esq.
Joseph M. Casino, Esq.
Amster, Rothstein & Ebenstein LLP
90 Park Avenue
New York, NY  10016
kgeorge@arelaw.com
jcasino@arelaw.com

Bradford J. Badke, Esq.
Sona De, Esq.
Michael Kahn, Esq.
Ropes & Gray LLP
1211 Avenue of the Americas
New York, NY 10036-8704
Jim.badke@ropesgray.com
Sona.de@ropesray.com
Michael.kahn@ropesgray.com

**BY E-MAIL**

Wesley E. Overson, Esq.
Rachel Krevans, Esq.
Jason R. Bartlett, Esq.
Parisa Jorjani, Esq.
Daniel P. Muino, Esq.
Morrison & Foerster LLP
425 Market Street
San Francisco, CA 94105-2482
woverson@mofo.com
rkrevans@mofo.com
jasonbartlett@mofo.com
pjorjani@mofo.com
dmuino@mofo.com

Michael G. Adams, Esq.
Ashley L. Ellis, Esq.
Parker Poe Adams & Bernstein LLP
Three Wachovia Center, Suite 3000
401 South Tryon Street
Charlotte, NC 28202
mikeadams@parkerpoe.com
ashleyellis@parkerpoe.com

Philip A. Rovner (#3215)
Potter Anderson & Corroon LLP
Hercules Plaza
P.O. Box 951
Wilmington, Delaware 19899
(302) 984-6000
E-mail: provner@potteranderson.com

-2-

# EXHIBIT L

# THIS EXHIBIT HAS BEEN
# REDACTED IN ITS ENTIRETY

# EXHIBIT M

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROCHE DIAGNOSTICS OPERATIONS, INC., and CORANGE INTERNATIONAL LIMITED, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 07-753-JJF |
| ABBOTT DIABETES CARE, INCORPORATED, ABBOTT DIABETES CARE SALES CORPORATION, BAYER HEALTHCARE, LLC, DIAGNOSTICS DEVICES, INC., LIFESCAN, INCORPORATED, and NOVA BIOMEDICAL CORPORATION | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## DEFENDANT BAYER HEALTHCARE, LLC'S RESPONSES TO PLAINTIFFS' FIRST SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS AND THINGS (NOS. 1-119)

Defendant Bayer Healthcare, LLC ("Bayer") hereby responds to Plaintiffs' First Set of Requests to for the Production of Documents and Things (Nos. 1-119) as follows:

Pursuant to Federal Rule of Civil Procedure 34, Defendant Bayer HealthCare, LLC ("Bayer") responds and objects to Roche Diagnostics Operations, Inc.'s ("Roche") and Corange International Limited's ("Corange") (collectively "Plaintiffs") First Set of Requests to Defendant Bayer Healthcare, LLC for the Production of Documents and Things ("First Set of Requests for Production" or "Request").

## GENERAL OBJECTIONS

Bayer makes the following objections, whether or not separately set forth in response to each Request, to each and every Request in the First Set of Requests for Production:

1.    Bayer asserts that Plaintiffs' claims against Bayer are barred, in whole or in part, because the accused Bayer products are covered under the June 3, 2003 Settlement and License

1

Agreement between Bayer, Roche Diagnostics Corporation and F. Hoffmann-La Roche Ltd. Any disputes as to coverage of the products under the Settlement and License Agreement are subject to a contractual dispute resolution process, including binding arbitration, and Roche's assertion of any patents against the accused products is a violation of the Settlement and License Agreement. By responding to the First Set of Requests for Production, Bayer does not waive its right to arbitrate the coverage issues under the Settlement and License Agreement.

2.      Bayer's responses to the First Set of Requests for Production are made to the best of Bayer's present knowledge, information, and belief. These responses are at all times subject to such additional or different information that discovery or investigation may disclose. Bayer reserves its right to amend these responses in accordance with Rule 26(e)(1) of the Federal Rules of Civil Procedure to incorporate additional information, and to offer such additional information at trial or at any hearing or other proceeding in this case.

3.      Bayer does not waive its right to challenge the admissibility into evidence of any documents provided in response to the First Set of Requests for Production. Bayer also does not waive its right to raise all questions of authenticity, relevance, materiality and privilege with regard to the documents provided in response to the First Set of Requests for Production, which may arise at trial or at any hearing or other proceeding in this case. Moreover, the assertion by Bayer of various general objections should not be deemed as a waiver of other objections that might be applicable or become so at some future time.

4.      All confidential documents produced in response to the First Set of Requests for Production shall be subject to any Protective Order entered in this case. Until a Protective Order is entered, any confidential documents produced by Bayer shall be disclosed to outside counsel only, under Delaware Local Rule 26.2.

5.      Bayer objects to all Definitions, Instructions and Requests contained in the First Set of Requests for Production to the extent that such Definitions, Instructions and Requests purport to impose any obligation beyond those set forth in the Federal Rules of Civil Procedure and the Local Rules of the District of Delaware. In responding to the First Set of Requests for

2

Production, Bayer will provide only such documents as may be required and proper under the Federal Rules of Civil Procedure and the Local Rules of the District of Delaware.

      6.      Bayer objects to each Request to the extent that it seeks documents protected from discovery by the attorney-client privilege, the attorney work product doctrine and/or any other applicable privilege or immunity. Nothing contained in these responses is intended to be, or shall be deemed to be, a waiver of any such privilege or protection. To the extent any privileged documents are provided in response to these Requests, the provision of these documents shall not constitute waiver of the privilege as to any such documents or related information, and Plaintiffs shall return any such documents upon request.

      7.      Bayer objects to each Request to the extent it seeks documents that are not relevant to the subject matter of this litigation and do not appear to be reasonably calculated to lead to the discovery of admissible evidence. To the extent that Bayer provides documents in response to these Requests, Bayer does not concede that the documents provided are relevant to this litigation or admissible at any hearing or trial.

      8.      Bayer objects to all Requests that do not define a relevant time period, as such Requests are overbroad, oppressive and unduly burdensome. The asserted patents, U.S. Patent No. 7,276,146 (the "'146 patent") and U.S. Patent No. 7,276,147 (the "'147 patent"), were issued on October 2, 2007. Products sold by Bayer prior to October 2, 2007, and information thereon, are not relevant to Plaintiffs' claims.

      9.      Bayer objects to each Request to the extent it seeks documents that are not "within the possession, custody, or control" of Bayer.

      10.      Bayer objects to each Request as overbroad and unduly burdensome to the extent that Plaintiffs seek documents from an unreasonable number of employees and third parties, in excess of Bayer's obligation under the Federal Rules. Bayer has not been afforded sufficient time to determine the volume of documents which may be responsive to Plaintiffs' requests. Once Bayer has determined the volume of potentially responsive documents, Bayer will stablish a reasonable scope of search.

11.     Bayer objects to Plaintiffs' definitions of "Defendant," "Bayer," "you" and "your" (*see* Definition No. 4) to the extent such definitions are overbroad in encompassing Bayer entities that are not in the business of making, using, selling or offering for sale the products accused in this litigation.  Bayer also objects to the inclusion of Bayer's "attorneys" within these definitions, insofar as such definitions seek information protected by the attorney-client privilege and/or work product doctrine.

12.     In providing these responses, Bayer has interpreted the Requests utilizing ordinary meanings of words and has expended reasonable efforts to identify and convey documents that appear responsive.  To the extent that the Requests purport to seek documents other than as so interpreted, Bayer objects on the ground that the Requests are vague, ambiguous and/or overbroad.

13.     Bayer objects to the use of specific terms that are found in the claims of the '146 and '147 patents, to the extent these terms will be subject to construction by the Court during the *Markman* process.

14.     Bayer objects to the definition of "Identified Electrochemical Sensors" to the extent that it renders the Requests overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

15.     Bayer objects to Plaintiffs' Requests to the extent that they seek documents relating to the use, sale, offers for sale, distribution, licensing, or any other transaction outside the United States. Such a request is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

16.     Bayer objects to Plaintiffs' Requests to the extent that they seek publicly available documents that can be obtained as easily by Plaintiffs as by Bayer and to the extent they are already in the possession of Plaintiffs.

17.     Bayer objects to each document request as premature, to the extent that it does not comport with the Rule 16 Scheduling Order and attempts to seek information irrelevant to infringement or prior invention, the sole subjects of discovery during this phase of the case.

4

Bayer will not produce any documents in Phase I that are not relevant to infringement or prior invention.

18.    By agreeing to produce documents, Bayer makes no representation that any such document exists. It represents only that the documents will be produced if they exist, can be located with reasonable diligence, and are not otherwise protected from disclosure.

19.    Bayer states these objections without waiving or intending to waive, and on the contrary preserving and intending to preserve:

(a)    all objections to competency, relevancy, materiality, privilege, and admissibility as evidence for any purpose of these responses, the documents produced, or the subject matter thereof, in any subsequent proceeding in this litigation or in any other action;

(b)    the right to object on any ground to the use of any of these responses, documents produced, or the subject matter thereof, in any subsequent proceeding in this litigation or in any other action;

(c)    the right to object on any ground at any time to a demand for also responses to these or any other discovery procedures involving or relating to the subject matter of the document requests directed to Bayer; and the right to object on any ground to any other or any future discovery requests.

## SPECIFIC OBJECTIONS AND RESPONSES

### REQUEST FOR PRODUCTION NO. 1:

All documents and things concerning, referring to or relating to the research, design and/or development of Defendant's Identified Electrochemical Sensors.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 1:

Bayer objects to this request to the extent it calls for documents protected by the attorney-client privilege, the attorney work product doctrine and/or any other applicable privilege, including the joint defense privilege. Bayer objects to this request as premature, to the extent that it does not comport with the Rule 16 Scheduling Order and attempts to seek information irrelevant to infringement or prior invention, the sole subjects of discovery during this phase of

5

the case. Bayer will not produce any documents in Phase I that are not relevant to infringement

or prior invention. Bayer also objects to this request as cumulative, overbroad, unduly

burdensome, and not relevant or reasonably calculated to lead to the discovery of admissible

evidence. Bayer also objects to this request on the grounds that it is vague and ambiguous to the

extent that it uses the vague and ambiguous words and phrases "referring to," "relating to," and

"Identified Electrochemical Sensors." Bayer also incorporates the General Objections set forth

above.

      Subject to these objections and its General Objections, and after conducting a reasonable

search, Bayer will produce relevant, non-privileged documents (or portions thereof) sufficient to

show research and / or development work on the accused products ASCENSIA® CONTOUR®

and BREEZE® 2, provided that Bayer determines that such documents are in its possession,

custody or control.

### REQUEST FOR PRODUCTION NO. 2:

      Every laboratory notebook or note, technical report, research report, progress report or
other document or thing referring or relating to laboratory work on, research on, design and/or
development of the Identified Electrochemical Sensors.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 2:

      Bayer objects to this request to the extent it calls for documents protected by the attorney-

client privilege, the attorney work product doctrine and/or any other applicable privilege,

including the joint defense privilege. Bayer objects to this request as premature, to the extent

that it does not comport with the Rule 16 Scheduling Order and attempts to seek information

irrelevant to infringement or prior invention, the sole subjects of discovery during this phase of

the case. Bayer will not produce any documents in Phase I that are not relevant to infringement

or prior invention. Bayer also objects to this request as cumulative, overbroad, unduly

burdensome, and not relevant or reasonably calculated to lead to the discovery of admissible

evidence. Bayer also objects to this request on the grounds that it is vague and ambiguous to the

extent that it uses the vague and ambiguous words and phrases "referring to," "relating to," and

"Identified Electrochemical Sensors." Bayer also incorporates the General Objections set forth above.

Subject to these objections and its General Objections, and after conducting a reasonable search, Bayer will produce relevant, non-privileged documents (or portions thereof) sufficient to show research and / or development work on the accused products ASCENSIA® CONTOUR® and BREEZE® 2, provided that Bayer determines that such documents are in its possession, custody or control.

## REQUEST FOR PRODUCTION NO. 3:

All documents and things concerning, referring to or relating to the research, design and/or development related to the sample volume used with Defendant's Identified Electrochemical Sensors.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 3:

Bayer objects to this request to the extent it calls for documents protected by the attorney-client privilege, the attorney work product doctrine and/or any other applicable privilege, including the joint defense privilege.   Bayer objects to this request as premature, to the extent that it does not comport with the Rule 16 Scheduling Order and attempts to seek information irrelevant to infringement or prior invention, the sole subjects of discovery during this phase of the case. Bayer will not produce any documents in Phase I that are not relevant to infringement or prior invention. Bayer also objects to this request as cumulative, overbroad, unduly burdensome, and not relevant or reasonably calculated to lead to the discovery of admissible evidence. Bayer also objects to this request on the grounds that it is vague and ambiguous to the extent that it uses the vague and ambiguous words and phrases "concerning," "referring to," "relating to," "sample volume," and "Identified Electrochemical Sensors." Bayer also incorporates the General Objections set forth above.

Subject to these objections and its General Objections, and after conducting a reasonable search, Bayer will produce relevant, non-privileged documents (or portions thereof) sufficient to

7

show the sample volume of the accused products ASCENSIA® CONTOUR® and BREEZE® 2,

provided that Bayer determines that such documents are in its possession, custody or control.

**REQUEST FOR PRODUCTION NO. 4:**

All documents concerning, referring to or relating to any tests, studies or experiments related to the sample volume used with Defendant's Identified Electrochemical Sensors.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

Bayer objects to this request to the extent it calls for documents protected by the attorney-

client privilege, the attorney work product doctrine and/or any other applicable privilege,

including the joint defense privilege.    Bayer objects to this request as premature, to the extent

that it does not comport with the Rule 16 Scheduling Order and attempts to seek information

irrelevant to infringement or prior invention, the sole subjects of discovery during this phase of

the case.  Bayer will not produce any documents in Phase I that are not relevant to infringement

or prior invention.  Bayer also objects to this request as cumulative, overbroad, unduly

burdensome, and not relevant or reasonably calculated to lead to the discovery of admissible

evidence.  Bayer also objects to this request on the grounds that it is vague and ambiguous to the

extent that it uses the vague and ambiguous words and phrases "concerning," "referring to,"

"relating to," "sample volume," and "Identified Electrochemical Sensors."  Bayer also

incorporates the General Objections set forth above.

Subject to these objections and its General Objections, and after conducting a reasonable

search, Bayer will produce relevant, non-privileged documents (or portions thereof) sufficient to

show the sample volume of the accused products ASCENSIA® CONTOUR® and BREEZE® 2,

provided that Bayer determines that such documents are in its possession, custody or control.

**REQUEST FOR PRODUCTION NO. 5:**

All documents and things concerning, referring to or relating to the research, design and/or development related to the time required to determine the concentration of glucose in a blood sample with Defendant's Identified Electrochemical Sensors.

8

**RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

Bayer objects to this request to the extent it calls for documents protected by the attorney-client privilege, the attorney work product doctrine and/or any other applicable privilege, including the joint defense privilege.   Bayer objects to this request as premature, to the extent that it does not comport with the Rule 16 Scheduling Order and attempts to seek information irrelevant to infringement or prior invention, the sole subjects of discovery during this phase of the case.  Bayer will not produce any documents in Phase I that are not relevant to infringement or prior invention.  Bayer also objects to this request as cumulative, overbroad, unduly burdensome, and not relevant or reasonably calculated to lead to the discovery of admissible evidence.  Bayer also objects to this request on the grounds that it is vague and ambiguous to the extent that it uses the vague and ambiguous words and phrases "concerning," "referring to," "relating to," "time required to determine the concentration of glucose," and "Identified Electrochemical Sensors."  Bayer also incorporates the General Objections set forth above.

Subject to these objections and its General Objections, and after conducting a reasonable search, Bayer will produce relevant, non-privileged documents (or portions thereof) sufficient to show the test times of the accused products ASCENSIA® CONTOUR® and BREEZE® 2, provided that Bayer determines that such documents are in its possession, custody or control.

**REQUEST FOR PRODUCTION NO. 6:**

All documents concerning, referring to or relating to any tests, studies or experiments related to the time required to determine the concentration of glucose in a blood sample with Defendant's Identified Electrochemical Sensors.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

Bayer objects to this request to the extent it calls for documents protected by the attorney-client privilege, the attorney work product doctrine and/or any other applicable privilege, including the joint defense privilege.   Bayer objects to this request as premature, to the extent that it does not comport with the Rule 16 Scheduling Order and attempts to seek information irrelevant to infringement or prior invention, the sole subjects of discovery during this phase of the case.  Bayer will not produce any documents in Phase I that are not relevant to infringement

9

or prior invention. Bayer also objects to this request as cumulative, overbroad, unduly burdensome, and not relevant or reasonably calculated to lead to the discovery of admissible evidence. Bayer also objects to this request on the grounds that it is vague and ambiguous to the extent that it uses the vague and ambiguous words and phrases "concerning," "referring to," "relating to," "time required to determine the concentration of glucose," and "Identified Electrochemical Sensors." Bayer also incorporates the General Objections set forth above.

Subject to these objections and its General Objections, and after conducting a reasonable search, Bayer will produce relevant, non-privileged documents (or portions thereof) sufficient to show the test times of the accused products ASCENSIA® CONTOUR® and BREEZE® 2, provided that Bayer determines that such documents are in its possession, custody or control.

## REQUEST FOR PRODUCTION NO. 7:

All documents and things concerning, referring to or relating to any inspection, review, testing, experimenting, operation, disassembly, analysis or reverse engineering of any Electrochemical Sensors having a capillary chamber that holds a blood sample volume of 1 μl or less and provides a readout of the glucose concentration of the blood sample within 10 seconds or less after the blood sample enters the capillary chamber made, used, offered for sale or sold by Plaintiffs or any other person.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 7:

Bayer objects to this request to the extent it calls for documents protected by the attorney-client privilege, the attorney work product doctrine and/or any other applicable privilege, including the joint defense privilege. Bayer objects to this request as premature, to the extent that it does not comport with the Rule 16 Scheduling Order and attempts to seek information irrelevant to infringement or prior invention, the sole subjects of discovery during this phase of the case. Bayer will not produce any documents in Phase I that are not relevant to infringement or prior invention. Bayer also objects to this request as cumulative, overbroad, unduly burdensome, and not relevant or reasonably calculated to lead to the discovery of admissible evidence. Bayer also objects to this request on the grounds that it is vague and ambiguous to the extent that it uses the vague and ambiguous words and phrases "concerning," "referring," and

sf-2461958

"relating." Bayer further objects to the use of specific terms (for example, "capillary chamber") that are found in the claims of the '146 and '147 patents as vague and ambiguous and not defined in the First Set of Requests for Production, to the extent these terms will be subject to construction by the Court during the *Markman* process. Bayer also incorporates the General Objections set forth above.

Subject to these objections and its General Objections, and after conducting a reasonable search, Bayer will produce relevant, non-privileged documents (or portions thereof) sufficient to show the structure and function of the accused ASCENSIA® CONTOUR® and BREEZE® 2 products and sufficient to show prior invention of products having a blood sample volume of 1 µL or less and a test time of 10 seconds or less, provided that Bayer determines that such documents are in its possession, custody or control.

### REQUEST FOR PRODUCTION NO. 8:

All documents and things concerning, referring to or relating to any submissions, filings or communications with any state or federal regulatory agency relating to the Identified Electrochemical Sensors.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 8:

Bayer objects to this request to the extent it calls for documents protected by the attorney-client privilege, the attorney work product doctrine and/or any other applicable privilege, including the joint defense privilege. Bayer objects to this request as premature, to the extent that it does not comport with the Rule 16 Scheduling Order and attempts to seek information irrelevant to infringement or prior invention, the sole subjects of discovery during this phase of the case. Bayer will not produce any documents in Phase I that are not relevant to infringement or prior invention. Bayer also objects to this request as cumulative, overbroad, unduly burdensome, and not relevant or reasonably calculated to lead to the discovery of admissible evidence. Bayer also objects to this request on the grounds that it is vague and ambiguous to the extent that it uses the vague and ambiguous words and phrases "concerning," "referring," and "relating." Bayer also incorporates the General Objections set forth above.

Subject to these objections and its General Objections, and after conducting a reasonable search, Bayer will produce relevant, non-privileged copies (or portions thereof) of the FDA 510(k) applications and approval letters for the ASCENCIA® CONTOUR® and BREEZE® 2 products, provided that Bayer determines that such documents are in its possession, custody or control.

### REQUEST FOR PRODUCTION NO. 9:

All documents and things concerning, referring to or relating to Defendant's decision to research, design, develop, manufacture, import, sell or offer for sale any Electrochemical Sensors having a capillary chamber that holds a blood sample volume of 1 µl or less and providing a readout of the glucose concentration of the blood sample within 10 seconds or less after the blood sample enters the capillary chamber.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 9:

Bayer objects to this request to the extent it calls for documents protected by the attorney-client privilege, the attorney work product doctrine and/or any other applicable privilege, including the joint defense privilege. Bayer also objects to this request as cumulative, overbroad, unduly burdensome, and not relevant or reasonably calculated to lead to the discovery of admissible evidence. Bayer also objects to this request on the grounds that it is vague and ambiguous to the extent that it uses the vague and ambiguous words "concerning," "referring," and "relating." Bayer further objects to the use of specific terms (for example, "capillary chamber") that are found in the claims of the '146 and '147 patents as vague and ambiguous and not defined in the First Set of Requests for Production, to the extent these terms will be subject to construction by the Court during the *Markman* process. Bayer also incorporates the General Objections set forth above.

Bayer also objects that the information sought in this request does not relate to infringement or prior invention, the sole subjects of discovery during this phase of the case under the Court's Rule 16 Scheduling Order. Any requests on subjects other than infringement and prior invention must be served at the appropriate time according to the Court's Scheduling Order. To the extent that this request is premature, Bayer will not respond at this time.

sf-2461958

## REQUEST FOR PRODUCTION NO. 10:

All documents and things concerning, referring to, relating to or constituting minutes, memos or other records of meetings of directors, officers, employees and/or other personnel of Defendant where Electrochemical Sensors having a capillary chamber that holds a blood sample volume of 1 μl or less were discussed referenced or considered in any way.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 10:

Bayer objects to this request to the extent it calls for documents protected by the attorney-client privilege, the attorney work product doctrine and/or any other applicable privilege, including the joint defense privilege.   Bayer objects to this request as premature, to the extent that it does not comport with the Rule 16 Scheduling Order and attempts to seek information irrelevant to infringement or prior invention, the sole subjects of discovery during this phase of the case.  Bayer will not produce any documents in Phase I that are not relevant to infringement or prior invention.  Bayer also objects to this request as cumulative, overbroad, unduly burdensome, and not relevant or reasonably calculated to lead to the discovery of admissible evidence.  Bayer also objects to this request on the grounds that it is vague and ambiguous to the extent that it uses the vague and ambiguous words and phrases "concerning," "referring," "relating," "discussed," "referenced," and "considered." Bayer further objects to the use of specific terms (for example, "capillary chamber") that are found in the claims of the '146 and '147 patents as vague and ambiguous and not defined in the First Set of Requests for Production, to the extent these terms will be subject to construction by the Court during the *Markman* process.  Bayer also incorporates the General Objections set forth above.

Subject to these objections and its General Objections, and after conducting a reasonable search, Bayer will produce relevant, non-privileged copies (or portions thereof) of documents sufficient to show prior invention of products having a blood sample volume of 1 μl or less and a test time of 10 seconds or less, provided that Bayer determines that such documents are in its possession, custody or control.

13

sf-2461958

**REQUEST FOR PRODUCTION NO. 11:**

All documents and things concerning, referring to, relating to or constituting minutes, memos or other records of meetings of directors, officers, employees and/or other personnel of Defendant where Electrochemical Sensors which provide a readout of the glucose concentration of the blood sample within 10 seconds or less after the blood sample enters the capillary chamber were discussed referenced or considered in any way.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**

Bayer objects to this request to the extent it calls for documents protected by the attorney-client privilege, the attorney work product doctrine and/or any other applicable privilege, including the joint defense privilege.    Bayer objects to this request as premature, to the extent that it does not comport with the Rule 16 Scheduling Order and attempts to seek information irrelevant to infringement or prior invention, the sole subjects of discovery during this phase of the case.  Bayer will not produce any documents in Phase I that are not relevant to infringement or prior invention.  Bayer also objects to this request as cumulative, overbroad, unduly burdensome, and not relevant or reasonably calculated to lead to the discovery of admissible evidence.  Bayer also objects to this request on the grounds that it is vague and ambiguous to the extent that it uses the vague and ambiguous words and phrases "concerning," "referring," "relating," "discussed," "referenced," and "considered."  Bayer further objects to the use of specific terms (for example, "capillary chamber") that are found in the claims of the '146 and '147 patents as vague and ambiguous and not defined in the First Set of Requests for Production, to the extent these terms will be subject to construction by the Court during the *Markman* process.  Bayer also incorporates the General Objections set forth above.

Subject to these objections and its General Objections, and after conducting a reasonable search, Bayer will produce relevant, non-privileged copies (or portions thereof) of documents sufficient to show prior invention of products having a blood sample volume of 1 μL or less and a test time of 10 seconds or less, provided that Bayer determines that such documents are in its possession, custody or control.

14

**REQUEST FOR PRODUCTION NO. 12:**

All documents and things concerning, referring to or relating to any utility, advantages, value or business significance of any Electrochemical Sensors having a capillary chamber that holds a blood sample volume of 1 µl or less.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 12:**

Bayer objects to this request to the extent it calls for documents protected by the attorney-client privilege, the attorney work product doctrine and/or any other applicable privilege, including the joint defense privilege. Bayer also objects to this request as cumulative, overbroad, unduly burdensome, and not relevant or reasonably calculated to lead to the discovery of admissible evidence. Bayer also objects to this request on the grounds that it is vague and ambiguous to the extent that it uses the vague and ambiguous words and phrases "concerning," "referring," "relating," "utility," "advantages," "value," and "business significance." Bayer further objects to the use of specific terms (for example, "capillary chamber") that are found in the claims of the '146 and '147 patents as vague and ambiguous and not defined in the First Set of Requests for Production, to the extent these terms will be subject to construction by the Court during the *Markman* process. Bayer also incorporates the General Objections set forth above.

Bayer also objects that the information sought in this request does not relate to infringement or prior invention, the sole subjects of discovery during this phase of the case under the Court's Rule 16 Scheduling Order. Any requests on subjects other than infringement and prior invention must be served at the appropriate time according to the Court's Scheduling Order. To the extent that this request is premature, Bayer will not respond at this time.

**REQUEST FOR PRODUCTION NO. 13:**

All documents and things concerning, referring to or relating to any utility, advantages, value or business significance of any Electrochemical Sensors which provide a readout of the glucose concentration of the blood sample within 10 seconds or less after the blood sample enters the capillary chamber.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

Bayer objects to this request to the extent it calls for documents protected by the attorney-client privilege, the attorney work product doctrine and/or any other applicable privilege,

sf-2461958

including the joint defense privilege. Bayer also objects to this request as cumulative, overbroad, unduly burdensome, and not relevant or reasonably calculated to lead to the discovery of admissible evidence. Bayer also objects to this request on the grounds that it is vague and ambiguous to the extent that it uses the vague and ambiguous words and phrases "concerning," "referring," "relating," "utility," "advantages," "value," and "business significance." Bayer further objects to the use of specific terms (for example, "capillary chamber") that are found in the claims of the '146 and '147 patents as vague and ambiguous and not defined in the First Set of Requests for Production, to the extent these terms will be subject to construction by the Court during the *Markman* process. Bayer also incorporates the General Objections set forth above.

Bayer also objects that the information sought in this request does not relate to infringement or prior invention, the sole subjects of discovery during this phase of the case under the Court's Rule 16 Scheduling Order. Any requests on subjects other than infringement and prior invention must be served at the appropriate time according to the Court's Scheduling Order. Because this request is premature, Bayer will not respond at this time.

### REQUEST FOR PRODUCTION NO. 14:

Organizational charts or other documents for the period from 2002 to the present detailing the corporate structure, management, chain of command and all officers, directors or other employees or personnel of Defendant with any responsibility for the design, engineering, research, development, testing, manufacturing, commercialization, sales, marketing, competitive product analysis or legal analysis of Identified Electrochemical Sensors.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 14:

Bayer objects to this request to the extent it calls for documents protected by the attorney-client privilege, the attorney work product doctrine and/or any other applicable privilege, including the joint defense privilege. Bayer objects to this request as premature, to the extent that it does not comport with the Rule 16 Scheduling Order and attempts to seek information irrelevant to infringement or prior invention, the sole subjects of discovery during this phase of the case. Bayer will not produce any documents in Phase I that are not relevant to infringement or prior invention. Bayer also objects to this request as cumulative, overbroad, unduly

sf-2461958

burdensome, and not relevant or reasonably calculated to lead to the discovery of admissible evidence. Bayer also incorporates the General Objections set forth above.

Subject to these objections and its General Objections, and after conducting a reasonable search, Bayer will produce relevant, non-privileged organization charts (or portions thereof) that are current or pertinent to the time frames at issue in this litigation, for those divisions of Bayer Healthcare, LLC substantially involved in activities relevant to the design, engineering, research, development or testing of the accused ASCENSIA® CONTOUR® and BREEZE® 2 products, provided that Bayer determines that such documents are in its possession, custody or control.

**REQUEST FOR PRODUCTION NO. 15:**

The most current curriculum vitae for the ten people primarily responsible for the design, engineering, research, development or testing of the Identified Electrochemical Sensors.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 15:**

Bayer objects to this request to the extent that it calls for documents that are not in Bayer's possession, custody, or control. Bayer objects to this request as premature, to the extent that it does not comport with the Rule 16 Scheduling Order and attempts to seek information irrelevant to infringement or prior invention, the sole subjects of discovery during this phase of the case. Bayer will not produce any documents in Phase I that are not relevant to infringement or prior invention. Bayer also objects to this request on the grounds that it is vague and ambiguous to the extent that it uses the vague and ambiguous words and phrases "primarily responsible." Bayer also incorporates the General Objections set forth above.

Subject to these objections and its General Objections, and after conducting a reasonable search, Bayer will produce relevant, non-privileged curriculum vitae (or portions thereof) of 10 persons substantially involved in the design, engineering, research, development or testing relevant to the accused ASCENSIA® CONTOUR® and BREEZE® 2 products, provided that Bayer determines that such documents are in its possession, custody or control.

17

## REQUEST FOR PRODUCTION NO. 16:

All documents and things identifying the names and titles of all persons having any role in the research, design and/or development of any of Defendant's Identified Electrochemical Sensors.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 16:

Bayer objects to this request to the extent it calls for documents protected by the attorney-client privilege, the attorney work product doctrine and/or any other applicable privilege, including the joint defense privilege. Bayer objects to this request as premature, to the extent that it does not comport with the Rule 16 Scheduling Order and attempts to seek information irrelevant to infringement or prior invention, the sole subjects of discovery during this phase of the case. Bayer will not produce any documents in Phase I that are not relevant to infringement or prior invention. Bayer also objects to this request as cumulative, overbroad, unduly burdensome, and not relevant or reasonably calculated to lead to the discovery of admissible evidence. Bayer also objects to this request on the grounds that it is vague and ambiguous to the extent that it uses the vague and ambiguous words and phrases "any role." Bayer objects to this request as overbroad and unduly burdensome as written since it would require Bayer to conduct a search for responsive documents broader than that which is required under the Federal Rules. Once Bayer has determined the volume of potentially responsive documents, Bayer will establish a reasonable scope of search. Bayer also incorporates the General Objections set forth above.

Subject to these objections and its General Objections, and after conducting a reasonable search, Bayer will produce relevant, non-privileged documents identifying the names and titles of persons having a significant role in the research, design and/or development relevant to the accused ASCENSIA® CONTOUR® and BREEZE® 2 products, provided that Bayer determines that such documents are in its possession, custody or control.

## REQUEST FOR PRODUCTION NO. 17:

The most current curriculum vitae for the ten people primarily responsible for the commercialization, sales, marketing or competitive product analysis of the Identified Electrochemical Sensors.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 17:

Bayer objects to this request as cumulative, overbroad, unduly burdensome, and not relevant or reasonably calculated to lead to the discovery of admissible evidence. Bayer also objects to this request on the grounds that it is vague and ambiguous to the extent that it uses the vague and ambiguous words and phrases "responsible" "competitive product analysis." Bayer also incorporates the General Objections set forth above.

Bayer also objects that the information sought in this request does not relate to infringement or prior invention, the sole subjects of discovery during this phase of the case under the Court's Rule 16 Scheduling Order. Any requests on subjects other than infringement and prior invention must be served at the appropriate time according to the Court's Scheduling Order. Because this request is premature, Bayer will not respond at this time.

## REQUEST FOR PRODUCTION NO. 18:

All documents and things identifying the names and titles of all persons having any role in the sales and/or marketing of any of Defendant's Identified Electrochemical Sensors.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 18:

Bayer objects to this request as cumulative, overbroad, unduly burdensome, and not relevant or reasonably calculated to lead to the discovery of admissible evidence. Bayer also objects to this request on the grounds that it is vague and ambiguous to the extent that it uses the vague and ambiguous words and phrases "role." Bayer also incorporates the General Objections set forth above.

Bayer also objects that the information sought in this request does not relate to infringement or prior invention, the sole subjects of discovery during this phase of the case under the Court's Rule 16 Scheduling Order. Any requests on subjects other than infringement and prior invention must be served at the appropriate time according to the Court's Scheduling Order. Because this request is premature, Bayer will not respond at this time.

**REQUEST FOR PRODUCTION NO. 19:**

All documents and things concerning, referring to or relating to any comparison or comparative test of Defendant's Identified Electrochemical Sensors with any other Electrochemical Sensors.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 19:**

Bayer objects to this request to the extent it calls for documents protected by the attorney-client privilege, the attorney work product doctrine and/or any other applicable privilege, including the joint defense privilege. Bayer also objects to this request as cumulative, overbroad, unduly burdensome, and not relevant or reasonably calculated to lead to the discovery of admissible evidence. Bayer also objects to this request on the grounds that it is vague and ambiguous to the extent that it uses the vague and ambiguous words and phrases "concerning," "referring," "relating," "comparison," and "comparative test." Bayer also incorporates the General Objections set forth above.

Bayer also objects that the information sought in this request does not relate to infringement or prior invention, the sole subjects of discovery during this phase of the case under the Court's Rule 16 Scheduling Order. Any requests on subjects other than infringement and prior invention must be served at the appropriate time according to the Court's Scheduling Order. Because this request is premature, Bayer will not respond at this time.

**REQUEST FOR PRODUCTION NO. 20:**

All documents and things referring to, relating to or comprising product literature and technical descriptions provided to health care providers, users and/or customers, including but not limited to instruction manuals, operators manuals, owners manuals, user guides, user manuals, repair manuals, services manuals or care manuals, concerning, referring to or relating to Identified Electrochemical Sensors, including drafts or other versions not distributed to health care providers, users and/or customers.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 20:**

Bayer objects to this request to the extent it calls for documents protected by the attorney-client privilege, the attorney work product doctrine and/or any other applicable privilege, including the joint defense privilege. Bayer objects to this request as premature, to the extent that it does not comport with the Rule 16 Scheduling Order and attempts to seek information

20

irrelevant to infringement or prior invention, the sole subjects of discovery during this phase of the case. Bayer will not produce any documents in Phase I that are not relevant to infringement or prior invention. Bayer also objects to this request as cumulative, overbroad, unduly burdensome, and not relevant or reasonably calculated to lead to the discovery of admissible evidence. Bayer also objects to this request on the grounds that it is vague and ambiguous to the extent that it uses the vague and ambiguous words and phrases "referring," "relating," and "comprising." Bayer also incorporates the General Objections set forth above.

Subject to these objections and its General Objections, and after conducting a reasonable search, Bayer will produce relevant, non-privileged manuals (or portions thereof) provided to health care providers that are current or pertinent to the time frames at issue in this litigation, relevant to the accused ASCENSIA® CONTOUR® and BREEZE® 2 products, provided that Bayer determines that such documents are in its possession, custody or control.

## REQUEST FOR PRODUCTION NO. 21:

Ten (10) samples of every model or type of Defendant's Identified Electrochemical Sensors.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 21:

Bayer objects to this request as unduly burdensome in that the information requested is equally available to the propounding party. Bayer objects to this request as premature, to the extent that it does not comport with the Rule 16 Scheduling Order and attempts to seek information irrelevant to infringement or prior invention, the sole subjects of discovery during this phase of the case. Bayer will not produce any documents in Phase I that are not relevant to infringement or prior invention. Plaintiffs admit having access to samples of Bayer's products in their Initial Disclosures.

Subject to these objections and its General Objections, and after conducting a reasonable search, Bayer will produce ten samples of the ASCENSIA® CONTOUR® and ten samples of the ASCENSIA® BREEZE® 2 blood glucose meter kits. Additional samples are readily available on the market.

**REQUEST FOR PRODUCTION NO. 22:**

All documents and things concerning, referring to or relating to the research, design, development, production or manufacture of any alternatives to Defendant's Identified Electrochemical Sensors, whether or not rejected.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 22:**

Bayer objects to this request to the extent it calls for documents protected by the attorney-client privilege, the attorney work product doctrine and/or any other applicable privilege, including the joint defense privilege.   Bayer objects to this request as premature, to the extent that it does not comport with the Rule 16 Scheduling Order and attempts to seek information irrelevant to infringement or prior invention, the sole subjects of discovery during this phase of the case.  Bayer will not produce any documents in Phase I that are not relevant to infringement or prior invention.  Bayer also objects to this request as cumulative, overbroad, unduly burdensome, and not relevant or reasonably calculated to lead to the discovery of admissible evidence.  Bayer also objects to this request on the grounds that it is vague and ambiguous to the extent that it uses the vague and ambiguous words and phrases "concerning," "referring," "relating," and "alternatives."  Bayer also incorporates the General Objections set forth above.

Subject to these objections and its General Objections, and after conducting a reasonable search, Bayer will produce relevant, non-privileged documents (or portions thereof) sufficient to show the structure and function of products which may qualify as prior inventions, provided that Bayer determines that such documents are in its possession, custody or control.

**REQUEST FOR PRODUCTION NO. 23:**

All documents and things concerning, referring to or relating to the decision(s) by Defendant regarding the selection or rejection of any designs of or components for Identified Electrochemical Sensors and/or methods of using an Electrochemical Sensor having a capillary chamber that holds a blood sample volume of 1 µl or less or provides a readout of the glucose concentration of the blood sample within 10 seconds or less after the blood sample enters the capillary chamber.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 23:**

Bayer objects to this request to the extent it calls for documents protected by the attorney-client privilege, the attorney work product doctrine and/or any other applicable privilege,

22

including the joint defense privilege.    Bayer objects to this request as premature, to the extent

that it does not comport with the Rule 16 Scheduling Order and attempts to seek information

irrelevant to infringement or prior invention, the sole subjects of discovery during this phase of

the case.  Bayer will not produce any documents in Phase I that are not relevant to infringement

or prior invention.  Bayer also objects to this request as cumulative, overbroad, unduly

burdensome, and not relevant or reasonably calculated to lead to the discovery of admissible

evidence.  Bayer also objects to this request on the grounds that it is vague and ambiguous to the

extent that it uses the vague and ambiguous words and phrases "concerning," "referring," and

"relating."  Bayer further objects to the use of specific terms (for example, "capillary chamber")

that are found in the claims of the '146 and '147 patents as vague and ambiguous and not defined

in the First Set of Requests for Production, to the extent these terms will be subject to

construction by the Court during the *Markman* process.  Bayer also incorporates the General

Objections set forth above.

Subject to these objections and its General Objections, and after conducting a reasonable

search, Bayer will produce relevant, non-privileged documents (or portions thereof) sufficient to

show the structure and function of the accused ASCENSIA® CONTOUR® and BREEZE® 2

products and sufficient to show prior invention of products having a blood sample volume of

1µL or less and a test time of 10 seconds or less, provided that Bayer determines that such

documents are in its possession, custody or control.

### REQUEST FOR PRODUCTION NO. 24:

All documents and things concerning, referring to or relating to any components or parts
contained in, or used or considered for use in Defendant's Identified Electrochemical Sensors,
including but not limited to any research and development related thereto.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 24:

Bayer objects to this request to the extent it calls for documents protected by the attorney-

client privilege, the attorney work product doctrine and/or any other applicable privilege,

including the joint defense privilege.    Bayer objects to this request as premature, to the extent

that it does not comport with the Rule 16 Scheduling Order and attempts to seek information irrelevant to infringement or prior invention, the sole subjects of discovery during this phase of the case. Bayer will not produce any documents in Phase I that are not relevant to infringement or prior invention. Bayer also objects to this request as cumulative, overbroad, unduly burdensome, and not relevant or reasonably calculated to lead to the discovery of admissible evidence. Bayer also incorporates the General Objections set forth above.

Subject to these objections and its General Objections, and after conducting a reasonable search, Bayer will produce relevant, non-privileged documents (or portions thereof) sufficient to show the structure and function of the accused ASCENSIA® CONTOUR® and BREEZE® 2 products, provided that Bayer determines that such documents are in its possession, custody or control.

### REQUEST FOR PRODUCTION NO. 25:

All documents and things concerning, referring to, relating to or depicting the specifications of and process steps used in Defendant's Identified Electrochemical Sensors, and each revision thereof.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 25:

Bayer objects to this request to the extent it calls for documents protected by the attorney-client privilege, the attorney work product doctrine and/or any other applicable privilege, including the joint defense privilege. Bayer objects to this request as premature, to the extent that it does not comport with the Rule 16 Scheduling Order and attempts to seek information irrelevant to infringement or prior invention, the sole subjects of discovery during this phase of the case. Bayer will not produce any documents in Phase I that are not relevant to infringement or prior invention. Bayer also objects to this request as cumulative, overbroad, unduly burdensome, and not relevant or reasonably calculated to lead to the discovery of admissible evidence. Bayer also objects to this request on the grounds that it is vague and ambiguous to the extent that it uses the vague and ambiguous words and phrases "concerning," "referring," and "relating." Bayer also incorporates the General Objections set forth above.

sf-2461958

Subject to these objections and its General Objections, and after conducting a reasonable search, Bayer will produce relevant, non-privileged documents (or portions thereof) sufficient to show the structure and function of the accused ASCENSIA® CONTOUR® and BREEZE® 2 products, provided that Bayer determines that such documents are in its possession, custody or control.

## REQUEST FOR PRODUCTION NO. 26:

All documents and things concerning, referring to or relating to all draft, proposed or final specifications for Defendant's Identified Electrochemical Sensors or any other existing or proposed Electrochemical Sensors having a capillary chamber that holds a blood sample volume of 1 µl or less or provides a readout of the glucose concentration of the blood sample within 10 seconds or less after the blood sample enters the capillary chamber.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 26:

Bayer objects to this request to the extent it calls for documents protected by the attorney-client privilege, the attorney work product doctrine and/or any other applicable privilege, including the joint defense privilege.    Bayer objects to this request as premature, to the extent that it does not comport with the Rule 16 Scheduling Order and attempts to seek information irrelevant to infringement or prior invention, the sole subjects of discovery during this phase of the case. Bayer will not produce any documents in Phase I that are not relevant to infringement or prior invention. Bayer also objects to this request as cumulative, overbroad, unduly burdensome, and not relevant or reasonably calculated to lead to the discovery of admissible evidence. Bayer also objects to this request on the grounds that it is vague and ambiguous to the extent that it uses the vague and ambiguous words and phrases "concerning," "referring," and "relating." Bayer further objects to the use of specific terms (for example, "capillary chamber") that are found in the claims of the '146 and '147 patents as vague and ambiguous and not defined in the First Set of Requests for Production, to the extent these terms will be subject to construction by the Court during the *Markman* process. Bayer also incorporates the General Objections set forth above.

25

Subject to these objections and its General Objections, and after conducting a reasonable search, Bayer will produce relevant, non-privileged documents (or portions thereof) sufficient to show the structure and function of the accused ASCENSIA® CONTOUR® and BREEZE® 2 products and sufficient to show prior invention of products having a blood sample volume of 1µL or less and a test time of 10 seconds or less, provided that Bayer determines that such documents are in its possession, custody or control.

**REQUEST FOR PRODUCTION NO. 27:**

All documents and things showing, describing, referring to or relating to the structure and/or operation of any Electrochemical Sensor having a capillary chamber that holds a blood sample volume of 1 µl or less, including but not limited to Defendant's Identified Electrochemical Sensors.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 27:**

Bayer objects to this request to the extent it calls for documents protected by the attorney-client privilege, the attorney work product doctrine and/or any other applicable privilege, including the joint defense privilege. Bayer objects to this request as premature, to the extent that it does not comport with the Rule 16 Scheduling Order and attempts to seek information irrelevant to infringement or prior invention, the sole subjects of discovery during this phase of the case. Bayer will not produce any documents in Phase I that are not relevant to infringement or prior invention. Bayer also objects to this request as cumulative, overbroad, unduly burdensome, and not relevant or reasonably calculated to lead to the discovery of admissible evidence. Bayer also objects to this request on the grounds that it is vague and ambiguous to the extent that it uses the vague and ambiguous words and phrases "showing," "describing," "referring," and "relating." Bayer further objects to the use of specific terms (for example, "capillary chamber") that are found in the claims of the '146 and '147 patents as vague and ambiguous and not defined in the First Set of Requests for Production, to the extent these terms will be subject to construction by the Court during the *Markman* process. Bayer also incorporates the General Objections set forth above.

26

sf-2461958

Subject to these objections and its General Objections, and after conducting a reasonable search, Bayer will produce relevant, non-privileged documents (or portions thereof) sufficient to show the structure and function of the accused ASCENSIA® CONTOUR® and BREEZE® 2 products and sufficient to show prior invention of products having a blood sample volume of 1 μL or less and a test time of 10 seconds or less, provided that Bayer determines that such documents are in its possession, custody or control.

**REQUEST FOR PRODUCTION NO. 28:**

All documents and things showing, describing, referring to or relating to the structure and/or operation of any Electrochemical Sensor which provide a readout of the glucose concentration of the blood sample within 10 seconds or less after the blood sample enters the capillary chamber, including but not limited to Defendant's Identified Electrochemical Sensors.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 28:**

Bayer objects to this request to the extent it calls for documents protected by the attorney-client privilege, the attorney work product doctrine and/or any other applicable privilege, including the joint defense privilege.    Bayer objects to this request as premature, to the extent that it does not comport with the Rule 16 Scheduling Order and attempts to seek information irrelevant to infringement or prior invention, the sole subjects of discovery during this phase of the case. Bayer will not produce any documents in Phase I that are not relevant to infringement or prior invention. Bayer also objects to this request as cumulative, overbroad, unduly burdensome, and not relevant or reasonably calculated to lead to the discovery of admissible evidence. Bayer also objects to this request on the grounds that it is vague and ambiguous to the extent that it uses the vague and ambiguous words and phrases "showing," "describing," "referring," and "relating." Bayer further objects to the use of specific terms (for example, "capillary chamber") that are found in the claims of the '146 and '147 patents as vague and ambiguous and not defined in the First Set of Requests for Production, to the extent these terms will be subject to construction by the Court during the *Markman* process. Bayer also incorporates the General Objections set forth above.

27

Subject to these objections and its General Objections, and after conducting a reasonable search, Bayer will produce relevant, non-privileged documents (or portions thereof) sufficient to show the structure and function of the accused ASCENSIA® CONTOUR® and BREEZE® 2 products and sufficient to show prior invention of products having a blood sample volume of 1μL or less and a test time of 10 seconds or less, provided that Bayer determines that such documents are in its possession, custody or control.

## REQUEST FOR PRODUCTION NO. 29:

All documents and things sufficient to show how the component parts of Defendant's Identified Electrochemical Sensors work together or interact with each other in the operation of the Identified Electrochemical Sensors.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 29:

Bayer objects to this request to the extent it calls for documents protected by the attorney-client privilege, the attorney work product doctrine and/or any other applicable privilege, including the joint defense privilege.   Bayer objects to this request as premature, to the extent that it does not comport with the Rule 16 Scheduling Order and attempts to seek information irrelevant to infringement or prior invention, the sole subjects of discovery during this phase of the case.  Bayer will not produce any documents in Phase I that are not relevant to infringement or prior invention.  Bayer also objects to this request as cumulative, overbroad, unduly burdensome, and not relevant or reasonably calculated to lead to the discovery of admissible evidence.  Bayer also incorporates the General Objections set forth above.

Subject to these objections and its General Objections, and after conducting a reasonable search, Bayer will produce relevant, non-privileged documents (or portions thereof) sufficient to show the structure and function of the accused ASCENSIA® CONTOUR® and BREEZE® 2 products, provided that Bayer determines that such documents are in its possession, custody or control.

sf-2461958

**REQUEST FOR PRODUCTION NO. 30:**

All documents and things concerning, referring to or relating to comparisons between the components used in Defendant's Identified Electrochemical Sensors and any other components considered, proposed or actually used in Electrochemical Sensors.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 30:**

Bayer objects to this request to the extent it calls for documents protected by the attorney-client privilege, the attorney work product doctrine and/or any other applicable privilege, including the joint defense privilege. Bayer also objects to this request as cumulative, overbroad, unduly burdensome, and not relevant or reasonably calculated to lead to the discovery of admissible evidence. Bayer also objects to this request on the grounds that it is vague and ambiguous to the extent that it uses the vague and ambiguous words and phrases "concerning," "referring," "relating," and "comparisons." Bayer also incorporates the General Objections set forth above.

Bayer also objects that the information sought in this request does not relate to infringement or prior invention, the sole subjects of discovery during this phase of the case under the Court's Rule 16 Scheduling Order. Any requests on subjects other than infringement and prior invention must be served at the appropriate time according to the Court's Scheduling Order. Because this request is premature, Bayer will not respond at this time.

**REQUEST FOR PRODUCTION NO. 31:**

All documents and things concerning, referring to or relating to any agreement between Defendant and any other person for the research, design, development or manufacture of the Identified Electrochemical Sensors.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 31:**

Bayer objects to this request to the extent it calls for documents protected by the attorney-client privilege, the attorney work product doctrine and/or any other applicable privilege, including the joint defense privilege. Bayer also objects to this request as cumulative, overbroad, unduly burdensome, and not relevant or reasonably calculated to lead to the discovery of admissible evidence. Bayer also objects to this request to the extent that Roche is already in

29

possession or control of documents relevant to this request. Bayer also objects to this request on the grounds that it is vague and ambiguous to the extent that it uses the vague and ambiguous words and phrases "concerning," "referring," and "relating." Bayer also incorporates the General Objections set forth above.

Bayer also objects that the information sought in this request does not relate to infringement or prior invention, the sole subjects of discovery during this phase of the case under the Court's Rule 16 Scheduling Order. Any requests on subjects other than infringement and prior invention must be served at the appropriate time according to the Court's Scheduling Order. Because this request is premature, Bayer will not respond at this time.

**REQUEST FOR PRODUCTION NO. 32:**

All documents and things concerning, referring to, relating to or constituting any communications between Defendant and any other person concerning the Identified Electrochemical Sensors.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 32:**

Bayer objects to this request to the extent it calls for documents protected by the attorney-client privilege, the attorney work product doctrine and/or any other applicable privilege, including the joint defense privilege. Bayer also objects to this request as cumulative, overbroad, unduly burdensome, and not relevant or reasonably calculated to lead to the discovery of admissible evidence. Bayer also objects to this request to the extent that Roche is already in possession or control of documents relevant to this request. Bayer also objects to this request on the grounds that it is vague and ambiguous to the extent that it uses the vague and ambiguous words and phrases "concerning," "referring," and "relating." Bayer also incorporates the General Objections set forth above.

Bayer also objects that the information sought in this request does not relate to infringement or prior invention, the sole subjects of discovery during this phase of the case under the Court's Rule 16 Scheduling Order. Any requests on subjects other than infringement and

prior invention must be served at the appropriate time according to the Court's Scheduling Order. Because this request is premature, Bayer will not respond at this time.

## REQUEST FOR PRODUCTION NO. 33:

All documents and things concerning, referring to, relating to or constituting any communications between Defendant and any other person concerning an Electrochemical Sensor having a blood sample volume of 1 μl or less.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 33:

Bayer objects to this request to the extent it calls for documents protected by the attorney-client privilege, the attorney work product doctrine and/or any other applicable privilege, including the joint defense privilege.   Bayer objects to this request as premature, to the extent that it does not comport with the Rule 16 Scheduling Order and attempts to seek information irrelevant to infringement or prior invention, the sole subjects of discovery during this phase of the case. Bayer will not produce any documents in Phase I that are not relevant to infringement or prior invention. Bayer also objects to this request as cumulative, overbroad, unduly burdensome, and not relevant or reasonably calculated to lead to the discovery of admissible evidence. Bayer also objects to this request to the extent that it calls for documents that are not in Bayer's possession, custody, or control. Bayer also objects to this request to the extent that Roche is already in possession or control of documents relevant to this request. Bayer also objects to this request on the grounds that it is vague and ambiguous to the extent that it uses the vague and ambiguous words and phrases "concerning," "referring," and "relating." Bayer further objects to the use of specific terms (for example, "capillary chamber") that are found in the claims of the '146 and '147 patents as vague and ambiguous and not defined in the First Set of Requests for Production, to the extent these terms will be subject to construction by the Court during the *Markman* process. Bayer also incorporates the General Objections set forth above.

Subject to these objections and its General Objections, and after conducting a reasonable search, Bayer will produce relevant, non-privileged documents (or portions thereof) sufficient to show the structure and function of the accused ASCENSIA® CONTOUR® and BREEZE® 2

31

products and sufficient to show prior invention of products having a blood sample volume of 1μL or less and a test time of 10 seconds or less, provided that Bayer determines that such documents are in its possession, custody or control.

## REQUEST FOR PRODUCTION NO. 34:

All documents and things concerning, referring to, relating to or constituting any communications between Defendant and any other person concerning an Electrochemical Sensor having a test time of 10 seconds or less.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 34:

Bayer objects to this request to the extent it calls for documents protected by the attorney-client privilege, the attorney work product doctrine and/or any other applicable privilege, including the joint defense privilege.    Bayer objects to this request as premature, to the extent that it does not comport with the Rule 16 Scheduling Order and attempts to seek information irrelevant to infringement or prior invention, the sole subjects of discovery during this phase of the case. Bayer will not produce any documents in Phase I that are not relevant to infringement or prior invention. Bayer also objects to this request as cumulative, overbroad, unduly burdensome, and not relevant or reasonably calculated to lead to the discovery of admissible evidence. Bayer also objects to this request on the grounds that it is vague and ambiguous to the extent that it uses the vague and ambiguous words and phrases "concerning," "referring," and "relating." Bayer further objects to the use of specific terms (for example, "capillary chamber") that are found in the claims of the '146 and '147 patents as vague and ambiguous and not defined in the First Set of Requests for Production, to the extent these terms will be subject to construction by the Court during the *Markman* process. Bayer also incorporates the General Objections set forth above.

Subject to these objections and its General Objections, and after conducting a reasonable search, Bayer will produce relevant, non-privileged documents (or portions thereof) sufficient to show the structure and function of the accused ASCENSIA® CONTOUR® and BREEZE® 2 products and sufficient to show prior invention of products having a blood sample volume of

32

1μL or less and a test time of 10 seconds or less, provided that Bayer determines that such documents are in its possession, custody or control.

## REQUEST FOR PRODUCTION NO. 35:

All documents and things concerning, referring to, relating to or constituting any communications between Defendant and any other person concerning an Electrochemical Sensor which provide a readout of the glucose concentration of the blood sample within 10 seconds or less after the blood sample enters the capillary chamber.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 35:

Bayer objects to this request to the extent it calls for documents protected by the attorney-client privilege, the attorney work product doctrine and/or any other applicable privilege, including the joint defense privilege. Bayer objects to this request as premature, to the extent that it does not comport with the Rule 16 Scheduling Order and attempts to seek information irrelevant to infringement or prior invention, the sole subjects of discovery during this phase of the case. Bayer will not produce any documents in Phase I that are not relevant to infringement or prior invention. Bayer also objects to this request as cumulative, overbroad, unduly burdensome, and not relevant or reasonably calculated to lead to the discovery of admissible evidence. Bayer also objects to this request on the grounds that it is vague and ambiguous to the extent that it uses the vague and ambiguous words and phrases "concerning," "referring," and "relating." Bayer further objects to the use of specific terms (for example, "capillary chamber") that are found in the claims of the '146 and '147 patents as vague and ambiguous and not defined in the First Set of Requests for Production, to the extent these terms will be subject to construction by the Court during the *Markman* process. Bayer also incorporates the General Objections set forth above.

Subject to these objections and its General Objections, and after conducting a reasonable search, Bayer will produce relevant, non-privileged documents (or portions thereof) sufficient to show the structure and function of the accused ASCENSIA® CONTOUR® and BREEZE® 2 products and sufficient to show prior invention of products having a blood sample volume of

33

1 µL or less and a test time of 10 seconds or less, provided that Bayer determines that such documents are in its possession, custody or control.

**REQUEST FOR PRODUCTION NO. 36:**

All documents resulting from, concerning, referring to or relating to any prior art, literature and/or patent searches conducted by, at the request of or on behalf of Defendant with respect to Electrochemical Sensors having a capillary chamber that holds a blood sample volume of 1 µl or less.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 36:**

Bayer objects to this request to the extent it calls for documents protected by the attorney-client privilege, the attorney work product doctrine and/or any other applicable privilege, including the joint defense privilege.    Bayer objects to this request as premature, to the extent that it does not comport with the Rule 16 Scheduling Order and attempts to seek information irrelevant to infringement or prior invention, the sole subjects of discovery during this phase of the case.  Bayer will not produce any documents in Phase I that are not relevant to infringement or prior invention.  Bayer also objects to this request as cumulative, overbroad, unduly burdensome, and not relevant or reasonably calculated to lead to the discovery of admissible evidence.  Bayer also objects to this request on the grounds that it is vague and ambiguous to the extent that it uses the vague and ambiguous words and phrases "concerning," "referring," and "relating."  Bayer further objects to the use of specific terms (for example, "capillary chamber") that are found in the claims of the '146 and '147 patents as vague and ambiguous and not defined in the First Set of Requests for Production, to the extent these terms will be subject to construction by the Court during the *Markman* process.  Bayer also incorporates the General Objections set forth above.

Subject to these objections and its General Objections, and after conducting a reasonable search, Bayer will produce relevant, non-privileged documents (or portions thereof) sufficient to show prior invention of products having a blood sample volume of 1 µL or less and a test time of

34

10 seconds or less, provided that Bayer determines that such documents are in its possession, custody or control.

## REQUEST FOR PRODUCTION NO. 37:

All documents resulting from, concerning, referring to or relating to any prior art, literature and/or patent searches conducted by, at the request of or on behalf of Defendant with respect to Electrochemical Sensors which provide a readout of the glucose concentration of the blood sample within 10 seconds or less after the blood sample enters the capillary chamber.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 37:

Bayer objects to this request to the extent it calls for documents protected by the attorney-client privilege, the attorney work product doctrine and/or any other applicable privilege, including the joint defense privilege.    Bayer objects to this request as premature, to the extent that it does not comport with the Rule 16 Scheduling Order and attempts to seek information irrelevant to infringement or prior invention, the sole subjects of discovery during this phase of the case.  Bayer will not produce any documents in Phase I that are not relevant to infringement or prior invention.  Bayer also objects to this request as cumulative, overbroad, unduly burdensome, and not relevant or reasonably calculated to lead to the discovery of admissible evidence.  Bayer also objects to this request on the grounds that it is vague and ambiguous to the extent that it uses the vague and ambiguous words and phrases "concerning," "referring," and "relating."  Bayer further objects to the use of specific terms (for example, "capillary chamber") that are found in the claims of the '146 and '147 patents as vague and ambiguous and not defined in the First Set of Requests for Production, to the extent these terms will be subject to construction by the Court during the *Markman* process.  Bayer also incorporates the General Objections set forth above.

Subject to these objections and its General Objections, and after conducting a reasonable search, Bayer will produce relevant, non-privileged documents (or portions thereof) sufficient to show prior invention of products having a blood sample volume of 1 µL or less and a test time of 10 seconds or less, provided that Bayer determines that such documents are in its possession, custody or control.

35

sf-2461958

**REQUEST FOR PRODUCTION NO. 38:**

All documents and things sufficient to demonstrate the amount of time, money and effort spent by or on behalf of Defendant with respect to developing Defendant's Identified Electrochemical Sensors.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 38:**

This Request has been withdrawn by Plaintiffs. *See* February 15, 2008 Letter from

Plaintiffs' Counsel to Defense Counsel.

**REQUEST FOR PRODUCTION NO. 39:**

All documents and things concerning, referring to or relating to Defendant's knowledge of Plaintiffs' activities in research, patenting, development, manufacturing, use or sale of Electrochemical Sensors having a capillary chamber that holds a blood sample volume of 1 μl or less.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 39:**

Bayer objects to this request to the extent it calls for documents protected by the attorney-

client privilege, the attorney work product doctrine and/or any other applicable privilege,

including the joint defense privilege.    Bayer objects to this request as premature, to the extent

that it does not comport with the Rule 16 Scheduling Order and attempts to seek information

irrelevant to infringement or prior invention, the sole subjects of discovery during this phase of

the case. Bayer will not produce any documents in Phase I that are not relevant to infringement

or prior invention. Bayer also objects to this request as cumulative, overbroad, unduly

burdensome, and not relevant or reasonably calculated to lead to the discovery of admissible

evidence. Bayer further objects to the use of specific terms (for example, "capillary chamber")

that are found in the claims of the '146 and '147 patents as vague and ambiguous and not defined

in the First Set of Requests for Production, to the extent these terms will be subject to

construction by the Court during the *Markman* process. Bayer also incorporates the General

Objections set forth above.

Subject to these objections and its General Objections, and after conducting a reasonable

search, Bayer will produce relevant, non-privileged documents (or portions thereof) sufficient to

sf-2461958

show knowledge of the patents-in-suit, if any, provided that Bayer determines that such documents are in its possession, custody or control.

## REQUEST FOR PRODUCTION NO. 40:

All documents and things concerning, referring to or relating to Defendant's knowledge of Plaintiffs' activities in research, patenting, development, manufacturing, use or sale of Electrochemical Sensors which provide a readout of the glucose concentration of the blood sample within 10 seconds or less after the blood sample enters the capillary chamber.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 40:

Bayer objects to this request to the extent it calls for documents protected by the attorney-client privilege, the attorney work product doctrine and/or any other applicable privilege, including the joint defense privilege. Bayer objects to this request as premature, to the extent that it does not comport with the Rule 16 Scheduling Order and attempts to seek information irrelevant to infringement or prior invention, the sole subjects of discovery during this phase of the case. Bayer will not produce any documents in Phase I that are not relevant to infringement or prior invention. Bayer also objects to this request as cumulative, overbroad, unduly burdensome, and not relevant or reasonably calculated to lead to the discovery of admissible evidence. Bayer further objects to the use of specific terms (for example, "capillary chamber") that are found in the claims of the '146 and '147 patents as vague and ambiguous and not defined in the First Set of Requests for Production, to the extent these terms will be subject to construction by the Court during the *Markman* process. Bayer also incorporates the General Objections set forth above.

Subject to these objections and its General Objections, and after conducting a reasonable search, Bayer will produce relevant, non-privileged documents (or portions thereof) sufficient to show knowledge of the patents-in-suit, if any, provided that Bayer determines that such documents are in its possession, custody or control.

## REQUEST FOR PRODUCTION NO. 41:

All documents concerning, referring to or relating to Christopher D. Wilsey.

37

## RESPONSE TO REQUEST FOR PRODUCTION NO. 41:

Bayer objects to this request to the extent it calls for documents protected by the attorney-client privilege, the attorney work product doctrine and/or any other applicable privilege, including the joint defense privilege.    Bayer objects to this request as premature, to the extent that it does not comport with the Rule 16 Scheduling Order and attempts to seek information irrelevant to infringement or prior invention, the sole subjects of discovery during this phase of the case. Bayer will not produce any documents in Phase I that are not relevant to infringement or prior invention. Bayer also objects to this request as cumulative, overbroad, unduly burdensome, and not relevant or reasonably calculated to lead to the discovery of admissible evidence. Bayer also objects to this request on the grounds that it is vague and ambiguous to the extent that it uses the vague and ambiguous words and phrases "concerning," "referring," and "relating." Bayer objects to this request as overbroad and unduly burdensome as written since it would require Bayer to conduct a search for responsive documents broader than that which is required under the Federal Rules. Once Bayer has determined the volume of potentially responsive documents, Bayer will establish a reasonable scope of search. Bayer also incorporates the General Objections set forth above.

Subject to these objections and its General Objections, after conducting a reasonable search, Bayer will produce relevant, non-privileged documents (or portions thereof) related to prior invention and that refer to Christopher D. Wilsey, provided that Bayer determines that such documents are in its possession, custody or control.

## REQUEST FOR PRODUCTION NO. 42:

All documents concerning, referring to or relating to Nigel A. Surridge.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 42:

Bayer objects to this request to the extent it calls for documents protected by the attorney-client privilege, the attorney work product doctrine and/or any other applicable privilege, including the joint defense privilege.    Bayer objects to this request as premature, to the extent that it does not comport with the Rule 16 Scheduling Order and attempts to seek information

38

sf-2461958

irrelevant to infringement or prior invention, the sole subjects of discovery during this phase of
the case. Bayer will not produce any documents in Phase I that are not relevant to infringement
or prior invention. Bayer also objects to this request as cumulative, overbroad, unduly
burdensome, and not relevant or reasonably calculated to lead to the discovery of admissible
evidence. Bayer also objects to this request on the grounds that it is vague and ambiguous to the
extent that it uses the vague and ambiguous words and phrases "concerning," "referring," and
"relating." Bayer objects to this request as overbroad and unduly burdensome as written since it
would require Bayer to conduct a search for responsive documents broader than that which is
required under the Federal Rules. Once Bayer has determined the volume of potentially
responsive documents, Bayer will establish a reasonable scope of search. Bayer also
incorporates the General Objections set forth above.

Subject to these objections and its General Objections, and after conducting a reasonable
search, Bayer will produce relevant, non-privileged documents (or portions thereof) related to
prior invention and that refer to Nigel A Surridge, provided that Bayer determines that such
documents are in its possession, custody or control.

**REQUEST FOR PRODUCTION NO. 43:**

All documents and things concerning, referring to or relating (in words or in substance)
to the patents-in-suit, including but not limited to:

    (a)    all documents and things concerning, referring to or relating to the validity and/or
invalidity of the patents-in-suit;

    (b)    all documents and things concerning, referring to or relating to the enforceability
and/or unenforceability of any of the subject matter claimed by the patents-in-suit;
and

    (c)    all documents and things concerning, referring to or relating to any infringement
and/or non-infringement of the patents-in-suit by Defendant or by anyone else.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 43:**

Bayer objects to this request to the extent it calls for documents protected by the attorney-
client privilege, the attorney work product doctrine and/or any other applicable privilege,

39

including the joint defense privilege. Bayer also objects to this request on the grounds that it is vague and ambiguous to the extent that it uses the vague and ambiguous words and phrases "concerning," "referring," and "relating." Bayer also objects to this request as cumulative, overbroad, unduly burdensome, and not relevant or reasonably calculated to lead to the discovery of admissible evidence. Bayer objects to this request as overbroad and unduly burdensome as written since it would require Bayer to conduct a search for responsive documents broader than that which is required under the Federal Rules. Once Bayer has determined the volume of potentially responsive documents, Bayer will establish a reasonable scope of search. Bayer also incorporates the General Objections set forth above.

Subject to these objections and its General Objections, and after conducting a reasonable search Bayer will produce relevant, non-privileged copies (or portions thereof) that relate in a material manner to Bayer's position that the patents-in-suit (or portions thereof) are not infringed by the accused ASCENSIA® CONTOUR® and BREEZE® 2 products and to any assertion of prior invention, provided that Bayer determines that such documents are in its possession, custody or control. Bayer also objects to the remainder of this request to the extent that it does not relate to infringement or prior invention, the sole subjects of discovery during this phase of the case under the Court's Rule 16 Scheduling Order. Any requests on subjects other than infringement and prior invention must be served at the appropriate time according to the Court's Scheduling Order.

### REQUEST FOR PRODUCTION NO. 44:

All documents and things concerning, referring to or relating to any analysis, consideration, negotiation, recommendation or proposal relating to obtaining a license or other rights under the patents-in-suit.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 44:

Bayer objects to this request to the extent it calls for documents protected by the attorney-client privilege, the attorney work product doctrine and/or any other applicable privilege, including the joint defense privilege. Bayer also objects to this request as cumulative, overbroad,

unduly burdensome, and not relevant or reasonably calculated to lead to the discovery of admissible evidence. Bayer also objects to this request on the grounds that it is vague and ambiguous to the extent that it uses the vague and ambiguous words and phrases "concerning," "referring," and "relating." Bayer also incorporates the General Objections set forth above.

Bayer also objects that the information sought in this request does not relate to infringement or prior invention, the sole subjects of discovery during this phase of the case under the Court's Rule 16 Scheduling Order. Any requests on subjects other than infringement and prior invention must be served at the appropriate time according to the Court's Scheduling Order. Because this request is premature, Bayer will not respond at this time.

**REQUEST FOR PRODUCTION NO. 45:**

All documents and things concerning, referring to, relating to or constituting minutes, memos or other records of meetings of directors, officers, employees and/or other personnel of Defendant where Plaintiffs and/or the patents-in-suit were discussed, referenced or considered in any way.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 45:**

Bayer objects to this request to the extent it calls for documents protected by the attorney-client privilege, the attorney work product doctrine and/or any other applicable privilege, including the joint defense privilege. Bayer objects to this request as premature, to the extent that it does not comport with the Rule 16 Scheduling Order and attempts to seek information irrelevant to infringement or prior invention, the sole subjects of discovery during this phase of the case. Bayer will not produce any documents in Phase I that are not relevant to infringement or prior invention. Bayer also objects to this request as cumulative, overbroad, unduly burdensome, and not relevant or reasonably calculated to lead to the discovery of admissible evidence. Bayer also objects to this request on the grounds that it is vague and ambiguous to the extent that it uses the vague and ambiguous words and phrases "concerning," "referring," "relating," "discussed," "referenced," and "constituting." Bayer also incorporates the General Objections set forth above.

41

Subject to these objections and its General Objections, and after conducting a reasonable search, Bayer will produce relevant, non-privileged documents (or portions thereof) sufficient to show knowledge of the patents-in-suit, provided that Bayer determines that such documents are in its possession, custody or control.

**REQUEST FOR PRODUCTION NO. 46:**

All documents and things concerning, referring to or relating to any consideration given or decisions or efforts made by Defendant to design around the patents-in-suit.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 46:**

Bayer objects to this request to the extent it calls for documents protected by the attorney-client privilege, the attorney work product doctrine and/or any other applicable privilege, including the joint defense privilege. Bayer also objects to this request as cumulative, overbroad, unduly burdensome, and not relevant or reasonably calculated to lead to the discovery of admissible evidence. Bayer also objects to this request on the grounds that it is vague and ambiguous to the extent that it uses the vague and ambiguous words and phrases "concerning," "referring," "relating," "consideration," "decision," "efforts," and "design around." Bayer also incorporates the General Objections set forth above.

Bayer also objects that the information sought in this request does not relate to infringement or prior invention, the sole subjects of discovery during this phase of the case under the Court's Rule 16 Scheduling Order. Any requests on subjects other than infringement and prior invention must be served at the appropriate time according to the Court's Scheduling Order. Because this request is premature, Bayer will not respond at this time.

**REQUEST FOR PRODUCTION NO. 47:**

All documents and things concerning, referring to or relating to any decisions or efforts made by Defendant to design Electrochemical Sensors that would not infringe the patents-in-suit.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 47:**

Bayer objects to this request to the extent it calls for documents protected by the attorney-client privilege, the attorney work product doctrine and/or any other applicable privilege,

sf-2461958

including the joint defense privilege. Bayer also objects to this request as cumulative, overbroad, unduly burdensome, and not relevant or reasonably calculated to lead to the discovery of admissible evidence. Bayer also objects to this request on the grounds that it is vague and ambiguous to the extent that it uses the vague and ambiguous words and phrases "referring," "relating," and "concerning." Bayer also incorporates the General Objections set forth above.

Bayer also objects that the information sought in this request does not relate to infringement or prior invention, the sole subjects of discovery during this phase of the case under the Court's Rule 16 Scheduling Order. Any requests on subjects other than infringement and prior invention must be served at the appropriate time according to the Court's Scheduling Order. Because this request is premature, Bayer will not respond at this time.

### REQUEST FOR PRODUCTION NO. 48:

All documents that Defendant intends to rely on to assert invalidity, unenforceability or non-infringement of any of the patents-in-suit or which otherwise refer or relate to any defense or counterclaim asserted by Defendant.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 48:

Bayer objects to this request to the extent it calls for documents protected by the attorney-client privilege, the attorney work product doctrine and/or any other applicable privilege, including the joint defense privilege. Bayer also objects to this request as cumulative, overbroad, unduly burdensome, and not relevant or reasonably calculated to lead to the discovery of admissible evidence. Bayer also objects on the ground that it currently has no counterclaims. Bayer also incorporates the General Objections set forth above.

Subject to these objections and its General Objections, and after conducting a reasonable search, Bayer will produce relevant, non-privileged documents (or portions thereof) sufficient to show the basis of its allegations in its answer as to non-infringement or any assertion of prior invention, provided that Bayer determines that such documents are in its possession, custody or control. Bayer objects that the information sought in the remainder of request does not relate to infringement or prior invention, the sole subjects of discovery during this phase of the case under

43

the Court's Rule 16 Scheduling Order.  Any requests on subjects other than infringement and

prior invention must be served at the appropriate time according to the Court's Scheduling Order.

## REQUEST FOR PRODUCTION NO. 49:

All patents, printed publications, other items of prior art or other documents, including
any English translations thereof, the Defendant believes may have any bearing on the validity of
the patents-in-suit.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 49:

This Request has been withdrawn by Plaintiffs.  *See* February 15, 2008 Letter from

Plaintiffs' Counsel to Defense Counsel.

## REQUEST FOR PRODUCTION NO. 50:

All documents resulting from, concerning, referring to or relating to any prior art,
literature and/or patent searches conducted by, at the request of or on behalf of Defendant with
respect to the patents-in-suit.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 50:

This Request has been withdrawn by Plaintiffs.  *See* February 15, 2008 Letter from

Plaintiffs' Counsel to Defense Counsel.

## REQUEST FOR PRODUCTION NO. 51:

All documents evidencing, referring to or relating to the state of the art relevant to the
subject matter claimed in the patents-in-suit as of the time of filing of the application that issued
as the 146 patent.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 51:

Bayer objects to this request to the extent it calls for documents protected by the attorney-

client privilege, the attorney work product doctrine and/or any other applicable privilege,

including the joint defense privilege.   Bayer objects to this request as premature, to the extent

that it does not comport with the Rule 16 Scheduling Order and attempts to seek information

irrelevant to infringement or prior invention, the sole subjects of discovery during this phase of

the case.  Bayer will not produce any documents in Phase I that are not relevant to infringement

or prior invention.  Bayer also objects to this request as cumulative, overbroad, unduly

sf-2461958

burdensome, and not relevant or reasonably calculated to lead to the discovery of admissible evidence. Bayer also objects to this request as it calls for premature disclosure of expert opinions. Bayer also objects to this request on the grounds that it is vague and ambiguous to the extent that it uses the vague and ambiguous words and phrases "evidencing," "referring," and "relating." Bayer objects to this request as overbroad and unduly burdensome as written since it would require Bayer to conduct a search for responsive documents broader than that which is required under the Federal Rules. Once Bayer has determined the volume of potentially responsive documents, Bayer will establish a reasonable scope of search. Bayer also incorporates the General Objections set forth above.

Subject to these objections and its General Objections, and after conducting a reasonable search, Bayer will produce relevant, non-privileged documents (or portions thereof) that may be relevant to claim construction or that are sufficient to show prior invention, provided that Bayer determines that such documents are in its possession, custody or control.

**REQUEST FOR PRODUCTION NO. 52:**

All documents evidencing, referring to or relating to the state of the art relevant to the subject matter claimed in the patents-in-suit as of the time of filing of the application that issued as the 147 patent.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 52:**

Bayer objects to this request to the extent it calls for documents protected by the attorney-client privilege, the attorney work product doctrine and/or any other applicable privilege, including the joint defense privilege.   Bayer objects to this request as premature, to the extent that it does not comport with the Rule 16 Scheduling Order and attempts to seek information irrelevant to infringement or prior invention, the sole subjects of discovery during this phase of the case. Bayer will not produce any documents in Phase I that are not relevant to infringement or prior invention. Bayer also objects to this request as cumulative, overbroad, unduly burdensome, and not relevant or reasonably calculated to lead to the discovery of admissible evidence. Bayer also objects to this request on the grounds that it is vague and ambiguous to the

45

extent that it uses the vague and ambiguous words and phrases "concerning," "referring," and "relating." Bayer also objects to this request as it calls for premature disclosure of expert opinions. Bayer also incorporates the General Objections set forth above.

Subject to these objections and its General Objections, and after conducting a reasonable search, Bayer will produce relevant, non-privileged documents (or portions thereof) that may be relevant to claim construction or that are sufficient to show prior invention, provided that Bayer determines that such documents are in its possession, custody or control.

## REQUEST FOR PRODUCTION NO. 53:

All documents and things concerning, referring to or relating to United States or foreign patent applications, requests for reexamination, patents, invention certificates, reissues, reexaminations, invention disclosures and file histories concerning or relating to the patents-in-suit, including but not limited to the Requests for Reexamination.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 53:

Bayer objects to this request to the extent it calls for documents protected by the attorney-client privilege, the attorney work product doctrine and/or any other applicable privilege, including the joint defense privilege.   Bayer objects to this request as premature, to the extent that it does not comport with the Rule 16 Scheduling Order and attempts to seek information irrelevant to infringement or prior invention, the sole subjects of discovery during this phase of the case. Bayer will not produce any documents in Phase I that are not relevant to infringement or prior invention. Bayer also objects to this request as cumulative, overbroad, unduly burdensome, and not relevant or reasonably calculated to lead to the discovery of admissible evidence. Bayer also objects to this request as it calls for premature disclosure of expert opinions. Bayer also objects to this request on the grounds that it is vague and ambiguous to the extent that it uses the vague and ambiguous words and phrases "concerning," "referring," and "relating." Bayer also incorporates the General Objections set forth above.

Subject to these objections and its General Objections, and after conducting a reasonable search, Bayer will produce relevant, non-privileged documents (or portions thereof) sufficient to

46

show prior invention, provided that Bayer determines that such documents are in its possession,

custody or control.

### REQUEST FOR PRODUCTION NO. 54:

All documents and things concerning, referring to or relating to any written opinions prepared by or on Defendant's behalf, or received by or on Defendant's behalf, regarding the patents-in-suit, including but not limited to opinions relating to the validity, invalidity, enforceability, unenforceability, infringement and/or non-infringement of the patents-in-suit, all drafts of opinions and all documents considered, reviewed or relied on in formulating and/or rendering opinions.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 54:

Bayer objects to this request to the extent it calls for documents protected by the attorney-

client privilege, the attorney work product doctrine and/or any other applicable privilege,

including the joint defense privilege. Bayer also objects to this request as cumulative, overbroad,

unduly burdensome, and not relevant or reasonably calculated to lead to the discovery of

admissible evidence. Bayer also objects to this request on the grounds that it is vague and

ambiguous to the extent that it uses the vague and ambiguous words and phrases "concerning,"

"referring," and "relating." Bayer also objects to this request to the extent that Roche is already

in possession or control of documents relevant to this request. Bayer also objects to this request

as it calls for premature disclosure of expert opinions. Bayer also incorporates the General

Objections set forth above.

Bayer also objects that the information sought in this request does not relate to

infringement or prior invention, the sole subjects of discovery during this phase of the case under

the Court's Rule 16 Scheduling Order. Any requests on subjects other than infringement and

prior invention must be served at the appropriate time according to the Court's Scheduling Order.

Subject to these objections and its General Objections, Bayer responds that it will not produce

opinions regarding the patents-in-suit because such documents are protected by the attorney

client privilege, the attorney work product doctrine and / or any other applicable privilege,

including the joint defense privilege. Such documents are not subject to discovery unless and

47

until Bayer waives any applicable privilege. Bayer specifically reserves its rights to produce any such documents during the appropriate phase of litigation.

### REQUEST FOR PRODUCTION NO. 55:

All documents and things concerning, referring to or relating to any discussion or communication, whether written or oral, of the validity, invalidity, enforceability, unenforceability, infringement and/or non-infringement of the patents-in-suit.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 55:

Bayer objects to this request to the extent it calls for documents protected by the attorney-client privilege, the attorney work product doctrine and/or any other applicable privilege, including the joint defense privilege. Bayer also objects to this request as cumulative, overbroad, unduly burdensome, and not relevant or reasonably calculated to lead to the discovery of admissible evidence. Bayer also objects to this request as it calls for premature disclosure of expert opinions. Bayer also objects to this request on the grounds that it is vague and ambiguous to the extent that it uses the vague and ambiguous words and phrases "concerning," "referring," and "relating." Bayer also incorporates the General Objections set forth above.

Bayer also objects that the information sought in this request does not relate to infringement or prior invention, the sole subjects of discovery during this phase of the case under the Court's Rule 16 Scheduling Order. Any requests on subjects other than infringement and prior invention must be served at the appropriate time according to the Court's Scheduling Order. Because this request is premature, Bayer will not respond at this time.

### REQUEST FOR PRODUCTION NO. 56:

All documents and things concerning, referring to or relating to the billing, such as bills or invoices, for any opinion, discussion and/or communication, whether written or oral, regarding validity, invalidity, enforceability, unenforceability, infringement and/or non-infringement of the patents-in-suit or any claim thereof.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 56:

Bayer objects to this request to the extent it calls for documents protected by the attorney-client privilege, the attorney work product doctrine and/or any other applicable privilege,

including the joint defense privilege. Bayer also objects to this request as cumulative, overbroad, unduly burdensome, and not relevant or reasonably calculated to lead to the discovery of admissible evidence. Bayer also objects to this request as it calls for premature disclosure of expert opinions. Bayer also objects to this request on the grounds that it is vague and ambiguous to the extent that it uses the vague and ambiguous words and phrases "concerning," "referring," and "relating." Bayer also incorporates the General Objections set forth above.

Bayer also objects that the information sought in this request does not relate to infringement or prior invention, the sole subjects of discovery during this phase of the case under the Court's Rule 16 Scheduling Order. Any requests on subjects other than infringement and prior invention must be served at the appropriate time according to the Court's Scheduling Order. Because this request is premature, Bayer will not respond at this time.

**REQUEST FOR PRODUCTION NO. 57:**

All documents and things concerning, referring to or relating to any licensing discussions, negotiations or agreements between Defendant and any person relating to any rights with regard to Defendant's Identified Electrochemical Sensors.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 57:**

Bayer objects to this request to the extent it calls for documents protected by the attorney-client privilege, the attorney work product doctrine and/or any other applicable privilege, including the joint defense privilege. Bayer also objects to this request as cumulative, overbroad, unduly burdensome, and not relevant or reasonably calculated to lead to the discovery of admissible evidence. Bayer also objects to this request on the grounds that it is vague and ambiguous to the extent that it uses the vague and ambiguous words and phrases "concerning," "referring," and "relating." Bayer also incorporates the General Objections set forth above.

Bayer also objects that the information sought in this request does not relate to infringement or prior invention, the sole subjects of discovery during this phase of the case under the Court's Rule 16 Scheduling Order. Any requests on subjects other than infringement and

49

prior invention must be served at the appropriate time according to the Court's Scheduling Order. Because this request is premature, Bayer will not respond at this time.

**REQUEST FOR PRODUCTION NO. 58:**

All license agreements and other documents concerning, referring to or relating to or reflecting any agreements between Defendant and any other person relating in any way to electrochemical sensors capable of being used to determine the concentration of a compound in any sample.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 58:**

Bayer objects to this request to the extent it calls for documents protected by the attorney-client privilege, the attorney work product doctrine and/or any other applicable privilege, including the joint defense privilege. Bayer also objects to this request as cumulative, overbroad, unduly burdensome, and not relevant or reasonably calculated to lead to the discovery of admissible evidence. Bayer also objects to this request on the grounds that it is vague and ambiguous to the extent that it uses the vague and ambiguous words and phrases "concerning," "referring," and "relating." Bayer also incorporates the General Objections set forth above.

Bayer also objects that the information sought in this request does not relate to infringement or prior invention, the sole subjects of discovery during this phase of the case under the Court's Rule 16 Scheduling Order. Any requests on subjects other than infringement and prior invention must be served at the appropriate time according to the Court's Scheduling Order. Because this request is premature, Bayer will not respond at this time.

**REQUEST FOR PRODUCTION NO. 59:**

All documents and things concerning, describing, referring to, or relating to any agreements between Defendant and any other person with respect to Electrochemical Sensors.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 59:**

Bayer objects to this request to the extent it calls for documents protected by the attorney-client privilege, the attorney work product doctrine and/or any other applicable privilege, including the joint defense privilege. Bayer also objects to this request as cumulative, overbroad, unduly burdensome, and not relevant or reasonably calculated to lead to the discovery of

50

admissible evidence. Bayer also objects to this request on the grounds that it is vague and ambiguous to the extent that it uses the vague and ambiguous words and phrases "concerning," "referring," and "relating." Bayer also incorporates the General Objections set forth above.

Bayer also objects that the information sought in this request does not relate to infringement or prior invention, the sole subjects of discovery during this phase of the case under the Court's Rule 16 Scheduling Order. Any requests on subjects other than infringement and prior invention must be served at the appropriate time according to the Court's Scheduling Order. Because this request is premature, Bayer will not respond at this time.

**REQUEST FOR PRODUCTION NO. 60:**

All documents and things concerning, referring to or relating to any offer for sale or sale in the United States of Defendant's Identified Electrochemical Sensors.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 60:**

Bayer objects to this request to the extent it calls for documents protected by the attorney-client privilege, the attorney work product doctrine and/or any other applicable privilege, including the joint defense privilege. Bayer objects to this request as premature, to the extent that it does not comport with the Rule 16 Scheduling Order and attempts to seek information irrelevant to infringement or prior invention, the sole subjects of discovery during this phase of the case. Bayer will not produce any documents in Phase I that are not relevant to infringement or prior invention. Bayer also objects to this request as cumulative, overbroad, unduly burdensome, and not relevant or reasonably calculated to lead to the discovery of admissible evidence. Bayer objects to this request on the grounds that it is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence to the extent that it seeks discovery of sales outside of the United States. Bayer also objects to this request on the grounds that it is vague and ambiguous to the extent that it uses the vague and ambiguous words and phrases "concerning," "referring," and "relating." Bayer objects to this request as overbroad and unduly burdensome as written since it would require Bayer to conduct a search for responsive documents broader than that which is required under the Federal Rules.

51

Once Bayer has determined the volume of potentially responsive documents, Bayer will establish

a reasonable scope of search. Bayer also incorporates the General Objections set forth above.

Subject to these objections and its General Objections, and after conducting a reasonable

search, Bayer will produce relevant, non-privileged documents (or portions thereof) relating to

the first offer for sale or sale of the accused products ASCENSIA® CONTOUR® and

BREEZE® 2, provided that Bayer determines that such documents are in its possession, custody

or control.

### REQUEST FOR PRODUCTION NO. 61:

All documents and things evidencing, concerning, referring to or relating to any free
samples or other units of Defendant's Identified Electrochemical Sensors distributed without
charge.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 61:

Bayer objects to this request to the extent it calls for documents protected by the attorney-

client privilege, the attorney work product doctrine and/or any other applicable privilege,

including the joint defense privilege.    Bayer objects to this request as premature, to the extent

that it does not comport with the Rule 16 Scheduling Order and attempts to seek information

irrelevant to infringement or prior invention, the sole subjects of discovery during this phase of

the case. Bayer will not produce any documents in Phase I that are not relevant to infringement

or prior invention. Bayer also objects to this request as cumulative, overbroad, unduly

burdensome, and not relevant or reasonably calculated to lead to the discovery of admissible

evidence. Bayer also objects to this request on the grounds that it is vague and ambiguous to the

extent that it uses the vague and ambiguous words and phrases "concerning," "referring," and

"relating." Bayer objects to this request as overbroad and unduly burdensome as written since it

would require Bayer to conduct a search for responsive documents broader than that which is

required under the Federal Rules. Once Bayer has determined the volume of potentially

responsive documents, Bayer will establish a reasonable scope of search. Bayer also

incorporates the General Objections set forth above.

sf-2461958

Subject to these objections and its General Objections, and after conducting a reasonable search, Bayer will produce relevant, non-privileged documents (or portions thereof) relating to the distribution of any free units of the accused products ASCENSIA® CONTOUR® and BREEZE® 2, provided that Bayer determines that such documents are in its possession, custody or control.

### REQUEST FOR PRODUCTION NO. 62:

All documents and things constituting, referring to, or relating to advertising plans, business plans, marketing plans or efforts, promotional programs or strategies on the part of Defendant, or on its behalf, concerning Defendant's Identified Electrochemical Sensors.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 62:

Bayer objects to this request to the extent it calls for documents protected by the attorney-client privilege, the attorney work product doctrine and/or any other applicable privilege, including the joint defense privilege. Bayer also objects to this request as cumulative, overbroad, unduly burdensome, and not relevant or reasonably calculated to lead to the discovery of admissible evidence. Bayer also incorporates the General Objections set forth above.

Bayer also objects that the information sought in this request does not relate to infringement or prior invention, the sole subjects of discovery during this phase of the case under the Court's Rule 16 Scheduling Order. Any requests on subjects other than infringement and prior invention must be served at the appropriate time according to the Court's Scheduling Order. Because this request is premature, Bayer will not respond at this time.

### REQUEST FOR PRODUCTION NO. 63:

All documents and things advertising, describing or promoting, by or on behalf of Defendant, its Identified Electrochemical Sensors, whether or not such documents have yet been made public, including material prepared by or used by or for persons that distribute, market or sell Defendant's Identified Electrochemical Sensors.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 63:

Bayer objects to this request to the extent it calls for documents protected by the attorney-client privilege, the attorney work product doctrine and/or any other applicable privilege,

including the joint defense privilege. Bayer also objects to this request as cumulative, overbroad, unduly burdensome, and not relevant or reasonably calculated to lead to the discovery of admissible evidence. Bayer also incorporates the General Objections set forth above.

Bayer also objects that the information sought in this request does not relate to infringement or prior invention, the sole subjects of discovery during this phase of the case under the Court's Rule 16 Scheduling Order. Any requests on subjects other than infringement and prior invention must be served at the appropriate time according to the Court's Scheduling Order. Because this request is premature, Bayer will not respond at this time.

### REQUEST FOR PRODUCTION NO. 64:

All documents and things comprising, referring to, or relating in any way to marketing materials that Defendant prepared or had prepared on its behalf in connection with the marketing and/or sale of the Identified Electrochemical Sensors.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 64:

Bayer objects to this request to the extent it calls for documents protected by the attorney-client privilege, the attorney work product doctrine and/or any other applicable privilege, including the joint defense privilege. Bayer also objects to this request as cumulative, overbroad, unduly burdensome, and not relevant or reasonably calculated to lead to the discovery of admissible evidence. Bayer also objects to this request on the grounds that it is vague and ambiguous to the extent that it uses the vague and ambiguous words and phrases "comprising," "referring," and "relating." Bayer also incorporates the General Objections set forth above.

Bayer also objects that the information sought in this request does not relate to infringement or prior invention, the sole subjects of discovery during this phase of the case under the Court's Rule 16 Scheduling Order. Any requests on subjects other than infringement and prior invention must be served at the appropriate time according to the Court's Scheduling Order. Because this request is premature, Bayer will not respond at this time.

54

**REQUEST FOR PRODUCTION NO. 65:**

All documents and things collecting, reflecting, or commenting upon feedback of any type from customers and/or users of Defendant's Identified Electrochemical Sensors.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 65:**

Bayer objects to this request to the extent it calls for documents protected by the attorney-client privilege, the attorney work product doctrine and/or any other applicable privilege, including the joint defense privilege. Bayer also objects to this request as cumulative, overbroad, unduly burdensome, and not relevant or reasonably calculated to lead to the discovery of admissible evidence. Bayer also objects to this request on the grounds that it is vague and ambiguous to the extent that it uses the vague and ambiguous words and phrases "collecting," "reflecting," and "commenting." Bayer also incorporates the General Objections set forth above.

Bayer also objects that the information sought in this request does not relate to infringement or prior invention, the sole subjects of discovery during this phase of the case under the Court's Rule 16 Scheduling Order. Any requests on subjects other than infringement and prior invention must be served at the appropriate time according to the Court's Scheduling Order. Because this request is premature, Bayer will not respond at this time.

**REQUEST FOR PRODUCTION NO. 66:**

All documents and things concerning, referring to or relating to communications with distributors of Defendant's Identified Electrochemical Sensors, or potential distributors of Defendant's Identified Electrochemical Sensors.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 66:**

Bayer objects to this request to the extent it calls for documents protected by the attorney-client privilege, the attorney work product doctrine and/or any other applicable privilege, including the joint defense privilege. Bayer also objects to this request as cumulative, overbroad, unduly burdensome, and not relevant or reasonably calculated to lead to the discovery of admissible evidence. Bayer also objects to this request on the grounds that it is vague and ambiguous to the extent that it uses the vague and ambiguous words and phrases "comprising," "referring," and "relating." Bayer also incorporates the General Objections set forth above.

sf-2461958

Bayer also objects that the information sought in this request does not relate to infringement or prior invention, the sole subjects of discovery during this phase of the case under the Court's Rule 16 Scheduling Order. Any requests on subjects other than infringement and prior invention must be served at the appropriate time according to the Court's Scheduling Order. Because this request is premature, Bayer will not respond at this time.

### REQUEST FOR PRODUCTION NO. 67:

All documents and things concerning, referring to or relating to communications with physicians, nurses, clinics or other potential users of Defendant's Identified Electrochemical Sensors.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 67:

Bayer objects to this request to the extent it calls for documents protected by the attorney-client privilege, the attorney work product doctrine and/or any other applicable privilege, including the joint defense privilege. Bayer also objects to this request as cumulative, overbroad, unduly burdensome, and not relevant or reasonably calculated to lead to the discovery of admissible evidence. Bayer also objects to this request on the grounds that it is vague and ambiguous to the extent that it uses the vague and ambiguous words and phrases "comprising," "referring," and "relating." Bayer also incorporates the General Objections set forth above.

Bayer also objects that the information sought in this request does not relate to infringement or prior invention, the sole subjects of discovery during this phase of the case under the Court's Rule 16 Scheduling Order. Any requests on subjects other than infringement and prior invention must be served at the appropriate time according to the Court's Scheduling Order. Because this request is premature, Bayer will not respond at this time.

### REQUEST FOR PRODUCTION NO. 68:

All documents and things concerning, referring to or relating to any study, projection, market or other evaluation or analysis of past, current or future sales or revenues for the Identified Electrochemical Sensors.

56

**RESPONSE TO REQUEST FOR PRODUCTION NO. 68:**

Bayer objects to this request to the extent it calls for documents protected by the attorney-client privilege, the attorney work product doctrine and/or any other applicable privilege, including the joint defense privilege. Bayer also objects to this request as cumulative, overbroad, unduly burdensome, and not relevant or reasonably calculated to lead to the discovery of admissible evidence. Bayer also objects to this request on the grounds that it is vague and ambiguous to the extent that it uses the vague and ambiguous words and phrases "concerning," "referring," and "relating." Bayer also incorporates the General Objections set forth above.

Bayer also objects that the information sought in this request does not relate to infringement or prior invention, the sole subjects of discovery during this phase of the case under the Court's Rule 16 Scheduling Order. Any requests on subjects other than infringement and prior invention must be served at the appropriate time according to the Court's Scheduling Order. Because this request is premature, Bayer will not respond at this time.

**REQUEST FOR PRODUCTION NO. 69:**

All documents and things concerning, referring to or relating to any study, projection, market or other evaluation or analysis of past, current or future sales or revenues for Electrochemical Sensors sold by Defendant, Plaintiffs or any other person.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 69:**

Bayer objects to this request to the extent it calls for documents protected by the attorney-client privilege, the attorney work product doctrine and/or any other applicable privilege, including the joint defense privilege. Bayer also objects to this request as cumulative, overbroad, unduly burdensome, and not relevant or reasonably calculated to lead to the discovery of admissible evidence. Bayer also objects to this request on the grounds that it is vague and ambiguous to the extent that it uses the vague and ambiguous words and phrases "concerning," "referring," and "relating." Bayer also incorporates the General Objections set forth above.

Bayer also objects that the information sought in this request does not relate to infringement or prior invention, the sole subjects of discovery during this phase of the case under the Court's Rule 16 Scheduling Order. Any requests on subjects other than infringement and

57

prior invention must be served at the appropriate time according to the Court's Scheduling Order.

Because this request is premature, Bayer will not respond at this time.

### REQUEST FOR PRODUCTION NO. 70:

All documents and things concerning, referring to or relating to actual or projected sales or market share by Defendant, Plaintiffs or any other person of any Electrochemical Sensors.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 70:

This Request has been withdrawn by Plaintiffs. *See* February 15, 2008 Letter from

Plaintiffs' Counsel to Defense Counsel.

### REQUEST FOR PRODUCTION NO. 71:

All documents and things constituting, referring to or relating to Defendant's budgets, forecasts, projections, short and long term business and strategic plans, and short and long term reports related to sales activity for Identified Electrochemical Sensors.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 71:

Bayer objects to this request to the extent it calls for documents protected by the attorney-client privilege, the attorney work product doctrine and/or any other applicable privilege, including the joint defense privilege. Bayer also objects to this request as cumulative, overbroad, unduly burdensome, and not relevant or reasonably calculated to lead to the discovery of admissible evidence. Bayer also objects to this request on the grounds that it is vague and ambiguous to the extent that it uses the vague and ambiguous words and phrases "constituting," "referring," and "relating." Bayer also incorporates the General Objections set forth above.

Bayer also objects that the information sought in this request does not relate to infringement or prior invention, the sole subjects of discovery during this phase of the case under the Court's Rule 16 Scheduling Order. Any requests on subjects other than infringement and prior invention must be served at the appropriate time according to the Court's Scheduling Order. Because this request is premature, Bayer will not respond at this time.

### REQUEST FOR PRODUCTION NO. 72:

Documents sufficient to identify all quantities of Defendant's Identified Electrochemical Sensors manufactured in or imported into the United States for any purpose.

58

**RESPONSE TO REQUEST FOR PRODUCTION NO. 72:**

This Request has been withdrawn by Plaintiffs. *See* February 15, 2008 Letter from

Plaintiffs' Counsel to Defense Counsel.

**REQUEST FOR PRODUCTION NO. 73:**

Documents sufficient to identify Defendant's current inventory of its Identified
Electrochemical Sensors, in terms of potential value in sales.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 73:**

This Request has been withdrawn by Plaintiffs. *See* February 15, 2008 Letter from

Plaintiffs' Counsel to Defense Counsel.

**REQUEST FOR PRODUCTION NO. 74:**

All documents and things concerning, referring to or relating to Defendant's sales of the
Identified Electrochemical Sensors, by month and by year, from 2002 to present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 74:**

This Request has been withdrawn by Plaintiffs. *See* February 15, 2008 Letter from

Plaintiffs' Counsel to Defense Counsel.

**REQUEST FOR PRODUCTION NO. 75:**

All documents and things evidencing, referring to or relating to any income or revenue
received, prices charged, costs incurred or profits earned by Defendant in connection with the
Identified Electrochemical Sensors sold in the United States.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 75:**

This Request has been withdrawn by Plaintiffs. *See* February 15, 2008 Letter from

Plaintiffs' Counsel to Defense Counsel.

**REQUEST FOR PRODUCTION NO. 76:**

All documents and things from which Defendant's unit sales and revenue of each model
or type of Identified Electrochemical Sensors may be determined for each monthly and annual
time period from 2002 to present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 76:**

This Request has been withdrawn by Plaintiffs. *See* February 15, 2008 Letter from

Plaintiffs' Counsel to Defense Counsel.

sf-2461958

**REQUEST FOR PRODUCTION NO. 77:**

All documents and things from which Defendant's gross dollar sales of each model or type of Identified Electrochemical Sensors may be determined for each monthly and annual time period from 2002 to present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 77:**

This Request has been withdrawn by Plaintiffs. *See* February 15, 2008 Letter from

Plaintiffs' Counsel to Defense Counsel.

**REQUEST FOR PRODUCTION NO. 78:**

All documents constituting, concerning, referring to or relating to any determination of profit (including any estimates of unit or marginal profit, cost of goods sold, incremental costs, as well as any actual determination of profit) from Defendant's sales of Identified Electrochemical Sensors.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 78:**

This Request has been withdrawn by Plaintiffs. *See* February 15, 2008 Letter from

Plaintiffs' Counsel to Defense Counsel.

**REQUEST FOR PRODUCTION NO. 79:**

All documents and things constituting, referring to or relating to sales summaries, sales invoices, purchases orders or discount summaries relating to Defendant's Identified Electrochemical Sensors.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 79:**

This Request has been withdrawn by Plaintiffs. *See* February 15, 2008 Letter from

Plaintiffs' Counsel to Defense Counsel.

**REQUEST FOR PRODUCTION NO. 80:**

All documents and things identifying Defendant's distributors, dealers, sellers and customers of Defendant's Identified Electrochemical Sensors and volume of sales in units and dollars for each broken down on a monthly basis (and if monthly data is not available, quarterly or any other periodic basis that you keep records for) from 2002 to present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 80:**

This Request has been withdrawn by Plaintiffs. *See* February 15, 2008 Letter from

Plaintiffs' Counsel to Defense Counsel.

sf-2461958

**REQUEST FOR PRODUCTION NO. 81:**

All documents and things constituting, relating to or referring to Defendant's pricing of Identified Electrochemical Sensors, any changes in Defendant's pricing of Identified Electrochemical Sensors and/or any discounts offered or given on Defendant's Identified Electrochemical Sensors.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 81:**

This Request has been withdrawn by Plaintiffs. *See* February 15, 2008 Letter from

Plaintiffs' Counsel to Defense Counsel.

**REQUEST FOR PRODUCTION NO. 82:**

All documents and things constituting, referring to or relating to unit pricing structure or pricing policies for each model or type of Defendant's Identified Electrochemical Sensors.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 82:**

This Request has been withdrawn by Plaintiffs. *See* February 15, 2008 Letter from

Plaintiffs' Counsel to Defense Counsel.

**REQUEST FOR PRODUCTION NO. 83:**

All documents and things constituting, referring to or relating to Defendant's contracts with customers, dealers, distributors and sellers for the sale of Defendant's Identified Electrochemical Sensors.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 83:**

This Request has been withdrawn by Plaintiffs. *See* February 15, 2008 Letter from

Plaintiffs' Counsel to Defense Counsel.

**REQUEST FOR PRODUCTION NO. 84:**

All documents and things referring to, relating to or discussing retail pricing, price levels, price breaks or discounts (retail or distributor) with Defendant's distributors, dealers, sellers and customers of Defendant's Identified Electrochemical Sensors.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 84:**

This Request has been withdrawn by Plaintiffs. *See* February 15, 2008 Letter from

Plaintiffs' Counsel to Defense Counsel.

**REQUEST FOR PRODUCTION NO. 85:**

All documents and things concerning, referring to or relating to competition for the sale of Electrochemical Sensors, including competition between Defendant and its competitors, including but not limited to Plaintiffs, and any other defendants in this action.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 85:**

This Request has been withdrawn by Plaintiffs. *See* February 15, 2008 Letter from

Plaintiffs' Counsel to Defense Counsel.

**REQUEST FOR PRODUCTION NO. 86:**

All documents and things concerning, referring to or relating to market share, market share studies and marketing analyses or reports relating to Identified Electrochemical Sensors, including those prepared by or on behalf of Defendant, as well as industry reports.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 86:**

This Request has been withdrawn by Plaintiffs. *See* February 15, 2008 Letter from

Plaintiffs' Counsel to Defense Counsel.

**REQUEST FOR PRODUCTION NO. 87:**

All documents and things concerning, referring to or relating to marketing studies or research showing the size, forecast size or potential size of the market or industry for Defendant's Identified Electrochemical Sensors.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 87:**

This Request has been withdrawn by Plaintiffs. *See* February 15, 2008 Letter from

Plaintiffs' Counsel to Defense Counsel.

**REQUEST FOR PRODUCTION NO. 88:**

All documents and things concerning, referring to or relating to marketing studies or research showing the size, forecast size or potential size of the customer base for Defendant's Identified Electrochemical Sensors, including but not limited to sales to distributors as well as consumers.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 88:**

This Request has been withdrawn by Plaintiffs. *See* February 15, 2008 Letter from

Plaintiffs' Counsel to Defense Counsel.

62

**REQUEST FOR PRODUCTION NO. 89:**

All documents and things concerning, referring to or relating to market share, market share studies and marketing analyses or reports relating to products competitive with Defendant's Identified Electrochemical Sensors (including but not limited to the products of Defendant's competitors such as Plaintiffs, and any other defendants in this action), including those prepared by or on behalf of Defendant, as well as industry reports.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 89:**

This Request has been withdrawn by Plaintiffs. *See* February 15, 2008 Letter from

Plaintiffs' Counsel to Defense Counsel.

**REQUEST FOR PRODUCTION NO. 90:**

All documents and things concerning, referring to or relating to marketing studies or research showing the size, forecast size or potential size of the market or industry for products competitive with Defendant's Identified Electrochemical Sensors, including but not limited to the products of Defendant's competitors such as Plaintiffs, and any other defendants in this action.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 90:**

This Request has been withdrawn by Plaintiffs. *See* February 15, 2008 Letter from

Plaintiffs' Counsel to Defense Counsel.

**REQUEST FOR PRODUCTION NO. 91:**

All documents and things concerning, referring to or relating to marketing studies or research showing the size, forecast size or potential size of the customer base for products competitive with Defendant's Identified Electrochemical Sensors (including but not limited to the products of Defendant's competitors such as Plaintiffs, and any other defendants in this action), including but not limited to sales to distributors as well as consumers.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 91:**

This Request has been withdrawn by Plaintiffs. *See* February 15, 2008 Letter from

Plaintiffs' Counsel to Defense Counsel.

**REQUEST FOR PRODUCTION NO. 92:**

All documents and things concerning, referring to or relating to information on the marketing or sale by Defendant or any of its customers, distributors, dealers or sellers of Defendant's Identified Electrochemical Sensors.

sf-2461958

## RESPONSE TO REQUEST FOR PRODUCTION NO. 92:

This Request has been withdrawn by Plaintiffs. *See* February 15, 2008 Letter from

Plaintiffs' Counsel to Defense Counsel.

## REQUEST FOR PRODUCTION NO. 93:

All documents and things concerning, referring to or relating to information on the marketing or sale of products competitive with Defendant's Identified Electrochemical Sensors, including but not limited to the products of Defendant's competitors such as Plaintiffs, and any other defendants in this action.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 93:

This Request has been withdrawn by Plaintiffs. *See* February 15, 2008 Letter from

Plaintiffs' Counsel to Defense Counsel.

## REQUEST FOR PRODUCTION NO. 94:

All documents and things concerning, referring to or relating to information on market trends for Electrochemical Sensors, including but not limited to the products of Defendant's competitors such as Plaintiffs, and any other defendants in this action.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 94:

This Request has been withdrawn by Plaintiffs. *See* February 15, 2008 Letter from

Plaintiffs' Counsel to Defense Counsel.

## REQUEST FOR PRODUCTION NO. 95:

All documents and things concerning, referring to or relating to Defendant's market share of the total market for Electrochemical Sensors on a monthly basis (and if monthly data is not available, quarterly or any other periodic basis that you keep records for) from 2002 to present.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 95:

This Request has been withdrawn by Plaintiffs. *See* February 15, 2008 Letter from

Plaintiffs' Counsel to Defense Counsel.

## REQUEST FOR PRODUCTION NO. 96:

All documents and things from which Defendant's cost of production (including manufacturing costs, costs of materials, labor, overhead and other cost items) for each model or type of Identified Electrochemical Sensors may be determined for each monthly and annual time period from 2002 to present.

sf-2461958

**RESPONSE TO REQUEST FOR PRODUCTION NO. 96:**

This Request has been withdrawn by Plaintiffs. *See* February 15, 2008 Letter from

Plaintiffs' Counsel to Defense Counsel.

**REQUEST FOR PRODUCTION NO. 97:**

All documents and things from which Defendant's cost of sales (including selling
expenses, marketing, distribution, attributed research and development and other general or
administrative expense and interest expense) for each model or type of Identified
Electrochemical Sensors may be determined for each monthly and annual time period from 2002
to present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 97:**

This Request has been withdrawn by Plaintiffs. *See* February 15, 2008 Letter from

Plaintiffs' Counsel to Defense Counsel.

**REQUEST FOR PRODUCTION NO. 98:**

All documents and things concerning, referring to or relating to any analyses done by or
on behalf of Defendant relating to the cost of Defendant's Identified Electrochemical Sensors
compared to the cost of any other Electrochemical Sensors.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 98:**

This Request has been withdrawn by Plaintiffs. *See* February 15, 2008 Letter from

Plaintiffs' Counsel to Defense Counsel.

**REQUEST FOR PRODUCTION NO. 99:**

All financial statements, quarterly and annual reports and other shareholder reports for
Defendant from 2002 to present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 99:**

This Request has been withdrawn by Plaintiffs. *See* February 15, 2008 Letter from

Plaintiffs' Counsel to Defense Counsel.

**REQUEST FOR PRODUCTION NO. 100:**

All documents comprising any and all financial statements (audited and unaudited),
financial projections or forecasts and profit and loss statements prepared by Defendant or on
Defendant's behalf from 2002 to present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 100:**

This Request has been withdrawn by Plaintiffs. *See* February 15, 2008 Letter from

Plaintiffs' Counsel to Defense Counsel.

**REQUEST FOR PRODUCTION NO. 101:**

All documents comprising any and all financial statements (audited and unaudited) for
Defendant (as a whole, by division, by product line and by product), e.g., income statements,
balance sheets and statements of cash flow for each monthly, quarterly, annual or other period
from 2002 to present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 101:**

This Request has been withdrawn by Plaintiffs. *See* February 15, 2008 Letter from

Plaintiffs' Counsel to Defense Counsel.

**REQUEST FOR PRODUCTION NO. 102:**

All documents and things constituting, referring to or relating to Defendant's financial
planning with respect to Identified Electrochemical Sensors.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 102:**

This Request has been withdrawn by Plaintiffs. *See* February 15, 2008 Letter from

Plaintiffs' Counsel to Defense Counsel.

**REQUEST FOR PRODUCTION NO. 103:**

All documents and things constituting, referring to or relating to Defendant's issued
patents or pending patent applications directed to any aspect of Defendant's Identified
Electrochemical Sensors, including any patents and pending patent applications on which
Defendant is a licensee.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 103:**

Bayer objects to this request to the extent it calls for documents protected by the attorney-

client privilege, the attorney work product doctrine and/or any other applicable privilege,

including the joint defense privilege.    Bayer objects to this request as premature, to the extent

that it does not comport with the Rule 16 Scheduling Order and attempts to seek information

irrelevant to infringement or prior invention, the sole subjects of discovery during this phase of

the case.    Bayer will not produce any documents in Phase I that are not relevant to infringement

sf-2461958

or prior invention. Bayer also objects to this request as cumulative, overbroad, unduly

burdensome, and not relevant or reasonably calculated to lead to the discovery of admissible

evidence. Bayer also objects to this request on the grounds that it is vague and ambiguous to the

extent that it uses the vague and ambiguous words and phrases "constituting," "referring," and

"relating." Bayer also incorporates the General Objections set forth above.

Subject to these objections and its General Objections, and after conducting a reasonable

search, Bayer will produce relevant, non-privileged documents (or portions thereof) sufficient to

show prior invention, provided that Bayer determines that such documents are in its possession,

custody or control.

## REQUEST FOR PRODUCTION NO. 104:

All documents and things concerning, referring to or relating to United States or foreign
patent applications, requests for reexamination, patents, invention certificates, reissues,
reexaminations, invention disclosures and file histories concerning or relating to any aspect of
Defendant's Identified Electrochemical Sensors.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 104:

Bayer objects to this request to the extent it calls for documents protected by the attorney-

client privilege, the attorney work product doctrine and/or any other applicable privilege,

including the joint defense privilege. Bayer objects to this request as premature, to the extent

that it does not comport with the Rule 16 Scheduling Order and attempts to seek information

irrelevant to infringement or prior invention, the sole subjects of discovery during this phase of

the case. Bayer will not produce any documents in Phase I that are not relevant to infringement

or prior invention. Bayer also objects to this request as cumulative, overbroad, unduly

burdensome, and not relevant or reasonably calculated to lead to the discovery of admissible

evidence. Bayer also objects to this request on the grounds that it is vague and ambiguous to the

extent that it uses the vague and ambiguous words and phrases "constituting," "referring," and

"relating." Bayer also incorporates the General Objections set forth above.

Subject to these objections and its General Objections, and after conducting a reasonable

search, Bayer will produce relevant, non-privileged documents (or portions thereof) sufficient to

sf-2461958

show prior invention, provided that Bayer determines that such documents are in its possession, custody or control

## REQUEST FOR PRODUCTION NO. 105:

All documents referring to or relating to Defendant's ASCENSIA® BREEZE® 2 and ASCENSIA® CONTOUR® (5 second test time) products.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 105:

Bayer objects to this request to the extent it calls for documents protected by the attorney-client privilege, the attorney work product doctrine and/or any other applicable privilege, including the joint defense privilege.   Bayer objects to this request as premature, to the extent that it does not comport with the Rule 16 Scheduling Order and attempts to seek information irrelevant to infringement or prior invention, the sole subjects of discovery during this phase of the case. Bayer will not produce any documents in Phase I that are not relevant to infringement or prior invention.  Bayer also objects to this request as cumulative, overbroad, unduly burdensome, and not relevant or reasonably calculated to lead to the discovery of admissible evidence.  Bayer also objects to this request on the grounds that it is vague and ambiguous to the extent that it uses the vague and ambiguous words and phrases "referring," "relating." Bayer also incorporates the General Objections set forth above.

Subject to these objections and its General Objections, and after conducting a reasonable search, Bayer will produce relevant, non-privileged documents (or portions thereof) sufficient to show the structure or function of the accused products ASCENSIA® CONTOUR® and BREEZE® 2, provided that Bayer determines that such documents are in its possession, custody or control.

## REQUEST FOR PRODUCTION NO. 106:

All documents concerning, referring to or relating to both Plaintiffs and Electrochemical Sensors.

sf-2461958

## RESPONSE TO REQUEST FOR PRODUCTION NO. 106:

Bayer incorporates the General Objections set forth above. Bayer also objects to this request to the extent it calls for documents protected by the attorney-client privilege, the attorney work product doctrine and/or any other applicable privilege, including the joint defense privilege. Bayer objects to this request as premature, to the extent that it does not comport with the Rule 16 Scheduling Order and attempts to seek information irrelevant to infringement or prior invention, the sole subjects of discovery during this phase of the case. Bayer will not produce any documents in Phase I that are not relevant to infringement or prior invention. Bayer also objects to this request on the grounds that it is vague and ambiguous to the extent that it uses the vague and ambiguous words and phrases "concerning," "referring," "relating," and "both Plaintiffs and Electrochemical Sensors." Bayer also objects to this request as cumulative, overbroad, unduly burdensome, and not relevant or reasonably calculated to lead to the discovery of admissible evidence. Accordingly, Bayer cannot produce documents as this request does not provide a reasonable means for understanding the scope of Plaintiffs' request.

## REQUEST FOR PRODUCTION NO. 107:

All documents and things relied upon or referred to in preparing your Answer.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 107:

Bayer objects to this request to the extent it calls for documents protected by the attorney-client privilege, the attorney work product doctrine and/or any other applicable privilege, including the joint defense privilege. Bayer objects to this request as premature, to the extent that it does not comport with the Rule 16 Scheduling Order and attempts to seek information irrelevant to infringement or prior invention, the sole subjects of discovery during this phase of the case. Bayer will not produce any documents in Phase I that are not relevant to infringement or prior invention. Bayer also objects to this request as cumulative, overbroad, unduly burdensome, and not relevant or reasonably calculated to lead to the discovery of admissible evidence. Bayer also objects to this request on the grounds that it is vague and ambiguous to the

69

extent that it uses the vague and ambiguous words and phrases "referred to," "relied upon." Bayer also incorporates the General Objections set forth above.

Subject to these objections and its General Objections, and after conducting a reasonable search, Bayer will produce relevant, non-privileged documents (or portions thereof) sufficient to show the factual basis for Bayer's Answer and relating to Bayer's position that the patents-in-suit (or portions thereof) are not infringed by the accused ASCENSIA® CONTOUR® and BREEZE® 2 products and to any assertion of prior invention, provided that Bayer determines that such documents are in its possession, custody or control.

**REQUEST FOR PRODUCTION NO. 108:**

All documents and things concerning or forming the basis for any of the Affirmative Defenses asserted in Defendant's Answer.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 108:**

Bayer objects to this request to the extent it calls for documents protected by the attorney-client privilege, the attorney work product doctrine and/or any other applicable privilege, including the joint defense privilege. Bayer objects to this request as premature, to the extent that it does not comport with the Rule 16 Scheduling Order and attempts to seek information irrelevant to infringement or prior invention, the sole subjects of discovery during this phase of the case. Bayer will not produce any documents in Phase I that are not relevant to infringement or prior invention. Bayer also objects to this request as cumulative, overbroad, unduly burdensome, and not relevant or reasonably calculated to lead to the discovery of admissible evidence. Bayer also objects to this request on the grounds that it is vague and ambiguous to the extent that it uses the vague and ambiguous words and phrases "concerning," "forming." Bayer also incorporates the General Objections set forth above.

Subject to these objections and its General Objections, and after conducting a reasonable search, Bayer will produce relevant, non-privileged documents (or portions thereof) sufficient to show the factual basis for Bayer's Answer and relating to Bayer's position that the patents-in-suit (or portions thereof) are not infringed by the accused ASCENSIA® CONTOUR® and

70

BREEZE® 2 products and to any assertion of prior invention, provided that Bayer determines that such documents are in its possession, custody or control.

### REQUEST FOR PRODUCTION NO. 109:

All documents and things constituting, referring to or relating to any agreements (or drafts of agreements) between Plaintiffs (individually or collectively) and Bayer, including but not limited to the June 3, 2003 Settlement and License Agreement referred to in paragraph 47 of Bayer's Answer.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 109:

Bayer objects to this request to the extent it calls for documents protected by the attorney-client privilege, the attorney work product doctrine and/or any other applicable privilege, including the joint defense privilege. Bayer also objects to this request as cumulative, overbroad, unduly burdensome, and not relevant or reasonably calculated to lead to the discovery of admissible evidence. Bayer also objects to this request on the grounds that it is vague and ambiguous to the extent that it uses the vague and ambiguous words and phrases "constituting," "referring," and "relating." Bayer also incorporates the General Objections set forth above.

Bayer also objects that the information sought in this request does not relate to infringement or prior invention, the sole subjects of discovery during this phase of the case under the Court's Rule 16 Scheduling Order. Any requests on subjects other than infringement and prior invention must be served at the appropriate time according to the Court's Scheduling Order. Because this request is premature, Bayer will not respond at this time.

### REQUEST FOR PRODUCTION NO. 110:

All documents referred to in your Initial Disclosures pursuant to F.R.Civ.P. 26(a)(1).

### RESPONSE TO REQUEST FOR PRODUCTION NO. 110:

Bayer objects to this request to the extent it calls for documents protected by the attorney-client privilege, the attorney work product doctrine and/or any other applicable privilege, including the joint defense privilege. Bayer objects to this request as premature, to the extent that it does not comport with the Rule 16 Scheduling Order and attempts to seek information

71

irrelevant to infringement or prior invention, the sole subjects of discovery during this phase of the case. Bayer will not produce any documents in Phase I that are not relevant to infringement or prior invention. Bayer also objects to this request as cumulative, overbroad, unduly burdensome, and not relevant or reasonably calculated to lead to the discovery of admissible evidence. Bayer also objects to this request to the extent that it calls for documents that are not in Bayer's possession, custody, or control. Bayer also objects to this request to the extent that Roche is already in possession or control of documents relevant to this request. Bayer also incorporates the General Objections set forth above.

Bayer has not yet made Initial Disclosures pursuant to F.R.Civ.P. 26(a)(1). Subject to these objections and its General Objections, and after conducting a reasonable search, Bayer will produce relevant, non-privileged (or portions thereof) documents referred to in Bayer's initial disclosures, provided that Bayer determines that such document is in its possession, custody or control, consistent with the Scheduling Order and consistent with the Federal Rules of Civil Procedure.

## REQUEST FOR PRODUCTION NO. 111:

All documents requested for identification by Plaintiffs' First Set of Interrogatories to Defendant Bayer Healthcare, LLC (Nos. 1-18), served concurrently herewith.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 111:

Bayer objects to this request to the extent it calls for documents protected by the attorney-client privilege, the attorney work product doctrine and/or any other applicable privilege, including the joint defense privilege. Bayer objects to this request as premature, to the extent that it does not comport with the Rule 16 Scheduling Order and attempts to seek information irrelevant to infringement or prior invention, the sole subjects of discovery during this phase of the case. Bayer will not produce any documents in Phase I that are not relevant to infringement or prior invention. Bayer also objects to this request as cumulative, overbroad, unduly burdensome, and not relevant or reasonably calculated to lead to the discovery of admissible evidence. Bayer also incorporates the General Objections set forth above.

72

Subject to these objections and its General Objections, and after conducting a reasonable search, Bayer will produce relevant, non-privileged (or portions thereof) documents referred to in Bayer's response to Plaintiff's First Set of Interrogatories to Defendant Bayer Healthcare, LLC (Nos. 1-18), provided that Bayer determines that such document is in its possession, custody or control, consistent with the Scheduling Order and consistent with the Federal Rules of Civil Procedure.

## REQUEST FOR PRODUCTION NO. 112:

All documents relied upon, referred to or otherwise consulted directly or indirectly in responding to Plaintiffs' First Set of Interrogatories to Defendant Bayer Healthcare, LLC (Nos. 1-18), served concurrently herewith.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 112:

Bayer objects to this request to the extent it calls for documents protected by the attorney-client privilege, the attorney work product doctrine and/or any other applicable privilege, including the joint defense privilege.   Bayer objects to this request as premature, to the extent that it does not comport with the Rule 16 Scheduling Order and attempts to seek information irrelevant to infringement or prior invention, the sole subjects of discovery during this phase of the case. Bayer will not produce any documents in Phase I that are not relevant to infringement or prior invention. Bayer also objects to this request as cumulative, overbroad, unduly burdensome, and not relevant or reasonably calculated to lead to the discovery of admissible evidence. Bayer also incorporates the General Objections set forth above.

Subject to these objections and its General Objections, and after conducting a reasonable search, Bayer will produce relevant, non-privileged (or portions thereof) documents relied upon in Bayer's response to Plaintiff's First Set of Interrogatories to Defendant Bayer Healthcare, LLC (Nos. 1-18), provided that Bayer determines that such document is in its possession, custody or control, consistent with the Scheduling Order and consistent with the Federal Rules of Civil Procedure.

73

**REQUEST FOR PRODUCTION NO. 113:**

All documents and things prepared by or for, or concerning, referring to or relating to any expert retained by Defendant in this litigation.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 113:**

Bayer objects to this request to the extent it calls for documents protected by the attorney-client privilege, the attorney work product doctrine and/or any other applicable privilege, including the joint defense privilege. Bayer objects to this request as premature, to the extent that it does not comport with the Rule 16 Scheduling Order and attempts to seek information irrelevant to infringement or prior invention, the sole subjects of discovery during this phase of the case. Bayer will not produce any documents in Phase I that are not relevant to infringement or prior invention. Bayer also objects to this request as cumulative, overbroad, unduly burdensome, and not relevant or reasonably calculated to lead to the discovery of admissible evidence. Bayer also incorporates the General Objections set forth above.

Bayer has not yet made a determination as to its experts. Subject to these objections and its General Objections, and after conducting a reasonable search, Bayer will produce relevant, non-privileged copies (or portions thereof) of reports by experts retained to testify at trial, and documents relied upon in reaching their expert opinions pertaining to the issues of infringement and prior invention, consistent with the Scheduling Order and the Federal Rules of Civil Procedure.

**REQUEST FOR PRODUCTION NO. 114:**

All documents and things upon which you intend to rely at any time during this litigation.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 114:**

Bayer objects to this request to the extent it calls for documents protected by the attorney-client privilege, the attorney work product doctrine and/or any other applicable privilege, including the joint defense privilege. Bayer objects to this request as premature, to the extent that it does not comport with the Rule 16 Scheduling Order and attempts to seek information irrelevant to infringement or prior invention, the sole subjects of discovery during this phase of

74

the case. Bayer will not produce any documents in Phase I that are not relevant to infringement or prior invention. Bayer also objects to this request as cumulative, overbroad, unduly burdensome, and not relevant or reasonably calculated to lead to the discovery of admissible evidence. Bayer also incorporates the General Objections set forth above.

Bayer has not yet made a determination as to all documents and things upon which it may rely. Subject to these objections and its General Objections, and after conducting a reasonable search, Bayer will produce relevant, non-privileged exhibits, or documents attached to reports, motions, pleadings, or other papers that have been filed with the Court or served on any party.

**REQUEST FOR PRODUCTION NO. 115:**

All documents and things you intend to introduce as exhibits during the trial of this matter.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 115:**

Bayer objects to this request to the extent it calls for documents protected by the attorney-client privilege, the attorney work product doctrine and/or any other applicable privilege, including the joint defense privilege.   Bayer objects to this request as premature, to the extent that it does not comport with the Rule 16 Scheduling Order and attempts to seek information irrelevant to infringement or prior invention, the sole subjects of discovery during this phase of the case. Bayer will not produce any documents in Phase I that are not relevant to infringement or prior invention. Bayer also objects to this request as cumulative, overbroad, unduly burdensome, and not relevant or reasonably calculated to lead to the discovery of admissible evidence. Bayer also incorporates the General Objections set forth above.

Bayer has not yet made a determination as to exhibits it will use at trial. Subject to these objections and its General Objections, and after conducting a reasonable search, Bayer will produce relevant, non-privileged copies (or portions thereof) of trial exhibits pertaining to the issues of infringement and prior invention on which it relies, consistent with the Scheduling Order and the Federal Rules of Civil Procedure.

75

## REQUEST FOR PRODUCTION NO. 116:

All documents and things describing, referring to, or relating to Defendant's information archival and/or retrieval system containing any information related to design, manufacture, promotion or sale of Defendant's Identified Electrochemical Sensors.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 116:

Bayer objects to this request to the extent it calls for documents protected by the attorney-client privilege, the attorney work product doctrine and/or any other applicable privilege, including the joint defense privilege.    Bayer objects to this request as premature, to the extent that it does not comport with the Rule 16 Scheduling Order and attempts to seek information irrelevant to infringement or prior invention, the sole subjects of discovery during this phase of the case.  Bayer will not produce any documents in Phase I that are not relevant to infringement or prior invention.  Bayer also objects to this request as cumulative, overbroad, unduly burdensome, and not relevant or reasonably calculated to lead to the discovery of admissible evidence.  Bayer objects to this request on the grounds that it is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence as to the vague and ambiguous words or phrases, "describing," "referring," "relating."  Bayer also incorporates the General Objections set forth above.

Subject to these objections and its General Objections, and after conducting a reasonable search, Bayer will produce relevant, non-privileged copies (or portions thereof) of documents sufficient to identify systems used to store information regarding the structure and function of the ASCENCIA® CONTOUR® and BREEZE® 2 products during the time period relevant to this litigation, provided that Bayer determines that such documents are in its possession, custody or control.

## REQUEST FOR PRODUCTION NO. 117:

All documents and things constituting, referring to or relating to Defendant's policies, practices and/or procedures with respect to the generation, distribution, storage, retention or destruction of documents and records, effective as of or subsequent to 2002.

sf-2461958

## RESPONSE TO REQUEST FOR PRODUCTION NO. 117:

Bayer objects to this request to the extent it calls for documents protected by the attorney-client privilege, the attorney work product doctrine and/or any other applicable privilege, including the joint defense privilege.   Bayer objects to this request as premature, to the extent that it does not comport with the Rule 16 Scheduling Order and attempts to seek information irrelevant to infringement or prior invention, the sole subjects of discovery during this phase of the case. Bayer will not produce any documents in Phase 1 that are not relevant to infringement or prior invention. Bayer also objects to this request as cumulative, overbroad, unduly burdensome, and not relevant or reasonably calculated to lead to the discovery of admissible evidence. Bayer objects to this request on the grounds that it is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence as to the vague and ambiguous words or phrases, "describing," "referring," "relating." Bayer also incorporates the General Objections set forth above.

Subject to these objections and its General Objections, and after conducting a reasonable search, Bayer will produce relevant, non-privileged copies (or portions thereof) of documents sufficient to show the policies and procedures regarding document retention during the time period relevant to this litigation, provided that Bayer determines that such documents are in its possession, custody or control.

## REQUEST FOR PRODUCTION NO. 118:

Documents sufficient to identify all files or repositories in which any document responsive to the foregoing requests is maintained in the normal course of business and each index, key, code or other means of accessing and locating documents within such files or repositories.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 118:

Bayer objects to this request to the extent it calls for documents protected by the attorney-client privilege, the attorney work product doctrine and/or any other applicable privilege, including the joint defense privilege.   Bayer objects to this request as premature, to the extent that it does not comport with the Rule 16 Scheduling Order and attempts to seek information

77

irrelevant to infringement or prior invention, the sole subjects of discovery during this phase of the case. Bayer will not produce any documents in Phase I that are not relevant to infringement or prior invention. Bayer also objects to this request as cumulative, overbroad, unduly burdensome, and not relevant or reasonably calculated to lead to the discovery of admissible evidence. Bayer objects to this request on the grounds that it is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence as to the vague and ambiguous words or phrases, "describing," "referring," "relating." Bayer objects to this request as overbroad and unduly burdensome as written since it would require Bayer to conduct a search for responsive documents broader than that which is required under the Federal Rules. Once Bayer has determined the volume of potentially responsive documents, Bayer will establish a reasonable scope of search. Bayer also incorporates the General Objections set forth above.

Subject to these objections and its General Objections, and after a conducting a reasonable search, Bayer will produce relevant, non-privileged copies (or portions thereof) of documents sufficient to identify files or repositories used to store information related to the structure and function of the accused ASCENSIA® CONTOUR® and BREEZE® 2 products during the time period relevant to this litigation, provided that Bayer determines that such documents are in its possession, custody or control.

## REQUEST FOR PRODUCTION NO. 119:

All documents and things not otherwise described by the above requests that refer or relate to the subject matter shown, described or claimed in the patents-in-suit.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 119:

Bayer objects to this request to the extent it calls for documents protected by the attorney-client privilege, the attorney work product doctrine and/or any other applicable privilege, including the joint defense privilege. Bayer objects to this request as premature, to the extent that it does not comport with the Rule 16 Scheduling Order and attempts to seek information irrelevant to infringement or prior invention, the sole subjects of discovery during this phase of

the case. Bayer will not produce any documents in Phase I that are not relevant to infringement or prior invention. Bayer also objects to this request as premature subject to the Scheduling Order. Bayer objects to this request on the grounds that it is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence as to the vague and ambiguous words or phrases, "refer," and "relate." Bayer also incorporates the General Objections set forth above.

Bayer also objects to this request as cumulative, overbroad, unduly burdensome, and not relevant or reasonably calculated to lead to the discovery of admissible evidence. Accordingly, Bayer cannot produce documents as this request does not provide a reasonable means for understanding the scope of Plaintiffs' request.

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

John W. Shaw (No. 3362)
Jeffrey T. Castellano (No. 4837)
1000 West Street, 17th Floor
Wilmington, DE 19801
(302) 571-6600
jcastellano@ycst.com

*Attorneys for Bayer Healthcare, LLC*

sf-2461958

OF COUNSEL:

Rachel Krevans
Wesley E. Overson
Parisa Jorjani
Daniel P. Muino
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
(415) 268-7000

Kenneth P. George
Joseph M. Casino
AMSTER ROTHSTEIN & EBENSTEIN LLP
90 Park Avenue
New York, NY 10016
(212) 336-8000

Dated:  February 29, 2008

sf-2461958

## CERTIFICATE OF SERVICE

I, Jeffrey T. Castellano, Esquire, hereby certify that on February 29, 2008, I caused

copies of the foregoing document to be served on the following counsel in the manner indicated:

### BY HAND DELIVERY

Philip A. Rovner, Esquire
Potter Anderson & Corroon LLP
1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951

Frederick L. Cottrell, III, Esquire
Anne Shea Gaza, Esquire
Richards Layton & Finger PA
One Rodney Square
920 North King Street
Wilmington, DE 19801

Mary W. Bourke, Esquire
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899

Rodger D. Smith, II, Esquire
Morris Nichols Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347

Steven J. Balick, Esquire
Lauren E. Maguire, Esquire
Ashby & Geddes
500 Delaware Avenue
P.O. Box 1150
Wilmington, DE 19899

**BY E-MAIL**

Daniel A. Boehnen, Esquire [boehnen@mbhm.com]
Grantland G. Drutchas, Esquire [drutchas@mbhb.com]
Gary E. Hood, Esquire [hood@mbhb.com]
Nicole Keenan, Esquire [keenan@mbhb.com]
Paula S. Fritsch, Esquire [Fritsch@mbhb.com]
Sherri L. Oslick, Esquire [oslick@mbhb.com]
Jeffrey P. Armstrong [armstrongj@mbhb.com]
McDonnell Boehnen Hulbert & Bergoff LLP
300 South Wacker Drive
Chicago, IL 60606

Bradford J. Badke, Esquire [jim.badke@ropesgray.com]
Sona De, Esquire [sona.de@ropesgray.com]
Michael Kahn, Esquire [michael.kahn@ropesgray.com]
Ropes & Gray LLP
1211 Avenue of the Americas
New York, NY 10036-8704

Michael G. Adams, Esquire [mikeadams@parkerpoe.com]
Ashley L. Ellis, Esquire [ashleyellis@parkerpoe.com]
Parker Poe Adams & Bernstein LLP
Three Wachovia Center, Suite 3000
401 South Tryon Street
Charlotte, NC 28202

Edward A. Mas II, Esquire [emas@mcandrews-ip.com]
Stephen F. Sherry, Esquire [ssherry@mcandrews-ip.com]
Kirk A. Vander Leest, Esquire [kvanderleest@mcandrews-ip.com]
James M. Hafertepe, Esquire [jhafertepe@mcandrews-ip.com]
Merle S. Elliott, Esquire [melliott@mcandrews-ip.com]
McAndrews, Held & Malloy, Ltd.
500 West Madison Street
Chicago, IL 60661

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

John W. Shaw (No. 3362) [jshaw@ycst.com]
Jeffrey T .Castellano (No. 4837)
[jcastellano@ycst.com]
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19899
(302) 571-6600

*Attorneys for Defendant Bayer Healthcare, LLC*

# EXHIBIT K



**McDonnell Boehnen Hulbert & Berghoff** LLP          300 South Wacker Drive      312 913 0001 phone
Chicago, Illinois 60606-6709    312 913 0002 fax
www.mbhb.com

February 15, 2008

### Sent Via e-mail and First Class Mail

Stephen F. Sherry
McAndrews, Held & Malloy, Ltd.
500 West Madison St
34th Floor
Chicago, IL 60661
ssherry@mcandrews-ip.com

Mary W. Bourke
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 N. Orange St.
Wilmington, DE 19801
mbourke@cblh.com

Rachel Krevans
Morrison & Foerster LLP
425 Market St.
San Francisco, CA 94105
rkrevans@mofo.com

Bradford J. Badke
Ropes & Gray LLP
1211 Avenue of Americas
New York, NY 10036
Jim.badke@ropesgray.com

Re:     *Roche Diagnostic Operations, Inc. et al. v. Abbott Diabetes Care, Inc. et al.,*
*C.A. No. 07-753-JJF (D. Del.)*

Dear Counsel:

As you know, Plaintiffs Roche Diagnostics Operations, Inc. and Corange International Limited
(collectively "Plaintiffs") served document requests and interrogatories on Defendants Abbott
Diabetes Care Inc. ("ADC") and Abbott Diabetes Care Sales Corporation ("ADCSC") (collectively
"Abbott"), Bayer Healthcare, LLC ("Bayer"), LifeScan, Inc. ("LifeScan") and Nova Biomedical
Corporation ("Nova") on January 23, 2008. In light of the Court's directions at the Rule 16
Scheduling Conference on February 8, 2008 regarding phasing of this case, and as
detailed herein, Plaintiffs are withdrawing or temporarily limiting the discovery requests that
fall outside the phasing parameters directed by the Court.

Plaintiffs request the prompt production of discovery that is responsive to the requests
falling within the phasing parameters directed by the Court, and Plaintiffs reserve the right
to re-assert the other discovery requests during the appropriate future phase of discovery
activity in this case.

In particular, referring to Plaintiffs' First Set of Document Requests and Plaintiffs' First Set
of Interrogatories to each of Abbott, Bayer, LifeScan and Nova, dated January 23, 2008,

Plaintiffs are withdrawing without prejudice any requests relating solely to the issues of validity and/or damages as indicated below. You may treat the withdrawn requests as cancelled, and need not lodge objections, etc. at this stage. In addition, Plaintiffs are limiting, as also indicated below, some requests to the extent that those requests related in part to the issues of validity and/or damages.

We have received Michael Kahn's E-mail of February 13, 2008. We believe that our approach outlined herein responds to virtually all of the concerns raised by Mr. Kahn, including the scope of the requests and the number of interrogatories posed to Nova. To the extent that the Court's order and/or directions have indicated that contention interrogatories need not be answered prior to the completion of document discovery, we can discuss an appropriate time for Defendants to submit those answers; in no event is Roche required to withdraw them. (We further note that Defendants' proposed Protective Order, sent last night, does not stage document discovery and interrogatories as Mr. Kahn's letter suggests.)

Finally, as for the limits imposed by Local Rule 26.1, we believe that the interrogatories comply fully with that rule. In each instance, the interrogatory requests Defendants to provide information on a specific topic, and provides examples of information that would be required to provide a fully responsive answer on that topic. The interrogatories do not have separate subparts within the rule.

### Withdrawals/Limitations Applicable to Abbott:

**Withdrawn discovery:** Plaintiffs withdraw Interrogatory Nos. 6, 10, 11, 13 and 15. Plaintiffs also withdraw Request for Production Nos. 38, 49, 50, 70 and 72-102.

**Limited Discovery:** Plaintiffs are limiting Interrogatory Nos. 7, 8, 12 and 17 and Request for Production Nos. 36, 37, 43, 48, 53-59 and 107-123 to the issues of infringement and/or prior invention under 35 U.S.C. 102(g) of any claim in the 146 patent and the 147 patent.

### Withdrawals/Limitations Applicable to Bayer:

**Withdrawn discovery:** Plaintiffs withdraw Interrogatory Nos. 6, 10, 11 and 13. Plaintiffs also withdraw Request for Production Nos. 38, 49, 50, 70 and 72-102.

**Limited Discovery:** Plaintiffs are limiting Interrogatory Nos. 7, 8, 12 and 18 and Request for Production Nos. 36, 37, 43, 48, 53-59, 107, 108 and 110-115 to the issues of infringement and/or prior invention under 35 U.S.C. 102(g) of any claim in the 146 patent and the 147 patent.

**Withdrawals/Limitations Applicable to LifeScan**

**Withdrawn discovery:** Plaintiffs withdraw Interrogatory Nos. 6, 10, 11 and 13. Plaintiffs also withdraw Request for Production Nos. 38, 49, 50, 70 and 72-102.

**Limited Discovery:** Plaintiffs are limiting Interrogatory Nos. 7, 8, 12 and 16 and Request for Production Nos. 36, 37, 43, 48, 53-59 and 107-115 to the issues of infringement and/or prior invention under 35 U.S.C. 102(g) of any claim in the 146 patent and the 147 patent.

**Withdrawals/Limitations Applicable to Nova:**

**Withdrawn discovery:** Plaintiffs withdraw Interrogatory Nos. 6, 10, 11, 13 and 25. Plaintiffs also withdraw Request for Production Nos. 38, 49, 50, 70 and 72-102.

**Limited Discovery:** Plaintiffs are limiting Interrogatory Nos. 7, 8, 12 and 27 and Request for Production Nos. 36, 37, 43, 48, 53-59, 107-109 and 152-157 to the issues of infringement and/or prior invention under 35 U.S.C. 102(g) of any claim in the 146 patent and the 147 patent.

**Nova Counterclaim Discovery:** To the extent that Nova intends to pursue its counterclaims now, Plaintiffs maintain Interrogatory Nos. 14-17 and 20-24, and Request for Production Nos. 110-151. If Nova intends to pursue its counterclaims at a later point in the case, Plaintiffs request that Nova notify them immediately.

Sincerely,

Grantland G. Drutchas
312 913 2121 direct
drutchas@mbhb.com


cc: all counsel (via email)