## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROCHE DIAGNOSTICS OPERATIONS, INC., and CORANGE INTERNATIONAL LIMITED, | ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 07-753-JJF |
| v. | ) ) ) | |
| ABBOTT DIABETES CARE, INCORPORATED and ABBOTT DIABETES CARE SALES CORPORATION, BAYER HEALTHCARE, LLC, DIAGNOSTICS DEVICES, INC., LIFESCAN, INCORPORATED, and NOVA BIOMEDICAL CORPORATION, | ) ) ) ) ) ) ) ) ) | JURY TRIAL DEMANDED |
| Defendants. | ) | |

---

### DEFENDANT LIFESCAN, INC.'S MEMORANDUM IN OPPOSITION TO PLAINTIFF ROCHE DIAGNOSTICS OPERATIONS, INC.'S AND CORANGE INTERNATIONAL LTD'S MOTION TO COMPEL

---

Mary W. Bourke (#2356)
R. Eric Hutz (#2702)
Kristen Healey Cramer (#4512)
**CONNOLLY BOVE LODGE & HUTZ LLP**
The Nemours Building
1007 North Orange Street
Post Office Box 2207
Wilmington, DE 19899
Telephone: (302) 658-9141
Facsimile: (302) 658-5614
*Attorneys for Defendant
   LifeScan, Inc.*

**DATED:** April 28, 2008

# TABLE OF CONTENTS

**PAGE**

I.    INTRODUCTION ......................................................................................... 1

II.    NATURE AND STAGE OF THE PROCEEDINGS ......................................... 1

III.    SUMMARY OF THE ARGUMENT ............................................................ 1

IV.    STATEMENT OF FACTS ........................................................................ 3

    A.    Roche's Premature Discovery Requests ................................................. 3

    B.    Roche's Failure To Engage In Reasonable Efforts To Resolve The Discovery Disputes ............................................................................... 4

    C.    Lifescan's Agreement To Produce Documents On A Rolling Basis ...................... 5

V.    ARGUMENT ............................................................................................ 5

    A.    Roche's Effort To Impose An Arbitrary Deadline For Document Production Should Be Rejected ........................................................... 5

    B.    The Requested Licenses And Other Agreements Are Not Relevant ...................... 7

    C.    Roche Has Not Established A Basis For Requiring Production Of Documents Regarding Knowledge Of The Patents At Issue .................................. 9

    D.    Roche Has Not Established A Basis For The Wholesale Production Regarding The Decision To Introduce The Accused Products ........................... 10

    E.    Lifescan Should Not Be Required To Produce Any And All Documents Responsive To Roche's Requests ...................................................... 11

VI.    CONCLUSION ......................................................................................... 12

i

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*National Presto Industries, Inc. v. West Bend Co.,*
    76 F.3d 1185 (Fed. Cir. 1996)........................................................................... 8, 9

**STATUTES**

*35 U.S.C. §102(g)* ............................................................................................................ 3

*Fed. R. Civ. P. 26(b)(2)(c)* ............................................................................................. 3, 12

*Fed. R. Civ. P. 34* ........................................................................................................... 2, 5

## I.    INTRODUCTION

Defendant, Lifescan Incorporated ("Lifescan") submits this brief in opposition to the motion of Plaintiffs, Roche Diagnostics Operations, Inc. and Corange International Ltd. (collectively, "Roche") to compel production of documents.

## II.    NATURE AND STAGE OF THE PROCEEDINGS

On November 21, 2007, Roche filed its Complaint for patent infringement. The Complaint alleged that Lifescan and the other named defendants (collectively, "Defendants") were infringing United States Patent Nos. 7,276,146 ("'146 Patent") and 7,276,147 ("'147 Patent") (collectively the "patents-in-suit"). Lifescan answered the Complaint on January 11, 2008 (D.I. 43). Roche has also filed an Amended Complaint.

On February 8, 2008, the Court held a Rule 16 scheduling conference where it divided discovery into two Phases. On February 28, 2008, the Court adopted the Rule 16 Scheduling Order proposed by the Defendants (D.I. 77).[1] Phase 1 discovery is in progress and Roche's first set of document requests are at issue in Roche's present motion. The completion for Phase 1 document production according to the Scheduling Order is June 27, 2008 (D.I. 147, ¶3.A.i.1).

## III.    SUMMARY OF THE ARGUMENT

Roche's motion to compel should be denied in its entirety. Putting aside the question of whether Roche's motion is premature given the status of discussions with Lifescan at the time the motion was filed, Roche has failed to establish a basis for its arbitrary document production deadline and demands for production outside the scope of Phase 1 discovery. Instead, Roche's

---

[1] The final version of the Scheduling Order was entered on April 24, 2008 (D.I. 147).

action merely confirms its strategy to force unreasonable discovery schedules and demands on the Defendants to hinder their ability to coordinate an effective defense.

Roche's demand for the immediate production of substantially all Defendants' documents should be rejected. The sole basis for Roche's argument is that Defendants should not be allowed to wait until the June 27, 2008 Phase 1 document production cut-off date. However, Lifescan has repeatedly advised Roche that Lifescan does not intend to do that and will produce documents on a rolling basis. Moreover, Roche's demand ignores *Fed. R. Civ. P. 34* which only requires written responses within 30 days, circumvents this Court's April 24, 2008 Scheduling Order (D.I. 147), and ignores the practical realities of collecting documents in complex cases.

Roche's demand for licenses and agreements should also be rejected. The broad scope of the disputed document requests cover subject matter well beyond the Phase 1 issues and Roche's attempt to leverage damage-related documents into Phase 1 is improper. Moreover, the purported relevance of these documents ignores the fact that they are irrelevant to Roche's inducement claim and that Lifescan has already agreed to produce relevant information from other, more suitable sources.

Roche's demand for documents related to the patents-in-suit and their applications should also be rejected. The requests in question are clearly related to issues of willfulness and damages. Moreover, activities prior to issuance of the patents-in-suit, such as knowledge of the applications, are irrelevant to inducement. Finally, Roche did not engage in any meaningful meet and confer as to one of the disputed requests.

Roche's demand for the wholesale production of documents related to product introductions should also be rejected. Lifescan has already agreed to produce documents

relevant to Phase 1. Roche's unsupported demand for more ignores the fact that not all pre-issuance activities are relevant to Roche's inducement claims.

Finally, Roche has presented no basis for its demand for "all" documents within each category of requested documents. Roche's demand ignores the limitations of *Fed. R. Civ. P. 26(b)(2)(c)*. Moreover, rather than engage in a meaningful effort to resolve this issue, Roche filed the instant motion.

## IV.   STATEMENT OF FACTS

### A.   Roche's Premature Discovery Requests

On January 23, 2008 Roche served 119 document requests on Lifescan. Those requests were served prior to the Rule 16 Scheduling Conference held on February 8, 2008. At the Conference, this Court divided the case into two phases. Phase 1 was directed to the issues of infringement and prior invention under *35 U.S.C. §102(g)*. Phase 2 was directed to validity. Damages and willfulness, if necessary, would not be addressed until after trial on Phases 1 and 2.

Despite the Court's ruling, Roche refused to re-serve its document requests. Instead, Roche purported to limit certain of its document requests (Ex. 1). Roche withdrew Document Requests Nos. 38, 49, 50, 70 and 72-102 as to Lifescan (*Id.*, p. 3). Roche also limited Request Nos. 36, 37, 43, 48, 53-59 and 107-115 to the Phase 1 issues (*Id.*). Lifescan responded to Roche's requests on March 3, 2008. However, many of the remaining document requests were still directed to issues outside the scope of Phase 1. Accordingly, Lifescan objected on that basis among others.

**B.    Roche's Failure To Engage In Reasonable Efforts To Resolve
The Discovery Disputes**

On March 14, 2008, Roche sent a letter purporting to explain the deficiencies in

Lifescan's objections (Ex. 2).[2]  Lifescan investigated Roche's assertions and responded on April

1, 2008 (Ex. 3).  Lifescan agreed to produce certain categories of documents in view of Roche's

letter.  For example, Lifescan agreed to produce documents to the extent they related to any prior

invention defense, as well as documents that were sufficient to show the structure and operation

of the accused products (*Id.*).  As to other disputed requests, Lifescan requested further

explanation of relevance (*Id.*).

Roche and Lifescan held a telephonic meet and confer on April 1st.  Two stipulations

proposed by Roche to avoid or limit the need for certain discovery related to Roche's

inducement claim were discussed (Ex. 4, p. 2, item 2; p. 7, item 15).  Lifescan agreed to take

Roche's proposals under advisement.  The parties also discussed Roche's concern regarding

Lifescan's production of documents sufficient to show the structure and operation of the accused

products.

Lifescan subsequently confirmed the parties were at an impasse as to certain requests on

April 4, 2008 (Ex. 5).  However, Lifescan also indicated it was willing to discuss Roche's

proposed stipulations with respect to certain general objections (*Id.*, p. 1, Gen'l. Obj. 14; p. 2,

Gen'l. Obj. 1) and specific requests at issue in Roche's Motion (*Id.*, p. 2, Requests 32, 60, 61 and

65).  Since Roche had made those proposals, Lifescan requested the specific language that Roche

was proposing (*Id.*).  Lifescan also suggested a way to address each party's mutual concern

regarding the "sufficient to show" issue (*Id.*, p. 2, Requests 12, 13, 19, et al.).

---

[2] Although Roche includes Lifescan in its motion regarding document request 54, Roche
never engaged in any meet and confer as to that request.  Roche's March 14th letter never raised
it as an issue.

4

Roche never responded to Lifescan's request or proposal. Instead, Roche remained silent until it filed the present motion, thereby raising a question of whether Roche has prematurely burdened the Court with this motion in the absence of a full meet and confer.

### C. Lifescan's Agreement To Produce Documents On A Rolling Basis

During this meet and confer period, Roche also insisted that the Defendants commit to a fixed date by which substantially all of their document production would be complete. Roche selected April 30th as its "drop dead" date – two weeks after Roche's original proposed date for the close of Phase 1 document discovery and about two months prior to the date set by the April 24, 2008 Scheduling Order (D.I. 147). Although Lifescan confirmed it would produce documents on a rolling basis and not wait until the June 27, 2008 document production cut-off date, Lifescan was not able to make that commitment for a number of reasons.

## V.    ARGUMENT

### A. Roche's Effort To Impose An Arbitrary Deadline For Document Production Should Be Rejected

Roche's motion first demands that the Defendants immediately produce substantially all of their documents (D.I. 135, pp. 4-5). Roche's demand is without regard to the practical realities of responding to Roche's document request, the broad scope of those requests, or this Court's Scheduling Order. Accordingly, Roche's demand should be rejected.

First, *Fed. R. Civ. P. Rule 34* only requires service of written responses 30 days after service of the requests. *Rule 34* does not require the production of substantially all of the requested documents at that time. Indeed, this would not be practicable in complex cases such as this one where Roche filed 119 broad document requests that were subject to numerous objections (Section IV, *supra*). Although Roche withdrew some of the document requests once

the case was divided into different phases, a significant majority remain pending. Those requests cover essentially every aspect of infringement and prior invention, as well as issues beyond the scope of Phase 1.

Second, Roche's arbitrary deadline attempts to circumvent the April 24, 2008 Scheduling Order (D.I. 147). Roche originally proposed a document production deadline of April 15, 2008, essentially two months after the February 8th conference with the Court. Defendants immediately recognized Roche's proposed schedule was unworkable. Defendants proposed June 27, 2008 and this Court accepted Defendants' proposed date. Lifescan does not intend to wait until June 27th to produce its documents, and has repeatedly advised Roche of this.

Finally, Roche's demand ignores the practical realities of collecting and processing documents in complex cases. Lifescan has been, and will continue to, make reasonable good faith efforts to identify and collect documents in response to Roche's numerous document requests. Lifescan has physical and electronic documents located in multiple locations (both the U.S. and Europe) and has been working to identify, collect, review, screen for privilege and confidentiality, and prepare responsive documents for production. Lifescan also recently reached an agreement with Roche on the format for electronic production. Indeed, Lifescan expects to start producing documents the week of April 28th. However, Lifescan cannot do the impossible, including committing to Roche's arbitrary dates. For example, one electronic record source conservatively includes 500,000 documents. This source is not full-text searchable nor is it limited to the accused products. Another location outside the United States holds over 26,000 boxes of paper records that require significant time to identify documents related to the accused products from documents unrelated to any issue in this case. Roche's assertion that Lifescan

should complete its review of those sources without regard to the time-consuming difficulties in doing so is wholly unrealistic.

### B.     The Requested Licenses And Other Agreements Are Not Relevant

Roche's motion asserts request Nos. 31-35 and 57-60 relate to agreements, licenses, and communications regarding the research, design, development, manufacture, or importation of the accused products. At the outset, Lifescan agreed in its response to Roche's requests to produce documents requested in Request Nos. 31, and 33-35, subject to Lifescan's objections. The remaining requests at issue are discussed separately below.

Document Request 32, which requests all documents, related to "any" communication between Lifescan and any other person regarding the accused products without regard to date, purpose or subject matter of the communication is plainly overbroad. Lifescan subsequently agreed to produce documents sufficient to show the structure and operation of the accused products (Ex. 3, p. 7). Lifescan also agreed to consider Roche's proposed stipulations and suggested a way to address Roche's concern regarding use of "sufficient" in Lifescan's response (Section IV, *supra*). In view of Roche's apparent rejection of those proposals (*Id.*), Lifescan maintains its objections to Request 32. To the extent Request 32 can be reasonably said to be targeted to licenses and agreements, which it cannot, that issue is discussed below.

Request Nos. 57-59 are broadly directed to licenses and agreements. By their terms, they potentially cover numerous types of agreements, such as sales agreements, requirement contracts, credit agreements, and employment agreements for field sales force people. Roche has presented no legitimate basis for its broad request. To the extent certain types of licenses and agreements might be arguably relevant they are more suitably related to damages and Roche's effort to "bootstrap" their production into Phase 1 should be denied.

Although Roche now tries to narrow these requests to exclude documents related only to a reasonable royalty (D.I. 135, p. 6), Roche's explanation of the purported relevance of these requests to Phase 1 is insufficient. Licenses and agreements entered into before the issuance of the patents-in-suit (October 2, 2007) are irrelevant to inducement since acts occurring prior to issuance of the patents-in-suit do not constitute acts of inducement. *See National Presto Industries, Inc. v. West Bend Co.,* 76 F.3d 1185, 1196 (Fed. Cir. 1996). Moreover, most of the accused products were all introduced prior to issuance of the patents-in-suit. Accordingly, the relationships with third parties and potential infringers/joint tortfeasors prior to that date are not relevant. Furthermore, to the limited extent any of the agreements or licenses might include any technical information regarding the accused products, Lifescan has already agreed to produce product samples, product literature, design/development documents, and other categories that will provide Roche with relevant technical information. Roche's motion provides no reason why this information is insufficient or that the requested agreements have information relevant to Phase 1 that cannot be obtained from other sources. Similarly, Lifescan has agreed to produce documentation relevant to any prior invention defense and Roche's motion fails to explain how the requested agreements are relevant to the conception and reduction to practice needed to establish prior invention.

Request 60 is not directed to agreements and licenses but to offers for sale or sales. Such activity prior to the issue date of the patents-in-suit is not relevant to inducement (*see, e.g., National Presto Inc.*, 76 F.3d at 1196) and is only relevant to Phase 2 or damages. Nevertheless, Lifescan subsequently agreed to produce such documents to the extent they related to any prior invention defense (Ex. 3, p. 8) and agreed to consider a proposed stipulation that might limit the scope of the request (Section IV, *supra*). Roche's motion does not present any basis, separate

from its argument regarding agreements and communications, as to why the information requested is relevant. Accordingly, Roche's request should be denied.

### C.    Roche Has Not Established A Basis For Requiring Production Of Documents Regarding Knowledge Of The Patents At Issue

Roche's motion also asserts that Lifescan has refused to produce documents responsive to Request Nos. 39-45 and 53-55. However, Lifescan did agree to produce documents in Request Nos. 39-43, 45 and 53, subject to Lifescan's objections. The only document requests Lifescan has completely objected to are Request Nos. 44, 54 and 55, which are discussed separately below.

Request 44 is directed to evaluating whether to take a license or other rights under the patents-in-suit. As such, the request is clearly related to damages and willfulness issues that are not part of Phase 1. Moreover, Roche's allegation of relevance, knowledge of the patents-in-suit as a required element for inducement, does not support Roche's effort to leverage this request (and Requests 54 and 55) into Phase 1. Roche filed suit on November 21, 2007 so Lifescan clearly knew of the patents-in-suit as of the date suit was filed. Moreover, activities prior to the issue date of the patents cannot be inducement. *See, National Presto, Inc.,* 76 F.3d at 1196. Accordingly, at best, Roche would be entitled to information in the 7-week period between issuance of the patents-in-suit and filing the Complaint. However, this does not translate to the overly broad scope of Roche's request. Roche also fails to explain how alleged knowledge of the applications for the patents-in-suit has any relevance to Phase 1 since that knowledge, assuming it existed, was clearly prior to the issuance of the patents-in-suit.

Request 54 is directed to written opinions regarding the patents-in-suit. As such, the request is clearly directed to willful infringement and damages. Further, Roche's effort to force this discovery into Phase 1 fails for the reasons set forth above. More importantly, this request

was never the subject of a legitimate meet and confer prior to Roche filing its motion (Section IV, note 1, *supra*). Accordingly, Roche's motion as to Request 54 should be denied.

Request 55 is broadly directed to any communication relating to the patents-in-suit. Pursuant to a meet and confer, Lifescan agreed to produce certain documents consistent with Roche's clarification and Lifescan's objections (Ex. 5, p. 3). Given Roche's inclusion of Request 55 and assertion that the "Answering Defendants" have refused to produce all documents responsive to these requests, it is unclear whether Roche's has now reneged on the clarification which prompted Lifescan's agreement. If so, Lifescan opposes this Request for the same reasons as Nos. 44 and 54 above.

### D.    Roche Has Not Established A Basis For The Wholesale Production Regarding The Decision To Introduce The Accused Products

Roche's Motion also asserts the Defendants have refused to produce all documents covered by Request Nos. 9-13 and 22. In fact, Lifescan agreed to produce documents in response to Request Nos. 9-11 subject to its stated objections.

Lifescan objected to Request Nos. 12 and 13 because the requests for documents referring to any "utility, advantages, value or business significance" clearly related to damage issues (*Id.* at pp. 16-17). Lifescan also objected to Request 22 because the request with respect to alternatives (*e.g.,* design around efforts) was related to willfulness. As discussed in Section IV, *supra*, Lifescan subsequently agreed to produce documents sufficient to show the structure and operation of the accused products, made a proposal to resolve the "sufficient" documents issue and agreed to consider proposed Roche stipulations to resolve certain issues. Those proposals have presumably been rejected given Roche's motion.

Lifescan's original objections were proper and should be maintained. Requests 12-13 and 22 are plainly directed to issues that do not fall within Phase 1. Moreover, Roche's stated basis for relevance (D.I. 135, pp. 9-10) ignores the fact that activities taking place before the issuance of the patents-in-suit on October 2, 2007 cannot qualify as acts of inducement. Although Lifescan is willing to produce documents pursuant to Request Nos. 12-13 and 22 as part of its earlier proposal, Lifescan is not willing to produce the full scope of Roche's demand and Roche has not presented a legitimate basis for requiring Lifescan to do so.

### E.    Lifescan Should Not Be Required To Produce Any And All Documents Responsive To Roche's Requests

Roche's motion also demands that Lifescan produce all requested documents and takes issue with General Objections 18 and 25 (D.I. 135, p. 10). Although Roche asserts Lifescan's (and the other Defendants') position is inadequate, Roche never explains why. Roche also does not explain why Roche is entitled to every scrap of paper ever generated regarding a particular issue without regard to the burden and cost of collection, the relevance of the documents, the issue involved, or the duplicativeness of the documents.

During the meet and confer process, Lifescan presented a proposal that attempted to balance Roche's concern with selective production and Lifescan's concern with having to produce volumes of marginally relevant and duplicative files.[3] Lifescan proposed to identify the instances where it was producing representative documents to give Roche an opportunity to decide whether it wanted complete production of that category of documents. This proposal was sent in writing, at Roche's request, on April 4, 2008 (Ex. 5, p. 2). Roche never responded to

---

[3] During the telephone meet and confer on April 1st Roche's counsel identified a category of documents where Roche would not necessarily want every document, lending credence to Lifescan's position that Roche's requests are overly broad and unduly burdensome.

Lifescan's proposal, other than filing this motion a week later. Accordingly, Roche's blanket demand for "all" documents, without regard to whether the burden and expense outweighs its likely benefit (*see, Fed. R. Civ. P. 26(b)(2)(c)*), should be rejected.

## VI.    CONCLUSION

For the reasons set forth herein, Roche's motion to compel should be denied.

Respectfully submitted,

**CONNOLLY BOVE LODGE & HUTZ LLP**

/s/ R. Eric Hutz (#2702)
Mary W. Bourke (#2356)
R. Eric Hutz (#2702)
Kristen Healey Cramer (#4512)
The Nemours Building
1007 North Orange Street
Post Office Box 2207
Wilmington, DE 19899
Telephone: (302) 658-9141
Facsimile:  (302) 658-5614
*Attorneys for Defendant*
   *LifeScan, Inc.*

**DATED:** April 28, 2008

## CERTIFICATE OF SERVICE

I, R. Eric Hutz, Esquire, hereby certify that on April 28, 2008, I caused to be served by electronic service the foregoing document and electronically filed the same with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

Philip A. Rovner
Potter Anderson & Corroon, LLP
1313 N. Market St.
Hercules Plaza, 6th Flr.
P.O. Box 951
Wilmington, DE 19899-0951
*Attorneys for Plaintiffs Roche Diagnostic Operations, Inc. and Corange International Limited*

Daniel A. Boehnen
Grantland G. Drutchas
Gary E. Hood
Nicole Keenan
Paula S. Fritsch
Sherri L. Oslick
Jeffrey P. Armstrong
Christina L. Brown
Sean M. Sullivan
Richard A. Machonkin
Eric R. Moran
Christopher M. Cavan
Patrick G. Gattari
Benjamin R. Huber
McDonnell Boehnen Hulbert &
Berghoff LLP
300 South Wacker Drive
Chicago, IL 60606
*Attorneys for Plaintiffs Roche Diagnostic Operations, Inc. and Corange International Limited*

John W. Shaw
Jeffrey Thomas Castellano
Young, Conaway, Stargatt & Taylor
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391
*Attorneys for Defendant Bayer Healthcare, LLC*

Rodger Dallery Smith, II
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
*Attorneys for Defendant Nova Biomedical Corporation*

Frederick L. Cottrell, III
Anne Shea Gaza
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE 19899
*Attorneys for Defendants Abbott Diabetes
Care Inc. and Abbott Diabetes Care
Sales Corporation.*

Steven J. Balick
John G. Day
Lauren E. Maguire
Ashby & Geddes
500 Delaware Avenue
P.O. Box 1150
Wilmington, DE 19899
*Attorneys for Defendant Diagnostic
Devices Inc.*

Wesley E. Overson
Rachel Krevans
Jason R. Bartlett
Parisa Jorjani
Daniel P. Muino
Morrisson & Foerster LLP
425 Market Street
San Francisco, CA 94105-2482
*Attorneys for Defendant Bayer
Healthcare, LLC*

Kenneth P. George
Joseph M. Casino
Amster Rothstein & Ebenstein LLP
90 Park Avenue
New York, NY 10016
*Attorneys for Defendant Bayer
Healthcare, LLC*

Nancy Tinsley
Roche Diagnostics
9115 Hague Road
Indianapolis, IN 46250
*Attorney for Plaintiff Roche Diagnostics
Operations, Inc. and Corange
International Limited*

Kirk A. Vander Leest
Edward A. Mas II
Stephen F. Sherry
James M. Hafertepe
Merle S. Elliott
Matthew A. Anderson
McAndrews, Held & Malloy, Ltd.
500 West Madison Street, Suite 3400
Chicago, IL 60661
*Attorneys for Defendants Abbott Diabetes
Care Inc. and Abbott Diabetes Care
Sales Corporation*

I further certify that on April 28, 2008, I caused a true and correct copy of

the foregoing document to be served by e-mail to the following non-registered

participants:

Bradford J. Badke
Sona De
Michael Kahn
Ropes & Gray LLP
1211 Avenue of the Americas
New York, NY 10036-8704
*Attorneys for Defendant Nova*
*Biomedical Corporation*

Ashley L. Ellis
Michael G. Adams
Parker Poe Adams & Bernstein LLP
Three Wachovia Center, Suite 3000
401 South Tryon Street
Charlotte, NC 28202
*Attorneys for Defendant Diagnostic*
*Devices Inc.*

CONNOLLY BOVE LODGE & HUTZ LLP

/s/ R. Eric Hutz
Mary W. Bourke (#2356)
R. Eric Hutz (#2702)
Kristen Healey Cramer (#4512)
The Nemours Building
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899-1347

*Attorneys for Defendant LifeScan Incorporated*

582887

**Exhibit 1**



**McDonnell Boehnen Hulbert & Berghoff LLP**    300 South Wacker Drive    312 913 0001 phone
Chicago, Illinois 60606-6709    312 913 0002 fax
www.mbhb.com

February 15, 2008

### Sent Via e-mail and First Class Mail

Stephen F. Sherry                      Mary W. Bourke
McAndrews, Held & Malloy, Ltd.         Connolly Bove Lodge & Hutz LLP
500 West Madison St                    The Nemours Building
34th Floor                             1007 N. Orange St.
Chicago, IL 60661                      Wilmington, DE 19801
ssherry@mcandrews-ip.com               mbourke@cblh.com

Rachel Krevans                         Bradford J. Badke
Morrison & Foerster LLP                Ropes & Gray LLP
425 Market St.                         1211 Avenue of Americas
San Francisco, CA 94105                New York, NY 10036
rkrevans@mofo.com                      Jim.badke@ropesgray.com

Re:    *Roche Diagnostic Operations, Inc. et al. v. Abbott Diabetes Care, Inc. et al.,*
       *C.A. No. 07-753-JJF (D. Del.)*

Dear Counsel:

As you know, Plaintiffs Roche Diagnostics Operations, Inc. and Corange International Limited (collectively "Plaintiffs") served document requests and interrogatories on Defendants Abbott Diabetes Care Inc. ("ADC") and Abbott Diabetes Care Sales Corporation ("ADCSC") (collectively "Abbott"), Bayer Healthcare, LLC ("Bayer"), LifeScan, Inc. ("LifeScan") and Nova Biomedical Corporation ("Nova") on January 23, 2008.  In light of the Court's directions at the Rule 16 Scheduling Conference on February 8, 2008 regarding phasing of this case, and as detailed herein, Plaintiffs are withdrawing or temporarily limiting the discovery requests that fall outside the phasing parameters directed by the Court.

Plaintiffs request the prompt production of discovery that is responsive to the requests falling within the phasing parameters directed by the Court, and Plaintiffs reserve the right to re-assert the other discovery requests during the appropriate future phase of discovery activity in this case.

In particular, referring to Plaintiffs' First Set of Document Requests and Plaintiffs' First Set of Interrogatories to each of Abbott, Bayer, LifeScan and Nova, dated January 23, 2008,

Plaintiffs are withdrawing without prejudice any requests relating solely to the issues of validity and/or damages as indicated below. You may treat the withdrawn requests as cancelled, and need not lodge objections, etc. at this stage. In addition, Plaintiffs are limiting, as also indicated below, some requests to the extent that those requests related in part to the issues of validity and/or damages.

We have received Michael Kahn's E-mail of February 13, 2008. We believe that our approach outlined herein responds to virtually all of the concerns raised by Mr. Kahn, including the scope of the requests and the number of interrogatories posed to Nova. To the extent that the Court's order and/or directions have indicated that contention interrogatories need not be answered prior to the completion of document discovery, we can discuss an appropriate time for Defendants to submit those answers; in no event is Roche required to withdraw them. (We further note that Defendants' proposed Protective Order, sent last night, does not stage document discovery and interrogatories as Mr. Kahn's letter suggests.)

Finally, as for the limits imposed by Local Rule 26.1, we believe that the interrogatories comply fully with that rule. In each instance, the interrogatory requests Defendants to provide information on a specific topic, and provides examples of information that would be required to provide a fully responsive answer on that topic. The interrogatories do not have separate subparts within the rule.

### Withdrawals/Limitations Applicable to Abbott:

**Withdrawn discovery:** Plaintiffs withdraw Interrogatory Nos. 6, 10, 11, 13 and 15. Plaintiffs also withdraw Request for Production Nos. 38, 49, 50, 70 and 72-102.

**Limited Discovery:** Plaintiffs are limiting Interrogatory Nos. 7, 8, 12 and 17 and Request for Production Nos. 36, 37, 43, 48, 53-59 and 107-123 to the issues of infringement and/or prior invention under 35 U.S.C. 102(g) of any claim in the 146 patent and the 147 patent.

### Withdrawals/Limitations Applicable to Bayer:

**Withdrawn discovery:** Plaintiffs withdraw Interrogatory Nos. 6, 10, 11 and 13. Plaintiffs also withdraw Request for Production Nos. 38, 49, 50, 70 and 72-102.

**Limited Discovery:** Plaintiffs are limiting Interrogatory Nos. 7, 8, 12 and 18 and Request for Production Nos. 36, 37, 43, 48, 53-59, 107, 108 and 110-115 to the issues of infringement and/or prior invention under 35 U.S.C. 102(g) of any claim in the 146 patent and the 147 patent.

**Withdrawals/Limitations Applicable to LifeScan**

**Withdrawn discovery:** Plaintiffs withdraw Interrogatory Nos. 6, 10, 11 and 13. Plaintiffs also withdraw Request for Production Nos. 38, 49, 50, 70 and 72-102.

**Limited Discovery:** Plaintiffs are limiting Interrogatory Nos. 7, 8, 12 and 16 and Request for Production Nos. 36, 37, 43, 48, 53-59 and 107-115 to the issues of infringement and/or prior invention under 35 U.S.C. 102(g) of any claim in the 146 patent and the 147 patent.

**Withdrawals/Limitations Applicable to Nova:**

**Withdrawn discovery:** Plaintiffs withdraw Interrogatory Nos. 6, 10, 11, 13 and 25. Plaintiffs also withdraw Request for Production Nos. 38, 49, 50, 70 and 72-102.

**Limited Discovery:** Plaintiffs are limiting Interrogatory Nos. 7, 8, 12 and 27 and Request for Production Nos. 36, 37, 43, 48, 53-59, 107-109 and 152-157 to the issues of infringement and/or prior invention under 35 U.S.C. 102(g) of any claim in the 146 patent and the 147 patent.

**Nova Counterclaim Discovery:** To the extent that Nova intends to pursue its counterclaims now, Plaintiffs maintain Interrogatory Nos. 14-17 and 20-24, and Request for Production Nos. 110-151. If Nova intends to pursue its counterclaims at a later point in the case, Plaintiffs request that Nova notify them immediately.

Sincerely,

Grantland G. Drutchas
312 913 2121 direct
drutchas@mbhb.com

cc: all counsel (via email)

**Exhibit 2**



**McDonnell Boehnen Hulbert & Berghoff LLP**

300 South Wacker Drive    312 913 0001 phone
Chicago, Illinois 60606-6709    312 913 0002 fax
www.mbhb.com

March 14, 2008

**Sent Via e-mail**
**Confirmation via First class mail**

Mary W. Bourke
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 N. Orange St.
Wilmington, DE 19801

Re:    *Roche Diagnostic Operations, Inc. et al. v. Abbott Diabetes Care, Inc. et al.,*
       Civil Action No. 07-753-JJF (D. Del.)

Dear Mary:

We write to apprise you of our concerns and provide information regarding deficiencies in
LifeScan's written responses and objections to Plaintiffs' First Set of Interrogatories and
Plaintiffs' First Set of Requests for Production.

**Interrogatories**

*LifeScan's General Objections*

Plaintiffs have concerns with a number of LifeScan's General Objections to Plaintiffs' First
Set of Interrogatories.  The most significant concerns that Plaintiffs have at this time are
set forth below.  However, Plaintiffs reserve the right to challenge other General Objections
at a later time.

General Objection 7, in which "LifeScan objects to the Interrogatories to the extent that
they improperly seek legal conclusions" does not set forth a valid objection.  Rule 33(a)(2)
states that "[a]n interrogatory is not objectionable merely because it asks for an opinion or
contention that relates to fact or the application of law to fact."  In addition, the Advisory
Committee Notes to the 2007 Amendment of Rule 33 explain that "[o]pinion and contention
interrogatories are used routinely."

General Objection 14, in which LifeScan objects to the interrogatories because they lack a
specified time frame, is also wholly without merit.  First, LifeScan's argument that
"[p]roducts sold by LifeScan prior to October 2, 2007 are not relevant to Plaintiffs' claims"
is clearly wrong.  Products sold prior to October 2, 2007 are relevant for at least the
reason that the products could be used (and thereby infringe) after October 2, 2007.

Second, LifeScan itself has made the time period prior to October 2, 2007 relevant to Phase I fact discovery by asserting a "prior invention" issue. Thus, Plaintiffs expect LifeScan to produce each document and provide each item of information responsive to Plaintiff's discovery requests, regardless of when the document or information was created.

General Objection 19, in which LifeScan objects to the interrogatories as premature based on the Court's February 28, 2008 adoption of Defendants' proposed schedule, is unnecessary and unwarranted in light of our February 15, 2008 letter withdrawing certain Interrogatories and specifically limiting others to comply with the Court's directives regarding the staging of discovery. If LifeScan is withholding any information on this basis beyond the areas set forth in our February 15th letter, then please detail any areas for which LifeScan is withholding information beyond the areas set forth in our February 15th letter.

In General Objection 22, LifeScan objects to the Plaintiff's interrogatories "to the extent they exceed Plaintiffs' limit of eleven (11) interrogatories to be served on each Defendant in Phase I under the Rule 16 Scheduling Order to be entered in this case." So that there is no confusion on this point, Plaintiffs withdraw without prejudice Interrogatory No. 12, thereby leaving eleven (11) interrogatories to LifeScan for Phase I. Plaintiffs expect LifeScan to provide complete answers to each of the remaining eleven (11) interrogatories.

*LifeScan's Specific Objections and Answers*

Plaintiffs also have concerns with a number of LifeScan' objections and answers to particular Interrogatories. Although Plaintiffs address certain objections and answers at this time, Plaintiffs reserve the right to address other objections and/or answers at a later time.

Interrogatory No. 1: LifeScan objected to this interrogatory, arguing that "[p]roducts sold before October 2, 2007, including information and documents on such products, are not relevant to Plaintiffs' claims in Phase I." As discussed above for General Objection 14, this objection is wholly without merit, and Plaintiffs expect LifeScan to provide all of the information requested by Interrogatory No. 1, regardless of date.

There are also other deficiencies in LifeScan's answers to Interrogatory No. 1. First, it appears that LifeScan has not fully identified all revisions to the identified models. Specifically, LifeScan should have identified the OneTouch® Select model. LifeScan's 510(k) submission to the Food and Drug Administration (FDA) for the OneTouch® Select system describes it as being a modification of the OneTouch® Ultra2 system without any change to the performance characteristics of that system. Assuming that LifeScan's

statements to the FDA are correct, LifeScan needs to provide a supplemental response to Interrogatory No. 1 (and to any interrogatory or document request that refers, either directly or indirectly, to Interrogatory No. 1) so as to include information regarding the OneTouch® Select system.

Second, LifeScan has identified the "official launch" of accused products, rather than identifying the "dates of manufacture, use, sale, offer for sale or import" as set forth in Interrogatory No. 1. LifeScan's supplemental response to Interrogatory No. 1 needs to include with specificity the information identifying the "dates of manufacture, use, sale, offer for sale or import" of the pertinent products.

<u>Interrogatory No. 2</u>: LifeScan objected to this interrogatory, arguing that "[p]roducts sold before October 2, 2007, including information and documents on such products, are not relevant to Plaintiffs' claims in Phase I." As discussed above for General Objection 14, this objection is wholly without merit, and Plaintiffs expect LifeScan to provide all of the information requested by Interrogatory No. 2, regardless of date.

LifeScan's refusal to respond to the request for "license or other agreements with third parties" is also without merit. Interrogatory No. 2 asks for such license or other agreements to the extent that they relate to the research, development or design of electrochemical sensors identified in response to Interrogatory No. 1. Such license or other agreements are reasonably likely to lead the discovery of admissible evidence regarding the Phase I issues of infringement and/or prior invention. Thus, LifeScan must provide a supplemental response to Interrogatory No. 2.

<u>Interrogatory No. 4</u>: Plaintiffs agree to defer LifeScan's answers to Interrogatory No. 4 until a mutually agreed date nearer the close of fact discovery in Phase I.

<u>Interrogatory No. 5</u>: Plaintiffs agree to defer LifeScan's answers to Interrogatory No. 5 until a mutually agreed date nearer the close of fact discovery in Phase I.

<u>Interrogatory Nos. 7 and 8</u>: LifeScan has objected to these interrogatories, arguing that "[a]s presently phrased, this request does not apply to Phase I and LifeScan will not provide a piecemeal response." This objection is without merit. Plaintiffs' February 15, 2008 letter limited Interrogatory Nos. 7 and 8 to issues relevant to Phase I of the case, and LifeScan's General Objection 20 to Plaintiffs' First Set of Interrogatories recognizes that Phase I encompasses "prior invention under 35 U.S.C. § 102(g)." Thus, allegations based on 35 U.S.C. § 102(g) are part of Phase I, by LifeScan's own admission. LifeScan must provide a complete answer to Interrogatory Nos. 7 and 8 regarding "prior invention under 35 U.S.C. § 102(g)." Failure to do so will preclude LifeScan from raising "prior invention" issues at trial (or at any time after the close of fact discovery in Phase I).

Interrogatory No. 9:  LifeScan has objected to this interrogatory as being premature because it allegedly seeks information relevant only to Phase II of this case.  To the contrary, the information sought by Interrogatory No. 9, LifeScan's definition of "the person having ordinary skill in the art," is relevant to Phase I because claims are construed from the perspective of such a person.  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005)(en banc).  Plaintiffs will, however, agree to defer LifeScan's answers to Interrogatory No. 9 until a mutually agreed date nearer the close of fact discovery in Phase I.

Interrogatory No. 14:  LifeScan's answer to this interrogatory is insufficient.  In determining whether a Complaint states a claim on which relief can be granted, the Court "must accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn therefrom."  *Nami v. Fauver*, 82 F.3d 63, 65 (3rd Cir. 1996).  Thus, LifeScan needs to supplement its answer to Interrogatory No. 14 to explain how Plaintiffs' allegation (*i.e.*, that "LifeScan has been and is infringing the 146 and 147 Patents by making, using, selling, and/or offering for sale in the United States … electrochemical sensors which embody the inventions claimed in the 146 and 147 Patents"), if accepted as true, still fails to state a claim on which relief can be granted.

Interrogatory No. 15:  LifeScan has objected to this interrogatory "on the grounds that it is [1] vague and ambiguous and [2] not reasonably calculated to lead to the discovery of admissible evidence," and LifeScan has failed to provide any substantive response to this interrogatory.  As to the first objection, the request to identify "each person who provided information concerning each response to these Interrogatories [and to supplements and subsequent Interrogatories] … and each person who participated in the collection and/or review of documents and things in response to Plaintiffs' requests for production of documents and things" is quite clear, relevant, and timely.  The requirement to "identify all documents that were reviewed or considered *relating to such responses*" is also clear, relevant, and timely.  The phrase "*relating to such responses*" refers to LifeScan's responses to Plaintiffs' Interrogatories (including supplemental responses and responses to subsequent Interrogatories).  As to the second objection, the information sought by Interrogatory No. 15 is reasonably calculated to lead to the discovery of admissible evidence.  Persons who provided information concerning Interrogatory responses for Phase I and persons who participated in the collection and/or review of documents and things for Phase I are reasonably likely to have information that is relevant to Phase I.  Plaintiffs expect LifeScan to provide a substantive response to Interrogatory No. 15.

**<u>Requests for Production</u>**

*LifeScan's General Objections*

Plaintiffs have concerns with a number of LifeScan's General Objections. The most significant concerns that Plaintiffs have at this time are set forth below. However, Plaintiffs reserve the right to challenge other General Objections at a later time.

General Objection 19, in which LifeScan objects to the Requests because they lack a specified time frame, is wholly without merit. First, LifeScan's argument that "[p]roducts sold by LifeScan prior to October 2, 2007 are not relevant to Plaintiffs' claims" is clearly wrong. Products sold prior to October 2, 2007 are relevant for at least the reason that the products could be used (and thereby infringe) after October 2, 2007. Second, LifeScan itself has made the time period prior to October 2, 2007 relevant to Phase I fact discover by asserting a "prior invention" issue. Thus, Plaintiffs expect LifeScan to produce each document and provide each item of information responsive to Plaintiff's discovery requests, regardless of when the document or information was created.

General Objection 23, in which LifeScan objects to the Requests as premature based on the Court's February 28, 2008 adoption of Defendants' proposed schedule, is unnecessary and unwarranted in light of our February 15, 2008 letter withdrawing certain Requests and specifically limiting others to comply with the Court's directives regarding the staging of discovery. If LifeScan is withholding any information on this basis beyond the areas set forth in our February 15th letter, then please detail any areas for which LifeScan is withholding information beyond the areas set forth in our February 15th letter.

*LifeScan's Specific Objections and Responses*

Plaintiffs also have concerns with a number of LifeScan's objections and responses to particular Requests. Although Plaintiffs address certain objections and responses at this time, Plaintiffs reserve the right to address other objections and/or responses at a later time.

<u>Request Nos. 12 and 13</u>: LifeScan has objected to these Requests as being premature, claiming that these Requests seek documents that are irrelevant to Phase I, and has refused to respond at this time. In fact, these Requests are generally directed to documents that relate to any "utility, advantages, value, or business significance" of certain Electrochemical Sensors. Such documents are reasonably likely to contain information regarding the structure and operation of the accused products, information that is clearly relevant to Phase I. Accordingly, LifeScan must withdraw its objections to these Requests and produce documents responsive to Request Nos. 12 and 13 in Phase I.

Request Nos. 17 and 18:  LifeScan has objected to these Requests as being premature, claiming that these Requests seek documents that are irrelevant to Phase I, and has refused to respond at this time.  These Requests seek documents that identify individuals involved in the sales, marketing, competitive analysis, etc. of the accused products.  Such individuals are reasonably likely to have information regarding when and how the accused products were sold, the instructions given to customers, and comparison of LifeScan's accused products with Plaintiffs' products, all of which is clearly relevant to the Phase I issues of active inducement and/or contributory infringement.  Accordingly, LifeScan must withdraw its objections to these Requests and produce documents responsive to Request Nos. 17 and 18 in Phase I.

Request No. 19:  LifeScan has objected to this Request as being premature, claiming that this Request seeks documents that are irrelevant to Phase I, and has refused to respond at this time.  This Request seeks documents relating to "any comparison or comparative test of Defendant's Identified Electrochemical Sensors with any other Electrochemical Sensors." Such documents are reasonably likely to contain information regarding the structure and operation of the accused products, information that is clearly relevant to Phase I. Accordingly, LifeScan must withdraw its objection to this Request and produce documents responsive to Request No. 19 in Phase I.

Request No. 21:  LifeScan has responded to this Request by stating that LifeScan will produce one sample meter of each of the accused products and one box of test strips. However, this Request asks for ten (10) samples of every model.  LifeScan has not provided any explanation for why LifeScan will produce only one sample of a mass-produed item when ten samples were requested.  Accordingly, Plaintiffs expect LifeScan to produce ten (10) samples of every model, as set forth in Request No. 21.

Request Nos. 22, 23, and 30:  LifeScan has objected to these Requests as being premature, claiming that these Requests seek documents that are irrelevant to Phase I, and has refused to respond at this time.  These Requests are generally directed to documents that shed light on LifeScan's decision to select the specific structures of and methods of using the accused products over alternatives.  As such, these Requests are reasonably calculated to lead to the discovery of admissible evidence regarding infringement and/or prior invention, information that is clearly relevant to Phase I. Accordingly, LifeScan must withdraw its objections to these Requests and produce documents responsive to Request Nos. 22, 23, and 30 in Phase I.

Request No. 32:  LifeScan has objected to this Request as being premature, claiming that this Request seeks documents that are irrelevant to Phase I, and has refused to respond at this time.  This Request is generally directed to documents relating to or constituting communications between LifeScan and others regarding the accused products.  Such

documents are reasonably likely to contain information regarding the structure and operation of the accused products, information that is clearly relevant to Phase I. In addition, LifeScan's refusal to respond to Request No. 32 is at odds with LifeScan's commitment to produce documents in response to Request Nos. 33-35 that are similarly directed to communications between LifeScan and others regarding Electrochemical Sensors. Accordingly, LifeScan must withdraw its objection to this Request and produce documents responsive to Request No. 32 in Phase I.

Request Nos. 36 and 37: LifeScan has objected to these Requests as being premature, claiming that these Requests seek documents that are irrelevant to Phase I, and has refused to respond at this time. These Requests are generally directed to documents that relate to prior art, literature, and/or patent searches with respect to certain Electrochemical Sensors. Although documents responsive to these Requests may also be relevant to the validity phase of the case, such documents are reasonably calculated to lead to the discovery of admissible evidence regarding claim construction, a Phase I issue. Accordingly, LifeScan must withdraw its objections to these Requests and produce documents responsive to Request Nos. 36 and 37 in Phase I.

Request Nos. 44, 46, and 47: LifeScan has objected to these Requests as being premature, claiming that these Requests seek documents that are irrelevant to Phase I, and has refused to respond at this time. These Requests are generally directed to documents regarding any efforts by LifeScan to avoid infringement. As such, these Requests are reasonably calculated to lead to the discovery of admissible evidence regarding infringement, information that is clearly relevant to Phase I. Accordingly, LifeScan must withdraw its objections to these Requests and produce documents responsive to Request Nos. 44, 46, and 47 in Phase I.

Request Nos. 51 and 52: LifeScan has objected to these Requests as being premature, claiming that these Requests seek documents that are irrelevant to Phase I, and has refused to respond at this time. These Requests are generally directed to documents that relate to prior art, literature, and/or patent searches with respect to the patents-in-suit. Although documents responsive to these Requests are relevant to the validity phase of the case, such documents are also directly related to claim construction, a Phase I issue. Accordingly, LifeScan must withdraw its objections to these Requests and produce documents responsive to Request Nos. 51 and 52 in Phase I.

Request No. 55: LifeScan has objected to this Request as being premature, claiming that the Request seeks documents that are irrelevant to Phase I, and has refused to respond at this time. This Request seeks documents that refer or relate to any discussion or communication regarding the validity, invalidity, enforceability, unenforceability, infringement and/or non-infringement of the patents-in-suit. Although some documents

responsive to this Request are relevant to the validity phase of the case, documents regarding infringement or non-infringement discussions or communications are clearly relevant to the Phase I issue of infringement. Accordingly, LifeScan must withdraw its objection to this Request and produce documents responsive to Request No. 55 in Phase I.

Request Nos. 57-59: LifeScan has objected to these Requests as being premature, claiming that these Requests seek documents that are irrelevant to Phase I, and has refused to respond at this time. These Requests are generally directed to license and other agreements between LifeScan and third parties regarding Electrochemical Sensors. Such license or other agreements are reasonably calculated to lead the discovery of admissible evidence regarding the Phase I issues of infringement and/or prior invention. Accordingly, LifeScan must withdraw its objections to these Requests and produce documents responsive to Request Nos. 57-59 in Phase I.

Request Nos. 60 and 61: LifeScan has objected to these Requests as being premature, claiming that these Requests seek documents that are irrelevant to Phase I, and has refused to respond at this time. These Requests are generally directed to documents that relate to sales, offers for sale, and distribution of free samples of the accused products. As such, these Requests are reasonably calculated to lead to the discovery of admissible evidence regarding active inducement and/or contributory infringement, which are clearly Phase I issues. Moreover, these requests relate directly to LifeScan's "prior invention" allegation. Accordingly, LifeScan must withdraw its objections to these Requests and produce documents responsive to Request Nos. 60 and 61 in Phase I.

Request Nos. 62-64: LifeScan has objected to these Requests as being premature, claiming that these Requests seek documents that are irrelevant to Phase I, and has refused to respond at this time. These Requests are generally directed to documents regarding LifeScan's efforts to advertise, market, or promote the accused products. Such documents are reasonably likely to contain statements regarding the structure or operation of the accused products, information that is clearly relevant to Phase I. In addition, such documents are reasonably likely to provide evidence of active inducement and/or contributory infringement, which are clearly Phase I issues. Still further, these requests relate directly to LifeScan's "prior invention" allegation. Accordingly, LifeScan must withdraw its objections to these Requests and produce documents responsive to Request Nos. 62-64 in Phase I.

Request No. 65: LifeScan has objected to this Request as being premature, claiming that the Request seeks documents that are irrelevant to Phase I, and has refused to respond at this time. This Request seeks documents that relate to feedback from customers and/or users of the accused products. Such customers and/or users are reasonably likely to be direct infringers. Thus, this Request is reasonably calculated to lead to discovery of

admissible evidence of direct infringement, a Phase I issue. Accordingly, LifeScan must withdraw its objection to this Request and produce documents responsive to Request No. 65 in Phase I.

Request Nos. 66 and 67: LifeScan has objected to these Requests as being premature, claiming that these Requests seek documents that are irrelevant to Phase I, and has refused to respond at this time. These Requests are generally directed to documents relating to communications with distributors, potential distributors, physicians, nurses, clinics, and potential users of the accused products. Such documents are reasonably likely to contain statements regarding the structure or operation of the accused products, information that is clearly relevant to Phase I. In addition, such documents are reasonably likely to provide evidence of active inducement and/or contributory infringement, which are clearly Phase I issues. Still further, these requests relate directly to LifeScan's "prior invention" allegation. Accordingly, LifeScan must withdraw its objections to these Requests and produce documents responsive to Request Nos. 66 and 67 in Phase I.

Request Nos. 68, 69, and 71: LifeScan has objected to these Requests as being premature, claiming that these Requests seek documents that are irrelevant to Phase I, and has refused to respond at this time. These Requests are generally directed to documents relating to evaluations of past, current, and future sales or revenues from Electrochemical Sensors sold by LifeScan and others. As such, these Requests are reasonably calculated to lead to the discovery of admissible evidence regarding active inducement and/or contributory infringement, which are clearly Phase I issues. Accordingly, LifeScan must withdraw its objections to these Requests and produce documents responsive to Request Nos. 68, 69, and 71 in Phase I.

Request Nos. 106: LifeScan has objected to this Request as being overbroad, vague, and ambiguous. This Request seeks documents relating to both Plaintiffs and Electrochemical Sensors. At a minimum, documents relating to Plaintiffs' ACCU-CHEK® Aviva products are responsive.

Request Nos. 113 and 115: LifeScan has objected to these Requests as being premature but has indicated that LifeScan will answer the requests to the extent that they contain information relevant to Phase I. Please confirm that LifeScan's "answer" will include the production of responsive documents.

Request No. 119: LifeScan has objected to this Request as being overbroad, vague, and ambiguous. This Request seeks "documents and things not otherwise described by the above requests that refer or relate to the subject matter shown, described, or claimed in the patents-in-suit." At a minimum, documents and things that relate to the subject matter

of the patents-in-suit are responsive.  Given LifeScan's "prior invention" allegation, any documents and things that relate to that "prior invention" allegation would be responsive.

Plaintiffs request that LifeScan withdraw the objections discussed above, and promptly provide the requested information and produce the requested documents.  We request a telephone conference on Tuesday, March 25, 2008, during which we can explore these matters with you in detail and to meet and confer in accordance with Del. L.R. 7.1.1. Thank you in advance for your professional cooperation in this matter.

Sincerely,

Richard A. Machonkin
(312) 913-2129
machonkin@mbhb.com

**Exhibit 3**



# CONNOLLY BOVE LODGE & HUTZ LLP
### ATTORNEYS AT LAW

WILMINGTON, DE

The Nemours Building
1007 North Orange St.
P.O. Box 2207
Wilmington, DE 19899
TEL: (302) 658 9141
FAX: (302) 658 5614
WEB: www.cblh.com

R. Eric Hutz
Partner
TEL (302) 888 6230
FAX (302) 658 5614
EMAIL ehutz@cblh.com
REPLY TO Wilmington Office

April 1, 2008

**By Email and U.S. Mail**
Richard Machonkin
McDonnell Biehnen Hulbert & Berghoff LLP
300 South Wacker Drive
Chicago, IL 60606-6709

> Re: *Roche Diagnostic Operations, Inc. et al. v. Abbott Diabetes Care, Inc., et al.*, C.A. No. 07-753-JJF (D. Del.)

Dear Richard:

We write in response to your letter of March 14, 2008 regarding LifeScan's objections and responses to Plaintiffs' First Set of Interrogatories and First Set of Requests for Production in the above-referenced litigation.

## Interrogatories

### *LifeScan's General Objections*

LifeScan's General Objection 7 to interrogatories to the extent they improperly seek legal conclusions is a valid objection. Under the Scheduling Order to be entered in this case and in accordance Judge Farnan's practice, responses to contention interrogatories are not due until the close of Phase I fact deposition discovery. Indeed, Plaintiffs' appear to acknowledge this in agreeing to defer LifeScan's response to certain interrogatories "until a mutually agreed date nearer to the close of fact discovery in Phase 1." LifeScan is not proposing that Plaintiffs' contention interrogatories are objectionable "merely because [they] ask for an opinion or contention that relates to the application of law or fact," but because they are premature in seeking legal conclusions. Without waiving this objection, LifeScan will respond to contention interrogatories relating to infringement issues at the appropriate time in accordance with the Scheduling Order.

LifeScan's General Objection 14 to interrogatories lacking a specific time frame also is valid. Plaintiffs failed to plead inducement or contributory infringement in their Complaint, thus the continuing use of products by others that LifeScan sold before October 2, 2007 is not relevant. Moreover, the requested information and documents on

**Connolly Bove Lodge & Hutz LLP**

Richard Machonkin, Esq.
April 1, 2008
Page 2

pre-October 2007 products are irrelevant regardless of whether Plaintiffs perfect their pleading by amending their Complaint to include allegations of indirect infringement for several reasons.[1] First, Plaintiffs' suggestion that LifeScan has any way to know whether a meter sold before October 2007 is still being used today is unwarranted, nor is there a way for Plaintiffs to prove such use. Second, even if such information were readily discoverable, to the extent it is relevant at all it is only to Phase 3 (damages) of this case, which is not at issue now and may never be. Accordingly, LifeScan will respond as to and produce non-privileged, relevant, and responsive documents on LifeScan products available on or after October 2, 2007 in Phase 1. Notably, contrary to Plaintiffs' interpretation, this does not mean that LifeScan is refusing discovery as to documents or information "created" before October 2, 2007 to the extent the discovery relates to products available on or after October 2, 2007.

With respect to prior invention, to the extent LifeScan discovers non-privileged, responsive information relevant to a prior invention defense, it will produce such discovery in Phase 1.

While we appreciate Plaintiffs' withdrawal of certain interrogatories given the Court's directive of staged discovery, we stand firm on General Objection 19 regarding the prematurity of the interrogatories, including those that Plaintiffs "limited" by letter dated February 15, 2008. LifeScan specifically objected to premature interrogatories requesting information irrelevant to Phase I and in certain cases agreed to respond as to Phase I only. Further, LifeScan noted two interrogatories requiring rephrasing to limit each to the Phase I issues of infringement and prior invention (Interrogatories 7 and 8). LifeScan will respond to discovery directed to Phase I and echoes its request that Plaintiffs properly rephrase Interrogatories 7 and 8 so that LifeScan may respond.

Even with Plaintiffs' withdrawal of Interrogatory 12, LifeScan maintains General Objection 22 that Plaintiffs have exceeded the limit of 11 interrogatories to each defendant to be served in Phase I. Although Plaintiffs allege to have withdrawn 5 of the original 16 Interrogatories, Plaintiffs are ignoring the fact that even when erring on the side of counting subparts in Plaintiffs' favor, there are at least 12 remaining Interrogatories. Specifically, the request for the "corporate structure" in Interrogatory 2 part (i) is a discrete subpart, bringing the total number of Interrogatories to 12. Without waiving this objection and despite the fact that Plaintiffs exceeded the number of allowable Interrogatories, LifeScan responded to all of the remaining Interrogatories,

---

[1]    LifeScan is aware that Plaintiffs are seeking to amend their Complaint. LifeScan will revise the scope of its discovery responses, if necessary, if and when an Amended Complaint is entered.

CONNOLLY BOVE LODGE & HUTZ LLP

Richard Machonkin, Esq.
April 1, 2008
Page 3

including subpart (i) of Interrogatory 2, and did not refuse to respond on the basis of the limits placed under the Scheduling Order to be entered in the case.

*LifeScan's Specific Objections*

Interrogatory 1

As discussed above with respect to General Objection 14, LifeScan maintains its objection to Plaintiffs request for information on products that were not available on or before October 2, 2007. LifeScan will respond as to and produce non-privileged, relevant, and responsive documents on LifeScan products available on or after October 2, 2007 in Phase I. Notably, contrary to Plaintiffs' interpretation, this does not mean that LifeScan is refusing discovery as to documents or information "created" before October 2, 2007 to the extent the discovery relates to products available on or after October 2, 2007.

LifeScan responded to Interrogatory 1 based on the LifeScan products Plaintiffs accused of patent infringement in their Complaint. Although Plaintiffs are moving to amend their Complaint to add additional products, the OneTouch Select is not one of them.

LifeScan disagrees that it must supplement its response to Interrogatory 1 and identify the dates of manufacture, use, sale, offer for sale or import rather than the "official launch" dates for the accused products because this requested information is irrelevant to Phase I. To the extent Plaintiffs assert that the information requested is relevant to Phase I, please provide a detailed basis.

Interrogatory 2

LifeScan has addressed Plaintiffs' issue with LifeScan's October 2, 2007 objection above.

LifeScan does not agree that "license or other agreements" related to "the research, development or design of electrochemical sensors identified in response to Interrogatory 1" are "reasonably likely to lead to the discovery of admissible evidence regarding Phase 1 issues of infringement or prior invention." To the extent Plaintiffs assert that the information requested is relevant to Phase I, please provide a detailed basis.

**CONNOLLY BOVE LODGE & HUTZ LLP**

Richard Machonkin, Esq.
April 1, 2008
Page 4

Interrogatory 4 and 5

      LifeScan agrees to respond to these contention interrogatories in Phase 1 in conformance with the Scheduling Order.

Interrogatories 7 and 8

      Interrogatories 7 and 8, as phrased, are directed to invalidity, thus LifeScan's objection based on prematurity stands. Although LifeScan does not dispute that the Court has directed that prior invention under 35 U.S.C. 102(g) is part of Phase I, LifeScan disputes that it must respond to these two interrogatories as phrased. LifeScan repeats its request that Plaintiffs tailor these interrogatories to the issues in Phase I so that it may respond. LifeScan further disagrees that it will be "precluded from raising prior invention" if it does not respond to Interrogatories 7 and 8 as phrased. With respect to prior invention, to the extent LifeScan discovers non-privileged, responsive information relevant to a prior invention defense, it will produce such discovery in Phase 1.

Interrogatory 9

      LifeScan agrees to respond to this contention interrogatory to the limited extent it relates to claim construction in Phase 1 in conformance with the Scheduling Order.

Interrogatory 14

      Plaintiffs have alleged only direct infringement of method claims and therefore fail to state a claim on which relief can be granted. LifeScan will supplement its response to Interrogatory 14.

Interrogatory 15

      Plaintiffs' clarification of its request directed to the identification of individuals who provided information concerning the interrogatories and who participated in the collection and review of documents entirely ignores LifeScan's first and primary objection, which is that the information sought is after the filing date of the Complaint and is also subject to the attorney-client and work product privileges. In the highly unlikely circumstance that a response to this request would not be privileged, and LifeScan can not think of such a circumstance, LifeScan will agree to supplement its response.

**CONNOLLY BOVE LODGE & HUTZ LLP**

Richard Machonkin, Esq.
April 1, 2008
Page 5

## Requests for Production

### LifeScan's General Objections

LifeScan previously addressed Plaintiffs' issues related to LifeScan's relevancy objection based on products sold prior to October 2, 2007. LifeScan will respond as to and produce non-privileged, relevant, and responsive documents on LifeScan products available on or after October 2, 2007 in Phase I. Notably, contrary to Plaintiffs' interpretation, this does not mean that LifeScan is refusing discovery as to documents or information "created" before October 2, 2007 to the extent the discovery relates to products available on or after October 2, 2007.

As stated above with respect to General Objection 19 to Plaintiffs' Interrogatories, LifeScan stands firm on General Objection 23 regarding the prematurity of the document requests, including those that Plaintiffs "limited" by letter dated February 15, 2008. LifeScan specifically objected to premature requests for documents that are irrelevant to Phase I and agreed to respond as to Phase I only. LifeScan will respond to discovery directed to Phase I.

### LifeScan's Specific Objections and Responses

#### Request Nos. 12 and 13

LifeScan maintains its prematurity objection to Requests 12 and 13 directed to "any utility, advantages, value, or business significance of any Electrochemical Sensors having a capillary chamber that holds a blood sample volume of $1\,\mu L$ or less" or "provides a readout of the glucose concentration of the blood sample within 10 seconds or less after the blood sample enters the capillary chamber." Notwithstanding and without waiving its specific objections, LifeScan will produce documents in Phase 1 sufficient to show the "structure and operation of the accused products."

#### Request Nos. 17 and 18

LifeScan maintains its objections to these Requests directed to the CVs of "individuals primarily involved in the commercialization, sales, marketing, or competitive analysis of the Identified Electrochemical Sensors" and documents identifying sales and marketing people, including the objection that these Requests are premature. Plaintiffs are seeking information, without any time limits, irrelevant to

CONNOLLY BOVE LODGE & HUTZ LLP

infringement or prior invention. To the extent Plaintiffs assert that "when and how the accused products were sold" and "comparison of LifeScan's accused products with Plaintiffs' products" are "clearly relevant to Phase I," please provide a detailed basis. To the extent Plaintiffs allege these Requests are relevant to active inducement and/or contributory infringement, LifeScan disagrees and further notes that Plaintiffs have not plead indirect infringement in their Complaint. In response to other requests, LifeScan is producing information in Phase 1 related to "the instructions given to customers" on the accused products. Additionally, LifeScan is producing organization charts in Phase 1 in response to Request 14.

Request No. 19

LifeScan maintains its objection to Plaintiffs' Request for documents relating to "a comparison or comparative tests of Defendants' Identified Electrochemical Sensors with any other Electrochemical Sensors." Notwithstanding and without waiving its specific objections, LifeScan will produce documents in Phase 1 sufficient to show the "structure and operation of the accused products." To the extent Plaintiffs assert that this Request is "clearly relevant to Phase I," please provide a detailed basis.

Request No. 21

As Plaintiffs admit, the LifeScan products Plaintiffs have accused of infringement are readily available for purchase at stores and pharmacies without a prescription. LifeScan will produce a sample meter for each accused products and a box of test strips. If Plaintiffs require more than one sample of each accused meter and a box of strips, Plaintiffs can readily purchase additional samples or provide a detailed explanation of why it cannot do so.

Request Nos. 22, 23 and 30

LifeScan will not withdraw its objections to these Requests, including its objection based on prematurity. Request 22 is directed to the "research, design, development, production, or manufacture of any alternatives to Defendant's Identified Electrochemical Sensors"; Request 23 is directed to "decisions by Defendant regarding the selection or rejection of any designs"; and Request 30 is directed to "comparisons between the components under in Defendants' Identified Electrochemical Sensors and any other components considered, proposed, or actually used." None of these requests seek information relevant to infringement or prior invention. To the extent Plaintiffs allege that LifeScan's "decision to select the specific structures of and methods of using

**CONNOLLY BOVE LODGE & HUTZ LLP**

Richard Machonkin, Esq.
April 1, 2008
Page 7

the accused products over alternatives" is relevant to Phase 1, LifeScan requests a detailed explanation. Without waiving its specific objections to Request Nos. 22, 23 and 30, LifeScan will produce documents in Phase 1 sufficient to show the "structure and operation of the accused products" in response to other Requests.

Request No. 32

LifeScan maintains its objection to Request 32 seeking "any communications between Defendant and any other person concerning the Identified Electrochemical Sensors." Requests 33-35 similarly are entirely overbroad in time and subject matter and to the extent they seek documents irrelevant to Phase 1, but are arguably marginally narrower than Request 32. Without waiving its specific objections to Request Nos. 32-35, LifeScan will produce documents in Phase 1 sufficient to show the "structure and operation of the accused products."

Request Nos. 36 and 37

LifeScan will not withdraw its objections to Request Nos. 36 and 37 directed to "prior art, literature and/or patent searches" conducted by Defendants on certain electrochemical sensors. Plaintiffs' admit that these Requests are "relevant to the validity phase of the case," but argue that the Requests are "calculated to lead to the discovery of admissible evidence regarding claim construction." Plaintiffs are improperly seeking Phase 2 discovery in Phase 1. As for claim construction, such documents are extrinsic evidence and therefore of little or no value.

Request Nos. 44, 46, and 47

Requests Nos. 44, 46 and 47, which are directed to licenses under the patents-in-suit and designing around the patents-in-suit, are clearly related to damages, not infringement or prior invention. In admittedly seeking "efforts by LifeScan to avoid infringement," Plaintiffs are improperly seeking damages-related information in Phase 1 of the case and LifeScan will not withdraw its specific objections to these Requests. LifeScan will produce documents in Phase 1 sufficient to show the "structure and operation of the accused products" in response to other Requests.

Request Nos. 51 and 52

Requests 51 and 52 seek documents related to "the state of the art relevant to the subject matter claimed" in the patents-in suit, not "prior art, literature, and/or patent

**CONNOLLY BOVE LODGE & HUTZ LLP**

Richard Machonkin, Esq.
April 1, 2008
Page 8

searches" as Plaintiffs' contend.  To the extent Plaintiffs take issue with LifeScan's objections to Requests 51 and 52, documents on the state of the art are relevant to Phase 2, and LifeScan will not withdraw its objections and will not respond in Phase 1.

<u>Request No. 55</u>

LifeScan will not withdraw its objections to Request No. 55 directed to "any discussion or communication . . . of the validity, invalidity, enforceability, unenforceability, infringement, and/or non-infringement of the patents-in-suit." Defendants disagree that this request is relevant to Phase 1 or 2, but rather is related to willfulness, an issue that will arise, if ever, in the damages phase.

<u>Request Nos. 57-59</u>

LifeScan disagrees that requests "directed to license and other agreements between LifeScan and third parties related to Electrochemical Sensors" are "reasonably likely to lead to the discovery of admissible evidence regarding Phase 1 issues of infringement and/or prior invention." LifeScan maintains its objections.  To the extent Plaintiffs assert that the information requested is relevant to Phase I, please provide a detailed basis.

<u>Request Nos. 60 and 61</u>

LifeScan maintains its objections and disagrees that as phrased, these requests for documents relating to "offers for sale," "sales" and "distribution of free samples" are relevant to Phase 1 without further explanation.  To the extent Plaintiffs allege these Requests as phrased are relevant to active inducement and/or contributory infringement, LifeScan disagrees and further notes that Plaintiffs did not plead indirect infringement in their Complaint nor limit these Requests as to time.  To the extent LifeScan discovers non-privileged, responsive documents relevant to a prior invention defense, it will produce such discovery in Phase 1.

<u>Request Nos. 62-64</u>

LifeScan maintains its objections to these Requests directed to advertising, marketing and promoting the "Identified Electrochemical Sensors," including the objection that these Requests are premature.  Plaintiffs are seeking information, without any time limits, irrelevant to infringement or prior invention.  To the extent Plaintiffs allege these Requests as phrased are relevant to active inducement and/or contributory

**CONNOLLY BOVE LODGE & HUTZ LLP**

Richard Machonkin, Esq.
April 1, 2008
Page 9

infringement, LifeScan disagrees and further notes that Plaintiffs did not plead indirect infringement in their Complaint nor limit these Requests as to time. LifeScan will produce documents in Phase 1 sufficient to show "the structure or operation of the accused products." To the extent LifeScan discovers non-privileged, responsive documents relevant to a prior invention defense, it will produce such discovery in Phase 1.

Request No. 65

LifeScan will not withdraw its objection to Request 65 directed to "feedback . . . from customers and/or users of Defendant's Identified Electrochemical Sensors." LifeScan disagrees that this Request is relevant to Phase 1. To the extent Plaintiffs believe the Request as phrased is relevant to Phase 1, please provide a detailed explanation. LifeScan will produce documents in Phase 1 sufficient to show "the structure or operation of the accused products" in Phase 1.

Request Nos. 66 and 67

LifeScan maintains its objections to these Requests directed to "communications with distributors, potential distributors, physicians, nurses, clinics, and potential users of the accused products," including the objection that these Requests are premature. To the extent Plaintiffs allege these Requests as phrased are relevant to active inducement and/or contributory infringement, LifeScan disagrees and further notes that Plaintiffs have not plead indirect infringement in their Complaint nor limited theses Requests as to time. LifeScan will produce documents in Phase 1 sufficient to show "the structure or operation of the accused products." To the extent LifeScan discovers non-privileged, responsive documents relevant to a prior invention defense, it will produce such discovery in Phase 1.

Request Nos. 68, 69 and 71

LifeScan will not withdraw its objections to these requests, which as phrased are relevant only to damages. Request 68 and 69 are directed to "any study, projection, market, or other evaluation of past, current or future sales or revenues for the Identified Electrochemical Sensors" or "Electrochemical Sensors sold by Defendant, Plaintiffs, or any other person, and Request 71 is directed to "budgets, forecast, projections, short and long term business and strategic plans, and short and long term reports related to sales activity for Identified Electrochemical Sensors." To the extent Plaintiffs allege these Requests are relevant to active inducement and/or contributory infringement, LifeScan

**CONNOLLY BOVE LODGE & HUTZ LLP**

Richard Machonkin, Esq.
April 1, 2008
Page 10

disagrees and further notes that Plaintiffs did not plead indirect infringement in their Complaint. To the extent Plaintiffs believe the Requests are relevant to Phase 1, please provide a detailed explanation.

Request No. 106

LifeScan will not withdraw its objection to this Request directed to "all documents . . . relating to both Plaintiffs and Electrochemical Sensors." LifeScan also disagrees that documents relating to Plaintiffs' ACCU-Check Aviva products are relevant to the Phase 1 issues of infringement and prior invention. The infringement issue involves LifeScan's accused products and Plaintiffs' patent claims, not Roche's products.

Request Nos. 113 and 115

LifeScan reasserts its objections, including that these Requests are premature. Subject to and without waiving its General and Specific Objections, LifeScan will produce non-objectionable, non-privileged documents relevant to the issues of Phase 1 at the appropriate time to the extent they exists and can be located after reasonable search.

Request No. 119

LifeScan will not withdraw its objection. As phrased, this Request is overbroad, vague, not tailored to Phase 1 discovery, and is unanswerable without further guidance. Plaintiffs' apparent attempt to clarify this request to documents "that relate to the subject matter of the patents-in-suit are responsive" is similarly overbroad, vague and ambiguous. LifeScan will produce documents in Phase 1 sufficient to show "the structure or operation of the accused products." To the extent LifeScan discovers non-privileged, responsive documents relevant to a prior invention defense, it will produce such discovery in Phase 1.

Sincerely yours,

R. Eric Hutz

cc:    Mary Bourke, Esq.

600824

**Exhibit 4**

 **McDonnell Boehnen Hulbert & Berghoff LLP**

300 South Wacker Drive
Chicago, Illinois 60606-6709
www.mbhb.com

312 913 0001 phone
312 913 0002 fax

April 4, 2008

**Sent Via E-mail**
**Confirmation via First Class Mail**

R. Eric Hutz, Esq.
Connolly Bove Lodge & Hutz LLP
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899

Re:    *Roche Diagnostic Operations, Inc. et al. v. Abbott Diabetes Care, Inc. et al.,*
       Civil Action No. 07-753-JJF (D. Del.)

Dear Eric:

We write to summarize the points discussed during our telephonic meet-and-confer on April 1, 2008.  Please let us know immediately if your recollection differs from what is set forth below.

## Preliminary Issues

### 1. Date for beginning of LifeScan's document production

You assured us that LifeScan would produce documents on a rolling basis, as the documents become available, rather than waiting until the last moment.  However, you were unable to provide a date certain for when LifeScan's production will begin.  In fact, you were unwilling to commit to beginning document production by the end of April.  We advised that Plaintiffs reserve the right to file a Motion to Compel based on LifeScan's failure to provide an estimated date for when LifeScan's Phase I document production would begin.

### 2. Proposed amended complaint

You agreed that LifeScan would not oppose Plaintiffs' filing of the Amended Complaint that Dan Boehnen had circulated earlier.

You also explained how the Amended Complaint will affect the discovery that LifeScan intends to provide in Phase I.  Specifically, you assured us that LifeScan is collecting

documents that relate to indirect infringement and that you will not wait until Judge Farnan enters the Amended Complaint to produce such documents. On the other hand, you indicated that LifeScan would not formally supplement its interrogatory responses until Judge Farnan enters the Amended Complaint, except that LifeScan would supplement earlier if Judge Farnan's entry of the Amended Complaint is unexpectedly delayed.

## LifeScan's General Objections to Interrogatories

### 1. General Objection 7

The parties agreed that answers to contention interrogatories would be exchanged at a mutually agreeable date nearer to the close of Phase I fact deposition discovery.

### 2. General Objection 14

You agreed that LifeScan will produce all relevant and discoverable documents created before 10/2/2007 as long as those documents relate to accused products that were sold on or after 10/2/2007.

However, you did not agree to produce documents related to accused products that were sold before 10/2/2007. We proposed that the parties could resolve this issue if LifeScan would agree that there was no difference relevant to infringement between accused products that were sold before 10/2/2007 and accused products that were sold after 10/2/2007. You agreed to take our proposal under advisement.

You confirmed that LifeScan will produce all discoverable materials relevant to LifeScan's prior invention defense without regard to the 10/2/07 date.

### 3. General Objection 19

You agreed that, notwithstanding LifeScan's rejections to certain interrogatories as being "premature," LifeScan would provide information and produce documents relevant to Phase I.

### 4. Number of interrogatories

You confirmed that LifeScan has answered or will answer all interrogatories that we have identified for Phase I, notwithstanding LifeScan's position (with which we disagree) that Plaintiffs have exceeded the eleven-interrogatory limit for Phase I.

## Lifescan's Specific Objections to Interrogatories

### 1. Interrogatory 1

With regard to the significance of the 10/2/2007 date, the parties agreed that the prior discussion under General Objection 14 was sufficient to address the topic.

You agreed to take under advisement the issue of providing discovery regarding LifeScan's OneTouch® Select products.

The parties have reached an impasse regarding LifeScan's decision to withhold dates of manufacture, use, sale, offer for sale, and import, and to provide "official launch" dates instead.

### 2. Interrogatory 2

The parties have reached an impasse regarding LifeScan's decision to withhold information regarding licensing agreements.

### 3. Interrogatories 4 and 5

The parties agreed that answers to these interrogatories would be exchanged at a mutually agreeable date nearer to the close of Phase I fact deposition discovery.

### 4. Interrogatories 7 and 8

You agreed that LifeScan will answer these interrogatories insofar as they relate to prior invention.

### 5. Interrogatory 9

The parties agreed that answers to these interrogatories would be exchanged at a mutually agreeable date nearer to the close of Phase I fact deposition discovery.

### 6. Interrogatory 14

The parties agreed that LifeScan's argument that Plaintiffs have failed to state a claim on which relief can be granted is moot in light of its having consented to the filing of Plaintiffs' Amended Complaint.

### 7. Interrogatory 15

We explained that the information being sought by this interrogatory is not privileged because it corresponds to the information that would be included in a privilege log. You agreed to take this issue under advisement.

### **Lifescan's objections to production requests**

### 1. General objection regarding October 2, 2007 date

The parties agreed that this issue has already been addressed in the discussion of General Objection 14 to the Interrogatories.

### 2. Specific objection to Requests 12 and 13

We explained why the documents being sought by these requests are relevant to Phase I. We also explained that LifeScan's proposal to produce documents that are supposedly "sufficient" is insufficient. You agreed to take the issue under advisement.

### 3. Specific objection to Requests 17 and 18

We explained why the documents being sought by these requests are relevant to Phase I. You agreed to take the issue under advisement.

### 4. Specific objections to Request 19

We explained why the documents being sought by these requests are relevant to Phase I. We also explained that LifeScan's proposal to produce documents that are supposedly "sufficient" is insufficient.  You agreed to take the issue under advisement.

### 5. Specific objection to Request 21

You agreed that LifeScan would produce ten (10) samples of each accused product.

### 6. Specific objections to Requests 22, 23, and 30

We explained why the documents being sought by these requests are relevant to Phase I. We also explained that LifeScan's proposal to produce documents that are supposedly "sufficient" is insufficient.  You agreed to take the issue under advisement.

### 7. Specific objections to Request 32

We explained why the documents being sought by these requests are relevant to Phase I. We also proposed that LifeScan could stipulate that the accused products are used in accordance with LifeScan's instructions.  You agreed to take this issue under advisement.

### 8. Specific objections to Requests 36 and 37

We explained why the documents being sought by these requests are relevant to Phase I. You agreed to take the issue under advisement.

### 9. Specific objections to Requests 44, 46, and 47

We explained why the documents being sought by these requests are relevant to Phase I. We also explained that LifeScan's proposal to produce documents that are supposedly "sufficient" is insufficient.  You agreed to take the issue under advisement.

### 10. Specific objections to Requests 51 and 52

We explained why the documents being sought by these requests are relevant to Phase I. You agreed to take the issue under advisement.

### 11. Objection to request 55

We explained why the documents being sought by these requests are relevant to Phase I, and we clarified that legal opinions are not being sought by this request. You agreed to take the issue under advisement.

### 12. Objections to Requests 57-59

We explained why the documents being sought by these requests are relevant to Phase I. You agreed to take the issue under advisement.

### 13. Objections to Requests 60 and 61

We explained why the documents being sought by these requests are relevant to Phase I. You agreed to take the issue under advisement.

### 14. Objections to Requests 62-64

You advised that LifeScan will not produce materials that show only market share information but would produce marketing materials that directly or indirectly refer to the design, operation, and function of any of the accused products.

We asked about marketing materials that contain statements by LifeScan marketing representatives from which one could draw an inference of infringement. You agreed to take the issue under advisement. Regarding materials in which other defendants' products are analyzed, you agreed to take the issue under advisement.

### 15. Objections to Request 65

We explained why the documents being sought by these requests are relevant to Phase I. We also proposed that LifeScan could stipulate that the accused products are used in accordance with LifeScan's instructions. You agreed to take this issue under advisement.

### 16. Objections to Requests 66 and 67

We explained why the documents being sought by these requests are relevant to Phase I. We also explained that LifeScan's proposal to produce documents that are supposedly "sufficient" is insufficient. You agreed to take the issue under advisement.

### 17. Objections to Requests 68, 69, and 71

We explained why the documents being sought by these requests are relevant to Phase I. You agreed to take the issue under advisement.

### 18. Objection to Request 106

We explained that documents that compare LifeScan's products with Plaintiffs' ACCU-CHEK® Aviva products are responsive to this request and that they are relevant to Phase I because the Aviva products are covered by the patents-in-suit. You agreed to take the issue under advisement.

### 19. Objections to Requests 113 and 115

You agreed that LifeScan will produce responsive documents at the appropriate time.

### 20. Objections to Request 119

You confirmed that LifeScan will produce all non-privileged materials relevant to its prior invention defense.

As noted above, we are waiting to hear back from you regarding a number of issues. We indicated during the meet-and-confer that we wanted to receive your response by Thursday, April 3, 2008. On Thursday, you told me that you intended to send a letter on Friday regarding LifeScan's positions on these issues. We look forward to receiving your letter. However, we will consider the parties to be at an impasse with respect to any matter that is not resolved to our satisfaction by the close of business today, and we reserve the right to file a Motion to Compel on any such matter.

Sincerely,

Richard A. Machonkin
(312) 913-2129
machonkin@mbhb.com

**Exhibit 5**

# CONNOLLY BOVE LODGE & HUTZ LLP
### ATTORNEYS AT LAW

WILMINGTON, DE

The Nemours Building
1007 North Orange St.
P.O. Box 2207
Wilmington, DE 19899
TEL: (302) 658 9141
FAX: (302) 658 5614
WEB: www.cblh.com

R. ERIC HUTZ

TEL (302) 658 9141
FAX (302) 658 5614
EMAIL ehutz@cblh.com
REPLY To Wilmington Office

April 4, 2008

**VIA EMAIL**

Richard A. Machonkin, Esquire
McDonnell Boehnen Hulbert & Berghoff LLP
300 South Wacker Drive
Chicago, Illinois 60606-6709

Re:     *Roche Diagnostic Operations, Inc., et al. v. Abbott Diabetes Care, Inc., et al.*
         **Civil Action No. 07-753-JJF (D. Del.)**

Dear Rick:

This will follow up our meet and confer on April 1st and follow up discussion yesterday.  The purpose of this letter is to follow up on the items I agreed to take under advisement during the initial meet and confer.  It is not intended to respond to your letter of earlier today.  That will be reviewed and responded to separately with respect to whether it accurately summarizes what Lifescan has agreed to do.  For ease of reference, the discovery requests are addressed below:

## INTERROGATORY RESPONSES

General Objection 14 -- We have discussed the proposed no difference relevant to infringement stipulation with the client.  Lifescan is willing to consider this issue further but, as I indicated in our discussion yesterday, Lifescan would need to see the specific language Roche would propose.  Accordingly, please provide that language so that Lifescan can evaluate the proposal further.

Interrogatory No. 1 – With respect to the issue date of the patent discussion, please see General Objection 14 above.  With respect to our objection regarding the OneTouch Select product, Lifescan withdraws its objection on the ground that it is not presently identified in Roche's complaint.  However, Lifescan will not withdraw its other objections to this interrogatory request for the reasons set forth in my April 1, 2008 letter.

603098_1

**CONNOLLY BOVE LODGE & HUTZ LLP**
ATTORNEYS AT LAW

Richard A. Machonkin, Esquire
April 4, 2008
Page 2

Interrogatory No. 2 -- Lifescan will not withdraw its objections to this interrogatory with respect to license agreements for the reasons set forth in my April 1, 2008 letter. The information being sought is clearly related to damages and we disagree with Roche's attempt to leverage this information into Phase 1 based on a tenuous connection to alleged infringement.

Interrogatory No. 15 -- Lifescan will not withdraw its objections to these requests for the reasons set forth in my April 1, 2008 letter, specifically the issue of privilege.

## DOCUMENT REQUESTS

General Objection 1 -- We have discussed the proposed stipulation relating to accused products being used in accordance with Lifescan's instructions with the client. Lifescan is willing to consider this issue further but, as I indicated in our discussion yesterday, Lifescan would need to see the specific language Roche would propose. Accordingly, please provide that language so that Lifescan can evaluate the proposal further.

Document Request Nos. 12, 13, 19, 22, 23, 30, 44, 46, 47, 62-64, 66, and 67 – Based upon or initial meet and confer, it appears Roche's primary objection to Lifescan's proposal to produce documents sufficient to show the structure and operation of the accused products was the "sufficient" language in that proposal. During our discussion yesterday, I suggested a proposal that might balance each party's respective concerns regarding the issue. Pursuant to your request to submit something in writing, Lifescan would propose that when certain categories of documents are being produced as representative samples, they be identified as such at the time of production. This would give Roche an opportunity to evaluate those documents and decide if they want production of all documents in that category. In the event Roche determines that it does want such additional production, the parties can discuss the issue further. Please advise if this approach is agreeable. If so, please let me know whether this resolves Roche's concerns regarding these requests or if there are other issues that still need to be addressed. This proposal is without waiver of any additional grounds for objection set forth in Lifescan's responses to these requests.

Document Request Nos. 32, 60, 61 and 65 – We have discussed the proposed stipulation relating to accused products being used in accordance with Lifescan's instructions with the client. Lifescan is willing to consider this issue further but, as I indicated in our discussion yesterday, Lifescan would need to see the specific language Roche would propose. Accordingly, please provide that language so that Lifescan can evaluate the proposal further.

**CONNOLLY BOVE LODGE & HUTZ LLP**
ATTORNEYS AT LAW

Richard A. Machonkin, Esquire
April 4, 2008
Page 3

    Document Request Nos. 17 and 18 – Lifescan will not withdraw its objections to
these requests. The names of the relevant individuals will be apparent from other
documents produced by Lifescan that relate to Phase 1. Lifescan will also be producing
organization charts in response to other requests. Furthermore, Roche's explanation for the
relevance of these requests, including the minimal time saved in a deposition by having a
CV, do not outweigh Lifescan's objections.

    Document Request Nos. 36, 37, 51 and 52 – Lifescan will not withdraw its
objections to these requests for the reasons set forth in my April 1, 2008 letter. The
information being sought is clearly related to Phase 2 and we disagree with Roche's
attempt to leverage this information into Phase 1 based an alleged relevance to claim
construction.

    Document Request No. 55 – Based upon the clarification that Roche provided,
Lifescan will produce, subject to its objections, relevant and non-privileged internal
discussions relating to infringement or non-infringement to the extent they exist and can be
located after a reasonable search.

    Document Request Nos. 57 – 59 – Lifescan will not withdraw its objections to
these requests for the reasons set forth in my April 1, 2008 letter. The information being
sought is clearly related to damages and we disagree with Roche's attempt to leverage this
information into Phase 1 based on a tenuous connection to alleged infringement.

    Document Request Nos. 68, 69, and 71 -- Lifescan will not withdraw its objections
to these requests for the reasons set forth in my April 1, 2008 letter. The information being
sought is clearly related to damages and we disagree with Roche's attempt to leverage this
information into Phase 1 on the ground that this somehow shows the importance of product
features.

Document Request No. 106 -- Lifescan will not withdraw its objections to these requests
for the reasons set forth in my April 1, 2008 letter.

**CONNOLLY BOVE LODGE & HUTZ LLP**
ATTORNEYS AT LAW

Richard A. Machonkin, Esquire
April 4, 2008
Page 4


Please advise if you wish to discuss any of these issues further.


Very truly yours,

R. Eric Hutz


REH/evs

603098_1