## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

ROCHE DIAGNOSTICS OPERATIONS, INC., )
and CORANGE INTERNATIONAL LIMITED, )
                                       )
             Plaintiffs,        )
                                         )       Civil Action No. 07-753 JJF
            v.                     )
                                         )
ABBOTT DIABETES CARE, )
INCORPORATED, and ABBOTT DIABETES )
CARE SALES CORPORATION, et al., )
                                         )
             Defendants.      )
                                         )

## DECLARATION OF MICHAEL P. KAHN

I, Michael P. Kahn, do hereby declare:

      1.     I am an Associate of the law firm of Ropes & Gray, LLP, counsel of record for defendant Nova Biomedical Corporation ("Nova").

      2.     Unless otherwise stated as being on information and belief, the facts stated in this declaration are based on my personal knowledge.

      3.     Attached as Exhibit "A" is a true and correct copy of an email from Michael P. Kahn to Grantland G. Drutchas, counsel for plaintiff Roche Diagnostics Operations, Inc. ("Roche"), dated February 13, 2008.

      4.     Attached as Exhibit "B" is a true and correct copy of a letter from Grandland G. Drutchas, to counsel for all defendants in this matter, including Bradford J. Badke, counsel for Nova, dated February 15, 2008.

      5.     Attached as Exhibit "C" is a true and correct copy of a letter from Paula S. Fritsch, counsel for Roche, to Bradford J. Badke, dated March 11, 2008.

6.      Attached as Exhibit "D" is a true and correct copy of a letter from Michael P. Kahn to Paula S. Fritsch, dated March 11, 2008.

7.      Attached as Exhibit "E" is a true and correct copy of an email from Michael P. Kahn to Patrick Gattari, counsel for Roche, dated March 17, 2008.

8.      Attached as Exhibit "F" is a true and correct copy of a letter from Michael P. Kahn to Paula S. Fritsch, dated April 1, 2008.

9.      Attached as Exhibit "G" is a true and correct copy of a letter from Paula S. Fritsch to Michael P. Kahn dated April 4, 2008.

10.     Attached as Exhibit "H" is a true and correct copy of an email from Michael P. Kahn to Daniel Boehnen, counsel for Roche, dated April 9, 2008.

11.     Attached as Exhibit "I" is a true and correct copy of Roche Diagnostics Operations, Inc.'s and Corange International Limited's First Set of Requests to Defendant Nova Biomedical Corporation for the Production of Documents and Things (Nos. 1-161).

12.     Attached as Exhibit "J" is a true and correct copy of an email from Paula S. Fritsch to Michael P. Kahn dated April 22, 2008.

I declare under penalty of perjury that the foregoing is true and correct.

Signed this 28th day of April, 2008.

By:   _____
                    Michael P. Kahn

## CERTIFICATE OF SERVICE

I, Rodger D. Smith II, hereby certify that on April 28, 2008, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to the following:

Philip A. Rovner, Esquire
Potter Anderson & Corroon LLP

Frederick L. Cottrell, III, Esquire
Richards Layton & Finger PA

Mary W. Bourke, Esquire
Connolly Bove Lodge & Hutz LLP

Steven J. Balick, Esquire
Ashby & Geddes

John W. Shaw, Esquire
Young Conaway Stargatt & Taylor LLP

I also certify that copies were caused to be served on April 28, 2008, upon the following in the manner indicated:

### BY HAND AND EMAIL

Philip A. Rovner, Esquire
Potter Anderson & Corroon LLP
1313 North Market Street
Wilmington, DE  19801

Frederick L. Cottrell, III, Esquire
Richards Layton & Finger PA
One Rodney Square
920 North King Street
Wilmington, DE  19801

Mary W. Bourke, Esquire
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 North Orange Street
Wilmington, DE  19801

Steven J. Balick, Esquire
Ashby & Geddes
500 Delaware Avenue
P.O. Box 1150
Wilmington, DE  19899

John W. Shaw, Esquire
Young Conaway Stargatt & Taylor LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE  19801

**BY EMAIL**

Daniel A. Boehnen, Esquire
Grantland G. Drutchas, Esquire
McDonnell Boehnen Hulbert & Bergoff LLP
300 South Wacker Drive
Chicago, IL  60606
boehnen@mbhb.com
drutchas@mbhb.com

Michael G. Adams, Esquire
Ashley L. Ellis, Esquire
Parker Poe Adams & Bernstein LLP
Three Wachovia Center, Suite 3000
401 South Tryon Street
Charlotte, NC  28202
mikeadams@parkerpoe.com
ashleyellis@parkerpoe.com

Edward A. Mas II, Esquire
McAndrews, Held & Malloy, Ltd.
500 West Madison Street
Chicago, IL  60661
emas@mcandrews-ip.com

Rachel Krevans, Esquire
Wesley E. Overson, Esquire
Morrison & Foerster LLP
425 Market Street
San Francisco, CA  94105
rkrevans@mofo.com
woverson@mofo.com

Kenneth P. George
Joseph M. Casino
Amster Rothstein & Ebenstein LLP
90 Park Avenue
New York, NY  10016
kgeorge@arelaw.com
jcasino@arelaw.com

/s/ Rodger D. Smith II (#3778)
Rodger D. Smith II (#3778)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
(302) 658-9200
rsmith@mnat.com

# EXHIBIT A

| **From:** | Kahn, Michael P. |
|---|---|
| **Sent:** | Wednesday, February 13, 2008 3:39 PM |
| **To:** | Boehnen@mbhb.com; Drutchas@mbhb.com; provner@pacdelaware.com |
| **Cc:** | Jorjani, Parisa; gaza@rlf.com; ashleyellis@parkerpoe.com; Bartlett, Jason R.; dos Santos, Mathew W.; emas@mcandrews-ip.com; cottrell@rlf.com; Guerra, Marcelo O.; jcastellano@ycst.com; jday@ashby-geddes.com; jshaw@ycst.com; jcasino@arelaw.com; kgeorge@arelaw.com; kvanderleest@mcandrews-ip.com; Krevans, Rachel; lmaguire@ashby-geddes.com; mbourke@cblh.com; Meier, Chris; mikeadams@parkerpoe.com; Muino, Daniel P.; woverson@mofo.com; ehutz@cblh.com; ssherry@mcandrews-ip.com; SBalick@ashby-geddes.com; Badke, Bradford J.; De, Sona; rsmith@mnat.com |

**Subject:** Roche v. Abbott, et al. - Roche's Discovery Requests

Grant,

I write regarding Roche's First Set of Interrogatories (1-27) and Document Requests (1-161) served on Nova on January 23, 2008 and on behalf of the other defendants to the extent this e-mail relates to discovery served upon them.

Roche's interrogatories and document requests are premature in view of the Court's February 8 Case Management Conference and the Court's form Rule 16 Scheduling Order. Roche's interrogatories also fail to comply with Fed. R. Civ. P. 33 and Local Rule 26.1.  Rather than engaging in protracted objections and letter-writing, the defendants propose that Roche withdraw its interrogatories and requests at this time, and serve more appropriately tailored sets at the proper time.  If Roche elects to accept the defendants' offer of withdrawal, the defendants will not count Roche's first sets of interrogatories against Roche's discovery allotment.

During the February 8 Conference, the Court instructed the parties to stage discovery.  Specifically, the Court stated that "this case today is only about infringement and counterclaims properly brought to an infringement charge. We're going to push out validity. We're going to push out damages and anything else that might be in the case right now." (Feb. 8 Transcript, at 27:12-18). Many of Roche's interrogatories and document requests are directed to issues other than infringement and therefore are inappropriate at this time.

The Court's form Rule 16 Scheduling Order (and the order first proposed by the parties) provides that contention interrogatories need not be answered before the end of document production and the identification of fact witnesses. (See Document 16-2, Paragraph 3(a)). The Court further suggested that all written discovery may be put off until document discovery is complete: "I can tell you what the process is going to be. There's going to be infringement discovery, document production. Then there's going to be the typical interrogatory, requests for admission and deposition discovery." (Feb. 8 Tr., at 37:1-5). The majority of Roche's Interrogatories are directed to contentions and are premature in any event.

Roche's Interrogatories also run afoul of the limits imposed by Rule 33 and Local Rule 26.1. As an initial matter, Roche served 27 numbered interrogatories on Nova. This exceeds both the limit set forth in Rule 33, which limit Roche proposed to the Court (25).  Further, Roche's 27 interrogatories contain at least 128 subparts.  According to Local Rule 26.1(a), "Each subpart of an interrogatory or request shall be counted as a separate interrogatory or request."  Even without getting overly literal with this requirement, we believe that Roche's interrogatories are far beyond what is reasonable in light of this Local Rule.

In light of the foregoing, the defendants collectively propose that Roche withdraw its interrogatories and other discovery requests and conform them with the Court's instructions and the Federal and Local Rules. Further, the defendants propose that all parties hold back any discovery requests of any kind until the Court issues a Scheduling Order or sets other governing deadlines for written discovery.  This will result in the most efficient use of resources.

Please do not hesitate to contact me to discuss any of this.

Best regards,

Michael

**Michael P. Kahn**
**ROPES & GRAY LLP**
T 212-596-9186 | F 646-728-2872
1211 Avenue of the Americas
New York, NY 10036-8704
Michael.Kahn@ropesgray.com
www.ropesgray.com

# EXHIBIT B



**McDonnell Boehnen Hulbert & Berghoff** LLP

300 South Wacker Drive    312 913 0001  phone
Chicago, Illinois 60606–6709    312 913 0002  fax
www.mbhb.com

February 15, 2008

**Sent Via e-mail and First Class Mail**

Stephen F. Sherry
McAndrews, Held & Malloy, Ltd.
500 West Madison St
34th Floor
Chicago, IL 60661
ssherry@mcandrews-ip.com

Mary W. Bourke
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 N. Orange St.
Wilmington, DE 19801
mbourke@cblh.com

Rachel Krevans
Morrison & Foerster LLP
425 Market St.
San Francisco, CA 94105
rkrevans@mofo.com

Bradford J. Badke
Ropes & Gray LLP
1211 Avenue of Americas
New York, NY 10036
Jim.badke@ropesgray.com

Re:    *Roche Diagnostic Operations, Inc. et al. v. Abbott Diabetes Care, Inc. et al.,
C.A. No. 07-753-JJF (D. Del.)*

Dear Counsel:

As you know, Plaintiffs Roche Diagnostics Operations, Inc. and Corange International Limited (collectively "Plaintiffs") served document requests and interrogatories on Defendants Abbott Diabetes Care Inc. ("ADC") and Abbott Diabetes Care Sales Corporation ("ADCSC") (collectively "Abbott"), Bayer Healthcare, LLC ("Bayer"), LifeScan, Inc. ("LifeScan") and Nova Biomedical Corporation ("Nova") on January 23, 2008.  In light of the Court's directions at the Rule 16 Scheduling Conference on February 8, 2008 regarding phasing of this case, and as detailed herein, Plaintiffs are withdrawing or temporarily limiting the discovery requests that fall outside the phasing parameters directed by the Court.

Plaintiffs request the prompt production of discovery that is responsive to the requests falling within the phasing parameters directed by the Court, and Plaintiffs reserve the right to re-assert the other discovery requests during the appropriate future phase of discovery activity in this case.

In particular, referring to Plaintiffs' First Set of Document Requests and Plaintiffs' First Set of Interrogatories to each of Abbott, Bayer, LifeScan and Nova, dated January 23, 2008,

Plaintiffs are withdrawing without prejudice any requests relating solely to the issues of validity and/or damages as indicated below. You may treat the withdrawn requests as cancelled, and need not lodge objections, etc. at this stage. In addition, Plaintiffs are limiting, as also indicated below, some requests to the extent that those requests related in part to the issues of validity and/or damages.

We have received Michael Kahn's E-mail of February 13, 2008. We believe that our approach outlined herein responds to virtually all of the concerns raised by Mr. Kahn, including the scope of the requests and the number of interrogatories posed to Nova. To the extent that the Court's order and/or directions have indicated that contention interrogatories need not be answered prior to the completion of document discovery, we can discuss an appropriate time for Defendants to submit those answers; in no event is Roche required to withdraw them. (We further note that Defendants' proposed Protective Order, sent last night, does not stage document discovery and interrogatories as Mr. Kahn's letter suggests.)

Finally, as for the limits imposed by Local Rule 26.1, we believe that the interrogatories comply fully with that rule. In each instance, the interrogatory requests Defendants to provide information on a specific topic, and provides examples of information that would be required to provide a fully responsive answer on that topic. The interrogatories do not have separate subparts within the rule.

## Withdrawals/Limitations Applicable to Abbott:

**Withdrawn discovery:** Plaintiffs withdraw Interrogatory Nos. 6, 10, 11, 13 and 15. Plaintiffs also withdraw Request for Production Nos. 38, 49, 50, 70 and 72-102.

**Limited Discovery:** Plaintiffs are limiting Interrogatory Nos. 7, 8, 12 and 17 and Request for Production Nos. 36, 37, 43, 48, 53-59 and 107-123 to the issues of infringement and/or prior invention under 35 U.S.C. 102(g) of any claim in the 146 patent and the 147 patent.

## Withdrawals/Limitations Applicable to Bayer:

**Withdrawn discovery:** Plaintiffs withdraw Interrogatory Nos. 6, 10, 11 and 13. Plaintiffs also withdraw Request for Production Nos. 38, 49, 50, 70 and 72-102.

**Limited Discovery:** Plaintiffs are limiting Interrogatory Nos. 7, 8, 12 and 18 and Request for Production Nos. 36, 37, 43, 48, 53-59, 107, 108 and 110-115 to the issues of infringement and/or prior invention under 35 U.S.C. 102(g) of any claim in the 146 patent and the 147 patent.

**Withdrawals/Limitations Applicable to LifeScan**

**Withdrawn discovery:**  Plaintiffs withdraw Interrogatory Nos. 6, 10, 11 and 13. Plaintiffs also withdraw Request for Production Nos. 38, 49, 50, 70 and 72-102.

**Limited Discovery:**  Plaintiffs are limiting Interrogatory Nos. 7, 8, 12 and 16 and Request for Production Nos. 36, 37, 43, 48, 53-59 and 107-115 to the issues of infringement and/or prior invention under 35 U.S.C. 102(g) of any claim in the 146 patent and the 147 patent.

**Withdrawals/Limitations Applicable to Nova:**

**Withdrawn discovery:**  Plaintiffs withdraw Interrogatory Nos. 6, 10, 11, 13 and 25. Plaintiffs also withdraw Request for Production Nos. 38, 49, 50, 70 and 72-102.

**Limited Discovery:**  Plaintiffs are limiting Interrogatory Nos. 7, 8, 12 and 27 and Request for Production Nos. 36, 37, 43, 48, 53-59, 107-109 and 152-157 to the issues of infringement and/or prior invention under 35 U.S.C. 102(g) of any claim in the 146 patent and the 147 patent.

**Nova Counterclaim Discovery:**  To the extent that Nova intends to pursue its counterclaims now, Plaintiffs maintain Interrogatory Nos. 14-17 and 20-24, and Request for Production Nos. 110-151.  If Nova intends to pursue its counterclaims at a later point in the case, Plaintiffs request that Nova notify them immediately.

Sincerely,

Grantland G. Drutchas
312 913 2121 direct
drutchas@mbhb.com

cc: all counsel (via email)

# EXHIBIT C



**McDonnell Boehnen Hulbert & Berghoff LLP**

300 South Wacker Drive       312 913 0001 phone
Chicago, Illinois 60606-6709   312 913 0002 fax
www.mbhb.com

March 11, 2008

**Sent Via e-mail**
**Confirmation via First class mail**

Bradford J. Badke
Ropes & Gray LLP
1211 Avenue of Americas
New York, NY 10036
Jim.badke@ropesgray.com

Re:     Roche v. Abbott et al., Civil Action No. 07-753 JJF
        Nova's written responses to Plaintiffs' First Set of Requests for Production

Dear Bradford:

We write to apprise you of our concerns and provide information regarding deficiencies in Nova's responses and objections to Interrogatory Nos. 14-17, 20-24 and 26-27 from Plaintiffs' First Set of Interrogatories. We will address any concerns we have with Nova's responses to the remaining interrogatories after we receive those responses on or before March 14, 2008.

*Nova's General Objections*

Plaintiffs have concerns with a number of Nova's General Objections. Specifically, General Objection 1 objects, in part, to the Interrogatories as premature in light of the Court's February 28, 2008 adoption of Defendants' proposed schedule and to the extent that the Interrogatories call for information that falls outside the scope of Phase I discovery. Plaintiffs contend that this objection is unnecessary and unwarranted in light of our February 15, 2008 letter withdrawing certain Interrogatories and specifically limiting others to comply with the Court's directives regarding the staging of discovery. If Nova is withholding any information on this basis beyond the areas set forth in our February 15th letter, then please detail any areas for which Nova is withholding information beyond the areas set forth in our February 15th letter.

Nova's General Objection 6 indicates that "Nova will not provide information that is … obtainable from a source that is more convenient, less burdensome, or less expensive." We note, as we did with respect the a similar objection in Nova's responses to our Requests for Production, that the fact that a document or information can be tracked down somewhere else is not a ground for Nova's failure to produce a document or provide information specifically requested.  Moreover, Nova's possession of such information that may be obtainable from other sources may itself lead to the discovery of highly relevant, admissible evidence.  To the extent that Nova intends to withhold any information on the grounds that the information is otherwise available from some other source, please identify with particularity the Interrogatories to which this General Objection applies.   Moreover, to the extent that Nova intends to withhold any information on the grounds that General Objection 6 applies, Plaintiffs insist that this information be identified with sufficient particularity for Plaintiffs to identify and locate the other source(s) of this information and request this information from those other sources, or to otherwise challenge Nova's refusal to produce it.

In its General Objection 17, Nova objects to the Interrogatories for exceeding the limit of 15 Phase I interrogatories related to Nova's counterclaims.  Plaintiffs disagree that any of the Interrogatories relating to Nova's counterclaims, or any of the outstanding Interrogatories, exceed the limitations set forth in the Proposed Scheduling Order submitted to the Court on March 6, 2008.  The mere fact that an interrogatory enumerates a series of categories or types of information to be provided in the response does not mean that the interrogatory contains "subparts" within the meaning of Federal Rule 33 or Local Rule 26.1(a).  *See* Fed. Rule Civ. Proc. 33, Advisory Committee Note on 1993 Amendments ("Parties cannot evade this presumptive limitation through the device of joining as "subparts" questions that seek information about *discrete separate subjects*. However, a question asking about communications of a particular type should be treated as a single interrogatory even though it requests that the time, place, persons present, and contents be stated separately for each such communication.")(emphasis added).  For example, although Plaintiffs' Interrogatory No. 20 requests identification of three categories of information, each of these categories is necessary for Nova to describe with particularity its factual and legal basis for its Breach of Contract Counterclaim.  In other words, the categories are simply explanations of what is required for a complete response to avoid any confusion and omission.  The same can be said for each and every one of the Interrogatories served by Plaintiffs, as Plaintiffs took care to avoid crafting interrogatories with *discrete* subparts (which would be limited by the Federal Rules and the Local Rules). To the extent that Nova limited its responses to any of Interrogatory Nos. 14-17, 20-24 or 26-27 based on this General Objection, Plaintiffs request that Nova promptly supplement its responses.  Moreover, Plaintiffs request that Nova reconsider this objection in advance of serving responses to the outstanding Interrogatories.

Finally with respect to the General Objections, as we noted in our letter regarding Nova's responses to our Requests for Production, Nova's attempt to narrow the scope of Plaintiffs' definition of "Electrochemical Sensors" in General Objection 24 is unacceptable to Plaintiffs. Plaintiffs' definition clearly encompasses test strips and meters, while Nova's definition limits the term to test strips. To the extent that Nova's responses to Interrogatory Nos. 14-17, 20-24 and 26-27 exclude information because of the differences between Plaintiffs' and Nova's definition of "Electrochemical Sensors," Plaintiffs expect Nova to promptly supplement its responses. Moreover, Plaintiffs insist that Nova include information about test strips _and_ meters in its responses to the outstanding interrogatories, in particular Interrogatory No. 1 (and all interrogatories that relate to Interrogatory No. 1).

*Nova's Specific Objections and Responses*

Plaintiffs also have concerns with a number of Nova's objections and responses to particular Interrogatories. In general, we are disappointed with the lack of substance in the responses, especially in light of the extension granted to Nova for these responses, and the additional extension granted for the responses to the Interrogatories related to Roche's claims (which are now due March 14, 2008).

In response to Interrogatory No. 15, Nova merely states that "on information and belief, Roche's Accu-Chek® Aviva test strips literally infringe at least claim 1 of the '229 patent," without providing any substantiation of that assertion. Plaintiffs submit that, despite the timing for responses to contention interrogatories provided in the Proposed Scheduling Order submitted March 6, 2008, Nova should be in a position, even at this early stage of the litigation, to (a) provide additional information about the documents and things that support Nova's assertion of infringement of claim 1, and (b) identify the persons most knowledgeable of the facts relating to the assertion of infringement of claim 1.

Interrogatory No. 17 requests a description of all facts and circumstances relating to the invention(s) claimed in the 229 patent that Nova asserts is infringed by Plaintiffs. Since Nova only identified claim 1 at this time, the following information should have been provided regarding claim 1 of the 229 patent:

> (i) the date when and location where the claimed subject matter was
>
> > (a) first conceived,
> > (b) first observed experimentally,
> > (c) first described in a document,
> > (d) first reduced to practice, and
> > (e) first disclosed to a person other than the inventors;

(ii) each person who contributed to the conception of the claimed subject matter and describe his or her contribution;

(iii) each person who contributed to the reduction to practice of the claimed subject matter and describe his or her contribution; and

(iv) all documents that support each of these dates.

Nova's response to this Interrogatory includes an objection "to the extent [the Interrogatory] calls for premature Phase II validity discovery," and then provides information regarding (a) the dates (by year only) and location that the "claimed invention" was "design[ed] and develop[ed]," (b) a date (by year only) when "the inventions claimed in the '229 patent" were reduced to practice, and (c) information on who participated in the research, design and/or development of BD Test Strip® and Nova Max electrochemical sensors. In other words, no information is provided about the first disclosure of the invention claimed in claim 1 of the 229 patent (i) in a document, or (ii) to a person other than the inventors. It is Plaintiffs' position that information regarding the first disclosure of the invention claimed in any asserted claims is certainly relevant to one or more of Nova's counterclaims (i.e., is relevant to the issues in Phase I). Thus, Plaintiffs expect Nova to promptly supplement its response to Interrogatory No. 17 to address these deficiencies. In addition, Interrogatory No. 17 requests identification of documents that support each of the requested dates. Plaintiffs request that Nova supplement its response to Interrogatory No. 17 in a timely manner following Nova's production of documents in order to address this portion of the Interrogatory.

Interrogatory Nos. 20-23 seek information regarding Nova's non-patent counterclaims, and Nova's responses to each of these Interrogatories provide little more information than what was provided in Nova's pleading. For Nova to assert that these requests are premature is disingenuous. Nova cannot assert counterclaims based upon purported confidential and proprietary information and trade secrets, and then fail to identify the confidential and proprietary information and trade secrets with particularity. Plaintiffs are entitled to a complete and concise recitation of the confidential and proprietary information and/or trade secrets that Plaintiffs allegedly used in breach of the Agreement, misappropriated, misused and/or improperly exercised dominion over. In addition, Plaintiffs are entitled to a statement from Nova regarding what actions taken by Plaintiffs form the basis for a breach of contract, misappropriation of trade secrets, unfair competition and/or conversion claim with respect to each of the alleged confidential and proprietary information and/or trade secret. *See SmithKline Beecham Pharmaceuticals Co. v. Merck & Co., Inc.*, 766 A.2d 442, 447-48 (Del. 2000). Plaintiffs insist that Nova promptly supplement its responses to Interrogatory Nos. 20-23.

Nova's response to Interrogatory No. 24, which seeks information regarding Nova's disclosure of the allegedly confidential and proprietary information and/or trade secrets concerning Nova's work on a sub-microliter glucose strip to persons other than Roche, is facially incomplete.  In response to the Interrogatory, Nova must provide information regarding what particular confidential and proprietary information was shared with Becton, Dickinson and Company ("BD") as well as when and how the disclosure(s) was made, and whether any of the information was shared prior to the signing of the "confidential disclosure agreement" with BD.  In addition, Nova must provide the requested information for any other persons with whom Nova shared the allegedly confidential and proprietary information and/or trade secrets concerning Nova's work on a sub-microliter glucose strip. Plaintiffs request that Nova promptly provide a supplemental response to this Interrogatory.

Plaintiffs request that Nova promptly address each of the concerns discussed above in supplemental responses.  From Plaintiffs' perspective, none of the supplemental responses should be particularly onerous given that Plaintiffs are merely requesting information that Nova should have considered in its pre-trial investigations.  Thus, Plaintiffs believe that Nova should be able to provide its supplemental responses by March 28, 2008.

We request a telephone conference on Friday, March 14, 2008, during which we can explore these matters and the matters raised in our letter of March 10th with you in detail, and to meet & confer in accord with Del. L.R. 7.1.1.

Sincerely,

Paula S. Fritsch
312 913 3315 (direct)
fritsch@mbhb.com

# EXHIBIT D



ROPES & GRAY LLP

1211 AVENUE OF THE AMERICAS    NEW YORK, NY 10036-8704    212-596-9000    F 212-596-9090

BOSTON    NEW YORK    PALO ALTO    SAN FRANCISCO    TOKYO    WASHINGTON, DC    www.ropesgray.com

March 11, 2008

Michael P. Kahn
212-596-9186
646-728-2872 fax
michael.kahn@ropesgray.com

**BY E-MAIL**

Paula S. Fritsch
McDonnell, Boehnen, Hulbert & Berghoff, LLP
300 South Wacker Drive
Chicago, Il  60606

Dear Paula:

   I write in response to your March 10 and March 11 letters to Jim Badke concerning Nova's responses to Roche's discovery requests.

   Nova disagrees with many of Roche's categorizations in both letters concerning Nova's responses and objections.  However, I will endeavor to confine my letter to addressing those issues where Roche requested specific actions or directed specific questions.

  A. **Roche's March 10 Letter – Nova's Responses To Document Requests**

   Many of Roche's "concerns" stem from Roche's decision to serve requests before the Court issued its scheduling order.  Roche's requests were not drafted or designed to fall within the Court's Phase 1 discovery limitations.  As Roche readily admits, the majority of the requests at issue in its letter "pertain to materials in the validity and/or damages phases of the case," are "relevant to the validity phase of the case," are "relevant to a later phase of the case" and "call[] for opinions regarding validity or enforceability of the '229 patent."  (*See* discussion in Roche's March 10 letter regarding Nova's responses to Request Nos. 12, 13, 15, 17, 18, 22, 36, 37, 44, 46, 47, 51, 52, 54, 55, 56, 57, 58, 60, 61, 62, 63, 64, 65, 68, 69, 71 and 149).  Roche's attempts to argue strained connections between its requests and Phase 1 issues that were defined after these requests were drafted and served is a not-so-thinly veiled attempt to ignore or circumvent the Court's February 28, 2008 Order and obtain discovery that is not appropriately in Phase 1.  In light of Roche's insistence on serving these requests prematurely, the current disputes over their scope is not surprising.

   This is precisely why Nova requested in my February 13, 2008 e-mail to Grant Drutchas that Roche withdraw all of its served discovery and draft more appropriately tailored requests.  Nova maintains this request and believes that a more appropriately tailored set of requests will allow the parties to proceed with document discovery in the most efficient

ROPES & GRAY LLP

Paula S. Fritsch                               - 2 -                               March 11, 2008

manner.  If Roche will agree to withdraw the above requests, Nova would be willing to discuss a shortening of the 30-day period for Nova's responses and objections.  This is clearly a more efficient and appropriate course of action than Roche's alluded-to motion practice on these issues.

   *Comments Regarding Nova's General Objections*

No. 4:  Nova's general objection was limited specifically to documents that are not in Nova's possession, custody or control.  Nova does not intend to withhold documents that are in its possession, custody or control on the basis that they are otherwise publicly available.

No. 11:  Nova does not believe that any post-filing-date document discovery is necessary or appropriate in Phase 1.  If Roche disagrees with this position, please provide Roche's proposal for the date limitation(s) of Phase 1 document discovery so that we can consider it and determine an appropriate agreement.

No. 21:  Roche's definition number 21 limited "Electrochemical Sensors" to "test strips . . . alone or in combination with a meter . . . capable of receiving the test strip . . ."  Nova does not intend to withhold any discovery relating to meters used "in combination with" Nova's test strips.

   *Comments Regarding Nova's Specific Objections and Responses*
   *(in the order set out in Roche's letter)*

Request No. 9:  Please explain how ***Nova's decision*** to research, design, develop, manufacture, etc., its test strips has any relevance to "to Plaintiffs' infringement claims."

Request Nos. 12-13:  Please explain how documents that pertain to the utility and advantages of certain electrochemical sensors "relate to Roche's infringement claims."

Request Nos. 15-17:  Please explain how "the most current curriculum vitae" for up to twenty different Nova employees "relate[s] to Roche's infringement claims."

Request No. 18:  Please explain how "the names and titles of all persons having any role in the sales and/or marketing" of Nova's electrochemical sensors "relate[s] to Roche's infringement claims."

Request No. 118-121:  As set forth, above, Nova does not intend to withhold documents that are in its possession, custody or control on the basis that they are otherwise publicly available.  To the extent that there are any documents responsive to Roche's requests and such documents are not in Nova's possession, custody or control, it is less expensive, less burdensome and more efficient for Roche to obtain these documents directly.  FED. R. CIV. P. 26(b)(2)(C)(i).

ROPES & GRAY LLP

Paula S. Fritsch                                    - 3 -                                    March 11, 2008

Request No. 123-125:  Please explain how "the most current curriculum vitae" for the inventors of the '229 patent, "any agreements between Nova and any inventor" and "any payments or other compensation other than salaries" given to any of the inventors "relate[s] to Nova's infringement counterclaims."

Request Nos. 36-37:  Please explain how documents concerning prior art searches, literature searches and patent searches "are clearly pertinent to claim construction."

Request Nos. 51-52:  Please explain how documents concerning "the state of the art" are "clearly pertinent to claim construction."  To the extent Roche's comment is directed to the determination of one of ordinary skill in the art (and therefore not the subject of Roche's request), such is expert opinion and testimony.

Request Nos. 60, 62-65, 68, 69 and 71 and Request Nos. 22, 44, 46, 47, 54-58, 60-65, 68, 69 and 71:  These requests – which Roche grouped artificially in two sets – are directed to damages, willful infringement and validity.  Roche's attempt to bunch them together in an effort to argue that they relate to some infringement-relevant discovery does not make them so. To the extent that Roche seeks information relevant to Phase 1 discovery, Nova requests that Roche withdraw these requests and serve a more appropriately tailored set directed to Phase 1 issues.  Further, Roche's argument that certain of the requests call for documents relevant to "the prior use issues in this phase" is incorrect.  Prior use under 35 U.S.C. § 102(a) is not at issue in Phase 1.

Request No. 67:  In light of Roche's limitation of the scope of this request, Nova agrees, subject to its other objections, to search for and produce otherwise discoverable documents concerning communications with users regarding the components and use of Nova's BD Test Strips® and NovaMax® test strips.

Request Nos. 126-140:  Nova maintains its objection that the requested documents concerning the so-called "second application" are not relevant to any claim or defense and are not reasonably calculated to lead to the discovery of admissible information.  To the extent that Nova receives discovery from Roche that indicates that Roche's use of information concerning this "second application" relates to Nova's non-patent counterclaims, Nova will reconsider this objection.  Please direct us to any such discovery Roche produces.

Request No. 149:  In light of Roche's limitation of the scope of this request, Nova will agree, subject to its other objections, to search for and produce otherwise discoverable documents concerning any "opinions regarding infringement or non-infringement of Roche's devices or prior invention by Roche," if Roche agrees to search for and produce any documents in its possession regarding opinions of infringement or non-infringement of Nova's devices or prior invention by Nova.

ROPES & GRAY LLP

Paula S. Fritsch                            - 4 -                            March 11, 2008

B.    **Roche's March 11 Letter – Nova's Interrogatory Responses**

*Comments Regarding Nova's General Objections*

No. 6: Nova's general objection was specifically limited to information that is not in Nova's possession, custody or control. Nova does not intend to withhold information that is in its possession, custody or control on the basis that it is otherwise publicly available.

No. 24: Roche's definition number 20 limited "Electrochemical Sensors" to "test strips . . . alone or in combination with a meter . . . capable of receiving the test strip . . ." Nova does not intend to withhold any discovery relating to meters used "in combination with" Nova's test strips.

*Comments Regarding Nova's Specific Objections and Responses*
(in the order set out in Roche's letter)

Interrogatory No. 15: Nova has not received any discovery from Roche on Roche's electrochemical sensors, including the Roche Accu-Chek® Aviva test strip. As set forth in Nova's response to Interrogatory No. 15, Nova reserves the right to supplement its response in accordance with the requirements of Rule 26(e) based, at least in part, on discovery obtained from Roche.

Interrogatory No. 17: Nova agrees to supplement its response to Interrogatory No. 17 to provide additional information concerning the first disclosure of the invention claimed in Claim 1 of the '229 patent. Nova further agrees to supplement its response to this interrogatory to the extent necessary under Rule 26(e) and 33(d).

Interrogatory Nos. 20-23: Roche has not yet provided discovery concerning the extent of its misuse of Nova's confidential and proprietary information. Nova identified in detail the information that it provided to Roche and, on information and belief, how Roche misused that information. As set forth in its response to these interrogatories, Nova reserves the right to supplement its responses in accordance with the requirements of Rule 26(e) based, at least in part, on discovery obtained from Roche.

Interrogatory No. 24: Nova explained in its response to this interrogatory that it provided confidential and proprietary information concerning electrochemical sensors to BD, subject to a confidentiality agreement. Nova will investigate the details of its disclosure to BD and will supplement this interrogatory, to the extent necessary, in accordance with the requirements of Rule 26(e).

Nova believes that in light of the foregoing and Roche's need to withdraw and re-serve more appropriately tailored document requests, there is no need for the parties to meet-and-confer. To the extent you disagree, I am unable to participate in a telephone conference on

ROPES & GRAY LLP

Paula S. Fritsch                              - 5 -                              March 11, 2008

March 14.  I am, however, available for a telephone conference on either Thursday, March 20 or Friday, March 21.  Please let me know which of these dates works best for you.

    Further, in response to your inquiry concerning the timing of Nova's document production, Nova is open to the discussion of an agreeable date for Roche and Nova to exchange their initial productions of documents.

Sincerely,

*Michael P. Kahn*

Michael P. Kahn

MPK:mpk

# EXHIBIT E

| **From:** | Kahn, Michael P. |
| **Sent:** | Monday, March 17, 2008 12:05 PM |
| **To:** | Gattari, Patrick |
| **Cc:** | Badke, Bradford J.; De, Sona; Boehnen, Daniel; Drutchas, Grantland; Huber Benjamin; Rovner, Philip A.; Fritsch, Paula; Smith, Rodger |
| **Subject:** | 3/17 e-mail from Kahn to Gattari re: Nova's responses to Roche's discovery requests |

Patrick,

I am responding to Paula Fritsch's March 14 e-mail regarding Nova's responses to Roche's discovery requests.

I am available to participate in a telephone conference on Thursday, March 20 at 2:00 p.m. central time (3:00 p.m. eastern). In addition to the other issues raised in my letter, Nova requested that Roche explain why many of its discovery requests that appear to relate solely to damages, invalidity and willfulness issues, reasonably call for the production of documents concerning any Phase 1 issue. Ms. Fritsch did not provide any such information. It would be helpful and productive if, before we speak, you could provide answers to these questions.

Please confirm that Ms. Fritsch's proposed time on Thursday still works for you.

Regards,
Michael


**Michael P. Kahn**
**ROPES & GRAY LLP**
T 212-596-9186 | F 646-728-2872
1211 Avenue of the Americas
New York, NY 10036-8704
Michael.Kahn@ropesgray.com
www.ropesgray.com

# EXHIBIT F



**ROPES & GRAY**

ROPES & GRAY LLP

1211 AVENUE OF THE AMERICAS    NEW YORK, NY 10036-8704    212-596-9000    F 212-596-9090

BOSTON    NEW YORK    PALO ALTO    SAN FRANCISCO    TOKYO    WASHINGTON, DC    www.ropesgray.com

Michael P. Kahn
212-596-9186
646-728-2872 fax
michael.kahn@ropesgray.com

April 1, 2008

**VIA E-MAIL .PDF**

Paula S. Fritsch, Esq.
McDonnell Boehnen Hulbert & Berghoff LLP
300 South Wacker Drive
Chicago, Illinois   60606-6709

*Roche v. Abbott, et al.*
Civil Action No. 07-753 JJF

Dear Paula:

  Thank you for your efforts in setting forth Roche's understanding of the parties' discussions during the March 20, 2008 meet-and-confer.  I write to clarify Nova's position on certain issues raised in your letter with the hope of streamlining the continuation of our meet-and-confer later this afternoon.

  With respect to the timing of Nova's document production, Nova still intends to begin its production this week.  However, contrary to the suggestion in your letter, Nova did not commit to produce any specific categories of documents with this "initial document production."  Nova is continuing its search for and collection of documents and will produce documents on a rolling basis as soon as they are reasonably available.

  With respect to the pre-filing "look-back" for documents relating to communications between Nova and third parties concerning the accused products, Nova believes that the proposed date of January 1, 2007 is more than sufficient.  Roche's stated need is to determine the existence of users of the accused Nova products *after* the issuance of the '146 and '147 patents on October 2, 2007.  Any additional information relates to the magnitude of any alleged infringement or quantum of sales, *i.e.*, damages issues, and is not properly in Phase 1.

  With respect to post-filing documents and information, Nova agreed to produce (1) documents sufficient to show the existence of sales of the accused products, (2) documents concerning communications between Nova and its distributors and/or customers regarding the structure, function, operation or use of the accused products, and (3) information concerning any

ROPES & GRAY LLP

Paula S. Fritsch, Esq.                    - 2 -                    April 1, 2008

new Nova blood-glucose monitoring products brought to market that are capable of providing a reading within 10 seconds using a blood sample of 1 µl or less.

Nova also proposed that no post-filing privileged or work-product documents need to be listed on a log of withheld documents.

As discussed during the meet-and-confer, Nova maintains that the majority of Roche's discovery requests are not appropriate in Phase 1. Despite Roche's refusal to withdraw and re-serve more appropriately tailored requests, Nova agrees, to the extent it has not already done so, to conduct a reasonable search for documents that relate to the issues of infringement, prior invention under 35 U.S.C. § 102(g) and Nova's non-patent counterclaims.

In the context of the infringement issues that are the subject of Phase 1 discovery, Nova has agreed to search for documents that relate to the structure, function, operation and use of the accused products, including any communications with third parties on these issues. With respect to the other issues raised in your letter, Nova responds as follows:

<u>Marketing and Sales Related Documents</u>
<u>(Request Nos. 60-65, 67-69 and 71)</u>

Nova maintains its objections to these requests to the extent they call for documents outside the above-stated scope of Phase 1 infringement discovery. Nova agrees, however, to search for documents sufficient to identify Nova's customers and distributors.

<u>Business Strategy and the Utility and Advantages of Certain Features</u>
<u>(Request Nos. 9, 12 and 13)</u>

Nova maintains its objections to these requests to the extent they call for documents outside the above-stated scope of Phase 1 infringement discovery.

<u>Research and Development Related Documents</u>
<u>(Request Nos. 1-7, 22-24, 26-28 and 31)</u>

Nova does not intend to withhold any research and development documents that relate to the '229 patent, the accused products or prior invention under 35 U.S.C. § 102(g). Nova maintains its other stated objections to these requests, including its objection to searching for or producing, during Phase 1, documents concerning non-infringing alternative products or designs that were not brought to market.

ROPES & GRAY LLP

Paula S. Fritsch, Esq.                    - 3 -                    April 1, 2008

<u>Efforts to Design Around the Patents-In-Suit</u>
<u>(Request No. 46 and 47)</u>

      Nova did not agree to produce documents responsive to these requests during Phase 1. Nova maintains its stated objections.

<u>Licenses and Other Agreements</u>
<u>(Request Nos. 44, 57 and 58)</u>

      Nova will search for and produce documents sufficient to show the relationship between Nova and its distributors and customers, including information relating to the responsibilities over marketing, sales and distribution of the accused products. Any additional information concerning Nova's licenses or other agreements does not relate to Phase 1.

<u>Prior Art</u>
<u>(Request Nos. 36, 37, 51 and 52)</u>

      Nova agrees to produce prior art relating to prior invention under 35 U.S.C. § 102(g). Nova objects to the production of any additional prior art during Phase 1.

<u>Contention Interrogatory Nos. 20-24 and Roche's Other Interrogatories</u>

      Nova agrees to supplement its responses, to the extent necessary, pursuant to Rule 26(e).

<u>The "Second Application"</u>
<u>(Request Nos. 126-140)</u>

      The so-called "second application" that was provided by Nova to Roche is not currently the basis for any of Nova's claims. To the extent that Roche provides information responsive to any of Nova's requests that indicates that Roche has misused this information, Nova will supplement its responses to the extent necessary.

<u>Nova's Notice of the '146 and '147 Patents (no identified requests)</u>

      This issue was not discussed during the parties' meet and confer and Nova does not agree to search for such documents during Phase 1.

<u>Other Issues (Requests 118-121)</u>

      With respect to Roche's requests directed to foreign counterpart patent applications related to the '229 patent, Roche has not stated how any such information is relevant

ROPES & GRAY LLP

Paula S. Fritsch, Esq.                    - 4 -                    April 1, 2008

to the infringement or prior invention issues in Phase 1.  Nova currently maintains its stated objections.

        I look forward to our continued discussions at 4:00 p.m., Eastern Time, this afternoon.

        Very truly yours,

        Michael P. Kahn

MPK:alc

# EXHIBIT G

**mbhb**

**McDonnell Boehnen Hulbert & Berghoff LLP**    300 South Wacker Drive    312 913 0001 phone
                                                 Chicago, Illinois 60606-6709    312 913 0002 fax
                                                 www.mbhb.com

April 4, 2008

**Sent Via Email; Confirmation via First Class Mail**

Michael Kahn
Ropes & Gray LLP
1211 Avenue of Americas
New York, NY 10036
Michael.Kahn@ropesgray.com

Re:    Roche v. Abbott et al., Civil Action No. 07-753 JJF
       Meet and Confer - April 1, 2008

Dear Michael:

It is our intent to memorialize a summary of our current understanding of the areas of
agreement and disagreement that resulted from our meet and confer telephone
conversation of March 24, 2008.  As with our letter of March 24, 2008, we consider this
letter a draft of the summary.  To the extent that our current understanding does not
accurately reflect Nova's positions, we suggest holding a telephone conference to
ameliorate any misunderstanding.  Please advise if this is necessary.

### Identification of the Products-In-Suit
It is our understanding that the references to "products-in-suit", as used in our letter of
March 24, 2008, and the references to "accused Nova products" and "accused products",
as set forth in Nova's letter of April 1, 2008, all refer to the entire list of products identified
in Nova's Answer to Interrogatory No. 1.

### Timing of Document Production
It is our understanding that Nova hopes to start production of documents by the end of this
week or early next week. Moreover, we understand that Nova is currently searching for
documents in all agreed-upon categories and does not intend to delay the production of
documents based on the categorization of the documents.  We understand that you have
been in contact with Sherri Oslick to resolve technical issues regarding the format of
documents produced electronically.

### Date Limitations For Document Production

No agreement has been reached regarding the appropriate look-back period for sales and marketing documents, including communications between Nova and third parties relating to the accused products. We expressed Roche's concern that there may be documents from before Nova's proposed January 1, 2007 date that would be necessary to prove that infringing acts are being committed with meters sold before the issue date of the patents-in-suit. As such, Roche believes that January 1, 2006 is a more appropriate starting date for such documents. We understand that Nova maintains its position that January 1, 2007 is a more appropriate starting date. As discussed in more detail below, Nova agreed to consider a stipulation to alleviate this issue. In the alternative of a stipulation, you raised the possibility of producing documents "sufficient to show" the structure, function, operation, and use of these older meters.

We expressed concern over Nova's use of the term "sufficient to show," particularly as it pertains to Nova's document production of materials dated prior to the issue date of the patents-in-suit. It is Roche's position that to the extent an issue is in dispute, we are entitled to full discovery on the issue. Thus, if Nova will not agree to the stipulation as detailed below, or a similar stipulation, it is Roche's position that the parties have reached an impasse regarding the start date for production of sales and marketing documents regarding the structure, function, features, operation, and use of the products-in-suit.

We understand that Nova has agreed to produce three categories of documents and information developed after the filing of the lawsuit, namely (1) documents sufficient to show the existence of sales of the accused products, (2) documents concerning communications between Nova and its distributors and/or customers regarding the structure, function, features, operation, or use of the accused products, and (3) information concerning any new Nova blood-glucose monitoring products brought to market that are capable of providing a reading within 10 seconds using a blood sample of 1 µl or less. It is also our understanding that Becton-Dickinson is included in the group of distributors and/or customers for the purposes of document production.

### Post-Filing Logging of Withheld Documents

We indicated that Roche is willing to reach an agreement on the issue. Roche agrees in principle with Nova's proposal that post-filing privileged and work-product documents do not need to be listed on a log of withheld documents. However, Roche will not agree to this proposal unless all of the other defendants are also in agreement with Nova's proposal. Nova appears to be in a better position to address the issue with the other codefendants, and we appreciate any of Nova's efforts in pursuing an agreement with the other codefendants.

### General Discovery Considerations

Nova reiterated its agreement to search for and produce documents that relate to the structure, function, features, operation, and use of the accused products, including any communications with third parties regarding the structure, function, features, operation, or use of the accused devices.

### Business Strategy Documents

Nova's position is that there is a distinction between documents pertaining to an actual product versus documents pertaining to products that were proposed but never marketed. Nova believes that documents related to Nova's strategic decisions that do not also relate to the structure, function, features, operation, or use of an actual product are beyond the scope of Phase I discovery. Roche does not agree with Nova's position on this issue, as it is Roche's position that these documents could contain information relevant to Roche's infringement claims. It appears that the parties have reached an impasse on this issue.

### Research & Development and Design-Around Documents

Nova contends that these documents are outside the scope of Phase I discovery to the extent that the documents do not describe the structure, function, features, operation, or use of an actual product. Again, Roche does not agree with Nova's position, as these documents could contain information relevant to Roche's infringement claims. The parties seem to have reached an impasse on this issue as well.

### Licenses and Other Agreements

In addition to the documents identified in your letter of April 1, 2008, Roche believes that it is entitled to documents that are related to or concern license and other agreements for at least the reason that they may be related to Nova's trade secret and other counterclaims. It is our understanding that Nova intends to produce information relevant to its trade secret counterclaims, including information regarding the handling of information related to the structure, function, operation, or use of blood glucose sensors that may have been exchanged as part of a licensing or other agreement. We request confirmation that Nova also intends to produce any documents related to the structure, function, features, operation, or use of the products-in-suit that were exchanged pursuant to a licensing or other agreement.

### Prior Art Documents

Nova intends to produce prior art relating to Nova's claim of prior invention under 35 U.S.C. § 102(g). Roche understands that Nova continues to object to the production of any additional prior art during Phase I. Roche disagrees that prior art relating to Nova's prior invention counterclaim is the only prior art relevant to Phase I. Therefore, this is another issue on which the parties appear to have reached an impasse.

### Interrogatories 20-24

We indicated during the conference that absent a date certain by which Nova would identify the information that it considers to be a trade secret, Roche would pursue a motion to compel. Nova proposed, and Roche agreed, that within one week of the first production of Nova's documents (to occur late in the week of March 31 or early in the week of April 7), Nova will provide a supplemental response to these interrogatories, which will contain additional substantive information regarding the alleged trade secrets and/or confidential information, and/or an identification of documents relating to the alleged trade secret and/or confidential information.

### Interrogatory 3

Nova indicated that Plaintiff's Interrogatory 3 captures information that Nova has already agreed to produce, and that Nova will supplement the interrogatory answer.

### Interrogatories 15 and 17

It is Roche's position that Interrogatories 15 and 17 call for the identification of the particular documents that Nova relied upon in asserting their claims. Currently, Roche is not requesting a listing of every document in Nova's possession that tends to support Nova's allegations. We understand Nova's position is that the present answers are sufficiently specific, and that Nova intends to supplement the responses as Nova becomes aware of additional information. Roche disagrees that supplementation according to Rule 26(e) is sufficient. Thus, this is another issue on which the parties appear to have reached an impasse.

### The Second Application

In order to ensure that both parties are referring to the same application as the "second application," we indicated that we would like to confirm the identity of the "second application" through the serial number of the application. Roche understands that the "second application" is a U.S. Patent Application with the Serial No. 09/324,443. We would appreciate confirmation that U.S. Patent Application Serial No. 09/324,443 is indeed the application Nova was referring to as the "second application" in its counterclaims.

### Notice of the '146 and '147 Patents, Opinions of Counsel and Product Decision Documents

It is Roche's position that Nova's notice of the patents-in-suit both before and after issuance is relevant to its infringement claims, including the specific indirect infringement claims that are spelled out in the proposed Amended Complaint. Although not specifically discussed on the call, it is Roche's position that documents reflecting Nova's notice of the patents in

suit would include an identification of opinions of counsel, which would reflect dates by which Nova had notice of the patents-in-suit or their underlying applications. Nova has indicated that it would take Roche's position regarding the relevance of notice into consideration. Again, although not necessarily articulated during our call, we also believe that product decision documents are relevant to the scienter issue for inducement and contributory infringement. Please let us know soon whether Nova intends to stand on its objections.

### Foreign Counterpart Applications

It is Roche's position that statements made during the prosecution of a foreign counterpart application may be relevant at least to issues of claim construction. Nova indicated that it would take Roche's position into consideration. Please let us know soon whether Nova intends to stand on its objections.

### Response-in-Kind to Discovery Requests

Nova inquired whether we are amenable to comply with Nova's discovery requests in a manner similar to Nova's responses to our discovery requests. We indicated that Roche will generally abide by the agreements made by Nova regarding discovery requests.

### Proposed Stipulations:

We proposed two stipulations during the teleconference. The first proposed stipulation related to the operation of older meters that can accept the accused strips, and the second proposed stipulation related to the manner in which end-users use the accused products. Nova did not agree to make any stipulations at this time, but is willing to consider and discuss these proposed stipulations.

Proposed Stipulation 1:  Certain meters sold prior to October 2, 1997 (i.e., the issue date of the patents-in-suit) can be used with currently sold BD Test Strips and/or NovaMax test strips. Insofar as the patents-in-suit are concerned, such previously sold meters have the same structure, functions, features, and operation as the current NovaMax™ glucose monitor.

Proposed Stipulation 2:  Consumer/purchasers use the accused Nova products in the manner described in the owner's manual, product inserts, and other documents supplied by Nova for the accused Nova products.

***Roche's Amended Complaint***
Nova indicated that it has no procedural objections to Roche's filing of its proposed Amended Complaint, although Nova reserves its disagreement with the merits of the Amended Complaint.  We thank you for your agreement in this matter.

In the event you would like to hold a follow-up telephone conference, please feel free to contact me.

Sincerely,

Paula S. Fritsch, Ph.D.
Ph. 312 913 3315
fritsch@mbhb.com

# EXHIBIT H

| **From:** | Kahn, Michael P. |
| **Sent:** | Wednesday, April 09, 2008 6:05 PM |
| **To:** | Boehnen, Daniel; Jorjani, Parisa; Cottrell@RLF.com; SSHERRY@mcandrews-ip.com; mbourke@cblh.com; ehutz@cblh.com; rsmith@mnat.com; De, Sona; gaza@RLF.com; JSHAW@ycst.com; Muino, Daniel P.; Bartlett, Jason R.; jcasino@ARELAW.com; woverson@mofo.com; Krevans, Rachel; Badke, Bradford J.; kgeorge@arelaw.com; SBalick@ashby-geddes.com; KVANDERLEEST@mcandrews-ip.com; jday@ashby-geddes.com; lmaguire@ashby-geddes.com |
| **Cc:** | Drutchas, Grantland; Hood, Gary; Keenan, Nicole; Sullivan, Sean; Machonkin, Rick; Fritsch, Paula; Tinsley, Nancy; Brown, Christina; Moran, Eric; Rovner, Philip A.; Oslick, Sherri; ashleyellis@parkerpoe.com; mikeadams@parkerpoe.com; Mattioli, Michael R. |
| **Subject:** | RE: Roche v. Abbott et al. -- Document Production Schedule |

Dan,

Like the other defendants, Nova will not agree to shorten the document discovery time period adopted by the Court on February 28, 2008.

The January 23, 2008 discovery requests, referenced in your e-mail, sought the production of documents and information relating to damages, willfulness, invalidity and inequitable conduct - topics far beyond the scope of the Court's designation of "Phase 1" discovery.  Nova repeatedly has asked Roche to withdraw those requests in light of the Court's guidance and re-serve a more appropriately tailored set.  Roche refused to do so.  Roche's refusal has led to numerous and on-going meet-and-confer attempts to isolate which requests, if any, call for documents and information that fall within Phase 1.  In light of such discussions, it is hard to believe that Roche expects Nova - or any other defendants - not only to have a clear understanding of how Roche is limiting its omnibus requests to call for Phase 1 discovery, but also to search for, process and produce all documents within three weeks of your e-mail.  This is inconsistent with our previous discussions and directly contrary to the Court's instructions.

Nova will continue to work diligently to search for the documents and information Roche has requested, in accordance with our on-going discussions, and will produce documents on a rolling basis.  Nova produced over 27,000 pages of documents earlier this week and will produce additional documents as soon as they are available.

Michael

**Michael P. Kahn**
**ROPES & GRAY LLP**
T 212-596-9186 | F 646-728-2872
1211 Avenue of the Americas
New York, NY 10036-8704
Michael.Kahn@ropesgray.com
www.ropesgray.com

# EXHIBIT I

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROCHE DIAGNOSTICS OPERATIONS, INC., and CORANGE INTERNATIONAL LIMITED, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | C.A. No. 07-753-JJF |
| ABBOTT DIABETES CARE, INCORPORATED, and ABBOTT DIABETES CARE SALES CORPORATION, | ) ) ) ) ) | DEMAND FOR JURY TRIAL |
| BAYER HEALTHCARE, LLC, | ) ) | |
| DIAGNOSTIC DEVICES, INC., | ) ) | |
| LIFESCAN, INCORPORATED, and | ) ) | |
| NOVA BIOMEDICAL CORPORATION, and SANVITA INCORPORATED, | ) ) ) | |
| Defendants. | ) ) | |

## ROCHE DIAGNOSTICS OPERATIONS, INC.'S AND CORANGE INTERNATIONAL LIMITED'S FIRST SET OF REQUESTS TO DEFENDANT NOVA BIOMEDICAL CORPORATION FOR THE PRODUCTION OF DOCUMENTS AND THINGS (NOS. 1-161)

Plaintiffs Roche Diagnostics Operations, Inc. ("RDOI") and Corange International Limited

("Corange") (collectively "Plaintiffs") propound the following requests to Defendant Nova

Biomedical Corporation ("Nova") for the production of the documents and things specified below

for inspection and copying pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and

the Local Rules of the U.S. District for the District of Delaware.  The documents shall be produced

for inspection and copying at the offices of Plaintiffs' counsel, McDonnell Boehnen Hulbert &

Berghoff LLP, 300 S. Wacker Dr., Chicago, Illinois 60606, within thirty (30) days from the service

of these requests and copying and inspection shall continue from day to day thereafter until completed. Additionally, Nova shall serve written responses to these requests on Plaintiffs' counsel within thirty (30) days of the service hereof.

All requests propounded by Plaintiffs are deemed to be continuing in nature so as to require supplementation promptly following the discovery of additional information by Nova to the extent such information is responsive to Plaintiffs' requests.

## DEFINITIONS

For the purposes of responding to the following requests for production of documents and things, the following definitions shall apply:

1.      The term "RDOI" shall mean Roche Diagnostics Operations, Inc. and/or any company name under which RDOI is doing or has done business; its predecessors, parents, subsidiaries, divisions, licensees, franchisees, assigns or other related business entities; its directors, officers, employees, agents, distributors, jobbers, salespersons, interns, sales representatives and attorneys; and each person acting or purporting to act on its or their behalf or under its or their control.

2.      The term "Corange" shall mean Corange International Limited and/or any company name under which Corange is doing or has done business; its predecessors, parents, subsidiaries, divisions, licensees, franchisees, assigns or other related business entities; its directors, officers, employees, agents, distributors, jobbers, salespersons, interns, sales representatives and attorneys; and each person acting or purporting to act on its or their behalf or under its or their control.

3.      The term "Plaintiffs" shall mean RDOI and Corange.

2

4.      The terms "Defendant," "Nova," "you" and "your" shall mean Nova Biomedical

Corporation and/or any company name under which Nova is doing or has done business; its

predecessors, parents, subsidiaries, divisions, licensees, franchisees, assigns or other related

business entities; its directors, officers, employees, agents, distributors, jobbers, salespersons,

interns, sales representatives and attorneys; and each person acting or purporting to act on its or

their behalf or under its or their control.

5.      The terms "person" or "persons" shall mean natural persons (including but not

limited to those employed by Defendant) and all other legally cognizable entities, including

(without limitation) governmental entities, agencies, officers, departments or affiliates of the

United States of America or any other governmental entity; commercial entities such as

corporations, foundations, partnerships and proprietorships; associations; organization; and

groups of natural persons.

6.      The term "date" shall mean the exact day, month and year, if ascertainable, or, if

not, Defendant's closest approximation (including but not limited to an identification of

relationship to other events).

7.      The term "document(s)" shall have the broadest meaning accorded to it by Rule

34 of the Federal Rules of Civil Procedure, and shall include, without limitation, any recording in

any tangible form of any information, whether handwritten, typed, printed, stored on computer

disks, tapes or databases (including electronic files and e-mail) or otherwise reproduced.

"Document" also includes all drafts and copies that are not identical to the original.

8.      The term "thing(s)" shall have the broadest meaning accorded to it by Rule 34 of

the Federal Rules of Civil Procedure, and shall include, without limitation, every kind of

3

physical specimen or tangible item, other than a document, in the possession, custody or control of Defendant.

9.      The term "communication" shall mean any disclosure, transmission or exchange of information from one person or entity to another, including without limitation by personal meeting, telephone, facsimile, radio, telegraph, electronic mail, teleconference, writing or other means.

10.     The terms "concerning," "referring to" and "relating to" shall be interpreted so as to encompass the liberal scope of discovery set forth in Rule 26(b) of the Federal Rules of Civil Procedure, and shall mean for example and without limitation, refer, relate, analyze, concern, constitute, contain, contradict, describe, discuss, evaluate, evidence, pertain, reflect, refute or support.

11.     The term "including" shall be construed broadly, and shall encompass "including but not limited to" or "including without limitation."

12.     The terms "identify," "identification," "describe," or "description" shall mean to provide a complete identification of the document, thing, or person to the fullest extent known or ascertainable by Defendant, whether or not the information is in the possession, custody, or control of Defendant and whether or not the information is alleged to be protected by any privilege or work product protection, and includes without limitation a request for the following information:

        (a)     with respect to a natural person, his or her name; home and work addresses and telephone numbers; present (or if unknown, the last known) place of employment; date(s) of commencement and termination of employment; job title; and description of his or her duties and responsibilities;

4

(b)     with respect to a corporation or other legal entity, the full name; state of incorporation or registration; address of its principal place of business; telephone number of its principal place of business; and the identity of each natural person who acted on behalf of such entity with respect to the subject matter of the document request;

(c)     with respect to a document, the type of document (e.g., letter, e-mail, facsimile, contract, calendar, report); the number of pages of which the document consists; a general description of the document's contents; an identification of each person(s) who prepared the document, who signed the document, for whom it was prepared, to whom it was delivered, mailed, or otherwise received, and to whom a copy was sent or who otherwise received a copy; the date of writing, creation or publication; the identifying number(s), letter(s), or combination thereof, if any, and the significance or meaning of such number(s), letter(s) or combination thereof; and present location and identity of the custodian of that document. Documents to be identified shall include documents currently in your possession, custody or control; documents you know to have once existed but that no longer exist; and other documents of which you have knowledge or information but that are not currently in your possession, custody or control;

(d)     with respect to a product or to equipment, the common name of the product or equipment; the trade, brand, or commercial name of the product or equipment; the model, part number, catalog number, and/or serial number of the product or equipment; the manufacturer and vendor of the product or equipment; and the use and/or function of the product or equipment;

(e)     with respect to an activity, the events and/or occurrences that comprise the activity; the persons involved in the activity; the dates when the activity occurred; and the locations where the activity occurred;

5

(f)    with respect to oral communications, the manner in which the communications were made (telephone, conversation, etc.); the identity of each person who participated in or witnessed the communication; and the subject matter and content of the communication; and the date of the communication;

(g)    with respect to a patent or patent application, the country or jurisdiction in which it was filed; the number; the named inventor(s); the filing date; the issue date (if a patent); and all related or foreign counterpart applications and patents; and

(h)    with respect to films, photographs, tapes, computer media, and other things susceptible to chemical, biological, mechanical, or electrical reproduction, all identifying information including their character; subject matters; authors; and dates.

13.    The terms "and," "or" and "and/or" shall be construed disjunctively or conjunctively as necessary in order to bring within the scope of the request all responses which otherwise might be construed to be outside its scope.

14.    The term the "146 patent" shall mean U.S. Pat. No. 7,276,146.

15.    The term the "147 patent" shall mean U.S. Pat. No. 7,276,147.

16.    The term "patents-in-suit" shall mean the 146 patent and the 147 patent either collectively or individually, as well as any other patent(s) that may be subsequently added to the litigation.

17.    The term "Complaint" shall mean Plaintiffs' "Complaint for Patent Infringement" filed by Plaintiffs in this action on or about November 21, 2007, as well as any amended complaints that may be filed.

18.    The term "Answer" shall mean the "Answer, Affirmative Defenses and Counterclaims" filed by Defendant on or about January 11, 2008, as well as any amended answers that may be filed.

19.    The phrase "Requests for Reexamination" shall mean the requests that were filed with the United States Patent and Trademark Office on or about December 14, 2007 seeking *ex parte* reexamination of all of the claims of the patents-in-suit

20.    The terms "prior art" includes, by way of example and without limitation, any subject matter that you assert may be encompassed by 35 U.S.C. §103 and/or any subdivision of 35 U.S.C. §102.

21.    The phrase "Electrochemical Sensor" shall mean any sensor device capable of being used to determine the concentration of glucose in a blood sample, including but not necessarily limited to the specific electrochemical sensors identified in the Complaint. The Electrochemical Sensors includes (without limitation) test strips or equivalent devices alone or in combination with a meter or equivalent device capable of receiving the test strips and participating in the determination of the concentration of glucose in a blood sample.

22.    The phrase "Identified Electrochemical Sensor" shall mean any Electrochemical Sensor identified by Defendant in response to Interrogatory No. 1.

23.    The term the "229 patent" shall mean U.S. Pat. No. 6,258,229.

24.    The term the "PTO" shall mean the United States Patent and Trademark Office.

25.    The term "Agreement" shall mean the Agreement attached to Nova's Answer as Exhibit A.

7

26. The phrase "the second application" shall mean the second of two Nova patent applications referred to in paragraphs 18-21 of the Counterclaims of Nova's Answer, which did not result in the issuance of the 229 patent.

## INSTRUCTIONS

1. The original and each non-identical copy of each document or other tangible thing requested herein which is in your possession, custody or control, or that of any of your agents, attorneys, consultants, advisors, associates, accountants, employees, representatives or investigators, is to be produced, including company, department, and personal files. If the original or original carbon copy is not in your possession, custody or control, or that of your agents, attorneys, consultants, advisors, associates, accountants, employees, representatives or investigators, a full, clear, legible copy thereof is to be produced.

2. If any portion of any document request refers to documents of which Defendant is aware or which were at one time within Defendant's possession, custody, or control, but which are not now subject to Defendant's possession, custody, or control, Defendant is requested to identify such documents in a manner sufficient to describe such documents for a subpoena duces tecum, together with the name, telephone number, and address of the person last known by Defendant to have been in possession, custody, or control of such documents.

3. Where an objection is made to a document request, state all grounds upon which your objection is based and produce the requested documents to the fullest extent possible subject to any stated objection.

4. If the attorney-client privilege or work product immunity is asserted as to any document or thing, or if any document or thing is not produced in full, produce the document or

8

thing to the extent the request for production is not objected to, and, in so doing, state the following:

      (a)     the specific ground(s) for not producing the document or thing in full;

      (b)     the bases for such a claim of privilege or immunity, including a statement of sufficient relevant facts and circumstances that will explain the basis of the claim of privilege and will permit the adjudication of the propriety of the claim of privilege; and

      (c)     fully identify the information, document, or material for which such privilege or immunity is asserted, including the type of any document or thing withheld (e.g., letter, memorandum, etc.); the subject matter of any document, communication, or other information withheld; the date of recording, creating or otherwise preparing any document or thing; the name of any document or thing; the name, address and title of its author or creator; the name, address and title of each person (other than stenographic or clerical assistants) participating in the preparation or creation of any document or thing; the name, address and title of each addressee, recipient and/or custodian of the document or thing, or a copy of the document or thing; the name, address and title of each person to whom the contents of the information or any portion thereof have heretofore been communicated by copy, exhibition, reading or summarization; and the location(s) where, if at all, information has been redacted on any document or thing thus produced.

      5.     If you maintain that any document or thing requested has been destroyed, lost or is otherwise unavailable, set forth the contents of the document or thing, the location of any copies of the document or thing, the date of its destruction and the name of the person who ordered or authorized its destruction (if any).

6.      If, after exercising due diligence, Defendant is unable to determine the existence of any documents or things falling within a document request, Defendant shall so state in its written response required by Rule 34 of the Federal Rules of Civil Procedure.

7.      No document request or subpart hereof shall be construed as a limitation on any other document request or subpart hereof.

8.      Any word written in the singular herein shall be construed as plural or *vice versa* as necessary to bring within the scope of the request all responses which otherwise might be construed to be outside its scope.

9.      These requests shall be deemed to include all available English translations of every document requested.

10.     Documents should be produced as they are kept in the files of Defendant or shall be organized and labeled to correspond with the requests below.  If documents are not produced as they are kept in the files of Defendant, sufficient information should be provided to permit Plaintiffs to identify the source of particular documents from within the filed of Defendant.

11.     Documents from any single file should be produced in the same order as they were found in such file.  If copies of documents are produced, such copies should be legible and bound or stapled in the same manner as the original.

## REQUESTS

1.    All documents and things concerning, referring to or relating to the research, design and/or development of Defendant's Identified Electrochemical Sensors.

2.    Every laboratory notebook or note, technical report, research report, progress report or other document or thing referring or relating to laboratory work on, research on, design and/or development of the Identified Electrochemical Sensors.

3.    All documents and things concerning, referring to or relating to the research, design and/or development related to the sample volume used with Defendant's Identified Electrochemical Sensors.

4.    All documents concerning, referring to or relating to any tests, studies or experiments related to the sample volume used with Defendant's Identified Electrochemical Sensors.

5.    All documents and things concerning, referring to or relating to the research, design and/or development related to the time required to determine the concentration of glucose in a blood sample with Defendant's Identified Electrochemical Sensors.

6.    All documents concerning, referring to or relating to any tests, studies or experiments related to the time required to determine the concentration of glucose in a blood sample with Defendant's Identified Electrochemical Sensors.

7.    All documents and things concerning, referring to or relating to any inspection, review, testing, experimenting, operation, disassembly, analysis or reverse engineering of any Electrochemical Sensors having a capillary chamber that holds a blood sample volume of 1 µl or less and provides a readout of the glucose concentration of the blood sample within 10 seconds or less after the blood sample enters the capillary chamber made, used, offered for sale or sold by Plaintiffs or any other person.

8.      All documents and things concerning, referring to or relating to any submissions, filings or communications with any state or federal regulatory agency relating to the Identified Electrochemical Sensors.

9.      All documents and things concerning, referring to or relating to Defendant's decision to research, design, develop, manufacture, import, sell or offer for sale any Electrochemical Sensors having a capillary chamber that holds a blood sample volume of 1 μl or less and providing a readout of the glucose concentration of the blood sample within 10 seconds or less after the blood sample enters the capillary chamber.

10.     All documents and things concerning, referring to, relating to or constituting minutes, memos or other records of meetings of directors, officers, employees and/or other personnel of Defendant where Electrochemical Sensors having a capillary chamber that holds a blood sample volume of 1 μl or less were discussed referenced or considered in any way.

11.     All documents and things concerning, referring to, relating to or constituting minutes, memos or other records of meetings of directors, officers, employees and/or other personnel of Defendant where Electrochemical Sensors which provide a readout of the glucose concentration of the blood sample within 10 seconds or less after the blood sample enters the capillary chamber were discussed referenced or considered in any way.

12.     All documents and things concerning, referring to or relating to any utility, advantages, value or business significance of any Electrochemical Sensors having a capillary chamber that holds a blood sample volume of 1 μl or less.

13.     All documents and things concerning, referring to or relating to any utility, advantages, value or business significance of any Electrochemical Sensors which provide a readout of the glucose concentration of the blood sample within 10 seconds or less after the blood sample enters the

12

capillary chamber.

14.    Organizational charts or other documents for the period from 2002 to the present detailing the corporate structure, management, chain of command and all officers, directors or other employees or personnel of Defendant with any responsibility for the design, engineering, research, development, testing, manufacturing, commercialization, sales, marketing, competitive product analysis or legal analysis of Identified Electrochemical Sensors.

15.    The most current curriculum vitae for the ten people primarily responsible for the design, engineering, research, development or testing of the Identified Electrochemical Sensors.

16.    All documents and things identifying the names and titles of all persons having any role in the research, design and/or development of any of Defendant's Identified Electrochemical Sensors.

17.    The most current curriculum vitae for the ten people primarily responsible for the commercialization, sales, marketing or competitive product analysis of the Identified Electrochemical Sensors.

18.    All documents and things identifying the names and titles of all persons having any role in the sales and/or marketing of any of Defendant's Identified Electrochemical Sensors.

19.    All documents and things concerning, referring to or relating to any comparison or comparative test of Defendant's Identified Electrochemical Sensors with any other Electrochemical Sensors.

20.    All documents and things referring to, relating to or comprising product literature and technical descriptions provided to health care providers, users and/or customers, including but not limited to instruction manuals, operators manuals, owners manuals, user guides, user manuals, repair manuals, services manuals or care manuals, concerning, referring to or relating to

13

Identified Electrochemical Sensors, including drafts or other versions not distributed to health care providers, users and/or customers.

21.    Ten (10) samples of every model or type of Defendant's Identified Electrochemical Sensors.

22.    All documents and things concerning, referring to or relating to the research, design, development, production or manufacture of any alternatives to Defendant's Identified Electrochemical Sensors, whether or not rejected.

23.    All documents and things concerning, referring to or relating to the decision(s) by Defendant regarding the selection or rejection of any designs of or components for Identified Electrochemical Sensors and/or methods of using an Electrochemical Sensor having a capillary chamber that holds a blood sample volume of 1 µl or less or provides a readout of the glucose concentration of the blood sample within 10 seconds or less after the blood sample enters the capillary chamber.

24.    All documents and things concerning, referring to or relating to any components or parts contained in, or used or considered for use in Defendant's Identified Electrochemical Sensors, including but not limited to any research and development related thereto.

25.    All documents and things concerning, referring to, relating to or depicting the specifications of and process steps used in Defendant's Identified Electrochemical Sensors, and each revision thereof.

26.    All documents and things concerning, referring to or relating to all draft, proposed or final specifications for Defendant's Identified Electrochemical Sensors or any other existing or proposed Electrochemical Sensors having a capillary chamber that holds a blood sample volume of 1 µl or less or provides a readout of the glucose concentration of the blood sample within 10

14

seconds or less after the blood sample enters the capillary chamber.

27.    All documents and things showing, describing, referring to or relating to the structure and/or operation of any Electrochemical Sensor having a capillary chamber that holds a blood sample volume of 1 µl or less, including but not limited to Defendant's Identified Electrochemical Sensors.

28.    All documents and things showing, describing, referring to or relating to the structure and/or operation of any Electrochemical Sensor which provide a readout of the glucose concentration of the blood sample within 10 seconds or less after the blood sample enters the capillary chamber, including but not limited to Defendant's Identified Electrochemical Sensors.

29.    All documents and things sufficient to show how the component parts of Defendant's Identified Electrochemical Sensors work together or interact with each other in the operation of the Identified Electrochemical Sensors.

30.    All documents and things concerning, referring to or relating to comparisons between the components used in Defendant's Identified Electrochemical Sensors and any other components considered, proposed or actually used in Electrochemical Sensors.

31.    All documents and things concerning, referring to or relating to any agreement between Defendant and any other person for the research, design, development or manufacture of the Identified Electrochemical Sensors.

32.    All documents and things concerning, referring to, relating to or constituting any communications between Defendant and any other person concerning the Identified Electrochemical Sensors.

33.    All documents and things concerning, referring to, relating to or constituting any communications between Defendant and any other person concerning an Electrochemical Sensor

15

having a blood sample volume of 1 µl or less.

34.    All documents and things concerning, referring to, relating to or constituting any communications between Defendant and any other person concerning an Electrochemical Sensor having a test time of 10 seconds or less.

35.    All documents and things concerning, referring to, relating to or constituting any communications between Defendant and any other person concerning an Electrochemical Sensor which provide a readout of the glucose concentration of the blood sample within 10 seconds or less after the blood sample enters the capillary chamber.

36.    All documents resulting from, concerning, referring to or relating to any prior art, literature and/or patent searches conducted by, at the request of or on behalf of Defendant with respect to Electrochemical Sensors having a capillary chamber that holds a blood sample volume of 1 µl or less.

37.    All documents resulting from, concerning, referring to or relating to any prior art, literature and/or patent searches conducted by, at the request of or on behalf of Defendant with respect to Electrochemical Sensors which provide a readout of the glucose concentration of the blood sample within 10 seconds or less after the blood sample enters the capillary chamber.

38.    All documents and things sufficient to demonstrate the amount of time, money and effort spent by or on behalf of Defendant with respect to developing Defendant's Identified Electrochemical Sensors.

39.    All documents and things concerning, referring to or relating to Defendant's knowledge of Plaintiffs' activities in research, patenting, development, manufacturing, use or sale of Electrochemical Sensors having a capillary chamber that holds a blood sample volume of 1 µl or less.

40.    All documents and things concerning, referring to or relating to Defendant's knowledge

16

of Plaintiffs' activities in research, patenting, development, manufacturing, use or sale of Electrochemical Sensors which provide a readout of the glucose concentration of the blood sample within 10 seconds or less after the blood sample enters the capillary chamber.

41.    All documents concerning, referring to or relating to Christopher D. Wilsey.

42.    All documents concerning, referring to or relating to Nigel A. Surridge.

43.    All documents and things concerning, referring to or relating (in words or in substance) to the patents-in -suit, including but not limited to:

> (a)    all documents and things concerning, referring to or relating to the validity and/or invalidity of the patents-in-suit;
>
> (b)    all documents and things concerning, referring to or relating to the enforceability and/or unenforceability of any of the subject matter claimed by the patents-in-suit; and
>
> (c)    all documents and things concerning, referring to or relating to any infringement and/or non-infringement of the patents-in-suit by Defendant or by anyone else.

44.    All documents and things concerning, referring to or relating to any analysis, consideration, negotiation, recommendation or proposal relating to obtaining a license or other rights under the patents-in-suit.

45.    All documents and things concerning, referring to, relating to or constituting minutes, memos or other records of meetings of directors, officers, employees and/or other personnel of Defendant where Plaintiffs and/or the patents-in-suit were discussed, referenced or considered in any way.

46.    All documents and things concerning, referring to or relating to any consideration given

or decisions or efforts made by Defendant to design around the patents-in-suit.

47.    All documents and things concerning, referring to or relating to any decisions or efforts made by Defendant to design Electrochemical Sensors that would not infringe the patents-in-suit.

48.    All documents that Defendant intends to rely on to assert invalidity, unenforceability or non-infringement of any of the patents-in-suit or which otherwise refer or relate to any defense or counterclaim asserted by Defendant.

49.    All patents, printed publications, other items of prior art or other documents, including any English translations thereof, the Defendant believes may have any bearing on the validity of the patents-in-suit.

50.    All documents resulting from, concerning, referring to or relating to any prior art, literature and/or patent searches conducted by, at the request of or on behalf of Defendant with respect to the patents-in-suit.

51.    All documents evidencing, referring to or relating to the state of the art relevant to the subject matter claimed in the patents-in-suit as of the time of filing of the application that issued as the 146 patent.

52.    All documents evidencing, referring to or relating to the state of the art relevant to the subject matter claimed in the patents-in-suit as of the time of filing of the application that issued as the 147 patent.

53.    All documents and things concerning, referring to or relating to United States or foreign patent applications, requests for reexamination, patents, invention certificates, reissues, reexaminations, invention disclosures and file histories concerning or relating to the patents-in-suit, including but not limited to the Requests for Reexamination.

54.    All documents and things concerning, referring to or relating to any written opinions

18

prepared by or on Defendant's behalf, or received by or on Defendant's behalf, regarding the patents-in-suit, including but not limited to opinions relating to the validity, invalidity, enforceability, unenforceability, infringement and/or non-infringement of the patents-in-suit, all drafts of opinions and all documents considered, reviewed or relied on in formulating and/or rendering opinions.

55.    All documents and things concerning, referring to or relating to any discussion or communication, whether written or oral, of the validity, invalidity, enforceability, unenforceability, infringement and/or non-infringement of the patents-in-suit.

56.    All documents and things concerning, referring to or relating to the billing, such as bills or invoices, for any opinion, discussion and/or communication, whether written or oral, regarding validity, invalidity, enforceability, unenforceability, infringement and/or non-infringement of the patents-in-suit or any claim thereof.

57.    All documents and things concerning, referring to or relating to any licensing discussions, negotiations or agreements between Defendant and any person relating to any rights with regard to Defendant's Identified Electrochemical Sensors.

58.    All license agreements and other documents concerning, referring to or relating to or reflecting any agreements between Defendant and any other person relating in any way to electrochemical sensors capable of being used to determine the concentration of a compound in any sample.

59.    All documents and things concerning, describing, referring to, or relating to any agreements between Defendant and any other person with respect to Electrochemical Sensors.

60.    All documents and things concerning, referring to or relating to any offer for sale or sale in the United States of Defendant's Identified Electrochemical Sensors.

61.    All documents and things evidencing, concerning, referring to or relating to any free

samples or other units of Defendant's Identified Electrochemical Sensors distributed without charge.

62.    All documents and things constituting, referring to, or relating to advertising plans, business plans, marketing plans or efforts, promotional programs or strategies on the part of Defendant, or on its behalf, concerning Defendant's Identified Electrochemical Sensors.

63.    All documents and things advertising, describing or promoting, by or on behalf of Defendant, its Identified Electrochemical Sensors, whether or not such documents have yet been made public, including material prepared by or used by or for persons that distribute, market or sell Defendant's Identified Electrochemical Sensors.

64.    All documents and things comprising, referring to, or relating in any way to marketing materials that Defendant prepared or had prepared on its behalf in connection with the marketing and/or sale of the Identified Electrochemical Sensors.

65.    All documents and things collecting, reflecting, or commenting upon feedback of any type from customers and/or users of Defendant's Identified Electrochemical Sensors.

66.    All documents and things concerning, referring to or relating to communications with distributors of Defendant's Identified Electrochemical Sensors, or potential distributors of Defendant's Identified Electrochemical Sensors.

67.    All documents and things concerning, referring to or relating to communications with physicians, nurses, clinics or other potential users of Defendant's Identified Electrochemical Sensors.

68.    All documents and things concerning, referring to or relating to any study, projection, market or other evaluation or analysis of past, current or future sales or revenues for the Identified Electrochemical Sensors.

69.    All documents and things concerning, referring to or relating to any study, projection,

market or other evaluation or analysis of past, current or future sales or revenues for Electrochemical Sensors sold by Defendant, Plaintiffs or any other person.

70.    All documents and things concerning, referring to or relating to actual or projected sales or market share by Defendant, Plaintiffs or any other person of any Electrochemical Sensors.

71.    All documents and things constituting, referring to or relating to Defendant's budgets, forecasts, projections, short and long term business and strategic plans, and short and long term reports related to sales activity for Identified Electrochemical Sensors.

72.    Documents sufficient to identify all quantities of Defendant's Identified Electrochemical Sensors manufactured in or imported into the United States for any purpose.

73.    Documents sufficient to identify Defendant's current inventory of its Identified Electrochemical Sensors, in terms of potential value in sales.

74.    All documents and things concerning, referring to or relating to Defendant's sales of the Identified Electrochemical Sensors, by month and by year, from 2002 to present.

75.    All documents and things evidencing, referring to or relating to any income or revenue received, prices charged, costs incurred or profits earned by Defendant in connection with the Identified Electrochemical Sensors sold in the United States.

76.    All documents and things from which Defendant's unit sales and revenue of each model or type of Identified Electrochemical Sensors may be determined for each monthly and annual time period from 2002 to present.

77.    All documents and things from which Defendant's gross dollar sales of each model or type of Identified Electrochemical Sensors may be determined for each monthly and annual time period from 2002 to present.

78.    All documents constituting, concerning, referring to or relating to any

determination of profit (including any estimates of unit or marginal profit, cost of goods sold, incremental costs, as well as any actual determination of profit) from Defendant's sales of Identified Electrochemical Sensors.

79.    All documents and things constituting, referring to or relating to sales summaries, sales invoices, purchases orders or discount summaries relating to Defendant's Identified Electrochemical Sensors.

80.    All documents and things identifying Defendant's distributors, dealers, sellers and customers of Defendant's Identified Electrochemical Sensors and volume of sales in units and dollars for each broken down on a monthly basis  (and if monthly data is not available, quarterly or any other periodic basis that you keep records for) from 2002 to present.

81.    All documents and things constituting, relating to or referring to Defendant's pricing of Identified Electrochemical Sensors, any changes in Defendant's pricing of Identified Electrochemical Sensors and/or any discounts offered or given on Defendant's Identified Electrochemical Sensors.

82.    All documents and things constituting, referring to or relating to unit pricing structure or pricing policies for each model or type of Defendant's Identified Electrochemical Sensors.

83.    All documents and things constituting, referring to or relating to Defendant's contracts with customers, dealers, distributors and sellers for the sale of Defendant's Identified Electrochemical Sensors.

84.    All documents and things referring to, relating to or discussing retail pricing, price levels, price breaks or discounts (retail or distributor) with Defendant's distributors, dealers, sellers and customers of Defendant's Identified Electrochemical Sensors.

85.     All documents and things concerning, referring to or relating to competition for the sale of Electrochemical Sensors, including competition between Defendant and its competitors, including but not limited to Plaintiffs, and any other defendants in this action.

86.     All documents and things concerning, referring to or relating to market share, market share studies and marketing analyses or reports relating to Identified Electrochemical Sensors, including those prepared by or on behalf of Defendant, as well as industry reports.

87.     All documents and things concerning, referring to or relating to marketing studies or research showing the size, forecast size or potential size of the market or industry for Defendant's  Identified Electrochemical Sensors.

88.      All documents and things concerning, referring to or relating to marketing studies or research showing the size, forecast size or potential size of the customer base for Defendant's Identified Electrochemical Sensors, including  but not limited to sales to distributors as well as consumers.

89.     All documents and things concerning, referring to or relating to market share, market share studies and marketing analyses or reports relating to products competitive with Defendant's Identified Electrochemical Sensors (including but not limited to the products of Defendant's competitors such as Plaintiffs, and any other defendants in this action), including those prepared by or on behalf of Defendant, as well as industry reports.

90.     All documents and things concerning, referring to or relating to marketing studies or research showing the size, forecast size or potential size of the market or industry for products competitive with Defendant's Identified Electrochemical Sensors, including but not limited to the products of Defendant's competitors such as Plaintiffs, and any other defendants in this action.

91.     All documents and things concerning, referring to or relating to marketing studies

23

or research showing the size, forecast size or potential size of the customer base for products competitive with Defendant's Identified Electrochemical Sensors (including but not limited to the products of Defendant's competitors such as Plaintiffs, and any other defendants in this action), including but not limited to sales to distributors as well as consumers.

92.    All documents and things concerning, referring to or relating to information on the marketing or sale by Defendant or any of its customers, distributors, dealers or sellers of Defendant's Identified Electrochemical Sensors.

93.    All documents and things concerning, referring to or relating to information on the marketing or sale of products competitive with Defendant's Identified Electrochemical Sensors, including but not limited to the products of Defendant's competitors such as Plaintiffs, and any other defendants in this action.

94.    All documents and things concerning, referring to or relating to information on market trends for Electrochemical Sensors, including but not limited to the products of Defendant's competitors such as Plaintiffs, and any other defendants in this action.

95.    All documents and things concerning, referring to or relating to Defendant's market share of the total market for Electrochemical Sensors on a monthly basis  (and if monthly data is not available, quarterly or any other periodic basis that you keep records for) from 2002 to present.

96.    All documents and things from which Defendant's cost of production (including manufacturing costs, costs of materials, labor, overhead and other cost items) for each model or type of Identified Electrochemical Sensors may be determined for each monthly and annual time period from 2002 to present.

97.    All documents and things from which Defendant's cost of sales (including selling

expenses, marketing, distribution, attributed research and development and other general or administrative expense and interest expense) for each model or type of Identified Electrochemical Sensors may be determined for each monthly and annual time period from 2002 to present.

98.    All documents and things concerning, referring to or relating to any analyses done by or on behalf of Defendant relating to the cost of Defendant's Identified Electrochemical Sensors compared to the cost of any other Electrochemical Sensors.

99.    All financial statements, quarterly and annual reports and other shareholder reports for Defendant from 2002 to present.

100.    All documents comprising any and all financial statements (audited and unaudited), financial projections or forecasts and profit and loss statements prepared by Defendant or on Defendant's behalf from 2002 to present.

101.    All documents comprising any and all financial statements (audited and unaudited) for Defendant (as a whole, by division, by product line and by product), e.g., income statements, balance sheets and statements of cash flow for each monthly, quarterly, annual or other period from 2002 to present.

102.    All documents and things constituting, referring to or relating to Defendant's financial planning with respect to Identified Electrochemical Sensors.

103.    All documents and things constituting, referring to or relating to Defendant's issued patents or pending patent applications directed to any aspect of Defendant's Identified Electrochemical Sensors, including any patents and pending patent applications on which Defendant is a licensee.

104.    All documents and things concerning, referring to or relating to United States or foreign

25

patent applications, requests for reexamination, patents, invention certificates, reissues, reexaminations, invention disclosures and file histories concerning or relating to any aspect of Defendant's Identified Electrochemical Sensors.

     105.    All documents referring to or relating to Defendant's NovaMax® products.

     106.    All documents concerning, referring to or relating to both Plaintiffs and Electrochemical Sensors.

     107.    All documents and things relied upon or referred to in preparing your Answer.

     108.    All documents and things concerning or forming the basis for the any of the Affirmative Defenses asserted in Defendant's Answer.

     109.    All documents and things concerning or forming the basis for any of the Counterclaims asserted in Defendant's Answer.

     110.    A copy of each file created or maintained by Nova (including its representatives, attorneys and agents) that relates to or contains the applications filed in the PTO that led to the issuance of the 229 patent.

     111.    A copy of each file maintained or created by Nova (including its representatives, attorneys and agents) relating to the prosecution of the applications filed in the PTO that led to the issuance of the 229 patent.

     112.    All documents relating to the conception, reduction to practice, testing and/or commercialization of the alleged invention claimed in the 229 patent.

     113.    The applications filed in the PTO that led to the issuance of the 229 patent.

     114.    All drafts of the applications filed in the PTO that led to the issuance of the 229 patent and all drafts of any corresponding amendments and/or responses to office actions.

     115.    All documents submitted to the PTO in connection with the applications filed in

the PTO that led to the issuance of the 229 patent.

116.    All documents that discuss or refer to the applications filed with the PTO that led to the issuance of the 229 patent.

117.    All documents reflecting or relating to communications with the PTO regarding the 229 patent.

118.    All patent applications filed outside the United States which are counterparts of or correspond to the applications filed in the United States that led to the issuance of the 229 patent.

119.    All documents submitted to foreign authorities in connection with patent applications filed outside the United States which are counterparts of or correspond to the applications filed in the United States that led to the issuance of the 229 patent.

120.    All documents reflecting, referring to or relating to any opposition, nullity, or entitlement, suspension of grant proceedings filed against patent applications, or patents that issued from those applications, that are counterparts of or correspond to the applications filed in the United States that led to the issuance of the 229 patent.

121.    All documents that discuss or refer to patent applications filed outside the United States which are counterparts of or correspond to the applications filed in the United States that led to the issuance of the 229 patent.

122.    All documents, including but not limited to lab notebooks, research reports, worksheets and charts, that were used to develop, or refer or relate to, any example disclosed in the 229 patent.

123.    The most current curriculum vitae available for each and every inventor of the 229 patent.

124.    All documents constituting or reflecting any agreement between Nova and any

inventor of the 229 patent.

125.    All documents reflecting or relating to any payments or other compensation other than salary paid by Nova to each and every inventor of the 229 patent.

126.    A copy of each file created or maintained by Nova (including its representatives, attorneys and agents) that relates to or contains the second application.

127.    A copy of each file maintained or created by Nova (including its representatives, attorneys and agents) relating to the prosecution of the second application.

128.    All documents relating to the conception, reduction to practice, testing and/or commercialization of the alleged invention claimed in the second application.

129.    All drafts of the second application and all drafts of any corresponding amendments and/or responses to office actions.

130.    All documents submitted to the PTO or other patent office in connection with the second application.

131.    All documents that discuss or refer to the second application.

132.    All documents reflecting or relating to communications with the PTO or other patent office regarding the second application.

133.    All patent applications filed outside the United States which are counterparts of or correspond to the second application.

134.    All documents submitted to foreign authorities in connection with patent applications filed outside the United States which are counterparts of or correspond to the second application.

135.    All documents reflecting, referring to or relating to any opposition, nullity, or entitlement, suspension of grant proceedings filed against patent applications, or patents that

issued from those applications, that are counterparts of or correspond to the second application.

136.    All documents that discuss or refer to patent applications filed outside the United States which are counterparts of or correspond to the second application.

137.    All documents, including but not limited to lab notebooks, research reports, worksheets and charts, that were used to develop, or refer or relate to, any example disclosed in the second application.

138.    The most current curriculum vitae available for each and every inventor of the second application.

139.    All documents constituting or reflecting any agreement between Nova and any inventor of the second application.

140.    All documents reflecting or relating to any payments or other compensation other than salary paid by Nova to each and every inventor of the second application.

141.    All documents referring or relating to Dr. Werner Schaefer.

142.    All documents reflecting or relating to communications with Dr. Werner Schaefer.

143.    All documents referring or relating to Dr. Gerd Grenner.

144.    All documents reflecting or relating to communications with Dr. Gerd Grenner.

145.    All documents reflecting or relating to communications with F. Hoffman-La Roche, Ltd., or any of its business units, regarding Nova's glucose strip technology.

146.    All documents referring or relating to any meetings between persons from F. Hoffman-La Roche, Ltd., or any of its business units, and Nova regarding Nova's glucose strip technology.

147.    All documents constituting, referring to or relating to any agreements between F.

Hoffman-La Roche, Ltd., or any of its business units, and Nova regarding Nova's glucose strip technology, including any draft agreements.

148.    All documents constituting, referring to or relating to any confidential and/or proprietary information provided to F. Hoffman-La Roche, Ltd., or any of its business units, regarding Nova's glucose strip technology.

149.    All documents and things concerning, referring to or relating to any written opinions prepared by or on Nova's behalf, or received by or on Nova's behalf, regarding the 229 patent, including but not limited to opinions relating to the validity, invalidity, enforceability, unenforceability, infringement and/or non-infringement of the 229 patent, all drafts of opinions and all documents considered, reviewed or relied on in formulating and/or rendering the opinions.

150.    All documents and things concerning, referring to or relating to any written opinions prepared by or on Nova's behalf, or received by or on Nova's behalf, regarding the Agreement, including but not limited to opinions relating to the enforceability, unenforceability and/or breach of the Agreement, all drafts of opinions and all documents considered, reviewed or relied on in formulating and/or rendering the opinions.

151.    All documents and things concerning, referring to, relating to or constituting the "product demonstration, … description of the manufacturing process, the product specifications, the design of the product … and other confidential and proprietary Information concerning Nova's work on a sub-microliter glucose strip" referred to in paragraph 17 of the Counterclaims of Nova's Answer.

152.    All documents referred to in your Initial Disclosures pursuant to F.R.Civ.P. 26(a)(1).

153.    All documents requested for identification by Plaintiffs' First Set of Interrogatories to Defendant Nova Biomedical Corporation (Nos. 1-27), served concurrently herewith.

30

154.    All documents relied upon, referred to or otherwise consulted directly or indirectly in responding to Plaintiffs' First Set of Interrogatories to Defendant Nova Biomedical Corporation (Nos. 1-27), served concurrently herewith.

155.    All documents and things prepared by or for, or concerning, referring to or relating to any expert retained by Defendant in this litigation.

156.    All documents and things upon which you intend to rely at any time during this litigation.

157.    All documents and things you intend to introduce as exhibits during the trial of this matter.

158.    All documents and things describing, referring to, or relating to Defendant's information archival and/or retrieval system containing any information related to design, manufacture, promotion or sale of Defendant's Identified Electrochemical Sensors.

159.    All documents and things constituting, referring to or relating to Defendant's policies, practices and/or procedures with respect to the generation, distribution, storage, retention or destruction of documents and records, effective as of or subsequent to 2002.

160.    Documents sufficient to identify all files or repositories in which any document responsive to the foregoing requests is maintained in the normal course of business and each index, key, code or other means of accessing and locating documents within such files or repositories.

161.    All documents and things not otherwise described by the above requests that refer or relate to the subject matter shown, described or claimed in the patents-in-suit.

OF COUNSEL:

Daniel A. Boehnen
Grantland G. Drutchas
McDonnell Boehnen Hulbert & Berghoff LLP
300 South Wacker Drive
Chicago, IL 60606
(312) 913-0001


Dated:  January 23, 2008


844036

POTTER ANDERSON & CORROON LLP


By: _____
    Philip A. Rovner (#3215)
    Hercules Plaza
    P.O. Box 951
    Wilmington, DE 19899-0951
    (302) 984-6000
    provner@potteranderson.com

*Attorney for Plaintiffs*
*Roche Diagnostics Operations, Inc. and*
*Corange International Limited*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, Philip A. Rovner, hereby certify that on January 23, 2008, the within document

was served on the following counsel of record, at the addresses and in the manner

indicated:

**BY E-MAIL**

Frederick L. Cottrell, III, Esq.
Anne Shea Gaza, Esq.
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, DE  19801
cottrell@rlf.com
gaza@rlf.com

Mary W. Bourke, Esq.
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 N. Orange Street
Wilmington, DE  19801
mbourke@cblh.com

Steven J. Balick, Esq.
John G. Day, Esq.
Ashby & Geddes
500 Delaware Avenue
8th Floor
P.O. Box 1150
Wilmington, DE  19899
sbalick@ashby-geddes.com
jday@ashby-geddes.com

**BY E-MAIL**

John W. Shaw, Esq.
Jeffrey T. Castellano, Esq.
Young Conaway Stargatt & Taylor, LLP
1000 West Street, 17th Floor
Wilmington, DE  19801
jshaw@ycst.com
jcastellano@ycst.com

Rodger D. Smith, Esq.
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899
rsmith@mnat.com

**BY E-MAIL**

Edward A. Mas, II, Esq.
Stephen F. Sherry, Esq.
Kirk Vander Leest, Esq.
James M. Hafertepe, Esq.
Merle S. Elliott, Esq.
McAndrews, Held & Malloy, Ltd.
500 West Madison Street
34th Floor
Chicago, IL 60661
emas@mcandrews-ip.com
ssherry@mcandrews-ip.com
kvanderleest@mcandrews-ip.com
jhafertepe@mcandrews-ip.com
melliott@mcandrews-ip.com

Kenneth P. George, Esq.
Joseph M. Casino, Esq.
Amster, Rothstein & Ebenstein LLP
90 Park Avenue
New York, NY 10016
kgeorge@arelaw.com
jcasino@arelaw.com

Bradford J. Badke, Esq.
Sona De, Esq.
Michael Kahn, Esq.
Ropes & Gray LLP
1211 Avenue of the Americas
New York, NY 10036-8704
Jim.badke@ropesgray.com
Sona.de@ropesray.com
Michael.kahn@ropesgray.com

**BY E-MAIL**

Wesley E. Overson, Esq.
Rachel Krevans, Esq.
Jason R. Bartlett, Esq.
Parisa Jorjani, Esq.
Daniel P. Muino, Esq.
Morrison & Foerster LLP
425 Market Street
San Francisco, CA 94105-2482
woverson@mofo.com
rkrevans@mofo.com
jasonbartlett@mofo.com
pjorjani@mofo.com
dmuino@mofo.com

Michael G. Adams, Esq.
Ashley L. Ellis, Esq.
Parker Poe Adams & Bernstein LLP
Three Wachovia Center, Suite 3000
401 South Tryon Street
Charlotte, NC 28202
mikeadams@parkerpoe.com
ashleyellis@parkerpoe.com

Philip A. Rovner (#3215)
Potter Anderson & Corroon LLP
Hercules Plaza
P.O. Box 951
Wilmington, Delaware 19899
(302) 984-6000
E-mail: provner@potteranderson.com

-2-

# EXHIBIT J

 **McDonnell Boehnen Hulbert & Berghoff** LLP     300 South Wacker Drive     312 913 0001 phone
Chicago, Illinois 60606-6709     312 913 0002 fax
www.mbhb.com

April 22, 2008

**Sent Via Email; Confirmation via First Class Mail**

Michael Kahn
Ropes & Gray LLP
1211 Avenue of Americas
New York, NY 10036
Michael.Kahn@ropesgray.com

Re:    Roche v. Abbott et al., Civil Action No. 07-753 JJF

Dear Michael:

We write in follow-up to our letter of April 4, 2008 (attached), to which Nova has not
responded.  There are several issues outstanding from that letter, and we would appreciate
a prompt reply from Nova on the following issues.

**Post-Complaint Logging of Withheld Documents**
We understood that Nova would address with its codefendants Nova's proposal that no
party would be required to list any post-Complaint privileged and work-product documents
on a log of withheld documents.  Please let us know if Nova has been able to secure an
agreement from its codefendants on this issue.

**Interrogatory 3**
It is our understanding that Nova agreed to supplement its response to Interrogatory No. 3.
Please promptly provide the supplemental response.

**The Second Application**
We are still awaiting confirmation that U.S. Patent Application Serial No. 09/324,443 is the
application Nova was referring to as the "second application" in its counterclaims.

**Foreign Counterpart Applications**
Please let us know whether Nova intends to stand on its objections to Roche's discovery
requests directed to foreign counterparts of Nova's '229 patent.  As we expressed
previously, statements made during the prosecution of a foreign counterpart application
may be relevant at least to issues of claim construction.

**Proposed Stipulations:**
We are still awaiting word on whether Nova is willing to agree to, or is at least willing to discuss further, the two proposed stipulations presented in our April 4 letter.  Please let us know Nova's position on these stipulations.


Sincerely,

Paula S. Fritsch, Ph.D.
Ph. 312 913 3315
fritsch@mbhb.com