IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROCHE DIAGNOSTICS OPERATIONS, INC., and CORANGE INTERNATIONAL LIMITED, | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Civil Action No. 07-753-JJF |
| ABBOTT DIABETES CARE, INCORPORATED, ABBOTT DIABETES CARE SALES CORPORATION, BAYER HEALTHCARE, LLC, DIAGNOSTICS DEVICES, INC., LIFESCAN, INCORPORATED, and NOVA BIOMEDICAL CORPORATION | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**ANSWERING BRIEF OF DEFENDANTS BAYER HEALTHCARE, LLC, LIFESCAN, INC., AND NOVA BIOMEDICAL CORPORATION IN OPPOSITION TO PLAINTIFFS' MOTION FOR ENTRY OF A PROTECTIVE ORDER**

OF COUNSEL:

Rachel Krevans
Wesley E. Overson
Parisa Jorjani
Daniel P. Muino
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
(415) 268-7000

Kenneth P. George
Joseph M. Casino
AMSTER ROTHSTEIN & EBENSTEIN LLP
90 Park Avenue
New York, NY 10016
(212) 336-8000

YOUNG CONAWAY STARGATT
& TAYLOR, LLP
John W. Shaw (No. 3362)
Jeffrey T. Castellano (No. 4837)
1000 West Street, 17th Floor
Wilmington, DE 19801
jcastellano@ycst.com
(302) 571-6600

*Attorneys for Bayer Healthcare, LLC*

CONNOLLY BOVE LODGE & HUTZ LLP
Mary W. Bourke (No. 2356)
R. Eric Hutz (No. 2702)
1007 N. Orange Street
P.O. Box 2207
Wilmington, DE 19899
(302) 658-9141

*Attorneys for LifeScan, Inc.*

OF COUNSEL:

Bradford J. Badke
Sona De
Michael P. Kahn
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, NY 10036-8704
(212) 596-9000

MORRIS, NICHOLS, ARSHT & TUNNELL
LLP
Rodger D. Smith II
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
rsmith@mnat.com

*Attorneys for Nova Biomedical Corporation*

# TABLE OF CONTENTS

**Page**

NATURE AND STAGE OF THE PROCEEDINGS ...................................................................1

SUMMARY OF ARGUMENT ...........................................................................................1

STATEMENT OF FACTS ................................................................................................3

ARGUMENT ...............................................................................................................4

     A.    In-House Attorneys Involved In Patent Prosecution Decisions Should Be
Excluded From Access To CONFIDENTIAL Information ....................................4

     B.    HIGHLY CONFIDENTIAL Information Should Be Limited To Outside
Counsel Only ...................................................................................................6

     C.    Nancy Tinsley Should Be Excluded From Acting As Roche's Designated
In-House Counsel Under Section 4.2(b)..............................................................9

CONCLUSION ...........................................................................................................10

DB02:6777990.1

066694.1001

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*A. Hirsh, Inc. v. United States,*
  657 F. Supp. 1297 (Ct. Int'l Trade 1987) .................................................................8

*Abbott Diabetes Care Inc. v. DexCom Inc.,*
  Case No. 06-514-GMS (D. Del.) ..............................................................................3

*Abbott Diabetes Care Inc. v. Roche Diagnostics Corp., Roche Diagnostics Operations,
  Inc., and Bayer Healthcare LLC,*
  Case No. 05-3117-WHA (N.D. Cal.) .........................................................................3

*Abbott Labs. and Abbott Diabetes Care v. Agamatrix, Inc.,*
  Case No. 06-7268-JF (N.D. Cal.) .............................................................................3

*Abbott Labs. v. LifeScan, Inc.,*
  Case No. 98-12053-EFH (D. Mass) ..........................................................................4

*Affymetrix, Inc. v. Illumina, Inc.,*
  No. 04-901-JJF, U.S. Dist. LEXIS 15482 (D. Del. July 28, 2005) ...............................2, 8, 10

*Akzo N.V. v. U.S. Int'l Trade Comm'n,*
  808 F.2d 1471 (Fed. Cir. 1986) ...............................................................................7

*Allegheny Ludlum Corp. v. Nippon Steel Corp.,*
  No. 89-5940, 1990 U.S. Dist. LEXIS 867 (E.D. Pa. Jan. 25, 1990)..............................8

*Becton Dickinson & Co. v. Therasense (now Abbott Diabetes Care Inc.),*
  Case No. 04-3327-WHA (N.D. Cal.) .........................................................................4

*Commissariat a L'Energie Atomique v. Dell Computer Corp.,*
  No. 03-484-KAJ, 2004 U.S. Dist. LEXIS 12782 (D. Del. May 25, 2004)......................5

*Intel Corp. v. VIA Techs., Inc.,*
  198 F.R.D. 525 (N.D. Cal. 2000) .............................................................................7, 8

*LifeScan, Inc. v. Home Diagnostics Inc.,*
  Case No. 96-597-JJF (D. Del.) .................................................................................4

*LifeScan, Inc. v. Polymer Techs. Int'l,*
  Case No. 94-672-R (W.D. Wash) .............................................................................4

*LifeScan, Inc. v. Roche Diagnostics Corp.,*
  Case No. 04-3653-SI (N.D. Cal.) .............................................................................4

ii

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Motorola, Inc. v. Interdigital Tech. Corp.,*
   No. 93-488, 1994 U.S. Dist. LEXIS 20714 (D. Del. Dec. 19, 1994) ...................................5, 6

*Roche Diagnostics Corporation v. Bayer Corporation,*
   Case No. 00-1103-C-M/S (S.D. Ind.) ................................................................................4, 5

*Therasense, Inc. (now Abbott Diabetes Care Inc.) v. Becton Dickinson & Co.,*
   Case No. 04-2123-WHA (N.D. Cal.) ...........................................................................3

*Therasense, Inc. (now Abbott Diabetes Care Inc.) v. Nova Biomedical Corp.,*
   Case No. 04-3732-WHA (N.D. Cal.) ...........................................................................3

*U.S. Steel Corp. v. United States,*
   730 F.2d 1465 (Fed. Cir. 1984) ...........................................................................2, 8, 9

**OTHER AUTHORITIES**

Local Rule 26.2...............................................................................................................1

Rule 16............................................................................................................................1

DB02:6777990.1                                                                    066694.1001

Defendants Bayer Healthcare, LLC ("Bayer"), LifeScan, Inc. ("LifeScan"), and Nova

Biomedical Corporation ("Nova") submit this answering brief in opposition to the motion of

plaintiffs Roche Diagnostics Operations, Inc. and Corange International Ltd. (collectively,

"Roche") for entry of a protective order.

## NATURE AND STAGE OF THE PROCEEDINGS

On November 21, 2007, Roche filed the present action against defendants for alleged

infringement of two Roche patents covering blood glucose monitoring products. D.I. 1. All

defendants answered the complaint, except for Diagnostic Devices Inc. ("DDI"), which moved to

dismiss for lack of personal jurisdiction. DDI's motion is currently pending.

On February 28, 2008, the Court adopted the Rule 16 Scheduling Order proposed by

defendants. D.I. 76, 77. The final version of the Order was entered on April 24, 2008. D.I. 147.

Under the Scheduling Order, discovery is divided into two phases: Phase I encompasses

infringement and prior invention issues, and Phase II encompasses invalidity issues. D.I. 147,

§ 3. The parties have commenced Phase I written and documentary discovery, which is to be

completed by June 27, 2008. *Id.*, § 3(a)(i)(1). In the absence of a protective order, the parties

are currently operating under Local Rule 26.2, which limits disclosure to outside counsel only.

## SUMMARY OF ARGUMENT

Bayer, LifeScan, and Nova agree with most of the terms of the Protective Order proposed

by Roche and Abbott, but take exception to a few terms:

(1)    Attorneys involved in patent prosecution decisions for a party should be excluded

from access to CONFIDENTIAL information, since these individuals are competitive decision-

makers. Decisions as to which technologies to patent and how to draft patent claims are often

made with an eye on competing technologies and products. Accordingly, the definition of

"competitive decision-making" in Section 4.2(b) should include patent prosecution decisions. *See* Ex. B, § 4.2(b).[1]

(2)    HIGHLY CONFIDENTIAL information, which Bayer, LifeScan, and Nova narrowly define to include extremely sensitive information pertaining to current manufacturing processes, financial records showing revenues, profits, and costs of goods, and research and development of future products, should be limited to outside counsel only.  Given the sensitivity of this information, any disclosure to in-house counsel at Roche or Abbott would create an undue risk of competitive harm.[2]  Under the Protective Order, the documents included in this category would be few.  Most of the protected documents would fall under the CONFIDENTIAL tier, to which in-house counsel is privy.

Limiting HIGHLY CONFIDENTIAL information to outside counsel is supported by ample authority and does not conflict with the *Affymetrix* and *U.S. Steel* cases cited by Roche.  In those cases, the parties seeking broader access to highly confidential information for in-house attorneys were relying solely on those attorneys to litigate their case – i.e., they had not retained outside trial counsel.  In this case, Roche and Abbott have been represented by outside trial counsel throughout this litigation.  Accordingly, they will suffer no prejudice by the proposed limitation on HIGHLY CONFIDENTIAL information.

Bayer, LifeScan, and Nova also object to the inclusion of Nancy Tinsley as designated in-house counsel for Roche under Section 4.2(b).  Ms. Tinsley is a registered U.S. Patent Attorney qualified to prosecute patents in the U.S. Patent and Trademark Office.  Her declaration does not

---

[1]  Exhibit B is a redlined Protective Order showing the differences between the order proposed by Roche and Abbott and the order proposed by Bayer, LifeScan, and Nova.  Exhibit A is a clean version of the order proposed by Bayer, LifeScan, and Nova.
[2]  Of course, disclosure of information to Abbott and other co-defendants is only an issue because Roche chose to improperly join multiple defendants in this litigation.

disclaim her involvement in prosecuting patents on Roche's behalf. If Ms. Tinsley is involved in patent prosecution decisions, she should be disqualified under Section 4.2(b). Moreover, Ms. Tinsley's position as Director of Patent Litigation suggests that she will be in close contact with Roche's upper management, creating a risk that confidential information will be inappropriately shared with competitive decision-makers. Also, her responsibility for "advising Roche regarding settlement of litigation matters" is a form of competitive decision-making. For these reasons, Ms. Tinsley should be excluded from acting as Roche's designated in-house counsel under Section 4.2(b).

Bayer, LifeScan, and Nova respectfully request that the Court enter the Protective Order attached hereto as Exhibit A, instead of the order proposed by Roche.

## STATEMENT OF FACTS

The parties to this case are competitors in the highly-competitive market for blood glucose monitoring products. Between them, the parties hold many hundreds of patents covering blood glucose monitoring technologies. In recent years, the parties have been involved in numerous patent infringement suits, with each other and other parties, relating to blood glucose monitoring technologies, including:

- *Abbott Diabetes Care Inc. v. DexCom Inc.,* Case No. 06-514-GMS (D. Del.);

- *Abbott Labs. and Abbott Diabetes Care v. Agamatrix, Inc.*, Case No. 06-7268-JF (N.D. Cal.);

- *Therasense, Inc. (now Abbott Diabetes Care Inc.) v. Becton Dickinson & Co.,* Case No. 04-2123-WHA (N.D. Cal.);

- *Therasense, Inc. (now Abbott Diabetes Care Inc.) v. Nova Biomedical Corp.,* Case No. 04-3732-WHA (N.D. Cal.);

- *Abbott Diabetes Care Inc. v. Roche Diagnostics Corp., Roche Diagnostics Operations, Inc., and Bayer Healthcare LLC*, Case No. 05-3117-WHA (N.D. Cal.);

- *Abbott Labs. v. LifeScan, Inc.*, Case No. 98-12053-EFH (D. Mass);

- *Becton Dickinson & Co. v. Therasense (now Abbott Diabetes Care Inc.)*, Case No. 04-3327-WHA (N.D. Cal.);

- *LifeScan, Inc. v. Roche Diagnostics Corp.*, Case No. 04-3653-SI (N.D. Cal.);

- *LifeScan, Inc. v. Polymer Techs. Int'l*, Case No. 94-672-R (W.D. Wash);

- *LifeScan, Inc. v. Home Diagnostics Inc.*, Case No. 96-597-JJF (D. Del.);

- *Roche Diagnostics Corporation v. Bayer Corporation*, Case No. 00-1103-C-M/S (S.D. Ind.).

Because of the highly competitive nature of this industry, any inadvertent disclosure of sensitive information to competitors is a major concern. A party's manufacturing processes, costs of goods, and development of future products can make or break its long-term competitive standing in the market. Should this information fall into the hands of its competitors, harm to the party's competitive standing can swiftly result. For this reason, Bayer, LifeScan, and Nova believe that their suggested changes to the protective order are entirely appropriate for the business environment in which the parties operate.

## ARGUMENT

### A.    In-House Attorneys Involved In Patent Prosecution Decisions Should Be Excluded From Access To CONFIDENTIAL Information

As noted above, the parties to this case compete in the market for blood glucose monitoring products. Obtaining and asserting patents covering product improvements is an important part of this competitive environment. Patent prosecution decisions, including which technologies to patent and how to draft patent claims, are commonly based on knowledge of

competing products and technologies. An attorney involved in patent prosecution can make use of a competitor's confidential product information to the competitor's detriment.

Roche's proposed Protective Order would allow disclosure of CONFIDENTIAL information to up to three in-house attorneys per party, so long as those attorneys are not involved in "competitive decision-making." The term "competitive decision-making" is defined as "advice, participation, or role in the client's decisions about pricing, marketing, product design, or scientific research made in light of similar or corresponding information about a competitor in blood glucose products." *See* Ex. B, § 4.2(b). Bayer, LifeScan, and Nova believe that decisions regarding patent prosecution qualify as a form of "competitive decision-making" and should be included in the definition of that term. Accordingly, Bayer, LifeScan, and Nova propose the following definition of "competitive decision-making":

> "advice, participation, or role in the client's decisions about pricing, marketing, product design, patent prosecution, or scientific research made in light of similar or corresponding information about a competitor in blood glucose products."

*Id.*

District of Delaware decisions support the exclusion of patent prosecutors from access to confidential information. In one case, Judge Jordan required in-house counsel to agree not to prosecute patents during the litigation and for one year thereafter, if they desired access to protected materials. *See Commissariat a L'Energie Atomique v. Dell Computer Corp.*, No. 03-484-KAJ, 2004 U.S. Dist. LEXIS 12782, at *4 (D. Del. May 25, 2004). As the court explained, "[p]rosecuting patent applications 'involves decisions of scope and emphasis' that implicate competitive decision making, as claims may be drafted to 'read on new products and new directions where [a party] project[s] sales to be most critical.'" *Id.* at 8 (citation omitted). In another case, patent prosecutors who had already seen confidential information were prohibited

from prosecuting patents during the litigation and for one year thereafter. *See Motorola, Inc. v. Interdigital Tech. Corp.*, No. 93-488, 1994 U.S. Dist. LEXIS 20714, at *17-18 (D. Del. Dec. 19, 1994). The *Motorola* court commented: "[T]his court has implied in the past that prosecution of patents could be grounds for denying access. . . . There can be no question that . . . attorneys who receive confidential information and then later prosecute patents will have to distill and compartmentalize the confidential knowledge they have gained." *Id.* at *12-13.

For these reasons, the definition of "competitive decision-making" should include patent prosecution decisions, as shown in the Protective Order proposed by Bayer, LifeScan, and Nova. *See* Ex. B, § 4.2(b).

### B.    HIGHLY CONFIDENTIAL Information Should Be Limited To Outside Counsel Only

Bayer, LifeScan, and Nova request that disclosure of HIGHLY CONFIDENTIAL information be limited to outside counsel only. Bayer, LifeScan, and Nova believe that this category should be narrowly defined to include "information pertaining to current manufacturing processes, financial records showing revenues, profits, and costs of goods, and research and development of future products (including, but not limited to, unfiled patent applications)." *See* Ex. B, § 2.4.[3] The volume of relevant documents and information likely to fall under this category is small, but the sensitivity of this information is great. Bayer, LifeScan, and Nova believe it is a reasonable compromise to limit this small body of exceptionally sensitive

---

[3]  Bayer, LifeScan, and Nova propose small amendments to the definitions of "CONFIDENTIAL" and "HIGHLY CONFIDENTIAL" information to move extremely sensitive financial records into the HIGHLY CONFIDENTIAL category. *See* Ex. B, § 2.3, 2.4. Financial records showing a party's revenues, profits, and costs of goods can help competitors adjust their strategies to capture greater market share. Knowledge of how profitable a product is and how much it costs to make and deliver to market can easily be used to gain competitive advantage. Accordingly, the category "current costs of goods procurement" in the definition of HIGHLY CONFIDENTIAL information should be amended to read "financial records showing revenues, profits, and costs of goods." Ex. B., § 2.4.

information to outside counsel only (thereby reducing the chances of inappropriate disclosure within a competing party), while allowing the bulk of protected documents and information to go to in-house counsel under the CONFIDENTIAL designation.  By contrast, the Protective Order proposed by Roche and Abbott would allow the same three in-house attorneys to see both CONFIDENTIAL *and* HIGHLY CONFIDENTIAL information, effectively collapsing those categories into a single tier and eliminating the added protection that a two-tier order would provide.

Defendants' proposal is supported by authorities from the Federal Circuit and other courts.  The Federal Circuit has permitted protective orders that exclude in-house counsel from receiving highly confidential information, particularly when the parties are adequately represented by outside trial counsel.  In *Akzo N.V. v. U.S. Int'l Trade Comm'n*, 808 F.2d 1471 (Fed. Cir. 1986), the Federal Circuit affirmed the issuance of a protective order that excluded in-house counsel from receiving confidential information in a proceeding before the International Trade Commission ("ITC").  *Id.* at 1483.  The court observed that "where confidential material is disclosed to an employee of a competitor, the risk of the competitor's obtaining an unfair business advantage may be substantially increased."  *Id.*  The court concluded that disclosure of confidential information to Akzo's in-house counsel was not necessary, given that Akzo was adequately represented by outside counsel.  *Id.* at 1484 ("[Administrative Procedure Act] does not mandate disclosure of significant confidential information to in-house counsel and corporate executives of a business competitor – where that information is fully available to outside counsel").

The court in *Intel Corp. v. VIA Techs., Inc.*, 198 F.R.D. 525 (N.D. Cal. 2000), relied on *Akzo* in denying in-house counsel access to confidential information.  The court stated that a

party "seeking access must demonstrate that its ability to litigate will be prejudiced, not merely its ability to manage outside litigation counsel." *Id.* at 529. Because Intel had competent outside counsel, its ability to litigate was not prejudiced by the exclusion of in-house counsel from receiving confidential information. *Id.* ("[r]equiring a party to rely on its competent outside counsel does not create an 'undue and unnecessary burden'"). *See also A. Hirsh, Inc. v. United States*, 657 F. Supp. 1297 (Ct. Int'l Trade 1987) ("[O]utside counsel has been retained by the plaintiff in this action . . . [I]n view of retained counsel's competence, it is not clear how plaintiff's position will be prejudiced by excluding [in-house] counsel from access to the nonpublic part of the agency record"); *Allegheny Ludlum Corp. v. Nippon Steel Corp.*, No. 89-5940, 1990 U.S. Dist. LEXIS 867 (E.D. Pa. Jan. 25, 1990) (denying in-house counsel access to information designated "Confidential – Outside Trial Counsel Only"). In the present case, Roche and Abbott are represented by competent outside trial counsel and will suffer no prejudice from the exclusion of in-house counsel from access to the HIGHLY CONFIDENTIAL category.

Defendants' proposal does not conflict with the cases cited by Roche. In *Affymetrix, Inc. v. Illumina, Inc.*, No. 04-901-JJF, U.S. Dist. LEXIS 15482 (D. Del. July 28, 2005), defendant Illumina sought to bar Affymetrix's in-house litigators from having access to highly confidential information. *Id.* at *1. The court concluded that "[a]lthough there is case law to support both parties' positions," the circumstances of the case warranted disclosure to Affymetrix's in-house litigators. *Id.* at *2. Specifically, access by in-house litigators was necessary because Affymetrix had not retained outside trial counsel, but was instead relying on in-house litigators to litigate the case. *Id.* at *1. By contrast, Roche and Abbott have had outside trial counsel actively handling this litigation from the outset.

Similarly, the Federal Circuit's decision in *U.S. Steel Corp. v. United States*, 730 F.2d

1465 (Fed. Cir. 1984), involved a party (U.S. Steel) that had not hired outside trial counsel, but

was relying on in-house counsel to handle an ITC proceeding. *Id.* at 1468. As the court noted,

"[b]ecause the present litigation is extremely complex and at an advanced stage, . . . forcing USS

to rely on newly retained counsel would create an extreme and unnecessary hardship." *Id.*

Roche and Abbott would suffer no such prejudice in this case, given that their in-house litigators

will be privy to the majority of protected information, and they have outside trial counsel to

handle the small amount of HIGHLY CONFIDENTIAL information.

### C. Nancy Tinsley Should Be Excluded From Acting As Roche's Designated In-House Counsel Under Section 4.2(b)

Roche proposes in-house attorney Nancy Tinsley as its designated counsel under Section

4.2(b) of the Protective Order. Roche has provided a declaration from Ms. Tinsley disclaiming

any role in competitive decision-making.[4] Bayer, LifeScan, and Nova have concerns about

Ms. Tinsley's qualifications and believe that she should be excluded from serving as Roche's

designated in-house counsel under Section 4.2(b).

First, it should be noted that Ms. Tinsley is a registered U.S. Patent Attorney qualified to

prosecute patents in the U.S. Patent and Trademark Office. Ms. Tinsley's declaration does not

disclaim her involvement in prosecuting patents on Roche's behalf. As discussed above, patent

prosecution decisions are a form of competitive decision-making. If Ms. Tinsley is involved in

patent prosecution decisions, including coordinating, supervising, or consulting on patent

prosecution, she should be disqualified under Section 4.2(b).

---

[4]  Abbott has not yet provided the required declarations from its proposed in-house attorneys, Jose Rivera, Eric Martin, and Jennifer Oosertbaan. Bayer, LifeScan, and Nova reserve the right to object to these attorneys when their declarations are produced.

Second, Ms. Tinsley's position as Director of Patent Litigation likely puts her in close contact with Roche's upper management, creating a risk that confidential information will be inappropriately shared with competitive decision-makers. Ms. Tinsley's responsibilities include "managing Roche's patent litigation, including coordinating Roche's legal arguments during all pre-trial and trial phases and negotiating and advising Roche regarding settlement of litigation matters." *See* Tinsley Decl., ¶ 5. In its *Affymetrix* decision, the Court found that such responsibilities qualified as "competitive decision-making." *See Affymetrix*, 2005 U.S. Dist. LEXIS at * 2 ("Illumina represented that Ms. Espinosa is part of Illumina's management team and is involved with settling patent litigation and licensing. Based on her role at Illumina which crosses over into the competitive decision-making at Illumina, the Court concludes that Ms. Espinosa is not appropriately included as a party to the protective order."). For the same reasons, Ms. Tinsley should be excluded from serving as Roche's designated in-house counsel under Section 4.2(b). Ms. Tinsley's exclusion will not deny Roche its choice of counsel, since it already has competent outside trial counsel to handle this litigation. Moreover, Roche can propose another in-house attorney for qualification under Section 4.2(b).

## CONCLUSION

For the foregoing reasons, Bayer, LifeScan, and Nova respectfully request that the Court enter the Protective Order attached hereto as Exhibit A, in lieu of the protective order proposed by Roche and Abbott.

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

_____
John W. Shaw (No. 3362)
Jeffrey T. Castellano (No. 4837)
1000 West Street, 17th Floor
Wilmington, DE 19801
(302) 571-6600
jcastellano@ycst.com

OF COUNSEL:

Rachel Krevans
Wesley E. Overson
Parisa Jorjani
Daniel P. Muino
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
(415) 268-7000

Kenneth P. George
Joseph M. Casino
AMSTER ROTHSTEIN & EBENSTEIN LLP
90 Park Avenue
New York, NY 10016
(212) 336-8000

*Attorneys for Bayer Healthcare, LLC*

CONNOLLY BOVE LODGE & HUTZ LLP
Mary W. Bourke (No. 2356)
R. Eric Hutz (No. 2702)
1007 N. Orange Street
P.O. Box 2207
Wilmington, DE 19899
(302) 658-9141

*Attorneys for LifeScan, Inc.*

MORRIS, NICHOLS, ARSHT & TUNNELL
LLP
Rodger D. Smith II
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
rsmith@mnat.com

OF COUNSEL:

Bradford J. Badke
Sona De
Michael P. Kahn
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, NY 10036-8704
(212) 596-9000

April 28, 2008                          *Attorneys for Nova Biomedical Corporation*

<u>**CERTIFICATE OF SERVICE**</u>

I, Jeffrey T. Castellano, Esquire, hereby certify that on April 28, 2008, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

Philip A. Rovner, Esquire
Potter Anderson & Corroon LLP
1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951

Frederick L. Cottrell, III, Esquire
Anne Shea Gaza, Esquire
Richards Layton & Finger PA
One Rodney Square
920 North King Street
Wilmington, DE 19801

Mary W. Bourke, Esquire
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899

Rodger D. Smith, II, Esquire
Morris Nichols Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347

Steven J. Balick, Esquire
Lauren E. Maguire, Esquire
Ashby & Geddes
500 Delaware Avenue
P.O. Box 1150
Wilmington, DE 19899

I further certify that on April 28, 2008, I caused a true and correct copy of the

foregoing document to be served by e-mail on the above-listed counsel of record and on the

following non-registered participants in the manner indicated:

**BY E-MAIL**

Daniel A. Boehnen, Esquire [boehnen@mbhm.com]
Grantland G. Drutchas, Esquire [drutchas@mbhb.com]
Gary E. Hood, Esquire [hood@mbhb.com]
Nicole Keenan, Esquire [keenan@mbhb.com]
Paula S. Fritsch, Esquire [Fritsch@mbhb.com]
Sherri L. Oslick, Esquire [oslick@mbhb.com]
Jeffrey P. Armstrong [armstrongj@mbhb.com]
McDonnell Boehnen Hulbert & Bergoff LLP
300 South Wacker Drive
Chicago, IL 60606

Bradford J. Badke, Esquire [jim.badke@ropesgray.com]
Sona De, Esquire [sona.de@ropesgray.com]
Michael Kahn, Esquire [michael.kahn@ropesgray.com]
Ropes & Gray LLP
1211 Avenue of the Americas
New York, NY 10036-8704

Michael G. Adams, Esquire [mikeadams@parkerpoe.com]
Ashley L. Ellis, Esquire [ashleyellis@parkerpoe.com]
Parker Poe Adams & Bernstein LLP
Three Wachovia Center, Suite 3000
401 South Tryon Street
Charlotte, NC 28202

Edward A. Mas II, Esquire [emas@mcandrews-ip.com]
Stephen F. Sherry, Esquire [ssherry@mcandrews-ip.com]
Kirk A. Vander Leest, Esquire [kvanderleest@mcandrews-ip.com]
James M. Hafertepe, Esquire [jhafertepe@mcandrews-ip.com]
Merle S. Elliott, Esquire [melliott@mcandrews-ip.com]
McAndrews, Held & Malloy, Ltd.
500 West Madison Street
Chicago, IL 60661

YOUNG CONAWAY STARGATT
  & TAYLOR, LLP

_____

John W. Shaw (No. 3362) [jshaw@ycst.com]
Jeffrey T .Castellano (No. 4837)
[jcastellano@ycst.com]
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19899
(302) 571-6600

*Attorneys for Defendant Bayer Healthcare, LLC*

3

# EXHIBIT A

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

ROCHE DIAGNOSTICS OPERATIONS,   )
INC., and CORANGE INTERNATIONAL   )
LIMITED,   )
  )
        Plaintiffs,   )
  )
          v.   )   C.A. No. 07-753-JJF
  )
ABBOTT DIABETES CARE,   )
INCORPORATED, ABBOTT DIABETES   )
CARE SALES CORPORATION, BAYER   )
HEALTHCARE, LLC, DIAGNOSTIC   )
DEVICES, INC., LIFESCAN,   )
INCORPORATED, and NOVA   )
BIOMEDICAL CORPORATION,   )
  )
        Defendants.   )
  )

## PROTECTIVE ORDER

Pursuant to Fed. R. Civ. P. 26(c), the Court finds that good cause exists for entry of a

protective order to prevent unauthorized disclosure and use of the parties' trade secrets and other

confidential information during and after the course of this litigation. Accordingly, IT IS

HEREBY ORDERED as follows:

    1.     **PURPOSES AND LIMITATIONS**

Disclosure and discovery activity in this action are likely to encompass confidential,

proprietary, or private information for which special protection from public disclosure and from

use for any purpose outside this litigation would be warranted. Accordingly, the parties hereby

stipulate to and petition the court to enter the following Protective Order. The parties

acknowledge that this Order does not confer blanket protections on all disclosures or responses

to discovery and that the protection it affords extends only to the limited information or items

that are entitled under the applicable legal principles to treatment as confidential. The parties

further acknowledge, as set forth in Section 9, below, that this Protective Order creates no entitlement to file confidential information under seal; Civil Local Rule 5.1.3 sets forth the procedures that must be followed and reflects the standards that will be applied when a party seeks permission from the court to file material under seal.

2.    **DEFINITIONS**

2.1    **Party**:  any party to this action, including all of its officers, directors, employees, consultants, retained experts, and Counsel of Record (and their staff).

2.2    **Disclosure or Discovery Material**:  all items or information, regardless of the medium or manner generated, stored, or maintained (including, among other things, documents, testimony, transcripts, interrogatory answers, responses to requests for admission, pleadings, correspondence, and tangible things) that are produced or generated in disclosures or responses to discovery in this matter.

2.3    **"CONFIDENTIAL" Information or Items**:  non-public Disclosure or Discovery Material (regardless of how generated, stored or maintained) that a party claims in good faith contains or discloses information relating to trade secrets or other confidential research, development, technical or commercial information within the meaning of F.R.Civ.P. 26(c)(1)(G).  This material includes, but is not limited to, non-public experiments, technical documents, laboratory notebooks, current pricing information, market information, marketing material (including current marketing plans), and customer, distributor, licensee, supplier, and vendor information.

2.4    **"HIGHLY CONFIDENTIAL" Information or Items**:  extremely sensitive CONFIDENTIAL information or items whose disclosure to another Party or nonparty would create a substantial risk of serious injury that could not be avoided by less restrictive means, including information pertaining to current manufacturing processes, financial records showing revenues, profits, and costs of goods, and research and development of future products (including, but not limited to, unfiled patent applications).

2.5     **Receiving Party**:  a Party that receives Disclosure or Discovery Material from a Producing Party.

2.6     **Producing Party**:  a Party or non-party that produces Disclosure or Discovery Material in this action.

2.7     **Designating Party**:  a Party or non-party that designates information or items that it produces in disclosures or in responses to discovery as **"CONFIDENTIAL"** or **"HIGHLY CONFIDENTIAL."**

2.8     **Protected Material**:  any Disclosure or Discovery Material that is designated as **"CONFIDENTIAL"** or as **"HIGHLY CONFIDENTIAL\."**

2.9     **Counsel of Record**:  outside attorneys who have filed appearances with and been admitted by the Court on behalf of any Party in this action.

2.10     **Other Counsel**:  outside attorneys who have been retained in any capacity by any Party in this action but have not filed an appearance.

2.11     **Counsel** (without qualifier):  Counsel of Record and Other Counsel (as well as their staffs).

2.12     **Expert**:  a person with specialized knowledge or experience in a matter pertinent to the litigation who has been retained by a Party or its counsel to serve as an expert witness or as a consultant in this action, and who is not a past or a current employee of a Party or of a competitor of a Party and who, at the time of retention, is not anticipated to become an employee of a Party or a competitor of a Party.  This definition includes a professional jury or trial consultant retained in connection with this litigation.

2.13     **Professional Vendors**:  persons or entities that provide litigation support services (e.g., photocopying; videotaping; translating; preparing exhibits or demonstrations; organizing, storing, retrieving data in any form or medium; etc.) and their employees and subcontractors.

3.     **SCOPE**  The protections conferred by this Stipulation and Order cover not only Protected Material (as defined above), but also any information copied or extracted therefrom, as

well as all copies, excerpts, summaries, or compilations thereof, plus testimony, conversations, or presentations by parties or counsel that includes Protected Material. Counsel will work together to discuss how to handle confidential information to be presented at hearings or at trial.

4.    **ACCESS TO AND USE OF PROTECTED MATERIAL**

4.1    **Basic Principles**. A Receiving Party may use Protected Material that has been designated in accordance with Section 5 below and has been disclosed or produced by another Party or by a non-party in connection with this case only for prosecuting, defending, or attempting to settle this litigation. Such Protected Material may be disclosed only to the categories of persons and under the conditions described in this Order. When the litigation has been terminated, a Receiving Party must comply with the provisions of section 10.2, below (FINAL DISPOSITION).

Protected Material must be stored and maintained by a Receiving Party at a location and in a secure manner that ensures that access is limited to the persons authorized under this Order.

4.2    **Disclosure and Use of "CONFIDENTIAL" Information or Items**. Unless otherwise ordered by the court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated **"CONFIDENTIAL"** only to:

(a) The Receiving Party's Counsel of Record in this action, as well as employees of said Counsel of Record to whom it is reasonably necessary to disclose the information for this litigation.

(b) Up to three (3) in-house attorneys or Other Counsel identified below (and clerical staff assisting said in-house attorneys or Other Counsel) of the Receiving Party who (1) have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A) and (2) have submitted a sworn declaration to the Producing Party that he or she does not have a competitive decision-making role for the Receiving Party prior to receiving any CONFIDENTIAL information of the Producing Party, and agrees to maintain all confidential information produced in this action on their personal hard drives or in

sf-2502928

password-protected files. Competitive decision-making" for purposes of this Protective Order shall include "advice, participation, or role in the client's decisions about pricing, marketing, product design, patent prosecution, or scientific research made in light of similar or corresponding information about a competitor in blood glucose products." Identified In-House Counsel or Other Counsel:

(1) For Roche: _____,

(2) For Abbott: Jose Rivera, Eric Martin, and Jennifer Oosertbaan,

(3) For Bayer: _____, _____, _____,

(4) For Diagnostics Devices: _____, _____, _____,

(5) For LifeScan: _____, _____, _____,

(6) For Nova: _____, _____, _____

(c) Experts (as defined in this Order) of the Receiving Party (1) to whom disclosure is reasonably necessary for this litigation, (2) who have signed the "Acknowledgement and Agreement to Be Bound" (Exhibit A), and (3) as to whom the procedures set forth in Section 4.5, below, have been followed.

(d) The Court, Court Reporters, and their respective staffs and personnel.

(e) Professional Vendors to whom disclosure is reasonably necessary for this litigation.

(f) During their depositions, witnesses (1) who are the author or prior listed recipients of the **CONFIDENTIAL** document, (2) the original source of the information, or (3) current employees of the Designating Party. Notwithstanding the foregoing, the questioning attorney may show the **CONFIDENTIAL** document to a former employee of the Designating Party who is not employed by a competitor at the time of deposition, solely to ask the witness preliminary questions to determine authorship, receipt or access to the **CONFIDENTIAL** document.

4.3    **Disclosure and Use of "HIGHLY CONFIDENTIAL" Information or Items**. Unless otherwise ordered by the court or permitted in writing by the Designating Party, a

Receiving Party may disclose any information or item designated **"HIGHLY CONFIDENTIAL"** only to:

(a) The Receiving Party's Counsel of Record in this action, as well as employees of said Counsel of Record to whom it is reasonably necessary to disclose the information for this litigation.

(b) Experts (as defined in this Order) of the Receiving Party (1) to whom disclosure is reasonably necessary for this litigation, (2) who have signed the "Acknowledgement and Agreement to Be Bound" (Exhibit A), and (3) as to whom the procedures set forth in Section 4.5, below, have been followed.

(c) The Court, Court Reporters, and their respective staffs and personnel.

(d) Professional Vendors to whom disclosure is reasonably necessary for this litigation.

(e) During their depositions, witnesses (1) who are the author or prior listed recipients of the **HIGHLY CONFIDENTIAL** document, (2) the original source of the information, or (3) current employees of the Designating Party. Notwithstanding the foregoing, the questioning attorney may show the **HIGHLY CONFIDENTIAL** document to a former employee of the Designating Party who is not employed by a competitor at the time of deposition, solely to ask the witness preliminary questions to determine authorship, receipt or access to the **HIGHLY CONFIDENTIAL** document.

4.4    **Procedures for Objecting to Individuals Designated Under Paragraph, 4.2(b).** Parties may object in writing to individuals designated under paragraph 4.2(b) within ten (10) days of service of the declaration. The designating party shall not disclose **CONFIDENTIAL** information to a designated individual until ten (10) days have elapsed following service of the declaration. If an objection to a designated individual is received, the designating party shall not disclose **CONFIDENTIAL** information to that individual until the objection is resolved by agreement of the parties or by the Court.

4.5    **Procedures for Approving Disclosure of "CONFIDENTIAL" and "HIGHLY CONFIDENTIAL" Information or Items to "Experts"**

(a) Unless otherwise ordered by the court or agreed in writing by the Designating Party, a Party that seeks to disclose to an "Expert" (as defined in this Order) any information or item that has been designated **"CONFIDENTIAL"** or **"HIGHLY CONFIDENTIAL"** first must make a written request to the Designating Party that (1) sets forth the full name of the Expert and the city and state of his or her primary residence, (2) attaches a copy of the Expert's current resume, (3) identifies the Expert's current employer(s), (4) identifies each person or entity from whom the Expert has received compensation for work in his or her areas of expertise or to whom the expert has provided professional services at any time during the preceding four years, and (5) identifies (by name and number of the case, filing date, and location of court) any litigation in connection with which the Expert has provided any professional services during the preceding four years.

(b) A Party that makes a request and provides the information specified in the preceding Section may disclose the subject Protected Material to the identified Expert unless, within seven calendar days of delivering the request, the Party receives a written objection from the Designating Party. Any such objection must set forth in detail the grounds on which it is based.

(c) A Party that receives a timely written objection must meet and confer with the Designating Party (through direct voice to voice dialogue) to try to resolve the matter by agreement. If no agreement is reached, the Party seeking to make the disclosure to the Expert may file a motion as provided in Civil Local Rule 7 (and in compliance with Civil Local Rule 5.1.3, if applicable) seeking permission from the court to do so. Any such motion must describe the circumstances with specificity, set forth in detail the reasons for which the disclosure to the Expert is reasonably necessary, assess the risk of harsh that the disclosure would entail and suggest any additional means that

might be used to reduce that risk. In addition, any such motion must be accompanied by a competent declaration in which the movant describes the parties' efforts to resolve the matter by agreement (i.e., the extent and the content of the meet and confer discussions) and sets forth the reasons advanced by the Designating Party for its refusal to approve the disclosure. In any such proceeding the Party opposing disclosure to the Expert shall bear the burden of proving that the risk of harm that the disclosure would entail (under the safeguards proposed) outweighs the Receiving Party's need to disclose the Protected Material to its Expert.

5.    **DESIGNATING PROTECTED MATERIAL**

5.1    **Exercise of Restraint and Care By The Designating Party**. Each Party or non-party that designates information or items for protection under this Order must take care to limit any such designation to specific material that qualifies under the appropriate standards. A Designating Party must take care to designate for protection only those parts of material, documents, items, or oral or written communications that qualify - so that other portions of the material, documents, items, or communications for which protection is not warranted are not swept unjustifiably within the ambit of this Order.

Mass, indiscriminate, or routine designations are prohibited. Designations that are shown to be clearly unjustified, or that have been made for an improper purpose (e.g., to unnecessarily encumber or retard the case development process, or to impose unnecessary expenses and burdens on other parties), expose the Designating Party to sanctions.

If it comes to a Party's or a non-party's attention that information or items that it designated for protection do not qualify for protection at all, or do not qualify for the level of protection initially asserted, that Party or non-party must promptly notify all other parties that it is withdrawing the mistaken designation.

5.2    **Manner and Timing of Designations**. Except as otherwise provided in this Order (see, e.g., second paragraph of section 5.2(a), below), or as otherwise stipulated or

ordered, material that qualifies for protection under this Order must be clearly so designated

before the material is disclosed or produced. Designation in conformity with this Order requires:

(a) **for information in documentary form** (apart from transcripts of

depositions or other pretrial or trial proceedings), that the Producing Party affix the

legend **"CONFIDENTIAL"** or **"HIGHLY CONFIDENTIAL"** on each page that

contains protected material. If only a portion or portions of the material on a page

qualifies for protection, the Producing Party also must clearly identify the protected

portion(s) (e.g., by making appropriate markings in the margins) and must specify, for

each portion, the level of protection being asserted (either **"CONFIDENTIAL"** or

**"HIGHLY CONFIDENTIAL"**). A Party or non-party that makes original documents

or materials available for inspection need not designate them for protection until after the

inspecting Party has indicated which material it would like copied and produced. During

the inspection and before the designation, all of the material made available for

inspection shall be deemed **"HIGHLY CONFIDENTIAL."** After the inspecting Party

has identified the documents it wants copied and produced, the Producing Party must

determine which documents, or portions thereof, qualify for protection under this Order,

and then, before producing the specified documents, the Producing Party must affix the

appropriate legend (**"CONFIDENTIAL"** or **"HIGHLY CONFIDENTIAL"**) on each

page that contains Protected Material. If only a portion or portions of the material on a

page qualifies for protection, the Producing Party also must clearly identify the protected

portion(s) (e.g., by making appropriate markings in the margins) and must specify, for

each portion, the level of protection being asserted (either **"CONFIDENTIAL"** or

**"HIGHLY CONFIDENTIAL"**).

(b) **for testimony given in deposition or in other pretrial or trial**

**proceedings**, that the Party or non-party offering or sponsoring the testimony identify on

the record, before the close of the deposition, hearing, or other proceeding, all protected

testimony, and further specify any portions of the testimony that qualify as either

"CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" Furthermore, any party may, at any point in time up to and including 20 days after receipt of a deposition transcript, designate the entire transcript or portions thereof under the appropriate level of protection under this Protective Order.

Transcript pages containing Protected Material should be identified with the legend **"CONFIDENTIAL"** or **"HIGHLY CONFIDENTIAL,"** as instructed by the Party or nonparty offering or sponsoring the witness or presenting the testimony.

(c) **for information produced in some form other than documentary, and for any other tangible items**, that the Producing Party must take reasonable steps to provide notice prominently with respect to such information; for example, by affixing in a prominent place on the exterior of the container or containers in which the information or item is stored the legend **"CONFIDENTIAL"** or **"HIGHLY CONFIDENTIAL."** If only portions of the information or item warrant protection, the Producing Party, to the extent practicable, shall identify the protected portions, specifying whether they qualify as **"CONFIDENTIAL"** or as **"HIGHLY CONFIDENTIAL."**

5.3    **Inadvertent Failures to Designate**. If timely corrected, an inadvertent failure to designate qualified information or items as **"CONFIDENTIAL"** or as **"HIGHLY CONFIDENTIAL"** does not, standing alone, waive the Designating Party's right to secure protection under this Order for such material. If material is appropriately designated as **"CONFIDENTIAL"** or as **"HIGHLY CONFIDENTIAL"** after the material was initially produced, the Receiving Party, on timely notification of the designation, must make reasonable efforts to assure that the material is treated in accordance with the provisions of this Order.

5.4    **Limits on Confidential Information**. Information is not Protected Material under this Protective Order which (a) is shown by contemporaneous documentation of the Receiving Party to have been in its possession prior to receipt from the Producing Party; or (b) becomes, through no fault of the Receiving Party, publicly known; or (c) is furnished to the

Receiving Party by a third party without breach of a duty to the Producing Party; or (d) is independently developed by the Receiving Party without access to the Protected Information.

6.    **CHALLENGING CONFIDENTIALITY DESIGNATIONS**

6.1    **Timing of Challenges**.  A challenge to a Designating Party's confidentiality designation should normally be raised promptly after the Receiving Party becomes aware that it disagrees with the Designating Party's confidentiality designation. However, a Party that elects not to mount a challenge promptly after the original designation is disclosed does not thereby waive its right to later challenge a confidentiality designation if the Court determines that circumstances taken as a whole preserve substantial fairness, avoid unnecessary economic burdens, and is warranted to prevent significant disruption or delay of the litigation.

6.2    **Meet and Confer**.  A Party that elects to initiate a challenge to a Designating Party's confidentiality designation must do so in good faith and must begin the process by conferring directly (in voice to voice dialogue; other forms of communication are not sufficient) with counsel for the Designating Party.  In conferring, the challenging Party must explain the basis for its belief that the confidentiality designation was not proper and must give the Designating Party an opportunity to review the designated material, to reconsider the circumstances, and, if no change in designation is offered, to explain the basis for the chosen designation.  A challenging Party may proceed to the next stage of the challenge process only if it has first engaged in this meet and confer process.

6.3    **Judicial Intervention**.  A Party that elects to press a challenge to a confidentiality designation after considering the justification offered by the Designating Party may file and serve a motion under Civil Local Rule 7 (and in compliance with Civil Local Rule 5.1.3, if applicable) that identifies the challenged material and sets forth in detail the basis for the challenge.  Each such motion must be accompanied by a competent declaration that the movant has complied with the meet and confer requirements imposed in the preceding paragraph and that

sets forth with specificity the justification for the confidentiality designation that was given by the Designating Party in the meet and confer dialogue.

The burden of persuasion in any such challenge proceeding shall be on the Designating Party.  Until the court rules on the challenge, all parties shall continue to afford the material in question the level of protection to which it is entitled under the Producing Party's designation.

7.  **PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER LITIGATION**.  If a Receiving Party is served with a subpoena or a document demand issued in other litigation that would compel disclosure of any information or items designated in this action as **"CONFIDENTIAL"** or **"HIGHLY CONFIDENTIAL,"** the Receiving Party must so notify the Designating Party in writing (by fax, if possible) immediately and in no event more than three court days after receiving the subpoena or demand.  Such notification must include a copy of the subpoena or document demand.

The Receiving Party also must immediately inform in writing the person who caused the subpoena or document demand to issue in the other litigation that some or all the material covered by the subpoena or demand is the subject of this Protective Order.  In addition, the Receiving Party must deliver a copy of this Protective Order promptly to the Party in the other action that caused the subpoena or demand to issue.

The purpose of imposing these duties is to alert the interested parties to the existence of this Protective Order and to afford the Designating Party in this case an opportunity to try to protect its confidentiality interests in the court from which the subpoena or document demand issued.  The Designating Party shall bear the burdens and the expenses of seeking protection in that court of its confidential material - and nothing in these provisions should be construed as authorizing or encouraging a Receiving Party in this action to disobey a lawful directive from another court.

8.  **UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL**.  If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Protected Material to

any person or in any circumstance not authorized under this Protective Order, the Receiving Party must immediately (a) notify in writing the Designating Party of the unauthorized disclosures, (b) use its best efforts to retrieve all copies of the Protected Material, (c) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Order, and (d) request such person or persons to execute the "Acknowledgment and Agreement to Be Bound" that is attached hereto as Exhibit A.

9.      **FILING PROTECTED MATERIAL.**  A Party that seeks to file under seal any Protected Material must comply with Civil Local Rule 5.1.3.  If Protected Material comprises only a portion of the pleading or other document to be filed, the filing party shall simultaneously file and/or serve a redacted version of the pleading or other document, redacting only the Protected Material.

10.     **TERM AND TERMINATION**

10.1    **Duration**.  Even after the termination of this litigation, the confidentiality obligations imposed by this Order shall remain in effect until a Designating Party agrees otherwise in writing or a court order otherwise directs or the underlying material becomes public through no action of the Receiving Party.

10.2    **Final Disposition**.  Unless otherwise ordered or agreed in writing by the Producing Party, within sixty days after the final termination of this action, including exhaustion of all rights to appeal, each Receiving Party must return all Protected Material to the Producing Party.  As used in this subdivision, "all Protected Material" includes all copies, abstracts, compilations, summaries or any other form of reproducing or capturing any of the Protected Material.  With permission in writing from the Designating Party, the Receiving Party may destroy some or all of the Protected Material instead of returning it.  Whether the Protected Material is returned or destroyed, the Receiving Party must submit a written certification to the Producing Party (and, if not the same person or entity, to the Designating Party) by the sixty day deadline that identifies (by category, where appropriate) all the Protected Material that was returned or destroyed and that affirms that the Receiving Party has not retained any copies,

abstracts, compilations, summaries or other forms of reproducing or capturing any of the Protected Material. Notwithstanding this provision, Counsel are entitled to retain an archival copy of all pleadings, motion papers, transcripts, legal memoranda, correspondence or attorney work product, even if such materials contain Protected Material. Any such archival copies that contain or constitute Protected Material remain subject to this Protective Order as set forth in Section 4, above.

11.    **MISCELLANEOUS**

11.1    **Right to Further Relief**. Nothing in this Order limits the right of any person to seek modification of this Order by the Court in the future.

11.2    **Right to Assert Other Objections**. By stipulating to the entry of this Protective Order no Party waives any right it otherwise would have to object to disclosing or producing any information or item on any ground not addressed in this Protective Order. Similarly, no Party waives any right to object on any ground to use in evidence of any of the material covered by this Protective Order. Nothing in this Protective Order shall be construed as a finding that any designated Protected Material actually constitutes or contains proprietary or confidential material or trade secrets. For purposes of this order, **"CONFIDENTIAL"** or **"HIGHLY CONFIDENTIAL"** information shall not include information that (a) has become public knowledge in a manner other than by violation of this Order; (b) is acquired by the Receiving Party from a third party having the right to disclose voluntarily such information or material; (c) was lawfully possessed by the Receiving Party prior to the entry of this Order by the Court; or (d) was lawfully developed by the Receiving Party independent of the information produced under the Protective Order.

11.3    **Inadvertent Production of Privileged Documents.** If a party through inadvertence produces or provides discovery which it believes is subject to a claim of attorney-client privilege or work product immunity, the Producing Party must promptly give written notice to the Receiving Party or parties that the information or material is subject to a claim of attorney-client privilege or work product immunity and request that the information or material

sf-2502928

be returned to the Producing Party. The Receiving Party or parties shall return to the Producing

Party such information or material. Such inadvertent production of privileged material shall not

be deemed a waiver of any asserted privilege or protection. Return of the information or

material by the Receiving Party shall not constitute an admission or concession, or permit any

inference, that the returned information or material is, in fact, properly subject to a claim of

attorney-client privilege or work product immunity nor shall it foreclose any Party from moving

the court for an order that such information or material has been improperly designated or should

be producible for reasons other than a waiver caused by the inadvertent production.

      11.4    **Advice to Clients**. Nothing in this Protective Order shall bar or otherwise

restrict any attorney for the parties from rendering advice to his or her client with respect to this

action. In the course of doing so, said attorney may generally refer to or rely upon his or her

examination of Protected Material, but shall not disclose the specific contents of the Protected

Material to persons not authorized to receive such Protected Material pursuant to this Protective

Order, except by written agreement with counsel for the Designating Party.

      11.5    **Non-Parties**. The terms of this Protective Order are applicable to

Protected Material produced by a non-party, and a party or a non-party may designate material

produced in connection with this litigation as **"CONFIDENTIAL"** or **"HIGHLY**

**CONFIDENTIAL"** information. Such material so designated will be protected by the remedies

and relief provided by the Protective Order.


IT IS SO ORDERED.


Dated:_____    _____
                                   The Honorable Joseph J. Farnan, Jr.
                                   United States District Judge

<u>EXHIBIT A</u>

<u>ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND</u>

I, _____[print or type full name], of _____

[print or type full address], declare under penalty of perjury that I have read in its entirety and

understand the Protective Order that was issued by the United States District Court for the

District of Delaware on [--date--] in the case of *Roche Diagnostics Operations, Inc. et al. v.*

*Abbott Diabetes Care et al.*, 07-cv-00753.  I agree to comply with and to be bound by all the

terms of this Protective Order and I understand and acknowledge that failure to so comply could

expose me to sanctions and punishment in the nature of contempt.  I solemnly promise that I will

not disclose in any manner any information or item that is subject to this Protective Order to any

person or entity except in strict compliance with the provisions of this Order.  Nor will I use any

such information for any business purpose other than assisting with the aforesaid litigation.

I further agree to submit to the jurisdiction of the United States District Court for the

District of Delaware for the purpose of enforcing the terms of this Protective Order, even if such

enforcement proceedings occur after termination of this action.

I hereby appoint _____[print or type full name] of

_____ [print or type full address and telephone number] as my Delaware agent

for service of process in connection with this action or any proceedings related to enforcement of

this Protective Order.


Date:_____

City and State where sworn and signed:_____

Printed name:_____
                [printed name]

Signature:_____
            [signature]


859860


sf-2502928

# EXHIBIT B

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROCHE DIAGNOSTICS OPERATIONS, INC., and CORANGE INTERNATIONAL LIMITED, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 07-753-JJF |
| ABBOTT DIABETES CARE, INCORPORATED, ABBOTT DIABETES CARE SALES CORPORATION, BAYER HEALTHCARE, LLC, DIAGNOSTIC DEVICES, INC., LIFESCAN, INCORPORATED, and NOVA BIOMEDICAL CORPORATION, | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## PROTECTIVE ORDER

Pursuant to Fed. R. Civ. P. 26(c), the Court finds that good cause exists for entry of a protective order to prevent unauthorized disclosure and use of the parties' trade secrets and other confidential information during and after the course of this litigation.  Accordingly, IT IS HEREBY ORDERED as follows:

1. **PURPOSES AND LIMITATIONS**

Disclosure and discovery activity in this action are likely to encompass confidential, proprietary, or private information for which special protection from public disclosure and from use for any purpose outside this litigation would be warranted.  Accordingly, the parties hereby stipulate to and petition the court to enter the following Protective Order.  The parties acknowledge that this Order does not confer blanket protections on all disclosures or responses to discovery and that the protection it affords extends only to the limited information or items that are entitled under the applicable legal principles to treatment as confidential.  The parties

further acknowledge, as set forth in Section 9, below, that this Protective Order creates no entitlement to file confidential information under seal; Civil Local Rule 5.1.3 sets forth the procedures that must be followed and reflects the standards that will be applied when a party seeks permission from the court to file material under seal.

2.　　**DEFINITIONS**

　　2.1　　**Party**:  any party to this action, including all of its officers, directors, employees, consultants, retained experts, and Counsel of Record (and their staff).

　　2.2　　**Disclosure or Discovery Material**:  all items or information, regardless of the medium or manner generated, stored, or maintained (including, among other things, documents, testimony, transcripts, interrogatory answers, responses to requests for admission, pleadings, correspondence, and tangible things) that are produced or generated in disclosures or responses to discovery in this matter.

　　2.3　　**"CONFIDENTIAL" Information or Items**:  non-public Disclosure or Discovery Material (regardless of how generated, stored or maintained) that a party claims in good faith contains or discloses information relating to trade secrets or other confidential research, development, technical or commercial information within the meaning of F.R.Civ.P. 26(c)(1)(G).  This material includes, but is not limited to, non-public experiments, technical documents, laboratory notebooks, ~~financial records (including~~ current pricing ~~and financial information)~~, market information, marketing material (including current marketing plans), and customer, distributor, licensee, supplier, and vendor information.

　　2.4　　**"HIGHLY CONFIDENTIAL" Information or Items**:  extremely sensitive CONFIDENTIAL information or items whose disclosure to another Party or nonparty would create a substantial risk of serious injury that could not be avoided by less restrictive means, including information pertaining to current manufacturing processes, <u>financial records showing revenues, profits, and</u> ~~current~~ costs of goods ~~procurement~~, and research and development of future products (including, but not limited to, unfiled patent applications).

sf-2502928

2.5    <u>**Receiving Party**</u>:  a Party that receives Disclosure or Discovery Material from a Producing Party.

2.6    <u>**Producing Party**</u>:  a Party or non-party that produces Disclosure or Discovery Material in this action.

2.7    <u>**Designating Party**</u>:  a Party or non-party that designates information or items that it produces in disclosures or in responses to discovery as **"CONFIDENTIAL"** or **"HIGHLY CONFIDENTIAL."**

2.8    <u>**Protected Material**</u>:  any Disclosure or Discovery Material that is designated as **"CONFIDENTIAL"** or as **"HIGHLY CONFIDENTIAL\."**

2.9    <u>**Counsel of Record**</u>:  outside attorneys who have filed appearances with and been admitted by the Court on behalf of any Party in this action.

2.10    <u>**Other Counsel**</u>:  outside attorneys who have been retained in any capacity by any Party in this action but have not filed an appearance.

2.11    <u>**Counsel**</u> (without qualifier):  Counsel of Record and Other Counsel (as well as their staffs).

2.12    <u>**Expert**</u>:  a person with specialized knowledge or experience in a matter pertinent to the litigation who has been retained by a Party or its counsel to serve as an expert witness or as a consultant in this action, and who is not a past or a current employee of a Party or of a competitor of a Party and who, at the time of retention, is not anticipated to become an employee of a Party or a competitor of a Party.  This definition includes a professional jury or trial consultant retained in connection with this litigation.

2.13    <u>**Professional Vendors**</u>:  persons or entities that provide litigation support services (e.g., photocopying; videotaping; translating; preparing exhibits or demonstrations; organizing, storing, retrieving data in any form or medium; etc.) and their employees and subcontractors.

3.    <u>**SCOPE**</u>  The protections conferred by this Stipulation and Order cover not only Protected Material (as defined above), but also any information copied or extracted therefrom, as

sf-2502928

well as all copies, excerpts, summaries, or compilations thereof, plus testimony, conversations, or presentations by parties or counsel that includes Protected Material.  Counsel will work together to discuss how to handle confidential information to be presented at hearings or at trial.

      4.     **ACCESS TO AND USE OF PROTECTED MATERIAL**

      4.1     **Basic Principles**.  A Receiving Party may use Protected Material that has been designated in accordance with Section 5 below and has been disclosed or produced by another Party or by a non-party in connection with this case only for prosecuting, defending, or attempting to settle this litigation.  Such Protected Material may be disclosed only to the categories of persons and under the conditions described in this Order.  When the litigation has been terminated, a Receiving Party must comply with the provisions of section 10.2, below (FINAL DISPOSITION).

      Protected Material must be stored and maintained by a Receiving Party at a location and in a secure manner that ensures that access is limited to the persons authorized under this Order.

      4.2     **Disclosure and Use of "CONFIDENTIAL" Information or Items**.  Unless otherwise ordered by the court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated **"CONFIDENTIAL"** only to:

      (a) The Receiving Party's Counsel of Record in this action, as well as employees of said Counsel of Record to whom it is reasonably necessary to disclose the information for this litigation.

      (b) Up to three (3) in-house attorneys or Other Counsel identified below (and clerical staff assisting said in-house attorneys or Other Counsel) of the Receiving Party who (1) have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A) and (2) have submitted a sworn declaration to the Producing Party that he or she does not have a competitive decision-making role for the Receiving Party prior to receiving any CONFIDENTIAL information of the Producing Party, and agrees to maintain all confidential information produced in this action on their personal hard drives or in

password-protected files. Competitive decision-making" for purposes of this Protective Order shall include "advice, participation, or role in the client's decisions about pricing, marketing, product design, <u>patent prosecution, or</u> scientific research made in light of similar or corresponding information about a competitor in blood glucose products." Identified In-House Counsel or Other Counsel:

(1) For Roche: ~~Nancy Tinsley~~

(2) For Abbott: Jose Rivera, Eric Martin, and Jennifer Oosertbaan,

(3) For Bayer: _____, _____, _____,

(4) For Diagnostics Devices: _____, _____, _____,

(5) For LifeScan: _____, _____, _____,

(6) For Nova: _____, _____, _____

(c) Experts (as defined in this Order) of the Receiving Party (1) to whom disclosure is reasonably necessary for this litigation, (2) who have signed the "Acknowledgement and Agreement to Be Bound" (Exhibit A), and (3) as to whom the procedures set forth in Section 4.5, below, have been followed.

(d) The Court, Court Reporters, and their respective staffs and personnel.

(e) Professional Vendors to whom disclosure is reasonably necessary for this litigation.

(f) During their depositions, witnesses (1) who are the author or prior listed recipients of the **CONFIDENTIAL** document, (2) the original source of the information, or (3) current employees of the Designating Party. Notwithstanding the foregoing, the questioning attorney may show the **CONFIDENTIAL** document to a former employee of the Designating Party who is not employed by a competitor at the time of deposition, solely to ask the witness preliminary questions to determine authorship, receipt or access to the **CONFIDENTIAL** document.

4.3 **<u>Disclosure and Use of "HIGHLY CONFIDENTIAL" Information or Items</u>**. Unless otherwise ordered by the court or permitted in writing by the Designating Party, a

Receiving Party may disclose any information or item designated **"HIGHLY CONFIDENTIAL"** only to:

(a) The Receiving Party's Counsel of Record in this action, as well as employees of said Counsel of Record to whom it is reasonably necessary to disclose the information for this litigation.

(b) Any of the three (3) in-house attorneys from each Receiving Party set forth in Section in Section 4.2(b) above who have complied with the requirements of 4.2(b) prior to receiving any HIGHLY CONFIDENTIAL information of the Producing Party.

(bc) Experts (as defined in this Order) of the Receiving Party (1) to whom disclosure is reasonably necessary for this litigation, (2) who have signed the "Acknowledgement and Agreement to Be Bound" (Exhibit A), and (3) as to whom the procedures set forth in Section 4.5, below, have been followed.

(cd) The Court, Court Reporters, and their respective staffs and personnel.

(de) Professional Vendors to whom disclosure is reasonably necessary for this litigation.

(ef) During their depositions, witnesses (1) who are the author or prior listed recipients of the **HIGHLY CONFIDENTIAL** document, (2) the original source of the information, or (3) current employees of the Designating Party. Notwithstanding the foregoing, the questioning attorney may show the **HIGHLY CONFIDENTIAL** document to a former employee of the Designating Party who is not employed by a competitor at the time of deposition, solely to ask the witness preliminary questions to determine authorship, receipt or access to the **HIGHLY CONFIDENTIAL** document.

4.4    **Procedures for Objecting to Individuals Designated Under Paragraph, 4.2(b).** Parties may object in writing to individuals designated under paragraph 4.2(b) within ten (10) days of service of the declaration. The designating party shall not disclose **CONFIDENTIAL** information to a designated individual until ten (10) days have elapsed

following service of the declaration. If an objection to a designated individual is received, the designating party shall not disclose **CONFIDENTIAL** information to that individual until the objection is resolved by agreement of the parties or by the Court.

    4.5    **Procedures for Approving Disclosure of "CONFIDENTIAL" and "HIGHLY CONFIDENTIAL" Information or Items to "Experts"**

    (a) Unless otherwise ordered by the court or agreed in writing by the Designating Party, a Party that seeks to disclose to an "Expert" (as defined in this Order) any information or item that has been designated **"CONFIDENTIAL"** or **"HIGHLY CONFIDENTIAL"** first must make a written request to the Designating Party that (1) sets forth the full name of the Expert and the city and state of his or her primary residence, (2) attaches a copy of the Expert's current resume, (3) identifies the Expert's current employer(s), (4) identifies each person or entity from whom the Expert has received compensation for work in his or her areas of expertise or to whom the expert has provided professional services at any time during the preceding four years, and (5) identifies (by name and number of the case, filing date, and location of court) any litigation in connection with which the Expert has provided any professional services during the preceding four years.

    (b) A Party that makes a request and provides the information specified in the preceding Section may disclose the subject Protected Material to the identified Expert unless, within seven calendar days of delivering the request, the Party receives a written objection from the Designating Party. Any such objection must set forth in detail the grounds on which it is based.

    (c) A Party that receives a timely written objection must meet and confer with the Designating Party (through direct voice to voice dialogue) to try to resolve the matter by agreement. If no agreement is reached, the Party seeking to make the disclosure to the Expert may file a motion as provided in Civil Local Rule 7 (and in compliance with Civil Local Rule 5.1.3, if applicable) seeking permission from the court

to do so. Any such motion must describe the circumstances with specificity, set forth in detail the reasons for which the disclosure to the Expert is reasonably necessary, assess the risk of harsh that the disclosure would entail and suggest any additional means that might be used to reduce that risk. In addition, any such motion must be accompanied by a competent declaration in which the movant describes the parties' efforts to resolve the matter by agreement (i.e., the extent and the content of the meet and confer discussions) and sets forth the reasons advanced by the Designating Party for its refusal to approve the disclosure. In any such proceeding the Party opposing disclosure to the Expert shall bear the burden of proving that the risk of harm that the disclosure would entail (under the safeguards proposed) outweighs the Receiving Party's need to disclose the Protected Material to its Expert.

5.    **DESIGNATING PROTECTED MATERIAL**

5.1    **Exercise of Restraint and Care By The Designating Party**. Each Party or non-party that designates information or items for protection under this Order must take care to limit any such designation to specific material that qualifies under the appropriate standards. A Designating Party must take care to designate for protection only those parts of material, documents, items, or oral or written communications that qualify - so that other portions of the material, documents, items, or communications for which protection is not warranted are not swept unjustifiably within the ambit of this Order.

Mass, indiscriminate, or routine designations are prohibited. Designations that are shown to be clearly unjustified, or that have been made for an improper purpose (e.g., to unnecessarily encumber or retard the case development process, or to impose unnecessary expenses and burdens on other parties), expose the Designating Party to sanctions.

If it comes to a Party's or a non-party's attention that information or items that it designated for protection do not qualify for protection at all, or do not qualify for the level of protection initially asserted, that Party or non-party must promptly notify all other parties that it is withdrawing the mistaken designation.

sf-2502928

     5.2    **Manner and Timing of Designations**. Except as otherwise provided in this Order (see, e.g., second paragraph of section 5.2(a), below), or as otherwise stipulated or ordered, material that qualifies for protection under this Order must be clearly so designated before the material is disclosed or produced. Designation in conformity with this Order requires:

     (a) **for information in documentary form** (apart from transcripts of depositions or other pretrial or trial proceedings), that the Producing Party affix the legend **"CONFIDENTIAL"** or **"HIGHLY CONFIDENTIAL"** on each page that contains protected material. If only a portion or portions of the material on a page qualifies for protection, the Producing Party also must clearly identify the protected portion(s) (e.g., by making appropriate markings in the margins) and must specify, for each portion, the level of protection being asserted (either **"CONFIDENTIAL"** or **"HIGHLY CONFIDENTIAL"**). A Party or non-party that makes original documents or materials available for inspection need not designate them for protection until after the inspecting Party has indicated which material it would like copied and produced. During the inspection and before the designation, all of the material made available for inspection shall be deemed **"HIGHLY CONFIDENTIAL."** After the inspecting Party has identified the documents it wants copied and produced, the Producing Party must determine which documents, or portions thereof, qualify for protection under this Order, and then, before producing the specified documents, the Producing Party must affix the appropriate legend (**"CONFIDENTIAL"** or **"HIGHLY CONFIDENTIAL"**) on each page that contains Protected Material. If only a portion or portions of the material on a page qualifies for protection, the Producing Party also must clearly identify the protected portion(s) (e.g., by making appropriate markings in the margins) and must specify, for each portion, the level of protection being asserted (either **"CONFIDENTIAL"** or **"HIGHLY CONFIDENTIAL"**).

     (b) **for testimony given in deposition or in other pretrial or trial proceedings**, that the Party or non-party offering or sponsoring the testimony identify on

the record, before the close of the deposition, hearing, or other proceeding, all protected testimony, and further specify any portions of the testimony that qualify as either **"CONFIDENTIAL"** or **"HIGHLY CONFIDENTIAL"** Furthermore, any party may, at any point in time up to and including 20 days after receipt of a deposition transcript, designate the entire transcript or portions thereof under the appropriate level of protection under this Protective Order.

Transcript pages containing Protected Material should be identified with the legend **"CONFIDENTIAL"** or **"HIGHLY CONFIDENTIAL,"** as instructed by the Party or nonparty offering or sponsoring the witness or presenting the testimony.

(c) **for information produced in some form other than documentary, and for any other tangible items**, that the Producing Party must take reasonable steps to provide notice prominently with respect to such information; for example, by affixing in a prominent place on the exterior of the container or containers in which the information or item is stored the legend **"CONFIDENTIAL"** or **"HIGHLY CONFIDENTIAL."** If only portions of the information or item warrant protection, the Producing Party, to the extent practicable, shall identify the protected portions, specifying whether they qualify as **"CONFIDENTIAL"** or as **"HIGHLY CONFIDENTIAL."**

5.3    **Inadvertent Failures to Designate**. If timely corrected, an inadvertent failure to designate qualified information or items as **"CONFIDENTIAL"** or as **"HIGHLY CONFIDENTIAL"** does not, standing alone, waive the Designating Party's right to secure protection under this Order for such material. If material is appropriately designated as **"CONFIDENTIAL"** or as **"HIGHLY CONFIDENTIAL"** after the material was initially produced, the Receiving Party, on timely notification of the designation, must make reasonable efforts to assure that the material is treated in accordance with the provisions of this Order.

5.4    **Limits on Confidential Information**. Information is not Protected Material under this Protective Order which (a) is shown by contemporaneous documentation of the Receiving Party to have been in its possession prior to receipt from the Producing Party; or

sf-2502928

(b) becomes, through no fault of the Receiving Party, publicly known; or (c) is furnished to the Receiving Party by a third party without breach of a duty to the Producing Party; or (d) is independently developed by the Receiving Party without access to the Protected Information.

6.    **CHALLENGING CONFIDENTIALITY DESIGNATIONS**

6.1    **Timing of Challenges**.  A challenge to a Designating Party's confidentiality designation should normally be raised promptly after the Receiving Party becomes aware that it disagrees with the Designating Party's confidentiality designation. However, a Party that elects not to mount a challenge promptly after the original designation is disclosed does not thereby waive its right to later challenge a confidentiality designation if the Court determines that circumstances taken as a whole preserve substantial fairness, avoid unnecessary economic burdens, and is warranted to prevent significant disruption or delay of the litigation.

6.2    **Meet and Confer**.  A Party that elects to initiate a challenge to a Designating Party's confidentiality designation must do so in good faith and must begin the process by conferring directly (in voice to voice dialogue; other forms of communication are not sufficient) with counsel for the Designating Party.  In conferring, the challenging Party must explain the basis for its belief that the confidentiality designation was not proper and must give the Designating Party an opportunity to review the designated material, to reconsider the circumstances, and, if no change in designation is offered, to explain the basis for the chosen designation.  A challenging Party may proceed to the next stage of the challenge process only if it has first engaged in this meet and confer process.

6.3    **Judicial Intervention**.  A Party that elects to press a challenge to a confidentiality designation after considering the justification offered by the Designating Party may file and serve a motion under Civil Local Rule 7 (and in compliance with Civil Local Rule 5.1.3, if applicable) that identifies the challenged material and sets forth in detail the basis for the challenge.  Each such motion must be accompanied by a competent declaration that the movant has complied with the meet and confer requirements imposed in the preceding paragraph and that

sets forth with specificity the justification for the confidentiality designation that was given by the Designating Party in the meet and confer dialogue.

The burden of persuasion in any such challenge proceeding shall be on the Designating Party. Until the court rules on the challenge, all parties shall continue to afford the material in question the level of protection to which it is entitled under the Producing Party's designation.

7.    **PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER LITIGATION**. If a Receiving Party is served with a subpoena or a document demand issued in other litigation that would compel disclosure of any information or items designated in this action as **"CONFIDENTIAL"** or **"HIGHLY CONFIDENTIAL,"** the Receiving Party must so notify the Designating Party in writing (by fax, if possible) immediately and in no event more than three court days after receiving the subpoena or demand. Such notification must include a copy of the subpoena or document demand.

The Receiving Party also must immediately inform in writing the person who caused the subpoena or document demand to issue in the other litigation that some or all the material covered by the subpoena or demand is the subject of this Protective Order. In addition, the Receiving Party must deliver a copy of this Protective Order promptly to the Party in the other action that caused the subpoena or demand to issue.

The purpose of imposing these duties is to alert the interested parties to the existence of this Protective Order and to afford the Designating Party in this case an opportunity to try to protect its confidentiality interests in the court from which the subpoena or document demand issued. The Designating Party shall bear the burdens and the expenses of seeking protection in that court of its confidential material - and nothing in these provisions should be construed as authorizing or encouraging a Receiving Party in this action to disobey a lawful directive from another court.

8.    **UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL**. If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Protected Material to

any person or in any circumstance not authorized under this Protective Order, the Receiving Party must immediately (a) notify in writing the Designating Party of the unauthorized disclosures, (b) use its best efforts to retrieve all copies of the Protected Material, (c) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Order, and (d) request such person or persons to execute the "Acknowledgment and Agreement to Be Bound" that is attached hereto as Exhibit A.

9.     **FILING PROTECTED MATERIAL**.  A Party that seeks to file under seal any Protected Material must comply with Civil Local Rule 5.1.3.  If Protected Material comprises only a portion of the pleading or other document to be filed, the filing party shall simultaneously file and/or serve a redacted version of the pleading or other document, redacting only the Protected Material.

10.    **TERM AND TERMINATION**

10.1   **Duration**.  Even after the termination of this litigation, the confidentiality obligations imposed by this Order shall remain in effect until a Designating Party agrees otherwise in writing or a court order otherwise directs or the underlying material becomes public through no action of the Receiving Party.

10.2   **Final Disposition**.  Unless otherwise ordered or agreed in writing by the Producing Party, within sixty days after the final termination of this action, including exhaustion of all rights to appeal, each Receiving Party must return all Protected Material to the Producing Party.  As used in this subdivision, "all Protected Material" includes all copies, abstracts, compilations, summaries or any other form of reproducing or capturing any of the Protected Material.  With permission in writing from the Designating Party, the Receiving Party may destroy some or all of the Protected Material instead of returning it.  Whether the Protected Material is returned or destroyed, the Receiving Party must submit a written certification to the Producing Party (and, if not the same person or entity, to the Designating Party) by the sixty day deadline that identifies (by category, where appropriate) all the Protected Material that was returned or destroyed and that affirms that the Receiving Party has not retained any copies,

sf-2502928

abstracts, compilations, summaries or other forms of reproducing or capturing any of the Protected Material. Notwithstanding this provision, Counsel are entitled to retain an archival copy of all pleadings, motion papers, transcripts, legal memoranda, correspondence or attorney work product, even if such materials contain Protected Material. Any such archival copies that contain or constitute Protected Material remain subject to this Protective Order as set forth in Section 4, above.

11. **MISCELLANEOUS**

11.1 **Right to Further Relief.** Nothing in this Order limits the right of any person to seek modification of this Order by the Court in the future.

11.2 **Right to Assert Other Objections.** By stipulating to the entry of this Protective Order no Party waives any right it otherwise would have to object to disclosing or producing any information or item on any ground not addressed in this Protective Order. Similarly, no Party waives any right to object on any ground to use in evidence of any of the material covered by this Protective Order. Nothing in this Protective Order shall be construed as a finding that any designated Protected Material actually constitutes or contains proprietary or confidential material or trade secrets. For purposes of this order, **"CONFIDENTIAL"** or **"HIGHLY CONFIDENTIAL"** information shall not include information that (a) has become public knowledge in a manner other than by violation of this Order; (b) is acquired by the Receiving Party from a third party having the right to disclose voluntarily such information or material; (c) was lawfully possessed by the Receiving Party prior to the entry of this Order by the Court; or (d) was lawfully developed by the Receiving Party independent of the information produced under the Protective Order.

11.3 **Inadvertent Production of Privileged Documents.** If a party through inadvertence produces or provides discovery which it believes is subject to a claim of attorney-client privilege or work product immunity, the Producing Party must promptly give written notice to the Receiving Party or parties that the information or material is subject to a claim of attorney-client privilege or work product immunity and request that the information or material

be returned to the Producing Party. The Receiving Party or parties shall return to the Producing Party such information or material. Such inadvertent production of privileged material shall not be deemed a waiver of any asserted privilege or protection. Return of the information or material by the Receiving Party shall not constitute an admission or concession, or permit any inference, that the returned information or material is, in fact, properly subject to a claim of attorney-client privilege or work product immunity nor shall it foreclose any Party from moving the court for an order that such information or material has been improperly designated or should be producible for reasons other than a waiver caused by the inadvertent production.

      11.4    **Advice to Clients**. Nothing in this Protective Order shall bar or otherwise restrict any attorney for the parties from rendering advice to his or her client with respect to this action. In the course of doing so, said attorney may generally refer to or rely upon his or her examination of Protected Material, but shall not disclose the specific contents of the Protected Material to persons not authorized to receive such Protected Material pursuant to this Protective Order, except by written agreement with counsel for the Designating Party.

      11.5    **Non-Parties**. The terms of this Protective Order are applicable to Protected Material produced by a non-party, and a party or a non-party may designate material produced in connection with this litigation as **"CONFIDENTIAL"** or **"HIGHLY CONFIDENTIAL"** information. Such material so designated will be protected by the remedies and relief provided by the Protective Order.

IT IS SO ORDERED.

Dated:_____    _____
                                    The Honorable Joseph J. Farnan, Jr.
                                    United States District Judge

<u>EXHIBIT A</u>

<u>ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND</u>

I, _____[print or type full name], of _____ [print or type full address], declare under penalty of perjury that I have read in its entirety and understand the Protective Order that was issued by the United States District Court for the District of Delaware on [--date--] in the case of *Roche Diagnostics Operations, Inc. et al. v. Abbott Diabetes Care et al.*, 07-cv-00753. I agree to comply with and to be bound by all the terms of this Protective Order and I understand and acknowledge that failure to so comply could expose me to sanctions and punishment in the nature of contempt. I solemnly promise that I will not disclose in any manner any information or item that is subject to this Protective Order to any person or entity except in strict compliance with the provisions of this Order. Nor will I use any such information for any business purpose other than assisting with the aforesaid litigation.

I further agree to submit to the jurisdiction of the United States District Court for the District of Delaware for the purpose of enforcing the terms of this Protective Order, even if such enforcement proceedings occur after termination of this action.

I hereby appoint _____[print or type full name] of _____ [print or type full address and telephone number] as my Delaware agent for service of process in connection with this action or any proceedings related to enforcement of this Protective Order.

Date:_____

City and State where sworn and signed:_____

Printed name:_____
      [printed name]

Signature:_____
    [signature]

859860

sf-2502928