## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| ROCHE DIAGNOSTICS OPERATIONS, INC., and CORANGE INTERNATIONAL LTD., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 07-753-JJF |
| ABBOTT DIABETES CARE, INC., ABBOTT DIABETES CARE SALES CORP., BAYER HEALTHCARE, LLC, DIAGNOSTIC DEVICES, INC., LIFESCAN, INC., and NOVA BIOMEDICAL CORP., | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

### REPLY BRIEF IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL

OF COUNSEL:

Daniel A. Boehnen
Grantland G. Drutchas
McDonnell Boehnen Hulbert & Berghoff LLP
300 South Wacker Drive
Chicago, IL 60606
(312) 913-0001

Dated: May 2, 2008

Philip A. Rovner (#3215)
POTTER ANDERSON & CORROON LLP
Hercules Plaza
P.O. Box 951
Wilmington, DE 19899-0951
(302) 984-6000
provner@potteranderson.com

*Attorney for Plaintiffs*
*Roche Diagnostics Operations, Inc. and*
*Corange International Limited*

## I.     INTRODUCTION

By arguing that Roche's discovery requests relate to issues of Phase II (or later), Defendants wrongly attempt to use this Court's bifurcation order to avoid their Phase I discovery obligations. As demonstrated below in this combined reply to Defendants' Oppositions, the discovery Roche seeks relates directly to Phase I issues in this case and Defendants should be ordered to promptly provide the necessary discovery.

The claims in suit are method claims that are practiced by the end-users of Defendants' products. In addition to direct infringement by the Defendants themselves, the primary acts of infringement at issue are inducement of infringement by customers, contributory infringement to the customer's infringement, and exportation of products that are especially adapted for use in the infringing method (§§ 271 (b), (c), and (f), respectively).

For inducement and contributory infringement, Roche needs to prove an act of direct infringement as a foundational element. Such proof necessarily requires discovery regarding the Defendants' customers/end-users. Roche also needs to address how the products are sold to customers/end-users (inducement or sale of a non-staple article of commerce), which requires discovery of the Defendants' sales and marketing materials and personnel, i.e., the departments and individuals responsible for preparing the product literature, packaging, brochures, etc. that go to customers/end-users and function as the primary contact points with these direct infringers.

For inducement, Roche also needs to show that the Defendants made sales with knowledge of the patents in suit. Thus, Roche seeks Defendants' documents that show when Defendants first became aware of the patents in suit. Such documents (including but not limited to Defendants' copies of the applications themselves and opinions regarding the subject matter of these patents) will show that Defendants were monitoring the Roche applications and were aware of the issuance of the patents in suit. Likewise, documents relating to Defendants' decision to

introduce the products are relevant to determine whether such decision was made with knowledge of issuance of the patents in suit.

Furthermore, as several of the Defendants have now acknowledged, documents relating to licensing and development agreements for the accused products will help identify potential additional infringers, as well as provide information about the structure, function and operation of the accused products themselves.

In short, despite Defendants' efforts to re-characterize the requested documents as relating to Phase II issues, damages or willfulness, the requested documents clearly relate to Phase I issues as well. Accordingly, Roche requests that this Court grant the present motion and enter the proposed Order previously submitted as Exhibit A.

## II.    ARGUMENT

### 1.    The Answering Defendants Should Be Immediately Compelled To Provide Documents That Are Responsive To Requests Served January 23, 2008

The Phase I document discovery cut-off of June 27, 2008 does not mean that the Defendants have a unilateral right to extend their responses to Roche's document requests or to delay producing relevant documents until the end of the document discovery deadline, which has essentially been their position. Allowing Defendants to postpone the substantial completion of their production until the cut-off date would prevent Roche from having sufficient time to adequately review Defendants' document productions for missing documents, and will not give Roche any time to work through the anticipated problems before the cut-off. Bayer states that it and the other defendants will cooperate, but its actions say otherwise. Indeed, it wasn't until Roche filed this motion to compel that Bayer would even agree to produce several clearly relevant categories of documents. Similarly, when this motion was filed, LifeScan had not produced a single document and would not commit to a start-date for doing so.

Defendants complain that document discovery in this case is arduous, thereby requiring the full amount of time until the cut-off date. But these discovery requests were served in January 2008. Besides the fact that the Defendants have had several months to search for, review, and produce relevant documents, many of the categories of requested documents ask for items that are relatively easy to identify, collect, and copy, such as 510(k) submissions, product literature, and agreements.

Defendants' use of the discovery cut-off to delay their production of relevant documents is manifestly unfair to Roche. Whereas Roche served its document requests several months ago, Defendants just recently served their document requests in the last couple of weeks. As a result, Defendants position implicitly argues that they should get 5 months to produce their documents, while Roche is entitled to only 2 months to complete its production.[1]

Accordingly, the Court should compel the Defendants to substantially complete their document production within one week of entry of the Order on this motion.

### 2. The Answering Defendants Should Be Compelled to Produce Licenses And Other Agreements That Relate to The Accused Products

The Defendants' licenses and other agreements on the accused products are relevant to Phase I issues in this case. For example, LifeScan's answer to Interrogatory No. 2 indicates that other companies – Inverness Medical Ltd. and LifeScan Scotland, Inc. – were involved in developing the accused LifeScan products. Similarly, Abbott and another company, Smiths Medical, apparently have agreements to distribute Abbott's infringing FreeStyle Navigator product and to use Abbott's infringing FreeStyle product in another blood glucose monitor known as "CoZmonitor." (Exhibit U). Thus, agreements with these companies are likely to lead

---

[1] Nova's suggestion that Roche withheld or delayed discovery (Nova Brief, p. 10 n.5) is flat wrong. Roche began producing documents (almost 28,000 pages in number) on the same day that Roche provided its written responses to Nova's document requests. Thus, Roche, in contrast to Nova, has complied fully with the Federal Rules and has gone beyond custom and practice.

to the discovery of admissible evidence regarding the companies' involvement, in addition to the possibility that the agreement may contain technical information (a possibility that LifeScan admits).

As confirmation of the relevance of these types of documents, both Bayer and Nova have now agreed (albeit only after Roche filed this motion) to produce these requested agreements. The Court should make clear to all of the Defendants that such documents must be produced.

### 3. Bayer Should Be Compelled to Produce Discovery On Affirmative Defenses To Infringement Such As Laches, Waiver, Estoppel And Unclean Hands

After Roche filed this motion, Bayer finally agreed to produce the information relating to its affirmative defenses as noted above. Assuming Bayer follows through on its representation to this Court, that issue can be deemed "resolved."

### 4. Bayer Should be Compelled to Produce Documents on Accused Products Supplied from The U.S. and Sold Abroad For Use In Patented Methods

As an initial matter, Bayer is incorrect in asserting that 35 U.S.C. § 271(f) does not apply to method claims. The Federal Circuit has expressly ruled to the contrary, holding that 35 U.S.C. § 271(f) does apply to method claims. *Union Carbide Chemicals & Plastics Technology Corp. v. Shell Oil Co.*, 425 F.3d 1366 (Fed. Cir. 2005).

In *Union Carbide*, the district court had ruled that 35 U.S.C. § 271(f) was not directed to process (i.e. method) claims. *Id.* at 1378. On appeal, the Federal Circuit reversed. In doing so, the Federal Circuit: (i) squarely addressed "the meaning of the phrase 'any component of a patented invention' in the statute," (ii) posed the question "does this phrase apply to components used in the performance of patented process/method inventions?" and (iii) answered ***in the affirmative.*** *Id.* at 1378-79 (noting that *Eolas Techs. v. Microsoft Corp.*, 399 F.3d 1325, 1339 (Fed. Cir. 2005) "recently answered this question in the affirmative, holding that every component of every form of invention deserves the protection of 35 U.S.C. § 271(f); *i.e.*, that

'components' and 'patented inventions' under § 271(f) are not limited to physical machines."). In other words, the Federal Circuit has held that § 271(f) applies equally to patentable method and process inventions as well as apparatus patents. *Id.* Accordingly, Bayer's argument to the contrary is wholly without merit.

Bayer's attempts to factually distinguish *Union Carbide* from the present case are misguided at best. In *Union Carbide*, the patent covered a method for making ethylene oxide. *Union Carbide*, 425 F.3d at 1370. The defendant Shell exported a catalyst that was used in a complex chemical process for making ethylene oxide. *Id.* at 1379. Other components used in the patented method (including a fixed reactor bed, a tubular reactor, carbon dioxide, and organic chloride) were sourced elsewhere and where used by third parties in the patented method. *Id.* Similarly in the present case, Bayer exports sensor strips (which have no substantial non-infringing use) that are used by third parties (end-users) with other components (*i.e.,* Bayer meters allegedly sourced elsewhere and a blood sample). Thus, Bayer's actions fall squarely within *Union Carbide* for infringing the claimed methods.

Bayer relies upon *NTP, Inc. v. Research In Motion. Ltd.*, 418 F.3d 1282 (Fed. Cir. 2005), but the Federal Circuit in *Union Carbide* specifically distinguished the unique facts of *NTP*. The defendant in that case (RIM) sold the product (*i.e.*, a Blackberry cell phone and email device) in the U.S., and the customer transported the product outside the U.S. in the normal course of travel. *Id.* at 1289-90, 1321-22. The defendant did not export the product from the U.S. as required under the statute, and as such was outside the purview of § 271(f). *Id.* at 1322-23; *see also Union Carbide*, 426 F.3d at 1380 ("Under the facts of *NTP*, this court declined to apply § 271(f) when RIM itself did not supply any component to a foreign affiliate.") As noted by the Federal Circuit in *Union Carbide*, "*NTP* is different from this case because Shell supplies

5

catalysts from the United States directly to foreign customers." *Union Carbide*, 425 F.3d at 1380. Like Shell, Bayer clearly exports components of the patented invention from the U.S. itself.

A review of Bayer's statements and declarations reveal that each of the three identified Bayer products fall within the scope of 35 U.S.C. § 271(f), and Bayer should be required to provide discovery thereon. According to Bayer, the Contour meters and strips are made elsewhere and shipped into the United States before being exported to other countries. Darren Brown Decl., ¶ 2. Thus, Bayer's exportation of Contour meters and strips from the United States to the other countries falls squarely within the ambit of 35 U.S.C. § 271(f).

With respect to Bayer's Contour TS meters and strips, the case is even more compelling. These items are made elsewhere and shipped into the United States for final packaging and global distribution. Darren Brown Decl., ¶ 3. Thus, Bayer's exportation of finished Contour TS meters and strips also falls squarely within the ambit of 35 U.S.C. § 271(f).

Finally, 35 U.S.C. § 271(f) also applies with regard to Bayer's Breeze2 product. Bayer admits on page 9 of its brief that the Breeze2 strips are packaged in and distributed from the United States. See also, pages 10-11 of Bayer Brief. Thus, the apparent worldwide exportation of the Breeze2 test strips for use in an infringing manner also falls squarely within the ambit of 35 U.S.C. § 271(f), and Bayer should be compelled to provide discovery on all of these products.

### 5. Defendants Should Be Compelled to Produce Documents and Log Opinions Regarding Their Knowledge Of The Patents And Applications At Issue

This issue relates directly to pre-filing infringement and Defendants' knowledge of the patents in suit (which issued October 2, 2007) and the underlying patent applications (which were published beginning as early as August 21, 2003).

As noted above in relation to inducement, Roche must show "that the alleged infringer's actions induced infringing acts and that he knew or should have known his actions would induce

actual infringements." *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1304 (Fed. Cir. 2006). As such, proof of knowledge of the patents and/or patent applications – whether direct or inferential – is clearly relevant.

Roche does not assert that knowledge of the underlying patent applications alone is sufficient to support a claim for inducement. But these patent applications were published starting in 2003. Roche believes that the Defendants were closely monitoring the patent applications and issuance of the patents in suit. Thus, such information is relevant to establish that the Defendants had notice and knowledge of the patents before suit was filed. As such, knowledge of (and monitoring of) the applications provides a strong inference that the Defendants had the requisite knowledge of the issued patents from shortly after they issued.

Since knowledge of the patents in suit is a prerequisite for Roche's infringement by inducement claim, documents related to knowledge of the patents and/or patent applications are clearly relevant to Phase I and should be produced during this phase. *At a minimum, Roche is entitled to have log of any such documents that may be withheld on grounds of privilege.*

Furthermore, as to Nova – who accuses Roche of misappropriating Nova's trade secrets – its knowledge of Roche patent publications is relevant to whether Nova's trade secret counterclaims are barred by Title 6, § 2006 of the Delaware Code. This section of Delaware law provides a three (3) year statute of limitations for Nova's trade secret counterclaims. If Nova knew of Roche's published patent applications more than three years ago, and Nova's alleged trade secrets are described in Roche's published patent applications, then Nova's counterclaims are barred by the statute of limitations.

### 6. The Answering Defendants Should Be Compelled to Produce Documents Relating To The Defendants' Decision To Introduce The Accused Products

Along with knowledge of the patents, the Defendants' decisions to introduce the accused products may show that the Defendants acted with the requisite knowledge of the patents-in-suit, and clearly relate to the "actions" and "knowledge" elements of inducement.

Several of the accused products were introduced after issuance and knowledge of the patents in suit. For example, LifeScan has just recently introduced the infringing UltraLink meter, months after the lawsuit was filed. Similarly, Abbott just recently introduced the infringing FreeStyle Freedom Lite meter. Thus, documents related to the decision to introduce these products in the face of the patents in suit is clearly relevant to the issue of inducement.[2]

### 7. The Answering Defendants Should Be Compelled to Produce All Responsive Documents, Not Just Representative Documents

Defendants argue that they are entitled to pick and choose among relevant documents to provide "representative documents" or documents "sufficient to show" requested (and admittedly relevant) information. Absent some compelling situation (which Defendants have not suggested), Roche disagrees. It is Roche's prerogative to determine what documents contain the best admissions regarding the operation of the accused products, and what documents will be most effective before a jury at trial. Not all documents are created equal, and Defendants do not get to select the documents that will form Roche's case.

LifeScan's statement that Roche can come back and ask for further documents in specific categories once it reviews LifeScan's production is unavailing. How can Roche know whether non-produced documents contain better admissions unless Roche sees the other non-produced documents? Moreover, LifeScan began producing documents only a few days ago, more than 3

---

[2] To the extent that decisions to introduce accused products were made before the patents in suit issued, Roche is still entitled to documents confirming that fact, and should not be required to simply rely on the Defendants' unsupported representations.

months after Roche served its document requests. And none of the Defendants have agreed to a date earlier than the document production cut-off date for completing their initial production. Defendants' dilatory conduct in producing relevant documents makes it impossible to review a selective production and timely request the production of additional documents. Such an initial filtering by Defendants would only serve to deny Roche access to relevant information and frustrate Roche's discovery.

Finally, Defendants' position on this issue is undermined by their own discovery requests. For example, the Defendants' interrogatories seek *__all__* facts concerning infringement, including the identities of *__all__* direct infringers. (*See, e.g.*, Exhibit V) (emphasis added).

### 8. Nova is Obligated to Produce Documents On The Structure, Function, and Operation of Products Sold Prior To October 2, 2007, If Those Products Are Designed For Use With Accused Products Sold After October 2, 2007

Before Roche filed this motion, Nova objected to producing documents pertaining to the structure, function, and operation of products sold prior to October 2, 2007. Even now after Roche has filed this motion, Nova refuses to withdraw its objection to this category of documents. Instead, Nova now asserts that on April 8, 2008 it "produced *__many__* documents dated well before 2007 that relate to the structure, function and operation of its products sold before the October 2007 issuance...." Nova brief, p. 13 (emphasis added). Nova's carefully worded response demonstrates that this issue is not resolved. Nova has not committed to withdraw its objection or to comply with the Federal Rules by collecting and producing all documents that are responsive to these requests. Absent an unambiguous statement from Nova that it has complied with the Federal Rules by looking for and producing all documents that are responsive to these requests, Nova should be compelled to produce such documents promptly. Indeed, Nova continues to refuse to produce relevant documents on products sold before January 2007 even though such products may still be in use in active combination with recently sold test strips,

thereby giving rise to infringement.  (Exhibit W).  As such, this aspect of Roche's motion is not moot.

## III.    CONCLUSION

For at least the foregoing reasons, Roche respectfully requests that the Court grant the present motion to compel.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Daniel A. Boehnen
Grantland G. Drutchas
Patrick G. Gattari
Paula S. Fritsch
Benjamin R. Huber
McDonnell Boehnen Hulbert & Berghoff LLP
300 South Wacker Drive
Chicago, IL 60606
(312) 913-0001

Dated:  May 2, 2008
862836/32440

By: _____
    Philip A. Rovner (#3215)
    Hercules Plaza
    P.O. Box 951
    Wilmington, DE 19899-0951
    (302) 984-6000
    provner@potteranderson.com

*Attorney for Plaintiffs*
*Roche Diagnostics Operations, Inc.,  and*
*Corange International Limited*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, Philip A. Rovner, hereby certify that on May 2, 2008, the within document was filed with the Clerk of the Court using CM/ECF which will send notification of such filing(s) to the following; that the document was served on the following counsel as indicated; and that the document is available for viewing and downloading from CM/ECF.

| | |
|---|---|
| **BY HAND DELIVERY AND E-MAIL** | **BY HAND DELIVERY AND E-MAIL** |
| Frederick L. Cottrell, III, Esq. | John W. Shaw, Esq. |
| Anne Shea Gaza, Esq. | Jeffrey T. Castellano, Esq. |
| Richards, Layton & Finger, P.A. | Young Conaway Stargatt & Taylor, LLP |
| One Rodney Square | 1000 West Street, 17th Floor |
| 920 N. King Street | Wilmington, DE 19801 |
| Wilmington, DE 19801 | jshaw@ycst.com |
| cottrell@rlf.com | jcastellano@ycst.com |
| gaza@rlf.com | |
| | |
| Mary W. Bourke, Esq. | Rodger D. Smith, Esq. |
| Connolly Bove Lodge & Hutz LLP | Morris, Nichols, Arsht & Tunnell LLP |
| The Nemours Building | 1201 N. Market Street |
| 1007 N. Orange Street | P.O. Box 1347 |
| Wilmington, DE 19801 | Wilmington, DE 19899 |
| mbourke@cblh.com | rsmith@mnat.com |

Steven J. Balick, Esq.
John G. Day, Esq.
Ashby & Geddes
500 Delaware Avenue
8th Floor
P.O. Box 1150
Wilmington, DE 19899
sbalick@ashby-geddes.com
jday@ashby-geddes.com

I hereby certify that on May 2, 2008 the foregoing document was sent by E-mail to the following non-registered participants:

Edward A. Mas, II, Esq.
Stephen F. Sherry, Esq.
Kirk Vander Leest, Esq.
James M. Hafertepe, Esq.
Merle S. Elliott, Esq.
McAndrews, Held & Malloy, Ltd.
500 West Madison Street
34th Floor
Chicago, IL  60661
emas@mcandrews-ip.com
ssherry@mcandrews-ip.com
kvanderleest@mcandrews-ip.com
jhafertepe@mcandrews-ip.com
melliott@mcandrews-ip.com

Wesley E. Overson, Esq.
Rachel Krevans, Esq.
Jason R. Bartlett, Esq.
Parisa Jorjani, Esq.
Daniel P. Muino, Esq.
Morrison & Foerster LLP
425 Market Street
San Francisco, CA 94105-2482
woverson@mofo.com
rkrevans@mofo.com
jasonbartlett@mofo.com
pjorjani@mofo.com
dmuino@mofo.com

Kenneth P. George, Esq.
Joseph M. Casino, Esq.
Amster, Rothstein & Ebenstein LLP
90 Park Avenue
New York, NY  10016
kgeorge@arelaw.com
jcasino@arelaw.com

Michael G. Adams, Esq.
Ashley L. Ellis, Esq.
Parker Poe Adams & Bernstein LLP
Three Wachovia Center, Suite 3000
401 South Tryon Street
Charlotte, NC 28202
mikeadams@parkerpoe.com
ashleyellis@parkerpoe.com

Bradford J. Badke, Esq.
Sona De, Esq.
Michael Kahn, Esq.
Ropes & Gray LLP
1211 Avenue of the Americas
New York, NY 10036-8704
Jim.badke@ropesgray.com
Sona.de@ropesray.com
Michael.kahn@ropesgray.com

/s/ Philip A. Rovner
Philip A. Rovner (#3215)
Potter Anderson & Corroon LLP
Hercules Plaza
P.O. Box 951
Wilmington, Delaware 19899
(302) 984-6000
E-mail: provner@potteranderson.com

# EXHIBIT U

Smiths Medical to Promote and Distribute Abbott's FreeStyle Navigator® Continuous Glucose Monitoring                    4/30/08 11:24 PM





**smiths medical**
bringing technology to life

Text only
Search _____ [go]
Product Code Search

smiths-medical.com    Home    About Us    Contact    Careers    Webstore        Smiths Medical News

> Home > News

# News                                                    ✉ 🖨

Tuesday, 22 Apr, 2008

## Smiths Medical to Promote and Distribute Abbott's FreeStyle Navigator® Continuous Glucose Monitoring

**Smiths Medical MD** will promote and distribute Abbott's FreeStyle Navigator® Continuous Glucose Monitoring System. Smiths Medical MD is the manufacturer of the CozMore® insulin technology system and the Deltec Cozmo® insulin pump.

To supplement Abbott's own promotional efforts, a non-exclusive distribution agreement will allow Smiths Medical representatives to promote Abbott's FreeStyle Navigator System to their growing customer base in the United States. Financial terms will not be disclosed.

Approved in March 2008 and available by prescription only, the FreeStyle Navigator System is designed to continually record interstitial fluid glucose levels for the purpose of improving diabetes management.



Abbott and Smiths Medical currently have an agreement to use Abbott's FreeStyle strip port in the CoZmonitor® blood glucose module, which is connected to the Deltec Cozmo® insulin pump.

"We are pleased to partner once again with Abbott," said Jim Stitt, president of Smiths Medical MD. "The FreeStyle Navigator Continuous Glucose Monitoring System is cutting edge technology. And when you use it in conjunction with the unique features of the CozMore® insulin technology system, you have one of the most complete, state-of-the-art ways to manage diabetes."

"Information is power. People with diabetes who already utilize tools that provide them with useful data, such as an insulin pump, will naturally be early adopters of the technology we are providing with the FreeStyle Navigator System," said Chip Hance, senior vice president, Abbott Diabetes Care. "Adding to Abbott's direct sales effort, Smiths Medical MD is helping us bring the latest innovations in diabetes to this patient population."

**About the FreeStyle Navigator System**
The FreeStyle Navigator System is composed of three parts: a sensor, a transmitter and a receiver. The sensor, worn for up to five days and then replaced, is placed just under the skin and is attached to a plastic sensor mount with adhesive to adhere to the skin, like a patch. The transmitter snaps into the sensor mount and sends glucose information wirelessly to the pager-sized receiver. The system discreetly measures glucose levels once per minute;

### Areas of Care

Adult Critical Care
Alternate Care
Anesthesia
Assisted Reproduction
Cardiac Care
Diabetes
Medical Surgical
Neo & Ped Critical Care
Oncology
Pain Management
Respiratory Care
Sleep Medicine

### Products

· **Brands**

· **Customer Support**

· **Education Resources**

· **News & Events**

**22-Apr-08** - Smiths Medical to Promote and Distribute Abbott's FreeStyle

**15-Apr-08** - Children with chronic breathing disorders could soon be

**25-Mar-08** - Smiths Medical becomes a MedAssets Supply Chain Systems

provides high/low glucose alarms based on customizable, physician- and patient-determined levels; and delivers early-warning alarms that indicate if glucose levels are likely to be too high or too low 10 to 30 minutes in advance. The system also stores up to 60 days worth of glucose information that can be analyzed by the user or a health care professional.

Indicated for people ages 18 and older, the FreeStyle Navigator System is designed to continually record interstitial fluid glucose levels for the purpose of improving diabetes management. Readings and alarms about glucose levels from the FreeStyle Navigator System are not intended to replace traditional blood glucose monitoring. Before adjusting therapy for diabetes management based on the results and alarms from the FreeStyle Navigator System, traditional blood glucose tests must be performed. Additional information about the FreeStyle Navigator System is available at www.continuousmonitor.com.

### About the CozMore® Insulin Technology System



The CozMore® insulin technology system combines insulin pump therapy, blood glucose monitoring, personalized pump programming and data management in one system.

The system includes the Deltec Cozmo® insulin pump, which is a smart insulin pump that offers many opportunities for people with diabetes to tailor their insulin therapy; the CoZmonitor® blood glucose module, powered by Abbott's FreeStyle Blood Glucose Monitoring System, which is integrated into the pump for easier blood glucose testing and monitoring; and the CoZmanager® PC communications software, which links with the pump to let users personalize pump programming and review blood glucose and insulin delivery histories. Additional information about the CozMore® insulin technology system is available at www.cozmore.com.

### About Smiths Medical

Smiths Medical is a supplier of specialist medical devices to global markets. Smiths Medical comprises three product subgroups: Safety Devices, Vital Care and Medication Delivery. Smiths Medical customers include consumers, hospitals, and other healthcare providers worldwide. Smiths Medical employs nearly 7,500 people.

### About Smiths Group

Smiths is a global technology company, listed on the London Stock Exchange. Smiths Group is a world leader in the practical application of advanced technologies. Its products and services make the world safer, healthier and more productive. Smiths Group delivers products and services for threat and contraband detection, medical devices, energy and communications markets worldwide. It employs more than 20,000 people in more than 50 countries. For further information visit www.smiths.com

### About Abbott Diabetes Care

Abbott Diabetes Care, based in Alameda, Calif., is a leader in developing, manufacturing and marketing glucose monitoring systems designed to help patients better manage their diabetes. Abbott Diabetes Care is committed to developing products to reduce the discomfort and inconvenience of blood glucose monitoring and introducing systems that are easier to use, require smaller blood samples and provide faster results.

Abbott Diabetes Care markets several leading-edge glucose monitoring systems and test strips in the United States for use in both home and hospital settings; leading brands include

FreeStyle® Lite, FreeStyle Freedom™, FreeStyle Flash® and
Precision Xtra™. Additional information about Abbott Diabetes Care
may be found at www.abbottdiabetescare.com

**Media Contacts**
**Abbott**
**Melissa Brotz**
+1 847 935 3456

**Smiths Medical**
**Amy Carroll**
**Marketing Communications Specialist - Diabetes**
**Smiths Medical MD, Inc.**
+1 651 628 7374
amy.carroll@smiths-medical.com

---

About Us | Brands | Contact | Careers | Customer Support | Education Resources | News & events | Site Map | Webstore | Smiths Group plc
Links | Legal Notice | Privacy Policy | CA Legal Information | HIPAA | WEEE | © Copyright 2008 Smiths Medical. All Rights Reserved.

# EXHIBIT V

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ROCHE DIAGNOSTICS OPERATIONS, INC.,      )
and CORANGE INTERNATIONAL LIMITED,        )
                                                               )
                        Plaintiffs,                        )        Civil Action No. 07-753-JJF
                                                               )
            v.                                                 )
                                                               )
ABBOTT DIABETES CARE, INCORPORATED  )
and ABBOTT DIABETES CARE SALES           )
CORPORATION,                                          )
BAYER HEALTHCARE, LLC,                          )
DIAGNOSTICS DEVICES, INC.,                      )
LIFESCAN, INCORPORATED, and                  )
NOVA BIOMEDICAL CORPORATION,             )
                                                               )
                        Defendants.                      )

**LIFESCAN, INC.'S FIRST SET OF
INTERROGATORIES (NOS. 1-3) TO PLAINTIFFS**

Defendant LifeScan, Inc. ("LifeScan"), pursuant to Rule 33 of the Federal Rules of Civil

Procedure, requests that Plaintiffs Roche Diagnostics Operations, Inc. and Corange International

Limited (collectively, "Plaintiffs") answer the following interrogatories under oath within thirty

(30) days of service hereof. Any documents and things produced in response to these

Interrogatories shall be produced for inspection and copying at the offices of LifeScan's counsel,

Connolly Bove Lodge & Hutz LLP, 1007 North Orange Street, Wilmington, DE 19801.

All Interrogatories propounded by LifeScan are continuing in nature so as to require

supplementation promptly following the discovery of additional responsive information or

documents by Plaintiffs.

**DEFINITIONS**

Unless otherwise indicated, the following definitions shall apply.

1.    The terms "Plaintiffs," "you," and "your" refer to Roche Diagnostics Operations,

Inc. and Corange International Limited, and any of their current or former parents, subsidiaries,

affiliates, divisions, predecessors, successors, officers, directors, agents, consultants, employees,

1

attorneys and accountants, and any other person or entity currently or previously acting or purporting to act on their behalf.

2.      The terms "Defendant" and "LifeScan" refer to LifeScan, Inc., its officers, directors, agents, consultants, employees, attorneys and accountants, and/or any other person or entity currently or previously acting or purporting to act on its behalf.

3.      The term "patents-in-suit" means U.S. Patent No. 7,276,146 ("the '146 Patent") and U.S. Patent No. 7,276,147 ("the '147 Patent").

4.      The term "related patent" shall mean any patent issued from any parent or other ancestral application of a given patent, or any continuing application, continuation-in-part application, divisional application, file wrapper continuation, reexamination proceeding, reissue application, foreign counterpart application, or any other application with a substantially similar specification to the given patent.

5.      The term "LifeScan Accused Product" means each of the LifeScan products accused of infringement in Plaintiffs' Complaint for Patent Infringement, and any other product made, used, sold or offered for sale by LifeScan that you contend infringes any patent-in-suit or any patent you own or hold a license or other rights to.

6.      The term "document" shall have the broadest possible meaning permitted by Federal Rules of Civil Procedure 26 and 34 and the relevant case law and shall include, without limitation, "writings," "recordings," and "photographs," as defined by Federal Rule of Evidence 1001. "Documents" also shall include materials stored electronically or electromagnetically (such as electronic mail) and all drafts or non-final versions, alterations, modifications, and amendments to any of the foregoing.

7.      The term "communication" means any exchange or transfer of information, whether oral or written, formal or informal, at any time or place, under any circumstances, and in any manner, and shall include, without limitation, any inquiry, request, discussion, conversation, agreement, undertaking, meeting, telephone conversation, letter, note, facsimile, telegram, telex,

2

e-mail, internet or intranet postings, any other form of information exchange whether oral, written, or electronic.

8.     "Concern" and "concerning" shall mean referring to, relating to, constituting, discussing, describing, evidencing, supporting, tending to support, refuting, tending to refute, or impacting.

9.     "Person" or "persons" shall mean any natural persons, proprietorships, partnerships, firms, corporations, joint ventures, independent establishments, government agencies or corporations, federal or otherwise, any combination acting as an entity, or any divisions or subsidiaries of any group. Unless otherwise stated, "person" or "persons" shall also include any individuals and entities which are separately defined in these Definitions. Any reference to a person shall also include that person's successors, assigns, personal representatives, and heirs, by operation of law or otherwise.

10.     The term "including" shall be construed broadly, and shall encompass "including but not limited to" or "including without limitation."

11.     "Any" should be understood to include and encompass "all," "all" should be understood to include and encompass "any," "or" should be understood to include and encompass "and," and "and" shall be understood to include and encompass "or."

12.     The use of a verb in any tense shall be construed as the use of the verb in all other tenses.

13.     The use of the singular form of any word shall include the plural and vice versa.

## INSTRUCTIONS

1.     The interrogatories below must be answered in accordance with Federal Rules of Civil Procedure 26 and 33. You must serve upon LifeScan a written answer and/or objection addressed to each interrogatory, and such answer or objection must be signed by the serving party. The responses to the interrogatories shall include any information that is within your possession, custody or control, that is within the possession, custody or control of your attorneys, consultants, experts, agents investigators, accountants, or any persons acting on your behalf, or

3

that is otherwise available to you as provided in the Federal Rules of Civil Procedure and applicable decisional law. You are specifically reminded of your duty to supplement your answer pursuant to Rule 26(e)(2).

2.     If you cannot answer any interrogatory in full after exercising due diligence to secure the information, so state in the answer to the extent possible, specifying your inability to answer the remainder, and state whatever information or knowledge you have concerning the unanswered portions and the efforts you have undertaken to secure the information sought.

3.     If you deem any information, document, or communication requested by any of the following interrogatories to be protected from disclosure by the attorney-client privilege, work-product doctrine, or any other privilege, doctrine, or immunity, please identify or describe: (a) the information, document, or communication alleged to be so protected by author, subject matter, date, number of pages, attachments, and appendices; (b) the names and job titles of all recipients of the information, document, or communication, including blind copy recipients and any individual to whom the information, document, or communication was distributed, shown, or explained; (c) the information, document, or communication's current custodian; and (d) all bases, factual and legal, upon which such protection rests. If you contend that only a portion of the information sought by an interrogatory is privileged, please provide the information that you do not contend is privileged.

4.     If you object to any portion of an interrogatory, please provide all information requested by any portion of the interrogatory to which you do not object.

5.     Whenever an interrogatory requires you to identify a person, the person should be identified by providing at least his or her: (a) full name; (b) home and business address; (c) occupation, job title or description, and department; (d) most recent or last known employer; (e) period of employment by Plaintiffs, if any, and job title and responsibilities during that time period; and (f) job title and employer at time of event to which the interrogatory relates.

6.     Whenever an interrogatory requires the identity of an entity or the response to an interrogatory would require the identification of an entity, the entity should be identified by

4

providing at least : (a) the entity's full name; (b) a brief description of the general nature of the business; (c) the state of incorporation; (d) the entity's address and principal place of business; (e) the identity of the officers or other persons having knowledge of the matter with respect to which the company has been identified.

## INTERROGATORIES

### INTERROGATORY NO. 1:

Identify each claim of the patents-in-suit that is allegedly infringed by a LifeScan Accused Product, and for each such claim (i) provide a claim chart that identifies on an element-by-element basis any allegedly infringing structure of, or any allegedly infringing steps performed by, each LifeScan Accused Product, (ii) state whether the alleged infringement is literal or under the doctrine of equivalents, (iii) state in detail all facts concerning, supporting or tending to support your allegation that LifeScan or the LifeScan Accused Products infringe the patents-in-suit, and (iv) identify all people with knowledge of the facts alleged and all documents or things concerning, supporting or tending to support the facts alleged.

### INTERROGATORY NO. 2:

If you allege that LifeScan has actively induced direct infringement of the patents-in-suit by any third party, describe all facts and circumstances concerning such alleged inducement, including but not limited to (i) the identity of the alleged third party direct infringers, (ii) the date, time, place and manner of such direct infringement, (iii) the communications and/or actions by LifeScan constituting such active inducement, (iv) the claim or claims of the patents-in-suit whose infringement is allegedly induced, (v) the LifeScan Accused Products involved in either the direct or indirect infringement alleged, and (vi) the identity of all persons with knowledge of the facts alleged and all documents or things concerning, supporting or tending to support the facts alleged.

### INTERROGATORY NO. 3:

If you allege that LifeScan contributorily infringes any claim of the patents-in-suit, describe all facts and circumstances concerning such alleged contributory infringement, including

but not limited to (i) the identity of any alleged third party direct infringers, (ii) the date, time, place and manner of the alleged direct infringement, (iii) the claim or claims of the patents-in-suit alleged to be directly infringed, (iv) the LifeScan Accused Products involved in either the direct or indirect infringement alleged, (v) all facts concerning, supporting or tending to support your allegation that the LifeScan Accused Products are not staple articles or commodities of commerce suitable for substantial non-infringing uses, and (vi) the identity of all persons with knowledge of the facts alleged and all documents or things concerning, supporting or tending to support the facts alleged.

CONNOLLY BOVE LODGE & HUTZ LLP

/s/ Mary W. Bourke
Mary W. Bourke (#2356)
R. Eric Hutz (#2702)
1007 N. Orange Street
P.O. Box 2207
Wilmington, DE 19899
(302) 658-9141

*Attorneys for Defendant LifeScan, Inc.*

Dated: April 10, 2008

600069

6

## CERTIFICATE OF SERVICE

I, Mary W. Bourke, Esquire, hereby certify that on April 10, 2008, I caused copies

of the foregoing document to be served on the following counsel in the manner indicated:

**BY HAND AND EMAIL**
Philip A. Rovner
Potter Anderson & Corroon, LLP
1313 N. Market St.
Hercules Plaza, 6th Flr.
P.O. Box 951
Wilmington, DE 19899-0951
*Attorneys for Plaintiffs Roche Diagnostic*
*Operations, Inc. and Corange*
*International Limited*

**BY EMAIL**
Daniel A. Boehnen
Grantland G. Drutchas
Gary E. Hood
Nicole Keenan
Paula S. Fritsch
Sherri L. Oslick
Jeffrey P. Armstrong
McDonnell Boehnen Hulbert &
Berghoff LLP
300 South Wacker Drive
Chicago, IL 60606
*Attorneys for Plaintiffs Roche*
*Diagnostic Operations, Inc. and*
*Corange International Limited*

**BY HAND AND EMAIL**
John W. Shaw
Jeffrey Thomas Castellano
Young, Conaway, Stargatt & Taylor
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391
*Attorneys for Defendant Bayer*
*Healthcare, LLC*

**BY HAND AND EMAIL**
Rodger Dallery Smith, II
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
*Attorneys for Defendant Nova*
*Biomedical Corporation*

**BY HAND AND EMAIL**
Frederick L. Cottrell, III
Anne Shea Gaza
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE 19899
*Attorneys for Defendants Abbott Diabetes*
*Care Inc. and Abbott Diabetes Care*
*Sales Corporation.*

**BY HAND AND EMAIL**
Steven J. Balick
John G. Day
Lauren E. Maguire
Ashby & Geddes
500 Delaware Avenue
P.O. Box 1150
Wilmington, DE 19899
*Attorneys for Defendant Diagnostic*
*Devices Inc.*

7

BY EMAIL
Wesley E. Overson
Rachel Krevans
Jason R. Bartlett
Parisa Jorjani
Daniel P. Muino
Morrisson & Foerster LLP
425 Market Street
San Francisco, CA 94105-2482
*Attorneys for Defendant Bayer
Healthcare, LLC*

BY EMAIL
Nancy Tinsley
Roche Diagnostics
9115 Hague Road
Indianapolis, IN 46250
*Attorney for Plaintiff Roche Diagnostics
Operations, Inc. and Corange
International Limited*

BY EMAIL
Bradford J. Badke
Sona De
Michael Kahn
Ropes & Gray LLP
1211 Avenue of the Americas
New York, NY 10036-8704
*Attorneys for Defendant Nova
Biomedical Corporation*

BY EMAIL
Kenneth P. George
Joseph M. Casino
Amster Rothstein & Ebenstein LLP
90 Park Avenue
New York, NY 10016
*Attorneys for Defendant Bayer
Healthcare, LLC*

BY EMAIL
Kirk A. Vander Leest
Edward A. Mas II
Stephen F. Sherry
James M. Hafertepe
Merle S. Elliott
Matthew A. Anderson
McAndrews, Held & Malloy, Ltd.
500 West Madison Street, Suite 3400
Chicago, IL 60661
*Attorneys for Defendants Abbott Diabetes
Care Inc. and Abbott Diabetes Care
Sales Corporation*

BY EMAIL
Ashley L. Ellis
Michael G. Adams
Parker Poe Adams & Bernstein LLP
Three Wachovia Center, Suite 3000
401 South Tryon Street
Charlotte, NC 28202
*Attorneys for Defendant Diagnostic
Devices Inc.*

CONNOLLY BOVE LODGE & HUTZ LLP
/s/ Mary W. Bourke
Mary W. Bourke (#2356)
R. Eric Hutz (#2702)
Kristen Healey Cramer (#4512)
The Nemours Building
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899-1347
*Attorneys for Defendant LifeScan Incorporated*

8

**Panatera, Lisa**

| | |
|---|---|
| **From:** | Machonkin, Rick |
| **Sent:** | Thursday, April 10, 2008 9:13 AM |
| **To:** | Panatera, Lisa |
| **Subject:** | FW: Roche et al v. Abbott et al: LifeScan's First Set of Document Requests and Interrogatories to Plaintiffs |

**Attachments:** LifeScan Inc's First Set of Requests for Production of Documents and Things (Nos 1-54) to Plaintiffs.pdf; LifeScan Inc's First Set of Interrogatories (Nos. 1-3) to Plaintiffs.pdf; NOS.pdf

---

**From:** Kimberly P. Boots [mailto:kboots@cblh.com]
**Sent:** Thursday, April 10, 2008 9:02 AM
**To:** Armstrong, Jeffrey; ashleyellis@parkerpoe.com; Boehnen, Daniel; Brown, Christina; Cavan, Chris; Cottrell@RLF.com; dmuino@mofo.com; Drutchas, Grantland; eje@cblhlaw.com; emas@mcandrews-ip.com; Fritsch, Paula; Gattari, Patrick; Gaza@RLF.com; Hood, Gary; Huber Benjamin; jasonbartlett@mofo.com; jcasino@arelaw.com; jday@ashby-geddes.com; Jeffrey Thomas Castellano; jhafertepe@mcandrews-ip.com; jim.badke@ropesgray.com; John W. Shaw; Keenan, Nicole; kgeorge@arelaw.com; KVANDERLEEST@mcandrews-ip.com; lmaguire@ashby-geddes.com; Machonkin, Rick; Matthew A. Anderson; melliott@mcandrews-ip.com; michael.kahn@ropesgray.com; mikeadams@parkerpoe.com; Moran, Eric; nancy.tinsley@roche.com; Oslick, Sherri; pjorjani@mofo.com; provner@potteranderson.com; rkrevans@mofo.com; rsmith@mnat.com; sbalick@ashby-geddes.com; sona.de@ropesgray.com; ssherry@mcandrews-ip.com; Sullivan, Sean; woverson@mofo.com
**Cc:** Eric Hutz; Geoffrey A. Zelley; Kristen H. Cramer; Mary W. Bourke
**Subject:** Roche et al v. Abbott et al: LifeScan's First Set of Document Requests and Interrogatories to Plaintiffs

Dear Counsel,

Attached please find service copies of LifeScan's First Set of Document Requests and Interrogatories to Plaintiffs. The corresponding Notice of Service is also attached.

Kimberly

Kimberly P. Boots
Paralegal
Connolly Bove Lodge & Hutz
1007 North Orange Street
Wilmington, DE 19899

This e-mail and any attachment is intended only for use by the addressee(s) and may contain privileged and confidential information. Please email or call 302-658-9141 to advise the sender of a transmission error and delete the message and any attachments and any printouts. Any tax advice contained in this communication is not intended and cannot be used to avoid penalties under the Internal Revenue Code or to promote, market or recommend to another party any transaction or matter addressed herein.

# EXHIBIT W



**McDonnell Boehnen Hulbert & Berghoff LLP**    300 South Wacker Drive      312 913 0001 phone
                                                 Chicago, Illinois 60606-6709  312 913 0002 fax
                                                 www.mbhb.com

April 4, 2008

**Sent Via Email; Confirmation via First Class Mail**

Michael Kahn
Ropes & Gray LLP
1211 Avenue of Americas
New York, NY 10036
Michael.Kahn@ropesgray.com

Re:    Roche v. Abbott et al., Civil Action No. 07-753 JJF
       Meet and Confer - April 1, 2008

Dear Michael:

It is our intent to memorialize a summary of our current understanding of the areas of
agreement and disagreement that resulted from our meet and confer telephone
conversation of April 1, 2008. As with our letter of March 24, 2008, we consider this
letter a draft of the summary. To the extent that our current understanding does not
accurately reflect Nova's positions, we suggest holding a telephone conference to
ameliorate any misunderstanding. Please advise if this is necessary.

**Identification of the Products-In-Suit**
It is our understanding that the references to "products-in-suit", as used in our letter of
March 24, 2008, and the references to "accused Nova products" and "accused products",
as set forth in Nova's letter of April 1, 2008, all refer to the entire list of products identified
in Nova's Answer to Interrogatory No. 1.

**Timing of Document Production**
It is our understanding that Nova hopes to start production of documents by the end of this
week or early next week. Moreover, we understand that Nova is currently searching for
documents in all agreed-upon categories and does not intend to delay the production of
documents based on the categorization of the documents. We understand that you have
been in contact with Sherri Oslick to resolve technical issues regarding the format of
documents produced electronically.

*Date Limitations For Document Production*
No agreement has been reached regarding the appropriate look-back period for sales and marketing documents, including communications between Nova and third parties relating to the accused products. We expressed Roche's concern that there may be documents from before Nova's proposed January 1, 2007 date that would be necessary to prove that infringing acts are being committed with meters sold before the issue date of the patents-in-suit. As such, Roche believes that January 1, 2006 is a more appropriate starting date for such documents. We understand that Nova maintains its position that January 1, 2007 is a more appropriate starting date. As discussed in more detail below, Nova agreed to consider a stipulation to alleviate this issue. In the alternative of a stipulation, you raised the possibility of producing documents "sufficient to show" the structure, function, operation, and use of these older meters.

We expressed concern over Nova's use of the term "sufficient to show," particularly as it pertains to Nova's document production of materials dated prior to the issue date of the patents-in-suit. It is Roche's position that to the extent an issue is in dispute, we are entitled to full discovery on the issue. Thus, if Nova will not agree to the stipulation as detailed below, or a similar stipulation, it is Roche's position that the parties have reached an impasse regarding the start date for production of sales and marketing documents regarding the structure, function, features, operation, and use of the products-in-suit.

We understand that Nova has agreed to produce three categories of documents and information developed after the filing of the lawsuit, namely (1) documents sufficient to show the existence of sales of the accused products, (2) documents concerning communications between Nova and its distributors and/or customers regarding the structure, function, features, operation, or use of the accused products, and (3) information concerning any new Nova blood-glucose monitoring products brought to market that are capable of providing a reading within 10 seconds using a blood sample of 1 µl or less. It is also our understanding that Becton-Dickinson is included in the group of distributors and/or customers for the purposes of document production.

*Post-Filing Logging of Withheld Documents*
We indicated that Roche is willing to reach an agreement on the issue. Roche agrees in principle with Nova's proposal that post-filing privileged and work-product documents do not need to be listed on a log of withheld documents. However, Roche will not agree to this proposal unless all of the other defendants are also in agreement with Nova's proposal. Nova appears to be in a better position to address the issue with the other codefendants, and we appreciate any of Nova's efforts in pursuing an agreement with the other codefendants.

### General Discovery Considerations

Nova reiterated its agreement to search for and produce documents that relate to the structure, function, features, operation, and use of the accused products, including any communications with third parties regarding the structure, function, features, operation, or use of the accused devices.

### Business Strategy Documents

Nova's position is that there is a distinction between documents pertaining to an actual product versus documents pertaining to products that were proposed but never marketed. Nova believes that documents related to Nova's strategic decisions that do not also relate to the structure, function, features, operation, or use of an actual product are beyond the scope of Phase I discovery. Roche does not agree with Nova's position on this issue, as it is Roche's position that these documents could contain information relevant to Roche's infringement claims. It appears that the parties have reached an impasse on this issue.

### Research & Development and Design-Around Documents

Nova contends that these documents are outside the scope of Phase I discovery to the extent that the documents do not describe the structure, function, features, operation, or use of an actual product. Again, Roche does not agree with Nova's position, as these documents could contain information relevant to Roche's infringement claims. The parties seem to have reached an impasse on this issue as well.

### Licenses and Other Agreements

In addition to the documents identified in your letter of April 1, 2008, Roche believes that it is entitled to documents that are related to or concern license and other agreements for at least the reason that they may be related to Nova's trade secret and other counterclaims. It is our understanding that Nova intends to produce information relevant to its trade secret counterclaims, including information regarding the handling of information related to the structure, function, operation, or use of blood glucose sensors that may have been exchanged as part of a licensing or other agreement. We request confirmation that Nova also intends to produce any documents related to the structure, function, features, operation, or use of the products-in-suit that were exchanged pursuant to a licensing or other agreement.

### Prior Art Documents

Nova intends to produce prior art relating to Nova's claim of prior invention under 35 U.S.C. § 102(g). Roche understands that Nova continues to object to the production of any additional prior art during Phase I. Roche disagrees that prior art relating to Nova's prior invention counterclaim is the only prior art relevant to Phase I. Therefore, this is another issue on which the parties appear to have reached an impasse.

### Interrogatories 20-24

We indicated during the conference that absent a date certain by which Nova would identify the information that it considers to be a trade secret, Roche would pursue a motion to compel. Nova proposed, and Roche agreed, that within one week of the first production of Nova's documents (to occur late in the week of March 31 or early in the week of April 7), Nova will provide a supplemental response to these interrogatories, which will contain additional substantive information regarding the alleged trade secrets and/or confidential information, and/or an identification of documents relating to the alleged trade secret and/or confidential information.

### Interrogatory 3

Nova indicated that Plaintiff's Interrogatory 3 captures information that Nova has already agreed to produce, and that Nova will supplement the interrogatory answer.

### Interrogatories 15 and 17

It is Roche's position that Interrogatories 15 and 17 call for the identification of the particular documents that Nova relied upon in asserting their claims. Currently, Roche is not requesting a listing of every document in Nova's possession that tends to support Nova's allegations. We understand Nova's position is that the present answers are sufficiently specific, and that Nova intends to supplement the responses as Nova becomes aware of additional information. Roche disagrees that supplementation according to Rule 26(e) is sufficient. Thus, this is another issue on which the parties appear to have reached an impasse.

### The Second Application

In order to ensure that both parties are referring to the same application as the "second application," we indicated that we would like to confirm the identity of the "second application" through the serial number of the application. Roche understands that the "second application" is a U.S. Patent Application with the Serial No. 09/324,443. We would appreciate confirmation that U.S. Patent Application Serial No. 09/324,443 is indeed the application Nova was referring to as the "second application" in its counterclaims.

### Notice of the '146 and '147 Patents, Opinions of Counsel and Product Decision Documents

It is Roche's position that Nova's notice of the patents-in-suit both before and after issuance is relevant to its infringement claims, including the specific indirect infringement claims that are spelled out in the proposed Amended Complaint. Although not specifically discussed on the call, it is Roche's position that documents reflecting Nova's notice of the patents in

suit would include an identification of opinions of counsel, which would reflect dates by which Nova had notice of the patents-in-suit or their underlying applications. Nova has indicated that it would take Roche's position regarding the relevance of notice into consideration. Again, although not necessarily articulated during our call, we also believe that product decision documents are relevant to the scienter issue for inducement and contributory infringement. Please let us know soon whether Nova intends to stand on its objections.

### Foreign Counterpart Applications
It is Roche's position that statements made during the prosecution of a foreign counterpart application may be relevant at least to issues of claim construction. Nova indicated that it would take Roche's position into consideration. Please let us know soon whether Nova intends to stand on its objections.

### Response-in-Kind to Discovery Requests
Nova inquired whether we are amenable to comply with Nova's discovery requests in a manner similar to Nova's responses to our discovery requests. We indicated that Roche will generally abide by the agreements made by Nova regarding discovery requests.

### Proposed Stipulations:
We proposed two stipulations during the teleconference. The first proposed stipulation related to the operation of older meters that can accept the accused strips, and the second stipulation related to the manner in which end-users use the accused products. Nova did not agree to make any stipulations at this time, but is willing to consider and discuss these proposed stipulations.

Proposed Stipulation 1: Certain meters sold prior to October 2, 1997 (i.e., the issue date of the patents-in-suit) can be used with currently sold BD Test Strips and/or NovaMax test strips. Insofar as the patents-in-suit are concerned, such previously sold meters have the same structure, functions, features, and operation as the current NovaMax™ glucose monitor.

Proposed Stipulation 2: Consumer/purchasers use the accused Nova products in the manner described in the owner's manual, product inserts, and other documents supplied by Nova for the accused Nova products.

**Roche's Amended Complaint**
Nova indicated that it has no procedural objections to Roche's filing of its proposed Amended Complaint, although Nova reserves its disagreement with the merits of the Amended Complaint. We thank you for your agreement in this matter.

In the event you would like to hold a follow-up telephone conference, please feel free to contact me.

Sincerely,

Paula S. Fritsch / brh
Paula S. Fritsch, Ph.D.
Ph. 312 913 3315
fritsch@mbhb.com