IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ROCHE DIAGNOSTICS OPERATIONS, INC. and CORANGE INTERNATIONAL LIMITED,<br><br>Plaintiffs,<br><br>vs.<br><br>ABBOTT DIABETES CARE INC., ABBOTT DIABETES CARE SALES CORPORATION, BAYER HEALTHCARE, LLC, DIAGNOSTIC DEVICES, INC., LIFESCAN, INC., and NOVA BIOMEDICAL CORPORATION,<br><br>Defendants. | C.A. No. 07-753-JJF |

**ABBOTT'S RESPONSE TO THE ANSWERING BRIEF OF
DEFENDANTS BAYER HEALTHCARE, LLC, LIFESCAN, INC. AND NOVA
BIOMEDICAL CORPORATION IN OPPOSITION TO
PLAINTIFFS' MOTION FOR ENTRY OF A PROTECTIVE ORDER**

OF COUNSEL:
Edward A. Mas II
Stephen F. Sherry
Kirk Vander Leest
James M. Hafertepe
McAndrews, Held & Malloy, Ltd.
500 West Madison Street, 34th Floor
Chicago, Illinois 60661
(312) 775-8000

Dated: May 5, 2008

Frederick L. Cottrell, III (#2555)
cottrell@rlf.com
Anne Shea Gaza (#4093)
gaza@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, DE 19801
(302) 651-7700

*Attorneys for Abbott Diabetes Care Inc. and Abbott Diabetes Care Sales Corp.*

RLF1-3279934-1

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ ii

I. INTRODUCTION ............................................................................................................ 1

II. ARGUMENT .................................................................................................................... 2

    A. Abbott's In-House litigators Are Entitled To View HIGHLY CONFIDENTIAL INFORMATION Because They Are Not Involved In Competitive Decision-making ........................................................... 2

    B. Abbott's In-House Litigators Are Not Competitive Decision-Makers .................................................................................................................. 4

    C. Granting Abbott's In-House Litigation Lawyers Access To All Confidential Information Does Not Increase The Risk Improper Disclosure ............................................................................................................. 6

    D. Abbott Will Be Unfairly Prejudiced If Denied Its Counsel Of Choice ..................................................................................................................... 7

    E. Defendants' Arguments Are Misplaced ............................................................... 8

III. CONCLUSION ............................................................................................................... 10

i

# TABLE OF AUTHORITIES

**CASES**

*A. Hirsch, Inc. v. United States,*
  657 F.Supp. 1297 (Ct. Int'l Trade 1987) .................................................................. 9, 10

*Akzo N.V. v. U.S. Int'l Trade Comm'n,*
  808 F.2d 1471 (Fed. Cir. 1986) ................................................................................ 9

*Allegheny Ludlum Corp. v. Nippon Steel Corp.,*
  No. 89-5940, 1990 U.S. Dist. LEXIS 867 (E.D. Pa. Jan. 25, 1990) ......................... 8

*Amgen, Inc. v. Elanex Pharm, Inc.,*
  160 F.R.D. 134 (W.D. Wash. 1994) ......................................................................... 3

*Bailey v. Dart Container Corp. of Michigan,*
  980 F. Supp. 560 (D. Mass. 1997) ............................................................................ 2

*Boehringer Ingelheim Pharm. Inc. v. Hercon Labs. Corp.,*
  1990 WL 160666 (D. Del. Oct. 12, 1990) ................................................................ 6

*Brown Bag Software v. Symantec Corp.,*
  960 F.2d 1465 (9th Cir. 1992) ............................................................................... 1, 3

*Carpenter Tech. Corp. v. Armco, Inc.,*
  132 F.R.D. 24, 28-29 (E.D. Pa. 1990) ...................................................................... 7

*In re Indep. Service Orgs. Antitrust Litig.,*
  1995 WL 151739 (D. Kan. Mar. 9, 1995) ................................................................. 3

*In re Papst Licensing,*
  2000 WL 1036184 (E.D. La. July 25, 2000) .......................................................... 2, 3

*Intel Corp. v. VIA Techs., Inc.,*
  198 F.R.D. 525, 531 (N.D. Cal. 2000) ............................................................... 6, 8, 9

*Medtronic, Inc v. Guidant Corp.,*
  2001 WL 34784493 (D. Minn. Dec. 20, 2001) ......................................................... 4

*U.S. Steel Corp. v. U.S.,*
  730 F.2d 1465 (Fed. Cir. 1984) ............................................................................. 3, 7

*U.S. v. Sungard Data Sys., Inc.,*
  173 F. Supp. 2d 20 (D.D.C. 2001) ............................................................................ 9

*Volvo Penta of the Americas, Inc v. Brunswick Corp.,*
  187 F.R.D. 240 (E.D. Va. 1999) ......................................................................... 3, 4, 6

**STATUTES**

19 U.S.C. § 1561 ............................................................................................................... 9

**RULES**

FED. R. CIV. P. 26 ......................................................................................................... 2, 9

I.  **INTRODUCTION**

Three of Abbott's in-house litigation counsel seek access to documents produced in this case on the same basis as the outside counsel representing the various parties. These lawyers, Ms. Oosterbaan, Mr. Martin and Mr. Rivera (collectively "Abbott's in-house litigators"), have offered detailed declarations attesting to their lack of involvement in competitive decision-making for blood glucose products, their day-to-day isolation from the business people responsible for those decisions, and their exclusive role as dedicated internal litigation counsel for Abbott.

Bayer, Lifescan and Nova (collectively the "Opposing Defendants") agree that Abbott's in-house litigators are entitled to access CONFIDENTIAL information, but contend they should not be granted access to HIGHLY CONFIDENTIAL information merely because they are direct employees of Abbott as opposed to being retained (outside) counsel. In essence, the Opposing Defendants are seeking to establish a double-standard, arguing that Abbott's in-house litigators should be treated as "second class citizens" who cannot be trusted to comply with either the terms of a protective order or their ethical obligations as officers of this Court while their own outside counsel are permitted full access to all confidential information. This argument has been rejected by courts time and time again.[1] *See, e.g., Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992): "[P]roper review of protective orders in cases such as this requires the district court to examine factually all the risks and safeguards surrounding

---

[1] Abbott and Nova have previously fought over this distinction with the Court ruling in Abbott's favor and granting Abbott's in-house counsel, including Mr. Rivera, access to Nova's confidential (and highly confidential) information. *See* Ex.1 (Order Granting The Motion of Abbott Laboratories To Permit Access To Confidential Documents on the Same Basis As Outside Counsel from Case No. C04-2123 (and related Case Nos. C04-3732 and C04-3327) (N.D. Cal.)). All exhibits referenced herein are attached to the Gaza Declaration contemporaneously filed herewith.

1

inadvertent disclosures by any counsel, whether in-house or retained." Both in-house and outside counsel are judged by the same criteria – *i.e.*, whether they are involved in competitive decision-making for the relevant business. Because Abbott's in-house litigators provide the same service to their clients as does outside counsel - providing legal advice on all aspects of this litigation – and are not involved in competitive decision-making, they are entitled to the same access to documents as the parties' chosen outside counsel in this case. Further, Abbott's in-house litigators perform critical litigation advisory, management, and assessment functions for Abbott's management that are not performed by Abbott's outside trial counsel.

## II.  ARGUMENT

### A. Abbott's In-House litigators Are Entitled To View HIGHLY CONFIDENTIAL INFORMATION Because They Are Not Involved In Competitive Decision-making.

Abbott's lawyers, including its in-house litigators, are entitled to review all information "reasonably calculated to lead to the discovery of admissible evidence." FED. R. CIV. P. 26(b)(I). The party seeking to withhold relevant information from disclosure bears the burden of showing good cause for a protective order to issue or for distinguishing between in-house and outside counsel. FED. R. CIV. P. 26 26(c); *see, e.g.*, *In re Papst Licensing*, 2000 WL 1036184, at *2 (E.D. La. July 25, 2000) (allowing in-house counsel access to confidential information because the party opposing access failed "to provide justification for making any distinction between in-house and outside counsel"); *Bailey v. Dart Container Corp. of Michigan*, 980 F. Supp. 560, 583 (D. Mass. 1997) (placing the burden on the party resisting disclosure to show that the potential harm of disclosure to in-house counsel outweighed the opposing party's need for relevant information); *In re Indep. Service Orgs. Antitrust Litig.*, 1995 WL 15 1739, at *1 (D. Kan. Mar.

2

9, 1995) ("To warrant denying access to in-house counsel, the [opposing party] must show a probability of serious risk to confidentiality.").

When determining whether in-house counsel should have access to confidential documents, the "crucial factor" is whether the attorney is involved in "competitive decision-making" for the relevant business. *See, Brown Bag*, 960 F.2d at 1470 (the "crucial factor" in *U.S. Steel Corp. v. U.S.*, 730 F.2d 1465 (Fed. Cir. 1984), the leading authority on whether in-house counsel should be permitted access to confidential documents, "was whether in-house counsel was involved in 'competitive decision making'").[2] Absent involvement in competitive decision-making, there is no legitimate justification for distinguishing between inside and outside counsel or to limit in-house counsel access to confidential information. Only if the court finds that the attorney is a competitive decision-maker does the court engage in the balancing test of multiple factors to determine whether access to confidential documents is appropriate. *Cf. Brown Bag*, 960 F.2d at 1470-71 (applying balancing test after trial court found that the in-house attorney was a competitive decision-maker because he was the company's "sole legal advisor" whose "employment would necessarily entail advising his employer in areas relating to Symantec's trade secrets."). Defendants' reliance on secondary factors, such as the supposed highly sensitive nature of their HIGHLY CONFIDENTIAL information or the allegedly minimal

---

[2] *See also, Volvo Penta of the Americas, Inc v. Brunswick Corp.*, 187 F.R.D. 240, 243 (E.D. Va. 1999) ("the 'competitive decision making' factor [is] the *sine qua non* of the in-house counsel analysis, regardless of other factors that potentially garner in favor of restricting in-house access") *In re Papst Licensing*, 2000 WL 1036184, at *2 ("[t]he primary consideration in making this determination is whether the attorney with access to the confidential information is involved in 'competitive decision making'"); *Amgen, Inc. v. Elanex Pharm, Inc.*, 160 F.R.D. 134, 138-39 (W.D. Wash. 1994) (competitive decision making is "arguably the determinative factor in this analysis"); *In re Indep. Service Orgs.*, 1995 WL 15 1739, at *1 (holding that courts use the "'competitive decision making' test, rather than simply status as in-house counsel, to determine whether disclosure should be denied").

3

burden that Abbott will incur if its in-house litigators are not granted access to confidential documents is thus misplaced. Those factors come into play if, and only if, the court finds that the lawyers have a role in competitive decision-making. *See Volvo*, 187 F.R.D. at 244 ("while other litigants in other cases have, like Volvo Penta, stressed 'the extreme sensitivity' of the information at issue, no decisions have apparently relied on this argument as grounds for granting or denying in-house access"); *Medtronic, Inc v. Guidant Corp.*, 2001 WL 34784493, at *2 (D. Minn. Dec. 20, 2001) (holding that Federal Rule 26 does not require a party seeking in-house counsel access of confidential documents to "demonstrate an inability to effectively litigate its case without their involvement"). Defendants have not cited any case in which a court has precluded a lawyer not involved in competitive decision-making from viewing all confidential information in a case.

### B. Abbott's In-House Litigators Are Not Competitive Decision-Makers.

None of the Abbott in-house litigators who seek access to confidential information have any role in competitive decision-making for blood glucose products.[3] Specifically, they "do not have any role, provide advice or participate in the client's decision about pricing, marketing, product design, patent prosecution, or scientific research made in light of similar or corresponding information about a competitor in blood glucose products." (Oosterbaan Decl. ¶¶ 6-7; Martin Decl. ¶¶ 6-7; Rivera Decl. ¶¶ 10-11). Instead, these attorneys are responsible for managing Plaintiffs' patent and other litigation and providing legal advice to Abbott regarding

---

[3] Either the definition proffered by Roche for "competitive decision-making" or the definition proposed by the Opposing Defendants - that competitive decision making means "advice, participation, or role in the client's decision about pricing, marketing, product design, patent prosecution, or scientific research made in light of similar or corresponding information about a competitor in blood glucose products" – are acceptable to Abbott. *See* Answering Brief (D.I. 151) at p. 5 and Ex. A ¶ 4.2(b).

potential and pending litigation of all kinds with respect to all of Abbott's businesses. (Oosterbaan Decl. ¶¶ 4-5; Martin Decl. ¶¶ 4-5; Rivera Decl. ¶¶ 8-9). Their responsibilities are solely those of litigators; they do not provide business or other advice regarding competitive decision-making. (Oosterbaan Decl. ¶¶ 4-7; Martin Decl. ¶¶ 4-7; Rivera Decl. ¶¶ 8-11).

All of Abbott's U.S. consumer and retail diabetes-related work — including the research, development, marketing, and patent prosecution relating to the technology at issue in this litigation and the competitive decision-making for that business — is performed at Abbott Diabetes Care ("ADC"), an Abbott division located in Alameda, California. (Rivera Decl. ¶¶ 2-4). In contrast, the Abbott in-house litigators are employed in Abbott's Illinois-based corporate legal division. (Rivera Decl. ¶ 6).

Additionally, ADC is just one of numerous business units at Abbott which are advised by Ms. Oosterbaan, Mr. Martin and Mr. Rivera and the rest of the corporate litigation department. (Rivera Decl. ¶ 8). These litigators have no position at ADC. (Oosterbaan Decl. ¶¶ 2 and 4-7; Martin Decl. ¶¶ 2 and 4-7; Rivera Decl. ¶¶ 6 and 8-11). They do not report to anyone at ADC and do not participate in business meetings at ADC. (Oosterbaan Decl. ¶ 7, 12; Martin Decl. ¶ 7, 12; Rivera Decl. ¶ 6, 16). They generally speak with the ADC employees only in the context of providing advice on litigation. (Oosterbaan Decl. ¶ 12; Martin Decl. ¶ 12; Rivera Decl. ¶ 16). ADC has its own patent attorneys responsible for prosecution of patents relating to Abbott's blood-glucose testing technology. (Rivera Decl. ¶ 4). Those ADC lawyers do not report to any of the Abbott in-house litigators and do not manage the present litigation. (*Id.*).

These facts, established by uncontroverted declarations, are more than adequate to demonstrate that Abbott's in-house litigators have no role in competitive decision-making. "Unrebutted statements made by counsel asserting that he does not participate in competitive

5

decisionmaking, which the court has no reason to doubt, form a reasonable basis to conclude that counsel is isolated from competitive decisionmaking." *Intel Corp. v. VIA Techs., Inc.*, 198 F.R.D. 525, 531 (N.D. Col. 2000). *See also Volvo*, 187 F.R.D. at 244 (granting in-house counsel access based on an "unrebutted affidavit averring that she does not participate in competitive decision-making").

### C. Granting Abbott's In-House Litigation Lawyers Access To All Confidential Information Does Not Increase The Risk Improper Disclosure

Ms. Oosterbaan's, Mr. Martin's and Mr. Rivera's declarations explain that they are routinely granted access to all confidential information in similar circumstances;[4] they understand the terms of the protective order; they have experience complying with protective orders when providing legal advice to their client; and their compliance with protective orders has never been questioned. (Oosterbaan Decl. ¶¶ 8-11; Martin Decl. ¶¶ 8-11; Rivera Decl. ¶¶ 12-15). Under these circumstances, there is no more risk that Abbott's in-house litigators will inadvertently disclose confidential information while performing their obligations as part of the litigation team advising and representing Abbott than there is that outside counsel for Bayer, Lifescan and Nova will inadvertently disclose Abbott confidential information when consulting with their clients. *See, e.g., U.S. Steel Corp.*, 730 F.2d at 1468 ("Denial or grant of access, however, cannot rest on a general assumption that one group of lawyers are more likely or less likely inadvertently to breach their duty under a protective order."); *Boehringer Ingelheim Pharm. Inc. v. Hercon Labs. Corp.*, 1990 WL 160666, at *2 (D. Del. Oct. 12, 1990) ("[T]he risk

---

[4] In fact, Bayer has already granted Abbott's in-house litigators, including Mr. Rivera, access to its Highly Confidential Information in on-going litigation between the parties. *See*, Ex. 2 (Protective Order from *Abbott Diabetes Care, Inc. v. Roche Diagnostics Operations, Inc., and Bayer Healthcare, LLC*, Case No. 05-3117 (N.D. Cal)) at pp. 5-7.

of disclosure of confidential information, purposeful or inadvertent, by retained counsel are the same as that of in-house counsel.").

In-house counsel can comply with protective orders when advising their client, just as well as outside counsel. *See, e.g., Carpenter Tech. Corp. v. Armco, Inc.*, 132 F.R.D. 24, 28-29 (E.D. Pa. 1990) (granting in-house counsel access and noting that "[h]e will be able to advise (without divulging confidential information) Welty, the individual with authority to settle litigation, on the strengths and weaknesses of *Carpenter*'s case and the desirability of pursuing settlement."). Both in-house and outside counsel "are officers of the court, are bound by the same Code of Professional Responsibility, and are subject to the same sanctions." *U.S. Steel Corp.*, 730 F.2d at 1468. Any suggestion that Abbott's in-house litigators should not be granted access to highly confidential information for fear of inadvertent disclosure to decision-makers at Abbott is as illogical as the suggestion outside counsel for the parties should not be granted such access because they might make inadvertent disclosures while advising their clients.

**D.     Abbott Will Be Unfairly Prejudiced If Denied Its Counsel Of Choice**

Abbott cannot effectively litigate this matter without its in-house litigators having access to all the litigation materials. At Abbott, unlike perhaps at other companies, the in-house litigators are extensively involved in and responsible for every significant litigation decision. They expect to attend depositions and hearings, participate in the drafting of all papers, and make all key litigation decisions. In other words, Ms. Oosterbaan, Mr. Martin and Mr. Rivera function very much like outside litigators might function at other companies. It is the in-house litigators and not outside counsel who advise Abbott on the significant litigation decisions in this case, subject to their obligations as mandated by the protective order and as enumerated in their declarations. (Oosterbaan Decl. ¶ 4; Martin Decl. ¶ 4; Rivera Decl. ¶ 8). Without access to all

materials produced in the litigation, Ms. Oosterbaan, Mr. Martin and Mr. Rivera will be unable to effectively and adequately serve their client and Abbott will be improperly deprived of its right to representation by counsel of its choice.

**E.     Defendants' Arguments Are Misplaced.**

The Opposing Defendants have not provided any legitimate basis for treating Abbott's in-house litigators differently from the outside lawyers in this litigation, and the cases on which they rely are readily distinguishable from the facts in this case. The Opposing Defendants rely on *Intel*, 198 F.R.D. 525 (N.D. Cal. 2000) for their argument that Abbott's in-house litigators should not be permitted to view HIGHLY CONFIDENTIAL information. However, *Intel* involved a motion to modify an existing protective order. The court in *Intel* thus shifted the burden of proof onto the party seeking in-house counsel access (Intel) to prove that the existing protective order would prejudice its case <u>if the order was not modified to include in-house counsel</u>, *i.e.*, to demonstrate "good cause" for the modification. *See Intel*, 198 F.R.D. at 528.[5] This standard is not appropriate here because Abbott is not seeking to modify any existing protective order. As already noted, where a protective order is first being entered, courts have uniformly required the party seeking to limit access to demonstrate that opposing counsel are competitive decision makers.

Moreover, the court denied Intel's in-house counsel, Ms. Fu, access to confidential information in part because it found that Ms. Fu had made no "demonstration of specialized

---

[5] *Allegheny Ludlum Corp. v. Nippon Steel Corp.*, No. 89-5940, 1990 U.S. Dist. LEXIS 867 (E.D. Pa. Jan. 25, 1990) is likewise distinguishable because it involved a motion to modify an agreed protective order to add in-house attorneys who had been voluntarily excluded from having access to confidential information at the time the negotiated protective order was originally entered. *Id.* at *5 to *6. In that context, there was a high burden on the movant to justify modifying the protective order. *Id.* at *8.

knowledge" and had "limited experience." *Intel*, 198 F.R.D. at 529. By contrast, assuming that the experience of inside counsel is relevant to the court's overall balancing test, Abbott's in-house litigators have established without contradiction that they possess extensive experience not only in handling patent-infringement cases in general, but in handling patent-infringement cases for Abbott. (*See* Oosterbaan Decl.; Martin Decl.; Rivera Decl.).

Abbott's outside counsel cannot replicate the knowledge and experience Ms. Oosterbaan, Mr. Martin and Mr. Rivera possess in handling patent-infringement cases for their client Abbott. Denying Abbott's in-house litigators access to HIGHLY CONFIDENTIAL information in this case will substantially deny Abbott and its outside counsel "access to the lawyers most familiar with their clients' business and the industry in which they compete . . . . who will have a much deeper and complete understanding of the documents being produced and of the expert testimony to be derived from it . . . . [thereby forcing Abbott to] fight with one hand behind their backs." *U.S. v. Sungard Data Sys., Inc.*, 173 F. Supp. 2d 20, 21 (D.D.C. 2001).

The *Akzo N.V. v. U.S. Int'l Trade Comm'n*, 808 F.2d 1471 (Fed. Cir. 1986) and *A. Hirsch, Inc. v. United States*, 657 F.Supp. 1297 (Ct. Int'l Trade 1987) decisions involved proceedings before the International Trade Commission ("ITC") rather than district court proceedings. In that context, the disclosure of confidential information was governed by 19 U.S.C. § 1561a(b)(2)(B), which favors limited disclosure of confidential information, rather than Fed. R. Civ. P. 26, which favors full and open discovery.

The *Hirsh* is also distinguishable because that court focused on a very unique fact - the "close family relationship" between the in-house attorney and the competitive decision makers within company in denying that attorney access to confidential information. *Hirsh*, 657 F. Supp. at 1303-04. No such relationship exists in the present instance. Abbott's in-house lawyers have

explained that given Abbott's corporate structure they are isolated from ADC, the business unit that makes such decisions for the products at issue in this litigation. They do not interact with those business people except in the context of potential or pending litigation. Abbott's inside litigators should have the same access to confidential information as Abbott's outside litigators.

### III.   CONCLUSION

There is no reasonable justification to discriminate against Ms. Oosterbaan, Mr. Martin and Mr. Rivera in formulating a protective order for this case. Nothing in the record suggests that any of these lawyers pose a risk to the confidentiality of any party's information. For the foregoing reasons, Abbott requests that the Court enter the Plaintiffs' form of the proposed protective order allowing Ms. Oosterbaan, Mr. Martin and Mr. Rivera access to confidential and highly confidential documents.[6]

---

[6] The Opposing Defendants claim that granting Abbott's in-house litigators access to "both CONFIDENTAL and HIGHLY CONFIDENTIAL INFORMATION effectively [collapses] those categories into a single tier and [eliminates] the added protection a two-tier order would provide." Answering Brief (D.I. 151) at p. 7. This argument is incorrect because there are differences in witness access to documents marked CONFIDENTAL versus HIGHLY CONFIDENTIAL. Compare Roche Ex. A, Protective Order, ¶¶ 4.2(b) (providing access to "up to three (3) in-house attorneys or Other Counsel") and 4.3(b) providing access to "any of the three (3) in-house attorneys . . . from Section 4.2(b)" but not to Other Counsel). In any event, in negotiating the Protective Order, Abbott suggested using a single tier and believes such an order would be appropriate provided it places Abbott's in-house litigators on equal footing with outside counsel.

|  |  |
|---|---|
| | /s/ Anne Shea Gaza |
| | Frederick L. Cottrell, III (#2555) |
| OF COUNSEL: | cottrell@rlf.com |
| Edward A. Mas II | Anne Shea Gaza (#4093) |
| Stephen F. Sherry | gaza@rlf.com |
| Kirk Vander Leest | Richards, Layton & Finger, P.A. |
| James M. Hafertepe | One Rodney Square |
| McAndrews, Held & Malloy, Ltd. | 920 N. King Street |
| 500 West Madison Street, 34th Floor | Wilmington, DE 19801 |
| Chicago, Illinois 60661 | (302) 651-7700 |
| (312) 775-8000 | |
| | *Attorneys for Abbott Diabetes Care Inc. and* |
| Dated: May 5, 2008 | *Abbott Diabetes Care Sales Corp.* |

11

RLF1-3279934-1

## CERTIFICATE OF SERVICE

I hereby certify that on May 5, 2008, I caused to be served by electronic service and hand delivery the foregoing document and electronically filed the same with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following:

Philip A. Rovner
Potter Anderson & Corroon LLP
1313 N. Market Street
P.O. Box 951
Wilmington, DE 19899-0951

Mary W. Bourke
Connolly, Bove, Lodge & Hutz LLP
The Nemours Building
1007 N. Orange Street
P.O. Box 2207
Wilmington, DE 19899-1347

John W. Shaw
Young, Conaway, Stargatt & Taylor, LLP
1000 West Street, 17th Floor
Wilmington, DE 19801

Rodger D. Smith, II
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899

Steven J. Balick
Ashby & Geddes
500 Delaware Avenue, 8th Floor
P. O. Box 1150
Wilmington, DE 19899

I hereby certify that on May 5, 2008, the foregoing document was sent via electronic mail to the following non-registered participants:

Daniel A. Boehnen
Grantland G. Drutchas
McDonnell Boehnen Hulbert
 & Berghoff LLP
300 South Wacker Drive
Chicago, IL 60606

Ashley L. Ellis
Michael G. Adams
Parker Poe Adams & Bernstein LLP
Three Wachovia Center, Suite 3000
401 South Tryon Street
Charlotte, NC 28202

| | |
|---|---|
| Wesley E. Overson<br>Rachel Krevans<br>Parisa Jorjani<br>Daniel P. Muino<br>Morrison & Foerster LLP<br>425 Market Street<br>San Francisco, California 94105-2482 | Bradford J. Badke<br>Sona De<br>Michael Kahn<br>Ropes & Gray<br>1211 Avenue of the Americas<br>New York, NY 10036-8704 |
| Joseph M. Casino<br>Kenneth P. George<br>Amster, Rothstein & Ebenstein, LLP<br>90 Park Avenue<br>New York, NY 10016 | |

/s/ Anne Shea Gaza
Anne Shea Gaza (#4093)
gaza@rlf.com