IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ROCHE DIAGNOSTICS OPERATIONS, INC., )
and CORANGE INTERNATIONAL LIMITED, )
                                       )
        Plaintiffs,                   )
                                       )
        v.                        )   Civil Action No. 07-753-JJF
                                       )
ABBOTT DIABETES CARE,        )   **REDACTED –**
INCORPORATED, ABBOTT DIABETES  )   <u>**PUBLIC VERSION**</u>
CARE SALES CORPORATION, BAYER  )
HEALTHCARE, LLC, DIAGNOSTICS   )
DEVICES, INC., LIFESCAN,        )
INCORPORATED, and NOVA BIOMEDICAL )
CORPORATION                   )
                                       )
        Defendants.            )

## DEFENDANT BAYER HEALTHCARE, LLC'S ANSWERING BRIEF<br>IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL

Rachel Krevans
Wesley E. Overson
Parisa Jorjani
Daniel P. Muino
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
(415) 268-7000

Kenneth P. George
Joseph M. Casino
AMSTER ROTHSTEIN & EBENSTEIN LLP
90 Park Avenue
New York, NY 10016
(212) 336-8000

YOUNG CONAWAY STARGATT
& TAYLOR, LLP
John W. Shaw (No. 3362)
Jeffrey T. Castellano (No. 4837)
1000 West Street, 17th Floor
Wilmington, DE 19801
jcastellano@ycst.com
(302) 571-6600

*Attorneys for Bayer Healthcare, LLC*

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ............................................................................................ ii

NATURE AND STAGE OF THE PROCEEDINGS ........................................................ 1

SUMMARY OF ARGUMENT ....................................................................................... 1

STATEMENT OF FACTS .............................................................................................. 3

      A.    Discovery Schedule ................................................................................ 3

      B.    Roche's Discovery Requests.................................................................. 4

      C.    Bayer's Production in Phase I................................................................ 4

ARGUMENT .................................................................................................................. 6

      A.    Roche's Demand For Immediate Production Of All Remaining
            Responsive Documents Is Unwarranted ............................................... 6

      B.    Bayer Has Agreed To Produce The Development Agreements
            With Matsushita..................................................................................... 7

      C.    Bayer Has Agreed To Produce Discovery In Phase I Regarding Its
            Affirmative Defenses Of Waiver, Estoppel, Unclean Hands,
            Forfeiture, Acquiescence, and License ................................................. 8

      D.    Bayer Does Not Supply Any Blood Glucose Meters From the U.S.
            For Sale Overseas, And Therefore Has No Responsive Documents
            On This Subject...................................................................................... 8

      E.    Bayer's Knowledge Of The Patent Applications Prior To The
            Issuance Of The Patents-in-Suit Is Not Relevant To Inducement ........ 11

      F.    Bayer's Decisions To Introduce The Accused Products Are Not
            Relevant To Inducement ....................................................................... 12

      G.    Roche's Demand For "All" Responsive Documents Is Overly
            Broad And Unduly Burdensome............................................................ 13

CONCLUSION............................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Coleman v. American Red Cross*,
    23 F.3d 1091 (6th Cir. 1994) ..................................................................................13

*Joy Techs., Inc. v. Flakt, Inc.*,
    6 F.3d 770 (Fed. Cir. 1993)......................................................................................8

*National Presto Indus., Inc. v. West Bend Co.*,
    76 F.3d 1185 (Fed. Cir. 1996).............................................................................11, 12

*NTP, Inc. v. Research in Motion, Ltd.*,
    418 F.3d 1282 (Fed. Cir. 2005)...............................................................................9

*Standard Havens Prods., Inc. v. Gencor Indus., Inc.*,
    953 F.2d 1360 (Fed. Cir. 1991)...............................................................................9

*Union Carbide Chems & Plastics Tech. Corp. v. Shell Oil Co.*,
    425 F.3d 1366 (Fed. Cir. 2005)...............................................................................10


STATUTES

35 U.S.C.
    § 271(f)................................................................................................*passim*
    § 271(f)(1)&(2) ......................................................................................................9

Federal Rules of Civil Procedure
    Rule 16...............................................................................................................1, 3
    Rule 26.............................................................................................................12, 13
    Rule 26(b)(2)(C) ...................................................................................................13
    Rule 34.................................................................................................................6
    Rule 34(b)(1)(B) ....................................................................................................6
    Rule 34(b)(2)(A) ....................................................................................................6

Defendant Bayer Healthcare, LLC ("Bayer") submits this answering brief in opposition to the motion of plaintiffs Roche Diagnostics Operations, Inc. and Corange International Ltd. (collectively, "Roche") to compel discovery.

## NATURE AND STAGE OF THE PROCEEDINGS

On November 21, 2007, Roche filed the present action against defendants for alleged infringement of U.S. Patents No. 7,276,146 (the "'146 Patent") and No. 7,276,147 (the "'147 Patent"), covering methods used in blood glucose monitoring products. D.I. 1. Bayer answered the complaint on January 11, 2008. D.I. 41.

On February 28, 2008, the Court adopted the Rule 16 Scheduling Order proposed by defendants. D.I. 76, 77. The final version of the Order was entered on April 24, 2008. D.I. 147. Under the Scheduling Order, discovery is divided into two phases: Phase I encompasses infringement and prior invention issues, and Phase II encompasses invalidity issues. *Id.* The parties have commenced Phase I written and documentary discovery, which is to be completed by June 27, 2008. *Id.* Deposition discovery in Phase I will occur thereafter, concluding on October 24, 2008. *Id.* Phase II discovery is not permitted to commence until all of Phase I discovery is complete. *Id.*

## SUMMARY OF ARGUMENT

Roche's motion to compel immediate production of Phase I documents from defendants is inappropriate and pointless. Under the Court's Scheduling Order, Phase I written and document discovery (pertaining to infringement and prior invention only) is to be completed by June 27, 2008. Bayer has already produced the majority of its responsive documents — roughly 45,000 pages, including detailed information on the design, function, research, and development of the accused products. Bayer is working diligently to review and produce additional

responsive documents.  Accordingly, Roche's demand for prompt production of documents is wholly unnecessary.

Of the other categories of discovery requested in Roche's motion, two are moot in light of Bayer's agreement to produce the requested discovery, and three more are simply not relevant to this litigation:

1.    Bayer has agreed to provide its development agreements with Matsushita.

2.    Bayer has agreed to provide discovery in Phase I on its affirmative defenses of waiver, estoppel, unclean hands, forfeiture, acquiescence, and license.

3.    Roche is not entitled to discovery regarding Bayer products sold overseas, as such products cannot infringe Roche's method claims under any theory.  Roche argues that products sold overseas can infringe under 35 U.S.C. § 271(f), which makes it an act of infringement to supply components of a patented invention from the United States for combination overseas "in a manner that would infringe the patent if such combination occurred within the United States."  But Section 271(f) is inapplicable, for at least two reasons.  ██████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████

4.    Roche is not entitled to discovery concerning Bayer's pre-issuance knowledge of the applications for the patents-in-suit.  The Federal Circuit has made clear that any activities

occurring before patents are issued cannot induce infringement of those patents. Accordingly, Bayer's pre-issuance knowledge is irrelevant to Roche's infringement case.

5.      Similarly, Roche is not entitled to discovery regarding Bayer's decisions to introduce the accused products, since those decisions occurred well before the patents-in-suit issued on October 2, 2007. As such, the requested discovery is not relevant to inducement.

Finally, Roche's demand that Bayer produce "all" responsive documents in its possession is overbroad and unduly burdensome. Bayer has produced a substantial volume of documents that is more than sufficient to disclose the details of the accused products and allow Roche to perform its infringement analysis.

For these reasons, Roche's motion to compel should be denied.

## STATEMENT OF FACTS

**A.      Discovery Schedule**

On February 8, 2008, the Court conducted the first scheduling conference in this case. D.I. 70. At that conference, the Court directed that discovery be divided into two phases: Phase I would cover infringement and prior invention issues, and Phase II would cover invalidity issues. D.I. 70 at 27-28. On February 22, 2008, the parties submitted a proposed Rule 16 Scheduling Order containing a number of competing proposals from Roche and the defendants. D.I. 76. On February 28, 2008, the Court adopted defendants' scheduling proposals. D.I. 77. The final version of the Rule 16 Scheduling Order was entered on April 24, 2008. D.I. 147.

Under the Scheduling Order, Phase I written and document discovery is scheduled to conclude on June 27, 2008. D.I. 147, § 3(a)(i)(1). Deposition discovery in Phase I will occur thereafter, concluding on October 24, 2008. *Id.*, § 3(a)(ii)(1).

**B.**    **Roche's Discovery Requests**

Roche served its discovery requests on defendants more than a month before the details of the phased discovery schedule were adopted by the Court. Roche served its First Set of Interrogatories (Nos. 1-18) ("Roche's interrogatories") and First Set of Requests for Production of Documents and Things (Nos. 1-119) ("Roche's document requests") on January 23, 2008. D.I. 55. Roche's discovery requests were directed broadly to all claims and defenses, including infringement, invalidity, unenforceability, willfulness, and damages. Once the Court announced its intention to divide discovery into phases, Roche withdrew some of its discovery requests and placed limitations on others. D.I. 136, Ex. K. Nonetheless, numerous discovery requests directed to Phase I issues still remained.

On February 29, 2008, Bayer served written responses and objections to Roche's interrogatories and document requests. D.I. 136, Exs. L & M. Among other things, Bayer objected to requests outside the scope of Phase I discovery that Roche had refused to withdraw. *Id.* On March 21, 2008, Bayer received meet-and-confer letters from Roche regarding a number of discovery issues. Exhibits ("Ex.") 1 & 2. Bayer responded on March 31, 2008. Exs. 3 & 4. On April 3, 2008, Roche and Bayer had a conference call to discuss the outstanding discovery disputes. A few issues were resolved and possible resolutions were proposed for other issues. *See* Ex. 5. On April 22, 2008, Bayer sent another letter to Roche agreeing to a few more of Roche's discovery proposals. Ex. 6.

**C.**    **Bayer's Production in Phase I**

Bayer began producing documents to Roche on March 31, 2008, followed by additional productions on April 11, April 18, and April 25, 2008. Bayer has produced a substantial volume of documents and information relevant to the Phase I issue of infringement. As of today, Bayer has produced roughly 45,000 pages of documents concerning the accused Bayer products. This

constitutes the majority of responsive documents Bayer has agreed to produce in Phase I.  Bayer

is diligently collecting and reviewing additional responsive documents and will produce them as

soon as feasible.  Bayer's completed production will include, among other things:

- The Technical Reviews for each accused product (Contour, Contour TS, and BREEZE2), which contain detailed design and function information regarding the accused blood glucose meters and strips.

- The Design History Files for each accused product, comprising a record of the developmental history of the finished devices.

- Additional files comprising a record of research and development projects related to the accused products.

- Multiple samples of the accused products.

- Product manuals and other literature.

- Product advertisements.

- FDA 510(k) applications and approval letters for the accused products, as well as communications with the FDA.

- Development agreements for the Contour and Contour TS products.

In addition, Bayer has provided interrogatory responses disclosing the launch dates and

development locations of the accused products, the identity of a product developer, and the

identity of numerous individuals knowledgeable about the accused products.  Bayer will provide

responses to contention interrogatories at the appropriate time under the Scheduling Order.

Bayer believes that its Phase I production will be more than sufficient to provide Roche

with full details regarding the accused Bayer products for purposes of Roche's infringement

analysis.

## ARGUMENT

**A.    Roche's Demand For Immediate Production Of All Remaining Responsive Documents Is Unwarranted**

With two months remaining in the Phase I document discovery period, Bayer has already produced the majority of its responsive documents (roughly 45,000 pages). Nonetheless, Roche complains that Bayer's production is taking too long. Roche's demand for immediate production of all responsive documents is unreasonable and should be denied.

Under the Scheduling Order, Phase I document discovery is to be completed by June 27, 2008. D.I. 147, Sec. 3(a)(i)(1). Bayer has never suggested that it will wait until June 27, 2008 to produce its documents. Instead, Bayer has made clear that it will produce documents on a rolling basis (as Roche requested) as soon as they are ready for production. And Bayer has done exactly that, producing roughly 45,000 pages of responsive documents over the last month. These documents comprise the bulk of Bayer's responsive materials for Phase I. Bayer is working diligently to produce additional responsive documents as soon as they are ready.

Roche had previously asked the defendants to substantially complete their productions by April 30, 2008. D.I. 135 at 4. In its motion, Roche asks the Court to order substantial completion of defendants' productions within one week of the decision on the motion. *Id.* at 5. These are completely arbitrary and unnecessary deadlines. The Court has set June 27, 2008 as the date for completion of Phase I document discovery, and Bayer is well on its way to meeting that deadline with time to spare.

Citing to Federal Rule of Civil Procedure 34, Roche erroneously argues that defendants were required to produce all responsive documents within 30 days of service of Roche's requests. D.I. 135 at 5. But the 30-day period specified by Rule 34(b)(2)(A) is for serving *written responses* to the document requests, not for producing the documents themselves.

Document requests must allow a "reasonable time" for production of documents.  *See* Fed. R.

Civ. P. 34(b)(1)(B).  Roche itself originally requested that defendants produce documents on a

rolling basis.  Given the volume of documents that Bayer has had to collect, review, and produce,

the timing of its rolling production has been very reasonable.

While Roche contends that it needs immediate production of all documents in order to

have time for meet-and-confer activities, the meet-and-confer process is already substantially

underway.  Bayer timely served its written responses to Roche's discovery requests on

February 29, 2008.  *See* D.I. 136, Exs. L & M.  Those responses set forth the scope of documents

that Bayer agreed to produce.  Roche and Bayer exchanged meet-and-confer letters in March and

had a conference call concerning discovery in early April 2008.  *See* Exs. 1-5.  Several disputes

were ironed out and the parties clarified their respective discovery positions.  *See* Ex. 6.

Accordingly, the parties are well along in the meet-and-confer process and should have no

trouble resolving outstanding issues by the Phase I document discovery cut-off.

Because Bayer has been conscientiously discharging its Phase I discovery obligations,

Roche's demand for immediate production of documents is unwarranted.

## B.    Bayer Has Agreed To Produce The Development Agreements With Matsushita

Roche seeks production of licenses and other agreements pertaining to the design and

development of the accused products.  *See* D.I. 135 at 5-6.  Bayer has previously disclosed to

Roche that Matsushita Electric Industrial Co., Ltd., was the developer of Bayer's Contour and

Contour TS products.  Bayer has agreed to produce in Phase I the development agreements with

Matsushita.  *See* Ex. 6.  These are the only agreements in Bayer's possession responsive to

Roche's request.

**C.  Bayer Has Agreed To Produce Discovery In Phase I Regarding Its Affirmative Defenses Of Waiver, Estoppel, Unclean Hands, Forfeiture, Acquiescence, and License**

Roche seeks discovery in Phase I regarding Bayer's Fourth Affirmative Defense (waiver, estoppel, unclean hands, forfeiture, and acquiescence) and Sixth Affirmative Defense (patent license).  Bayer has agreed to produce the requested discovery.  *See* Ex. 6.

**D.  Bayer Does Not Supply Any Blood Glucose Meters From the U.S. For Sale Overseas, And Therefore Has No Responsive Documents On This Subject**

Roche seeks documents from Bayer relating to accused products supplied from and sold outside of the United States.  D.I. 135 at 7-8.  Because the patents-in-suit contain only method claims, it is clear that merely making products in the United States for sale overseas cannot amount to infringement — the claimed methods must actually be used in order to infringe.  *See Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 773 (Fed. Cir. 1993) ("a method or process claim is directly infringed only when the process is performed").  In an effort to extend the coverage of its patents to products sold abroad, Roche invokes 35 U.S.C. § 271(f), which makes it an act of infringement to supply components of a patented invention from the United States for combination overseas "in a manner that would infringe the patent if such combination occurred within the United States."  For at least two reasons, 35 U.S.C. § 271(f) is inapplicable to Bayer's products.





Under both parts of that section, liability arises only if components of the patented invention are supplied from the United States for combination abroad "*in a manner that would infringe the patent if such combination occurred within the United States.*" 35 U.S.C. § 271(f)(1)&(2) (emphasis added). The mere combination of the Contour, Contour TS, or BREEZE2 meters and strips could not infringe Roche's method claims, even if such combination occurred within the United States.

A method claim is only infringed when its steps are performed. *See NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282, 1322 (Fed. Cir. 2005) ("[t]he invention recited in a method claim is the performance of the recited steps"). The claimed steps of the patents-in-suit necessarily include, *inter alia*, (i) placing a test strip in a blood glucose meter, (ii) applying a blood sample to the test strip, (iii) executing the process for determining the blood glucose concentration, and (iv) providing a readout of the blood glucose concentration on the meter. *See* '146 Patent, Claim 1 (D.I. 1, Ex. A); '147 Patent, Claim 1 (D.I. 1, Ex. B). Simply combining the meter and the strip (*i.e.*, placing a strip in the meter) is not the same as performing all of the claimed steps. Such combination, without actual use of the meter and strip, would not infringe the patents-in-suit, even if it occurred in the United States. *See Standard Havens Prods., Inc. v. Gencor Indus., Inc.*, 953 F.2d 1360, 1374 (Fed. Cir. 1991) (sale in the U.S. of an apparatus for

carrying out a claimed process did not infringe the process claim under § 271(f) where the customer took the apparatus and practiced the process abroad). Accordingly, Section 271(f), by its plain terms, does not apply to the Contour or Contour TS meters and strips, or to the BREEZE2 strips. *See NTP*, 418 F.3d at 1322 ("it is difficult to conceive of how one might supply or cause to be supplied all or a substantial portion of the steps of a patented method in the sense contemplated by . . . section 271(f)").

Moreover, the BREEZE2 strips can only function in conjunction with blood glucose meters. They cannot be accused of infringing Roche's method claims on their own.



For this reason as well, Section 271(f) cannot apply to BREEZE2.

Roche relies on *Union Carbide Chems & Plastics Tech. Corp. v. Shell Oil Co.*, 425 F.3d 1366 (Fed. Cir. 2005), to support its argument for applying Section 271(f) in this case. But *Union Carbide* is distinguishable from the present facts. In that case, defendant Shell was found to manufacture and ship catalysts to foreign customers for use in a patented process for making a type of gas. *Id.* at 1379. In distinguishing other authorities, the court observed that "Shell supplies *all* of its catalysts from the United States directly to foreign affiliates." *Id.* (emphasis added). Consequently, the court concluded that Section 271(f) applied to the catalysts sold overseas.

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

██████████████

For these reasons, Section 271(f) is inapplicable to the accused Bayer products sold overseas. Roche's demand for documents concerning the accused products sold abroad should be denied.

**E.    Bayer's Knowledge Of The Patent Applications Prior To The Issuance Of The Patents-in-Suit Is Not Relevant To Inducement**

As noted in Roche's motion, Bayer has agreed to produce documents (if any) related to Bayer's knowledge of the patents-in-suit. Bayer also agreed to record on its privilege log any legal opinions in its possession regarding the patents-in-suit. Any discovery produced on these subjects would, of course, post-date the October 2, 2007 issue date of the patents-in-suit.

In addition to these documents, Roche also seeks documents relating to "knowledge of the underlying patent applications for the patents-in-suit." D.I. 135 at 9. Roche claims that these pre-issuance documents are somehow relevant to the issue of inducement. But as a matter of law, pre-issuance activities cannot constitute inducement and, hence, are irrelevant to the inducement inquiry.

The Federal Circuit has made perfectly clear that pre-issuance actions cannot qualify as inducement of infringement:

> We conclude . . . that as a matter of law § 271(b) does not reach actions taken before issuance of the adverse patent. . . . [W]hen no patent has issued at the time of the inducement there cannot be a violation of § 271(b). The principle of liability for "aiding and abetting" the wrongful acts of others is not imposed retrospectively, to make illegal an act that was not illegal when it was done. That is, if the thing that was abetted was not illegal at the time of abetment, but depended on some future event that

11

might not occur (such as issuance of the patent) liability can not be retroactively imposed.

*National Presto Indus., Inc. v. West Bend Co.*, 76 F.3d 1185, 1196 (Fed. Cir. 1996). While Roche is correct that knowledge of an allegedly-infringed patent is a required element of inducement, there can be no "knowledge" of that patent and no induced infringement before the patent issues. Accordingly, documents concerning Bayer's pre-issuance knowledge of the applications for the patents-in-suit are not relevant to inducement. Roche's request for these documents should be denied.

### F.    Bayer's Decisions To Introduce The Accused Products Are Not Relevant To Inducement

Roche seeks documents relating to Bayer's decisions to introduce the accused products. D.I. 135 at 9-10. Roche argues that such documents would be relevant to its inducement case. But the accused Bayer products were all introduced prior to the October 2, 2007 issuance of the Roche patents. Consequently, Bayer's decision to introduce the products is not relevant to inducement.

Bayer began selling the accused Contour test strips in the United States in September 2006, and the meters in December 2006. Brown Decl., ¶ 4. Bayer began selling the BREEZE2 test strips and meters in December 2006. Wilcox Decl., ¶ 3. The Contour TS test strips and meters began selling in August 2007. Brown Decl., ¶ 5. Obviously, the decisions to introduce these products were made before the launch dates. Because these decisions occurred well before the October 2, 2007 issuance date, they are not relevant to Roche's inducement case. *National Presto*, 76 F.3d at 1196 ("we hold that the general rule is that inducement of infringement under § 271(b) does not lie when the acts of inducement occurred before there existed a patent to be infringed").

### G.    Roche's Demand For "All" Responsive Documents Is Overly Broad And Unduly Burdensome

Roche seeks "all responsive documents, not just representative documents" from Bayer in response to Roche's requests. D.I. 135 at 10. While Roche is entitled to discover non-privileged information relevant to the claims and defenses in suit, this right is not without limits. Federal Rule of Civil Procedure 26 defines the limits on discovery in civil litigation. Specifically, Rule 26 does not permit overly broad and unduly burdensome requests. In fact, in response to requests such as those proposed by Roche, Rule 26 requires the court to limit discovery. Fed. R. Civ. P. 26(b)(2)(C) ("On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed"). In pertinent part, the rule specifically limits "unreasonably cumulative or duplicative" discovery and discovery where the "burden or expense . . . outweighs its likely benefit." Fed. R. Civ. P. 26(b)(2)(C); *see also Coleman v. American Red Cross*, 23 F.3d 1091, 1098 (6th Cir. 1994) (affirming district court decision to limit discovery as overbroad and unduly burdensome where defendant would have been required "to search every file that exists" in order to locate requested documents).

Bayer is a multinational company with thousands of employees. The Diabetes Care division alone has hundreds of employees in various locations throughout the United States and many hundreds more around the world. The company maintains extensive paper files and electronic files in order to effectively manage their business. While only a very small percentage of these files would be responsive to Roche's requests, in order to ensure the production of *all* responsive documents, Bayer would have to search through all of its hard copy files, an unquantifiable burden, and terabytes of electronic data. Such a search would take longer than the few months allowed for Phase I of this case, would produce cumulative or duplicative documents, and would be enormously costly.

Instead, Bayer has taken a reasonable and feasible approach.  Where Roche sought overbroad, cumulative, and burdensome discovery, Bayer agreed to produce responsive documents "sufficient to show" the issue in each of Roche's requests.  Subsequently, Bayer agreed to produce *all* non-privileged documents in the Design History Files and the Technical Reviews for each of the accused products.  *See* Ex. 4.  These voluminous files contain all the official documents used by Bayer to track product development from initiation to post-product launch improvements.  Specifically, the Design History Files are a compilation of records that describe the development history of the products.  The Technical Reviews contain detailed design and function information regarding the blood glucose meters and strips.  Additionally, Bayer has agreed to produce documents beyond these files including public advertisements of the accused products, the entire FDA submission file for each of the products, and corporate organization charts within Bayer Diabetes Care.  Bayer has also agreed to produce evidence of knowledge of the patents in suit, to the extent that such evidence exists and is not privileged.  These documents are more than sufficient to disclose all details of the accused products and allow Roche to perform its infringement analysis.

## CONCLUSION

Bayer has been diligent in satisfying its discovery obligations in Phase I. Bayer has already produced the majority of its responsive documents and expects to produce the remainder in short order. Bayer respectfully submits that Roche's motion to compel is unwarranted and unnecessary, and should be denied.

Respectfully submitted,

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

John W. Shaw (No. 3362)
Jeffrey T. Castellano (No. 4837)
1000 West Street, 17th Floor
Wilmington, DE 19801
(302) 571-6600
jcastellano@ycst.com
*Attorneys for Bayer Healthcare, LLC*

OF COUNSEL:

Rachel Krevans
Wesley E. Overson
Parisa Jorjani
Daniel P. Muino
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
(415) 268-7000

Kenneth P. George
Joseph M. Casino
AMSTER ROTHSTEIN & EBENSTEIN LLP
90 Park Avenue
New York, NY 10016
(212) 336-8000

April 28, 2008

## CERTIFICATE OF SERVICE

I, Jeffrey T. Castellano, Esquire, hereby certify that on May 5, 2008, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

Philip A. Rovner, Esquire
Potter Anderson & Corroon LLP
1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951

Frederick L. Cottrell, III, Esquire
Anne Shea Gaza, Esquire
Richards Layton & Finger PA
One Rodney Square
920 North King Street
Wilmington, DE 19801

Mary W. Bourke, Esquire
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899

Rodger D. Smith, II, Esquire
Morris Nichols Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347

Steven J. Balick, Esquire
Lauren E. Maguire, Esquire
Ashby & Geddes
500 Delaware Avenue
P.O. Box 1150
Wilmington, DE 19899

I further certify that on May 5, 2008, I caused a true and correct copy of the

foregoing document to be served by e-mail on the above-listed counsel of record and on the

following non-registered participants in the manner indicated:

**BY E-MAIL**

Daniel A. Boehnen, Esquire [boehnen@mbhm.com]
Grantland G. Drutchas, Esquire [drutchas@mbhb.com]
Gary E. Hood, Esquire [hood@mbhb.com]
Nicole Keenan, Esquire [keenan@mbhb.com]
Paula S. Fritsch, Esquire [Fritsch@mbhb.com]
Sherri L. Oslick, Esquire [oslick@mbhb.com]
Jeffrey P. Armstrong [armstrongj@mbhb.com]
McDonnell Boehnen Hulbert & Bergoff LLP
300 South Wacker Drive
Chicago, IL  60606

Bradford J. Badke, Esquire [jim.badke@ropesgray.com]
Sona De, Esquire [sona.de@ropesgray.com]
Michael Kahn, Esquire [michael.kahn@ropesgray.com]
Ropes & Gray LLP
1211 Avenue of the Americas
New York, NY  10036-8704

Michael G. Adams, Esquire [mikeadams@parkerpoe.com]
Ashley L. Ellis, Esquire [ashleyellis@parkerpoe.com]
Parker Poe Adams & Bernstein LLP
Three Wachovia Center, Suite 3000
401 South Tryon Street
Charlotte, NC  28202

Edward A. Mas II, Esquire [emas@mcandrews-ip.com]
Stephen F. Sherry, Esquire [ssherry@mcandrews-ip.com]
Kirk A. Vander Leest, Esquire [kvanderleest@mcandrews-ip.com]
James M. Hafertepe, Esquire [jhafertepe@mcandrews-ip.com]
Merle S. Elliott, Esquire [melliott@mcandrews-ip.com]
McAndrews, Held & Malloy, Ltd.
500 West Madison Street
Chicago, IL  60661

YOUNG CONAWAY STARGATT
    & TAYLOR, LLP

*/s/ Jeffrey T. Castellano*
John W. Shaw (No. 3362) [jshaw@ycst.com]
Jeffrey T .Castellano (No. 4837)
[jcastellano@ycst.com]
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19899
(302) 571-6600

*Attorneys for Defendant Bayer Healthcare, LLC*

3

# EXHIBIT 1



**McDonnell Boehnen Hulbert & Berghoff LLP**

300 South Wacker Drive        312 913 0001 phone
Chicago, Illinois 60606-6709   312 913 0002 fax
www.mbhb.com

March 21, 2008

**Sent Via e-mail and First class mail**

Daniel P. Muino, Esq.
Morrison & Foerster
425 Market Street
San Francisco, CA 94105

**Re: Roche v. Abbott et al. Civil Action No. 04-CV-4765 (JJF)**

Dear Mr. Muino,

We have reviewed Bayer's objections and responses to Roche's First Set of Interrogatories 1-18 and want to identify some deficiencies with the responses and some concerns we have with the objections. The following is a preliminary identification of concerns relating to the Phase I issues of infringement, claim construction, and prior invention. There may be additional issues following review of Bayer's document production, and later in this Phase or later Phases of the case, but our most pressing concerns are outlined below.

<u>Interrogatories – General Objections</u>

Bayer has set forth a list of General Objections to the Interrogatories which purport to apply to all of Bayer's responses. Our concerns with Bayer's General Objections are set forth below:

In General Objection 8, Bayer objects to all Interrogatories that do not define a relevant time period and contends that Products sold by Bayer prior to October 2, 2007, and information thereon are not relevant. Plaintiffs note that the Interrogatories encompass information predating October 2, 2007, including but not limited to research, development and design information relating to Bayer products that are accused of infringement. Such pre-October 2, 2007 information is relevant to the issue of infringement and should be produced because that information relates directly to Bayer's post-October 2, 2007 accused products, and likely predecessor products, including but not limited to the activities outlined in paragraph 3 of page 1 of our other letter of today's date (outlining

deficiencies in Bayer's response to document requests) as well as to later-sold strips used with earlier sold meters. Please confirm that Bayer will not be withholding any information simply because it pre-dates October 2, 2007.

In General Objection 9, Bayer objects to the Interrogatories to the extent they "exceed the 25-interrogatory limit imposed by the Court's Rule 16 Scheduling Order." Plaintiffs disagree that any of the Interrogatories contain subparts that would cause the Interrogatory to be counted as more than one. The mere fact that an interrogatory enumerates a series of categories or types of information to be provided in the response does not mean that the interrogatory contains "subparts" within the meaning of Federal Rule 33 or Local Rule 26.1(a). *See* Fed. Rule Civ. Proc. 33, Advisory Committee Note on 1993 Amendments ("Parties cannot evade this presumptive limitation through the device of joining as "subparts" questions that seek information about *discrete separate subjects*. However, a question asking about communications of a particular type should be treated as a single interrogatory even though it requests that the time, place, persons present, and contents be stated separately for each such communication.")(emphasis added). Plaintiffs will respond more particularly where this objection was specifically raised in response to an Interrogatory. In any event, it unclear from Bayer's responses which subparts Bayer contends constitute separate Interrogatories. Bayer was directed on February 29, in response to your emailed question, to respond to Interrogatory Nos.1-5, 8, 12, 14-16, and Interrogatory No. 12 was subsequently withdrawn. Please identify Bayer's position, then, with respect to which subparts of these pending Interrogatories that Bayer contends constitute separate Interrogatories.

In General Objection 14, Bayer objects to the extent the Interrogatories "seek documents relating to the use, sale, offers for sale, distribution, licensing, or any other transaction outside the United States." Such information is relevant to the issues of infringement to the extent they relate to transactions within the United States. For example, sales, offers to sell; distribution, and importation into the United States of blood glucose test meters and/or test strips are clearly relevant to infringement under 35 U.S.C. 271 (a)-(c) and exportation out of the United States is relevant to infringement under 35 U.S.C. 271(f). Please confirm that General Objection 14 applies only to such acts and transactions that have no relation to the United States and that General Objection 14 does not apply to transactions that are related to the United States.

In General Objection 15, Bayer objects to the Interrogatories to the extent they seek publicly available information that can be obtained as easily by Plaintiffs as by Bayer and to

the extent they are already in the possession of Plaintiffs. The fact a document or information can be located elsewhere is not a ground for withholding documents or information. Furthermore, Bayer's very possession of certain publicly available information may itself lead to the discovery of highly relevant, admissible evidence. Thus, Plaintiffs request Bayer to withdraw General Objection 15. To the extent that Bayer does withhold any documents or information on the grounds that the documents or information are publicly available or in Plaintiff's possession please identify with particularity the Interrogatories to which this General Objection applies. Moreover, to the extent that Bayer withholds any such documents or information on the basis of General Objection 15, Bayer must at least identify such documents or information with sufficient particularity for Plaintiffs to identify and locate the documents or information.

In General Objection 16, Bayer generally objects to the Interrogatories as premature to the extent the Requests seek information irrelevant to infringement or prior invention. In view of the Court's February 28, 2008 adoption of Defendants' proposed schedule, Plaintiffs do not challenge this objection. However, Plaintiffs believe General Objection 16 to be unnecessary and unwarranted in light of our letters and email withdrawing certain Interrogatories and specifically limiting others to comply with the Court's directives regarding the staging of discovery.

The foregoing identifies a number of concerns regarding Bayer's General Objections. However, as discovery proceeds, further concerns and issues may arise regarding Bayer's application of these General Objections, and Plaintiffs reserve the right to raise them in the future.

Specific Interrogatories

Interrogatory No.1:

In response to Interrogatory No. 1, Bayer objected to answering on the ground that specific claim terms including "capillary chamber" were vague and ambiguous and not defined in the Interrogatories. Further, Bayer provided information relating only to products specifically identified in the Complaint, specifically Bayer's ASCENSIA® CONTOUR® and BREEZE® 2 products. Plaintiffs see no merit to this objection and believe it should be withdrawn. Nonetheless, Plaintiffs agree that by identifying specific products in response to Interrogatory No. 1, Bayer is not admitting that such products contain a capillary chamber or otherwise infringe the patents-in-suit. In any event, Interrogatory No. 1 is not limited to products specifically identified in Plaintiffs' complaint, but encompasses any Bayer product having a blood sample volume of 1 µl or less and ten second or less test or readout time. In this regard, we note that Bayer sells a product named CONTOUR® TS that has a stated "8 second test time" and "0.6 microliter small sample size." Bayer

should supplement its response to include the CONTOUR® TS product and any other Bayer product having a blood sample volume of 1 µl or less and ten second or less test or readout time.

In addition, in response to Interrogatory No. 1 Bayer indicated that it would produce information "sufficient to show the structure and function of the accused products." As outlined in our other letter of today's date (outlining deficiencies in Bayer's response to document requests), Plaintiffs interrogatories are broader than merely seeking information "sufficient to show" the structure and operation of the identified products.   All information relating to the design, structure and operation should be produced.

Finally, we note that Bayer's response to Interrogatory No. 1 identified 19 individuals as knowledgeable regarding the ASCENSIA® CONTOUR® or BREEZE® 2 products.  However, Interrogatory No. 1 seeks the identification of those "most knowledgeable" regarding the identified products.  Therefore, for each product we request that Bayer provide its best estimate of who the three most knowledgeable people are with respect to each product.

Interrogatory No. 2:

In response to Interrogatory No. 2 that is generally directed to Bayer's research, development, and design effort for identified Electrochemical sensors, Bayer improperly contends that seeking information regarding the corporate structure relating to such research, development or design somehow constitutes a distinct Interrogatory.  Bayer's assertion is without merit and should be withdrawn.  Please also confirm that Bayer's response stating it will provide documents "sufficient to show its corporate structure relating to the development of the accused products" includes documents relating to the corporate structure for research and design as well.

Interrogatory No. 2 also requested an identification of each person (including third parties) that had a role in the research, development and design of the identified products, and a description of the role each played therein.  In response, Bayer indicated that it would produce information "sufficient to show the structure and function of the accused products."  Plaintiffs view this as non-responsive and believe Bayer must fairly describe the roles played by each individual that played a role in the research, development, and design of the identified products.

Bayer's response to Interrogatory No. 2 also indicates that the ASCENSIA® CONTOUR® was researched developed and designed by "an original equipment manufacturer." Interrogatory No. 2 requires Bayer to identify the name and location of such "original equipment manufacturer," identify the individuals that played a role in such research, design and development and describe the roles each played therein.

Interrogatory No. 2 requested an identification of documents relating to the research development or design of the identified Bayer products. In response, Bayer again reiterated that it would produce information "sufficient to show the structure and function of the accused products." As noted above, and as outlined in our other letter of today's date (outlining deficiencies in Bayer's response to document requests), Plaintiffs interrogatories are broader than merely seeking information "sufficient to show the structure and operation," and further requires an identification of all information relating to the research development, and design of the identified products.

Interrogatory No. 2 also requested an identification of any licenses or agreements with third parties regarding the research, development, and design of the identified products. Such agreements are clearly relevant to the issue of infringement and/or claim construction, and may lead to the discovery of admissible evidence from the third party to such agreements. Please supplement this response to include such licenses and agreements. We recognize that licenses and agreements pertaining solely to a reasonable royalty determination are *not* required at this time. However, licenses and agreements pertaining to the products-in-suit are relevant to infringement, and should be produced at this time.

Finally, Interrogatory No. 2 requested Bayer to identify the "three most knowledgeable persons" regarding the research, development, and design of the identified Bayer products. However, Bayer's response listed nineteen individuals as "knowledgeable" regarding the   ASCENSIA® CONTOUR® or BREEZE® 2 products. However, Interrogatory No. 1 seeks to three individuals that are "most knowledgeable" regarding the identified products. Therefore, for each product we request that Bayer provide its best estimate of who the three most knowledgeable people are with respect to each product.

Interrogatory No. 3:

Interrogatory No. 3 seeks an identification of documents constituting, referring or relating to sales and/or marketing material or literature relating to blood sample volume and/or the time required to determine glucose concentration for the identified Bayer products. Bayer refused to respond stating that this Interrogatory was not related to Phase I. Plaintiffs request that Bayer reconsider its refusal to respond as these documents clearly are relevant to the issue of inducement of infringement, as well as the structure and operation of the identified Bayer products. We recognize that sales and/or marketing documents pertaining solely to the number of units sold etc. are *not* required at this time. However, sales and/or marketing documents that refer to the structure, function, features, operation, or use of the products-in-suit are relevant to infringement, and should be produced at this time.

### Interrogatory No. 15:

Interrogatory No. 15 seeks information regarding Bayer's Fourth Affirmative Defense relating to waiver, estoppel, unclean hands, forfeiture, and/or acquiescence. Bayer refused to respond on the grounds that the request was premature and did not relate to Phase 1. Plaintiffs request that Bayer withdraw these objections. Bayer has asserted affirmative defenses to Plaintiff's infringement claims, and we cannot see why discovery on such defenses to Plaintiffs infringement claims is premature. Plaintiffs submit that Bayer will have waived all of its affirmative defenses for the remainder of the case if it refuses to provide responses and discovery relating to such defenses. Obviously, such defenses would have no place during the validity or damages Phases of the case. Accordingly, Plaintiffs request that Bayer withdraw its objections and fully respond to Interrogatory No. 15.

### Interrogatory No. 16:

Interrogatory No. 16 seeks information regarding Bayer's Fifth and Sixth Affirmative Defenses relating to prosecution laches and patent license. Bayer refused to respond on the grounds that the request was premature and did not relate to Phase 1. Plaintiffs request that Bayer withdraw these objections. Bayer has asserted affirmative defenses to Plaintiff's infringement claims, and we cannot see why discovery on such defenses is premature. Plaintiffs submit that Bayer will have waived all of its affirmative defenses for the remainder of the case if it refuses to provide responses and discovery relating to such defenses. Obviously, such defenses would have no place during the validity or damages Phases of the case. Accordingly, Plaintiffs request that Bayer withdraw its objections and fully respond to Interrogatory No. 16. Further, Plaintiffs disagree that Interrogatory No. 16 constitutes two separate interrogatories as Plaintiffs could have easily set forth one interrogatory directed to all of Bayer's affirmative defenses and it would count as one. Otherwise, Bayer could run up the interrogatory count based on the number of affirmative defenses it could dream up.

### Interrogatory No. 18:

Interrogatory No. 18 seeks an identification of witnesses that Bayer may call to testify at trial or hearing, as well as expert opinions. Bayer refused to respond at all on the specific ground that Bayer had somehow determined that Interrogatory 18 went beyond the eleven Interrogatory limit set by the Court. Plaintiffs request that Bayer withdraw this objection as there are currently only ten interrogatories pending– Interrogatory Nos. 1-5, 8, 14-16, and 18 none of which contain impermissible subparts. As noted above in discussing Bayer's

General Objections, Plaintiffs request an explanation of which subparts Bayer considers to be separate interrogatories that count towards the eleven interrogatory limit.

We look forward to a response to this letter by March 28, 2008.

Sincerely,

Christopher M. Cavan
312 913-2131 (direct)
cavan@mbhb.com

# EXHIBIT 2



**McDonnell Boehnen Hulbert & Berghoff LLP**
                                           300 South Wacker Drive    312 913 0001 phone
                                           Chicago, Illinois 60606-6709  312 913 0002 fax
                                           www.mbhb.com

March 21, 2008

**Sent Via e-mail and First class mail**

Daniel P. Muino, Esq.
Morrison & Foerster
425 Market Street
San Francisco, CA 94105

**Re:  Roche v. Abbott et al. Civil Action No. 04-CV-4765 (JJF)**

Dear Mr. Muino,

Thank you for letting us know that Bayer will begin a rolling production of responsive documents by the end of March and perhaps sooner.  We look forward to the receipt of such documents.

We have reviewed Bayer's objections and responses to Roche's First Set of Document Requests 1-119 and wanted to set forth some concerns we have with the responses.  We do so in hopes of clarifying Bayer's responses and identifying those areas where there is disagreement.  The following is a preliminary identification of concerns relating to the Phase I issues of infringement, claim construction, and prior invention.  There may be additional issues following review of Bayer's document production, and in later Phases of the case, but our most pressing concerns are outlined below.

As a general proposition, Roche seeks documents regarding research, design, development, structure, function, science, and operation of Bayer's products falling within the specified scope of its discovery requests.  Roche also seeks all filings, submissions, and communications to both state and federal agencies regarding those products, and documents relating to any offer for sale or sale, advertising and promotion, marketing materials, feedback from customers, and communications with users, distributors, physicians nurses, clinics, or other potential users of these products,  Such documents are clearly within the permissible scope of discovery for Phase 1, as more specifically addressed below.

<u>Requests for Production – General Objections</u>

Bayer has set forth a list of General Objections to the Production Requests which purport to apply to all of Bayer's responses. Our concerns with Bayer's General Objections are set forth below:

In General Objection 1, Bayer raises the issue of a June 3, 2003 Settlement and License Agreement with an arbitration clause. Please confirm that Bayer will not be withholding any documents on the basis of General Objection 1.

In General Objection 8, Bayer objects to all Requests that do not define a relevant time period and contends that Products sold by Bayer prior to October 2, 2007, and information thereon are not relevant. Plaintiffs note that the Requests encompass documents predating October 2, 2007, including but not limited to research, development and design documents relating to Bayer products that are accused of infringement. Plaintiffs submit that such pre-October 2, 2007 documents are relevant to the issue of infringement and should be produced because those documents relate directly to Bayer's post-October 2, 2007 accused products, and likely predecessor products, including but not limited to the activities outlined in paragraph 3 of page 1 of this letter as well as to later-sold strips used with earlier sold meters. Please confirm that Bayer will not be withholding any documents simply because they pre-date October 2, 2007.

In General Objection 15, Bayer objects to the extent the Requests "seek documents relating to the use, sale, offers for sale, distribution, licensing, or any other transaction outside the United States." Plaintiffs submit that such documents may be relevant to the issues of infringement to the extent they relate to transactions within the United States. For example, sales, offers to sell, distribution, and importation into the United States of blood glucose test meters and/or test strips are clearly relevant to infringement under 35 U.S.C. 271 (a)-(c) and exportation out of the United States is relevant to infringement under 35 U.S.C. 271(f). Please confirm that General Objection 15 applies only to such acts and transactions that have no relation to the United States.

In General Objection 16, Bayer objects to the Requests to the extent they seek publicly available documents that can be obtained as easily by Plaintiffs as by Bayer and to the extent they are already in the possession of Plaintiffs. The fact a document can be located elsewhere is not a ground for withholding documents. Furthermore, Bayer's very possession of certain publicly available documents may itself lead to the discovery of highly relevant, admissible evidence. Thus, Plaintiffs request Bayer to withdraw General Objection 16. To the extent that Bayer does withhold any documents on the grounds that the documents are publicly available or in Plaintiff's possession please identify with particularity the Requests to which this General Objection applies. Moreover, to the extent that Bayer withholds any such documents on the basis of General Objection 16, Bayer must at least

identify each such document with sufficient particularity for Plaintiffs to identify and locate the documents.

In General Objection 17, Bayer generally objects to the Requests as premature to the extent the Requests seek information irrelevant to infringement or prior invention. In view of the Court's February 28, 2008 adoption of Defendants' proposed schedule, Plaintiffs do not challenge this objection. However, Plaintiffs believe General Objection 17 to be unnecessary and unwarranted in light of our February 15, 2008 letter withdrawing certain Requests and specifically limiting others to comply with the Court's directives regarding the staging of discovery. As discussed in more detail below regarding Bayer's objections to specific Requests, Bayer has taken an overly narrow and restrictive view as to what is relevant to the issue of infringement.

The foregoing identifies a number of concerns regarding Bayer's General Objections. However, as discovery proceeds, further concerns and issues may arise regarding Bayer's application of these General Objections, and Plaintiffs reserve the right to raise them in the future.

<u>Requests for Production – Categorical Statements</u>

A.    "Sufficient to Show" Statements

In Bayer's Responses to a number of Requests, Bayer indicated that it would produce information "sufficient to show" the subject matter of the Request. For example, in Bayer's response to Request 1 seeking research, design and development work information relating to identified Electrochemical Sensors, Bayer stated that it would produce documents "sufficient to show research and/or development work" relating to Bayer's ASCENSIA® CONTOUR® and BREEZE® 2 products. Bayer provided the same response to Request 2. Bayer also provided similar responses to Requests 3 and 4 ("sufficient to show the sample volume"), Requests 5 and 6 ("sufficient to show the test times"), and Requests 7, 23, 24, 25, 26, 27, 28, 29, 33, 34, 35, and 105 ("sufficient to show the structure and function"). Plaintiffs Requests are broader than merely seeking documents that are "sufficient to show" research and/or development work, the sample volume, test times, and the structure and function of Bayer's identified products. For example, Plaintiffs are entitled to all documents relating to the structure and function of the identified Bayer products, not merely documents sufficient to show the structure and function. Such documents are unquestionably relevant to infringement, equivalents, and claim construction. Please confirm that Bayer will not be withholding documents on the basis that it believes it has provided documents "sufficient to show" that which was requested.

B.    Identified Products

McDonnell Boehnen Hulbert & Berghoff LLP          Daniel P. Munino          3          March 21, 2008

In response to numerous Requests, Bayer has stated that it will produce documents relating to the ASCENSIA® CONTOUR® and BREEZE® 2 products. Plaintiffs Requests are broader than this and seek documents relating to "Identified Electrochemical Sensors" as that term is defined in Plaintiffs Requests and in particular, that fall within the definition set forth in Interrogatory 1. This definition is not limited to products specifically identified in Plaintiffs' complaint, but encompasses any Bayer product that falls within the ambit of Interrogatory No. 1, i.e. any Bayer product having a blood sample volume of 1 µl or less and ten second or less test or readout time. In this regard, we note that Bayer sells a product named CONTOUR® TS that falls within the definition of "Identified Electrochemical Sensors" having a stated "8 second test time" and "0.6 microliter small sample size." Please confirm that references to the ASCENSIA® CONTOUR® products include both the ASCENSIA® CONTOUR® product and what is referred to as the CONTOUR® TS product. In other words, please confirm that your responses stating that documents will be produced for ASCENSIA® CONTOUR® products apply equally to Bayer's CONTOUR® TS products, as well as any other Electromechanical Sensors falling with the ambit of Interrogatory No. 1, whether or not the product was specifically identified in the Complaint.

Requests for Production - Specific Requests

Request 8 seeks Bayer's filings, submissions, and communications with state and federal agencies regarding the Identified Electromechanical Sensors. Bayer responded by stating it would provide "the FDA 510(k) applications and approval letters" for the ASCENSIA® CONTOUR® and BREEZE® 2 products. Plaintiffs are entitled to all filings, submissions, and communications to both state and federal agencies regarding products falling within the ambit of Interrogatory No. 1, not just the FDA applications and approval letters. Please confirm that Bayer will produce all documents falling within the scope of Request 8.

Bayer has refused to provide documents for a number of requests on the basis that the Requests are not related to the Phase I issues of infringement and prior invention. Request 9 seeks documents relating to Bayer's decision to research, design, develop, manufacture, etc. an Electrochemical Sensor having a blood sample volume of 1 µl or less and providing a readout within 10 seconds or less. In response, Bayer stated that it would not respond at this time on the grounds that the request was premature and did not relate to Phase 1. Plaintiffs request that Bayer withdraw this objection, as the requested information could lead to the discovery of admissible evidence relating to Phase 1, including admissions regarding the operation of Bayer's products, equivalents and statements or admissions relating to claim construction.

Requests 10, 11, 12, 13, and 22 seek documents relating to Electrochemical Sensors having a blood sample volume of 1 µl or less or readout within 10 seconds or less, or

alternatives to Bayer's Identified Electrochemical Sensors. Bayer refused to respond (except for prior invention) on the grounds that the Requests were premature and did not relate to Phase 1. Plaintiffs request that Bayer withdraw these objections, as the requested information could lead to the discovery of admissible evidence relating to Phase 1, including admissions regarding the operation of Bayer's products, equivalents and statements or admissions relating to claim construction.

Request 31 seeks agreements between Bayer and others regarding research, design, development, and manufacture. Bayer refused to respond on the grounds that the request was premature and did not relate to Phase 1. Plaintiffs request that Bayer withdraw this objection, as the requested information could lead to the discovery of admissible evidence relating to Phase 1, including for example admissions and sources of information regarding the design, structure, and operation of Bayer's products, equivalents and statements or admissions relating to claim construction. Further with respect to agreements relating to manufacture, these clearly relate to the issue of infringement as it relates to the import or export of the Bayer products and components.

In Requests 32-35, seeking communications between Bayer and others regarding Bayer's identified products, Bayer refused to respond on the grounds that the request was premature and did not relate to Phase 1. Plaintiffs request that Bayer withdraw this objection, as the requested information is directly relevant to inducing infringement, and could lead to the discovery of admissible evidence relating to Phase 1, including admissions regarding the operation of Bayer's products, equivalents and statements or admissions relating to claim construction.

In Requests 46 and 47, requesting documents relating to design around and non-infringement, Bayer refused to respond on the grounds that the request was premature and did not relate to Phase 1. Plaintiffs request that Bayer withdraw this objection, as the requested information relates directly to infringement including what constitutes an infringement and what does not. This information would also shed light on issues of claim construction.

In Request 53, requesting documents relating to the patents-in-suit and reexamination, Bayer refused to respond on the grounds that the request was premature and did not relate to Phase 1. Plaintiffs request that Bayer withdraw this objection, as the requested information relates directly to claim construction of the patents-in-suit.

In Requests 54 and 55, requesting documents relating to written opinions or communications regarding infringement, Bayer refused to respond on the grounds that the request was premature and did not relate to Phase 1. Plaintiffs request that Bayer withdraw this objection, insofar as the requested information involves opinions regarding

"infringement and/or non-infringement of the patents-in-suit" which is undeniably relevant to Phase I. To the extent such documents are privileged, Plaintiffs are entitled to review a privilege log to determine whether privilege has been properly claimed. To the extent the documents are not privileged Plaintiffs are entitled to their production in Phase 1.

In Requests 60, 63, 64, 65, 66, and 67 requesting documents relating to any offer for sale or sale, advertising and promotion, marketing materials, feedback from customers, communications with distributors, physicians nurses, clinics, or other potential users, Bayer refused to respond on the grounds that the request was premature and did not relate to Phase 1. Plaintiffs request that Bayer withdraw this objection, as the requested information relates directly to indirect infringement, including for example admissions of direct infringement and inducing infringement of others.

In Requests 103 and 104, requesting documents relating to patents and patent applications covering Bayer's Identified Electrochemical Sensors, Bayer refused to respond (other than prior invention) on the grounds that the requests were premature and did not relate to Phase 1. Plaintiffs request that Bayer withdraw this objection, as the requested information relates directly to the use, design, operation and structure of Bayer's identified products and the issue of infringement.

In Requests 106 and 119, Bayer refused to respond on the grounds that Bayer could not understand the scope of the Requests. Plaintiffs will limit Request 106 for now to Plaintiffs' Electrochemical Sensors (as defined by the request)  and Request 119 to documents that specifically refer or relate to the patents-in-suit (including published applications) or Plaintiffs' Electrochemical Sensors (as defined by the request). In view of this clarification, Plaintiffs request that Bayer withdraw these objections and agree to respond to these Requests.

In Requests 108 and 109, requesting documents relating to Bayer's affirmative defenses, Bayer refused to respond on the grounds that the request was premature and did not relate to Phase 1. Plaintiffs request that Bayer withdraw these objections. Bayer has asserted affirmative defenses to Plaintiff's infringement claims, and we cannot see why discovery on such defenses is premature. Plaintiffs submit that Bayer will have waived all of its affirmative defenses for the remainder of the case if it refuses to provide documents and things relating to such defenses. Obviously, such defenses would have no place during the validity or damages Phases of the case. Accordingly, Plaintiffs request that Bayer withdraw these objections.

In Request 114, requesting documents and things upon which Bayer intends to rely at any time during litigation, Bayer limited its willingness to produce documents only to those that are filed with the Court or served on another party. Obviously, this Request is not limited to

documents that have been filed or served, and encompasses all documents whether or not served. Bayer cannot withhold production of documents that it intends to use during the course of this litigation and then later spring them on Plaintiffs during deposition or trial. Accordingly, Plaintiffs request that Bayer withdraw this response and agree to produce all documents and things it intends to rely on during this litigation, whether or not they are filed or served.

We look forward to a response to this letter by March 28, 2008, and to the receipt of Bayer's documents responsive to these Requests.

Sincerely,

Christopher M. Cavan
312 913 2131 – (direct)
cavan@mbhb.com

McDonnell Boehnen Hulbert & Berghoff LLP          Daniel P. Munino          7          March 21, 2008

# EXHIBIT 3

**MORRISON | FOERSTER**

425 MARKET STREET
SAN FRANCISCO
CALIFORNIA 94105-2482

TELEPHONE:415.268.7000
FACSIMILE:415.268.7522

WWW.MOFO.COM

MORRISON & FOERSTER LLP

NEW YORK, SAN FRANCISCO,
LOS ANGELES, PALO ALTO,
SAN DIEGO, WASHINGTON, D.C.

DENVER, NORTHERN VIRGINIA,
ORANGE COUNTY, SACRAMENTO,
WALNUT CREEK, CENTURY CITY

TOKYO, LONDON, BEIJING,
SHANGHAI, HONG KONG,
SINGAPORE, BRUSSELS

March 31, 2008

Writer's Direct Contact
415.268.7475
DMuino@mofo.com

**Via E-mail and U.S. Mail**

Christopher M. Cavan, Esq.
McDonnell Boehnen Hulbert & Berghoff LLP
300 South Wacker Drive
Chicago, Illinois 60606-6709

Re:     *Roche v. Abbott et al., Civil Action No. 04-CV-4765 (JJF)*

Dear Mr. Cavan:

We are in receipt of your letter of March 21, 2008, regarding the responses of defendant
Bayer Healthcare, LLC ("Bayer") to Roche's First Set of Interrogatories (Nos. 1-18) in the
above-referenced litigation.  Bayer's response to the issues raised in your letter is detailed
below.

Interrogatories – General Objections

Regarding General Objection 8, Roche contends that information concerning the accused
products pre-dating October 2, 2007 (the issue date of the patents-in-suit) is relevant to the
issue of infringement.  Bayer has agreed to produce relevant, non-privileged information and
documents sufficient to show the structure, functionality, research and development of the
products accused in Roche's operative Complaint – the ASCENSIA® CONTOUR® and
BREEZE® 2 blood glucose meters and strips.[1]  This will encompass relevant documents
from prior to October 2, 2007, including documents evidencing the use of new strips with
earlier sold meters.  Bayer stands by General Objection 8 and will not produce information or
documents related to products (other than the accused products) sold prior to October 2,
2007.

Regarding General Objection 9, Roche disagrees that its interrogatories contain subparts that
should be treated as separate interrogatories.  Bayer made its position concerning subparts
perfectly clear in its responses – both Interrogatories 2 and 16 contain a subpart that counts
as a separate interrogatory.  In Interrogatory 2, the request for "Defendant's corporate

---

[1] Bayer is aware that Roche is currently seeking to amend its Complaint.  Bayer will revisit the scope
of its discovery responses, as necessary, if and when an Amended Complaint becomes operative.

sf-2489335

MORRISON | FOERSTER

Christopher M. Cavan, Esq.
March 31, 2008
Page Two

structure relating to the research, development or design of such Electrochemical Sensors" constitutes a distinct subpart that counts as a separate interrogatory. In Interrogatory 16, the request for information concerning Bayer's Fifth *and* Sixth Affirmative Defenses counts as two separate interrogatories. Accordingly, Roche has reached the 11-interrogatory limit for Phase I with the following interrogatories: 1, 2 (counted as two), 3, 4, 5, 8, 14, 15, 16 (counted as two). Bayer has responded and/or objected to each of these 11 interrogatories.

Regarding General Objection 14, Roche asserts that documents relating to product transactions outside the United States (use, sale, offers for sale, distribution, licensing, or other transactions) are relevant to infringement to the extent they relate to transactions within the United States. In Phase I, Bayer has agreed to produce relevant, non-privileged information and documents, within its possession, custody and control, sufficient to show the structure, functionality, research and development of the accused products. Bayer will not withhold information or documents from this set based on General Objection 14.

Regarding General Objection 15, Roche contends that Bayer must produce information that is publicly available and information that is already in Roche's possession, to the extent it is responsive to Roche's requests. Bayer confirms that it does not presently intend to withhold information or documents on the basis of General Objection 15. Bayer will inform Roche if any information or documents are withheld on this basis.

Specific Interrogatories

*Interrogatory 1*

Roche asks for information pertaining to Bayer's CONTOUR® TS product and any other Bayer blood glucose product with a blood sample volume of 1 uL or less and a ten second or less test or readout time. Bayer does not believe it is obligated to produce information regarding any product not accused of infringement in Roche's operative Complaint. Bayer may provide discovery regarding CONTOUR® TS and other products if and when an Amended Complaint including those products becomes operative.

Roche also demands that Bayer produce "all information" relating to the design, structure and operation of the products, rather than information "sufficient to show" the design, structure and operation. Bayer believes this demand is overly broad and unduly burdensome. Bayer is willing to produce substantial documents showing the structure, functionality, research and development of the accused products. For each accused product, Bayer agrees to produce the design and business reviews in its possession that document design feasibility in the areas of technical design, manufacturability, and regulatory compliance, and document business feasibility in the areas of strategic fit, profitability, and resource allocation (the Technical and Phase Reviews), and a compilation of records in its possession that describe

sf-2489335

MORRISON | FOERSTER

Christopher M. Cavan, Esq.
March 31, 2008
Page Three

the development history of a finished device (the Design History Files). Bayer will also produce samples of the accused products, product manuals and other literature, advertisements, 510(k) applications and approval letters, and other documents identified in Bayer's responses to Roche's Document Requests. Bayer believes that this production will be more than adequate to discharge its discovery obligations in Phase I.

Finally, Roche asks Bayer to identify the "three most knowledgeable people" with respect to each of the products. Bayer notes that Interrogatory 1 asks for "the persons most knowledgeable" regarding each product, not three persons. Given the complexity of the products, Bayer believes that Roche's request for persons "most knowledgeable" regarding the products as a whole is overbroad. If Roche can specify the particular aspects of the accused products on which it is seeking testimony, Bayer will endeavor to identify knowledgeable individuals on those aspects.

*Interrogatory 2*

Roche disagrees that the following subpart of Interrogatory 2 constitutes a separate interrogatory: "[A]n identification of (i) Defendant's corporate structure relating to the research, development or design of such Electrochemical Sensors (including but not limited to all subsidiaries, predecessors and/or other related business entities owned, partially owned, controlled and/or partially controlled by Defendant; and the function of all departments, groups, units and/or divisions within each such entity pertaining to such Electrochemical Sensor)." This is one of at least five subparts in Interrogatory 2. Bayer observes that such requests for corporate structure are typically presented as separate interrogatories. Bayer believes it has been generous in agreeing to count the numerous other parts of Interrogatory 2 as a single interrogatory. Accordingly, Bayer will continue to treat the request for corporate structure information as a separate interrogatory. Bayer confirms that it will produce relevant, non-privileged documents sufficient to show its corporate structure relating to research and design of the accused products.

Regarding subpart (ii), Bayer confirms that it will produce relevant, non-privileged documents sufficient to identify the persons involved in the research, development and design of the accused products, and describe the role that those persons played.

Bayer discloses that the "original equipment manufacturer" mentioned in subpart (iii) of Bayer's response to Interrogatory 2 is Matsushita Electric Industrial Co., Ltd., located in Japan. Bayer will produce relevant, non-privileged documents sufficient to identify persons at Matsushita involved in the research, development and design of the ASCENSIA® CONTOUR® product.

sf-2489335

MORRISON | FOERSTER

Christopher M. Cavan, Esq.
March 31, 2008
Page Four

Roche demands that Bayer produce "all information relating to the research, development, and design of the identified products." Bayer believes this demand is overly broad and unduly burdensome. As described above concerning Interrogatory 1, Bayer is willing to produce substantial documents showing the structure, functionality, research and development of the accused products. Bayer believes that its production will be more than adequate to discharge its discovery obligations in Phase I.

Roche also demands an identification of "any licenses or agreements with third parties regarding the research, development, and design of the identified products." This information would appear to be relevant only to damages issues, which are not part of Phase I. Bayer does not see how this information is relevant to infringement or claim construction. Accordingly, Bayer will not produce such information at this time.

Finally, Roche asks Bayer to identify the "three most knowledgeable persons regarding the research, development, and design of the identified Bayer products." Given the complexity of the products, Bayer believes that Roche's request is overbroad. If Roche can specify the particular aspects of the accused products on which it is seeking testimony, Bayer will endeavor to identify knowledgeable individuals on those aspects.

*Interrogatory 3*

Roche contends that documents concerning "sales and/or marketing material or literature relating to blood sample volume and/or the time required to determine glucose concentration for the identified Bayer products" are relevant to the issue of inducement of infringement. Bayer believes that these documents are primarily relevant to damages issues, which are not part of Phase I. With respect to inducement of infringement, Bayer observes that Roche did not plead inducement in its operative Complaint.

*Interrogatory 15*

Roche demands that Bayer provide information concerning Bayer's Fourth Affirmative Defense, relating to waiver, estoppel, unclean hands, forfeiture, and/or acquiescence. Roche contends that such discovery belongs in Phase I, even though Phase I is limited to infringement and prior invention. Bayer disagrees. Discovery on Bayer's Fourth Affirmative Defense, together with its Second Affirmative Defense regarding invalidity, belongs in Phase II. Bayer believes that its Fourth Affirmative Defense is more akin to the issue of invalidity (also an affirmative defense) than it is to infringement or prior invention. Accordingly, Bayer will not respond to Interrogatory 15 at this time.

sf-2489335

MORRISON | FOERSTER

Christopher M. Cavan, Esq.
March 31, 2008
Page Five


*Interrogatory 16*

Roche demands that Bayer provide information concerning Bayer's Fifth and Sixth Affirmative Defenses, relating to prosecution laches and patent license. Roche contends that such discovery belongs in Phase I, even though Phase I is limited to infringement and prior invention. Bayer disagrees. Discovery on Bayer's Fifth and Sixth Affirmative Defenses, together with its Second Affirmative Defense regarding invalidity, belongs in Phase II. Bayer believes that its Fifth and Sixth Affirmative Defenses are more akin to the issue of invalidity (also an affirmative defense) than they are to infringement or prior invention. Accordingly, Bayer will not respond to Interrogatory 16 at this time.

Roche also disagrees that Interrogatory 16 constitutes two separate interrogatories, one for each affirmative defense. Bayer observes that its Fifth and Sixth Affirmative Defenses cover completely distinct and unrelated defenses – prosecution laches and patent license. Where possible, Bayer made an effort to group related defenses together under one affirmative defense – for example, the Fourth Affirmative Defense includes waiver, estoppel, unclean hands, forfeiture, and acquiescence. But because prosecution laches and patent license are distinct defenses, Bayer asserted them as separate affirmative defenses. If Roche wishes to inquire about these defenses, it must do so in separate interrogatories.

*Interrogatory 18*

Roche demands a response to Interrogatory 18. This interrogatory, however, is beyond Roche's 11-interrogatory limit for Phase I. On February 29, 2008, Roche requested that Bayer respond to Interrogatories 1-5, 8, 12, 14-16, and 18. Interrogatory 12 was later withdrawn. However, given that both Interrogatories 1 and 16 contain distinct subparts that count as separate interrogatories, Roche reached its 11-interrogatory limit with the following interrogatories: 1, 2 (counted as two), 3, 4, 5, 8, 14, 15, 16 (counted as two). Accordingly, Bayer will not respond to Interrogatory 18.


Sincerely,

Daniel P. Muino

sf-2489335

# EXHIBIT 4

**MORRISON | FOERSTER**

425 MARKET STREET
SAN FRANCISCO
CALIFORNIA 94105-2482

TELEPHONE:415.268.7000
FACSIMILE:415.268.7522

WWW.MOFO.COM

MORRISON & FOERSTER LLP

NEW YORK, SAN FRANCISCO,
LOS ANGELES, PALO ALTO,
SAN DIEGO, WASHINGTON, D.C.

DENVER, NORTHERN VIRGINIA,
ORANGE COUNTY, SACRAMENTO,
WALNUT CREEK, CENTURY CITY

TOKYO, LONDON, BEIJING,
SHANGHAI, HONG KONG,
SINGAPORE, BRUSSELS

March 31, 2008

Writer's Direct Contact
415.268.7475
DMuino@mofo.com

**Via E-mail and U.S. Mail**

Christopher M. Cavan, Esq.
McDonnell Boehnen Hulbert & Berghoff LLP
300 South Wacker Drive
Chicago, Illinois 60606-6709

Re:    *Roche v. Abbott et al., Civil Action No. 04-CV-4765 (JJF)*

Dear Mr. Cavan:

We are in receipt of your letter of March 21, 2008, regarding the responses of defendant Bayer Healthcare, LLC ("Bayer") to Roche's First Set of Requests for Production (Nos. 1-119) in the above-referenced litigation. Bayer's response to the issues raised in your letter is detailed below.

General Objections

Regarding General Objection 1, Roche requests confirmation that Bayer will not be withholding any documents on the basis of the arbitration agreement. Roche has previously agreed that Bayer's rights under the license agreement are not waived or otherwise limited through participation in the litigation. With that understanding, Bayer agrees to produce relevant, non-privileged information and documents, within its possession, custody and control, sufficient to show the structure, functionality, research and development of the accused products. Bayer will not withhold information or documents from this set based on General Objection 1.

Regarding General Objection 8, Roche contends that information concerning the accused products pre-dating October 2, 2007 (the issue date of the patents-in-suit) is relevant to the issue of infringement. Bayer has agreed to produce relevant, non-privileged information and documents sufficient to show the structure, functionality, research and development of the products accused in Roche's Complaint – the ASCENSIA® CONTOUR® and BREEZE® 2 blood glucose meters and strips.[1] This will encompass relevant documents from prior to

---

[1] Bayer is aware that Roche is currently seeking to amend its Complaint. Bayer will revisit the scope of its discovery responses, as necessary, if and when an Amended Complaint becomes operative.

sf-2489808

MORRISON | FOERSTER

Christopher M. Cavan, Esq.
March 31, 2008
Page Two

October 2, 2007, including documents evidencing the use of new strips with earlier sold
meters. Bayer stands by General Objection 8 and will not produce information or documents
related to products (other than the accused products) sold prior to October 2, 2007.

Regarding General Objection 15, Roche asserts that documents relating to product
transactions outside the United States (use, sale, offers for sale, distribution, licensing, or
other transactions) are relevant to infringement to the extent they relate to transactions within
the United States. In Phase I, Bayer has agreed to produce relevant, non-privileged
information and documents, within its possession, custody and control, sufficient to show the
structure, functionality, research and development of the accused products. Bayer will not
withhold information or documents from this set based on General Objection 15.

Regarding General Objection 16, Roche contends that Bayer must produce information that
is publicly available and information that is already in Roche's possession, to the extent it is
responsive to Roche's requests. Bayer confirms that it does not presently intend to withhold
information or documents on the basis of General Objection 16. Bayer will inform Roche if
any information or documents are withheld on this basis.

<u>General Responses to the Requests for Production</u>

Roche asks for information pertaining to Bayer's CONTOUR® TS product and any other
Bayer blood glucose product with a blood sample volume of 1 μL or less and a ten second or
less test or readout time. Bayer does not believe it is obligated to produce information
regarding any product not accused of infringement in Roche's operative Complaint. Bayer
may provide discovery regarding CONTOUR® TS and other products if and when an
Amended Complaint including those products becomes operative.

Roche also demands that Bayer produce "all information" relating to the design, structure
and operation of the products, rather than information "sufficient to show" the design,
structure and operation. Bayer believes this demand is overly broad and unduly burdensome.
Bayer is willing to produce substantial documents showing the structure, functionality,
research and development of the accused products. For each accused product, Bayer agrees
to produce the design and business reviews in its possession that document design feasibility
in the areas of technical design, manufacturability, and regulatory compliance, and document
business feasibility in the areas of strategic fit, profitability, and resource allocation (the
Technical and Phase Reviews), and a compilation of records in its possession that describe
the development history of a finished device (the Design History Files). Bayer will also
produce samples of the accused products, product manuals and other literature,
advertisements, 510(k) applications and approval letters, and other documents identified in
Bayer's responses to Roche's Document Requests. Bayer believes that this production will
be more than adequate to discharge its discovery obligations in Phase I.

**MORRISON | FOERSTER**

Christopher M. Cavan, Esq.
March 31, 2008
Page Three

Responses to Specific Requests for Production

*Request for Production 8*

Roche's Request 8 broadly seeks documents "concerning, referring to or relating to any submissions, filings or communications with any state or federal regulatory agency relating to the Identified Electrochemical Sensors." As discussed above, Bayer will limit its response to Bayer products that are accused of infringement in Roche's operative Complaint. Moreover, while Bayer does not believe that FDA 510(k) applications and approval letters relate to the issues of infringement or prior invention, Bayer will agree to produce them in Phase I. Bayer does not believe, however, that submissions to any other regulatory agency are related in any way to infringement or prior invention.

*Request for Production 9*

Roche's Request 9 broadly seeks documents "concerning, referring to or relating to Defendant's decision to research, design, develop, manufacture, import, sell or offer for sale" certain Electrochemical Sensors. As discussed above, Bayer will limit its response to Bayer products that are accused of infringement in Roche's Complaint. Moreover, while Bayer does not believe that Bayer's development documents are related to issues of infringement or prior invention, Bayer will agree to produce the Technical and Phase Reviews and Design History Files for the accused products.

Bayer does not believe, however, that documents reflecting Bayer's *decision* to research, design, develop, manufacture, import, sell or offer to sell the accused products are relevant to infringement or prior invention issues. Roche's concerns regarding the operation of Bayer's products and equivalents and statements regarding claim construction are without merit. Information regarding the operation of Bayer's products and equivalents will be contained in the Technical and Phase Reviews and Design History Files for the accused products. As for claim construction, the requested documents are clearly the type of extrinsic evidence found to be of questionable or no value in the claim construction process. Bayer will agree, however, to produce such documents to the extent they are included in the Technical and Phase Reviews and Design History Files for the accused products.

*Requests for Production 10-13 and 22*

Roche's Requests 10-13 and 22 broadly seek documents relating to "minutes, memos or other records of meetings of directors, officers, employees and/or other personnel," and to "any utility, advantages, value or business significance" of certain Electrochemical Sensors, as well as "to the research, design, development, production or manufacture of any alternatives" to the identified sensors. As discussed above, Bayer will limit its response to

MORRISON | FOERSTER

Christopher M. Cavan, Esq.
March 31, 2008
Page Four

Bayer products that are accused of infringement in Roche's operative Complaint, as well as
prior inventions. Moreover, as discussed above, while Bayer does not believe that Bayer's
development documents are related to issues of infringement or prior invention, Bayer will
agree to produce the Technical and Phase Reviews and Design History Files for the accused
products.

Bayer does not believe, however, that any and all records of meetings, or any and all
documents relating to utility, advantages, value or business significance relating to the
accused products are relevant to issues of infringement. To the extent such documents relate
to the design or business feasibility of the accused products, Bayer is producing the Technical
and Phase Reviews and the Design History files for the accused products.
Moreover, documents related to "alternatives" to the accused products are not relevant to
infringement of the accused products. To the extent documents relating to "alternative"
products may relate to issues of prior invention, Bayer will produce them, if any. As for
claim construction, the requested documents are clearly the type of extrinsic evidence found
to be of questionable value in the claim construction process.

*Request for Production 31*

Roche's Request 31 broadly seeks documents relating to "any agreement between Defendant
and any other person for the research, design, development or manufacture" of the identified
sensors. As discussed above, Bayer will limit its response to Bayer products that are accused
of infringement in Roche's operative Complaint.

To the extent that Roche is seeking such agreements for information regarding the design,
structure, and operation of the accused products, these agreements are redundant of the
detailed specifications and design information Bayer is producing as part of the Technical
and Phase Reviews and Design History Files. Moreover, because any contracts governing
the research, development, and manufacture of the accused products would have been
entered into prior to the issuance of the patents-in-suit, they do not constitute acts of
inducement. *See National Presto Industries, Inc. v. West Bend Co.*, 76 F.3d 1185, 1196 (Fed.
Cir. 1996). As for claim construction, the requested documents are clearly the type of
extrinsic evidence found to be of questionable value in the claim construction process.
Finally, agreements relating to the import or export of the accused products are not relevant
to infringement of the patents-in-suit, because the patents are limited to method claims that
can only be infringed by use of the claimed methods.

*Request for Production 32-35*

Roche's Requests 32-35 broadly seek "any communications between Defendant and any
other person" relating to certain Electrochemical Sensors. As discussed above, Bayer will

sf-2489808

MORRISON | FOERSTER

Christopher M. Cavan, Esq.
March 31, 2008
Page Five

limit its response to Bayer products that are accused of infringement in Roche's operative
Complaint, as well as prior inventions.

Bayer does not believe that any and all communications between Bayer and others relating to
the accused products are relevant to the issue of infringement. To the extent such
communications are of a public nature (for example, advertising), Bayer observes that Roche
did not plead inducement in its operative Complaint. Until an Amended Complaint pleading
inducement becomes operative, Bayer will not provide the requested discovery. To the
extent documents relating to "alternative" products may relate to issues of prior invention,
Bayer will produce them, if any. As for claim construction, the requested documents are
clearly the type of extrinsic evidence found to be of questionable or no value in the claim
construction process.

*Request for Production 46-47*

Roche's Requests 46-47 seek documents relating to any consideration, decisions or efforts
made by Bayer "to design around the patents-in-suit," or "to design Electrochemical Sensors
that would not infringe the patents-in-suit." As discussed above, Bayer will limit its response
to Bayer products that are accused of infringement in Roche's operative Complaint.

Bayer does not believe it is obligated to produce documents regarding its efforts, if any, to
design around the patents-in-suit. Not only is evidence of design around efforts irrelevant to
the question of infringement, it falls squarely within the prohibition of Federal Rule of
Evidence 407. *See Pall Corp. v. Micron Separations*, 66 F.3d 1211, 1221-22 (Fed. Cir.
1995); *Vardon Golf Co. v. BBMG Golf*, 156 F.R.D. 641, 652-53 (N.D. Ill. 1994). Bayer will
not provide the requested discovery.

*Request for Production 53*

Roche's Request 53 seeks documents "relating to United States or foreign patent
applications, requests for reexamination, patents, invention certificates, reissues,
reexaminations, invention disclosures and file histories concerning or relating to the patents-
in-suit, including but not limited to the Requests for Reexamination." As the
Plaintiff/patentee, all such documents would appear to be already in Roche's possession,
custody or control. Regardless, Bayer will agree to produce publicly available copies of the
patents-in-suit, their file histories, and requests for reexamination, to the extent such
documents are in its possession, custody or control.

MORRISON | FOERSTER

Christopher M. Cavan, Esq.
March 31, 2008
Page Six


*Request for Production 54-55*

Roche's Requests 54-55 seek documents relating to "any written opinions prepared by or on Defendant's behalf" and any communications regarding validity, enforceability, or infringement. Roche demands that Bayer produce documents relating to infringement only, or to identify such documents on a privilege log. Such documents, however, appear to be relevant primarily to willfulness issues, which are not part of Phase I. To the extent such documents would be deemed relevant to inducement, Bayer observes that Roche did not plead inducement in its operative Complaint. Until an Amended Complaint pleading inducement becomes operative, Bayer will not provide the requested discovery.

*Request for Production 60, 63-67*

Roche's Requests 60 and 63-67 request documents related to any offer for sale or sale, advertising and promotion, marketing materials, feedback from customers, communications with distributors, physicians, nurses, clinics, or other potential users. According to Roche, such documents are relevant to the issue of inducement of infringement. Bayer believes that these documents are primarily relevant to damages issues, which are not part of Phase I. With respect to inducement of infringement, Bayer observes that Roche did not plead inducement in its operative Complaint. Until an Amended Complaint pleading inducement becomes operative, Bayer will not provide the requested discovery.

*Request for Production 103-104*

Roche's Requests 103-104 seek documents relating to Bayer's patents or pending patent applications covering the identified sensors. As discussed above, Bayer will limit its response to Bayer products that are accused of infringement in Roche's operative Complaint. Even with this limitation, however, Roche's requests are overly broad and unduly burdensome by seeking patents and applications "directed to any aspect" of the Bayer accused products. Without any temporal or subject matter limitation, Roche's request would encompass any patent or patent application directed to any aspect of any of the Bayer accused products, regardless of relevance to the subject matter of the patents-in-suit. Until Roche limits the scope of this request, Bayer is unable to provide a response.

Regardless, Bayer's own patenting activities are irrelevant to whether its products infringe the patents-in-suit. To the extent Roche is seeking such documents for information regarding the design, structure, and operation of the accused products, the information contained in these documents is redundant of the detailed specifications and design information Bayer is producing as part of the Technical and Phase Reviews and Design History Files.

sf-2489808

MORRISON | FOERSTER

Christopher M. Cavan, Esq.
March 31, 2008
Page Seven

*Request for Production 106, 119*

Roche's Requests 106 and 119 as originally propounded were so broad as to be incomprehensible. Roche's purported "limited" versions of these requests are no better. The requests now broadly seek documents concerning, referring to or relating to Plaintiff's Electrochemical Sensors and documents referring to the patents-in-suit (and published applications thereof). Bayer fails to see how documents referring to Roche's own products would be relevant to issues of infringement or prior invention. As for documents referring to the patents-in-suit (and published applications thereof), Bayer believes that these documents are primarily relevant to willfulness issues, which are not part of Phase I. Bayer also observes that Roche did not plead inducement in its operative Complaint.

*Request for Production 108-109*

Roche demands that Bayer provide documents concerning Bayer's affirmative defenses. Roche contends that such discovery belongs in Phase I, even though Phase I is limited to infringement and prior invention. Bayer disagrees. Discovery on Bayer's affirmative defenses, as with its Second Affirmative Defense regarding invalidity, belongs in Phase II. Bayer believes that its affirmative defenses are more akin to the issue of invalidity (also an affirmative defense) than they are to infringement or prior invention. Accordingly, Bayer will not provide the requested discovery.

*Request for Production 114*

Roche's Request 114 seeks all documents and things upon which Bayer intends to rely at any time during this litigation. Bayer believes this demand is unreasonable, overly broad and unduly burdensome, and covers documents protected by attorney client privilege and the work product doctrine. Roche is not entitled to all documents on which Bayer may rely at any time during litigation whether or not Bayer actually relies upon them. Roche's concern regarding "springing" undisclosed documents in depositions is unfounded in view of the Scheduling Order, as document production for each phase must be completed before any depositions may begin. Bayer will, of course, abide by any further scheduling order the Court may issue governing discovery and other issues not included in the current phases.

Sincerely,

*Daniel P. Muino*

Daniel P. Muino

sf-2489808

# EXHIBIT 5

 **McDonnell Boehnen Hulbert & Berghoff LLP**    300 South Wacker Drive    312 913 0001 phone
Chicago, Illinois 60606-6709    312 913 0002 fax
www.mbhb.com

April 9, 2008
*Sent Via E-Mail; Confirmation by First Class Mail*

Mr. Daniel Muino
Morrison & Foerster
425 Market Street
San Francisco, California  94015-2482

Re:    *Roche Diagnostics Operations, Inc. et al. v. Abbott Diabetes Care, Inc., et al.*
Civil Action No. 07-753 JJF (District of Delaware)

Dear Daniel:

This letter is intended to summarize our meet and confer teleconference of April 3, 2008, outlining the areas of agreement and disagreement that resulted from our discussion.  We believe that this letter accurately reflects our discussions.  However, after you have had a chance to review this correspondence, please let us know if there are any areas that need to be clarified.

***Initial Matters***

Scope of Products Included in Bayer's Responses

We discussed the scope of Bayer's responses as they pertain to specific products in view of the fact that Bayer's responses were limited to the Ascencia® Contour® and Breeeze® 2 products.  Bayer indicated that it would limit its responses only to those products specifically identified in the Complaint.  From Roche's perspective, Bayer's position is wrong for at least two reasons:

- Roche was not obligated to specifically identify ***any*** products in the Complaint. Although Roche did provide some examples of infringing products in the Complaint, those examples are on their face not meant to be exhaustive.  Bayer cannot withhold discovery of a product it makes or sells simply because the product is not specifically identified.  Its refusal to produce documents regarding the Contour® TS until the amended complaint is filed is, in Roche's view, gamesmanship.

- Roche's Interrogatory No. 1 (and other requests that key off it) is not limited to products identified in the Complaint. Instead, it is directed to all Bayer products that meet certain requirements found in the claims. Bayer's position is essentially denying Roche discovery into additional products that may fall within the scope of the claims. Again, the Contour® TS is unquestionably responsive to this interrogatory, regardless of whether the Complaint is amended to specifically identify it.

This is a particular problem with respect to new products that Bayer may introduce while the litigation is ongoing. Although Bayer has indicated that currently there are no other Bayer products on the market besides the three identified above that fall within Interrogatory No. 1, that situation could change while litigation is ongoing. If a product is introduced that meets the limitations specified in Interrogatory No. 1, Roche needs discovery on it and expects supplementation by Bayer, regardless of whether it is identified in the Complaint. Although Bayer stated that it would meet its requirements to produce documents under the Federal Rules, its application of the rules appears to be quite skewed and impermissibly selective.

In short, if Roche determines that there are other products besides the Contour® TS for which Bayer is currently or ultimately withholding information, Roche will seek sanctions against Bayer.

Roche stated that if there were discontinued meters that used currently marketed test strips, the use of which fell within the scope of Interrogatory No. 1, then Roche was entitled to discovery on those meters. Bayer confirmed that there are no discontinued meters that operate in an infringing manner with the new test strips.

<u>Completion of Document Production</u>

Bayer did not provide any date by which its document production would be substantially complete.

<u>Responses and Indirect Infringement</u>

Roche stated that particularly in view of Roche's amended complaint, there is no reason for Bayer to withhold discovery with regard to indirect infringement. Furthermore, Roche indicated that Bayer's objection to Roche's requests based on Roche's alleged failure to plead indirect infringement should be withdrawn. Bayer indicated that it would withdraw this objection conditional upon Roche's filing of the amended complaint. Bayer further indicated that once the amended complaint had been filed, it would produce documents of an advertising nature and other documents handed out to the public.

We discussed the scope of documents responsive to requests related to indirect infringement. Bayer suggested that only documents that were given to the public were responsive in this regard. Roche noted that, as an example, there might be an email related to a conversation with doctors regarding the use of Bayer's accused products, and that such documents would be responsive. Bayer's position was that it would not produce every email about the product, and that it was not reasonable to review many emails to find those exemplified by Roche.

Roche indicated that if Bayer were willing to stipulate that its strips/meters sold are used by customers according to the instructions provided by Bayer in its product packaging, then it would be possible to avoid extensive discovery regarding product use, and to avoid contacting Bayer customers to establish their direct infringement. Bayer indicated that this was a reasonable proposal but would need to review the language of the stipulation. Accordingly, Roche proposes the following stipulation:

> *Consumer/purchasers use the accused Bayer products in the manner described in the owner's manual, product inserts, and other documents supplied by Bayer for the accused Bayer products.*

Affirmative Defenses

We were unable to reach an agreement on this topic. It is Roche's position that, with the exception of Bayer's affirmative defense related to prosecution laches, all of the other affirmative defenses pled by Bayer are properly addressed in Phase I. Bayer was of the opinion that all affirmative defenses go to Phase II. Bayer indicated that it would reconsider its position and return to Roche on this matter, but that Bayer would probably maintain its original position. Bayer has not withdrawn this objection.

Date Limitation on Withheld Document Logs

Roche indicated that Nova had raised the issue of a cut-off date of the start of litigation for identifying privileged and work product documents on a withheld document log. Roche indicated that it would be amenable to this cut-off as long as each of the defendants concurred. Bayer indicated that it would raise the issue with the other defendants.

*Interrogatories*

General Objections

We discussed Bayer's General Objection 14.  It is Roche's position that importation into or exportation out of the United States is relevant to infringement, particularly indirect infringement.  Roche noted that documents reflecting importation into the United States might be related to potential infringers, as an example Matsushita.  Roche indicated its position that responsive documents include agreements between Bayer and third parties like Matsushita, documents related to design collaborations between Bayer and Matsushita, and other documents related to importation and terms thereof.  Bayer noted that it had produced design files that contain communications and design documents in collaboration with Matsushita.   Bayer acknowledged, however, that the design files would not be comprehensive of all communications with Matsushita about the accused products. Bayer further indicated that it would not agree to produce documents beyond those related to design, structure, function, etc.  Specifically, Bayer indicated that it would not produce agreements between Bayer and Matsushita.

Roche stated that exportation is relevant under 35 U.S.C. 271(f), and that there is case law supporting this as it pertains to method claims.  Bayer indicated that its position is that 271(f) is not applicable to method claims, that there is a legal debate in this regard and that Bayer takes the position that it will not produce documents relating to accused products exported outside of the U.S.

We also discussed the parties' disagreement over interrogatory subparts.  Roche indicated that it would withdraw the interrogatory directed to prosecution laches, specifically part of Interrogatory No. 16, so that Bayer could provide an answer to Interrogatory No. 18. Bayer indicated that if Roche withdrew half of Interrogatory No. 16, it would respond or object to Interrogatory No. 18 as appropriate.

Interrogatory Nos. 1 and 2

We discussed the number of people listed as "most knowledgeable" with regard to the Ascensia® Countour® and Breeze® 2 products.  Roche noted that Bayer provided a list of 19 people, rather than the three most knowledgeable people as requested in Interrogatory No. 2.  Bayer commented that, due to the complexity of the products, a request for one person who is most knowledgeable is too broad.  Bayer indicated that if Roche specifies which parts of the products Roche is interested in, Bayer will provide a more appropriate answer.

Roche asked about interrogatory responses regarding the roles and responsibilities of the persons identified, and Bayer noted that it would identify Bayer production documents from which Roche could obtain this information. Bayer indicated that it would consider supplementing its interrogatory responses if Roche identifies the parts of Bayer's products for which Roche would like to have further information. Roche indicated that it will look to see if there is a way to pinpoint each part.

Interrogatory No. 3

Roche repeated its suggestion that a stipulation as discussed above might obviate some of this discovery, but that Roche is entitled to documents that show how users are instructed to use the accused devices. Roche requested confirmation that, in view of the amended compliant, Bayer no longer maintained its position that the documents requested in Interrogatory No. 3 were irrelevant to Phase I. Bayer reiterated its position that, once Roche's amended complaint had been filed, it would produce relevant documents including marketing documents as discussed above, and Roche noted that it expects to receive anything related to a teaching of how the accused products should be used.

**Document Requests**

General Objections

Roche expressed concern with Bayer's General Objection that it will only produce documents "sufficient to show" information in response to Roche's requests. Obviously Roche is not looking for truly duplicative documents, but Bayer is obligated under the Federal Rules to produce all non-duplicative responsive documents. Bayer would not withdraw this objection.

Request No. 8

Roche noted that this request includes other agencies in addition to the FDA, but added that at this point, Roche will accept documents pertinent to any submissions, filings, or communications with the FDA, including any related internal communications. Bayer indicated that it has gathered the entire FDA submission file and is reviewing and will be producing those documents.

Request No. 9

Roche expressed its opinion that Bayer's decision to research, design, etc. is relevant to Phase I and requested that Bayer reconsider its position. Bayer indicated that it has or will provide historical files, which include documents relating to decisions, including business decisions.

Requests No. 10-13 and 22
Roche expressed its opinion that research, design, etc. of alternatives that were considered by Bayer and rejected are relevant to the doctrine of equivalents as well as claim construction. Bayer indicated that to the extent such documents are in the design history files, those would be provided, and that documents were not being withheld on the basis of Bayer's objections to these requests.

Request No. 31
Bayer indicated that, as previously noted, it will not produce the agreements sought in this request, including agreements between Bayer and Matsushita relating to the design, manufacture, or importation of the accused products (meters and test strips).

Requests No. 32-35
We discussed the types of documents that would be responsive to this request. Roche provided as examples a communication with Matsushita with regard to the design of the test strips, or a communication with distributors expressing a need for a 10 second test time meter, and noted that such documents were related to literal infringement, and whether the products as used meet the limitations of the claims. Roche noted that, because it does not yet have Bayer's non-infringement contentions, Roche does not know what claim limitations are at issue. Bayer noted that it does not have Roche's asserted claims, but nevertheless believes that the documents it has and will produce will be more than adequate for Roche to determine how the accused products operate.

It was Bayer's position that it was not obligated to collect and produce all communications with third parties regarding the accused devices. Bayer noted that, to the extent that the design history files contain communications with Matsushita regarding the structure, function, and operation of the devices, those communications would be produced. Bayer could not confirm that the design history files contain all communications between Bayer and Matsushita, but argued that any relevant communications would be contained in those files.

Requests No. 46-47
We were unable to reach an agreement on this topic. Roche indicated that Bayer's consideration of alternatives that do not meet the limitations of the claims of the patents in suit, and its rejection of those alternatives, is an assessment of infringement of the designs that were ultimately selected. Bayer indicated that it did not see the relevance of such documents.

Request No. 53
Bayer indicated that, to the extent that it finds patents and file histories within its documents, Bayer will produce those. Additionally, to the extent Bayer has evidence of

knowledge of the patents in suit, it will produce those documents or provide a log should those documents be privileged.

Requests No. 54-55
Bayer indicated that it believed opinions and/or communications regarding infringement or non-infringement of the patents in suit was a willfulness issue. Roche stated that it also is relevant to knowledge, *i.e.* to knowledge of the published application and the scienter requirement, and that documents related to this should be logged on a privilege log. Bayer indicated that it was in disagreement with Roche's characterization of the law, but to the extent Bayer has opinions on the patents in suit, those will be put on a privilege log.

Requests No. 57-58
As discussed above, Bayer is maintaining its objection and refused to provide agreements with Matsushita and other such licenses that pertain to the specific products in suit.

Requests No. 60 and 63-67
With regard to documents relating to any offers for sale or sale, advertising and promotion, marketing materials, etc., Roche and Bayer referred back to their earlier discussion and conclusions regarding documents addressing instructions to customers and documents related to the structure, function, operation, and features of the products.

Requests No. 103-14
It is Roche's position that Bayer's patents and pending applications covering the Identified Electrochemical Sensors is clearly relevant to the issue of infringement, particularly with regard to Bayer's assessment of what patents/applications cover its products, and the discussion in those patents/applications regarding the operation of the products. Bayer indicated that a request for any patent or application covering the identified products was very broad and would encompass subject matter unrelated to the claims of the patent in suit, but that Bayer would consider producing all requested patents and applications, dependent upon their volume and relevance.

Requests No. 106 and 119
Roche explained that it believes it is entitled to documents, to the extent they exist, related to the patents in suit, or to the structure, function, operation, and features of the products that arguably fall within the scope of the patents. Bayer indicated that it considered these requests to be broad, and noted that it did not know what else would fall within the scope of these requests beyond what Bayer had already agreed to produce. Roche explained that these requests were "catch all" requests designed to avoid surprises.

Requests No. 108-109
Roche and Bayer referred to their earlier discussion on affirmative defenses, summarized above.

Request No. 114
Roche expressed its opinion that it did not want any surprises, and requested that Bayer agree that it will not use in depositions or at trial any documents not produced to Roche, including for rebuttal. It is Bayer's position that it will produce documents in accordance with the scheduling order and federal and local rules but it will not confine itself to anything beyond that.

Please contact us to provide Bayer's positions with respect to the open issues identified in this letter.

Sincerely,

*Sherri L. Oslick*

Sherri L. Oslick, Ph.D.
Patent Attorney
312 913 3349 direct
oslick@mbhb.com

# EXHIBIT 6

MORRISON | FOERSTER

425 MARKET STREET
SAN FRANCISCO
CALIFORNIA 94105-2482

TELEPHONE:415.268.7000
FACSIMILE:415.268.7522

WWW.MOFO.COM

MORRISON & FOERSTER LLP

NEW YORK, SAN FRANCISCO,
LOS ANGELES, PALO ALTO,
SAN DIEGO, WASHINGTON, D.C.

DENVER, NORTHERN VIRGINIA,
ORANGE COUNTY, SACRAMENTO,
WALNUT CREEK, CENTURY CITY

TOKYO, LONDON, BEIJING,
SHANGHAI, HONG KONG,
SINGAPORE, BRUSSELS

April 22, 2008

Writer's Direct Contact
415.268.7475
DMuino@mofo.com

**Via E-mail and U.S. Mail**

Sherri L. Oslick, Esq.
McDonnell Boehnen Hulbert & Berghoff LLP
300 South Wacker Drive
Chicago, Illinois 60606-6709

Re:    *Roche v. Abbott et al., Civil Action No. 04-CV-4765 (JJF)*

Dear Ms. Oslick:

We are in receipt of your letter of April 9, 2008, regarding the meet and confer
teleconference of April 3, 2008.  Bayer is responding to several discovery proposals set forth
in your letter.

Affirmative Defenses

Upon further consideration, Bayer agrees to provide discovery in Phase I regarding its Fourth
Affirmative Defense (waiver, estoppel, unclean hands, forfeiture, and acquiescence) and
Sixth Affirmative Defense (patent license).  Accordingly, Bayer will supplement its
responses to Roche's Interrogatories 15 and 16 with responsive information by October 24,
2008 (the deadline set by the Rule 16 Scheduling Order for responding to contention
interrogatories).  Bayer understands that Roche has limited Interrogatory 16 to Bayer's Sixth
Affirmative Defense only.  Bayer's Fifth Affirmative Defense (prosecution laches) will be
subject to discovery in Phase II.  Bayer will also produce any documents relating to its
Fourth and Sixth Affirmative Defenses on a rolling basis during the Phase I document
discovery period.  By responding to Roche's Interrogatory 16 and document requests, Bayer
does not waive its right to arbitrate the coverage issues under the Settlement and License
Agreement.

Date Limitation on Privilege Logs

Bayer is agreeable to a cut-off date of November 21, 2007 for identifying privileged and
work product documents on the parties' respective privilege logs.  Privileged and work
products documents from after the cut-off date need not be logged.  Bayer has raised this
issue with several of the other defendants, but they did not provide a definitive commitment

MORRISON | FOERSTER

Sherri L. Oslick, Esq.
April 22, 2008
Page Two

to this arrangement. Accordingly, Roche will need to confirm the arrangement with the other defendants.

Bayer/Matsushita Development Agreements

Upon further consideration, Bayer agrees to produce the development agreements between Bayer and Matsushita Electric Industrial Co., Ltd., pertaining to the Contour and Contour TS products.

Interrogatory 18

In light of Roche's limitation of Interrogatory 16 to Bayer's Sixth Affirmative Defense only, Bayer will supplement its response to Roche's Interrogatory 18 with responsive information and/or objections.

Stipulation Regarding Use of Accused Products

Bayer has reviewed the stipulation proposed by Roche regarding consumer use of the accused Bayer products. Upon further consideration, Bayer is not comfortable with a stipulation of this sort.

Sincerely,

*Daniel P. Muino*

Daniel P. Muino

sf-2499385