IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ROCHE DIAGNOSTICS OPERATIONS, INC., and CORANGE INTERNATIONAL LTD., <br><br> Plaintiffs, <br><br> v. <br><br> ABBOTT DIABETES CARE, INC., ABBOTT DIABETES CARE SALES CORP., BAYER HEALTHCARE, LLC, DIAGNOSTIC DEVICES, INC., LIFESCAN, INC., and NOVA BIOMEDICAL CORP., <br><br> Defendants. | C.A. No. 07-753-JJF |

**ROCHE'S ANSWERING BRIEF IN OPPOSITION TO
ABBOTT'S RULE 12(B)(6) MOTION TO DISMISS**

OF COUNSEL:

Daniel A. Boehnen
Grantland G. Drutchas
McDonnell Boehnen Hulbert & Berghoff LLP
300 South Wacker Drive
Chicago, IL 60606
(312) 913-0001

Philip A. Rovner (#3215)
POTTER ANDERSON & CORROON LLP
Hercules Plaza
P.O. Box 951
Wilmington, DE 19899-0951
(302) 984-6000
provner@potteranderson.com

*Attorney for Plaintiffs
Roche Diagnostics Operations, Inc. and
Corange International Limited*

Dated: May 22, 2008

## TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................... ii

INTRODUCTION ............................................................................................................... 1

NATURE AND STAGE OF PROCEEDINGS ................................................................... 2

SUMMARY OF THE ARGUMENT ................................................................................... 3

ARGUMENT ....................................................................................................................... 4

    I. The Construction of the Term "Providing" Should not
       Be Resolved on a Motion to Dismiss ........................................................................ 4

    II. Abbott's Spurious Construction of the Term "Providing"
        Must Be Rejected as a Matter of Law ...................................................................... 7

    III. Even Under Its Construction of "Providing," Abbott's
         Motion Involves Disputed Fact Issues and Must Be Denied ................................... 9

CONCLUSION .................................................................................................................. 13

# **TABLE OF AUTHORITIES**

CASES

*Bayer AG v. Biovail Corp.*,
279 F.3d 1340 (Fed. Cir. 2002) .................................................................................................. 5

*Bionix Implants Inc. v. Linvatec Corp.*,
299 F.3d 1378 (Fed. Cir. 2002) .................................................................................................. 8

*BMC Resources, Inc. v. Paymentech, L.P.*,
498 F.3d 1373 (Fed. Cir. 2007) .......................................................................................... 2, 10-11

*Cohesive Techs., Inc. v. Waters Corp.*,
526 F. Supp. 2d 84 (D. Mass. 2007) ..................................................................................... 11-12

*E.I. DuPont De Nemours and Co. v. Monsanto Co.*,
903 F. Supp. 680 (D. Del. 1995) .............................................................................................. 12

*Lava Trading Inc. v. Sonic Trading Management LLC*
445 F.3d 1348, 1350 (Fed. Cir. 2006) ....................................................................................... 5

*Markman v. Westview Instruments, Inc.*,
517 U.S. 370 (1996) .................................................................................................................. 4

*Medrad, Inc. v. MRI Devices Corp.*,
401 F.3d 1313 (Fed. Cir. 2005) .................................................................................................. 5

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) .................................................................................................. 5

*Ruiz v. A.B. Chance Co.*,
234 F.3d 654 (Fed. Cir. 2000) ................................................................................................ 7-8

*Schreiber v. Eli Lilly & Co.*,
2006 U.S. Dist. LEXIS 13477 (E.D. Pa. Mar. 27, 2006) ......................................................... 4

*Smith & Nephew v. Ethicon*
276 F.3d 1304 (Fed. Cir. 2001) .................................................................................................. 8

*Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.*,
442 F.3d 1322 (Fed. Cir. 2006) .................................................................................................. 5

## STATUTES AND RULES

35 U.S.C. §271 .................................................................................................... *passim*

Rule 8(d)(2), Fed. R. Civ. P.. ............................................................................................ 6

Rule 12(b)(6), Fed. R. Civ. P. .................................................................................. *passim*

Rule 12(c), Fed. R. Civ. P. ............................................................................................... 4

## INTRODUCTION

Abbott's motion to dismiss is procedurally improper, legally flawed, and factually disputed on several bases:

- Although Abbott argues that its motion presents a solely legal issue – the construction of the claim term "providing" – claim construction calls for the Court to consider evidence outside of the pleadings, including (i) "intrinsic evidence" such as the pertinent patent file histories and prior art cited therein, (ii) "extrinsic evidence" such as dictionary definitions, as well as (iii) the level and understanding of persons of ordinary skill in the art at the time of the patent. Abbott does not cite a single case where a question of claim construction was resolved on the pleadings in a Rule 12(b)(6) motion.

- As a cornerstone of its motion, Abbott blithely assumes that the term "providing" should be construed such that Abbott – and only Abbott – is the entity that "provides" the glucose test strip and thus performs the first step of the patent claims. Abbott's assumed interpretation of the term "providing"[1] is itself outside the pleadings; moreover, it is inconsistent with Federal Circuit case law, the plain meaning of the term, and the context of the patent claims and specification as a whole. A proper construction of the disputed claim encompasses the end user who "provides" the test strip by, for example, purchasing a package of strips, opening the package, selecting a single strip from the package, and putting it into the meter. Under such a definition, the end-user performs each and every step of the claims, contrary to the assertions of Abbott's motion.

- Even if Abbott's presumed claim construction were held to be correct, there are significant factual issues that preclude the Court from dismissing Roche's allegations

---

[1] Abbott never actually provides a proposed definition for the disputed term. Rather, Abbott simply argues based on the unspoken assumption that the term "providing" should be construed to mean whatever Abbott does do and the end user doesn't do.

under 35 U.S.C. §271(b), (c), and (f) at this stage of the case. For example, Abbott's motion for dismissal is premised on the further assumption that, when end users employ Abbott's products to measure their own glucose concentration, they act independent from Abbott, and without any interaction and/or responsibility between Abbott and the end user. Roche will show that this further assumption is equally incorrect for two separate reasons. First, as the *BMC* case cited by Abbott makes clear, even under Abbott's claim construction, Abbott's customers are performing the remaining method steps under Abbott's direction, and thus Abbott is liable for direct infringement. Secondly, by paying Abbott for the strips, Abbott's customers are having Abbott provide the strip on their behalf, thus initiating the first step of the method by contracting it out. The Court cannot dismiss Roche's allegations without resolving heavily disputed factual issues about the nature of the relationship between Abbott and Abbott's customers.

## NATURE AND STAGE OF PROCEEDINGS

This patent infringement suit was filed on November 27, 2007 (D.I. 1). Under the Scheduling Order entered by the Court (D.I. 147), claim construction contentions are not to be exchanged until October 3, 2008, *id.* at 3, and the claims will not be construed until after the *Markman* hearing on December 5, 2008, *id.* Document discovery is in its early stages, no depositions have occurred, and no expert discovery has yet taken place.

Nevertheless, at this early stage of the proceedings, Abbott has filed a motion to dismiss (D.I. 171, hereinafter "Abbott Br.") that calls for (i) construing the claim term "providing," and (ii) resolving factual issues about the nature of the relationship between Abbott and Abbott's customers. Based on Abbott's asserted interpretation of the patent claim language and its unspoken assumption that its actions and those of its customers are independent of each other,

Abbott argues that Roche's allegations under 35 U.S.C. §271(b), (c), and (f) should be dismissed. Abbott does not challenge Roche's claim under §271(a), but has not answered those allegations.

## SUMMARY OF THE ARGUMENT

Abbott's purported "Rule 12(b)(6) Motion to Dismiss" is inappropriate at this stage of the case for at least the following reasons:

- Abbott argues that this motion turns on a solely legal issue – the construction of the claim term "providing" – and can therefore be resolved on the pleadings. But claim construction requires the Court to address issues outside of the pleadings. Furthermore, as Abbott admits, its motion will not resolve all §271 issues. As such, this issue is not one that can properly be resolved in a Rule 12(b)(6) context.

- Abbott's proposed definition of the claim term "providing" is inconsistent with the plain meaning of the term, its ordinary use in the patent, and Federal Circuit case law on the term "providing." Proper construction of this claim encompasses the end user who "provides" the test strip for use with the meter.

- Even if Abbott's presumed claim construction were held to be correct, there are significant factual issues that preclude Roche's allegations under 35 U.S.C. §271(b), (c), and (f) from being dismissed at this stage of the case.

## ARGUMENT

### I. THE CONSTRUCTION OF THE TERM "PROVIDING" SHOULD NOT BE RESOLVED ON A MOTION TO DISMISS

The word "provide" has particular significance and common usage in patent drafting. More than seven hundred thousand (700,000) United States patents use some form of the word "provide" in their claims.[2] An unwise construction of the word "providing" would inherently call into question the scope of all of these claims. Because claim construction requires consideration of matters outside the pleadings, it is not appropriate to construe *any* claim term on a motion to dismiss, much less a claim term used in over 700,000 United States patents.

Claim construction is a matter of law, but it is not appropriate for resolution on a Rule 12(b)(6) motion *See Schreiber v. Eli Lilly & Co.*, 2006 U.S. Dist. LEXIS 13477 n.10 (E.D. Pa. Mar. 27, 2006) ("Defendant . . . also argues that 'construction of the patent claims is a question of law for the Court.' . . . While this is undeniably true, the proper time for this Court to address claim construction is not in a motion to dismiss.") Although claim construction is a question of law, the Supreme Court has held that it is a question with "evidentiary underpinnings." *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 390 (1996). Judges have been entrusted with claim construction, *not* because there is *no* need to weigh testimony and other evidence, but because judges have "a trained ability to evaluate the testimony in relation to the overall structure of the patent." *Id.* at 389-90. In this case, none of the evidence that is required or expected to be considered on claim construction has yet been presented. *Cf.* Rule 12(c), Fed. R. Civ. P. (restricting consideration of materials "outside the pleadings").

---

[2] In a search of the U.S. Patent and Trademark Office database at <http://patft.uspto.gov> (which contains the full text of patents issued since 1976), conducted May 16, 2008, the term "providing" or some form of "provide" was found to appear in the claims of 701,588 patents, or 20% of the nearly 3.5 million patents issued since 1976.

4

Claim construction depends on substantial evidence outside the pleadings. In construing patent claims, for example, a court must consider the patent's prosecution history, which may include the prior art considered during prosecution. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc). This requirement applies even in instances where the "ordinary meaning" of a term is alleged to apply. *Id.* ("We cannot look at the ordinary meaning of the term . . . in a vacuum. Rather, we must look at the ordinary meaning in the context of the written description and the prosecution history.") (quoting *Medrad, Inc. v. MRI Devices Corp.*, 401 F.3d 1313, 1319 (Fed. Cir. 2005)).

Claim construction also requires an examination of the level of ordinary skill in the art and the understanding of a person having such skill. *See Bayer AG v. Biovail Corp.*, 279 F.3d 1340, 1349 (Fed. Cir. 2002) ("[I]t would be premature for this court to engage in its own claim construction without, for instance, evidence of the meaning of the terms to one of skill in the art at the time of invention."). Dictionaries are also often used. *Phillips, supra.* This analysis, like the analysis of the prosecution history, requires reference to information outside the pleadings.

The Federal Circuit further requires claim construction to take place in the context of the accused methods or products. *See Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.*, 442 F.3d 1322, 1326-27, 1330 (Fed. Cir. 2006). To avoid issuing an advisory opinion, a court must construe the claims in the context of the accused methods or products. *See id.* at 1326-27 (remanding for new claim construction because record included "absolutely no evidence on record about the accused devices"). *See also Bayer*, 279 F.3d at 1349 (holding that the Federal Circuit "does not yet have a claim construction to review" because the district court did not "perform a comprehensive claim construction . . . based on a complete record"); *Lava Trading Inc. v. Sonic Trading Management LLC*, 445 F.3d 1348, 1350 (Fed. Cir. 2006) ("Without

5

knowledge of the accused products, this court . . . lacks a proper context for an accurate claim construction.") Information on the accused methods, however, falls outside the scope of the pleadings and cannot be considered on a motion to dismiss.

Furthermore, any construction of the term "providing" would not resolve the sufficiency of the Amended Complaint. Abbott concedes that the Amended Complaint *does* state a claim for infringement under § 271(a). *See* Abbott Br. at 2 n.4. But under the Federal Rules, "[i]f a party makes alternative statements [of a claim], the pleading is sufficient *if any one of them is sufficient*." Rule 8(d)(2), Fed. R. Civ. P. (2008 ed.) (emphasis added). Thus, the Amended Complaint is sufficient because—among other reasons—the allegations under § 271(a) are conceded to be sufficient. Construction of the term "providing" would not resolve any issue yet before the Court, and would merely be advisory because the term "providing" would remain at issue in §271(a) issues still before the Court. Thus, Abbott's motion *cannot* result in dismissal of the Amended Complaint, and should therefore be denied entirely.

In short, Federal Circuit case law requires courts to consider the prosecution history and the context of the accused products and methods. Abbott has not presented either of these evidentiary items in this case. Claim construction is premature at this stage, and Abbott's argument fails without adoption of its spurious interpretation of the term "providing." For at least these reasons, Abbott's motion should be denied.

## II. ABBOTT'S SPURIOUS CONSTRUCTION OF THE TERM "PROVIDING" MUST BE REJECTED AS A MATTER OF LAW

Abbott has provided no support for its claim construction, except attorney assumption and argument. Abbott's position on the meaning of the term "providing" contradicts Federal Circuit case law, which held that this is an expansive term which merely requires an item to be "available for use." *See Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 669 (Fed. Cir. 2000). Abbott may indeed "provide" a strip to its wholesalers, but the wholesalers "provide" the strip to retailers, retailers "provide" the strip to end-users, and end-users "provide" the strip for use with the glucose meter in the patented method. The end user "provides" a test strip, e.g., by purchasing a batch of strips, opening the package, selecting a strip, and applying it to an accused meter.

In *Ruiz*, the Federal Circuit addressed a method claim that included the limitation of "***providing*** a foundation support." 234 F.3d at 669. As discussed by the Federal Circuit, the limitation "providing a foundation support" requires only that the foundation support be "available for use." *Id.* at 669 ("[B]ecause metal brackets [used as foundation supports] are in existence and available for use by the installer, they are 'provided' within the meaning of claim 1"). Under this construction, the Federal Circuit held that the installer performed the "providing" step if the "provided" material was "in a nearby truck or near a supply pile on the job site." *Id.* at 669.

As the *Ruiz* case makes clear, the Federal Circuit does not require the "providing" step to be performed by a particular source, as urged by Abbott. "Providing" is an expansive term that simply does not invite such a narrowing limitation. In *Ruiz*, the Federal Circuit noted that the party performing the other method steps was ***not*** the original source of the metal brackets provided as foundation supports. *Id.* at 662. According to Abbott's position, direct infringement

7

would be impossible unless Mr. Ruiz himself were the manufacturer of the brackets. But the Federal Circuit rejected that narrow interpretation of the "providing" step. *Id.* at 669.[3]

Abbott's arguments would nullify numerous other decisions involving patent claims directed to "providing" wherein an item is manufactured by one party but then used by another. For example, in *Smith & Nephew v. Ethicon*, 276 F.3d 1304, 1310 (Fed. Cir. 2001), a claimed surgical method recited a step of "providing" a medical device, namely "***providing*** a deformable member having a width dimension 'D.'" *Id.* at 1310 (emphasis added). This device was manufactured by Ethicon, but it was surgeons who performed the remaining claim steps such as "attaching a suture" and "forming a hole in a bone." *Id.* Likewise, in *Bionix Implants Inc. v. Linvatec Corp.*, 299 F.3d 1378, 1380-81 (Fed. Cir. 2002), the first step of the claimed method called for "***providing*** a single unit suture." *Id.* at 1380-81 (emphasis added). The "single unit suture" was manufactured by Linvactec but used by surgeons in subsequent method claim steps. *Id.* at 1379-1381. Abbott's position would have precluded infringement of these method claims in *Ethicon* and *Linvatec* as a matter of law. Yet the Federal Circuit saw no such defect, and instead remanded both for consideration of infringement on the merits. *Ethicon*, 276 F.3d at 1312; *Linvatec*, 299 F.3d at 1383-84.

Patent drafters have long relied on the broad usage of "providing" as reflected in cases such as *Ruiz*, *Ethicon*, and *Linvatec*. As a result, the word "providing" and its various forms have become common terms of art in patent drafting, used in the claims of over 700,000 patents issued since 1976. The health care industry widely employs patent claims that recite a step of

---

[3] Abbott also tries to argue that its proposed construction of the term "providing" follows from limitations in other, dependent claims of the patents-in-suit. This argument by Abbott is, frankly, confusing and non-sensical in this context. The very purpose of a dependent claim is to provide additional limitations not found in the broader independent claims. The only thing shown by this argument is that Abbott tries to import and export different limitations from different claims as it suits Abbott's purpose.

8

"providing" medical devices that are manufactured by one entity but that, in subsequent steps, are used by physicians or patients. For example, claim 1 of U.S. Pat. No. 6,015,400 (issued to Abbott Laboratories) recites the steps of "providing an endoscope" and "providing a feeding tube," together with steps for actually "placing [the] feeding tube in a patient." Clearly, the ***manufacturer*** of the endoscope and feeding tube is a different entity from the ***practitioner*** who places the feeding tube in the patient. Similarly, claim 20 of U.S. Pat. No. 7,022,136 (issued to Abbott Laboratories Vascular Entities Ltd.) recites a step of "providing" a neutron-capturing medical device, followed by steps of treating a patient with the device, and claim 1 of U.S. Pat. No. 5,655,539 (issued to Abbott Laboratories) recites a step of "providing an ultrasound probe," followed by steps of performing an ultrasound. Under Abbott's proposal in this case, its own patents would be worthless in other cases.

In summary, Abbott's proposed limits on the word "providing" would contradict Federal Circuit law, offend ordinary English usage, be inconsistent with Abbott's own usage of the term in patent drafting, defeat the expectations of hundreds of thousands of patentees, and cast doubt over the scope of over 700,000 U.S. patents issued since 1976. Abbott's claim construction—and hence its motion to dismiss—should be denied.

### III. EVEN UNDER ITS CONSTRUCTION OF "PROVIDING," ABBOTT'S MOTION INVOLVES DISPUTED FACT ISSUES AND MUST BE DENIED

Even if Abbott's spurious interpretation of "providing" were adopted, Abbott's motion must be denied because Roche's pleading gives rise to disputed issues of material fact. In its effort to dismiss Roche's allegations as insufficient, Abbott misstates the law on both direct and indirect infringement. Abbott states categorically that "A party cannot be liable for direct infringement of a patented method if that party does not perform ***all the steps*** required by the claims at issue." Abbott Br. at 4 (emphasis in original). Abbott's lead case does not support

9

Abbott's broad conclusion. In fact, even accepting Abbott's erroneous claim construction, Abbott is liable as an infringer both for its own direct infringement, by directing customers to perform the remaining method steps, and for aiding, abetting and contributing to direct infringement by its customers.[4]

First, with respect to Abbott's direct infringement, the Federal Circuit in *BMC Resources, Inc. v. Paymentech, L.P.*, 498 F.3d 1373 (Fed. Cir. 2007), laid out in detail "the proper standard" for determining when an entity (such as a supplier) can directly infringe a method claim, even if its customers perform some of the claimed steps. *Id.* at 1378. Under this standard, the supplier is a direct infringer if it "controls or *directs* the activity" of its customers. *Id.* at 1381 (emphasis added). In the instant case, Roche's Amended Complaint alleges that Abbott's test strips are "used by customers in the manner *as directed* and/or encouraged by Abbott." Amended Complaint (D.I. 142) ¶ 21 (emphasis added). Thus, the Amended Complaint sufficiently alleges that Abbott directly infringes Roche's patents both through its own use of the accused strips and meters and by directing or controlling its customers' use of those products. In fact, the accused strips were designed by Abbott and approved by the FDA for use only with an accused meter in the patented methods.

In *BMC*, different steps of the method claims were performed by different entities: a supplier performed some claim steps, and third-party financial institutions performed other steps. *See id.* at 1377. But in *BMC*, there was *no evidence* of direction or control between the supplier and these third parties. *See id.* at 1382. That is not true here, and the difference in facts leads to

---

[4] Neither of Roche's claims discussed herein involves what the case law has described as "joint infringement." Roche does not assert that Abbott and its customers are jointly conducting the method steps. Rather Roche contends, as discussed below, that even under Abbott's erroneous claim interpretation, (i) Abbott is a direct infringer as it is liable for the actions of its customers because it directs and controls their actions and (ii) Abbott's customers directly infringe each of the method steps by essentially contracting out or initiating the "providing" step to Abbott, and then performing each of the remaining method steps.

10

a difference in result. Abbott's conduct in having "directed and/or encouraged" its customers gives rise to liability for indirect (inducement or contributory) infringement, but that circumstance also states a case of direct infringement under applicable Federal Circuit law. As such, the very foundation of Abbott's argument is incorrect.

Second, under *BMC*, the Amended Complaint states a claim not only for direct infringement, but also for Abbott's indirect infringement. Abbott's argument that its customers are not direct infringers is a disputed assertion of *fact* that is not, as Abbott contends, "uncontestable." Abbott Br. at 4. Abbott contends that its customers are not direct infringers because they have someone else "provide" the test strip to them under Abbott's erroneous claim interpretation. But the Federal Circuit specifically held in *BMC* that a party, such as a customer, "cannot thus avoid liability for direct infringement by having someone else carry out one or more of the claimed steps on its behalf." *BMC*, 498 F.3d at 1379. Thus, even accepting Abbott's (incorrect) interpretation of the term "providing," Abbott's customers can be direct infringers of each of the method steps because they essentially contract out the "providing" step to Abbott by paying it to provide the accused strips and meters. As the Federal Circuit has said, "A party cannot avoid infringement . . . simply by contracting out steps of a patented process to another entity." *Id.* at 1381. Thus, even if it is assumed that the test strips are "provided" only by Abbott, Abbott's customers can still be direct infringers because they pay Abbott to supply, or "provide," those test strips on their behalf. As such, Abbott's customers initiate the first method step even under Abbott's erroneous interpretation.

Abbott's argument was expressly rejected in *Cohesive Techs., Inc. v. Waters Corp.*, 526 F. Supp. 2d 84 (D. Mass. 2007), in which the manufacturer, Waters Corp., argued that it "cannot be liable for inducing infringement because neither it nor its customers perform both steps of the

11

patented method," and hence there was no direct infringement. *Id.* at 108. The court held, to the contrary, that "a customer can be liable for direct infringement by purchasing a product to perform the second step of a patented method knowing that the seller has performed the first. Indeed, Waters' customers essentially pay Waters by contract to perform the packing step of the '368 method." *Id.* at 111.

Similarly, in *E.I. DuPont De Nemours and Co. v. Monsanto Co.*, 903 F. Supp. 680 (D. Del. 1995) (J. Longobardi), this Court held that Monsanto's customer was a direct infringer even though the defendant Monsanto conducted the first method step (forming a sulfonated polymer, 46BJ). *Id.* at 731, 735. By purchasing the sulfonated 46BJ polymer from Monsanto, the customer was liable for the actions of its supplier. *Id.* at 735.[5] As held by the Court, a person "cannot avoid liability for infringement of [a] process patent by paying [another] to practice step (a) of the claimed process for it." *Id.* at 735. In the instant case, by paying Abbott to provide the strips, Abbott's customers have directly infringed, regardless of the scope of the term "providing."[6]

Thus, under the facts alleged in the Amended Complaint, and even accepting Abbott's (incorrect) definition of the tem "providing," whenever an accused product is used, Roche's patents are directly infringed by Abbott (who "directs" its customers in the use of the product),

---

[5] Monsanto was held liable for inducing that direct infringement by providing the polymer and offering technical support to the customer. *Id.* at 737-738.

[6] In fact, the instant case is even stronger than the *Cohesive* or *E.I. DuPont* cases. In *Cohesive* the defendant, Waters' Corp., performed the first method step (packing of a column) without any direct involvement by the customer. 526 F. Supp.2d at 110-111. Similarly, in *E.I DuPont*, the defendant Monsanto performed the first method step (forming a sulfonated polymer) without any assistance by the customer. 903 F. Supp. at 736-737. Here, however, the customer actually initiates the "providing" step by paying Abbott (or its retailers) for the strips. Certainly, Abbott would not provide the strips to all of its customers without compensation.

or by the customer (who merely pays Abbott to perform the remaining "providing" step); Abbott is liable as an infringer regardless of whether it is labeled a "direct" or "indirect" infringer, under §§ 271(a), (b), (c) or (f). At a minimum, the relationships between Abbott and its customers give rise to questions of fact that are not appropriate for resolution in a Rule 12(b)(6) motion.

## CONCLUSION

For at least the foregoing reasons, Abbott's motion to dismiss must be denied.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Daniel A. Boehnen
Grantland G. Drutchas
McDonnell Boehnen Hulbert & Berghoff LLP
300 South Wacker Drive
Chicago, IL 60606
(312) 913-0001

Dated: May 22, 2008
865941

By: /s/ Philip A. Rovner
Philip A. Rovner (#3215)
Hercules Plaza
P.O. Box 951
Wilmington, DE 19899-0951
(302) 984-6000
provner@potteranderson.com

Attorney for Plaintiffs
Roche Diagnostics Operations, Inc., and
Corange International Limited

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I, Philip A. Rovner, hereby certify that on May 22, 2008, the within document was filed with the Clerk of the Court using CM/ECF which will send notification of such filing(s) to the following; that the document was served on the following counsel as indicated; and that the document is available for viewing and downloading from CM/ECF.

**BY HAND DELIVERY AND E-MAIL**

Frederick L. Cottrell, III, Esq.
Anne Shea Gaza, Esq.
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, DE 19801
cottrell@rlf.com
gaza@rlf.com

Mary W. Bourke, Esq.
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 N. Orange Street
Wilmington, DE 19801
mbourke@cblh.com

Steven J. Balick, Esq.
John G. Day, Esq.
Ashby & Geddes
500 Delaware Avenue
8th Floor
P.O. Box 1150
Wilmington, DE 19899
sbalick@ashby-geddes.com
jday@ashby-geddes.com

**BY HAND DELIVERY AND E-MAIL**

John W. Shaw, Esq.
Jeffrey T. Castellano, Esq.
Young Conaway Stargatt & Taylor, LLP
1000 West Street, 17th Floor
Wilmington, DE 19801
jshaw@ycst.com
jcastellano@ycst.com

Rodger D. Smith, Esq.
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
rsmith@mnat.com

I hereby certify that on May 22, 2008 the foregoing document was sent by E-mail to the following non-registered participants:

Edward A. Mas, II, Esq.
Stephen F. Sherry, Esq.
Kirk Vander Leest, Esq.
James M. Hafertepe, Esq.
Merle S. Elliott, Esq.
McAndrews, Held & Malloy, Ltd.
500 West Madison Street
34th Floor
Chicago, IL  60661
emas@mcandrews-ip.com
ssherry@mcandrews-ip.com
kvanderleest@mcandrews-ip.com
jhafertepe@mcandrews-ip.com
melliott@mcandrews-ip.com

Kenneth P. George, Esq.
Joseph M. Casino, Esq.
Amster, Rothstein & Ebenstein LLP
90 Park Avenue
New York, NY  10016
kgeorge@arelaw.com
jcasino@arelaw.com

Bradford J. Badke, Esq.
Sona De, Esq.
Michael Kahn, Esq.
Ropes & Gray LLP
1211 Avenue of the Americas
New York, NY 10036-8704
Jim.badke@ropesgray.com
Sona.de@ropesray.com
Michael.kahn@ropesgray.com

Wesley E. Overson, Esq.
Rachel Krevans, Esq.
Jason R. Bartlett, Esq.
Parisa Jorjani, Esq.
Daniel P. Muino, Esq.
Morrison & Foerster LLP
425 Market Street
San Francisco, CA 94105-2482
woverson@mofo.com
rkrevans@mofo.com
jasonbartlett@mofo.com
pjorjani@mofo.com
dmuino@mofo.com

Michael G. Adams, Esq.
Ashley L. Ellis, Esq.
Parker Poe Adams & Bernstein LLP
Three Wachovia Center, Suite 3000
401 South Tryon Street
Charlotte, NC 28202
mikeadams@parkerpoe.com
ashleyellis@parkerpoe.com

/s/ Philip A. Rovner
Philip A. Rovner (#3215)
Potter Anderson & Corroon LLP
Hercules Plaza
P.O. Box 951
Wilmington, Delaware 19899
(302) 984-6000
E-mail: provner@potteranderson.com