IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ROCHE DIAGNOSTICS OPERATIONS, INC., and CORANGE INTERNATIONAL LTD.,<br><br>Plaintiffs,<br><br>v.<br><br>ABBOTT DIABETES CARE, INC.,<br>ABBOTT DIABETES CARE SALES CORP.,<br>BAYER HEALTHCARE, LLC,<br>DIAGNOSTIC DEVICES, INC.,<br>LIFESCAN, INC., and<br>NOVA BIOMEDICAL CORP.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>) C.A. No. 07-753-JJF<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

### DECLARATION OF PROF. DR. FELIX DASSER, LL.M.

OF COUNSEL:

Daniel A. Boehnen
Grantland G. Drutchas
McDonnell Boehnen Hulbert & Berghoff LLP
300 South Wacker Drive
Chicago, IL 60606
(312) 913-0001

Philip A. Rovner (#3215)
POTTER ANDERSON & CORROON LLP
Hercules Plaza
P.O. Box 951
Wilmington, DE 19899-0951
(302) 984-6000
provner@potteranderson.com

*Attorney for Plaintiffs*
*Roche Diagnostics Operations, Inc. and*
*Corange International Limited*

Dated: June 26, 2008

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ROCHE DIAGNOSTICS OPERATIONS, INC., and CORANGE INTERNATIONAL LTD., <br><br> Plaintiffs, <br><br> v. <br><br> ABBOTT DIABETES CARE, INC., ABBOTT DIABETES CARE SALES CORP., BAYER HEALTHCARE, LLC, DIAGNOSTIC DEVICES, INC., LIFESCAN, INC., and NOVA BIOMEDICAL CORP., <br><br> Defendants. | C.A. No. 07-753-JJF |

### DECLARATION OF PROF. DR. FELIX DASSER, LL.M.

I, Felix Dasser, hereby declare as follows:

1. If called as a witness, I could and would testify to the matters set forth herein.

### I. Qualifications

2. I am qualified to practice law before the Swiss bar and I am a partner at Homburger AG, a law firm in Zurich, Switzerland.

3. I am also a Professor of Law (Titularprofessor) at the University of Zurich. I teach mainly international dispute resolution, private international law, and contract law.

4. My complete curriculum vitae, including a listing of publications, is attached as Exhibit A.

## II. Scope of Engagement

5. I have been asked by the law firm of McDonnell, Boehnen, Hulbert & Berghoff LLP, on behalf of Roche Diagnostics Operations, Inc. ("Roche"), to explain certain issues of Swiss law relating to the counterclaims raised by Nova Biomedical Corp. ("Nova") in its Answer, Affirmative Defenses, and Counterclaims to Plaintiffs' Amended Complaint filed May 5, 2008 ("Nova's Counterclaim").

6. I am being compensated at my standard rate of CHF 750/hour, which is within the range of market rates in Zurich for provision of legal and expert services.

7. I have been supplied with (i) the Amended Complaint filed April 16, 2008 by plaintiffs Roche and Corange International Limited ("Amended Complaint"), (ii) Nova's Counterclaim with Exhibits A and B, (iii) Roche's Motion to Dismiss filed May 28, 2008 ("Roche's Motion to Dismiss"), and (IV) Nova's Opposition to Roche's Motion to Dismiss filed June 16, 2008 ("Nova's Opposition").

## III. Scope of the Contractual Choice of Law Clause

1. **In General**

8. Section 6 of the Agreement between F. Hoffmann-La Roche Ltd, Basel Switzerland, and Nova dated September 8, 1999 and submitted as Exhibit A to Nova's Counterclaim ("Agreement") provides that "[t]his Agreement shall be governed in all respects by the laws of Switzerland."

9. Swiss law broadly accepts choice of law provisions in international commercial contracts as valid and binding. Article 116(1) of the Swiss Private International Law Act (PILA)

provides:[1] "The contract is subject to the law chosen by the parties." This provision expresses the principle of freedom of contract (so-called "party autonomy"), which is a fundamental tenet of Swiss conflict of laws with regard to contracts. In Swiss law, such right freely to choose the law applicable to a legal relationship is called "party autonomy." Concerning the construction of the choice-of-law provision itself Art. 116(2) PILA provides: "The choice of law must be explicit or result unequivocally from the contract or the circumstances. For the rest, it is governed by the chosen law."

10. There are certain statutory exceptions to this principle of party autonomy that apply to employment and consumer contracts and contracts concerning real property, none of which appear to apply in the present case. In addition, there are special statutory provisions concerning silence in response to an offer, form, modalities of performance and examination, and agency, none of which appear to apply in the present case either.

11. The particular wording of the choice of law provision in the Agreement is broader than usual. Most such choice of law provisions have concise language such as: "This Agreement shall be governed by Swiss law." The words "in all respects" are not usually found in choice of law clauses.

12. From a Swiss law perspective, the construction of a choice of law clause is subject to the law chosen by the parties and, thus, in this particular case, to Swiss law. In Swiss law, the overriding principle of contract interpretation is the search for the actual unanimous intentions of the parties (meeting of the minds; "subjective" interpretation).

13. If an actual common intent of the parties – a meeting of the minds – is not proven, the courts construe the contract objectively, according to the principle of trust and good faith.

---

[1] All quotes from the PILA are unofficial translations by the Swiss-American Chamber of Commerce. The original languages of Swiss statutes are German, French, and Italian.

3

The test is how the wording of a contract could be and had to have been understood by the parties acting reasonably and in good faith and given the particular circumstances of the case ("objective" interpretation). The judge has to investigate what is "appropriate under the specific circumstances, as it may not be assumed that the parties intended an unreasonable result." *See* Federal Supreme Court 5C.200/2000, March 29, 2001. In the present case, under the objective test, the wording "in all respects" indicates that the parties wanted Swiss law to apply as broadly as possible to their behavior under the Agreement and wanted Swiss law conclusively to determine the correctness of their activities relating to the Agreement regardless of the technical cause of action relied on by one party in court at a later stage. In effect, as appears from Footnote 2 of Nova's Opposition, Nova tries to apply alternatively Swiss (contract law) standards and Massachusetts (tort law) standards to the same set of facts relating to activities under the Agreement. Under the Swiss test of good faith and reasonableness it appears that such alternative application of legal systems in favor of one party was not and could not have been intended by the parties acting reasonably and in good faith and that the wording "in all respects" had to be understood to exclude such alternative application of another law to activities under the same contractual relationship. This particularly applies in cases when the two laws at issue belong to a civil law jurisdiction on the one hand and common law jurisdiction on the other and, thus, to two potentially rather diverse legal systems.

2.  **Relating to Tort and Unfair Competition Law Issues**

14. With regard to tort Article 132 PILA provides: "After the damaging event has occurred, the parties may agree in all cases that the law of the court invoked shall govern."

15. However, in spite of these restrictions, the expectations of the parties are still paramount. Party autonomy is the primary principle when looking for the law applicable to a

4

tort even when there is no choice of law provision within the meaning of Article 132 PILA. Accordingly, the general restrictions in Article 132 PILA are completely eliminated when there is an inner nexus between the alleged tort and a contract, as described below. In such a case, by choice of the law applicable to the contract, the parties effectively also choose the law applicable to tort claims that relate to such contract. This is sometimes called an "indirect choice of law." *See* Dasser, Rechtswahl im schweizer Recht, in: DACH (ed.), Rechtswahlklauseln, 2005, 39, at 42|43.

16. Article 133(3) PILA relating to the law applicable to tort claims in general explicitly provides: "Where a legal relationship existing between the damaging and the damaged party is violated by a tort, claims based on tort shall, notwithstanding paragraphs 1 and 2, be subject to the law governing the pre-existing legal relationship."

17. With regard to unfair competition in particular, Article 136(3) PILA refers to Article 133(3) PILA by stating, "Article 133, paragraph 3 is not affected." It is generally accepted that this reference to the law applicable to the underlying contract extends to acts of unfair competition if there is an inner nexus between the contract and the unfair competition, such as "for example in case of misappropriation of trade secrets and know-how that the perpetrator had received in the context of a license, employment or joint-venture contract with the damaged party". *See* Dasser, Commentary to Art. 136 Note 20, in: Honsell/Vogt/Schnyder/-Berti (eds.), Internationales Privatrecht, Basler Kommentar, 2nd ed. 2007.

18. Swiss law thus acknowledges that the law applicable to a contract also extends to related tort and unfair competition claims. The tort claims are considered to be mere "accessories" to the contractual claims, thus the primary application of the law applicable to a related contract is called the "principle of accessories." *See* Umbricht/Zeller, Commentary to Art. 133 Notes 2, 3, in: Basler Kommentar, op. cit.

19.   This is also a consequence of the principle of good faith: If there is a pre-existing contractual relationship between the parties and the alleged tort may also constitute a breach of such contract, the parties could and should have expected in good faith that the same law applies to both the breach of contract and the tort. *See* Heini, Commentary to Art. 133 Note 13, in: Zürcher Kommentar zum IPRG, 2nd ed. 2004.

20.   This focus on the expectations of the parties is also reflected in other European laws, such as, in particular, the new EU Regulation (EC) No. 864/2007 of the European Parliament and of the Council of July 11, 2007 on the law applicable to non-contractual obligations (Rome II). Its Article 4(3) incorporates the principle of accessories as a general rule. This principle is explicitly referred to with regard to unfair competition, in particular, where an act of unfair competition affects exclusively the interests of a specific competitor. *See* Article 2 of the Regulation (EC) No. 864/2007.

21.   Thus, from a European, and in particular Swiss perspective, parties may safely assume that their behavior in the framework of a contractual relationship is exclusively subject to the law applicable to such contract even if such behavior may also qualify as a tort. The application of a different law would contravene such party expectations and create unfair surprises. This is particularly pertinent in cases where apparently the exact same set of facts form the basis of alternative contract and tort claims[2] and the application of different laws might lead to an unexpected application of conflicting legal standards to the same behavior.

22.   The application to tort issues of Swiss law as chosen by the parties in the Agreement also appears to be in line with party expectations in the case at hand, given the broadly-worded choice of law provision (*see* ¶ 11 above). Given the legislative context described above and the broadly worded choice-of-law provision, it appears that Roche could –

---

[2] *See* Nova's Opposition, Footnote 2.

6

and Nova had to — reasonably assume that Roche's acts and omissions relating to activities under the Agreement with Nova are, in all respects — including acts that may sound in tort or unfair competition — subject to the same law, i.e. Swiss law.

## IV. Analysis of Non-Contractual Counterclaims Pursuant to Swiss Law

### 1. General Principle

23. In its Fourth Counterclaim, Nova characterizes its alleged damage claims based on Roche's alleged misuse of Nova's proprietary information as a contractual claim. In addition, Nova alleges parallel claims based on misappropriation of trade secrets, unfair competition, and conversion (Fifth, Sixth, and Seventh Counterclaim), all of which may, from a Swiss law perspective, be characterized as tort claims.

24. Under Swiss law, it is generally accepted that contract claims and tort claims arising from the same set of facts may be pursued as alternative claims. Thus, damages may be awarded under any of the alternative legal concepts (if the respective requirements are met), but not cumulatively. Of course, as noted above, under the choice-of-law provision in the Agreement, from a Swiss perspective and in view of reasonable party expectations these alternative claims are governed by the same law, i.e. Swiss law.

### 2. Unfair Competition Law Claim

25. In Swiss law, issues of unfair competition are regulated by the Federal Unfair Competition Act of 19 December 1986 ("UCA") as amended. The UCA contains several provisions that might be pertinent in the case at hand, namely:[3]

— Article 2 UCA ("Principle"): "Any behavior or business practice that is deceptive or that

---

[3] Unofficial translation by the International Bureau of WIPO.

7

in any other way infringes the principle of good faith and which affects the relationship between competitors or between suppliers and customers shall be deemed unfair and unlawful."

– Article 5 UCA ("Exploitation of the Achievement of Others"): "Shall be deemed to have committed an act of unfair competition, anyone who, in particular:

(a) without authorization, exploits results of work entrusted to him, for example, tenders, calculations or plans;

(b) exploits the results of work of another, for example, tenders, calculations or plans, although he must know that they have been handed to him or made available without authorization; [...]"

– Article 6 UCA ("Violation of Manufacturing or Trading Secrets"): "Shall be deemed to have committed an act of unfair competition, anyone who, in particular, exploits or discloses manufacturing or trading secrets he has discovered or of which he has obtained undue knowledge in some other manner."

26. Out of these provisions, Article 5(a) UCA seems to be the one that might be pertinent to Nova's allegations. However, Nova's Counterclaim does not even set forth any of the substantiation required by Swiss law for the application of such provision. As a matter of Swiss substantive law, a claim based on Article 5(a) UCA may not be adjudicated without, in particular, precise allegations by the claimant, i.e. Nova, concerning the specific trade secret at issue and the specific acts of unauthorized exploitation of such trade secret by Roche.

3. **Additional Alternative Claims?**

27. Nova raises additional counterclaims based on conversion and misappropriation of trade secrets (Fifth and Seventh Counterclaims).

28. There is no Swiss equivalent of the common-law tort concept of conversion.

8

From a Swiss law perspective, any cause of action relating to "Roche exercis[ing] dominion over such information in a manner that was inconsistent with Nova's rights and interests to maintain the information as confidential and proprietary" (see Nova's Counterclaim ¶ 45) would arise out of the Unfair Competition Act. As such, Nova would be required to proceed with this claim only under the Unfair Competition Act.

29. In theory, Nova's allegation of "Roche exercis[ing] dominion" (Nova's Counterclaim ¶ 45) could also be based on Swiss general tort law. Swiss general tort law requires a specific breach of a legal provision (i) which protects an absolute right, such as a right of property (including IP-rights) or the right not to be physically harmed or rights of personality, or (ii) whose purpose it is to protect certain parties from damage (a so-called "protective norm"). Only alternative (ii) appears to be of potential relevance in this case. With regard to know-how and trade secrets, the sole legal bases for Nova's tort allegations (i.e. the allegations contained in ¶ 22 of Nova's Counterclaim) are the ones contained in the Unfair Competition Act.

30. Similarly, under Swiss law, there is no separate cause of action outside of the scope of the Unfair Competition Act with regard to misappropriation of trade secrets for one's own benefit, as suggested in ¶ 38 of Nova's Counterclaim.

31. Thus, there appears to be no basis in Swiss law for additional alternative claims based on either conversion or misappropriation of trade secrets.

I hereby declare that all statements made herein of my own knowledge are true.

Executed this 26th day of June, 2008 in Zurich, Switzerland

_____
Felix Dasser

# EXHIBIT A

**HOMBURGER**



**Felix Dasser**

# CURRICULUM VITAE

| | |
|---|---|
| 1958 | Born in Zurich, Switzerland, as Swiss citizen. |
| 1977 | Matura Type A (Latin and Greek). |
| 1978–85 | Law school, University of Zurich (m.c.l.). |
| 1985–87 | Teaching and Research Assistant at University of Zurich (Prof. A. Heini; conflict of laws, contracts). |
| 1988–89 | Clerkship at Zurich District Court. |
| 1989 | Doctorate in law, University of Zurich (s.c.l.). |
| 1989–90 | Master of Laws, Harvard Law School. |
| 1991 | Admission to Zurich Bar. |
| 1991–2000 | Associate of Homburger Rechtsanwälte, Zurich. |
| 1996–99 | Lecturer at the University of Zurich Law Faculty on Swiss contract law. |
| 1997– | Trustee of "CENTRAL, Center for Transnational Law", at the Cologne University, Germany. |
| 1999 | Admission by the Zurich law school faculty as senior lecturer ("Privatdozent", PD) in private law, private international law, international civil procedure, and comparative private law. Various courses on contract law, private international law and international civil procedure. |
| 2000– | Partner of Homburger Rechtsanwälte (Litigation and Arbitration Practice Group). |
| 2002– | Member of Steering Committee of postgraduate programme Executive Master in Arts Administration, University of Zurich. |
| 2005 | Appointment as "Titularprofessor" of the University of Zurich. |

Details of Practice: see www.homburger.ch

**Professional Memberships:**
1. Swiss Bar Association
2. Zurich Bar Association
3. International Bar Association (Section on Business Law; Academics Forum)
4. Swiss Arbitration Association (ASA)
5. London Court of International Arbitration (LCIA)
6. German Institution of Arbitration (DIS)
7. Schweizerische Vereinigung für internationales Recht [Swiss Association for International Law]
8. Institut für zivilgerichtliches Verfahren [Institute for Civil Procedure], Zurich
9. Forum Internationales Wirtschaftsrecht [Forum International Business Law]
10. CENTRAL, Center for Transnational Law, Germany (trustee)
11. Wissenschaftliche Vereinigung für Internationales Verfahrensrecht, Germany [Academic Association for International Procedural Law]

**Publications:**
1. *Mit dem ordre public gegen italienisches Kindesrecht? Kritische Bemerkungen zu einem Urteil des Zürcher Obergerichts* [*Using the Public-Policy-Exception Against the Italian Law of Filiation? Critical Comments on a Decision of the Zurich Superior Court*], Schweizerische Juristen-Zeitung 1989, 9-11.
2. *L'arbitrage international privé: la Suisse rejoint le "club des progressistes"* [*Private International Arbitration: Switzerland Rejoins the "Club of the Progressives"*], AJIA Gazette, March 1989, 11-21.
3. *Internationale Schiedsgerichte und lex mercatoria. Rechtsvergleichender Beitrag zur Diskussion über ein nicht-staatliches Handelsrecht.* [*International Commercial Arbitration and Lex Mercatoria: Comparative Legal Contribution to the Discussion About a Non-national Commercial Law*], Schweizer Studien zum internationalen Recht, vol. 59, Schulthess Zurich 1989, 459 p.
4. *The "New" Law Merchant and the "Old": Sources, Content, and Legitimacy* (with Harold J. Berman), in: Lex Mercatoria and Arbitration (Carbonneau, ed.), Juris Publishing|Kluwer Dobbs Ferry 1990, 21-36 (2nd ed. 1998, 53-69).
5. *Lex mercatoria: Werkzeug der Praktiker oder Spielzeug der Lehre?* [*Lex Mercatoria: Practitioners' Tool or Academics' Toy?*], Schweizerische Zeitschrift für internationales und europäisches Recht, 1991, 299-323.
6. *Unfallverhütung bei Rechtskollisionen: Ergebnisorientierte Flexibilität im schweizerischen IPRG* [*Accident Prevention in case of Collisions of Laws: Result-oriented Flexibility in the Swiss Private International Law Act*], in: Rechtskollisionen [Collisions of Laws], Liber Amicorum Anton Heini, Schulthess Zurich 1995, 103-122.

7. *Neue Tendenzen im Internationalen Kartellprivatrecht der Schweiz [New Tendencies in Swiss Private International Law in Antitrust Matters]*, Aktuelle Juristische Praxis 1996, 950-957.

8. *Punitive Damages: Vom "fremden Fötzel" zum "Miteidgenoss"? [Punitive Damages: Once "Foreign Bastard", Now "Friendly Compatriot"?* Schweizerische Juristen-Zeitung 2000, 101-111.

9. *Tücken von Gerichtsstandsklauseln [Risks of Jurisdictional Clauses]*, in: Festschrift 125 Jahre Kassationsgericht [Liber Amicorum Zurich Court of Cassation (Donatsch|Fingerhuth|Lieber|Rehberg|Walder, eds.), Schulthess Zurich 2000, 173-181.

10. *Der Kampf ums Gericht [Fighting for the Forum]*, Zeitschrift für Schweizer Recht 119 (2000), I, 253-272.

11. *Vertragstypenrecht im Wandel – Konsequenzen mangelnder Abgrenzbarkeit der Typen [Changing Law of Specific Contract Types – Consequences of Lacking Distinctions between Contract Types]*, Schulthess|Nomos Zurich | Baden-Baden 2000, 360 p.

12. *Kommentar zum Gerichtsstandsgesetz [Commentary on Swiss Act on Jurisdiction]* (Müller|Wirth, eds.), Schulthess Zurich 2001, 950 p., (commentary on artt. 1, 3, 35, 36, 38, 39 concerning general provisions, lis alibi pendens, transitional rules).

13. *Anwendbares Recht: Wertung möglicher Anknüpfungskriterien [Applicable Law: Evaluation of possible conflict-of-law criteria]*, in: Geschäftsplattform Internet II [Business Platform Internet II] (Weber|Hilty|Auf der Maur, eds.) Schulthess Zurich 2001, 253-281.

14. *Lex Mercatoria—Critical Comments on a Tricky Topic*, in: Rules and Networks. The Legal Culture of Global Business Transactions (Applebaum|Felstiner|Gessner, eds.), Oñati International Series in Law and Society, Hart Publ. Oxford 2001, 189-200.

15. *Kommentar zum Schweizerischen Obligationenrecht [Commentary on Swiss Law of Obligations]* (Kren Kostkiewicz|Bertschinger, eds.), Orell Füssli Zurich 2002 (commentary on artt. 19-31 Swiss Code of Obligations on party autonomy, nullity of contracts, defects of conclusion a.s.o.).

16. *Forum Shopping. Prozessplanung unter dem GestG [Litigation Planning under the Swiss Jurisdiction Act]*, in: Zum Gerichtsstand in Zivilsachen (Gauch | Thürer, eds.) [On Jurisdiction in Civil Matters] Symposien zum schweizerischen Recht. Schulthess Zurich 2002, 23-38.

17. *Haftungsdurchgriff im IPR, Ausweichklausel und die Ermittlung ausländischen Rechts. Besprechung von BGE 128 III 346 [Piercing the Corporate Veil, Escape Clause, and the Finding of Foreign Law. Comments on Federal Supreme Court BGE 128 III 346]*, in: Jusletter Oktober 14, 2002

18. *Anwendbarkeit des Lugano Übereinkommens – Einlassung unter Art. 18 LugÜ. Besprechung von Bundesgerichtsentscheid 4C.52/2002 vom 3. September 2002 [Applicability of the Lugano Convention – Unconditional Appearance. Comments on Federal Supreme Court 4C. 52/2002 of September 3, 2002]*, in: Jusletter Dezember 9, 2002

Case 1:07-cv-00753-JJF   Document 217   Filed 06/26/2008   Page 15 of 18

19. *Gerichtsstand und anwendbares Recht unter dem Fusionsgesetz [Jurisdiction and Applicable Law under the Merger Act]*, in: Neuere Tendenzen im Gesellschaftsrecht. Festschrift für Peter Forstmoser zum 60. Geburtstag [New Tendencies in Corporate Law. Liber Amicorum Forstmoser] (von der Crone|Weber|Zäch|Zobl, eds.), Schulthess Zürich 2003, 659-671

20. *Vertragsrecht ohne Vertragstypenrecht? [Contract Law without Law on Specific Contracts?]*, in: Aktuelle Aspekte des Schuld- und Sachenrechts. Festschrift für Heinz Rey zum 60. Geburtstag (Honsell|Portmann|Zäch|Zobel, eds.) [Liber Amicorum Rey], Schulthess Zürich 2003, 207-216

21. *Gerichtsstand und anwendbares Recht bei Haftung aus Internetdelikten [Jurisdiction an Applicable Law in Internet-related Tort]*, in: Internet-Recht und Electronic Commerce Law, 3. Tagungsband (Arter|Jörg, eds.), Stämpfli Bern 2003, 127-158

22. *Feststellungsinteresse in internationalen Verhältnissen [Interest in Declaratory Relief in International Cases]*, in: Jusletter September 29, 2003

23. *Englische Freezing Injunction vor dem schweizerischen Vollstreckungsrichter [UK Freezing Injunctions in Swiss Enforcement Proceedings]*, in: Jusletter January 19, 2004

24. *Switzerland: International Rescue (Commercial Courts)* (with Georg Naegeli), in: Legal Week Global, January 2004, 24-25

25. *Fusionsgesetz: Welches Gericht? Welches Recht? [Merger Act: Which Court? Which Law?]*, in: Jusletter June 7 2004

26. *Basler Kommentar zum Fusionsgesetz [Basle Commentary on the Merger Act]* (Watter|Vogt|Tschäni|Daeniker, eds.), Helbing & Lichtenhahn Basle 2004 (Commentary on Article 29a GestG)

27. *Rechtswahl im Schweizer Recht – Möglichkeiten, Grenzen, Tipps [Choice of Law Under Swiss Law – Options, Limits, Tips*, in: Rechtswahlklauseln [Choice of Law Clauses], 30. Tagung der DACH in Berlin vom 6. bis 8. Mai 2004 (DACH, ed.), Schulthess 2005, 39-67

28. *Internationale Schiedsentscheide ohne Rechtsmittel: Ab jetzt gilt's ernst. Bemerkungen zu BGE 4P.236/2004 (131 III ___) [International Arbitration Awards Without Setting Aside Procedure: It's Serious Now (Comments on BGE 4P.236/204 (131 III ___)]*, in: Jusletter May 9, 2005

29. *Alle gegen einen – Der Schutz des Einzelnen vor der Internet-Gemeinschaft, [All against one – the protection of the individuum against the Internet Community]* in: Individuum und Verband. Festgabe zum Schweizerischen Juristentag 2006 (Zäch et al., eds.), Schulthess, Zurich 2006, 137-150

30. *Der Durchgriff im Internationalen Privatrecht – Ein Beitrag zur Diskussion über den positiven und den negativen Ordre public, [Piercing the corporate veil in conflicts of law – a contribution to the discussion about the positive and the negative public policy]*, in: Grundfragen der juristischen Person. Festschrift für Hans Michael Riemer zum 65. Geburtstag (Breitschmid|Portmann|Rey|Zobl, eds.), Stämpfli, Bern 2007, 35-49

31. *Kommentar zum schweizerischen Privatrecht – Internationales Privatrecht* [*Commentary on Swiss Private International Law Act*] (Honsell|Vogt|Schnyder|Berti, eds.), 2nd ed. Basle 2007, 1900 p. (commentary on artt. 136-139, 143-148 on various tort and general obligation issues).
32. *Switzerland* (with Balz Gross), in: The International Comparative Legal Guide to International Arbitration 2007 (Global Legal Group, ed.) (www.iclg.co.uk), London 2007, Chapter 42, 319-326
33. *Ein neuer Gerichtsstand für Adhäsionsklagen im IPRG. Zum BGE 6P.190/2006 vom 30. Mai 2007 [A new forum for adjunct civil actions in criminal proceedings under the Swiss Private International Law Act. Commentary on Federal Tribunal Decision 6P.190/2006]*, in: Jusletter 20. August 2007
34. *International Arbitration and Setting Aside Proceedings in Switzerland: A Statistical Analysis*, ASA Bulletin 25 (2007), 444-472
35. *Kommentar zum Lugano-Übereinkommen (LugÜ)* [*Commentary on the Lugano Convention*] (Dasser|Oberhammer, eds.), Berne, to be published July 2008 (commentary on Artt. 1-4, 21-23)
36. *Mouse or Monster? Some Facts and Figures on the Lex Mercatoria*, ZEuP 2008 (to be published)
37. Various Book Reviews in Schweizerische Juristen-Zeitung on Conflict of Laws and Arbitration (1995: 243-244; 1996: 18-19; 1998: 169-170, 343-344, 373-374; 2002: 114-115; 2005: 435-436; 2006: 218-219)

## University Courses:

– European and international dispute resolution (litigation and arbitration)
– Case analysis in contract law
– Workshops on conflict of laws, international litigation|arbitration, and law and arts administration

## Family:

Married, with four children

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

**CERTIFICATE OF SERVICE**

I, Philip A. Rovner, hereby certify that on June 26, 2008, the within document was filed with the Clerk of the Court using CM/ECF which will send notification of such filing(s) to the following; that the document was served on the following counsel as indicated; and that the document is available for viewing and downloading from CM/ECF.

| **BY HAND DELIVERY AND E-MAIL** | **BY HAND DELIVERY AND E-MAIL** |
|---|---|
| Steven J. Balick, Esq.<br>John G. Day, Esq.<br>Ashby & Geddes<br>500 Delaware Avenue<br>8th Floor<br>P.O. Box 1150<br>Wilmington, DE  19899<br>sbalick@ashby-geddes.com<br>jday@ashby-geddes.com | John W. Shaw, Esq.<br>Jeffrey T. Castellano, Esq.<br>Young Conaway Stargatt & Taylor, LLP<br>1000 West Street, 17th Floor<br>Wilmington, DE  19801<br>jshaw@ycst.com<br>jcastellano@ycst.com |
| Mary W. Bourke, Esq.<br>Connolly Bove Lodge & Hutz LLP<br>The Nemours Building<br>1007 N. Orange Street<br>Wilmington, DE  19801<br>mbourke@cblh.com | Rodger D. Smith, Esq.<br>Morris, Nichols, Arsht & Tunnell LLP<br>1201 N. Market Street<br>P.O. Box 1347<br>Wilmington, DE  19899<br>rsmith@mnat.com |

I hereby certify that on June 26, 2008 the foregoing document was sent by E-mail to the following non-registered participants:

Bradford J. Badke, Esq.
Sona De, Esq.
Michael Kahn, Esq.
Simon Fitzpatrick, Esq.
Ropes & Gray LLP
1211 Avenue of the Americas
New York, NY 10036-8704
Jim.badke@ropesgray.com
Sona.de@ropesray.com
Michael.kahn@ropesgray.com
Simon.fitzpatrick@ropesgray.com

Wesley E. Overson, Esq.
Rachel Krevans, Esq.
Jason R. Bartlett, Esq.
Parisa Jorjani, Esq.
Daniel P. Muino, Esq.
Morrison & Foerster LLP
425 Market Street
San Francisco, CA 94105-2482
woverson@mofo.com
rkrevans@mofo.com
jasonbartlett@mofo.com
pjorjani@mofo.com
dmuino@mofo.com

Kenneth P. George, Esq.
Joseph M. Casino, Esq.
Amster, Rothstein & Ebenstein LLP
90 Park Avenue
New York, NY 10016
kgeorge@arelaw.com
jcasino@arelaw.com

Michael G. Adams, Esq.
Ashley L. Ellis, Esq.
Parker Poe Adams & Bernstein LLP
Three Wachovia Center, Suite 3000
401 South Tryon Street
Charlotte, NC 28202
mikeadams@parkerpoe.com
ashleyellis@parkerpoe.com

/s/ Philip A. Rovner
Philip A. Rovner (#3215)
Potter Anderson & Corroon LLP
Hercules Plaza
P.O. Box 951
Wilmington, Delaware 19899
(302) 984-6000
E-mail: provner@potteranderson.com