IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROCHE DIAGNOSTICS OPERATIONS, INC., and CORANGE INTERNATIONAL LIMITED, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 07-753-JJF |
| ABBOTT DIABETES CARE, INCORPORATED, ABBOTT DIABETES CARE SALES CORPORATION, BAYER HEALTHCARE, LLC, DIAGNOSTICS DEVICES, INC., LIFESCAN, INCORPORATED, and NOVA BIOMEDICAL CORPORATION | ) ) ) ) ) ) ) ) | **REDACTED -- PUBLIC VERSION** |
| Defendants. | ) | |

**DEFENDANT BAYER HEALTHCARE, LLC'S OPPOSITION TO
ROCHE'S SECOND MOTION TO COMPEL**

OF COUNSEL:

Rachel Krevans
Wesley E. Overson
Parisa Jorjani
Daniel P. Muino
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
(415) 268-7000

Kenneth P. George
Joseph M. Casino
AMSTER ROTHSTEIN & EBENSTEIN LLP
90 Park Avenue
New York, NY 10016
(212) 336-8000

DATED: June 30, 2008

YOUNG CONAWAY STARGATT &
TAYLOR, LLP
John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Jeffrey T. Castellano (No. 4837)
1000 West Street, 17th Floor
Wilmington, DE 19801
(302) 571-6600
kkeller@ycst.com

*Attorneys for Bayer Healthcare, LLC*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

NATURE AND STAGE OF THE PROCEEDINGS ......................................................... 2

SUMMARY OF ARGUMENT .......................................................................................... 2

ARGUMENT ...................................................................................................................... 3

    A.    Roche Failed to Properly Meet and Confer with Bayer ..................................... 4

    B.    Roche Is Seeking Customer Information Protected By
        Privacy Obligations ............................................................................................ 5

    C.    Roche Is Not Entitled To Fact Findings As a Discovery
        Sanction .............................................................................................................. 6

    D.    Roche's Request For Information Identifying Customers
        Who Purchased Meters Prior to October 2, 2007 is
        Improper ............................................................................................................. 7

CONCLUSION ................................................................................................................... 9

## TABLE OF AUTHORITIES

**CASES**                                                                                    **Page(s)**

*Commissariat a L'Energie Atomique v. Samsung Elec. Co.,*
    524 F. Supp. 2d 534 (D. Del. 2007)................................................................6


**STATUTES**

35 U.S.C. § 271(b) ................................................................................................6


**OTHER AUTHORITIES**

Fed. R. Civ. P. 16................................................................................................2

D. Del. LR 7.1.1................................................................................................4

Defendant Bayer Healthcare, LLC ("Bayer") submits this brief in opposition to the Second Motion to Compel ("Mot.") filed by Plaintiffs Roche Diagnostics Operations, Inc. and Corange International Ltd. (collectively, "Roche").

## INTRODUCTION

By its motion, Roche seeks to discover the identity of many hundreds of thousands of diabetes patients who have purchased and used the Bayer accused products over the years. Roche apparently intends to seek discovery from these individuals to establish that they use the Bayer products in the prescribed manner. While it is certainly Roche's burden to establish direct infringement by end-users of the Bayer products, Roche's chosen discovery approach is unnecessary, overbroad, and injurious to the privacy interests of Bayer's customers. There are many ways for Roche to establish how customers use the accused products without harassing Bayer's customers.

Roche's current motion follows its continuous pattern of abusive litigation tactics. This case has only progressed through the document discovery part of Phase I, and yet Roche has already filed two motions to compel. Many of the issues in both motions could likely have been resolved had Roche made a true effort to meet and confer with defendants. Roche's document production consists of more than 7.5 million pages of largely irrelevant documents, most of which appear to have been recycled from prior litigation. Even Roche's decision to sue Bayer in the first place was improper, given the dispute resolution and arbitration provisions by which Roche is bound under a patent license with Bayer. Roche should not be permitted to use the discovery process in this litigation to impose needless costs on Bayer and the other defendants.

For these reasons and those explained herein, Roche's motion to compel should be denied.

## NATURE AND STAGE OF THE PROCEEDINGS

On November 21, 2007, Roche filed the present action against defendants for alleged infringement of U.S. Patents No. 7,276,146 (the "'146 Patent") and No. 7,276,147 (the "'147 Patent"), covering methods for use of blood glucose monitoring products. (D.I. 1). Bayer answered the complaint on January 11, 2008. (D.I. 41). Roche filed an amended complaint adding new products on April 15, 2008, which Bayer answered on May 5, 2008. (D.I. 142, 182).

On April 24, 2008, the Court issued a Rule 16 Scheduling Order. (D.I. 147). Under the Scheduling Order, discovery is divided into two phases: Phase I encompasses infringement and prior invention issues, and Phase II encompasses invalidity issues. (*Id.*) The parties completed Phase I written and documentary discovery on June 27, 2008. The deposition discovery in Phase I will conclude on October 24, 2008. (*Id.*) Phase II discovery is not permitted to commence until all of Phase I fact and expert discovery is complete. (*Id.*) Any discovery related to damages and willfulness issues is not to be conducted until further ordered by the Court.

On May 8, 2008, Roche served on Bayer its Second Set of Requests for Production of Documents. (D.I. 184). Requests 121-124 asked for documents identifying the end-users of the Bayer accused products. Bayer responded to these Requests on June 9, 2008, and objected to producing documents identifying the names, addresses, and telephone numbers of each of Bayer's customers. (D.I. 205). On the afternoon of June 12, 2008, Roche notified Bayer's counsel by phone message and e-mail that if Bayer continued to stand on its objections, Roche would file a motion to compel production of the information. Roche promptly filed the present motion on June 13, 2008, barely more than 24 hours after first raising the issue with Bayer.

## SUMMARY OF ARGUMENT

1.    Roche failed to properly meet and confer with Bayer prior to filing its second motion to compel. Roche could have obtained the information it is seeking through other

discovery means or through negotiations with Bayer. Because Roche did not adequately meet and confer with Bayer prior to filing this motion, and did not use the more appropriate and less invasive discovery tools available to it, Roche's requests for relief should be denied.

2.    Roche is requesting discovery that exceeds what it needs to establish customer use of the accused products. Roche seeks private information on hundreds of thousands of third-party diabetes patients, information that Bayer is obligated to keep confidential. Roche's request for such third-party information should be denied.

3.    Roche asks the Court to make certain fact findings supporting its infringement case as a sanction for Bayer's refusal to produce its customers' private information. As Roche is not entitled to the requested discovery, its demand for sanctions is inappropriate. It is Roche's responsibility to prove the elements of direct and indirect infringement using proper discovery techniques.

4.    For the reasons already discussed, Roche's request for information regarding customers who purchased products prior to the issuance of the patents-in-suit is also inappropriate. Additionally, such pre-issuance activities are of limited relevance to Roche's infringement case in Phase I that discovery of this information is burdensome and oppressive.

## ARGUMENT

Roche's motion to compel seeks private customer information that is not necessary to Roche's infringement case. Bayer does not deny that Roche must prove customer use of the accused products in order to establish direct and indirect infringement. However, there are many preferable ways to obtain the facts needed. It is not appropriate for Roche to invade the privacy of hundreds of thousands of diabetes patients to establish customer use. Roche can prove customer use through more conventional means without resorting to the massive download of sensitive customer information it seeks.

### A.    Roche Failed to Properly Meet and Confer with Bayer.

Before involving the Court in a discovery dispute, the District of Delaware requires a party to meet and confer with opposing counsel to attempt a resolution of the dispute.  Local Rule 7.1.1 requires that a statement be filed with each nondispositive motion including an "averment of counsel for the moving party that a reasonable effort has been made to reach agreement with the opposing party on the matters set forth in the motion.  Unless otherwise ordered, failure to so aver may result in dismissal of the motion."

Roche did not properly discharge its meet-and-confer obligation before bringing this motion.  At around 3 P.M. on June 12, 2008, Roche's counsel sent an e-mail to Bayer's counsel seeking confirmation that Bayer would stand by its objection to producing confidential customer information.  Ex. 1.  Roche's e-mail gave Bayer less than 24 hours to respond before Roche would file a motion to compel discovery.  Roche's counsel also left a voicemail message with Bayer's counsel that same day, conveying the same message.  Roche filed its motion to compel the following day, June 13, 2008.  The parties never directly communicated to discuss the dispute.  On June 14, 2008, Bayer's counsel sent an e-mail to Roche's counsel confirming that Bayer would stand by its objection to identifying its customers, but indicated Bayer's willingness to meet and confer to attempt a resolution of the dispute. Ex. 2.  Roche's counsel never responded to this e-mail.

Roche's pre-filing communications with Bayer do not qualify as a proper meet-and-confer effort.  Had Roche taken the time to discuss this dispute with Bayer, a resolution could

likely have been achieved.[1]  Instead, Roche hastily filed its motion, needlessly putting the issue before the Court.

Roche could have used more targeted and appropriate discovery means, such as other available discovery tools, throughout the Phase I discovery period.  With alternative discovery methods available, Roche's demand for the private information of Bayer's customers is unnecessary and should be denied.

### B.    Roche Is Seeking Customer Information Protected By Privacy Obligations.

The information that Roche is demanding is private, customer data that Bayer is obligated to hold in confidence.  Roche should not be permitted to invade the privacy of Bayer's customers.

Among other things, Roche requests "information containing an identification of names, addresses, telephone numbers, and relevant Bayer product for all end-users who have purchased, used or continued to use Bayer Accused Products on or after January 1, 2006." Ex. 3 (Roche's Requests 122-124).  Roche's request for the personal information of each Bayer customer is improper.  Bayer is obligated to protect the identity of the end users of its products.  Bayer represents to its customers and clients through a privacy statement that any personal information they submit to Bayer will be held in confidence:  "[T]he database and its contents remain at our company and stay with data processors or servers acting on our behalf and responsible to us. Your personal data will not be passed on by us or by our agents for use by third parties in any form whatsoever, unless we have obtained your consent or are legally required to do so." Ex. 4. Roche's discovery demand would force Bayer to violate this commitment to its customers.

---

[1] Roche had previously proposed to Bayer a stipulation establishing customer usage of the accused products.  While Bayer rejected that stipulation as written, it did not foreclose the possibility of negotiating an acceptable stipulation or otherwise resolving the customer usage issue.

Because Roche is requesting information beyond what it needs to make its case, and the requested information is confidential customer data that Bayer is obligated to protect, Roche's request for this information should be denied.[2]

## C.    Roche Is Not Entitled To Fact Findings As a Discovery Sanction.

Roche asks the Court to make several fact findings in its favor as a discovery sanction for Bayer's refusal to produce confidential customer information. Since Roche is not entitled to the customer information it seeks in the first instance, it is certainly not entitled to any fact findings. Roche bears the burden of proving the elements of its own case using reasonable and appropriate discovery techniques.

Roche asks the Court to find that "[Bayer] knew or should have known that [its] actions would induce such use [of the accused products] by end-users." (Mot. at 3). Roche is not entitled to this fact finding. The patent statute provides that "[w]homever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). "To establish inducement, the claimant must show: 1) that a direct infringement has occurred; and 2) that the accused infringer knowingly induced infringement or had the requisite intent." *Commissariat a L'Energie Atomique v. Samsung Elec. Co.*, 524 F. Supp. 2d 534, 544-546 (D. Del. 2007). To prove that Bayer actively induced its customers to infringe Roche's patents, Roche must meet its burden of showing both direct infringement and intent. *Id.* The evidence that Roche seeks by its motion is purportedly aimed at establishing customer usage, but that is separate from the issue of

---

[2] In its brief, Roche notes that Bayer served interrogatories asking Roche to identify end-users of the Bayer products known to Roche. (Mot. at 5, 7). Roche insists that Bayer's interrogatories validate Roche's own requests for customer information from Bayer. (*Id.*) But Bayer's interrogatories merely seek the identity of end-users *known to Roche* if Roche intends to rely on such information to support its case. By serving its interrogatories, Bayer did not concede to the necessity of such third-party information to Roche's case or the propriety of seeking confidential customer information from Bayer.

intent. If Roche establishes customer usage of the accused products, more evidence would still be needed to establish intent. Hence, even if Roche was entitled to fact findings as a discovery sanction, Roche's requested fact finding regarding intent is completely improper. The ultimate decision of whether or not Roche meets its burden of proving intent is a factual decision to be made by the trier-of-fact. *Id.* at 546.

Roche also asks the Court for a finding that "[t]he end-users of [Bayer's] accused strips sold after October 2, 2007 use those strips only in connection with meters that have the structure, functions, features, and operation of [Bayer's] accused meters sold by [Bayer] after October 2, 2007." (Mot. at 3). Not only is this proposed finding unconnected to the evidence that Roche seeks by its motion, but it is contrary to the actual facts of this case.

One of the Bayer accused products, the Ascensia Contour blood glucose monitoring strips, is backwards compatible with older Contour meters. *See* Exs. 5 and 6 (Bayer technical documents detailing backwards compatibility testing results). When the accused strips are used with the older meters, they operate in a clearly non-infringing manner. Roche acknowledged that because of this fact, "the sale of the Ascensia Contour Test Strips alone would not be a contributory infringement for and during a time period yet to be determined." Ex. 7, p. 16. Roche's proposed fact finding is contrary to actual facts regarding Bayer's Ascensia Contour meters and strips. Roche is not entitled to such a counter-factual "fact finding."

### D.     Roche's Request For Information Identifying Customers Who Purchased Meters Prior to October 2, 2007 is Improper.

In addition to current customer information, Roche seeks information identifying customers who purchased the accused blood glucose meters prior to the issuance of the patents-in-suit. (Mot. at 6-10). As detailed above, this sensitive information is not needed for any time period, let alone for the period prior to the issuance of the patents on October 2, 2007.

Moreover, such pre-issuance information is of limited relevance to Roche's infringement case in Phase I.

Roche argues that because customers who purchased meters prior to October 2, 2007 can still be using those meters with strips sold after that date, meters sold before the patents issued are relevant to direct infringement. Roche is correct that strips sold today can be used with meters sold prior to October 2, 2007. However, Roche does not need evidence of pre-issuance sales of meters to support its infringement case. Bayer has already produced information on the accused products, all of which are currently being sold. Information regarding meters sold prior to the issuance of the patents is simply superfluous at this stage of the litigation. To the extent the pre-issuance sales information is relevant to damages calculations, that information can be obtained during the damages phase.

## CONCLUSION

For the foregoing reasons, Bayer respectfully requests that the Court deny Roche's

Second Motion to Compel.

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Jeffrey T. Castellano (No. 4837)
1000 West Street, 17th Floor
Wilmington, DE 19801
(302) 571-6600
kkeller@ycst.com

OF COUNSEL:

Rachel Krevans
Wesley E. Overson
Parisa Jorjani
Daniel P. Muino
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
(415) 268-7000

Kenneth P. George
Joseph M. Casino
AMSTER ROTHSTEIN & EBENSTEIN LLP
90 Park Avenue
New York, NY 10016
(212) 336-8000                          *Attorneys for Bayer Healthcare, LLC*

Dated: June 30, 2008

## CERTIFICATE OF SERVICE

I, Karen E. Keller, Esquire, hereby certify that on July 1, 2008, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

Philip A. Rovner, Esquire
Potter Anderson & Corroon LLP
1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951

Frederick L. Cottrell, III, Esquire
Anne Shea Gaza, Esquire
Richards Layton & Finger PA
One Rodney Square
920 North King Street
Wilmington, DE 19801

Mary W. Bourke, Esquire
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899

Rodger D. Smith, II, Esquire
Morris Nichols Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347

Steven J. Balick, Esquire
Lauren E. Maguire, Esquire
Ashby & Geddes
500 Delaware Avenue
P.O. Box 1150
Wilmington, DE 19899

I further certify that on July 1, 2008, I caused a true and correct copy of the foregoing document to be served by e-mail on the above-listed counsel of record and on the following non-registered participants in the manner indicated:

**BY E-MAIL**

Daniel A. Boehnen, Esquire [boehnen@mbhm.com]
Grantland G. Drutchas, Esquire [drutchas@mbhb.com]
Gary E. Hood, Esquire [hood@mbhb.com]
Nicole Keenan, Esquire [keenan@mbhb.com]
Paula S. Fritsch, Esquire [Fritsch@mbhb.com]
Sherri L. Oslick, Esquire [oslick@mbhb.com]
Jeffrey P. Armstrong [armstrongj@mbhb.com]
McDonnell Boehnen Hulbert & Bergoff LLP
300 South Wacker Drive
Chicago, IL  60606

Bradford J. Badke, Esquire [jim.badke@ropesgray.com]
Sona De, Esquire [sona.de@ropesgray.com]
Michael Kahn, Esquire [michael.kahn@ropesgray.com]
Ropes & Gray LLP
1211 Avenue of the Americas
New York, NY  10036-8704

Michael G. Adams, Esquire [mikeadams@parkerpoe.com]
Ashley L. Ellis, Esquire [ashleyellis@parkerpoe.com]
Parker Poe Adams & Bernstein LLP
Three Wachovia Center, Suite 3000
401 South Tryon Street
Charlotte, NC  28202

Edward A. Mas II, Esquire [emas@mcandrews-ip.com]
Stephen F. Sherry, Esquire [ssherry@mcandrews-ip.com]
Kirk A. Vander Leest, Esquire [kvanderleest@mcandrews-ip.com]
James M. Hafertepe, Esquire [jhafertepe@mcandrews-ip.com]
Merle S. Elliott, Esquire [melliott@mcandrews-ip.com]
McAndrews, Held & Malloy, Ltd.
500 West Madison Street
Chicago, IL  60661

2

YOUNG CONAWAY STARGATT
  &  TAYLOR, LLP

/s/ *Karen E. Keller*
John W. Shaw (No. 3362) [jshaw@ycst.com]
Karen E. Keller (No. 4489) [kkeller@ycst.com]
Jeffrey T .Castellano (No. 4837)
[jcastellano@ycst.com]
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19899
(302) 571-6600

*Attorneys for Defendant Bayer Healthcare, LLC*

DB02:6432846.1                                                                                           066694.1001

# EXHIBIT 1

**Dachtler, Amy C**

---

**From:**     Hood, Gary [hood@mbhb.com]

**Sent:**     Thursday, June 12, 2008 3:09 PM

**To:**       Muino, Daniel P.

**Cc:**       Krevans, Rachel; Overson, Wesley E.; Jorjani, Parisa; Boehnen, Daniel; Drutchas, Grantland; Oslick, Sherri

**Subject:** Bayer's Objections/Responses To Roche Second RFP's

Daniel -

I'm following up on a voicemail message that I left you this afternoon.  As I noted in my message, I want to confirm that Bayer is objecting to and not producing documents to permit Roche to identify Bayer customers, including warranty registrations and claims, and is objecting to and not producing documents that it claims relate to products sold by Bayer before October 2, 2007 - all as set forth in Bayer's responses and objections to Roche's Requests for Production, and specifically Requests 121-124.  We expect that Bayer intends to stand on its objections - please let me know no later than 1pm Eastern time tomorrow if this is not the case.  In view of the case schedule, if we don't hear from you by then that Bayer does not intend to stand on its objections, we intend to file an appropriate motion with the Court.

Best Regards,
Gary

Gary E. Hood, Esq.
**McDonnell Boehnen Hulbert & Berghoff LLP**
300 S. Wacker, Ste. 3100
Chicago, IL 60606
312-913-2146 (d)
312-913-0001 (p)
312-913-0002 (f)
hood@mbhb.com

THE INFORMATION CONTAINED IN AND ATTACHED TO THIS TRANSMISSION IS ATTORNEY/CLIENT PRIVILEGED AND CONFIDENTIAL INFORMATION INTENDED FOR THE SOLE USE OF THE RECIPIENT(S) NAMED ABOVE.  ANY USE OF THIS COMMUNICATION BY ANYONE OTHER THAN THE INTENDED RECIPIENT IS STRICTLY PROHIBITED.

# EXHIBIT 2

## Dachtler, Amy C

| | |
|---|---|
| **From:** | Muino, Daniel P. |
| **Sent:** | Saturday, June 14, 2008 4:28 PM |
| **To:** | 'Hood, Gary' |
| **Cc:** | Krevans, Rachel; Monach, Andrew E.; Overson, Wesley E.; Jorjani, Parisa; Boehnen, Daniel; Drutchas, Grantland; Oslick, Sherri |
| **Subject:** | RE: Bayer's Objections/Responses To Roche Second RFP's |

Gary,

Bayer stands by its objections to producing documents identifying end users of the Bayer accused products.  We are available to meet and confer to attempt a resolution of this issue, if you wish.

**Daniel P. Muino**
Morrison & Foerster LLP
425 Market Street | San Francisco, CA 94105
415.268.7475 | 415.268.7522 fax
dmuino@mofo.com | www.mofo.com

---

**From:** Hood, Gary [mailto:hood@mbhb.com]
**Sent:** Thursday, June 12, 2008 3:09 PM
**To:** Muino, Daniel P.
**Cc:** Krevans, Rachel; Overson, Wesley E.; Jorjani, Parisa; Boehnen, Daniel; Drutchas, Grantland; Oslick, Sherri
**Subject:** Bayer's Objections/Responses To Roche Second RFP's

Daniel -

I'm following up on a voicemail message that I left you this afternoon.  As I noted in my message, I want to confirm that Bayer is objecting to and not producing documents to permit Roche to identify Bayer customers, including warranty registrations and claims, and is objecting to and not producing documents that it claims relate to products sold by Bayer before October 2, 2007 - all as set forth in Bayer's responses and objections to Roche's Requests for Production, and specifically Requests 121-124.  We expect that Bayer intends to stand on its objections - please let me know no later than 1pm Eastern time tomorrow if this is not the case.  In view of the case schedule, if we don't hear from you by then that Bayer does not intend to stand on its objections, we intend to file an appropriate motion with the Court.

Best Regards,
Gary

Gary E. Hood, Esq.
**McDonnell Boehnen Hulbert & Berghoff LLP**
300 S. Wacker, Ste. 3100
Chicago, IL 60606
312-913-2146 (d)
312-913-0001 (p)
312-913-0002 (f)
hood@mbhb.com

THE INFORMATION CONTAINED IN AND ATTACHED TO THIS TRANSMISSION IS ATTORNEY/CLIENT PRIVILEGED AND CONFIDENTIAL INFORMATION INTENDED FOR THE SOLE USE OF THE RECIPIENT(S) NAMED ABOVE.  ANY USE OF THIS COMMUNICATION BY ANYONE OTHER THAN THE INTENDED RECIPIENT IS STRICTLY PROHIBITED.

# EXHIBIT 3

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ROCHE DIAGNOSTICS OPERATIONS, INC., and CORANGE INTERNATIONAL LIMITED, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | C.A. No. 07-753-JJF |
| ABBOTT DIABETES CARE, INC., ABBOTT DIABETES CARE SALES CORP., BAYER HEALTHCARE, LLC, DIAGNOSTIC DEVICES, INC., LIFESCAN, INCORPORATED, and NOVA BIOMEDICAL CORPORATION, | ) ) ) ) ) ) ) | DEMAND FOR JURY TRIAL |
| Defendants. | ) ) | |

**ROCHE DIAGNOSTICS OPERATIONS, INC.'S AND CORANGE INTERNATIONAL LIMITED'S SECOND SET OF REQUESTS TO DEFENDANT BAYER HEALTHCARE, LLC FOR THE PRODUCTION OF DOCUMENTS AND THINGS (NOS. 120- 143)**

Plaintiffs Roche Diagnostics Operations, Inc. ("RDOI") and Corange International Limited ("Corange") (collectively "Plaintiffs") propound the following requests to Defendant Bayer Healthcare, LLC ("Bayer") for the production of the documents and things specified below for inspection and copying pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and the Local Rules of the U.S. District for the District of Delaware. The documents shall be produced for inspection and copying at the offices of Plaintiffs' counsel, McDonnell Boehnen Hulbert & Berghoff LLP, 300 S. Wacker Dr., Chicago, Illinois 60606, within thirty (30) days from the service of these requests and copying and inspection shall continue from day to day thereafter until completed. Additionally, Bayer shall serve written responses to these requests on Plaintiffs' counsel within thirty (30) days of the service hereof.

All requests propounded by Plaintiffs are deemed to be continuing in nature so as to require supplementation promptly following the discovery of additional information by Bayer to the extent such information is responsive to Plaintiffs' requests.

## DEFINITIONS AND INSTRUCTIONS

In the following requests for documents and things, Roche hereby incorporates the Definitions and Instructions set forth in Roche's First Set of Requests to Defendant Bayer Healthcare, LLC for the Production of Documents and Things (Nos. 1-119). In addition, the following terms also apply:

1.      The term "FDA" shall mean the Food and Drug Administration.

2.      The term "purchase" shall mean actual purchases, attempts to purchase, inquiries regarding purchase, or other transfers or attempts to transfer goods.

3.      The term "customer" shall mean any person that has purchased, used, or is using any Bayer Electrochemical Sensor exclusive of dealers, distributors, and retailers.

4.      The term "alleged prior invention" shall mean subject matter embodying any claim of the patents-in-suit purportedly made by a person or persons other than Christopher D. Wilsey before the inventions claimed in the patents-in-suit.

5.      The term "Accused Products" shall mean any Identified Electrochemical Sensor as well as any Electrochemical Sensor listed in Roche's Complaint or Amended Complaint.

6.      The term "Bayer California litigation" shall mean Case No. 05-cv-03117-WHA in the Northern District of California, titled as: *Abbott Diabetes Care Inc. and Abbott Laboratories v. Roche Diagnostics Corporation, Roche Diagnostics Operations, Inc. and Bayer HealthCare LLC.*

2

## REQUESTS

120.    To the extent not previously produced, all documents and things concerning, referring to or relating to any Premarket Notification 510(k) submission for any of the Accused Products, including but not limited to the original submission, any amendments, any withdrawals, and any and all subsequent correspondence to and from the FDA.  Such submissions include but are not limited to 510(k) submission Nos. K062058 and K062347.

121.    All documents and things concerning, referring to or relating to any product warranty, warranty registration, or any claim on a warranty made by any person for any Accused Product.

122.    Documents and things sufficient to identify the names, addresses and telephone numbers of each of Bayer's customers in the United States of any Accused Product made, used, sold, offered for sale, or imported into the United States.  (Note: Defendant may treat this request as limited to information containing an identification of names, addresses, telephone numbers, and relevant Bayer product for all end-users who have purchased, used or continued to use Bayer Accused Products on or after January 1, 2006, where such information is separately available in this form.)

123.    All documents and things concerning, referring to, relating to or constituting any communications or exchange of information with any of Bayer's customers in the United States of any Accused Product made, used, sold, offered for sale, or imported into the United States, including but not limited to customer complaints, rebate requests, and warranty cards.  (Note: Defendant may treat this request as limited to information containing an identification of names, addresses, telephone numbers, and relevant Bayer product for all end-users who have purchased, used or continued to use Bayer Accused Products on or after January 1, 2006, where such information is separately available in this form.)

3

124.    All documents and things concerning, referring to or relating to all circumstances and situations where Bayer has used or operated any of the Accused Products in the United States, including for testing, operating, or evaluating them for any purpose, for demonstrating them for any purpose, for sales or marketing promotion, or for comparing the attributes or performance of them with any other Electrochemical Sensors.  (Note: Defendant may treat this request as limited to information containing an identification of names, addresses, telephone numbers, and relevant Bayer product for all end-users who have purchased, used or continued to use Bayer Accused Products on or after January 1, 2006, where such information is separately available in this form.)

125.    All documents and things concerning, referring to or relating to any agreements with any other persons or entities regarding the manufacture, exportation, or importation of each Accused Product.

126.    Documents and things sufficient to show the identity of the entity or entities who manufacture each Accused Product.

127.    Documents and things sufficient to show how, where and by whom each Accused Product is imported into the United States or exported from the United States.

128.    All documents and things concerning, referring to or relating to the OneTouch® Ultra™ System, including the OneTouch® Ultra™ Meter and the OneTouch® Ultra™ Test Strips, including but not limited to any notes, memoranda or correspondence written by, communicated to, or communicated from Bayer.

129.    All documents and things concerning, referring to or relating to U.S. Patent Publication No. 2002/0092612 or any related patents or related applications, including but not limited to any notes, memoranda or correspondence written by, communicated to, or communicated from Bayer.

130.    All documents and things concerning, referring to or relating to any search conducted by or on behalf of Bayer for any alleged prior invention, including but not limited to the search results.

131.    All documents and things concerning, referring to or relating to any patents or patent applications owned by persons other than Plaintiffs pertaining to any alleged prior invention.

132.    All documents and things concerning, referring to or relating to the conception, actual or constructive reduction to practice, diligence, corroboration, first written description, first disclosure to another, first public sale, and first public use of any alleged prior invention.

133.    All documents and things showing or refuting whether any alleged prior invention was abandoned, suppressed, or concealed.

134.    All documents and things showing or refuting diligence in reducing any alleged prior invention to practice and filing a patent application or otherwise making public such information.

135.    All documents and things concerning, referring to or relating to the research, design, development, analysis, and testing of any alleged prior invention.

136.    All documents and things concerning, referring to or relating to research, development, manufacture, sale or offer for sale of any product developed from any alleged prior invention.

137.    All documents and things concerning, referring to or relating to the earliest disclosure of any product developed from any alleged prior invention.

138.    All documents and things concerning, referring to or relating to invention disclosures and patent applications directed to any alleged prior invention.

139.    Documents and things sufficient to show the identity of the person(s) who conceived, or who witnessed the conception of any alleged prior invention.

140.    Documents and things sufficient to show the identities and activities of any persons or entities who in any way assisted in conceiving, developing, reducing to practice, evaluating, or testing any alleged prior invention.

141.    Documents and things sufficient to show the identity of the person(s) who first actually or constructively reduced to practice, or who witnessed the first actual or constructive reduction to practice, of any alleged prior invention.

142.    Documents and things sufficient to show the dates, locations, and circumstances of the conception, diligence, corroboration, and reduction to practice of any alleged prior invention.

143.    The following documents and things from the Bayer California litigation: all transcripts, videos and exhibits from depositions of Bayer witnesses (individual and/or under F.R.C.P. 30(b)(6)); Bayer's responses to interrogatories, requests for admission and requests for production of documents and things; reports from Bayer's expert(s); and motions and/or briefs filed by Bayer related to any motion for summary judgment.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Daniel A. Boehnen
Grantland G. Drutchas
McDonnell Boehnen Hulbert & Berghoff LLP
300 South Wacker Drive
Chicago, IL 60606
(312) 913-0001


Dated:  May 8, 2008
863759

By: /s/ Philip A. Rovner
     Philip A. Rovner (#3215)
     Hercules Plaza
     P.O. Box 951
     Wilmington, DE 19899-0951
     (302) 984-6000
     provner@potteranderson.com

*Attorney for Plaintiffs*
*Roche Diagnostics Operations, Inc. and*
*Corange International Limited*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

**CERTIFICATE OF SERVICE**

I, Philip A. Rovner, hereby certify that on May 8, 2008, the within document was

served on the following counsel of record, at the addresses and in the manner indicated:

**BY HAND DELIVERY AND E-MAIL**

Frederick L. Cottrell, III, Esq.
Anne Shea Gaza, Esq.
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, DE 19801
cottrell@rlf.com
gaza@rlf.com

John W. Shaw, Esq.
Jeffrey T. Castellano, Esq.
Young Conaway Stargatt & Taylor, LLP
1000 West Street, 17th Floor
Wilmington, DE 19801
jshaw@ycst.com
jcastellano@ycst.com

Mary W. Bourke, Esq.
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 N. Orange Street
Wilmington, DE 19801
mbourke@cblh.com

Rodger D. Smith, Esq.
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
rsmith@mnat.com

Steven J. Balick, Esq.
John G. Day, Esq.
Ashby & Geddes
500 Delaware Avenue
8th Floor
P.O. Box 1150
Wilmington, DE 19899
sbalick@ashby-geddes.com
jday@ashby-geddes.com

**BY E-MAIL**

Edward A. Mas, II, Esq.
Stephen F. Sherry, Esq.
Kirk Vander Leest, Esq.
James M. Hafertepe, Esq.
Merle S. Elliott, Esq.
McAndrews, Held & Malloy, Ltd.
500 West Madison Street
34th Floor
Chicago, IL 60661
emas@mcandrews-ip.com
ssherry@mcandrews-ip.com
kvanderleest@mcandrews-ip.com
jhafertepe@mcandrews-ip.com
melliott@mcandrews-ip.com

Kenneth P. George, Esq.
Joseph M. Casino, Esq.
Amster, Rothstein & Ebenstein LLP
90 Park Avenue
New York, NY 10016
kgeorge@arelaw.com
jcasino@arelaw.com

Bradford J. Badke, Esq.
Sona De, Esq.
Michael Kahn, Esq.
Ropes & Gray LLP
1211 Avenue of the Americas
New York, NY 10036-8704
Jim.badke@ropesgray.com
Sona.de@ropesray.com
Michael.kahn@ropesgray.com

Wesley E. Overson, Esq.
Rachel Krevans, Esq.
Jason R. Bartlett, Esq.
Parisa Jorjani, Esq.
Daniel P. Muino, Esq.
Morrison & Foerster LLP
425 Market Street
San Francisco, CA 94105-2482
woverson@mofo.com
rkrevans@mofo.com
jasonbartlett@mofo.com
pjorjani@mofo.com
dmuino@mofo.com

Michael G. Adams, Esq.
Ashley L. Ellis, Esq.
Parker Poe Adams & Bernstein LLP
Three Wachovia Center, Suite 3000
401 South Tryon Street
Charlotte, NC 28202
mikeadams@parkerpoe.com
ashleyellis@parkerpoe.com

/s/ Philip A. Rovner
Philip A. Rovner (#3215)
Potter Anderson & Corroon LLP
Hercules Plaza
P.O. Box 951
Wilmington, Delaware 19899
(302) 984-6000
E-mail: provner@potteranderson.com

-2-

# EXHIBIT 4

# Bayer Diabetes Care

## Bayer HealthCare

- Home
- Our Products
- Current Owners
- Diabetes & You

- Español
-  Healthcare Professionals

Small Medium Large

## Privacy Statement

Bayer is aware that the security of your private information from the use of our web-site is an important concern. We take the protection of your personal data very seriously. Therefore we would like you to know what data we maintain and what data we discard. With this privacy statement, we would like to inform you about our security measures.

**Collection of Data**

You can use our web site without disclosing your personal data. You are not required to provide personal information as a condition of using our site, except as may be necessary to provide you a product or service at your request. When you use our web site, we store data on our servers for various security purposes. This data may include the name of your internet service provider, the web site that you used to link to our site, the web sites that you visit from our site and your IP-Address. This data could possibly lead to your identification, but we do not use it to do so. We do use the data from time to time for statistical purposes, but maintain the anonymity of each individual user so that the person cannot be identified. In cases when personal data is provided to others to provide you products or services you have requested, or for other purposes you have authorized, we rely on technical and organizational means to assure that applicable data security regulations are followed.

**Collection and processing of personal data**

We collect personal data only when you provide it to us, through registration, completion of forms or e-mails, as part of an order for products or services, inquiries or requests about materials being ordered and similar situations in which you have chosen to provide the information to us.

The database and its contents remain at our company and stay with data processors or servers acting on our behalf and responsible to us. Your personal data will not be passed on by us or by our agents for use by third parties in any form whatsoever, unless we have obtained your consent or are legally required to do so.

We will retain control of and responsibility for the use of any personal data you disclose to us. Some of this data may be stored or processed at computers located in other jurisdictions, such as the United States, whose data protection laws may differ from the jurisdiction in which you live. In such cases, we

will ensure that appropriate protections are in place to require the data processor in that country to maintain protections on the data that are equivalent to those that apply in the country in which you live.

## Purposes of Use

The data we collect will only be used for the purpose of supplying you with the requested products or services or for other purposes for which you have given your consent, except where otherwise provided by law.

## Right of Access and Correction

You have the right to review and amend any personal data stored in our system if you believe it may be out of date or incorrect. Just send an e-mail to the address given in the imprint or contact the Data Security Officer at the address below.

## Right of Cancellation

You have the right at any time to withdraw your consent to the use of your personal data in the future. Again, just send an e-mail to the address given in the imprint or contact the Data Security Officer at the address below.

## Data Retention

We only retain personal data for as long as is necessary for us to render a service you have requested or to which you have given your consent, except where otherwise provided by law (e.g. in connection with pending litigation).

## Use of Cookies

In some web sites, so-called Cookies are used in order for us to improve the efficiency of your individual use of the web site. Cookies are identifiers that our web-server could send to your computer in order to identify the computer being used for the duration of the session. Most browsers are set-up to accept these Cookies automatically. In addition, you can deactivate the storing of cookies or adjust your browser to inform you before the Cookie is stored on your computer. If cookies are going to be saved to your computer not only for the duration of a session, with automatic subsequent deletion, but for the long term, we will provide you notice of this fact when the relevant cookies are set.

## Security

Bayer uses technical and organizational security precautions to protect your data from manipulation, loss, destruction or access by unauthorized persons. Any personal data that is provided to Bayer by you will be encrypted in transit to prevent its possible misuse by third parties. Our security procedures are continuously revised based on new technological developments.

## Children

In light of the importance of protecting children's privacy, we do not collect, process or use on our website any information relating to an individual whom we know to be under 13 years old without the prior, verifiable consent of his or her legal representative. Such legal representative has the right, upon request, to view the information provided by the child and/or to require that it be deleted.

**Contacts**

Please contact the Data Security Officer of Bayer AG with any problems, questions or suggestions that you may have. The constant development of the internet requires occasional adjustments to our privacy statement. We retain the right to make changes when necessary.

**Data Security Officer, Bayer AG:**

Rainer Meyer, Bldg. 4813, Leverkusen

Phone: +49 (0) 214 30 2 05 22
Fax.: +49 (0) 214 30 2 03 46
E-mail: rainer.meyer.rm1@bayer-ag.de

print page

- Home
- Our Products
- Current Meter Users
- Diabetes & You
- About Us
- News
- Contact Us
- Healthcare Professionals
- Español

- Bayer Diabetes Global
- Bayer Global
- General Condition of Use
- Privacy Statement

© Copyright 2008 Bayer HealthCare LLC - Published by: Bayer HealthCare LLC Diabetes Care
555 White Plains Road - Tarrytown, New York, 10591-5097 - United States - Tel: 1-800-348-8100

# EXHIBITS 5 AND 6

## REDACTED IN THEIR ENTIRETY

# EXHIBIT 7

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ROCHE DIAGNOSTICS OPERTIONS, INC., | ) | |
| and CORANGE INTERNATIONAL LTD., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 07-753-JJF |
| | ) | |
| ABBOTT DIABETES CARE, INC., | ) | |
| ABBOTT DIABETES CARE SALES CORP., | ) | |
| BAYER HEALTHCARE, LLC, | ) | |
| DIAGNOSTIC DEVICES, INC., | ) | |
| LIFESCAN, INC., and | ) | |
| NOVA BIOMEDICAL CORP., | ) | |
| | ) | |
| Defendants. | ) | |

**ROCHE'S RESPONSES TO BAYER'S**
**FIRST SET OF INTERROGATORIES (NOS. 1-3) TO PLAINTIFFS**

Plaintiffs, Roche Diagnostics Operations, Inc. and Corange International Ltd. (collectively, "Roche") respond to Defendant Bayer Healthcare, LLC's ("Bayer's") first set of interrogatories (Nos. 1-3) to Plaintiffs as follows:

**GENERAL OBJECTIONS**

Roche asserts each of the following General Objections to each of Bayer's interrogatories. In addition to these General Objections, Roche may also state specific objections to specific interrogatories where appropriate. By setting forth such additional specific objections, Roche does not in any way intend to limit or restrict its General Objections. Moreover, to the extent Roche provides a response to any of Bayer's interrogatories to which Roche objects, such response shall not constitute a waiver of any General or specific objection.

1.    Roche's responses to Bayer's First Set of Interrogatories (Nos. 1-3) to Plaintiffs are made to the best of Roche's present knowledge, and Roche reserves the right, at any time, to revise, correct, supplement, modify, or clarify the specific responses set forth below or the information disclosed therein. Discovery is in the early stages and Roche therefore reserves the right to amend, supplement, and/or alter its responses as warranted during the course of discovery.

2.    Roche's objections are made without prejudice to Roche's right to revise or supplement them based on the discovery in this case, on facts or circumstances that may come to Roche's knowledge, or if Bayer subsequently asserts an interpretation of any discovery request that differs from Roche's understanding. Roche reserves the right to offer additional information at trial that was obtained during discovery and/or investigation yet to be conducted in this case.

3.    Roche objects generally to these Interrogatories to the extent they purport to require supplementation of these responses beyond the obligations required by Fed. R. Civ. P. 26(e) and applicable Local Rules.

4.    Roche objects generally to these Interrogatories as impermissibly premature to the extent they require Roche to produce documents or information outside of the scope of the first phase of litigation ("Phase I") on infringement and prior invention under 35 U.S.C. § 102(g), as ordered by Judge Farnan at the February 8, 2008 Rule 16 Scheduling Conference (D.I. 70 at 27:13-15; 28:7-9; 34:14-19; 37:3- 6) and in the Rule 16 Scheduling Order (D.I. 147) entered on April 24, 2008. Any requests for information not relevant to the Phase I issues of alleged infringement or prior invention are objected to as premature, and any responses that are made are intended to be limited to those issues. Specific objections will be noted in individual responses. To the extent that any interrogatory seeks information outside the scope of Phase I of the litigation and is not specifically objected to, Roche hereby incorporates General Objection 4.

5.     Roche objects generally to these Interrogatories to the extent that they fail to comply with or seek to impose obligations in excess of those required by the Federal Rules of Civil Procedure, the Local Rules of this Court, and/or the Scheduling Order entered on April 24, 2008.

6.     Roche objects generally to these Interrogatories to the extent that they seek information not in the possession, custody or control of Roche.

7.     Roche objects generally to these Interrogatories to the extent that they seek information protected by the attorney-client privilege, work product immunity, or any other applicable privilege(s) (herein referred to collectively as "privilege and immunity"). Roche has registered its privilege and immunity objections expressly to each interrogatory insofar as it recognizes that the interrogatory might be interpreted to encompass privileged or immune information; for such specific objections, Roche hereby incorporates this General Objection 7.

8.     Roche objects generally to the Interrogatories to the extent they are unreasonably duplicative and/or cumulative or seek information and/or documents and things that are obtainable from a source that is more convenient, less expensive, or less burdensome under Fed. R. Civ. P. 26(b)(2).

9.     Roche objects generally to each Interrogatory to the extent the information sought can be derived from documents that will be produced in discovery or that are uniquely in Bayer's possession, custody, and control.

10.     Roche objects generally to the Interrogatories to the extent they exceed Bayer's limit on the number of interrogatories to be served in Phase I under the Rule 16 Scheduling Order (D.I. 147) entered in this case on April 24, 2008, and to the extent they contain subparts requiring separate and distinct responses.

11.    Roche objects generally to the definitions from these Interrogatories. Roche's responses to these requests do not constitute a representation that Roche agrees with or adopts any of Bayer's definitions.

12.    Roche objects to Bayer's definition of "Plaintiffs," "you," and "your" (*see* Definition 1) to the extent such definitions are overbroad in encompassing related or unrelated entities that are not the owners of the patents in suit or in the business of researching, developing, making, using, selling, or offering for sale any products whose use is covered by the patents in suit in this litigation. Roche objects to any purported obligation to act on behalf of persons or entities over which Roche has no control. In addition, Roche objects to any purported obligation to act on behalf of related persons or entities who hold no direct ownership of the patents in suit and who played no material role in the research, development, manufacture, use, sale, or offer for sale any products whose use is covered by the patents in suit. Roche will respond to these Interrogatories on its own behalf alone. Roche also objects to the inclusion of Roche's "attorneys" within these definitions, insofar as such definitions seek information protected by the attorney-client privilege and/or work product doctrine.

13.    Roche objects to Bayer's definition of the term "Bayer Accused Product" as overbroad in encompassing products made, used, sold, or offered for sale by Bayer that may infringe patents other than the two patents in suit. Roche's will direct its responses only to those products made, used, sold, or offered for sale by Bayer whose use is at issue in relation to the patents in suit.

14.    Roche objects to Bayer's definition of the term "document(s)" as overbroad and unduly burdensome, and seeking to impose requirements or obligations on Roche in addition to,

beyond the scope of, or different from those imposed by the Federal Rules of Civil Procedure and/or the Local Rules. "Document(s)" will be interpreted consistent with Rule 34.

15.    Roche objects generally to these interrogatories as vague and ambiguous to the extent they include terms or phrases that are undefined.

16.    Roche objects to any use of specific terms found in the claims of the 146 and 147 patents to the extent these terms are subject to construction by the Court.

17.    Roche objects generally to these Interrogatories to the extent they seek information and/or the identification of individuals, documents and things relating to subjects not raised by the pleadings, not relevant to any claim or defense, not material and necessary to the prosecution or defense of this action, or not reasonably calculated to lead to the discovery of admissible evidence.

18.    Roche objects generally to the interrogatories to the extent that the interrogatories require Roche to speculate or make judgments as to any future beliefs, contentions, or conduct.

19.    Roche's objections are based on Roche's good-faith interpretation of Bayer's interrogatories and are subject to correction for any errors or omissions.

20.    Roche objects generally to any Interrogatory requiring the identification of "any" or "all" documents, to the extent that such a request could be construed to place an undue burden on Roche, especially where the identification or production of less than "all" or "any" of the documents will supply all the information needed.

21.    Roche objects generally to any Interrogatory requiring the identification of "any" or "all" persons, to the extent that such a request could be construed to place an undue burden on Roche, especially where the identification of less than "all" or "any" of the persons will supply all the information needed.

22.     Roche objects generally to any Interrogatory requiring the description of "any" or "all" facts and circumstances concerning a legal basis of liability, or any aspect thereof, which may arise from Bayer's conduct to the extent that such a request could be construed to be overbroad or to place an undue burden on Roche, especially where the description of less than "all" or "any" of the relevant facts and circumstances will supply all the information needed.

23.     Roche objects generally to any Interrogatory requiring the identification of "any" or "all" allegedly infringing structures of or steps performed by an accused product to the extent that such a request could be construed to be overbroad or to place an undue burden on Roche, especially where the identification of less than "all" or "any" of infringing structures or steps will supply all the information needed.

24.     Roche objects generally to any Interrogatory wherein "the" is construed to mean "all" or "any" of a person or thing to the extent that such a request could be overbroad and place an undue burden on Roche, especially where provision of less than "all" or "any" of the person or thing will supply all the information needed.

25.     Roche's agreement to produce documents responsive to a particular interrogatory pursuant to Fed. R. Civ. P. 33(d) indicates that Roche will produce responsive documents to the extent that such documents are in its possession, custody, or control, subject to the objections Roche has raised to that interrogatory and the General Objections herein.

26.     By agreeing to produce documents in response to these Interrogatories, Roche makes no representation that any such documents exist, but only represents that such documents will be produced if they exist, can be located with reasonable diligence, and are not otherwise protected from disclosure.

6

27.    Roche provides this response without waiver of or prejudice to its right, at any later time, to raise objections to: (a) the relevance, materiality, or admissibility of (i) the interrogatories or any part thereof, (ii) statements made in this response to the interrogatories or any part thereof, or (iii) any document produced pursuant to this response; or (b) any further demand for discovery involving or relating to the matters raised in the interrogatories.

28.    All confidential documents produced in response to these requests shall be subject to any protective order entered in this case. Any confidential documents produced prior to the entry of a protective order shall be disclosed to outside counsel only pursuant to Delaware L.R. 26.2.

29.    Roche objects generally to these Interrogatories to the extent they seek information or documents which are subject to the terms of protective orders and/or confidentiality agreements in other cases and/or with third parties.

30.    These responses are made solely for the purpose of this action. Each response is subject to all objections as to competence, relevance, materiality, propriety, and admissibility.

31.    Roche objects generally to Bayer's interrogatories as overly broad and unduly burdensome to the extent they require Roche to provide the same information in both a substantive textual response and by citation to specific documents. Roche will provide the information called for by Bayer's interrogatories, to the extent not otherwise objected to, either by citation to business records under Rule 33(d) or with a substantive textual response.

32.    Roche's responses shall not be deemed to constitute admissions that: (a) any particular document or thing exists, is relevant, or admissible in evidence; (b) any statement or characterization in Roche's interrogatories, as distinguished from Roche's responses to those interrogatories, is accurate or complete; or (c) responsive information is in Roche's possession,

custody, or control. Subject to any objections, Roche responds to these Interrogatories based on a

reasonable search for responsive information.

33.    Roche is willing to discuss its objections in a good-faith attempt to resolve or

narrow any differences between the parties.

34.    The foregoing General Objections shall be deemed continuous throughout and are

hereby incorporated by reference in Roche's responses to the specific interrogatories which

follow.

## INTERROGATORIES

### INTERROGATORY NO. 1:

> *Identify each claim of the patents-in-suit that is allegedly infringed by a Bayer Accused Product, and for each claim (i) provide a claim chart that identifies on an element-by-element basis any allegedly infringing structure of, or any allegedly infringing steps performed by, each Bayer Accused Product, (ii) state whether the alleged infringement is literal or under the doctrine of equivalents, (iii) state in detail all facts concerning, supporting or tending to support your allegation that Bayer or the Bayer Accused Products infringe the patents-in-suit, and (iv) identify all people with knowledge of the facts alleged and all documents or things concerning, supporting or tending to support the facts alleged.*

### RESPONSE:

Roche objects to this interrogatory as premature in view of the schedule adopted by the

Court. In this respect, the interrogatory is a premature contention interrogatory in violation of

the Court's schedule for this litigation. Specifically, under the schedule adopted by the Court

and as defendants have asserted in their own responses to interrogatories, responses to contention

interrogatories shall not be due until the close of Phase I fact deposition discovery, *i.e.*, until at

least October 24, 2008 (*see* D.I. 147). Roche further objects to this interrogatory as premature to

the extent it seeks expert discovery in advance of the date set forth in the schedule. Roche

further objects to this interrogatory as premature to the extent it seeks information that will be the

subject of claim construction briefing by the parties.

Roche further objects to this interrogatory to the extent that it is invasive of the attorney-client privilege, work-product immunity or other applicable privilege, immunity, or confidentiality obligation. Roche also objects to this interrogatory to the extent it seeks confidential, proprietary, and/or sensitive business information, prior to the entry of a Protective Order in this case.

Roche further objects to this interrogatory as premature, since fact discovery in this case is just beginning and is not scheduled to be completed until October 24, 2008. Moreover, although Roche served Bayer with its document requests several months ago, Bayer has only recently begun to produce responsive documents. Accordingly, Roche reserves the right to amend and/or further supplement its response to this interrogatory as additional information is discovered and/or becomes available.

Subject to and without waiving its Specific and General Objections, Roche currently asserts claims 31 – 62 of the 146 patent and claims 36 – 69 of the 147 patent. Roche may refine this list of asserted claims as further information is obtained during discovery.

Subject to and without waiving its Specific and General Objections, Roche currently contends that use of the following Bayer products infringe: (1) the Ascensia® Contour® (5 second) Meter, in conjunction with an Ascencia® Contour® Test Strip, (2) the Contour®TS Meter, in conjunction with a Contour®TS Test Strip, and (3) the Ascensia® Breeze®2 Meter, in conjunction with an Ascencia® Breeze®2 10-Test Disc. Roche may refine this list of infringing Bayer products as further information is obtained during discovery.

With the exception of one accused strip represented by Bayer's counsel at a meet and confer to function with a now-discontinued meter that conducted tests in 15 seconds, the only,

9

normal, customary, and intended use of the foregoing test strips and meters meet each of the

limitations of claim 31 of the 146 patent and/or 36 of the 147 patent.  For example:

- an end-user provides a disposable test strip;

- the test strip has a capillary chamber that utilizes capillary flow and meets the volume limitations ("a volume of between about 0.1 μl and about 1.0 μl of the blood sample" or "less than about 1.0 μl of the blood sample");

- the test strip has a working and a counter or reference electrode disposed within the capillary chamber;

- the test strip has a reagent, including an enzyme and a mediator, proximal to or in contact with at least the working electrode;

- the reagent in the test strip reacts with glucose to produce an electroactive reaction product;

- when the end-user applies a blood sample into the capillary chamber of the test strip, the capillary chamber directs flow of the blood sample into contact with the reagent to at least partially solubilize or hydrate the reagent;

- the blood sample is detected by the meter in combination with the test strip;

- following said detecting, the meter/strip combination applies or controls voltage or current across the working and counter or reference electrode;

- the electroactive reaction product is electrooxidized at the working electrode; and,

- within 10 seconds after the detecting, the meter provides a readout of the glucose concentration in the blood sample.

For another example, the manner in which Bayer has designed, manufactured, packaged, marketed, coordinated and directed the use of the accused products is such that Bayer performs

all of the steps of the claimed method or performs all of the steps except the step of applying the blood sample, which is performed by the end-user under the direction and/or control of Bayer. As such, Bayer is directly liable for its own actions and those of its customers that it directs. For yet another example, Bayer's research, development, marketing and sales employees have, on information and belief, directly used and inserted the test strips into the meter during the ordinary course of their work, thus directly infringing these method claims as well.

Subject to and without waiving its Specific and General Objections, the facts currently known to Roche that concern, support, or tend to support Bayer's infringement of the patents-in-suit may be determined by reviewing documents relating to Bayer products, which Roche will produce pursuant to Fed. R. Civ. P. 33(d). Roche may identify additional facts as further information is obtained during discovery.

Subject to and without waiving its Specific and General Objections, the documents that Roche currently contends concern, support or tend to support Bayer's infringement include the following: (1) the Bayer user manuals, product inserts, and other product literature for the infringing Bayer products; (2) the Bayer 510(k) submissions for the infringing Bayer products; and (3) documents in Bayer's possession, custody, or control. Roche may identify additional documents as further information is obtained during discovery.

Subject to and without waiving its Specific and General Objections, Roche identifies the designers and product managers of Bayer's infringing products as being the people most knowledgeable of the facts concerning, support, or tending to support Bayer's infringement. Roche may identify additional people as further information is obtained during discovery.

11

## INTERROGATORY NO.2:

*If you allege that Bayer has actively induced direct infringement of the patents-in-suit by any third party, describe all facts and circumstances concerning such alleged inducement, including but not limited to (i) the identity of the alleged third party direct infringers, (ii) the date, time, place and manner of such direct infringement, (iii) the communications and/or actions by Bayer constituting such active inducement, (iv) the claim or claims of the patent-in-suit whose infringement is allegedly induced, (v) the Bayer Accused Products involved in either the direct or indirect infringement alleged, and (vi) the identity of all persons with knowledge of the facts alleged and all documents or things concerning, supporting or tending to support the facts alleged.*

## RESPONSE:

Roche objects to this interrogatory as premature in view of the schedule adopted by the Court. In this respect, the interrogatory is a premature contention interrogatory in violation of the Court's schedule for this litigation. Specifically, under the schedule adopted by the Court and as defendants have asserted in their own responses to interrogatories, responses to contention interrogatories shall not be due until the close of Phase I fact deposition discovery, *i.e.*, until at least October 24, 2008 (*see* D.I. 147). Roche further objects to this interrogatory as premature to the extent it seeks expert discovery in advance of the date set forth in the schedule. Roche further objects to this interrogatory as premature to the extent it seeks information that will be the subject of claim construction briefing by the parties.

Roche further objects to this interrogatory to the extent that it is invasive of the attorney-client privilege, work-product immunity or other applicable privilege, immunity, or confidentiality obligation. Roche also objects to this interrogatory to the extent it seeks confidential, proprietary, and/or sensitive business information, prior to the entry of a Protective Order in this case.

Roche further objects to this interrogatory as premature, since fact discovery in this case is just beginning and is not scheduled to be completed until October 24, 2008. Moreover,

although Roche served Bayer with its document requests several months ago, Bayer has only recently begun to produce responsive documents. Accordingly, Roche reserves the right to amend and/or further supplement its response to this interrogatory as additional information is discovered and/or becomes available.

Subject to and without waiving its Specific and General Objections, Roche contends that Bayer has actively induced direct infringement of the patents-in-suit by continuing to sell the infringing Bayer products identified in response to Interrogatory No. 1 after becoming aware of the 146 and 147 patents (including after being served with the Complaint in this action). Bayer sells the infringing products with product literature, product inserts and user manuals that include instructions that, when followed, direct and cause the end-user to infringe. Bayer is also continuing to provide such instructions on its website. Further, Bayer designed the infringing products in such a manner that use of the products in the normal intended manner will inherently and inevitably infringe. Continuing to sell the infringing products after knowing of the patents in suit shows intent to cause direct infringement. The end-users of Bayer's infringing products directly infringe the asserted claims by their use of these products in the normal manner intended, taught, and directed by Bayer after the date of issuance of the 146 and 147 patents. The manner in which Bayer has designed, manufactured, packaged, marketed, coordinated and directed the use of the accused products is such that Bayer performs all of the steps of the claimed method or performs all of the steps except the step of applying the blood sample, which is performed by the end-user under the direction and/or control of Bayer. The specific identities of Bayer's end-users (and the date, time, place, etc. of their activities) are uniquely within Bayer's knowledge and/or control. The communications from or on behalf of Bayer include Bayer's user manuals, product inserts, and marketing/promotional materials. Bayer's product

13

managers, salespeople, and marketing personnel have knowledge of these facts and all the documents concerning these facts.

Subject to and without waiving the Specific and General Objections, additional facts currently known to Roche that concern, support, or tend to support Bayer's active inducement of infringement of the patents-in-suit may be determined by reviewing documents relating to Bayer products, which Roche will produce pursuant to Fed. R. Civ. P. 33(d). Roche may identify additional facts as further information is obtained during discovery.

**INTERROGATORY NO. 3:**

> *If you allege that Bayer contributorily infringes any claim of the patents-in-suit, describe all facts and circumstances concerning such alleged contributory infringement, including but not limited to (i) the identity of any alleged third party direct infringers, (ii) the date, time, place and manner of the alleged direct infringement, (iii) the claim or claims of the patents-in-suit alleged to be directly infringed, (iv) the Bayer Accused Products involved in either the direct or indirect infringement alleged, (v) all facts concerning, supporting or tending to support your allegation that the Bayer Accused Products are not staple articles of commodities of commerce suitable for substantial non-infringing uses, and (vi) the identity of all persons with knowledge of the facts alleged and all documents or things concerning, supporting or tending to support the facts alleged.*

**RESPONSE:**

Roche objects to this interrogatory as premature in view of the schedule adopted by the Court. The interrogatory is a premature contention interrogatory in violation of the Court's schedule for this litigation. Specifically, under the schedule adopted by the Court and as defendants have asserted in their own responses to interrogatories, responses to contention interrogatories shall not be due until the close of Phase I fact deposition discovery, *i.e.*, until at least October 24, 2008 (*see* D.I. 147). Roche further objects to this interrogatory as premature to the extent it seeks expert discovery in advance of the date set forth in the schedule. Roche further objects to this interrogatory as premature to the extent it seeks information that will be the

14

subject of claim construction briefing by the parties.

Roche further objects to this interrogatory to the extent that it is invasive of the attorney-client privilege, work-product immunity or other applicable privilege, immunity, or confidentiality obligation. Roche also objects to this interrogatory to the extent it seeks confidential, proprietary, and/or sensitive business information, prior to the entry of a Protective Order in this case.

Roche further objects to this interrogatory as premature, since fact discovery in this case is just beginning and is not scheduled to be completed until October 24, 2008. Moreover, although Roche served Bayer with its document requests several months ago, Bayer has only recently begun to produce responsive documents. Accordingly, Roche reserves the right to amend and/or further supplement its response to this interrogatory as additional information is discovered and/or becomes available.

Subject to and without waiving its Specific and General Objections, Roche contends that the infringing Bayer products identified in response to Interrogatory No. 1 have no known substantial non-infringing use. When used by the end-user in the normal manner intended by Bayer – as reflected in the products' design and operating instructions – the end-user will inevitably and inherently infringe the patents-in-suit. The specific identities of Bayer's end-users (and the date, time, place, etc. of their activities) are uniquely within Bayer's knowledge and/or control. The Contour®TS Test Strip is designed to be used only with the Contour®TS Meter, and the Contour®TS Meter is designed to be used only with the Contour®TS Test Strip; the Ascencia® Breeze®2 10-Test Disc is designed to be used only with the Ascencia® Breeze®2 Meter, and the Ascencia® Breeze®2 Meter is designed to be used only with the Ascencia® Breeze®2 10-Test Disc. As such, these products are not staple articles of commerce and have no

non-infringing use. The manner in which Bayer has designed, manufactured, packaged, marketed, coordinated and directed the use of the accused products is such that Bayer performs all of the steps of the claimed method or performs all of the steps except the step of applying the blood sample, which is performed by the end-user under the direction and/or control of Bayer. Bayer's product managers, salespeople, and marketing personnel have knowledge of these facts and all the documents concerning these facts.

Bayer has represented that the Ascencia® Contour® Test Strips are backwards compatible with an older meter having a 15 second test time. If true, Roche acknowledges that the sale of Ascencia® Contour® Test Strips alone would not be a contributory infringement for and during a time period yet to be determined. However, after the issue date of the 146 and 147 patents, each sale and of Ascencia® Contour® Meters programmed to provide a readout in fewer than 10 seconds would contributorily infringe, and each use of such meters would directly infringe.

Subject to and without waiving its Specific and General Objections, additional facts currently known to Roche that concern, support, or tend to support Bayer's contributory infringement of the patents-in-suit may be determined by reviewing documents relating to Bayer products, which Roche will produce pursuant to Fed. R. Civ. P. 33(d). Roche may identify additional facts as further information is obtained during discovery.

16

**AS TO OBJECTIONS:**

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Daniel A. Boehnen
Grantland G. Drutchas
McDonnell Boehnen Hulbert & Berghoff LLP
300 South Wacker Drive
Chicago, IL 60606
(312) 913-0001

By: /s/ Philip A. Rovner
    Philip A. Rovner (#3215)
    Hercules Plaza
    P.O. Box 951
    Wilmington, DE 19899-0951
    (302) 984-6000
    provner@potteranderson.com

Dated: May 8, 2008
863757

*Attorney for Plaintiffs*
*Roche Diagnostics Operations, Inc., and*
*Corange International Limited*

17

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

## CERTIFICATE OF SERVICE

I, Philip A. Rovner, hereby certify that on May 8, 2008, the within document was

served on the following counsel of record, at the addresses and in the manner indicated:

## BY HAND DELIVERY AND E-MAIL

Frederick L. Cottrell, III, Esq.
Anne Shea Gaza, Esq.
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, DE 19801
cottrell@rlf.com
gaza@rlf.com

John W. Shaw, Esq.
Jeffrey T. Castellano, Esq.
Young Conaway Stargatt & Taylor, LLP
1000 West Street, 17th Floor
Wilmington, DE 19801
jshaw@ycst.com
jcastellano@ycst.com

Mary W. Bourke, Esq.
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 N. Orange Street
Wilmington, DE 19801
mbourke@cblh.com

Rodger D. Smith, Esq.
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
rsmith@mnat.com

Steven J. Balick, Esq.
John G. Day, Esq.
Ashby & Geddes
500 Delaware Avenue
8th Floor
P.O. Box 1150
Wilmington, DE 19899
sbalick@ashby-geddes.com
jday@ashby-geddes.com

**BY E-MAIL**

Edward A. Mas, II, Esq.
Stephen F. Sherry, Esq.
Kirk Vander Leest, Esq.
James M. Hafertepe, Esq.
Merle S. Elliott, Esq.
McAndrews, Held & Malloy, Ltd.
500 West Madison Street
34th Floor
Chicago, IL 60661
emas@mcandrews-ip.com
ssherry@mcandrews-ip.com
kvanderleest@mcandrews-ip.com
jhafertepe@mcandrews-ip.com
melliott@mcandrews-ip.com

Wesley E. Overson, Esq.
Rachel Krevans, Esq.
Jason R. Bartlett, Esq.
Parisa Jorjani, Esq.
Daniel P. Muino, Esq.
Morrison & Foerster LLP
425 Market Street
San Francisco, CA 94105-2482
woverson@mofo.com
rkrevans@mofo.com
jasonbartlett@mofo.com
pjorjani@mofo.com
dmuino@mofo.com

Kenneth P. George, Esq.
Joseph M. Casino, Esq.
Amster, Rothstein & Ebenstein LLP
90 Park Avenue
New York, NY 10016
kgeorge@arelaw.com
jcasino@arelaw.com

Michael G. Adams, Esq.
Ashley L. Ellis, Esq.
Parker Poe Adams & Bernstein LLP
Three Wachovia Center, Suite 3000
401 South Tryon Street
Charlotte, NC 28202
mikeadams@parkerpoe.com
ashleyellis@parkerpoe.com

Bradford J. Badke, Esq.
Sona De, Esq.
Michael Kahn, Esq.
Ropes & Gray LLP
1211 Avenue of the Americas
New York, NY 10036-8704
Jim.badke@ropesgray.com
Sona.de@ropesray.com
Michael.kahn@ropesgray.com

/s/ Philip A. Rovner
Philip A. Rovner (#3215)
Potter Anderson & Corroon LLP
Hercules Plaza
P.O. Box 951
Wilmington, Delaware 19899
(302) 984-6000
E-mail: provner@potteranderson.com