IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ROCHE DIAGNOSTICS OPERATIONS, INC., and CORANGE INTERNATIONAL LIMITED, <br><br> Plaintiffs, <br><br> vs. <br><br> ABBOTT DIABETES CARE, INC., ABBOTT DIABETES CARE SALES CORP., BAYER HEALTHCARE, LLC, DIAGNOSTIC DEVICES, INC., LIFESCAN, INCORPORATED, and NOVA BIOMEDICAL CORPORATION, <br><br> Defendants. | C.A. No. 07-753-JJF |

## ROCHE'S REPLY IN SUPPORT OF ITS SECOND MOTION TO COMPEL

OF COUNSEL:

Daniel A. Boehnen
Grantland G. Drutchas
McDonnell Boehnen Hulbert & Berghoff LLP
300 South Wacker Drive
Chicago, IL 60606
(312) 913-0001

Philip A. Rovner (#3215)
POTTER ANDERSON & CORROON LLP
Hercules Plaza
P.O. Box 951
Wilmington, DE 19899-0951
(302) 984-6000
provner@potteranderson.com

*Attorney for Plaintiffs*
*Roche Diagnostics Operations, Inc. and*
*Corange International Limited*

Dated: July 3, 2008

## I. INTRODUCTION

The opposition briefs filed by Defendants Bayer Healthcare, Inc. ("Bayer") and LifeScan, Inc. ("LifeScan") implicitly reaffirm that their actions were intended to frustrate valid discovery. The Court-ordered date for production of documents in this case (June 27, 2008) has come and gone, and Bayer and LifeScan have continued to refuse to produce directly relevant documents. By contrast, Nova Biomedical, Inc. ("Nova") has now agreed to produce the documents that are the subject of the instant motion to compel (and, as such, this motion has been withdrawn as moot as to Nova, only, D.I. 224).

Notably, neither Bayer nor LifeScan argues that the requested documents are irrelevant to issues involved in Phase I of this litigation. Nor could they, as both Bayer and LifeScan requested this exact same information *__from__* Roche. As end-users, these customers are direct infringers of the method claims of the patents-in-suit, and these Defendants are liable for that infringement under 35 U.S.C. §§271 (b) and (c). Roche was entitled to documents identifying these customers/direct infringers, and Bayer's and LifeScan's refusal to produce those documents during the Court-ordered Phase I document discovery period has prejudiced Roche.

None of Bayer's or LifeScan's counter-arguments supports a denial of the relief requested by Roche:

- These issues were appropriately vetted in meet-and-confers. Neither of these defendants has agreed even now to produce these documents, and none of them has agreed to the stipulations that Roche proposed. These arguments are red herrings, meant to delay prompt action on this motion. In fact, if these defendants wanted to pursue stipulations as opposed to complying with their discovery obligations, it was up to defendants, not Roche, to propose such stipulations.

- The privacy issues raised by Bayer and LifeScan are not supported by any case law nor any statutory provisions. The protections of Local Rule 26.2 (and any Protective Order that is ultimately entered by this Court) provide adequate protection to resolve any alleged privacy concerns.

- The vague possibility that information regarding the use of these accused products by customers may be available by other means than document discovery does not let Bayer or LifeScan off the hook. Notably, these customers are ***direct infringers***. Whether Bayer and LifeScan or their customers like it or not, the defendants have made their customers culpable for infringement by providing them with products that, when used in their ordinary and expected manner, as directed by Bayer and LifeScan, infringe the patents in suit. Given Bayer's and LifeScan's refusal to enter into any stipulation as to such use by customers, Roche needed this discovery to establish the customers as direct infringers, a predicate for proving contributory infringement or inducement.

- The time limitations imposed by Bayer and LifeScan are also improper. On the one hand Bayer says that some older meters will not infringe, but then refused to produce discovery that would permit Roche to determine whether Bayer's customers are still using those older meters. LifeScan, on the other hand, provides no rational explanation for its imposition of an issue date cut-off, when it is certainly aware that meters sold before that date are still in use by its customers and infringing the patents in suit.

In short, Bayer and LifeScan have failed to provide any adequate explanation for their refusal to comply with the Court-ordered discovery schedule by producing the requested documents identifying their customers who Roche asserts are direct infringers. Roche has been prejudiced in its preparation of its infringement case, and pursuit of discovery to establish (1) that those customers use the accused products as directed by Bayer and LifeScan, and (2) that they have continued to use similar meters purchased prior to the issue date of the patents in suit with strips purchased thereafter to directly infringe those patents.

In view of the compressed case schedule, and Bayer's and LifeScan's refusal to produce the requested relevant documents within the Court-ordered document discovery period for Phase I, Roche requests the Court enter the proposed Order attached hereto as Ex. G, establishing facts that relate directly to the discovery these defendants improperly refused to produce.

2

## II. DEFENDANTS HAVE NOT PRESENTED ANY ARGUMENTS THAT JUSTIFY THEIR REFUSAL TO PRODUCE THE REQUESTED DOCUMENTS IDENTIFYING DIRECT INFRINGERS

Although Bayer and LifeScan have provided a number of arguments, the most striking aspect is the lack of any legal support for their refusal to provide clearly relevant documents. Defendants do not challenge the relevance of the documents. Indeed, ***their own interrogatories*** request the ***exact same type of information*** from Roche that they have refused to produce to Roche.[1]

Instead, these defendants simply argue that stipulations (which they have so far rejected) may allow the parties to avoid such discovery, or that vague privacy concerns should preclude such discovery, or that they should be allowed to impose an arbitrary and unilateral date cut-off. None of these arguments supports their refusal to provide discovery during the Court-ordered document discovery period, and their refusal has prejudiced Roche, thus supporting entry of the requested findings of fact.

### A. Roche's Meet-and Confer Attempts Fully Complied With Local Rule 7.1.1

Lacking any meritorious defense to Roche's motion, Bayer and LifeScan attempt to attack the adequacy of Roche's meet-and-confers to attempt to resolve this motion. Neither of these defendants has agreed even now to produce these documents, and none of them has agreed to the stipulations that Roche proposed. Their belated and feinted willingness to discuss stipulations is a red herring, meant to delay prompt action on this motion.

Although not obligated to do so, Roche went out of its way to propose stipulations after these defendants refused to produce the requested documents. Bayer outright refused, as it

---

[1] Each of these defendants required Roche to identify persons whom Roche contends to be third party direct infringers, as well as other information regarding actively induced direct infringement by third parties. *See* LifeScan's Interrogatory No. 2 to Roche (Ex. D to Roche's motion) and Bayer's Interrogatory No. 2 to Roche (Ex. E to Roche's motion).

3

admits, but vaguely suggests that it might have considered some re-worded stipulations.[2] LifeScan says that it was not provided with proposed stipulations initially, but it has still not responded to, much less accepted, stipulations that Roche proposed two weeks ago. (Ex. H hereto)

If the mere possibility that the parties could ultimately work out some resolution was sufficient to frustrate the filing of a motion to compel, none could ever be filed. Where exactly was Roche's obligation supposed to end? Roche proposed a stipulation; Bayer refused it expressly and LifeScan has now done so tacitly. Roche asked whether they would back down on their objections to producing the documents that Roche needs; Bayer and LifeScan both refused.

In fact, if either of these defendants wanted to pursue stipulations as opposed to complying with their discovery obligations, it was up to defendants, not Roche, to propose such stipulations. Having admitted the relevance of this information – based on their own interrogatories to Roche requesting this same information – it was up to both Bayer and LifeScan themselves to try to propose some accommodation to avoid producing this information.

Roche fully complied with its obligations under Local Rule 7.1.1. Bayer and LifeScan have continued to refuse to produce the requested documents; neither has agreed to stipulations proposed by Roche. Bayer and LifeScan are simply using the meet-and-confer rules to try to delay resolution of this motion.

---

[2] Bayer, for example, admits that "While Bayer rejected that stipulation as written, it did not foreclose the possibility of negotiating an acceptable stipulation or otherwise resolving the customer usage issue." Bayer's Opposition to Roche's Second Motion to Compel, p. 5 n.1 (D.I. 226)

4

### B. Bayer and LifeScan Have Failed to Demonstrate any Legal Basis for Their Assertion of Privacy

Bayer and LifeScan each assert some vague privacy right protects the customer information that Roche requested. These defendants' refusal to produce the requested documents cannot be justified by these vague and unsupported assertions.

First and foremost, neither of these defendants cites to any legal basis – either statutory or case law – for their claim. Such information is clearly discoverable.

Second, the information sought – the identification of customers – is intended to identify direct infringers. By their actions, by selling the accused products and directing customers to use those products in a manner that infringes the patents in suit, the defendants have made their customers direct infringers. Bayer and LifeScan do not cite any basis for refusing to produce information that will identify direct infringers.

Third, if Bayer and LifeScan were concerned about their customers' privacy, they would have either agreed to the stipulations proposed by Roche, or at least proposed alternative stipulations that they do find acceptable. Bayer and LifeScan have done neither.

Fourth, although Bayer asserts that it has a self-imposed obligation to maintain this customer information as confidential, as it has represented to customers that their information will not be disclosed to third parties, such a self-imposed obligation cannot frustrate clearly relevant discovery. Moreover, the names of individuals will be protected by the confidentiality protections of Rule 26.2 and/or a Protective Order, when one is entered in this case. (LifeScan, on the other hand, does not even point to any representation it has made to any customer, but simply argues that customers have a generalized expectation of privacy. Such an expectation cannot thwart these defendants' discovery obligations.)

Bayer's and LifeScan's arbitrary refusal to provide documents identifying their customers during the Court-ordered document discovery period, coupled with their refusal to accept the requested stipulations, leaves Roche with no choice but to seek findings of fact that would avoid the need for such discovery:

 (a) The end-users of Bayer's and LifeScan's products use the Defendants' accused meters and strips in the manner directed by the owner's manuals, product inserts, and other documents supplied by Defendants for those products.

 (b) Bayer and LifeScan knew or should have known that their actions would induce such use by end-users.

### C. Bayer and LifeScan Have Failed to Justify Their Unilateral Imposition of a Cut-Off Date as of the Issuance of the Patents in Suit

These defendants cannot arbitrarily refuse to identify customers who bought meters before the patents issued because those meters are largely still in use (and being used to infringe) today. Bayer's and LifeScan's continued sale of strips to these customers and support for the products contributes to and induces the continued infringement of Roche's patents. Given the refusal of Bayer and LifeScan to produce this necessary information during the Court-ordered document discovery period, Roche is entitled to a finding of fact that the end-users of Defendants' newly-purchased accused strips use those strips only in connection with meters that have the structure, functions, features, and operation of Defendants' current accused meters.

Bayer and LifeScan argue that they have provided information regarding the structure and function of these older meters. But the issue is not just how those meters function, but whether Bayer's and LifeScan's customers are using them currently in a direct infringement of Roche's patents. Clearly these defendants continue to support and provide directions for use of such older meters; although LifeScan discontinued its InDuo® meter in 2005, its current website

indicates that it still supports this meter, including providing strips for this meter and providing instructions directing customers how to use the meter in a manner which would infringe:

## OneTouch® InDuo®
### Blood Glucose Monitoring and Insulin Dosing System

The OneTouch® InDuo® System is no longer sold. However, LifeScan continues to provide support to existing OneTouch InDuo Customers.

You'll find **OneTouch® Ultra® Test Strips** and **OneTouch® Ultra® Control Solution** wherever OneTouch® Products are sold. For information about using the OneTouch InDuo System, **refer to your Owner's Booklet**.



http://www.lifescan.com/products/meters/induo/ (emphasis in original, with links to purchase strips and solution and to an on-line Owner's Booklet).

Thus, the question is, when a customer buys a strip today, after the issuance of the patents in suit, does the customer use it with a meter such that he or she infringes the patents-in-suit? This issue arises because Bayer, for example, has argued that its customers who purchase the accused strips may use those strips with older meters that it alleges do not infringe. Similarly, LifeScan has even refused to produce samples of this meter to Roche, even though it continues to support the meter and sell strips that work with it. (Ex. H) ("That product was discontinued in 2005 and clearly not relevant in view of the issue date of the patent-in-suit.") The only way to confirm whether customers are using new strips with any allegedly non-infringing older meters

is to identify the meter customers, and determine whether customers are continuing to use those meters with new strips.[3]  Bayer and LifeScan have refused to provide this information.

This is not simply a damages issue.  Roche has the burden, during this infringement phase, to show (1) that customers are now directly infringing by using the accused products, regardless of when they bought their meters, and (2) that Bayer and LifeScan induced and contributed to that infringement by *inter alia* selling strips and directing customers to use those strips in a manner that infringes, again regardless of when they bought their meters.  Roche does not anticipate that the Court will permit such proof of direct, induced and contributory infringement during the damages phase.

Without an identification of those customers who purchased older meters, Roche is unable to confirm that these defendants' customers are using such meters with newly-purchased strips in a manner which constitutes direct infringement. The only alternative is the finding of fact that Roche has proposed (or a corresponding stipulation):

> The end-users of Bayer's and LifeScan's accused strips sold after October. 2, 2007 use those strips only in connection with meters that have the structure, functions, features, and operation of Defendants' accused meters sold by Defendants after October 2, 2007.

Roche discussed with Bayer and LifeScan simple and straightforward stipulations that would obviate the need for this discovery.  None of these Defendants has agreed.  As such, as the Defendants have also refused to produce the requested documents during the Court-ordered document discovery period, the above finding of fact is the appropriate remedy.

---

[3] Typically, strip purchases are made at the retail level, and purchasers of strips, independent of meters, are not recorded or identified to the manufacturer.

### III. CONCLUSION

For the foregoing reasons, Roche respectfully requests that the Court enter the proposed Order submitted herewith establishing the following findings of fact:

(a) The end-users of Bayer and LifeScan's products use the accused meters and strips in the manner directed by the owner's manuals, product inserts, and other documents supplied by Defendants for those products.

(b) Bayer and LifeScan knew or should have known that their actions would induce such use by end-users.

(c) The end-users of Bayer's and LifeScan's accused strips sold after October. 2, 2007 use those strips only in connection with meters that have the structure, functions, features, and operation of Defendants' accused meters sold by Defendants after October, 2, 2007.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Daniel A. Boehnen
Grantland G. Drutchas
McDonnell Boehnen Hulbert & Berghoff LLP
300 South Wacker Drive
Chicago, IL 60606
(312) 913-0001

By: _____
Philip A. Rovner (#3215)
Hercules Plaza
P.O. Box 951
Wilmington, DE 19899-0951
Ph: (302) 984-6000
provner@potteranderson.com

Dated: July 3, 2008
872708

*Attorney for Plaintiffs*
*Roche Diagnostics Operations, Inc., and*
*Corange International Limited*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, Philip A. Rovner, hereby certify that on July 3, 2008, the within document was filed with the Clerk of the Court using CM/ECF which will send notification of such filing(s) to the following; that the document was served on the following counsel as indicated; and that the document is available for viewing and downloading from CM/ECF.

**BY HAND DELIVERY AND E-MAIL**

Steven J. Balick, Esq.
John G. Day, Esq.
Ashby & Geddes
500 Delaware Avenue
8th Floor
P.O. Box 1150
Wilmington, DE 19899
sbalick@ashby-geddes.com
jday@ashby-geddes.com

Mary W. Bourke, Esq.
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 N. Orange Street
Wilmington, DE 19801
mbourke@cblh.com

**BY HAND DELIVERY AND E-MAIL**

John W. Shaw, Esq.
Jeffrey T. Castellano, Esq.
Young Conaway Stargatt & Taylor, LLP
1000 West Street, 17th Floor
Wilmington, DE 19801
jshaw@ycst.com
jcastellano@ycst.com

Rodger D. Smith, Esq.
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
rsmith@mnat.com

I hereby certify that on July 3, 2008 the foregoing document was sent by E-mail to the following non-registered participants:

Bradford J. Badke, Esq.
Sona De, Esq.
Michael Kahn, Esq.
Simon Fitzpatrick, Esq.
Ropes & Gray LLP
1211 Avenue of the Americas
New York, NY 10036-8704
Jim.badke@ropesgray.com
Sona.de@ropesray.com
Michael.kahn@ropesgray.com
Simon.fitzpatrick@ropesgray.com

Kenneth P. George, Esq.
Joseph M. Casino, Esq.
Amster, Rothstein & Ebenstein LLP
90 Park Avenue
New York, NY 10016
kgeorge@arelaw.com
jcasino@arelaw.com

Wesley E. Overson, Esq.
Rachel Krevans, Esq.
Jason R. Bartlett, Esq.
Parisa Jorjani, Esq.
Daniel P. Muino, Esq.
Morrison & Foerster LLP
425 Market Street
San Francisco, CA 94105-2482
woverson@mofo.com
rkrevans@mofo.com
jasonbartlett@mofo.com
pjorjani@mofo.com
dmuino@mofo.com

Michael G. Adams, Esq.
Ashley L. Ellis, Esq.
Parker Poe Adams & Bernstein LLP
Three Wachovia Center, Suite 3000
401 South Tryon Street
Charlotte, NC 28202
mikeadams@parkerpoe.com
ashleyellis@parkerpoe.com

/s/ Philip A. Rovner
Philip A. Rovner (#3215)
Potter Anderson & Corroon LLP
Hercules Plaza
P.O. Box 951
Wilmington, Delaware 19899
(302) 984-6000
E-mail: provner@potteranderson.com

# EXHIBIT G

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ROCHE DIAGNOSTICS OPERATIONS, INC., and CORANGE INTERNATIONAL LIMITED, <br><br> Plaintiffs, <br><br> vs. <br><br> ABBOTT DIABETES CARE, INCORPORATED, and ABBOTT DIABETES CARE SALES CORPORATION, BAYER HEALTHCARE, LLC, DIAGNOSTIC DEVICES, INC., LIFESCAN, INCORPORATED, and NOVA BIOMEDICAL CORPORATION, and SANVITA INCORPORATED, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) C.A. No. 07-753-JJF |

### [PROPOSED] ORDER

This _____ day of _____, 2008, Plaintiffs Roche Diagnostics Operations Inc. and Corange International Limited having filed a motion to compel, and after considering the positions of the parties, having concluded that good grounds exist for the requested relief; now therefore,

IT IS HEREBY ORDERED as follows:

(1) Defendants Bayer and LifeScan ("Defendants") have refused to produce prior to the close of document discovery (June 27, 2008) all non-privileged documents responsive to Roche's Document requests Nos. Bayer 121-123 and LifeScan 121-123, and (seeking information regarding identification of end-users). As such, for the purposes of this action, the following facts have been established:

    (a) The end-users of Bayer's and LifeScan's products use the Defendants' accused meters and strips in the manner directed by the owner's manuals, product inserts, and other documents supplied by Defendants for those products.

    (b) Bayer and LifeScan knew or should have known that their actions would induce such use by end-users.

  (2) Defendants Bayer and LifeScan have refused to produce prior to the close of document discovery (June 27, 2008) all non-privileged documents responsive to Roche's pending document requests regarding all meters potentially in use with accused strips after October 2, 2007, including meters manufactured and sold prior to that date. As such, for the purposes of this action, the following facts have been established:

    (a) The end-users of Bayer's and LifeScan's accused strips sold after October. 2, 2007 use those strips only in connection with meters that have the structure, functions, features, and operation of Defendants' accused meters sold by Defendants after October, 2, 2007.


Entered this _____ day of _____, 2008

                             _____
                             Joseph J. Farnan, Jr.
                             United States District Judge

# EXHIBIT H

# CONNOLLY BOVE LODGE & HUTZ LLP
## ATTORNEYS AT LAW

WILMINGTON, DE

The Nemours Building
1007 North Orange St.
P.O. Box 2207
Wilmington, DE 19899
TEL: (302) 658 9141
FAX: (302) 658 5614
WEB: www.cblh.com

R. ERIC HUTZ

TEL (302) 658 9141
FAX (302) 658 5614
EMAIL ehutz@cblh.com
REPLY TO Wilmington Office

June 25, 2008

**VIA EMAIL**

Richard A. Machonkin, Esquire
McDonnell Boehnen Hulbert & Berghoff LLP
300 South Wacker Drive
Chicago, Illinois 60606-6709

Re: *Roche Diagnostic Operations, Inc., et al. v. Abbott Diabetes Care, Inc., et al.*
Civil Action No. 07-753-JJF (D. Del.)

Dear Richard:

This will respond to your June 20, 2008 letter. To start, there are a number of significant inaccuracies which require correction.

Contrary to the suggestion in your letter, Lifescan did not indicate for the first time in my June 13th letter that Lifescan would be willing to discuss a stipulation regarding customer information. In fact, I specifically advised you on April 3rd that Lifescan would be willing to discuss such a stipulation. In that discussion, you asked me to put that in writing which I did in my April 4th letter. Roche never responded to my request that Roche provide sample language that would be acceptable to Roche. Instead, Roche burdened the court with its recent motion to compel, notwithstanding the fact that my June 13th letter referred back to Lifescan's previous willingness to discuss a possible stipulation. Putting aside Roche's failure to engage in a proper meet and confer as required by the local rules, Lifescan is evaluating the language you proposed and will get back to you.

Your letter also does not accurately characterize the circumstances regarding interrogatories 7 and 8. Lifescan objected to those requests on a number of grounds including that the requests were directed to phase 2 issues and that Lifescan would not respond at all until revised interrogatories were submitted. Lifescan also objected to both requests to the extent they called for legal conclusions/expert opinions and based on the fact that Roche had not identified which claims it was asserting. Those requests were also subject to Lifescan's general objections, including general objection 7. Lifescan's agreement to respond as to prior invention issues did not waive any of these objections nor

**CONNOLLY BOVE LODGE & HUTZ LLP**
ATTORNEYS AT LAW

Richard A. Machonkin, Esquire
June 25, 2008
Page 2

did Lifescan agree to bypass Judge Farnan's practice regarding contention interrogatories. Both interrogatories are plainly contention interrogatories. Accordingly, we will respond in accordance with the agreement regarding general objection 7 outlined in your April 4th letter, i.e. that answers to contention interrogatories would be exchanged at a mutually agreeable date nearer to the close of phase 1 fact deposition discovery.

With respect to item (v) of interrogatory 1 and items (ii) and (v) of interrogatory 2, Lifescan will provide an appropriate supplement to its responses. Lifescan will also provide the requested samples except for the InDuo product. That product was discontinued in 2005 and clearly not relevant in view of the issue date of the patents-in-suit. In addition, to the extent your July 27th deadline implies the parties cannot supplement interrogatory responses based on additional investigations, review of document production and depositions, Lifescan disagrees with that position and reserves its right to supplement its responses in accordance with the Rules.

With respect to the initial disclosure, Judge Farnan clearly intended that discovery be divided into phases. Accordingly, limiting the initial disclosure to phase 1 issues is entirely appropriate and we doubt Judge Farnan will be interested in a dispute on that issue. A phase 2 initial disclosure will be provided at the start of phase 2.

Very truly yours,

*R. Eric Hutz/evs*

R. Eric Hutz

REH/evs

619117_1