## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ROCHE DIAGNOSTICS OPERATIONS, INC., and CORANGE INTERNATIONAL LTD., | ) ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) C.A. No. 07-753-JJF ) |
| ABBOTT DIABETES CARE, INC., ABBOTT DIABETES CARE SALES CORP., BAYER HEALTHCARE, LLC, DIAGNOSTIC DEVICES, INC., LIFESCAN, INC., and NOVA BIOMEDICAL CORP., | ) ) ) ) ) ) |
| Defendants. | ) ) |

## ROCHE'S OPPOSITION TO LIFESCAN'S MOTION
## TO EXTEND DISCOVERY PERIOD

OF COUNSEL:

Daniel A. Boehnen
Grantland G. Drutchas
McDonnell Boehnen Hulbert & Berghoff LLP
300 South Wacker Drive
Chicago, IL 60606
(312) 913-0001

Philip A. Rovner (#3215)
POTTER ANDERSON & CORROON LLP
Hercules Plaza
P.O. Box 951
Wilmington, DE 19899-0951
(302) 984-6000
provner@potteranderson.com

*Attorney for Plaintiffs*
*Roche Diagnostics Operations, Inc. and Corange*
*International Limited*

Dated: July 17, 2008

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 1

II.     NATURE AND STAGE OF THE PROCEEDINGS ................................................. 3

III.    SUMMARY OF THE ARGUMENT ....................................................................... 4

IV.     STATEMENT OF FACTS ..................................................................................... 5

V.      ARGUMENT ....................................................................................................... 5

VI.     CONCLUSION ..................................................................................................... 9

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Gulf Oil v. Bernard,*
     452 U.S. 89 (1981)................................................................................5, 8

*Venetec Inter., Inc. v. Nexus Medical, LLC,*
     541 F. Supp. 2d 612 (D. Del. 2008)..................................................5, 6, 8

**RULES**

Fed. R. Civ. P. 16(b) ............................................................................................8

Fed. R. Civ. P. (b)(4)............................................................................................5

Fed. R. Civ. P. 26(c) ............................................................................................5

## I. INTRODUCTION

Throughout the initial six (6) months of this case, LifeScan repeatedly pledged that it would produce all Phase I documents on or before the deadline for Phase I document discovery, and refused to cooperate or discuss with Roche any more detailed timeline for handling the document discovery process. But on June 27, 2008, the very day that document discovery was scheduled to close, Roche received only a fraction of LifeScan's promised document production, and LifeScan moved for a four-week extension to the deadline. LifeScan has made no showing of diligence through the document discovery process, and instead relies on attorney argument and a series of inconsistent statements.

The pertinent events that have occurred to date demonstrate LifeScan's lack of diligence:

- **January 23, 2008**  Roche serves its first set of document requests on LifeScan and other defendants  (*See* D.I. 55)

- **January 28, 2008**  LifeScan files a Motion to Sever the case as to LifeScan, arguing that it has a "unique" prior invention defense that will eliminate the case (*See* D.I. 58-60)

- **February 21, 2008**  LifeScan requests an extension of time to respond

- **March 3, 2008**  LifeScan provides written objections to Roche's document requests, but fails to produce any responsive documents (*See* D.I. 84)

- **March 26, 2008**  Responding to Roche's inquiry about the failure to produce documents, LifeScan notes the June 27, 2008 discovery deadline and confirms that it "will produce documents in compliance with the Court-ordered schedule." (Ex. A)

- **April 9, 2008**  Responding to a further Roche inquiry about documents, LifeScan refuses to provide a date for initiating document production, but again confirms that LifeScan will produce documents by the June 27, 2008 Phase I document discovery deadline and would produce documents on a rolling basis   (*See* Ex. B)

- **April 28, 2008**  In opposition to Roche's first motion to compel, LifeScan represents to the Court that it will complete Phase I document production by the June 27, 2008 document discovery deadline  (*See* D.I. 148) ("Defendants proposed June 27, 2008 [as a document production deadline] and this Court accepted Defendants' proposed date.

LifeScan does not intend to wait until June 27th to produce its documents, and has repeatedly advised Roche of this.")

- **April 30, 2008**     LifeScan produces an initial batch of 7,563 pages of documents (*See* Ex. C)

- **June 4, 2008**       LifeScan produces a second batch of 8,289 pages of documents (*See* Ex. D)

- **June 20, 2008**      LifeScan indicates to Roche for the first time that it cannot meet the June 27, 2008 Phase I document discovery deadline and requests a four-week extension (*See* Ex. E)

- **June 23, 2008**      Roche offers a two-week extension with a corresponding extension of time for Roche depositions (*See* Ex. F)

- **June 27, 2008**      LifeScan rejects Roche's proposal, and instead moves for an extension of the document discovery deadline (*See* D.I. 219); Roche receives 53,870 pages of LifeScan production (*See* Ex. G)

In fact, in spite of LifeScan's repeated assurances to Roche and to this Court that it would produce documents on a rolling basis and would comply with the June 27, 2008 Phase I document discovery deadline, LifeScan did neither. Instead, it waited until that deadline to produce the large bulk of its production, and then moved to extend that deadline for another four weeks.

LifeScan provides no explanation as to why it suddenly, during the last week of document discovery, learned that it could not meet the deadline or even the two-week extension that Roche proposed. If LifeScan's counsel were working diligently, then why didn't they realize sooner that they could not meet the deadline?

LifeScan's decision to file this motion on the very last day of Court-ordered document discovery was obviously calculated to result in a *de facto* extension regardless of this Court's disposition of the motion. LifeScan's proposed resolution of this situation will not fully ameliorate the prejudice to Roche, as this resolution merely compacts the rest of the Phase I schedule, threatens further delays, and fails to recognize the deeper problem of LifeScan's failure to provide discovery as to its case-in-chief for its alleged primary defense.

As early as January 28, 2008, in support of its Motion to Sever, LifeScan represented that it had "unique defenses," including that "LifeScan's products were invented prior to Roche's invention date." D.I. 60, at 7-8. Even though the issue of prior inventorship is quite distinct from infringement, the Court made this prior inventorship issue a central aspect of Phase I discovery. *See* CMC Hearing Transcript, at 28 (Feb. 8, 2008) (Ex. H). Yet, as of June 27, 2008, LifeScan had produced no laboratory notebooks or other research documents to support this defense. Nor had LifeScan produced any documents that pre-date, for example, the 1998 Roche laboratory records that are part of the file history of the patents in suit demonstrating Roche's date of invention.

LifeScan did not and cannot provide any excuse for failing to produce documents supporting this defense prior to the Court-ordered close of document discovery in Phase I, particularly as to such an important defense. As such, Roche requests the following relief:

- Roche be given one additional month to conduct deposition discovery of LifeScan and third parties, as proposed by LifeScan.

- LifeScan be precluded in its case-in-chief from relying on any documents regarding its prior invention case that were not produced prior to the June 27, 2008 document discovery deadline ordered by the Court.

## II. NATURE AND STAGE OF THE PROCEEDINGS

On November 21, 2007, Roche Diagnostic Operations, Inc. and Corange International Ltd. (collectively, "Roche") filed a complaint alleging that Defendants were infringing several Roche patents through the manufacture, sale, and use of various blood glucose monitoring products. D.I. 1. Although most of the Defendants answered, D.I. 156, 181, and 182, one

Defendant, Diagnostics Devices Inc. ("DDI") filed a motion to dismiss the complaint for lack of personal jurisdiction. D.I. 44. That motion is currently pending.

This Court ordered phased discovery, with infringement and prior invention issues in this first phase of discovery ("Phase I"), followed by a claim construction proceeding and then by discovery into validity issues ("Phase II"). CMC Hearing Transcript, at 36-38 (Ex. H). In particular, the Court ordered the parties to complete document production and interrogatories regarding infringement and prior invention issues by June 27, 2007.

Defendants' refusal to provide needed discovery has already required Roche to file two motions to compel. Both motions are currently pending. Now LifeScan has failed to produce documents within the Phase I document discovery period and requested a one month extension of time.

## III. SUMMARY OF THE ARGUMENT

1. LifeScan has failed to meet its burden of showing good cause for its delay, including any showing of diligence and that it "could not have" met the deadline for document production set by this Court. This failure is particularly apparent and acute with respect to LifeScan's asserted prior invention issue.

2. LifeScan relies only upon attorney argument in support of its motion.

3. LifeScan's contradictory statements to Roche and to this Court fail to provide the "particular and specific demonstration" required to support this extension of time.

4. LifeScan did not and cannot show any excuse for any delay in producing documents supporting its prior invention case-in-chief.

4

## IV. STATEMENT OF FACTS

Despite Roche's repeated efforts to engage in early discussions about discovery activities, LifeScan refused to provide any date for starting or staging the various activities on Phase I document production. Instead, LifeScan merely but repeatedly assured Roche that its document production for Phase I would be complete as of the deadline ordered by the Court for such production, June 27, 2008. In spite of its assurances, LifeScan has now reversed itself and insisted on an additional month, until July 25, 2008, to complete Phase I document production.

When LifeScan finally brought the matter to Roche's attention a few days before the June 27th deadline, Roche offered to provide an additional two weeks, as long as Roche was given a corresponding two week extension of deposition discovery of LifeScan. LifeScan refused, and maintained its insistence on a full month extension without providing any evidence of diligence. LifeScan, in particular, has given no excuse for failing to produce documents relating to its prior invention allegations, which are part of its case-in-chief and are fully within LifeScan's possession and control.

## V. ARGUMENT

A scheduling order "may be modified only for good cause." Rule 16(b)(4), Fed. R. Civ. Proc. "The good cause element requires the movant to demonstrate that, despite diligence," it "**could not have**" met the deadline. *Venetec Inter., Inc. v. Nexus Medical, LLC*, 541 F. Supp. 2d 612, 618 (D. Del. 2008) (emphasis added). Demonstrating good cause requires "particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *Gulf Oil v. Bernard*, 452 U.S. 89, 102 n.16 (1981) (interpreting "good cause" under Rule 26(c)).

It is insufficient as a matter of law for LifeScan to assert that it was diligent during the last weeks of the discovery period. It is also insufficient for LifeScan to assert, on the very date

of the deadline, that meeting the deadline had become "impossible." LifeScan Br. at 3. LifeScan must show that it was diligent well before the deadline, and that meeting the deadline was *nevertheless* impossible, despite timely efforts. *See Venetec*, 541 F. Supp. 2d at 681. As reflected in the timeline set forth in the introduction above, the facts show otherwise. LifeScan was *not* diligent in its earlier production efforts, and LifeScan *could have* met the deadline if it had been diligent.

LifeScan's counsel argues that LifeScan was diligent because it "began preparations" for document production in late January and it allegedly mobilized "dozens of attorneys" in late June, at the very end of the discovery period. LifeScan Br., D.I. 211-3, at 3. But counsel makes *no* showing of diligence through the *five intervening months*. To the contrary, the facts show that LifeScan has *not* been diligent:

- Roche's first set of document requests were served in late January 2008, but LifeScan did not produce *any* documents until three months after service of Roche's first document requests. *See* LifeScan Opp'n, D.I. 148-1, at 6.

- LifeScan repeatedly pledged – to Roche and to the Court – that it would *not* wait until the deadline to produce its documents,[1] but Roche received *three-quarters* of LifeScan's pre-deadline production *on the last day of the deadline*.[2]

- LifeScan claims that it had "problems in the loading of documents into LifeScan's document review database." Br. at 4. But LifeScan says that it had identified these documents at least two months before the deadline,

---

[1] "[Roche argues that] Defendants should not be allowed to wait until the June 27, 2008 Phase I document production deadline. However, LifeScan has repeatedly advised Roche that LifeScan does not intend to do that and will produce documents on a rolling basis." LifeScan Opp'n, D.I. 148-1, at 2. "LifeScan confirmed it would produce documents on a rolling basis and not wait until the June 27, 2008 document production cut-off date...." *Id.* at 5.

[2] *See* production mailed April 29, 2008 (pages LFS00000001-LFS00007563) (Ex. C); production mailed June 2, 2008 (LFS00007564-LFS00015852) (Ex. D); production mailed June 26, 2008 (LFS00015853-LFS00069730) (Ex. G).

LifeScan Opp'n, D.I. 148-1, at 6. Thus, LifeScan apparently did not attempt to load the documents for review until the last week of discovery.[3]

- LifeScan's counsel claims that they mobilized "dozens of attorneys" in late June. But this assertion merely confirms that LifeScan waited until the final weeks to even assess whether its preparations were adequate. The key factor is "what was LifeScan doing between late January 2007 and early June 2007?" LifeScan makes *no* showing of diligence through the five intervening months.

- LifeScan's blaming of "technical difficulties" is the antithesis of the "particular and specific demonstration of fact" required by courts. *Gulf Oil*, 452 U.S. at 102. "Technical difficulties" is a notorious euphemism for events that one would rather not explain.

Lacking evidence to show its diligence, LifeScan relies on attorney argument that contradicts other LifeScan statements:

- LifeScan claims that the number of custodians of documents is "overwhelming," Br. at 4, but LifeScan's discovery responses identify only *three* current LifeScan employees as individuals who "may have discoverable information." Initial Disclosures (May 1, 2008), at 3 (Ex. I).

- LifeScan claims its production efforts involve 32,000 boxes of documents, but elsewhere admit that this is the number of boxes merely *located* at its various facilities.

- LifeScan equivocates about the status of these 32,000 boxes of documents, claiming on one page that LifeScan has *already* reviewed the documents, Br. at 3, but claiming on another page that LifeScan *could not* review the documents because of "technical problems," Br. at 4. Moreover, having produced only 69,000 pages by the Court-imposed June 27th deadline,[4] its production amounted to only *two pages per box*.

Thus, LifeScan's motion relies on unsupported attorney arguments about the volume of documents and on stereotypical claims of "technical difficulties." These grounds are insufficient

---

[3] In the June 20, 2008 letter from LifeScan counsel requesting an extension, LifeScan offers several excuses for its delayed production but makes no mention of any technical problems. *See* Letter from R. Eric Hutz to Richard Machonkin (June 20, 2008) (Ex. E).

[4] *See* production mailed April 29, 2008 (pages LFS00000001-LFS00007563) (Ex. C); production mailed June 2, 2008 (LFS00007564-LFS00015852) (Ex. D); production mailed June 26, 2008 (LFS00015853-LFS00069730) (Ex. G).

to establish "good cause" for LifeScan's delay, and LifeScan's motion for a four-week extension should be denied. Rule 16(b), Fed. R. Civ. Proc.

A showing of good cause requires a "particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *Gulf Oil*, 452 U.S. at 102 n.16. LifeScan's attorney argument not only lacks the required specificity, but also contains vague and even contradictory assertions which cannot meet the standard under *Venetec*. LifeScan's apparently sudden realization during the last week of document discovery that it could not meet the deadline or even the two-week extension that Roche proposed is simply unexplained, and it confirms LifeScan's lack of diligence.

Most significantly, LifeScan has not presented any excuse for failing to complete its production of documents that relate to LifeScan's prior invention defense, which LifeScan first raised on January 28, 2008. D.I. 60, at 7-8.  In response to LifeScan's pleas, this Court made the prior invention defense part of Phase I discovery.  LifeScan has the burden of proof on this issue, the documents are and have been solely within LifeScan's possession

LifeScan's failure to provide by the discovery deadline any laboratory notebooks or any invention disclosures or development documents upon which it may rely – all of which are kept by medical diagnostics companies under strict control – is inexplicable.  So is its failure to produce any documents prior to the 1998 laboratory records Roche submitted to the PTO and made part of the file histories of the patents in suit.  These documents establish Roche's date of invention as at least as early as 1998, but LifeScan has not produced any documents that show any invention or development work from that or any earlier time frame.

LifeScan's failure to provide these documents appears to be, quite simply, an attempt to hide the ball. At the very least, LifeScan should be precluded from relying on any late-produced evidence in support of its own prior invention

## VI. CONCLUSION

Roche requests the following relief:

- Roche be given one additional month to conduct deposition discovery of LifeScan and third parties, as proposed by LifeScan.

- LifeScan be precluded from relying on any documents regarding its prior invention case-in-chief that were not produced prior to the June 27, 2008 document discovery deadline ordered by the Court.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Daniel A. Boehnen
Grantland G. Drutchas
McDonnell Boehnen Hulbert & Berghoff LLP
300 South Wacker Drive
Chicago, IL 60606
(312) 913-0001

Dated: July 17, 2008
874850

By: /s/ Philip A. Rovner
    Philip A. Rovner (#3215)
    Hercules Plaza
    P.O. Box 951
    Wilmington, DE 19899-0951
    (302) 984-6000
    provner@potteranderson.com

*Attorney for Plaintiffs*
*Roche Diagnostics Operations, Inc., and*
*Corange International Limited*

9

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, Philip A. Rovner, hereby certify that on July 17, 2008, the within document was

filed with the Clerk of the Court using CM/ECF which will send notification of such

filing(s) to the following; that the document was served on the following counsel as

indicated; and that the document is available for viewing and downloading from

CM/ECF.

### BY HAND DELIVERY AND E-MAIL

Steven J. Balick, Esq.
John G. Day, Esq.
Ashby & Geddes
500 Delaware Avenue
8th Floor
P.O. Box 1150
Wilmington, DE 19899
sbalick@ashby-geddes.com
jday@ashby-geddes.com

Mary W. Bourke, Esq.
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 N. Orange Street
Wilmington, DE 19801
mbourke@cblh.com

### BY HAND DELIVERY AND E-MAIL

John W. Shaw, Esq.
Jeffrey T. Castellano, Esq.
Young Conaway Stargatt & Taylor, LLP
1000 West Street, 17th Floor
Wilmington, DE 19801
jshaw@ycst.com
jcastellano@ycst.com

Rodger D. Smith, Esq.
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
rsmith@mnat.com

I hereby certify that on July 17, 2008 the foregoing document was sent by E-mail

to the following non-registered participants:

Bradford J. Badke, Esq.
Sona De, Esq.
Michael Kahn, Esq.
Simon Fitzpatrick, Esq.
Ropes & Gray LLP
1211 Avenue of the Americas
New York, NY 10036-8704
Jim.badke@ropesgray.com
Sona.de@ropesray.com
Michael.kahn@ropesgray.com
Simon.fitzpatrick@ropesgray.com

Wesley E. Overson, Esq.
Rachel Krevans, Esq.
Jason R. Bartlett, Esq.
Parisa Jorjani, Esq.
Daniel P. Muino, Esq.
Morrison & Foerster LLP
425 Market Street
San Francisco, CA 94105-2482
woverson@mofo.com
rkrevans@mofo.com
jasonbartlett@mofo.com
pjorjani@mofo.com
dmuino@mofo.com

Kenneth P. George, Esq.
Joseph M. Casino, Esq.
Amster, Rothstein & Ebenstein LLP
90 Park Avenue
New York, NY  10016
kgeorge@arelaw.com
jcasino@arelaw.com

Michael G. Adams, Esq.
Ashley L. Ellis, Esq.
Parker Poe Adams & Bernstein LLP
Three Wachovia Center, Suite 3000
401 South Tryon Street
Charlotte, NC 28202
mikeadams@parkerpoe.com
ashleyellis@parkerpoe.com

/s/ Philip A. Rovner
Philip A. Rovner (#3215)
Potter Anderson & Corroon LLP
Hercules Plaza
P.O. Box 951
Wilmington, Delaware 19899
(302) 984-6000
E-mail: provner@potteranderson.com

-2-

# EXHIBIT A

RE: Roche et al. v. Abbott et al.    Page 1 of 2

## Machonkin, Rick

**From:**    Kristen H. Cramer [KCramer@cblh.com]
**Sent:**    Wednesday, March 26, 2008 12:59 PM
**To:**      Machonkin, Rick
**Cc:**      Mary W. Bourke; Eric Hutz
**Subject:** RE: Roche et al. v. Abbott et al.

Dear Richard,

Needless to say, we do not agree with your characterizations. We are available to meet and confer at 1:00 pm (EDT) on April 1, 2008. Please let us know if you are available. With respect to document production, the Phase I cutoff date in the Scheduling Order to be entered by the Court is June 27, 2008. LifeScan will produce documents in compliance with the Court-ordered schedule.

Sincerely,

Kristen Healey Cramer
Connolly Bove Lodge & Hutz LLP
1007 North Orange Street
P.O. Box 2207
Wilmington DE 19899
T: 302.888.6317
F: 302.658.5614
kcramer@cblh.com

---

**From:** Machonkin, Rick [mailto:machonkin@mbhb.com]
**Sent:** Tuesday, March 25, 2008 4:07 PM
**To:** Kristen H. Cramer
**Cc:** Boehnen, Daniel; Drutchas, Grantland; Tinsley, Nancy; Rovner, Philip A.; Mary W. Bourke; Eric Hutz
**Subject:** RE: Roche et al. v. Abbott et al.

Dear Kristen,

I am concerned that LifeScan never responded to my letter of March 14 requesting a meet-and-confer on March 25, forcing me to leave a voicemail for Mary Bourke yesterday. Only then did I receive your email message below reporting that LifeScan would not be available for a meet-and-confer until April 1, more than two weeks after I sent my request.

Nonetheless, I am willing to conduct a meet-and-confer by telephone on April 1. I propose 11:00 a.m. EDT. Please confirm that this time is acceptable.   If not, please propose another time that day. The meet-and-confer will cover the issues raised in my March 14 letter, as well as LifeScan's failure to produce any documents.

Further as to documents, Daniel Boehnen's letter of March 5 asked each of the defendants to advise when its Phase I document production will begin and when it will be completed.   On March 14th, Daniel Boehnen sent another letter that again raised the issue of the defendants' failure to produce documents. Despite these letters, we still have not heard when LifeScan will begin document production and when it expects to complete production of documents to any substantial degree. Please let me know before our call on April 1 when LifeScan will begin producing documents responsive to Roche's discovery requests.

RE: Roche et al. v. Abbott et al.                                    Page 2 of 2

Sincerely,

Richard A. Machonkin
McDonnell Boehnen Hulbert & Berghoff LLP
300 S. Wacker Drive
Chicago, IL 60606
direct:  (312) 913-2129

---

From: Kristen H. Cramer [mailto:KCramer@cblh.com]
Sent: Monday, March 24, 2008 12:42 PM
To: Machonkin, Rick
Cc: Mary W. Bourke; Eric Hutz
Subject: Roche et al. v. Abbott et al.

Dear Richard,
I am responding on behalf of Mary Bourke, who received your voicemail this morning regarding a proposed meet and confer on March 25th in the above-captioned case.  None of the principals representing LifeScan are available to meet this week.  We are available for a telephone conference on Tuesday, April 1st before 3:00 pm. Please let us know your availability.

Sincerely,
Kristen Healey Cramer
Connolly Bove Lodge & Hutz LLP
1007 North Orange Street
P.O. Box 2207
Wilmington DE 19899
T: 302.888.6317
F: 302.658.5614
kcramer@cblh.com

This e-mail and any attachment is intended only for use by the addressee(s) and may contain privileged and confidential information. Please email or call 302-658-9141 to advise the sender of a transmission error and delete the message and any attachments and any printouts. Any tax advice contained in this communication is not intended and cannot be used to avoid penalties under the Internal Revenue Code or to promote, market or recommend to another party any transaction or matter addressed herein.

This e-mail and any attachment is intended only for use by the addressee(s) and may contain privileged and confidential information. Please email or call 302-858-9141 to advise the sender of a transmission error and delete the message and any attachments and any printouts. Any tax advice contained in this communication is not intended and cannot be used to avoid penalties under the Internal Revenue Code or to promote, market or recommend to another party any transaction or matter addressed herein.

3/27/2008

# EXHIBIT B

## Kinsman, Denise

**Subject:**     Roche v Abbott et al

**Attachments:** 04-09-08 Letter to Boehnen re document production.pdf

**From:** Eric Hutz [mailto:EHutz@cblh.com]
**Sent:** Wednesday, April 09, 2008 3:27 PM
**To:** Boehnen, Daniel; Brown, Christina; Drutchas, Grantland; Fritsch, Paula; Hood, Gary; Keenan, Nicole;
Machonkin, Rick; Moran, Eric; Oslick, Sherri; Rovner, Philip A.; Sullivan, Sean
**Cc:** Cottrell@RLF.com; emas@mcandrews-ip.com; gaza@RLF.com; jhafertepe@mcandrews-ip.com;
KVANDERLEEST@mcandrews-ip.com; melliott@mcandrews-ip.com; SSHERRY@mcandrews-ip.com; Bartlett,
Jason R.; jcasino@ARELAW.com; jcastellano@ycst.com; Jorjani, Parisa; JSHAW@ycst.com;
kgeorge@ARELAW.com; Krevans, Rachel; Muino, Daniel P.; Overson, Wesley E.; ashleyellis@parkerpoe.com;
jday@ashby-geddes.com; lmaguire@ashby-geddes.com; mikeadams@parkerpoe.com; SBalick@ashby-
geddes.com; jim.badke@ropesgray.com; Michael.Kahn@ropesgray.com; rsmith@mnat.com;
Sona.De@ropesgray.com
**Subject:** Roche v Abbott et al

Please see attached correspondence.


R. Eric Hutz, Esq.
Connolly Bove Lodge & Hutz LLP
The Nemours Bldg.
1007 North Orange Street
P.O.Box 2207
Wilmington, DE 19899
Tel: (302) 888-6230
Fax: (302) 658-5614


This e-mail and any attachment is intended only for use by the addressee(s) and may contain privileged and confidential information. Please
email or call 302-658-9141 to advise the sender of a transmission error and delete the message and any attachments and any printouts. Any
tax advice contained in this communication is not intended and cannot be used to avoid penalties under the Internal Revenue Code or to
promote, market or recommend to another party any transaction or matter addressed herein.



## CONNOLLY BOVE LODGE & HUTZ LLP
### ATTORNEYS AT LAW

**WILMINGTON, DE**

The Nemours Building
1007 North Orange St.
P.O. Box 2207
Wilmington, DE 19899
TEL: (302) 658 9141
FAX: (302) 658 5614
WEB: www.cblh.com

R. ERIC HUTZ

TEL (302) 658 9141
FAX (302) 658 5614
EMAIL ehutz@cblh.com
REPLY TO Wilmington Office

April 9, 2008

**<u>VIA EMAIL</u>**

Daniel Boehnen, Esquire
McDonnell Boehnen Hulbert & Berghoff LLP
300 South Wacker Drive
Chicago, Illinois 60606-6709

**Re:**  *Roche Diagnostic Operations, Inc., et al. v. Abbott Diabetes Care, Inc., et al.*
**Civil Action No. 07-753-JJF (D. Del.)**

Dear Dan:

      This will respond to your April 8, 2008 email regarding document production. At the outset, your comments regarding Lifescan's position are not entirely accurate. You were advised during the meet and confer last week that Lifescan would not wait until June 27, 2008 to produce documents but would do so on a rolling basis as documents were located and processed. You were also advised that Lifescan was not in a position to commit to a date certain for the start of its production or when it would be completed because that depended on Lifescan's vendor. Lifescan has been conducting extensive searches in multiple locations and countries to locate responsive documents. Moreover, since Lifescan is not involved in the California litigation it does not have the benefit of any "head start" that litigation gives to any of the other parties, particularly regarding electronic discovery.

      Lifescan also rejects Roche's attempt to impose an artificial document discovery cut-off. The Court has already rejected Roche's prior attempt to impose an April 15th deadline in the scheduling order and set a June 27th date that recognized the parties would need more time to complete that part of Phase I discovery. Lifescan is unaware of any other provision in the scheduling order, Local Rules, or Federal Rules that obligates any defendant to "produce substantially all responsive documents" months prior to any Court ordered deadline. Lifescan is attempting to expedite its collection and production efforts and will continue to do so as quickly as reasonably practicable. However, Lifescan is not presently able to guarantee that substantially all of its documents will be produced on a fixed date prior to the current document production deadline.

603947_1

CONNOLLY BOVE LODGE & HUTZ LLP
ATTORNEYS AT LAW

Daniel Boehnen, Esquire
April 9, 2008
Page 2


Although Roche is free to burden the Court with this issue, Lifescan will continue its efforts to reasonably cooperate in completing discovery and doubts Judge Farnan will be interested in getting involved, particularly given the schedule he has already agreed to.

Very truly yours,

R. Eric Hutz

REH/evs

# EXHIBIT C

# CONNOLLY BOVE LODGE & HUTZ LLP

### ATTORNEYS AT LAW

WILMINGTON, DE

The Nemours Building
1007 North Orange St.
P.O. Box 2207
Wilmington, DE 19899
TEL: (302) 658 9141
FAX: (302) 658 5614
WEB: www.cblh.com

Kimberly P. Boots
Paralegal
TEL (302) 888-6416
FAX (302) 658 5614
EMAIL kboots@cblh.com
REPLY TO Wilmington Office

April 29, 2008

**VIA FEDEX**
Daniel A. Boehnen, Esquire
McDonnell Boehnen Hulbert & Berghoff LLP
300 South Wacker Drive
Chicago, IL 60606

Re:    Roche v. Abbott et al, C.A. No. 07-753-JJF (D. Del)

Dear Mr. Boehnen:

Enclosed please find LifeScan's production LFS00000001 to LFS00007563.
Please treat these documents in accordance with Delaware Local Rule 26.2.  If you have
any questions, please feel free to contact me.

Sincerely,

Kimberly P. Boots
Kimberly P. Boots

Enclosure

607910



# EXHIBIT D

**CONNOLLY BOVE LODGE & HUTZ LLP**
ATTORNEYS AT LAW

WILMINGTON, DE

The Nemours Building
1007 North Orange St.
P.O. Box 2207
Wilmington, DE 19899
TEL: (302) 658 9141
FAX: (302) 658 5614
WEB: www.cblh.com

**Kimberly P. Boots**
**Paralegal**
TEL (302) 888-6416
FAX (302) 658 5614
EMAIL kboots@cblh.com
REPLY TO Wilmington Office

June 2, 2008

**VIA FEDEX**
Daniel A. Boehnen, Esquire
McDonnell Boehnen Hulbert & Berghoff LLP
300 South Wacker Drive
Chicago, IL 60606

Re:    Roche v. Abbott et al, C.A. No. 07-753-JJF (D. Del)

Dear Mr. Boehnen:

Enclosed please find LifeScan's production LFS00007564 to LFS00015852.
Please treat these documents in accordance with Delaware Local Rule 26.2. If you have
any questions, please feel free to contact me.

Sincerely,

Kimberly P. Boots
Kimberly P. Boots

Enclosure

WILMINGTON, DE                    WASHINGTON, DC                    LOS ANGELES, CA

# EXHIBIT E



# CONNOLLY BOVE LODGE & HUTZ LLP

### ATTORNEYS AT LAW

WILMINGTON, DE

The Nemours Building
1007 North Orange St.
P.O. Box 2207
Wilmington, DE 19899
TEL: (302) 658 9141
FAX: (302) 658 5614
WEB: www.cblh.com

R. ERIC HUTZ

TEL (302) 658 9141
FAX (302) 658 5614
EMAIL ehutz@cblh.com
REPLY TO Wilmington Office

## ELECTRONIC MEANS

June 20, 2008

Richard Machonkin, Esquire
McDonnell Boehnen Hulbert & Berghoff LLP
300 South Wacker Drive
Chicago, IL 60606

    Re:    ***Roche Diagnostics Operations and***
           ***Corange International Limited v.***
           ***Abbott Diabetes Care, et al. (15129*3)***

Dear Richard:

    I am writing to you regarding the June 27th deadline for Phase 1 document production. As you are aware, Roche's discovery requests required Lifescan to identify and collect a significant volume of electronic and paper records. For example, Lifescan had approximately 12,000 boxes of paper records stored at its Milpitas facility and 20,000 boxes in Scotland. In addition, Lifescan conservatively estimates that at least 362 GB of data have been harvested for review. Finally, certain sources of electronic documentation were not text-searchable making it exceedingly difficult to identify potentially responsive documents.

    Lifescan expects to continue its rolling production with a large volume of documents being produced between now and June 27th. However, due to the volume of documents that had to be reviewed and issues with processing that volume for review and production, Lifescan will not be able to complete that production by June 27th. Accordingly, Lifescan requests a 4-week extension to complete its production of Phase 1 documents. The requested extension would be limited solely to Lifescan's completion of that production.

617900_1

 **CONNOLLY BOVE LODGE & HUTZ LLP**
ATTORNEYS AT LAW

Richard Machonkin, Esquire
June 20, 2008
Page 2

Please advise whether Roche is willing to agree to the extension.

Very truly yours,

R. Eric Hutz

REH/evs

617900_1

# EXHIBIT F



**McDonnell Boehnen Hulbert & Berghoff LLP**

300 South Wacker Drive     312 913 0001 phone
Chicago, Illinois 60606-6709    312 913 0002 fax
www.mbhb.com

June 23, 2008

**Sent Via E-mail**
**Confirmation via First Class Mail**

R. Eric Hutz, Esq.
Connolly Bove Lodge & Hutz LLP
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899

Re:    *Roche Diagnostic Operations, Inc. et al. v. Abbott Diabetes Care, Inc. et al.*,
       Civil Action No. 07-753-JJF (D. Del.)

Dear Eric:

We are more than surprised by your June 20th letter requesting a 4-week extension of time for LifeScan to complete its Phase I document production. The June 27, 2008 deadline for completion of Phase I document production was a date proposed by LifeScan and accepted by the Court over Roche's objection. Indeed, in its April 28 Answering Brief opposing our motion to compel, LifeScan confirmed that the June 27 date was defendants' proposed date. In that same brief served almost two months ago, LifeScan identified the approximate number of documents it had to review, yet assured the court that it "does not intend to wait until June 27th to produce its documents and has repeatedly advised Roche of this." Lifescan Ans. Br. at 6.

Further, despite our repeated requests, you have steadfastly refused to discuss a timeframe to complete document production, noting instead that LifeScan would comply with the June 27th deadline. Against this background, your June 20, 2008 letter fails to explain why LifeScan waited until just 7 days before the deadline to request an extension.

Nevertheless, Roche is willing to agree to a two-week extension (i.e., to July 11, 2008) for LifeScan to complete its Phase I document production, provided that:

> (1) LifeScan completes at least 75% of its Phase I production by June 27, 2008, and does so without dumping large volumes of completely irrelevant materials; and

(2) The extension also includes a two-week extension (i.e., to November 7, 2008) of the time period for Roche to depose LifeScan personnel. To be clear, this third point means that the deadline for LifeScan to complete depositions will remain October 24, 2008, but Roche will have an additional two weeks to complete depositions of LifeScan personnel and witnesses.

Your June 20th letter noted that certain of the LifeScan documentation "were not text searchable." Please confirm that LifeScan is putting those materials into text searchable form so as to comply with the document production format previously agreed between the parties.

We have not heard from LifeScan about our suggestion of a joint request for a status conference with the Court. Please advise if LifeScan is willing to join in such a request.

Please advise if LifeScan agrees to this approach.

Sincerely,

*Richard A. Machonkin*

Richard A. Machonkin
(312) 913-2129
machonkin@mbhb.com

# EXHIBIT G

 **CONNOLLY BOVE LODGE & HUTZ LLP**

ATTORNEYS AT LAW

WILMINGTON, DE

The Nemours Building
1007 North Orange St.
P.O. Box 2207
Wilmington, DE 19899
TEL: (302) 658 9141
FAX: (302) 658 5614
WEB: www.cblh.com

**Kimberly P. Boots**
**Paralegal**
TEL (302) 888-6416
FAX (302) 658 5614
EMAIL kboots@cblh.com
REPLY TO Wilmington Office

June 26, 2008

**VIA FEDEX**
Daniel A. Boehnen, Esquire
McDonnell Boehnen Hulbert & Berghoff LLP
300 South Wacker Drive
Chicago, IL 60606

Re:    Roche v. Abbott et al, C.A. No. 07-753-JJF (D. Del)

Dear Mr. Boehnen:

Enclosed please find LifeScan's production LFS00015853 to LFS00060200 and LFS00060208 to LFS00069730. LifeScan will not be producing documents bearing bates numbers in the range of LFS00060201-LFS00060207. Please treat these documents in accordance with Delaware Local Rule 26.2. If you have any questions, please feel free to contact me.

Sincerely,

Kimberly P. Boots
Kimberly P. Boots

Enclosures

619464

# EXHIBIT H

1

<pre>
 1                    IN THE UNITED STATES DISTRICT COURT

 2                   IN AND FOR THE DISTRICT OF DELAWARE

 3                                - - -

 4   ROCHE DIAGNOSTICS OPERATIONS,    :    CIVIL ACTION
     INC.                            :
 5                                    :
                 Plaintiff            :
 6                                    :
             vs.                      :
 7                                    :
     ABBOTT DIABETES CARE, INC.,      :
 8                                    :
     BAYER HEALTHCARE LLC,            :
 9                                    :
     DIAGNOSTIC DEVICES INC.          :
10                                    :
     LIFESCAN INC.                    :
11                                    :
         -and-                        :
12                                    :
     NOVA BIOMEDICAL CORPORATION      :
13                                    :
                 Defendants           :   No. 07-753-JJF
14

15                                - - -

16                                   Wilmington, Delaware
                                     February 8, 2008
17                                   10:00 o'clock, a.m.
                                     Scheduling Conference
18
                                  - - -
19
     BEFORE:  HONORABLE JOSEPH J. FARNAN, JR., U.S.D.C.J.
20
                                  - - -
21
     APPEARANCES:
22
                 POTTER, ANDERSON & CORROON
23               BY:  PHILIP ROVNER, ESQ

24                       -and-

25               MCDONNELL BOEHNEN HULBERT & BERGHOFF
                 BY: DANIEL A. BOEHNEN, ESQ and
</pre>

2

```
 1               GRANTLAND G. DRUTCHAS ESQ

 2                    Counsel for Plaintiff

 3          CONNOLLY, BOVE, LODGE & HUTZ
            BY:  ERIC HUTZ, ESQ.,
 4               MARY BOURKE, ESQ., and
                 KRISTIN CRAMER ESQ.
 5
                    Counsel for Roche Diagnostics
 6
            RICHARDS, LAYTON & FINGER
 7          BY: ANNE SHEA GAZA, ESQ

 8                    -and-

 9          MCANDREWS HELD & MALLOY LTD
            BY: STEPHEN F. SHERRY, ESQ., and
10               EDWARD MAS, ESQ

11                  Counsel for Abbott Diabetes

12          MORRIS, NICHOLS, ARSHT & TUNNELL
            BY: RODGER SMITH, ESQ.
13
                      -and-
14
            ROPES & GRAY
15          BY: BRADFORD JIM BADKE, ESQ

16                  Counsel for Nova Biomedical

17          YOUNG, CONAWAY, STARGATT & TAYLOR
            BY: JOHN W. SHAW, ESQ.
18
                      -and-
19
            MORRISON & FOERSTER, LLP
20          BY: RACHEL KREVANS, ESQ., and
                 KENNETH GEORGE, ESQ
21
                      Counsel for Bayer
22
            ASHBY & GEDDES
23          BY: STEVEN J. BALICK, ESQ

24                  Counsel for Diagnostic Devices

25                       Leonard A. Dibbs
                         Official Court Reporter
```

3

1

2

3                    P R O C E E D I N G S

4              (Court commenced at 10:08 o'clock a.m.)

5              THE COURT:  Good morning, be seated, please.

6              We're here for a scheduling conference.

7              I just had a chance because I hadn't had it

8    before, but I looked at the prepared Scheduling Order that

9    you submitted.

10             Let's have you announce your appearances first.

11             MR. ROVNER: Phil Rovner from Potter, Anderson &

12   Corroon.  With me today is Dan Boehnen and Grantland Drutchas

13   from the law firm of McDonnell Boehnen Hulbert & Berghoff.

14   Also with us is Nancy Tinsley, Counsel for Roche.

15             THE COURT:  Good morning.

16             MR. SMITH: Good morning, your Honor, Rodger Smith

17   from Morris, Nichols.  With me is Brad Badke from the law

18   firm of Ropes & Gray, representing Nova Biomedical

19             THE COURT: Good morning.

20             MR. SHAW:  Good morning, your Honor.  John Shaw

21   from Young, Conaway representing Bayer.  With me today is

22   Rachel Krevans of Morris & Foerster.

23             THE COURT: Good morning.

24             MS. GAZA:  Good morning, your Honor, Ann Gaza

25   from Richards, Layton & Finger.  With me today is Stephen

4

1    Sherry and Ed Mas of the firm of McAndrews Held & Malloy

2    of Chicago.  We're here today on behalf of Abbott Diabetes.

3              THE COURT:  Good morning.  You're glad to be here

4    in Wilmington.  You probably want to stay.

5              MR. HUTZ:  Eric Hutz from Connolly, Bove.  With

6    me today is Mary Bourke and Kristin Cramer.  We're here on

7    behalf of Defendant Lifescan.

8              THE COURT:  Good morning.

9              MR. BALICK:  Good morning, your Honor, Steven

10   Balick of Ashby & Geddes.  I don't have co-counsel with me

11   today, but I'll note my appearance for Diagnostic Devices.

12             THE COURT:  Thank you.

13             Okay.  Because you have a few disagreements, I

14   think what I want to do is give the plaintiff a chance to

15   tell me why -- what's the backdrop of why you take the

16   position you do.  I read what your positions are.

17             It would be helpful to understand why in regards

18   to this case you take that position.

19             We'll give the defendants a chance to tell their

20   side.

21             MR. BOEHNEN:  Good morning, your Honor, Dan

22   Boehnen on behalf or Roche.

23             In relation to the Scheduling Order, I think one

24   of the primary differences is how to conduct pretrial

25   activities.

5

1           Roche's position is that the defendants should

2   conduct coordinated discovery and coordinated Markman claim

3   construction proceedings.

4           Our concern is that the way the defendants have

5   presented it.  They want the discovery limitations for

6   depositions and interrogatories and admissions request to be

7   defined in relation from a propounding party to a propounding

8   party.

9           Under their approach, you know, they would be

10  entitled to ask six times the number of questions so that

11  there could be like a 150 interrogatories to each of the two

12  plaintiff's, 750 requests to admit to each of the plaintiffs,

13  you know, many, many hours of depositions.

14          What we have proposed is that certainly as to

15  issues that are common to the defenses like validity and

16  claim construction -- validity, I choose because that is a

17  situation where the defendants are going to be deposing Roche

18  employees as witnesses.

19          We contend that our employees, the inventors and

20  other people involved in creating the invention here, should

21  not be subjected to multiple depositions or countless hours

22  of depositions.

23          The defendant should be required to conduct

24  depositions, submit interrogatories, admissions requests in a

25  coordinated fashion.  That's what we have tried to propose.

6

1           Our proposal was that the plaintiffs would be

2    allowed to submit a certain number of deposition requests on

3    each of the defendants.  When we get to infringement, on the

4    other hand, each defendant device, we do have to establish

5    the facts for that individual.  And we would be prepared to

6    accept a fewer number of depositions overall.  But we have

7    for each individual party, we have to be able to conduct a

8    fair number of depositions on each of the products that are

9    accused of infringement.  We do that individually.

10          Likewise, for the other written discovery, we're

11   open to different ways of an approaching that.  That

12   philosophical difference separates the plaintiff from the

13   defendants here.

14          We think discovery should be coordinated and

15   Markman claim construction should be coordinated.  So we

16   proposed eight depositions by the plaintiff on each defendant

17   and the defendants could take ten depositions of us.

18          The defendants on the other hand request a

19   hundred hours per party.  Since there's five defendants, that

20   would give them 500 hours.  We think that's not appropriate.

21          There is also a difference between the parties on

22   claim construction and how to approach claim construction.

23          The defendants have said that they were unwilling

24   to do anything beyond the draft Scheduling Order that the

25   Court had in place at that time which said that will be

7

1    scheduled at some point at the request of the parties.

2            We had proposed that we set a specific time,

3    certainly a window of time, and that it would be best to have

4    the process similar to the Northern District of California

5    patent rules in which the parties will first exchange a list

6    of the materials that are in dispute, followed quickly by an

7    exchange of a proposed definition of those terms in dispute

8    and then cross briefing on what is the appropriate

9    construction.

10           All of that, of course, to be done before the

11   Court has the hearing.

12           We note that more recently in the middle of last

13   month, the Court has now set out a new proposed draft

14   Scheduling Order.  In that we noted that one of the main

15   differences that the Court now does set a specific time, date

16   for a claim construction proceeding.  We believe that is

17   appropriate.

18           We would ask that you go a little further and

19   also set out the kind of procedure we've set so there's a

20   schedule for identifying the terms, the proposed definitions

21   that are in dispute and the briefing leading up to that.

22           The other things in which the parties differ have

23   to do with things like a protective order.  Both parties

24   agree we need one.  We haven't agreed on the terms.  We

25   submitted a draft to the defendants.  We haven't heard back

8

1    from them yet.

2            Likewise on electronic discovery, how that should

3    be conducted.  We requested -- we submitted a proposal on

4    that.  We asked that we get something back from them.  It's

5    been about a month and we haven't heard back.

6            In terms of the actual conduct of the trial and

7    whether there should be a severance or separate trials on any

8    issues, I guess Roche's position is that it's a bit premature

9    for that issue to be resolved at this time.

10           We believe that the infringement issues are going

11   to show -- are going to turn out to be extremely similar

12   between all the defendants so there may not be a need for

13   severing.

14           I think discovery will shed a lot of light on

15   what the appropriate way to conduct the trial is.  We are

16   hopeful that the Court will schedule a trial for like the

17   middle of next year, say 18 months from now.

18           I'm told the defendants are suggesting that it be

19   put off a little bit longer than that.

20           At this point, I just got a note from my

21   co-counsel saying that we have not yet provided a draft of

22   the protective order to the other side.  I can assure the

23   Court and them that we're working on one and will submit it

24   to them.  We have discussed it with them.  We have not

25   reached any agreement on the protective order yet.

9

1          I would be happy to address any questions your

2     honor has.

3          Those are the main areas of disagreement.

4          THE COURT:  I was wondering how you viewed the

5     case.  Why are so many people in one case?

6          MR. BOEHNEN:  I think both because we do believe

7     that all of the infringement, validity issues are going to be

8     extremely common among them.  We do know now that Nova has

9     raised a counterclaim, which is a little different.

10         Lifescan argues that it has evidence of a

11    validity issue which is unique to itself.  Although, even as

12    to that if, in fact, they have evidence showing the patent is

13    invalid, that's an issue that will be common for all of

14    them.

15         We believe that the issues as among all of the

16    defendants are going to be very, very similar on both

17    infringement as well as validity.

18         THE COURT:  That's what you think because you are

19    the plaintiff.  If I got sued and you sued five other people,

20    I'm worried about me.

21         MR. BOEHNEN:  Of course.

22         THE COURT:  That's why they take the approach

23    they do in these cases.  It seems to me it's convenient to

24    bunch everybody.  When you get sued it's kind of like

25    threatening, so you want to put together your best defense.

10

1          I'm more focused on how -- I understand your

2     interests.  I understand why you want to proceed the way you

3     do.  And I know what you're view of their interests is.

4          Having had a couple of these cases, I know that

5     their interests are individualized because they are really

6     angry at Roche in getting sued.

7          What they want to do -- so we have to work toward

8     understanding.  You can understand that?

9          MR. BOEHNEN:  I've been in their situation, your

10    Honor.  I've been in a case where were there were multiple

11    defendants and I represented one of them.

12          THE COURT:  Right.

13          So what we have to do is come up with something

14    that facilitates judicial economy so we're not spending a lot

15    of peoples money foolishly, and at the same time, how can we

16    recognize their individuality and that anger they have at

17    Roche because they want to have at them, that invalidity

18    stuff.

19          What would you suggest as the plaintiff?

20          MR. BOEHNEN:  I think that there's a difference

21    in how discovery is approached on the validity issues where

22    they are, if you will, offensively attacking Roche on the

23    validity of the patent and issues that may relate to that.

24    So I want discovery and handling of things like infringement

25    and damages which are truly separate for each of the

11

```
 1   defendants.

 2              I think it's not unreasonable.

 3              THE COURT:  You recognize because you mentioned

 4   this to me that they have different products.

 5              MR. BOEHNEN:  Yes.

 6              THE COURT:  In preparation for this case, do you

 7   have one expert on infringement against all their products or

 8   do you have a couple of experts depending on the defendant

 9   and the product?

10              MR. BOEHNEN:  I can't say that definitely at this

11   stage.  I anticipate that we will have one expert in dealing

12   with all the infringing products.

13              Having said that, the fact remains that each of

14   them will be producing documents individually on

15   infringement, each of them.

16              THE COURT:  You have an expert that's looked at

17   their products and say they all infringed?

18              MR. BOEHNEN:  I'm not sure I'll be our testifying

19   expert.  We have certainly studied each of their individual

20   products and concluded that they infringe.

21              THE COURT:  You don't know if you consulted

22   someone -- is this an internal opinion of Roche or kind of

23   talked to somebody else?

24              This is like discovery.

25              MR. BOEHNEN:  It's discovery in the work product,
```

12

```
 1   your Honor.  I'm uncomfortable about it.

 2              THE COURT:  I get to ask.

 3              I'm not trying to put you on the spot.  I'm

 4   trying to understand.  I want to give you a fair opportunity

 5   so I understand where you're coming from, and then I'm going

 6   to give them a fair opportunity.  Then I'm going to come up

 7   with a bad solution.

 8              MR. BOEHNEN:  I hope you also understand because

 9   it's actually --

10              THE COURT:  You have an expert that you're

11   satisfied with?

12              MR. BOEHNEN:  Because the question asks about

13   work product, I have to be a little circumspect in my answer.

14              THE COURT:  How about 30 days?

15              MR. BOEHNEN:  In any event, before filing the

16   lawsuit Roche certainly made a very careful inspection of

17   each of the products in relation to the claims of the patent

18   in suit, okay.

19              These claims don't turn upon, you know, trying to

20   reverse engineer software or hardware.

21              These claims cover things that can be viewed and

22   observed as an outside user.  We have don't that.

23              Roche has very carefully reached the belief that

24   each of the defendants infringes the patent-in-suit.

25              Having said that, it's true when we go to take
```

13

1    discovery, each defendant is going to be producing its own

2    documents, its own witnesses and its own damages evidence.

3    They may have a concern about wanting to minimize the scope

4    of that discovery.

5           I know that in a situation like this there has

6    been a three tier protective order so that when they are

7    conducting, for example, producing evidence on invalidity,

8    that's going to be something they all have an interest in.

9           If anybody convinces the Court that the patent is

10   invalid, it inures to all of them.  When they go to take

11   discovery from Roche on validity, it's going to be something

12   that goes to all of them.  We believe that discovery of that

13   kind should be coordinated and consolidated.

14          Likewise, when the Court is dealing with

15   discovery motions, my guess is that there is likely to be a

16   few discovery disputes here, we ought to be having -- that

17   issue ought to be addressed one time by the Court and that

18   all of the defendants ought to be presenting one view, one

19   set of arguments to the Court that can be dealt with on

20   discovery motions to minimize the Court's burden.

21          When we get to claim construction, there are

22   going to be issues of law to be decided and decided once.

23   They are going to apply to everybody.  They should be

24   presented once so they are only decided once.

25          All of that is not only going to create

14

1    efficiency for the Court, minimize burdens on the parties,

2    but also prevent any kind of inconsistent decisions.

3              THE COURT:  Tell me this.  If you are ranking

4    from a business point of view the defendants, who would be

5    one, two?

6              MR. BOEHNEN:  Well, there are different ways of

7    looking at that.

8              THE COURT:  Give me one.

9              MR. BOEHNEN:  One way is market share.  Clearly

10   Lifescan is the largest competitor in -- in this whole market

11   of market share.

12             THE COURT:  Lifescan.

13             MR. BOEHNEN:  Lifescan has greater market share

14   than anybody else in this room.

15             THE COURT:  Who's next?

16             MR. BOEHNEN:  Some kind of a level of competition

17   between the parties, probably Abbott comes next.  Abbott has

18   a separate lawsuit that is now on going against Roche and

19   Bayer and others out in California.

20             That case has been going for a couple of years.

21   It involves Abbott patents.  Bayer probably comes in third in

22   terms of market share.

23             Bayer does have a separate business relationship

24   with Roche.  So, there's a different dynamic that occurs

25   between those parties.

15

1          Then I would say Nova and DDI, Diagnostic Devices
2    probably comes in fourth and fifth.
3          THE COURT:  Thank you.
4          Lifescan, it sounds like he wants you the most,
5    maybe or maybe Abbott.
6          MR. HUTZ:  I'll address some of the things from
7    Lifescan's perspective.
8          I suspect some of the other defendants are going
9    to have points of view that are consistent or may differ.
10          As far as the discovery end of things, starting
11    with the first item that was raised, one of our main
12    concerns, I think others have done the math.  If you take a
13    look at the way they structured their request, if we're given
14    for example, 25 interrogatories that we're suppose to
15    coordinate and collectively put together, that's roughly
16    about five interrogatories per party.  We've got different
17    contentions.  We have different issues.
18          Some of the defendants have raised counterclaims
19    of infringement.
20          Realistically, it doesn't seem possible that
21    we're going to be able to effectively present interrogatories
22    in the way that doesn't hamstring our abilities.
23          With respect to depositions, it's a similar issue
24    in terms of their proposal.  They are basically saying that
25    we, the defendants, have to collectively join together and

16

1   get a total of ten depositions, which is roughly two

2   depositions per party.

3           We don't feel that's workable.  That's one of the

4   reasons why our counter proposal was numbers of hours.

5           I think all of the defendants are committed to

6   trying to coordinate things as much as possible, do not

7   duplicate depositions and the like.  We're all professional

8   enough that we don't want to waste our clients time and

9   money.

10          But in terms of having to effectively pool our

11  resources to take that small number of depositions, that's

12  not going to be workable.

13          They have another proposal of five outside

14  non-third party witnesses, total.

15          Now, our defense -- at least one of our defenses

16  is going to be public use on sale more than one year before

17  their earliest date, which is more than likely going to

18  depend on a certain number.

19          On third party depositions, we don't know exactly

20  how many.  I'm pretty confident it's ultimately going to be

21  more than five.

22          As far as the discovery end of things, it's

23  pretty clear at least in our minds that while Roche is

24  talking about efficiencies and the like, they are basically

25  hamstringing all of the defendants.

17

1    We did not ask to be joined together in a single

2 action.  If these had been filed against us separately, we

3 would have had the ability to have the full number of

4 interrogatories and depositions that the Federal Rules

5 allow.

6    We don't feel it's fair, at least from Lifescan's

7 perspective by having to coordinate with the defendants.

8    We are committed to trying to coordinate as much

9 as possible.  But from that standpoint, we think it's going

10 to be very difficult and ultimately we're going to be short

11 changed.

12    As far as Markman is concerned, our view is not

13 so much the procedure they're proposing with Markman, but the

14 actual Markman date.  They are proposing starting the Markman

15 process in, I believe, April or May of this year.

16    I think our fundamental point is that and I think

17 why we looked at the dates that your Honor had on his

18 Scheduling Order, is that it's much more appropriate to

19 handle Markman later in the proceedings after there has been

20 fact discovery, at least around the time that the expert

21 discovery is taking place, rather than having something that

22 is so early that is really not going to be workable at least

23 from Lifescan's standpoint.

24    Those are some of the basic things that I feel we

25 needed to I address.

18

1          I would like to turn it over to some of the other

2     defendants because they have other points of view that are

3     related to the disputes between the parties that they can

4     address from their perspective.

5          THE COURT:  All right.

6          MR. SHERRY:  Steve Sherry for Abbott Diabetes,

7     your Honor.

8          I assume that's the order that you wanted to go

9     in, your Honor?

10          THE COURT:  Sounds like it.

11          MR. SHERRY:  I talked to my brother counsel about

12     this.  We're all seasoned litigators and we've been through

13     this before.  We're going to do everything that we can to

14     coordinate, not to waste the Court's time and our client's

15     money.  The Court has a sense of what's happened so far.

16          This is not perhaps your usual multi-defendant

17     case.  We've got a unique relationship between the plaintiff

18     and one defendant.  We've got fierce competitors in this

19     market, all lined up on one side, but not really aligned.

20          It's going to take a Herculean effort to protect

21     every ones individual interest and allow the parties to

22     cooperate.

23          We're not dealing with a situation here where

24     everybody is selling a commodity.  We're not all selling

25     oranges that are accused of infringement.  We all have our

19

1    individual product lines, our own developmental histories and

2    developmental story.

3             We're going to have a unique perspective which is

4    unique from a claim construction standpoint, prior art

5    standpoint.

6             I think your Honor was right when you gave us a

7    prelude to one of your questions, when you said isn't it

8    important to make sure that the discovery schedule allows the

9    defendants to pursue their individual interests as well as

10   there collective interests.  I think that's true.

11            I want to echo the comments that were made about

12   the deposition schedule.  I think we have to look at a

13   certain number of hours.

14            Granted that there is going to be some individual

15   that we're all going to want to depose.  Perhaps your Honor

16   will come up with a solution, maybe setting out for us a

17   block of time to take the inventors, maybe a block of time to

18   take the prosecution lawyers who were involved.

19            But beyond that, we don't want to hamstring other

20   parties too much, allow Lifescan to take whatever third party

21   depositions it needs to take, and by alloting hours, it

22   maximizes flexibility.  We can allocate those hours the way

23   we think we need to.

24            Having said that, I just want to put in a very

25   brief word that perhaps we can avoid all of this by simply

20

1    granting Abbott's motions to stay and see what the Patent

2    Office does.

3                THE COURT:  Not likely.

4                MR. SHERRY:  I had to give it a shot, your Honor.

5                THE COURT:  You filed it.  I get it.

6                MR. SHERRY:  One of the proposals that the

7    plaintiffs had were to commence deposition discovery as soon

8    as possible, even perhaps before the document exchange has

9    been completed.

10               I believe your Honor's standing order -- the form

11   of the Scheduling Order that the Court has on the website

12   suggested that perhaps those depositions should commence

13   after the document discovery and interrogatories are

14   complete.  I endorse that view.  That's a wise approach given

15   how long it's going to take to get all this done and to keep

16   everybody coordinated in the case.

17               THE COURT:  All right.  Thank you.

18               MS. KREVANS:  Rachel Krevans for Bayer.

19               I will try not to repeat everything.

20               I want to say specifically for the Court why this

21   group of defendants, although we're very determined to be

22   cooperative and to coordinate everything we can, that we're

23   going to be challenged to act in concert.  It's not just that

24   we are competitors in the marketplace, very fierce

25   competitors, but there is another lawsuit pending on closely

1   related technology right now in Federal District Court for

2   the Northern district of California involving most of the

3   same parties in this case.

4           In the other lawsuit Abbott is the plaintiff,

5   Roche is one of the defendants along with Bayer and Nova.

6           We're now in the position of trying to cooperate

7   in this defense while we are simultaneously litigating about

8   closely related technology.

9           THE COURT:  I wouldn't trust them.

10          MS. KREVANS:  Professional courtesy and trust

11  don't always go hand in hand.

12          To be very specific, for example, Mr. Wilsey who

13  is the inventor of the two patents that Roche is asserting in

14  this case has been a witness in the other case.

15          I expect he'll be on Roche's trial witness list

16  in the other case and has been asserted as a prior inventor

17  defense, in a validity defense asserted by Roche in the other

18  case.

19          That kind of really challenging overlap and the

20  interest among the defendants in this case means that it's

21  even more important than usual to respect the fact that the

22  defendants may out of necessity have different defense

23  strategies which will make it extraordinarily unfair to say

24  to them you must share among all five of you only ten

25  depositions of the plaintiff.

1          A couple of other things.

2          We've seen in the other case that although, the

3    plaintiff in that case, Abbott had said early on it's going

4    to be easy to do together because all the issues are going to

5    be the same.  We're all going to have one infringement

6    expert.

7          We got to the point in that case of bringing a

8    Summary Judgement motion of non-infringement on the defense

9    side.  Different defendants brought different motions.  The

10   products are in fact different.  They don't lineup in the

11   same way which affects each set of patents.

12         Again, the defendants are going to have to pursue

13   strategies including claim construction and validity

14   strategies that are the best defense for their products.

15   It's not fair to deprive them of the opportunity to do that.

16         This last thing hasn't been mentioned.  I want to

17   point out that the plaintiff in their proposal to you tried

18   to create some symmetry in this sort of number of depositions

19   per side on other parties to make it look as though the

20   defendants are getting more depositions than they really

21   are.

22         There are entities listed in this case, and as

23   far as we know one of them is simply a holding company.  It

24   doesn't have any role at all in this case.

25         When the plaintiffs proposed that defendants as a

23

1     group have ten depositions on each plaintiff party, they are

2     not really proposing that we get twenty depositions that

3     matter in this case.  They are proposing that we get ten.

4                    I think that's something else to keep in mind.

5     The real discovery and the things that we're going to care

6     about here have to do with the activities of Roche.

7                    It's important not to get lead astray by the

8     notion that there are 20 depos or 50 interrogatories.

9     Really, on the core issues in the case, they are proposing

10    ten depositions.

11                   Thank you, your Honor.

12                   THE COURT:  Thank you.

13                   I guess we're going to hear from Nova.

14                   MR. BADKE:  We're a little different from the

15    other defendants, your Honor.  We're number four in the

16    market.

17                   We brought counterclaims of patent infringement.

18    We also brought some other claims including misappropriation

19    of trade secrets based on our allegation of confidential

20    information concerning Roche's technology was disclosed to

21    them by our clients in 1999.

22                   We have our own almost like a self-standing case

23    by ourselves.  In some ways we're entitled to at least as

24    much discovery as Roche is.  We're in the position of a

25    plaintiff ourselves.

24

1        We will work with the other defendants and try to

2   come up with some limits at least initially to see how things

3   go.

4        The other point I wanted to make as well.  We at

5   least will be claiming prior inventorship.  Lifescan will be

6   claiming prior inventorship.  There's going to be a lot of

7   discovery that centers around that and an awful lot of

8   depositions.

9        It certainly cannot be done within the limit that

10  Roche is advocating here.  That's all I need to say.

11       THE COURT:  Thank you.

12       MR. BALICK:  I don't have anything to add with

13  regard to my clients.

14       THE COURT:  All right.

15       MR. BOEHNEN:  May I respond just briefly?

16       THE COURT:  Sure.

17       MR. BOEHNEN:  The problem is between wanting to

18  differentiate issues that they have in common versus issues

19  they have separate.  To the extent that there are issues

20  which are separate, we have always said that we would be

21  willing to recognize and try to help craft a solution that

22  allows them to conduct discovery on unique issues

23  separately.

24       For example, Nova's counterclaim.  That is

25  something that was served after we had a conference call with

1    all of the defendants and had submitted our proposed

2    Scheduling Order.

3            Nova now has this separate issue.  Fine.  We can

4    deal with that and provide some mechanism for separate

5    discovery.  But the fact that there maybe a justification to

6    structure separate discovery on separate issues should not

7    detract and hinder the need to have coordinated and

8    consolidated discovery on the issues that are the same.

9            Let's take as a concrete example our inventors.

10   We got Doctor X as a inventor.  Under the defendants'

11   approach, they can depose this guy or woman, you know, five

12   times.  They have a total of twelve hundred hours of

13   depositions that would be allocated to them collectively

14   under their approach.

15           I remember back to the times in the late 80's and

16   early 90's when I would have an inventor who would be deposed

17   by somebody for a week, a week at a time and come back and

18   depose him two or three more times.

19           The Federal Rules tried to change that.  One of

20   Roche's goal in trying to structure discovery now is so that

21   when our employees are deposed or when admissions requests

22   are sent to us, that it's going to be dealt with one time and

23   finished.

24           That doesn't mean that, you know, party A is

25   going to depose Doctor X one time for seven hours, ten hours

26

1    and then a month later party B is going to be allowed to go

2    over that transcript in micro-detail and come back and say,

3    oh, well, this question wasn't asked before.  They are going

4    to take the same issue and pursue it on a further appeal a

5    third time and fourth time.

6              Our objective here is to try to have a situation

7    where our company and our employees are deposed and discovery

8    is taken one time on one issue and then that information will

9    be made available to all of the parties.

10             Although, it's fine for us here at the outset for

11   the defendants here at the outset.  We're all professionals

12   and we don't want to duplicate our efforts.  We've all been

13   in enough situations to know how far that goes and how far it

14   doesn't go.

15             It is a heck of a lot fairer when the Court has

16   ordered the defendants to conduct coordinated discovery.  On

17   any given issue, you ought to say to them -- you ought to

18   say, if you defendants are going to be deposing an inventor

19   X, one party, one lawyer is going to be appointed as the lead

20   lawyer to take that deposition.  They won't like that.

21             I can't blame them.  I didn't like that when I

22   was in that situation.

23             THE COURT:  I was going to say you wouldn't like

24   it.  You wouldn't have liked it.  That's not a good

25   procedure.  I hear what you're saying.  Try my solution.

1          I think I'm ready to give you my solution.

2          MR. BOEHNEN:  Thank you, your Honor.

3          THE COURT:  First of all, the case is driven --

4     you're all in this predicament or circumstance for different

5     reasons because Roche decided to get everybody collectively.

6     Maybe some of you infringe.  Maybe they have a bad patent.  I

7     don't know any of that yet.

8          You seem like a cordial group.  You're obviously

9     seasoned.  You've probably heard a lot of this before.  You

10    probably experienced a lot of this before to varying degrees

11    of delight depending on where you were.

12         What I'm going to do in the first instance is to

13    separate issues.  So this case today is only about

14    infringement and counterclaims properly brought to an

15    infringement charge.

16         We're going to push out validity.  We're going to

17    push out damages and anything else that might be in the case

18    right now.

19         With respect to infringement, we're going to have

20    discovery that is respectful of the individualized interests

21    of the defendants as well as the interests of the plaintiff.

22         I think to achieve that we're going to have an

23    infringement document production for a short period of time.

24         Let me say this.  I'm not going to dictate times

25    to you today because you all understand that anything I do

28

1    would be completely arbitrary which is really bad.

2              You'll be better trying to come to that time

3    frame in negotiation with each other back and forth.  If you

4    can't agree, then I can weigh in, either slice the decision

5    or pick a side.  We're going to get that done within the next

6    week.

7              Document production, that will be on infringement

8    and any counterclaim brought on infringement which in my mind

9    would include prior inventorship.

10              Validity would be like an on-sale bar.  If you

11   have any questions where it falls in that matrix, you can

12   just ask me and I will be happy to draft it if you have a

13   question in one of those areas for you.

14              You get beyond document production and then you

15   now have the problem of the rest of the mechanics of

16   discovery and how that gets divided up.  It's going to get

17   divided up by the defendants.  The defendants will have --

18   let's take depositions as a example.

19              You will each come in negotiation with the

20   plaintiff to a common hour allotment.  I'm throwing out a

21   number which is irrelevant.  Let's say each defendant will in

22   the common hour allotment -- will be allowed ten hours of

23   deposition testimony.  You'll be charged against that on an

24   issue that's common to all of you.

25              And this is not the same for each or it could be

29

1   the same for each.  You'll each have an individual hour

2   allotment.

3               If you are going to take a take, let's say, the

4   inventor's deposition, then each party named as a defendant

5   would have ten common hours and five individualized hours for

6   a total of 15 hours for the inventor and anyone else that you

7   are going to depose.  In each case you'll have the

8   opportunity to break out.  It will have to be consecutive.

9               The exercise of the hours on any witness will

10  have to be consecutive unless agreed to, be separated by the

11  parties.

12              The same thing with requests for admissions.

13  There will be common allocations that everybody participates

14  in and then individualized.

15              Am I making this clear or is too confusing?

16              Let's say the inventor is being deposed.  All

17  parties have ten hours with the inventor.  You divide that

18  any way you want and then you have two hours of

19  individualized.

20              In the common hours, somebody may take eight of

21  them.  That's up to you.  If you only got 15 minutes of the

22  common hours, you have your two hours of individualized

23  allotment.  That's going to be much reduced from the common

24  hours.

25              I'm not very good at math.  My math skills ended

30

1    at seven grade when Sister Mary started with algebra.

2           You can finish this out with the ratio from the

3    plaintiff.  You will select the lead and they will respond to

4    your selection and presentation of hours, request for

5    admissions, number of interrogatories, common and

6    individualized allotment.  I'm not getting a good feeling

7    here that you understand.

8           Is it so simple or is it so dumb?  Either is okay

9    to tell me.  I understand you haven't real locked in the

10   numbers.  I have no idea.  That's up to you.

11          MR. BOEHNEN:  So far you talked then about the

12   numbers that go for the defendant.

13          THE COURT:  Right.

14          MR. BOEHNEN:  My question would be, of course, do

15   you have something in mind as to how that would be structured

16   for both?

17          THE COURT:  I think what I said is that I'm going

18   to let them open with a proposal to you, then you're going to

19   have a proposal that you think is responsive and fair.  If it

20   isn't agreed upon, then I'll pick a side.

21          I have no idea about numbers.  I have an idea

22   about procedure.  I assume you're going to want some common

23   time and some individualized time against individualized

24   defendants.

25          MR. BOEHNEN:  Okay.

31

1          Thank you, your Honor.

2          THE COURT:  Does that make sense?  Maybe not.

3          MR. BOEHNEN:  I'll think about it.

4          THE COURT:  You may want more time against Abbott

5     than you want against Lifescan.

6          MR. BOEHNEN:  My point is, it seems to me from

7     our perspective on conducting discovery on infringement, that

8     virtually all of it is individualized.  All of it is

9     individual to each individual defendant.  I'm not sure how

10    the concept of common versus individual applies when Roche is

11    conducting its own discovery against the defendants.

12         THE COURT:  Then you may only set individualized

13    hours and waive common allotment because we're going to take

14    the same procedure through validity and damages.  We've got

15    to start out with a basic principle.  It's got to be modified

16    to the issue.

17         MR. BOEHNEN:  It could be common in the sense

18    that there are two plaintiff entities.  It could be common to

19    that.

20         THE COURT:  Again, I'm thinking common more so to

21    the defendants.

22         MR. DRUTCHAS:  Claim construction discovery.  You

23    said -- is that something that you considered within the

24    infringement validity or validity aspect of the case?

25         THE COURT:  Claim construction, talk to the

32

1    defendants.  They would like to have separate claim

2    construction for the validity assertions.  Of course you

3    would like to have it for infringement.  I'm a purest.

4         What I understand claim construction is you read

5    the words and you tell people what they mean to the level of

6    a person of ordinary skill in the art.  It's never suppose to

7    be -- I used to cheat early on when Markman came on and had

8    experts.  I realized that was important.

9         Back to the purity of claim construction.  I

10   could do that today by reading the patents, the words.  It's

11   not going to be individualized to an issue.

12        Claim construction will occur.  It will have to

13   occur after the fact discovery on infringement because you're

14   going to need claim construction.  That claim construction

15   will be the same and applied to the invalidity.

16        They may have some strategies that they will

17   implement in trying to affect the claim construction,

18   although it's going to take place during the infringement

19   face.

20        MR. DRUTCHAS:  The reason I asked is that

21   normally the inventor, the appropriate topics in which an

22   inventor is deposed on claim construction is what his

23   understanding of the terms that were used in his patent, et

24   cetera.

25        On validity, typically, if you have chosen the

33

1   inventor as an example of infringement discovery, one, I'm

2   not sure whether that is something that you necessarily

3   anticipate occurring during infringement discovery?

4          THE COURT:  Say that again.  You have an

5   inventor.

6          MR. DRUTCHAS:  Validity and possibly claim

7   construction.  It's not normally something I consider past an

8   infringement deposition.

9          THE COURT:  Say it again.

10         MR. DRUTCHAS:  When an inventor is being deposed

11  by a party, it's usually an issue of claim construction or a

12  validity issue arising out of a patent.

13         Normally, infringement discovery is directed more

14  towards the defendants' devices, whether the claims read on

15  defendants' devices, that sort of thing.

16         MR. BOEHNEN:  If I  could try, your Honor?

17         It's a broad question.  We're starting with

18  infringement.

19         Normally, when you think of the discovery that a

20  defendant -- an accused infringer is going to take of the

21  patentee in relation to infringement, that's usually expert

22  discovery.  Either you've got stuff that the lawyers have

23  done so it's work product, attorney client privilege or

24  evidence that's going to be presented as part of the expert

25  discovery reading the claims.  There isn't really much to my

1    way of thinking.

2              I would like to hear of the defendants thoughts.

3    There is not really much fact discovery that defendants take

4    of a patentee on the infringement issue.

5              I would be interested in hearing what discovery

6    the defendants think they are going to be taking on

7    infringement, recognizing as you have said, we're not doing

8    validity, we're not doing claim construction, we're not doing

9    damages.  It's only infringement.  It's not clear to me.

10             THE COURT:  Expert discovery.

11             MR. BOEHNEN:  Is expert discovery on the board

12   too, right then?

13             THE COURT:  The way it typically works --

14             MR. SHERRY:  Unless I misunderstood, your Honor,

15   I thought you said that prior inventorship was going to be an

16   issue that would be addressed in this first phase.  That

17   wasn't in the validity bucket.  You carved that out and put

18   in the first phase.

19             THE COURT:  Yes.

20             MR. SHERRY:  In terms of prior inventorship

21   between when the inventor came up with his concept and what

22   they did to reduce it to practice, conception and reduction

23   to practice.  Those are factual issues that the inventor is

24   going to be asked about.  That's going to form the issue,

25   prior invention -- as long as prior invention is in this

35

1    first phase and there is a factual area that the inventor is

2    going to be deposed upon.  I'll defer to co-counsel.

3         MS. KREVANS:  I would like to suggest that

4    perhaps if you flip the order and did validity first before

5    infringement.  This would actually make a lot more sense.

6    Some of these issues when the inventor gets deposed goes

7    away.

8         We depose him in the validity phase.  And to the

9    extent his testimony is relevant, we've already got it.  At

10   least two of the defendants -- I know Bayer and Lifescan are

11   quite convinced that there is a piece of real live prior art

12   out there that we could quickly put a case together on.  If

13   we did validity first and end this case and not do

14   infringement and not have to do discovery.

15        MR. BOEHNEN:  Getting back to Mr. Sherry's

16   comments.  Part of our confusion and part of my concern are

17   from Abbott's comments that the prior inventorship issue is

18   more commonly thought of as a validity challenge.  If all of

19   a sudden their whole focus is going to be on discovery,

20   whether our inventor, prior inventors, to show that they

21   supposedly have somebody who came up with this before our

22   inventor did.  That gets into things that are very different

23   than the public use on-sale bar.

24        Now, you're going back into R&D records that have

25   never been made public on both sides.  The idea of trying to,

36

1    in effect, have a priority dispute, is like a mini

2    interference proceeding.

3            At this stage, at least from our perspective,

4    none of the defendants have yet indicated to us that they

5    have a prior invention dispute.  They have indicated that

6    there is this prior use, public sale, on sale issue which is

7    part of validity.  This is the first time that there has been

8    a suggestion that there maybe a priority of invention dispute

9    here.

10           Unless and until one of the defendants suggests

11   that there is in fact a priority of invention dispute, we

12   ought to stop wasting a lot of time on that and get back to

13   focusing on the infringement issues.

14           THE COURT:  You can't take invalidity ahead of

15   infringement from my point of view because you can't knock

16   out a patent that you don't infringe even though the Federal

17   Circuit says -- at least one panel says they would like you

18   to do infringement, validity.

19           Again, I revert back.  I would never get an

20   invalidity ruling and then find out there's infringement.

21           You've got to understand you infringe first

22   before you can go and attempt to knock out a patent.

23           I understand from the practical point of view

24   what you're saying.

25           Let me go back to infringement discovery.  I

1   don't care if you depose the inventor or not.  I can tell you

2   what the process is going to be.  There's going to be

3   infringement discovery, document production.  Then there's

4   going to be the typical interrogatory requests for admission

5   and deposition discovery.  There will be a closed date of

6   fact discovery on infringement.

7           There will then be claim construction for which

8   you can at a Markman Hearing offer expert testimony or you

9   can in the context of what we do here, pre-Markman briefing

10  -- prehearing briefing, you can present your expert by

11  declaration and then we'll have a Markman Hearing.

12          I'll construe the claims that are disputed or

13  choose not to construe what has been asserted as a disputed

14  claim.  After that you will then go to your infringement

15  experts with my claim construction.  You'll get your expert

16  reports done and your expert depositions.  Then we're going

17  to come back and we're going to decide.

18          If you want to, I'll take your views on whether

19  you want them to immediately proceed to dispositive motion

20  briefing or if you want to proceed to trial or if you want to

21  then have infringement behind you from a pretrial view and

22  move on to the invalidity discovery which will go the same

23  way, except your time frame maybe a tiny bit extended because

24  of the need potentially for third party discovery.

25          And then you'll come to an end of that process

38

1    and you'll either have a trial or you'll have a dispositive

2    motion practice either on infringement and invalidity.  You

3    have infringement and then validity, whatever is left, we'll

4    go to trial on.

5            MR. BOEHNEN:  To my understanding, you're leaving

6    open the possibility of trial being either on all issues at

7    the end on validity and infringement, infringement trial

8    first and then followed by discovery and trial?

9            THE COURT:  Whether the defendants find out if

10   they infringe by a trial or whether they decide that they

11   want their validity case fully discovered, the infringement

12   and validity trials will be separate trials.

13           MR. BOEHNEN:  Okay.

14           MR. DRUTCHAS:  Damages then would be after that?

15           THE COURT:  Damages aren't even in the case

16   today.

17           It will be long after the trials.  I think you

18   might settle once you get the verdict and even an appeal.

19           MR. DRUTCHAS:  Can you give us an overall scope

20   of times that you have in mind for conducting the

21   infringement phase and then the claim construction?

22           THE COURT:  There will be a trial in 14 to 18

23   months from your filing date, which I think was November.

24           MR. DRUTCHAS:  That's on infringement?

25           THE COURT:  Infringement and validity.  When you

39

```
 1    sit down you're going to have this negotiation with your

 2    friends from the other side.  Pick dates that work for all of

 3    you.  If you can't agree, I'll pick the dates.

 4              You filed in November of '07.  You should be in

 5    trial sometime in mid '09.

 6              MR. DRUTCHAS:  If I'm understanding correctly,

 7    kind of in three phases of activity?

 8              The infringement activity, claim construction

 9    activity, validity activity, at the end of that we're going

10    to have, one way or another, a trial that is going to resolve

11    all of those issues?

12              THE COURT:  Two trials.

13              MR. DRUTCHAS:  First one on infringement?

14              THE COURT:  I don't try infringement and validity

15    at the same time unless somebody convinces me that I lost my

16    mind.

17              I just had one and what did I get?  A hung jury.

18    Juries don't get that.

19              MR. DRUTCHAS:  We're going to have an

20    infringement set of activities, a Markman set of activities,

21    a validity set of activities and then trials that will

22    resolve all of the issues at that point?

23              THE COURT:  Of infringement and validity.

24              MR. DRUTCHAS:  These trials should be completed

25    within 16 months from the filing date?
```

40

1          THE COURT:  Middle of '09.  It's a rough time

2  frame I'm giving you.  You can negotiate with your friends of

3  when that would be -- whether you think it ought to be May or

4  July.

5          Am I right about that?  That's about the middle

6  of '09.

7          MR. DRUTCHAS:  We'll be able to schedule a

8  conference with the defendants the last week to flush out the

9  details.

10          MS. KREVANS:  Prior invention discovery is to

11  take place during the infringement phase?

12          THE COURT:  Whatever you want.

13          I guess I would approach the case differently.

14  I'm not going to comment on it.  You put it where you want.

15  Since you have that you can put it in the infringement or the

16  validity phase.

17          MR. BADKE:  Misappropriation of trade secrets and

18  breach of contract, that can be wherever we want?

19          THE COURT:  In either set of discovery.  Where it

20  works best for you and in conjunction with your friends.

21          Have you ever had the experience of where a

22  inventor thought they invented something, it did a certain

23  thing and the judge told them it didn't?  What the Federal

24  Circuit said, I don't understand that having had that

25  experience.  Maybe I don't understand.  You want the inventor

41

1    one time, right?

2              MR. BOEHNEN:  Yes.

3              THE COURT:  I'll let you all work it out.

4              Have you completed all your discovery in

5    California?

6              MR. BADKE:  All fact discovery has been completed

7    in California.

8              MS. KREVANS:  On the products that are at issue

9    in that case, your Honor.  We don't what products are at

10   issue in this case and how much overlaps.

11             THE COURT:  The suggestion is that I would be

12   okay if anybody wanted to bring that discovery here is

13   premature.

14             MS. KREVANS:  We don't know yet.

15             THE COURT:  I'm trying to save money for your

16   clients.  If things are already settled, that's okay.  I

17   understand.

18             Is there anything else?

19             You have those broad dates.  I'm going to be

20   looking for a proposed order.  You can set any disputes in

21   the proposed order.  Today is the 8th.  I was thinking the

22   15th.  We'll make it the 22nd.  That will give you enough

23   time.  I'll have it for a week or two and then we'll get it

24   entered.

25             MR. DRUTCHAS:  There is one housekeeping matter.

42

1    DDI, one of the defendants has raised a personal jurisdiction

2    motion.

3              THE COURT:  I saw that.

4              MR. DRUTCHAS:  We have served some discovery

5    requests at this stage to go to the personal jurisdiction

6    issue.  Responses are due on February 28.

7              What we would like to do is to have an

8    opportunity to take some jurisdictional discovery before we

9    respond to that.  We have some responses that are due.  We

10   would like perhaps a deposition or two if it turns out to be

11   necessary.  We would like a response in opposition to their

12   motion to be stayed pending that.

13             THE COURT:  Mr. Balick will agree to that.

14             MR. BALICK:  I would like a chance to consult

15   with my folks before I admit to anything.  I don't think

16   jurisdictional discovery -- on this kind of a motion I don't

17   know the extent and the scope of discovery they are looking

18   for. I would like to have a chance to look at that.

19             THE COURT:  Try to work it out if you can.

20             Put an order in place on what you agree to, and

21   what you can't agree to, submit a proposed order with

22   disputes.  I'll circle one or the other.

23             MR. DRUTCHAS:  Thank you, your Honor.

24             MR. BALICK:  Thank you, your Honor.

25             THE COURT:  Anything else?

43

1          MR. SHERRY:  Nothing further from Abbott, your

2   Honor.

3          THE COURT: Mr. Hutz is so clever, he's the number

4   one target.  He's pointing over to Abbott all the time.  Talk

5   to the guy from Abbott.

6          Anything else from defendants, seriously?

7          MR. HUTZ:  Nothing from us, your Honor.

8          THE COURT:  Thank you very much.

9          We'll be in recess.

10      (Proceedings concluded at 11:17 o'clock a.m.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Kinsman, Denise
_____

**Subject:** Activity in Case 1:07-cv-00753-JJF Roche Diagnostics Operations Inc. et al v. Abbott Diabetes Care
Incorporated et al Transcript

_____

**From:** ded_nefreply@ded.uscourts.gov [mailto:ded_nefreply@ded.uscourts.gov]
**Sent:** Monday, February 11, 2008 1:37 PM
**To:** ded_ecf@ded.uscourts.gov
**Subject:** Activity in Case 1:07-cv-00753-JJF Roche Diagnostics Operations Inc. et al v. Abbott Diabetes Care
Incorporated et al Transcript

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT
RESPOND to this e-mail because the mail box is unattended.**
**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* You may view the filed documents once without
charge. To avoid later charges, download a copy of each document during this first viewing.**

**U.S. District Court**

**District of Delaware**

**Notice of Electronic Filing**

The following transaction was entered on 2/11/2008 at 2:37 PM EST and filed on 2/11/2008
**Case Name:**        Roche Diagnostics Operations Inc. et al v. Abbott Diabetes Care Incorporated et al
**Case Number:**     1:07-cv-753
**Filer:**
**Document Number:** 70(No document attached)

**Docket Text:**
TRANSCRIPT of scheduling conference held on 2/8/08 before Judge Farnan. Court Reporter: Dibbs.
(Transcript on file in Clerk's Office) (bkb)

**1:07-cv-753 Notice has been electronically mailed to:**
Steven J. Balick sbalick@ashby-geddes.com, dfioravanti@ashby-geddes.com, jday@ashby-geddes.com,
lmaguire@ashby-geddes.com, mkipp@ashby-geddes.com, nlopez@ashby-geddes.com,
rgamory@ashby-geddes.com, tlydon@ashby-geddes.com
Mary W. Bourke mbourke@cblh.com, dhallowell@cblh.com, dkt@cblh.com, kboots@cblh.com
Frederick L. Cottrell, III cottrell@rlf.com
Philip A. Rovner provner@potteranderson.com, iplitigation@potteranderson.com,
mstackel@potteranderson.com, nmcmenamin@potteranderson.com
John W. Shaw jshaw@ycst.com, corpcal@ycst.com, corporate@ycst.com
Rodger Dallery Smith, II rdsefiling@mnat.com
Anne Shea Gaza gaza@rlf.com, garvey@rlf.com
Lauren E. Maguire lmaguire@ashby-geddes.com
Jeffrey Thomas Castellano jcastellano@ycst.com
Jeffrey P. Armstrong armstrongj@mbhb.com
Sherri L. Oslick oslick@mbhb.com
Paula S. Fritsch fritsch@mbhb.com

2/11/2008

Nicole Keenan keenan@mbhb.com
Gary E. Hood hood@mbhb.com
Grantland G. Drutchas drutchas@mbhb.com
Daniel A. Boehnen boehnen@mbhb.com
Daniel P. Muino DMuino@mofo.com
Jason R. Bartlett jasonbartlett@mofo.com
Parisa Jorjani pjorjani@mofo.com
Joseph M. Casino jcasino@arelaw.com
Kenneth P. George kgeorge@arelaw.com
Rachel Krevans rkrevans@mofo.com
Wesley E. Overson woverson@mofo.com
Nancy Tinsley nancy.tinsley@roche.com

**1:07-cv-753 Notice has been delivered by other means to:**

# EXHIBIT I

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ROCHE DIAGNOSTICS OPERATIONS, INC.,<br>and CORANGE INTERNATIONAL LIMITED, | ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 07-753-JJF |
| v. | ) ) ) | |
| ABBOTT DIABETES CARE, INCORPORATED<br>and ABBOTT DIABETES CARE SALES<br>CORPORATION,<br>BAYER HEALTHCARE, LLC,<br>DIAGNOSTICS DEVICES, INC.,<br>LIFESCAN, INCORPORATED, and<br>NOVA BIOMEDICAL CORPORATION, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## LIFESCAN, INC.'S RULE 26(a)(1) INITIAL DISCLOSURES – PHASE I

Pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure, Defendant/Counter-Plaintiff LifeScan, Inc. ("LifeScan") makes the following initial disclosures based on information reasonably available to it at this time that is relevant to Phase I of the case, which the Court has limited to infringement and prior invention under the Scheduling Order (D.I. 147). The Initial Disclosures will be supplemented as to the issues in Phase II at an appropriate time under the Scheduling Order. Continuing investigation and discovery may alter these disclosures. LifeScan reserves the right to supplement its initial disclosures to the extent that pertinent information is developed through further investigation.

By making these disclosures, LifeScan does not represent that it is identifying every document, tangible thing, or witness possibly relevant to this lawsuit. Nor does LifeScan waive its right to object to production of any document or tangible thing disclosed on the basis of any privilege, the work product doctrine, relevancy, undue burden, or any other valid objection.

Rather, LifeScan's disclosures represent a good faith effort to identify information it reasonably believes is discoverable and which may be used to support its claims or defenses (unless solely for impeachment) as required by Rule 26(a)(1).

Finally, LifeScan's disclosures are made without waiving, in any way, (1) the right to object on the grounds of competency, privilege, relevancy and materiality, hearsay, or any other proper ground, to the use of any such information, for any purpose, in whole or in part, in any subsequent proceeding in this action or any other action; and (2) the right to object on any and all grounds, at any time, to any other discovery request or proceeding involving or relating to the subject matter of these disclosures.

All of the following disclosures are made subject to the above objections and qualifications.

A.    INDIVIDUALS – Fed. R. Civ. P. 26(a)(1)(A)

Upon information and belief, the following people may have discoverable information pursuant to Rule 26(a)(1)(A). LifeScan does not give its consent for any party to this lawsuit (or its counsel or agents) to directly contact any current or former employee of LifeScan and/or Inverness Medical Ltd. listed below. Any efforts to contact such individuals should be made through the undersigned counsel.

1.    **Carrie Arndt**
      LifeScan, Inc.
      1000 Gibraltar Drive
      Milpitas, California 95035

      Ms. Arndt is an employee of LifeScan and may possess information relating to

      project management and product development of one or more of LifeScan's

      Ultra® products.

2

2. **Christopher Davis**
   LifeScan, Inc.
   1000 Gibraltar Drive
   Milpitas, California 95035

   Mr. Davis is an employee of LifeScan and may possess information relating to the

   design of one or more of LifeScan's Ultra® products.

3. **Robert Marshall**
   LifeScan Scotland, Ltd.
   Beechwood Business Park
   Inverness, IV2 3DP, United Kingdom

   Mr. Leach is an employee of LifeScan and may possess information relating to

   the design and development of one or more of LifeScan's Ultra® products.

4. **Oliver Davies**
   SureSensors Limited
   Fanellan, Kiltarlity
   Inverness-shire, IV4 7JP, United Kingdom

   Mr. Davies is a former employee of LifeScan and may possess information

   relating to the design and development of one or more of LifeScan's Ultra®

   products.

5. **Geoff Hall**
   SureSensors Limited
   Fanellan, Kiltarlity
   Inverness-shire, IV4 7JP, United Kingdom

   Mr. Hall is a former employee of LifeScan and may possess information relating

   to the design and development of one or more of LifeScan's Ultra® products.

6. **Jerome McAleer**
   Stirling Medical Innovations
   Scion House, Unit 10
   Stirling University Innovation Park
   Stirling, FK9 4NF, United Kingdom

3

Mr. McAleer is a former employee of Inverness Medical Ltd. and may possess

information relating to the design and development of one or more of LifeScan's

Ultra® products.

**7.  David Scott**
Stirling Medical Innovations
Scion House, Unit 10
Stirling University Innovation Park
Stirling, FK9 4NF, United Kingdom

Mr. Scott is a former employee of Inverness Medical Ltd. and may possess

information relating to the design and development of one or more of LifeScan's

Ultra® products.

**8.  Thomas Q. Henry, Esq.**
Woodard, Emhardt, Moriarty, McNett & Henry LLP
111 Monument Circle, Suite 3700
Indianapolis, Indiana 46204-5137

Mr. Henry possesses information relating at least to the prosecution of the

patents-in-suit.

**9.  Nigel A. Surridge**
Roche Diagnostics Corporation
P.O. Box 50457
Indianapolis, Indiana

Mr. Surridge possesses information relating at least to the patents-in-suit.

**10.  Christopher D. Wilsey**
Roche Diagnostics Corporation
P.O. Box 50457
Indianapolis, Indiana

Mr. Wilsey possesses information relating at least to the patents-in-suit and

inventions of same.

LifeScan expressly reserves the right to identify and call as witnesses additional persons

if LifeScan learns during the course of its investigation and discovery in this action that such

4

persons have knowledge of discoverable information that LifeScan may use to support its claims or defenses.

B.    DOCUMENTS – Fed. R. Civ. P. 26(a)(1)(B)

LifeScan has in its possession, custody, or control documents that are relevant to the disputed claims. These documents relate to the design, development, structure, operation, and use of one or more of LifeScan's Ultra® products. These documents are located at LifeScan's offices at 1000 Gibraltar Drive, Milpitas, California 95035 and Beechwood Park North, Inverness, IV2 3ED, United Kingdom.

C.    DAMAGES - Fed. R. Civ. P. 26(a)(1)(C)

The damages-related disclosures governed by Rule 26(a)(1)(C) cannot reasonably be made at this early stage, other than to incorporate by reference the damages disclosures enumerated in the prayer for relief set forth in LifeScan's Answer to the Amended Complaint, Affirmative Defenses, and Counterclaim. Moreover, a disclosure in response to this category is premature in that damages will be addressed, if at all, in Phase III of this case pursuant to the Schedule Order entered by the Court (D.I. 147).

LifeScan also seeks its costs, disbursements, and reasonable attorneys' fees pursuant to 35 U.S.C. § 285. The amount of those fees and costs is not yet known.

D.    INSURANCE - Fed. R. Civ. P. 26(a)(1)(D)

LifeScan is not aware of any applicable insurance agreements as described in Rule 26(a)(1)(D).

5

CONNOLLY BOVE LODGE & HUTZ LLP

/s/ Mary W. Bourke
Mary W. Bourke (#2356)
R. Eric Hutz (#2702)
Kristen Healey Cramer (#4512)
1007 N. Orange Street
P.O. Box 2207
Wilmington, DE 19899
(302) 658-9141

*Attorneys for Defendant/Counter-Plaintiff*
*LifeScan, Inc.*

May 1, 2008

6

## CERTIFICATE OF SERVICE

I, Mary W. Bourke, Esquire, hereby certify that on May 1, 2008, I caused copies

of the foregoing document to be served on the following counsel in the manner indicated:

**BY HAND AND EMAIL**
Philip A. Rovner
Potter Anderson & Corroon, LLP
1313 N. Market St.
Hercules Plaza, 6th Flr.
P.O. Box 951
Wilmington, DE 19899-0951
*Attorneys for Plaintiffs Roche Diagnostic*
*Operations, Inc. and Corange*
*International Limited*

**BY EMAIL**
Daniel A. Boehnen
Grantland G. Drutchas
Gary E. Hood
Nicole Keenan
Paula S. Fritsch
Sherri L. Oslick
Jeffrey P. Armstrong
McDonnell Boehnen Hulbert &
Berghoff LLP
300 South Wacker Drive
Chicago, IL 60606
*Attorneys for Plaintiffs Roche*
*Diagnostic Operations, Inc. and*
*Corange International Limited*

**BY HAND AND EMAIL**
John W. Shaw
Jeffrey Thomas Castellano
Young, Conaway, Stargatt & Taylor
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391
*Attorneys for Defendant Bayer*
*Healthcare, LLC*

**BY HAND AND EMAIL**
Rodger Dallery Smith, II
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
*Attorneys for Defendant Nova*
*Biomedical Corporation*

**BY HAND AND EMAIL**
Frederick L. Cottrell, III
Anne Shea Gaza
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE 19899
*Attorneys for Defendants Abbott Diabetes*
*Care Inc. and Abbott Diabetes Care*
*Sales Corporation.*

**BY HAND AND EMAIL**
Steven J. Balick
John G. Day
Lauren E. Maguire
Ashby & Geddes
500 Delaware Avenue
P.O. Box 1150
Wilmington, DE 19899
*Attorneys for Defendant Diagnostic*
*Devices Inc.*

**BY EMAIL**
Wesley E. Overson
Rachel Krevans
Jason R. Bartlett
Parisa Jorjani
Daniel P. Muino
Morrisson & Foerster LLP
425 Market Street
San Francisco, CA 94105-2482
*Attorneys for Defendant Bayer*
*Healthcare, LLC*

**BY EMAIL**
Kenneth P. George
Joseph M. Casino
Amster Rothstein & Ebenstein LLP
90 Park Avenue
New York, NY 10016
*Attorneys for Defendant Bayer*
*Healthcare, LLC*

**BY EMAIL**
Nancy Tinsley
Roche Diagnostics
9115 Hague Road
Indianapolis, IN 46250
*Attorney for Plaintiff Roche Diagnostics*
*Operations, Inc. and Corange*
*International Limited*

**BY EMAIL**
Kirk A. Vander Leest
Edward A. Mas II
Stephen F. Sherry
James M. Hafertepe
Merle S. Elliott
Matthew A. Anderson
McAndrews, Held & Malloy, Ltd.
500 West Madison Street, Suite 3400
Chicago, IL 60661
*Attorneys for Defendants Abbott Diabetes*
*Care Inc. and Abbott Diabetes Care*
*Sales Corporation*

**BY EMAIL**
Bradford J. Badke
Sona De
Michael Kahn
Ropes & Gray LLP
1211 Avenue of the Americas
New York, NY 10036-8704
*Attorneys for Defendant Nova*
*Biomedical Corporation*

**BY EMAIL**
Ashley L. Ellis
Michael G. Adams
Parker Poe Adams & Bernstein LLP
Three Wachovia Center, Suite 3000
401 South Tryon Street
Charlotte, NC 28202
*Attorneys for Defendant Diagnostic*
*Devices Inc.*

8

CONNOLLY BOVE LODGE & HUTZ LLP

/s/ Mary W. Bourke
Mary W. Bourke (#2356)
R. Eric Hutz (#2702)
Kristen Healey Cramer (#4512)
The Nemours Building
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899-1347

*Attorneys for Defendant LifeScan Incorporated*

9