## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

ROCHE DIAGNOSTICS OPERATIONS INC. )
and CORANGE INTERNATIONAL LTD., )
                             )
       Plaintiffs, )
                             )
     v. )
                             )
ABBOTT DIABETES CARE, INC., )    C.A. No. 07-753-JJF
ABBOTT DIABETES CARE SALES CORP., )
BAYER HEALTHCARE LLC, )
DIAGNOSTIC DEVICES INC., )
LIFESCAN INC., and )
NOVA BIOMEDICAL CORP., )
                             )
       Defendants. )

## ROCHE'S THIRD NOTICE OF DEPOSITION TO
## NOVA BIOMEDICAL CORP. PURSUANT TO RULE 30(b)(6)

PLEASE TAKE NOTICE that, pursuant to Rule 30(b)(6) of the Federal Rules of Civil

Procedure, Plaintiffs Roche Diagnostics Operations Inc. and Corange International Ltd. (referred

to collectively as "Roche") shall take the deposition of Nova Biomedical Corp. ("Nova") through

the person(s) designated by Nova to testify on its behalf with respect to the subjects set forth in

Exhibit A. The deposition will commence at 9:30 a.m. on September 22, 2008 at the offices of

Potter Anderson & Corroon LLP, Hercules Plaza, 1313 North Market Street, Wilmington,

Delaware 19801, or at a time and place to be mutually agreed upon by counsel. The deposition

will be recorded by stenographic means, may be videotaped, and will take place before a Notary

Public or other officer duly authorized to administer oaths and will continue from day to day

until concluded.

You are invited to attend and cross-examine.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Daniel A. Boehnen
Grantland G. Drutchas
Gary E. Hood
Nicole A. Keenan
Paula S. Fritsch
Richard A. Machonkin
Jeffrey P. Armstrong
McDonnell Boehnen Hulbert & Berghoff LLP
300 South Wacker Drive
Chicago, IL 60606
(312) 913-0001

By: /s/ Philip A. Rovner
     Philip A. Rovner (#3215)
     Hercules Plaza
     P.O. Box 951
     Wilmington, DE 19899-0951
     (302) 984-6000
     provner@potteranderson.com

*Attorney for Plaintiffs*
*Roche Diagnostics Operations, Inc., and*
*Corange International Limited*

Dated: August 26, 2008
880103

## EXHIBIT A

Pursuant to Rule 30(b)(6), you have a duty to designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf. To the extent more than one person is designated, you are requested to set out the matters on which each person designated will testify. The persons designated must testify about information known or reasonably available to the organization.

For the purposes of the topics set forth below, the following definitions shall apply.

### Definitions

1.      The term "Nova" shall mean Nova Biomedical Corp. and/or any company name under which Nova is doing or has done business; its predecessors, parents, subsidiaries, divisions, licensees, franchisees, assigns or other related business entities; its directors, officers, employees, agents, independent contractors, distributors, jobbers, salespersons, interns, sales representatives and attorneys; and each person acting or purporting to act on its or their behalf or under its or their control.

2.      The terms "person" or "persons" shall mean natural persons (including but not limited to those employed by Nova) and all other legally cognizable entities, including (without limitation) governmental entities, agencies, officers, departments or affiliates of the United States of America or any other governmental entity; commercial entities such as corporations, foundations, partnerships and proprietorships; associations; organization; and groups of natural persons.

3.      The term "communication" shall mean any disclosure, transmission or exchange of information from one person or entity to another, including without limitation by personal

meeting, telephone, facsimile, radio, telegraph, electronic mail, teleconference, writing or other means.

4.     The terms "concerning," "referring to" and "relating to" shall be interpreted so as to encompass the liberal scope of discovery set forth in Rule 26(b) of the Federal Rules of Civil Procedure, and shall mean for example and without limitation, refer, relate, analyze, concern, constitute, contain, contradict, describe, discuss, evaluate, evidence, pertain, reflect, refute or support.

5.     The term "including" shall be construed broadly, and shall encompass "including but not limited to" or "including without limitation."

6.     The terms "and," "or" and "and/or" shall be construed disjunctively or conjunctively as necessary in order to bring within the scope of the request all responses which otherwise might be construed to be outside its scope.

7.     The phrase "the 146 patent" shall mean U.S. Pat. No. 7,276,146.

8.     The phrase "the 147 patent" shall mean U.S. Pat. No. 7,276,147.

9.     The term "patents-in-suit" shall mean the 146 patent and the 147 patent, either collectively or individually.

10.     The phrase "Electrochemical Sensor" shall mean any sensor device capable of being used to determine the concentration of glucose in a blood sample.  The Electrochemical Sensors includes (without limitation) test strips or meters or equivalent devices used alone or in combination to determine the concentration of glucose in a blood sample.

11.     The phrase "Accused Products" shall mean any Electrochemical Sensor that Nova has made (or had made), used, sold, offered for sale in or imported into the United States that (i) uses a blood sample volume of 1 $\mu$l or less, and (ii) provides a readout of the glucose

concentration of the blood sample within 10 seconds or less after the blood sample is applied to the Sensor. For example, such devices include, without limitation, the BD Logic Blood Glucose Monitor, the BD Paradigm Link Blood Glucose Monitor, the BD Latitude Blood Glucose Monitor, the NovaMax Blood Glucose Monitor, the Nova Max Link Blood Glucose Monitor, BD Test Strips and NovaMax Test Strips.

12.     The phrase "Accused Meters" shall mean any meter that Nova has made (or had made), used, sold, offered for sale in or imported into the United States that (i) uses a test strip having with blood sample volume of 1 µl or less, and (ii) provides a readout of the glucose concentration of the blood sample within 10 seconds or less after the blood sample is applied to the test strip. For example, such meters include, without limitation, the BD Logic Blood Glucose Monitor, the BD Paradigm Link Blood Glucose Monitor, the BD Latitude Blood Glucose Monitor, the NovaMax Blood Glucose Monitor, and the Nova Max Link Blood Glucose Monitor.

13.     The phrase "Accused Test Strips" shall mean any test strip that Nova has made (or had made), used, sold, offered for sale in or imported into the United States that (i) uses a blood sample volume of 1 µl or less, and (ii) is used with a meter that provides a readout of the glucose concentration of the blood sample within 10 seconds or less after the blood sample is applied to the test strip. For example, such strips include, without limitation, BD Test Strips and NovaMax Test Strips.

14.     The term "end-user" shall mean any person that has purchased, used, or is using any Accused Products exclusive of dealers, distributors, and retailers.

### Topics

1.     The research, design and/or development of any of the Accused Products.

2.     The structure, function, features, use and operation of each of the Accused

3

Products.

3.      The operational process steps that occur in each of the Accused Products when used as directed in product literature and technical descriptions prepared for and/or provided by Nova, including but not limited to the timing of each of the operational process steps.

4.      The structure, components or parts contained in, or used or considered for use in any of the Accused Products.

5.      All uses for any of the Accused Products other than determining the concentration of glucose in a blood sample by, *inter alia*, applying a blood sample to an Accused Test Strip that has been inserted into an Accused Meter.

6.      The steps taken by an end-user to prepare and/or introduce an Accused Test Strip into an Accused Meter.

7.      The manner in which and/or the process by which a blood sample is transported into and/or through the Accused Test Strips, including but not limited to (i) the forces that cause such transport; (ii) the physical features and structural characteristics that permit such transport; and (iii) the physical locations through which and to which such transport occurs.

8.      The dimensions of any chamber(s) or channel(s) in the Accused Test Strips used to transport or hold a blood sample during use and the physical structures that define those dimensions.

9.      The volume of blood sample that can be held by each of the Accused Test Strips.

10.     The reagent applied to each of the Accused Test Strips, including, without limitation: (i) any enzymes, mediators, and/or other chemicals used in such reagents, (ii) the physical location of such reagents in the strips, (iii) whether the blood sample comes into contact with the reagent during use and, if so, whether the reagent is solubilized or hydrated when the

4

blood sample comes into contact with the reagent and how quickly such solubilization or hydration occurs; (iv) how the reagent is applied to the strips during manufacture; and (v) the fluid content of the reagent on the strip.

11.    The design, structure, operation and physical location of the electrodes for each of the Accused Test Strips.

12.    The reactions that take place in the Accused Products when a blood sample is applied to the Accused Test Strips, including but not limited to:  (i) all electrical reactions that take place; (ii) all chemical reactions that take place on the strip; and (iii) all electrochemical reactions that take place on the strip

13.    The function of the mediator, including whether, during use, a reduced form of the mediator is produced and whether the mediator is reversible.

14.    All processes by which the Accused Products detect any blood sample in the Accused Test Strips, including but not limited to:  (i) whether any potential is applied across the working and counter or reference electrodes; (ii) whether the Accused Products use a rise in current in determining whether a blood sample is present; (iii) whether any applied potential is discontinued after a blood sample is detected; and (iv) whether any electrooxidation at the working electrode occurs after any applied potential is discontinued.

15.    The timing of any readouts supplied by the Accused Products vis-à-vis (i) when the blood sample is applied and/or (ii) when the blood sample is detected in the Accused Test Strips.

16.    The hardware used for each of the Accused Meters.

17.    The software used for each of the Accused Meters.

18.    The process by which each of the Accused Meters converts current readings into

5

glucose concentration levels, including but not limited to any algorithms used.

19.     Whether, during use, the Accused Products apply a potential to the electrodes or cause any other changes in voltage or current.

20.     Whether any human interaction is required after the blood sample is applied for the Accused Products: (i) to detect the blood sample in the Accused Test Strip; (ii) to perform any of the chemical or electrochemical reactions; and (iii) to provide a readout of glucose concentration within any given period of time.

21.     The role of the Accused Meters in: (i) detecting the blood sample in the Accused Test Strip; (ii) initiating or performing any of the electrochemical reactions in the Accused Test Strip; and (iii) providing a readout of glucose concentration within any given period of time.

22.     Product literature and technical descriptions concerning, referring to or relating to any of the Accused Products prepared for and/or provided to health care providers, end-users, dealers, distributors, and/or retailers, including but not limited to instruction manuals, operators manuals, owners manuals, user guides, user manuals, repair manuals, services manuals or care manuals, including drafts or other versions not distributed to health care providers, end-users, dealers, distributors, and/or retailers.

23.     Any submissions, filings or communications with any state or federal regulatory agency relating to any of the Accused Products, including but not limited to 510(k) Application Nos. k030531, k041478, k022580, k022581, k023219, k070255, and k040603.

24.     Any comparison or comparative tests involving any of the Accused Products.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, Philip A. Rovner, hereby certify that on August 26, 2008, the within document

was filed with the Clerk of the Court using CM/ECF which will send notification of such

filing(s) to the following; that the document was served on the following counsel as

indicated; and that the document is available for viewing and downloading from

CM/ECF.

**BY HAND DELIVERY AND E-MAIL**

Steven J. Balick, Esq.
John G. Day, Esq.
Ashby & Geddes
500 Delaware Avenue
8th Floor
P.O. Box 1150
Wilmington, DE 19899
sbalick@ashby-geddes.com
jday@ashby-geddes.com

Mary W. Bourke, Esq.
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 N. Orange Street
Wilmington, DE 19801
mbourke@cblh.com

**BY HAND DELIVERY AND E-MAIL**

John W. Shaw, Esq.
Jeffrey T. Castellano, Esq.
Young Conaway Stargatt & Taylor, LLP
1000 West Street, 17th Floor
Wilmington, DE 19801
jshaw@ycst.com
jcastellano@ycst.com

Rodger D. Smith, Esq.
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
rsmith@mnat.com

I hereby certify that on August 26, 2008 the foregoing document was sent by E-mail to the following non-registered participants:

Bradford J. Badke, Esq.
Sona De, Esq.
Michael Kahn, Esq.
Simon Fitzpatrick, Esq.
Ropes & Gray LLP
1211 Avenue of the Americas
New York, NY 10036-8704
Jim.badke@ropesgray.com
Sona.de@ropesray.com
Michael.kahn@ropesgray.com
Simon.fitzpatrick@ropesgray.com

Wesley E. Overson, Esq.
Rachel Krevans, Esq.
Jason R. Bartlett, Esq.
Parisa Jorjani, Esq.
Daniel P. Muino, Esq.
Morrison & Foerster LLP
425 Market Street
San Francisco, CA 94105-2482
woverson@mofo.com
rkrevans@mofo.com
jasonbartlett@mofo.com
pjorjani@mofo.com
dmuino@mofo.com

Kenneth P. George, Esq.
Joseph M. Casino, Esq.
Amster, Rothstein & Ebenstein LLP
90 Park Avenue
New York, NY 10016
kgeorge@arelaw.com
jcasino@arelaw.com

Michael G. Adams, Esq.
Ashley L. Ellis, Esq.
Parker Poe Adams & Bernstein LLP
Three Wachovia Center, Suite 3000
401 South Tryon Street
Charlotte, NC 28202
mikeadams@parkerpoe.com
ashleyellis@parkerpoe.com

/s/ Philip A. Rovner
Philip A. Rovner (#3215)
Potter Anderson & Corroon LLP
Hercules Plaza
P.O. Box 951
Wilmington, Delaware 19899
(302) 984-6000
E-mail: provner@potteranderson.com

-2-