# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROCHE DIAGNOSTICS OPERATIONS, INC., and CORANGE INTERNATIONAL LTD., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 07-753-JJF |
| ABBOTT DIABETES CARE, INC., ABBOTT DIABETES CARE SALES CORP., BAYER HEALTHCARE, LLC, DIAGNOSTIC DEVICES, INC., LIFESCAN, INC., and NOVA BIOMEDICAL CORP., | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## NOTICE OF RULE 30(b)(6) DEPOSITION AND SUBPOENA DIRECTED TO SANVITA, INC.

PLEASE TAKE NOTICE that, pursuant to Rules 30(b)(2) and 45 of the Federal Rules of Civil Procedure, Plaintiffs Roche Diagnostics Operations Inc. and Corange International Ltd. (referred to collectively as "Roche") has served the attached subpoena on Sanvita, Inc. ("Sanvita") in the form appended hereto. Roche will take the deposition of Sanvita through one or more of its officers, directors, managing agents, or other persons who consent to testify on its behalf and who are most knowledgeable with respect to the deposition topics set forth in "Schedule 'B'" at the time and place as set forth below.

Said deposition will be taken on September 16, 2008 at 9:00 a.m., at the Sheraton Sand Key Resort, 1160 Gulf Boulevard, Clearwater, FL 33767, or at such other time and place as may be agreed to by the parties. The deposition will continue until completed as provided in the Federal Rules of Civil Procedure. The deposition will be recorded stenographically and/or by videotape. You are invited to attend and cross-examine.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Daniel A. Boehnen
Grantland G. Drutchas
Sean M . Sullivan
McDonnell Boehnen Hulbert & Berghoff LLP
300 South Wacker Drive
Chicago, IL 60606
(312) 913-0001

By: _____

    Philip A. Rovner (#3215)
    Hercules Plaza
    P.O. Box 951
    Wilmington, DE 19899-0951
    (302) 984-6000
    provner@potteranderson.com

Dated:  August 28, 2008
880312

*Attorney for Plaintiffs*
*Roche Diagnostics Operations, Inc.,  and*
*Corange International Limited*

AO88 (Rev. 12/07) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT
### for the Middle District of Florida

Roche Diagnostics Operations, Inc., and
Corange International Limited,
Plaintiffs,

**SUBPOENA IN A CIVIL CASE**

V.

Abbott Diabetes Care, Inc. Abbott Diabetes Care Sales Corp., Case Number:[1]  Civil Action No. 07-753-JJF
Bayer Healthcare, LLC, Diagnostics Devices, Inc., LifeScan,                      Pending in United States
Inc., and Nova Biomedical Corp.,                                                 District Court for the District
Defendants.                                                                      of Delaware

TO:  Sanvita, Inc.
c/o T. Cole Peterson
14255 49th Street North
Suite 301
Clearwater, Florida  33762

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to
testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition
in the above case.

| PLACE OF DEPOSITION<br>Sheraton Sand Key Resort, 1160 Gulf Boulevard, Clearwater, Florida 33767-<br>2799. The topics for deposition are set forth in Schedule B attached hereto.  The<br>deposition may be recorded by stenographic, audio, audiovisual, video, and/or<br>real-time computer methods and means. | DATE AND TIME<br>9/16/2008  9:00 a.m. |
|---|---|

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the
place, date, and time specified below (list documents or objects):
See the attached Schedule A.

| PLACE<br>Sheraton Sand Key Resort, 1160 Gulf Boulevard, Clearwater, Florida  33767-<br>2799 | DATE AND TIME<br>9/9/2008  10:00 a.m. |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers,
directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the
matters on which the person will testify. Federal Rule of Civil Procedure 30(b)(6).

American LegalNet, Inc.
www.FormsWorkflow.com

AO88 (Rev. 12/07) Subpoena in a Civil Case

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
|  | 8-22-08 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Sean M. Sullivan, Attorney for Plaintiffs Roche Diagnostics Operations, Inc., and Corange International Limited, McDonnell Boehnen Hulbert & Berghoff LLP, 300 S. Wacker Dr., Suite 3100, Chicago, IL 60606 - Tel: 312.935.2356

(See Federal Rule of Civil Procedure 45 (c), (d), and (e), on next page)

¹ If action is pending in district other than district of issuance, state district under case number.

American LegalNet, Inc.
www.FormsWorkflow.com

AO88 (Rev. 12/07) Subpoena in a Civil Case (Page 2)

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

Federal Rule of Civil Procedure 45 (c), (d), and (e), as amended on December 1, 2007:

(c) PROTECTING A PERSON SUBJECT TO A SUBPOENA.
(1) Avoiding Undue Burden or Expense; Sanctions. A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.
(2) Command to Produce Materials or Permit Inspection.
(A) Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
(B) Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.
(3) Quashing or Modifying a Subpoena.
(A) When Required. On timely motion, the issuing court must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) When Permitted. To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information;
(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or
(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial
(C) Specifying Conditions as an Alternative. In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

(d) DUTIES IN RESPONDING TO A SUBPOENA.
(1) Producing Documents or Electronically Stored Information. These procedures apply to producing documents or electronically stored information:
(A) Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
(B) Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
(C) Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.
(D) Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
(2) Claiming Privilege or Protection.
(A) Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
(B) Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT.
The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

American LegalNet, Inc.
www.FormsWorkflow.com

**SCHEDULE A**
**TO THE SUBPOENA OF SANVITA, INC.**

*RULE 30(b)(2) AND RULE 45 DOCUMENT REQUESTS*

**DEFINITIONS**

For the purposes of responding to the following requests for production of documents and things and a better understanding the "Topics", the following definitions shall apply:

1. The term "RDOI" shall mean Roche Diagnostics Operations, Inc. and/or any company name under which RDOI is doing or has done business; its predecessors, parents, subsidiaries, divisions, licensees, franchisees, assigns or other related business entities; its directors, officers, employees, agents, distributors, jobbers, salespersons, interns, sales representatives and attorneys; and each person acting or purporting to act on its or their behalf or under its or their control.

2. The term "Corange" shall mean Corange International Limited and/or any company name under which Corange is doing or has done business; its predecessors, parents, subsidiaries, divisions, licensees, franchisees, assigns or other related business entities; its directors, officers, employees, agents, distributors, jobbers, salespersons, interns, sales representatives and attorneys; and each person acting or purporting to act on its or their behalf or under its or their control.

3. The term "Plaintiffs" and/or "Roche" shall mean RDOI and Corange.

4. The terms "Sanvita," "you" and "your" shall mean Sanvita, Inc., and/or any company name under which Sanvita is doing or has done business; its predecessors, parents, subsidiaries, divisions, licensees, franchisees, assigns or other related business entities; its directors, officers, employees, agents, distributors, jobbers, salespersons, interns, sales

representatives and attorneys; and each person acting or purporting to act on its or their behalf or under its or their control.

  5.  The terms "Becton Dickinson" and "BD," shall mean Becton, Dickinson and Company and/or any company name under which BD is doing or has done business; its predecessors, parents, subsidiaries, divisions, licensees, franchisees, assigns or other related business entities; its directors, officers, employees, agents, distributors, jobbers, salespersons, interns, sales representatives and attorneys; and each person acting or purporting to act on its or their behalf or under its or their control.

  6.  The term "Nova" shall mean Nova Biomedical Corporation and/or any company name under which Nova is doing or has done business; its predecessors, parents, subsidiaries, divisions, licensees, franchisees, assigns or other related business entities; its directors, officers, employees, agents, distributors, jobbers, salespersons, interns, sales representatives and attorneys; and each person acting or purporting to act on its or their behalf or under its or their control.

  7.  The terms "person" or "persons" shall mean natural persons (including but not limited to those employed by Sanvita) and all other legally cognizable entities, including (without limitation) governmental entities, agencies, officers, departments or affiliates of the United States of America or any other governmental entity; commercial entities such as corporations, foundations, partnerships and proprietorships; associations; organization; and groups of natural persons.

  8.  The term "date" shall mean the exact day, month and year, if ascertainable, or, if not, Sanvita's closest approximation (including but not limited to an identification of relationship to other events).

2

9.     The term "document(s)" shall have the broadest meaning accorded to it by Rule 34 of the Federal Rules of Civil Procedure, and shall include, without limitation, any recording in any tangible form of any information, whether handwritten, typed, printed, stored on computer disks, tapes or databases (including electronic files and e-mail) or otherwise reproduced. "Document" also includes all drafts and copies that are not identical to the original.

10.    The term "thing(s)" shall have the broadest meaning accorded to it by Rule 34 of the Federal Rules of Civil Procedure, and shall include, without limitation, every kind of physical specimen or tangible item, other than a document, in the possession, custody or control of BD.

11.    The term "communication" shall mean any disclosure, transmission or exchange of information from one person or entity to another, including without limitation by personal meeting, telephone, facsimile, radio, telegraph, electronic mail, teleconference, writing or other means.

12.    The terms "concerning," "referring to" and "relating to" shall be interpreted so as to encompass the liberal scope of discovery set forth in Rule 26(b) of the Federal Rules of Civil Procedure, and shall mean for example and without limitation, refer, relate, analyze, concern, constitute, contain, contradict, describe, discuss, evaluate, evidence, pertain, reflect, refute or support.

13.    The term "including" shall be construed broadly, and shall encompass "including but not limited to" or "including without limitation."

14.    The terms "and," "or" and "and/or" shall be construed disjunctively or conjunctively as necessary in order to bring within the scope of the request all responses which otherwise might be construed to be outside its scope.

3

15.    The phrase "Electrochemical Sensor" shall mean any sensor device capable of being used to determine the concentration of glucose in a blood sample. The Electrochemical Sensors includes (without limitation) test strips or meters or equivalent devices used alone or in combination to determine the concentration of glucose in a blood sample.

16.    The phrase "Identified Sanvita Sensors" shall mean any Electrochemical Sensor that Sanvita has made (or had made), used, sold, offered for sale in or imported into the United States that (i) uses a blood sample volume of 1 µl or less, and (ii) provides a readout of the glucose concentration of the blood sample within 10 seconds or less after the blood sample is applied to the Sensor. For example, such devices include, without limitation, the BD Logic Blood Glucose Monitor, the BD Paradigm Link Blood Glucose Monitor, the BD Latitude Blood Glucose Monitor, the NovaMax Blood Glucose Monitor, the Nova Max Link Blood Glucose Monitor, BD Test Strips and NovaMax Test Strips.

17.    The term "customer" shall mean any person that has purchased, used, or is using any Identified Sanvita Sensors exclusive of dealers, distributors, and retailers.

4

## INSTRUCTIONS

1.      The original and each non-identical copy of each document or other tangible thing requested herein which is in your possession, custody or control, or that of any of your agents, attorneys, consultants, advisors, associates, accountants, employees, representatives or investigators, is to be produced, including company, department, and personal files.  If the original or original carbon copy is not in your possession, custody or control, or that of your agents, attorneys, consultants, advisors, associates, accountants, employees, representatives or investigators, a full, clear, legible copy thereof is to be produced.

2.      If any portion of any document request refers to documents of which Sanvita is aware or which were at one time within Sanvita's possession, custody, or control, but which are not now subject to Sanvita's possession, custody, or control, Sanvita is requested to identify such documents in a manner sufficient to describe such documents, together with the name, telephone number, and address of the person last known by Sanvita to have been in possession, custody, or control of such documents.

3.      Where an objection is made to a document request, state all grounds upon which your objection is based and produce the requested documents to the fullest extent possible subject to any stated objection.

4.      If the attorney-client privilege or work product immunity is asserted as to any document or thing, or if any document or thing is not produced in full, produce the document or thing to the extent the request for production is not objected to, and, in so doing, state the following:

(a)      the specific ground(s) for not producing the document or thing in full;

(b)      the bases for such a claim of privilege or immunity, including a statement

of sufficient relevant facts and circumstances that will explain the basis of the claim of privilege and will permit the adjudication of the propriety of the claim of privilege; and

(c)    fully identify the information, document, or material for which such privilege or immunity is asserted, including the type of any document or thing withheld (e.g., letter, memorandum, etc.); the subject matter of any document, communication, or other information withheld; the date of recording, creating or otherwise preparing any document or thing; the name of any document or thing; the name, address and title of its author or creator; the name, address and title of each person (other than stenographic or clerical assistants) participating in the preparation or creation of any document or thing; the name, address and title of each addressee, recipient and/or custodian of the document or thing, or a copy of the document or thing; the name, address and title of each person to whom the contents of the information or any portion thereof have heretofore been communicated by copy, exhibition, reading or summarization; and the location(s) where, if at all, information has been redacted on any document or thing thus produced.

5.    If you maintain that any document or thing requested has been destroyed, lost or is otherwise unavailable, set forth the contents of the document or thing, the location of any copies of the document or thing, the date of its destruction and the name of the person who ordered or authorized its destruction (if any).

6.    If, after exercising due diligence, Sanvita is unable to determine the existence of any documents or things falling within a document request, Sanvita shall so state in its written response required by Rules 34 and 45 of the Federal Rules of Civil Procedure.

7.    No document request or subpart hereof shall be construed as a limitation on any other document request or subpart hereof.

6

8.    Any word written in the singular herein shall be construed as plural or *vice versa* as necessary to bring within the scope of the request all responses which otherwise might be construed to be outside its scope.

9.    These requests shall be deemed to include all available English translations of every document requested.

10.    Documents should be produced as they are kept in the files of Sanvita or shall be organized and labeled to correspond with the requests below. If documents are not produced as they are kept in the files of Sanvita, sufficient information should be provided to permit Plaintiffs to identify the source of particular documents from within the filed of Sanvita.

11.    Documents from any single file should be produced in the same order as they were found in such file. If copies of documents are produced, such copies should be legible and bound or stapled in the same manner as the original.

12.    Any headings throughout the following Request are solely informational and are intended to assist with organization of the Requests. The headings should not be construed as limiting any Request in any manner.

## REQUESTS

### Product Description and Operation

1.     All documents and things concerning, referring to or relating to the research, design, development, structure, function, features, use and/or operation of each of the Identified Sanvita Sensors

2.     All documents and things concerning, referring to or relating to any submissions, filings or communications with any state or federal regulatory agency relating to any of the Identified Sanvita Sensors, including but not limited to 510(k) Application Nos. k030531, k041478, k022580, k022581, k023219, k070255 and k040603.

3.     All documents and things referring to, relating to or comprising product literature and technical descriptions prepared for and/or provided to health care providers, users and/or customers, including but not limited to instruction manuals, operators manuals, owners manuals, user guides, user manuals, repair manuals, services manuals or care manuals, concerning, referring to or relating to any of the Identified Sanvita Sensors, including drafts or other versions not distributed to health care providers, users and/or customers.

4.     All documents and things, including but not limited to marketing, advertising, instructional or technical materials, showing, describing, referring to or relating to the structure, function, use and/or operation of any of the Identified Sanvita Sensors.

5.     All documents and things concerning, referring to, relating to or depicting the product specifications of and/or the operational process steps employed by any of the Identified Sanvita Sensors, and each revision thereof.

6.     All documents and things concerning, referring to or relating to any utility, advantages, features, functions, value or business significance of any of the Identified Sanvita Sensors.

8

7.    Three (3) samples of every model or type of BD Logic Blood Glucose Monitor, the BD Latitude Blood Glucose Monitor, BD Paradigm Link Blood Glucose Monitor, NovaMax Blood Glucose Monitor and NovaMax Link Blood Glucose Monitor.

8.    Fifty (50) samples of each model or type of test strip that can be used with the BD Logic Blood Glucose Monitor, the BD Latitude Blood Glucose Monitor, the BD Paradigm Link Blood Glucose Monitor, the NovaMax Blood Glucose Monitor or the NovaMax Link Blood Glucose Monitor.

**Licenses and Other Agreements**

9.    All documents and things concerning, referring to or relating to any communications between any of Sanvita, BD and Nova related to Electrochemical Sensors, including but not limited to any agreements between the parties and drafts or negotiations for such agreements.

10.    All documents and things concerning, referring to or relating to any licensing discussions, negotiations or agreements between Sanvita and any person relating to any rights with regard to Electrochemical Sensors and dated later than 1997.

11.    All documents and things concerning, referring to or relating to any licensing discussions, negotiations or agreements between any of Sanvita, BD and Nova relating to the 229 patent.

**Product Marketing**

12.    All documents and things constituting, referring to, or relating to advertising plans, business plans, marketing plans or efforts, promotional programs or strategies on the part of Sanvita, or on its behalf, concerning any of the Identified Sanvita Sensors.

13.    All documents and things constituting, referring to, or relating to any of the

9

Identified Sanvita Sensors prepared for and/or used with or by Sanvita's sales or marketing personnel.

14. All documents and things concerning, referring to or relating to communications with distributors or potential distributors of any of the Identified Sanvita Sensors regarding the structure, function, features, design, use and/or operation of the Identified Sanvita Sensors.

15. All documents and things concerning, referring to or relating to communications with physicians, nurses, clinics or other potential users of any of the Identified Sanvita Sensors.

16. All documents and things concerning, referring to or relating to the use or suitability for use of NovaMax strips in Identified Sanvita Sensors sold under any BD trademark or tradename, including but not limited to communications with or agreements with BD, Nova or third parties.

17. All documents and things concerning, referring to or relating to information on the marketing or sale of products competitive with the Identified Sanvita Sensors, including but not limited to the products of the Plaintiffs and any defendants in this action.

**Product Sale and Use**

18. All documents and things concerning, referring to or relating to the market for Electrochemical Sensors, including but not limited to communications regarding capturing, supplying, or exiting the market.

19. All documents and things concerning, referring to or relating to any manufacturing, use, sale or offer for sale in the United States, or importing into or exporting out of the United States any of the Identified Sanvita Sensors after January 1, 2006.

20. Documents sufficient to identify all quantities of any of the Identified Sanvita Sensors manufactured, used, sold or offered for sale in the United States, or imported into or

exported out of the United States after January 1, 2006.

21.    Documents sufficient to identify Sanvita's current inventory of any of the Identified Sanvita Sensors.

22.    All documents and things concerning, referring to or relating to actual or projected numbers of BD Logic Blood Glucose Monitors, BD Paradigm Link Blood Glucose Monitors or BD Latitude Blood Glucose Monitors still in service in the United States on or after October 2, 2007.

23.    All documents and things concerning, referring to or relating to actual or projected numbers of persons using BD Logic Blood Glucose Monitors, BD Paradigm Link Blood Glucose Monitors or BD Latitude Blood Glucose Monitors with BD Test Strips or NovaMax Test Strips in the United States on or after October 2, 2007.

24.    All documents and things concerning, referring to or relating to actual or projected numbers of NovaMax Blood Glucose Monitors or NovaMax Link Blood Glucose Monitors in service in the United States on or after October 2, 2007.

25.    All documents and things concerning, referring to or relating to actual or projected numbers of persons using NovaMax Blood Glucose Monitors or NovaMax Link Blood Glucose Monitors with BD Test Strips or NovaMax Test Strips in the United States on or after October 2, 2007.

26.    Documents and things sufficient to identify the names, addresses and telephone numbers of each of Sanvita's customers in the United States of any Identified Sanvita Sensors made, used, sold, offered for sale, or imported into the United States. (Note: Sanvita may treat this request as limited to information containing an identification of names, addresses, telephone numbers, and relevant product for all end-users who have purchased, used or continued to use Identified Santiva

Sensors on or after January 1, 2006, where such information is separately available in this form.)

27.    All documents and things concerning, referring to, relating to or constituting any communications or exchange of information with any of Sanvita's customers in the United States of any Identified Sanvita Sensors made, used, sold, offered for sale, or imported into the United States, including but not limited to customer complaints, rebate requests, and warranty cards. (Note: Sanvita may treat this request as limited to information containing an identification of names, addresses, telephone numbers, and relevant product for all end-users who have purchased, used or continued to use Identified Sanvita Sensors on or after January 1, 2006, where such information is separately available in this form.)

28.    All documents and things concerning, referring to or relating to all circumstances and situations where Sanvita has used or operated any of the Identified Sanvita Sensors in the United States, including for testing, operating, or evaluating them for any purpose, for demonstrating them for any purpose, for sales or marketing promotion, or for comparing the attributes or performance of them with any other Electrochemical Sensors. (Note: Sanvita may treat this request as limited to information containing an identification of names, addresses, telephone numbers, and relevant product for all end-users who have purchased, used or continued to use Identified Sanvita Sensors on or after January 1, 2006, where such information is separately available in this form.)

29.    All documents and things from which Sanvita's unit sales of each model or type of any of the Identified Sanvita Sensors may be determined for each monthly and annual time period from August 2003 to present.

30.    Organizational charts or other documents for the period from January 1, 2006 to the present detailing the corporate structure, management, chain of command and all officers,

12

directors or other employees or personnel of Defendant who had any supervisory responsibility for the design, engineering, research, development, testing, manufacturing, commercialization, sales, marketing, competitive product analysis or legal analysis of any of the Identified Sanvita Sensors.

31.    Documents and things sufficient to identify the names and titles of all persons having a supervisory role in the sales and/or marketing of any of the Identified Sanvita Sensors from January 1, 2006 to present.

**Miscellaneous**

32.    All documents and things concerning, referring, or relating to indications made by Nova claiming, asserting, or otherwise suggesting that information about Electrochemical Sensors was proprietary and/or a trade secret.

33.    All documents and things identifying as proprietary or trade secret any information from Nova regarding Electrochemical Sensors.

34.    All documents and things provided by Nova regarding Electrochemical Sensors and identified by Nova as containing information that Nova considered proprietary and/or a trade secret.

**SCHEDULE B**
**TO THE SUBPOENA OF SANVITA, INC.**

*RULE 30(b)(6) AND RULE 45 DEPOSITION TOPICS*

### INSTRUCTIONS

Pursuant to Rule 30(b)(6) and Rule 45, you have a duty to designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf. To the extent more than one person responds to this subpoena, you may also set out the matters on which each person designated will testify. The persons designated must testify about information known or reasonably available to the organization.

For the purposes of these topics, the Definitions set forth in Schedule A will apply.

### TOPICS

1.    The design, structure, function, features, use and operation of each of the Identified Sanvita Sensors.

2.    The operational process steps that occur in each of the Identified Sanvita Sensors when used as directed in product literature and technical descriptions prepared for and/or provided by Sanvita, BD or Nova.

3.    Any alleged uses for the Identified Sanvita Sensors wherein the alleged use would not employ a sample size of less than 1 µl.

4.    Any alleged uses for the Identified Sanvita Sensors wherein the alleged use would not provide a readout within 10 seconds.

5.    The components or parts contained in, or used or considered for use in any of the Identified Sanvita Sensors.

14

6.    The research, design and/or development efforts by Sanvita and/or others that led to any of the Identified Sanvita Sensors.

7.    Communications with Nova regarding any of the Identified Sanvita Sensors, including but not limited to the development, marketing or sale of any of the Identified Sanvita Sensors.

8.    Product literature and technical descriptions concerning, referring to or relating to any of the Identified Sanvita Sensors prepared for and/or provided to health care providers, users and/or customers, including but not limited to instruction manuals, operators manuals, owners manuals, user guides, user manuals, repair manuals, services manuals or care manuals, including drafts or other versions not distributed to health care providers, users and/or customers.

9.    Any submissions, filings or communications with any state or federal regulatory agency relating to any of the Identified Sanvita Sensors, including but not limited to 510(k) Application Nos. k030531, k041478, k022580, k022581, k023219, k070255 and k040603.

10.    Any comparison or comparative tests involving any of the Identified Sanvita Sensors.

11.    Any agreement(s) between any of Sanvita, BD and Nova or other persons related to Electrochemical Sensors.

12.    Advertising plans, business plans, marketing plans or efforts, promotional programs or strategies on the part of Sanvita, Nova or BD, or on any of their behalf, concerning any of the Identified Sanvita Sensors.

13.    Marketing materials that Sanvita, BD, Nova, or anyone on their behalf prepared or had prepared in connection with the marketing and/or sale of any of the Identified Sanvita Sensors.

15

14.    Communications with distributors, potential distributors, physicians, nurses, clinics or other potential users of any of the Identified Sanvita Sensors.

15.    Actual and/or projected use of any of the Identified Sanvita Sensors in the United States after October 2, 2007.

16.    Quantities of any of the Identified Sanvita Sensors made, use, sold, or offered for sale in the United States, or imported into or exported out of the United States after October 2, 2007.

17.    Sanvita's current inventory of any of the Identified Sanvita Sensors.

18.    End-users of the BD Logic Blood Glucose Monitor, the BD Paradigm Link Blood Glucose Monitor, and/or the BD Latitude Blood Glucose Monitor that were, or may continue to be, in service after October 2, 2007 and documents capable of identifying such end-users.

19.    End-users of the NovaMax Blood Glucose Monitor and/or NovaMax Link Blood Glucose Monitor that were, or may continue to be, in service after October 2, 2007 and documents capable of identifying such end-users.

20.    Communications with end-users of any of the Identified Sanvita Sensors on or after October 2, 2007.

21.    Warranty registrations or claims and rebate requests for the Identified Sanvita Sensors from January 1, 2006 to present.

22.    Training materials for Sanvita's sales force referring or relating any of the Identified Sanvita Sensors.

23.    The authenticity of the documents produced in response to the document requests set forth in Schedule A of this subpoena.

24.    With respect to the documents produced in response to the document requests set

16

forth in Schedule A of this subpoena, how the documents were created, the time the documents were created, the authors of the documents, whether the authors had knowledge of the information contained in the documents, whether the documents were made and kept in the course of a regularly conducted business activity, and the regular practice of the business activity related to such documents. *See* Federal Rule of Evidence 803(6).

17

## United States District Court, Middle District Of Florida

Roche Diagnosti Operation, Inc., and Corange International Limited,,

Plaintiff(s),

vs.

Abbott Diabetes Care, Inc., Abbott Diabetes Care Sales Corp., Bayer Healthcare, LLC, Diagnostics Devices, Inc., LifeScan, Inc., and Nova Biomedical Corp.,,

Defendant(s).

Case No.:
07--753--JJF

AFFIDAVIT OF
SERVICE

On __August 25__ at __4:10__ AM / PM I served the within Subpoena and Witness Fee $56.00 on Sanvita, Inc. c/o T. Cole Peterson, Defendant(s).

Said service was effected at __14255  49th  Street, N. Ste. 301, Clearwater, FL, 33762__ in the following manner:

[X] Registered Agent: By leaving a copy of the Subpoena and Witness Fee $56.00 with
__T. Cole Peterson__, the registered agent of Sanvita, Inc. c/o T. Cole Peterson.

[ ] Officer/Agent: By leaving a copy of the Subpoena and Witness Fee $56.00 with
_____, _____, who is an officer or agent of Sanvita, Inc. c/o T. Cole Peterson.

[ ] Other: By leaving a copy of the Subpoena and Witness Fee $56.00 with:
_____

Addl Comments: _____

Description of person process was left with:

Sex: __F__ Race: __White__ Approx. Age: __35__ Height: __5'10__ Weight: __Slim build__

Under penalties as provided by law pursuant to Section 1--109 of the Code of Civil Prodecure, the undersigned certifies that the statements set forth in this Affidavit of Service are true and correct.

Further the affiant sayeth naught.

X_____

__Derek Kronschnabl__
(Print Name)
United Processing, Inc.
55 W. Wacker Drive, 9th Floor
Chicago, IL 60601
312.629.0140

21130

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, Philip A. Rovner, hereby certify that on August 28, 2008, the within document

was filed with the Clerk of the Court using CM/ECF which will send notification of such

filing(s) to the following; that the document was served on the following counsel as

indicated; and that the document is available for viewing and downloading from

CM/ECF.

**BY HAND DELIVERY AND E-MAIL**

Steven J. Balick, Esq.
John G. Day, Esq.
Ashby & Geddes
500 Delaware Avenue
8th Floor
P.O. Box 1150
Wilmington, DE 19899
sbalick@ashby-geddes.com
jday@ashby-geddes.com

Mary W. Bourke, Esq.
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 N. Orange Street
Wilmington, DE 19801
mbourke@cblh.com

**BY HAND DELIVERY AND E-MAIL**

John W. Shaw, Esq.
Jeffrey T. Castellano, Esq.
Young Conaway Stargatt & Taylor, LLP
1000 West Street, 17th Floor
Wilmington, DE 19801
jshaw@ycst.com
jcastellano@ycst.com

Rodger D. Smith, Esq.
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
rsmith@mnat.com

I hereby certify that on August 28, 2008 the foregoing document was sent by E-mail to the following non-registered participants:

Bradford J. Badke, Esq.
Sona De, Esq.
Michael Kahn, Esq.
Simon Fitzpatrick, Esq.
Ropes & Gray LLP
1211 Avenue of the Americas
New York, NY 10036-8704
Jim.badke@ropesgray.com
Sona.de@ropesray.com
Michael.kahn@ropesgray.com
Simon.fitzpatrick@ropesgray.com

Wesley E. Overson, Esq.
Rachel Krevans, Esq.
Jason R. Bartlett, Esq.
Parisa Jorjani, Esq.
Daniel P. Muino, Esq.
Morrison & Foerster LLP
425 Market Street
San Francisco, CA 94105-2482
woverson@mofo.com
rkrevans@mofo.com
jasonbartlett@mofo.com
pjorjani@mofo.com
dmuino@mofo.com

Kenneth P. George, Esq.
Joseph M. Casino, Esq.
Amster, Rothstein & Ebenstein LLP
90 Park Avenue
New York, NY 10016
kgeorge@arelaw.com
jcasino@arelaw.com

Michael G. Adams, Esq.
Ashley L. Ellis, Esq.
Parker Poe Adams & Bernstein LLP
Three Wachovia Center, Suite 3000
401 South Tryon Street
Charlotte, NC 28202
mikeadams@parkerpoe.com
ashleyellis@parkerpoe.com

/s/ Philip A. Rovner
Philip A. Rovner (#3215)
Potter Anderson & Corroon LLP
Hercules Plaza
P.O. Box 951
Wilmington, Delaware 19899
(302) 984-6000
E-mail: provner@potteranderson.com