IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ROCHE DIAGNOSTICS OPERATIONS, :
INC. and CORANGE                :
INTERNATIONAL LIMITED,          :
                                :
          Plaintiffs,           :
                                :
     v.                         : Civil Action No. 07-753-JJF
                                :
ABBOTT DIABETES CARE,           :
et al.,                         :
                                :
          Defendants.           :

Daniel A. Boehnen, Esquire and Grantland G. Drutchas, Esquire of
McDONNELL BOEHNEN HULBERT & BERGHOFF LLP, Chicago, Illinois.

Nancy G. Tinsley, Esquire of ROCHE DIAGNOSTICS OPERATIONS INC.,
Indianapolis, Indiana.

Philip A. Rovner, Esquire of POTTER ANDERSON & CARROON LLP,
Wilmington, Delaware.

Attorneys for Plaintiffs/Counterdefendants.

Bradford J. Badke, Esquire and Jeanne C. Curtis, Esquire of ROPES
& GRAY, LLP, New York, New York.

Rodger D. Smith II, Esquire of MORRIS NICHOLS ARSHT & TUNNELL
LLP, Wilmington, Delaware.

Attorneys for Defendant/Counterclaimant Nova Biomedical
Corporation.

**MEMORANDUM OPINION**

July 27, 2010
Wilmington, Delaware.

Farman, District Judge

Pending before the Court are three motions:  a Motion For

Judgment As A Matter Of Law On Nova's Fourth, Fifth, Sixth And

Seventh Counterclaims (D.I. 811) filed by Plaintiffs/

Counterdefendants Roche Diagnostics Operations, Inc., and Corange

International LTD. (collectively, "Roche"), and a Motion For

Judgment As A Matter Of Law On Nova's Breach Of Contract And

Unfair Competition Counterclaims (D.I. 810) and a Motion For A

New Trial (D.I. 836) filed by Defendant/Counterclaimant Nova

Biomedical Corporation ("Nova").  For the reasons discussed, the

Court will deny as moot Roche's Motion and deny Nova's Motions.

**BACKGROUND**

The counterclaims at issue arise in connection with a

confidentiality agreement signed by Nova and Roche on September

8, 1999, and subsequently amended by agreed upon addenda

(collectively, the "Agreement").  The Agreement was entered into

shortly after Roche's Dr. Gerd Grenner visited Nova's facilities

in Massachusetts to evaluate the parties' potential interests in

working together.  While at Nova, Dr. Grenner was given a

presentation on Nova's glucose monitoring technology.

Thereafter, Nova provided Roche with copies of two of Nova's

unpublished patent applications concerning that technology.  On

February 9, 2000, Roche informed Nova that it was no longer

interested in entering into a business relationship with Nova

2

concerning glucose monitoring technology.

In 2007, Roche filed this patent infringement action against numerous defendants, including Nova.  In response, Nova asserted counterclaims against Roche for breach of contract, misappropriation of trade secrets, unfair competition, and conversion, contending among other things, that Roche used Nova's proprietary information to the detriment of Nova and to spur the filing of Roche's patents against Nova's interests.

Following two pre-trial conferences in January 2010, the Court concluded that it would enter final judgment on the patent infringement claims under Fed. R. Civ. P. 54 and proceed to trial on the non-patent counterclaims.  Additionally, the Court concluded that Swiss law applied to the non-patent claims based upon the choice of law clause in the Agreement.  (Oral Order dated Jan. 25, 2010).  Applying Swiss law, the Court dismissed all of Nova's counterclaims, except for breach of contract and unfair competition.  (Trial Tr. 4:17-5:2.)

A jury trial on these counterclaims commenced on January 26, 2010.  On February 2, 2010, the jury returned a verdict in favor of Roche.  (D.I. 805.)  The parties subsequently filed the instant Motions seeking judgment as a matter of law and a new trial.

## DISCUSSION

### I.   Roche And Nova's Motions For Judgment As A Matter Of Law

The jury has returned a verdict in favor of Roche, and therefore, as Roche acknowledges its Motion For Judgment As A Matter Of Law is moot.[1]  In addition, the Court concludes that Nova's Motion is not untimely and complies with the requirements of Rule 50(a), as evidenced by the Court's acceptance of Nova's Motion as properly interposed at trial.  (Trial Tr. 1176:7-12); see Arthrocare Corp. v. Smith & Nephew, Inc., 406 F.3d 1365, 1370 (Fed. Cir. 2005).  Accordingly, the Court will focus its attention on the merits of the arguments raised by Nova.

#### A.   Legal Standard

Pursuant to Rule 50 of the Federal Rules of Civil Procedure, a court may grant judgment as a matter of law if "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis" to find for a party on a given issue after that party has been fully heard.  Fed. R. Civ. P. 50(a).  To prevail on a renewed motion for judgment as a matter of law following a jury trial, the moving party "'must show that the jury's findings, presumed or express are not supported by substantial evidence or, if they were, that the legal conclusions

---

[1]    According to Roche, it submitted its Motion to "mature the record and leave no doubt that Roche timely and properly moved for [judgment as a matter of law] at the end of Nova's case-in-chief and properly renewed that motion at the conclusion of its case-in-chief."  (D.I. 811.)

4

implied [by] the jury's verdict cannot in law be supported by those findings.'" Pannu v. Iolab Corp., 155 F.3d 1344, 1348 (Fed. Cir. 1998) (quoting Perkin-Elmer Corp. v. Computervision Corp., 732 F.2d 888, 893 (Fed. Cir. 1984)). In determining whether sufficient evidence was presented to support a jury verdict, a court must give the non-moving party, "as verdict winner, the benefit of all logical inferences that could be drawn from the evidence presented, resolve all conflicts in the evidence in his favor and, in general, view the record in the light most favorable to him." Williamson v. Consol. Rail Corp., 926 F.2d 1344, 1348 (3d Cir. 1991).

The court may not weigh the evidence, evaluate the credibility of the witnesses, or substitute its own version of the facts for the jury's findings. Marra v. Phila. Hous. Auth., 497 F.3d 286, 300 (3d Cir. 2007). Rather, the court must determine whether the evidence reasonably supports the jury's verdict. Dawn Equp. Co. v. Kentucky Farms, Inc., 140 F.3d 1009, 1014 (Fed. Cir. 1998). Although a court should grant judgment as a matter of law sparingly, it is appropriate where only a "scintilla of evidence" supports the verdict, or where "the record is critically deficient of the minimum quantum of evidence" needed to support the verdict. Johnson v. Campbell, 332 F.3d 199, 204 (3d Cir. 2003) (citing Gomez v. Allegheny Health Servs., Inc., 71 F.3d 1079, 1083 (3d Cir. 1995)).

C.   Whether Nova Is Entitled To Judgment As A Matter Of Law
     On Its Breach Of Contract Claim

     After reviewing the evidence presented at trial in the light

most favorable to Roche as the verdict winner, the Court

concludes that sufficient evidence was presented to support the

jury's verdict.  Nova contends that it established that Roche

breached the Agreement by using Nova's information to spur the

filing of its own patents.  Particularly, Nova points to the

timing of Roche's patent applications to contend that those

applications were precipitated by Dr. Grenner's meeting with

Nova.  However, Roche has presented ample evidence countering

Nova's premise, including evidence that Roche regularly

encouraged the filing of patent applications and was engaged in

on-going work in the field that predated the Grenner meeting.

Roche further presented evidence of substantial published

information in the field, which negates Nova's assertion that

Roche's work was the by-product of Dr. Grenner's meeting with

Nova.

     In addition, Nova directs the Court to the work of Mr.

Bhullar, contending that his work was based on the same

technology as the laser scribing in Nova's patent applications.

However, Roche presented sufficient evidence at trial

demonstrating a distinct difference between Nova's laser scribing

and Mr. Bhullar's laser ablation.  Accordingly, the Court finds

sufficient evidence was presented to the jury to negate Nova's

breach of contract argument.

Nova also contends that breach of contract was established
because Roche improperly used Nova's confidential information to
conduct a freedom to operate analysis to its own benefit.  (D.I.
810 at 7-8.)  In the Court's view, however, substantial evidence
was presented at trial to refute Nova's argument.  Specifically,
the Agreement allowed for the "evaluation" of Nova's proprietary
information, and the evidence offered at trial demonstrates that
Nova knew that Roche was interested in what patent protection
Nova would be able to achieve for its technology.  (NTX-13, ¶ 2.)
In addition, the evidence demonstrates that Roche reviewed the
information to determine whether it needed to or wanted to
license the technology from Nova.  (Trial Tr. at 874:12-20.)  The
evidence further shows that if Roche believed a license was
necessary, it would have sought a license from Nova.  (Trial Tr.
897:5-12.)  Accordingly, the Court concludes that ample evidence
was presented to the jury to support a conclusion that Roche's
conduct in evaluating Nova's technology was contemplated by the
Agreement and did not constitute a breach of contract.

To the extent Nova contends that Roche breached the
Agreement by altering its research and development plan after
learning of Nova's confidential information, the Court concludes
that Nova's argument is not supported by the evidence.  In
particular, the Court concludes that the testimony relied upon by

Nova does not prove, as a matter of law, that Roche altered its research and development plan. Rather, this evidence only demonstrates that in 1999, Roche had not documented or recorded the ability to perform glucose tests with less than one microliter of blood. (Trial Tr. at 856:12-857:5.) Further, evidence was presented at trial demonstrating that Roche was already internally working on developing these technologies prior to Dr. Grenner's September 1999 meeting with Nova. Moreover, the evidence demonstrates that the development of the Aviva product did not begin until 2001, after Nova published its patent applications in January 2000. Accordingly, the Court concludes that a sufficient evidentiary basis was presented to support a finding that Roche did not alter its research and development plans in response to Nova's confidential information.

As for Nova's argument that Roche breached the Agreement by failing to provide the analysis of Nova's patent applications performed by Roche's patent counsel, the Court likewise concludes that the evidence supports the jury's verdict in favor of Roche. The Agreement required Roche to provide to Nova a copy of a report done by Roche's patent counsel. (NTX-103.) The evidence demonstrates that Roche provided Nova with a report from its in-house patent counsel, Michael Young. Given that the Agreement did not require Roche to provide Nova with all analysis conducted by its in-house counsel, outside counsel, or designated

8

scientists, the Court concludes that it was reasonable for the jury to conclude that Roche satisfied its obligations under the Agreement.

In sum, the Court concludes that the record, taken as a whole and in the light most favorable to Roche, supports the jury's verdict in favor of Roche. Accordingly, the Court will deny Nova's Motion For Judgment As A Matter Of Law on its breach of contract claim.

D. Whether Nova Is Entitled To Judgment As A Matter Of Law On Its Unfair Competition Claim

After reviewing the evidence presented at trial in the light most favorable to Roche as the verdict winner, the Court concludes that sufficient evidence was presented to support the jury's verdict that Roche did not engage in unfair competition. To the extent Nova contends that Roche engaged in unfair competition by breaching the Agreement and using its proprietary information in an unauthorized manner, the Court concludes that Nova's argument overlaps with its arguments related to breach of contract. Accordingly, for the reasons discussed in the context of the breach of contract claim, the Court concludes that Nova is not entitled to judgment as a matter of law on its unfair competition claim.

In addition to its breach of contract arguments, Nova contends that "Roche engaged in unfair competition by ambushing Nova with a self-serving Agreement governed by Swiss law." (D.I.

9

810 at 12.)  Even if this argument was raised at trial, which is
debatable, the Court concludes that it provides no grounds upon
which to grant Nova relief.  In fact, the evidence adduced at
trial demonstrates that Nova was willing to use the Agreement
presented by Roche and was familiar with the genre of non-
disclosure agreements.  (Trial Tr. 355:7-357:23.)  Accordingly,
the Court finds no factual basis to support Nova's argument.

    Nova also contends that Roche engaged in unfair competition
by including on the Aviva development team individuals like Doug
Walling and Michael Young, who had analyzed Nova's proprietary
information.  (D.I. 810 at 12-13.)  However, the record
demonstrates that the Aviva team was not formed until after the
publication of Nova's patents.  Because the relevant information
was public knowledge at this time, the Court cannot conclude that
the jury's verdict in favor of Roche was unreasonable or
unsupported by the evidence.

    As for Nova's argument that Roche engaged in unfair
competition by giving Nova's information to Dr. Rauch, who
prosecuted the Bhullar patent which concerns laser technology
(D.I. 810 at 13), the Court concludes that Nova's argument is
unsupported by the record.  Nova cites testimony from Dr. Rauch
that the Bhullar patent application was "one of the first
applications I . . . wrote."  (Trial Tr. 767:12-14.)  In the
Court's view, however, this testimony does not establish that Dr.

Rauch prosecuted the Bhullar patent and a reasonable jury would
not be required to accept such an inference.  Further, to the
extent Dr. Rauch may have been involved with the prosecution of
the Bhullar patent, the Court notes that the evidence adduced at
trial demonstrates that the Bhullar patent was filed on October
4, 1999, months before Dr. Rauch received a copy of Nova's patent
applications in January of 2000.  (PTX-1033; NTX-111.)  Indeed,
the evidence establishes that Nova did not send a copy of its
patent applications to Roche until after the Bhullar application
was filed.  (PTX-1033; NTX-103; Trial Tr. 533:23-534:5, 536:8-15,
595:7-596:3.)  Accordingly, the Court is persuaded that
sufficient evidence was presented to support a finding that Roche
did not engage in unfair competition on the basis of passing
confidential information to a prosecutor of the Bhullar patent.

    In sum, the Court concludes that the record, taken as a
whole and in the light most favorable to Roche, supports the
jury's verdict in favor of Roche.  Accordingly, the Court will
deny Nova's Motion For Judgment As A Matter Of Law on its unfair
competition claim.

## II.  **Nova's Motion For A New Trial**

### A.  Legal Standard

    In pertinent part, Federal Rule of Civil Procedure 59(a)
provides:

> A new trial may be granted to all or any of the parties
> and on all or part of the issues in an action in which

11

> there has been a trial by jury, for any of the reasons
> for which new trials have heretofore been granted in
> actions at law in the courts of the United States.

Fed. R. Civ. P. 59(a). Among the most common reasons for

granting a new trial are the following: (1) the jury's verdict is

against the clear weight of the evidence, and a new trial must be

granted to prevent a miscarriage of justice; (2) newly discovered

evidence exists that would likely alter the outcome of the trial;

(3) improper conduct by an attorney or the court unfairly

influenced the verdict; or (4) the jury's verdict was facially

inconsistent. Zarow-Smith v. New Jersey Transit Rail Operations,

953 F. Supp. 581, 584 (D.N.J. 1997) (citations omitted).

The decision to grant or deny a new trial is committed to

the sound discretion of the district court. Allied Chemical

Corp. v. Darflon, Inc., 449 U.S. 33, 36 (1980); Olefins Trading,

Inc. v. Han Yang Chem Corp., 9 F.3d 282 (1993) (reviewing

district court's grant or denial of new trial motion under

deferential "abuse of discretion" standard). However, where the

ground for a new trial is that the jury's verdict was against the

great weight of the evidence, the court should proceed

cautiously, because such a ruling would necessarily substitute

the court's judgment for that of the jury. Klein v. Hollings,

992 F.2d 1285, 1290 (3d Cir. 1993). Although the standard for

grant of a new trial is less rigorous than the standard for grant

of judgment as a matter of law in that the court need not view

the evidence in the light most favorable to the verdict winner, a
new trial should only be granted where "a miscarriage of justice
would result if the verdict were to stand," the verdict "cries
out to be overturned," or where the verdict "shocks our
conscience." Williamson, 926 F.2d at 1352; see also Price, 40 F.
Supp. 2d at 550.

Where a new trial is sought on the basis of the improper
admission or exclusion of evidence, the Court applies the
harmless error standard of Fed. R. Civ. P. 61:

> No error in either the admission or the exclusion of
> evidence and no error or defect in any ruling or order or
> in anything done or omitted by the court or by any of the
> parties is ground for granting a new trial or for setting
> aside a verdict or for vacating, modifying, or otherwise
> disturbing a judgment or order, unless refusal to take
> such action appears to the court inconsistent with
> substantial justice. The court at every stage of the
> proceeding must disregard any error or defect in the
> proceeding which does not affect the substantial rights
> of the parties.

Becker v. Arco Chem. Co., 207 F.3d 176, 180 (3d Cir. 2000).

B.  Whether Nova Is Entitled To A New Trial Based On The
    Court's Decision To Exclude The Patent Infringement
    Evidence

Nova contends that a new trial is warranted because the
Court improperly excluded evidence that Roche infringed Nova's
patents. Nova contends that this evidence was relevant to
demonstrate that Roche breached the Agreement by using Nova's
confidential information to obtain its patents. Nova contends
that Roche's patent infringement also demonstrates an act of

unfair competition by Roche. According to Nova, the Court's decision to exclude this evidence prejudiced Nova by causing the jury to believe that Nova initiated this litigation. In addition, Nova contends that Roche raised the topic of patent infringement during its cross-examination of Mr. Mangaro and in its closing statement, and therefore, the Court should have allowed exploration into this evidence once Roche opened the door to its admissibility.

In response, Roche contends that the Court properly excluded evidence of its infringement under Fed. R. Evid. 402 and 403, because this evidence is irrelevant to the non-patent claims and unduly prejudicial. Roche further contends that it did not improperly raise the excluded evidence at trial, and in any event, Nova did not raise any objections to preserve this issue. In addition, Roche contends that, in light of the jury's implicit finding that Roche's patents were not spurred by Nova's proprietary information, any error based on exclusion of the patent infringement evidence is harmless.

In excluding the evidence of patent infringement, the Court stated:

> What you're not allowed to do is say . . . we actually won a decision from Judge Farnan which further supports our claim because he interprets the claims of the patent and really what the invention means and what it covers, we prevailed. That's what you can't do.
>
> And I would find that to be irrelevant to the claims you have brought in the case and if someone were to think it

14

> was relevant, it's so tangential to the claims in the
> case, if it was relevancy, it's outweighed in that
> balancing test under 403 by the undue prejudice and
> possible confusion it would bring to the jury in deciding
> the claims in the case.

(Trial Tr. at 309-10.)  The Court is not persuaded that its

evidentiary ruling was erroneous.  However, even if the Court's

ruling is considered erroneous, the Court concludes that the

error was harmless in light of the evidence adduced at trial.  In

reaching this conclusion, the Court notes that the evidence

adduced at trial demonstrated that the patents relevant to

infringement were filed eleven months after Nova's alleged

confidential information became public.  This evidence

substantially supported the jury's verdict that Roche's patents

were not spurred by Nova's confidential information in breach of

the parties' Agreement, and the Court is not persuaded that the

exclusion of evidence pertaining to Roche's infringement worked a

substantial injustice to Nova.  Indeed, the Court allowed Nova to

vigorously pursue its claim that Roche's patent were "spurred" by

Nova's confidential information, and the Court is not persuaded

that evidence of infringement was relevant to this non-patent

claim.  However, even if the evidence had some tangential

relevance, the Court remains convinced that the excluded evidence

was unduly prejudicial to Roche under well-established precedent

that "[t]he admission of a prior verdict creates the possibility

that the jury will defer to the earlier result and thus, will not

15

effectively, decide a case on evidence not before it."  Coleman
Motor Co. v. Chrysler Corp., 525 F.2d 1338, 1351 (3d Cir. 1975);
St. Clair Intellectual Prop. Consultants v. Fuji Photo Film Com.,
Ltd., 03-241-JJF, 2009 U.S. Dist. LEXIS 108679, *7 (D. Del. Nov.
19, 2009); see also Porous Media Corp. v. Pall Corp., 173 F.3d
1109, 1117-18 (8th Cir. 1999).

     To the extent Nova contends that Roche opened the door to
the excluded evidence such that Nova should have been permitted
to explore this evidence, the Court has reviewed the disputed
testimony and argument and concludes that Roche did not open the
door to the excluded evidence.  Roche's questioning of Mr.
Manganaro on cross-examination was in direct response to Nova's
line of direct questioning during which Mr. Manganaro asserted
that Nova was harmed by Roche's conduct.  Further, the Court
concludes that Roche's statements during closing did not leave
the jury with the misimpression that Nova filed this action
first, because during its opening statement, Nova clearly laid
out that Roche filed suit first.  (Trial Tr. at 170:13-17 ("Roche
originally sued Nova for patent infringement based on one of
those patents that was spurred after they saw Mr. Manganaro's
technology."))  Accordingly, the Court concludes that Nova has
not demonstrated that a new trial is warranted based on the
Court's exclusion of the infringement evidence.

B.    Whether Nova Is Entitled To A New Trial Based On The
      Court's Decision To Allow The Testimony Of Dr.
      Bocarsly

Nova next contends that a new trial is warranted because the

Court improperly allowed Roche's expert, Dr. Bocarsly, to testify

regarding legal opinions and conclusions.  According to Nova, Dr.

Bocarsly usurped the role of the jury by telling them  "(i) how

to interpret the Agreement, (ii) which pieces of Nova's

proprietary information they should consider as confidential,

(iii) what they should consider to be Nova's protectable trade-

secrets, and (iv) whether Roche used any Nova confidential

information."  (D.I. 837 at 16.)  Nova contends that this type of

unqualified testimony resulted in undue prejudice requiring a new

trial.

In response, Roche contends that Dr. Bocarsly's testimony

was properly admitted because it constituted his proper technical

opinions.  (D.I. 841 at 18.)  According to Roche, "Dr. Bocarsly

gave his opinion, based on his expertise in electrochemistry, as

to whether the pertinent technical information disclosed by Nova

was already known by Roche or publically known to others."  (Id.)

Roche contends that this type of testimony is properly

admissible, and therefore, Nova was not prejudiced.

The testimony of expert witnesses is governed by Fed. R.

Evid. 702, which provides:

> If scientific, technical, or other specialized knowledge will
> assist the trier of fact to understand the evidence or to

17

determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

"[A]n expert witness is prohibited from rendering a legal opinion." Berckeley Inv. Group, Ltd. v. Colkitt, 455 F.3d 195, 217 (3d Cir. 2006); see also Cantor v. Perelman, No. 97-586-KAJ, 2006 U.S. Dist. LEXIS 86329, *11 (D. Del. Nov. 30, 2006)(noting that there is a general rule that experts are not permitted to offer legal opinions).

In reviewing the testimony of Dr. Bocarsly, the Court concludes that his testimony was properly admitted because it did not constitute a legal opinion. Dr. Bocarsly did not offer opinions as to the scope and meaning of the Agreement and its terms, and did not opine on the ultimate question, reserved for the jury, of whether Roche breached the Agreement. Rather, Dr. Bocarsly testified, based on his expertise in electrochemistry, regarding whether the information disclosed by Nova was already known to Roche or to the public. In so doing, Dr. Bocarsly applied the definitions from the Agreement and did not expand on their legal meaning. (Trial Tr. at 1130.) Dr. Bocarsly also examined the Aviva product to determine whether Roche used any of Nova's confidential information in the development of that product. In the Court's view, Dr. Bocarsly's opinions were

offered from the perspective of his technical knowledge and expertise and did not constitute improper legal opinions.  In addition, the Court properly charged the jury that it was not required to accept expert testimony, and that it should be weighed by the jury like other testimony of witnesses. Accordingly, the Court concludes that Dr. Bocarsly's testimony was proper, and Nova was not unduly prejudiced by its admission into evidence.  Therefore, the Court concludes that a new trial is not warranted.

C. Whether Nova Is Entitled To A New Trial On The Basis That The Jury's Verdict Is Against The Weight Of The Evidence

To the extent Nova contends that the jury's verdict is against the weight of the evidence, the Court acknowledges that it need not construe the evidence in the light most favorable to Roche in the context of determining whether a new trial is warranted.  However, even without the benefit of this less stringent standard, the Court concludes that the jury's verdict is supported by the evidence, and the Court is not persuaded that the jury's verdict shocks the conscience or results in a miscarriage of justice.  Accordingly, the Court concludes that a new trial is not warranted.

### CONCLUSION

For the reasons discussed, the Court will deny as moot Roche's Motion For JMOL On Nova's Fourth, Fifth, Sixth And

Seventh Counterclaims, and deny Nova's Motion For Judgment As A Matter Of Law On Nova's Breach Of Contract And Unfair Competition Counterclaims and Nova's Motion For A New Trial.

An appropriate order will be entered.