IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ROCHE DIAGNOSTICS OPERATIONS INC., et al., | :<br>:<br>: |
| Plaintiffs, | :<br>: |
| v. | : Civil Action No. 07-753-RGA<br>: |
| LIFESCAN INCORPORATED, et al., | :<br>: |
| Defendants. | : |

**MEMORANDUM**

The parties, Plaintiff Roche and Defendant Nova, each filed motions for attorney's fees. (D.I. 1049, 1050). The Magistrate Judge filed a Report and Recommendation recommending that each motion be denied. (D.I. 1091). The parties each filed objections to the denial of their motions, and each has filed responses. (D.I. 1092, 1093, 1097, 1098). As the parties both agree, I review their objections *de novo*.

The Magistrate Judge's Report is lengthy, and I will adopt the factual findings and legal conclusions in the Report. I do not separately recite any of them except as I think necessary to explain my decision.

Nova's motion (D.I. 1049) is based on 35 U.S.C. § 285 and Roche's complete failure on its patent infringement case. Roche does not contest that Nova is the prevailing party. (D.I. 1104 at 6). The Magistrate Judge recommended that the Court find that the case is not exceptional. (D.I. 1091 at 24). "[A]n 'exceptional' case is simply one that stands out from others with respect

1

to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S.Ct. 1749, 1756 (2014). Nova objects to the "non-exceptional" finding.

Nova's objection centers on what it considers an "improper motion for reconsideration," and a "claim construction position [that] was unreasonable." The centerpiece of this argument is that Nova's product used electrodes with a width of 762 µm but the patent claims (as construed) required a width of less than 100 µm, which required Roche to make baseless arguments that the patent claims only required a width of less than 1000 µm. Interwoven with this is an argument about what the dividing line between a micro-electrode and a macro-electrode was. It is of course true that Roche lost on these arguments, and that its arguments morphed from the initial Markman before Judge Farnan. Neither of these two points makes Roche's conduct exceptional. One side always loses, and, in my experience, it is routine (though frustrating) that arguments generally, and claim construction arguments in particular, shift and are recycled in different guises during litigation. *See Sarif Biomed. LLC v. Brainlab, Inc.*, 2016 WL 5422479, at *2 (D.Del. Sept. 27, 2016) (Judge Stark expressing similar experience). Roche notes that none of the judges who partook of this case contemporaneously expressed perceived baselessness of Roche's positions. (D.I. 1098 at 4 (Judge Farnan) & at 9 (Federal Circuit)).[1] I do not think this matters. Nor do I think it matters that another prevailing party has not filed a motion for

---

[1] To the extent the Magistrate Judge was suggesting that lack of criticism of Roche's claim construction positions indicated reasonableness (*see* D.I. 1091 at 23-24), I do not agree. I think contemporaneous criticisms are useful to guard against hindsight bias, but I do not think the absence of contemporaneous criticism by itself has any appreciable significance.

2

attorney's fees. (*See* D.I. 1098 at 1).

In the end, I think the reasonableness of Roche's claim construction positions are supported by the Federal Circuit's opinion on the first appeal. *See Roche Diagnostics Operations, Inc. v. LifeScan Inc.*, 452 F. App'x 989 (Fed. Cir. 2012). I remember that I read that opinion as strongly implying that the panel thought Judge Farnan had gotten the claim construction wrong.[2] At a minimum, it raised a lot of questions about the claim construction of "electrode." Ultimately, I thought Judge Farnan had gotten it right, and I thought the panel opinion did not expressly say that his claim construction was wrong. Thus, I thought I was free to reach the same conclusion in the second Markman opinion as Judge Farnan had in the first. (*See* D.I. 563 & 564; D.I. 1025 at 15).

The docket reflects that it took me more than two years to issue the second Markman opinion. That is not a coincidence. I thought the Markman aspect of the opinion would be the subject of a vigorous appeal. That is why I also spent considerable time and effort thinking about whether the reconsideration motion was "procedurally improper," and used my conclusion as an alternative basis for decision. As for Nova's argument *now* that the reconsideration motions were improper, I would simply note that I was the only judge to state that I thought they were procedurally improper.[3] More importantly, Nova did not raise the "procedurally improper" argument in the first appeal (D.I. 1025 at 9), and I do think I can treat that as contemporaneous evidence that it was less than clear that Roche's reconsideration motions were procedurally

---

[2] I continue to think that is a fair reading of that opinion.

[3] I still do. But I cannot say that it was unreasonable for Roche to file them, given the consideration they received from both Judge Farnan and the Federal Circuit, and the position that Nova took (or, more accurately, did not take) before the Federal Circuit on the first appeal.

3

improper. Said another way, Nova's appellate approach is inconsistent with its present argument that Roche was filing motions that were clearly procedurally improper.

This was a hard-fought patent infringement case, in which Nova was the winner, but I do not think it is an exceptional case. Thus, Nova's objections (D.I. 1092) are overruled, and I will deny Nova's motion for attorney's fees (D.I. 1049).

Roche's motion (D.I. 1050) seeks attorney's fees based on Swiss law analogous to the "English Rule," that is, the loser pays the winner's attorney's fees.[4] The issue arises because Nova asserted four counterclaims (to wit, breach of contract, misappropriation of trade secrets, unfair competition, and conversion), which it lost. It was clear early on in the litigation that Swiss law controlled on the breach of contract claim (D.I. 211, p.3; D.I. 216, p.1 ), although the applicability of Swiss law to the other three claims was not determined until trial. The reason Swiss law applied to the counterclaims was that the claims arose out of an alleged breach of a two-page non-disclosure agreement, which had a provision stating, in total, "This Agreement shall be governed in all respects by the laws of Switzerland." (D.I. 1054-1 at 129 [Exh. C at 2]). *See Roche v. LifeScan*, 452 F. App'x at 997.

Roche argues that it is entitled to a "basic fee" of $45,350,000. (D.I. 1052, pp. 16-17). Its Swiss law expert explains that it would usually get a surcharge of 30% (or $13,605,000), for a total of $58,955,000. (D.I. 1054, ¶¶ 21, 26). Or, maybe not, as it is "likely" that Swiss law might limit the surcharge in this case because of "constitutional limitations on excessive compensation

---

[4] Roche usually refers to the Swiss law as the "English rule," but the only thing Swiss law seems to have in common with the English rule is that, at a high level, both Swiss law and the English rule provide for fee shifting.

4

that might appear arbitrary."[5] (*Id.*, ¶ 26).

Roche's objections to the Report and Recommendation are two-fold. The first is that the Magistrate Judge conducted the wrong analysis, and the second is that the analysis she did conduct was in significant part wrong. In order to resolve those objections, I think it is necessary to decide exactly what the analytical framework is that I should be using.

I start with the jurisdictional basis for the counterclaims. Nova alleged that to be diversity of citizenship and supplemental jurisdiction. (D.I. 47, p.8, ¶ 5). Roche initially denied them. (D.I. 63, p.2). Roche later agreed, at a minimum, that the court had jurisdiction on the basis of supplemental jurisdiction.[6] (D.I. 767, p.2). The point here is that the counterclaims were the equivalent of state law claims. Thus, "state law" (by which I mean either Swiss law or Delaware law) applies to the issue of attorney's fees on the counterclaims. *See Alaska Rent-a-Car, Inc. v. Avis Budget Group, Inc.*, 738 F.3d 960, 973 (9th Cir. 2013). How to decide which "state's" law applies? "The rule is that the federal court in which the case is litigated should apply the forum state's choice of law rules." *Id.* Thus, I apply Delaware's choice of law rules.

---

[5] The excessive compensation concern is that Roche's actual attorney's fees in regard to the counterclaims were claimed to be $3,882,630 as of December 2011 (D.I. 1052, p.18), which is about when the Court of Appeals affirmed the judgment against Nova on the counterclaims. That is, the "basic fee" Roche seeks is more than eleven times its actual attorney's fees. Roche will seek additional fees for subsequent fees litigation. (*Id.* at n.14). By way of contrast, as of December 2011, it had spent more than $10,000,000 in attorney's fees on the patent litigation that it lost. (*Id.* at p.18). The patent litigation continued after December 2011, and I would expect the ratio of patent litigation attorney's fees to counterclaim litigation attorney's fees at the present time is about 4 to 1.

[6] It seems to me there was also diversity of citizenship, as Nova was a Massachusetts corporation with a principal place of business in Massachusetts, and Roche was a Delaware corporation with a principal place of business in Indiana, and the amount in controversy exceeded $75,000. (D.I. 767, pp. 2-3).

5

Delaware courts look to the Restatement (Second) of Conflict of Laws to determine choice-of-law issues. *See Gavin v. Club Holdings*, LLC, 2016 WL 1298964, *3 (D.Del. Mar. 31, 2016).

The Magistrate Judge's analysis followed the approach taken by Delaware courts to analogous situations. The analysis primarily tracked that of *Relax Ltd. v. ANIP Acquisition Co.*, 2011 WL 2162915 (Del. Sup. Ct. May 26, 2011). *See Microsoft Corp. v. Patent Revenue Partners, LLC*, 2015 WL 6122331, *4 (Del. Ct. Ch. Oct. 15, 2015) (following *Relax*).

In *Relax*, the Superior Court had a breach of contract case in which the contract provided that it "'shall be governed by English law,'" exactly parallel to the non-disclosure agreement's provision that it "shall be governed in all respects by the laws of Switzerland." The parties disputed whether the "English rule" or the "American rule" should apply to the request for attorney's fees. The Court held that it must "address two issues: (1) is the right to counsel fees procedural or substantive; and (2) if substantive, is [the winner] entitled to counsel fees under the English rule." To determine whether the issue was procedural or substantive, the Court conducted an analysis pursuant to Restatement § 122, which states, "A court usually applies its own local law rules prescribing how litigation shall be conducted even when it applies the local law rules of another state to resolve other issues in the case." The Restatement's commentary noted that there were issues that would "fall into a gray area between issues relating primarily to judicial administration and those concerned primarily with the rights and liabilities of the parties." The commentary to § 122 further described four factors for courts to consider in deciding whether to apply the law of the forum or the non-local law to the issue under consideration, which factors *Relax* summarized as:

> First, whether the parties shaped their actions with reference to the local law of a certain jurisdiction; second, whether the issue is one whose resolution would be likely to affect

6

the ultimate result of the case; third, whether the precedents have tended consistently to classify the issue as procedural or substantive for conflict of law purposes; and fourth, whether an effort to apply the rules of judicial administration of another jurisdiction would impose an undue burden on the forum.

*Relax*, 2011 WL 2162915, at *6. *Relax* then analyzed those factors and concluded that, under the facts there present, the English Rule should be applied.[7]

The Swiss rules on fee-shifting are very much tied up with judicial administration. Unlike fee shifting under U.S. law (when it occurs), or fee shifting pursuant to the English rule, which are both based on actual fees, Swiss law fee-shifting is not based on actual fees. (D.I. 1054, ¶¶ 15 – 16). "As counsel is paid by default according to the same tariff as used to assess 'extraordinary legal costs' . . ., this can result in counsel being paid much less or much more than his or her actual work. Swiss courts assume, however, that over time such under- or overcompensation of counsel will even out." (*Id.*, ¶ 18). "This is based on the fiction that fat and meager compensations are distributed among the bar in a roughly equal manner." (*Id.*). Thus, Swiss law fee-shifting is a factor in how lawyers actually get compensated, which seems to be a matter of judicial administration. Further, its justification assumes that the cases are actually tried in Swiss courts, as Swiss law fee-shifting could be quite random and arbitrary without the repeat player feature.

---

[7] The other leading Delaware case is *El Paso Natural Gas Co. v. Amoco Production Co.*, 1994 WL 728816 (Del. Ch. Dec. 16, 1994). The contract there "expressly adopted" Texas law as governing law, noting that the incorporated Texas law was that "applicable to contracts made and to be performed entirely within that state." *Id.* at *5. The parties disputed whether Texas law on attorney's fees should apply. The Court held that it needed to analyze whether "the issue is one that constitutes or is vitally bound up with the adjudication of the asserted substantive right." *Id.* at *4. Under these circumstances, where there was a breach of contract claim and a Texas statute that applied expressly to breach of contract claims, the Court held that "a statutory right to attorneys fees is, like all other statutory entitlements, a matter of substantive right."

Swiss law fee-shifting seems designed to work with other Swiss law procedures, such as how cases are pled. U.S. fee shifting and the English rule depend on actual fees as a basis for awarding fees. Since Switzerland does not rely on actual fees, it needs to have an alternative basis for setting fees. And, it does. Both sides' experts agree that the amount claimed sets the basis for the tariff. Plaintiff's expert: the costs are "based on the 'amount in controversy,' i.e., the damages claimed and the value or cost of any requested injunctive relief." (*Id.*, ¶ 19). Defendant's expert: "the amount of controversy is fixed based on the prayers of relief of the claimant at the beginning of the proceeding." (D.I. 1069, ¶ 35). It seems to be the case that Swiss law[8] has various procedures so that the amount in controversy is set at a time when the parties can take the likely attorney's fees into account. Both sides' experts seem to recognize this. Defendant's expert: "the civil procedural laws of Basel-Stadt required the claimant to state the maximum amount of its claim in the claim." (D.I. 1069, ¶ 46). Plaintiff's expert: "This is correct under Swiss procedural law, but not pertinent. . . . [T]he requirement to determine the amount in dispute at the outset is a consequence of Swiss law according to which courts determine the court fees based on the amount in dispute and typically raise an advance from the claimant at the outset." (D.I. 1080, ¶ 30). There are cases where the amount in dispute is not set at the beginning, but in (at least) those cases, the attorney is required to file a "detailed determination of the [actual] attorneys' fees 14 days prior to the final oral hearing in the litigation." (D.I. 1069, ¶ 53). Failure to do so, at a minimum, makes it more difficult to claim

---

[8] Plaintiff states the actual Swiss law would be that of the Canton of Basel-Stadt. Basel-Stadt is one of twenty-six Swiss cantons. Each canton, like each U.S. state, has its own laws. I reject Defendant's argument that the "laws of Switzerland" only refer to Swiss federal law, and I also accept Plaintiff's argument that the relevant canton is Basel-Stadt. For ease of reference, I use the term "Swiss law" to refer to cantonal law.

8

attorney's fees. (*Id*.; D.I. 1080, ¶ 40).

Plaintiff says, quite reasonably when considered in the abstract, that various Swiss procedures that accompany the fee-shifting are "procedural" and not necessary when the litigation occurs elsewhere than Basel-Stadt. It makes sense to me that not every Swiss procedural rule would need to be imported with shifting attorney's fees, but when shifting attorney's fees is accompanied by numerous procedural safeguards and requirements, it is easier to see the Swiss rule as not being part of the substantive law regarding contract disputes.

Roche's first objection is that the Magistrate Judge performed the wrong analysis, that is, that she should have taken it as a given that since the parties chose Swiss law to govern the non-disclosure agreement, no further analysis was necessary other than to decide how much attorney's fees to award Roche. In its objections, on this issue, Roche does not mention *Relax*. It is the most closely analogous Delaware case, and I see no basis for concluding that it was wrongly decided in how it approached the issue.[9] I do not think Swiss law on attorney's fees is so "vitally bound up with the adjudication of the asserted substantive right" as to skip over a choice of law analysis. Thus, Roche's first objection is overruled.

The Magistrate Judge analyzed Roche's request for attorney's fees pursuant to the discussion in the Restatement and *Relax*. (D.I. 1091 at 41-54). She concluded: First, "[T]he parties did not 'shape their actions with reference to the local law of a certain jurisdiction' and, therefore, the first factor weighs in favor of applying forum law." (*Id*. at 43). Second, "[T]he

---

[9] I am bound by Delaware Supreme Court rulings on Delaware law, but not by rulings of the Superior Court or the Court of Chancery. *See In re Makowka*, 754 F.3d 143, 148 (3d Cir. 2014).

9

issue is one whose resolution would [not] likely affect the ultimate result in the case, . . . [and] this factor favors the application of forum law." (*Id.* at 43-44). Third, "[G]iven the unsettled nature in Delaware as to whether the award of attorneys' fees is a procedural or substantive issue, it likewise determines that the third factor [the consistency of precedents 'classify[ing] the issue as procedural or substantive for conflict of law purposes'] is neutral." (*Id.* at 44-45). Fourth, "[A]pplication of Swiss law would be an undue burden on this court and, therefore, the fourth . . . factor weighs in favor of applying the law of the forum." (*Id.* at 54).

Based on these findings, the Magistrate Judge concluded that the award of attorney's fees in this case "is a matter of procedure, i.e., favoring application of forum law," and recommended the motion for attorney's fees be denied. (*Id.*).

Roche objects. Roche argues that the Magistrate Judge erred in regard to both the first and the fourth factors. (D.I. 1093, pp. 5-6).

The first factor is whether the parties shaped their actions with regard to Swiss law regarding attorney's fees. And, considering just the non-disclosure agreement, it would seem to be that the parties did "shape their actions" by providing for Swiss law to govern the contract. But here there is other evidence to suggest that the parties did not so shape their actions.

First, the evidence in the record does not suggest any thought was given to the matter when the non-disclosure agreement was signed in 1999. (D.I. 1091 at 42-43; D.I. 1093 at 7 (not objecting to Magistrate Judge's recitation of the facts)). It is true that Nova cannot avoid "substantive" Swiss contract law when it signed an agreement stating that a contract was to be governed by Swiss law, but it seems another thing to say that the parties shaped their actions in

10

regard to Swiss law that has nothing to do with contracts.

Second, "shaping their actions" includes the conduct of litigation. *See RLS Assoc. v. United Bank of Kuwait PLC*, 464 F.Supp.2d 206, 219 (S.D.N.Y. 2006) (noting that it "would be unfair" not to apply the English rule when both parties "assumed, well into the litigation, that the English rule on attorney's fees would apply."). Roche notes (D.I. 1093, p.8) that the Magistrate Judge found that it "put Nova on notice that it would seek attorneys fees in connection with Nova's counterclaims and made clear that it contended Swiss law applied to those counterclaims." (D.I. 1091 at 39). The Magistrate Judge's statement (which was made in the context of Nova's argument that Roche had waived the claim to attorney's fees (*id.* at 37-39)) is not as applicable here as Roche suggests. It is true that Roche made clear from the beginning of the litigation that its position was that Swiss law applied to Nova's fourth through seventh counterclaims, but Nova also had three patent counterclaims. Roche's reply to the counterclaims had a prayer for relief that "this Court find this case to be exceptional and award Roche its attorney fees, costs, and expenses in this action." (D.I. 199 at 13). This was not a claim for attorney's fees under Swiss law; this was a claim for attorney's fees under patent law. *See* 35 U.S.C. § 285 ("The court in exceptional cases may award reasonable attorney fees to the prevailing party.").[10]

The lengthy pretrial order (D.I. 767-69) only once mentions attorney's fees, and that was by Nova, citing Massachusetts law, on its unfair competition counterclaim. (D.I. 767-4 at 17).

---

[10] I am not saying that this boilerplate was insufficient to put Nova on notice that Roche would be seeking attorney's fees. My only point is that it gives no hint that the attorney's fees would be based on Swiss law, and, indeed, would suggest that attorney's fees would be based on patent law.

11

I asked Roche to point out where it had "first expressly claimed attorneys fees under Swiss law" and "where it first estimated or otherwise gave notice of how such attorneys fees should be calculated." (D.I. 1105). The first express claim to attorney's fees under Swiss law was on March 9, 2011, when Roche filed a motion for attorney's fees. (D.I. 937). With the agreement of the parties, briefing was stayed until after the first appeal was decided. (D.I. 941). There was some elaboration in an email of March 26, 2012, where Roche's counsel told Nova's counsel, "Roche's motion will be based on the fact that Swiss law . . . follows the 'English Rule' of awarding fees and expenses to the prevailing party as a matter of course." (D.I. 1106, Exh. B).[11] The notice of how such fees should be calculated first appeared in an opening brief supporting the motion for attorney's fees filed on April 2, 2012. (D.I. 955, pp. 11-12 (redacted version available at D.I. 965, pp. 11-12)). Thus, there is a complete absence of evidence that the parties to the litigation conducted it with an eye toward the Swiss law counterclaims including a fee-shift of $45,350,000 to the winner.

Thus, I agree with the Magistrate Judge that the first factor weighs in favor of applying Delaware law.

The fourth factor is whether applying Swiss law would be an undue burden on this court. It may be that applying the English rule (which I take to be more-or-less the same as the rule that I apply when shifting attorney's fees under domestic laws that permit or require fee shifting) is not as a general matter any more burdensome than applying a domestic fee-shifting statute. I understand under the English rule, I have some discretion. *See Alyeska Pipeline Serv. Co. v.*

---

[11] I think a fair reading of the email is that the author is disclosing information that he suspects Nova does not already have.

*Wilderness Soc'y*, 421 U.S. 240, 247 (1975) ("Although the matter is in the discretion of the court, counsel fees are regularly allowed to the prevailing party."). The Swiss rule, however, is not the English rule. And although it seems to be clear that there is some discretion in applying the Swiss rule, how to exercise that discretion under Swiss law, particularly without the safeguards Swiss law seems to have built into its system, is less than clear. Of course, if I have as much discretion as Nova's expert suggests,[12] this would be fairly easy, as, looking at the big picture, Roche brought meritless (which is not as bad as "baseless") litigation and Nova vigorously defended. Roche got what meritless litigation deserves, which is nothing. It is true that Nova's meritless counterclaims also got nothing, but, if this were boxing, Roche's claims would have been the main event while Nova's counterclaims were the undercard. Thus, if I knew I had the discretion, I would simply deny Roche's motion as a matter of discretion. I also cannot believe that a Swiss Court which had the same litigation that this Court had would award any attorney's fees to Roche. But I am not now confident that Nova's expert is right.[13] (D.I.

---

[12] "[A] Swiss court would look at the entire picture in order to allocate the compensations. Since one party (Nova) fully prevailed in the main claim and the other party (Roche US) fully prevailed in the counterclaim, the Swiss court could hold both claims to be equal and could thus refrain from obliging any party to compensate the other for its respective attorney's fees." (D.I. 1069, ¶ 43).

[13] Roche's Swiss law expert submitted § 171 of the Code of Civil Procedures of the Canton of Basel-Stadt, which states (translated from German): "If the parties have partially lost or have been dismissed in a judgement, or if the dispute is, in accordance with the judgement of the Court, such that the defeated party was induced to carry out the proceedings in good faith, then the court can divide the ordinary expenses into halves or into another proportional ration between the parties." (D.I. 1054-1 at 289 (Exh. G)). The following provision, § 172, which seems to be the relevant one, is, "Depending on the extent to which the defeated party appears to be in the wrong, the judgement may additionally include the payment of compensation to be imposed on the defeated party, to be stated as a fixed sum for any possible attorney's fees, or even the full payment of that party's attorneys' fees (extraordinary legal costs)." (*Id.* at 290). On its face, § 172 seems to give me the necessary discretion, but I am hesitant to put too much

13

1054, ¶¶ 27-28 (contesting Nova's expert's analysis)). What I am convinced of, after reading seventy pages of Swiss law experts' declarations (D.I. 1054, 1069, 1080), and after counting 1,867 pages of exhibits to the declarations (D.I. 1054-1, 1070, 1071, 1080-2), is that the issues are sufficiently complex that it would be, as the Magistrate Judge concluded, an undue burden on this Court to apply Swiss law on attorney's fees.

Thus, I overrule Roche's second objection to the Report and Recommendation. I will enter a separate order implementing this ruling.

Entered this **31** day of March 2018.

*[signature]*
United States District Judge

---

weight in a plain reading of a translated statute, since my experience is that even the best translation is not as good as understanding the passage in the original language.

14